# VOLUME 1 OF 7

# RER-1   0001 through RER-6   0592

**RER - 1**

Official Form 1 (10/06)

| United States Bankruptcy Court | Voluntary Petition |
|---|---|
| Northern    District of    California | |

| Name of Debtor (if individual, enter Last, First, Middle):<br>The Billing Resource, dba Integretel | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years (include married, maiden, and trade names):<br>Integretel Billing Solutions | All Other Names used by the Joint Debtor in the last 8 years (include married, maiden, and trade names): |
| Last four digits of Soc. Sec./Complete EIN or other Tax ID. No. (if more than one, state all): 33-0289863 | Last four digits of Soc. Sec./Complete EIN or other Tax ID. No. (if more than one, state all): |
| Street Address of Debtor (No. & Street, City, and State):<br>5883 Rue Ferrari<br><br>San Jose, California        ZIPCODE 95138 | Street Address of Joint Debtor (No. & Street, City, and State):<br><br><br>ZIPCODE |
| County of Residence or of the Principal Place of Business:<br>Santa Clara | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br><br>ZIPCODE | Mailing Address of Joint Debtor (if different from street address):<br><br>ZIPCODE |
| Location of Principal Assets of Business Debtor (if different from street address above):<br>ZIPCODE | |

| Type of Debtor<br>(Form of Organization)<br>(Check one box.) | Nature of Business<br>(Check one box.) | Chapter of Bankruptcy Code Under Which the Petition is Filed (Check one box) |
|---|---|---|
| ☐ Individual (includes Joint Debtors)<br>*See Exhibit D on page 2 of this form.*<br>☒ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.) | ☐ Health Care Business<br>☐ Single Asset Real Estate as defined in 11 U.S.C. § 101 (51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☒ Other<br>Provider of telecommunications billing solutions | ☐ Chapter 7    ☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding<br>☐ Chapter 9<br>☒ Chapter 11<br>☐ Chapter 12    ☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding<br>☐ Chapter 13 |
| | Tax-Exempt Entity<br>(Check box, if applicable.)<br>☐ Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code). | Nature of Debts<br>(Check one box.)<br>☐ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or house-hold purpose."    ☒ Debts are primarily business debts. |

| Filing Fee (Check one box) | Chapter 11 Debtors |
|---|---|
| ☒ Full Filing Fee attached.<br><br>☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3 A.<br><br>☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B. | Check one box:<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>☒ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br>Check if:<br>☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2 million.<br>- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -<br>Check all applicable boxes:<br>☐ A plan is being filed with this petition.<br>☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b). |

| Statistical/Administrative Information | THIS SPACE IS FOR COURT USE ONLY |
|---|---|
| ☒ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors. | |

Estimated Number of Creditors

| 1-49 | 50-99 | 100-199 | 200-999 | 1,000-5,000 | 5,001-10,000 | 10,001-25,000 | 25,001-50,000 | 50,001-100,000 | Over 100,000 |
|---|---|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |

Estimated Assets

| ☐ $0 to $10,000 | ☐ $10,000 to $100,000 | ☐ $100,000 to $1 million | ☒ $1 million to $100 million | ☐ More than $100 million |
|---|---|---|---|---|

Estimated Liabilities

| ☐ $0 to $50,000 | ☐ $50,000 to $100,000 | ☐ $100,000 to $1 million | ☒ $1 million to $100 million | ☐ More than $100 million |
|---|---|---|---|---|

RER-1        0001

Official Form 1 (10/06)                                                                                                                  Form B1, Page 2

| **Voluntary Petition** *(This page must be completed and filed in every case)* | Name of Debtors): The Billing Resource, dba Integretel |
|---|---|

| **Prior Bankruptcy Case Filed Within Last 8 Years** (If more than one, attach additional sheet) | | |
|---|---|---|
| Location Where Filed: | Case Number: | Date Filed: |
| Location Where Filed: | Case Number: | Date Filed: |

| **Pending Bankruptcy Case Filed by any Spouse, Partner or Affiliate of this Debtor** (If more than one, attach additional sheet) | | |
|---|---|---|
| Name of Debtor: | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

<table>
<tr><td><b>Exhibit A</b><br><br>(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)<br><br>☐ Exhibit A is attached and made a part of this petition.</td><td><b>Exhibit B</b><br>(To be completed if debtor is an individual whose debts are primarily consumer debts.)<br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I have delivered to the debtor the notice required by 11 U.S.C. § 342(b).<br><br>X _____<br>      Signature of Attorney for Debtors)      (Date)</td></tr>
</table>

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐ Yes, and Exhibit C is attached and made a part of this petition.

☒ No.

**Exhibit D**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

    ☐ Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

    ☐ Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

**Information Regarding the Debtor - Venue**
(Check any applicable box.)

☒ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐ Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Statement by a Debtor Who Resides as a Tenant of Residential Property**
*(Check all applicable boxes.)*

☐ Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____
(Name of landlord that obtained judgment)

_____
(Address of landlord)

☐ Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐ Debtor has included with this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

| Official Form 1 (10/06) | Form B1, Page 3 |
|---|---|
| **Voluntary Petition**<br>*(This page must be completed and filed in every case)* | Name of Debtor(s):<br>The Billing Resource, dba Integretel |

**Signatures**

| Signature(s) of Debtor(s) (Individual/Joint) | Signature of a Foreign Representative |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct.<br><br>[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.<br>[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. § 342(b).<br><br>I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.<br><br>X _____<br>   Signature of Debtor<br><br>X _____<br>   Signature of Joint Debtor<br><br>_____<br>   Telephone Number (If not represented by attorney)<br><br>_____<br>   Date | I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.<br><br>(Check only **one** box.)<br><br>☐   I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. § 1515 are attached.<br>☐   Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.<br><br>X _____<br>   (Signature of Foreign Representative)<br><br>_____<br>   (Printed Name of Foreign Representative)<br><br>_____<br>   Date |
| **Signature of Attorney**<br><br>X /s/ Jeffrey K. Rehfeld<br>_____<br>   Signature of Attorney for Debtor(s)<br>Jeffrey K. Rehfeld<br>_____<br>   Printed Name of Attorney for Debtor(s)<br>Sheppard Mullin Richter & Hampton LLP<br>_____<br>   Firm Name<br>Four Embarcadero Center, Suite 1700<br>San Francisco, CA 94111<br>_____<br>   Address<br><br>_____<br>415-434-9100<br>_____<br>   Telephone Number<br>September 16, 2007<br>_____<br>   Date | **Signature of Non-Attorney Bankruptcy Petition Preparer**<br><br>I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19B is attached.<br><br>_____<br>Printed Name and title, if any, of Bankruptcy Petition Preparer<br><br>_____<br>Social Security number (If the bankruptcy petition preparer is not an individual, state the Social Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.) |
| **Signature of Debtor (Corporation/Partnership)**<br><br>I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.<br><br>The debtor requests the relief in accordance with the chapter of title 11, United States Code, specified in this petition.<br><br>X /s/ Ken Dawson<br>_____<br>   Signature of Authorized Individual<br>Ken Dawson<br>_____<br>   Printed Name of Authorized Individual<br>Director, President and Secretary<br>_____<br>   Title of Authorized Individual<br>September 16, 2007<br>_____<br>   Date | Address<br>X _____<br><br>_____<br>   Date<br><br>Signature of bankruptcy petition preparer or officer, principal, responsible person, or partner whose Social Security number is provided above.<br><br>Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual.<br><br>If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.<br><br>*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.* |

**RER - 2**

1 | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
2 | Including Professional Corporations
MICHAEL H. AHRENS, Cal. Bar No. 44766
3 | GERALDINE A. FREEMAN, Cal. Bar No. 111483
JEFFREY K. REHFELD, Cal. Bar No. 188128
4 | ORI KATZ, Cal. Bar No. 209561
Four Embarcadero Center, 17th Floor
5 | San Francisco, California 94111-4106
Telephone:    415-434-9100
6 | Facsimile:    415-434-3947
Email:        mahrens@sheppardmullin.com
7 |               jrehfeld@sheppardmullin.com
okatz@sheppardmullin.com

8

9 | Proposed Attorneys for THE BILLING RESOURCE,
dba INTEGRETEL

10

11 | UNITED STATES BANKRUPTCY COURT

12 | NORTHERN DISTRICT OF CALIFORNIA

13 | SAN JOSE DIVISION

14

15 | In re                                          | Case No. 07-52890

16 | THE BILLING RESOURCE, dba Integretel, a        | Chapter 11
California corporation,

17 |                   Debtor.                      | **EMERGENCY MOTION FOR USE OF
CASH COLLATERAL AND GRANTING
18 | Tax ID: 33-0289863                             | REPLACEMENT LIENS**

19 |                                                | Date:       [TBD]
20 |                                                | Time:       [TBD]
Place:      United States Bankruptcy Court
21 |                                                |            280 South First Street
San Jose, California
22 |                                                | Judge:      [TBD]
Courtroom:[TBD]

23

24

25

26

27

28

1    This emergency motion (the "Motion") is filed on behalf of the above-captioned debtor
2  The Billing Resource, dba Integretel, a California corporation (the "Debtor"). The Motion is
3  based on the discussion below, the concurrently filed declaration of Ken Dawson (the "Dawson
4  Declaration") in support of the Motion, the other papers of record, and upon such further oral and
5  documentary evidence as may be presented prior to or at the time of the hearing on the Motion.
6  The Motion is brought pursuant to 11 U.S.C. §§ 105, 361 and 363 and Federal Rule of Bankruptcy
7  Procedure 4001 ("FRBP").

8    As soon as the Court sets a hearing on the Motion, the Debtor will send out a notice to the
9  parties identified in Section IV of this Motion.

10    The Debtor must have immediate access to cash collateral to maintain its business
11  operations and pay its ongoing operational expenses, including without limitation the payment of
12  vendors, its employees and other costs and expenses which are essential to the Debtor's continued
13  viability. Without the ability to use cash collateral, the Debtor cannot meet these expenses and is
14  in jeopardy of having to cease business operations, which would be devastating to the Debtor, its
15  creditors and its entire bankruptcy estate, as well as cause significant harm to the Debtor's
16  customers who depend upon the Debtor and the services it provides. The Debtor needs the use of
17  cash collateral now to avoid immediate and irreparable harm to the Debtor and its bankruptcy
18  estate. The Debtor, therefore, requests that the Court enter an order approving the Stipulation (as
19  that term is defined below) and allowing the interim use of cash collateral and granting certain
20  replacement liens, and that the Court set a final hearing for the Debtor's use of cash collateral and
21  granting certain replacement liens, as set forth herein.

22    There are five entities that claim a security interest in assets that might be "cash
23  collateral."[1] Following is a summary of the five entities, and the manner in which their claims are
24  proposed to be treated:

25

26  [1] The names of these entities and their addresses are also listed on Exhibit A attached hereto. The
    Debtor does not concede that any entity possesses a valid, perfected and enforceable security
27  interest in cash collateral of the Debtor, and the Debtor reserves all rights and defenses in
    connection therewith.
28

1    (a) PaymentOne Corporation ("PaymentOne") and POL, Inc. ("POL"). PaymentOne has

2  stipulated to the use of cash collateral and a copy of that stipulation (the "Stipulation") is attached

3  as Exhibit E. In this Motion the Debtor seeks approval of the Stipulation. PaymentOne and POL

4  together assert claims of approximately $15.4 million and $196,000, respectively, and claim a

5  security interest in accounts and other cash collateral. The Debtor intends to provide PaymentOne

6  and POL adequate protection in the more than $24 million[2] of cash and accounts receivable of the

7  Debtor that are free and clear except for the claims of PaymentOne and POL.

8    (b) Three Customers' Invalid Lien Claims. Three customers[3] have filed UCC-1 financing

9  statements and the description of the collateral is not in accounts of the Debtor or in any other cash

10 collateral of the Debtor. However, out of an abundance of caution, the Debtor has brought this

11 Motion to make sure that it may continue to use its own accounts notwithstanding these asserted

12 invalid security interest claims. Although the contracts of these three customers are worded

13 slightly differently, in each of the three cases the customer took a security interest in its own

14 claims against the Debtor. This is not "accounts" of the Debtor, and the three customers therefore

15 have no valid claims in cash collateral. However, the Debtor will not in this Motion ask that this

16 dispute be resolved now. The Debtor will give these three customers the same lien in postpetition

17 assets, but agree that such postpetition lien is only as valid as the prepetition lien. Even if these

18 three customers had a security interest in accounts, which they do not, they are adequately

19 protected. The claims of these three customers collectively total approximately $3.7 million, and

20 there is more than enough protection in the $24 million plus of receivables of the Debtor if these

21 three customers have an interest in those receivables.

22

23

24

---

25 [2] The $24 million in receivables does not take into account the intercompany receivable from the

26 Debtor's subsidiary, Inmate Calling Solutions, LLC, dba ICSolutions (hereinafter, "ICSolutions").

[3] These three customers are Network Telephone Services, Inc. ("Network Telephone"), Personal

27 Voice, Inc. ("Personal Voice") and Public Communication Services, Inc. ("Public

28 Communication").

---

W02-WEST:FKA\400433179.1

-2-

EMERGENCY CASH COLLATERAL MOTION

1

# I.

2

## STATEMENT OF FACTS

3    A.    The Debtor's Background and the Debtor's Business.

4    The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code

5    on September 16, 2007 (the "Petition Date"). The Debtor is operating its business pursuant to

6    Sections 1107 and 1108 of the Bankruptcy Code.[4]

7    The Debtor was originally formed in 1988 based on a need for aggregators to facilitate

8    billing and collections on behalf of smaller telecommunications companies that otherwise could

9    not afford to compete with the larger local exchange carriers ("LECs" or "Telcos") such as AT&T.

10    At that time "alternative operator services" ("AOS") was a growing market segment and affordable

11    billing solutions allowed private companies to compete with the LECs in niche areas like public

12    payphones, hotels, and prisons. In the payphone market, for example, many of the incumbent

13    LECs' phones were perceived to be relatively poorly maintained and expensive to use. Today,

14    most LECs have exited the payphone market.

15    In the pre-subscribed long distance business, typically the service provider establishes a

16    long-term service relationship with the consumer. In contrast, AOS involves a casual relationship

17    where often the consumer uses the service provider's assets or services without the consumer or

18    the service provider even knowing at that time each other's identity. For example, a service

19    provider owning the service contract for a hotel chain has no idea what the true identity is of the

20    consumer using its phones. When a collect call is placed, often the only information that the AOS

21    provider has are the basic elements of the call itself, i.e., the telephone number the call is placed

22    from, the telephone number to which the call is placed, the date and time of the call, and the

23    duration of the call. While the called party may have accepted the charges, the AOS provider can

24    only bill such collect calls by one of two methods: (1) using a direct invoice; or (2) via the

25

26

---

27    [4] "Bankruptcy Code" refers to 11 U.S.C. §§ 101-1531, inclusive. "Rule" refers to the Federal Rules of Bankruptcy Procedure.

28

1  consumer's home LEC.[5]  Each of these methods has many drawbacks.

2        In addition to AOS providers, the Debtor services customers offering enhanced products
3  and services such as voice mail, online directory listings and bundled calling plans. While these
4  services may be billed to credit cards, often consumers are hesitant to use their credit cards for
5  such intangible purchases and, therefore, may  prefer alternate billing choices such as the LEC
6  phone bill.

7        Under the direct invoice method, the service provider would need to first purchase the
8  consumer's billing name and address from a reliable source and then print, stuff and mail an
9  invoice.  The per unit cost of these administrative functions could be prohibitively high without a
10  substantial volume.  As many service providers' names are not well known, a high percentage of
11  these invoices are also likely to be thrown away or ignored.  Since the average billing charge may
12  be very small, collections efforts are cost prohibitive.  Unless the service provider has a powerful,
13  household brand name, the direct invoice billing method is typically impracticable.

14        Similarly, billing the consumer's home LEC also presents numerous difficulties.  With this
15  method, the service provider needs to have first invested millions of dollars in specialized software
16  to interface with each LEC's billing system as well as to decipher their resulting reports and data
17  streams.  In addition, the service provider would need billing and collection contracts with every
18  LEC[6], which would cost about $2 million to obtain and implement, take 6-12 months to set up,
19  and require ongoing fee minimums of over $100,000 per month.

20        The Debtor addressed a significant industry void by creating a service bureau focused
21  entirely on billing-related services.  As the cornerstone to its billing capability, the Debtor
22  maintains a full complement of billing and collection agreements with an estimated 1,400 or more
23  LECs, including all major LECs and numerous independents.  This infrastructure enables
24  telecommunication service providers to incorporate their charges within the phone bills of greater

25  _____
   [5] The service provider could have required the caller to use a credit card or charge his or her hotel
26  room, but that is not a competitive offering for a consumer wishing to make a collect call.

27  [6] The service provider needs every LEC agreement because it has no way to know in advance the
   identity of the billed party.
28

1   than 90% of business and residential consumers throughout the United States and Canada. By

2   using a billing aggregator like the Debtor, the fixed overhead is already in place and the per unit

3   billing cost is typically lower than the direct approach. Moreover, the LEC bill adds credibility to

4   the charge and provides a substantially higher collection rate.

5       The Debtor quickly established itself as a leader in providing LEC billing solutions for

6   diverse and emerging products and services. The Debtor presently offers a complete array of

7   complementary services including internet-delivered management and settlement reporting, direct

8   billing, customer care and collection support. As a strategic back-room business partner, the

9   Debtor frees its clients to focus their efforts on promoting and selling products and services.

10      The Debtor has served thousands of service providers over the years. The vast majority of

11  the processed billings have been in support of smaller sized businesses that otherwise would not

12  have been able to compete. It is the competitive pressure of these smaller companies that has

13  forced down the rates charged to consumers by the larger telecommunication companies.

14      The Debtor's office is in San Jose, California. The Debtor leases that office space. The

15  Debtor has no other offices or real estate leases. The Debtor owns no real estate. The Debtor has

16  approximately thirty-seven employees. Twenty-two of those employees have been with the

17  company for over five years, and thirteen have been with the Debtor for over ten years. In

18  addition, the Debtor's services support, through outsourced relationships, approximately 30 call

19  center personnel in several different call centers who are employed by a third-party vendor. This

20  function used to be internally managed by the Debtor until a few years ago.

21      In July of 2000, the Debtor formed a subsidiary called eBillit, Inc., now known as

22  PaymentOne Corporation (hereinafter, "PaymentOne"), a Delaware corporation, to address the

23  specialized billing and support requirements of the internet. PaymentOne is a majority-owned

24  subsidiary of the Debtor. In 2002, the Debtor formed another subsidiary, ICSolutions, to target the

25  correctional industry. ICSolutions provides a full, end-to-end call processing and support system

26  to facilitate inmate calling including collect and pre-paid calling as well as a variety of

27  complementary products and services. ICSolutions is a majority-owned subsidiary of the Debtor.

28  In 2004, the Debtor formed another subsidiary, Information Services 900 LLC (hereinafter, "IS

-5-

1  900"), to target the provisioning, rating, formatting and billing of 900 call traffic.  IS 900 is a

2  majority-owned subsidiary of the Debtor.

3  B.    The Debtor's Contracts With Its Customers.

4         The relationship between the Debtor and its AOS provider customers is governed by a

5  contract between the Debtor and the customer.  The typical contract provides that the customer

6  submit to the Debtor the customer's billing transactions (the "Billing Transactions") in a data

7  format acceptable to the Debtor.  If the Billing Transaction does not satisfy certain processing

8  criteria then the Debtor may reject it.  If not rejected then the accounts receivable submitted as part

9  of the Billing Transaction becomes an account receivable of the Debtor and not the customer.  The

10 typical contract provides that "Client [i.e., the customer] acknowledges that the Billing Contracts

11 with Telcos [i.e., LECs] are structured as a purchase of accounts receivable..."

12        The customers have no ownership interest in the proceeds of the billing transactions after

13 the Billing Transactions are submitted to the Debtor.  After the Billing Transactions are submitted

14 and the accounts receivable from the LECs becomes property of the Debtor, the customer is only

15 an unsecured creditor of the Debtor, with claims for certain "distributions" under the contract

16 between the Debtor and the customer.  Generally, those "distributions" will be payable by the

17 Debtor about 90 or so days after the Billing Transaction is submitted to the Debtor by the

18 customer.  Detailed formulas are set forth in the contracts for computing the amounts that the

19 Debtor is required to pay the customers.  The Debtor is authorized to withhold from the customer

20 its fees and not to pay amounts that may be used by the Debtor to resolve disputes, make other

21 adjustments and maintain as reserves.  The reserves are merely bookkeeping entries.  The Debtor

22 does not have any accounts segregated by individual client which hold any reserves.

23        Under the typical contract it is provided that each week the Debtor shall transfer by wire to

24 the customer's bank account the Net Proceeds identified in the prior week.  "Net Proceeds" is

25 defined as the gross value of the Billing Transactions that are remitted to the LECs, less amounts

26 withheld by the LECs, less amounts due to the Debtor, and less other fees and reserves.  This

27 amount is due only as such amounts are determined from the information provided from the LECs,

28 and that is generally 90 days after submission of the Billing Transactions.

-6-

W02-WEST:FKA\400433179.1

EMERGENCY CASH COLLATERAL MOTION

RER-2    0010

C.    Claims Based Upon Billing Transactions Submitted To The Debtor Prior To The Debtor's Bankruptcy Filing Shall Be Treated As Pre-Petition Claims.

As previously discussed, the Debtor's customers have no ownership interest in the proceeds of the billing transactions after the Billing Transactions are submitted to the Debtor. After the Billing Transactions are submitted and the accounts receivable from the LECs becomes property of the Debtor, the customer is only an unsecured creditor of the Debtor, with claims for certain "distributions" under the contract between the Debtor and the customer. Accordingly, all Billing Transactions which were submitted to the Debtor prior to the Debtor's bankruptcy filing shall be treated as pre-petition claims. In contrast, all Billing Transactions submitted to the Debtor after the Debtor's bankruptcy filing shall be treated as post-petition claims.

D.    Entities Claiming Security Interests In Cash Collateral

The Debtor does not have a traditional bank lender. However, PaymentOne, POL, Network Telephone, Personal Voice and Public Communication (collectively referred to herein as the "Alleged Cash Collateral Secured Creditors") claim to hold valid, perfected and enforceable security interests in certain assets of the Debtor which constitute "cash collateral" as defined in Bankruptcy Code section 363(a) (such assets of the Debtor shall be referred to herein as the "Cash Collateral").[7]

The Debtor does not concede that any entity possesses a valid, perfected and enforceable security interest in the Debtor's Cash Collateral and reserves all rights and defenses in connection therewith. However, as discussed in further detail below, in light of the Debtor's urgent need to use Cash Collateral and in order to avoid having to immediately resolve any disputes regarding creditors' alleged security interests in Cash Collateral of the Debtor, the Debtor proposes to provide that each of the entities be granted a replacement lien of the same kind and type as it possessed prepetition which replacement lien shall be effective only to the extent that each such entity's prepetition liens were valid, perfected and enforceable. To the extent that each entity's

---

[7]    Also, other creditors assert security interests in certain of the Debtor's other non-cash collateral assets. Specifically, Highline Capital Corp. and CIT Technology Financing Services, Inc. assert security interests in certain of the Debtor's office and computer equipment.

1 | prepetition liens were valid, perfected and enforceable, each such entity's replacement liens on

2 | post-petition property shall have the same priority vis-a-vis other liens and interests as each of the

3 | respective entity's pre-petition liens and security interests have vis-a-vis such other liens and

4 | interests.

5 | E.    The Florida Action and the Debtor's Need to File for Bankruptcy.

6 | On February 27, 2006, the Federal Trade Commission (the "FTC") commenced a lawsuit

7 | (the "Florida Action") in the United States District Court for the Southern District of Florida (the

8 | "Florida Court") against Nationwide Connections, Inc. ("Nationwide"), Access One

9 | Communications, Inc. ("Access One") and Network One Services, Inc. ("Network One"), three

10 | AOS providers, as well as their principals, alleging deceptive and unfair practices for unauthorized

11 | billing of charges on phone bills – referred to as "cramming" – in violation of the Federal Trade

12 | Commission Act (the "FTCA").[8]    The Florida Court entered a temporary restraining order and

13 | later a preliminary injunction.    The Florida Court appointed a receiver (the "Receiver") for

14 | Nationwide, Access One and Network One and certain of their affiliates.    An "Amended

15 | Preliminary Injunction Order" was filed on September 25, 2006. On or about September 21, 2006,

16 | the FTC filed an amended complaint which included claims against the Debtor and another billing

17 | aggregator.    Access One and Network One were two of the Debtor's prior AOS provider

18 | customers (Access One and Network One collectively shall be referred to as the "Prior

19 | Customers").    The FTC alleged in its amended complaint that the Debtor caused certain of the

20 | Prior Customers' fraudulent charges to be placed on end users' phone bills and that the Debtor was

21 | liable under the FTCA. The Debtor filed an answer denying the FTC's allegations.

22 | The Receiver filed a motion seeking to hold the Debtor in contempt for allegedly failing to

23 | turn over to the Receiver, on behalf of the Prior Customers, certain reserves under the Prior

24 | Customers' contracts with the Debtor (the "Subject Contracts") in an alleged amount exceeding

25 | $1.4 million.    The Debtor filed a response opposing such relief on numerous grounds.    The

26

---

[8] The Florida Action is captioned <u>Federal Trade Commission v. Nationwide Connections, Inc., et al.</u>, Case No. 06-80180-Civ-Ryskamp, United States District Court for the Southern District of Florida.

1  grounds included without limitation that the Debtor had no obligation to pay any funds to the

2  Receiver under the Subject Contracts. In addition, the Debtor asserted that it did not hold any

3  specific designated funds allocable to reserves for the Prior Customers, because consistent with the

4  Debtor's general practice regarding reserves, the Debtor treated them solely as bookkeeping

5  entries, without segregating or otherwise designating specific funds for purposes of the reserves.

6      The Florida Court filed an order dated September 14, 2007 (the "Payment Order")

7  requiring that the Debtor pay the disputed substantial moneys into a segregated receivership

8  account.[9]

9      The Debtor believes that it will ultimately prevail in the Florida Action, including with

10  respect to amounts which are the subject of and required to be paid under the Payment Order, and

11  contends that it currently owes nothing to the Receiver. However, the Debtor's business could not

12  endure parting with such a substantial amount of money, as even the temporary loss of such a

13  large amount of funds would have had devastating consequences on the Debtor's business

14  operations, and consequently on the Debtor's creditors, employees and stakeholders. The Debtor

15  does not have sufficient funds to pay the monies required under the Payment Order and at the

16  same time make payments required for the Debtor's business operations. In addition, making the

17  payment required by the Payment order would gravely impair the Debtor's ability to pay other

18  customers any amounts that the Debtor determines should be paid in accordance with the reserve

19  provisions of the respective contracts. There is no segregated reserve account for any customer,

20  and the Debtor does not have enough cash to cover the full amount of reserves for all customers.

21  Thus, paying the Receiver under the Payment Order would give the Receiver preferential

22  treatment as compared to all of the Debtor's other customers. Accordingly, the Debtor filed for

23  bankruptcy protection to allow for an orderly and equitable administration of its assets for the

24  benefit of all claimants and stakeholders and to preserve its business operations and the

25  livelihoods of its employees.

26

27  [9] Though the FTC is a party to the Florida Action, the Payment Order which caused the filing of
this bankruptcy case was entered upon the motion of the Receiver, not a motion by the FTC.

28

-9-

## II.

### RELIEF REQUESTED

The Debtor seeks an order of the Court allowing it to use the Cash Collateral. The Debtor needs immediate use of the Cash Collateral to permit it to continue to operate, including without limitation for payment of its vendors, employees, as well as its other business operations, all as set forth on the budget (the "Budget") attached to this Motion as Exhibit C (and also attached to the Dawson Declaration). The Debtor can only continue to operate if it has access to the Cash Collateral. In return for the use of the Cash Collateral, the Debtor proposes to maintain each of the Alleged Cash Collateral Secured Creditor's security interests by granting each of them a replacement lien as described in Bankruptcy Code § 361(2) and discussed in greater detail below.

The Debtor requests two hearings — an immediate first-day hearing on an emergency basis (the "Interim Hearing") at which the Debtor will request interim authority to use Cash Collateral until a Final Hearing can be scheduled, and a Final Hearing at which time the Debtor will seek authority to use Cash Collateral on a final basis. At the Interim Hearing, the Debtor requests that the Court set a date for the Final Hearing and that the Court prescribe that notice of the Final Hearing be sent only to (i) those entities alleging a security interest in the Debtor's Cash Collateral as well as the Debtor's other purported secured creditors, as they are the only entities which the Debtor is aware of who purport to assert a lien on any property of the estate, (ii) the Office of the United States Trustee, (iii) the 30 largest creditors as set forth on the Schedule filed by the Debtor pursuant to FRBP 1007(d); (iv) the Receiver and the FTC, and (v) other significant parties in interest.

Prior to the Final Hearing, the Debtor may file and serve additional pleadings including without limitation additional financial information justifying its entitlement to use Cash Collateral.

### III.

### ARGUMENT

The Debtor requests the Court's immediate authority to use Cash Collateral on an interim basis and on a final basis to fund the Debtor's day-to-day operations including the expenses of this bankruptcy case. Absent such relief, the Debtor will be compelled to cease business operations.

W02-WEST:FKA\400433179.1

EMERGENCY CASH COLLATERAL MOTION

RER-2    0014

1  That would be extremely damaging to the Debtor and its creditors.  It would also be extremely

2  detrimental to the Debtor's customers who depend upon the Debtor for the services the Debtor

3  provides, and whose businesses would be extremely prejudiced by the delay that would arise if the

4  Debtor were to cease operations thereby forcing the customers to try and switch their billing

5  requirements over to one of the few other remaining billing aggregators.  The Debtor's use of Cash

6  Collateral is necessary to avoid immediate and irreparable harm to the Debtor and its bankruptcy

7  estate.

8      The relief requested herein is appropriate.  Bankruptcy Code § 363(c)(2) provides that a

9  debtor may not use cash collateral without either the consent of the secured party or an order of the

10  court.  Section 363(e) provides that a court may condition the debtor's use of cash collateral on the

11  debtor providing "adequate protection" of the secured party's interest in the collateral being used.

12  Bankruptcy Code Section 361 states that when adequate protection is required under Section 363,

13  adequate protection may take the form of:

14      (2)  providing to such entity an additional or replacement lien to the extent that
        any such . . . use . . . results in a decrease in the value of such entity's interest in
15      such property.

16  11 U.S.C. § 361(2).

17      The type of adequate protection that is appropriate in a particular case will depend on the

18  nature of the case.  Indeed, "[a]dequate protection [is] a concept which is to be decided flexibly on

19  the proverbial case-by-case basis."  In re O'Connor, 808 F.2d 1393, 1396-97 (10th Cir. 1987).

20  Here, for the Debtor to continue its business operations it will need to use the Cash Collateral in

21  which the Alleged Cash Collateral Secured Creditors claim to have an interest.  The most

22  appropriate form of adequate protection the Debtor can provide to the Alleged Cash Collateral

23  Secured Creditors is to grant each of the Alleged Cash Collateral Secured Creditors a replacement

24  lien, to the extent of Cash Collateral used, on all post-petition property of the same type and

25  character as the property to which the respective Alleged Cash Collateral Secured Creditor's pre-

26  petition lien extended.

27      An equity cushion has also been held to provide adequate protection.  See, e.g., Id.; Pistole

28

-11-

1  v. Mellor, 734 F.2d 1396, 1400 (9th Cir. 1984) ("In fact, it has been held that the existence of any

2  equity cushion, standing alone, can provide adequate protection."); In re Grant Broadcasting of

3  Philadelphia, Inc., 75 B.R. 819 (E.D. Pa. 1987). Attached as an exhibit to the Dawson Declaration

4  is a balance sheet of the Debtor (the "Balance Sheet"). The Balance Sheet shows that as of the

5  date thereof, the Debtor had current assets of $24 million, including $13.8 million of accounts

6  receivables from LECs. Based upon the Debtor's business history, the Debtor believes that as of

7  the date of this Motion, the Debtor's total current assets including its receivables, are in amounts

8  similar to the amounts listed for each of those categories on the Balance Sheet. Based upon the

9  Debtor's business history, the Debtor should collect the LEC accounts receivable on a rolling basis

10  over the next ninety (90) days.

11      As discussed in further detail below: (i) PaymentOne is adequately protected by a

12  replacement lien and possesses a significant equity cushion; (ii) POL is adequately protected by a

13  replacement lien (POL also possesses a significant equity cushion); and (iii) each of Network

14  Telephone, Personal Voice and Public Communication Services, to the extent that it even

15  possesses valid, perfected and enforceable prepetition liens in the Debtor's Cash Collateral, is

16  adequately protected by the grant of replacement liens of the same kind and type as it possessed

17  prepetition.

18  A.    PaymentOne Has Stipulated To The Use Of Cash Collateral and in Any Event is
        Adequately Protected by the Grant of a Replacement Lien
19

20      PaymentOne has stipulated to the Debtor's use of Cash Collateral. A copy of the

21  Stipulation is attached as Exhibit E. PaymentOne asserts a claim against the Debtor in the

22  approximate sum of $15.4 million. PaymentOne purports to hold valid, perfected and enforceable

23  security interests in various assets of the Debtor pursuant to a security agreement between

24  PaymentOne and the Debtor. PaymentOne has a filed a UCC-1 financing statement which states

25  that it covers accounts and other Cash Collateral.[10]

26      In summary, the PaymentOne Stipulation provides that PaymentOne shall be provided a

27  ───────────────
   [10] Relevant documents regarding the security interests alleged by the Alleged Cash Collateral
28  Secured Creditors are attached as exhibits to the Dawson Declaration.

1  replacement lien, to the extent of cash collateral used, on all post-petition property of the same

2  type and character as the property to which PaymentOne's pre-petition lien extended.[11]

3  PaymentOne's replacement liens on the post-petition property shall have the same priority vis-a-

4  vis other liens and interests as PaymentOne's pre-petition liens and security interests have vis-a-vis

5  such other liens and interests.

6       The replacement liens granted to PaymentOne pursuant to the PaymentOne Stipulation are

7  intended to preserve PaymentOne's position vis-a-vis the Debtor and other creditors of the estate

8  so that PaymentOne's position vis-a-vis the Debtor and such other creditors is neither diminished

9  nor enhanced by the Debtor's use of Cash Collateral and PaymentOne's receipt of replacement

10 liens. PaymentOne's replacement liens as provided in the PaymentOne Stipulation shall be

11 automatically perfected pursuant to the Court's Order approving the PaymentOne Stipulation and

12 PaymentOne shall not be required to take any further action to perfect such liens.

13      Even aside from the PaymentOne Stipulation, the Debtor should be permitted to use any

14 Cash Collateral with PaymentOne has a valid interest therein. PaymentOne is clearly adequately

15 protected as it holds a $15.4 million claim against approximately $24 million of accounts

16 receivable and cash. PaymentOne shall be provided a replacement lien, to the extent of cash

17 collateral used, on all post-petition property of the same type and character as the property to

18 which PaymentOne's pre-petition lien extended. The Proposed Order paragraphs 4-7 describes the

19 adequate protection requested to be afforded to PaymentOne.

20      Upon approval of the Motion (even if the PaymentOne Stipulation is not approved),

21 PaymentOne's replacement liens on the post-petition property shall have the same priority vis-a-

22 vis other liens and interests as PaymentOne's pre-petition liens and security interests have vis-a-vis

23 such other liens and interests. The replacement liens granted to PaymentOne are intended to

24 preserve PaymentOne's position vis-a-vis the Debtor and other creditors of the estate so that

25 PaymentOne's position vis-a-vis the Debtor and such other creditors is neither diminished nor

26

27 [11] See Section V of this Motion for additional discussion regarding important terms of the
Stipulation.

28

-13-

1    enhanced by the Debtor's use of Cash Collateral and PaymentOne's receipt of replacement liens.

2    PaymentOne's replacement liens shall be automatically perfected pursuant to the Court's Order and

3    PaymentOne shall not be required to take any further action to perfect such liens.  The Proposed

4    Order, paragraph 4, describes this (arguably) modification of nonbankruptcy law relating to the

5    perfection of a lien on property of the bankruptcy estate.

6        The replacement liens granted to PaymentOne are subordinated to any expenses of this

7    bankruptcy case including without limitation fees and expenses of professionals retained by the

8    Debtor and any official committee appointed in this bankruptcy case as well as those of any trustee

9    subsequently appointed in the bankruptcy case and such trustee's professionals.  Paragraph 6 of the

10   proposed order granting the motion attached hereto as Exhibit D (the "Proposed Order") contains

11   provisions regarding professionals' fees and expenses.

12       Notwithstanding anything to the contrary set forth in this Motion, the Debtor does not

13   concede that PaymentOne has any valid, perfected or enforceable prepetition liens or security

14   interests in the Cash Collateral or any of the Debtor's other assets, and the Debtor and

15   PaymentOne reserve all rights and defenses with respect thereto.  The replacement liens granted to

16   PaymentOne are effective only to the extent that PaymentOne's prepetition liens in the Cash

17   Collateral are valid, perfected and enforceable.

18       As previously mentioned, PaymentOne is a majority-owned subsidiary of the Debtor, and

19   thus is an "insider" of the Debtor under Bankruptcy Code section 101(31).  The Debtor believes

20   that it may have certain objections to the security interest alleged by PaymentOne, including the

21   following.  In January 2005 PaymentOne filed its UCC-1 financing statement with the California

22   Secretary of State naming "Integretel, Incorporated" as the debtor thereunder.  On February 7,

23   2005, the Debtor changed its name from "Integretel, Incorporated" to "The Billing Resource" with

24   the California Secretary of State.  Under UCC Section 9507(c) when a debtor changes its name

25   such that the financing statement of a secured creditor becomes "seriously misleading," the

26   financing statement ceases to be effective to perfect a security interest in collateral acquired by the

27   debtor more than four months after the change (here June 7, 2005), unless an amendment to the

28   financing statement which renders it not seriously misleading is filed within four months after the

-14-

1    change.  Thus, a debtor in possession may avoid the security interests in the collateral under an

2    ineffective financing statement, resulting in unsecured creditor status.  PaymentOne did not file a

3    financing statement with the California Secretary of State adding The Billing Resource as a debtor

4    until October 18, 2006, within one year of the Debtor's Petition Date.  The Debtor reserves all

5    rights in connection with this and any other objections to PaymentOne's alleged security interest.

6    B.      POL is Adequately Protected by the Grant of a Replacement Lien

7         POL, Inc. ("POL") asserts a claim against the Debtor in the approximate sum of $196,000.

8    Pursuant to an agreement and release between POL and certain related parties,[12] on the one hand,

9    and the Debtor on the other hand, POL claims to hold valid, perfected and enforceable security

10   interests in various assets of the Debtor.  POL has a filed a UCC-1 financing statement and a

11   security agreement which states that POL possesses a security interest in accounts and other Cash

12   Collateral of the Debtor.

13        The Debtor has supplied certain financial information in support of its Motion, including

14   the Balance Sheet attached to the Dawson Declaration.  The Debtor has accounts receivable and

15   cash in excess of approximately $24 million.  The only two entities that have a security interest in

16   the accounts of the Debtor are POL and arguably PaymentOne.  Together their claims amount to

17   approximately $15.6 million.  As long as operations continue post petition these receivables

18   should be maintained at the same level.  No post petition financing is sought, and the only parties

19   with a claim on these accounts are Payment One and POL.  Hence, there is a substantial equity

20   cushion that both of these creditors have in the accounts, and that equity will be maintained as

21   they are being granted a replacement lien in the receivables that are generated post petition.  The

22   Court should order that POL is adequately protected by the granting of a replacement lien, similar

23   to the replacement lien being granted to PaymentOne, and allow the use of Cash Collateral.  The

24   Proposed Order describes the adequate protection requested to be afforded to POL (paragraphs 9-

25

26   [12] Those POL-related parties are listed on Exhibit B to this Emergency Motion.  To the extent
     those related parties assert an interest in the Cash Collateral of the Debtor, the Debtor in this
27   motion moves for relief to use such Cash Collateral consistent with the relief being sought against
     POL.
28

-15-

1   12), the possible modification of nonbankruptcy law relating to the perfection of a lien on property

2   of the bankruptcy estate (paragraph 8) and the provisions regarding professionals' fees and

3   expenses (paragraph 11).

4       Notwithstanding anything to the contrary set forth in this Motion, the Debtor does not

5   concede that POL has any valid, perfected or enforceable prepetition liens or security interests in

6   the Cash Collateral or any of the Debtor's other assets, and the Debtor reserves all rights and

7   defenses with respect thereto. The replacement liens that the Debtor requests that the Court grant

8   to POL pursuant to this Motion are effective only to the extent that POL's prepetition liens in the

9   Cash Collateral are valid, perfected and enforceable.

10   C.   <u>Network Telephone Does Not Possess a Valid, Perfected and Enforceable Interest in the Debtor's Cash Collateral, But to the Extent It Does, It Is Adequately Protected by the Grant of a Replacement Lien</u>

11

12       Network Telephone asserts a claim against the Debtor in the approximate sum of $1.3

13   million. Network Telephone purports to hold valid, perfected and enforceable security interests in

14   various items pursuant to a master services agreement between Network Telephone and the

15   Debtor. Network Telephone has a filed a UCC-1 financing statement which states that it covers

16   the following collateral:

17        Security interest in any Net Proceeds and IGT Reserve that may become due to

18        Secured Party under the Master Services Agreement and related documentation entered into between Integretel, Incorporated and Network Telephone Services,

19        Inc. dated as of August 1, 2004.

20       Network Telephone does not possess any security interests in the Debtor's Cash Collateral

21   — since Network Telephone's alleged security interest is <u>not</u> in any assets of the Debtor, but instead

22   purports simply to be in amounts to which Network Telephone may be entitled under its contract

23   with the Debtor. Network Telephone's contract with the Debtor provides in relevant part that:

24        6. Settlement of Amounts Due. [Network Telephone] shall be entitled to all

25        collected amounts, up to an including the gross value of the Billing Transactions remitted to the Telcos, less any amounts due and owing to IGT hereunder

26        including, without limitation, Unbillables, Adjustments, Telco Holdback, excess Uncollectables (pursuant any True-up), Fees, Telco Fees and IGT Reserves (such

27        difference being the "Net Proceeds").

28

W02-WEST:FKA\400423179.1                        EMERGENCY CASH COLLATERAL MOTION

RER-2    0020

1    Because Network Telephone has purported to take a security interest in the amounts which may be

2    owing to Network Telephone under its contract with the Debtor, i.e., the "Net Proceeds," rather

3    than any of the Debtor's assets such as the Debtor's deposit accounts or accounts, Network

4    Telephone does not possess a security interest in the Debtor's Cash Collateral.  Similarly, as set

5    forth above the Debtor maintains no account containing reserves segregated by client, and as such

6    Network Telephone does not possess a security interest in the Debtor's Cash Collateral based upon

7    on an alleged security interest in any IGT Reserve (which is merely a bookkeeping entry).  The

8    fact that Network Telephone's contract with the Debtor provides that the Billing Contracts with

9    Telcos are structured as a purchase of accounts receivable and that Network Telephone "transfers

10   to [the Debtor] any rights in the Billing Transactions necessary for [the Debtor] to fulfill its

11   obligations [under the contract] in compliance with the Billing Contracts with Telcos" only further

12   supports Network Telephone's lack of any security interest in the Debtor's Cash Collateral.

13         Notwithstanding Network Telephone's obvious lack of a security interest in the Debtor's

14   Cash Collateral, that issue does not need to be finally resolved now especially in light of the

15   Debtor's urgent need to use Cash Collateral.  Instead the Debtor proposes to provide Network

16   Telephone a postpetition lien on the same items in which Network Telephone purported to hold a

17   prepetition lien.    Accordingly, the Debtor requests that Network Telephone be provided

18   replacement liens, to the extent of cash collateral used in which Network Telephone has an

19   interest, on all post-petition property of the same type and character as the property to which

20   Network Telephone's pre-petition liens extended.  As adequate protection of Network Telephone's

21   interests in Cash Collateral and the Debtor's use of the same, the Debtor requests that the Court

22   approve its grant to Network Telephone, to the extent that Network Telephone's prepetition liens

23   are valid, perfected and enforceable, replacement liens in all categories of assets of the Debtor's

24   estate in which Network Telephone holds valid, perfected and enforceable prepetition liens of the

25   same kind and type, subject only to valid, existing prepetition liens, including both existing and

26   after-acquired property, to the fullest extent necessary to realize all Cash Collateral actually

27   expended by the Debtor pursuant to this Motion.  Network Telephone's replacement liens as

28   provided in this Motion shall be automatically perfected pursuant to the Court's Order approving

-17-

1  this Motion and Network Telephone shall not be required to take any further action to perfect such

2  liens.

3      Network Telephone's replacement liens on the post-petition property shall have the same

4  priority vis-a-vis other liens and interests as Network Telephone's pre-petition liens and security

5  interests have vis-a-vis such other liens and interests. The replacement liens granted to Network

6  Telephone pursuant to this Motion are intended to preserve Network Telephone's respective

7  position vis-a-vis the Debtor and other creditors of the estate so that Network Telephone's position

8  vis-a-vis the Debtor and such other creditors is neither diminished nor enhanced by Debtor's use of

9  Cash Collateral and Network Telephone's receipt of replacement liens. The replacement liens that

10 the Debtor requests that the Court grant to Network Telepone pursuant to this Motion are effective

11 only to the extent that Network Telephone's prepetition liens in the Cash Collateral are valid,

12 perfected and enforceable.

13      The replacement liens granted to Network Telephone shall be subordinated to any

14 expenses of this bankruptcy case including without limitation fees and expenses of professionals

15 retained by the Debtor and any official committee appointed in this bankruptcy case as well as

16 those of any trustee subsequently appointed in the bankruptcy case and such trustee's

17 professionals. The Proposed Order describes the adequate protection requested to be afforded to

18 Network Telephone (paragraphs 14-17), the possible modification of nonbankruptcy law relating

19 to the perfection of a lien on property of the bankruptcy estate (paragraph 14) and the provisions

20 regarding professionals' fees and expenses (paragraph 16).

21 D.     Personal Voice Does Not Possess a Valid, Perfected and Enforceable Interest in the
        Debtor's Cash Collateral, But to the Extent It Does, It Is Adequately Protected by the Grant
22      of a Replacement Lien

23      Personal Voice asserts a claim against the Debtor in the approximate sum of $1.9 million.

24 Personal Voice purports to hold valid, perfected and enforceable security interests in various items

25 pursuant to a billing services agreement between Personal Voice and the Debtor. Personal Voice

26 has a filed a UCC-1 financing statement which states that it covers the following collateral:

27      Integretel Incorporated ("IGT") hereby grants Personal Voice ("PV") a first
        position security interest in all collected amounts due and owing to PV pursuant

28

-18-

1   to that certain billing services agreement dated April 19, 2000 and amended
2   October 01, 2001, and any amendments thereto, ("Agreement") by and between
    IGT and PV, arising from Billing Transactions, as such term is defined under the
3   Agreement, generated and submitted by PV to IGT, after consideration of all
    amounts which are or will become due to IGT or may be retained or held by IGT
4   pursuant to the Agreement.

5       The Debtor contends that Personal Voice does not possess any security interests in the

6   Debtor's Cash Collateral for the same reasons that Network Telephone did not possess any such

7   security – i.e., Personal Voice's alleged security interest is <u>not</u> in any assets of the Debtor, but

8   instead purports simply to be in amounts to which Personal Voice may be entitled under its

9   contract with the Debtor. Personal Voice's contract with the Debtor provides in relevant part that:

10      9. Remittal Of Customer Funds. Customer shall be entitled to the gross value of
        its Billing Transactions less any applicable deductions set forth in Sections 6 and
11      8 hereunder (such difference being the "Net Proceeds").

12  Because Personal Voice has purported to take a security interest in the amounts which may be

13  owing to it under its contract with the Debtor, rather than any of the Debtor's assets such as the

14  Debtor's deposit accounts or accounts, Personal Voice does not possess a security interest in the

15  Debtor's Cash Collateral. Similarly, as set forth above the Debtor maintains no account containing

16  reserves segregated by client, and as such Personal Voice does not possess a security interest in

17  the Debtor's Cash Collateral based upon on an alleged security interest in any reserves under the

18  parties' contract. Furthermore, the fact that the Debtor's Billing Contracts with Telcos are

19  structured as a purchase of accounts receivable is but further support for Personal Voice's lack of

20  any security interest in the Debtor's Cash Collateral.

21      Like the treatment proposed to be afforded to Network Telephone pursuant to this Motion,

22  the Debtor will give Personal Voice a replacement lien in the same assets that it had an interest in

23  prepetition. As in the case of Network Telephone, the Debtor contends that the security was

24  granted in assets that do not belong to the Debtor and is invalid; but, resolution of that objection

25  need not take place now.

26      The replacement liens granted to Personal Voice shall be subordinated to any expenses of

27  this bankruptcy case including without limitation fees and expenses of professionals retained by

28

-19-

1   the Debtor and any official committee appointed in this bankruptcy case as well as those of any

2   trustee subsequently appointed in the bankruptcy case and such trustee's professionals.    The

3   Proposed Order describes the adequate protection requested to be afforded to Personal Voice

4   (paragraphs 19-22), the possible modification of nonbankruptcy law relating to the perfection of a

5   lien on property of the bankruptcy estate (paragraph 19) and the provisions regarding

6   professionals' fees and expenses (paragraph 21).

7   E.    Public Communication Does Not Possess a Valid, Perfected and Enforceable Interest in the
          Debtor's Cash Collateral, But to the Extent It Does, It Is Adequately Protected by the Grant
8         of a Replacement Lien

9          Public Communication asserts a claim against the Debtor in the approximate sum of

10  $500,000.   Public Communication purports to hold valid, perfected and enforceable security

11  interests in various items pursuant to a master services agreement between Public Communication

12  and PaymentOne (which was then known as eBillit and sometimes referred to in the parties'

13  master services agreement as "EBI").   The Debtor and PaymentOne subsequently entered into an

14  assignment agreement whereby PaymentOne assigned all of its rights and obligations under that

15  master services agreement to the Debtor.   A UCC-1 financing statement has been filed which lists

16  PaymentOne as the secured party and which states that it covers the following collateral:

17          Pursuant to that certain Support Services Agreement dated July 1, 2000, as may
18          be amended, ("Agreement") by and between Integretel, Incorporated ("IGT") and
            PaymentOne Corporation ("P1"), IGT does hereby grant to P1's client, Public
19          Communication Services, Inc. ("PCS"), a first priority security interest in any and
            all Net Proceeds, as such term is defined under the Agreement, that may be in
20          IGT's possession from time to time, arising from or relating to the processing of
            Accounts of PCS as such Accounts are designated by P1 under the Agreement.
21

22          The UCC-1 financing statement does not even list Public Communication as the secured

23  party.   Thus, it is ineffective as to Public Communication.

24          In addition, the Debtor contends that Public Communication does not possess any security

25  interests in the Debtor's Cash Collateral for the same reasons that neither Network Telephone nor

26  Personal Voice possessed any such security – i.e., Public Communication's alleged security

27  interest is not in any assets of the Debtor, but instead purports simply to be in amounts to which

28  Public Communication may be entitled under its contract with the Debtor.   The UCC-1 financing

-20-

1   statement asserts that the Debtor granted Public Communication a security interest in the "Net

2   Proceeds" under the Support Services Agreement between the Debtor and PaymentOne arising

3   from or related to the processing of Public Communication account, however, the Support

4   Services Agreement: (1) does not grant any security interests; (2) provides for no third-party

5   beneficiaries and thus does not provide any rights to Public Communication; and (3) the definition

6   of Net Proceeds under that agreement provides yet again that Net Proceeds are simply amounts

7   due to PaymentOne under the Support Services Agreement, not assets of the Debtor.

8       2(d). . . . In the event that EBI, at its option, has elected to utilize a billing
        page under Integretel's Billing Contracts, then Integretel shall remit to EBI
9       all funds received from Telcos with respect to Data Records submitted to
        Telcos under Integretel's Billing Contracts, after adjusting for applicable
10      Adjustments, Unbillables and True-up, less any amounts necessary to
        cover Reserves and unpaid Service Fees (such net amount being the "Net
11      Proceeds").

12

13      Moreover, the Support Services Agreement, cited in the UCC-1 financing statement

14  purportedly giving Public Communication certain rights, does not provide that Integretel grants

15  Public Communication a security interest in anything. In addition, the security interest granted to

16  Public Communication in its contract with EBI (who since assigned its rights and obligations

17  thereunder to the Debtor) does not mention any security interest in any accounts being granted to

18  Public Communication and is narrower than the description of collateral listed in the UCC-1

19  financing statement purportedly in Public Communication's favor. The security interest granted to

20  Public Communication in its contract with EBI provided in relevant part that:

21      7. Settlement of Amounts Due. [Public Communication] shall be entitled to all
        collected amounts, up to an including the gross value of the Billing Transactions
22      remitted to the Telcos, less any amounts due and owing to EBI hereunder
        including, without limitation, Unbillables, Adjustments, Telco Holdback, excess
23      Uncollectables (pursuant any True-up), Fees, Telco Fees and EBI Reserves (such
        difference being the "Net Proceeds"). . . . IN RECOGNITION OF CLIENT'S
24      RIGHTS TO ANY NET PROCEEDS HEREUNDER, EBI HEREBY GRANTS
        TO CLIENT A FIRST PRIORITY SECURITY INTEREST IN ANY AND ALL
25      NET PROCEEDS, THAT MAY BE IN EBI'S POSSESSION FROM TIME TO
        TIME AND EBI SHALL FILE A UCC-1 AND TAKE ALL OTHER
26      REASONABLE STEPS TO ACKNOWLEDGE AND PERFECT CLIENT'S
        SECURITY INTEREST IN SUCH PROCEEDS.
27

28

1    Notwithstanding Public Communication's obvious lack of a security interest in the Debtor's

2    Cash Collateral, that issue does not need to be finally resolved now especially in light of the

3    Debtor's urgent need to use Cash Collateral.  Instead, like the treatment the Debtor proposes to

4    provide to Network Telephone and Personal Voice, the Debtor proposes to provide Public

5    Communication a postpetition lien on the same items in which Public Communication purported

6    to hold a prepetition lien.  Accordingly, the Debtor requests that Public Communication be

7    provided replacement liens, to the extent of cash collateral used in which Public Communications

8    has an interest, on all post-petition property of the same type and character as the property to

9    which Public Communication's pre-petition liens extended.  As adequate protection of each of

10   Public Communication's interests in Cash Collateral and the Debtor's use of the same, the Debtor

11   requests that the Court approve its grant to Public Communication, to the extent that Public

12   Communication's prepetition liens are valid, perfected and enforceable, replacement liens in all

13   categories of assets of the Debtor's estate in which Public Communication holds valid, perfected

14   and enforceable prepetition liens of the same kind and type, subject only to valid, existing

15   prepetition liens, including both existing and after-acquired property, to the fullest extent

16   necessary to realize all Cash Collateral in which Public Communications has an interest actually

17   expended by the Debtor pursuant to this Motion.  Public Communication's replacement liens as

18   provided in this Motion shall be automatically perfected pursuant to the Court's Order approving

19   this Motion and Public Communication shall not be required to take any further action to perfect

20   such liens.  The replacement liens granted to Public Communication pursuant to this Motion are

21   subordinated to any expenses of this bankruptcy case including without limitation fees and

22   expenses of professionals retained by the Debtor and any official committee appointed in this

23   bankruptcy case as well as those of any trustee subsequently appointed in the bankruptcy case and

24   such trustee's professionals. The Proposed Order describes the adequate protection requested to be

25   afforded to Public Communication (paragraphs 24-27), the possible modification of

26   nonbankruptcy law relating to the perfection of a lien on property of the bankruptcy estate

27   (paragraph 24) and the provisions regarding professionals' fees and expenses (paragraph 26).

28

-22-

**IV.**

**NOTICE**

A copy of the Motion is being served by facsimile, email or overnight delivery as soon as practicable on (a) each of the Alleged Cash Collateral Secured Creditors, (b) the Debtor's creditors holding the thirty largest unsecured claims, (c) the Office of the United States Trustee, and (d) other significant parties in interest, including the Receiver and the FTC. As soon as the Court sets a hearing on the Motion, the Debtor will send out a notice to the foregoing parties.

**V.**

**COMPLIANCE WITH GUIDELINES**

This Court's guidelines for financing motions (the "Guidelines") require that certain provisions contained in the Motion and related documents be highlighted with respect to cash collateral stipulations. The table below is provided in order to comply with the Guidelines.

| Guideline and Provision of Final Order | Explanation | Page of Stipulation |
|---|---|---|
| Guideline 2 – Provision of Adequate Protection. The Stipulation provides PaymentOne with a super-priority administrative expense pursuant to Bankruptcy Code Section 507(b). | The Debtor believes this proposed term is reasonable under the circumstances, and is limited in this context. | 4 |
| Guideline 6 – Lien Perfection. The liens granted by the Court are deemed valid, enforceable and perfected as of the date of the entry of the Order without the need for any further notice, filing or other act. | The Debtor believes it would be cumbersome and wasteful to require the alleged secured parties to perfect their interests under applicable non-bankruptcy law under the circumstances. | 4 |
| Guideline 9 – Limitation of Right Under § 506(c). Professionals retained by the Debtor and any official committee appointed in this bankruptcy case, as well as those of any trustee subsequently appointed in the bankruptcy case and such trustee's professionals, are not entitled, directly or indirectly, to charge the Collateral or the property covered by the replacement liens, whether by operation of Sections 105 or 506(c) of the Bankruptcy Code. | This term is part of the interim relief sought and is narrow in its scope. | 5 |

## VI.

## CONCLUSION

    The Debtor respectfully requests that the Court enter an order granting the relief requested in this Motion on an interim and final basis and grant such other and further relief as is just and proper. A copy of the proposed order, generally in the form the Debtor's currently intend to present to the Court requesting interim approval of the Motion (i.e., the "Proposed Order"), is attached hereto as Exhibit D.[13]


Dated: September 16, 2007

                    Respectfully submitted,

                    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


          By              /s/ Jeffrey K. Rehfeld
                       JEFFREY K. REHFELD
            Proposed Attorneys for Debtor The Billing Resource,
                      dba Integretel

---

[13] The Debtor reserves the right to submit a different form of Order approving this Motion.

W02-WEST:FKA\400433179.1

-24-

EMERGENCY CASH COLLATERAL MOTION

RER-2    0028

# EXHIBIT A

1

## **EXHIBIT A**

2

Entities Alleging A Security Interest in the Debtor's Cash Collateral

3

PaymentOne Corporation

4

      PaymentOne Corporation
      Attn:  Officer, Managing or General Agent

5

      5883 Rue Ferrari
      San Jose, CA  95138

6

      Email:  support@PaymentOne.com

7

8

         With a copy to:

9

      O'Melveny & Myers LLP
      Attn:  Steve Warren, Esq.

10

      400 South Hope Street
      Los Angeles, CA  90071-2899

11

      Email:  swarren@omm.com
      Fax:  (213) 430-6407

12

13

POL, Inc.[15]

14

      POL, Inc.

15

      c/o Joel R. Dichter, Esq.
      Klein, Zelman, Rothermel & Dichter, Inc.

16

      485 Madison Avenue, 15th Floor
      New York, NY  10022

17

      Email:  kzrd@kzrd.com
      Fax:  (212) 753-8101

18

19

      POL, Inc.
      c/o Corporation Service Company

20

      (Registered Agent for Service of Process)
      2711 Centerville Road, Suite 400

21

      Wilmington, DE  19808

22

      POL, Inc.
      c/o Joel R. Dichter, Esq.

23

      Dichter Law Group, LLC
      10 Rockefeller Plaza, Suite 816

24

      New York, New York 10020
      Email:  info@dichterlaw.com

25

      Fax:  (212) 757-5002

26

27

---

[15] See Exhibit B for entities related to POL who may also be asserting an interest in the Debtor's Cash Collateral.

28

## **EXHIBIT A**

1    Network Telephone Services, Inc.

2        Network Telephone Services, Inc.
         Attn: Gary Passon
3        (Registered Agent for Service of Process)
         21135 Erwin Street
4        Woodland Hills, CA  91367
         Facsimile: (818) 992-8415
5

6        Network Telephone Services, Inc.
         Attn: Officer, Managing Agent or General Agent
7        21135 Erwin Street
         Woodland Hills, CA  91367
8        Facsimile: (818) 992-8415

9

10   Personal Voice, Inc.

11       Personal Voice, Inc.
         Attn: David Giorgione
12       16807 A U.S. Highway 19 North, Suite A
         Clearwater, FL  33764
13       Facsimile: (845) 620-0305

14
         Personal Voice, Inc.
15       Attn: Thomas C. Little
         (Registered Agent for Service of Process)
16       2123 NE Coachman Rd., Suite A
         Clearwater, FL  33765
17

18   Public Communication Services, Inc.

19
         Public Communication Services, Inc.
20       Attn: Paul Jennings, CEO
         11859 Wilshire Boulevard, Suite 600
21       Los Angeles, CA  90025
         Facsimile: (310) 473-4714
22

23       Public Communication Services, Inc.
         Attn: Daniel L. Barbakow
24       (Registered Agent for Service of Process)
         301 North Canyon Drive, Suite 303
25       Beverly Hills, CA  90210
         (310) 231-3000
26

27

28

W02-WEST:FKA\400433179.1

Case: 07-52890    Doc #: 8    Filed: 09/17/2007    Page 3 of 20

RER-2    0031

# EXHIBIT B

1

2

**EXHIBIT B**

POL, Inc.-Related Entities

3

4   Access Programs, Inc.
    Action Date Connections, Inc.

5   Benchmark Communications, Inc.
    Blazen Communications, Inc.

6   Call Transfer Services, Inc.
    Cassiopeia Group, Inc.

7   Clear Command Telecommunications, Inc.
    Country Club Network Services, Inc.

8   Date Finders Singles, Inc.

9   Enhanced Phone Services, Inc.
    Inovate Telecommunications, Inc.

10  Invesco Telecommunications, Inc.
    Listen Com. Inc.

11  LJ Internet, Inc.

12  Love Dating Network, Inc.
    Lunar Tel, Inc.

13  Messenger Com, Inc.
    Omnipresent Digital, Inc.

14  Palisade Telcom, Inc.
    POL, Inc.

15  Psychic, Inc.

16  Rebound Communications, Inc.
    Singles Date Match, Inc.

17  Special Comtel, Ltd.
    Spring Telecom, Inc.

18  Vesstone Telecommunications, Inc.
    Voicemail, Inc.

19  Voice Services, Ltd.

20  Vortex Communications & Telephone, Inc.
    Wonder Network, Inc.

21      c/o Joel R. Dichter, Esq.

22      Klein, Zelman, Rothermel & Dichter, Inc.
        485 Madison Avenue, 15th Floor

23      New York, NY 10022
        Email: kzrd@kzrd.com

24      Fax: (212) 753-8101

25      c/o Joel R. Dichter, Esq.

26      Dichter Law Group, LLC
        10 Rockefeller Plaza, Suite 816

27      New York, New York 10020
        Email: info@dichterlaw.com

28      Fax: (212) 757-5002

**EXHIBIT B**

# EXHIBIT C

The Billing Resource dba Integretel
Weekly Operating Cash Budget
For the Three Week Period Ending October 5, 2007

| | | 1 | | 2 | | 3 | | | |
|---|---|---|---|---|---|---|---|---|---|
| Week Ending | | 9/21/07 | | 9/28/07 | | 10/5/07 | | | Total |
| Operating Costs and Expenses | | | | | | | | | |
| 1  Personnel | $ | 10,000 | $ | 130,000 | $ | 40,000 | | $ | 180,000 |
| 2  Telco billing & collection costs | | 0 | | 0 | | 180,000 | | | 180,000 |
| 3  Other direct costs | | 5,000 | | 5,000 | | 5,000 | | | 15,000 |
| 4  Selling, general & administrative expenses | | 80,000 | | 80,000 | | 80,000 | | | 240,000 |
| 5  Total operating costs and expenses | | 95,000 | | 215,000 | | 305,000 | | | 615,000 |
| Bankruptcy Costs (1) | | | | | | | | | |
| 6 | | 0 | | 0 | | 0 | | | 0 |
| 7 | | 0 | | 0 | | 0 | | | 0 |
| 8 | | 0 | | 0 | | 0 | | | 0 |
| 9  Total bankruptcy costs | | 0 | | 0 | | 0 | | | 0 |
| 10  TOTAL EXPENSES | $ | 95,000 | $ | 215,000 | $ | 305,000 | | $ | 615,000 |
| Beginning Available Cash | $ | 1,945,598 | $ | 1,850,598 | $ | 1,635,598 | | | 1,945,598 |
| Expenses | | (95,000) | | (215,000) | | (305,000) | | | (615,000) |
| Ending cash | $ | 1,850,598 | $ | 1,635,598 | $ | 1,330,598 | | $ | 1,330,598 |

NOTE:
(1) Assumes counsel paid through retainers previously established.

## EXHIBIT C

RER-2    0035

# EXHIBIT D

1   SHEPPARD, MULLIN, RICHTER &
    HAMPTON LLP
2     A Limited Liability Partnership
      Including Professional Corporations
3   MICHAEL H. AHRENS,
    Cal. Bar No. 44766
4   JEFFREY K. REHFELD,
    Cal. Bar No. 188128
5   ORI KATZ
    Cal. Bar No. 209561
6   Four Embarcadero Center, 17th Floor
    San Francisco, CA 94111
7   Telephone:    415-434-9100
    Facsimile:    415-434-3947
8   Email: mahrens@sheppardmullin.com
          jrehfeld@sheppardmullin.com
9         okatz@sheppardmullin.com

10

11  Proposed Attorneys for Debtor and Debtor-in-Possession
12  The Billing Resource, dba Integretel

13            UNITED STATES BANKRUPTCY COURT

14            NORTHERN DISTRICT OF CALIFORNIA

15                   SAN JOSE DIVISION

16

17  In re:                          )   Case No. 07-52890
                                     )
18  THE BILLING RESOURCE, dba        )   Chapter 11
19  INTEGRETEL, a California corporation )
                                     )
                                     )   **ORDER APPROVING INTERIM USE OF**
20            Debtor.               )   **CASH COLLATERAL AND GRANTING**
                                     )   **REPLACEMENT LIENS**
21                                   )
                                     )
22                                   )
                                     )   Date:      [TBD]
23                                   )   Time:      [TBD]
                                     )   Place:     United States Bankruptcy Court
24                                   )              280 South First Street
                                     )              San Jose, California
25                                   )   Judge:     [TBD]
                                     )   Courtroom: [TBD]
26                                   )
27

28

                          **EXHIBIT D**

    W02-WEST:FJR\400316998.5                    ORDER APPROVING INTERIM USE OF
    _____                         CASH COLLATERAL AND GRANTING
                                                 REPLACEMENT LIENS

1    The Billing Resource, dba Integretel, a California corporation (the "Debtor") filed

2  its "Emergency Motion For Use Of Cash Collateral And Granting Replacement Liens" (the

3  "Motion") in the above-referenced bankruptcy case (the "Bankruptcy Case").  Capitalized terms

4  not otherwise defined herein shall have the meanings ascribed to them in the Motion.  A hearing

5  (the "Interim Hearing") with respect to the Motion duly came on for hearing before the

6  undersigned United States Bankruptcy Judge at the above-noted place and time.  Appearances

7  were made as noted in the record at the Interim Hearing.

8    Pursuant to the Motion and Bankruptcy Code Sections 105, 361 and 363, the

9  Debtor seeks an order from the Court: (1) authorizing the Debtor to use certain assets of the

10  Debtor which constitute "cash collateral" as defined in Bankruptcy Code section 363(a) (such

11  assets of the Debtor shall be referred to herein as the "Cash Collateral"); (2) granting PaymentOne

12  Corporation ("PaymentOne"), POL, Inc. ("POL")[1], Network Telephone Services, Inc. ("Network

13  Telephone"), Personal Voice, Inc. ("Personal Voice") and Public Communication Services, Inc.

14  ("Public Communication") (collectively, the "Alleged Cash Collateral Secured Creditors"), as

15  adequate protection for the use by the Debtor of Cash Collateral in which the Alleged Cash

16  Collateral Secured Creditors have an alleged interest, a replacement lien upon certain of the

17  Debtor's personal property as set forth in the Motion; and (3) the setting of a final hearing on the

18  Motion (the "Final Hearing") pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure

19  (the "Bankruptcy Rules").

20    The Court, having reviewed and considered the Motion, the Notice of the Motion,

21

22

23  [1] The following entities are collectively referred to in this Order as "POL": Access Programs, Inc.;
Action Date Connections, Inc.; Benchmark Communications, Inc.; Blazen Communications, Inc.;

24  Call Transfer Services, Inc.; Cassiopeia Group, Inc.; Clear Command Telecommunications, Inc.;
Country Club Network Services, Inc.; Date Finders Singles, Inc.; Enhanced Phone Services, Inc.;

25  Inovate Telecommunications, Inc.; Invesco Telecommunications, Inc.; Listen Com. Inc.; LJ
Internet, Inc.; Love Dating Network, Inc.;Lunar Tel, Inc.; Messenger Com, Inc.; Omnipresent

26  Digital, Inc.; Palisade Telcom, Inc.; POL, Inc.; Psychic, Inc.; Rebound Communications, Inc.;

27  Singles Date Match, Inc.; Special Comtel, Ltd.; Spring Telecom, Inc.; Vesstone
Telecommunications, Inc.; Voicemail, Inc.; Voice Services, Ltd.; Vortex Communications &

28  Telephone, Inc.; Wonder Network, Inc.

W02-WEST:FJR\400316998.5                    -1-

the Introductory Statement filed in support of the Motion, the Declaration of Ken Dawson filed in support of the Motion (the "Dawson Declaration"), the Debtor's Stipulation with PaymentOne Corporation regarding the Debtor's use of Cash Collateral which was attached as an exhibit to the Motion, the oppositions to the Motion, if any, the reply in support of the Motion, if any, the other matters of record in this Bankruptcy Case, the arguments and representations of counsel at the Interim Hearing, having completed an interim hearing in accordance with Rule 4001 of the Bankruptcy Rules, and good cause appearing therefor,

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:**

1.      The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  No trustee or examiner has been appointed in this case, and the Debtor is authorized to operate its business as a debtor-in-possession.

2.      The Court has jurisdiction over these proceedings and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3.      Pursuant to §§ 102(1) and 363 of the Bankruptcy Code and Bankruptcy Rule 4001(d), the Debtor has provided such notice as was practicable and appropriate under the circumstances of the time, place and nature of the Interim Hearing and opportunity to object to the entry of this Order to among others:  (1) the Alleged Cash Collateral Secured Creditors; (2) each creditor on the List of 30 Largest Creditors filed pursuant to Bankruptcy Rule 1007(d); (3) the Office of the United States Trustee, and (4) other significant parties in interest, including the Receiver and the FTC (as those terms are defined in the Motion).  The foregoing notice is adequate and sufficient in light of the nature of the relief requested in the Motion.

4.      The Debtor must have the use of cash generated from the Debtor's prepetition assets which each of the Alleged Cash Collateral Secured Creditors claims to be its Cash Collateral in order to continue to operate and preserve the value of Debtor's estate.

5.      Unless the Debtor is permitted to use the Cash Collateral, the Debtor's ability to operate its business, pay expenses of this Bankruptcy Case, and to preserve and maintain

W02-WEST:FJR\400316998.5                    -2-

ORDER APPROVING INTERIM USE OF
CASH COLLATERAL AND GRANTING
REPLACEMENT LIENS

Case: 07-52890    Doc #: 8    Filed: 09/17/2007    Page 11 of 20

RER-2        0039

1    the property and assets of its estate and to reorganize will be immediately and irreparably

2    jeopardized, and the Debtor's use of the Cash Collateral is necessary to avoid immediate and

3    irreparable harm to the Debtor and the Debtor's bankruptcy estate.

4         6.    The level of adequate protection for the Alleged Cash Collateral Secured

5    Creditors proposed to be provided by the Debtor in the Motion and more particularly set forth

6    below, in return for the use of the Cash Collateral, is reasonable.

7         7.    Good cause has been shown for entry of this Order. Among other things,

8    entry of this Order will preserve each of the Alleged Cash Collateral Secured Creditor's position

9    vis-a-vis the Debtor and other creditors of the estate so that each of the respective Alleged Cash

10   Collateral Secured Creditor's position vis-a-vis the Debtor and such other creditors is neither

11   diminished nor enhanced by Debtor's use of Cash Collateral.

12        8.    To the extent that any of the foregoing findings constitute or include

13   conclusions of law, they shall be so deemed.

14        **ACCORDINGLY, IT IS HEREBY ORDERED AS FOLLOWS:**

15        1.    The Motion, including without limitation the PaymentOne Stipulation, is

16   approved on an interim basis. This Order is valid immediately and is fully effective upon its entry.

17        2.    Oppositions to the Motion, if any, are overruled.

18        3.    The Debtor may use Cash Collateral in which PaymentOne Corporation

19   ("PaymentOne") has an alleged interest in accordance with the Stipulation.

20        4.    PaymentOne is granted, pursuant to Bankruptcy Code sections 361(2) and

21   363(e), valid, perfected and enforceable replacement liens upon all post-petition property of the

22   Debtor of the same type and character of any pre-petition property as to which PaymentOne had

23   valid, perfected and enforceable security interests or liens, but only to the extent of Cash Collateral

24   used by the Debtor. The replacement liens granted to PaymentOne shall be automatically

25   perfected pursuant to this Order and PaymentOne shall not be required to take any further action to

26   perfect such liens.

27        5.    PaymentOne's replacement liens on the post-petition property shall have the

28

W02-WEST:FJR\400316998.5                        -3-

ORDER APPROVING INTERIM USE OF
CASH COLLATERAL AND GRANTING
REPLACEMENT LIENS
Case: 07-52890    Doc #: 8    Filed: 09/17/2007    Page 12 of 20

RER-2                0040

1   same priority vis-a-vis other liens and interests as PaymentOne's pre-petition liens and security

2   interests have vis-a-vis such other liens and interests. The replacement liens granted to

3   PaymentOne by this Order are intended to preserve PaymentOne's position vis-a-vis the Debtor

4   and other creditors of the estate so that PaymentOne's position vis-a-vis the Debtor and such other

5   creditors is neither diminished nor enhanced by Debtor's use of Cash Collateral and PaymentOne's

6   receipt of replacement liens.

7        6.    The replacement liens granted to PaymentOne shall be subordinated to any

8   expenses of this bankruptcy case including without limitation fees and expenses of professionals

9   retained by the Debtor and any official committee appointed in this bankruptcy case as well as

10   those of any trustee subsequently appointed in the bankruptcy case and such trustee's

11   professionals.

12        7.    Notwithstanding anything to the contrary set forth in this Order, this Order

13   does not determine whether PaymentOne has any valid, perfected or enforceable prepetition liens

14   or security interests in the Cash Collateral or any of the Debtor's other assets, and both the Debtor

15   and PaymentOne reserve all rights and defenses with respect thereto. The replacement liens

16   granted to PaymentOne pursuant to this Order are effective only to the extent that PaymentOne's

17   prepetition liens in the Cash Collateral are valid, perfected and enforceable.

18

19        8.    The Debtor may use Cash Collateral in which POL has an alleged interest.

20        9.    POL is granted, pursuant to Bankruptcy Code sections 361(2) and 363(e),

21   valid, perfected and enforceable replacement liens upon all post-petition property of the Debtor of

22   the same type and character of any pre-petition property as to which POL had valid, perfected and

23   enforceable security interests or liens, but only to the extent of Cash Collateral used by the Debtor.

24   The replacement liens granted to POL shall be automatically perfected pursuant to this Order and

25   POL shall not be required to take any further action to perfect such liens.

26        10.    POL's replacement liens on the post-petition property shall have the same

27   priority vis-a-vis other liens and interests as POL's pre-petition liens and security interests have

28   vis-a-vis such other liens and interests. The replacement liens granted to POL by this Order are

ORDER APPROVING INTERIM USE OF
CASH COLLATERAL AND GRANTING
REPLACEMENT LIENS

1   intended to preserve POL's position vis-a-vis the Debtor and other creditors of the estate so that

2   POL's position vis-a-vis the Debtor and such other creditors is neither diminished nor enhanced by

3   Debtor's use of Cash Collateral and POL's receipt of replacement liens.

4       11.    The replacement liens granted to POL shall be subordinated to any expenses

5   of this bankruptcy case including without limitation fees and expenses of professionals retained by

6   the Debtor and any official committee appointed in this bankruptcy case as well as those of any

7   trustee subsequently appointed in the bankruptcy case and such trustee's professionals.

8       12.    Notwithstanding anything to the contrary set forth in this Order, this Order

9   does not determine whether POL has any valid, perfected or enforceable prepetition liens or

10   security interests in the Cash Collateral or any of the Debtor's other assets, and both the Debtor

11   and POL reserve all rights and defenses with respect thereto.  The replacement liens granted to

12   POL pursuant to this Order are effective only to the extent that POL's prepetition liens in the Cash

13   Collateral are valid, perfected and enforceable.

14       13.    The Debtor may use Cash Collateral in which Network Telephone has an

15   alleged interest.

16       14.    Network   Telephone   is   granted,   pursuant   to   Bankruptcy   Code

17   sections 361(2) and 363(e), valid, perfected and enforceable replacement liens upon all post-

18   petition property of the Debtor of the same type and character of any pre-petition property as to

19   which Network Telephone had valid, perfected and enforceable security interests or liens, but only

20   to the extent of Cash Collateral used by the Debtor.  The replacement liens granted to Network

21   Telephone shall be automatically perfected pursuant to this Order and Network Telephone shall

22   not be required to take any further action to perfect such liens.

23       15.    Network Telephone's replacement liens on the post-petition property shall

24   have the same priority vis-a-vis other liens and interests as Network Telephone's pre-petition liens

25   and security interests have vis-a-vis such other liens and interests.  The replacement liens granted

26   to Network Telephone by this Order are intended to preserve Network Telephone's position vis-a-

27   vis the Debtor and other creditors of the estate so that Network Telephone's position vis-a-vis the

W02-WEST:FJR\400316998.5                    -5-

                                            ORDER APPROVING INTERIM USE OF
                                            CASH COLLATERAL AND GRANTING
                                            REPLACEMENT LIENS

1  Debtor and such other creditors is neither diminished nor enhanced by Debtor's use of Cash

2  Collateral and Network Telephone's receipt of replacement liens.

3          16.    The replacement liens granted to Network Telephone shall be subordinated

4  to any expenses of this bankruptcy case including without limitation fees and expenses of

5  professionals retained by the Debtor and any official committee appointed in this bankruptcy case

6  as well as those of any trustee subsequently appointed in the bankruptcy case and such trustee's

7  professionals.

8          17.    Notwithstanding anything to the contrary set forth in this Order, this Order

9  does not determine whether Network Telephone has any valid, perfected or enforceable

10 prepetition liens or security interests in the Cash Collateral or any of the Debtor's other assets, and

11 both the Debtor and Network Telephone reserve all rights and defenses with respect thereto.  The

12 replacement liens granted to Network Telephone pursuant to this Order are effective only to the

13 extent that Network Telephone's prepetition liens in the Cash Collateral are valid, perfected and

14 enforceable.

15         18.    The Debtor may use Cash Collateral in which Personal Voice has an alleged

16 interest.

17         19.    Personal Voice is granted, pursuant to Bankruptcy Code sections 361(2) and

18 363(e), valid, perfected and enforceable replacement liens upon all post-petition property of the

19 Debtor of the same type and character of any pre-petition property as to which Personal Voice had

20 valid, perfected and enforceable security interests or liens, but only to the extent of Cash Collateral

21 used by the Debtor.  The replacement liens granted to Personal Voice shall be automatically

22 perfected pursuant to this Order and Personal Voice shall not be required to take any further action

23 to perfect such liens.

24         20.    Personal Voice's replacement liens on the post-petition property shall have

25 the same priority vis-a-vis other liens and interests as Personal Voice's pre-petition liens and

26 security interests have vis-a-vis such other liens and interests.  The replacement liens granted to

27 POL by this Order are intended to preserve Personal Voice's position vis-a-vis the Debtor and

28

W02-WEST:FJR\400316998.5                          -6-

ORDER APPROVING INTERIM USE OF
CASH COLLATERAL AND GRANTING
REPLACEMENT LIENS

Case: 07-52890    Doc #: 8    Filed: 09/17/2007    Page 15 of 20

RER-2        0043