1   after a tremendous amount of litigation on the subject – that the $1,762,762.56 in reserves that the

2   Debtor is now trying to use as "cash collateral" are, in fact, property of the Federal Receivership

3   Estate, not property of the Debtor.

4         15.    USDC Judge Ryskamp even recognized the tremendous amount of litigation that

5   ultimately led to his adjudication of the issue against the Debtor: "Here, Integretel has briefed these

6   issues in three separate briefs, its response, its motion to modify, and its motion to stay. It has,

7   without question, had an opportunity to be heard on this issue." September 13, 2007 District Court

8   Order, at p. 6.

9         16.    But rather than comply with USDC Judge Ryskamp's September 13, 2007 District

10   Court Order, or proceed with its already-pending appeal before the Eleventh Circuit, the Debtor,

11   instead, chose to file for bankruptcy protection in another jurisdiction. The Debtor's failure to

12   attach a copy of USDC Judge Ryskamp's September 14, 2007 District Court Order, or even

13   disclose the fact that USDC Judge Ryskamp ruled that the $1,762,762.56 in reserves are property

14   of the Federal Receivership Estate, is telling.

15         17.    This appears to be a transparent attempt by the Debtor to circumvent USDC Judge

16   Ryskamp's rulings in the hopes that the Bankruptcy Court – under the guise of the Debtor's "cash

17   collateral" motion – will reverse the effect of USDC Judge Ryskamp's rulings. Such tactics should

18   not be condoned. I plan to bring this matter to the immediate attention of USDC Judge Ryskamp.

19

20         I declare, under penalties of perjury, under the laws of the State of California and the United

21   States of America, that I have read the foregoing declaration and that the facts stated in it are true.

22

23   Executed this 19th day of September, 2007,       _____

     in Miami-Dade County, State of Florida.       David R. Chase, not individually, but solely

24                                       in his capacity as court-appointed receiver for

25                                       Access One Communications, Inc. and

                                       Network One Communications, Inc.

26

27

28

-6-

1    after a tremendous amount of litigation on the subject – that the $1,762,762.56 in reserves that the

2    Debtor is now trying to use as "cash collateral" are, in fact, property of the Federal Receivership

3    Estate, not property of the Debtor.

4        15.    USDC Judge Ryskamp even recognized the tremendous amount of litigation that

5    ultimately led to his adjudication of the issue against the Debtor: "Here, Integretel has briefed these

6    issues in three separate briefs, its response, its motion to modify, and its motion to stay. It has,

7    without question, had an opportunity to be heard on this issue." September 14, 2007 District Court

8    Order, at p. 6.

9        16.    But rather than comply with USDC Judge Ryskamp's September 14, 2007 District

10   Court Order, or proceed with its already-pending appeal before the Eleventh Circuit, the Debtor,

11   instead, chose to file for bankruptcy protection in another jurisdiction. The Debtor's failure to

12   attach a copy of USDC Judge Ryskamp's September 14, 2007 District Court Order, or even

13   disclose the fact that USDC Judge Ryskamp ruled that the $1,762,762.56 in reserves are property

14   of the Federal Receivership Estate, is telling.

15       17.    This appears to be a transparent attempt by the Debtor to circumvent USDC Judge

16   Ryskamp's rulings in the hopes that the Bankruptcy Court – under the guise of the Debtor's "cash

17   collateral" motion – will reverse the effect of USDC Judge Ryskamp's rulings. Such tactics should

18   not be condoned. I plan to bring this matter to the immediate attention of USDC Judge Ryskamp.

19

20       I declare, under penalties of perjury, under the laws of the State of California and the United

21   States of America, that I have read the foregoing declaration and that the facts stated in it are true.

22

23   Executed this 19th day of September, 2007,
     in Miami-Dade County, State of Florida.

24                                            _____
                                              David R. Chase, not individually, but solely
25                                            in his capacity as court-appointed receiver for
                                              Access One Communications, Inc. and
26                                            Network One Communications, Inc.

27

28

-6-

314325.01 [XP]    24774

# EXHIBIT A

00007

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-80180-CIV-RYSKAMP/VITUNAC

FEDERAL TRADE COMMISSION,

      Plaintiff,

v.

NATIONWIDE CONNECTIONS, INC., et al.,

      Defendants.

_____/

## OMNIBUS ORDER

THIS CAUSE comes before the Court pursuant to a series of motions:

- The Receiver's Revised Motion for Order to Show Cause Why Integretel Should Not Be Held in Contempt of Court, filed October 16, 2006 [DE 246];

- Integretel's Motion to Modify Prior Injunctive Orders, filed October 30, 2006 [DE 294];

- Integretel's Motion to Stay Contract Claims, filed December 29, 2006 [DE 363]; and

- The Receiver's Motion Requesting BSG Defendants To Transfer Additional Reserves, filed January 12, 2007 [DE 371].

The Court held a hearing on these motions on April 12, 2007. These motions are fully briefed and are ripe for adjudication.

Both BSG and Integretel had agreements in place with Nationwide and Access One/Network One that permitted them to withhold monies that were "owed to" Nationwide and/or Access One/Network One as "reserves," in the event that any users complained about

_____ _____ _____

EXHIBIT A

2

charges and requested refunds and/or credits directly from the Aggregators. Shortly after this

receivership was initiated, BSG advised the Receiver and the FTC of reserves that it was holding

relating to Nationwide as of the commencement of the receivership (slightly over $1 million).

BSG turned that money over to the Receiver.

Integretel did not advise either the Receiver or the FTC that it was holding reserves.

Rather, its president informed the FTC on March 6, 2006 that "no amounts are currently due and

owing" to Access One or Network One. As of August 26, 2006, Integretel was holding

$1,186,430.36 in reserves for Access One and $173,918.66 in reserves for Network One. These

amounts have increased, and as of June 30, 2007, the reserve amount being held by Integretel

(and/or its affiliates) is $1,762,762.56. As of August 6, 2007, the reserve amount being held by

BSG (and/or its affiliates) is $930,052.99.

The Receiver notes that the temporary restraining order required any business entity

served with a copy thereof to:

> provide to the Commission's counsel, within five (5) business days
> of receiving a copy of this [TRO], a sworn statement setting forth:
>
> 1.    The identification number of each such account or asset
> titled in the name, individually or jointly, of a Defendant, or held
> on behalf of, or for the benefit of a Defendant;
>
> 2.    The balance of each such account, or description of the
> nature and value of each such asset as of the close of business on
> the day on which this [TRO] is served...

Exhibit A to the Integretel/Access One Master Services Agreement defines the reserve as

follows:

> an amount withheld, from the amount otherwise owed to Client
> with respect to Billing Transactions, to protect IGT for credit
> losses or otherwise to cover other reserves or offsets, other than
> Uncollectibles imposed by a Telco.

The Integretel/Network One Master Services Agreement contains an identical definition of the reserves.

Integretel maintains that "the reserves do not take the form of any actual funds that [Integretel] has segregated or otherwise set aside..." and maintains that it keeps the reserves in a pooled account it tracks via an internal accounting entry. Such is a distinction without a difference, since the TRO captures funds "held on behalf of, or for the benefit of, a Defendant."

Integretel also maintains that it was not Access One's or Network One's "agent, partner, joint venturer, trustee, fiduciary, or legal representative," and so was not "in any way acting 'on behalf of' of the two clients." An entity need not be an agent, partner, joint venturer, trustee, fiduciary, or legal representative to possess funds that one is holding "on behalf of" another person or entity, however.

Integretel also maintains that the "reserves have been set to account for, among other things, any liability that might be claimed against [Integretel] for any improper billings by Access One or Network One such as alleged by the FTC in the First Amended Complaint." The Court has reviewed the agreements in question. The agreements between Integretel and each of Access One and Network One allow Integretel either to notify the indemnifying party of the request to be indemnified and turn over the defense of the action to the indemnified party or defend itself and seek reimbursement of its attorneys' fees and costs from the indemnifying party. The agreements did not give it the right to use the reserves to fund the indemnity. Furthermore, the FTC has sued

4

Integretel for its own independent violations of the Federal Trade Commission Act. If the FTC succeeds, Integretel itself will be financially responsible for its actions and will not be able to look to Access One or Network One for indemnification under the operative agreements.

Finally, Integretel argues that "Access One and Network One failed to provide proof of their compliance with contract requirements..." Integretel evidently maintains that since it is of the opinion that Access One and Network One allegedly breached the agreements, it was entitled to keep the reserve monies. The agreements do not, however, contain a liquidated damages provision that would permit retention of those funds under the circumstances, nor do the agreements give it the right to make an independent, unilateral decision about Access One's or Network One's breach of the agreements without court involvement.

Integretel also moves to stay litigation of the aforementioned contract claims pending arbitration thereof, maintaining that the Receiver stands in the shoes of Access One and Network One and may assert only those rights and remedies that those entities themselves could have asserted. In particular, the Receiver is supposedly bound by the arbitration clause in each company's contract. The Receiver's claim is not a claim at law governed by pre-receivership contracts, however, but one governed by this Court's jurisdiction over receivership property based on the TRO and Amended Preliminary Injunction. The Receiver does not claim that the funds must be turned over according to, or by adopting, a contract signed between Integretel and Access One/Network One. The Receiver is seeking to recover the reserve funds pursuant to the Court's in rem jurisdiction over receivership property, as memorialized in the TRO and the Amended Preliminary Injunction. A federal court possesses broad authority to issue various ancillary relief measures in enforcing actions brought by federal agencies. See FTC v.

Productive Mktg., Inc., 136 F. Supp. 2d 1096, 1104 (C.D. 2001); SEC v. Wenke, 622 F.2d 1363,

1371 (9th Cir. 1980) ("the Supreme Court has repeatedly emphasized the broad equitable powers

of the federal courts to shape equitable remedies to the necessities of particular cases, especially

where a federal agency seeks enforcement in the public interest."). A receivership order issued to

preserve the assets of the receivership estate is a classic example of a district court's exercise of

in rem jurisdiction over receivership property. See Productive Mktg., 136 F. Supp. 2d at 1105;

Wenke, 622 F.2d at 1369 (stating that a federal district court's power to issue a stay against all

persons concerning all proceedings against the receivership entities "rests as much on its control

over the property placed in receivership as on its jurisdiction over the parties to the securities

fraud action"). "[R]eceivers are not bound by the contracts of the entity that they are appointed to

protect. The receiver becomes bound only when it affirmatively adopts the obligations of the

entity that it is protecting." City Bank, NA v. Nyland (CF8) Ltd., 839 F.2d 93, 98 (2d Cir. 1987).

The Court declines to stay adjudication of the contract claims.

Integretel argues that the TRO and Amended Preliminary Injunction would be invalid if

they enabled the Court to determine Integretel's ownership interest (or lack thereof) in the reserve

funds without first requiring the Receiver to institute a new, separate legal proceeding. Issues

concerning entitlement to disputed receivership property, in fact, are the types of issues typically

determined via summary proceedings in the federal court equity receivership context. See

Wenke, 783 F.2d at 837-38 (stating that claims of nonparties to property claimed by receivers can

be resolved via summary proceedings, which reduced the time necessary to settle disputes,

decrease litigation costs and prevent dissipation of receivership assets, as long as there is notice

to the non-party and an opportunity to be heard, thereby satisfying due process).

6

Integretel maintains that the Court deprived it of due process when it issued the TRO and Amended Preliminary Injunction without previously providing notice and an opportunity to be heard. A temporary restraining order or injunction is properly issued and binding so long as the party against whom it is being issued had a chance to defend fully the legitimacy of the eventual claim. Accordingly, it is irrelevant whether the party had been given a chance to oppose the order prior to its issuance. See FTC v. Assail, Inc., 410 F.3d 256, 268 (5th Cir. 2005) (finding that attorney for non-parties to receive fees that resulted from fraud had opportunity to defend self at hearing to determine whether disputed funds were subject to turnover order and thus had adequate notice and opportunity to be heard). Here, Integretel has briefed these issues in three separate briefs, its response, its motion to modify, and its motion to stay. It has, without question, had an opportunity to be heard on this issue.

Integretel argues that the TRO and Amended Preliminary Injunction are invalid because the FTC and the Receiver thereby have unbridled discretion to decide what cooperation is required and from whom, which is allegedly further compounded by the fact that the FTC and Receiver are interested in maximizing the amount of money, and subsequent recovery, in the receivership estate. While Integretel has accurately pinpointed the Receiver's and the FTC's goals, its attacks on the Court's orders fail. That cooperation clauses are standard in federal court receivership orders goes without saying. In Productive Mktg., when a non-party argued it was not bound by the cooperation clause, the district court disagreed because the injunction, as a receivership order, was required to be read reasonably in light of its stated purpose, to account for and preserve the assets of the receivership estate. 136 F. Supp. 2d at 1109-10. Otherwise stated, the receiver could not unreasonably use the cooperation clause for whatever purpose he wished.

Rather, the only reasonable interpretation of the clause was for it to be used consistently with the objective of the injunction, to require non-parties (and parties) that hold assets of the receivership estate to disclose information to the receiver relating to those assets and, if necessary, turn over such assets to the receiver. <u>See id.</u> at 1110. Cooperation clauses are enforceable, even against non-parties.

Integretel concedes that it was bound by the TRO if it acted in concert or participated with Access One and/or Network One, but Integretel claims that no such allegation has been made (or could be made, for that matter). The FTC has made such allegations in its First Amended Complaint, alleging that Integretel participated and acted in concert with Access One and Network One in the alleged fraud. (<u>See</u> First Amended Complaint, Paragraphs 24, 27, 28, 30, 37.)

Integretel also argues that the TRO is overbroad because it allows the Receiver to demand a turnover of disputed funds. To that end, Integretel posits that in rem jurisdiction only applies to undisputed receivership property and does not apply when funds are disputed and not in the possession of the Court. District courts have in rem jurisdiction over disputed receivership property and therefore can bind non-parties (such as Integretel), through orders to protect and preserve disputed receivership property, and district courts have jurisdiction to enforce orders against non-parties concerning ownership of disputed funds, whether or not such funds are in the non-parties' possession. <u>See</u> <u>Productive Mktg.</u>, 136 F. Supp. 2d at 1106 ("if the Court cannot compel [the non-party] to turn over assets in its possession belonging to the receivership estate, the receiver will be unable to provide adequate redress to consumers who have been defrauded by

8

Defendants because [the non-party's] conduct imperiled the Court's ability to render an effective judgment, the Court may properly enjoin it, even though it is not a party to the action.").

Integretel also maintains that the turnover clause is invalid and, in any event, was never triggered, because the Receiver never made a "formal" demand for the reserve funds. The purpose of a federal district court's jurisdiction over receivership property via a preliminary injunction (or similar order) is to preserve the assets resulting from the improper actions of the receivership defendants, whether held by parties or non-parties, to provide redress for the legitimately defrauded investors. See Productive Mktg., 136 F.Supp. 2d at 1105-1106. Thus, it is not reasonable to expect the Receiver to know about the reserves, and thereafter make a "formal" demand for them if it had not been previously informed of their existence.

Integretel, as a party, also argues that the Amended Preliminary Injunction is invalid under Rule 65 because it did not receive notice of its issuance. Integretel also maintains that neither the FTC nor the Receiver has made the requisite showing in their unverified papers to enforce an injunction against it. An injunction is properly issued and binding so long as the party opposing it is given a chance to defend the legitimacy of the claim being made under it. It is of no consequence whether the party has been given a chance to oppose the injunction prior to its issuance. See SEC v. Elfindepan, S. A., 2002 WL 31165146 at*5 (finding that party in the context of contempt motion had been given full opportunity to defend ownership interest in disputed funds; that party did not have opportunity to defend itself prior to issuance of the injunction did not render the injunction invalid).

Integretel believes it has acted properly from "day one" and had no reason to ask for clarification of the subject Orders until the Receiver filed its show cause motion because it

believed that its interpretation of the Orders was proper, or at least in good faith. One's state of mind is irrelevant for purposes of unilateral interpretation of court orders, however. See Goya Foods, Inc. v. Wallack Management Co., 290 F.3d 63, 75-76 (1st Cir. 2002) ("When a legitimate question exists as to the scope or effectiveness of the court's order, those who know of the decree, yet act unilaterally, assume the risk of mistaken judgments. Adhering to this principle, the appellants could have asked the district court for clarification...but they eschewed that course....They chose instead to rely on their own judgment as to whether the orders remained in effect. In so doing, the appellants acted at their peril.").

Integretel also seeks to modify the TRO, Preliminary Injunction and Amended Preliminary Injunction. Because the subject Orders are valid for the reasons stated herein, there is no reason to modify them. Furthermore, the requested modifications would unnecessarily increase litigation costs by forcing the Receiver to obtain an extra precondition order by litigating every potential act that constitutes proper cooperation and affect every potential target of such corporation, thereby exponentially increasing the amount of time it would take for the Receiver to obtain receivership property. The proposed modifications would also be unwieldy because they would make pre-receivership contracts that the Receiver does not ratify nevertheless binding on him, and would require separate, plenary proceedings when a summary proceeding can adequately account for determination of these issues.

The Receiver also moves to request that the BSG Defendants transfer additional reserves in the amount of $328,050.83 as of December 8, 2006, and, as noted $930,052.99 as of August 6, 2007. These Defendants previously transferred $952,045.67 in reserves to the Receiver on or about March 24, 2006. The Receiver requests that these Defendants transfer these additional

10

reserves, produce all documents relating to the reserves withheld since March 24, 2006, and to produce any future reserves that they collect to the Receiver along with any documents relating thereto.

The BSG Defendants join in Integretel's arguments as to the validity of the TRO and the Amended Preliminary Injunction. Additionally, the BSG Defendants request modification of the injunctive orders and request a stay of the underlying contract claims. The Court has already rejected these arguments. As to the contract claims, the contracts the BSG Defendants attach in support of their argument to retain the Reserves are incomplete, undated, unsigned and do not reflect the parties thereto. The Court, based on these incomplete documents, cannot say that the BSG Defendants are entitled to retain the reserves. It is hereby

ORDERED AND ADJUDGED that the Receiver's Revised Motion for Order to Show Cause Why Integretel Should Not Be Held in Contempt of Court, filed October 16, 2006 [DE 246], is GRANTED. Integretel shall show cause in writing within 10 days of the date of this Order why it should not be held in contempt for failure to turn over the reserves. In addition, Integretel shall provide a sworn statement identifying the amount of reserves as of the issuance of the TRO. The Court further orders that these funds shall be placed in a segregated Receivership account. It is further

ORDERED AND ADJUDGED that Integretel's Motion to Modify Prior Injunctive Orders, filed October 30, 2006 [DE 294], is DENIED. It is further

ORDERED AND ADJUDGED that Integretel's Motion to Stay Contract Claims, filed December 29, 2006 [DE 363], is DENIED. It is further

11

ORDERED AND ADJUDGED that the Receiver's Motion Requesting BSG Defendants

To Transfer Additional Reserves, filed January 12, 2007 [DE 371], is GRANTED.  The BSG

Defendants are ordered to transfer the additional reserves they have withheld since their initial

transfer of reserves to the Receiver on or about March 24, 2006.  The BSG Defendants shall also

produce any future reserves they collect so as to avoid future motions to this effect.  The BSG

Defendants shall also produce all documents relating to the reserves held since March 24, 2006.

The Court requests that this money be placed in a segregated receivership account.

DONE AND ORDERED at Chambers in West Palm Beach, Florida this 13th day of

September, 2007.

S/Kenneth L. Ryskamp
KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE

# EXHIBIT B

ᴿᴱᶜᴰ by ____ D.C.

FEB 2 7 2006

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. _____ - CIV-(

MAGISTRATE JUDGE
VITUNAC

# 06-80180

CIV-RYSKAMP

FEDERAL TRADE COMMISSION,

　　　　　　Plaintiff,

vs.

NATIONWIDE CONNECTIONS, INC.,
ACCESS ONE COMMUNICATIONS, INC.,
NETWORK ONE SERVICES, INC.,
WILLOUGHBY FARR,
MARY LOU FARR,
YARET GARCIA,
ERIKA RIABOUKHA,
QAADIR KAID,

　　　　　　Defendants.

████████ TEMPORARY
RESTRAINING ORDER AND
ORDER TO SHOW CAUSE

FILED UNDER
SEAL

　　　　Plaintiff, the Federal Trade Commission ("FTC" or the "Commission"), pursuant to

Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), has filed a

Complaint for Injunctive and Other Equitable Relief, including consumer redress, and has moved

*ex parte* for a temporary restraining order and for an order to show cause why a preliminary

injunction should not be granted pursuant to Rule 65(b) of the Federal Rules of Civil Procedure.

## FINDINGS OF FACT

　　　　The Court has considered the pleadings, declarations, exhibits, and memoranda filed in

support of the Commission's motion and finds that:

1.　　This Court has jurisdiction over the subject matter of this case, and there is good cause to

　　　believe that it will have jurisdiction over all parties hereto;

2.　　There is good cause to believe that Defendants Nationwide Connections, Inc., Access

------

EXHIBIT B

02/27/2008 15:51 FAX
02/27/2006 16:30 FAX 5618055...      USAO WPB CONFRM
Case 5:07-cv-06210-JW    Document 12-5    Filed 04/06/2008    Page 17 of 56
☑005/027
☑002

One Communications, Inc., Network One Services, Inc., Willoughby Farr, Mary Lou Farr, Yaret Garcia, Erika Riabonkha, and Qaadir Kaid have engaged and are likely to engage in acts or practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and that the Plaintiff is therefore likely to prevail on the merits of this action;

3.    The evidence set forth in the Commission's Memorandum of Points and Authorities in Support of its *Ex Parte* Motion for TRO ("Memorandum"), and the accompanying declarations and exhibits, demonstrates that Defendants have engaged in deceptive and unfair acts or practices in violation of Section 5 of the FTC Act by engaging in widespread unauthorized billing of collect telephone calls. There is good cause to believe that Defendants will continue such illegal actions if not restrained from doing so by Order of this Court;

4.    There also is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief will result from the sale, transfer, or other disposition or concealment by Defendants of their assets or business records, unless Defendants are immediately restrained and enjoined by Order of this Court.

5.    The Commission has not provided notice to Defendants due to the likelihood that advance notice of this action will cause Defendants to abscond with or destroy discoverable evidence and conceal or dissipate assets. The Commission's request for this emergency *ex parte* relief is not the result of any lack of diligence on the Commission's part, but instead is based upon the nature of Defendants' unlawful conduct;

6.    Weighing the equities and considering the FTC's likelihood of ultimate success, a temporary restraining order, including an asset freeze, appointment of a temporary

2

receiver, immediate access to Defendants' business premises, an accounting of assets, preservation of business records, and providing other equitable relief is in the public interest; and

7.      Fed. R. Civ. P. 65(c) does not require security of the United States or an officer or agency thereof for the issuance of a restraining order.

## DEFINITIONS

For the purpose of this temporary restraining order ("TRO" or "Order"), the following definitions shall apply:

A.      "Assets". means any legal or equitable interest in, right to, or claim to any real or personal property of any Defendant, or held for the benefit of any Defendant, wherever located, including, but not limited to, "goods," "instruments," "equipment," "fixtures," "general intangibles," "inventory," "checks," "notes" (as these terms are defined in the Uniform Commercial Code), chattels, leaseholds, contracts, mails, other deliveries, shares of stock, lists of participants, intellectual property, accounts, credits, receivables, cash, and trusts, including, but not limited to, any other trust held for the benefit of any Defendant, any Defendant's minor children, or any Defendant's spouse.

B.      "Defendants" means Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., Willoughby Farr, Mary Lou Farr, Yaret Garcia, Erika Riaboukha, and Qaadir Kaid.

C.      "Document" is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes, but is not limited to, writings, drawings, graphs, charts, Internet sites, Web pages, Web sites, electronic correspondence,

3

02/27/2006 15:52 FAX
02/27/2006 15:31 FAX 661865884
Case 5:07-cv-06210-JW    Document 12-5    Filed 04/06/2008    Page 19 of 56
USAO WPB CONFRM
☑005/027
☑004

including e-mail and instant messages, photographs, audio and video recordings, computer records, whether active or inactive, and any other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

D. "Long Distance Service Provider" means an entity that transports long distance telephone calls.

E. "Plaintiff" means the Federal Trade Commission.

F. "Receiver" shall mean the temporary receiver appointed in Paragraph VII of this Order. The term "receiver" also includes any deputy receivers as may be named by the temporary receiver.

G. "Receivership Defendants" means Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc. and any d/b/as of the aforementioned entities.

## PROHIBITED BUSINESS ACTIVITIES

## I.

**IT IS THEREFORE ORDERED** that Defendants, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are temporarily restrained and enjoined from directly or indirectly misrepresenting, expressly or by implication, that a consumer is obligated to pay any charge on a telephone bill that has not been expressly authorized by the consumer.

4

00023

RER-6       0160

## ASSET FREEZE

## II.

IT IS FURTHER ORDERED that Defendants, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby temporarily restrained and enjoined from:

A.    Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any funds, real or personal property, accounts, contracts, consumer lists, shares of stock, or other assets, or any interest therein, wherever located, that are:  (1) owned or controlled by any Defendant, in whole or in part, for the benefit of any Defendant; (2) in the actual or constructive possession of any Defendant; or (3) owned, controlled by, or in the actual or constructive possession of any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant, including but not limited to, Cripple Creek Holdings, LLC, and any assets held by or for, or subject to access by, any of Defendants, at any bank or savings and loan institution, or with any broker-dealer, escrow agent, title company, commodity trading company, precious metals dealer, or other financial institution or depository of any kind;

B.    Opening or causing to be opened any safe deposit boxes titled in the name of any Defendant or any Defendant's minor child or any Defendant's spouse, or subject to access by any of them;

C.    Incurring charges or cash advances on any credit card issued in the name, singly or jointly, of any Defendant;

5

00024

02/27/2008 15:53 FAX
02/27/2008 15:52 FAX 5618059844
Case 5:07-cv-06210-JW   Document 12-5   Filed 04/06/2008   Page 21 of 56
USAO WPB CONFRM
☒007/027
☒008

D.    Obtaining a personal or secured loan; and

E.    Incurring liens or other encumbrances on real property, personal property or other assets in the name, singly or jointly, of any Defendant.

*Provided further*, the assets affected by this Paragraph shall include: (1) all assets of Defendants as of the time this Order was entered; and (2) for assets obtained after the time this Order was entered, only those assets of Defendants that are derived from the actions alleged in the Commission's Complaint.

## FINANCIAL REPORTS AND ACCOUNTING

## III.

**IT IS FURTHER ORDERED** that Defendants, within five (5) days of service of this Order, shall:

A.    Prepare and deliver to counsel for the FTC completed financial statements on the forms attached to this Order as Attachments A and B, for themselves, individually or as corporations, and for each business entity under which they conduct business, or of which they are an officer, and for each trust of which they are a trustee. The financial statements shall be accurate as of the date of entry of this Order; and

B.    Provide the Commission with a statement, verified under oath and accurate as of the date of entry of this Order, detailing the name, address, and telephone number for each accountant, financial planner, investment advisor, stock broker, or other person who provided any Defendant with financial, business, or tax advice or services since January 1, 2004.

*Provided further*, the Commission and the Temporary Receiver are immediately authorized to issue subpoenas to demand the production of documents from any person or entity

6

00025

02/27/2006 15:53 FAX

02/27/2008 15:53 FAX 561801

Case 5:07-cv-06210-JW    Document 12-5    Filed 04/06/2008    Page 22 of 56

USAO WPB CONFRM

☐008/027
☐007

relating to the nature, status, extent, location or other relevant information relating to Defendants' assets, income, and financial records.

## FOREIGN ASSET REPATRIATION

### IV.

IT IS FURTHER ORDERED that, within five (5) business days following the service of this Order, the Defendants shall:

A. Provide the Commission and the Receiver with a full accounting of all funds, documents, and assets outside of the United States that are: (1) titled in the name, individually or jointly, of the Defendants or the spouse of any Defendant; or (2) held by any person or entity for the benefit of the Defendants; or (3) under the direct or indirect control, whether jointly or singly, of the Defendants;

B. Transfer to the territory of the United States and deliver to the Receiver all funds, documents, and assets located in foreign countries that are: (1) titled in the name, individually or jointly, of any Defendant; or (2) held by any person or entity, for the benefit of any Defendant; or (3) under any Defendant's direct or indirect control, whether jointly or singly; and

C. Provide the Commission access to all records of accounts or assets of the Defendants held by financial institutions located outside the territorial United States by signing the Consent to Release of Financial Records attached to this Order (Attachment C).

## INTERFERENCE WITH REPATRIATION

### V.

IT IS FURTHER ORDERED that Defendants, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise,

are hereby temporarily restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign assets, or in the hindrance of the repatriation required by the preceding Paragraph IV of this Order, including but not limited to:

    A.    Sending any statement, letter, fax, e-mail or wire transmission, telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time that all assets have been fully repatriated pursuant to Paragraph IV of this Order; and

    B.    Notifying any trustee, protector or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a Court Order, until such time that all assets have been fully repatriated pursuant to Paragraph IV of this Order.

## RETENTION OF ASSETS AND RECORDS BY FINANCIAL INSTITUTIONS

### VI.

IT IS FURTHER ORDERED that, pending determination of the Plaintiff's request for a preliminary injunction, any financial or brokerage institution, business entity, or person served with a copy of this Order that holds, controls, or maintains custody of any account or asset of any Defendant, or has held, controlled or maintained custody of any such account or asset at any time since the date of entry of this Order, shall:

    A.    Hold and retain within its control and prohibit the withdrawal, removal, assignment, transfer, pledge, encumbrance, disbursement, dissipation, conversion, sale, or other disposal of any such asset except by further order of the Court;

    B.    Deny the Defendants access to any safe deposit box that is:

00027

RER-6    0164

1.    titled in any Defendants' name, individually or jointly; or

2.    otherwise subject to access by any Defendant;

C.    Provide the Commission's counsel, within five (5) business days of receiving a copy of this Order, a sworn statement setting forth:

1.    the identification number of each such account or asset titled in the name, individually or jointly, of a Defendant, or held on behalf of, or for the benefit of a Defendant;

2.    the balance of each such account, or a description of the nature and value of each such asset as of the close of business on the day on which this Order is served, and, if the account or other asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other asset was remitted; and

3.    the identification of any safe deposit box that is titled in the name, individually or jointly, of a Defendant, or is otherwise subject to access by a Defendant.

D.    Upon request by the Commission, promptly provide the Commission with copies of all records or other documentation pertaining to each such account or asset, including but not limited to originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs. Any such financial institution, account custodian, or other aforementioned entity may arrange for the Commission to

9

obtain copies of any such records which the Commission seeks.

## APPOINTMENT OF TEMPORARY RECEIVER

### VII.

**IT IS FURTHER ORDERED** that _David Chase, Esq._ is appointed

Temporary Receiver for the Receivership Defendants. The Receiver shall be the agent of this

Court, and solely the agent of this Court, in acting as Receiver under this Order. The Receiver

shall be accountable directly to this Court. The Receiver shall comply with all Local Rules and

laws governing federal equity receivers.

### RECEIVER'S DUTIES

### VIII.

**IT IS FURTHER ORDERED** that the Temporary Receiver is authorized and directed to

accomplish the following:

A.    Assume full control of the Receivership Defendants by removing, as the Receiver

deems necessary or advisable, any director, officer, independent contractor, employee, or agent of

any of the Receivership Defendants, including any Defendant, from control of, management of, or

participation in, the affairs of the Receivership Defendants;

B.    Take exclusive custody, control, and possession of all assets and documents of, or

in the possession, custody, or under the control of, the Receivership Defendants, wherever

situated. The Receiver shall have full power to divert mail and to sue for, collect, receive, take in

possession, hold, and manage all assets and documents of the Receivership Defendants and other

persons or entities whose interests are now held by, or are under the direction, possession,

custody, or control of, the Receivership Defendants. The Receiver shall assume control over the

10

income and profits therefrom and all sums of money now or hereafter due or owing to the

Receivership Defendants. *Provided, however,* that the Receiver shall not attempt to collect any

amount from a consumer if the Receiver believes the consumer was a victim of the unfair or

deceptive acts or practices alleged in the Complaint in this matter, without prior Court approval;

   C.    Take all steps necessary to secure each location from which the Receivership

Defendants operate their business. Such steps may include, but are not limited to, any of the

following, as the Receiver deems necessary or advisable: (1) serving this Order; (2) completing a

written inventory of all receivership assets; (3) obtaining pertinent information from all employees

and other agents of the Receivership Defendants, including, but not limited to, the name, home

address, social security number, job description, passwords or access codes, method of

compensation, and all accrued and unpaid commissions and compensation of each such employee

or agent; (4) photographing and video taping any or all portions of the location; (5) securing the

location by changing the locks and disconnecting any computer modems or other means of access

to the computer or other records maintained at that location; and (6) requiring any persons present

on the premises at the time this Order is served to leave the premises, to provide the Receiver with

proof of identification, or to demonstrate to the satisfaction of the Receiver that such persons are

not removing from the premises documents or assets of the Receivership Defendants. Law

enforcement personnel, including, but not limited to, police or sheriffs, may assist the Receiver in

implementing these provisions in order to keep the peace and maintain security;

   D.    Conserve, hold, and manage all assets of the Receivership Defendants, and perform

all acts necessary or advisable to preserve the value of those assets in order to prevent any

irreparable loss, damage, or injury to consumers or creditors of the Receivership Defendants,

11

00030

including, but not limited to, obtaining an accounting of the assets and preventing unauthorized

transfer, withdrawal, or misapplication of assets;

      E.      Enter into contracts and purchase insurance as advisable or necessary;

      F.      Prevent the inequitable distribution of assets and determine, adjust, and protect the

interests of consumers and creditors who have transacted business with the Receivership

Defendants;

      G.      Manage and administer the business of the Receivership Defendants until further

order of this Court by performing all incidental acts that the Receiver deems to be advisable or

necessary, which includes retaining, hiring, or dismissing any employees, independent contractors,

or agents;

      H.      Choose, engage, and employ attorneys, accountants, appraisers, and other

independent contractors and technical specialists, as the Receiver deems advisable or necessary in

the performance of duties and responsibilities under the authority granted by this Order;

      I.      Have the sole authority to hire legal counsel on behalf of any of the Receivership

Defendants;

      J.      Make payments and disbursements from the receivership estate that are necessary

or advisable for carrying out the directions of or exercising the authority granted by this Order.

The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation

incurred by the Receivership Defendants prior to the date of entry of this Order, except payments

that the Receiver deems necessary or advisable to secure assets of the Receivership Defendants,

such as rental payments;

      K.      Institute, compromise, adjust, appear in, intervene in, or become party to such

12

actions or proceedings in state, federal or foreign courts or arbitration proceedings as the Receiver

deems necessary and advisable to preserve or recover the assets of the Receivership Defendants,

or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this

Order, including but not limited to, actions challenging fraudulent or voidable transfers;

      L.    Defend, compromise, adjust, or otherwise dispose of any or all actions or

proceedings instituted in the past or in the future against the Receiver in his role as Receiver, or

against the Receivership Defendants, as the Receiver deems necessary and advisable to preserve

the assets of the Receivership Defendants, or as the Receiver deems necessary and advisable to

carry out the Receiver's mandate under this Order;

      M.    Continue to conduct the business, or cease operation of the business, of the

Receivership Defendants in such manner, to such extent, and for such duration as the Receiver

may in good faith deem to be necessary or appropriate to operate the businesses profitably and

lawfully, if at all; *provided that*, the continuation and conduct of the business shall be conditioned

upon the Receiver's good faith determination that the businesses can be lawfully operated at a

profit using the assets of the receivership estate;

      N.    Immediately issue subpoenas and conduct discovery, including depositions, to

obtain documents, records, and information pertaining to the receivership on behalf of the

receivership estate;

      O.    Open one or more bank accounts as designated depositories for funds of the

Receivership Defendants. The Receiver shall deposit all funds of the Receivership Defendants in

such a designated account and shall make all payments and disbursements from the receivership

estate from such an account. The Receiver shall serve copies of monthly account statements on

13

all parties;

    P.    Maintain accurate records of all receipts and expenditures that he makes as

Receiver; and

    Q.    Cooperate with reasonable requests for information or assistance from any state or

federal law enforcement agency.

## COOPERATION WITH THE TEMPORARY RECEIVER

### IX.

    IT IS FURTHER ORDERED that Defendants and all other persons or entities served

with a copy of this Order shall fully cooperate with and assist the Receiver. This cooperation and

assistance shall include, but not be limited to, providing information to the Receiver that the

Receiver deems necessary in order to exercise the authority and discharge the responsibilities of

the Receiver under this Order; providing any password required to access any computer,

electronic file, or telephonic data in any medium; and advising all persons who owe money to the

Receivership Defendants that all debts should be paid directly to the Receiver. Defendants and

those persons in active concert or participation with them who receive actual notice of this Order

by personal service or otherwise, are hereby restrained and enjoined from directly or indirectly:

    A.    Transacting any of the business of the Receivership Defendants;

    B.    Destroying, secreting, defacing, transferring, or otherwise altering or disposing of

any documents of the Receivership Defendants, including, but not limited to, books, records,

accounts, writings, drawings, graphs, charts, photographs, audio and video recordings, computer

records, and other data compilations, electronically-stored records, or any other papers of any kind

or nature;

00033

RER-6        0170

C.    Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Defendants, or the Receiver;

D.    Excusing debts owed to the Receivership Defendants;

E.    Failing to notify the Receiver of any asset, including accounts, of a Receivership Defendant held in any name other than the name of the Receivership Defendant, or by any person or entity other than the Receivership Defendant, or failing to provide any assistance or information requested by the Receiver in connection with obtaining possession, custody, or control of such assets; and

F.    Doing any act or refraining from any act whatsoever to interfere with the Receiver managing, or taking custody, control, or possession of, the assets or documents subject to this receivership; or to harass or interfere with the Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of the Receivership Defendants; or to refuse to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any order of this Court.

## DELIVERY OF RECEIVERSHIP PROPERTY

## X.

IT IS FURTHER ORDERED that:

A.    Immediately upon service of this Order upon them, or within such period as may be permitted by the Receiver, Defendants shall transfer or deliver possession, custody, and control of the following to the Receiver:

15

00034

1.    All assets of the Receivership Defendants;

2.    All documents of the Receivership Defendants, including, but not limited to, books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), client lists, title documents and other papers;

3.    All assets belonging to members of the public now held by the Receivership Defendants; and

4.    All keys, codes, and passwords necessary to gain or to secure access to any assets or documents of the Receivership Defendants, including, but not limited to, access to their business premises, means of communication, accounts, computer systems, or other property.

B.    In the event any person or entity fails to deliver or transfer any asset or otherwise fails to comply with any provision of this Paragraph, the Receiver may file *ex parte* an Affidavit of Non-Compliance regarding the failure. Upon filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Receiver. The writs shall authorize and direct the United States Marshal or any sheriff or deputy sheriff of any county, or any other federal or state law enforcement officer, to seize the asset, document, or other thing and to deliver it to the Receiver.

16

00035

RER-6        0172

## TRANSFER OF FUNDS TO THE RECEIVER

### XI.

IT IS FURTHER ORDERED that, upon service of a copy of this Order, all banks, broker-dealers, savings and loans, escrow agents, title companies, commodity trading companies, precious metals dealers and other financial institutions and depositories of any kind, and all third-party billing agents, local exchange carriers, common carriers, and other telecommunications companies shall cooperate with all reasonable requests of the FTC and the Receiver relating to implementation of this Order, including transferring funds at the Receiver's direction and producing records related to the assets and sales of the Receivership Defendants.

## COMPENSATION OF RECEIVER

### XII.

IT IS FURTHER ORDERED that the Receiver and all personnel hired by the Receiver, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by, in the possession or control of, or which may be received by, the Receivership Defendants. The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of this Order. The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

17

### RECEIVER'S BOND

### XIII.

IT IS FURTHER ORDERED that the Receiver shall file with the Clerk of this Court a bond in the sum of $ 10,000.⁰⁰ with sureties to be approved by the Court, conditioned upon the Receiver well and truly performing the duties of the office, and abiding by and performing all acts the Court directs.

### ACCESS TO BUSINESS OFFICES AND RECORDS

### XIV.

IT IS FURTHER ORDERED that the FTC and the Receiver, and their representatives, agents, and assistants, shall have immediate access to all business premises and storage facilities, owned, controlled, or used by Defendants, including, but not limited to, 215 Fifth Street, Suite 306, West Palm Beach, Florida 33401. The FTC and the Receiver are authorized to employ the assistance of law enforcement officers, as they deem necessary to effect service and peacefully implement this Order. The FTC and the Receiver may exclude Defendants and Defendants' employees from the business premises during the immediate access. The purpose of the immediate access shall be to effect service and to inspect and copy documents and computer data, including but not limited to, correspondence, emails, financial data, and other documents concerning Defendants' business practices and assets.

    A.    The FTC and the Receiver and its representatives, agents, and assistants, shall have the right to remove documents from the above-listed premises in order that they may be inspected, inventoried, and copied.

    B.    The FTC shall return any removed documents to the Receiver within five (5)

18

business days, or such time as is agreed upon by the FTC and the Receiver.

C.    Defendants and all employees or agents of Defendants shall provide the FTC and the Receiver with any necessary means of access to documents and records, including, without limitation, the locations of Defendants' business premises, keys and combinations to locks, computer access codes, and storage area access information.

D.    If any computers containing information related to the business practices or finances of the Defendants are at a location other than those listed herein, including, but not limited to the personal residences of the Defendants, then immediately upon service of this Order upon them Defendants shall produce to the Receiver all such computers. In order to prevent the destruction of computer data, upon service of this order upon Defendants, any computers containing such information shall be powered down (turned off) in the normal course for the operating systems used on such computers and shall not be used until produced for copying and inspection, along with any codes needed for access.

E.    Within forty-eight (48) hours of service of this Order each Defendant shall produce to the Receiver a list of all agents, employees, officers, servants and those persons in active concert and participation with them, who have been associated or done business with the Receivership Defendants.

## DEFENDANTS' ACCESS TO THEIR BUSINESS PREMISES

## XV.

IT IS FURTHER ORDERED that the Receiver shall allow the Defendants and their representatives reasonable access to the premises of the Receivership Defendants. The purpose of this access shall be to inspect and copy any and all books, records, accounts, and other property

19

owned by or in the possession of the Receivership Defendants. The Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access.

## PRESERVATION OF RECORDS

## XVI.

**IT IS FURTHER ORDERED** that Defendants, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby temporarily restrained and enjoined from destroying, erasing, mutilating, concealing, altering, transferring, writing over, or otherwise disposing of, in any manner, directly or indirectly, any documents or records of any kind that relate to the business practices or business or personal finances of Defendants, including but not limited to, computerized files and storage media, contracts, accounting data, correspondence, advertisements, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, copies of federal, state or local business or personal income or property tax returns, and other documents or records of any kind that relate to the business practices or business or personal finances of Defendants.

## RECORD KEEPING/BUSINESS OPERATIONS

## XVII.

**IT IS FURTHER ORDERED** that Defendants are hereby temporarily restrained and enjoined from:

A. Failing to create and maintain documents that, in reasonable detail, accurately, fairly, and completely reflect their incomes, disbursements, transactions, and use of money; and

B. Creating, operating, or exercising any control over any business entity, including

20

any partnership, limited partnership, joint venture, sole proprietorship or corporation, without first providing the Commission with a written statement disclosing: (1) the name of the business entity; (2) the address and telephone number of the business entity; (3) the names of the business entity's officers, directors, principals, managers and employees; and (4) a detailed description of the business entity's intended activities.

## IDENTIFICATION OF PROVIDERS AND CUSTOMERS

### XVIII.

IT IS FURTHER ORDERED that Defendants shall:

A.    Within five (5) days of service of this Order, prepare and deliver to Plaintiffs a completed statement, verified under oath and accurate as of the date of entry of this Order, identifying each long distance service provider that provided services to consumers in connection with any collect calls that were billed on behalf of Defendants; and

B.    Within ten (10) days of service of this Order, prepare and deliver to counsel for Plaintiff a completed statement, verified under oath and accurate as of the date of entry of this Order, detailing the collect calls that were billed on behalf of Defendants during 2005, including the calling telephone numbers, the recipient telephone numbers, and the date and time of the calls.

## RECORD KEEPING/BUSINESS OPERATIONS

### XIX.

IT IS FURTHER ORDERED that Defendants are hereby temporarily restrained and enjoined from:

A.    Failing to create and maintain documents that, in reasonable detail, accurately, fairly, and completely reflect their incomes, disbursements, transactions, and use of money; and

21

B.      Creating, operating, or exercising any control over any business entity, including

any partnership, limited partnership, joint venture, sole proprietorship, or corporation, without

first providing the Commission with a written statement disclosing: (1) the name of the business

entity; (2) the address and telephone number of the business entity; (3) the names of the business

entity's officers, directors, principals, managers and employees; and (4) a detailed description of

the business entity's intended activities.

## STAY OF ACTIONS

## XX.

**IT IS FURTHER ORDERED** that:

A.      Except by leave of this Court, during pendency of the receivership ordered herein,

Defendants, and all customers, principals, investors, creditors, stockholders, lessors, and other

persons seeking to establish or enforce any claim, right, or interest against or on behalf of the

Defendants, and all others acting for or on behalf of such persons, including attorneys, trustees,

agents, sheriffs, constables, marshals, and other officers and their deputies, and their respective

attorneys, servants, agents and employees, be and are hereby stayed from:

1.      Commencing, prosecuting, continuing, entering, or enforcing any suit or

proceeding against a Receivership Defendant, except that such actions may

be filed to toll any applicable statute of limitations;

2.      Accelerating the due date of any obligation or claimed obligation against a

Receivership Defendant; filing or enforcing any lien against a Receivership

Defendant; taking or attempting to take possession, custody, or control of

any asset of a Receivership Defendant; attempting to foreclose, forfeit,

22

00041

alter, or terminate any interest in any asset of a Receivership Defendant, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise;

3. Executing, issuing, serving, or causing the execution, issuance or service of, any legal process against a Receivership Defendant, including, but not limited to, attachments, garnishments, subpoenas, writs of replevin, writs of execution, or any other form of process whether specified in this Order or not;

4. Causing any Receivership Defendant to be placed in involuntary bankruptcy; or

5. Doing any act or thing whatsoever to interfere with the Receiver managing, or taking custody, control, or possession of, the assets or documents subject to this receivership, or to harass or interfere with the Receiver in any way, or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of the Receivership Defendants.

B. This paragraph does not stay the commencement or continuation of a criminal action or proceeding.

## DISTRIBUTION OF ORDER BY DEFENDANTS

## XXL

IT IS FURTHER ORDERED that Defendants shall immediately provide a copy of this Order to each affiliate marketer, sub-affiliate marketer, affiliate, subsidiary, division, sales entity, successor, assign, officer, director, employee, independent contractor, client company, agent,

23

attorney, spouse and representative of Defendants, and shall, within ten (10) days from the date of entry of this Order, provide the Commission with a sworn statement that Defendants have complied with this provision of the Order, which statement shall include the names, physical addresses, and e-mail addresses of each such person or entity who received a copy of the Order.

## SERVICE OF ORDER

## XXII.

IT IS FURTHER ORDERED that copies of this Order may be served by any means, including facsimile transmission or email, upon any financial institution or other entity or person that may have possession, custody, or control of any documents of any Defendant, or that may otherwise be subject to any provision of this Order. Service upon any branch or office of any financial institution shall effect service upon the entire financial institution.

## CONSUMER CREDIT REPORTS

## XXIII.

IT IS FURTHER ORDERED that, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(1), any consumer reporting agency may furnish a consumer report concerning Defendants to the Commission.

## SERVICE OF PLEADINGS

## XXIV.

IT IS FURTHER ORDERED that Plaintiff shall serve on Defendants copies of this Order, complaint, and supporting memoranda, affidavits and other evidence. Defendants shall serve on the Commission all memoranda, affidavits and other evidence on which Defendants intend to rely at the preliminary injunction hearing set in this matter not later than 4:00 p.m.

24

(Eastern time) on the third calendar day prior to the hearing date. The Commission shall file with the Court and deliver to counsel that have entered an appearance any additional affidavits upon which it intends to rely in connection with the Commission's request for a preliminary injunction no later than 24 hours before the time scheduled for the preliminary injunction hearing.

## DURATION OF TEMPORARY RESTRAINING ORDER

### XXV.

IT IS FURTHER ORDERED that the Temporary Restraining Order granted herein shall expire on _March 9_, 2006 at _5:00_ p.m., unless within such time, the Order, for good cause shown, is extended for an additional period not to exceed ten (10) days, or unless it is further extended pursuant to Federal Rule of Civil Procedure 65.

## ORDER TO SHOW CAUSE REGARDING
## PRELIMINARY INJUNCTION

### XXVI.

IT IS FURTHER ORDERED, pursuant to Federal Rule of Civil Procedure 65(b), that Defendants shall appear before this Court on the _8_ day of _March_, 2006, at _10:00_ o'clock _a_.m., to show cause, if there is any, why this Court should not enter a Preliminary Injunction, pending final ruling on the Complaint against Defendants, enjoining them from further violations of Section 5(a) of the Federal Trade Commission Act, continuing the freeze of their assets, and imposing such additional relief as may be appropriate.

## SERVICE UPON PLAINTIFF

### XXVII.

IT IS FURTHER ORDERED that, with regard to any correspondence or pleadings

25

02/27/2008 16:00 FAX
02/27/2008 16:39 FAX 86180598.        USAO WPB CONFRM

related to this Order, service on the Commission shall be performed electronically or by overnight mail to the attention of Laura Kim at the Federal Trade Commission, 600 Pennsylvania Avenue, NW, Room H-238, Washington, DC 20580.

## RETENTION OF JURISDICTION

### XXVIII.

IT IS FURTHER ORDERED that this Court shall retain jurisdiction of this matter for all purposes.

SO ORDERED, this 27 day of February, 2006, at 11:45 am.

UNITED STATES DISTRICT JUDGE

Kenneth L. Ryskamp

CC: Laura M. Kim, Esq.
Robert S. Kaye, Esq.

Certified to be a true and
correct copy of the document on file
Clarence Maddox, Clerk,
U.S. District Court
Southern District of Florida
By
Deputy Clerk
Date 2/27/06

26

00045

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-80180 - CIV-RYSKAMP

|                                                        |     |                                  |
| ------------------------------------------------------ | --- | -------------------------------- |
| FEDERAL TRADE COMMISSION,                              | )   |                                  |
|                                                        | )   |                                  |
| Plaintiff,                                             | )   | PRELIMINARY INJUNCTION           |
|                                                        | )   | ORDER                            |
| vs.                                                    | )   |                                  |
|                                                        | )   |                                  |
| NATIONWIDE CONNECTIONS, INC.,                          | )   |                                  |
| ACCESS ONE COMMUNICATIONS, INC.,                       | )   | FILED by _____ D.C.              |
| NETWORK ONE SERVICES, INC.,                            | )   |                                  |
| WILLOUGHBY FARR,                                       | )   | MAR - 8 2006                     |
| MARY LOU FARR,                                         | )   |                                  |
| YARET GARCIA,                                          | )   | CLARENCE MADDOX                  |
| ERIKA RIABOUKHA,                                       | )   | CLERK U.S. DIST. CT.             |
| QAADIR KAID,                                           | )   | S.D. OF FLA. - W.P.B.            |
|                                                        | )   |                                  |
| Defendants.                                            | )   |                                  |

On February 27, 2006, the Federal Trade Commission ("FTC" or "Commission") filed a

Complaint for Injunctive and Other Equitable Relief, including consumer redress, pursuant to

Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), and applied

*ex parte* for a Temporary Restraining Order and Other Equitable Relief. On that same day, this

Court, having considered the Complaint, Memorandum of Points and Authorities, declarations,

and other exhibits filed in support of Plaintiff's motion, issued a Temporary Restraining Order,

including an asset freeze and appointment of a temporary receiver.

### FINDINGS OF FACT

The Court has considered the pleadings, declarations, exhibits, and memoranda filed in

support of the Commission's motion and finds that:

1.       This Court has jurisdiction over the subject matter of this case, and there is good cause to

*PA*
*29*

EXHIBIT C

believe that it will have jurisdiction over all parties hereto.

2.  There is good cause to believe that Defendants Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., Willoughby Farr, Mary Lou Farr, Yaret Garcia, Erika Riaboukha, and Qaadir Kaid have engaged and are likely to engage in acts or practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and that the Commission has demonstrated a substantial likelihood of prevailing on the merits of this action.

3.  There is good cause to believe that immediate and irreparable damage will result from Defendants' ongoing violations of Section 5(a) of the FTC Act.

4.  There is a substantial likelihood that, absent the continuation of the asset freeze and the receivership, Defendants will conceal, dissipate, or otherwise divert their assets, and thereby defeat the possibility of effective final relief in the form of equitable monetary relief.  Defendants have engaged in the widespread unauthorized billing of collect telephone calls in violation of Section 5 of the FTC Act.  Defendants have retained ill-gotten gains from these practices, and a receiver and asset freeze are reasonably necessary in order to preserve the possibility of complete and meaningful relief at the conclusion of this litigation.

5.  Weighing the equities and considering the FTC's substantial likelihood of success on the merits, issuance of a preliminary injunction with asset freeze and appointment of a permanent receiver are in the public interest.

6.  Fed. R. Civ. P. 65(c) does not require security of the United States or an officer or agency thereof for the issuance of a restraining order.

2

00048

## DEFINITIONS

For the purpose of this Preliminary Injunction Order ("Order"), the following definitions shall apply:

A.    **"Assets"** means any legal or equitable interest in, right to, or claim to any real or personal property of any Defendant, or held for the benefit of any Defendant, wherever located, including, but not limited to, "goods," "instruments," "equipment," "fixtures," "general intangibles," "inventory," "checks," "notes" (as these terms are defined in the Uniform Commercial Code), chattels, leaseholds, contracts, mails, other deliveries, shares of stock, lists of participants, intellectual property, accounts, credits, receivables, cash, and trusts, including, but not limited to, any other trust held for the benefit of any Defendant, any Defendant's minor children, or any Defendant's spouse.

B.    **"Defendants"** means Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., Willoughby Farr, Mary Lou Farr, Yaret Garcia, Erika Riaboukha, and Qaadir Kaid. Furthermore, any person insofar as he or she is acting in the capacity of an officer, agent, servant, employee or attorney of any defendant, and any person or entity in active concert or participation with any of the foregoing who receives actual notice of this Order by personal service or otherwise, is bound to comply with this Order, whether those persons or entities are acting directly or through a trust, corporation, subsidiary, division, or other device. *See* Fed. R. Civ. P. 65(d).

C.    **"Document"** is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes, but is not limited to, writings, drawings, graphs, charts, Internet sites, Web pages, Web sites, electronic correspondence,

3

00049

including e-mail and instant messages, photographs, audio and video recordings, computer records, whether active or inactive, and any other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

D.    **"Individual Defendants"** means Willoughby Farr, Mary Lou Farr, Yaret Garcia, Erika Riaboukha, and Qaadir Kaid.

E.    **"Long Distance Service Provider"** means an entity that transports long distance telephone calls.

F.    **"Plaintiff"** means the Federal Trade Commission.

G.    **"Receiver"** shall mean the receiver appointed in Paragraph VIII of this Order. The term "receiver" also includes any deputy receivers as may be named by the receiver.

H.    **"Receivership Defendants"** means: (1) Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc.; (2) the following affiliated entities acting in active concert or participation with them or the Individual Defendants, namely 411TXT, Inc., CELL-INFO-USA, Inc., Enhanced Billing Services, Inc., Toll Free Connect, Inc., Cripple Creek Holdings, LLC, Built to Last, LLC, Not Fade Away, LLC, He's Gone, LLC, The Other One, LLC, Turn on Your Love Light, LLC, China Cat Sunflower, LLC, Lazy River Road Holdings, LLC; and (3) any affiliates, fictitious names, subsidiaries, successors, assigns or d/b/as of the aforementioned entities.

I.    **"TRO"** means the *Ex Parte* Temporary Restraining Order with Asset Freeze and Other Equitable Relief issued by the Court in this matter on February 27, 2006.

4

## PROHIBITED BUSINESS ACTIVITIES

### I.

**IT IS THEREFORE ORDERED** that Defendants, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from directly or indirectly misrepresenting, expressly or by implication, that a consumer is obligated to pay any charge that has not been expressly authorized by the consumer.

### II.

**IT IS FURTHER ORDERED** that Defendants are hereby restrained and enjoined from billing or submitting any charge for billing on a consumer's telephone bill.

## ASSET FREEZE

### III.

**IT IS FURTHER ORDERED** that Defendants, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from:

A.    Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any funds, real or personal property, accounts, reserve accounts, contracts, consumer lists, shares of stock, or other assets, or any interest therein, wherever located, that are:  (1) owned or controlled by any Defendant, in whole or in part, for the benefit of any Defendant; (2) in the actual or constructive possession of any Defendant; or (3) owned, controlled by, or in the actual or constructive possession of any

5

00051

corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant, including, but not limited to, Cripple Creek Holdings, LLC, 411TXT, Inc., CELL-INFO-USA, Inc., Enhanced Billing Services, Inc., Toll Free Connect, Inc., and any assets held by or for, or subject to access by, any of Defendants, at any bank or savings and loan institution, or with any broker-dealer, escrow agent, title company, commodity trading company, precious metals dealer, billing aggregator, or other financial institution or depository of any kind;

B.    Opening or causing to be opened any safe deposit boxes titled in the name of any Defendant or any Defendant's minor child or any Defendant's spouse, or subject to access by any of them;

C.    Incurring charges or cash advances on any credit card issued in the name, singly or jointly, of any Defendant;

D.    Obtaining a personal or secured loan; and

E.    Incurring liens or other encumbrances on real property, personal property or other assets in the name, singly or jointly, of any Defendant.

*Provided further*, the assets affected by this Paragraph shall include: (1) all assets of Defendants as of the time the TRO was entered; and (2) for assets obtained after the time the TRO was entered, only those assets of Defendants that are derived from the actions alleged in the Commission's Complaint.

## FINANCIAL REPORTS AND ACCOUNTING

## IV.

**IT IS FURTHER ORDERED** that, to the extent that Defendants have not complied with Section III of the TRO, each Defendant shall immediately:

6

A.    Prepare and deliver to counsel for the FTC completed financial statements on the forms attached to the TRO as Attachments A and B, for themselves, individually or as corporations, and for each business entity under which they conduct business, or of which they are an officer, and for each trust of which they are a trustee. The financial statements shall be accurate as of the date of entry of the TRO; and

B.    Provide the Commission with a statement, verified under oath and accurate as of the date of entry of the TRO, detailing the name, address, and telephone number for each accountant, financial planner, investment advisor, stock broker, or other person who provided any Defendant with financial, business, or tax advice or services since January 1, 2004.

*Provided further,* the Commission and the Permanent Receiver are immediately authorized to issue subpoenas to demand the production of documents from any person or entity relating to the nature, status, extent, location or other relevant information relating to Defendants' assets, income, and financial records.

## FOREIGN ASSET REPATRIATION

## V.

IT IS FURTHER ORDERED that, to the extent that Defendants have not complied with Section IV of the TRO, each Defendant shall immediately:

A.    Provide the Commission and the Receiver with a full accounting of all funds, documents, and assets outside of the United States that are: (1) titled in the name, individually or jointly, of any Defendant or the spouse of any Defendant; or (2) held by any person or entity for the benefit of any Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Defendant;

7

B.     Transfer to the territory of the United States and deliver to the Receiver all funds, documents, and assets located in foreign countries that are: (1) titled in the name, individually or jointly, of any Defendant or the spouse of any Defendant; or (2) held by any person or entity, for the benefit of any Defendant; or (3) under any Defendant's direct or indirect control, whether jointly or singly; and

C.     Provide the Commission access to all records of accounts or assets of the Defendants held by financial institutions located outside the territorial United States by signing the Consent to Release of Financial Records attached to the TRO as Attachment C.

## INTERFERENCE WITH REPATRIATION

## VI.

IT IS FURTHER ORDERED that Defendants, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign assets, or in the hindrance of the repatriation required by the preceding Paragraph V of this Order, including but not limited to:

A.     Sending any statement, letter, fax, e-mail or wire transmission, telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time that all assets have been fully repatriated pursuant to Paragraph V of this Order; and

B.     Notifying any trustee, protector or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a Court Order, until such time that all assets have been fully repatriated pursuant to Paragraph V

8

of this Order.

## RETENTION OF ASSETS AND RECORDS BY FINANCIAL INSTITUTIONS

## VII.

**IT IS FURTHER ORDERED** that any financial or brokerage institution, business entity, or person served with a copy of this Order that holds, controls, or maintains custody of any account or asset of any Defendant, or has held, controlled or maintained custody of any such account or asset at any time since the date of entry of this Order, shall:

    A.    Hold and retain within its control and prohibit the withdrawal, removal, assignment, transfer, pledge, encumbrance, disbursement, dissipation, conversion, sale, or other disposal of any such asset except by further order of the Court;

    B.    Deny the Defendants access to any safe deposit box that is:

        1.    titled in any Defendants' name, individually or jointly; or

        2.    otherwise subject to access by any Defendant;

    C.    To the extent that such information has not already been provided to the Commission, provide the Commission's counsel, within five (5) business days of receiving a copy of this Order, a sworn statement setting forth:

        1.    the identification number of each such account or asset titled in the name, individually or jointly, of a Defendant, or held on behalf of, or for the benefit of a Defendant;

        2.    the balance of each such account, or a description of the nature and value of each such asset as of the close of business on the day on which this Order is served, and, if the account or other asset has been closed or removed, the

9

date closed or removed, the total funds removed in order to close the

account, and the name of the person or entity to whom such account or

other asset was remitted; and

3.    the identification of any safe deposit box that is titled in the name,

individually or jointly, of a Defendant, or is otherwise subject to access by a

Defendant.

D.    Upon request by the Commission, promptly provide the Commission with copies

of all records or other documentation pertaining to each such account or asset, including but not

limited to originals or copies of account applications, account statements, signature cards, checks,

drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or

slips, currency transaction reports, 1099 forms, and safe deposit box logs. Any such financial

institution, account custodian, or other aforementioned entity may arrange for the Commission to

obtain copies of any such records which the Commission seeks.

## APPOINTMENT OF PERMANENT RECEIVER

## VIII.

IT IS FURTHER ORDERED that David R. Chase of David R. Chase, P.A. is appointed

as Permanent Receiver for the Receivership Defendants. The Receiver shall be the agent of this

Court, and solely the agent of this Court, in acting as Receiver under this Order. The Receiver

shall be accountable directly to this Court. The Receiver shall comply with all Local Rules and

laws governing federal equity receivers.

10

00056

## RECEIVER'S DUTIES

## IX.

**IT IS FURTHER ORDERED** that the Receiver is authorized and directed to accomplish the following:

A.    Assume full control of the Receivership Defendants by removing, as the Receiver deems necessary or advisable, any director, officer, independent contractor, employee, or agent of any of the Receivership Defendants, including any Defendant, from control of, management of, or participation in, the affairs of the Receivership Defendants;

B.    Take exclusive custody, control, and possession of all assets and documents of, or in the possession, custody, or under the control of, the Receivership Defendants, wherever situated. The Receiver shall have full power to divert mail and to sue for, collect, receive, take in possession, hold, and manage all assets and documents of the Receivership Defendants and other persons or entities whose interests are now held by, or are under the direction, possession, custody, or control of, the Receivership Defendants. The Receiver shall assume control over the income and profits therefrom and all sums of money now or hereafter due or owing to the Receivership Defendants. *Provided, however*, that the Receiver shall not attempt to collect any amount from a consumer if the Receiver believes the consumer was a victim of the unfair or deceptive acts or practices alleged in the Complaint in this matter, without prior Court approval;

C.    Take all steps necessary to secure each location from which the Receivership Defendants operate their business. Such steps may include, but are not limited to, any of the following, as the Receiver deems necessary or advisable:  (1) serving this Order; (2) completing a written inventory of all receivership assets; (3) obtaining pertinent information from all employees

11

and other agents of the Receivership Defendants, including, but not limited to, the name, home address, social security number, job description, passwords or access codes, method of compensation, and all accrued and unpaid commissions and compensation of each such employee or agent; (4) photographing and video taping any or all portions of the location; (5) securing the location by changing the locks and disconnecting any computer modems or other means of access to the computer or other records maintained at that location; and (6) requiring any persons present on the premises at the time this Order is served to leave the premises, to provide the Receiver with proof of identification, or to demonstrate to the satisfaction of the Receiver that such persons are not removing from the premises documents or assets of the Receivership Defendants. Law enforcement personnel, including, but not limited to, police or sheriffs, may assist the Receiver in implementing these provisions in order to keep the peace and maintain security;

     D.    Conserve, hold, and manage all assets of the Receivership Defendants, and perform all acts necessary or advisable to preserve the value of those assets in order to prevent any irreparable loss, damage, or injury to consumers or creditors of the Receivership Defendants, including, but not limited to, obtaining an accounting of the assets and preventing unauthorized transfer, withdrawal, or misapplication of assets;

     E.    Enter into contracts and purchase insurance as advisable or necessary;

     F.    Prevent the inequitable distribution of assets and determine, adjust, and protect the interests of consumers and creditors who have transacted business with the Receivership Defendants;

     G.    Manage and administer the business of the Receivership Defendants until further order of this Court by performing all incidental acts that the Receiver deems to be advisable or

12

necessary, which includes retaining, hiring, or dismissing any employees, independent contractors, or agents;

H.      Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

I.      Have the sole authority to hire legal counsel on behalf of any of the Receivership Defendants;

J.      Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of or exercising the authority granted by this Order. The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Defendants prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure assets of the Receivership Defendants, such as rental payments;

K.      Institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal or foreign courts or arbitration proceedings as the Receiver deems necessary and advisable to preserve or recover the assets of the Receivership Defendants, or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order, including but not limited to, actions challenging fraudulent or voidable transfers;

L.      Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted in the past or in the future against the Receiver in his role as Receiver, or against the Receivership Defendants, as the Receiver deems necessary and advisable to preserve the assets of the Receivership Defendants, or as the Receiver deems necessary and advisable to

13

carry out the Receiver's mandate under this Order;

    M.    Continue to conduct the business, or cease operation of the business, of the Receivership Defendants in such manner, to such extent, and for such duration as the Receiver may in good faith deem to be necessary or appropriate to operate the businesses profitably and lawfully, if at all; *provided that*, the continuation and conduct of the business shall be conditioned upon the Receiver's good faith determination that the businesses can be lawfully operated at a profit using the assets of the receivership estate;

    N.    Immediately issue subpoenas and conduct discovery, including depositions, to obtain documents, records, and information pertaining to the receivership on behalf of the receivership estate;

    O.    Open one or more bank accounts as designated depositories for funds of the Receivership Defendants. The Receiver shall deposit all funds of the Receivership Defendants in such a designated account and shall make all payments and disbursements from the receivership estate from such an account. The Receiver shall serve copies of monthly account statements on all parties;

    P.    Maintain accurate records of all receipts and expenditures that he makes as Receiver; and

    Q.    Cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency.

## COOPERATION WITH THE RECEIVER

### X.

**IT IS FURTHER ORDERED** that Defendants and all other persons or entities served

14

00060