with a copy of this Order shall fully cooperate with and assist the Receiver. This cooperation and assistance shall include, but not be limited to, providing information to the Receiver that the Receiver deems necessary in order to exercise the authority and discharge the responsibilities of the Receiver under this Order; providing any password required to access any computer, electronic file, or telephonic data in any medium; and advising all persons who owe money to the Receivership Defendants that all debts should be paid directly to the Receiver. Defendants and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from directly or indirectly:

     A.    Transacting any of the business of the Receivership Defendants;

     B.    Destroying, secreting, defacing, transferring, or otherwise altering or disposing of any documents of the Receivership Defendants, including, but not limited to, books, records, accounts, writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations, electronically-stored records, or any other papers of any kind or nature;

     C.    Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Defendants, or the Receiver;

     D.    Excusing debts owed to the Receivership Defendants.

     E.    Failing to notify the Receiver of any asset, including accounts, of a Receivership Defendant held in any name other than the name of the Receivership Defendant, or by any person or entity other than the Receivership Defendant, or failing to provide any assistance or

15

00061

information requested by the Receiver in connection with obtaining possession, custody, or control of such assets; and

F.    Doing any act or refraining from any act whatsoever to interfere with the Receiver managing, or taking custody, control, or possession of, the assets or documents subject to this receivership; or to harass or interfere with the Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of the Receivership Defendants; or to refuse to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any order of this Court.

## DELIVERY OF RECEIVERSHIP PROPERTY

## XI.

IT IS FURTHER ORDERED that:

A.    Immediately upon service of this Order upon them, or within such period as may be permitted by the Receiver, Defendants and any person or entity served with a copy of this Order shall transfer or deliver possession, custody, and control of the following to the Receiver:

    1.    All assets of the Receivership Defendants;

    2.    All documents of the Receivership Defendants, including, but not limited to, books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), client lists, title documents and other papers;

    3.    All assets belonging to members of the public now held by the Receivership Defendants; and

16

4. All keys, codes, and passwords necessary to gain or to secure access to any assets or documents of the Receivership Defendants, including, but not limited to, access to their business premises, means of communication, accounts, computer systems, or other property.

B. In the event any person or entity fails to deliver or transfer any asset or otherwise fails to comply with any provision of this Paragraph, the Receiver may file *ex parte* an Affidavit of Non-Compliance regarding the failure. Upon filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Receiver. The writs shall authorize and direct the United States Marshal or any sheriff or deputy sheriff of any county, or any other federal or state law enforcement officer, to seize the asset, document, or other thing and to deliver it to the Receiver.

## TRANSFER OF FUNDS TO THE RECEIVER

## XII.

IT IS FURTHER ORDERED that, upon service of a copy of this Order, all banks, broker-dealers, savings and loans, escrow agents, title companies, commodity trading companies, precious metals dealers and other financial institutions and depositories of any kind, and all third-party billing agents, local exchange carriers, common carriers, and other telecommunications companies shall cooperate with all reasonable requests of the FTC and the Receiver relating to implementation of this Order, including transferring funds at the Receiver's direction and producing records related to the assets and sales of the Receivership Defendants.

17

## COMPENSATION OF RECEIVER

### XIII.

**IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by, in the possession or control of, or which may be received by, the Receivership Defendants. The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of this Order. The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

## PRODUCTION OF RECORDS

### XIV.

**IT IS FURTHER ORDERED** that, to the extent that Defendants have not complied with Section XIV of the TRO with respect to producing: (1) documents owned by or in the custody or control of the Defendants concerning Defendants' business practices or finances; or (2) computers owned by or in the custody or control of the Defendants that are being used or have been used in connection with Defendants' business practices or finances, which documents or computers were not located at the Defendants' business premises at 215 Fifth Street, Suite 306, West Palm Beach, Florida 33401 during the Immediate Access that took place on March 1, 2006, each Defendant shall immediately identify and produce to the Receiver such documents and computers for copying and inspection. Any such computers shall immediately be powered down (turned off) in

18

the normal course for the operating systems used on such computers and shall not be used until produced for copying and inspection, along with any codes needed for access.

B.    Defendants and all employees or agents of Defendants shall provide the FTC and the Receiver with any necessary means of access to documents and records, including, without limitation, the locations of Defendants' business premises, keys and combinations to locks, computer access codes, and storage area access information.

C.    To the extent that Defendants have not complied with Section XIV of the TRO, each Defendant shall produce to the Receiver a list of all agents, employees, officers, servants and those persons in active concert and participation with them, who have been associated or done business with the Receivership Defendants.

### DEFENDANTS' ACCESS TO THEIR BUSINESS PREMISES

### XV.

**IT IS FURTHER ORDERED** that the Receiver shall allow the Defendants and their representatives reasonable access to the premises of the Receivership Defendants. The purpose of this access shall be to inspect and copy any and all books, records, accounts, and other property owned by or in the possession of the Receivership Defendants. The Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access.

### PRESERVATION OF RECORDS

### XVI.

**IT IS FURTHER ORDERED** that Defendants, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from destroying, erasing, mutilating, concealing, altering,

19

transferring, writing over, or otherwise disposing of, in any manner, directly or indirectly, any documents or records of any kind that relate to the business practices or business or personal finances of Defendants, including but not limited to, computerized files and storage media, contracts, accounting data, correspondence, advertisements, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, copies of federal, state or local business or personal income or property tax returns, and other documents or records of any kind that relate to the business practices or business or personal finances of Defendants.

## RECORD KEEPING/BUSINESS OPERATIONS

## XVII.

IT IS FURTHER ORDERED that Defendants are hereby restrained and enjoined from:

A.      Failing to create and maintain documents that, in reasonable detail, accurately, fairly, and completely reflect their incomes, disbursements, transactions, and use of money; and

B.      Creating, operating, or exercising any control over any business entity, including any partnership, limited partnership, joint venture, sole proprietorship or corporation, without first providing the Commission with a written statement disclosing: (1) the name of the business entity; (2) the address and telephone number of the business entity; (3) the names of the business entity's officers, directors, principals, managers and employees; and (4) a detailed description of the business entity's intended activities.

## IDENTIFICATION OF PROVIDERS AND CUSTOMERS

## XVIII.

IT IS FURTHER ORDERED that, to the extent that Defendants have not complied with

20

Section XVIII of the TRO, Defendants shall:

A.    Prepare and deliver to counsel for Plaintiff a completed statement, verified under oath and accurate as of the date of entry of this Order, identifying each long distance service provider that provided services to consumers in connection with any collect calls that were billed on behalf of Defendants; and

B.    Prepare and deliver to counsel for Plaintiff a completed statement, verified under oath and accurate as of the date of entry of this Order, detailing the collect calls that were billed on behalf of Defendants during 2005, including the calling telephone numbers, the recipient telephone numbers, and the date and time of the calls.

## STAY OF ACTIONS

### XIX.

**IT IS FURTHER ORDERED** that:

A.    Except by leave of this Court, during pendency of the receivership ordered herein, Defendants, and all customers, principals, investors, creditors, stockholders, lessors, and other persons seeking to establish or enforce any claim, right, or interest against or on behalf of the Defendants, and all others acting for or on behalf of such persons, including attorneys, trustees, agents, sheriffs, constables, marshals, and other officers and their deputies, and their respective attorneys, servants, agents and employees, be and are hereby stayed from:

1.    Commencing, prosecuting, continuing, entering, or enforcing any suit or proceeding against a Receivership Defendant, except that such actions may be filed to toll any applicable statute of limitations;

2.    Accelerating the due date of any obligation or claimed obligation against a

21

Receivership Defendant; filing or enforcing any lien against a Receivership Defendant; taking or attempting to take possession, custody, or control of any asset of a Receivership Defendant; attempting to foreclose, forfeit, alter, or terminate any interest in any asset of a Receivership Defendant, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise;

3. Executing, issuing, serving, or causing the execution, issuance or service of, any legal process against a Receivership Defendant, including, but not limited to, attachments, garnishments, subpoenas, writs of replevin, writs of execution, or any other form of process whether specified in this Order or not;

4. Causing any Receivership Defendant to be placed in involuntary bankruptcy; or

5. Doing any act or thing whatsoever to interfere with the Receiver managing, or taking custody, control, or possession of, the assets or documents subject to this receivership, or to harass or interfere with the Receiver in any way, or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of the Receivership Defendants.

B. This paragraph does not stay the commencement or continuation of a criminal action or proceeding.

22

00068

RER-6        0205

## DISTRIBUTION OF ORDER BY DEFENDANTS

## XX.

**IT IS FURTHER ORDERED** that Defendants shall immediately provide a copy of this Order to each affiliate marketer, sub-affiliate marketer, affiliate, billing aggregator, subsidiary, division, sales entity, successor, assign, officer, director, employee, independent contractor, client company, agent, attorney, spouse and representative of Defendants, and shall, within ten (10) days from the date of entry of this Order, provide the Commission with a sworn statement that Defendants have complied with this provision of the Order, which statement shall include the names, physical addresses, and e-mail addresses of each such person or entity who received a copy of the Order.

## SERVICE OF ORDER

## XXI.

**IT IS FURTHER ORDERED** that copies of this Order may be served by any means, including facsimile transmission or email, upon any financial institution or other entity or person that may have possession, custody, or control of any documents of any Defendant, or that may otherwise be subject to any provision of this Order. Service upon any branch or office of any financial institution shall effect service upon the entire financial institution.

## CONSUMER CREDIT REPORTS

## XXII.

**IT IS FURTHER ORDERED** that, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(1), any consumer reporting agency may furnish a consumer report concerning Defendants to the Commission.

23

## SERVICE UPON PLAINTIFF

### XXIII.

IT IS FURTHER ORDERED that, with regard to any correspondence or pleadings related to this Order, service on the Commission shall be performed electronically or by overnight mail to the attention of Laura Kim at the Federal Trade Commission, 600 Pennsylvania Avenue, NW, Room H-238, Washington, DC 20580.

## RETENTION OF JURISDICTION

### XXIV.

IT IS FURTHER ORDERED that this Court shall retain jurisdiction of this matter for all purposes.

SO ORDERED, this __8__ day of _March_____, 2006, at _10_$\frac{35}{}$ A.m.

_Kenneth L. Ryskamp_

KENNETH L. RYSKAMP
United States District Judge

24

00070

RER-6        0207

# EXHIBIT D

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 06-80180 - CIV-RYSKAMP

FEDERAL TRADE COMMISSION,                    )
                                             )
           Plaintiff,                )
                                             )
vs.                                          )   **AMENDED**
                                             )   **PRELIMINARY INJUNCTION**
NATIONWIDE CONNECTIONS, INC.,                )   **ORDER**
ACCESS ONE COMMUNICATIONS, INC.,             )
NETWORK ONE SERVICES, INC.,                  )
WILLOUGHBY FARR,                             )
MARY LOU FARR,                               )
YARET GARCIA,                                )
ERIKA RIABOUKHA,                             )
QAADIR KAID,                                 )
                                             )
           Defendants.               )

FILED by _JW_ D.C.

SEP 2 5 2006

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

On February 27, 2006, the Federal Trade Commission ("FTC" or "Commission") filed a Complaint for Injunctive and Other Equitable Relief, including consumer redress, pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), and applied *ex parte* for a Temporary Restraining Order and Other Equitable Relief ("*Ex Parte* Motion"). On that same day, this Court, having considered the Complaint, Memorandum of Points and Authorities, declarations, and other exhibits filed in support of Plaintiff's *Ex Parte* Motion, issued a Temporary Restraining Order, including an asset freeze and appointment of a temporary receiver. A Preliminary Injunction was issued by this Court on March 8, 2006. On August 21, 2006, the FTC filed a Motion to Modify the Preliminary Injunction to include Willoughby Farr and Mary Lou Farr as "Receivership Defendants," and other related modifications.

EXHIBIT D

233/RB

# FINDINGS OF FACT

The Court has considered the pleadings, declarations, exhibits, and memoranda filed in support of the Commission's motions and finds that:

1.  This Court has jurisdiction over the subject matter of this case, and there is good cause to believe that it will have jurisdiction over all parties hereto.

2.  There is good cause to believe that Defendants Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., Willoughby Farr, Mary Lou Farr, Yaret Garcia, Erika Riaboukha, and Qaadir Kaid have engaged and are likely to engage in acts or practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and that the Commission has demonstrated a substantial likelihood of prevailing on the merits of this action.

3.  There is good cause to believe that immediate and irreparable damage will result from Defendants' ongoing violations of Section 5(a) of the FTC Act.

4.  There is a substantial likelihood that, absent the continuation of the asset freeze and the receivership, Defendants will conceal, dissipate, or otherwise divert their assets, and thereby defeat the possibility of effective final relief in the form of equitable monetary relief. Defendants have engaged in the widespread unauthorized billing of collect telephone calls in violation of Section 5 of the FTC Act. Defendants have retained ill-gotten gains from these practices, and a receiver and asset freeze are reasonably necessary in order to preserve the possibility of complete and meaningful relief at the conclusion of this litigation.

5.  As a result of Willoughby Farr's and Mary Lou Farr's contumacious conduct since the

2

entry of the Temporary Restraining Order, modification of the Preliminary Injunction to include Willoughby Farr and Mary Lou Farr as "Receivership Defendants" is necessary to prevent the risk of further dissipation of frozen assets.

6.    Weighing the equities and considering the FTC's substantial likelihood of success on the merits, issuance of a preliminary injunction with asset freeze and appointment of a permanent receiver are in the public interest.

7.    Fed. R. Civ. P. 65(c) does not require security of the United States or an officer or agency thereof for the issuance of a restraining order.

## DEFINITIONS

For the purpose of this Preliminary Injunction Order ("Order"), the following definitions shall apply:

A.    "Assets" means any legal or equitable interest in, right to, or claim to any real or personal property of any Defendant, or held for the benefit of any Defendant, wherever located, including, but not limited to, "goods," "instruments," "equipment," "fixtures," "general intangibles," "inventory," "checks," "notes" (as these terms are defined in the Uniform Commercial Code), chattels, leaseholds, contracts, mails, other deliveries, shares of stock, lists of participants, intellectual property, accounts, credits, receivables, cash, and trusts, including, but not limited to, any other trust held for the benefit of any Defendant, any Defendant's minor children, or any Defendant's spouse.

B.    "Defendants" means Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., Willoughby Farr, Mary Lou Farr, Yaret Garcia, Erika Riaboukha, and Qaadir Kaid. Furthermore, any person insofar as he or she is acting in

3

00074

RER-6    0211

the capacity of an officer, agent, servant, employee or attorney of any defendant, and any person or entity in active concert or participation with any of the foregoing who receives actual notice of this Order by personal service or otherwise, is bound to comply with this Order, whether those persons or entities are acting directly or through a trust, corporation, subsidiary, division, or other device. *See* Fed. R. Civ. P. 65(d).

C.    "Document" is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes, but is not limited to, writings, drawings, graphs, charts, Internet sites, Web pages, Web sites, electronic correspondence, including e-mail and instant messages, photographs, audio and video recordings, computer records, whether active or inactive, and any other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

D.    "Individual Defendants" means Willoughby Farr, Mary Lou Farr, Yaret Garcia, Erika Riaboukha, and Qaadir Kaid.

E.    "Long Distance Service Provider" means an entity that transports long distance telephone calls.

F.    "Plaintiff" means the Federal Trade Commission.

G.    "Receiver" shall mean the receiver appointed in Paragraph VIII of this Order. The term "receiver" also includes any deputy receivers as may be named by the receiver.

H.    "Receivership Defendants" means: (1) Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc.; (2) the following affiliated entities

4

acting in active concert or participation with them or the Individual Defendants, namely 411TXT, Inc., CELL-INFO-USA, Inc., Enhanced Billing Services, Inc., Toll Free Connect, Inc., Cripple Creek Holdings, LLC, Built to Last, LLC, Not Fade Away, LLC, He's Gone, LLC, The Other One, LLC, Turn on Your Love Light, LLC, China Cat Sunflower, LLC, Lazy River Road Holdings, LLC; (3) any affiliates, fictitious names, subsidiaries, successors, assigns or d/b/as of the aforementioned entities; (4) Willoughby Farr; and (5) Mary Lou Farr.

I.     . "TRO" means the *Ex Parte* Temporary Restraining Order with Asset Freeze and Other Equitable Relief issued by the Court in this matter on February 27, 2006.

## PROHIBITED BUSINESS ACTIVITIES

### I.

IT IS THEREFORE ORDERED that Defendants, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from directly or indirectly misrepresenting, expressly or by implication, that a consumer is obligated to pay any charge that has not been expressly authorized by the consumer.

### II.

IT IS FURTHER ORDERED that Defendants are hereby restrained and enjoined from billing or submitting any charge for billing on a consumer's telephone bill.

## ASSET FREEZE

### III.

IT IS FURTHER ORDERED that Defendants, and those persons in active concert or

5

participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from:

A.    Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any funds, real or personal property, accounts, reserve accounts, contracts, consumer lists, shares of stock, or other assets, or any interest therein, wherever located, that are:  (1) owned or controlled by any Defendant, in whole or in part, for the benefit of any Defendant; (2) in the actual or constructive possession of any Defendant; or (3) owned, controlled by, or in the actual or constructive possession of any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant, including, but not limited to, Cripple Creek Holdings, LLC, 411TXT, Inc., CELL-INFO-USA, Inc., Enhanced Billing Services, Inc., Toll Free Connect, Inc., and any assets held by or for, or subject to access by, any of Defendants, at any bank or savings and loan institution, or with any broker-dealer, escrow agent, title company, commodity trading company, precious metals dealer, billing aggregator, or other financial institution or depository of any kind;

B.    Opening or causing to be opened any safe deposit boxes titled in the name of any Defendant or any Defendant's minor child or any Defendant's spouse, or subject to access by any of them;

C.    Incurring charges or cash advances on any credit card issued in the name, singly or jointly, of any Defendant;

D.    Obtaining a personal or secured loan; and

E.    Incurring liens or other encumbrances on real property, personal property or other

6

assets in the name, singly or jointly, of any Defendant.

*Provided further,* the assets affected by this Paragraph shall include: (1) all assets of Defendants as of the time the TRO was entered; and (2) for assets obtained after the time the TRO was entered, only those assets of Defendants that are derived from the actions alleged in the Commission's Complaint.

## FINANCIAL REPORTS AND ACCOUNTING

## IV.

**IT IS FURTHER ORDERED** that, to the extent that Defendants have not complied with Section III of the TRO, each Defendant shall immediately:

A.     Prepare and deliver to counsel for the FTC completed financial statements on the forms attached to the TRO as Attachments A and B, for themselves, individually or as corporations, and for each business entity under which they conduct business, or of which they are an officer, and for each trust of which they are a trustee. The financial statements shall be accurate as of the date of entry of the TRO; and

B.     Provide the Commission with a statement, verified under oath and accurate as of the date of entry of the TRO, detailing the name, address, and telephone number for each accountant, financial planner, investment advisor, stock broker, or other person who provided any Defendant with financial, business, or tax advice or services since January 1, 2004.

*Provided further,* the Commission and the Permanent Receiver are immediately authorized to issue subpoenas to demand the production of documents from any person or entity relating to the nature, status, extent, location or other relevant information relating to Defendants' assets, income, and financial records.

7

00078

# FOREIGN ASSET REPATRIATION

## V.

IT IS FURTHER ORDERED that, to the extent that Defendants have not complied with Section IV of the TRO, each Defendant shall immediately:

A.     Provide the Commission and the Receiver with a full accounting of all funds, documents, and assets outside of the United States that are: (1) titled in the name, individually or jointly, of any Defendant or the spouse of any Defendant; or (2) held by any person or entity for the benefit of any Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Defendant;

B.     Transfer to the territory of the United States and deliver to the Receiver all funds, documents, and assets located in foreign countries that are: (1) titled in the name, individually or jointly, of any Defendant or the spouse of any Defendant; or (2) held by any person or entity, for the benefit of any Defendant; or (3) under any Defendant's direct or indirect control, whether jointly or singly; and

C.     Provide the Commission access to all records of accounts or assets of the Defendants held by financial institutions located outside the territorial United States by signing the Consent to Release of Financial Records attached to the TRO as Attachment C.

## INTERFERENCE WITH REPATRIATION

## VI.

IT IS FURTHER ORDERED that Defendants, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from taking any action, directly or indirectly, which may result

8

00079

RER-6          0216

in the encumbrance or dissipation of foreign assets, or in the hindrance of the repatriation required by the preceding Paragraph V of this Order, including but not limited to:

A. Sending any statement, letter, fax, e-mail or wire transmission, telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time that all assets have been fully repatriated pursuant to Paragraph V of this Order; and

B. Notifying any trustee, protector or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a Court Order, until such time that all assets have been fully repatriated pursuant to Paragraph V of this Order.

## RETENTION OF ASSETS AND RECORDS BY FINANCIAL INSTITUTIONS

## VII.

IT IS FURTHER ORDERED that any financial or brokerage institution, business entity, or person served with a copy of this Order that holds, controls, or maintains custody of any account or asset of any Defendant, or has held, controlled or maintained custody of any such account or asset at any time since the date of entry of this Order, shall:

A. Hold and retain within its control and prohibit the withdrawal, removal, assignment, transfer, pledge, encumbrance, disbursement, dissipation, conversion, sale, or other disposal of any such asset except by further order of the Court;

B. Deny the Defendants access to any safe deposit box that is:

1. titled in any Defendants' name, individually or jointly; or

2. otherwise subject to access by any Defendant;

9

00080

C. To the extent that such information has not already been provided to the Commission, provide the Commission's counsel, within five (5) business days of receiving a copy of this Order, a sworn statement setting forth:

    1. the identification number of each such account or asset titled in the name, individually or jointly, of a Defendant, or held on behalf of, or for the benefit of a Defendant;

    2. the balance of each such account, or a description of the nature and value of each such asset as of the close of business on the day on which this Order is served, and, if the account or other asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other asset was remitted; and

    3. the identification of any safe deposit box that is titled in the name, individually or jointly, of a Defendant, or is otherwise subject to access by a Defendant.

D. Upon request by the Commission, promptly provide the Commission with copies of all records or other documentation pertaining to each such account or asset, including but not limited to originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs. Any such financial institution, account custodian, or other aforementioned entity may arrange for the Commission to obtain copies of any such records which the Commission seeks.

10

00081

## APPOINTMENT OF PERMANENT RECEIVER

### VIII.

IT IS FURTHER ORDERED that David R. Chase of David R. Chase, P.A. is appointed as Permanent Receiver for the Receivership Defendants. The Receiver shall be the agent of this Court, and solely the agent of this Court, in acting as Receiver under this Order. The Receiver shall be accountable directly to this Court. The Receiver shall comply with all Local Rules and laws governing federal equity receivers.

### RECEIVER'S DUTIES

### IX.

IT IS FURTHER ORDERED that the Receiver is authorized and directed to accomplish the following:

    A.    Assume full control of the Receivership Defendants, except as to Receivership Defendants Willoughby Farr and Mary Lou Farr, by removing, as the Receiver deems necessary or advisable, any director, officer, independent contractor, employee, or agent of any of the Receivership Defendants, including any Defendant, from control of, management of, or participation in, the affairs of the Receivership Defendants;

    B.    Take exclusive custody, control, and possession of all assets and documents of, or in the possession, custody, or under the control of, the Receivership Defendants, wherever situated. The Receiver shall have full power to divert mail and to sue for, collect, receive, take in possession, hold, and manage all assets and documents of the Receivership Defendants and other persons or entities whose interests are now held by, or are under the direction, possession, custody, or control of, the Receivership Defendants. The Receiver shall assume control over the

11

RER-6      0219

income and profits therefrom and all sums of money now or hereafter due or owing to the Receivership Defendants. *Provided, however,* that the Receiver shall not attempt to collect any amount from a consumer if the Receiver believes the consumer was a victim of the unfair or deceptive acts or practices alleged in the Complaint in this matter, without prior Court approval. *Notwithstanding the authority of this paragraph,* the Receiver shall not, without further order of this Court: (1) divert mail addressed to Willoughby Farr or Mary Lou Farr at their residences; or (2) take control of any bank account opened by Willoughby Farr or Mary Lou Farr after the entry of the TRO; or (3) take control of those assets of Willoughby Farr or Mary Lou Farr that are both (a) obtained after the time the TRO was entered, and (b) not derived from the actions alleged in the Commission's Complaint;

    C.    Take all steps necessary to secure each location from which the Receivership Defendants operate their business. Such steps may include, but are not limited to, any of the following, as the Receiver deems necessary or advisable: (1) serving this Order; (2) completing a written inventory of all receivership assets; (3) obtaining pertinent information from all employees and other agents of the Receivership Defendants, including, but not limited to, the name, home address, social security number, job description, passwords or access codes, method of compensation, and all accrued and unpaid commissions and compensation of each such employee or agent; (4) photographing and video taping any or all portions of the location; (5) securing the location by changing the locks and disconnecting any computer modems or other means of access to the computer or other records maintained at that location; and (6) requiring any persons present on the premises at the time this Order is served to leave the premises, to provide the Receiver with proof of identification, or to demonstrate to the satisfaction of the Receiver that such persons are

12

not removing from the premises documents or assets of the Receivership Defendants. Law enforcement personnel, including, but not limited to, police or sheriffs, may assist the Receiver in implementing these provisions in order to keep the peace and maintain security;

D.    Conserve, hold, and manage all assets of the Receivership Defendants, and perform all acts necessary or advisable to preserve the value of those assets in order to prevent any irreparable loss, damage, or injury to consumers or creditors of the Receivership Defendants, including, but not limited to, obtaining an accounting of the assets and preventing unauthorized transfer, withdrawal, or misapplication of assets;

E.    Enter into contracts and purchase insurance as advisable or necessary;

F.    Prevent the inequitable distribution of assets and determine, adjust, and protect the interests of consumers and creditors who have transacted business with the Receivership Defendants;

G.    Manage and administer the business of the Receivership Defendants, except any business entered into by Receivership Defendants Willoughby Farr or Mary Lou Farr after entry of this Order that does not violate the Prohibited Business Activities set forth in Sections I and II of this Order, until further order of this Court by performing all incidental acts that the Receiver deems to be advisable or necessary, which includes retaining, hiring, or dismissing any employees, independent contractors, or agents;

H.    Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

I.    Have the sole authority to hire legal counsel on behalf of any of the Receivership

13

00084

Defendants, except as to Receivership Defendants Willoughby Farr or Mary Lou Farr;

J.    Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of or exercising the authority granted by this Order. The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Defendants prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure assets of the Receivership Defendants, such as rental payments;

K.    Institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal or foreign courts or arbitration proceedings as the Receiver deems necessary and advisable to preserve or recover the assets of the Receivership Defendants, or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order, including but not limited to, actions challenging fraudulent or voidable transfers;

L.    Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted in the past or in the future against the Receiver in his role as Receiver, or against the Receivership Defendants, as the Receiver deems necessary and advisable to preserve the assets of the Receivership Defendants, or as the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

M.    Continue to conduct the business, or cease operation of the business, of the Receivership Defendants in such manner, to such extent, and for such duration as the Receiver may in good faith deem to be necessary or appropriate to operate the businesses profitably and lawfully, if at all; *provided that*, the continuation and conduct of the business shall be conditioned upon the Receiver's good faith determination that the businesses can be lawfully operated at a

14

profit using the assets of the receivership estate;

N.    Immediately issue subpoenas and conduct discovery, including depositions, to obtain documents, records, and information pertaining to the receivership on behalf of the receivership estate;

O.    Open one or more bank accounts as designated depositories for funds of the Receivership Defendants. The Receiver shall deposit all funds of the Receivership Defendants in such a designated account and shall make all payments and disbursements from the receivership estate from such an account. The Receiver shall serve copies of monthly account statements on all parties;

P.    Maintain accurate records of all receipts and expenditures that he makes as Receiver; and

Q.    Cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency.

## COOPERATION WITH THE RECEIVER

## X.

IT IS FURTHER ORDERED that Defendants and all other persons or entities served with a copy of this Order shall fully cooperate with and assist the Receiver. This cooperation and assistance shall include, but not be limited to, providing information to the Receiver that the Receiver deems necessary in order to exercise the authority and discharge the responsibilities of the Receiver under this Order; providing any password required to access any computer, electronic file, or telephonic data in any medium; and advising all persons who owe money to the Receivership Defendants that all debts should be paid directly to the Receiver. Defendants and

15

those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from directly or indirectly:

A.    Transacting any of the business of the Receivership Defendants;

B.    Destroying, secreting, defacing, transferring, or otherwise altering or disposing of any documents of the Receivership Defendants, including, but not limited to, books, records, accounts, writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations, electronically-stored records, or any other papers of any kind or nature;

C.    Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Defendants, or the Receiver;

D.    Excusing debts owed to the Receivership Defendants;

E.    Failing to notify the Receiver of any asset, including accounts, of a Receivership Defendant held in any name other than the name of the Receivership Defendant, or by any person or entity other than the Receivership Defendant, or failing to provide any assistance or information requested by the Receiver in connection with obtaining possession, custody, or control of such assets; and

F.    Doing any act or refraining from any act whatsoever to interfere with the Receiver managing, or taking custody, control, or possession of, the assets or documents subject to this receivership; or to harass or interfere with the Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of the Receivership

16

Defendants; or to refuse to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any order of this Court.

## DELIVERY OF RECEIVERSHIP PROPERTY

### XI.

. IT IS FURTHER ORDERED that:

A.    Immediately upon service of this Order upon them, or within such period as may be permitted by the Receiver, Defendants and any person or entity served with a copy of this Order shall transfer or deliver possession, custody, and control of the following to the Receiver:

    1.    All assets of the Receivership Defendants, except for those assets of Willoughby Farr or Mary Lou Farr that are both (a) obtained after the time the TRO was entered, and (b) not derived from the actions alleged in the Commission's Complaint;

    2.    All documents of the Receivership Defendants, including, but not limited to, books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), client lists, title documents and other papers;

    3.    All assets belonging to members of the public now held by the Receivership Defendants; and

    4.    All keys, codes, and passwords necessary to gain or to secure access to any assets or documents of the Receivership Defendants, including, but not limited to, access to their business premises, means of communication,

17

accounts, computer systems, or other property.

B.    In the event any person or entity fails to deliver or transfer any asset or otherwise fails to comply with any provision of this Paragraph, the Receiver may file *ex parte* an Affidavit of Non-Compliance regarding the failure. Upon filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Receiver. The writs shall authorize and direct the United States Marshal or any sheriff or deputy sheriff of any county, or any other federal or state law enforcement officer, to seize the asset, document, or other thing and to deliver it to the Receiver.

## TRANSFER OF FUNDS TO THE RECEIVER

## XII.

IT IS FURTHER ORDERED that, upon service of a copy of this Order, all banks, broker-dealers, savings and loans, escrow agents, title companies, commodity trading companies, precious metals dealers and other financial institutions and depositories of any kind, and all third-party billing agents, local exchange carriers, common carriers, and other telecommunications companies shall cooperate with all reasonable requests of the FTC and the Receiver relating to implementation of this Order, including transferring funds at the Receiver's direction and producing records related to the assets and sales of the Receivership Defendants.

## COMPENSATION OF RECEIVER

## XIII.

IT IS FURTHER ORDERED that the Receiver and all personnel hired by the Receiver, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses

18

00089

incurred by them, from the assets now held by, in the possession or control of, or which may be received by, the Receivership Defendants. The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of this Order. The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

## PRODUCTION OF RECORDS

### XIV.

IT IS FURTHER ORDERED that, to the extent that Defendants have not complied with Section XIV of the TRO with respect to producing: (1) documents owned by or in the custody or control of the Defendants concerning Defendants' business practices or finances; or (2) computers owned by or in the custody or control of the Defendants that are being used or have been used in connection with Defendants' business practices or finances, which documents or computers were not located at the Defendants' business premises at 215 Fifth Street, Suite 306, West Palm Beach, Florida 33401 during the Immediate Access that took place on March 1, 2006, each Defendant shall immediately identify and produce to the Receiver such documents and computers for copying and inspection. Any such computers shall immediately be powered down (turned off) in the normal course for the operating systems used on such computers and shall not be used until produced for copying and inspection, along with any codes needed for access.

B.     Defendants and all employees or agents of Defendants shall provide the FTC and the Receiver with any necessary means of access to documents and records, including, without limitation, the locations of Defendants' business premises, keys and combinations to locks,

19

computer access codes, and storage area access information.

C.  To the extent that Defendants have not complied with Section XIV of the TRO, each Defendant shall produce to the Receiver a list of all agents, employees, officers, servants and those persons in active concert and participation with them, who have been associated or done business with the Receivership Defendants.

## DEFENDANTS' ACCESS TO THEIR BUSINESS PREMISES

### XV.

IT IS FURTHER ORDERED that the Receiver shall allow the Defendants and their representatives reasonable access to the premises of the Receivership Defendants. The purpose of this access shall be to inspect and copy any and all books, records, accounts, and other property owned by or in the possession of the Receivership Defendants. The Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access.

## PRESERVATION OF RECORDS

### XVI.

IT IS FURTHER ORDERED that Defendants, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from destroying, erasing, mutilating, concealing, altering, transferring, writing over, or otherwise disposing of, in any manner, directly or indirectly, any documents or records of any kind that relate to the business practices or business or personal finances of Defendants, including but not limited to, computerized files and storage media, contracts, accounting data, correspondence, advertisements, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check

20

registers, bank statements, appointment books, copies of federal, state or local business or

personal income or property tax returns, and other documents or records of any kind that relate to

the business practices or business or personal finances of Defendants.

### RECORD KEEPING/BUSINESS OPERATIONS

### XVII.

IT IS FURTHER ORDERED that Defendants are hereby restrained and enjoined from:

A.     Failing to create and maintain documents that, in reasonable detail, accurately,

fairly, and completely reflect their incomes, disbursements, transactions, and use of money; and

B.     Creating, operating, or exercising any control over any business entity, including

any partnership, limited partnership, joint venture, sole proprietorship or corporation, without first

providing the Commission with a written statement disclosing:  (1) the name of the business

entity; (2) the address and telephone number of the business entity; (3) the names of the business

entity's officers, directors, principals, managers and employees; and (4) a detailed description of

the business entity's intended activities.

### IDENTIFICATION OF PROVIDERS AND CUSTOMERS

### XVIII.

IT IS FURTHER ORDERED that, to the extent that Defendants have not complied with

Section XVIII of the TRO, Defendants shall:

A.     Prepare and deliver to counsel for Plaintiff a completed statement, verified under

oath and accurate as of the date of entry of this Order, identifying each long distance service

provider that provided services to consumers in connection with any collect calls that were billed

on behalf of Defendants; and

21

B.    Prepare and deliver to counsel for Plaintiff a completed statement, verified under

oath and accurate as of the date of entry of this Order, detailing the collect calls that were billed on

behalf of Defendants during 2005, including the calling telephone numbers, the recipient

telephone numbers, and the date and time of the calls.

## STAY OF ACTIONS

## XIX.

IT IS FURTHER ORDERED that:

A.    Except by leave of this Court, during pendency of the receivership ordered herein,

Defendants, and all customers, principals, investors, creditors, stockholders, lessors, and other

persons seeking to establish or enforce any claim, right, or interest against or on behalf of the

Defendants, and all others acting for or on behalf of such persons, including attorneys, trustees,

agents, sheriffs, constables, marshals, and other officers and their deputies, and their respective

attorneys, servants, agents and employees, be and are hereby stayed from:

   1.    Commencing, prosecuting, continuing, entering, or enforcing any suit or

    proceeding against a Receivership Defendant, except that such actions may

    be filed to toll any applicable statute of limitations;

   2.    Accelerating the due date of any obligation or claimed obligation against a

    Receivership Defendant; filing or enforcing any lien against a Receivership

    Defendant; taking or attempting to take possession, custody, or control of

    any asset of a Receivership Defendant; attempting to foreclose, forfeit,

    alter, or terminate any interest in any asset of a Receivership Defendant,

    whether such acts are part of a judicial proceeding, are acts of self-help, or

22

otherwise;

3.    Executing, issuing, serving, or causing the execution, issuance or service of, any legal process against a Receivership Defendant, including, but not limited to, attachments, garnishments, subpoenas, writs of replevin, writs of execution, or any other form of process whether specified in this Order or not;

4.    Causing any Receivership Defendant to be placed in involuntary bankruptcy; or

5.    Doing any act or thing whatsoever to interfere with the Receiver managing, or taking custody, control, or possession of, the assets or documents subject to this receivership, or to harass or interfere with the Receiver in any way, or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of the Receivership Defendants.

B.    This paragraph does not stay: (a) the commencement or continuation of a criminal action or proceeding; or (b) any action brought against Willoughby Farr or Mary Lou Farr concerning any claim or action unrelated to Receivership assets.

## DISTRIBUTION OF ORDER BY DEFENDANTS

## XX.

IT IS FURTHER ORDERED that Defendants shall immediately provide a copy of this Order to each affiliate marketer, sub-affiliate marketer, affiliate, billing aggregator, subsidiary, division, sales entity, successor, assign, officer, director, employee, independent contractor, client company, agent, attorney, spouse and representative of Defendants, and shall, within ten (10) days

23

from the date of entry of this Order, provide the Commission with a sworn statement that Defendants have complied with this provision of the Order, which statement shall include the names, physical addresses, and e-mail addresses of each such person or entity who received a copy of the Order.

## SERVICE OF ORDER

### XXI.

IT IS FURTHER ORDERED that copies of this Order may be served by any means, including facsimile transmission or email, upon any financial institution or other entity or person that may have possession, custody, or control of any documents of any Defendant, or that may otherwise be subject to any provision of this Order. Service upon any branch or office of any financial institution shall effect service upon the entire financial institution.

## CONSUMER CREDIT REPORTS

### XXII.

IT IS FURTHER ORDERED that, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(1), any consumer reporting agency may furnish a consumer report concerning Defendants to the Commission.

## SERVICE UPON PLAINTIFF

### XXIII.

IT IS FURTHER ORDERED that, with regard to any correspondence or pleadings related to this Order, service on the Commission shall be performed electronically or by overnight mail to the attention of Laura Kim at the Federal Trade Commission, 600 Pennsylvania Avenue, NW, Room H-238, Washington, DC 20580.

24

## RETENTION OF JURISDICTION

### XXIV.

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all

purposes.

SO ORDERED, this _22_ day of _September_, 2006, at ____ .m.

_____
KENNETH L. RYSKAMP
United States District Judge

CC: all parties and
counsel of record

25

00096

RER-6    0233

# EXHIBIT E

00097

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 06-80180-CIV-RYSKAMP/VITUNAC

FILED by _____ D.C.

SEP 21 2006

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

FEDERAL TRADE COMMISSION,

                **Plaintiff,**

    v.

NATIONWIDE CONNECTIONS, INC.,
ACCESS ONE COMMUNICATIONS, INC.,
NETWORK ONE SERVICES, INC.,
WILLOUGHBY FARR,
MARY LOU FARR,
YARET GARCIA,
ERIKA RIABOUKHA,
QAADIR KAID,

BILLING CONCEPTS, INC.,
ACI BILLING SERVICES, INC.,
   d/b/a OAN,
BSG CLEARING SOLUTIONS NORTH
AMERICA, LLC, and

THE BILLING RESOURCE,
   d/b/a INTEGRETEL

                **Defendants.**

**PLAINTIFF FEDERAL
TRADE COMMISSION'S
FIRST AMENDED
COMPLAINT**

Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), for its complaint alleges as follows:

    1.    The Commission brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), to obtain preliminary and permanent injunctive relief, including rescission, restitution, redress, disgorgement, and other equitable

First Amended Complaint

EXHIBIT E

relief for Defendants' deceptive and unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45.

## JURISDICTION AND VENUE

2.      Subject matter jurisdiction is conferred upon this Court by 15 U.S.C. §§ 45(a), 53(b), and 28 U.S.C. §§ 1331, 1337(a), and 1345.

3.      Venue in this District is proper under 15 U.S.C. § 53(b) and 28 U.S.C. §§ 1391(b) and (c).

## PLAINTIFF

4.      Plaintiff, the Federal Trade Commission, is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41 *et seq.* The Commission is charged, *inter alia*, with enforcement of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The Commission is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and to secure such equitable relief as may be appropriate.

## DEFENDANTS

5.      Defendant Nationwide Connections, Inc. ("Nationwide") is a Florida corporation with its principal place of business located at 215 Fifth Street, Suite 306, West Palm Beach, Florida 33401. At various times, Nationwide also has represented its principal place of business to be 222 Lakeview Avenue, Suite 160, Box 157, West Palm Beach, Florida 33401. Defendant Nationwide transacts or has transacted business in this District.

6.      Defendant Access One Communications, Inc. ("Access One") is a Florida corporation with its principal place of business located at 222 Lakeview Avenue, Suite 160, Box

First Amended Complaint                    2

157, West Palm Beach, Florida 33401. Defendant Access One transacts or has transacted business in this District.

7.    Defendant Network One Services, Inc. ("Network One") is a Florida corporation with its principal place of business located at 222 Lakeview Avenue, Suite 160, West Palm Beach, Florida 33401. Defendant Network One transacts or has transacted business in this District.

8.    Defendant Willoughby Farr ("Farr") is the chief operating officer of Access One and a director of Network One. Farr also is a de facto officer and principal in Nationwide. At all times material to this complaint, Defendant Farr, individually or in concert with others, has formulated, directed, controlled, or participated in the acts and practices of Defendants Nationwide, Access One, and Network One, including the acts and practices set forth in this complaint. Defendant Farr resides in and transacts or has transacted business in this District.

9.    Defendant Mary Lou Farr ("M.L. Farr"), a/k/a Marie Louise Farr, was a director of Nationwide and is a de facto officer and principal in Nationwide and Access One. Defendant M.L. Farr is Defendant Farr's mother. At all times material to this complaint, Defendant M.L. Farr, individually or in concert with others, has formulated, directed, controlled, or participated in the acts and practices of Defendants Nationwide and Access One, including the acts and practices set forth in this complaint. Defendant M.L. Farr resides in and transacts or has transacted business in this District.

10.    Defendant Yaret Garcia ("Garcia") is the president of Nationwide and a former director of Access One. At all times material to this complaint, Defendant Garcia,

First Amended Complaint                 3

00100

RER-6      0237

individually or in concert with others, has formulated, directed, controlled, or participated in the acts and practices of Defendants Nationwide and Access One, including the acts and practices set forth in this complaint. Defendant Garcia resides in and transacts or has transacted business in this District.

11.    Defendant Erika Riaboukha ("Riaboukha") is the president of Access One. At all times material to this complaint, Defendant Riaboukha, individually or in concert with others, has formulated, directed, controlled, or participated in the acts and practices of Defendants Nationwide and Access One, including the acts and practices set forth in this complaint. Defendant Riaboukha resides in and transacts or has transacted business in this District.

12.    Defendant Qaadir Kaid ("Kaid") is the president of Network One. At all times material to this complaint, Defendant Kaid, individually or in concert with others, has formulated, directed, controlled, or participated in the acts and practices of Defendants Nationwide, Access One, and Network One, including the acts and practices set forth in this complaint. Defendant Kaid resides in and transacts or has transacted business in this District.

13.    Defendants Nationwide, Access One, Network One, Farr, M.L. Farr, Garcia, Riaboukha, and Kaid are collectively referred to in this amended complaint as the "Nationwide Defendants."

14.    Defendant Billing Concepts, Inc. ("Billing Concepts") is a Delaware corporation with its principal place of business at 7411 John Smith Drive, Suite 200, San Antonio, Texas 78229. Defendant Billing Concepts transacts or has transacted business in this District.

First Amended Complaint                 4

15.    Defendant ACI Billing Services, Inc., d/b/a OAN ("ACI") is a Delaware corporation with its principal place of business at 7411 John Smith Drive, Suite 200, San Antonio, Texas 78229. Defendant ACI transacts or has transacted business in this District.

16.    Defendant BSG Clearing Solutions North America, LLC ("BSG") is a Delaware corporation with its principal place of business at 7411 John Smith Drive, Suite 200, San Antonio, Texas 78229. Defendant BSG transacts or has transacted business in this District.

17.    Defendants Billing Concepts, ACI, and BSG are collectively referred to in this amended complaint as the "BSG Defendants."

18.    The Billing Resource d/b/a/ Integretel ("Integretel") is a California corporation with its principal place of business at 5883 Rue Ferrari, San Jose, California 95138. Defendant Integretel transacts or has transacted business in this District.

19.    Defendants Billing Concepts, ACI, BSG, and Integretel are collectively referred to in this amended complaint as the "Aggregator Defendants."

20.    The Nationwide Defendants and the Aggregator Defendants are collectively referred to in this amended complaint as "Defendants."

### COMMON ENTERPRISE

21.    Corporate Defendants Nationwide, Access One, and Network One have operated as a common enterprise while engaging in the deceptive and unfair acts and practices alleged below. Individual Defendants Farr, M.L. Farr, Garcia, Riaboukha, and Kaid have formulated, directed, controlled or had authority to control, or participated in the acts and practices of the Corporate Defendants that comprise the common enterprise.

First Amended Complaint                    5

00102

## COMMERCE

22.    At all times relevant to this complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS PRACTICES

23.    Since at least September 2003, the Nationwide Defendants and the BSG Defendants have caused phone charges to appear on consumers' monthly telephone bills for purported long distance collect calls. Since at least October 2004, the Nationwide Defendants and Integretel have caused phone charges to appear on consumers' monthly telephone bills for purported long distance collect calls. These phone charges purport to be for collect calls the consumers received and accepted on particular dates and times. The charges are to be paid by consumers along with the other phone charges on consumers' monthly bills.

24.    However, in numerous circumstances, these collect call charges are for calls that were not received or authorized by consumers. Rather, these charges are unlawfully "crammed" by the Nationwide Defendants and the Aggregator Defendants onto consumers' phone bills.

25.    The Nationwide Defendants ostensibly initiate these phone charges on consumers' bills on behalf of client long distance service providers for whom they act as a "billing aggregator." As "billing aggregators," the Nationwide Defendants ostensibly compile purported call data from their client long distance carriers for billing.

26.    The Nationwide Defendants submit their aggregated billing data in the name of Defendant Network One to a call verification service that queries its databases to

First Amended Complaint                              6

00103

determine whether the purported collect calls were placed to telephone numbers that are eligible for collect call billing.

27.    To arrange for the placement of the purported collect call charges on consumers' monthly telephone bills, the Nationwide Defendants entered into agreements with the Aggregator Defendants under which the Aggregator Defendants agreed to arrange for placement of the Nationwide Defendants' charges onto consumers' telephone bills from local exchange carriers ("LECs"), such as Verizon, Qwest, SBC, and other local phone service carriers. Under these agreements, the Aggregator Defendants also agreed to handle customer complaints and inquiries from regulatory authorities and LECs.

28.    Pursuant to such agreements, the Nationwide Defendants forward their billing data to the Aggregator Defendants, which then process the Nationwide Defendants' purported collect call data and send it to the appropriate LEC or other local phone service carrier for inclusion on consumers' monthly telephone bills. Frequently, Defendants' collect call charges appear on the last page of a consumer's multi-page telephone bill.

29.    The BSG Defendants provided services to Defendant Nationwide, including processing of Nationwide's charges for placement on consumers' telephone bills and handling customer complaints and inquiries from regulatory authorities and LECs.

30.    Integretel provided services to Defendant Access One, including processing of Access One's charges for placement on consumers' telephone bills and handling customer complaints and inquiries from regulatory authorities and LECs.

31.    The per-call charges to consumers billed by Defendants typically amount to between $5.00 and $8.00, including associated taxes and fees.

First Amended Complaint                               7

32.    Defendants' collect call charges typically appear on a separate bill page in consumers' monthly telephone bills.

33.    The names and telephone numbers for both OAN and Nationwide appear on the bill pages featuring charges billed on behalf of the BSG Defendants and Nationwide.

34.    The names and telephone numbers for both Integretel and Access One appear on the bill pages featuring charges billed on behalf of Integretel and Access One.

35.    Soon after the Aggregator Defendants began billing on behalf of the Nationwide Defendants, the Aggregator Defendants and Nationwide Defendants began receiving complaints from consumers, LECs, and governmental entities concerning charges billed by Defendants for collect calls that were neither authorized nor received. Consumers complained directly to the Aggregator Defendants and the Nationwide Defendants because the names and telephone numbers for both the Aggregator Defendants and Nationwide Defendants appeared on the bill pages with the purported collect call charges.

36.    Numerous consumers report that they did not receive or authorize the collect calls for which they are billed by Defendants. In fact, in numerous instances, Defendants bill for charges for collect calls to telephone lines that are dedicated to mechanical devices such as computers or fax machines. Similarly, in many cases, nobody was present at the location assigned to the telephone number to accept the purported collect calls. Consumers also report that their caller ID logs have no record of the collect calls that were purportedly made or authorized.

37.    Despite receiving these ongoing complaints, the Aggregator Defendants continued to bill on behalf of the Nationwide Defendants. In most cases, however, Defendants

First Amended Complaint                    8

credit consumers within one to two billing cycles on a future bill, often without any detailed

inquiry into consumers' basis for complaint.

      38.    The Aggregator Defendants receive from the LECs payments for the

purported collect call charges. The Aggregator Defendants retain their fees for the billing,

collection, customer inquiry, and other services they provide to the Nationwide Defendants

before forwarding the balance of the payments to the Nationwide Defendants.

      39.    In May 2005, Integretel ceased submitting bills to the LECs on behalf of

Defendant Access One because of "excessive consumer complaints" and Access One's "inability

to provide adequate proof of the integrity of its billing transactions." Despite several requests,

Access One refused to provide Integretel with a list of the third party carrier data files

evidencing the calls that Access One submitted for billing or a list of the companies that

submitted call records to Access One for billing.

      40.    Similarly, in December 2005, the BSG Defendants ceased submitting

collect call charges to the LECs on behalf of Defendant Nationwide.

      41.    Between July 2004 and August 2005, gross revenue generated for calls

billed by the BSG Defendants on behalf of Defendant Nationwide totaled more than $20 million.

The BSG Defendants credited consumers at least $2 million. Many additional consumers sought

and received refunds from Nationwide.

      42.    Between October 2004 and June 2005, gross revenue generated for calls

billed by Defendant Integretel on behalf of Defendant Access One totaled more than $4.4

million. Integretel credited consumers at least $300,000. Many additional consumers sought

and received refunds from Access One.

First Amended Complaint              9

00106

RER-6     0243

43. Despite high rates of refund, Nationwide and Access One have garnered more than fifteen million dollars from their billing efforts. The Aggregator Defendants have also received a portion of the funds paid by consumers.

44. Defendant Farr has received over $5 million of these proceeds despite being incarcerated at the Palm Beach County Jail since October 2004. Defendant M.L. Farr has received more than $2 million from Nationwide.

## VIOLATIONS OF SECTION 5 OF THE FTC ACT

45. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "deceptive" or "unfair" acts and practices in or affecting commerce. Misrepresentations or omissions of material fact constitute "deceptive" acts or practices pursuant to Section 5(a) of the FTC Act. Moreover, under Section 5(n) of the FTC Act, an act or practice is "unfair" if it causes or is likely to cause substantial injury to consumers that is not reasonably avoidable by consumers and is not outweighed by countervailing benefits to consumers or to competition. 15 U.S.C. § 45(n).

### COUNT ONE

### Deceptive Billing Practices

46. In numerous instances, Defendants represent or have represented, expressly or by implication, that a consumer was obligated to pay a charge for a collect telephone call on the consumer's telephone bill.

47. In truth and in fact, in numerous instances, the consumer was not obligated to pay the charge, because:

(1) the collect call underlying the charge was never made; or

(2) the charge for the collect call was not authorized.

First Amended Complaint                    10

00107

RER-6          0244

48.    Therefore, Defendants' practices as described in Paragraph 46 are deceptive and violate Section 5 of the FTC Act, 15 U.S.C. § 45(a).

## COUNT TWO

### Unfair Billing Practices

49.    In numerous instances, Defendants, directly or indirectly, bill or have billed a consumer for a collect telephone call that the consumer did not receive or did not authorize.

50.    These billing practices cause or are likely to cause substantial injury to consumers that is not reasonably avoidable and is not outweighed by countervailing benefits to consumers or competition.

51.    Therefore, Defendants' practices as described in Paragraph 49 are unfair and violate Section 5 of the FTC Act, 15 U.S.C. § 45(a).

### CONSUMER INJURY

52.    Defendants' violations of Section 5 of the FTC Act, 15 U.S.C. § 45(a), as set forth above, have caused and are likely to continue to cause substantial injury to consumers. In addition, Defendants have been unjustly enriched as a result of their unlawful practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers and harm the public interest.

\\

\\

\\

\\

First Amended Complaint                    11

## THIS COURT'S POWER TO GRANT RELIEF

53.    Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and other ancillary equitable relief, including consumer redress, disgorgement and restitution, to prevent and remedy any violations of any provision of law enforced by the Federal Trade Commission.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the Federal Trade Commission, requests that this Court, as authorized by Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and pursuant to its own equitable powers:

1.    Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief.

2.    Permanently enjoin Defendants from violating Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), as alleged in this complaint.

3.    Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations, including, but not limited to, rescission of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies.

\\

\\

\\

\\

·\\

First Amended Complaint                    12

00109

RER-6        0246

4.    Award the Commission the costs of bringing this action, as well as any

other equitable relief that the Court may determine to be just and proper.


Dated:  September 14, 2006

                            Respectfully submitted,

                            WILLIAM BLUMENTHAL
                            General Counsel
                            Federal Trade Commission
                            600 Pennsylvania Ave., N.W., Room 286
                            Washington, D.C. 20580


                            Laura Kim (A550099)
                                lkim@ftc.gov
                                    Telephone:    202-326-3734
                                    Facsimile:    202-326-3395
                            Michael J. Davis (A5501005)
                                mdavis@ftc.gov
                                    Telephone:    202-326-2458
                                    Facsimile:    202-326-3395
                            Collot Guerard (A5500480)
                                cguerard@ftc.gov
                                    Telephone:    202-326-3338
                                    Facsimile:    202-326-3395

First Amended Complaint                    13

00110

RER-6        0247

# EXHIBIT F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-80180-CIV-RYSKAMP

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

NATIONWIDE CONNECTIONS, INC.,
ACCESS ONE COMMUNICATIONS, INC.,
NETWORK ONE SERVICES, INC.,
WILLOUGHBY FARR,
MARY LOU FARR,
YARET GARCIA,
ERIKA RIABOUKHA,
QAADIR KAID,

Defendants,

_____/

**RECEIVER'S REVISED MOTION FOR AN ORDER TO SHOW CAUSE WHY THE BILLING RESOURCE, D/B/A INTEGRETEL, SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATING THIS COURT'S TEMPORARY RESTRAINING ORDER AND AMENDED PRELIMINARY INJUNCTION ORDER**

David R. Chase, not individually, but solely in his capacity as receiver (the "Receiver")

for Nationwide Connections, Inc. ("Nationwide"), Access One Communications, Inc. ("Access

One"), Network One Services, Inc. ("Network One") , 411TXT, Inc., CELL-INFO-USA, Inc.,

Enhanced Billing Services, Inc., Toll Free Connect, Inc., Cripple Creek Holdings, LLC, Built to

Last, LLC, Not Fade Away, LLC, He's Gone, LLC, The Other One, LLC, Turn on Your Love

Light, LLC, China Cat Sunflower, LLC, Lazy River Road Holdings, LLC (collectively, the

"Receivership Entities"), files this Revised Motion for an Order to Show Cause why The Billing

Resource, d/b/a Integretel ("Integretel"), should not be held in contempt for violating this

Court's February 27, 2006 Temporary Restraining Order (the "TRO") (D.E. 18) and September

22, 2006 Amended Preliminary Injunction Order (the "Preliminary Injunction") (D.E. 233).

## Background Facts

As this Court knows, the Federal Trade Commission (the "FTC") charges Nationwide, Access One, and Network One, along with their principals, with deceptive and unfair billing practices for "cramming" – the unauthorized billing of charges on phone bills – in violation of Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b). For that reason, this Court issued the TRO and the Preliminary Injunction and placed Nationwide, Access One, and Network One into receivership.[1]

As this Court also knows, Nationwide, Access One, and Network One did not act alone. All three entities used the services of what is called a billing aggregator, which is the entity that actually caused Nationwide's, Access One's, and Network One's fraudulent charges to be placed on the end user's phone bill. For that reason, the FTC recently filed a First Amended Complaint in which it included all of the aggregators as additional defendants in this action.

The aggregator that Nationwide used was BSG Clearing Solutions, Inc. and/or certain entities affiliated with it ("BSG"). The aggregator that both Access One and Network One used was Integretel, against which the Receiver brings this Motion. Although the Receiver's analysis is not yet complete, the Receiver believes, based on the records that he and his professionals have reviewed and analyzed thus far, that approximately $30 million in charges were placed on phone bills through the use of BSG and approximately $5 million in charges were placed on phone bills through the use of Integretel.

---

[1] The receivership has twice been expanded: once to include affiliated entities and entities into which the Defendants placed title to various properties that they purchased with the fruits of the fraud; and then to include the assets of defendants Willoughby and Mary Lou Farr.

2

00113

RER-6     0250

Both BSG and Integretel had agreements in place with Nationwide and Access One/Network One that permitted them to withhold monies that were *"owed to"* Nationwide and/or Access One/Network One as "reserves," just in case end users complained about the charges and requested refunds and/or credits directly from the aggregators. Shortly after this receivership was initiated, BSG advised the Receiver and the FTC of the reserves that it was holding relating to Nationwide as of the commencement of the receivership (slightly over $1 million). BSG promptly turned that money over to the Receiver, as it was required to do under the TRO.

Integretel, however, did not advise either the Receiver or the FTC that it, too, was holding reserves. To the contrary, Integretel's president wrote the FTC on March 6, 2006, in direct response to this Court's TRO. In that letter, a copy of which is attached as Exhibit 1, Integretel's president stated that "no amounts are currently due and owing" to Access One or Network One. Integretel's president's exact words are telling:

> We have a service contract with a Florida corporation called Access One Communications ("AOC"). Pursuant to this contract, AOC would be entitled to certain proceeds from billing transactions. However, AOC is in default of this contract and, therefore, **no amounts are currently due and owing.**
>
> ***
>
> We have a service contract with a Florida corporation called Network One Services, Inc. ("NOSI"). Pursuant to this contract, NOSI would be entitled to certain proceeds from billing transactions. However, NOSI is in default of this contract and, therefore, **no amounts are currently due and owing.**

*See* Exhibit 1 (Emphasis added).

Integretel's president's letter nowhere mentions the word "reserves" for either Access One or Network One. Integretel's president's letter nowhere mentions that the reserves that it is holding are, by definition, comprised of funds that are *"owed to"* Access One and Network One. And

3

Integretel's president's letter nowhere mentions what the Receiver has just learned – that, as of August 25, 2006, Integretel was holding $1,186,430.36 in reserves for Access One and $173,918.66 in reserves for Network One.[2]  In other words, Integretel has been holding over $1.35 million of monies "owed to" Access One and Network One and, despite the clear requirements of the TRO, Integretel *never* even advised the Receiver <u>or the Court</u> of this fact.

It is important to note that Section VI(C) of the TRO specifically required any business entity served with a copy of the TRO to:

> Provide the Commission's counsel, within five (5) business days of receiving a copy of this [TRO], a sworn statement setting forth:
>
> 1.    The identification number of each such account or asset titled in the name, individually or jointly, of a Defendant, <u>or held on behalf of, or for the benefit of a Defendant</u>;
>
> 2.    The balance of each such account, or a description of the nature and value of each such asset as of the close of business on the day on which this [TRO] is served ...

*See* TRO at Section VI(C)(1) and (2) (Emphasis added).

Integretel's president's letter was, indeed, written in response to the TRO and was, in fact, served five business days after the TRO was issued.  Integretel's president's March 6th letter to the FTC was not "sworn" – which is now telling – but the FTC nevertheless believed it to be truthful.

As stated above, the Receiver has just learned (*i.e.*, on October 11, 2006) that Integretel is holding over $1.35 million in what are known as "IGT Reserves" for both Access One and Network One.  Under the agreements between Integretel and each of Access One and Network One, copies

---

[2] The Receiver learned about the amount of the reserves because Integretel's counsel wrote the Receiver's counsel on October 11, 2006 (*see, infra*, page 5 and Exhibit 4), to which he attached an October 5, 2006 letter that he wrote to the FTC, in which he confirmed the reserve amounts. *See* Composite Exhibit 4.

4

of which are attached as Exhibits 2 and 3, respectively, the "IGT Reserves" are, *by definition*, amounts "owed to" Access One and Network One.

Indeed, Exhibit A to the Integretel/Access One Master Services Agreement (Page 5) defines the IGT Reserve as follows:

> "IGT Reserve" shall mean **an amount withheld, from the amount otherwise owed to Client** with respect to Billing Transactions, to protect IGT from credit losses or otherwise to cover other reserves or offsets, other than Uncollectables imposed by a Telco.

*See* Exhibit 2 at 5 (and Exhibit A attached thereto) (Emphasis added). The Integretel/Network One Master Services Agreement (Page 5) contains an identical definition of IGT Reserves. *See* Exhibit 3 at 11 (and Exhibit A attached thereto).

As a result, there is no conceivable reason for Integretel's president to have told the FTC that "no amounts are currently due and owing," as he did on March 6th in response to having received the TRO. By definition, the $1.35 million that Integretel is now holding as a "reserve" is comprised of funds that were – and still are – *"owed to"* Access One or Network One. That is why BSG, the aggregator that Nationwide used, disclosed that it was holding over $1 million in reserves and transferred that money to the Receiver shortly after the TRO was issued. The TRO required nothing less.

### Integretel's "arguments" and the TRO and Preliminary Injunction

After learning about the "reserves" on October 11, 2006, the Receiver received a call – and then a letter – from Integretel's counsel. A copy of the letter, to which Integretel's counsel attaches earlier letters to the FTC and copies of the agreements, is attached as Composite Exhibit 4. In Integretel's counsel's letter, Integretel makes a series of "arguments" attempting to justify its failure to transfer the reserve monies to the Receiver over the last seven months.

5

As discussed more fully below, each of Integretel's "arguments" is unavailing given the clear language in this Court's TRO and Preliminary Injunction. At a minimum, however, Integretel should have disclosed that there was a reserve, the amount of the reserve, and the circumstances under which it came into possession of the reserve, so that this Court – rather than Integretel – could have decided the issue of whether the reserve should have been immediately transferred to the Receiver. Integretel's failure to do that is inexcusable and justifies a finding of contempt.

By way of example, Integretel argues that "the reserves do not take the form of any actual funds that [Integretel] has segregated or otherwise set aside ..." *See* Exhibit 4 at 3. Integretel seems to be arguing that, rather than having deposited the reserves in a separate account titled in Access One's or Network One's names, it kept the reserves in a pooled account and kept track of them through an internal accounting entry. This is a distinction without a difference, since the TRO captures funds "held on behalf of, or for the benefit of, a Defendant." *See* TRO at Section VI(C)(1). The Preliminary Injunction contains an identical provision. *See* Preliminary Injunction at Section VII(C)(1).

Integretel argues that, under the agreements, it was not Access One's or Network One's "agent, partner, joint venturer, trustee, fiduciary, or legal representative," so it was not "in any way acting 'on behalf' of the two clients." *See* Exhibit 4 at 3. This is nonsensical. It goes without saying that one need not be an agent, partner, joint venturer, trustee, fiduciary, or legal representative to come into possession of funds that one is holding "on behalf of" another person or entity. This is a truly strained – and, perhaps, sanctionable – reading of this Court's Orders.

Integretel argues that it was entitled, under the agreements, to withhold these reserves "from payments otherwise due to Access One and Network One ..." *See* Exhibit 4 at 2. This may be true, but that does not mean that Integretel was entitled to *continue to hold* those reserves after the

6

issuance of this Court's TRO and Preliminary Injunction. To the contrary, the TRO and the Preliminary Injunction make it clear that Integretel could not continue to do so. But at a minimum, this Court's orders required Integretel to disclose what it was doing so this Court – rather than Integretel – could make an independent determination about whether its actions were appropriate.

Integretel argues that "[t]hese reserves have been set to account for, among other things, any liability that might be claimed against [Integretel] for any improper billings by Access One or Network One such as alleged by the FTC in the First Amended Complaint." *See* Exhibit 4 at 3. The First Amended Complaint is the recently-filed FTC pleading that joins Integretel (and the other aggregators) as defendants in this action, so Integretel is really arguing that it can use the "reserves" to fund the indemnification provision contained in the agreements with Access One and Network One <u>and</u> to fund its own exposure in this action for its own independent wrongdoing. Integretel is wrong in both respects.

Under the agreements between Integretel and each of Access One and Network One (Exhibits B and C, respectively), the indemnified party (*i.e.*, Integretel) has two options if it wishes to enforce the indemnification provision against the indemnifying party (*i.e.*, Access One or Network One): notify the indemnifying party of the request to be indemnified and turn over the defense of the action to the indemnifying party <u>or</u> defend itself and seek reimbursement of its attorneys' fees and costs from the indemnifying party. <u>The agreements do not give Integretel the right to use the IGT Reserves to fund the indemnity.</u> *See* Exhibit B at 2, Section 11 (Access One Master Services Agreement); and Exhibit C at 4, Section 11 (Network One Master Services Agreement).

In addition, the FTC has sued Integretel for its own independent violations of the Federal Trade Commission Act, 15 U.S.C. § 53(b). If the FTC succeeds, Integretel itself will be financially

TEW CARDENAS LLP
Four Seasons Tower, 15th Floor, 1441 Brickell Avenue, Miami, Florida 33131-3407 • 305-536-1112

00118

RER-6    0255

responsible for its actions and it will not be able to look to Access One or Network One for indemnification under the operative agreements.

Finally, Integretel argues that "Access One and Network One failed to provide proof of their compliance with contract requirements ..." *See* Exhibit 4 at 3. In other words, Integretel seems to be arguing that, *since it is of the opinion that* Access One and Network One breached the agreements, it was entitled to keep the $1.35 million in reserves. The agreements do not, however, contain a liquidated damages provision that would permit Integretel under these circumstances to retain a $1.35 million reserve, and the agreements do not give Integretel the right to make an independent, unilateral decision about Access One's or Network One's breach of the agreements without court involvement.[3] More importantly, the TRO specifically precludes contracting parties from engaging in such acts of "self-help" without first obtaining leave from this Court. Section XX(A)(2) of the TRO provides as follows:

> **Except by leave of this Court**, during pendency of the receivership ordered herein, Defendants ... and other **persons seeking to establish or enforce any claim, right, or interest against or on behalf of the Defendants ... are hereby stayed from:**
>
> 2.      Accelerating the due date of any obligation or claimed obligation against a Receivership Defendant; filing or enforcing any lien against a Receivership Defendant; taking or attempting to take possession, custody, or control of any asset of a Receivership Defendant; **attempting to foreclose, forfeit, alter, or terminate any interest in any asset of a Receivership Defendant, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise.**

---

[3] Integretel's president concedes as much in his March 6th letter, in which he also says that "[t]o the extent proceeds become due to [Access One or Network One] in the future, we will establish a separate bank account into which such funds will be deposited and notify your office accordingly." *See* Exhibit 1. If, as Integretel is now arguing, Access One's and Network One's breach of the agreements entitled Integretel to keep the reserves, then how could proceeds ever become due to Access One or Network One in the future?

8

*See* TRO at Section XX(A)(2) (Emphasis added). The Preliminary Injunction contains an identical

provision. *See* Preliminary Injunction at Section XIX(A)(2.

In short, there is simply no basis – contractual or otherwise – on which Integretel can justify

having made the determination to keep this money without so much as advising the Court that it was

doing so. Integretel's actions are unquestionably violative of the TRO and the Preliminary

Injunction.

Other provisions of the TRO and the Preliminary Injunction that the Receiver would like to

highlight are (1) Section II(A) of the TRO, which precludes those who receive actual notice of the

TRO from "concealing" assets held for the benefit of any Defendant[4]; (2) Section IX, which requires

those who receive a copy of the TRO to "fully cooperate and assist the Receiver," including by

"advising [of] all persons who owe money to the Receivership Defendants[5]; and (3) Section IX(F),

which precludes those who have received a copy of the TRO from "[d]oing any act or refraining

from any act whatsoever to interfere with the Receiver managing, or taking custody, control, or

possessions of, the assets or documents subject to this receivership.[6]

Finally, the Receiver would like to highlight Section VIII(F) of the TRO, which prevents the

"inequitable distribution of assets" of the receivership.[7] Even if Integretel had a contractual right

to these funds, or a contractual right to seek indemnification from Access One or Network One,

there are insufficient funds in the receivership estate to satisfy *all* of the contractual claims that

---

[4] The companion provision in the Preliminary Injunction is Section III(A).

[5] The companion provision in the Preliminary Injunction is Section X.

[6] The companion provision in the Preliminary Injunction is Section X(F).

[7] The companion provision in the Preliminary Injunction is Section IX(F).

9

TEW CARDENAS LLP
Four Seasons Tower, 15th Floor, 1441 Brickell Avenue, Miami, Florida 33131-3407 • 305-536-1112

00120

RER-6    0257