**EXHIBIT "III-A"**
**Inquiry Standards**

End-User Inquiry shall be performed by Client or IGT (each in this context a "Provider") in accordance with the following Inquiry Standards:

1. Provider shall maintain a toll-free telephone number through which End-User's initiate inquiries. Where practical, such number shall be prominently displayed on the End-User's bill.

2. Provider shall answer 80% of all End-User Inquiries, with a live Client service agent, within 90 seconds.

3. Provider shall have adequate Client service staff available to support End-User Inquiries between the hours of 8:00 am and 5:00pm for all time zones where End-Users reside.

4. Provider shall not allow calls to be routed to a voicemail function during required service hours (live agent must answer all calls).

5. Provider shall maintain a call abandon rate less than or equal to 5% of inbound calls.

6. Provider shall respond to written End-User Inquiries, in writing, within 15 days of receipt.

TBR_NCI 000322

00306

RER-6      0443

# Exhibit 3



# FEDERAL TRADE COMMISSION

**Division of Marketing Practices – Room 238**
**6th & Pennsylvania Avenue, N.W., Washington, D.C. 20580**
FAX Number: (202) 326-3395

## Facsimile Transmittal Sheet

| To: | Ken Dawson<br>Integretel<br>5883 Rue Ferrari<br>San Jose, California 95138<br>Bus: (408) 362-4000<br>Fax: (408) 362-2795 | Sending Organization Code: 1144<br>Total Pages (including cover sheet):<br><br>31 |
|---|---|---|
| From: | Roberto Menjivar<br>Investigator<br>Federal Trade Commission<br>Telephone Number: (202) 326-3687 | Date: March 3, 2006<br><br>Time: |

| Subject: | **ASSET FREEZE: PLEASE PROCESS IMMEDIATELY** |
|---|---|
| | Attached is Temporary Restraining Order |

**THIS COMMUNICATION, INCLUDING ANY ATTACHMENTS, IS PRIVILEGED AND CONFIDENTIAL.** It is intended only for the use of the addressee(s) named above. All others are prohibited from reading, distributing, copying, and retaining it. Any person receiving this communication in error should promptly notify the sender by phone at the number provided, and mail it back to the address above. In case of transmission errors, please call the Division at: (202) 326-3439.

00308

RER-6       0445



UNITED STATES OF AMERICA
**FEDERAL TRADE COMMISSION**
WASHINGTON, D.C. 20580

Division of Marketing Practices
Roberto C. Menjivar
Investigator
Phone: 202-326-3687
Fax: 202-326-3395

March 1, 2006

## ATTENTION:
## Asset Freeze Issued in FTC v. Nationwide Connections, et al.

Dear Sir or Madam:

Please be advised that the United States District Court for the Southern District of Florida has issued the attached Temporary Restraining Order ("TRO"). The Order freezes the assets of **Nationwide Connections, Access One Communications, Network One Services, Willougbby Farr, Mary Lou Farr, Yaret Garcia, Erika Riaboukha and Qaadir Kaid**. The Order freezes assets held by financial institutions, broker-dealers and other entities and individuals on behalf of these defendants, and it specifically authorizes service of the Order on any person or entity by facsimile.

The Order requires you to hold and retain within your control and prohibit the withdrawal, removal, assignment, transfer, pledge, hypothecation, encumbrance, or other disposal of any assets, funds or other property presently held by you or under your control on behalf of any defendant in any account or safe deposit box maintained in the name of, or for the benefit of, any defendant in this lawsuit. Please refer to the TRO itself for the exact provisions contained therein. The attached Fact Sheet concerning the defendants in this matter should aid you in identifying relevant accounts and/or assets.

The Order requires you to provide counsel for the Commission with certain information about each account or asset titled or maintained in the names of any of the defendants within five (5) business days of receipt of a copy of the Order.

Please send the statement to me via fax at (202) 326-3395 and to the following address via FedEx or courier, as current postal mail is being delayed due to irradiation procedures:

Federal Trade Commission
Attn: Roberto C. Menjivar
600 Pennsylvania Avenue, N.W., Room 238
Washington, D.C. 20580

00309

RER-6          0446

If, after a thorough search of your records, you find that you do not have any accounts or assets titled or maintained in the names of any of these defendants, please send a sworn statement to that effect to me via fax at (202) 326-3395 and an original signature to the address above.

Thank you for your prompt assistance in this matter.

Sincerely,

Roberto C. Menjivar
Federal Trade Investigator

Enclosure:
Copy of Temporary Restraining Order
Fact Sheet (2 pages)

## FTC v. NATIONWIDE CONNECTIONS, INC., et al.

### FACT SHEET

## CORPORATE DEFENDANTS:

1. NATIONWIDE CONNECTIONS, INC.(NWC)
   Primary Address:
   215 5th Street, Suite 306,
   West Palm Beach, FL 33401

   Secondary Addresse:
   222 Lakeview Ave, Suite 160-157,
   West Palm Beach, FL 33401

2. ACCESS ONE COMMUNICATIONS, INC. (AOC)
   Primary Address:
   222 Lakeview Ave., Suite 160-157,
   West Palm Beach, FL 33401

   Secondary Address:
   215 5th Street, Suite 306,
   West Palm Beach, FL 33401

3. NETWORK ONE SERVICES, INC.
   Primary Address:
   222 Lakeview Ave., Suite 160-157,
   West Palm Beach, FL 33401

   Secondary Address:
   215 5th Street, Suite 306,
   West Palm Beach, FL 33401

## INDIVIDUAL DEFENDANTS:

1.    MARY LOU FARR a.k.a. Marie L. Farr, Marylou Farr, Mary Louis Farr
       SSN: 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 and 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
       DOB: 10/19/1939
       Current Address:
       6611 S. Flagler Drive,
       West Palm Beach, FL 33405

2.    WILLOUGHBY FARR a.k.a. Will Farr
       SSN: 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
       DOB: 1/7/64
       Current Address:
       Sheriff's Headquarters Complex
       Main Detention Center
       3228 Gun Club Road
       West Palm Beach, FL 33416-4681.

3.    YARET IVON GARCIA
       SSN: 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
       DOB: 11/30/77
       Current Address:
       2302 Ridgewood Circle,
       Royal Palm Beach, FL 33411-6158
       Previous Address:
       232 Arcadia Drive,
       Wellington, FL 33414

4.    QAADIR KAID a.k.a. Rasheed, Kaid Q.
       SSN: 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 (Associated w/Cornell Madison)
       DOB: 03/08/1974
       Current Address:
       2302 Ridgewood Circle,
       Royal Palm Beach, FL 33411-6158

5.    ERICKA RIABOUKHA a.k.a Erika Garcia and Erika G. Riaoukha
       SSN: 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
       DOB: 12/19/81
       Current Address:
        904 Brightwood Way,
       Wellington, FL 33414-4915
       Previous Address:
       306 Woodland Road,
       Lake Worth, FL 33461

FILED by _____ JV____ D.C.

FEB 2 7 2006

CLARENCE MADDOX
CLERK U.S. DIST CT.
S.D. OF FLA. - W.P.B.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. _____ - CIV- (

MAGISTRATE JUDGE
VITUNAC

**06-80180**

CIV-RYSKAMP

FEDERAL TRADE COMMISSION,

            Plaintiff,

vs.

NATIONWIDE CONNECTIONS, INC.,
ACCESS ONE COMMUNICATIONS, INC.,
NETWORK ONE SERVICES, INC.,
WILLOUGHBY FARR,
MARY LOU FARR,
YARET GARCIA,
ERIKA RIABOUKHA,
QAADIR KAID,

            Defendants.

▰▰▰▰▰ TEMPORARY
RESTRAINING ORDER AND
ORDER TO SHOW CAUSE

FILED UNDER
SEAL

Plaintiff, the Federal Trade Commission ("FTC" or the "Commission"), pursuant to

Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), has filed a

Complaint for Injunctive and Other Equitable Relief, including consumer redress, and has moved

*ex parte* for a temporary restraining order and for an order to show cause why a preliminary

injunction should not be granted pursuant to Rule 65(b) of the Federal Rules of Civil Procedure.

### FINDINGS OF FACT

The Court has considered the pleadings, declarations, exhibits, and memoranda filed in

support of the Commission's motion and finds that:

1.      This Court has jurisdiction over the subject matter of this case, and there is good cause to

     believe that it will have jurisdiction over all parties hereto;

2.      There is good cause to believe that Defendants Nationwide Connections, Inc., Access

One Communications, Inc., Network One Services, Inc.; Willoughby Farr, Mary Lou Farr, Yaret Garcia, Erika Riaboukha, and Qaadir Kaid have engaged and are likely to engage in acts or practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and that the Plaintiff is therefore likely to prevail on the merits of this action;

3.  The evidence set forth in the Commission's Memorandum of Points and Authorities in Support of its *Ex Parte* Motion for TRO ("Memorandum"), and the accompanying declarations and exhibits, demonstrates that Defendants have engaged in deceptive and unfair acts or practices in violation of Section 5 of the FTC Act by engaging in widespread unauthorized billing of collect telephone calls. There is good cause to believe that Defendants will continue such illegal actions if not restrained from doing so by Order of this Court;

4.  There also is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief will result from the sale, transfer, or other disposition or concealment by Defendants of their assets or business records, unless Defendants are immediately restrained and enjoined by Order of this Court;

5.  The Commission has not provided notice to Defendants due to the likelihood that advance notice of this action will cause Defendants to abscond with or destroy discoverable evidence and conceal or dissipate assets. The Commission's request for this emergency *ex parte* relief is not the result of any lack of diligence on the Commission's part, but instead is based upon the nature of Defendants' unlawful conduct; .

6.  Weighing the equities and considering the FTC's likelihood of ultimate success, a temporary restraining order, including an asset freeze, appointment of a temporary

2

receiver, immediate access to Defendants' business premises, an accounting of assets,

preservation of business records, and providing other equitable relief is in the public

interest; and

7.  Fed. R. Civ. P. 65(c) does not require security of the United States or an officer or agency

thereof for the issuance of a restraining order.

## DEFINITIONS

For the purpose of this temporary restraining order ("TRO" or "Order"), the following

definitions shall apply:

A.  "Assets" means any legal or equitable interest in, right to, or claim to any real or

personal property of any Defendant, or held for the benefit of any Defendant, wherever

located, including, but not limited to, "goods," "instruments," "equipment," "fixtures,"

"general intangibles," "inventory," "checks," "notes" (as these terms are defined in the

Uniform Commercial Code), chattels, leaseholds, contracts, mails, other deliveries, shares

of stock, lists of participants, intellectual property, accounts, credits, receivables, cash,

and trusts, including, but not limited to, any other trust held for the benefit of any

Defendant, any Defendant's minor children, or any Defendant's spouse.

B.  "Defendants" means Nationwide Connections, Inc., Access One Communications, Inc.,

Network One Services, Inc., Willoughby Farr, Mary Lou Farr, Yaret Garcia, Erika

Riaboukha, and Qaadir Kaid.

C.  "Document" is synonymous in meaning and equal in scope to the usage of the term in

Federal Rule of Civil Procedure 34(a), and includes, but is not limited to, writings,

drawings, graphs, charts, Internet sites, Web pages, Web sites, electronic correspondence,

3

00315

RER-6        0452

including e-mail and instant messages, photographs, audio and video recordings, computer records, whether active or inactive, and any other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

D.    "Long Distance Service Provider" means an entity that transports long distance telephone calls.

E.    "Plaintiff" means the Federal Trade Commission.

F.    "Receiver" shall mean the temporary receiver appointed in Paragraph VII of this Order. The term "receiver" also includes any deputy receivers as may be named by the temporary receiver.

G.    "Receivership Defendants" means Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc. and any d/b/as of the aforementioned entities.

## PROHIBITED BUSINESS ACTIVITIES

## I.

IT IS THEREFORE ORDERED that Defendants, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are temporarily restrained and enjoined from directly or indirectly misrepresenting, expressly or by implication, that a consumer is obligated to pay any charge on a telephone bill that has not been expressly authorized by the consumer.

4

## ASSET FREEZE

### II.

IT IS FURTHER ORDERED that Defendants, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby temporarily restrained and enjoined from:

A.   Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any funds, real or personal property, accounts, contracts, consumer lists, shares of stock, or other assets, or any interest therein, wherever located, that are: (1) owned or controlled by any Defendant, in whole or in part, for the benefit of any Defendant; (2) in the actual or constructive possession of any Defendant; or (3) owned, controlled by, or in the actual or constructive possession of any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant, including, but not limited to, Cripple Creek Holdings, LLC, and any assets held by or for, or subject to access by, any of Defendants, at any bank or savings and loan institution, or with any broker-dealer, escrow agent, title company, commodity trading company, precious metals dealer, or other financial institution or depository of any kind;

B.   Opening or causing to be opened any safe deposit boxes titled in the name of any Defendant or any Defendant's minor child or any Defendant's spouse, or subject to access by any of them;

C.   Incurring charges or cash advances on any credit card issued in the name, singly or jointly, of any Defendant;

00317

RER-6    0454

    D.      Obtaining a personal or secured loan; and

    E.      Incurring liens or other encumbrances on real property, personal property or other

assets in the name, singly or jointly, of any Defendant.

    *Provided further*, the assets affected by this Paragraph shall include: (1) all assets of

Defendants as of the time this Order was entered; and (2) for assets obtained after the time this

Order was entered, only those assets of Defendants that are derived from the actions alleged in the

Commission's Complaint.

## FINANCIAL REPORTS AND ACCOUNTING

## III.

    **IT IS FURTHER ORDERED** that Defendants, within five (5) days of service of this

Order, shall:

    A.      Prepare and deliver to counsel for the FTC completed financial statements on the

forms attached to this Order as Attachments A and B, for themselves, individually or as

corporations, and for each business entity under which they conduct business, or of which they are

an officer, and for each trust of which they are a trustee. The financial statements shall be

accurate as of the date of entry of this Order; and

    B.      Provide the Commission with a statement, verified under oath and accurate as of

the date of entry of this Order, detailing the name, address, and telephone number for each

accountant, financial planner, investment advisor, stock broker, or other person who provided any

Defendant with financial, business, or tax advice or services since January 1, 2004.

    *Provided further*, the Commission and the Temporary Receiver are immediately

authorized to issue subpoenas to demand the production of documents from any person or entity

6

relating to the nature, status, extent, location or other relevant information relating to Defendants'
assets, income, and financial records.

## FOREIGN ASSET REPATRIATION

### IV.

**IT IS FURTHER ORDERED** that, within five (5) business days following the service of
this Order, the Defendants shall:

A.    Provide the Commission and the Receiver with a full accounting of all funds,
documents, and assets outside of the United States that are: (1) titled in the name, individually or
jointly, of the Defendants or the spouse of any Defendant; or (2) held by any person or entity for
the benefit of the Defendants; or (3) under the direct or indirect control, whether jointly or singly,
of the Defendants;

B.    Transfer to the territory of the United States and deliver to the Receiver all funds,
documents, and assets located in foreign countries that are: (1) titled in the name, individually or
jointly, of any Defendant; or (2) held by any person or entity, for the benefit of any Defendant; or
(3) under any Defendant's direct or indirect control, whether jointly or singly; and

C.    Provide the Commission access to all records of accounts or assets of the
Defendants held by financial institutions located outside the territorial United States by signing
the Consent to Release of Financial Records attached to this Order (Attachment C).

## INTERFERENCE WITH REPATRIATION

### V.

**IT IS FURTHER ORDERED** that Defendants, and those persons in active concert or
participation with them who receive actual notice of this Order by personal service or otherwise,

7

are hereby temporarily restrained and enjoined from taking any action, directly or indirectly,

which may result in the encumbrance or dissipation of foreign assets, or in the hindrance of the

repatriation required by the preceding Paragraph IV of this Order, including but not limited to:

A.    Sending any statement, letter, fax, e-mail or wire transmission, telephoning or

engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee

or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until

such time that all assets have been fully repatriated pursuant to Paragraph IV of this Order; and

B.    Notifying any trustee, protector or other agent of any foreign trust or other related

entities of either the existence of this Order, or of the fact that repatriation is required pursuant to

a Court Order, until such time that all assets have been fully repatriated pursuant to Paragraph IV

of this Order.

## RETENTION OF ASSETS AND RECORDS BY FINANCIAL INSTITUTIONS

## VI.

IT IS FURTHER ORDERED that, pending determination of the Plaintiff's request for a

preliminary injunction, any financial or brokerage institution, business entity, or person served

with a copy of this Order that holds, controls, or maintains custody of any account or asset of any

Defendant, or has held, controlled or maintained custody of any such account or asset at any time

since the date of entry of this Order, shall:

A.    Hold and retain within its control and prohibit the withdrawal, removal,

assignment, transfer, pledge, encumbrance, disbursement, dissipation, conversion, sale, or other

disposal of any such asset except by further order of the Court;

B.    Deny the Defendants access to any safe deposit box that is:

8

       1.    titled in any Defendants' name, individually or jointly; or

       2.    otherwise subject to access by any Defendant;

C.    Provide the Commission's counsel, within five (5) business days of receiving a copy of this Order, a sworn statement setting forth:

       1.    the identification number of each such account or asset titled in the name, individually or jointly, of a Defendant, or held on behalf of, or for the benefit of a Defendant;

       2.    the balance of each such account, or a description of the nature and value of each such asset as of the close of business on the day on which this Order is served, and, if the account or other asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other asset was remitted; and

       3.    the identification of any safe deposit box that is titled in the name, individually or jointly, of a Defendant, or is otherwise subject to access by a Defendant.

D.    Upon request by the Commission, promptly provide the Commission with copies of all records or other documentation pertaining to each such account or asset, including but not limited to originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs. Any such financial institution, account custodian, or other aforementioned entity may arrange for the Commission to

9

obtain copies of any such records which the Commission seeks.

## APPOINTMENT OF TEMPORARY RECEIVER

### VII.

IT IS FURTHER ORDERED that David Chase, Esq. is appointed

Temporary Receiver for the Receivership Defendants. The Receiver shall be the agent of this

Court, and solely the agent of this Court, in acting as Receiver under this Order. The Receiver

shall be accountable directly to this Court. The Receiver shall comply with all Local Rules and

laws governing federal equity receivers.

### RECEIVER'S DUTIES

### VIII.

IT IS FURTHER ORDERED that the Temporary Receiver is authorized and directed to

accomplish the following:

A.    Assume full control of the Receivership Defendants by removing, as the Receiver

deems necessary or advisable, any director, officer, independent contractor, employee, or agent of

any of the Receivership Defendants, including any Defendant, from control of, management of, or

participation in, the affairs of the Receivership Defendants;

B.    Take exclusive custody, control, and possession of all assets and documents of, or

in the possession, custody, or under the control of, the Receivership Defendants, wherever

situated. The Receiver shall have full power to divert mail and to sue for, collect, receive, take in

possession, hold, and manage all assets and documents of the Receivership Defendants and other

persons or entities whose interests are now held by, or are under the direction, possession,

custody, or control of, the Receivership Defendants. The Receiver shall assume control over the

10

income and profits therefrom and all sums of money now or hereafter due or owing to the

Receivership Defendants. *Provided, however,* that the Receiver shall not attempt to collect any

amount from a consumer if the Receiver believes the consumer was a victim of the unfair or

deceptive acts or practices alleged in the Complaint in this matter, without prior Court approval;

     C.    Take all steps necessary to secure each location from which the Receivership

Defendants operate their business. Such steps may include, but are not limited to, any of the

following, as the Receiver deems necessary or advisable: (1) serving this Order; (2) completing a

written inventory of all receivership assets; (3) obtaining pertinent information from all employees

and other agents of the Receivership Defendants, including, but not limited to, the name, home

address, social security number, job description, passwords or access codes, method of

compensation, and all accrued and unpaid commissions and compensation of each such employee

or agent; (4) photographing and video taping any or all portions of the location; (5) securing the

location by changing the locks and disconnecting any computer modems or other means of access

to the computer or other records maintained at that location; and (6) requiring any persons present

on the premises at the time this Order is served to leave the premises, to provide the Receiver with

proof of identification, or to demonstrate to the satisfaction of the Receiver that such persons are

not removing from the premises documents or assets of the Receivership Defendants. Law

enforcement personnel, including, but not limited to, police or sheriffs, may assist the Receiver in

implementing these provisions in order to keep the peace and maintain security;

     D.    Conserve, hold, and manage all assets of the Receivership Defendants, and perform

all acts necessary or advisable to preserve the value of those assets in order to prevent any

irreparable loss, damage, or injury to consumers or creditors of the Receivership Defendants,

11

including, but not limited to, obtaining an accounting of the assets and preventing unauthorized transfer, withdrawal, or misapplication of assets;

    E.    Enter into contracts and purchase insurance as advisable or necessary;

    F.    Prevent the inequitable distribution of assets and determine, adjust, and protect the interests of consumers and creditors who have transacted business with the Receivership Defendants;

    G.    Manage and administer the business of the Receivership Defendants until further order of this Court by performing all incidental acts that the Receiver deems to be advisable or necessary, which includes retaining, hiring, or dismissing any employees, independent contractors, or agents;

    H.    Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

    I.    Have the sole authority to hire legal counsel on behalf of any of the Receivership Defendants;

    J.    Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of or exercising the authority granted by this Order. The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Defendants prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure assets of the Receivership Defendants, such as rental payments;

    K.    Institute, compromise, adjust, appear in, intervene in, or become party to such

12

actions or proceedings in state, federal or foreign courts or arbitration proceedings as the Receiver

deems necessary and advisable to preserve or recover the assets of the Receivership Defendants,

or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this

Order, including but not limited to, actions challenging fraudulent or voidable transfers;

      L.     Defend, compromise, adjust, or otherwise dispose of any or all actions or

proceedings instituted in the past or in the future against the Receiver in his role as Receiver, or

against the Receivership Defendants, as the Receiver deems necessary and advisable to preserve

the assets of the Receivership Defendants, or as the Receiver deems necessary and advisable to

carry out the Receiver's mandate under this Order;

      M.    Continue to conduct the business, or cease operation of the business, of the

Receivership Defendants in such manner, to such extent, and for such duration as the Receiver

may in good faith deem to be necessary or appropriate to operate the businesses profitably and

lawfully, if at all; *provided that*, the continuation and conduct of the business shall be conditioned

upon the Receiver's good faith determination that the businesses can be lawfully operated at a

profit using the assets of the receivership estate;

      N.     Immediately issue subpoenas and conduct discovery, including depositions, to

obtain documents, records, and information pertaining to the receivership on behalf of the

receivership estate;

      O.     Open one or more bank accounts as designated depositories for funds of the

Receivership Defendants. The Receiver shall deposit all funds of the Receivership Defendants in

such a designated account and shall make all payments and disbursements from the receivership

estate from such an account. The Receiver shall serve copies of monthly account statements on

13

00325

RER-6    0462

all parties;

    P.    Maintain accurate records of all receipts and expenditures that he makes as Receiver; and

    Q.    Cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency.

## COOPERATION WITH THE TEMPORARY RECEIVER

## IX.

    IT IS FURTHER ORDERED that Defendants and all other persons or entities served with a copy of this Order shall fully cooperate with and assist the Receiver. This cooperation and assistance shall include, but not be limited to, providing information to the Receiver that the Receiver deems necessary in order to exercise the authority and discharge the responsibilities of the Receiver under this Order; providing any password required to access any computer, electronic file, or telephonic data in any medium; and advising all persons who owe money to the Receivership Defendants that all debts should be paid directly to the Receiver. Defendants and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from directly or indirectly:

    A.    Transacting any of the business of the Receivership Defendants;

    B.    Destroying, secreting, defacing, transferring, or otherwise altering or disposing of any documents of the Receivership Defendants, including, but not limited to, books, records, accounts, writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations, electronically-stored records, or any other papers of any kind or nature;

14

00326

RER-6    0463

C.    Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Recceivership Defendants, or the Receiver;

D.    Excusing debts owed to the Receivership Defendants;

E.    Failing to notify the Receiver of any asset, including accounts, of a Receivership Defendant held in any name other than the name of the Receivership Defendant, or by any person or entity other than the Receivership Defendant, or failing to provide any assistance or information requested by the Receiver in connection with obtaining possession, custody, or control of such assets; and

F.    Doing any act or refraining from any act whatsoever to interfere with the Receiver managing, or taking custody, control, or possession of, the assets or documents subject to this receivership; or to harass or interfere with the Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of the Receivership Defendants; or to refuse to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any order of this Court.

## DELIVERY OF RECEIVERSHIP PROPERTY

## X.

IT IS FURTHER ORDERED that:

A.    Immediately upon service of this Order upon them, or within such period as may be permitted by the Receiver, Defendants shall transfer or deliver possession, custody, and control of the following to the Receiver:

15

1.    All assets of the Receivership Defendants;

2.    All documents of the Receivership Defendants, including, but not limited to, books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), client lists, title documents and other papers;

3.    All assets belonging to members of the public now held by the Receivership Defendants; and

4.    All keys, codes, and passwords necessary to gain or to secure access to any assets or documents of the Receivership Defendants, including, but not limited to, access to their business premises, means of communication, accounts, computer systems, or other property.

B.    In the event any person or entity fails to deliver or transfer any asset or otherwise fails to comply with any provision of this Paragraph, the Receiver may file *ex parte* an Affidavit of Non-Compliance regarding the failure. Upon filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Receiver. The writs shall authorize and direct the United States Marshal or any sheriff or deputy sheriff of any county, or any other federal or state law enforcement officer, to seize the asset, document, or other thing and to deliver it to the Receiver.

16

00328

RER-6        0465

### TRANSFER OF FUNDS TO THE RECEIVER

### XI.

IT IS FURTHER ORDERED that, upon service of a copy of this Order, all banks, broker-dealers, savings and loans, escrow agents, title companies, commodity trading companies, precious metals dealers and other financial institutions and depositories of any kind, and all third-party billing agents, local exchange carriers, common carriers, and other telecommunications companies shall cooperate with all reasonable requests of the FTC and the Receiver relating to implementation of this Order, including transferring funds at the Receiver's direction and producing records related to the assets and sales of the Receivership Defendants.

### COMPENSATION OF RECEIVER

### XII.

IT IS FURTHER ORDERED that the Receiver and all personnel hired by the Receiver, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by, in the possession or control of, or which may be received by, the Receivership Defendants. The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of this Order. The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

17

### RECEIVER'S BOND

### XIII.

IT IS FURTHER ORDERED that the Receiver shall file with the Clerk of this Court a bond in the sum of $ _10,000.00_ with sureties to be approved by the Court, conditioned upon the Receiver well and truly performing the duties of the office, and abiding by and performing all acts the Court directs.

### ACCESS TO BUSINESS OFFICES AND RECORDS

### XIV.

IT IS FURTHER ORDERED that the FTC and the Receiver, and their representatives, agents, and assistants, shall have immediate access to all business premises and storage facilities, owned, controlled, or used by Defendants, including, but not limited to, 215 Fifth Street, Suite 306, West Palm Beach, Florida 33401. The FTC and the Receiver are authorized to employ the assistance of law enforcement officers, as they deem necessary to effect service and peacefully implement this Order. The FTC and the Receiver may exclude Defendants and Defendants' employees from the business premises during the immediate access. The purpose of the immediate access shall be to effect service and to inspect and copy documents and computer data, including but not limited to, correspondence, emails, financial data, and other documents concerning Defendants' business practices and assets.

    A.    The FTC and the Receiver and its representatives, agents, and assistants, shall have the right to remove documents from the above-listed premises in order that they may be inspected, inventoried, and copied.

    B.    The FTC shall return any removed documents to the Receiver within five (5)

18

business days, or such time as is agreed upon by the FTC and the Receiver.

C.    Defendants and all employees or agents of Defendants shall provide the FTC and the Receiver with any necessary means of access to documents and records, including, without limitation, the locations of Defendants' business premises, keys and combinations to locks, computer access codes, and storage area access information.

D.    If any computers containing information related to the business practices or finances of the Defendants are at a location other than those listed herein, including, but not limited to the personal residences of the Defendants, then immediately upon service of this Order upon them Defendants shall produce to the Receiver all such computers. In order to prevent the destruction of computer data, upon service of this order upon Defendants, any computers containing such information shall be powered down (turned off) in the normal course for the operating systems used on such computers and shall not be used until produced for copying and inspection, along with any codes needed for access.

E.    Within forty-eight (48) hours of service of this Order each Defendant shall produce to the Receiver a list of all agents, employees, officers, servants and those persons in active concert and participation with them, who have been associated or done business with the Receivership Defendants.

## DEFENDANTS' ACCESS TO THEIR BUSINESS PREMISES

## XV.

IT IS FURTHER ORDERED that the Receiver shall allow the Defendants and their representatives reasonable access to the premises of the Receivership Defendants. The purpose of this access shall be to inspect and copy any and all books, records, accounts, and other property

19

owned by or in the possession of the Receivership Defendants. The Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access.

## PRESERVATION OF RECORDS

## XVI.

IT IS FURTHER ORDERED that Defendants, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby temporarily restrained and enjoined from destroying, erasing, mutilating, concealing, altering, transferring, writing over, or otherwise disposing of, in any manner, directly or indirectly, any documents or records of any kind that relate to the business practices or business or personal finances of Defendants, including but not limited to, computerized files and storage media, contracts, accounting data, correspondence, advertisements, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, copies of federal, state or local business or personal income or property tax returns, and other documents or records of any kind that relate to the business practices or business or personal finances of Defendants.

## RECORD KEEPING/BUSINESS OPERATIONS

## XVII.

IT IS FURTHER ORDERED that Defendants are hereby temporarily restrained and enjoined from:

A.    Failing to create and maintain documents that, in reasonable detail, accurately, fairly, and completely reflect their incomes, disbursements, transactions, and use of money; and

B.    Creating, operating, or exercising any control over any business entity, including

20

any partnership, limited partnership, joint venture, sole proprietorship or corporation, without first

providing the Commission with a written statement disclosing: (1) the name of the business

entity; (2) the address and telephone number of the business entity; (3) the names of the business

entity's officers, directors, principals, managers and employees; and (4) a detailed description of

the business entity's intended activities.

## IDENTIFICATION OF PROVIDERS AND CUSTOMERS

### XVIII.

IT IS FURTHER ORDERED that Defendants shall:

    A.    Within five (5) days of service of this Order, prepare and deliver to Plaintiffs a

completed statement, verified under oath and accurate as of the date of entry of this Order,

identifying each long distance service provider that provided services to consumers in connection

with any collect calls that were billed on behalf of Defendants; and

    B.    Within ten (10) days of service of this Order, prepare and deliver to counsel for

Plaintiff a completed statement, verified under oath and accurate as of the date of entry of this

Order, detailing the collect calls that were billed on behalf of Defendants during 2005, including

the calling telephone numbers, the recipient telephone numbers, and the date and time of the calls.

## RECORD KEEPING/BUSINESS OPERATIONS

### XIX.

IT IS FURTHER ORDERED that Defendants are hereby temporarily restrained and

enjoined from:

    A.    Failing to create and maintain documents that, in reasonable detail, accurately,

fairly, and completely reflect their incomes, disbursements, transactions, and use of money; and

21

B.    Creating, operating, or exercising any control over any business entity, including

any partnership, limited partnership, joint venture, sole proprietorship, or corporation, without

first providing the Commission with a written statement disclosing:  (1) the name of the business

entity; (2) the address and telephone number of the business entity; (3) the names of the business

entity's officers, directors, principals, managers and employees; and (4) a detailed description of

the business entity's intended activities.

## STAY OF ACTIONS

## XX.

**IT IS FURTHER ORDERED** that:

A.    Except by leave of this Court, during pendency of the receivership ordered herein,

Defendants, and all customers, principals, investors, creditors, stockholders, lessors, and other

persons seeking to establish or enforce any claim, right, or interest against or on behalf of the

Defendants, and all others acting for or on behalf of such persons, including attorneys, trustees,

agents, sheriffs, constables, marshals, and other officers and their deputies, and their respective

attorneys, servants, agents and employees, be and are hereby stayed from:

1.    Commencing, prosecuting, continuing, entering, or enforcing any suit or

proceeding against a Receivership Defendant, except that such actions may

be filed to toll any applicable statute of limitations;

2.    Accelerating the due date of any obligation or claimed obligation against a

Receivership Defendant; filing or enforcing any lien against a Receivership

Defendant; taking or attempting to take possession, custody, or control of

any asset of a Receivership Defendant; attempting to foreclose, forfeit,

22

alter, or terminate any interest in any asset of a Receivership Defendant,
whether such acts are part of a judicial proceeding, are acts of self-help, or
otherwise;

3.   Executing, issuing, serving, or causing the execution, issuance or service
of, any legal process against a Receivership Defendant, including, but not
limited to, attachments, garnishments, subpoenas, writs of replevin, writs of
execution, or any other form of process whether specified in this Order or
not;

4.   Causing any Receivership Defendant to be placed in involuntary
bankruptcy; or

5.   Doing any act or thing whatsoever to interfere with the Receiver managing,
or taking custody, control, or possession of, the assets or documents subject
to this receivership, or to harass or interfere with the Receiver in any way,
or to interfere in any manner with the exclusive jurisdiction of this Court
over the assets or documents of the Receivership Defendants.

B.   This paragraph does not stay the commencement or continuation of a criminal action
or proceeding.

## DISTRIBUTION OF ORDER BY DEFENDANTS

## XXI.

IT IS FURTHER ORDERED that Defendants shall immediately provide a copy of this
Order to each affiliate marketer, sub-affiliate marketer, affiliate, subsidiary, division, sales entity,
successor, assign, officer, director, employee, independent contractor, client company, agent,

23

attorney, spouse and representative of Defendants, and shall, within ten (10) days from the date of entry of this Order, provide the Commission with a sworn statement that Defendants have complied with this provision of the Order, which statement shall include the names, physical addresses, and e-mail addresses of each such person or entity who received a copy of the Order.

## SERVICE OF ORDER

### XXII.

IT IS FURTHER ORDERED that copies of this Order may be served by any means, including facsimile transmission or email, upon any financial institution or other entity or person that may have possession, custody, or control of any documents of any Defendant, or that may otherwise be subject to any provision of this Order. Service upon any branch or office of any financial institution shall effect service upon the entire financial institution.

## CONSUMER CREDIT REPORTS

### XXIII.

IT IS FURTHER ORDERED that, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(1), any consumer reporting agency may furnish a consumer report concerning Defendants to the Commission.

## SERVICE OF PLEADINGS

### XXIV.

IT IS FURTHER ORDERED that Plaintiff shall serve on Defendants copies of this Order, complaint, and supporting memoranda, affidavits and other evidence. Defendants shall serve on the Commission all memoranda, affidavits and other evidence on which Defendants intend to rely at the preliminary injunction hearing set in this matter not later than 4:00 p.m.

24

(Eastern time) on the third calendar day prior to the hearing date. The Commission shall file with the Court and deliver to counsel that have entered an appearance any additional affidavits upon which it intends to rely in connection with the Commission's request for a preliminary injunction no later than 24 hours before the time scheduled for the preliminary injunction hearing.

## DURATION OF TEMPORARY RESTRAINING ORDER

### XXV.

IT IS FURTHER ORDERED that the Temporary Restraining Order granted herein shall expire on _March 9_, 2006 at _5:00_ p.m., unless within such time, the Order, for good cause shown, is extended for an additional period not to exceed ten (10) days, or unless it is further extended pursuant to Federal Rule of Civil Procedure 65.

## ORDER TO SHOW CAUSE REGARDING
## PRELIMINARY INJUNCTION

### XXVI.

IT IS FURTHER ORDERED, pursuant to Federal Rule of Civil Procedure 65(b), that Defendants shall appear before this Court on the _8_ day of _March_, 2006, at _10:00_ o'clock _a_.m., to show cause, if there is any, why this Court should not enter a Preliminary Injunction, pending final ruling on the Complaint against Defendants, enjoining them from further violations of Section 5(a) of the Federal Trade Commission Act, continuing the freeze of their assets, and imposing such additional relief as may be appropriate.

## SERVICE UPON PLAINTIFF

### XXVII.

IT IS FURTHER ORDERED that, with regard to any correspondence or pleadings

25

related to this Order, service on the Commission shall be performed electronically or by overnight

mail to the attention of Laura Kim at the Federal Trade Commission, 600 Pennsylvania Avenue,

NW, Room H-238, Washington, DC 20580.

## RETENTION OF JURISDICTION

### XXVIII.

IT IS FURTHER ORDERED that this Court shall retain jurisdiction of this matter for all

purposes.

SO ORDERED, this 27 day of February , 2006, at 11:45 am.

UNITED STATES DISTRICT JUDGE

Kenneth L. Ryskamp

CC: Laura M. Kim, Esq.
Robert S. Kaye, Esq.

Certified to be a true and
correct copy of the document on file
Clarence Maddox, Clerk,
U.S. District Court
Southern District of Florida
By _____ Deputy Clerk
Date 2/27/06

26

# Exhibit 4



**Integretel**

BILLING SOLUTIONS

March 6, 2006

Mr. Roberto C. Menjivar                          Via FAX (202) 326-3395
Federal Trade Commission                         and express courier
600 Pennsylvania Avenue NW. Room 238
Washington, DC 20580

RE:    <u>FTC v. Nationwide Connections, Inc. et al</u>
       <u>TRO and Order to Show Cause dated February 27, 2006 ("Order")</u>

Dear Mr. Menjivar:

Please be advised of the following with respect to the above captioned Order:

1) To the best of our knowledge, we have not conducted any business with defendant
   Nationwide Connections, Inc.

2) We have a service contract with a Florida corporation called Access One
   Communications ("AOC"). Pursuant to this contract, AOC would be entitled to certain
   proceeds from billing transactions. However, AOC is in default of this contract and,
   therefore, no amounts are currently due and owing. We have not processed any
   billing for AOC since May of 2005. To the extent proceeds become due to AOC in
   the future, we will establish a separate bank account into which such funds will be
   deposited and notify your office accordingly.

3) We have a service contract with a Florida corporation called Network One Services,
   Inc. ("NOSI"). Pursuant to this contract, NOSI would be entitled to certain proceeds
   from billing transactions. However, NOSI is in default of this contract and, therefore,
   no amounts are currently due and owing. We have not processed any billing for
   NOSI since June of 2003. To the extent proceeds become due to NOSI in the future,
   we will establish a separate bank account into which such funds will be deposited
   and notify your office accordingly.

Except as noted above, we are in possession of no assets relating to any defendant in
this matter. If you wish additional information or need to discuss any of the foregoing,
please call me directly at 408-362-4177.

Sincerely,

Ken Dawson,
President

INTEGRETEL, INC • 5883 RUE FERRARI • SAN JOSE • CA • 95138 • 408.362.4000 TEL.

00340

03/06/2006 15:27 FAX  408 362 2795      Integretel,Inc.                        Ø001
Case 9:06-cv-80180-KLR    Document 296-2    Entered on FLSD Docket 10/30/2006    Page 98 of 102

```
                          ***********************
                          ***   TX REPORT   ***
                          ***********************


        TRANSMISSION OK

        TX/RX NO              0680
        DESTINATION TEL #     912023263395
        DESTINATION ID
        ST. TIME             03/06 15:26
        TIME USE             00'23
        PAGES SENT           2
        RESULT               OK
```



**Integretel**
BILLING SOLUTIONS

# Facsimile

To: Robert Menjivar        From: Ken Dawson

| | | |
|---|---|---|
| Fax: | Pages: | 2 |
| Phone: | Date: | |
| Re: | CC: | |

☐ Urgent   ☐ For Review   ☐ Please Comment   ☐ Please Reply   ☐ Please Recycle

● Comments:



# Exhibit 5

00343

RER-6      0480

 **FEDERAL TRADE COMMISSION**
FOR THE CONSUMER                              Search: |_____|  ▆▆▆▆

HOME | CONSUMERS | BUSINESSES | NEWSROOM | FORMAL | ANTITRUST | CONGRESSIONAL | ECONOMIC | LEGAL
Privacy Policy | About FTC | Commissioners | File a Complaint | HSR | FOIA | IG Office | En Español

For Your Information: October 10, 2006

## FTC Files Amended Complaint in Matter of Nationwide Connections, Inc.

**Commission approval of amended complaint:** The Commission has approved the filing of an amended complaint in the matter concerning Nationwide Connections, Inc. The original complaint, filed in March 2006, alleged the defendants collected more than $25 million in fraudulent collect call fees by "cramming" fake charges onto consumers' phone bills. The amended complaint adds BSG Clearing Solutions North America, LLC; ACI Billing Services, Inc. d/b/a OAN; Billing Concepts, Inc.; and The Billing Resource d/b/a Integretel as additional defendants in this case. The new defendants are the billing aggregators that the Nationwide defendants allegedly used to bill consumers for the collect calls that were never accepted or made.

The vote approving the amended complaint was 5-0. (FTC File No. X060028; the contact is the Office of Public Affairs, 202-326-2180; *see* press release dated March 15, 2006.)

Copies of the documents mentioned in this release are available from the FTC's Web site at http://www.ftc.gov and from the FTC's Consumer Response Center, Room 130, 600 Pennsylvania Avenue, N.W., Washington, DC 20580. Call toll-free: 1-877-FTC-HELP.

**MEDIA CONTACT:**

Office of Public Affairs
202-326-2180

(http://www.ftc.gov/opa/2006/10/fyi0664.htm)

**E-mail this News Release**
If you send this link to someone else, the FTC will not collect any personal information about you or the recipient.

**Related Documents:**

*Federal Trade Commission, Plaintiff, vs. Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc. Willoughby Farr, Mary Lou Farr, Yaret Garcia, Erika Riaboukha, Qaadir Kaid, Defendants*; United States District Court Southern District of Florida; Civil Action No.: 06-80180; FTC File No.: 052 3141

**Consumer Information:**

**What To Do If You Get Unauthorized Charges On Your Phone Bill**



FYI: FTC Files Amended Complaint in Matter of Nationwide Connection...                    http://www.ftc.gov/opa/2006/10/fyi0664.htm

HOME | CONSUMERS | BUSINESSES | NEWSROOM | FORMAL | ANTITRUST | CONGRESSIONAL | ECONOMIC | LEGAL
Privacy Policy | About FTC | Commissioners | File a Complaint | HSR | FOIA | IG Office | En Español

10/27/2006 12:27 PM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-80180-Civ-RYSKAMP/VITUNAC

FEDERAL TRADE COMMISSION,

      Plaintiff,

  vs.

NATIONWIDE CONNECTIONS, INC.,
*et. al.*,

      Defendants.

_____/

### Declaration of Richard H. Gordin

1.  I am one of the attorneys who has represented defendant The Billing Resource, d/b/a Integretel (formerly known as Integretel, Incorporated) ("Integretel") in connection with matters relating to the instant litigation. I submit this declaration in opposition to the receiver's motion for an order requiring Integretel to show cause why it should not be held in contempt of court.

2.  I am a member of Tighe Patton Armstrong Teasdale, PLLC, a law firm in the District of Columbia. I am admitted to the bars of Maryland, Illinois and the District of Columbia. In addition, I am admitted to practice before several federal courts. I am a member in good standing of each bar of which I am a member.

3.  On or shortly after May 19, 2006, I learned that the FTC had served a discovery subpoena on Integretel in connection with this action. I recall having several conversations, two of which were substantive and detailed, with FTC staff counsel regarding this subpoena prior to June 11, 2006, the date I traveled to California to participate in the process of assembling documents to be produced in response to the subpoena. During at least one of these two

substantive discussions, I recall mentioning that Integretel had a reserve account for the

companies and that the "reserve" was simply a bookkeeping mechanism. There was little, if any,

further conversation about the reserve at that time. I gathered from the reaction of staff counsel

that they knew and understood the use and operation of reserve accounting in the context of the

services provided by telecommunication billing aggregators.

4. On June 9 and June 28, Integretel produced documents in response to the subpoena.

On June 22, prior to the June 28 production, I had a detailed discussion with FTC staff counsel

about information they wanted with regard to the subpoena. I do not recall staff counsel

mentioning the reserve account at this time.

5. I do not recall any further substantive contact with FTC staff until August. On August

8, I received two letters from staff counsel. One letter stated staff's intention to recommend to

the Commission that Integretel be joined as a party to the instant litigation, and the other letter

contained a detailed review of information that the FTC believed we had agreed in discussions to

produce, but had not produced in response to the subpoena. Neither letter mentioned the

Integretel reserve.

6. On August 21, I had a conversation with FTC staff counsel that primarily concerned

the information identified in the FTC's August 8 letter. During that conversation, staff asked

about the amount credited in the reserve account.

7. On August 29, 2006, I wrote to Ms. Collot Guerard, one of the FTC staff attorneys,

regarding various matters staff had raised with regard to the subpoena. With regard to the matter

of the reserve, I wrote:

> Reserve Amount Remaining: We understand that as of Friday, August 25, 2006, the
> reserve amount remaining for Access One was $1,186,430.36 and the amount remaining
> for Network One was $173,918.66. As we informed you, these are accounting entries

-2-

only; there are no separate holding accounts. Under the respective contracts with TRS, the reserves are to be applied for various purposes.

8.    During the first week in September, I met with four of the five FTC commissioners about this case. FTC staff was present at each meeting. At one or more of those meetings, I discussed the existence and the amount of the reserve accounts.

9.    There was no further inquiry or mention of the reserve accounts until September 28, when I met with FTC staff. During that meeting, staff asked how much was in the reserve account (which I had referenced yet again in a memorandum to staff that was forwarded to them shortly before the meeting). When I answered, staff acted as though they had never heard about the reserve or its book valuation.

10. Following this meeting, there were written communications between counsel for Integretel and counsel for the FTC. Attached hereto as Exhibits 1 and 2 are true and correct copies of letters I received from FTC staff counsel Laura Kim on October 2 and October 4, respectively.

11. I responded to Ms. Kim's October 2 letter on October 3, and explained that Integretel was not holding any funds to which the receiver was entitled. A copy of that letter is included in Exhibit 4 to the receiver's motion.

12. On October 5, I received a large box that had been sent to me by FTC staff via FedEx. Included in this box were the summons and complaint in this action, as well as a number of other documents. The box also included a cover letter from Mr. Michael Davis, one of the FTC's attorneys in this matter, that inaccurately asserted that I had previously said that I had been appointed to accept service on behalf of Integretel. None of the other documents in the box were specially noted or discussed in the cover letter. Each document was referenced by title or

00348

RER-6      0485

description in an accompanying list. Among those documents on the list and in the box was the amended preliminary injunction.

13. Later that day, I sent a letter to FTC staff counsel, explaining, among other things, that I had not stated that I was authorized to accept service and that I did not then have such authority. My October 5 letter also pointed out that service by Federal Express is not authorized under the Federal Rules of Civil Procedure. I stated in the letter that we would contact Integretel to determine whether we would be given authority to accept service and that we would then contact FTC staff counsel.

14. Later on October 5, I left the country. I did not return to the country until after service had been effected.

15. To my knowledge, information and belief, Integretel was not served with the FTC's motion to amend the preliminary injunction or otherwise given notice of the motion at any time before the amended preliminary injunction was entered.

I DECLARE under penalty of perjury that the foregoing is true to the best of my knowledge, information, and belief.

Executed on October 30, 2006.

Richard H. Gordin

-4-

# Exhibit 1



UNITED STATES OF AMERICA
FEDERAL TRADE COMMISSION
WASHINGTON, D.C. 20580

Laura Kim
Attorney
Division of Marketing Practices

Direct Dial: 202-326-3734
Fax : 202-326-3395
E-mail: lkim@ftc.gov

October 2, 2006

**VIA FACSIMILE (202) 454-2805**

Richard H. Gordin
Tighe Patton Armstrong Teasdale, PLLC
1747 Pennsylvania Avenue, N.W.
Third Floor
Washington DC 20006

Re: *FTC v. Nationwide Connections, Inc., et al.*, Case No. 06-80180-CIV-Ryskamp

Dear Mr. Gordin:

It has recently come to staff's attention that your client, The Billing Resource, d/b/a Integretel ("Integretel"), currently holds reserves belonging to Access One Communications, Inc. ("Access One") and Network One Services, Inc. ("Network One"). Integretel appears to be holding reserves for these two companies in an amount that exceeds $1 million. As you know, all assets of the defendants in the case *FTC v. Nationwide Connections, Inc., et al.*, including Access One and Network One, have been frozen pursuant to the Temporary Restraining Order ("TRO") and Preliminary Injunction Order entered by Judge Ryskamp on February 27, 2006 and March 8, 2006, respectively.

On March 3, 2006, the FTC served the TRO by facsimile on Ken Dawson, President of Integretel. Paragraph III of the TRO provides that all assets of the defendants are frozen. In addition, pursuant to Paragraph XI of the TRO, all "third-party billing agents" were ordered to cooperate with the court-appointed Receiver, including producing records and "transferring funds" at the Receiver's direction. Similarly, the Preliminary Injunction Order freezes all of the defendants' assets and requires transfer of funds to the Receiver.

Following service of the TRO on Integretel, Mr. Dawson notified the FTC that to the extent that funds become due in the future to Access One or Network One, Integretel "will establish a separate bank account" for each of the two companies "in which such funds will be deposited . . . .". As mentioned above, we have now learned that Integretel holds more than $1 million in reserves for Access One and Network One. Such funds should have been

Mr. Richard Gordin
October 2, 2006, page 2

transferred to the Receiver pursuant to the TRO and Preliminary Injunction.

Accordingly, please contact Jeffrey Schneider, counsel to the court-appointed Receiver, to arrange for the immediate transfer of the reserve account funds belonging to Access One and Network One to the Receiver. Mr. Schneider may be reached at 305-529-2481.

Thank you for your prompt attention to this matter.

Sincerely,

Laura Kim

# FEDERAL TRADE COMMISSION

600 Pennsylvania Avenue, NW
Washington, DC 20580
Fax Number: (202) 326-3395

## Facsimile Transmittal Sheet

| | | |
|---|---|---|
| **To:** | Ric... H. Gordin<br>Tighe Patton Armstrong Teasdale, PLLC<br>*Fax (202) 454-2805* | **Total number of pages sent**<br>**(including this cover sheet):**<br><br>**9** |
| **From:** | Laura Kim<br>Bureau of Consumer Protection<br>Direct Dial (202) 326-734 | **Sending Org Code:    1144**<br><br>**Date:  October 2, 2006**<br><br>**Time: 5:30pm** |
| **Subject:** | FTC v. Nationwide Connections, Case No. 06-80180 (S.D. Fla.) | |
| **Note:** | Please refer to the attached. | |

**IMPORTANT NOTICE:**
The information contained in this transmission is privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately and return the original message to us at the above address via the U.S. Postal Service. Thank you.

00353

RER-6        0490

# Exhibit 2



UNITED STATES OF AMERICA
FEDERAL TRADE COMMISSION
WASHINGTON, D.C. 20580

Laura Kim
Attorney
Division of Marketing Practices

Direct Dial: 202-326-3734
Fax : 202-326-3395
E-mail: lkim@ftc.gov

October 4, 2006

**VIA FACSIMILE (202) 454-2805**

Richard H. Gordin
Tighe Patton Armstrong Teasdale, PLLC
1747 Pennsylvania Avenue, N.W.
Third Floor
Washington DC 20006

Re: *F.T.C. v. Nationwide Connections, Inc., et al.,* Case No. 06-80180-CIV-Ryskamp

Dear Mr. Gordin:

I write in response to your letter dated October 3, 2006.

As you note in your letter, The Billing Resource's ("Integretel") President, Ken Dawson, wrote to the FTC on March 6, 2006 after being served with the Temporary Restraining Order entered by Judge Ryskamp in the above-captioned case. In his letter, Mr. Dawson states that "to the extent proceeds become due to [defendant Access One Communications, Inc.], [Integretel] will establish a separate bank account into which such funds will be deposited and notify [the FTC] accordingly." Mr. Dawson made a similar statement with respect to defendant Network One Services, Inc. ("Network One").

At our September 28, 2006 meeting, you informed me and Collot Guerard that Integretel currently holds more than $1 million in reserves arising out of Integretel's contractual relationships with Network One and Access One Communications, Inc. (collectively, "Nationwide defendants"). You may dispute whether such reserves belong, or have become due, to the Nationwide defendants. It is our position, however, that such funds do belong to the Nationwide defendants and that the $1 million in reserves should have been disclosed to the FTC and the court-appointed Receiver.

Because Mr. Dawson's letter of March 6 states that he would notify the FTC of such funds when they become due, and because we believe that such funds are currently due to the Nationwide defendants, I plan to send a copy of the March 6 letter to Jeffrey Schneider, counsel

Mr. Richard H. Gordin
October 4, 2006

for the Receiver.

If you object to my sending a copy of the letter to Mr. Schneider, please contact me immediately. Otherwise, I plan to send the letter to him on Tuesday, October 10.

Please contact me if you would like to discuss this matter further.

Sincerely,

Laura Kim

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-80180-Civ-RYSKAMP/VITUNAC

FEDERAL TRADE COMMISSION,

        Plaintiff,

   vs.

NATIONWIDE CONNECTIONS, INC.,
et. al.,

        Defendants.

_____/

### Declaration of Steven A. Lancellotta

1.  I am a member of the firm of Tighe Patton Armstrong Teasdale PLLC in Washington,

D.C. I am counsel for defendant The Billing Resource, d/b/a Integretel (formerly known as

Integretel, Incorporated) ("Integretel"). I submit this declaration in opposition to the receiver's

motion for an order requiring Integretel to show cause why it should not be held in contempt of

court.

2.  I have read the declaration of Richard H. Gordin, which summarizes certain events

relating to the issue of service of process on Integretel.

3.  Early in the evening of October 5, Mr. Gordin left the country. In his absence, I

handled communications with the FTC regarding the issue of service.

4.  Integretel authorized us to accept service effective on October 10. On that date I sent

counsel for the FTC a letter by fax stating that we were authorized to accept service of the

previously delivered documents effective on October 10, and asking him to contact me

immediately if that was not acceptable to the FTC. Counsel for the FTC did not contact me in

response to the letter. A true and correct copy of my October 10 letter is attached hereto as Exhibit 1.

5.   Later in the day on October 10, I spoke by telephone with FTC attorney Laura Kim, who confirmed that Integretel would be deemed to have been served on October 10.

6.   On October 11, Mr. Gordin and I were copied on a letter from Ms. Kim to the Receiver's counsel, Jeffrey Schneider, concerning certain assets that the FTC alleged belong to the receivership estate. I then sent to Mr. Schneider a letter explaining why we believed that Integretel was not in possession of any assets belonging to the receivership estate. A copy of that letter is attached to the Receiver's show-cause motion as part of Exhibit 4.

7.   Mr. Schneider sent me an email on October 12 in which he stated that he had reviewed my letter to him and suggested that we speak the next morning. I agreed to that suggestion, and on the morning of October 13 I spoke with Mr. Schneider. Also participating in that conversation were Neal Goldfarb of my firm and our local counsel, Scott Newman of Holland & Knight.

8.   In that conversation we disputed Mr. Schneider's claim that Integretel was required to turn over the amount of the reserves to the Receiver. We also discussed the possibility of resolving the dispute without the Receiver's seeking relief from the Court, but were unable to reach an agreement. Mr. Schneider filed his show-cause motion later that day.

I DECLARE under penalty of perjury that the foregoing is true to the best of my knowledge, information, and belief.

Executed on October 30, 2006.

Steven A. Lancellotta

-2-

# Exhibit 1

# TIGHE PATTON ARMSTRONG TEASDALE, PLLC

### ATTORNEYS AT LAW

1747 PENNSYLVANIA AVENUE, N.W.
Third Floor
WASHINGTON, DC 20006-4604

TELEPHONE (202) 454-2800
FACSIMILE (202) 454-2805
www.tighepatton.com

STEVEN A. LANCELLOTTA
WRITER'S DIRECT DIAL: (202) 454-2836
EMAIL: slancellotta@tighepatton.com

October 10, 2006

**VIA FACSIMILE & FIRST-CLASS MAIL**

Michael J. Davis, Esquire
Federal Trade Commission
600 Pennsylvania Avenue, NW
Room H-288
Washington, DC 20580

Re:    *Federal Trade Commission v. Nationwide Connections, Inc., et al.*

Dear Mr. Davis:

This is to follow up on Richard Gordin's letter to you of October 5, 2006 regarding the issue of service of the summons and first amended complaint on The Billing Resource.

We have consulted with our client, and we are authorized to accept the Federal Express delivery that Mr. Gordin received on October 5 as constituting service of the summons and first amended complaint, effective as of today. Therefore, the deadline for filing a responsive motion or pleading would begin to run today, not on October 5.

We assume this will be acceptable to the staff. If it is not, please let me know immediately.

Sincerely,

Steven A. Lancellotta

# EXHIBIT H

00361

RER-6        0498

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-80180-Civ-RYSKAMP/VITUNAC

FEDERAL TRADE COMMISSION,

     Plaintiff,

vs.

NATIONWIDE CONNECTIONS, INC.,
*et. al.,*

     Defendants.

_____/

### Motion of Defendant The Billing Resource d/b/a Integretel to Modify Prior Injunctive Orders

Defendant The Billing Resource d/b/a Integretel ("Integretel") moves that the Court modify the temporary restraining order, preliminary injunction, and amended preliminary injunction previously entered in this case (Docket Entries 18, 29, and 233, respectively) in the following respects, in order to cure or at least mitigate problems that render the provisions in question invalid or otherwise unenforceable:

- *TRO § VI/Preliminary Injunction § VII/Amended Preliminary Injunction § VII ("Retention of Assets and Records by Financial Institutions"):* Language should be added to the effect that if any person (other than someone in one of the categories listed in Fed. R. Civ. P. 65(d)) contends that he holds no assets or accounts of the original defendants in this action, the provisions of this section will not apply unless and until the receiver obtains a further order from the court directed specifically at that person, after notice and an opportunity to be heard.

- *TRO § IX/Preliminary Injunction § X/Amended Preliminary Injunction § X ("Cooperation with Temporary Receiver"/"Cooperation with the Receiver"):* The first paragraph should be amended so that the duty to assist and cooperate with the receiver applies only to the original defendants and those persons in active or concert or participation with them who receive actual notice of the order. Alternatively, language should be added to provide a mechanism whereby a person from whom the receiver seeks assistance or cooperation may object to the request. If an objection is raised, the objector would have no further obligations unless and until the receiver

-1-

obtained a further order from the court directed specifically at that person, after notice
and an opportunity to be heard.

- *Preliminary Injunction § XI/Amended Preliminary Injunction § XI ("Delivery of
  Receivership Property")*: This section should be amended so that it applies only to the
  original defendants and those persons in active or concert or participation with them
  who receive actual notice of the order. Alternatively, language should be added to
  protect the rights of persons who contend that they have an independent interest in the
  assets sought by the receiver, or otherwise contend that the receiver is not entitled to
  those assets. This language should provide that such a person would have no
  obligation to turn over assets unless and until the receiver proves in an appropriate
  proceeding that the asset in question belongs to the receivership estate.

- *TRO § XI/Preliminary Injunction § XII/Amended Preliminary Injunction § XII
  ("Transfer of Funds to the Receiver")*: This section should be deleted. Alternatively, a
  mechanism for objecting to requests by the receiver should be added, similar to the
  mechanism described with respect to TRO § IX/Preliminary Injunction § X. In
  addition, language should be added stating that a request by the receiver is per se
  unreasonable if it would require the person to whom it is directed to turn over
  property that he holds under a bona fide claim of right or to otherwise give up any of
  his legally protected rights.

- *TRO § XX.A.5/Preliminary Injunction § XXI.A.5/Amended Preliminary Injunction
  § XXI.A.5 ("Stay of Actions")*: This section should be amended to make it clear that it
  is not intended to be applied in a way that would defeat any of the protections granted
  by our other proposed modifications.

## Background

The temporary restraining order entered on February 27, 2006 and the preliminary

injunction entered shortly afterward on March 8 both imposed a variety of prohibitions and

duties on the defendants, and placed certain of the defendants into receivership. In addition, they

purported to impose a variety of prohibitions and requirements on persons who are not parties to

the action. Some of these applied only to nonparties who were acting in concert or participation

with the named defendants, while others purported to apply to anyone served with a copy of the

order.

The orders were entered without giving potentially affected nonparties notice or an

opportunity to be heard. Moreover, none of the orders provides any mechanism by which a

00363

RER-6      0500

nonparty whose rights or interests are affected by the order can raise an objection, short of moving to modify the orders.

The relevant provisions of the TRO and the March 8 preliminary injunction were identical, with one exception. Whereas the asset-turnover provision of the TRO (§ X) applied only to the defendants, the corresponding provision of the preliminary injunction (§ XI) also purported to apply to any person served with a copy of the order.

On September 25, the Court entered an amended preliminary injunction, the relevant portions of which are identical to those of the original preliminary injunction. When the amended preliminary injunction was entered, the FTC had amended its complaint to add Integretel and certain other companies as defendants, but those defendants had not yet been served. Although the amended preliminary injunction uses the term "Defendants" in many places, that term is defined as including only the original defendants.[1] The FTC refers to the original defendants in its amended complaint as "the Nationwide Defendants," and we will do the same here.

The specific injunctive provisions at issue are discussed below.

### Memorandum of Law

**A. The provisions at issue should be modified because they are, in their current form, invalid or otherwise unenforceable against anyone who is not in privity with the original Defendants or who is not acting in concert with the original defendants.**

The provisions that we seek to modify are invalid or otherwise unenforceable as applied to Integretel, for several independent reasons. First, as applied to the Receiver's claim against Integretel, the orders exceed the permissible bounds of equitable relief by granting an injunction based on a purely legal claim. Second, as applied to Integretel, the ex parte turnover order

---

1. Am. Prelim. Inj. at 3 (defining "Defendants" as "Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., Willoughby Farr, Mary Lou Farr, Yaret Garcia, Erika Riaboukha, and Qaadir Kaid.") (D.E. 233).

-3-

violates well-settled rules of receivership practice, denies Integretel due process, and may violate

Integretel's right under the Seventh Amendment to trial by jury. Third, as applied to Integretel,

the provisions requiring that persons served with the order cooperate with and assist the Receiver

and the FTC constitute impermissible delegations of judicial power to persons other than a judge

and violate due process because the persons to whom that power has been delegated are not

neutral and disinterested. Fourth, the injunctions are invalid as applied to Integretel because there

has been no showing that preliminary injunctive relief is appropriate with respect to Integretel

and the conditions under which an injunction may bind a nonparty are not met., Finally, As

applied to Integretel, certain portions of the injunctions are impermissibly uncertain in their

meaning.

The foregoing arguments are set out in detail in Integretel's opposition to the Receiver's

motion for an order to show cause why it should not be held in contempt. Rather than burden the

Court by repeating those arguments here, we incorporate them by reference.

**B.  The modifications we request would cure or at least mitigate the problems that render the injunctions invalid or unenforceable.**

*1.  TRO § VI/Preliminary Injunction § VII/Amended Preliminary Injunction § VII ("Retention of Assets and Records by Financial Institutions")*

This provision purports to apply to any financial or brokerage institution, business entity,

or person served with a copy of the order that holds, controls, or maintains custody of any

account or asset of any of the Nationwide Defendants, or has held, controlled, or maintained

custody or any such asset or account at any time since the entry of the order. It purports to

impose various duties on such persons.

As explained in Integretel's opposition to the Receiver's show-cause motion, this

provision is impermissibly indefinite as to persons who hold assets or accounts that the Receiver

or the FTC may claim belong to one of the Nationwide Defendants but that the person holding

-4-

the asset or accounts claims belongs to them. In addition, certain provisions are invalid because they exceed the Court's power to grant injunctive relief that binds nonparties.[2]

Our proposed modification to the injunctions would cure or at least mitigate these problems by providing that if any person (other than someone in one of the categories listed in Fed. R. Civ. P. 65(d)) contends that he holds, controls, or maintains custody of no assets or accounts of the Nationwide Defendants, the provisions of this section will not apply unless and until the receiver obtains a further order from the court directed specifically at that person, after notice and an opportunity to be heard. This protects the rights of nonparties by ensuring that in cases where there may be uncertainty as to whether this section applies, a nonparty will not be subject to the risk of contempt sanctions until the Court has definitively resolved the uncertainty.

2.    *TRO § IX/Preliminary Injunction § X/Amended Preliminary Injunction § X ("Cooperation with Temporary Receiver"/"Cooperation with the Receiver")*

The first sentence of this section purports to require anyone served with the order to "fully cooperate with and assist the Receiver." The second sentence explains that this cooperation and assistance is to include, among other things, "providing information to the Receiver that the Receiver deems necessary in order to exercise the authority and discharge the responsibilities of the Receivership[.]" The section also imposes certain more specific obligations, but those obligations apply only to the Nationwide Defendants and those in active concert and participation with them.

The first sentence of this section should be amended so that the duty to assist and cooperate with the receiver applies only to the Nationwide Defendants and those in privity or

---

2.    As used here, the term "nonparties" is intended to include persons who are named parties to this action but who the injunctions do not purport to bind in their capacity as parties, and as to whom there has been no showing that they are appropriately subject to injunctive relief under the ordinary standards governing TROs and preliminary injunctions. *See* Integretel Opp. to Receiver's Show-Cause Mtn.. § I.D.

00366

RER-6        0503

active concert or participation with them. As explained in Integretel's opposition to the

Receiver's motion to show cause, the Court lacks the power to impose on independent nonparties

an affirmative duty to cooperate with and assist the Receiver. In addition, an open-ended

provision requiring that persons cooperate with and assist the receiver can (depending on the

nature of the cooperation or assistance the Receiver demands) operate in a way that constitutes

an impermissible delegation of judicial power, a denial of due process, and possibly even a

denial of the right under the Seventh Amendment to trial by jury. It is also violates the

requirement that an injunction specify the specific acts that are mandated or prohibited, because

it leaves it up to the Receiver to determine what specific acts of cooperation and assistance are

supposedly required.

Alternatively, if the scope of the provision is not narrowed as we have requested, the

provision should at least be modified to provide a mechanism whereby a person from whom the

receiver seeks assistance cooperation may object to the request. If an objection is raised, the

objector would have no further obligations unless and until the Receiver obtained a further order

from the court directed specifically at that person, after notice and an opportunity to be heard.

This latter procedure would at least provide protection for the rights and interests of

nonparties that is missing from the orders as originally entered. It is similar to the procedure

provided by Fed. R. Civ. P. 45(c)(2)(B) with respect to subpoenas duces tecum served on

nonparties. Under that rule, timely service of an objection to the subpoena suspends the

nonparty's obligation to comply until the party who served the subpoena has obtained an order

compelling compliance. As with the procedure under this rule, it is appropriate to require the

Receiver to bear the burden of moving for an order compelling the requested cooperation or

-6-

assistance, since the Receiver is the party who is seeking to change the status quo by forcing a
nonparty to perform affirmative acts that the nonparty would otherwise have no duty to perform.

3. *Preliminary Injunction § XI/Amended Preliminary Injunction § XI ("Delivery
   of Receivership Property")*

This section purports to require anyone served with the order to deliver all assets of the
receivership defendants to the Receiver. As explained in Integretel's opposition to the Receiver's
show-cause motion, this provision is invalid as applied to a person who holds property that the
Receiver claims as belonging to a receivership defendant, but that the person who holds the
property claims an interest in. As to such a person, the turnover requirement may (depending on
the circumstances) exceed the Court's power to grant equitable relief. In addition, it violates
well-settled rules of receivership law, deprives the holder of the property of due process and
possibly of the right under the Seventh Amendment to a trial by jury.

These defects should be cured by amending this provision so that it applies only to the
Nationwide Defendants and those persons in active or concert or participation with them who
receive actual notice of the order. Alternatively, language should be added to protect the rights of
persons who contend that they have an independent interest in the assets sought by the Receiver,
or otherwise contend that the Receiver is not entitled to those assets. This language should
provide that such a person would have no obligation to turn over assets unless and until the
receiver proves in an appropriate proceeding that the asset in question belongs to the receivership
estate. The "appropriate proceeding" would in most cases be a separate lawsuit, but in some
cases might be an arbitration or other contractually-mandated ADR procedure. The modified
order should make it clear that in this proceeding, the Receiver would be entitled to assert only
those rights and remedies that could have been asserted by the receivership defendant at issue,

00368

RER-6      0505

and that the other party would be entitled to assert any defenses and setoffs that it could have

asserted against the receivership defendant.

4.    *TRO § XI/Preliminary Injunction § XII ("Transfer of Funds to the Receiver")*

This section applies to business entities that fall into one of various specified categories

and that are served with a copy of the order. It purports to require them to "cooperate with all

reasonable requests of the FTC and the FTC and the Receiver relating to the implementation of

this Order, including transferring funds at the Receiver's direction and producing records related

to the assets and sales of the Receivership Defendants."

As explained in Integretel's opposition to the Receiver's show-cause motion, this

provision is invalid and unenforceable for the same reasons as the cooperate-and-assist provision

discussed above (TRO § IX/Preliminary Injunction § X). In addition, with respect to demands by

the Receiver to transfer funds, this section is invalid for the same reasons as the asset-turnover

provision discussed above (Preliminary Injunction § XI/Amended Preliminary Injunction § XI).

This section should be deleted. Alternatively, a mechanism for objecting to requests by

the receiver should be added, similar to the mechanism described with respect to the cooperate-

and-assist provision. In addition, language should be added stating that a request by the receiver

is per se unreasonable if it would require the person to whom it is directed to turn over property

that he holds under a bona fide claim of right, to pay a debt that he disputes, or to otherwise give

up what he reasonable believes to be any of his legally protected rights.

5.    *TRO § XX.A.5/Preliminary Injunction § XXI.A.5/Amended Preliminary
      Injunction § XXI.A.5 ("Stay of Actions")*

This section applies to, among other persons, creditors of any of the Nationwide

Defendants and any other persons seeking to establish or enforce any claim, right, or interest

against any of the defendants. It prohibits them from, among other things, "Doing any act or

00369

RER-6        0506