# VOLUME 2 OF 7

# RER-7   0593 through RER-27  1206

**RER - 7**

1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
2      Including Professional Corporations
   MICHAEL H. AHRENS, Cal. Bar No. 44766
3  STEVEN B. SACKS, Cal. Bar No. 98875
   JEFFREY K. REHFELD, Cal. Bar No. 188128
4  ORI KATZ, Cal. Bar No. 209561
   Four Embarcadero Center, 17th Floor
5  San Francisco, California  94111-4106
   Telephone:    415-434-9100
6  Facsimile:    415-434-3947
   email:  mahrens@sheppardmullin.com
7
   Proposed Attorneys for The Billing Resource, dba
8  Integretel

9             UNITED STATES BANKRUPTCY COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11                [SAN JOSE DIVISION]

12

| | |
|---|---|
| In re | Case No. 07-052890 |
| THE BILLING RESOURCE, dba INTEGRETEL, a California corporation, | Chapter 11 |
| Debtor. | |
| Tax ID: 33-0289863 | |
| THE BILLING RESOURCE, dba INTEGRETEL, a California corporation, | Adv. Proc. No. _____ |
| Plaintiff, | **COMPLAINT FOR DECLARATORY RELIEF, TEMPORARY RESTRAINING ORDER, AND PRELIMINARY INJUNCTION** |
| v. | |
| FEDERAL TRADE COMMISSION, and DAVID R. CHASE, not individually, but solely in his capacity as receiver for Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., 411TXT, Inc., CELL-INFO-USA, INC., Enhanced Billing Services, Inc., Toll Free Connect, Inc., Cripple Creek Holdings, LLC, Built to Last, LLC, Not Fade Away, LLC, He's Gone, LLC, The Other One, LLC, Turn on Your Love Light, LLC, China Cat Sunflower, LLC, Lazy River Road Holdings, LLC, | |
| Defendant. | |

W02-WEST:FJR\400435989.3

COMPLAINT FOR DECLARATORY RELIEF,
TEMPORARY RESTRAINING ORDER, AND
PRELIMINARY INJUNCTION

1    The Billing Resource, dba Integretel, a California corporation, plaintiff herein (the

2  "Debtor"), alleges as follows:

3        1.    This is an adversary proceeding seeking declaratory and injunctive relief, pursuant

4  to 28 U.S.C. Sections 2201 and 2202; 11 U.S.C. §§ 105, 108(b) and 362(a); Federal Rule of

5  Bankruptcy Procedure Rules 7001(7) and (9); and Federal Rule of Civil Procedure 65 incorporated

6  by Federal Rule of Bankruptcy Procedure 7065.

7                              **THE PARTIES**

8        2.    The Debtor is a corporation organized and existing under the laws of the State of

9  California with its principal place of business in San Jose, California.  The Debtor performs data

10 processing, account reconciliation, customer service and related services in the

11 telecommunications industry.  The Debtor is the debtor and debtor in possession in the above-

12 referenced chapter 11 bankruptcy case (the "Bankruptcy Case"), to which this adversary

13 proceeding "relates" pursuant to Federal Rule of Bankruptcy Procedure 7008(a).  The Debtor

14 commenced this Bankruptcy Case by filing a voluntary petition under chapter 11 of the United

15 States Code (i.e., the "Bankruptcy Code").  The Bankruptcy Case is pending in the United States

16 Bankruptcy Court for the Northern District of California, San Jose Division.

17       3.    Defendant the Federal Trade Commission (the "FTC") is an independent agency of

18 the United States Government created by statute.  15 U.S.C. §§ 41, *et. seq.*

19       4.    David R. Chase (the "Receiver" and the Receiver and the FTC each a "Defendant"

20 and together the "Defendants") is the receiver for the following entities Nationwide Connections,

21 Inc., Access One Communications, Inc., Network One Services, Inc., 411TXT, Inc., CELL-INFO-

22 USA, INC., Enhanced Billing Services, Inc., Toll Free Connect, Inc., Cripple Creek Holdings,

23 LLC, Built to Last, LLC, Not Fade Away, LLC, He's Gone, LLC, The Other One, LLC, Turn on

24 Your Love Light, LLC, China Cat Sunflower, LLC, Lazy River Road Holdings, LLC, appointed

25 by the United States District Court for the Southern District of Florida in the lawsuit captioned

26 <u>Federal Trade Commission v. Nationwide Connections, Inc., et al.</u>, Case No. 06-80180-Civ-

27 Ryskamp.  The Debtor has brought this action against the Receiver, not individually, but solely in

28 the Receiver's capacity as receiver for the foregoing entities.

-1-

1

## JURISDICTION AND VENUE

2     5.     This adversary proceeding arises under title 11, or arises in or is related to the

3  Bankruptcy Case, within the meaning of 28 U.S.C. Section 1334(b).  This Court therefore has

4  jurisdiction over this adversary proceeding pursuant to 28 U.S.C. Sections 157(a), 157(b), 1334(b)

5  and 1334(e) and Rule 5011-1 of the Bankruptcy Local Rules of the United States District Court

6  for the Northern District of California.

7     6.     This Court also has jurisdiction pursuant to 28 U.S.C. Sections 2201 and 2202.

8     7.     This adversary proceeding is a core proceeding pursuant to 28 U.S.C. Sections

9  157(b)(2)(A), (G), & (O).

10     8.     Venue is proper in this district pursuant to 28 U.S.C. Section 1409(a).

11     9.     The FTC is subject to the jurisdiction of this Court.

12     10.     The Receiver is subject to the jurisdiction of this Court.

13

## GENERAL FACTUAL ALLEGATIONS

14

**A.     The Debtor's Background and the Debtor's Business.**

15     11.     The Debtor was formed in 1988 based on a need for aggregators to facilitate billing

16  and collections on behalf of smaller telecommunications companies that provided "alternative

17  operator services" ("AOS") which otherwise could not afford to compete with the larger local

18  exchange carriers ("LECs" or "Telcos") such as AT&T.

19     12.     AOS involves providing long-distance calling on an occasional or as-needed basis

20  in situations where often the consumer uses the service provider's assets or services without the

21  consumer or the service provider knowing each other's identity.  For example, a service provider

22  owning the service contract for a hotel chain has no idea as to the identity of the consumer using

23  its phones.  If an AOS provider facilitates a collect call it needs a way to bill the consumer for that

24  call.

25     13.     The Debtor addressed a significant industry void by creating a service bureau

26  focused entirely on billing-related services for AOS providers and others needing a means of

27  billing consumers for their services.  As the cornerstone to its billing capability, the Debtor

28  maintains a full complement of billing and collection agreements with an estimated 1,400 or more

-2-

COMPLAINT FOR DECLARATORY RELIEF,
TEMPORARY RESTRAINING ORDER, AND
PRELIMINARY INJUNCTION

1  LECs and independent service providers so that it can place calls made through an AOS on a LEC

2  bill. This infrastructure enables telecommunication service providers to incorporate their charges

3  within the phone bills of greater than 90% of business and residential consumers throughout the

4  United States and Canada. By using a billing aggregator like the Debtor, the fixed overhead is

5  already in place and the per unit billing cost is typically lower than the direct approach. Moreover,

6  the LEC bill adds credibility to the charge and provides a substantially higher collection rate.

7      14.    The Debtor quickly established itself as a leader in providing LEC billing solutions

8  for diverse and emerging products and services. The Debtor presently offers a complete array of

9  complementary services including internet-delivered management and settlement reporting, direct

10  billing, customer care and collection support. As a strategic back-room business partner, the

11  Debtor frees its clients to focus their efforts on promoting and selling products and services.

12      15.    In addition to AOS providers, the Debtor services customers offering enhanced

13  products and services such as voice mail, online directory listings and bundled calling plans.

14  While these services may be billed to credit cards, often consumers are hesitant to use their credit

15  cards for such intangible purchases and, therefore, may prefer alternate billing choices such as the

16  LEC phone bill.

17      16.    The Debtor has served thousands of service providers over the years. The vast

18  majority of the processed billings have been in support of smaller sized businesses that otherwise

19  would not have been able to compete. It is the competitive pressure of these smaller companies

20  that has forced down the rates charged to consumers by the larger telecommunication companies.

21      17.    The Debtor's office is in San Jose, California. The Debtor leases that office space.

22  The Debtor has no other offices or real estate leases. The Debtor owns no real estate. The Debtor

23  has approximately thirty-seven employees. Twenty-two of those employees have been with the

24  company for over five years, and thirteen have been with the Debtor for over ten years. In

25  addition, the Debtor's services support, through outsourced relationships, approximately 20-30 call

26  center personnel in several different call centers who are employed by a third-party vendor.

27

28

-3-

1            **B.**    **Access One and Network One.**

2       18.    Access One Communications, Inc. ("Access One") and Network One Services, Inc.

3 ("Network One") were two of the Debtor's prior AOS provider customers (Access One and

4 Network One collectively shall be referred to as the "Prior Customers").

5       19.    The relationship between the Debtor and its AOS provider customers, including

6 each of the Prior Customers, is governed by a contract between the Debtor and the customer.

7       20.    The Debtor's contracts with the Prior Customers (the "Subject Contracts") provide

8 that the customer submitted to the Debtor the customer's billing transactions (the "Billing

9 Transactions") in a data format acceptable to the Debtor.  The Billing Transaction became an

10 account receivable of the Debtor and not the customer.  The Debtor's Billing Contracts with the

11 LECs are structured as a purchase of accounts receivable between the Debtor and the LECs and

12 the Subject Contracts provided that all necessary rights were transferred to the Debtor.  In fact, the

13 Debtor's contract with Access One included a provision which explicitly recognizes this "Client

14 [i.e., the customer] acknowledges that the Billing Contracts with Telcos [i.e., LECs] are structured

15 as a purchase of accounts receivable..."

16       21.    The Prior Customers had no ownership interest in their Billing Transactions after

17 the Billing Transactions were submitted to the Debtor.  The Prior Customers were unsecured

18 creditors of the Debtor, with claims for certain "distributions" under the contract between the

19 Debtor and the customer.  Generally, those "distributions" were paid by the Debtor about 90 or so

20 days after the Billing Transaction is submitted to the Debtor by the customer.  The Debtor was

21 authorized to withhold from the Prior Customers its fees as well as amounts that may be used by

22 the Debtor to resolve disputes, make other adjustments and maintain reserves against future

23 disputes and adjustments.

24       22.    The Subject Contracts provide that each week the Debtor shall transfer by wire to

25 the customer's bank account the Net Proceeds identified in the prior week.  "Net Proceeds" is

26 defined as the gross value of the Billing Transactions that are remitted to the LECs, less amounts

27 withheld by the LECs, less amounts due to the Debtor, and less other fees and reserves.  This

28

-4-

COMPLAINT FOR DECLARATORY RELIEF,
TEMPORARY RESTRAINING ORDER, AND
PRELIMINARY INJUNCTION

1  amount is due only as such amounts are determined from the information provided from the LECs,

2  and that is generally 90 days after submission of the Billing Transactions.

3      23.    Nowhere in either of the Subject Contracts is there any language purporting to give

4  the Prior Customers any rights against the Debtor with respect to payments due the Prior

5  Customers other than those of a general unsecured creditor.  Neither of the Subject Contracts

6  contains language granting the Prior Customers a security interest – or any other property interest,

7  either legal or equitable – in any funds the Debtor receives from a LEC on account of a Billing

8  Transaction.

9      24.    When the Debtor withheld reserve amounts from the Net Proceeds paid to the Prior

10  Customers, the Debtor recorded that amount as a bookkeeping entry.  However, the Debtor does

11  not have a corresponding asset, such as a bank account, that contains the monies that were

12  withheld as reserves from the Prior Customers.  Moreover, there is no segregated account

13  containing the reserves of any customer, including either of the Prior Customers.  The Debtor does

14  not have enough monies to cover the full amount of reserves for all of the Debtor's customers.  All

15  "Net Proceeds" that could possibly have arisen from the Debtor's relationship with the Prior

16  Customer have long since passed through Debtor's bank accounts.

17              **C.    The Florida Action.**

18      25.    On February 27, 2006, the FTC filed a complaint commencing the Florida Action

19  in the Florida Court against three AOS providers, Nationwide Connections, Inc. ("Nationwide"),

20  Access One and Network One (collectively, the "Nationwide Parties"), as well as their principals,

21  alleging deceptive and unfair practices for unauthorized billing of charges on phone bills –

22  referred to as "cramming" – in violation of the Federal Trade Commission Act (the "FTCA").

23      26.    The Florida Court entered a temporary restraining order and later a preliminary

24  injunction.  The Florida Court appointed a receiver (i.e., the Receiver) for Nationwide, Access

25  One and Network One and certain of their affiliates.  An "Amended Preliminary Injunction Order"

26  was filed on September 25, 2006.

27      27.    On or about September 21, 2006, the FTC filed an amended complaint (the

28  "Amended Complaint") which Amended Complaint now named as defendants the Debtor as well

-5-

1  as another billing aggregator which is comprised of three related companies:  Billing Concepts,

2  Inc., ACI Billing Services, Inc. d/b/a OAN, and BSG Clearing Solutions North America, LLC

3  (collectively, "BSG").

4       28.     The FTC alleged in its Amended Complaint that the Debtor caused certain of the

5  Prior Customers' fraudulent charges to be placed on end users' phone bills and that the Debtor was

6  liable under the FTCA in spite of the fact that the LECs, not the Debtor, perform the billing.

7       29.     The FTC has sought injunctive relief against the Debtor as well as monetary redress

8  including restitution for the allegedly defrauded consumers.

9       30.     The Debtor voluntarily stopped providing services for the Prior Customers over a

10  year prior to the FTC filing of its Amended Complaint.  At the time that it stopped providing

11  services, the Debtor set the reserve at 100 percent of the Net Proceeds received on account of the

12  Prior Customers' Billing Transactions and made no further payments to the Prior Customers.  This

13  was done because of the Debtor's possible exposure to claims for refunds of the Prior Customers'

14  Billing Transactions.

15       31.     The Debtor filed an answer denying the FTC's allegations.

16       32.     The Receiver is seeking to collect all assets of the Prior Customers.  Toward that

17  end, the Receiver sought relief in the Florida Action by motion against the Debtor.  The Receiver

18  asserted that the Debtor owes the Prior Customers the amount of the reserves.

19       33.     The Receiver's motion asserting the rights of the Prior Customers sought to compel

20  the Debtor to turn over to the Receiver the amount of the reserves contained in the Debtor's

21  bookkeeping entries, which the Receiver alleged was an asset of the Prior Customers in an amount

22  in excess of $1.4 million.  The Receiver further alleged that the Debtor had violated the Amended

23  Preliminary Injunction Order and should be held in contempt for failing to turn over the sums

24  demanded by the Receiver.

25       34.     The Debtor filed a response opposing such relief on numerous grounds, including

26  without limitation those set forth in this paragraph.  The Debtor had no obligation to pay any funds

27  to the Receiver under the Subject Contracts.  In addition, the Debtor did not hold any specific

28  funds allocable to reserves for the Prior Customers, because, consistent with the Debtor's general

-6-

COMPLAINT FOR DECLARATORY RELIEF,
TEMPORARY RESTRAINING ORDER, AND
PRELIMINARY INJUNCTION

1  practice regarding reserves, the Debtor treated them solely as balance sheet entries, without
2  maintaining, segregating or otherwise designating specific funds for purposes of the reserves.  At
3  the most, any rights the Prior Customers had with respect to the reserves were simply those rights
4  of a general, unsecured creditor.  The Debtor also asserted that it had offsetting claims under the
5  Subject Contracts against the Prior Customers which exceeded the amount of the Prior Customers'
6  alleged reserves.  In particular, to the extent the Debtor has any liability in the Florida Action, it
7  arises from the misconduct of the Prior Customers, not the Debtor, and pursuant to the Subject
8  Contracts, the Prior Customers are liable to the Debtor for such liability, as well as the costs and
9  fees incurred in the Florida Action.  These costs and fees, and the liability asserted against the
10 Debtor in the Florida Action, far exceed the amount of any sums withheld from the Prior
11 Customers as reserves.

12      35.     The Florida Court entered an order on September 14, 2007 (the "Payment Order")
13 requiring that the Debtor pay over the amounts sought by the Receiver into a segregated
14 receivership account.  Though the FTC is a party to the Florida Action, the Payment Order was
15 entered upon the motion of the Receiver, not the FTC.  The Debtor intends to appeal the Payment
16 Order to the Eleventh Circuit Court of Appeals upon obtaining relief from the automatic stay to do
17 so.

18      36.     The Debtor has expended over $700,000 in legal fees and costs to date in defending
19 the Florida Action.  That case is set for trial in February 2008.  The Debtor expects that unless the
20 Florida Action is stayed or the FTC is enjoined from proceeding as to the Debtor that it will be
21 required to spend as much as $1 million in legal fees and costs in defending the matter.  The
22 Debtor has also had to devote substantial and valuable management and employee time and
23 resources to this issue and would be forced to further incur such items, to the detriment of its
24 reorganization efforts, if this action were not stayed as against the Debtor.

25
26
27
28

-7-

COMPLAINT FOR DECLARATORY RELIEF,
TEMPORARY RESTRAINING ORDER, AND
PRELIMINARY INJUNCTION

## FIRST CLAIM FOR RELIEF

**(Declaratory Relief Pursuant To 28 U.S.C. Sections 2201 and 2202; 11 U.S.C. Sections 105, 362(a)(1), (2), (3) and (6); Rules 7001(7) and (9) of the Federal Rules of Bankruptcy Procedure)**

37.    The Debtor repeats the allegations set forth in Paragraphs 1 through 36 as if fully set forth herein.

38.    This is a claim for declaratory relief brought under the provisions of 28 U.S.C. Sections 2201 and 2202; 11 U.S.C. Sections 105, 362(a)(1), (2), (3) and (6); and Rules 7001(7) & (9) of the Federal Rules of Bankruptcy Procedure.

39.    An actual controversy has arisen and now exists between the Debtor and the Receiver relating to their legal rights and duties for which The Debtor seeks a judicial declaration of rights as to such matters, as well as further necessary or proper relief, including injunctive relief.

40.    A declaratory judgment is necessary and appropriate at this time in that the Debtor contends and the Receiver may deny that the implementation or enforcement of the Payment Order is automatically stayed including without limitation pursuant to 11 U.S.C. §§ 362(a)(1), (a)(2), (a)(3), and/or (a)(6).

WHEREFORE, the Debtor prays for relief as set forth below.

## SECOND CLAIM FOR RELIEF

**(Declaratory Relief Pursuant To 28 U.S.C. Sections 2201 and 2202; 11 U.S.C. Sections 105, 362(a)(1), (2), (3) and (6); Rules 7001(7) and (9) of the Federal Rules of Bankruptcy Procedure)**

41.    The Debtor repeats the allegations set forth in Paragraphs 1 through 36 as if fully set forth herein.

42.    This is a claim for declaratory relief brought under the provisions of 28 U.S.C. Sections 2201 and 2202; 11 U.S.C. Sections 105, 362(a)(1), (2), (3) and (6); and Rules 7001(7) & (9) of the Federal Rules of Bankruptcy Procedure.

-8-

1    43.    An actual controversy has arisen and now exists between the Debtor and the FTC

2  relating to their legal rights and duties for which the Debtor seeks a judicial declaration of rights as

3  to such matters, as well as further necessary or proper relief, including injunctive relief.

4    44.    A declaratory judgment is necessary and appropriate at this time in that the

5  Debtor contends and the FTC may deny that

6        a.    the claims made in the Florida Action against the Debtor, the Debtor's

7              property, property of the Debtor's estate, and/or property held by the

8              Debtor's estate, including without limitation the implementation or

9              enforcement of the Payment Order, are automatically stayed including

10             without limitation pursuant to 11 U.S.C. §§ 362(a)(1), (a)(2), (a)(3), and/or

11             (a)(6).

12       b.    while there is an exception, under 11 U.S.C. § 362(b)(4), for regulatory

13             actions, from the Bankruptcy Code's automatic stay provisions set forth in

14             11 U.S.C. § 362(a), the gist of the Florida Action and the claims made

15             therein against the Debtor, the Debtor's property, property of the Debtor's

16             estate, and/or property held by the Debtor's estate, are monetary in nature

17             and are therefore stayed.

18       WHEREFORE, the Debtor prays for relief as set forth below.

19                      **THIRD CLAIM FOR RELIEF**

20  **(Temporary Restraining Order and Preliminary Injunction Pursuant To 28 U.S.C. Sections
    2201 and 2202; 11 U.S.C. Section 105; Rules 7001(7) and (9) of the Federal Rules of**

21  **Bankruptcy Procedure; and Federal Rule of Civil Procedure 65 incorporated by Federal
    Rule of Bankruptcy Procedure 7065)**

22

23    45.    The Debtor repeats the allegations set forth in Paragraphs 1 through 36 as if fully

24  set forth herein.

25    46.    This is a claim for a temporary restraining order and preliminary injunction brought

26  under the provisions of 28 U.S.C. Sections 2201 and 2202; 11 U.S.C. Section 105; Rules 7001(7)

27  and (9) of the Federal Rules of Bankruptcy Procedure; and Federal Rule of Civil Procedure 65

28  incorporated by Federal Rule of Bankruptcy Procedure 7065.

-9-

47.     If and to the extent that the Court determines that the Florida Action is not stayed as to the Debtor, then the Debtor requests that the Court temporarily restrain and preliminarily enjoin the FTC until a plan of reorganization is entered in this Bankruptcy Case from proceeding against the Debtor in the Florida Action, including as to the claims made therein against the Debtor, the Debtor's property, property of the Debtor's estate, and/or property held by the Debtor's estate.

48.     Money damages will not be adequate and there exists no adequate remedy at law.

49.     Permitting the Florida Action to continue against the Debtor, threatens the Debtor's ability to continue its business operations, affects whether the Debtor's other creditors receive their appropriate share of monies paid by the Debtor to unsecured creditors, threatens the Debtor's ability to successfully confirm a plan of reorganization, interferes with this Court's ability to enforce its jurisdiction over the Debtor's assets and this bankruptcy case, and threatens the integrity of the bankruptcy estate by, among other things, upsetting the well-established and Congressionally-approved goals underlying the uniform bankruptcy laws of rehabilitation of debtors and equality of treatment of creditors.  The objectives of the Bankruptcy Code would be served by issuing a preliminary injunction staying the Defendants' continued pursuit in the Florida Action of the Debtor, the Debtor's property, property of the Debtor's estate, and/or property held by the Debtor's estate.

50.     The Debtor has a strong likelihood of successfully reorganizing if the requested temporary restraining order and preliminary injunction are entered.

51.     The Debtor is threatened with the possibility of immediate irreparable injury if the temporary restraining order and preliminary injunction are not granted.

52.     At the least, serious questions are raised with respect to the FTC's continued pursuit in the Florida Action of claims against the Debtor, the Debtor's property, property of the Debtor's estate, and/or property held by the Debtor's estate, and the balance of the hardships tip strongly in the Debtor's favor.

53.     The requested preliminary injunction is in the public interest.  While the FTC action seek to gain, at most five or six dollars for consumers, each or which may have been billed

-10-

COMPLAINT FOR DECLARATORY RELIEF,
TEMPORARY RESTRAINING ORDER, AND
PRELIMINARY INJUNCTION

1  a single collect call by the Prior Clients, the Debtor's efforts to reorganize its operations affects the

2  livelihoods of its employees, the Debtor's ability to pay its creditors and the continued viability of

3  its customers.

4    WHEREFORE, the Debtor prays for relief as set forth below.

5    **PRAYER FOR RELIEF**

6    WHEREFORE, The Debtor, prays for relief as follows:

7    1.    For the FIRST CLAIM FOR RELIEF that the Court declare that the

8  implementation or enforcement of the Payment Order is automatically stayed including

9  without limitation pursuant to 11 U.S.C. §§ 362(a)(1), (a)(2), (a)(3), and/or (a)(6).

10    2.    For the SECOND CLAIM FOR RELIEF that:

11    a.    the claims made in the Florida Action against the Debtor, the Debtor's

12        property, property of the Debtor's estate, and/or property held by the

13        Debtor's estate, including without limitation the implementation or

14        enforcement of the Payment Order, are automatically stayed including

15        without limitation pursuant to 11 U.S.C. §§ 362(a)(1), (a)(2), (a)(3), and/or

16        (a)(6).

17    b.    while there is an exception, under 11 U.S.C. § 362(b)(4), for regulatory

18        actions, from the Bankruptcy Code's automatic stay provisions set forth in

19        11 U.S.C. § 362(a), the gist of the Florida Action and the claims made

20        therein against the Debtor, the Debtor's property, property of the Debtor's

21        estate, and/or property held by the Debtor's estate, are monetary in nature

22        and are therefore stayed.

23    3.    For the THIRD CLAIM FOR RELIEF that the Court temporarily restrain and

24  preliminarily enjoin the FTC until a plan of reorganization is entered in this Bankruptcy Case

25  from proceeding against the Debtor in the Florida Action, including as to the claims made

26  therein against the Debtor, the Debtor's property, property of the Debtor's estate, and/or

27  property held by the Debtor's estate

28

-11-

COMPLAINT FOR DECLARATORY RELIEF,
TEMPORARY RESTRAINING ORDER, AND
PRELIMINARY INJUNCTION

RER-7    0604

1        4.    That the Court grant such other and further relief as the Court deems just and

2    proper under the circumstances.

3

4    Dated:  September 19, 2007

5                               Respectfully submitted,

6                               SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

7

8                   By        _____/s/ Michael H. Ahrens_____

9                                 MICHAEL H. AHRENS
                      Proposed Attorneys for Plaintiff and Debtor The Billing

10                            Resource, dba Integretel

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-12-

COMPLAINT FOR DECLARATORY RELIEF,
TEMPORARY RESTRAINING ORDER, AND
PRELIMINARY INJUNCTION

# RER - 8

1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
2      Including Professional Corporations
  MICHAEL H. AHRENS, Cal. Bar No. 44766
3  TERRENCE V. PONSFORD, Cal. Bar No. 42648
  JEFFREY K. REHFELD, Cal. Bar No. 188128
4  ORI KATZ, Cal. Bar No. 209561
  Four Embarcadero Center, 17th Floor
5  San Francisco, California  94111-4106
  Telephone:    415-434-9100
6  Facsimile:    415-434-3947
  Email:     mahrens@sheppardmullin.com
7              jrehfeld@sheppardmullin.com
             okatz@sheppardmullin.com
8
  Proposed Attorneys for The Billing Resource,
9  dba Integretel

10

11

12

13

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re | Case No. 07-52890 |
| THE BILLING RESOURCE, dba Integretel, a California corporation, | Chapter 11 |
| Debtor. | **DEBTOR'S REPLY TO OPPOSITION OF RECEIVER TO (1) EMERGENCY CASH COLLATERAL MOTION; (2) EMERGENCY CASH MANAGEMENT MOTION; AND (3) EX PARTE APPLICATION FOR APPOINTMENT OF KEN DAWSON AS DEBTOR'S RESPONSIBLE INDIVIDUAL AND IN SUPPORT OF DEBTOR'S MOTIONS** |
| Tax ID: 33-0289863 | |

**Date:**    **Friday, September 21, 2007**
**Time:**    **1:30 p.m.**
Place:    United States Bankruptcy Court
          280 South First Street
          San Jose, California
Judge:    Hon. Arthur S. Weissbrodt
Courtroom:  3020

REPLY TO RECEIVER'S OPPOSITION

1    This above-captioned debtor and debtor in possession, The Billing Resource, dba

2    Integretel, a California corporation (the "Debtor"), hereby files this reply (the "Reply") to the:

3    1.    Opposition to (1) the  Emergency Cash Collateral Motion; (2) Emergency Cash

4    Management Motion; and (3) Ex Parte Application for Appointment of Ken

5    Dawson as Debtor's Responsible Individual (the "Receiver's Opposition") filed by

6    David R. Chase, not individually, but solely as the receiver for certain entities (the

7    "Receiver"), appointed by the United States District Court for the Southern District

8    of Florida in the lawsuit captioned <u>Federal Trade Commission v. Nationwide</u>

9    <u>Connections, Inc., et al.</u>, Case No. 06-80180-Civ-Ryskamp (the "Florida Action")

10    and files this Reply in support of the Debtor's motions and applications;

11    2.    Opposition of Public Communications Services, Inc. ("Public Communications") to

12    the Debtor's Cash Collateral Motion (the "Public Communications Opposition").[1]

13    Both the Receiver's Opposition and Public Communications Opposition are without merit

14    and should be overruled.  To the contrary, as set forth in the Debtor's moving papers and this

15    Reply including its supporting Ahrens' Declaration, good cause exists to overrule the Oppositions

16    and grant the relief requested in the Debtor's motions and applications, including the Debtor's

17    Emergency Cash Collateral Motion and the Emergency Cash Management Motion.

18    ## ARGUMENT

19    **I.    The Receiver Opposition should be Overruled.**

20    **A.    There was Nothing Improper About Filing the Cash Collateral Motion and**
21    **Cash Management Motion on an Emergency Basis and there was No**
        **"Scheme" to "Catch the Receiver Unaware."**

22    The Receiver spends much of his Opposition arguing that the Debtor's Emergency Cash

23    Collateral Motion and Emergency Cash Management Motion are some sort of "scheme" to do

24    something improper or to somehow sneak something by the Receiver.  <u>See</u>, <u>e.g.</u>, Receiver's

25

26    [1] The Reply is based upon the concurrently filed declaration of Michael H. Ahrens (the "Ahrens
      Declaration") and the previously filed declaration of Ken Dawson in support of the Debtor's Cash
27    Collateral Motion (the "Dawson Declaration") and such pleadings and other documents and
      evidence which may presented to the Court prior to or at the above-captioned hearing.
28

1 | Opposition at 3:23-25 ("Finally, the 'Emergency' nature of this Motion and its treatment as a 'First
2 | Day Order' is obviously designed to catch the Federal Receiver unaware.  However, it did
3 | not.");6:21-22.

4 |      The Receiver's allegations, however, are belied by the facts.  As this Court is more than
5 | well aware, a very early hearing on cash collateral and cash management motions are essential to
6 | an operating company who has just filed a chapter 11 bankruptcy case, and are commonly heard
7 | on an "emergency" basis.  Without the ability to use cash collateral within just days after its
8 | bankruptcy filing, most debtor's will be unable to survive, thereby foreclosing any opportunity for
9 | reorganization and salvaging a debtor's going-concern value, to the detriment of the debtor, its
10 | creditors and its entire bankruptcy estate.  The Debtor had a legitimate need to seek the use of cash
11 | collateral for its continued business operations[2] and properly sought approval of its Cash
12 | Collateral Motion on an emergency basis.

13 |      The Receiver's contention that the Debtor somehow tried to "slip something by" the
14 | Receiver by the Debtor's bankruptcy filing or its emergency Cash Collateral Motion is also
15 | without merit.  The Debtor agrees that a copy of the Florida Court's Payment Order should have
16 | been included as an exhibit to the Debtor's first day pleadings, however, the failure to do so was
17 | not the result of some intention to keep all parties and the Bankruptcy Court from reading the
18 | order –in fact the Debtor mentioned the order numerous in its first-day pleadings - but instead was
19 | simply due to oversight during the extreme rush and activity that accompanies any operating
20 | business chapter 11 bankruptcy filing, especially in this case where the Florida Court's adverse
21 | order was received by the Debtor only on Friday, September 14 and the bankruptcy filing took
22 | place just two days later on Sunday, September 16, 2007.

23 |      Not only was there no intention to "catch" the Receiver "unaware" in connection with the
24 | Debtor's bankruptcy filing and the Cash Collateral Motion filed therein, the facts clearly show that
25 | for nearly a year the Debtor had made the Receiver as well as the Federal Trade Commission (the
26 | "FTC") well aware that an adverse decision in the Florida Action requiring the Debtor to pay

27 |
    [2] See, e.g., Dawson Declaration at ¶ 21.
28 |

1    money would likely force the Debtor to file for bankruptcy protection and that the Debtor

2    promptly contacted the Receiver's counsel as well as the FTC soon after its bankruptcy filing and

3    promptly forwarded them copies of its bankruptcy pleadings.

4        Attorneys at the undersigned firm were asked to give insolvency advice to the Debtor in

5    October of 2006.  At that time the Debtor was a defendant in the Florida Action.  The Debtor's

6    bankruptcy counsel understood at that time that if the motions were granted an order might be

7    forthcoming in the Florida Action that would require the Debtor's payment of moneys in excess of

8    $1 million.  The Debtor's bankruptcy counsel looked at financial information of the Debtor at the

9    time, and it became apparent to him that the Debtor was insolvent.  If the Debtor was ordered to

10   pay in excess of $1 million it was obvious to him that such a payment would be a preference

11   payment to one creditor while the Debtor was in the zone of insolvency.

12       After such counsel was engaged as insolvency counsel by the Debtor, the Debtor's

13   litigation counsel in the Florida Action contacted the FTC and the Receiver in the Florida Action

14   and informed them that the Debtor wanted to inform the FTC and the Receiver about the realities

15   that the Debtor could not respond to a money judgment and could not pay a preference to one

16   creditor over another.  That counsel requested that the FTC and the Receiver meet with the

17   Debtor's bankruptcy counsel so that he could discuss with them the financial situation of the

18   Debtor and the Debtor's possible bankruptcy.  The Debtor's counsel in the Florida Action began

19   efforts to set up a meeting between the FTC's counsel, the Receiver's counsel, and the Debtor's

20   bankruptcy counsel.

21       The Debtor's bankruptcy counsel flew to Washington, D.C., and along with the Debtor's

22   litigation counsel in the Florida Action, met with the FTC at the FTC's offices in Washington,

23   D.C. on November 21, 2006.  A business representative of the Debtor was also present at this

24   meeting.  The Receiver's counsel, Mr. Jeff Schneider, was present for the entire meeting by

25   telephone.

26       At that November 21, 2006 meeting, the Debtor's bankruptcy counsel informed the FTC

27   and the Receiver's counsel that he had been hired as the Debtor's bankruptcy lawyer.  The Debtor's

28   bankruptcy counsel told them that the Debtor had done a liquidation analysis and determined that

1    on a liquidation creditors would receive less than 100% on the dollar. He said that if an order

2    came down requiring a payment to the Receiver of Network One and Access One, the Debtor

3    would have to file bankruptcy. He discussed with them the fact that the Debtor was in the "zone

4    of insolvency" and the Debtor could not allow one creditor to receive a preference over another.

5    The Debtor's bankruptcy counsel then that there were many other clients that had claims just like

6    Access One and Network One, and the Debtor could not allow one creditor to be paid in

7    preference to another while in the zone of insolvency. The FTC had an in-house bankruptcy

8    lawyer at this meeting in November 2006, and also had a bankruptcy lawyer at a follow-up

9    meeting that the Debtor's bankruptcy counsel had with the FTC in April of 2007. The FTC

10   lawyers indicated then that they understood these positions, and understood the developing case

11   law about not paying preferences while in the "zone of insolvency."

12       For the full portion of the November 21, 2006 meeting the lawyer for the Receiver of

13   Access One and Network One was on the telephone line. That lawyer for the Receiver was Jeff

14   Schneider. The Receiver's counsel participated in that meeting, and the Debtor's bankruptcy

15   counsel also informed him during the meeting that the Debtor would have to file bankruptcy if a

16   judgment for monetary relief was rendered against the Debtor.

17       Prior to the November 21, 2006 meeting, the Debtor's counsel had provided the FTC's

18   counsel with the financial statements of the Debtor. During the November 21, 2006 meeting, the

19   FTC's counsel as well as a FTC accountant who attended the meeting asked questions of the

20   Debtor's bankruptcy counsel and the Debtor's senior financial representative who attended the

21   meeting with me. They responded with answers to those questions. For the few questions they

22   could not answer at that moment, they followed up and provided the FTC with additional

23   information after the meeting.

24       During the November 21, 2006 meeting Laura Kim, one of the FTC's attorneys, stated that

25   she would like to see a liquidation analysis. The Debtor did not have one to give her for that

26   meeting, but I emailed her one on December 18, 2006. The liquidation analysis was used to

27   demonstrate to the FTC and to the Receiver that even if a payment order was entered in the Florida

28   Action requiring a payment of the alleged reserves to Access One and Network One, there was not

-4-

W02-WEST:FJR\400437394.2

REPLY TO RECEIVER'S OPPOSITION

1  enough money to pay all creditors and that the Debtor would have to file for bankruptcy

2  protection. The Debtor's bankruptcy counsel told them also at the November 21, 2006 meeting the

3  type of plan the Debtor might file in a bankruptcy case. He indicated that the Debtor might file a

4  stock for debt plan to allow the company to reorganize for the benefit of all creditors. He said that

5  if any one creditor seized money the Debtor's operations could not continue and the Debtor's

6  reorganization would not be possible.

7      The Debtor does intend to file a plan to preserve the business and reorganize. The filing of

8  the bankruptcy case should not have been a surprise to the Receiver or the FTC, as the Debtor's

9  bankruptcy counsel personally had met and/or talked to them about the Debtor's plan and need to

10  file bankruptcy if an order was rendered requiring the Debtor to pay substantial moneys to the

11  Receiver. After the November 21, 2006 meeting the Debtor's bankruptcy counsel spoke by

12  telephone many times to FTC representatives about bankruptcy questions and questions about the

13  financial status of the Debtor and its affiliates. The Debtor's bankruptcy counsel also sent

14  numerous emails to the FTC enclosing approximately 15 or more documents the FTC

15  representatives had requested about the Debtor and its financial condition.

16      The Debtor's bankruptcy counsel also had a further follow-up meeting with the FTC's

17  lawyers at the FTC's headquarters in Washington, D.C. on April 18, 2007. At that meeting the

18  Debtor's bankruptcy counsel again impressed upon the FTC's counsel that that the Debtor was in

19  the "zone of insolvency," could not allow one creditor to receive a preference over another while

20  in the zone of insolvency, and that if an order came down requiring a payment to the Receiver of

21  Network One and Access One, the Debtor would have to file bankruptcy. The Receiver's counsel

22  was not present at this April, 2007 meeting. However, based upon statements made to the

23  Debtor's bankruptcy counsel by the FTC's counsel, the Debtor's bankruptcy counsel understood

24  that the FTC's were in contact with the Receiver's counsel and would be communicating to him the

25  statements made and what had occurred at the meeting.

26      The Debtor filed its voluntary petition under chapter 11 of title 11 of the United States

27  Code (i.e., the "Bankruptcy Code") on Sunday, September 16, 2007. Within hours of the Debtor's

28  filing its bankruptcy petition, on Monday, September 17, 2007 at 7:25 a.m. Eastern Time, the

1    Debtor's counsel in the Florida Action emailed Ms. Kim of the FTC as well as two other FTC's
2    attorneys in the Florida Action and the Receiver's counsel notifying them that the Debtor had filed
3    for bankruptcy protection. That email also attached pdf copies of most the pleadings that the
4    Debtor had filed in its bankruptcy case, including complete copies of the emergency Debtor's Cash
5    Collateral Motion and the Debtor's emergency Cash Management Motion.

6          That same morning, the morning of Monday, September 17, 2007, the Debtor's bankruptcy
7    counsel telephoned the Receiver's counsel Mr. Schneider and spoke to him. The Debtor's
8    bankruptcy counsel stated that the Debtor had filed for bankruptcy and understood that the
9    Debtor's counsel in the Florida Action had already emailed him most of the pleadings that the
10   Debtor had filed in its bankruptcy case. The Receiver's counsel responded that he was aware of
11   the Debtor's bankruptcy filing, had received those pleadings, and in fact had already started to
12   review them. The Receiver's counsel inquired about participating in the Debtor's bankruptcy
13   process and the Debtor's bankruptcy counsel indicated that he believed a Official Unsecured
14   Creditors Committee would be appointed and that he thought that the Receiver might serve as a
15   valuable member of the Committee since he likely already had a good understanding of the
16   Debtor's business and circumstances from our prior discussions. The Debtor's bankruptcy counsel
17   stated that the Debtor continued believe that it made sense to keep the lines of communication
18   open in the hope of reaching an amicable resolution for the Receiver and the Debtor's bankruptcy
19   estate.

20         Immediately after the telephone discussion with the Receiver's counsel ended, the Debtor's
21   bankruptcy counsel called Ms. Laura Kim, one of the FTC's lead counsel in the Florida Action and
22   who is also one of the FTC's lawyers who he Debtor's bankruptcy counsel met with during my
23   prior meetings with the FTC in Washington, D.C. The Debtor's bankruptcy counsel left Ms. Kim
24   a voicemail stating that the Debtor had filed for bankruptcy protection and requesting that if she
25   would like to discuss the Debtor's bankruptcy filing she should either call them back. Since
26   leaving that message, the Debtor's bankruptcy counsel is not aware of having received any calls
27   from Ms. Kim or any other FTC counsel regarding the Debtor's bankruptcy case.

28         Later that afternoon of Monday, September 17, 2007, once the Bankruptcy Court had set a

W02-WEST:FJR\400437394.2

-6-

REPLY TO RECEIVER'S OPPOSITION

1    hearing for Thursday, September 20, 2007 on the Debtor's Cash Collateral Motion and the Cash

2    Management Motion, the Debtor prepared a Notice of that hearing date and time on those motions.

3    In an email sent later that same afternoon, Monday, September 17, 2007, the Debtor forwarded a

4    pdf copy of that Notice along with additional pdf copies of the pleadings that the Debtor had

5    previously filed in its bankruptcy case (including additional copies of the Cash Collateral Motion

6    and the Cash Management Motion to Ms. Kim of the FTC, as well as three other attorneys at the

7    FTC involved in the Florida Action, as well as the Receiver's counsel Mr. Schneider.

8         On Monday, September 17, 2007, the Debtor also had copies of many of its bankruptcy

9    pleadings, including the Cash Collateral Motion, the Cash Management Motion, and the Notice of

10    the hearing of those pleadings sent by Federal Express to Ms. Kim as well as two other FTC

11    attorneys involved in the Florida Action.  Also served with those pleadings by Federal Express

12    was the Receiver and his counsel Mr. Schneider.  The Debtor's bankruptcy counsel has received

13    confirmation from Federal Express indicating that the Federal Express envelopes sent to those

14    individuals were showing as having been delivered.

15         There was simply nothing improper about the Debtor's seeking approval of its Cash

16    Collateral Motion and Cash Management Motion on an emergency basis, nothing surprising to the

17    Receiver or the FTC about the Debtor's filing for bankruptcy protection if the Florida Court issued

18    an adverse ruling against the Debtor, and no basis to the Receiver's contention that the Debtor has

19    been trying to "catch" the Receiver "unaware" of anything in this bankruptcy case or the Debtor's

20    emergency motions.

21    **B.    The Receiver Is Not Entitled to Adequate Protection and, Even if He Were, the
             Receiver is Adequately Protected.**

22

23         The Receiver asserts that he is entitled to adequate protection and contends that the relief

24    requested in the Cash Collateral Motion does not provide him with adequate protection.  The

25    Receiver is wrong as to both contentions.

26         First, the Receiver is simply an unsecured creditor of the Debtor.  Neither Access One nor

27    Network One had filed UCC-1 financing statements against the Debtor.  Neither of those entities

28    had any control agreement in connection with the Debtor's accounts.  <u>See</u> Ahrens Declaration at

W02-WEST:FJR\400437394.2

-7-

REPLY TO RECEIVER'S OPPOSITION

1   ___. The reserves under the Debtor's contracts with Access One and Network One, like the

2 reserves under the Debtor's contracts with its other customers, were merely bookkeeping entries.

3 The Debtor does not have any accounts separated by individual client which hold any reserves.

4 <u>See</u> Dawson Declaration ¶ 15.

5     **C.    The Receiver is Not Entitled to Immediate Relief from the Automatic Stay.**

6     Finally, the Debtor requests the extraordinary remedy of immediate relief from the

7 automatic stay based on its alleged contention that has an interest in the cash collateral of the

8 Debtor and because the Debtor is unable to show that the Receiver is being adequately protected.

9 As set forth above, the Receiver's interest in any of the Debtor's property, cash collateral or

10 otherwise, is nothing more than that of an unsecured creditor and, even if it were entitled to

11 adequate protection, it is adequately protected. The Receiver has made absolutely no showing for

12 the extreme and summary stay relief that it seeks.[3]

13

---

14 [3] Moreover, even if the Receiver could show that the alleged reserve amount somehow is
receivership property, which it cannot, the fact that it is in the Debtor's possession makes it subject

15 to the automatic stay as section 362(a)(3) of the Bankruptcy Code prevents "any act to obtain
possession of property of the estate <u>or property from the estate</u>." "The language of Section 362

16 makes clear that mere possession of property at the time of filing is sufficient to invoke the
protections of the automatic stay." <u>In re Atlantic Business and Community Corp.</u>, 901 F.2d 325,

17 328 (3d Cir. 1990). <u>See also</u> <u>Turbowind, Inc. v. Post Street Management, Inc. (In re Turbowind,
Inc.)</u>, 42 B.R. 579, 585 (Bankr.S.D.Cal.1984) ("The operation of the automatic stay does not

18 depend on the debtor having either a legal or equitable interest in the property, but applies to
property merely in the debtor's possession at the time of filing…")

19 The legislative history is also clear that the bankruptcy estate's possession of property is covered
by the automatic stay. Thus the Ninth Circuit Bankruptcy Appellate Panel has held:

20

21     The automatic stay does not depend on either a legal or equitable interest (citation of error
# 4) or a leasehold interest (citation # 5). Title 11 U.S.C. § 362(a)(3) stays '<i>any act to</i>

22     <i>obtain possession</i> of property of the estate or <i>of property from the</i> estate…' (Emphasis
supplied).

23     Any doubt as to what is meant by this paragraph is dispelled by the legislative reports.

24     'Paragraph (3) stays any act to obtain possession of … property from the estate (property
over which the estate has control or possession).'

25

26   H.R. No. 95-595, 95th Cong., 1st Sess. 340-2 (1977); S.R. No. 95-989, 95th Cong., 2d
Sess. 49-51 (1978), U.S.Code Cong. & Admin.News, pp. 5787, 5836, 6298.

27 <u>In re Zartun</u>, 30 B.R. 543, 545 (Bankr. 9th Cir. 1983).

28

---

1        On September 20, 2007, the Florida Court entered in the Florida Action an "Order Staying

2    Proceedings against Defendant The Billing Resource, D/B/A Integretel."  The Federal District

3    Judge in that case ordered that:  "The automatic stay granted by 11 USC Section 362(a) will

4    remain in effect until the bankruptcy case is dismissed or closed, or until such earlier times as set

5    forth in 11 USC Section 362(c), (d), (e) or (f)."  To the extent that the Receiver contends it is

6    entitled to relief from the automatic stay, it should file a motion in this Court seeking such relief in

7    compliance with the rules and procedures of the Bankruptcy Code, the Federal Rules of

8    Bankruptcy Procedure, the Bankruptcy Local Rules, and any applicable rules of this Court.

9    **II.    The Public Communications' Opposition should be Overruled.**

10       As the Debtor's Cash Collateral Motion sets forth, Public Communications does not

11   possess a valid, perfected interest in the Debtor's cash collateral.  It claims a security interest yet

12   there is no UCC-1 that even lists it as a secured party.  See Cash Collateral Motion at 20-22.  In

13   addition the description of the collateral in the UCC-1 between the Debtor and PaymentOne that

14   refers to Public Communications does not grant a security interest in any asset of the Debtor.

15   Instead the description of the collateral is simply an interest in amounts to which Public

16   Communications is entitled to under its contracts.  Therefore, it had a security interest in its own

17   assets, not assets of the Debtor.  Due to the defective filing and the defective descriptions, it is not

18   a secured creditor and has no standing to object.

19       We suspect that this Court does will not resolve this objection to the secured claim of

20   Public Communications at this early hearing.  But, nonetheless, the objection should be taken into

21   consideration.  Public Communications is adequately protected by the replacement lien it is given

22   under the proposed order.  The replacement lien is valid only if the original claim is valid.  They

23   are not affected.  And, the Dawson Declaration shows that there is over $23 million of receivables

24   and plenty of protection for a three week use of collateral, even if Public Communications has an

25   interest in that collateral.  There is sufficient protection so that the interim use of cash collateral

26   can be granted.  By the time of the final hearing an official Committee may be formed and will

27   also weigh in on these issues relating to the validity of the security interests.

28       Public Communications does make one valid objection.  It points out that under the

-9-

W02-WEST:FJR\400437394.2

REPLY TO RECEIVER'S OPPOSITION

1  proposed order PaymentOne obtains a super priority administrative claim, and Public

2  Communications does not. The proposed order will be modified to reflect that all five parties that

3  claim a security interest that are named in the Cash Collateral Motion are granted a super priority

4  administrative claim to the extend of the validity and priority of their claims.

5  **III.    Approval of the Debtor's Emergency Cash Collateral Motion and its Emergency**
   **Cash Management Motion are in the Best Interests of the Debtor and Its Bankruptcy**
6  **Estate.**

7       The Debtor's Emergency Cash Collateral Motion only seeks an Interim Order authorizing

8  use of Cash Collateral. When an official creditors committee (the "Committee") is appointed, the

9  Debtor intends to meet with the Committee and address the issues relating to the final use of cash

10  collateral. If the Debtor is not allowed to use such cash collateral pending a Final Hearing, the

11  only alternative will be a Chapter 7 liquidation. Similarly, the Debtor needs to be able to use its

12  bank accounts and cash management system. A Chapter 7 bankruptcy liquidation will

13  undoubtedly will not be the desire of the majority of the Debtor's customers. Accounts have been

14  delivered by customers to the Debtor for processing. If the Debtor discontinues business now the

15  Debtor's customers will only be further damaged as havoc would be created. When a Committee

16  is formed, the Debtor is confident that such a Committee will support the continued use of cash

17  collateral at a Final Hearing. But, if the Interim Motion is not granted, a Committee will not be

18  formed to review the Final Motion, as the only alternative will be a Chapter 7. The Debtor should

19  be given the opportunity to meet with an official Committee and negotiate a Plan of

20  Reorganization that will benefit all parties in interest.

21

22

23

24

25

26

27

28

W02-WEST:FJR\400437394.2

-10-

REPLY TO RECEIVER'S OPPOSITION

1

## CONCLUSION

2       The Receiver's Opposition and Public Communications Opposition are without merit and

3   should be overruled.  Good cause exists to grant the Debtor's motions, which motions are in the

4   best interest of the Debtor's bankruptcy estate.

5

6   Dated: September 20, 2007          Respectfully submitted,

7                                      SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

8

9                            By    _____
                                        /s/ Michael H. Ahrens
10                                    MICHAEL H. AHRENS
                                Proposed Attorneys for Debtor The Billing Resource,
11                                          dba Integretel

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

W02-WEST:FJR\400437394.2

REPLY TO RECEIVER'S OPPOSITION

RER-8      0617

**RER - 9**

1    WILLIAM BLUMENTHAL
     General Counsel
2
     MICHAEL P. MORA
3    Federal Trade Commission
     600 Pennsylvania Ave. NW, Room NJ-2121
4    Washington, DC 20580
     Telephone: (202) 326-3373
5    Facsimile: (202) 326-3258
     Email: mmora@ftc.gov
6
     ATTORNEY FOR FEDERAL
7    TRADE COMMISSION

8                    UNITED STATES BANKRUPTCY COURT
                     NORTHERN DISTRICT OF CALIFORNIA
9                           SAN JOSE DIVISION

10

11   In re:
                                                   Case No. 07-52890
12   THE BILLING RESOURCE, dba Integretel, a
     California corporation,                       Chapter 11
13
                               Debtor
14                                                 FEDERAL TRADE
                                                   COMMISSION'S
15                                                 NOTICE OF DISTRICT
                                                   COURT ORDER GRANTING
16                                                 MOTION FOR
                                                   CLARIFICATION AS TO
17                                                 SCOPE OF STAY IN FTC
                                                   ENFORCEMENT ACTION
18

19        The Federal Trade Commission ("Commission") respectfully advises the Court and

20   interested parties of the September 21, 2007 entry of the attached Order by the United States

21   District Court for the Southern District of Florida in the case *FTC v. Nationwide Connections,*

22   *Inc., et al.,* Case No. 06-80180-Civ-RYSKAMP/VITUNAC granting the Federal Trade

23   Commission's Emergency Motion for Clarification That the Automatic Stay Does Not Apply to

24

25

26

27

28                                        -1-

1  the FTC's Law Enforcement Action and the Ongoing Contempt Proceeding.

2
   Dated: September 21, 2007                    Respectfully submitted,
3

4
                                               WILLIAM BLUMENTHAL
5                                              General Counsel

6
                                               /s/ Michael P. Mora
7
                                               _____
8                                              MICHAEL P. MORA
                                               Federal Trade Commission
9                                              600 Pennsylvania Ave. NW, Room NJ-2121
                                               Washington, DC 20580
10                                             Telephone:  (202) 326-3373
                                               Facsimile:  (202) 326-3258
11                                             Email: mmora@ftc.gov

12                                             ATTORNEY FOR FEDERAL
                                               TRADE COMMISSION
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                            -2-

# Attachment A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 06-80180-CIV-RYSKAMP/VITUNAC

FEDERAL TRADE COMMISSION,

      Plaintiff,

v.

NATIONWIDE CONNECTIONS, INC.,
et al.

      Defendants.

_____/

## ORDER GRANTING MOTION FOR CLARIFICATION AS TO SCOPE OF STAY

THIS CAUSE comes before the Court pursuant to the FTC's Emergency Motion for

Clarification That the Automatic Stay Does Not Apply to the FTC's Law Enforcement Action

and the Ongoing Contempt Proceeding, filed September 21, 2007 **[DE 618]**.

Integretel became a Defendant in this action on September 21, 2006. Unbeknownst to the

Court, Integretel was holding more than $1.35 million in reserve funds that belonged to two of

the Nationwide defendants, Access One and Network One, in spite of several provisions of the

Temporary Restraining Order in Preliminary Injunction requiring it to turn said funds over to the

Receiver. When the Receiver learned of the existence of these funds, it filed its Motion for an

Order to Show Cause Why Integretel Should Not Be Held in Contempt. On Friday, September

14, 2007, this Court issued its Omnibus Order in which it ruled that the reserve funds are the

property of the receivership estate and ordered Integretel to pay the current reserve funds,

amounting to $1,762,762.56, immediately to the Receiver. The Court also ordered Integretel to

show cause in writing within 10 days why it should not be held in contempt for failing to turn

2

over the reserve funds. Two days later, on September 16, 2007, Integretel filed a petition for

Chapter 11 bankruptcy in the United States Bankruptcy Court, Northern District of California,

San Jose Division, Case No. 07-52890. Integretel maintains in its bankruptcy filings that it

"currently owes nothing to Receiver." Integretel further maintains that "it will ultimately

prevail... with respect to amounts which are the subject and required to be paid under the

[Omnibus Order]." On September 20, 2007 **[DE 617]**, the Court stayed this proceeding against

Integretel pursuant to 11 U.S.C. § 362(a). The FTC requests that this Court clarify that the

automatic bankruptcy stay does not apply to the prosecution of its enforcement action or the

ongoing contempt proceeding.

The FTC's prosecution of this action to protect consumers from unfair and deceptive

trade practices is excepted from the automatic stay pursuant to 11 U.S.C. § 362(b)(4), the

governmental regulatory exception to the stay. The statute provides as follows:

> (b) the filing of a petition under section 30 1,302, or 303 of this
> title... does not operate as a stay-...
>
> (4) under (1), (2), (3), or (6) of subsection (a) of this section, of the
> commencement or continuation of an action or proceeding by a
> governmental unit...to enforce such governmental unit's...police
> power and regulatory power, including the enforcement of a
> judgment other than a money judgment....

Thus, to the extent provided in the aforementioned section, governmental regulatory or police

actions are excepted from the automatic stay of:

> (1)   the commencement or continuation... of a judicial,
>        administrative, or other action or proceeding against the
>        debtor...;

3

    (2)    the enforcement, against the debtor or against property of
the estate, of a judgment obtained before the
commencement of the [bankruptcy] case...;

    (3)    any act to obtain possession of property of the estate or of
property from the estate or to exercise control over property
of the estate;... [and]

    (6)    any act to collect, assess, or recover a claim against the
debtor that arose before the commencement of the
[bankruptcy] case....

11 U.S.C. § 362(a). The legislative history specifically states that this exception applies to suits

by the government "to prevent or stop violation of fraud, environmental protection, consumer

protection, safety, or similar regulatory laws." H.R. Rep. No. 989, 95th Cong., 2d Sess. 52,

*reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 5838.

Various courts have recognized that actions brought by the FTC pursuant to 15 U.S.C. §

53(b), Section 13(b) of the FTC Act, are not subject to the automatic stay. See In re First

Alliance Mortgage Co., 264 B.R. 634, 647-51 (C.D. Cal. 2001) (reversing the Bankruptcy Court

in holding that FTC's action to enforce consumer protection unfair lending loss falls within the

11 U.S.C. § 362(b)(4) exemption from the stay); FTC v. American Standard Credit Systems, 874

F. Supp. 1080, 1083 (C.D. Cal. 1994).

The FTC also seeks monetary relief, including disgorgement, restitution and consumer

redress. The dual purposes of determining unlawful behavior by making such behavior more

expensive and holding violating parties accountable bring this action squarely within the police

and regulatory powers exemption. See SEC v. Brennan, 230 F.3d 65, 72 (2d Cir. 2000) ("When

the government seeks to impose financial liability on a party, it is plainly acting in its police or

regulatory capacity..."). Accordingly, the exemption permits continuation of this action for

4

injunctive relief against Integretel and the entry of a money judgment against same.

Nor is the contempt proceeding stayed. First, the automatic stay applies only to protect property of the bankruptcy estate or property of the debtor. See 11 U.S.C. § 362(a)(2). The Court has already ruled that the reserve funds are neither the property of the "bankruptcy estate" nor Integretel. Second, the 11 U.S.C. § 362(b)(4) exception also applies to civil contempt proceedings brought by a governmental unit in the exercise of its police or regulatory powers. See SEC v. Bilzerian, 131 F. Supp. 2d 10, 14 (D.D.C. 2001) (civil contempt proceeding falls within the exception; incarceration of debtor subsequent to failure to provide financial information as required by purgation provision in prior disgorgement order). Finally, the bankruptcy filing does not deprive this Court of its inherent power to enforce the integrity of its orders. "[C]ontempt orders to uphold the dignity of the court are excepted from the automatic stay." NRLB v. Sawulski, 158 B.R. 971, 975 (E.D. Mich. 1993). Accordingly, it is hereby

ORDERED AND ADJUDGED that the motion is GRANTED. The commencement of Integretel's bankruptcy case does not stay either the pending contempt proceeding against Integretel, including the turnover order, or the FTC's prosecution of this consumer protection action against Integretel. The September 20, 2007 Order staying proceedings against Integretel is VACATED.

DONE AND ORDERED at Chambers in West Palm Beach, Florida, this 21st day of September, 2007.

> S/Kenneth L. Ryskamp
> KENNETH L. RYSKAMP
> UNITED STATES DISTRICT JUDGE

# RER - 10

1   WILLIAM BLUMENTHAL
    General Counsel
2
    MICHAEL P. MORA
3   Federal Trade Commission
    600 Pennsylvania Ave. NW, Room NJ-2121
4   Washington, DC 20580
    Telephone: (202) 326-3373
5   Facsimile: (202) 326-3258
    Email: mmora@ftc.gov
6
    ATTORNEY FOR FEDERAL
7   TRADE COMMISSION

8               UNITED STATES BANKRUPTCY COURT
                NORTHERN DISTRICT OF CALIFORNIA
9                     SAN JOSE DIVISION

10

11  In re:
                                            Case No. 07-52890
12  THE BILLING RESOURCE, dba Integretel, a
    California corporation,                  Chapter 11
13
                         Debtor
14                                          FEDERAL TRADE
                                            COMMISSION'S
15                                          NOTICE OF PENDING
                                            ENFORCEMENT ACTION
16                                          AND RELATED
                                            PROCEEDINGS AGAINST
17                                          DEBTOR

18

19

20       The Federal Trade Commission ("Commission") respectfully advises the Court and

21  interested parties of the pendency of a civil enforcement action in the United States District Court

22  for the Southern District of Florida against the debtor, The Billing Resource, dba Integretel, and

23  other defendants ("Enforcement Action"). The Enforcement Action is styled *FTC v. Nationwide*

24  *Connections, Inc., et al.,* Case No. 06-80180-Civ-RYSKAMP/VITUNAC.

25       The Federal Trade Commission is an independent agency of the United States

26  Government created by the Federal Trade Commission Act ("FTC Act"). 15 U.S.C. §§ 41 *et seq.*

27  As part of its statutory duties, the Commission enforces Section 5(a) of the FTC Act, 15 U.S.C.

28                                  -1-

RER-10    0625

1  § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The

2  Commission, through its own attorneys, may initiate federal district court proceedings to enjoin

3  violations of the FTC Act and to secure such equitable relief as may be appropriate in each case.

4  15 U.S.C. § 53(b).

5      The background of the Enforcement Action and a civil contempt proceeding pending

6  against Integretel ("Contempt Proceeding") in that action, is described in the attached *Plaintiff*

7  *FTC's Emergency Motion for Clarification that the Automatic Stay Does Not Apply to the FTC's*

8  *Law Enforcement Action and the Ongoing Contempt Proceeding and Supporting Memorandum*

9  *of Law* (Attachment A).  On September 20, 2007, the Commission delivered the Emergency

10  Motion to  District Court Judge Ryskamp's chambers by permission, and served it on all parties

11  to the Enforcement Action.  The Commission formally filed the Emergency Motion with the

12  district court on September 21, 2007.  (In the interim, on September 20, pursuant to a "Notice of

13  Bankruptcy" filed by Integretel in the Enforcement Action on September 17, the district court

14  issued an Order Staying Proceedings Against Integretel.  As of this writing, however, the district

15  court has not ruled on the FTC's Emergency Motion).

16      In the Emergency Motion, the Commission argues that (i) the Enforcement Action is not

17  stayed by 11 U.S.C. § 362(a), because it is an exercise of the Commission's police or regulatory

18  power as a governmental unit pursuant to 11 U.S.C. § 362(b)(4), and thus falls within an

19  /

20  /

21  /

22  /

23  /

24  /

25  /

26  /

27

28                              -2-

1  exception to the automatic stay, and (ii) the Contempt Proceeding is not subject to the automatic

2  stay for the same reason, and for additional reasons as set forth on pages 9-11 of the Emergency

3  Motion.

4

5  Dated: September 21, 2007                    Respectfully submitted,

6

7                                              WILLIAM BLUMENTHAL
                                               General Counsel
8

9                                              /s/ Michael P. Mora

10                                             _____
                                               MICHAEL P. MORA
                                               Federal Trade Commission
11                                             600 Pennsylvania Ave. NW, Room NJ-2121
                                               Washington, DC  20580
12                                             Telephone:  (202) 326-3373
                                               Facsimile:  (202) 326-3258
13                                             Email: mmora@ftc.gov

14                                             ATTORNEY FOR FEDERAL
                                               TRADE COMMISSION
15

16

17

18

19

20

21

22

23

24

25

26

27

28                                 -3-

RER-10        0627

# ATTACHMENT "A"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-80180-Civ-Ryskamp/Vitunac

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

NATIONWIDE CONNECTIONS, INC., et al.,

Defendants.

## PLAINTIFF FTC'S EMERGENCY MOTION FOR CLARIFICATION THAT THE AUTOMATIC STAY DOES NOT APPLY TO THE FTC'S LAW ENFORCEMENT ACTION AND THE ONGOING CONTEMPT PROCEEDING AND SUPPORTING MEMORANDUM OF LAW

In this enforcement action brought by Plaintiff Federal Trade Commission ("FTC" or

"Commission"), Defendant The Billing Resource d/b/a Integretel ("Integretel") has filed a Notice

of Bankruptcy instructing the Court that it has filed a petition under Chapter 11 of the

Bankruptcy Code.[1] The Notice of Bankruptcy further instructs all parties to "please take further

notice that Section 362 of the Bankruptcy Code operates as an automatic stay. . ." [DE 612].

Integretel's bare-bones "Notice of Bankruptcy" fails to notify this Court, however, that it has also

filed emergency motions in its bankruptcy case to use cash collateral and its existing bank

accounts -- which would permit Integretel to dissipate the very reserve funds ("Reserve Funds")

that this Court has already ordered Integretel to turn over immediately.  [DE 610].

Indeed, Integretel has failed to disclose to the Bankruptcy Court that this Court has

already ruled that the $1,762,762.56 in Reserve Funds is receivership property and not property

---

[1] *In re The Billing Resource, dba Integretel*, Case No. 07-52890, pending in the U.S.
Bankruptcy Court for the Northern District of California, San Jose Division before the Hon.
Arthur S. Weissbrodt.

of Integretel.[2] [DE 610]. Because Integretel has failed to provide the Bankruptcy Court with a copy of this Court's Omnibus Order [DE 610], and because the Bankruptcy Court has scheduled a hearing on Integretel's emergency motions for September 21,[3] the FTC seeks an emergency ruling to clarify that the automatic bankruptcy stay in section 362(a) of the Bankruptcy Code does not apply to the prosecution of the FTC's case in chief or the contempt proceeding, including enforcement of the Court's Omnibus Order requiring Integretel to turnover Reserve Funds to the Receiver.

## I. BACKGROUND

### A. Procedural History of FTC's Enforcement Action

On February 27, 2006, Plaintiff Federal Trade Commission commenced this action for injunctive and other equitable relief against the Nationwide defendants[4] for violations of Section 5 of the FTC Act, 15 U.S.C. § 45(a) ("Enforcement Action"). The Complaint alleged that the Nationwide defendants engaged in a massive billing scam in which more than thirty million dollars in phony collect call charges were "crammed" onto consumers' telephone bills.[5] The same day that the Commission filed suit, this Court entered an *ex parte* temporary restraining order ("TRO") that, among other things, shut down the Nationwide defendants' unlawful operation and appointed a temporary receiver for the corporate defendants. [DE 18]. On March 8, after a contested hearing, the Court issued a Preliminary Injunction that, *inter alia*, made the

---

[2] The Receiver has filed an opposition to both motions.

[3] The Bankruptcy Court originally scheduled a hearing on these two motions for Thursday, September 20. The hearing has been postponed until Friday, September 21 at 1:30 PST.

[4] The Nationwide defendants are: Nationwide Connections, Inc.; Access One Communications, Inc.; Network One Services, Inc.; Willoughby Farr; Mary Lou Farr; Yaret Garcia; Erika Riaboukha; and Qaadir Kaid. The five individual defendants each answered the Commission's Complaint; the three corporate defendants have defaulted.

[5] *See, e.g.*, FTC's Memo. of Points & Auths. in Supp. of *Ex Parte* Mot. for TRO [DE 17] at 4–14; Receiver's Mot. for OSC Why Integretel Should Not Be Held in Contempt [DE 243] at 2.

-2-

temporary receiver permanent.[6]

As the Commission has explained in numerous pleadings before, the Nationwide defendants certainly did not act alone in their flagrant cramming scheme. Integretel and BSG[7] (collectively, "Aggregator defendants") played a pivotal role by, among other things, processing the bogus charges that they claimed consumers were liable to pay. Indeed, but for the Aggregator defendants' contracts with the local phone companies and their active involvement during the course of more than two and a half years of billing, consumers would not have been victimized to the extent that they were.[8]

Accordingly, on September 21, 2006, the FTC filed an Amended Complaint that added both Integretel and BSG as defendants. [DE 255]. As in its original Complaint, the Commission alleges the same two causes of action against all of the defendants: (1) that the defendants deceptively represented that consumers were obligated to pay charges appearing on their telephone bills for collect calls that were never made or authorized; and (2) that the defendants unfairly billed consumers for collect telephone calls that consumers never received or authorized. In late October 2006, the Aggregators filed their Answers, including numerous purported affirmative defenses which the Court has now stricken. [DE 286, 292, 611]. Pursuant to the Court's Order Modifying the Amended Scheduling Order, discovery is set to close on October 5, 2007.

**B.    Contempt Proceeding**

As this Court is aware, Integretel never disclosed to this Court or to the Receiver that it

---

[6] The Court also entered an Amended Preliminary Injunction on September 25, 2006 after a contempt hearing involving defendants Willoughby Farr and Mary Lou Farr. [DE 233]. For purposes of this Motion, the FTC refers to the Amended Preliminary Injunction and the Preliminary Injunction as the "Preliminary Injunction."

[7] BSG includes defendants BSG Clearing Solutions North America, LLC, Billing Concepts, Inc., and ACI Billing Services, Inc.

[8] *See, e.g.,* FTC's Combined Reply to Integretel's Opp. to Receiver's Mot. for OSC, and Opp. to Integretel's Mot. to Stay [DE 399-1] at 3–6.

-3-

was holding more than $1.35 million[9] in Reserve Funds that belonged to two of the Nationwide defendants – Access One and Network One – in spite of several provisions of the TRO and Preliminary Injunction that required Integretel to do so. On the contrary, upon being served with the TRO, Integretel sent the FTC an unsworn statement from its President claiming that "no amounts are currently due and owing" to Access One and Network One. [DE 610, p. 2].

   When the Receiver finally learned – seven months later – about the Reserve Funds Integretel had been holding, the Receiver filed a Motion for an Order to Show Cause Why Integretel Should Not Be Held in Contempt ("Contempt Motion" or "Contempt Proceeding"). [DE 243]. In response to the Contempt Motion, Integretel filed a 52-page response (not including exhibits), a Motion to Modify Prior Injunctive Orders [DE 294], a Motion to Stay Contract Claims [DE 363], and an appeal of the Preliminary Injunction to the 11th Circuit.[10] The FTC opposed Integretel's motions and filed a reply in support of the Receiver's Contempt Motion. The Court held a lengthy hearing at which two of Integretel's counsel presented argument, and at which the FTC and Receiver both argued in favor of the Contempt Motion.

   On Friday, September 14, 2007, this Court issued its Omnibus Order [DE 610], which ordered Integretel to pay the current Reserve Funds immediately to the Receiver and ordered Integretel to show cause in writing within ten days why it should not be held in contempt for failing to turn over the Reserve Funds. The Court also denied Integretel's Motion to Modify and Motion to Stay Contract Claims. In so holding, the Court ruled that the subject Reserve Funds are property of the receivership – not property belonging to Integretel.

   Notwithstanding this Court's determination that the Reserve Funds were receivership assets – and not Integretel's property – Integretel has brazenly sought to relitigate these very issues in the the Bankruptcy Court in the Northern District of California. As described below, however, Integretel has failed to mention that this Court has already decided that the Reserve

---

[9] As of June 30, 2006, the Reserve Funds had grown to $1,762,762.56.

[10] The appeal had been stayed pending this Court's resolution of Integretel's Motion to Modify Prior Injunctive Orders.

Funds are not part of Integretel's bankruptcy estate.

### C.    Integretel's Attempt to Relitigate the Reserve Issues in Bankruptcy Court

On Sunday, September 16, 2007, just two days after this Court's Omnibus Order on the Contempt Proceedings, Integretel filed a petition for chapter 11 bankruptcy. Integretel also concurrently filed: (1) an Emergency Motion for Use of Cash Collateral and Granting Replacement Liens ("Cash Collateral Motion") (attached as Exhibit 1); and (2) an Emergency Motion for Order Authorizing Use of Existing Bank Accounts and Cash Management Systems ("Cash Management Motion") (attached as Exhibit 2).

In essence, both motions seek permission to use existing cash collateral and existing bank accounts for the continued operation of Integretel's business. Because Integretel did not separate its clients' reserve funds and instead commingled them with its operating funds, the cash collateral and existing bank accounts at issue include the Reserve Funds that Integretel has been holding and using in violation of the TRO and Preliminary Injunction – the very same funds that were the subject of this Court's Omnibus Order issued on September 14, 2007.

Importantly, however, neither motion attached this Court's Omnibus Order. Furthermore, neither motion disclosed that this Court has already ruled that the $1,762,762.56 in Reserve Funds are receivership assets and therefore not property of Integretel's estate. In spite of this Court's order that Integretel turn over the Reserve Funds immediately to the Receiver, Integretel contends in its bankruptcy filings that "it currently owes nothing to the Receiver." [Exh. 1, p. 9; Exh. 2, p. 7.] Indeed, Integretel claims that "it will ultimately prevail. . . with respect to amounts which are the subject of and required to be paid under the [Omnibus Order]" as if this Court has not already ruled that the Reserve Funds were property of the receivership estate.

The FTC plans to oppose Integretel's two emergency motions at the hearing that has been noticed for September 21 in San Jose. In the meantime, however, the FTC urges this Court to clarify that the automatic bankruptcy stay does not apply to the prosecution of the FTC's Enforcement Action or the ongoing Contempt Proceeding.

-5-

ARGUMENT

## II.    NEITHER THIS ACTION NOR THE CONTEMPT PROCEEDING ARE STAYED BY DEFENDANT INTEGRETEL'S BANKRUPTCY FILING

### A.    This Court Has Jurisdiction to Determine That the Automatic Stay Does Not Apply

As an initial matter, this Court has jurisdiction to determine its own jurisdiction, as well as to decide whether the automatic stay applies to this action or the contempt proceeding pending before the Court. *See U.S. Dep't of Housing & Urban Dev't v. Cost Control Mktg. & Sales Mgmt.*, 64 F.3d 920, 927 n.11 (4th Cir. 1995); *Brock v. Morysville Body Works, Inc.*, 829 F.2d 383 (3d Cir. 1987); *NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 939 (6th Cir. 1986); *In re Baldwin-United Corp. Litigation*, 765 F.2d 343, 347 (2d Cir. 1985); *NLRB v. Evans Plumbing Co.*, 639 F.2d 291 (5th Cir. 1981).

Further, as the *Cost Control* court noted, "because the district court's jurisdiction attached first in time, it was superior." *Id.; see also United States v. Delta Distributors Co., Inc.*, 1996 WL 460112 (June 21, 1996 S.D.W.Va.) (same).

### B.    The FTC's Enforcement Action is Not Stayed

The FTC's prosecution of this action to protect consumers from unfair and deceptive trade practices is excepted from the automatic stay under Bankruptcy Code § 362(b)(4), the governmental regulatory exception to the stay.[11] 11 U.S.C. § 362(b)(4) provides:

> (b) the filing of a petition under section 301, 302, or 303 of this title . . . does not operate as a stay — . . .
> (4) under (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit

---

[11] The exemptions within § 362(b) are effective automatically upon the commencement of the bankruptcy case. By its express terms, the stay of Section 362(a) arises immediately upon the filing of a petition under Section 301, 302 or 303 of the Code, "[e]xcept as provided in subsection (b)." 11 U.S.C. § 362(a) (emphasis added). Thus, the stay does not become effective to the extent provided in those exemptions. *See, e.g., In re Fucilo*, No. 00-36261(CGM), 2002 WL 1008935, at *12 n.6 (Bankr. S.D.N.Y. Jan. 24, 2002); *In re Pincombe*, 256 B.R. 774, 781 (Bankr. N.D. Ill. 2000) (governmental agency is not required to seek relief from the stay before continuing proceedings against a debtor).

-6-

\* \* \* to enforce such governmental unit's \* \* \* police and regulatory power, including the enforcement of a judgment other than a money judgment \* \* \*."[12]

Thus, to the extent provided in § 362(b)(4), governmental regulatory or police actions are excepted from the automatic stay of:

(1)    the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor . . .;

(2)    the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the [bankruptcy] case . . .;

(3)    any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; . . . [and]

(6)    any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the [bankruptcy] case . . . .

11 U.S.C. § 362(a).

The legislative history expressly states that this exception from the automatic stay applies to suits by the government "to prevent or stop violation of fraud, environmental protection, *consumer protection*, safety, or similar regulatory laws." H.R. Rep. No. 989, 95th Cong., 2d Sess. 52, *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 5838 (emphasis added).

The FTC's Enforcement Action falls squarely within this exception to the automatic stay. Under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), the Commission is authorized to seek injunctive relief against violations of the statutes it enforces whenever it "has reason to believe" that an injunction "would be in the interest of the public." This grant of authority was "designed to enable the Commission to carry out its mandate to protect the public interest through prompt and aggressive enforcement of the laws it administers." 119 Cong. Rec. 21435, 21443 (93d Cong., 1st Sess. June 26, 1973) (Remarks of Senator Henry M. Jackson).

Thus, numerous courts have recognized that actions brought by the FTC under Section 13(b), including actions seeking preliminary injunctive relief and ancillary relief in the form of an asset freeze and receivership, are not subject to the automatic stay. *See, e.g., In re First Alliance Mortgage Co.*, 264 B.R. 634, 647-51 (C.D. Cal. 2001) (reversing the bankruptcy court and

---

[12] Section 362(b)(4) was amended in 1998 by, *inter alia*, combining former subsections (b)(4) and (b)(5). *See SEC v. Brennan*, 230 F.3d 65, 74 (2d Cir. 2000). The case law that developed under former § 362(b)(4) and 362(b)(5) remains as viable guidance in interpreting new Section 362(b)(4). *See* 3 Collier on Bankruptcy ¶ 362.05[5][b] (16th ed. 1999).

-7-

holding that FTC's action to enforce consumer protection and fair lending laws falls within the § 362(b)(4) exemption from the stay); *FTC v. American Standard Credit Sys.*, 874 F. Supp. 1080, 1083 (C.D. Cal. 1994); *FTC v. Austin Galleries of Illinois, Inc.*, No. 88 C 3845, 1991 U.S. Dist. LEXIS 1223, *3 (N.D. Ill. Feb. 5, 1991); *FTC v. R.A. Walker & Assocs., Inc.*, 37 B.R. 608 (D.D.C. 1983). The foregoing authorities are consistent with the principles applied by the Eleventh Circuit and the courts of appeals generally in actions to enforce regulatory schemes. *See, e.g., Brock v. Rusco Industries, Inc.*, 842 F.2d 270 (11th Cir. 1988) (automatic stay inapplicable to action by Secretary of Labor under Fair Labor Standards Act seeking injunction against debtor's sale of goods); *SEC v. First Financial Group of Texas*, 645 F.2d 429 (5th Cir. 1981) (automatic stay inapplicable to action seeking injunctive relief, asset freeze and receivership); *CFTC v. Petro Marketing Group, Inc.*, 700 F.2d 1279 (9th Cir. 1983) (automatic stay inapplicable to action seeking injunctive relief, asset freeze and receivership).

In addition to injunctive relief, the FTC seeks monetary relief in this action, including disgorgement, restitution and consumer redress. The dual purposes of deterring unlawful behavior by making such behavior more expensive and holding violating parties accountable bring this action squarely within the § 362(b)(4) police and regulatory powers exemption. *See, e.g., SEC v. Brennan*, 230 F.3d 65, 72 (2d Cir. 2000) ("When the government seeks to impose financial liability on a party, it is plainly acting in its police or regulatory capacity – it is attempting to curb certain behavior (such as defrauding investors, or polluting groundwater) by making the behavior that much more expensive."); *United States v. Nicolet, Inc.*, 857 F.2d 202, 209-10 (3d Cir. 1988); *SEC v. Towers Financial Corp.*, 205 B.R. 27, 31 (S.D.N.Y. 1997) (disgorgement is an equitable remedy that is merely ancillary to the SEC's scheme of injunctive remedies and is designed to make securities fraud unprofitable); *In re Bilzerian*, 146 B.R. 871, 873 (Bankr. M.D. Fla. 1992).

Therefore, § 362(b)(4) of the Bankruptcy Code permits the continuation of this action for injunctive relief against defendant Integretel and the *entry* of a money judgment against defendant Integretel.[13] *See, e.g., NLRB v. 15th Ave. Iron Works, Inc.*, 964 F.2d 1336, 1337 (2d

---

[13] The FTC acknowledges that *enforcement, i.e.*, collection, of any money judgment it

(continued...)

Cir. 1992); *NLRB v. Continental Hagen Corp.*, 932 F.2d 828, 832-35 (9th Cir. 1991); *NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 942-43 (6th Cir. 1986); *EEOC v. Rath Packing Co.*, 787 F.2d 318, 326-27 (8th Cir. 1986); *Penn Terra Ltd. v. Dept. of Environmental Resources*, 733 F.2d 267, 275 (3d Cir. 1984); *In re Bilzerian*, 146 B.R. 871, 873 (Bankr. M.D. Fla. 1992).[14]

## C.    The Contempt Proceeding Is Not Stayed

The Contempt Proceeding, including the enforcement of this Court's Order requiring Integretel to turnover the Reserve Funds to the Receiver, is not stayed by Integretel's bankruptcy filing for three reasons.

First, with respect to acts involving property, the automatic stay applies solely to protect property of the bankruptcy estate or property of the debtor. *See* 11 U.S.C. § 362(a)(2) (enforcement of a pre-petition judgment against the debtor or property of the estate); 362(a)(3) (act to obtain possession of or control property of the estate or property from the estate); 362 (a)(4) (act to enforce a lien against property of the estate); 362(a)(5) (act to enforce lien against property of the debtor). Subject to certain exceptions not relevant herein, property of the bankruptcy estate consists of "interests of the debtor in property *as of the commencement of the case.*" 11 U.S.C. § 541(a)(1) (emphasis added). Because this Court ruled – before Integretel filed its bankruptcy petition – that the Reserve Funds are property of the Receivership Estate, by definition that property is neither property of the "bankruptcy estate" nor the debtor, Integretel. Therefore, the Contempt Proceeding is not stayed by § 362(a).

Second, the § 362(b)(4) exception also applies to civil contempt proceedings brought by a governmental unit in the exercise of its police or regulatory powers. *See SEC v. Bilzerian*, 131 F. Supp. 2d 10 (D.D.C. 2001) (finding that the civil contempt proceeding fell within the § 362(b)(4) exemption, the court incarcerated the debtor after he failed to provide financial information required by purgation provisions of prior disgorgement order); *NLRB v. Sawulski*, 158 B.R. 971, 978 (E.D. Mich. 1993) ("pursuant to § 362(b)(4), this Court may continue the contempt

_____

[13] (...continued)
obtains in this case against defendant Integretel falls outside the § 362(b)(4) exception.

[14] Notwithstanding Integretel's apparent position that the automatic stay applies to this Enforcement Action, Integretel has continued to conduct discovery in this case, including taking two of its own depositions and participating in three others since its bankruptcy filing.