1 | Voice's prepetition liens in the Cash Collateral are valid, perfected and enforceable.

2 |     24.    The Debtor may use Cash Collateral in which Public Communication has an
3 | alleged interest.

4 |     25.    Public Communication is granted, pursuant to Bankruptcy Code
5 | sections 361(2) and 363(e), valid, perfected and enforceable replacement liens upon all post-
6 | petition property of the Debtor of the same type and character of any pre-petition property as to
7 | which Public Communication had valid, perfected and enforceable security interests or liens, but
8 | only to the extent of Cash Collateral used by the Debtor. The replacement liens granted to Public
9 | Communication shall be automatically perfected pursuant to this Order and Public
10 | Communication shall not be required to take any further action to perfect such liens.

11 |     26.    Public Communication's replacement liens on the post-petition property
12 | shall have the same priority vis-a-vis other liens and interests as Public Communication's pre-
13 | petition liens and security interests have vis-a-vis such other liens and interests. The replacement
14 | liens granted to Public Communication by this Order are intended to preserve Public
15 | Communication's position vis-a-vis the Debtor and other creditors of the estate so that Public
16 | Communication's position vis-a-vis the Debtor and such other creditors is neither diminished nor
17 | enhanced by Debtor's use of Cash Collateral and Public Communication's receipt of replacement
18 | liens.

19 |     27.    The replacement liens granted to Public Communication shall be
20 | subordinated to any expenses of this bankruptcy case including without limitation fees and
21 | expenses of professionals retained by the Debtor and any official committee appointed in this
22 | bankruptcy case as well as those of any trustee subsequently appointed in the bankruptcy case and
23 | such trustee's professionals.

24 |     28.    Notwithstanding anything to the contrary set forth in this Order, this Order
25 | does not determine whether Public Communication has any valid, perfected or enforceable
26 | prepetition liens or security interests in the Cash Collateral or any of the Debtor's other assets, and
27 | both the Debtor and Public Communication reserve all rights and defenses with respect thereto.

ORDER APPROVING INTERIM USE OF
CASH COLLATERAL AND GRANTING
REPLACEMENT LIENS

1   The replacement liens granted to Public Communication pursuant to this Order are effective only

2   to the extent that Public Communication's prepetition liens in the Cash Collateral are valid,

3   perfected and enforceable.

4         29.    The use of Cash Collateral shall be in the amounts, and for the purposes, set

5   forth on the budget attached to the Motion, or such other budget that the Court approves.

6         30.    The Debtor shall, on or before Monday, October 1, 2007, serve by either

7   personal service, overnight delivery service, courier service, facsimile service, or email service a

8   copy of this Order and a notice regarding the Final Hearing, to (i) the parties having been given

9   notice of the Interim Hearing, and (ii) any other party ordered by the Court or requesting service

10  pursuant to Bankruptcy Rule 2002.  Such notice shall state that any party in interest objecting to

11  the approval of the Motion on a final basis shall file a written objection with the Court no later

12  than October 10 , 2007, which objection shall be filed with the Court and served so that it is

13  received on or before 5:00 p.m. (Pacific Time) of such date by the Office of the United States

14  Trustee and the following counsel:

15
        Counsel to Debtor:
16
        Sheppard, Mullin, Richter & Hampton LLP
17      Four Embarcadero Center, Suite 1700
        San Francisco, CA 94111
18      Attn:  Michael H. Ahrens, Esq.
19             Jeffrey K. Rehfeld, Esq.
               Ori Katz, Esq.
20      Email: mahrens@sheppardmullin.com
21             jrehfeld@sheppardmullin.com
               okatz@sheppardmullin.com
22

23        31.    If a timely objection is filed, served and received, a written reply thereto

24  shall not be required but may be filed with the Court and served so that it is received by the

25  objecting party no later than October 11 , 2007on or before 5:00 p.m. midnight (Pacific Time).

26

27                              ** END OF ORDER **

28

ORDER APPROVING INTERIM USE OF
CASH COLLATERAL AND GRANTING
REPLACEMENT LIENS

COURT SERVICE LIST

Office of the U.S. Trustee
Office of the U.S. Trustee
Attn: Edwina Dowell, Esq.
280 South First Street, Room 268
San Jose, CA 95113

The Billing Resource dba Integretel
The Billing Resource dba Integretel
Attn: Ken Dawson
5883 Rue Ferrari
San Jose, CA 95138

Proposed counsel for The Billing Resource dba Integretel
The Billing Resource dba Integretel
c/o Sheppard, Mullin, Richter & Hampton LLP
Attn: Michael H. Ahrens, Esq.
4 Embarcadero Center, 17th Floor
San Francisco, CA 94111-4106

Counsel for PaymentOne Corporation
PaymentOne Corporation
c/o O'Melveny & Myers LLP
Attn: Steve Warren, Esq.
400 South Hope Street
Los Angeles, CA 90071-2899

POL, Inc.
POL, Inc.
c/o Joel R. Dichter, Esq.
Dichter Law Group, LLC
10 Rockefeller Plaza, Suite 816
New York, New York 10020
Email: info@dichterlaw.com
Fax: (212) 757-5002

POL, Inc.
c/o Kathryn Diemer, Esq.
Diemer, Whitman & Cardosi
75 East Santa Clara Street, Suite 290
San Jose, CA 95113

Personal Voice, Inc.
Personal Voice, Inc.
Attn: David Giorgione
16807 A U.S. Highway 19 North, Suite A
Clearwater, FL 33764

Personal Voice, Inc.
Attn: Thomas C. Little

W02-WEST:FJR\400438031.3

-11-

ORDER APPROVING INTERIM USE OF
CASH COLLATERAL AND GRANTING
REPLACEMENT LIENS

1    (Registered Agent for Service of Process)
     2123 NE Coachman Rd., Suite A
2    Clearwater, FL 33765

3    Network Telephone Services, Inc.
     Network Telephone Services, Inc.
4    Attn: Daniel Coleman, Esq.
     21135 Erwin Street
5    Woodland Hills, CA 91367

6    Public Communication Services, Inc.
     Public Communication Services, Inc.
7    Attn: Leslie Cohen
     Liner Yankelvitz Sunshine & Regenstreif LLP
8    1100 Glendon Avenue, 14th Floor
9    Los Angeles, CA 90024-3503

10   The Receiver David Chase
     Steven J. Schwartz
11   Danning, Gill, Diamond & Kollitz, LLP
     2029 Century Park East, Third Floor
12   Los Angeles, California 90067-2904

13   Jeffrey C. Schneider
     Tew Cardenas LLP
14   Four Seasons Tower, Fifteenth Floor
     1441 Brickell Avenue
15   Miami, Florida 33131-3407

16   Federal Trade Commission
     Julie A. Mack
17   Federal Trade Commission
     600 Pennsylvania Ave. N.W.
18   Washington, DC 20580

19   Thermo Credit
     John A. Lapinski
20   Leslie R. Horowitz
     Dolores Cordell
21   Clark & Trevithick
     800 Wilshire Boulevard, 12th Floor
22   Los Angeles, California 90017

23
     W. Timothy Miller
24   Taft Stettinius & Hollister LLP
     425 Walnut Street, Suite 1800
25   Cincinnati, Ohio 45202

26   Certain Creditors
     Michaeline H. Correa
27   Heller, Ehrman, White and McAuliffe
     333 Bush St.
28   San Francisco, CA 94104-2878

W02-WEST:FJR\400438031.3

-12-

ORDER APPROVING INTERIM USE OF
CASH COLLATERAL AND GRANTING
REPLACEMENT LIENS

1     <u>Email Discount Network and Intelicom Messaging</u>
     c/o David M. Goodrich
2     7700 Irvine Center Drive, Suite 800
     Irvine, CA 92618
3

     Austin P. Nagel
4     Law Offices of Austin P. Nagel
     111 Deerwood Place, Suite 338
5     San Ramon, California 94583

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

W02-WEST:FJR\400438031.3

-13-

ORDER APPROVING INTERIM USE OF
CASH COLLATERAL AND GRANTING
REPLACEMENT LIENS

**RER - 20**

1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
      A Limited Liability Partnership
2      Including Professional Corporations
   MICHAEL H. AHRENS, Cal. Bar No. 44766
3  STEVEN B. SACKS, Cal. Bar No. 98875
   JEFFREY K. REHFELD, Cal. Bar No. 188128
4  ORI KATZ, Cal. Bar No. 209561
   Four Embarcadero Center, 17th Floor
5  San Francisco, California 94111-4106
   Telephone:    415-434-9100
6  Facsimile:    415-434-3947

7  Proposed Attorneys for The Billing Resource, dba
   Integretel

8                    UNITED STATES BANKRUPTCY COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                        [SAN JOSE DIVISION]

11

12  In re                                    Case No. 07-52890

13  THE BILLING RESOURCE, dba                Chapter 11
    INTEGRETEL, a California corporation,

14                 Debtor.

15  Tax ID: 33-0289863

16

17  THE BILLING RESOURCE, dba               Adv. Proc. No. 07-05156
    INTEGRETEL, a California corporation,
18                                          **SUPPLEMENTAL MEMORANDUM IN
                   Plaintiff,               SUPPORT OF REQUEST FOR
19                                          TEMPORARY RESTRAINING ORDER
           v.                               AND ORDER TO SHOW CAUSE RE:
20                                          PRELIMINARY INJUNCTION AND
    FEDERAL TRADE COMMISSION, and           DECLARATORY RELIEF**
21  DAVID R. CHASE, not individually, but
    solely in his capacity as receiver for  Date:        October 2, 2007
22  Nationwide Connections, Inc., Access One Time:        2:00 p.m.
    Communications, Inc., Network One Services, Place:     United States Bankruptcy Court
23  Inc., 411TXT, Inc., CELL-INFO-USA, INC.,             280 South First Street
    Enhanced Billing Services, Inc., Toll Free           San Jose, California
24  Connect, Inc., Cripple Creek Holdings, LLC, Judge:    Hon. Arthur S. Weissbrodt
    Built to Last, LLC, Not Fade Away, LLC, He's Courtroom: 3020
25  Gone, LLC, The Other One, LLC, Turn on
    Your Love Light, LLC, China Cat Sunflower,
26  LLC, Lazy River Road Holdings, LLC,

27                 Defendants.

28

W02-WEST:5SS1\400443602.1                    SUPP. MEMO. IN SUPPORT OF REQUEST FOR TRO.

                                                    RER-20        0985

1    This Supplemental Memorandum is filed regarding the pending motion by the
2  Debtor for a Temporary Restraining Order and Order to Show Cause ("TRO Motion")
3  against the Federal Trade Commission ("FTC") and the court-appointed Receiver in the
4  Florida Action. The Court gave the Debtor leave to file a Supplemental Memorandum and
5  additional supporting evidence prior to a hearing set for October 2, 2007 at 2:00 p.m.

6    The Debtor has not heard anything from the FTC as to whether it will accept the
7  Court's suggestion that the parties request an agreed order from the Florida Court giving
8  the parties three weeks of "breathing room" in the present litigation schedule. The Debtor
9  continues to believe that it is extremely important to the success of its reorganization that
10 the Florida Action be stayed as to the Debtor, not just for the next three weeks but for the
11 three to five months that it will likely take to confirm a plan of reorganization. The Debtor
12 has submitted a Supplemental Declaration from the Debtor's President, Ken Dawson to
13 address the "breathing period" stay that shows that Mr. Dawson has his hands full running
14 and reorganizing his company without having to also stay on top of the Florida Action,
15 which has been marked by frequent emergency motions, sudden rulings, and demands that
16 Mr. Dawson come to Florida on a moment's notice to appear in court and testify.

17    What is before the Court now is the Debtor's request for a temporary restraining
18 order and an order to show cause for a preliminary injunction. The Debtor's original
19 Memorandum showed that this Court can enjoin the Florida Litigation if it "threatens the
20 integrity" of the bankruptcy estate. Solidus Networks, Inc. v. Excel Innovations, Inc. (In re
21 Excel Innovations, Inc.), ___ F.3d ___, 2007 WL 2555941, 07 Cal. Daily Op. Serv.
22 10,857, 10,859 (9th Cir. 9/7/2007). Here, the Debtor needs to devote its efforts toward
23 saving its business through a bankruptcy reorganization. If it is instead diverted to
24 addressing the pending regulatory proceeding brought by the FTC then it may turn out that
25 there is nothing to regulate because the Debtor is out of business.

26    The Debtor requests that the Court issue the TRO to enjoin prosecution of the
27 Florida Action against the Debtor based on findings that (1) that the Debtor has a
28 reasonable likelihood of reorganization based on the limited time it has had to pursue these

-1-

W02-WEST:5SS1\400443602.1                    SUPP. MEMO. IN SUPPORT OF REQUEST FOR TRO.

1   activities; (2) the Florida Action has been and will continue, unless stayed, to divert the

2   Debtor's personnel from focusing their attention on their business and its reorganization;

3   (3) that the Florida Action will be very expensive for the Debtor to defend in light of its

4   available resources; (4) that the FTC will not suffer any significant hardship from being

5   delayed in the prosecution of this case during the pendency of a TRO and thus the balance

6   of hardships tips in favor of the Debtor; (5) that a TRO would further the public interest in

7   fostering bankruptcy reorganizations and would not significantly interfere with the

8   regulatory goals being pursued by the FTC in the Florida Action.

9       The evidence before the Court justifies issuance of a stay for a period longer than

10   that of a TRO, but the Court can and should issue the TRO now and consider the matter

11   further at a preliminary injunction hearing in mid-October.

12   Dated: September 28, 2007

13

14                       Respectfully submitted,

                           SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

15

16                      By              /s/ Steven B. Sacks

17                            STEVEN B. SACKS
                        Proposed Attorneys for Debtor The Billing

18                           Resource, dba Integretel

19

20

21

22

23

24

25

26

27

28

W02-WEST:5SS1\400443602.1           SUPP. MEMO. IN SUPPORT OF REQUEST FOR TRO.

1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
      A Limited Liability Partnership
2      Including Professional Corporations
   MICHAEL H. AHRENS, Cal. Bar No. 44766
3  STEVEN B. SACKS, Cal. Bar No. 98875
   JEFFREY K. REHFELD, Cal. Bar No. 188128
4  ORI KATZ, Cal. Bar No. 209561
   Four Embarcadero Center, 17th Floor
5  San Francisco, California  94111-4106
   Telephone:    415-434-9100
6  Facsimile:    415-434-3947

7  Proposed Attorneys for The Billing Resource, dba
   Integretel
8
                    UNITED STATES BANKRUPTCY COURT
9
                    NORTHERN DISTRICT OF CALIFORNIA
10
                         ' [SAN JOSE DIVISION]
11

12  In re                                        Case No. 07-52890

13  THE BILLING RESOURCE, dba                     Chapter 11
    INTEGRETEL, a California corporation,
14
                        Debtor.
15
    Tax ID: 33-0289863
16

17  THE BILLING RESOURCE, dba                     Adv. Proc. No. 07-05156
    INTEGRETEL, a California corporation,
18                                                **SUPPLEMENTAL DECLARATION OF**
                        Plaintiff,                **KEN DAWSON IN SUPPORT OF**
19                                                **EMERGENCY MOTION FOR**
             v.                                   **TEMPORARY RESTRAINING ORDER**
20                                                **AND PRELIMINARY INJUNCTION**

21  FEDERAL TRADE COMMISSION, and                 Date:      October 2, 2007
    DAVID R. CHASE, not individually, but         Time:      2:00 p.m.
22  solely in his capacity as receiver for        Place:     United States Bankruptcy Court
    Nationwide Connections, Inc., Access One                 280 South First Street
23  Communications, Inc., Network One Services,              San Jose, California
    Inc., 411TXT, Inc., CELL-INFO-USA, INC.,      Judge:     Hon. Arthur S. Weissbrodt
24  Enhanced Billing Services, Inc., Toll Free     Courtroom: 3020
    Connect, Inc., Cripple Creek Holdings, LLC,
25  Built to Last, LLC, Not Fade Away, LLC, He's
    Gone, LLC, The Other One, LLC, Turn on
26  Your Love Light, LLC, China Cat Sunflower,
    LLC, Lazy River Road Holdings, LLC,
27
                        Defendants.
28

---

W02-WEST:5SS1\400443445.1                    DECLARATION OF KEN DAWSON RE EMERGENCY
                                                                    MOTION FOR TRO

1    I, Ken Dawson, declare as follows:

2        1.    I am the President and Secretary of The Billing Resource, dba Integretel, a

3    California corporation (the "Debtor"), the named debtor in this case. I make this

4    declaration in that capacity. I have personal knowledge of the matters set forth below. If

5    called upon to testify as to those matter I could and would do so competently.

6        2.    This supplemental declaration is submitted in support of the Debtor's

7    "Emergency Motion For Temporary Restraining Order And Order To Show Cause Re:

8    Preliminary Injunction And Declaratory Relief" (the "Motion"). Capitalized terms not

9    defined herein shall have the meanings ascribed to them in the Motion.

10       3.    As the Court has expressed, this is a critical time for the Debtor in its effort

11   to reorganize. While we have access to our cash, we only have been allowed interim

12   access for three weeks. During this time I expect that we will need to be in constant

13   communication with our existing and former customers, and other creditors, to resolve

14   outstanding issues in preparation for the next cash collateral hearing. With the expected

15   formation of a creditor's committee next week, I expect to be extremely busy working with

16   the committee and its professionals so that we can negotiate on the many pending business

17   and legal issues presented by the case. In particular, we have devised a program to pay

18   customers on the front end for a portion of the receivables represented by new billings they

19   submit to us. As this is a new program, it will be time-consuming to implement, monitor

20   and report on. I am the main contact point for all of the company's reorganization efforts

21   in addition to overseeing normal operational issues. Consequently the demands on my

22   time are very substantial.

23       4.    Given the increased attention that I am required to devote to the business and

24   its reorganization, I have less ability to give appropriate attention to the constant and fast-

25   moving developments in the Florida Action. I have been closely involved with the

26   Debtor's defense of the Florida Action. I have stayed in close contact with the Debtor's

27   counsel at the Tighe Patton firm in Washington, D.C. That contact has, in recent weeks,

28   generally included several phone conversations each week concerning the ongoing

-1-

1   activities, the Florida Court's rulings, strategy for the defense, settlement, issues pertaining

2   to the Receiver, the FTC and the Debtor's co-defendants.  Based on my past experience

3   and my understanding of the schedule for the next several weeks in the case, I expect that

4   unless the action is stayed as to the Debtor I will be required to spend significant time

5   during each of these next several weeks on this litigation.

6       5.    I believe that if we are afforded a stay of the Florida Action for a brief period

7   that we would be able to use that stay to work on settling the case with the FTC,

8   particularly if we can obtain the parties' agreement to use a mediator.

9       6.    In sum, I believe that relieving the Debtor of the need to deal with the

10  litigation of the Florida Action while it formulates and seeks confirmation of a plan of

11  reorganization would enormously further those reorganization efforts, and that particularly

12  in the next three weeks the Debtor should be afforded the opportunity to put the maximum

13  focus on its reorganization without having to also address the litigation.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

1  I declare under penalty of perjury under the laws of the United States of America that the

2  foregoing is true and correct.

3  September 28, 2007

4

5                                                    _____/s/ Ken Dawson_____

6                                                              KEN DAWSON

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-3-

SUPP. DECLARATION OF KEN DAWSON RE
                                          EMERGENCY MOTION FOR TRO

1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
      A Limited Liability Partnership
2     Including Professional Corporations
    MICHAEL H. AHRENS, Cal. Bar No. 44766
3  STEVEN B. SACKS, Cal. Bar No. 98875
    JEFFREY K. REHFELD, Cal. Bar No. 188128
4  ORI KATZ, Cal. Bar No. 209561
    Four Embarcadero Center, 17th Floor
5  San Francisco, California  94111-4106
    Telephone:    415-434-9100
6  Facsimile:    415-434-3947

7  Proposed Attorneys for The Billing Resource,
    dba Integretel
8                    UNITED STATES BANKRUPTCY COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                        [SAN JOSE DIVISION]

11  | In re | Case No. 07-52890 |

12  THE BILLING RESOURCE, dba                 Chapter 11
    INTEGRETEL, a California corporation,
13                                            Adv. Proc. No. 07-05156
    Debtor.
14                                            **CERTIFICATE OF SERVICE:**
15  Tax ID: 33-0289863
                                              **SUPPLEMENTAL MEMORANDUM IN**
16                                            **SUPPORT OF REQUEST FOR**
                                              **TEMPORARY RESTRAINING ORDER AND**
17  THE BILLING RESOURCE, dba                 **ORDER TO SHOW CAUSE RE:**
    INTEGRETEL, a California corporation,     **PRELIMINARY INJUNCTION AND**
18                                            **DECLARATORY RELIEF;**
                    Plaintiff,
19                                            **SUPPLEMENTAL DECLARATION OF KEN**
            v.                                **DAWSON IN SUPPORT OF EMERGENCY**
20                                            **MOTION FOR TEMPORARY**
    FEDERAL TRADE COMMISSION, and             **RESTRAINING ORDER AND**
21  DAVID R. CHASE, not individually, but     **PRELIMINARY INJUNCTION;**
    solely in his capacity as receiver for
22  Nationwide Connections, Inc., Access One  **and this CERTIFICATE OF SERVICE**
    Communications, Inc., Network One Services,
23  Inc., 411TXT, Inc., CELL-INFO-USA, INC.,  Date:        October 2, 2007
    Enhanced Billing Services, Inc., Toll Free Time:        2:00 p.m.
24  Connect, Inc., Cripple Creek Holdings, LLC, Place:       United States Bankruptcy Court
    Built to Last, LLC, Not Fade Away, LLC, He's             280 South First Street
25  Gone, LLC, The Other One, LLC, Turn on                   San Jose, California
    Your Love Light, LLC, China Cat Sunflower, Judge:       Hon. Arthur S. Weissbrodt
26  LLC, Lazy River Road Holdings, LLC,       Courtroom: 3020

27                    Defendants.

28

1        I am an attorney practicing in the County of San Francisco; I am over the age of 18 years and not a party to the within entitled action; my business address is Four Embarcadero Center,

2  17th Floor, San Francisco, California 94111-4109.

3        On **September 28, 2007**, I served the following documents described as:

4    1.  SUPPLEMENTAL MEMORANDUM IN SUPPORT OF REQUEST FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY

5        INJUNCTION AND DECLARATORY RELIEF;

6    2.  SUPPLEMENTAL DECLARATION OF KEN DAWSON IN SUPPORT OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND

7        PRELIMINARY INJUNCTION; and

8    3.  this CERTIFICATE OF SERVICE

9  on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows: **See Attached Service List**

10

11  ☐    **BY FEDERAL EXPRESS PRIORITY OVERNIGHT OR OVERNIGHT PRIORITY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal

12        service on that same day with postage thereon fully prepaid at San Francisco, California in the ordinary course of business. I am aware that on motion of the party served, service is

13        presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit,

14

    ☒    **BY ELECTRONIC MAIL [Exhibit A].**

15

16  ☐    **BY OVERNIGHT DELIVERY:** I served such envelope or package to be delivered on the same day to an authorized courier or driver authorized by the overnight service carrier to receive documents, in an envelope or package designated by the overnight service

17        carrier.

18  ☐    **BY FACSIMILE:** I served said documents to be transmitted by facsimile pursuant to Rule 2008 of the California Rules of Court. The number of the sending facsimile machine

19        was 415.434.3947.

20  ☐    **BY HAND DELIVERY:** I caused such envelope(s) to be delivered by hand to the office of the addressee(s).

21

    ☒    **FEDERAL:** I declare that I am a member of the bar of this Court. I declare under penalty

22        of perjury under the laws of the United States of America that the foregoing is true and correct.

23

    Executed on **September 28, 2007**, at San Francisco, California.

24

25

26                      /S/ Judy Nakaso

                      Judy Nakaso

27

28

-2-

1

## EXHIBIT A

2

3

Federal Trade Commission
Laura M. Kim, Federal Trade Commission                    lkim@ftc.gov
4  Collot Guerard, Federal Trade Commission                 cguerard@ftc.gov
Michael Mora, Federal Trade Commission                   mmora@ftc.gov
5  Richard McKewen, Federal Trade Commission                rmckewen@ftc.gov
Robert Schoshinski, Federal Trade Commission             rschoshinski@ftc.gov
6

7  Receiver's counsel
Jeffrey C. Schneider, for Receiver David R. Chase        jcs@tewlaw.com
8  Patrick J. Rengstl, for Receiver David R. Chase         pjr@tewlaw.com

9  Receiver's California counsel
Walter Oetzell, for Receiver David R. Chase              woetzell@dgdk.com
10

11 U.S. Trustee
Shannon L. Mounger-Lum                    Shannon.L.Mounger-Lum@usdoj.gov

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

W02-WEST:FC3\400444200.1                    -1-

**RER - 21**

1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
      A Limited Liability Partnership
2      Including Professional Corporations
   MICHAEL H. AHRENS, Cal. Bar No. 44766
3  STEVEN B. SACKS, Cal. Bar No. 98875
   JEFFREY K. REHFELD, Cal. Bar No. 188128
4  ORI KATZ, Cal. Bar No. 209561
   Four Embarcadero Center, 17th Floor
5  San Francisco, California  94111-4106
   Telephone:     415-434-9100
6  Facsimile:     415-434-3947
   Email:         mahrens@sheppardmullin.com
7                 jrehfeld@sheppardmullin.com
                  okatz@sheppardmullin.com
8
   Proposed Attorneys for The Billing Resource,
9  dba Integretel

10                 UNITED STATES BANKRUPTCY COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12                      SAN JOSE DIVISION

13
   In re                                    Case No. 07-52890
14
   THE BILLING RESOURCE, dba Integretel, a   Chapter 11
15 California corporation,

16              Debtor.                      **STIPULATION BETWEEN DEBTOR
                                             AND DAVID R. CHASE AS RECEIVER**
17 Tax ID: 33-0289863                        **REGARDING PLACEMENT OF FUNDS
                                             INTO A SEGREGATED, BLOCKED**
18                                           **BANK ACCOUNT AND STAY OF
                                             CERTAIN LITIGATION PROCEEDINGS**
19
20                                           Date:      September 26, 2007
                                             Time:      2:15 p.m.
21                                           Place:     United States Bankruptcy Court
                                                        280 South First Street
22                                                      San Jose, California
                                             Judge:     Hon. Arthur S. Weissbrodt
23                                           Courtroom: 3020

24
25
26
27
28

---

W02-WEST:FJR\400442722.3                     STIPULATION BETWEEN DEBTOR AND DAVID R.
                                                         CHASE AS RECEIVER . . .

                                                         RER-21        0995

1  **RECITALS**

2   A.   On February 27, 2006, the Federal Trade Commission (the "FTC") commenced a

3  lawsuit (the "Florida Action") in the United States District Court for the Southern District of

4  Florida (the "Florida Court") against Nationwide Connections, Inc. ("Nationwide"), Access One

5  Communications, Inc. ("Access One") and Network One Services, Inc. ("Network One"), three

6  AOS providers, as well as their principals, alleging deceptive and unfair practices for unauthorized

7  billing of charges on phone bills – referred to as "cramming" – in violation of the Federal Trade

8  Commission Act.  The Florida Action is captioned <u>Federal Trade Commission v. Nationwide</u>

9  <u>Connections, Inc., et al.</u>, Case No. 06-80180-Civ-Ryskamp, United States District Court for the

10  Southern District of Florida.

11   B.   The Florida Court entered in the Florida Action a temporary restraining order and

12  later a preliminary injunction.

13   C.   The Florida Court in the Florida Action appointed David R. Chase as receiver (the

14  "Receiver") for Nationwide, Access One and Network One and certain of their affiliates.

15   D.   On September 25, 2006 the Florida Court filed an "Amended Preliminary

16  Injunction Order."

17   E.   On or about September 21, 2006, the FTC filed an amended complaint in the

18  Florida Action which included claims against the Debtor and another billing aggregator.  The

19  Debtor filed an answer denying the FTC's allegations.

20   G.   The Receiver filed a motion in the Florida Action asking that the Debtor be

21  required to show cause why it should not be held in contempt for not turning over to the Receiver

22  upon his demand certain reserves withheld from Access One and Network One.  The Debtor filed

23  a response opposing such relief on numerous grounds.

24   H.   On September 14, 2007, the Florida Court issued its "Omnibus Order" (the

25  "Omnibus Order") which provided as follows:

26   Integretel shall show cause in writing within 10 days of the
    date of this Order why it should not be held in contempt for
27   failure to turn over the reserves.  In addition, Integretel shall
    provide a sworn statement identifying the amount of reserves
28   as of the issuance of the TRO.  The Court further orders that

-1-

W02-WEST:FJR\400442722.3

STIPULATION BETWEEN DEBTOR AND DAVID R.
CHASE AS RECEIVER . . .

1    these funds shall be placed in a segregated receivership account.

2

3    I.    On September 16, 2007, the Debtor filed a voluntary petition for relief under

4    chapter 11, title 11 of the United States Code, commencing bankruptcy case number 07-52890

5    (the "Bankruptcy Case") in the Bankruptcy Court for the Northern District of California -- San

6    Jose Division (the "Bankruptcy Court").

7    J.    The Debtor continues to operate and manage its business as a debtor in possession

8    pursuant to 11 U.S.C. §§ 1107 and 1108.

9    K.    The Debtor filed in the Bankruptcy Case an emergency motion to use cash

10   collateral (as such motion was revised and amended, the "Cash Collateral Motion"). The Receiver

11   opposed the Cash Collateral Motion. An initial hearing on the Cash Collateral Motion was held

12   on September 21, 2007.

13   L.    On September 21, 2007, the Florida Court entered its "Order Granting Motion For

14   Clarification As To Scope Of Stay." In that order, the Florida Court stated that the Omnibus Order

15   required the Debtor to immediately transfer the current reserve amount ($1,762,762.56) to the

16   Receiver.

17   M.    A continued hearing was held on the Debtor's Cash Collateral Motion on

18   September 26, 2007. At that hearing, the Receiver agreed to withdraw his opposition to the

19   Debtor's Cash Collateral Motion based upon an agreement between the Debtor and the Receiver

20   which is the subject of this Stipulation.

21   N.    The parties wish to resolve their disputes, at least on a temporary basis as set forth

22   in this Stipulation, regarding the Debtor's interim use of cash collateral and the contempt

23   component of the Florida Action.

24                                    **STIPULATION**

25        NOW, THEREFORE, IT IS HEREBY AGREED AND STIPULATED, BY AND

26   BETWEEN THE DEBTOR AND THE RECEIVER, THROUGH THEIR RESPECTIVE

27   COUNSEL OF RECORD IN THE BANKRUPTCY CASE, AS FOLLOWS:

28   1.    The Debtor shall as soon as practicable deposit or transfer the sum of

-2-

W02-WEST:FJR\400442722.3    STIPULATION BETWEEN DEBTOR AND DAVID R. CHASE AS RECEIVER..

RER-21    0997

1  $1,762,762.56 (the "Disputed Funds") into a segregated, blocked, debtor in possession bank

2  account of the Debtor in the name of the Debtor as debtor in possession (the "Blocked Account").

3  Neither the Debtor nor any party shall be authorized to remove any funds from the Blocked

4  Account without a prior, written order of the Bankruptcy Court authorizing the removal of any

5  such funds.  No advantage or prejudice shall arise in favor of any person, including the Debtor, the

6  Receiver, or any other party by the Debtor's deposit or transfer of the Disputed Funds into the

7  Blocked Account, including without limitation that no implication as to ownership, possession,

8  liens or other claims of right shall arise in any person's favor with respect to the Disputed Funds

9  by the Debtor's placement of the Disputed Funds into the Blocked Account.  All parties reserve all

10 of their rights, claims and defenses with respect to the Disputed Funds, and nothing in this

11 Stipulation or the order approving this Stipulation shall in any way affect the merits of such

12 parties' rights, claims and defenses.  The Debtor and the Receiver agree that the terms of the

13 "Order Approving Emergency Motion For Order Authorizing Use Of Existing Cash Management

14 System And Bank Accounts" (the "Cash Management Order") and the "Order Approving Interim

15 Use Of Cash Collateral And Granting Replacement Liens And Approving First Amended

16 Stipulation With PaymentOne Corporation Regarding Use Of Cash Collateral And Adequate

17 Protection On An Interim Basis" (the "Interim Cash Collateral Order") shall be deemed amended

18 and/or revised to the limited extent necessary to effectuate the Debtor's deposit or transfer of the

19 Disputed Funds into the Blocked Account.

20      2.    The Debtor and the Receiver will promptly take appropriate steps to obtain the

21 entry of an agreed order in the Florida Action, the operative language of which shall state (in its

22 entirety) as follows:

23        ORDERED AND ADJUDGED that in light of Integretel's placement of
   $1,762,762.56 into a segregated, blocked account that is being supervised

24        by the Bankruptcy Court, without waiver or prejudice to any party's
   claims, and in light of Integretel's agreement that it cannot and will not

25        remove any portion of such funds absent prior, written order from the
   Bankruptcy Court, the Omnibus Order dated September 13, 2007 and

26        entered September 14, 2007 [DE 610] is hereby stayed through October
   17, 2007 insofar as it relates to Integretel only, as are all proceedings to

27        enforce the Omnibus Order vis-à-vis Integretel only (including but not
   limited to the issuance of a contempt order and/or the payment deadline

28        established in the Court's "Order Conditionally Granting Integretel's

-3-

W02-WEST:FJR\400442722.3           STIPULATION BETWEEN DEBTOR AND DAVID R.
CHASE AS RECEIVER . .

RER-21    0998

1    Emergency Motion for Stay Pending Appeal").

2        ORDERED AND ADJUDGED that the temporary stay of the Omnibus
Order referred to above does not stay the continued litigation of the FTC's
3    claims under the FTC Act, even as to Integretel, which is unaffected by
this Order. Further, the temporary stay of the Omnibus Order referred to
4    above has no effect on defendant BSG's obligation to comply with the
Omnibus Order (including but not limited to the payment deadline).

5
6       3.    This Stipulation shall remain in effect until further order of the Bankruptcy Court,

but the parties agree not to seek to terminate or modify this Stipulation as of a date before October
7
15, 2007.
8
9       4.    This Stipulation is subject to Bankruptcy Court approval.  The parties agree to

promptly seek an order from the Bankruptcy Court approving this Stipulation.
10

11
12    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Dated:  October 1, 2007

13
14    By:    /s/ Steven B. Sacks
      MICHAEL H. AHRENS
15          STEVEN B. SACKS
      JEFFREY K. REHFELD
16
17    Attorneys for The Billing Resource, dba Integretel

18
19    DANNING, GILL, DIAMOND & KOLLITZ, LLP
Dated:  October 1, 2007
20
21    By:    /s/ Walter K. Oetzell
      WALTER K. OETZELL
22
23    Attorneys for David R. Chase, Federal Receiver of
Access One Communications, Inc. and Network One Services,
24    Inc.

25
26
27
28

-4-

W02-WEST:FJR\400442722.3

STIPULATION BETWEEN DEBTOR AND DAVID R.
CHASE AS RECEIVER . .

**RER - 22**

⓪E

1  WILLIAM BLUMENTHAL
   General Counsel
2
   MICHAEL P. MORA
3  Federal Trade Commission
   600 Pennsylvania Ave. NW, Room NJ-2121
4  Washington, DC 20580
   Telephone: (202) 326-3373
5  Facsimile: (202) 326-2558
   Email: mmora@ftc.gov
6
   ATTORNEY FOR FEDERAL
7  TRADE COMMISSION

8               UNITED STATES BANKRUPTCY COURT
                 NORTHERN DISTRICT OF CALIFORNIA
9                    SAN JOSE DIVISION

10

11  In re:                                    **Case No. 07-52890**

12  THE BILLING RESOURCE, dba Integretel, a   Chapter 11
    California corporation,
13                                            Adv. Proc. No. 07-05156
                              Debtor
14
                                              FEDERAL TRADE
15                                            COMMISSION'S
                                              SUPPLEMENTAL
16  THE BILLING RESOURCE, d/b/a               OPPOSITION TO DEBTOR'S
    INTEGRETEL, a California corporation,     EMERGENCY MOTION FOR
17                                            TEMPORARY RESTRAINING
            Plaintiff,                        ORDER AND ORDER TO SHOW
18                                            CAUSE REGARDING
    v.                                        PRELIMINARY INJUNCTION
19                                            AND DECLARATORY RELIEF
    FEDERAL TRADE COMMISSION, et al.
20                                            Date:  October 2, 2007
            Defendants.                       Time:  2:00 p.m.
21                                            Ctrm:  3020

22        The Federal Trade Commission ("Commission") supplements its opposition to

23  Integretel's Emergency Motion for Temporary Restraining Order as follows[1]:

24  _____

25        [1] The Commission intends that neither this Supplemental Opposition nor any later
    appearance, pleading, claim, or suit shall waive: (1) the FTC's right to have final orders in
26  noncore matters entered only after *de novo* review by a District Court Judge; (2) the FTC's right
    to have the District Court withdraw the reference in any matter subject to mandatory or
27

28                                    -1-

**PRELIMINARY STATEMENT**

In our opening brief, we showed that the Commission's prosecution of its Enforcement Action against Integretel is excepted from the automatic stay pursuant to the governmental regulatory exception, 11 U.S.C. § 362(b)(4). Florida District Court Judge Ryskamp has so held in the Enforcement Action. And Integretel does not argue otherwise in this proceeding. We further showed that enjoining the Enforcement Action pursuant to section 105 of the Bankruptcy Code, 11 U.S.C. § 105, would be improper as a matter of law, and that, in any event, Integretel has made no evidentiary showing – nor can it – of the extraordinary circumstances upon which such an injunction could be based.

At the September 26, 2007 hearing on Integretel's Cash Collateral Motion and TRO Motion, this Court specifically indicated to Integretel's counsel that Integretel had not submitted sufficient evidence regarding projected litigation expenses during the 2-3 week period that a TRO, if granted, would likely be in effect.[2] The Court gave Integretel an opportunity to supplement the record on that point, and continued the TRO hearing until October 2, 2007. Instead, Integretel submitted a terse and conclusory supplemental memorandum and declaration, devoid of any such evidence. For that reason alone, the Court should deny the TRO.

---

discretionary withdrawal; or (3) any other rights, claims, actions, defenses, setoffs, recoupments, or remedies to which the FTC is or may be entitled, in law or equity, all of which rights, claims, actions, defenses, setoffs, recoupments and remedies the FTC expressly reserves.

[2] At the September 26 hearing, Integretel and the Federal Receiver in the District Court Action announced on the record an agreement, suggested by the Court, whereby those parties agreed to temporarily resolve the Federal Receiver's objections to the Cash Collateral Motion by, *inter alia* (i) requiring Integretel to set aside approximately $1.7 million in a separate blocked account, and (ii) requiring those parties to jointly move before the Florida District Court in the Enforcement Action for a three week stay of the Contempt Proceeding in that action. Counsel for the FTC noted on the record that the Commission did not agree to those terms, but would not object to them. Accordingly, the FTC understands that the continued hearing on the TRO on October 2, 2007, will be limited to Integretel's request to enjoin the FTC's continued prosecution of the Enforcement Action against Integretel.

-2-

1    Moreover, with this Supplemental Opposition, the Commission submits a Declaration of

2    FTC Counsel Laura Kim establishing beyond doubt that Integretel cannot make such a showing.

3    All discovery in the Enforcement Action is set to close at the end of this week, Friday, October 5,

4    2007.    All written and deposition discovery of and by Integretel has already been completed.

5    The remaining depositions were either noticed by others of the 17 defendants in the Enforcement

6    Action or the FTC. *See* Kim Dec. ¶¶ 14-18.  Also, although summary judgment motions are due

7    November 6, 2007, Integretel admits that it does not intend to seek summary judgment.  Thus,

8    even if it is within the Court's discretion to enjoin, even temporarily, the Commission's

9    Enforcement Action pursuant to section 105, for these reasons and other reasons set forth below,

10   Integretel has not and cannot make the case that it meets the stringent standard for such

11   extraordinary injunctive relief.

## ARGUMENT

### I.   Under Controlling Case Law, Enjoining the FTC's Enforcement Action Is Improper.

As we showed in our opening brief, courts have held that bankruptcy courts may be
authorized to enjoin federal agency action, but only in the rarest circumstances.  The Supreme
Court in *Board of Governors of the Fed. Reserve Sys. of the United States v. MCorp Fin., Inc.*,
502 U.S. 32 (1991), however, has cast considerable doubt on whether the police and regulatory
powers exemption can *ever* be circumvented by a § 105 injunction.  *Id.* at 40 (holding that halting
administrative agency proceedings on grounds that they may potentially "affect the Bankruptcy
Court's control over the property of the estate . . . would . . . render subsection (b)(4)'s [police
and regulatory powers] exception almost meaningless").

Although issuance of an injunction under § 105 is in the first instance committed to the
bankruptcy court's discretion, given the important public policy goals at stake where the
regulatory and police powers exception to the automatic stay applies, the Court should be highly
circumspect in exercising that discretion.  *See id.* at 40 (police and regulatory powers exemption

-3-

reflects "the broad discretion Congress has expressly granted many administrative agencies and . . . the limited authority Congress has vested in bankruptcy courts"); *Midlantic Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 502 (1986) ("Congress has repeatedly expressed its legislative determination that the trustee is not to have carte blanche to ignore nonbankruptcy law"); *Nathanson v. NLRB*, 344 U.S. 25, 30 (1952) ("where the matter in controversy has been entrusted by Congress to an administrative agency, the bankruptcy court should normally stay its hand . . . ."). *See also In re First Alliance Mortgage Co. ("FAMCO")*, 264 B.R. 634, 647-51 (C.D. Cal. 2001) (reversing the bankruptcy court and holding that FTC's action to enforce consumer protection laws falls within the § 362(b)(4) exemption from the stay and should not be enjoined under § 105); *In re Tucson Yellow Cab Co.*, 27 B.R. 621, 622 (B.A.P. 9th Cir. 1982) (vacating § 105 injunction on grounds that "the issuance of back pay orders and other monetary awards is an inseparable part of the exclusive authority given the NLRB to 'prevent any person from engaging in any unfair labor practice . . . affecting commerce'"); *In re Compton Corp.*, 90 B.R. 798, 806-07 (N.D. Tex. 1988) (holding that a § 105 injunction of a DOE action was an abuse of discretion and suggesting that § 105 did not give the bankruptcy court power to enjoin a regulatory or police powers action).

II.     **Integretel Has Failed to Show Any Extraordinary Circumstances Upon Which an Injunction Against the FTC's Action Could Be Based.**

Integretel argues that the Debtor would suffer "significant" harm in the form of litigation expenses, which would constitute a "threat" to the bankruptcy estate, if the FTC's Enforcement Action is not stayed. In reversing a bankruptcy court and rejecting that very same argument under analogous circumstances in *FAMCO*, District Court Judge Carter of the Central District of California noted that the general standard for enjoining a regulatory action under § 105 is closely tied to the irreparable injury prong of the test for injunctive relief. 264 B.R. at 653. In general, the court held, litigation costs do not constitute irreparable injury. 264 B.R. at 656

-4-

1  (citing EEOC v. Rath Packing Co., 787 F.2d 318, 325 (8th Cir. 1985).[3]  If they did, then

2  virtually any contested regulatory action proceeding in a non-bankruptcy forum would constitute

3  a "threat" to the estate, and the regulatory and police powers exception would be rendered a

4  nullity. See 264 B.R. at 654. Law enforcement would come to a grinding halt in any instance

5  where a defendant in a regulatory action filed for bankruptcy.

6       The relevant comparison, the FAMCO court held, is not between the debtor's costs of

7  defending itself against the government's enforcement action in the non-bankruptcy forum or

8  not defending them at all, but rather between defending itself in the non-bankruptcy forum, and

9  defending itself in the bankruptcy proceeding. After all, unless the non-bankruptcy litigation is

10  concluded, to establish a bankruptcy claim against the debtor, many of the same facts have to be

11  established in the bankruptcy court. 264 B.R. at 656.

12       Applying that standard here, enjoining the FTC's Enforcement Action against Integretel,

13  a proceeding with 17 defendants in which discovery of and by all parties, including Integretel,

14  has virtually been completed, would likely increase, rather than decrease, the litigation costs to

15  the estate. For example, it could require the parties to redo discovery that has already been

16  completed in the Enforcement Action. In the long run, under the injunction proposed by

17  Integretel, where the non-bankruptcy litigation would resume after Integretel emerges from

18  bankruptcy, Integretel would again face the costs of litigating the Enforcement Action to its

19  conclusion.

---

[3] See also Davis v. Sheldon (In re Davis), 691 F.2d 176, 178 (3d Cir. 1982) (the cost, anxiety, and inconvenience of defending oneself do not constitute irreparable injury); In re Allegheny Health, Educ. and Research Found., 252 B.R. 309, 331 (W.D. Pa. 1999) (inconvenience of having to appear in two forums cannot form basis for finding of substantial harm); In re Todd Shipyards Corp., 92 B.R. 600, 603 (Bankr. D.N.J. 1988) (litigation expenses do not constitute an injury sufficient to justify enjoining litigation against a debtor); Nicholas, Inc. v. NLRB, 55 B.R. 212, 218 (D.N.J. 1985) (litigation expenses do not constitute "threat" to the estate, absent detailed showing by debtor).

-5-

1    As the court further held in *FAMCO*, in determining whether such extraordinary

2  injunctive relief is warranted, the Court must also consider the harm to the Commission of not

3  being able to proceed with its action in its chosen forum, here, the Florida District Court. 264

4  B.R. at 659. Through its Enforcement Action, the Commission seeks *only* equitable relief

5  against the defendants in that action, including Integretel. Beyond monetary injunctive relief in

6  the form of disgorgement of ill-gotten gains and restitution to consumer victims, the FTC seeks

7  a permanent injunction halting Integretel's allegedly unlawful practices, rescission of contracts,

8  and a claims procedure whereby restitution can be made to thousands of consumer victims who

9  paid for unauthorized charges on their phone bills, many of whom are not likely aware of or

10  likely to file claims in this bankruptcy proceeding. This Bankruptcy Court would not be able to

11  grant all such equitable relief.

12    Being enjoined from proceeding in its chosen forum, the Florida District Court, would

13  also harm the FTC in other critical ways. The court in *FAMCO* observed:

> [T]he hardship to the governmental units of not being allowed to proceed with
> their actions in their chosen forums includes harms different in character from
> the harms normally considered on motions for injunctions under § 105. Being
> able to have a claim determined by the bankruptcy court is qualitatively different
> from proceeding with a lawsuit in home forums. As Congress recognized when it
> created the regulatory and police powers exception, the goals of public policy,
> punishment, and deterrence may sometimes conflict with the goals of
> maximizing an individual estate's assets and efficiently processing claims. It is
> the former goals, which are difficult if not impossible to measure in dollars and
> cents, that are impaired when a governmental unit loses the ability to enforce its
> laws in its own forum.
>
> Considering deterrence in particular, the harm to the governmental units must be
> measured with a broader perspective in mind than these parties alone. The
> bankruptcy court and First Alliance are undoubtedly correct that there will be
> more money to distribute to borrowers in this case if the separate actions are not
> allowed to proceed. However, the governmental units are entitled to make the
> choice that, over time, similarly situated borrowers and consumers benefit more
> when companies do not violate the law in part because they know that
> bankruptcy will not provide a way out when their wrongs are discovered. In any
> given case, reasonable minds could disagree about the marginal costs and the
> marginal benefits of different approaches and which will maximize the wealth
> and happiness of the greatest number of people. **The point is that it is the
> governmental units charged with enforcing consumer protection laws,**

-6-

**governmental units that are responsive to the political will of the people, that should be the ones to make the choice, not the bankruptcy court.**

264 B.R. at 659 (emphasis added).

The Commission's need for permanent injunctive relief from the Florida District Court barring Integretel's allegedly unlawful business practices and other equitable relief, and the important public policy goals at stake, are particularly acute here. As set forth in the Declaration of FTC Counsel Laura Kim, pursuing phone billing aggregators such as Integretel is a vital enforcement strategy that the Commission has pursued to curb the insidious and unlawful practice of "cramming" unauthorized charges on consumers' phone bills. Kim Dec. ¶ 22. Aggregators, after all, are the ones who provide unscrupulous, alleged service providers with the access and ability to abuse the telephone billing system. Since 1998, the FTC has filed numerous actions against telephone billing aggregators and obtained appropriate injunctive and monetary equitable relief. *Id.*

More to the point, this is not the first time that the FTC has sued Integretel. In 2000, the FTC sued Integretel for its role in billing and collecting charges in an international internet pornography case. Kim Dec. ¶ 19. That litigation was settled as to Integretel in 2002 pursuant to a stipulated final order and permanent injunction. Despite that court order, in 2006, the Commission had to file suit against Integretel yet again in the subject Enforcement Action, for allegedly unlawful telephone billing and collection practices. Integretel also acted as the telephone billing aggregator for the defendants in at least three cramming cases that the FTC brought between 2000-2002. Kim Dec. ¶ 20. A number of state law enforcement authorities have also commenced regulatory proceedings in the past against Integretel. Kim Dec. ¶ 21.

Moreover, although the Enforcement Action at issue here concerns unauthorized charges billed by the Nationwide Connections defendants and Integretel from mid-2003 onwards, the FTC has obtained strong evidence indicating that Integretel billed unauthorized charges for a

-7-

1    daisy chain of predecessor entities controlled by the Nationwide defendants and their principals,

2    dating back to at least 2001. Kim Dec. ¶¶ 23-27.

3        Integretel has failed to address the harm that would result to the FTC if it were enjoined

4    from pursuing its consumer protection action against Integretel in the Florida District Court. In

5    fact, the FTC has shown irreparable injury on the grounds that the Bankruptcy Court lacks

6    jurisdiction to afford it complete relief. Integretel, however — who bears the burden of showing

7    irreparable injury — has provided no evidence of cognizable injury at all. The expenditure of

8    attorney's fees and the inconvenience of litigation do not constitute irreparable injury for

9    purposes of Section 105. Integretel's "evidence" on this issue is sorely lacking, as this Court

10    has observed. A look at the record evidence produced by Integretel reveals only a conclusory

11    declaration of counsel with unsubstantiated estimates. In fact, as we have shown, enjoining the

12    Enforcement Action would mean having to litigate the FTC's claims for relief, again, in the

13    Bankruptcy Court, which would substantially increase, not decrease, the litigation costs to the

14    estate.

15        Thus, Integretel's alleged "threat" to the estate from litigation costs is unavailing. In any

16    case, it provides no support for halting the FTC's Enforcement Action.

17    **III.   Request for Further Relief**

18        If this Court is inclined to grant any injunctive relief premised on Integretel's TRO

19    Motion, the Commission respectfully requests that the Court grant such relief in the form of a

20    Preliminary Injunction, rather than a Temporary Restraining Order, so that the Commission may

21    pursue an immediate appeal.

22

23

24

25

26

27

28                                    -8-

1

**CONCLUSION**

2    For these reasons, the FTC respectfully requests that this Court deny Integretel's Motion

3    for a Temporary Restraining Order.

4

5

6    Dated: October 1, 2007                         Respectfully submitted,

7
                                                    WILLIAM BLUMENTHAL
8                                                   General Counsel

9
                                                    /s/ Michael P. Mora
10
                                                    _____
11                                                  MICHAEL P. MORA
                                                    Federal Trade Commission
12                                                  600 Pennsylvania Ave. NW, Room NJ-2121
                                                    Washington, DC  20580
13                                                  Telephone:  (202) 326-3373
                                                    Facsimile:   (202) 326-2558
14                                                  Email: mmora@ftc.gov

15                                                  ATTORNEY FOR FEDERAL TRADE
                                                    COMMISSION
16

17

18

19

20

21

22

23

24

25

26

27

28                                  -9-

**RER - 23**

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE ARTHUR S. WEISSBRODT, JUDGE

In Re:                              ) Case No. 07-52890-ASW
                                    ) Chapter 11
                                    )
THE BILLING RESOURCE, dba           ) MOTION for USE of CASH
Integretal, a California            ) COLLATERAL; MOTION to
corporation,                        ) APPROVE RESPONSIBLE PARTY;
                                    ) MOTION re CASH MANAGEMENT
                    Debtor.         )
                                    ) Friday, September 21, 2007
_____ ) San Jose, California


Appearances:

For the Debtor          Michael H. Ahrens, Esq.
and Movant:             Jeffrey K. Rehfeld, Esq.
                        Sheppard Mullin Richter & Hampton
                        Four Embarcadero Center, 17th Floor
                        San Francisco, California  94111

                        Kenneth Dawson, President
                        The Billing Resource

For the Federal         Walter K. Oetzell, Esq.
Trustee:                Danning, Gill, Diamond & Kollitz, LLP
                        2029 Century Park East, Third Floor
                        Los Angeles, California  90067-2904

For Creditors Email     Austin P. Nagel, Esq.
Discount Network and    Law Offices of Austin P. Nagel
Intelicom Messaging:    111 Deerwood Road, Suite 388
                        San Ramon, California  94583

For Creditor Thermo     Dolores Cordell, Esq.
Credit LLC:             Clark & Trevithick, PLC
                        456 Montgomery Street, 20th Floor
                        San Francisco, California  94104

From the U.S. Trustee:  Shannon Mounger-Lum, Attorney
                        United States Trustee, Region 17
                        United States Department of Justice
                        280 South First Street, Room 268
                        San Jose, California  95113

Appearances continued on next page.

2

<u>Appearances continued</u>:

| | |
|---|---|
| For Creditors/Customers American Premium Warehouse; D.D.D. Calling, Inc.; Horizon Telecom, Inc.; Norstar Marketing; RRB Enterprises; and Total Project, LLC: | Michaeline Correa, Esq. HellerEhrman LLP 333 Bush Street San Francisco, California  94104 |
| For PaymentOne Corporation: | Steven H. Warren, Esq. Victoria A. Newmark, Esq. O'Melveny & Myers LLP 400 South Hope Street Los Angeles, California  90071-2899 |
| | Evan Meyer, CFO PaymentOne Corporation |
| For POL, Inc.: | Kathryn S. Diemer, Esq. Diemer Whitman & Cardosi, LLP 75 East Santa Clara Street, Suite 290 San Jose, California  95113-1806 |
| From Agora Solutions: | John R. Morrison The Guys, A Holding Company 1034 Harmon Place, Suite 206 Minneapolis, Minnesota  55403 |

<u>Telephonic Appearances</u>:

| | |
|---|---|
| From the Federal Trade Commission: | Michael Mora, Attorney 600 Pennsylvania Avenue, N.W. Washington, D.C.  20580 |
| Also present: | Jeff Garfinkle, Esq. Craig Chiang, Esq. Buchalter Nemer Fields & Younger 333 Market Street, Twenty-Fifth Floor San Francisco, California  94105-2130 |
| For Interested Party Personal Voice: | Thomas C. Little, Esq. Law Offices of Thomas C. Little |
| From Interested Party RRB Enterprises: | Bruce Robin, CEO RRB Enterprises |

Appearances continued on next page.

3

<u>Telephonic Appearances continued</u>:

| | |
|---|---|
| For Creditor Thermo Credit LLC: | Leslie R. Horowitz, Esq.<br>Clark & Trevithick<br>800 Wilshire Boulevard, 12th Floor<br>Los Angeles, California  90017 |
| | W. Timothy Miller, Esq.<br>Taft Stettinius & Hollister<br>425 Walnut Street, Suite 1800<br>Cincinnati, Ohio  45202 |
| For BSG Clearing Solution: | James Pardo, Jr., Esq.<br>Sarah Taub, Esq.<br>King & Spalding<br>1180 Peachtree Street, N.E.<br>Atlanta, Georgia  30309 |
| For Creditor Network Telephone Services: | Daniel Hagan Coleman, Esq.<br>Law Offices of Daniel Hagan Coleman<br>6233 Variel Avenue<br>Woodland Hills, California  91367-2544 |
| For Creditor Public Communications Services, Inc.: | Leslie A. Cohen, Esq.<br>Enid M. Colson, Esq.<br>Liner, Yankelevitz, Sunshine & Regenstreif, LLP<br>1100 Glendon Avenue, 14th Floor<br>Los Angeles, California  90024-3503 |
| Digital Court Recorder: | United States Bankruptcy Court<br>Clerk of the Court<br>Lupe Barron<br>280 South First Street, Room 3035<br>San Jose, California  95113<br>(408) 535-5003 |
| Certified Electronic Transcriber: | Palmer Reporting Services<br>P. O. Box 30727<br>Stockton, California  95213-0727 |

           Proceedings recorded by digital recording;
 transcript produced by federally-approved transcription service.

4

<u>I N D E X</u>

Witnesses:

             Direct    Cross    Redirect    Recross

None.


Exhibits:                    Received in Evidence

Debtor's 1 and 2:             page 53


The Court's Ruling on emergency motion
  for authority to continue using the
  existing cash management system
  and bank accounts:             page 45

PALMER REPORTING  SERVICES
P. O. Box 30727   Stockton, California   95213-0727   (800) 665-6251

*Motions Hearing*                                              5

1  <u>Friday, September 21, 2007</u>                    <u>1:51 o'clock p.m.</u>

2                    P R O C E E D I N G S

3         THE CLERK:  Please rise.  This is the United States

4  Bankruptcy Court for the Northern District of California.  Court

5  is now in session.

6         THE COURT:  Good afternoon, ladies and gentlemen.

7  Please be seated.

8         As many of you know, papers are still flying into the

9  courthouse.  I'll call to case, and then we'll figure out where

10  we are and what to do about it.

11         This is The Billing Resource.  May I have appearances

12  of counsel.

13         MR. AHRENS:  Good afternoon, Your Honor.  Michael

14  Ahrens and Jeff Rehfeld of Sheppard Mullin for the debtor.  Also

15  present in court is Mr. Ken Dawson, president of the debtor.

16         THE COURT:  Very good.  Thank you.  Welcome.

17         MR. OETZELL:  Good — good afternoon, Your Honor.

18  Walter Oetzell of Danning, Gill, Diamond and Kollitz on behalf

19  of the Federal Receiver.

20         THE COURT:  Good afternoon, Mr. Oetzell.

21         MR. NAGEL:  Good afternoon, Your Honor.  Austin Nagel

22  for Intelicom Messaging and Email Discount Network, one of the

23  creditors in the case.

24         THE COURT:  Good morning, Mr. Nagel — or good

25  afternoon.  You threw me.

*Motions Hearing*                                     6

1        MS. CORDELL:  Good afternoon, Your Honor.  Dolores

2   Cordell of Clark and Trevithick appearing on behalf of Thermo

3   Credit.  Also on the telephone are Mr. Timothy Miller of the

4   Taft law firm and Leslie Horowitz of Clark and Trevithick.

5        THE COURT:  Thank you.

6        MS. CORREA:  Your Honor, Michaeline Correa of

7   HellerEhrman on behalf of various creditors.

8        THE COURT:  Say your name again.

9        MS. CORREA:  Michaeline Correa.

10       THE COURT:  Thank you.

11       MR. WARREN:  Good afternoon, Your Honor.  Stephen

12   Warren of O'Melveny and Myers on behalf of PaymentOne

13   Corportion.  I'm also here today with Victoria Newmark, also of

14   our firm, as well as Mr. Evan Meyer, the CFO of PaymentOne.

15       THE COURT:  Thank you.

16       MR. [SPEAKER] (on the telephone):  Good afternoon.

17       THE COURT:  Wait a second.  Counsel on the phone, I'm

18   going to take all tele- — all appearances in court and then I'll

19   move to the telephones.

20       MS. DIEMER:  Good afternoon, Your Honor.  Kathryn

21   Diemer, Diemer, Whitman and Cardosi on behalf of Secured

22   Creditor POL.

23       THE COURT:  Good afternoon.

24       MS. MOUNGER-LUM:  Good afternoon, Your Honor.  Shannon

25   Mounger-Lum for the U.S. Trustee.

1      THE COURT:  Good afternoon.

2      MR. MORRISON:  Good afternoon, Your Honor.  John

3  Morrison with Agora Solutions.  I had — did not have time to get

4  a lawyer, but —

5      THE COURT:  That's fine.  Welcome.

6      Michael Mora, may I have your appearance?

7      MR. MORA:  Good afternoon, Your Honor.  Michael Mora

8  for the Federal Trade Commission.

9      THE COURT:  Jeff Garfinkle.  Timothy —

10      MR. GARFINKLE:  Your Honor, I am not making — this is

11  Mr. Garfinkle.  I am not making an appearance.

12      THE COURT:  Well, you're on the phone.  You might as

13  well.

14      MR. GARFINKLE:  Jeff Garfinkle, Your Honor.

15      THE COURT:  Thank you.

16      Timothy Miller.

17      MR. MILLER:  Good afternoon, Your Honor.  Timothy

18  Miller, Taft Stettinius and Hollister, Cincinnati, Ohio, on

19  behalf of Thermo Credit LLC.

20      THE COURT:  Sarah Taub.  Sarah Taub.

21      MS. TAUB:  Good afternoon.  How are you?

22      THE COURT:  I'm fine.  May I have your appearance?

23      MS. TAUB:  Yes.  I'm from King and Spalding

24  representing BSG Clearing Solution.

25      THE COURT:  Thank you.

1          James Pardo.

2          MR. PARDO:  Good afternoon, Your Honor.  I'm also with

3   King and Spalding and representing BSG Clearing Solution with

4   Ms. Taub.

5          THE COURT:  Thomas Little.

6          MR. LITTLE:  Yes, Your Honor.  Thomas Little

7   representing Personal Voice, Inc.

8          THE COURT:  Leslie Cohen.

9          MS. COHEN:  Thank you, Your Honor.  Good afternoon.

10  Leslie Cohen and also on the line is my colleague Enid Colson,

11  C-o-l-s-o-n.  We're with the firm of Liner, Yankelevitz here in

12  Los Angeles and we're representing Public Communication

13  Services, Inc.

14         THE COURT:  Daniel Coleman.

15         MR. COLEMAN:  Good afternoon, Your Honor.  Daniel

16  Coleman representing Network Telephone Services, Inc.

17         THE COURT:  Craig Chiang.

18         MR. CHIANG:  Good afternoon, Your Honor.  Craig

19  Chiang, Buchalter Nemer.

20         THE COURT:  Representing?

21         MR. CHIANG:  We're not making an appearance, Your

22  Honor.

23         THE COURT:  I see.

24         Leslie Horowitz.

25         MR. HOROWITZ:  Leslie Horowitz of Clark and Trevithick

1    representing Thermo Credit.  Good afternoon, Your Honor.

2              THE COURT:  Good afternoon.

3              Is there anybody else on the phone whose name I have

4    not called?  Okay.

5              MR. ROBIN:  Yes, Your Honor.  Bruce Robin, not making

6    an appearance.  I'm CEO of RRB Enterprises.

7              THE COURT:  Thank you, sir.

8              Okay.  Mr. Ahrens.

9              MR. AHRENS:  Yes, Your Honor.  Michael Ahrens for the

10   debtor.

11             Your Honor, we have three motions on for hearing today

12   and the motions are both a motion for use of cash collateral, a

13   motion to approve our appointment of the responsible party, and

14   also a motion with respect to cash management.

15             I was set to make an opening argument on behalf of all

16   of those and I'm still going — set to do that, Your Honor.  But

17   I realize from — receiving from the Court that a federal

18   district judge in Florida has just entered an order that I've

19   seen.  And the last thing I want to do as a professional and a

20   fiduciary is to violate the terms either in an argument or in a

21   motion of a federal court order.

22             And I would like to take time to look at it and read

23   it.  And I'm going to make a suggestion as to the way we

24   proceed.

25             THE COURT:  Very good.

1          MR. AHRENS:  Your Honor, —

2          THE COURT:  By the way, just so everybody understands,

3   the Court has received an order from the District Court in

4   Florida signed by Judge Kenneth Ryskamp.  And I haven't studied

5   it.  I've perused it.  And essentially it says that the

6   automatic stay does not apply to certain proceedings based on

7   the 362(b)(4) government regulatory exception to the stay.  It

8   may say other things as well, but that's the import of it.

9          And the final provision is ordered and adjudged that

10  the motion is granted.  The commencement of Integretal's

11  bankruptcy case does not stay either the pending contempt

12  proceeding against Integretal, including the turnover order or

13  the FTC's prosecution of this consumer-protection action against

14  Integretal, the September 20, 2007 order staying proceedings

15  against Integretal is vacated.  And it was signed in West Palm

16  Beach today.

17          Go ahead.

18          MR. AHRENS:  Your Honor, what I would like to do, with

19  the indulgence of the Court, is go over a brief history of who

20  the debtor is, why it had to file this bankruptcy case, and make

21  a suggestion at the end of my presentation with respect to the

22  way we handle the motions before the Court today.

23          THE COURT:  Very good.

24          MR. AHRENS:  Because the last thing that I want to do

25  is have there be a confusion between the jurisdictions of an

1    enforcement action brought by the FTC and the bankruptcy action

2    that we filed on Sunday.

3              THE COURT:  I don't know that you can obviate that,

4    but it'll be interesting to see.

5              MR. AHRENS:  Well, I have just a suggestion as to ways

6    we might handle it, because there's a lot of creditors on the

7    phone call.  And the way — I won't hold anybody in suspense.

8    The suggestion I'm going to make to this Court is that we

9    absolutely have to have use of cash collateral by next

10   Wednesday.  And I'm going to suggest, after making my

11   presentation to the Court, that we adjourn the hearing on the

12   use of cash collateral till next Wednesday.  I don't think

13   there's any objection to the appointment of the designa- — the

14   responsibility party or to the cash management.  I'm going to

15   seek that approval today.  But I'm going to seek an adjournment

16   and also explain to the Court in my presentation the new

17   stipulation that we've worked out with PaymentOne, because

18   everything went so fast over the weekend that we've got a more

19   detailed stipulation with a better budget.

20             THE COURT:  Somehow in all of it you'll explain to me

21   what you think may happen between now and Wednesday that's going

22   to change things, but — I would appreciate that.

23             MR. AHRENS:  Yes, Your Honor.

24             Your Honor, the debtor was formed in 1988.  It's in

25   the business of aggregating accounts receivable.  As the papers

*Motions Hearing*                                                    12

1   have set forth, it purchases accounts receivable from various

2   telecom companies.  And then when it gets those receivables, it

3   in turn assigns them to the LECs, the local exchange carriers,

4   who then collect the receivables from the customers and

5   eventually the money goes down the line.  After taking the fees

6   out, the money goes back into the hands of the — our various

7   customers.

8              In the year 2000 a wholly-owned subsidiary was formed,

9   PaymentOne.  PaymentOne was formed to address the specialized

10  billing requests and requirements of the internet.  It's not

11  wholly owned — pardon me, Your Honor.  It's owned 97 percent.

12             With this in mind there are provisions in various of

13  these contracts that there are rights of the customer.  And

14  those rights are to even have certain reserves established, but

15  all customer contracts have those — have those provisions — or

16  virtually all of them.

17             About a year ago I became involved for Integretal,

18  because there was this lawsuit that you're aware about down in

19  Florida by the receiver and by the FTC against them.  And I

20  personally went back to Washington, D.C. on two occasions to

21  meet with the FTC.  And I told them that I've looked at all the

22  contracts and I truly believe that under these contracts all of

23  the customers have claims against Integretal.  But that's what

24  they are, they're claims.

25             As a matter of fact, the receiver represents two of

1    those 54 customers.  Those two are now out of business.

2    Those claims of those customers, Your Honor, are

3    claims to have a reserve set up.  The fact of the matter was

4    neither a year ago nor today have there been any reserve

5    accounts set up.  The only account that has been set up is one

6    account and that's the account of the debtor, who we're calling

7    Integretal.

8    THE COURT:  You're conceding that under the contracts

9    between the debtors and these various parties, the debtors — the

10    debtor is required to set up separate accounts?

11    MR. AHRENS:  Your Honor, it's confusing.  I've read

12    it.  But all I will say is there a reference to reserves.  There

13    is a reference to reserves that should be held.  I don't think

14    it says under the contract — I'm going to read it more — I

15    wasn't the litigation counsel in Florida.  My co-counsel is

16    counsel, in another law firm.  But I've read them and there

17    might be an argument that you have to set up separate reserves.

18    I think there's an argument that you don't have out

19    set up a separate reserve bank account, but to have to set up 54

20    different bank accounts, run money in and out of that, is

21    virtually impossible.  And the fact of the matter was that a

22    year ago when I was first employed by — by this debtor and

23    today, there's never been a separate reserve account set for

24    anybody.

25    THE COURT:  So to the extent anybody might argue a

*Motions Hearing*                                                  14

1    constructive trust or anything like that, all the funds are in

2    one lump sum?

3          MR. AHRENS:  That's correct.  They're all in one bank

4    account, Your Honor.

5          So, as I say in my declaration, I met with

6    representatives of the FTC in Washington, D.C. in November of

7    last year.  On the phone was counsel for the receiver.  And I

8    told them that if they won we would have to file bankruptcy.

9          I said I'm treating this last year as I'm a fiduciary

10   now, I'm not a fiduciary because there's no Chapter 11, but I'm

11   telling my client they're in zone of insolvency.  And when

12   you're in the zone of insolvency, I said, there are cases out of

13   Delaware and some even on the West Coast, but mainly out of

14   Delaware at that time, that imply that you have a fiduciary

15   obligation to all creditors, to not make a payment to one — to

16   two of those 54 creditors.

17         The FTC, as I say in my declaration, was represented

18   by bankruptcy counsel, inhouse bankruptcy counsel.  We engaged

19   in the discussion about that law and about how it is developing.

20         And I said I'm not hiding anything.  If you ever get a

21   judgment that we have to pay, I'm going to have to file

22   bankruptcy.

23         At the same time they took the position that the

24   enforcement action clearly would not be stayed.  I told them at

25   that time and I'm telling — I know today that there is a

1   substantial argument that an enforcement action under 362(b) is

2   simply — may not be subject to the automatic stay.  But it

3   depends on what you're doing in the case.  It depends on whether

4   you're seeking money, judgment, and there might be arguments

5   that even the action to seek a money judgment might not be

6   stayed.  But definitely I think the law is that when you ask for

7   a recovery on the money judgment that's when this Court, that's

8   when the bankruptcy court comes into play.

9          So we had those discussions back then in November.  I

10  met again in March.

11         THE COURT:  Tanya.

12         MR. AHRENS:  I met again in March with the FTC.  At

13  that time the receiver was not present.  They asked for a lot of

14  documents.  We gave them the liquidation analysis.  The

15  liquidation analysis made same:  We can't pay all creditors.

16         And so when we filed bankruptcy over the weekend, we

17  simply were carrying out what I told professionals, bankruptcy

18  counsel we would do.  This wasn't an attempt to affront a

19  federal district judge in Florida.  This wasn't an attempt to

20  say that you're wrong in saying that you should turn over the

21  money.

22         Now, Your Honor, I do realize that today the Court

23  entered an order that states, and I —

24         THE COURT:  The district court.

25         MR. AHRENS:  The district court entered an order that

1   states that the relief from stay is granted by that court,

2   including the entry of a money judgment against the same.  I do

3   concede that there is caselaw that gives a federal district

4   judge the power to enter — I think it's the *Moran* case — to

5   enter an order saying that the case will proceed.  But I do not

6   think that any district judge has the power to say that when

7   we're in bankruptcy we have to pay, because it's my position

8   that this is money — that I file this bankruptcy as a fiduciary

9   for all creditors, not just for one creditor, the receiver.

10          So while I think this judge might have the power to

11  enter an enforcement order, and even to enter a money judgment,

12  I don't think this court in Florida, that court in Florida does

13  have the power to order this money paid.  I think that's within

14  the jurisdiction of this Court.

15          Now, to be open with the Court, the FTC, I called them

16  on Monday morning, saying, "Let's talk."  Instead of getting a

17  return call, they filed papers in Florida seeking the order that

18  eventually was obtained.

19          And I've always been there to talk and I would like to

20  continue to talk to the FTC.  I know representatives are on the

21  phone.  I would like — and I did talk to counsel for the

22  receiver on Monday, almost hours after we filed the night

23  before.

24          And I want to clear up this fact that I am

25  representing a fiduciary, that I do represent all creditors,

1 that I want to preserve the ongoing business of this company for

2 the benefit of the 52 or 55 creditors of this estate.

3          So I would — one of the reasons for the continuance is

4 to continue — or to have that dialogue, because instead of

5 getting a return call from the FTC, my co-counsel got the

6 papers, and now we're here with the judgment.

7          So we have filed, we did file when we saw that the FTC

8 was — had filed their papers — or I think before they filed

9 their papers, we filed an adversary complaint in this case

10 seeking a stay.  And we were seeking a stay of the entire action

11 because we do feel in the adversary complaint, as we set forth,

12 we have not served it yet, we just got the summons yesterday, we

13 do believe that we need time — we need time to talk to

14 creditors, to get a committee formed.  And so we are seeking in

15 the adversary complaint that this Court say that the entire

16 action was stayed.

17          Until ten minutes we thought the district judge agreed

18 with us, because he had filed an order staying the case, and we

19 couldn't tell whether it was before or after the papers filed by

20 the FTC.  So —

21          THE COURT:  Did — were you part of an argument that

22 occurred prior to issuance by the district court of today's

23 order?

24          MR. AHRENS:  Your Honor, I saw some papers that were

25 filed.  I wanted to argue.  I wanted to tell the district court

1  just opened it up for you to think about whether you want me to

2  talk about it or whether you'd prefer for me to wait till

3  Wednesday.

4          MR. AHRENS:  Your Honor, I'm always ready to talk to

5  the Court today, to entertain the thoughts.  And maybe first I

6  will give you my thoughts and then we can discuss it.

7          My thought is that — and maybe — but if the Court

8  wants to read the papers more, that might be in order, because

9  I'm not going to make a presentation now as to why I think

10 they're just a general unsecured creditors.  And that is that

11 the only one that has — there's one account and they have a

12 general unsecured claim.  And the only one who has a claim of

13 money that's in the hands of the bank accounts is either

14 somebody who has a UCC1, and there's five entities who have

15 claims.  And we went over why we think we have disputes to many

16 of those.  And that's it, Your Honor.  They don't have a claim

17 in the cash of the estate, just like any of the other 54

18 creditors.

19         THE COURT:  But it's much simpler than that.  That's —

20 you're taking the hard road.  It seems to me until there's a

21 judgment that's not appealable that says that they're entitled

22 to this money, that in the bankruptcy context that they should

23 be taking nothing out of the estate to which the estate claims

24 an interest.

25         MR. AHRENS:  Yes.

1   Mr. Rehfeld checked his email and saw that this order had been

2   entered, so —

3           THE COURT:  Okay.

4           MR. AHRENS:  — my suspicion is there has been no oral

5   argument that we, the debtor-in-possession as a fiduciary, has

6   not had an opportunity to even talk to the judge or to make our

7   arguments.  And that's one of the things that I would like to

8   explore, is either in this court or in that court making an

9   argument with respect to enforcing a money judgment, —

10          THE COURT:  Um-hum.

11          MR. AHRENS:  — which I really think is beyond the

12  jurisdiction of the district court.

13          THE COURT:  Especially if — in the bankruptcy context,

14  this is —

15          MR. AHRENS:  Exactly, Your Honor.  Especially in ba- —

16  because if that money has to be paid by our estate, then they

17  get a preference.  It is a clear preference in my mind.

18          THE COURT:  Well, it's a little complicated.  I don't

19  know if you want me to talk about it or, rather, just wait till

20  Wednesday.

21          MR. AHRENS:  Maybe we'll wait till Wednesday, but I

22  would be happy to talk about it now, Your Honor, because one

23  thing I want to say, the way I analyzed it and I — if the Court

24  wants to talk about it, we can talk about it today.

25          THE COURT:  I'm not pressing you to talk about.  I

1    about — what I've told this Court about the fiduciary duty of me

2    as counsel for debtor-in-possession.  I'm not aware there was

3    ever any oral argument, Your Honor.

4           And so I do appreciate —

5           THE COURT:  There were papers filed?  Did you get —

6           MR. AHRENS:  There were papers.  I got —

7           THE COURT:  Did you respond to the papers?

8           MR. AHRENS:  Not me, Your Honor, no, because I'm not

9    counsel of record.  But they were filed like two days ago.  And

10   then the papers were filed; either the next day or later in the

11   same day, the order came out staying the entire action.  That

12   was on Wednesday.

13          So the interpretation I had is the paper — I got the

14   papers in the morning on Wednesday.  And about three hours later

15   I got the order staying the entire action, but it was confusing

16   because the order staying the entire action did not refer to the

17   papers.  It referred only to the notice of bankruptcy that we

18   filed on Monday.  So I interpreted that the court probably had

19   not seen the papers of the FTC, but I didn't know.

20          THE COURT:  Um-hum.

21          MR. AHRENS:  And we had already as of that time, why,

22   or around that time filed the adversary complaint.  It's all

23   confusing.  Things have gone very fast, Your Honor.  But I don't

24   think there was an oral argument from the email I received.

25          I learned of this about 1:30 when I got in court and

1    THE COURT:  Now if there's a final judgment and it's

2  not appealable anymore, and then all you have is a proved-up

3  claim that would share pro rata with other — other claims of

4  equal priority in accordance with the Bankruptcy Code.  So under

5  no circumstances does money leave the estate unless it's been

6  determined that the estate has no interest in the property by

7  final judgment.

8        MR. AHRENS:  Well, we're in agreement with the Court.

9  So what I would suggest we do is I would like to tell —

10        THE COURT:  Final nonappealable judgment.

11        MR. AHRENS:  I — I agree with the Court.  That's the

12  simple approach and that's —

13        THE COURT:  That's the law.

14        MR. AHRENS:  — that's the law.

15        THE COURT:  I mean that's what the law is in the

16  context of bankruptcy.

17        MR. AHRENS:  It — it may —

18        THE COURT:  And it's very straightforward.  It's not —

19  it's not esoteric or complex or, you know, or arguable.  That

20  just is the law, as I understand it.

21        MR. AHRENS:  I agree, Your Honor.  And that's why I

22  say that as to this order that says that this — the property of

23  — the reserves have to be turned over.  When there are no

24  reserves, I have nothing to turn over.  Maybe at some stage if I

25  have to, I can personally address the judge in Florida, but I

1    can't turn it over without a court — court order from this

2    bankruptcy court because these are assets of the estate.

3            So let me move on, Your Honor.

4            THE COURT:   It's complicated to some limited extent by

5    the fact, as I understand the papers, that the district court

6    seemed not to say that the FTC ultimately, a hundred percent was

7    going to prevail, that these weren't going to be property or

8    moneys of the estate.   But, rather, the judge trusted the

9    receiver to hold the money and didn't trust the debtor to hold

10   the money prior to the bankruptcy.

11           And so what appears to me the motivating factor was

12   that the judge had more trust in the receiver to maintain the

13   status quo than he had in the debtor to maintain the status quo.

14   But now you have a different situation because you have a

15   bankruptcy case.   And there are sorts of mechanisms if you don't

16   trust the debtor, that you can move for a trustee, you can move

17   to convert.   You can do all sorts of things to protect the

18   estate.   You can do it on a short term basis if there's, you

19   know, evidence to that effect.   But we're in a different

20   ballgame than we were prior to the filing of the bankruptcy.

21           I frankly can understand the district court's wanting

22   to preserve what may be property that ultimately will belong to

23   these parties the FTC is trying to protect, but there's no

24   judgment to that effect that that's their property over any —

25   over the debtor's property, over any other creditor's property.

1    And so I think at this point we're in an entirely different

2    legal situation.

3              MR. AHRENS:  Thank you, Your Honor.

4         What I would like to go through now in form, because

5    we have a lot of parties on the phone, and my suggestion is I'm

6    going to give them further notice, is to go over the — our most

7    important customer is PaymentOne.  I realize that PaymentOne —

8    and they're represented by Mr. Warren of O'Melveny and Myers.

9    And I realize that they are a 97-percent-owned subsidiary.  But

10   I will assure this Court that for the last six days — or five

11   days since we filed, I have been in intensive negotiations with

12   Mr. Warren.

13        I have treated myself as a true fiduciary for the

14   debtor and reported to Mr. Dawson.  And O'Melveny has

15   represented PaymentOne and reported to Mr. Meyer.

16        And as we go forward I am going to make sure that the

17   debtor performs all of their fiduciary obligations.  And, in

18   addition to that, we may be hiring a financial consultant to

19   assist the debtor to make sure the cash is managed properly,

20   because I am aware of the Court's — this debtor will act — I

21   will make sure this debtor acts properly.

22        But going to the stipulation worked out over the

23   weekend, over the weekend we didn't have a lot of time.  We knew

24   there was a judgment and — or, pardon me, an order that was

25   entered.  And we didn't want one creditor to be preferred over

*Motions Hearing*                                      24

1   another.  So I worked out a stipulation with PaymentOne that is

2   attached to the papers that are for consideration on this motion

3   today.

4             I could only get 15 days out of PaymentOne, believe it

5   or not.  And — 15 days' use of cash collateral, because they

6   have the right to terminate on 15 days' notice.  And at that

7   time I argued that they had an imperfect collateral position.  I

8   truly believed they had an imperfect collateral position because

9   they failed to perfect or continued perfection of a certain

10  security interest.

11            And Mr. Dawson under my direction said, "Even though

12  it's a subsidiary, if that's your position, go forward and

13  object."  And I fully disclosed to the Court the position I had

14  in the papers that we filed.  Since that time I have talked to

15  counsel for PaymentOne and they have informed me of a legal

16  argument that I think is correct.  And that legal argument is

17  that they failed to perfect because they didn't file a UCC2

18  amendment on the name change.  And, therefore, all of their

19  collateral that they obtained prior to that time, I thought, was

20  not perfected, because they have a one-year —

21            THE COURT:  Um-hum.

22            MR. AHRENS:  — avoiding right since they're insider.

23            And he said after that time we advance $6.5 million.

24  And that $6.5 million is new value.  And under the New Value

25  Exception of 547, we have a good security interest.  And I agree

1   with that.  And I've looked at that and on behalf of the debtor

2   I do agree with that.  But I have a no cash collateral

3   stipulation which I would like to serve on all parties-in-

4   interest tonight and I will give to the Court today and I will

5   briefly explain it.  And I have a new budget, too.

6          And the bottom line is that under the new cash

7   collateral stipulation we will not agree that their lien is

8   perfected.  We will not take a dive.  Nobody will take a dive.

9   We'll reserve our arguments.  We know there's going to be a

10  committee in this case.  We will preserve the arguments for the

11  committee and for all other parties-in-interest.  But we will

12  allow use of cash collateral and adequate protection because if

13  we don't PaymentOne is out of business.  If PaymentOne is out of

14  business — it's not a parent, it's a subsidiary — our valuable

15  subsidiary is out of business.

16          And we have a payroll that PaymentOne has to make next

17  Thursday.  And there is also some other things they — and Mr.

18  Warren can address that further.  So I'm not trying to argue the

19  motion here today.  I'm simply informing the Court that I have a

20  new cash collateral stipulation.

21          THE COURT:  Does it give them a super-priority?

22          MR. AHRENS:  It does, Your Honor.  It gives — but

23  everybody gets a super-priority.  And if the Court doesn't want

24  to do that, —

25          THE COURT:  I don't see why you have to do that for 15

1    days.  I mean it's one thing to set it up for something to be

2    discussed at the final hearing, where everybody has a chance to

3    think about it.  I don't understand why you have to do that for

4    the limited period.  They may want it, but I don't see why you

5    should agree to it or whether — why I should agree to it.

6              MR. AHRENS:  Your Honor, I got a lot of things in this

7    stipulation.  And it really was adversarial negotiations with

8    Mr. Warren, but —

9              THE COURT:  That may well be, but I don't see why you

10   have to give anybody a super-priority and in the —

11             MR. AHRENS:  I tried not to.

12             THE COURT:  — in the first 15 or 20 days, while we're

13   trying to deal with this.

14             And as far as 15 versus 16 days, we're going to have

15   to talk about that.

16             MR. AHRENS:  Yes, Your Honor.

17             THE COURT:  But I — that's just my preliminary view,

18   that there's no reason necessarily to give anybody a super-

19   priority for this limited period.  It's better to have a

20   committee have a chance to look at it, to have everybody have a

21   chance to look at it.

22             MR. AHRENS:  Well, I would like to not give it,

23   obviously.

24             THE COURT:  Right.  And I'd like you not to give it.

25             MR. AHRENS:  Thank you, Your Honor.