Entered on Docket
October 11, 2007
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1  SHEPPARD, MULLIN, RICHTER &
   HAMPTON LLP
2    A Limited Liability Partnership
     Including Professional Corporations
3  MICHAEL H. AHRENS,
   Cal. Bar No. 44766
4  STEVEN B. SACKS,
   Cal. Bar No. 98875
5  ORI KATZ, Cal. Bar No. 209561
   Four Embarcadero Center, 17th Floor
6  San Francisco, California  94111-4106
   Telephone:    415-434-9100
7  Facsimile:    415-434-3947

8  Attorneys for The Billing Resource,
   dba Integretel
9

**IT IS SO ORDERED.**
**Signed October 10, 2007**

*Arthur S. Weissbrodt*
**Arthur S. Weissbrodt**
**U.S. Bankruptcy Judge**

10              UNITED STATES BANKRUPTCY COURT
                 NORTHERN DISTRICT OF CALIFORNIA
11                       [SAN JOSE DIVISION]

12  | In re | Case No. 07-52890 |
13  | THE BILLING RESOURCE, dba | Chapter 11 |
14  | INTEGRETEL, a California corporation, | |
15  | Debtor. | |
16  | | |

17  THE BILLING RESOURCE, dba
    INTEGRETEL, a California corporation,          Adv. Proc. No. 07-05156
18
                    Plaintiff,                    **ORDER DENYING TEMPORARY**
19                                                **RESTRAINING ORDER AND ORDER**
            v.                                    **TO SHOW CAUSE RE PRELIMINARY**
20                                                **INJUNCTION**
    FEDERAL TRADE COMMISSION, and
21  DAVID R. CHASE, not individually, but         Date:      October 2, 2007
    solely in his capacity as receiver for        Time:      2:00 p.m.
22  Nationwide Connections, Inc., Access One      Place:     United States Bankruptcy Court
    Communications, Inc., Network One Services,              280 South First Street
23  Inc., 411TXT, Inc., CELL-INFO-USA, INC.,                 San Jose, California
    Enhanced Billing Services, Inc., Toll Free    Judge:     Hon. Arthur S. Weissbrodt
24  Connect, Inc., Cripple Creek Holdings, LLC,   Courtroom: 3020
    Built to Last, LLC, Not Fade Away, LLC, He's
25  Gone, LLC, The Other One, LLC, Turn on
    Your Love Light, LLC, China Cat Sunflower,
26  LLC, Lazy River Road Holdings, LLC,

27                  Defendant.

28

W02-WEST:FJR\400327504.2          ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1  **TO THE DEFENDANTS:  FEDERAL TRADE COMMISSION, and DAVID R. CHASE,**
2  **not individually, but solely in his capacity as receiver for Nationwide Connections, Inc.,**
   **Access One Communications, Inc., Network One Services, Inc., 411TXT, Inc., CELL-INFO-**
3  **USA, INC., Enhanced Billing Services, Inc., Toll Free Connect, Inc., Cripple Creek**
   **Holdings, LLC, Built to Last, LLC, Not Fade Away, LLC, He's Gone, LLC, The Other One,**
4  **LLC, Turn on Your Love Light, LLC, China Cat Sunflower, LLC, Lazy River Road**
   **Holdings, LLC, HIS ATTORNEYS OF RECORD, AND THE UNITED STATES**
5  **TRUSTEE,**

6

7        This matter came on for hearing on October 2, 2007 at 2:00 p.m. (the "Hearing") on
8  Plaintiff's request for issuance of a temporary restraining order against the Federal Trade
9  Commission ("FTC"), and Plaintiff's request for issuance of an order to show cause re issuance of
10 a preliminary injunction against the FTC and David R. Chase, not individually, but solely in his
11 capacity as receiver (the "Receiver").  Based on the findings and conclusions entered on the record
12 at the Hearing, Plaintiff's request for a temporary restraining order is DENIED.

13      **FURTHER, AS ORDERED BY THE COURT AT THE HEARING, THE FTC AND**
14 **THE RECEIVER ARE HEREBY ORDERED TO SHOW CAUSE** at 2:00 p.m. on October
15 17, 2007, or as soon thereafter as counsel may be heard in the courtroom of the Honorable Arthur
16 S. Weissbrodt, located at 280 South First Street, San Jose, California, Courtroom 3020, why the
17 following actions should not be restrained and enjoined pending the entry of a plan confirmation
18 order in this bankruptcy case, or further order of this Court:

19      (1) the pursuit by you, your officers, agents, servants, employees and attorneys and those
20 in active concert or participation with you or them, of any claims against The Billing Resource,
21 dba Integretel (the "Plaintiff" or "Integretel"), the Plaintiff's property, and/or property of or from
22 the Plaintiff's bankruptcy estate in that certain action captioned <u>Federal Trade Commission v.</u>
23 <u>Nationwide Connections, Inc., et al.</u>, Case No. 06-80180-Civ-Ryskamp (the "Florida Action")
24 pending in the United States District Court for the Southern District of Florida (the "Florida
25 Court"); and

26      (2) the implementation or enforcement as to the Debtor of that certain Omnibus Order (the
27 "Omnibus Order"), entered on the docket by the Florida Court in the Florida Action on September
28 14, 2007, which Omnibus Order among other things requires the Debtor to pay or turn over certain

---

1  funds to a segregated account of the Receiver, including but not limited to the issuance of a

2  contempt order and/or the payment deadline established in the Florida Court's "Order

3  Conditionally Granting Integretel's Emergency Motion for Stay Pending Appeal."

4      **IT IS ALSO HEREBY ORDERED THAT** this "Order To Show Cause Re Preliminary

5  Injunction" (the "Order To Show Cause") shall be served upon the FTC and the Receiver by

6  personal service, email or facsimile within three days of issuance hereof. Plaintiff shall file and

7  serve all supporting pleadings and papers in connection with the hearing on the Order to Show

8  Cause on the FTC, the Receiver and the United States Trustee's representative by personal service,

9  email or facsimile by no later than October 12, 2007 at 12:00 p.m., and proof of service thereof

10  shall be filed no later than October 15, 2007. Any response or opposition to this Order To Show

11  Cause must be filed and served by personal service, email or facsimile on the Plaintiff's counsel

12  and the United States Trustee's representative no later than October 15, 2007 at 12:00 p.m., and

13  proof of service shall be filed no later than October 16, 2007.

14

15                              ** END OF ORDER **

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**COURT SERVICE LIST**

2   Office of the U.S. Trustee
Office of the U.S. Trustee

3   Attn: Edwina Dowell, Esq.
280 South First Street, Room 268

4   San Jose, CA 95113

5   The Billing Resource dba Integretel
The Billing Resource dba Integretel

6   Attn: Ken Dawson
5883 Rue Ferrari

7   San Jose, CA 95138

8   Proposed counsel for The Billing Resource dba Integretel
Sheppard, Mullin, Richter & Hampton LLP

9   Attn: Michael H. Ahrens, Esq.
4 Embarcadero Center, 17th Floor

10   San Francisco, CA 94111-4106

11   David R. Chase, Receiver
David R. Chase, Receiver for Access One Communications,

12         Inc. and Network One Services, Inc.
David R. Chase, P.A.

13   Wachovia Center-Penthouse
1909 Tyler Street

14   Hollywood, FL 33020

15   Counsel for the Receiver David R. Chase
Jeffrey C. Schneider, Esq.

16   Michelle T. Visiedo, Esq.
Tew Cardenas LLP

17   Four Seasons Tower – 15th Floor
1441 Brickell Avenue

18   Miami, FL 33131

19   Counsel for the Receiver David R. Chase
Walter Oetzell, Esq.

20   Danning, Gill, Diamond & Kollitz, LLP
2029 Century Park East, Third Floor

21   Los Angeles, CA 90067-2904

22   Counsel for the Federal Trade Commission
Laura M. Kim, Esq.

23   Michael J. Davis, Esq.
Collot Guerard, Esq.

24   Federal Trade Commission
600 Pennsylvania Avenue, NW, Room 286

25   Washington, DC 20580

26   Federal Trade Commission
Associate Director, Division of Marketing Practices

27   Federal Trade Commission, H-238
600 Pennsylvania Avenue, N.W.

28

-3-

W02-WEST:FJR\400327504.2          ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1  Washington, D.C.  20580

2  Notice for Federal Trade Commission
   United States Attorney
3  (For Federal Trade Commission)
   450 Golden Gate Avenue
4  San Francisco, CA  94102

5  Notice for Federal Trade Commission
   United States Attorney
6  (For Federal Trade Commission)
   150 Almaden Boulevard, Suite 900
7  San Jose, CA  95113

8  Notice for Federal Trade Commission
   United States Attorney
9  Civil Division
   Attn:  Civil Process Clerk
10 450 Golden Gate Avenue
   San Francisco, CA  94102-3400

11
   Notice for Federal Trade Commission
12 United States Attorney
   Civil Division
13 Attn:  Civil Process Clerk
   150 Almaden Boulevard, Suite 900
14 San Jose, CA  95113

15 Notice for Federal Trade Commission
   United States Department of Justice
16 Civil Trial Section, Western Region
   Box 683, Ben Franklin Station
17 Washington, DC  20044

18 Notice for Federal Trade Commission
   U.S. Department of Justice
19 Office of the Attorney General
   950 Pennsylvania Avenue, NW
20 Washington, DC  20530-0001

21

22

23

24

25

26

27

28

-4-

**RER - 26**

ELECTRONICALLY
FILED:
Date: 10|10|07
Docket No: 130

1  HOWARD KOLLITZ (State Bar No. 059611)
   WALTER K. OETZELL (State Bar No. 109769)
2  STEVEN J. SCHWARTZ (State Bar No. 200586)
   DANNING, GILL, DIAMOND & KOLLITZ, LLP
3  2029 Century Park East, Third Floor
   Los Angeles, California 90067-2904
4  Telephone:  (310) 277-0077
   Facsimile:  (310) 277-5735
5  Email:   woetzell@dgdk.com
             sschwartz@dgdk.com
6
   JEFFREY C. SCHNEIDER (pro hac vice)
7  TEW CARDENAS LLP
   Four Seasons Tower, Fifteenth Floor
8  1441 Brickell Avenue
   Miami, Florida 33131-3407
9  Telephone:  (305) 539-2481
   Facsimile:  (305) 536-1116
10 Email:     jcs@tewlaw.com

11 Attorneys for Creditor, David R. Chase, Federal Receiver of
   Access One Communications, Inc. and Network One
12 Services, Inc.

## UNITED STATES BANKRUPTCY COURT

13

## NORTHERN DISTRICT OF CALIFORNIA

14

### SAN JOSE DIVISION

15

| | |
|---|---|
| In re | ) Case No. 07-52890-ASW |
| | ) |
| THE BILLING RESOURCE, dba Integretel, a | ) [Chapter 11] |
| California corporation, | ) |
| | ) **FEDERAL RECEIVER'S SECOND** |
| | ) **SUPPLEMENTAL OPPOSITION TO** |
| [Taxpayer's Identification No. 33-0289863] | ) **MOTION FOR AUTHORITY TO USE** |
| | ) **CASH COLLATERAL;** |
| | ) **MEMORANDUM OF POINTS AND** |
| | ) **AUTHORITIES** |
| | ) |
| | ) |
| Debtor. | ) Date:    October 15, 2007 |
| | ) Time:    2:15 p.m. |
| | ) Ctrm:   3020 |
| | ) |
| | ) |
| | ) |
| | ) |

25

TO THE HONORABLE ARTHUR S. WEISSBRODT, UNITED STATES
26
BANKRUPTCY JUDGE:
27

28

-1-

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................................2

II.     PROCEDURAL HISTORY ...................................................................................4

III.    THE SUBJECT FUNDS ARE NOT PROPERTY OF THE BANKRUPTCY
        ESTATE ................................................................................................................4

IV.     THE DISTRICT COURT HAS JURISDICTION OVER THE SUBJECT
        FUNDS ..................................................................................................................5

V.      THE DISTRICT COURT'S JURISDICTION IS NOT SUBJECT TO
        COLLATERAL ATTACK...................................................................................7

VI.     RE-LITIGATION OF THE PARTIES' DISPUTES OVER THE SUBJECT FUNDS
        ARE BARRED BY RES JUDICATA..................................................................11

VII.    THE DEBTOR MISCONTRUES THE FEDERAL RECEIVER'S OWNERSHIP
        INTEREST AS A TRUST....................................................................................14

VIII.   EVEN IF CONSTRUED TO BE TRUST,  THE RECEIVER'S CLAIM WAS
        ESTABLISHED PRE-PETITION AND THE SUBJECT FUNDS ARE THEREFORE
        EXCLUDED FROM THE BANKRUPTCY ESTATE......................................15

IX.     IN ANY EVENT, THE DEBTOR DOES NOT NEED TO USE THE SUBJECT
        FUNDS  AS CASH COLLATERAL....................................................................16

X.      CONCLUSION....................................................................................................17

**TABLE OF AUTHORITIES**

Page(s)

Federal Cases

In re Hecker, 316 B.R. 375, 377 (Bankr. S.D. Fla. 2004). ............................................. 16

In re Advent Management Corp., 178 B.R. 480, 491 (9th Cir. BAP 1995) ..................................... 15

In re Dolen, 265 B.R. 471, 476 (Bankr.M.D.Fla.2001)..................................................... 6

Productive Marketing, Inc., 136 F. Supp. 2d at 1105 ....................................................... 8

State Cases

Airwork Corp v. Markair Express, Inc. (In re Markair, Inc.), 172 B.R. 638, 642 (9th
     Cir. BAP 1994) ....................................................................................... 16

Americana Fabrics, Inc. v. L & L Textiles, Inc. 754 F.2d 1524 (9th Cir. 1985)........................... 11

Brown v. Felsen, 442 U.S. at 131, 99 S.Ct. at 2209; see Los Angeles Branch
     NAACP v. Los Angeles Unified School Dist., 750 F.2d 731, 737 (9th
     Cir.1984). ............................................................................................ 11

Baldwin v. Iowa State Traveling Men's Ass'n, 51 S.Ct. 517, 517, 283 U.S. 522, 524,
     75 L.Ed. 1244 (1931).................................................................................. 11

Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317,
     319, 84 L.Ed. 329 (1940)............................................................................... 8

Cisneros v. Cost Control Marketing and Sales, 862 F.Supp. 1531W.D.Va.,1994
     (citing Smith v. McInver, 22 U.S. (9 Wheat) 532, 535, 6 L.Ed. 152 (1824)...................... 10

Citibank, N.A. v. Nyland, (CF8) Ltd., 839 F.2d 93 (2d Cir. 1987), ................................... 9

Cost Control............................................................................................... 7

Durfee v. Duke, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963)............................... 11

EEOC v. University of Pa., 850 F.2d 969, 972 (3d Cir.1988) [citing Kline v. Burke
     Constr. Co., 260 U.S. 226, 229, 43 S.Ct. 79, 81, 67 L.Ed. 226 (1922)] ............................ 10

Eller Industries, Inc. v. Indian Motorcycle Manufacturing, Inc. ("IMMI"), 929 F.
     Supp. 369 (D. Colo. 1995),........................................................................ 7,10

FTC  v. Productive Marketing, Inc., 136 F. Supp. 2d 1096, 1104 (C.D. Cal. 2001)................... 8,14

Klass v. Klass............................................................................................ 7

Montana v. United States, 440 U.S. 147, 153-54, 99 S.Ct. 970, 973-74, 59 L.Ed.2d
     210 (1979)............................................................................................ 11

Montana v. United States, 440 U.S. at 153, 99 S.Ct. at 973............................................. 11

-ii-

**TABLE OF AUTHORITIES (cont.)**

Page(s)

Reed v. Allen, 52 S.Ct. 532, 286 U.S. 191, 76 L.Ed. 1054 (1932)....................................... 12

SEC vs. Elfindepan, S.A., No. 1:00CV00742, 2002 WL 31165146, at *4 (M.D.N.C.
         2002) ............................................................................................................................ 8

SEC vs. Pinez, 989 F. Supp. 325, 337 (D. Mass. 1997) .................................................... 8

SEC vs. Universal Fin., 760 F.2d 1034, 1038 (9th Cir. 1985) .......................................... 8

SEC v. Wencke, 783 F.2d 829, 837-38 (9th Cir. 1986) .................................................... 13

SEC vs. Wencke, 622 F.2d 1363, 1371 (9th Cir. 1980) .................................................... 8

SEC v. Wolfson, 309 B.R. 612 (D. Utah 2004)................................................................. 6

Segal v. American Tel. & Tel. Co., 606 F.2d 842, 845 (9th Cir.1979) ........................... 11

Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938). ........................... 8,11

Title v. United States, 263 F.2d 28, 30 (9th Cir.1959). ................................................... 11

United States Dep't of Housing & Urban Dev't v. Cost Control Marketing & Sales
         Mgm't, 64 F.3d 920, 927 n. 11 (4th Cir.1995) (citing Brock v. Morysville
         Body Works, Inc. 829 F.2d 383 (3rd Cir.1987)) ....................................................... 6

United States Fire Ins. Co. v. Goodyear Tire & Rubber Co., 920 F.2d 487, 488 (8th
         Cir.1990); ................................................................................................................. 10

United States v. Delta Distributors Co., Inc., 1996 WL 460112 (June 21, 1996
         S.D.W.Va.) .................................................................................................................. 7

United States vs. Hall, 472 F.2d 261, 267-68 (5th Cir. 1972) ......................................... 8

Yanow v. Weyerhauser Steamship Co., 274 F.2d 274, 277 (9th Cir.1959); Title v.
         United States............................................................................................................. 11

**Statutes**

11 U.S.C. § 362(b)(4) ...................................................................................................5,13

11 U.S.C. § 363............................................................................................................... 5

-iii-

1   David R. Chase, the United States District Court-Appointed Receiver (the "Federal

2   Receiver") of Access One Communications, Inc. ("Access One"), and Network One Services, Inc.

3   ("Network One") (collectively, the "Receiverships"), hereby submits his Second Supplemental

4   Opposition ("Supplemental Opposition") to the Emergency Motion of The Billing Resource, dba

5   Integretel, a California corporation (the "Debtor") For Use of Cash Collateral and Granting

6   Replacement Liens (the "Cash Collateral Motion" or "Motion"), filed and served in this matter on

7   or about September 17, 2007, as follows:

8                                          **I.**

9                                  **INTRODUCTION**

10  This Second Supplemental Opposition is brought by the Federal Receiver solely in respect

11  of the approximately $1.7 million which Federal District Court Judge Ryskamp (the "District

12  Court") has ordered Debtor to turn over to the Federal Receiver under pain of contempt (the

13  "Subject Funds"). This Court has ordered the Subject Funds placed in a blocked account and

14  withdrawn only upon further order of this Court. The Federal Receiver does not anticipate the

15  Debtor requesting or this Court authorizing the Subject Funds to be included in the requests made

16  in this hearing and he expects that the parties herein will agree that this will not happen. However,

17  out of an abundance of caution, the Federal Receiver files this Opposition.

18  Any request by Debtor to use the Subject Funds in its operations as if they were cash

19  collateral is improper on a number of different levels. Initially, and most importantly, the District

20  Court has already determined that the Subject Funds are not property of the Estate, they belong to

21  the Federal Receiver, and the Debtor must turn them over to the Federal Receiver. Because the

22  Subject Funds are not property of the Estate, they cannot be used by the Debtor to fund ongoing

23  operations, and authorizing their use under the guise of a Cash Collateral Order would be improper.

24  Moreover, by asking this Court to authorize its use of the Subject Funds, the Debtor is

25  requesting this Court to review and reverse two standing orders of the District Court (the "Orders").

26  The Federal Receiver is aware of no authority for such a request or such an action. 28 U.S.C.

27  § 1334 (e) grants subject matter jurisdiction to a District Court in respect of property of the debtor

28  or property of the estate, but the subject funds are neither. Judicial authority holds that the District

-2-

1  Court has jurisdiction over the Subject Funds and its rulings take precedence because it exercised

2  that jurisdiction first. The Federal Receiver is aware of no authority that divests the District Court

3  of such jurisdiction upon filing of a bankruptcy.

4  Similarly, and as alluded to above, the Federal Receiver is aware of no authority, and the

5  Debtor cites none, that would allow the remedy actually being requested here -- the review and

6  reversal of the District Court Orders. Certainly, this Court has questions about the nature and effect

7  of the Orders. However, the evidence already before this Court responds to those concerns and

8  demonstrates several critical factors.

9  First, the District Court has expressly made it clear beyond any argument that the Subject

10  Funds are property of the Federal Receiver and not property of the Bankruptcy Estate. Second, the

11  various arguments raised by the Debtor here were already made to the District Court, and it decided

12  against the Debtor. For example, the Debtor claimed in its Opposition to the Federal Receiver's

13  Motion for Order to Show Cause that its obligation to pay the Subject Funds over to the Federal

14  Receiver arose under contract and that the Federal Receiver is a mere unsecured creditor. That

15  argument was rejected in the Orders. The Debtor also argued that the proceedings were improper

16  and that a full blown trial was required. Again, that position was rejected in the Orders. Finally,

17  the Debtor made a similar argument as that being made here, that it commingled various funds, and

18  as such, the Subject Funds could not be identified. Again, this argument was rejected in the

19  Orders. [1]

20  In sum, the Orders and wishes of the District Court are quite clear and reviewing and

21  reversing those Orders or their effect is inappropriate. The Subject Funds are not the Debtor's

22  property, they are not property of the bankruptcy estate, and they cannot be used to fund the

23  Debtor's operation under the guise of a cash collateral motion.

24

25

26  [1] Although Debtor argues that tracing is required to impose constructive trust on the Subject Funds,
    the Federal Receiver is not presently asking this Court to impose a trust. At present, there is no
27  necessity for this remedy, and the District Court has already ruled upon the necessity of tracing.

28

II.

## PROCEDURAL HISTORY

At the initial hearing on the Cash Collateral Motion, the Debtor and the Federal Receiver stipulated to a segregation and sequestration of $1,762,762.56 pending a further hearing, which was set for October 15, 2007 at 2:15 p.m. On October 2, 2007 at 2:00 p.m., the Bankruptcy Court held a hearing on the Debtor's Motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction, brought against the Federal Receiver and the Federal Trade Commission (the "FTC"), during which the Bankruptcy Court denied the TRO and issued an Order to Show Cause ("OSC") why a Preliminary Injunction should (or should not) be granted, which OSC was set for hearing on October 17, 2007 at 2:00 p.m. The Federal Receiver reserves the right to further supplement the record in response to the OSC prior to the expiration of the October 15, 2007 deadline imposed by the Bankruptcy Court.

III.

## THE SUBJECT FUNDS ARE NOT PROPERTY OF THE BANKRUPTCY ESTATE

As set forth in the Federal Receiver's Supplemental Objection, the District Court's September 14, 2007 Order (the "Omnibus Order") and the September 21, 2007 Order (the "Clarification Order") make it clear beyond any argument that the District Court found that the Subject Funds are property of the Federal Receivership Estate and not of the Bankruptcy Estate.[2] On the first page, the District Court states "on Friday, September 14, 2007, this Court issued its Omnibus Order in which it ruled that the reserve funds are the property of the Receivership Estate and ordered Integretel to pay the current reserve funds, amounting to $1,762,762.56, immediately to the Receiver." On Page 4 of the Clarification Order, the District Court states "[t]he Court has already ruled that the reserve funds are neither property of the Bankruptcy Estate nor Integretel."

---

[2] True and correct copies of the Omnibus Order and the Clarification Order are attached to the Third Request for Judicial Notice, marked as Exhibits "O" and "P", respectively and are incorporated herein by this reference.

-4-

1    This language leaves no room for argument on this issue. And, since the Subject Funds are

2   not property of the Bankruptcy Estate, they cannot be used by the Debtor by virtue of 11 U.S.C.

3   § 363 or any other provision of the Bankruptcy Code. For this reason alone, the Motion of the

4   Debtor should be denied in respect of the Subject Funds.

5    It should be noted that the District Court also clarified that the proceeding against the

6   Debtor in that Court enjoining it to turn over the Subject funds under pain of contempt is not

7   subject to the automatic stay by virtue, inter alia, of the police powers or regulatory exception set

8   forth in 11 U.S.C. § 362(b)(4). In so holding, the District Court discussed the reason for such

9   exception to the automatic stay, as well as judicial authority interpreting that section. It discussed

10   the relief sought by the FTC and how it applies in this bankruptcy context. Finally it concluded

11   "[t]he commencement of Integretel's bankruptcy case does not stay either the pending contempt

12   proceeding against Integretel, including the turnover order, or the FTC's prosecution of the

13   consumer protection action against Integretel."

14    The timing of the Clarification Order of the District Court, the context in which it was

15   brought, and the language found in the Clarification Order demonstrates, again, beyond argument,

16   that the District Court was aware of the Bankruptcy Case, its effects, and its implications, and that

17   the District Court made its ruling in that context. [3]

18                                   IV.

19   **THE DISTRICT COURT HAS JURISDICTION OVER THE SUBJECT FUNDS**

20    As set forth in the Federal Receiver's Supplemental Opposition, the District Court has

21   jurisdiction over the Subject Funds and, because it exercised that jurisdiction first, is the proper

22   court to make and enforce orders in respect of that property. Judicial authority demonstrates that

23

24   [3] The Federal Receiver hereby informs this Court that on September 24, 2007 the District Court
     denied his emergency motion to compel debtor to wire transfer the Subject funds on or before
25   Tuesday, September 26, pending this Bankruptcy Court's decision on the Motion. A true and
     correct copy of the Order is attached to the Third Request for Judicial Notice as Exhibit "Q". This
26   denial, however, does not change anything. The prior rulings and the inapplicability of the
     automatic stay are not affected, and there is nothing expressed or implied by this order that raises
27   any argument regarding any issue herein or requires interpretation.

28

                                   -5-

1  those findings, as expressed in the District Court's Clarification Order, were an appropriate

2  exercise of the District Court's jurisdiction.

3       SEC v. Wolfson, 309 B.R. 612 (D. Utah 2004) is factually and conceptually identical to the

4  matter herein. There, the SEC prosecuted a civil fraud action against a group of defendants who

5  subsequently filed Chapter 11 Petitions. These defendants sought to dismiss the SEC's contempt

6  motion, which, as here, had been brought to enforce previous District Court orders. In particular,

7  four hours before the District Court was to hear that contempt motion, the defendants filed their

8  petitions. The SEC, nevertheless, proceeded with the motion, and defendants argued that further

9  proceedings were barred by the automatic stay. After briefing, the District Court found that the

10 automatic stay did not apply and it granted the SEC's motions, as here, by entering a contempt

11 order expanding the receivership.

12      The District Court initially addressed jurisdiction. It found that it had jurisdiction to

13 determine its jurisdiction and to decide whether the automatic stay is applicable to this litigation.

14      "At the outset, the Court finds that it has jurisdiction to determine its own
        jurisdiction, as well as to decide whether the automatic stay is applicable to the
15      instant litigation. See In re Baldwin-United Corp. Litig., 765 F.2d 343, 347 (2nd
        Cir.1985) ("The Court in which the litigation claimed to be stayed is pending has
16      jurisdiction to determine not only its own jurisdiction but also the precise question
        whether the proceeding pending before it is subject to the automatic stay.");
17      Securities & Exchange Comm'n v. Bilzerian, 131 F.Supp.2d 10, 13-14
        (D.D.C.2001); Securities & Exchange Comm'n v. First Fin. Group of Tex., 645
18      F.2d 429, 437-40 (5th Cir.1981); cf. In re Pincombe, 256 B.R. 774, 781
        (Bankr.N.D.Ill.2000) (stating that because the § 362(b)(4) exception takes effect
19      immediately, a governmental agency is not required to seek relief from the stay
        before continuing proceedings against a debtor)."
20
21 Wolfson, supra, at 617.

22      The Wolfson Court went on to discuss the District Court's concurrent jurisdiction with the

23 bankruptcy court to determine the effect of the bankruptcy proceeding and the status of property

24 and held, "because the District Court's jurisdiction attached first in time, it was superior."

25      "This Court has concurrent jurisdiction with the Bankruptcy Court to determine
        the effect of the bankruptcy proceeding on this case. See United States Dep't of
26      Housing & Urban Dev't v. Cost Control Marketing & Sales Mgm't, 64 F.3d 920,
        927 n. 11 (4th Cir.1995) (citing Brock v. Morysville Body Works, Inc. 829 F.2d
27      383 (3rd Cir.1987)), cert. denied,517 U.S. 1187, 116 S.Ct. 1673, 134 L.Ed.2d 777
        (1996); see also In re Dolen, 265 B.R. 471, 476 (Bankr.M.D.Fla.2001) (noting
28
                                                -6-

1   that "[t]he district court has concurrent jurisdiction with the bankruptcy court to
2   determine the extent to which the Section 362 automatic stay limits the actions of
    the Commission in its ability to pursue the pending district court action.")
3   Further, as the <u>Cost Control</u> court noted, "because the district court's jurisdiction
    attached first in time, it was superior." Id.; see also <u>United States v. Delta</u>
4   <u>Distributors Co., Inc.</u>, 1996 WL 460112 (June 21, 1996 S.D.W.Va.) (finding that
    "because this Court's jurisdiction attached first in time, it is superior.").
5   Similarly, in <u>Klass v. Klass</u>, the court determined that "[t]he clearly predominant
    rule is that jurisdiction is concurrent, and that the court in which the non-
6   bankruptcy case is pending may determine the effect of the stay on that case."
7   377 Md. 13, 831 A.2d 1067, 1071 (App.2003) (citing numerous federal cases).

8   <u>Wolfson</u>, supra, at 617-618.

9          Judicial authority also holds that in a receivership, the District Court's jurisdiction is

10  superior, even if the receivership proceedings and the District Court's exercise of its jurisdiction

11  followed the bankruptcy.  In <u>Eller Industries, Inc. v. Indian Motorcycle Manufacturing, Inc.</u>

12  ("<u>IMMI</u>"), 929 F. Supp. 369 (D. Colo. 1995), the bankruptcy trustee sought and obtained a

13  preliminary injunction precluding IMMI from soliciting funds by using a trademark which the

14  trustee maintained was the exclusive property of the debtors.  Shortly thereafter, IMMI was placed

15  in a federal receivership and a receiver was appointed.  The trustee maintained that the preliminary

16  injunction was binding on the receivership and essentially placed the receivership assets in a

17  "constructive trust" for the trustee's benefit.  The district court disagreed, holding as follows:

18          This Court has exclusive jurisdiction over the assets and administration of the
            Receivership imposed on IMMI.  Equitable actions against the estate may be authorized
19          only by this Court.  An equitable action against IMMI in another forum, by definition, seeks
            to control assets of the Receivership Estate and thereby conflicts with this Court's exclusive
20          jurisdiction over Receivership Estate assets.  Absent leave of this Court, all equitable
            actions against IMMI cannot be effective against this Court or the Receiver.
21

22  <u>Id.</u> at 371-72.

23                                              V.

24              <u>THE DISTRICT COURT'S JURISDICTION IS NOT</u>

25                <u>SUBJECT TO COLLATERAL ATTACK</u>

26          Nor should this Court consider a challenge of the District court's jurisdiction.  A court's

27  determination of its own jurisdiction is subject to the principles of res judicata; it generally may not

28  be challenged in a collateral proceeding.  <u>Insurance Corp. of Ireland v. Compagnie des Bauxites de</u>

315372.02 [XP]    24774                                          RER-26      1170

1  Guinee, 456 U.S. 694, 102 S.Ct. 2099, 2104 n. 9, 72 L.Ed.2d 492 (1982); Chicot County Drainage

2  Dist. v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 319, 84 L.Ed. 329 (1940).  "A party that

3  has had an opportunity to litigate the question of subject-matter jurisdiction may not, however,

4  reopen that question in a collateral attack upon an adverse judgment." Id.  It has long been the rule

5  that principles of res judicata apply to jurisdictional determinations-both subject matter and

6  personal. Id; see also, Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938).

7          A federal court possesses broad authority to issue various ancillary relief measures in

8  enforcing actions brought by federal agencies. FTC v. Productive Marketing, Inc., 136 F. Supp.

9  2d 1096, 1104 (C.D. Cal. 2001); see also SEC vs. Universal Fin., 760 F.2d 1034, 1038 (9th Cir.

10  1985) (finding that a district court's power to enter a blanket receivership stay is broader than a

11  district court's authority to grant injunctive relief under Federal Rule 65); SEC vs. Wencke, 622

12  F.2d 1363, 1371 (9th Cir. 1980) ("The Supreme Court has repeatedly emphasized the broad

13  equitable powers of the federal courts to shape equitable remedies to the necessities of particular

14  cases, especially where a federal agency seeks enforcement in the public interest.").

15          A receivership order issued to preserve the assets of a receivership estate is a classic

16  example of a district court's exercise of in rem jurisdiction over receivership property.  Productive

17  Marketing, Inc., 136 F. Supp. 2d at 1105; see also Wencke, 622 F.2d at 1369 (stating that a federal

18  district court's power to issue a stay against all persons concerning all proceedings against the

19  receivership entities "rests as much on its control over the property placed in receivership as on its

20  jurisdiction over the parties to the securities fraud action"); United States vs. Hall, 472 F.2d 261,

21  267-68 (5th Cir. 1972) (finding that federal district courts have inherent authority to enforce their

22  orders against non-parties given the concept of in rem jurisdiction); SEC vs. Elfindepan, S.A., No.

23  1:00CV00742, 2002 WL 31165146, at *4 (M.D.N.C. 2002) (finding that federal district courts

24  have jurisdiction to decide the legitimacy of ownership of claims made by non-parties to assets

25  alleged to be proceeds from securities laws violations); SEC vs. Pinez, 989 F. Supp. 325, 337 (D.

26  Mass. 1997) ("Courts also have jurisdiction to decide the legitimacy of ownership claims made by

27  non-parties to assets alleged to be proceeds from securities laws violations.").

28

-8-

1    Indeed, the purpose of a federal district court's in rem jurisdiction over receivership

2   property through a temporary restraining order or preliminary injunction (or similar injunctive-

3   order) is to preserve the assets resulting from the actions of the receivership defendants, whether

4   held by parties or non-parties, in order to provide redress for legitimately-defrauded investors.

5   Productive Marketing, Inc., 136 F. Supp. 2d at 1105-1106.

6    Integretel is seeking to frustrate that goal, which would undermine the very purpose of a

7   federal equity receivership, and make any receiver's attempt to recover receivership property for

8   the benefit of defrauded victims too costly and time-consuming to pursue. Productive Marketing is

9   instructive on this very issue. In that case the non-party, ACCPC, refused to relinquish assets

10  located in reserve accounts, relying instead on a contract it signed before the receivership which

11  required a hold-back of the reserve funds for a minimum amount of time. Id. at 1106, 1009. The

12  district court, however, found that ACCPC's reliance on the contract was misplaced, because its

13  failure to turn over the funds disrupted the district court's power to enforce its receivership

14  injunction:

15          If the court cannot compel ACCPC to turn over assets in its possession belonging to
            the receivership estate, the Receiver will be unable to provide adequate redress to
16          consumers who have been defrauded by Defendants. Because ACCPC's conduct imperils
            the court's ability to render an effective judgment, the court may properly enjoin it, even
17          though it is not a party to the action.

18  Id. at 1106.

19  Citibank, N.A. v. Nyland, (CF8) Ltd., 839 F.2d 93 (2d Cir. 1987), is also instructive on this

20  issue. In Nyland, the Second Circuit held:

21          Second, we believe that the receiver's fiduciary responsibilities to preserve the
22          property during the course of the underlying litigation concerning the ownership of the
            property must be seen as superior to New York Land's contractual interest, if any, in the
23          property. As receiver, Cushman & Wakefield is acting as an officer of the court and has the
            duty to preserve and protect the property pending the outcome of the litigation. As a result,
24          its authority is wholly determined by the order of the appointing court. . . . [R]eceivers are
            not bound by contracts of the entity that they are appointed to protect. A receiver becomes
25          bound only when it affirmatively adopts the obligations of the entity that it is protecting. . . .
26          [W]e find that New York Land's management and leasing services contract is subordinate
            to Cushman & Wakefield's obligation to preserve the premises.
27
28          Id. at 98 (emphasis added; citations omitted).

-9-

315372.02 [XP]    24774                                                        RER-26    1172

1    In this case, the District Court has determined pre-bankruptcy that the Subject Funds are

2  property of the Receivership, and has exercised its in rem jurisdiction over that property.  The

3  District Court has further entered an order after the commencement of this Bankruptcy Case

4  iterating that the Subject Funds are Receivership property, and holding that the automatic stay does

5  not bar its recovery or interfere with the District Court's exclusive subject matter jurisdiction over

6  the Subject Funds.  As in Eller Industries, the Debtor is attempting to interfere with the

7  administration of the Receivership, first, by filing the Cash Collateral Motion, which attempts to

8  use Receivership property to fund its business operations, and second, by filing an adversary

9  proceeding seeking to enjoin the Federal Receiver from enforcing the pre-bankruptcy turnover and

10  contempt Orders.  As the above authorities demonstrate, any attempt to challenge the exclusive

11  subject matter jurisdiction of the District Court Receivership over the Subject Funds must be

12  brought in the District Court or in the Eleventh Circuit, not in a collateral proceeding, whether in

13  this Bankruptcy Court or any other court.

14    In fact, the Debtor has sought to stay enforcement of the September 14, 2007 Order, which

15  relief was granted by the District Court on September 26, 2007, conditioned upon the Debtor's

16  turning over the Subject Funds to the Federal Receiver for segregation pending appeal.  See Exhibit

17  "R" to Receiver's Third Request for Judicial Notice.  The Clarification Order is a clear indication

18  that the District Court intends to continue to exercise its in rem jurisdiction over the Subject Funds

19  and to enforce the execution of the contempt Orders.[4]  The Debtor is asking nothing less than for

20

21

22  [4] Had the issue of whether the Subject Funds are Receivership property not already been
determined, the Debtor would nonetheless be asking this Bankruptcy Court to ignore longstanding
23  principles of comity within courts with concurrent jurisdiction, which hold that it is appropriate for
the first court dealing with a particular issue to decide the issue.  Cisneros v. Cost Control
24  Marketing and Sales, 862 F.Supp. 1531 W.D.Va.,1994 (citing Smith v. McInver, 22 U.S. (9 Wheat)
532, 535, 6 L.Ed. 152 (1824) ("[I]n all cases of concurrent jurisdiction, the court which first has
25  possession of the subject must decide it."); United States Fire Ins. Co. v. Goodyear Tire & Rubber
Co., 920 F.2d 487, 488 (8th Cir.1990); EEOC v. University of Pa., 850 F.2d 969, 972 (3d Cir.1988)
26  [citing Kline v. Burke Constr. Co., 260 U.S. 226, 229, 43 S.Ct. 79, 81, 67 L.Ed. 226 (1922)].  This
is a non-issue, since the District Court has already ruled that the Subject Funds are the
27  Receiverships' property.

28

-10-

315372.02 [XP]    24774                                            RER-26    1173

1  this Bankruptcy Court to <u>reverse</u> the District Court's Orders and ignore the integrity of the District

2  Court in its exercise of its exclusive subject matter jurisdiction over property of the Receivership.

3                                                          **VI.**

4  **RE-LITIGATION OF THE PARTIES' DISPUTES OVER THE SUBJECT FUNDS ARE**

5                                      **BARRED BY RES JUDICATA**

6        The doctrine of res judicata also applies here. <u>See</u>, <u>Baldwin v. Iowa State Traveling Men's</u>

7  <u>Ass'n</u>, 51 S.Ct. 517, 517, 283 U.S. 522, 524, 75 L.Ed. 1244 (1931).  The doctrine of *res judicata*

8  "ensures the finality of decisions." <u>Brown v. Felsen</u>, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60

9  L.Ed.2d 767 (1979).  It serves to protect adversaries from the expense and vexation attending

10  multiple lawsuits, to conserve judicial resources, and to foster reliance on judicial action by

11  minimizing the possibility of inconsistent decisions. <u>Montana v. United States</u>, 440 U.S. 147, 153-

12  54, 99 S.Ct. 970, 973-74, 59 L.Ed.2d 210 (1979). The doctrine applies to jurisdictional issues as

13  well as substantive issues. See <u>Durfee v. Duke</u>, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963);

14  <u>Stoll v. Gottlieb</u>, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938); <u>Yanow v. Weyerhauser</u>

15  <u>Steamship Co.</u>, 274 F.2d 274, 277 (9th Cir.1959); <u>Title v. United States</u>, 263 F.2d 28, 30 (9th

16  Cir.1959).

17        The Ninth Court in <u>Americana Fabrics, Inc. v. L & L Textiles, Inc.</u> 754 F.2d 1524 (9th Cir.

18  1985) explains the doctrine of *res judicata* as follows:

19              Res judicata encompasses two subsidiary doctrines, claim preclusion and issue
          preclusion.  Under claim preclusion, a final judgment on the merits of a claim bars
20        subsequent litigation of that claim. Claim preclusion "prevents litigation of all grounds for,
          or defenses to, recovery that were previously available to the parties, regardless of whether
21        they were asserted or determined in the prior proceeding." <u>Brown v. Felsen</u>, 442 U.S. at
          131, 99 S.Ct. at 2209; see <u>Los Angeles Branch NAACP v. Los Angeles Unified School</u>
22        <u>Dist.</u>, 750 F.2d 731, 737 (9th Cir.1984). The related doctrine of issue preclusion, or
          collateral estoppel, bars relitigation, even in an action on a different claim, of all "issues of
23        fact or law that were actually litigated and necessarily decided" in the prior proceeding.
          <u>Segal v. American Tel. & Tel. Co.</u>, 606 F.2d 842, 845 (9th Cir.1979); see <u>Montana v.</u>
24        <u>United States</u>, 440 U.S. at 153, 99 S.Ct. at 973.

25

26        Res Judicata similarly applies to judgments that are on appeal. "Even if the first judgment

27  ultimately is reversed, this does not automatically mean nullification of the judgment in a second

28

                                                         -11-

1  action in which the first judgment was given preclusive effect." <u>Reed v. Allen</u>, 52 S.Ct. 532, 286

2  U.S. 191, 76 L.Ed. 1054 (1932).

3       Here, certain critical issues, issues which the Debtor has asserted in these proceedings, were

4  already litigated before the District Court, they were decided against the Debtor, and these

5  decisions are part of the District Court Orders.  In particular, the Debtor already argued before the

6  District Court that the subject funds arise from a contract claim and the Federal Reciever is merely

7  an unsecured creditor.[5]

8       The Omnibus Order rejected this argument.  On page 22 of the Response, Debtor argued

9  that a full blown trial was required.  This was also rejected in the Omnibus Order.

10      The District Court made explicit and unambiguous, findings of fact in its Omnibus Order,

11 including:

12      • Integretel had agreements in place with the Receiverships that permitted them to

13        hold the Receiverships' money as reserves (pages 1-2).

14      • Integretel did not advise either the Federal Receiveror the FTC that it was holding

15        reserves.  Rather, its president informed the FTC on March 6, 2006 that no amounts

16        are currently due and owing to Access One or Network One.  (page 2)

17      • The reserve amount being held by Integretel (and/or its affiliates) is $1,762,762.56.

18        (page 2).

19

20      The District Court also made the explicit and unambiguous, conclusions of law in its

    Omnibus Order disposing of other issues here, including:

21

22      • Integretel's keeping the reserves in a pooled account "is a distinction without a

23        difference, since the TRO captures funds held on behalf of, or for the benefit of, a

24        Defendant."  (page 3).

25  _____

26  [5] This is clear from p. 59 of Debtor's Response in Opposition to the Receiver's Motion for an
    Order to Show Cause (the Response), attached as Exhibit "S" to the Third Request for Judicial
27  Notice and authenticated by the Declaration of David Chase filed in the Federal Receiver's
    Opposition to the Motion for Summary Judgment.

28

-12-

1    • The agreements did not give the Debtor the right to use the reserves to fund the
2       indemnity, or any violations of the Federal Trade Commission Act (pages 3-4).

3    • The Federal Receiver's claim is not a claim at law governed by pre-receivership
4       contracts, but one governed by this Court's jurisdiction over receivership property.
5       (page 4).

6    • Issues concerning entitlement to disputed receivership property can be determined
7       via summary proceedings in the federal court equity receivership context.   (page 5).

8    Indeed, just days after issuing the Omnibus Order, and after the Debtor filed its bankruptcy
9  petition, the District Court issued its September 21, 2007 Order Granting Motion for Clarification
10 as to Scope of Stay.  In the District Court's September 21, 2007 Clarification Order, the District
11 Court also set forth findings of fact and conclusions of law, including:

12    • The Court has already ruled that the reserve funds are the property of the
13       receivership estate and ordered Integretel to pay the current reserve funds,
14       amounting to $1,762,762.56, immediately to the Federal Receiver.  (page 1).

15    • The contempt proceeding is not stayed by the bankruptcy, since the reserve funds
16       are not property of the bankruptcy estate, and the contempt proceedings are
17       excluded from the automatic stay pursuant to 11 U.S.C. § 362(b)(4)(page 4).

18    In addition, a review of the District Court's Orders reveals that this was no interim measure
19 to preserve the subject funds for safekeeping, rather, it was an adjudication of ownership of the
20 subject funds.  The ownership issue is not predicated on whether the FTC ultimately prevails in the
21 enforcement action against the Debtor.  Consequently, the turnover provisions of the Omnibus
22 Order and Clarifying Order are final, appealable orders.  See SEC v. Wencke, 783 F.2d 829, 837-
23 38 (9th Cir. 1986) (stating that claims of non-parties to property claimed by receivers can be
24 resolved via summary proceedings, which reduce the time necessary to settle disputes, decrease
25 litigation costs and prevent dissipation of receivership assets, as long as there is notice to the non-
26 party and an opportunity to be heard, and thus satisfy due process); see also CFTC v. Topworth
27 Int'l, Ltd., 205 F.3d 1107, 1111-12 (9th Cir. 2000) (finding that turnover order stating that
28 $300,000 belonged to one party, and not another, was final, appealable order because order

-13-

1   disposed of ownership rights in property). Accordingly, the Debtor's arguments that this

2   Bankruptcy Court should exercise jurisdiction over and litigate the "dispute" over whether the

3   subject funds are property of the Receiverships are barred by Res Judiciata.

### VII.

### THE DEBTOR MISCONSTRUES THE FEDERAL RECEIVER'S
### OWNERSHIP INTEREST AS A TRUST

7        The Debtor is attempting to mislabel and limit the Federal Receiver's property right as a

8   claim for a constructive trust in order to hide behind tracing requirement and to provide a reason

9   for this Court to re-litigate the issues already adjudicated in the District Court. At present, the

10  Federal Receiver is not seeking nor has it sought the imposition of a trust over the subject funds.

11  Rather, the Federal Receiver sought turnover of property of the Receivership and contempt for

12  violation of the Temporary Restraining Order and Preliminary Injunctions entered by the District

13  Court on the motion of the FTC. The equitable relief sought and obtained by the Federal Receiver

14  was pursuant to Court order.[6] Simply labeling the Receiver's rights as a "trust" ignores the broad

15  authority of the District Court to establish equitable remedies in order to preserve assets of the

16  Receivership estates. See, Wencke, 622 F. 2d at 1371 ("The Supreme Court has repeatedly

17  emphasized the broad equitable powers of the federal courts to shape equitable remedies to the

18  necessities of particular cases, especially where a federal agency seeks enforcement in the public

19  interest"); see also, FTC v. Productive Marketing, Inc., 136 F. Supp. 2d 1096, 1105 (C.D. Cal.

20  2001) ("An order issued to preserve the assets of a receivership estate is a classic example of an *in*

21  *rem* injunction").

22        The Debtor's "trust" argument was already considered and rejected by the District Court, as

23  is demonstrated by the Omnibus Order. The Debtor argued there, as it does here, that "'the reserves

24

---

25  [6] The District Court's jurisdiction over this issue is also authorized by Federal Statute. See, 15
    U.S.C. § 53(b); F.T.C. v. Southwest Sunsites, Inc., 665 F. 2d 711 (5th Cir. 1982) cert den. 102 S.
26  Ct. 2236, 456 U.S. 973, 72 L.Ed.2d 846 (Grant of jurisdiction under this section carries with it the
    authorization for the district court to exercise a full range of equitable remedies traditionally
27  available to it)

28

1  do not take the form of any actual funds that [the Debtor] has segregated or otherwise set aside...'

2  and maintains that it keeps the reserves in a pooled account it tracks via an internal accounting

3  entry." September 14, 2007 Order, p. 3.  The District Court ruled that such distinction was without

4  consequence, "since the TRO captures funds 'held on behalf of, or for the benefit of, a Defendant.'"

5  September 14, 2007 Order, page 3.

6          The Debtor keeps pointing to the underlying contracts and stating that it had no obligation

7  to segregate the deposits, as if this point will absolve it of its requirement to turn over the deposits

8  pursuant to the TRO.[7]  As acknowledged by the District Court, "the Receiver's claim is not a claim

9  at law governed by pre-receivership contracts, however, but one governed by [the District] Court's

10  jurisdiction over receivership property based on the TRO and Amended Preliminary Injunction."

11  September 14, 2007 Order, page 4.  Accordingly, it is of no consequence whether the contract

12  required the Debtor to segregate the Subject Funds.  The equitable relief sought and obtained by the

13  Federal Receiver in District Court was pursuant to Federal Statute and not based upon the much

14  narrower equitable remedy of constructive or express trusts.

15

16                                      **VIII.**

17          **EVEN IF CONSTRUED TO BE TRUST, THE RECEIVER'S CLAIM**

18  **WAS ESTABLISHED PRE-PETITION AND THE SUBJECT FUNDS ARE THEREFORE**

19                **EXCLUDED FROM THE BANKRUPTCY ESTATE**

20          In its reply brief, the Debtor cites In re Advent Management Corp., 178 B.R. 480, 491 (9th

21  Cir. BAP 1995) for the proposition that a party seeking to establish a trust over commingled funds

22  must trace those funds.  That case is distinguishable from ours, since in Advent, the creditor

23  seeking to establish a constructive trust had not obtained a judgment pre-petition and therefore its

24  _____

25  [7] In fact, the Debtor was required under contract to maintain separate accounts for each client.  The
   contracts are attached as Exhibit "2" and "3" to the Receiver's Revised Motion for an Order to
26  Show Cause, which itself is attached to the Chase Declaration as Exhibit "F."  In the section
   marked "Definitions", "Account" is defined as "A separate account of Client under which Billing
27  Transactions and settlement funds are tracked and reported."

28

                                      -15-

1  claim was inchoate. Id. at 488; cf., Airwork Corp v. Markair Express, Inc. (In re Markair, Inc.),

2  172 B.R. 638, 642 (9th Cir. BAP 1994) ("A constructive trust imposed by state law pre-petition

3  would therefore exclude the res from the debtor estate.")[8]

4      As argued supra, the Federal Receiver was acting under Federal law when it sought and

5  obtained an order determining that the Subject Funds were property of the Receivership and

6  requiring its turnover under penalty of contempt. The Federal Receiver was not acting under the

7  color of common law equitable trusts. Nonetheless, the Federal Receiver already obtained its

8  equitable remedy pre-petition. The District Court rejected any argument that the commingling of

9  the deposits with other estate assets rendered the Federal Receiver unable to capture the Subject

10  Funds pursuant to the Federal injunctions. To the extent that the Debtor contends that tracing was

11  necessary, it is free to argue the same in the Eleventh Circuit where this matter is currently on

12  appeal.

13

14  ### IX.

15  ### IN ANY EVENT, THE DEBTOR DOES NOT NEED TO USE

16  ### THE SUBJECT FUNDS AS CASH COLLATERAL

17      The Debtor brought its "Emergency" Cash Collateral Motion arguing that it needed to use

18  the $1.76 million ordered to be turned over to the Receiverships in order to operate its business

19  over the near term. Conversely, the Debtor provided evidence in the form of a declaration from

20  Ken Dawson stating that they were expecting $13.8 million in receivables to come in on a rolling

21  basis. Finally, at the first hearing on the Cash Collateral Motion, the Debtor in essence conceded

22  that it did not need to use the Receivership property on an "emergency" basis by consenting to

23  segregate those funds for a period of three weeks until the hearing on final approval of the Cash

24

25  [8] Moreover, under Florida law, "when a person who is subject to a trust claim commingles the trust funds with funds of his own, and funds are subsequently dissipated, he is presumed to first dissipate his own funds rather than funds held in trust, such that the funds remaining in an account are presumed to be those held in trust". In re Hecker, 316 B.R. 375, 377 (Bankr. S.D. Fla. 2004).

26  

27  Therefore, even if viewed as a constructive trust, the Debtor's commingling of the reserves would be of no consequence.

28

1  Collateral Motion.  If the Debtor's projections are correct, then there is no reason why the Debtor

2  cannot and should not turn over the Subject Funds to the Receiver until its appeal to the Eleventh

3  Circuit is considered.

## X.

## CONCLUSION

6       It is simply beyond argument that the subject funds have already been adjudged by the

7  District Court's superior jurisdiction as the Receivership property and not property of the

8  Bankruptcy Estate or the Debtor.  As a consequence, the Debtor has no right to use that property in

9  respect of its motion for Cash Collateral or otherwise.  This Court is respectfully requested to order

10 immediate turnover of the Receivership Property.  The Federal Receiver further requests that the

11 Debtor's Motion for a Preliminary Injunction be denied.

13 Dated:  October 12, 2007                    DANNING, GILL, DIAMOND & KOLLITZ, LLP

    By:  _____

          WALTER K. OETZELL
          Attorneys for David R. Chase, Court-
          Appointed Receiver of Access One
          Communications, Inc., and Network One
          Services, Inc.

-17-

**RER - 27**

0.0 [XP]

ELECTRONICALLY
FILED:
Date:  10|10|07
Docket No:  131

1  HOWARD KOLLITZ (State Bar No. 059611)
   WALTER K. OETZELL (State Bar No. 109769)
2  STEVEN J. SCHWARTZ (State Bar No. 200586)
   DANNING, GILL, DIAMOND & KOLLITZ, LLP
3  2029 Century Park East, Third Floor
   Los Angeles, California 90067-2904
4  Telephone:  (310) 277-0077
   Facsimile:  (310) 277-5735
5  E-mail    sschwartz@dgdk.com
             woetzell@dgdk.com
6
   JEFFREY C. SCHNEIDER (pro-hac vice)
7  TEW CARDENAS LLP
   Four Seasons Tower, Fifteenth Floor
8  1441 Brickell Avenue
   Miami, Florida 33131-3407
9  Telephone:  (305) 539-2481
   Facsimile:  (305) 536-1116
10
   Attorneys for David R. Chase, Federal Receiver of Access
11 One Communications, Inc., and Network One Services, Inc.

12                UNITED STATES BANKRUPTCY COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14                     SAN JOSE DIVISION

15 In re                              ) Case No. 07-52890-ASW
                                      )
16 THE BILLING RESOURCE, dba Integretal, a ) Chapter 11
   California corporation,            )
17                                    ) **THIRD REQUEST FOR JUDICIAL**
             Debtor.                  ) **NOTICE OF DAVID R. CHASE,**
18                                    ) **FEDERAL RECEIVER IN OPPOSITION**
   Taxpayer's Identification No. 33-0289863 ) **TO MOTION FOR AUTHORITY TO**
19                                    ) **USE CASH COLLATERAL**
                                      )
20                                    ) Date:    October 15, 2007
                                      ) Time:   2:15 p.m.
21                                    ) Ctrm:   3020
                                      )
22                                    )
                                      )
23                                    )
                                      )
24                                    )
                                      )
25                                    )
                                      )
26                                    )
                                      )
27 _____ )

28

                              -1-

315367.01 [XP]    0611652A                          RER-27    1181

1 | **TO THE HONORABLE ARTHUR S. WEISSBRODT, UNITED STATES BANKRUPTCY**
2 | **JUDGE:**

3 |       Pursuant to Rule 201(d) of the Federal Rules of Evidence, David R. Chase, the duly
4 | appointed, qualified and acting Receiver serving under the authority of the United States District
5 | Court for the Southern District of Florida in pending case number 06-80180-CIV-RYSKAMP,
6 | entitled <u>Federal Trade Commission vs. Nationwide Connections, Inc., Access One</u>
7 | <u>Communications, Inc., Network One Connections, Inc., et al.</u> (the "District Court Action"), hereby
8 | requests that this Court take judicial notice of the following Orders entered in the District Court
9 | Action:

10 |       1.      The OMNIBUS ORDER entered in the District Court Action on September 14,
11 | 2007 is attached hereto as **Exhibit O.**

12 |       2.      The District Court Order entered on September 21, 2007 (the "Clarification Order")
13 | is attached hereto as **Exhibit P.**

14 |       3.      The District Court Order entered on September 24, 2007 is attached hereto as
15 | **Exhibit Q.**

16 |       4.      The ORDER CONDITIONALLY GRANTING INTEGRETEL'S EMERGENCY
17 | MOTION FOR STAY PENDING APPEAL, dated September 26, 2007, is attached hereto as
18 | **Exhibit R.**

19 |       5.      Page 39 of the Debtor's Response in Opposition to the Receiver's Motion for an
20 | Order to Show Cause is attached hereto as **Exhibit S.**

21 |

22 | Dated: October 10, 2007          DANNING, GILL, DIAMOND & KOLLITZ, LLP
23 |
24 |
25 |           By: _____
                STEVEN J. SCHWARTZ
                Attorneys for David R. Chase, Court-
26 |                 Appointed Receiver of Access One
                Communications, Inc., and Network One
27 |                 Services, Inc.
28 |

-2-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-80180-CIV-RYSKAMP/VITUNAC

FEDERAL TRADE COMMISSION,

     Plaintiff,

v.

NATIONWIDE CONNECTIONS, INC., et al.,

     Defendants.

_____/

**OMNIBUS ORDER**

THIS CAUSE comes before the Court pursuant to a series of motions:

- The Receiver's Revised Motion for Order to Show Cause Why Integretel Should Not Be Held in Contempt of Court, filed October 16, 2006 **[DE 246]**;

- Integretel's Motion to Modify Prior Injunctive Orders, filed October 30, 2006 **[DE 294]**;

- Integretel's Motion to Stay Contract Claims, filed December 29, 2006 **[DE 363]**; and

- The Receiver's Motion Requesting BSG Defendants To Transfer Additional Reserves, filed January 12, 2007 **[DE 371]**.

The Court held a hearing on these motions on April 12, 2007. These motions are fully briefed and are ripe for adjudication.

Both BSG and Integretel had agreements in place with Nationwide and Access One/Network One that permitted them to withhold monies that were "owed to" Nationwide and/or Access One/Network One as "reserves," in the event that any users complained about

2

charges and requested refunds and/or credits directly from the Aggregators. Shortly after this receivership was initiated, BSG advised the Receiver and the FTC of reserves that it was holding relating to Nationwide as of the commencement of the receivership (slightly over $1 million). BSG turned that money over to the Receiver.

Integretel did not advise either the Receiver or the FTC that it was holding reserves. Rather, its president informed the FTC on March 6, 2006 that "no amounts are currently due and owing" to Access One or Network One. As of August 26, 2006, Integretel was holding $1,186,430.36 in reserves for Access One and $173,918.66 in reserves for Network One. These amounts have increased, and as of June 30, 2007, the reserve amount being held by Integretel (and/or its affiliates) is $1,762,762.56. As of August 6, 2007, the reserve amount being held by BSG (and/or its affiliates) is $930,052.99.

The Receiver notes that the temporary restraining order required any business entity served with a copy thereof to:

> provide to the Commission's counsel, within five (5) business days of receiving a copy of this [TRO], a sworn statement setting forth:
>
> 1.    The identification number of each such account or asset titled in the name, individually or jointly, of a Defendant, or held on behalf of, or for the benefit of a Defendant;
>
> 2.    The balance of each such account, or description of the nature and value of each such asset as of the close of business on the day on which this [TRO] is served...

Exhibit A to the Integretel/Access One Master Services Agreement defines the reserve as follows:

> an amount withheld, from the amount otherwise owed to Client
> with respect to Billing Transactions, to protect IGT for credit
> losses or otherwise to cover other reserves or offsets, other than
> Uncollectibles imposed by a Telco.

The Integretel/Network One Master Services Agreement contains an identical definition of the reserves.

Integretel maintains that "the reserves do not take the form of any actual funds that [Integretel] has segregated or otherwise set aside..." and maintains that it keeps the reserves in a pooled account it tracks via an internal accounting entry. Such is a distinction without a difference, since the TRO captures funds "held on behalf of, or for the benefit of, a Defendant."

Integretel also maintains that it was not Access One's or Network One's "agent, partner, joint venturer, trustee, fiduciary, or legal representative," and so was not "in any way acting 'on behalf of' of the two clients." An entity need not be an agent, partner, joint venturer, trustee, fiduciary, or legal representative to possess funds that one is holding "on behalf of" another person or entity, however.

Integretel also maintains that the "reserves have been set to account for, among other things, any liability that might be claimed against [Integretel] for any improper billings by Access One or Network One such as alleged by the FTC in the First Amended Complaint." The Court has reviewed the agreements in question. The agreements between Integretel and each of Access One and Network One allow Integretel either to notify the indemnifying party of the request to be indemnified and turn over the defense of the action to the indemnified party or defend itself and seek reimbursement of its attorneys' fees and costs from the indemnifying party. The agreements did not give it the right to use the reserves to fund the indemnity. Furthermore, the FTC has sued

4

Integretel for its own independent violations of the Federal Trade Commission Act. If the FTC succeeds, Integretel itself will be financially responsible for its actions and will not be able to look to Access One or Network One for indemnification under the operative agreements.

Finally, Integretel argues that "Access One and Network One failed to provide proof of their compliance with contract requirements..." Integretel evidently maintains that since it is of the opinion that Access One and Network One allegedly breached the agreements, it was entitled to keep the reserve monies. The agreements do not, however, contain a liquidated damages provision that would permit retention of those funds under the circumstances, nor do the agreements give it the right to make an independent, unilateral decision about Access One's or Network One's breach of the agreements without court involvement.

Integretel also moves to stay litigation of the aforementioned contract claims pending arbitration thereof, maintaining that the Receiver stands in the shoes of Access One and Network One and may assert only those rights and remedies that those entities themselves could have asserted. In particular, the Receiver is supposedly bound by the arbitration clause in each company's contract. The Receiver's claim is not a claim at law governed by pre-receivership contracts, however, but one governed by this Court's jurisdiction over receivership property based on the TRO and Amended Preliminary Injunction. The Receiver does not claim that the funds must be turned over according to, or by adopting, a contract signed between Integretel and Access One/Network One. The Receiver is seeking to recover the reserve funds pursuant to the Court's in rem jurisdiction over receivership property, as memorialized in the TRO and the Amended Preliminary Injunction. A federal court possesses broad authority to issue various ancillary relief measures in enforcing actions brought by federal agencies. See FTC v.

5

Productive Mktg., Inc., 136 F. Supp. 2d 1096, 1104 (C.D. 2001); SEC v. Wenke, 622 F.2d 1363,

1371 (9th Cir. 1980) ("the Supreme Court has repeatedly emphasized the broad equitable powers

of the federal courts to shape equitable remedies to the necessities of particular cases, especially

where a federal agency seeks enforcement in the public interest."). A receivership order issued to

preserve the assets of the receivership estate is a classic example of a district court's exercise of

in rem jurisdiction over receivership property. See Productive Mktg., 136 F. Supp. 2d at 1105;

Wenke, 622 F.2d at 1369 (stating that a federal district court's power to issue a stay against all

persons concerning all proceedings against the receivership entities "rests as much on its control

over the property placed in receivership as on its jurisdiction over the parties to the securities

fraud action"). "[R]eceivers are not bound by the contracts of the entity that they are appointed to

protect. The receiver becomes bound only when it affirmatively adopts the obligations of the

entity that it is protecting." City Bank, NA v. Nyland (CF8) Ltd., 839 F.2d 93, 98 (2d Cir. 1987).

The Court declines to stay adjudication of the contract claims.

Integretel argues that the TRO and Amended Preliminary Injunction would be invalid if

they enabled the Court to determine Integretel's ownership interest (or lack thereof) in the reserve

funds without first requiring the Receiver to institute a new, separate legal proceeding. Issues

concerning entitlement to disputed receivership property, in fact, are the types of issues typically

determined via summary proceedings in the federal court equity receivership context. See

Wenke, 783 F.2d at 837-38 (stating that claims of nonparties to property claimed by receivers can

be resolved via summary proceedings, which reduced the time necessary to settle disputes,

decrease litigation costs and prevent dissipation of receivership assets, as long as there is notice

to the non-party and an opportunity to be heard, thereby satisfying due process).

6

Integretel maintains that the Court deprived it of due process when it issued the TRO and

Amended Preliminary Injunction without previously providing notice and an opportunity to be

heard. A temporary restraining order or injunction is properly issued and binding so long as the

party against whom it is being issued had a chance to defend fully the legitimacy of the eventual

claim. Accordingly, it is irrelevant whether the party had been given a chance to oppose the

order prior to its issuance. See FTC v. Assail, Inc., 410 F.3d 256, 268 (5th Cir. 2005) (finding

that attorney for non-parties to receive fees that resulted from fraud had opportunity to defend

self at hearing to determine whether disputed funds were subject to turnover order and thus had

adequate notice and opportunity to be heard). Here, Integretel has briefed these issues in three

separate briefs, its response, its motion to modify, and its motion to stay. It has, without

question, had an opportunity to be heard on this issue.

Integretel argues that the TRO and Amended Preliminary Injunction are invalid because

the FTC and the Receiver thereby have unbridled discretion to decide what cooperation is

required and from whom, which is allegedly further compounded by the fact that the FTC and

Receiver are interested in maximizing the amount of money, and subsequent recovery, in the

receivership estate. While Integretel has accurately pinpointed the Receiver's and the FTC's

goals, its attacks on the Court's orders fail. That cooperation clauses are standard in federal court

receivership orders goes without saying. In Productive Mktg., when a non-party argued it was

not bound by the cooperation clause, the district court disagreed because the injunction, as a

receivership order, was required to be read reasonably in light of its stated purpose, to account for

and preserve the assets of the receivership estate. 136 F. Supp. 2d at 1109-10. Otherwise stated,

the receiver could not unreasonably use the cooperation clause for whatever purpose he wished.

Rather, the only reasonable interpretation of the clause was for it to be used consistently with the objective of the injunction, to require non-parties (and parties) that hold assets of the receivership estate to disclose information to the receiver relating to those assets and, if necessary, turn over such assets to the receiver. See id. at 1110. Cooperation clauses are enforceable, even against non-parties.

Integretel concedes that it was bound by the TRO if it acted in concert or participated with Access One and/or Network One, but Integretel claims that no such allegation has been made (or could be made, for that matter). The FTC has made such allegations in its First Amended Complaint, alleging that Integretel participated and acted in concert with Access One and Network One in the alleged fraud. (See First Amended Complaint, Paragraphs 24, 27, 28, 30, 37.)

Integretel also argues that the TRO is overbroad because it allows the Receiver to demand a turnover of disputed funds. To that end, Integretel posits that in rem jurisdiction only applies to undisputed receivership property and does not apply when funds are disputed and not in the possession of the Court. District courts have in rem jurisdiction over disputed receivership property and therefore can bind non-parties (such as Integretel), through orders to protect and preserve disputed receivership property, and district courts have jurisdiction to enforce orders against non-parties concerning ownership of disputed funds, whether or not such funds are in the non-parties' possession. See Productive Mktg., 136 F. Supp. 2d at 1106 ("if the Court cannot compel [the non-party] to turn over assets in its possession belonging to the receivership estate, the receiver will be unable to provide adequate redress to consumers who have been defrauded by

8

Defendants because [the non-party's] conduct imperiled the Court's ability to render an effective judgment, the Court may properly enjoin it, even though it is not a party to the action.").

Integretel also maintains that the turnover clause is invalid and, in any event, was never triggered, because the Receiver never made a "formal" demand for the reserve funds. The purpose of a federal district court's jurisdiction over receivership property via a preliminary injunction (or similar order) is to preserve the assets resulting from the improper actions of the receivership defendants, whether held by parties or non-parties, to provide redress for the legitimately defrauded investors. See Productive Mktg., 136 F.Supp. 2d at 1105-1106. Thus, it is not reasonable to expect the Receiver to know about the reserves, and thereafter make a "formal" demand for them if it had not been previously informed of their existence.

Integretel, as a party, also argues that the Amended Preliminary Injunction is invalid under Rule 65 because it did not receive notice of its issuance. Integretel also maintains that neither the FTC nor the Receiver has made the requisite showing in their unverified papers to enforce an injunction against it. An injunction is properly issued and binding so long as the party opposing it is given a chance to defend the legitimacy of the claim being made under it. It is of no consequence whether the party has been given a chance to oppose the injunction prior to its issuance. See SEC v. Elfindepan, S. A., 2002 WL 31165146 at*5 (finding that party in the context of contempt motion had been given full opportunity to defend ownership interest in disputed funds; that party did not have opportunity to defend itself prior to issuance of the injunction did not render the injunction invalid).

Integretel believes it has acted properly from "day one" and had no reason to ask for clarification of the subject Orders until the Receiver filed its show cause motion because it

9

believed that its interpretation of the Orders was proper, or at least in good faith. One's state of

mind is irrelevant for purposes of unilateral interpretation of court orders, however. See Goya

Foods, Inc. v. Wallack Management Co., 290 F.3d 63, 75-76 (1st Cir. 2002) ("When a legitimate

question exists as to the scope or effectiveness of the court's order, those who know of the

decree, yet act unilaterally, assume the risk of mistaken judgments. Adhering to this principle,

the appellants could have asked the district court for clarification...but they eschewed that

course....They chose instead to rely on their own judgment as to whether the orders remained in

effect. In so doing, the appellants acted at their peril.").

Integretel also seeks to modify the TRO, Preliminary Injunction and Amended

Preliminary Injunction. Because the subject Orders are valid for the reasons stated herein, there

is no reason to modify them. Furthermore, the requested modifications would unnecessarily

increase litigation costs by forcing the Receiver to obtain an extra precondition order by litigating

every potential act that constitutes proper cooperation and affect every potential target of such

corporation, thereby exponentially increasing the amount of time it would take for the Receiver

to obtain receivership property. The proposed modifications would also be unwieldy because

they would make pre-receivership contracts that the Receiver does not ratify nevertheless binding

on him, and would require separate, plenary proceedings when a summary proceeding can

adequately account for determination of these issues.

The Receiver also moves to request that the BSG Defendants transfer additional reserves

in the amount of $328,050.83 as of December 8, 2006, and, as noted $930,052.99 as of August 6,

2007. These Defendants previously transferred $952,045.67 in reserves to the Receiver on or

about March 24, 2006. The Receiver requests that these Defendants transfer these additional

10

reserves, produce all documents relating to the reserves withheld since March 24, 2006, and to produce any future reserves that they collect to the Receiver along with any documents relating thereto.

The BSG Defendants join in Integretel's arguments as to the validity of the TRO and the Amended Preliminary Injunction. Additionally, the BSG Defendants request modification of the injunctive orders and request a stay of the underlying contract claims. The Court has already rejected these arguments. As to the contract claims, the contracts the BSG Defendants attach in support of their argument to retain the Reserves are incomplete, undated, unsigned and do not reflect the parties thereto. The Court, based on these incomplete documents, cannot say that the BSG Defendants are entitled to retain the reserves. It is hereby

ORDERED AND ADJUDGED that the Receiver's Revised Motion for Order to Show Cause Why Integretel Should Not Be Held in Contempt of Court, filed October 16, 2006 [DE 246], is GRANTED. Integretel shall show cause in writing within 10 days of the date of this Order why it should not be held in contempt for failure to turn over the reserves. In addition, Integretel shall provide a sworn statement identifying the amount of reserves as of the issuance of the TRO. The Court further orders that these funds shall be placed in a segregated Receivership account. It is further

ORDERED AND ADJUDGED that Integretel's Motion to Modify Prior Injunctive Orders, filed October 30, 2006 [DE 294], is DENIED. It is further

ORDERED AND ADJUDGED that Integretel's Motion to Stay Contract Claims, filed December 29, 2006 [DE 363], is DENIED. It is further

11

ORDERED AND ADJUDGED that the Receiver's Motion Requesting BSG Defendants

To Transfer Additional Reserves, filed January 12, 2007 [DE 371], is GRANTED.  The BSG

Defendants are ordered to transfer the additional reserves they have withheld since their initial

transfer of reserves to the Receiver on or about March 24, 2006.  The BSG Defendants shall also

produce any future reserves they collect so as to avoid future motions to this effect.  The BSG

Defendants shall also produce all documents relating to the reserves held since March 24, 2006.

The Court requests that this money be placed in a segregated receivership account.

DONE AND ORDERED at Chambers in West Palm Beach, Florida this 13th day of

September, 2007.

S/Kenneth L. Ryskamp
KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 06-80180-CIV-RYSKAMP/VITUNAC

FEDERAL TRADE COMMISSION,

      Plaintiff,

v.

NATIONWIDE CONNECTIONS, INC.,
et al.

      Defendants.
_____/

## ORDER GRANTING MOTION FOR CLARIFICATION AS TO SCOPE OF STAY

THIS CAUSE comes before the Court pursuant to the FTC's Emergency Motion for Clarification That the Automatic Stay Does Not Apply to the FTC's Law Enforcement Action and the Ongoing Contempt Proceeding, filed September 21, 2007 **[DE 618]**.

Integretel became a Defendant in this action on September 21, 2006. Unbeknownst to the Court, Integretel was holding more than $1.35 million in reserve funds that belonged to two of the Nationwide defendants, Access One and Network One, in spite of several provisions of the Temporary Restraining Order in Preliminary Injunction requiring it to turn said funds over to the Receiver. When the Receiver learned of the existence of these funds, it filed its Motion for an Order to Show Cause Why Integretel Should Not Be Held in Contempt. On Friday, September 14, 2007, this Court issued its Omnibus Order in which it ruled that the reserve funds are the property of the receivership estate and ordered Integretel to pay the current reserve funds, amounting to $1,762,762.56, immediately to the Receiver. The Court also ordered Integretel to show cause in writing within 10 days why it should not be held in contempt for failing to turn

 EXHIBIT P

2

over the reserve funds. Two days later, on September 16, 2007, Integretel filed a petition for

Chapter 11 bankruptcy in the United States Bankruptcy Court, Northern District of California,

San Jose Division, Case No. 07-52890. Integretel maintains in its bankruptcy filings that it

"currently owes nothing to Receiver." Integretel further maintains that "it will ultimately

prevail... with respect to amounts which are the subject and required to be paid under the

[Omnibus Order]." On September 20, 2007 **[DE 617]**, the Court stayed this proceeding against

Integretel pursuant to 11 U.S.C. § 362(a). The FTC requests that this Court clarify that the

automatic bankruptcy stay does not apply to the prosecution of its enforcement action or the

ongoing contempt proceeding.

The FTC's prosecution of this action to protect consumers from unfair and deceptive

trade practices is excepted from the automatic stay pursuant to 11 U.S.C. § 362(b)(4), the

governmental regulatory exception to the stay. The statute provides as follows:

> (b) the filing of a petition under section 30 1,302, or 303 of this
> title... does not operate as a stay-...
>
> (4) under (1), (2), (3), or (6) of subsection (a) of this section, of the
> commencement or continuation of an action or proceeding by a
> governmental unit...to enforce such governmental unit's...police
> power and regulatory power, including the enforcement of a
> judgment other than a money judgment....

Thus, to the extent provided in the aforementioned section, governmental regulatory or police

actions are excepted from the automatic stay of:

> (1)     the commencement or continuation... of a judicial,
>          administrative, or other action or proceeding against the
>          debtor...;

3

    (2)    the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the [bankruptcy] case...;

    (3)    any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;... [and]

    (6)    any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the [bankruptcy] case....

11 U.S.C. § 362(a). The legislative history specifically states that this exception applies to suits by the government "to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar regulatory laws." H.R. Rep. No. 989, 95th Cong., 2d Sess. 52, *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 5838.

    Various courts have recognized that actions brought by the FTC pursuant to 15 U.S.C. § 53(b), Section 13(b) of the FTC Act, are not subject to the automatic stay. See In re First Alliance Mortgage Co., 264 B.R. 634, 647-51 (C.D. Cal. 2001) (reversing the Bankruptcy Court in holding that FTC's action to enforce consumer protection unfair lending loss falls within the 11 U.S.C. § 362(b)(4) exemption from the stay); FTC v. American Standard Credit Systems, 874 F. Supp. 1080, 1083 (C.D. Cal. 1994).

    The FTC also seeks monetary relief, including disgorgement, restitution and consumer redress. The dual purposes of determining unlawful behavior by making such behavior more expensive and holding violating parties accountable bring this action squarely within the police and regulatory powers exemption. See SEC v. Brennan, 230 F.3d 65, 72 (2d Cir. 2000) ("When the government seeks to impose financial liability on a party, it is plainly acting in its police or regulatory capacity..."). Accordingly, the exemption permits continuation of this action for

4

injunctive relief against Integretel and the entry of a money judgment against same.

Nor is the contempt proceeding stayed. First, the automatic stay applies only to protect property of the bankruptcy estate or property of the debtor. See 11 U.S.C. § 362(a)(2). The Court has already ruled that the reserve funds are neither the property of the "bankruptcy estate" nor Integretel. Second, the 11 U.S.C. § 362(b)(4) exception also applies to civil contempt proceedings brought by a governmental unit in the exercise of its police or regulatory powers. See SEC v. Bilzerian, 131 F. Supp. 2d 10, 14 (D.D.C. 2001) (civil contempt proceeding falls within the exception; incarceration of debtor subsequent to failure to provide financial information as required by purgation provision in prior disgorgement order). Finally, the bankruptcy filing does not deprive this Court of its inherent power to enforce the integrity of its orders. "[C]ontempt orders to uphold the dignity of the court are excepted from the automatic stay." NRLB v. Sawulski, 158 B.R. 971, 975 (E.D. Mich. 1993). Accordingly, it is hereby

ORDERED AND ADJUDGED that the motion is GRANTED. The commencement of Integretel's bankruptcy case does not stay either the pending contempt proceeding against Integretel, including the turnover order, or the FTC's prosecution of this consumer protection action against Integretel. The September 20, 2007 Order staying proceedings against Integretel is VACATED.

DONE AND ORDERED at Chambers in West Palm Beach, Florida, this 21st day of September, 2007.

S/Kenneth L. Ryskamp
KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 06-80180-CIV-RYSKAMP/VITUNAC

FEDERAL TRADE COMMISSION,

    Plaintiff,

v.

NATIONWIDE CONNECTIONS, INC., et al.

    Defendants.

_____/

## ORDER DENYING RECEIVER'S EMERGENCY MOTION IN FURTHERANCE OF THE PENDING CONTEMPT PROCEEDING

THIS CAUSE comes before the Court pursuant to the Receiver's Emergency Motion in Furtherance of Pending Contempt Proceeding, filed September 24, 2007 **[DE 623]**. Integretel objected to the motion on September 24, 2007 **[DE 622]**.

On September 16, 2007, Integretel filed a petition for Chapter 11 bankruptcy in the United States Bankruptcy Court, Northern District of California, San Jose Division, Case No. 07-52890. The Bankruptcy Court conducted a hearing on Friday, September 21, 2007 on Integretel's Motion for Use of Cash Collateral. During the hearing, Integretel argued that it need not transfer the reserve funds to the Receiver. The Bankruptcy Judge has requested additional briefing, with said briefs to be filed and served on Monday, September 24, 2007. A hearing on the Motion for Use of Cash Collateral has been rescheduled for Wednesday, September 26, 2007 at 2:15 p.m., Pacific Time.

The Receiver requests that Integretel wire transfer before 5:00 p.m., Eastern Standard



EXHIBIT **Q**

2

Time, on Tuesday, September 25, 2007, the $1,762,762.56 in reserve funds that this Court had specifically ordered Integretel to "immediately" transferred to the Receiver. In the event that Integretel does not effect said transfer, the Receiver requests that Integretel's designated control person, Ken Dawson, appear before this Court in person on September 26, 2007.

The Court declines to grant the Receiver its requested relief on the grounds that the Bankruptcy Court should have the opportunity to make its own determination as to Integretel's motion. Accordingly, it is hereby

ORDERED AND ADJUDGED that the motion, filed September 24, 2007 **[DE 623]**, is DENIED.

DONE AND ORDERED at Chambers in West Palm Beach, Florida this 24th day of September, 2007.

S/Kenneth L. Ryskamp
KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 06-80180-CIV-RYSKAMP/VITUNAC

FEDERAL TRADE COMMISSION,

       Plaintiff,

v.

NATIONWIDE CONNECTIONS, INC., et al.,

       Defendants.

_____/

## ORDER CONDITIONALLY GRANTING INTEGRETEL'S EMERGENCY MOTION FOR STAY PENDING APPEAL

THIS CAUSE comes before the Court pursuant to Integretel's Emergency Motion for Stay Pending Appeal, filed September 25, 2007 [DE 628]. The Receiver responded on September 26, 2007 [DE 626]. Integretel replied on September 26, 2007 [DE 629].

Integretel requests that this Court stay enforcement of its September 14, 2007 [DE 610] Omnibus Order, and its September 21, 2007 [DE 619] Order Granting Motion for Clarification As to Scope of Stay. Both of these orders require Integretel immediately to turn over the $1,762,762.56 in reserve funds to the Receiver. The Receiver consents to the stay, provided that Integretel transfers the $1,762,762.56 in reserve funds to the Receiver, which the Receiver will preserve in a segregated account during the pendency of any appeal. Accordingly, it is hereby

ORDERED AND ADJUDGED that the motion is CONDITIONALLY GRANTED. The Court will stay enforcement of its September 14, 2007 and September 21, 2007 Orders provided that Integretel transfers the amount of $1,762,762.56, representing the reserve funds, to the Receiver *within three days of the date of this Order*. The Receiver shall then keep those funds

EXHIBIT 

2

in a segregated account during the pendency of any appeal.

DONE AND ORDERED at Chambers in West Palm Beach, Florida this 26th day of

September, 2007.

S/Kenneth L. Ryskamp
KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE

single receivership estate and is apparently commingling all receivership funds in a single account.[138] Thus, any money paid by Integretel will be available to pay consumer claims arising from transactions processed by the other aggregator defendants as well as the claims of other creditors of the receivership defendants. The dollar amount of the transactions processed by the other aggregator defendants are alleged to be several times the volume of Integretel's transactions.[139] This means that only a small percentage of any money Integretel paid to the Receiver would be used to pay claims on which Integretel is potentially liable, and that as a result Integretel would face a substantial risk of incurring multiple liability. Integretel therefore has an entirely reasonable and legitimate reason for contesting the Receiver's claim.

3. Above and beyond Integretel's right to use the IGT Reserve to cover potential Adjustments due to consumer claims, Integretel is entitled to use the reserve to cover its own claims against Access One and Network One for indemnification. Each contract includes an indemnification clause under which the client agreed to indemnify Integretel from, among other things, all liabilities, claims, and attorney's fees arising from the client's breach of the contract or from the clients' billing transactions.[140] That obligation is triggered here for two reasons. First, the fact that Access One and Network One committed billing fraud means that they breached their warranty that they would comply with the law throughout the term of the contracts.[141] Second, Integretel is being exposed to claims and potential liability, and is incurring attorney's fees, as a result of Access One and Network One's billing transactions.

---

138. *See, e.g.,* Receiver's First Interim Fee App. at 3 (referring to "the receivership estate" in the singular); *id.* at 4 (referring to "the receivership account" in the singular); *id.* at 10–11 (presenting fee claim as lump sums rather than providing entity-by-entity breakdown).

139. *See* First Am. Compl. ¶¶ 41, 42 (D.E. 255).

140. Dawson Decl. Ex. 1 at 2, § 11 (Access One); Dawson Decl. Ex. 2 at 3, § 11 (Network One).

141. Dawson Decl. Ex. 1 at 1, § 7 (Access One); Dawson Decl. Ex. 2 at 3, § 7 (Network One).

0022

RER-27    1202

## Miscellaneous:

07-52890 The Billing Resource
 Type: bk                          Chapter: 11 v               Office: 5 (San Jose)
 Judge: ASW                        Assets: y                   Case Flag: PlnDue, DsclsDue

### U.S. Bankruptcy Court

### Northern District of California

Notice of Electronic Filing

The following transaction was received from Schwartz, Steven J. entered on 10/10/2007 at 5:21 PM
PDT and filed on 10/10/2007
**Case Name:**       The Billing Resource
**Case Number:**     07-52890
**Document Number:** 131

**Docket Text:**
Third Request To Take Judicial Notice *of David R. Chase, Federal Receiver in Opposition to Motion for
Authority to Use Cash Collateral* Filed by Creditor David R Chase (Schwartz, Steven)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**J:\CYC\Integretel New RJN.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1017961465 [Date=10/10/2007] [FileNumber=6827163-
0] [604da48469ed2a0b924a1702389fc6caa3eb55670d2a445d35b77c46b81870ad74
63b85a76f6dae3339e89072ec5085c147f0974dd41319b0ec52b490bd6573e]]

**07-52890 Notice will be electronically mailed to:**

Michael H. Ahrens    mahrens@sheppardmullin.com

Leslie A. Cohen    lcohen@linerlaw.com, jparrott@linerlaw.com;ecolson@linerlaw.com

Michaeline H. Correa    MCorrea@hewm.com

Kathryn S. Diemer    kdiemer@diemerwhitman.com

John D. Fiero    jfiero@pszyjw.com, AZaragoza@PSZYJW.com;pjeffries@pszyjw.com

Ellen A. Friedman    efriedman@friedumspring.com, mmyles@friedumspring.com

Jeffrey K. Garfinkle    bkgroup@buchalter.com

David M. Goodrich    dgoodrich@goodlawcorp.com

Ori Katz    okatz@sheppardmullin.com, dwhitehead@sheppardmullin.com

Darryl S. Laddin    bkrfilings@agg.com

John A. Lapinski    jlapinski@clarktrev.com

Bobby C. Lawyer    bl2153@att.com

Barry R. Levine    barlev@levineatlaw.com

Julie A. Mack    jmack@ftc.gov, dabueid@ftc.gov

Breck E. Milde    bmilde@terra-law.com

Shannon L. Mounger-Lum    shannon.l.mounger-lum@usdoj.gov

Office of the U.S. Trustee / SJ    USTPRegion17.SJ.ECF@usdoj.gov

Jeffrey K. Rehfeld    jrehfeld@sheppardmullin.com, ewalters@sheppardmullin.com

Karen Rinehart    krinehart@omm.com

Steven B. Sacks    ssacks@sheppardmullin.com, ewalters@smrh.com

Steven J. Schwartz    sschwartz@dgdk.com

Gilbert B. Weisman    notices@becket-lee.com

**07-52890 Notice will not be electronically mailed to:**

Daniel H. Coleman
Network Telephone Services, Inc.
21135 Erwin St.
Woodland Hills, CA 91367

Ken Dawson
5883 Rue Ferrari
San Jose, CA 95138

Holland & Knight LLP
,

Tighe Patton Armstrong Teasdale, PLLC
,