1    v. Kaufman (In re J.B. Koplik & Co.), 114 F.2d 40, 42-43 (2d Cir.

2    1940); Grubb v. Gen. Contract Purchase Corp., 94 F.2d 70, 72-73

3    (2d Cir. 1938) (L. Hand, J.).  We have held that where a debtor

4    receives funds subject to a clear obligation to use that money to

5    pay off a preexisting debt, and the funds are in fact used for

6    that purpose, those funds do not become part of the estate and

7    the transfer cannot be avoided in bankruptcy.  See Grubb, 94 F.2d

8    at 73.  However, we have been equally clear that where a new

9    creditor provides funds to the debtor with no specific

10   requirement as to their use, the funds do become part of the

11   estate and any transfer of the funds out of the estate is

12   potentially subject to trustee's avoidance powers.  See Smyth,

13   114 F.2d at 42 (finding that transfer could be avoided where

14   "nothing indicat[ed] that [the new creditor] loaned this $500 on

15   condition that it should be applied to this particular

16   creditor.").  This result does not change even where the new

17   creditor knows, but does not require, that the new loan funds

18   will be used to pay off a preexisting debt.  See id.

19        In this case, the bankruptcy court found that Flanagan's

20   father provided the family loan for the specific purpose of

21   paying the federal judgment.  There was no doubt that the

22   debtor's father made such funds available "for the sole purpose

23   of purging Flanagan's contempt before Judge Covello through

24   satisfaction of the underlying Judgment."  This factual finding

25   is not clearly erroneous and we accept it on this appeal.

25

1    The trustee does not seriously dispute that the family loan

2    was made for the purpose of allowing Flanagan to pay the federal

3    judgment.  She insists, however, that the earmarking defense does

4    not apply because Flanagan obtained possession of the funds

5    temporarily.  The fact that Flanagan temporarily had possession

6    of the family loan funds does not necessarily demonstrate that

7    Flanagan had control of them.  The proper application of the

8    earmarking doctrine depends not on whether the debtor temporarily

9    obtains possession of new loan funds, but instead on whether the

10   debtor is obligated to use those funds to pay an antecedent debt.

11   See 5 Collier on Bankruptcy ¶ 547.03[2], at 547-24 ("The

12   [earmarking] rule is the same regardless of whether the proceeds

13   of the loan are transferred directly by the lender to the

14   creditor or are paid to the debtor with the understanding that

15   they will be paid to the creditor in satisfaction of his claim

16   . . . ."); see also Superior Stamp, 223 F.3d at 1009.  Compare

17   Grubb, 94 F.2d at 73 with Smyth, 114 F.2d at 42.  Flanagan's

18   receipt of the family loan funds was specifically conditioned

19   upon his use of those funds to pay the federal judgment, and he

20   never obtained control of the funds in the sense of being able to

21   control how they were ultimately distributed.  The earmarking

22   doctrine therefore potentially applies to protect the Payment

23   from avoidance.

24   There is, nonetheless, an important limitation on the

25   earmarking doctrine.  The doctrine will only protect a transfer

26   from avoidance to the extent it did not diminish the debtor's

26

1   estate.  _Glinka_, 97 F.3d at 28.  Where a debtor replaces an
2   unsecured obligation with a secured obligation, the payment is
3   voidable to the extent of the collateral transferred by the
4   debtor.  _Id_. ("[T]o the extent that the debtor offered its own
5   property as collateral for the [loan], the debtor transferred an
6   interest in its property and therefore the earmarking defense is
7   not available."); _see_ _also_ _Mandross_, 825 F.2d at 1071.  In the
8   case at hand, Flanagan satisfied the unsecured obligation of the
9   federal judgment by taking on the secured obligation of the
10  family loan.  However, the bankruptcy court also found that the
11  lien obtained by the debtor's father in the Thompson & Peck stock
12  supplanted Babacas's lien in the stock.  As a consequence, the
13  bankruptcy court concluded the net diminution of the estate was
14  equal to the difference between the Babacas loan ($85,000) and
15  the Payment ($99,542.87), or the extent to which John Flanagan
16  encumbered previously unencumbered property of the debtor estate
17  to enable the Payment.
18      The trustee disputes the bankruptcy court's finding that the
19  family loan lien supplanted, rather than merely subordinated,
20  Babacas's lien.  We believe the bankruptcy court's finding that
21  the Babacas lien was supplanted by the family loan lien finds
22  support in the record and is not clearly erroneous.
23  Consequently, we conclude that the Payment can be avoided by the
24  trustee, but only in the amount of $14,542.87.


27

1
2
3
4

## CONCLUSION

Accordingly, for the foregoing reasons, the judgment of the district court is affirmed and appellees' motion to dismiss for lack of subject matter jurisdiction is denied.

28

**RER - 29**

1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
2     Including Professional Corporations
   MICHAEL H. AHRENS, Cal. Bar No. 44766
3  JEFFREY K. REHFELD, Cal. Bar No. 188128
   ORI KATZ, Cal. Bar No. 209561
4  Four Embarcadero Center, 17th Floor
   San Francisco, California  94111-4106
5  Telephone:   415-434-9100
   Facsimile:   415-434-3947
6  Email:      mahrens@sheppardmullin.com
            jrehfeld@sheppardmullin.com
7              okatz@sheppardmullin.com

8  Proposed Attorneys for The Billing Resource,
   dba Integretel
9

10            UNITED STATES BANKRUPTCY COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12               SAN JOSE DIVISION

13

| | |
|---|---|
| In re | Case No. Case No. 07-52890 |
| THE BILLING RESOURCE, dba INTEGRETEL, a California corporation, | Chapter 11 |
| Debtor. | **SUPPLEMENTAL DECLARATION OF KEN DAWSON IN SUPPORT OF USE OF CASH COLLATERAL ON A FURTHER INTERIM BASIS INCLUDING APPROVAL OF FIRST AMENDED PAYMENTONE STIPULATION THROUGH AND INCLUDING NOVEMBER 2, 2007 AND OMNIBUS REPLY TO DEBTOR'S CASH COLLATERAL MOTION** |
| Tax ID: 33-0289863 | |

Date:      October 15, 2007
Time:     2:00 p.m.
Place:     United States Bankruptcy Court
             280 South First Street
             San Jose, California
Judge:     Hon. Arthur S. Weissbrodt
Courtroom: 3020

I, Ken Dawson, declare as follows:

1.    I am the President and Secretary of The Billing Resource, dba Integretel, a California corporation (the "Debtor"), the named debtor in this case. I make this declaration in that capacity. I was one of the Debtor's founders in 1988 and I have been with the company ever since. I have personal knowledge of the matters set forth below. If called upon to testify as to those matter I could and would do so competently.

2.    On September 16, 2007, I executed a declaration ("Prior Declaration") in support of Debtor's "Emergency Motion for Use of Cash Collateral and Granting Replacement Liens" (the "Motion"). Capitalized terms not defined herein have the same definitions set forth in my Prior Declaration. Since the Debtor filed the Motion and my Prior Declaration, various parties have filed objections to the Motion. I submit this supplemental declaration in support of Debtor's use of cash collateral on a further interim basis.

3.    Public Communication is one of Debtor's customers asserting an interest in cash collateral. In Public Communication's supplemental objection filed October 10, 2007, Public Communication states that in 2004, PaymentOne, the subsidiary of Debtor that had a contractual relationship with Public Communication, assigned the contract to Debtor without Public Communication's consent. As set forth in Debtor's reply to which this declaration is attached, PaymentOne was authorized under Section 20(d) of its contract with Public Communication to make the assignment without Public Communication's consent. Moreover, on June 8, 2004, right after the assignment, I sent a letter to Public Communication notifying Public Communication of the assignment. I included a copy of the assignment with my letter. A true and correct copy of my June 8, 2004 letter is attached hereto as Exhibit "1".

4.    Personal Voice is a customer of Debtor that filed an opposition to the Motion on October 11, 2007. Personal Voice asserts that it maintained ownership of billing transaction receivables generated from Personal Voice providing services to end users, and did not transfer the receivables to Debtor. This is not true. Nothing in the agreement between Debtor and Personal Voice states that Personal Voice is maintaining ownership of anything. Moreover, it is common knowledge in this industry that the Debtor would be selling the billing transaction receivables to

1   the LECs and that the Debtor's contracts with the LECs are structured as the purchase by the LECs

2   of the Debtor's accounts receivable, which obviously could not be done if Personal Voice retained

3   title to the receivables.

4       5.    At the October 10 meeting with the Committee, the Committee agreed to support

5   the Debtor's prepayment plan with respect to the Debtor's pre-petition customers, which the

6   Debtor considers to be a very favorable result.  A summary of the Debtor's prepayment plan is

7   attached hereto as Exhibit "2."

8       6.    Attached hereto as Exhibit "3" is a further proposed cash collateral order in

9   substantially the form the Debtor currently intends to present to the Court at the October 15

10  hearing.

11      I declare under penalty of perjury under the laws of the United States of America that the

12  foregoing is true and correct.  Executed this 11th day of October, 2007, at San Jose, California.

13

14

15  

    KEN DAWSON

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "1"



**Integretel**
BILLING SOLUTIONS

June 8, 2004

Mr. Paul Jennings                          VIA FAX (310) 473-4714
Public Communications Services, Inc.       and standard U.S. mail
11859 Wilshire Blvd., Suite 600
Los Angeles, CA 90025

RE: Master Services Agreement dated ("Agreement")

Dear Mr. Jennings:

Notice is hereby given that PaymentOne Corporation (f/k/a eBillit, Inc.) has assigned all
of its rights and obligations under the above captioned Agreement to Integretel,
Incorporated as evidenced on the attached assignment. Please direct any notices that
may be required under Section 17 of the Agreement to my attention. Your day-to-day
contacts will remain the same since Integretel was previously providing service support
to PCS on behalf of PaymentOne through an inter-company contract.

Sincerely,

Ken Dawson,
President


CC:    B. Neitzel
       B. Philbin
       H. Claus
       C. Parlove (Pay1)


INTEGRETEL, INC. • 5883 RUE FERRARI • SAN JOSE • CA • 95138 • 408.362.4000 TEL.

**EXHIBIT "1"**

## ASSIGNMENT OF MASTER SERVICES AGREEMENT

WHEREAS, Public Communication services, Inc., a California corporation ("PCS") and PaymentOne Corporation, a Delaware corporation f/k/a eBillit, Inc. ("PAY1") are parties to that certain Master Services Agreement dated October 1, 2002 ("Agreement"); and

WHEREAS, PAY1 wishes to assign all of its rights and obligations under the Agreement to Integretel, Incorporated, a California corporation ("Integretel") and Integretel holds a majority ownership interest in PAY1 and, therefore, qualifies as a permitted assignee under the Agreement.

NOW, THEREFORE, in consideration of the foregoing:

Pursuant to Section 20(d) of the Agreement, PAY1 does hereby assign all of its rights and obligations under the Agreement to Integretel, effective as of June 1, 2004. Integretel does hereby accept such assignment from PAY1.

IN WITNESS WHEREOF:

**PaymentOne Corporation**

By _____

Evan B. Meyer

Its    CFO

**Integretel, Incorporated**

By _____

Ken Dawson

Its    President

# EXHIBIT "2"

## PREPAYMENT FOR BILLING TRANSACTIONS

This memo will summarize the prepayment that The Billing Resource d/b/a Integretel ("TBR") intends to pursue with respect to Billing Transactions submitted to it after it filed its Bankruptcy Petition.

All post-petition billing transactions will be paid in two installments with a final reconciliation done at the normal settlement time. Specifically, each week TBR will pay 50% of the Estimated Net Diluted Value of the billing transactions processed the prior week. For this purpose, "Estimated Net Diluted Value" shall mean the average return rate established for each client account based on the recent settlement periods. On or about sixty (60) days following the Deposit Date, we will pay the remaining 50% of the Estimated Diluted Value. The term Deposit Date as used herein refers to the date the Billing Transactions are shipped to the LECs. The customary settlement reporting will be done around 90 days after the Deposit Date. The actual results will be compared to the prepayments, and any difference will be reconciled on the next prepayment date.

By way of example, assume a client submits $100,000 in gross billings in Week 1 having an Estimated Net Diluted Value of Seventy Percent (70%). In Week 2, we will prepay $35,000, and in Week 9, we will prepay an additional $35,000. Around Week 14, we will complete the settlement reporting, and any delta between the two advances and the actual results will be applied as an adjustment to the next scheduled prepayment event.

By way of further example, a Billing Transaction submitted on September 17 would be eligible since it is submitted "post-petition." A typical Deposit Date would be September 21. The prepayment of 50% would be made on September 27.

To further maximize trailing cash flow, the IGT Reserve rate will be set to zero on all client accounts. The IGT Reserve rate will remain at zero unless an extraordinary event occurs, including (a) a substantial (25% or more) decrease in post-petition billings; (b) an investigation or subpoena is initiated by a regulatory or law enforcement agency; (c) a lawsuit is filed against Integretel concerning the client's billings; (d) a lawsuit is filed against the client, and Integretel is expected to incur significant expenses supporting discovery efforts; or (e) LECs increase their current cash reserved as of the petition date. In the event the need arises to withhold an IGT Reserve pursuant to the applicable contract, the amount, if any, that is in excess of the client's pro-rata share of amounts held by LECs will be deposited into a segregated account for the benefit of the client.

**EXHIBIT "2"**

RER-29        1263

# EXHIBIT "3"

RER-29     1264

1 | SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
2 |   A Limited Liability Partnership
     Including Professional Corporations
3 | MICHAEL H. AHRENS,
   Cal. Bar No. 44766
4 | JEFFREY K. REHFELD,
   Cal. Bar No. 188128
5 | ORI KATZ,
   Cal. Bar No. 209561
6 | Four Embarcadero Center, 17th Floor
   San Francisco, CA 94111
7 | Telephone:    415-434-9100
   Facsimile:    415-434-3947
8 |
9 | Attorneys for Debtor and Debtor-in-
   Possession
10 | The Billing Resource, dba Integretel

11 | UNITED STATES BANKRUPTCY COURT

12 | NORTHERN DISTRICT OF CALIFORNIA

13 | SAN JOSE DIVISION

14 |

15 | In re:                                   )   Case No. 07-52890 ASW
                                             )
16 | THE BILLING RESOURCE, dba               )   Chapter 11
   INTEGRETEL, a California corporation      )
17 |                                         )   **FURTHER ORDER APPROVING**
            Debtor.                          )   **INTERIM USE OF CASH COLLATERAL**
18 |                                         )   **AND GRANTING REPLACEMENT**
                                             )   **LIENS AND APPROVING FIRST**
19 |                                         )   **AMENDED STIPULATION WITH**
                                             )   **PAYMENTONE CORPORATION**
20 |                                         )   **REGARDING USE OF CASH**
                                             )   **COLLATERAL AND ADEQUATE**
21 |                                         )   **PROTECTION ON AN INTERIM BASIS**
                                             )   **THROUGH AND INCLUDING**
22 |                                         )   **NOVEMBER 2, 2007**
                                             )
23 |                                         )   Date:     October 15, 2007
                                             )   Time:     2:00 p.m.
24 |                                         )   Place:    United States Bankruptcy Court
                                             )            280 South First Street
25 |                                         )            San Francisco, California
                                             )   Judge:    Hon. Arthur S. Weissbrodt
26 |                                         )   Courtroom:  3020
                                             )
27 | _____        )

28 |

W02-WEST:FJR\400466319.4          **EXHIBIT "3"**          _____
                                                           ORDER APPROVING FURTHER INTERIM
                                                           USE OF CASH COLLATERAL AND
                                                           GRANTING REPLACEMENT LIENS

1        The Billing Resource, dba Integretel, a California corporation (the "Debtor") filed

2  its "Emergency Motion For Use Of Cash Collateral And Granting Replacement Liens" (the

3  "Motion") in the above-referenced bankruptcy case (the "Bankruptcy Case"). Capitalized terms

4  not otherwise defined herein shall have the meanings ascribed to them in the Motion. A continued

5  interim hearing (the "September 26 Interim Hearing") with respect to the Motion was previously

6  held on September 26, 2007 before the undersigned United States Bankruptcy Judge at the above-

7  noted place. At the September 26 Interim Hearing, counsel for the Debtor presented to the Court a

8  "First Amended Stipulation With PaymentOne Corporation Regarding Use Of Cash Collateral

9  And Adequate Protection" (the "First Amended PaymentOne Stipulation"), a blacklined version of

10  which the Debtor had previously presented to the Court at an initial hearing held on September 21,

11  2007, and requested that the Court approve the First Amended PaymentOne Stipulation on an

12  interim basis at the September 26 Interim Hearing.

13

14        Pursuant to the Motion, as revised in light of the First Amended PaymentOne

15  Stipulation, the pleadings filed by the Debtor in support of the Motion prior to the September 26

16  Interim Hearing and the statements made at the September 26 Interim Hearing, and Bankruptcy

17  Code Sections 105, 361, and 363, the Court at the September 26 Interim Hearing entered its

18  "Order Approving Interim Use Of Cash Collateral And Granting Replacement Liens And

19  Approving First Amended Stipulation With PaymentOne Corporation Regarding Use Of Cash

20  Collateral And Adequate Protection On An Interim Basis" (the "September 26 Interim Order"). In

21  connection with the September 26 Interim Hearing, the Court also orally approved certain

22  stipulations regarding the Debtor's interim use of cash collateral between the Debtor and the

23  following entities: (a) POL, Inc.; (b) Public Communication Services, Inc.; and (c) David R.

24  Chase, as Receiver for certain entities (the "Receiver").

25        A further interim hearing (the "October 15 Interim Hearing") with respect to the

26  Motion seeking further interim approval of the Debtor's use of cash collateral through and

27  including November 2, 2007, or as soon thereafter as the Court and counsel are available for a

28  further hearing on the Motion, including further interim approval of the First Amended

W02-WEST:FJR\400466319.4        -1-

ORDER APPROVING FURTHER INTERIM
USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

1    PaymentOne Stipulation duly came on for hearing before the undersigned United States

2    Bankruptcy Judge at the above-noted place and time set forth on the caption page of this Order.

3    Appearances were as noted in the record at the October 15 Interim Hearing.

4         Prior to the hearing, the Debtor and the Official Committee of Unsecured Creditors

5    (the "Committee") filed a stipulation (the "Committee Support Stipulation") stipulating to the to

6    the Debtor's use of cash collateral in accordance with the "Budget" (as such term is defined in the

7    following paragraph) on a further interim basis through and including November 2, 2007, or as

8    soon thereafter as the Court and counsel are available for a further hearing on the Motion.

9         Pursuant to the Motion, as further revised after the September 26 Interim Hearing

10   by the pleadings filed by the Debtor in support of the Motion prior to the October 15 Interim

11   Hearing including without limitation the Notice of the October 15 Interim Hearing, the Notice of

12   Entry of Order regarding the September 26 Interim Order, the Declaration of Paul Weber in

13   support of the Debtor's October 15 Interim Hearing on Cash Collateral dated October 11, 2007

14   (the "October 11 Weber Declaration") including the revised budget attached as an exhibit to the

15   October 11 Weber Declaration (the "Budget"), the Debtor's reply to the oppositions to the Motion

16   and in support of the Motion, the statements made at the October 15 Interim Hearing, and

17   Bankruptcy Code Sections 105, 361, and 363, the Debtor seeks an order from the Court: (1)

18   authorizing the Debtor to use certain assets of the Debtor which constitute "cash collateral" as

19   defined in Bankruptcy Code section 363(a) (such assets of the Debtor shall be referred to herein as

20   the "Cash Collateral") on a an interim basis through and including November 2, 2007, or as soon

21   thereafter as the Court and counsel are available for a further hearing on the Motion; (2) granting

22   approval of the First Amended PaymentOne Stipulation and the terms and conditions set forth

23   therein as revised in this Order on an interim basis through and including November 2, 2007, or as

24   soon thereafter as the Court and counsel are available for a further hearing on the Motion; and (3)

25

26

27

28

W02-WEST:FJR\400466319.4                              -2-

ORDER APPROVING FURTHER INTERIM
USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

1  granting PaymentOne Corporation ("PaymentOne"), POL, Inc. ("POL")[1], Network Telephone

2  Services, Inc. ("Network Telephone"), Personal Voice, Inc. ("Personal Voice") and Public

3  Communication Services, Inc. ("Public Communication") (collectively, the "Alleged Cash

4  Collateral Secured Creditors"), as adequate protection for the use by the Debtor of Cash Collateral

5  in which the Alleged Cash Collateral Secured Creditors have an alleged interest, a replacement

6  lien upon certain of the Debtor's personal property as set forth in this Order (and in the case of

7  PaymentOne as set forth in the First Amended PaymentOne Stipulation), but only to the extent

8  each respective Alleged Cash Collateral Secured Creditors possessed valid, perfected and

9  enforceable prepetition liens in the Cash Collateral; and (4) the setting of a final hearing on the

10  Motion including approval of the First Amended PaymentOne Stipulation (the "Final Hearing")

11  pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

12         The Court, having reviewed and considered the Motion, and all pleadings filed in

13  support thereof including without limitation the Notice of the Motion, the Introductory Statement

14  filed in support of the Motion, the Declaration of Ken Dawson filed in support of the Motion, the

15  Debtor's Stipulation with PaymentOne Corporation regarding the Debtor's use of Cash Collateral

16  which was attached as an exhibit to the Motion, the First Amended PaymentOne Stipulation

17  presented at the Interim Hearing, the two Declarations of Evan Meyer in support of the Motion

18  dated September 24, 2007, the Declaration of Joe Lyman in support of the Motion, the Notice of

19  the October 15 Interim Hearing, the Notice of Entry of Order regarding the Interim Order, the

20

21  October 11 Weber Declaration including the Budget, the Supplemental Declaration of Ken

22

23  [1] The following entities are collectively referred to in this Order as "POL": Access Programs, Inc.;
    Action Date Connections, Inc.; Benchmark Communications, Inc.; Blazen Communications, Inc.;
24  Call Transfer Services, Inc.; Cassiopeia Group, Inc.; Clear Command Telecommunications, Inc.;
    Country Club Network Services, Inc.; Date Finders Singles, Inc.; Enhanced Phone Services, Inc.;
25  Inovate Telecommunications, Inc.; Invesco Telecommunications, Inc.; Listen Com. Inc.; LJ
26  Internet, Inc.; Love Dating Network, Inc.;Lunar Tel, Inc.; Messenger Com, Inc.; Omnipresent
    Digital, Inc.; Palisade Telcom, Inc.; POL, Inc.; Psychic, Inc.; Rebound Communications, Inc.;
27  Singles Date Match, Inc.; Special Comtel, Ltd.; Spring Telecom, Inc.; Vesstone
28  Telecommunications, Inc.; Voicemail, Inc.; Voice Services, Ltd.; Vortex Communications &
    Telephone, Inc.; Wonder Network, Inc.

ORDER APPROVING FURTHER INTERIM
USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

RER-29    1268

1  Dawson filed in support of the Motion dated October 11, 2007, the Committee Support

2  Stipulation, the oppositions to the Motion filed in connection with the October 15 Interim Hearing,

3  including the oppositions filed by POL, Public Communications, Thermo-Credit, the Office of the

4  United States Trustee, the Receiver, the Federal Trade Commission (the "FTC") and Personal

5  Voice (collectively, the foregoing oppositions and joinder the "Oppositions") as well as any other

6  oppositions filed with the Court prior to the October 15 Interim Hearing or raised at the October

7  15 Interim Hearing, the reply to the oppositions and in support of the Motion including the replies

8  filed by the Debtor and PaymentOne, the other matters of record in this Bankruptcy Case, the

9  arguments and representations of counsel at the October 15 Interim Hearing, having completed

10  both the September 26 Interim hearing and the October 15 Interim Hearing in accordance with

11  Rule 4001 of the Bankruptcy Rules, and good cause appearing therefor,

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:**

13      1.    The Debtor filed a voluntary petition for relief under Chapter 11 of the

14  Bankruptcy Code on September 16, 2007 (the "Petition Date"). No trustee or examiner has been

15  appointed in this case, and the Debtor is authorized to operate its business as a debtor-in-

16  possession.

17      2.    The Court has jurisdiction over these proceedings and the parties and

18  property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. This is a core proceeding

19  within the meaning of 28 U.S.C. § 157(b)(2).

21      3.    Pursuant to §§ 102(1) and 363 of the Bankruptcy Code and Bankruptcy

22  Rule 4001 including Bankruptcy Rule 4001(b) and (d), the Debtor has provided such notice as was

23  practicable and appropriate under the circumstances of the time, place and nature of the October

24  15 Interim Hearing and opportunity to object to the entry of this Order to among others: (1) the

25  Alleged Cash Collateral Secured Creditors; (2) each creditor on the List of 30 Largest Creditors

26  filed pursuant to Bankruptcy Rule 1007(d); (3) the Office of the United States Trustee; (4) other

27  significant parties in interest, including the Receiver and the FTC; and (5) those parties who had

28  filed with the Court filed a request for service pursuant to Bankruptcy Rule 2002. The foregoing

ORDER APPROVING FURTHER INTERIM
USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

RER-29     1269

1  notice is adequate and sufficient in light of the nature of the relief requested in the Motion as

2  revised.

3          4.      The Debtor must have the use of cash generated from the Debtor's assets

4  including without limitation the Debtor's prepetition assets which each of the Alleged Cash

5  Collateral Secured Creditors claims to be its Cash Collateral in order to continue to operate and

6  preserve the value of Debtor's estate.

7          5.      Unless the Debtor is permitted to use the Cash Collateral, the Debtor's

8  ability to operate its business, pay expenses of this Bankruptcy Case, and to preserve and maintain

9  the property and assets of its estate and to reorganize will be immediately and irreparably

10  jeopardized, and the Debtor's use of the Cash Collateral is necessary to avoid immediate and

11  irreparable harm to the Debtor and the Debtor's bankruptcy estate.

12          6.      The level of adequate protection for the Alleged Cash Collateral Secured

13  Creditors proposed to be provided by the Debtor in the Motion as revised and as more particularly

14  set forth below, in return for the use of the Cash Collateral, is reasonable.

15          7.      Good cause has been shown for entry of this Order, including without

16  limitation the approval of the First Amended PaymentOne Stipulation and the terms and

17  conditions set forth therein as revised by this Order on an interim basis through and including

18  November 2, 2007, or as soon thereafter as the Court and counsel are available for a further

19  hearing on the Motion. Among other things, entry of this Order will preserve each of the Alleged

20  Cash Collateral Secured Creditor's position vis-a-vis the Debtor and other creditors of the estate so

21  that each of the respective Alleged Cash Collateral Secured Creditor's position vis-a-vis the Debtor

22  and such other creditors is neither diminished nor enhanced by Debtor's use of Cash Collateral.

23          8.      To the extent that any of the foregoing findings constitute or include

24  conclusions of law, they shall be so deemed.

25          **ACCORDINGLY, IT IS HEREBY ORDERED AS FOLLOWS:**

26          1.      The Motion, as amended including by the relief sought in connection with

27  PaymentOne, is approved on a further interim basis through and including November 2, 2007, or

28

as soon thereafter as the Court and counsel are available for a further hearing on the Motion, and the First Amended PaymentOne Stipulation and terms and conditions set forth therein as revised by this Order are approved on a further interim basis through and including November 2, 2007, or as soon thereafter as the Court and counsel are available for a further hearing on the Motion. Use of Cash Collateral as set forth in the Budget which is attached as an exhibit to the October 11 Weber Declaration is approved on a further interim basis through and including November 2, 2007, or as soon thereafter as the Court and counsel are available for a further hearing on the Motion. Notwithstanding anything to the contrary contained in the First Amended PaymentOne Stipulation, no super-priority administrative expense claim pursuant to Bankruptcy Code Section 507(b) is granted or provided to PaymentOne or to any other Alleged Cash Collateral Secured Creditor on a further interim basis through and including November 2, 2007, or as soon thereafter as the Court and counsel are available for a further hearing on the Motion, provided, however, that such claim will be determined at the Final Hearing. Notwithstanding the foregoing, PaymentOne (and any other Alleged Cash Collateral Secured Creditor beneficiary of this Order), reserves statutory rights it may have as a matter of law under Bankruptcy Code section 507(b) or any other provision of the Bankruptcy Code, and the Debtor and its bankruptcy estate reserve all defenses thereto. This Order is valid immediately and is fully effective upon its entry.

2.    Oppositions to the Motion, including without limitation the Oppositions, as well as any other oppositions filed with the Court prior to the October 15 Interim Hearing or raised at the October 15 Interim Hearing, to the extent not withdrawn, are overruled.

3.    The Debtor may use Cash Collateral in which PaymentOne has an alleged interest in accordance with the First Amended PaymentOne Stipulation as revised by this Order.

4.    The Debtor is authorized to pay PaymentOne the Pipeline Collection Property in accordance with the terms and conditions of the First Amended PaymentOne Stipulation as revised by this Order and the October 11 Weber Declaration including its attached Budget filed in this Bankruptcy Case.

5.    PaymentOne is granted, pursuant to Bankruptcy Code sections 361(2) and

W02-WEST:FJR\400466319.4    -6-

363(e), valid, perfected and enforceable replacement liens upon all post-petition property of the Debtor of the same type and character of any pre-petition property as to which PaymentOne had valid, perfected and enforceable security interests or liens (including any proceeds thereof to the extent that PaymentOne had valid, perfected and enforceable pre-petition security interests or pre-petition liens in proceeds). Notwithstanding anything to the contrary contained in the First Amended PaymentOne Stipulation or this Order, the replacement liens granted to PaymentOne shall not include any Bankruptcy Code chapter 5 avoidance actions or the proceeds thereof. The replacement liens granted to PaymentOne shall be automatically perfected pursuant to this Order and PaymentOne shall not be required to take any further action to perfect such liens.

6. PaymentOne's replacement liens on the post-petition property shall have the same priority vis-a-vis other liens and interests as PaymentOne's pre-petition liens and security interests have vis-a-vis such other liens and interests. The replacement liens granted to PaymentOne by this Order are intended to preserve PaymentOne's position vis-a-vis the Debtor and other creditors of the estate so that PaymentOne's position vis-a-vis the Debtor and such other creditors is neither diminished nor enhanced by Debtor's use of Cash Collateral and PaymentOne's receipt of replacement liens.

7. The replacement liens granted to PaymentOne shall be subordinated from the Petition Date until further order of the Court to any allowed on an interim or final basis expenses of this bankruptcy case including without limitation any allowed on an interim or final basis fees and expenses of professionals retained by the Debtor and any official committee appointed in this bankruptcy case as well as those of any trustee subsequently appointed in the bankruptcy case and such trustee's professionals, subject to the terms and conditions set forth in the First Amended PaymentOne Stipulation, but amended to strike the following language from Paragraph 8 of the First Amended PaymentOne Stipulation: ", but only to the extent such fees and expenses are provided for in the Budget and were actually incurred before this First Amended Stipulation terminated."

8. Notwithstanding anything to the contrary set forth in this Order, this Order

W02-WEST:FJR\400466319.4

-7-

1  does not determine whether PaymentOne has any valid, perfected or enforceable prepetition liens
2  or security interests in the Cash Collateral or any of the Debtor's other assets, and both the Debtor
3  and PaymentOne reserve all rights and defenses with respect thereto.  The replacement liens
4  granted to PaymentOne in consideration of its asserted prepetition liens pursuant to this Order are
5  effective only to the extent that PaymentOne's prepetition liens in the Cash Collateral are valid,
6  perfected and enforceable.

7  　　　　9.　　The Debtor may use Cash Collateral in which POL has an alleged interest.

8  　　　　10.　　POL is granted, pursuant to Bankruptcy Code sections 361(2) and 363(e),
9  valid, perfected and enforceable replacement liens upon all post-petition property of the Debtor of
10 the same type and character of any pre-petition property as to which POL had valid, perfected and
11 enforceable security interests or liens, but only to the extent of Cash Collateral used by the Debtor.
12 Notwithstanding anything to the contrary contained in this Order, the replacement liens granted to
13 POL shall not include any Bankruptcy Code chapter 5 avoidance actions or the proceeds thereof.
14 The replacement liens granted to POL shall be automatically perfected pursuant to this Order and
15 POL shall not be required to take any further action to perfect such liens.
16

17 　　　　11.　　POL's replacement liens on the post-petition property shall have the same
18 priority vis-a-vis other liens and interests as POL's pre-petition liens and security interests have
19 vis-a-vis such other liens and interests.  The replacement liens granted to POL by this Order are
20 intended to preserve POL's position vis-a-vis the Debtor and other creditors of the estate so that
21 POL's position vis-a-vis the Debtor and such other creditors is neither diminished nor enhanced by
22 Debtor's use of Cash Collateral and POL's receipt of replacement liens.

23 　　　　12.　　The replacement liens granted to POL shall be subordinated from the
24 Petition Date until further order of the Court to any allowed on an interim or final basis expenses
25 of this bankruptcy case including without limitation any allowed on an interim or final basis fees
26 and expenses of professionals retained by the Debtor and any official committee appointed in this
27 bankruptcy case as well as those of any trustee subsequently appointed in the bankruptcy case and
28 such trustee's professionals.

W02-WEST:FJR\400466319.4

-8-

ORDER APPROVING FURTHER INTERIM
USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

13.    Notwithstanding anything to the contrary set forth in this Order, this Order does not determine whether POL has any valid, perfected or enforceable prepetition liens or security interests in the Cash Collateral or any of the Debtor's other assets, and both the Debtor and POL reserve all rights and defenses with respect thereto.  The replacement liens granted to POL pursuant to this Order are effective only to the extent that POL's prepetition liens in the Cash Collateral are valid, perfected and enforceable.

14.    The Debtor may use Cash Collateral in which Network Telephone has an alleged interest.

15.    Network    Telephone    is    granted,    pursuant    to    Bankruptcy    Code sections 361(2) and 363(e), valid, perfected and enforceable replacement liens upon all post-petition property of the Debtor of the same type and character of any pre-petition property as to which Network Telephone had valid, perfected and enforceable security interests or liens, but only to the extent of Cash Collateral used by the Debtor.  Notwithstanding anything to the contrary contained in this Order, the replacement liens granted to Network Telephone shall not include any Bankruptcy Code chapter 5 avoidance actions or the proceeds thereof.  The replacement liens granted to Network Telephone shall be automatically perfected pursuant to this Order and Network Telephone shall not be required to take any further action to perfect such liens.

16.    Network Telephone's replacement liens on the post-petition property shall have the same priority vis-a-vis other liens and interests as Network Telephone's pre-petition liens and security interests have vis-a-vis such other liens and interests.  The replacement liens granted to Network Telephone by this Order are intended to preserve Network Telephone's position vis-a-vis the Debtor and other creditors of the estate so that Network Telephone's position vis-a-vis the Debtor and such other creditors is neither diminished nor enhanced by Debtor's use of Cash Collateral and Network Telephone's receipt of replacement liens.

17.    The replacement liens granted to Network Telephone shall be subordinated from the Petition Date until further order of the Court to any allowed on an interim or final basis expenses of this bankruptcy case including without limitation any allowed on an interim or final

ORDER APPROVING FURTHER INTERIM
USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

basis fees and expenses of professionals retained by the Debtor and any official committee appointed in this bankruptcy case as well as those of any trustee subsequently appointed in the bankruptcy case and such trustee's professionals.

18.    Notwithstanding anything to the contrary set forth in this Order, this Order does not determine whether Network Telephone has any valid, perfected or enforceable prepetition liens or security interests in the Cash Collateral or any of the Debtor's other assets, and both the Debtor and Network Telephone reserve all rights and defenses with respect thereto. The replacement liens granted to Network Telephone pursuant to this Order are effective only to the extent that Network Telephone's prepetition liens in the Cash Collateral are valid, perfected and enforceable.

19.    The Debtor may use Cash Collateral in which Personal Voice has an alleged interest.

20.    Personal Voice is granted, pursuant to Bankruptcy Code sections 361(2) and 363(e), valid, perfected and enforceable replacement liens upon all post-petition property of the Debtor of the same type and character of any pre-petition property as to which Personal Voice had valid, perfected and enforceable security interests or liens, but only to the extent of Cash Collateral used by the Debtor. Notwithstanding anything to the contrary contained in this Order, the replacement liens granted to Personal Voice shall not include any Bankruptcy Code chapter 5 avoidance actions or the proceeds thereof. The replacement liens granted to Personal Voice shall be automatically perfected pursuant to this Order and Personal Voice shall not be required to take any further action to perfect such liens.

21.    Personal Voice's replacement liens on the post-petition property shall have the same priority vis-a-vis other liens and interests as Personal Voice's pre-petition liens and security interests have vis-a-vis such other liens and interests. The replacement liens granted to POL by this Order are intended to preserve Personal Voice's position vis-a-vis the Debtor and other creditors of the estate so that Personal Voice's position vis-a-vis the Debtor and such other creditors is neither diminished nor enhanced by Debtor's use of Cash Collateral and Personal

ORDER APPROVING FURTHER INTERIM
USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

1  Voice's receipt of replacement liens.

2          22.     The replacement liens granted to Personal Voice shall be subordinated from

3  the Petition Date until further order of the Court to any allowed on an interim or final basis

4  expenses of this bankruptcy case including without limitation any allowed on an interim or final

5  basis fees and expenses of professionals retained by the Debtor and any official committee

6  appointed in this bankruptcy case as well as those of any trustee subsequently appointed in the

7  bankruptcy case and such trustee's professionals.

8          23.     Notwithstanding anything to the contrary set forth in this Order, this Order

9  does not determine whether Personal Voice has any valid, perfected or enforceable prepetition

10  liens or security interests in the Cash Collateral or any of the Debtor's other assets, and both the

11  Debtor and Personal Voice reserve all rights and defenses with respect thereto. The replacement

12  liens granted to Personal Voice pursuant to this Order are effective only to the extent that Personal

13  Voice's prepetition liens in the Cash Collateral are valid, perfected and enforceable.

14          24.     The Debtor may use Cash Collateral in which Public Communication has an

15  alleged interest.

16          25.     Public Communication is granted, pursuant to Bankruptcy Code

17  sections 361(2) and 363(e), valid, perfected and enforceable replacement liens upon all post-

18  petition property of the Debtor of the same type and character of any pre-petition property as to

19  which Public Communication had valid, perfected and enforceable security interests or liens, but

20  only to the extent of Cash Collateral used by the Debtor. Notwithstanding anything to the contrary

21  contained in this Order, the replacement liens granted to Public Communication shall not include

22  any Bankruptcy Code chapter 5 avoidance actions or the proceeds thereof. The replacement liens

23  granted to Public Communication shall be automatically perfected pursuant to this Order and

24  Public Communication shall not be required to take any further action to perfect such liens.

25

26          26.     Public Communication's replacement liens on the post-petition property

27  shall have the same priority vis-a-vis other liens and interests as Public Communication's pre-

28  petition liens and security interests have vis-a-vis such other liens and interests. The replacement

ORDER APPROVING FURTHER INTERIM
USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

liens granted to Public Communication by this Order are intended to preserve Public Communication's position vis-a-vis the Debtor and other creditors of the estate so that Public Communication's position vis-a-vis the Debtor and such other creditors is neither diminished nor enhanced by Debtor's use of Cash Collateral and Public Communication's receipt of replacement liens.

27.    The replacement liens granted to Public Communication shall be subordinated from the Petition Date until further order of the Court to any allowed on an interim or final basis expenses of this bankruptcy case including without limitation any allowed on an interim or final basis fees and expenses of professionals retained by the Debtor and any official committee appointed in this bankruptcy case as well as those of any trustee subsequently appointed in the bankruptcy case and such trustee's professionals.

28.    Notwithstanding anything to the contrary set forth in this Order, this Order does not determine whether Public Communication has any valid, perfected or enforceable prepetition liens or security interests in the Cash Collateral or any of the Debtor's other assets, and both the Debtor and Public Communication reserve all rights and defenses with respect thereto. The replacement liens granted to Public Communication pursuant to this Order are effective only to the extent that Public Communication's prepetition liens in the Cash Collateral are valid, perfected and enforceable.

29.    The use of Cash Collateral shall be in the amounts, and for the purposes, set forth on the Budget. Notwithstanding anything to the contrary in the First Amended PaymentOne Stipulation or this Order, to the extent that the Debtor does not spend the full amount of funds which it is authorized to spend in the Budget for a given week period, the Debtor does not "lose" the right to spend thereafter such unused funds, but instead the Debtor may spend such unused funds in a subsequent week period(s) in addition to whatever additional funds the Debtor is authorized to spend in that subsequent week period(s) as provided in the Budget.

30.    The Court shall hold the Final Hearing on the Motion including the First Amended PaymentOne Stipulation on _____, 2007 at __:__.m.

W02-WEST:FJR\400466319.4                    -12-

31.    The Debtor shall, on or before _____, 2007, serve by either personal service, overnight delivery service, courier service, facsimile service, or email service a copy of this Order and a notice regarding the Final Hearing, to (i) the parties having been given notice of the October 15 Interim Hearing, and (ii) any other party ordered by the Court or who has filed with the Court and served on the Debtor's counsel a request for service pursuant to Bankruptcy Rule 2002.  Such notice shall state that any party in interest objecting to the approval of the Motion on a final basis shall file a written objection with the Court no later than _____, 2007, which objection shall be filed with the Court and served so that it is received on or before 5:00 p.m. (Pacific Time) of such date by the Debtor's counsel, the Committee's counsel, and the Office of the United States Trustee at the following contact information:

Counsel to Debtor:

Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, Suite 1700
San Francisco, CA 94111
Attn:  Michael H. Ahrens, Esq.
        Jeffrey K. Rehfeld, Esq.
        Ori Katz, Esq.
Email: mahrens@sheppardmullin.com
        jrehfeld@sheppardmullin.com
        okatz@sheppardmullin.com

Counsel to Committee:

Pachulski Stang Ziehl Young & Jones LLP
150 California Street, 15th Floor
San Francisco, CA 94111-4500
Attn:  John D. Fiero, Esq.
        Maxim B. Litvak, Esq.
Email: jfiero@pzjl.com
        mlitvak@pzjl.com

Office of the United States Trustee:

Office of the United States Trustee
280 S. First Street, Suite 268
San Jose, CA 94113-0002
Attn:  Shannon L. Mounger-Lum, Esq.

ORDER APPROVING FURTHER INTERIM
USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

1    Facsimile: (408) 535-5525

2         32.    If a timely objection is filed, served and received, a written reply thereto

3    shall not be required but may be filed with the Court and served so that it is received by the

4    objecting party no later than _____ , 2007 on or before 11:59 p.m. (Pacific Time).

5

6                              ** END OF ORDER **

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER APPROVING FURTHER INTERIM
USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

1

<u>COURT SERVICE LIST</u>

2

3   <u>Office of the U.S. Trustee</u>
    Office of the U.S. Trustee
4   Attn: Edwina Dowell, Esq.
    280 South First Street, Room 268
5   San Jose, CA 95113

6   <u>The Billing Resource dba Integretel</u>
    The Billing Resource dba Integretel
7   Attn: Ken Dawson
    5883 Rue Ferrari
8   San Jose, CA 95138

9   <u>Proposed counsel for The Billing Resource dba Integretel</u>
    The Billing Resource dba Integretel
10  c/o Sheppard, Mullin, Richter & Hampton LLP
    Attn: Michael H. Ahrens, Esq.
11  4 Embarcadero Center, 17th Floor
    San Francisco, CA 94111-4106
12

13  <u>Counsel for PaymentOne Corporation</u>
    PaymentOne Corporation
14  c/o O'Melveny & Myers LLP
    Attn: Steve Warren, Esq.
15  400 South Hope Street
    Los Angeles, CA 90071-2899
16

17  <u>POL, Inc.</u>
    POL, Inc.
18  c/o Joel R. Dichter, Esq.
    Dichter Law Group, LLC
19  10 Rockefeller Plaza, Suite 816
    New York, New York 10020
    Email: info@dichterlaw.com
20  Fax: (212) 757-5002

21

22  POL, Inc.
    c/o Kathryn Diemer, Esq.
    Diemer, Whitman & Cardosi
23  75 East Santa Clara Street, Suite 290
    San Jose, CA 95113

24

25  <u>Personal Voice, Inc.</u>
    Personal Voice, Inc.
26  Attn: David Giorgione
    16807 A U.S. Highway 19 North, Suite A
    Clearwater, FL 33764
27

28  Personal Voice, Inc.
    Attn: Thomas C. Little

W02-WEST:FJR:400466319.4                        -15-

ORDER APPROVING FURTHER INTERIM
USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

1    (Registered Agent for Service of Process)
     2123 NE Coachman Rd., Suite A
2    Clearwater, FL 33765

3    Network Telephone Services, Inc.
     Network Telephone Services, Inc.
4    Attn: Daniel Coleman, Esq.
     21135 Erwin Street
5    Woodland Hills, CA 91367

6    Ellen Friedman, Esq.
     Elaine Hammond, Esq.
7    Friedman, Dumas & Springwater LLP
     150 Spear Street, Suite 1600
8    San Francisco, CA 94105

9    Public Communication Services, Inc.
10   Public Communication Services, Inc.
     Attn: Leslie Cohen, Esq.
11   Liner Yankelvitz Sunshine & Regenstreif LLP
     1100 Glendon Avenue, 14th Floor
12   Los Angeles, CA 90024-3503

13   The Receiver David Chase
     Walter Oetzell, Esq.
14   Steven J. Schwartz, Esq.
     Danning, Gill, Diamond & Kollitz, LLP
15   2029 Century Park East, Third Floor
     Los Angeles, California 90067-2904
16

17   Jeffrey C. Schneider, Esq.
     Tew Cardenas LLP
18   Four Seasons Tower, Fifteenth Floor
     1441 Brickell Avenue
19   Miami, Florida 33131-3407

20   Federal Trade Commission
     Michael Mora, Esq.
21   Julie A. Mack, Esq.
     Federal Trade Commission
22   600 Pennsylvania Ave. N.W.
     Washington, DC 20580
23

24   Thermo Credit
     John A. Lapinski, Esq.
25   Leslie R. Horowitz, Esq.
     Dolores Cordell, Esq.
26   Clark & Trevithick
     800 Wilshire Boulevard, 12th Floor
27   Los Angeles, California 90017

28   W. Timothy Miller, Esq.
     Taft Stettinius & Hollister LLP

ORDER APPROVING FURTHER INTERIM
USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

1     425 Walnut Street, Suite 1800
      Cincinnati, Ohio 45202

2

3     <u>Certain Creditors</u>
      Peter Benvenutti, Esq.
      Michaeline H. Correa, Esq.

4     Heller, Ehrman, White and McAuliffe
      333 Bush St.

5     San Francisco, CA 94104-2878

6     <u>Email Discount Network and Intelicom Messaging</u>

7     c/o David M. Goodrich, Esq.
      7700 Irvine Center Drive, Suite 800

8     Irvine, CA 92618

9     Austin P. Nagel, Esq.
      Law Offices of Austin P. Nagel

10    111 Deerwood Place, Suite 338
     San Ramon, California 94583

11

12    <u>Official Creditors' Committee</u>
     John Fiero, Esq.
     Pachulski, Stang, Ziehl, Young & Jones

13    150 California Street, 15th Floor
     San Francisco, CA  94111-4500

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

W02-WEST:FJR\400466319.4

-17-

ORDER APPROVING FURTHER INTERIM
USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

**RER - 30**

1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
2    Including Professional Corporations
   MICHAEL H. AHRENS, Cal. Bar No. 44766
3  TERRENCE V. PONSFORD, Cal. Bar No. 42648
   JEFFREY K. REHFELD, Cal. Bar No. 188128
4  ORI KATZ, Cal. Bar No. 209561
   Four Embarcadero Center, 17th Floor
5  San Francisco, California 94111-4106
   Telephone:    415-434-9100
6  Facsimile:    415-434-3947
   Email:        mahrens@sheppardmullin.com
7                jrehfeld@sheppardmullin.com
                 okatz@sheppardmullin.com
8
   Attorneys for The Billing Resource,
9  dba Integretel

10                 UNITED STATES BANKRUPTCY COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12                        SAN JOSE DIVISION

13

14
   In re                                    Case No. 07-52890 ASW
15
   THE BILLING RESOURCE, dba                Chapter 11
16 INTEGRETEL, a California corporation,
                                            **DECLARATION OF PAUL WEBER IN**
17            Debtor.                       **SUPPORT OF DEBTOR'S USE OF CASH**
                                            **COLLATERAL ON A FURTHER**
18 Tax ID: 33-0289863                       **INTERIM BASIS INCLUDING**
                                            **APPROVAL OF FIRST AMENDED**
19                                          **PAYMENTONE STIPULATION**
                                            **THROUGH AND INCLUDING**
20                                          **NOVEMBER 9, 2007 AND OMNIBUS**
                                            **REPLY TO OBJECTIONS TO DEBTOR'S**
21                                          **CASH COLLATERAL MOTION**

22                                          Date:      October 15, 2007
                                            Time:      2:00 p.m.
23                                          Place:     United States Bankruptcy Court
                                                       280 South First Street
24                                                     San Jose, California
                                            Judge:     Hon. Arthur S. Weissbrodt
25                                          Courtroom: 3020

26

27

28

   W02-WEST:FJR\400467887.1                                    DECLARATION

1    I, Paul J. Weber, declare as follows:

2        1.    I am a senior managing director in FTI Consulting's Corporate Finance practice

3    group and am based in San Francisco, California.  I have been retained by the Debtor in the above-

4    captioned case only a few days ago.  An application to employ FTI Consulting, Inc ("FTI") is

5    currently being prepared and will be submitted to the Court by counsel for the above-captioned

6    Debtor within 15 days of our retention.  I make this declaration of my own knowledge and, if

7    sworn, I could testify to the same.

8        2.    FTI is an international forensic and litigation consulting, economic consulting, and

9    corporate finance/restructuring service provider to corporations and counsel.  FTI has

10    appropriately 1,000 professionals and 24 offices throughout the United States and the United

11    Kingdom.

12        3.    I am a senior managing director in FTI's San Francisco office, in the Corporation

13    Finance/Restructuring practice.  I am a Certified Public Accountant in California and a member of

14    the American Institute of Public Accountants and Turnaround Management Association.  I

15    graduated from California State University, Chico (Valedictorian).

16        4.    I am experienced in financial, economic, damage and accounting matters related to

17    the scope of my work, analysis and study on this matter.  My professional experience includes

18    numerous litigation, dispute resolution and Chapter 11 reorganization engagements for a wide

19    variety of large and small business entities in diverse industries, including the performance of

20    various feasibility analyses.

21        5.    Prior to my career at FTI, which began in September 2002, I was employed by

22    PricewaterhouseCoopers LLP for over 20 years.  A more complete description of my credentials

23    and background is provided in my curriculum vitae attached as Schedule A.

24        6.    I have qualified as an expert witness on a number of occasions in regard to

25    workout matters, bankruptcy matters, and forensic accounting.

26        7.    I have been hired previously by the Debtor for special assignments.  I was

27    first hired in 1996 while working with Price Waterhouse.  Later I was hired while working

28    for FTI.  In connection with those prior engagements, I became very familiar with the

-1-

1  contracts that the Debtor enters into with its customers and the Local Exchange Carriers
2  (the "LECs"). Under these contracts, it is traditional that the customer will transfer certain
3  billing transactions to the Debtor, which includes a transfer of the customer's receivables to
4  the Debtor. The Debtor will thereafter transfer the call records and the Debtor's
5  receivables to the LECs for collections. After such receivables are transferred to the LECs,
6  LECs will make payments back to the Debtor and, after a settlement process, the Debtor
7  will pay amounts to its customers. I am very familiar with such settlement system, which
8  is hereinafter called the Debtor's "Settlement Process" or "Settlement System."

9       8.      Under the Debtor's Settlement Process as it worked before the filing of this
10 Bankruptcy Case, when the Debtor received payments from the LECs it would in turn
11 settle its obligations to its customers. Under the Debtor's contracts with its customers, it
12 had the right to retain some portion of those proceeds and pay the part that was held back
13 and unremitted to the customer at a later time. All of the funds received from the LECs
14 were commingled by the Debtor in its general "Wire-In Account," used by the Debtor in its
15 normal operations. It is called the "Wire-In Account" as the LECs were directed to wire all
16 moneys into this account. Except in a few unique instances, and not with regard to the
17 Debtor's former customers Access One and Network One, there never was a separate
18 "reserve" or "withhold" account set up for individual customer funds.

19      9.      In connection with the Settlement Process, sometimes the Debtor withheld
20 funds that otherwise could have gone to a customer. There are various reasons under the
21 customer contracts that the Debtor was entitled to take such a withhold. I know that in
22 each case where the Debtor withheld moneys, it did not set up any separate account and at
23 best only made a bookkeeping entry.

24      10.     I know that when moneys with respect to any specific customer are
25 transferred under the Settlement System back to the Debtor by the LECs, they were
26 transferred and commingled into the Wire-In Account. The moneys so transferred into that
27 Wire-In Account were used within days of such transfer by the Debtor. They never
28 remained more than two weeks in such Wire-In Account. There is no means by which

-2-

DECLARATION

1 money paid by the LECs into the Wire-In Account on account of a particular receivable
2 that was not remitted to that customer of the Debtor could then be traced. Because the
3 Debtor did not segregate any money that it withheld, but merely made accounting entries
4 reflecting its liabilities, the withheld money would immediately be used for other
5 obligations of the Debtor.

6     11.    The Debtor discontinued business with Access One and Network One long
7 before any FTC action was brought against the Debtor or the former customers. Any
8 money transferred by the LECs to the Debtor with respect to those two customers was
9 commingled into the Wire-In Account with all other funds of the Debtor and was spent
10 long before the Debtor was served with a temporary restraining order or a preliminary
11 injunction in the FTC's action against Access One and Network One.

12     12.    The Debtor has prepared a budget attached as Exhibit B, entitled the
13 "Debtor's Budget." I have worked with the Debtor and have reviewed this budget. The
14 Debtor's Budget assumes that (a) the $1.7 million in funds that are currently in a blocked
15 account subject to this Court's further order are no longer blocked; and (b) a stay is issued
16 so that no further litigation prior to Plan confirmation is needed against the Receiver or the
17 FTC in the Florida litigation.

18     13.    Since a bankruptcy case has now been filed and the Debtor is receiving post-
19 petition receivables and call records from customers, I believe that it is prudent that this
20 Chapter 11 debtor at all times retains sufficient cash to cover not only its operating
21 expenses, but also its administrative obligations to its customers to remit funds to them in
22 the future under the Settlement System. While the Debtor used such unremitted funds in
23 the past for its general operating expenses and for other purposes, it is not wise for a
24 Chapter 11 debtor to do this. A Chapter 11 debtor does not want to become
25 administratively insolvent.

26     14.    Under the Debtor's Budget attached as Exhibit B, it is apparent that at all
27 times the Debtor will have sufficient excess cash to cover unremitted funds that are owed
28 to customers with respect to post-petition transactions. Line 31 on the Debtor's Budget

-3-

W02-WEST:FJR\400467887.2

1  shows the funds that are budgeted to be collected for the customers and unremitted. Line
2  32 compares the obligation to the customers for any given week to the cash balance in that
3  week. In each case, line 32 on the Debtor's Budget shows that there is sufficient cash at all
4  time to cover the administrative post-petition obligations of the Debtor to remit funds to
5  customers with regard to post-petition obligations.

6      15.    I believe the Debtor's Budget is reasonable and constitutes an accurate
7  projection of operations during this Chapter 11 case, with the caveats set forth in the
8  footnote, and with the following additional caveat. I am not certain that 100% of the pre-
9  petition pipeline will be processed by the Debtor as assumed in footnote 8. However, with
10 the prepayment plan being implemented under the Debtor's Budget, I believe that it is
11 reasonable to assume that at least 75% or 80% of the traffic will still be delivered to the
12 Debtor by its customers. I have run this scenario and under this scenario, there will still
13 also be significant and substantial cash to cover the unremitted obligations of the Debtor to
14 its customers with respect to post-petition transactions.

15     16.    I have also worked with the Debtor to prepare a budget that assumes that (a)
16 $1.7 million of funds in the currently-blocked account remains blocked in that account;
17 and (b) additional substantial fees and expenses are needed to cover continued litigation
18 with the Receiver and the FTC in the Florida Litigation. Except for those assumptions, all
19 other assumptions in the Debtor's Budget remain the same in this further budget. That
20 budget, entitled the "Alternative Budget" is attached as Exhibit C.

21     17.    The Alternative Budget demonstrates that without the funds in the blocked
22 account, and with the additional expenses of the Florida Action, there will not be sufficient
23 cash at all times to cover the unremitted funds that may be due to customers under the
24 Settlement System. On line 32 of the Alternative Budget, it is demonstrated that there will
25 be deficits. Therefore, in my opinion, it is important to this Debtor to not be required to
26 litigate the Florida Action and that it have access to the funds in the blocked account. The
27 Debtor needs those funds.

28

-4-

1        I declare under penalty of perjury under the laws of the United States and the State

2    of California that the foregoing is true and correct.  Executed this 11th day of October,

3    2007, in San Francisco, California.

4

5                                /s/ Paul J. Weber

                             PAUL J. WEBER

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-5-

DECLARATION

# EXHIBIT A



# Paul J. Weber

Senior Managing Director – Corporate Finance

paul.weber@fticonsulting.com

One Front Street
Suite 1600
San Francisco, CA 94111
Tel: (415) 283-4269
Fax: (415) 283-4266

**Professional Affiliations**
American Institute of
Certified Public
Accountants

California State Society of
Certified Public
Accountants

Turnaround Management
Association

**Education**
B.S. in Business
Administration, California
State University, Chico
(Valedictorian)

Paul Weber is a senior managing director in FTI's Corporate Finance practice and is based in San Francisco. Mr. Weber's professional experience includes providing reorganization/restructuring consulting, interim management and accounting/auditing services to a wide variety of large and small business entities in diverse industries, such as retail, financial services (banking and insurance), technology/telecommunications, real estate, construction, agriculture, government contracting, manufacturing, pharmaceuticals and import/export.

Mr. Weber has participated in a variety of interim management, bankruptcy/reorganization, out-of-court restructuring and receivership/trustee engagements. He has assumed direct management roles in both restructuring and on-going business situations. The roles have ranged from "short-term crisis management" (three to six months) to long-term business nurturing/strategic implementation positions (18 to 24 four months). Specifically, Mr. Weber has served as chief financial officer (CFO), chief operating officer (COO), chief restructuring officer (CRO), head of business and strategic planning, and primary risk officer.

In addition, Mr. Weber has advised financial institutions and/or unsecured creditor constituencies, participated in constituency negotiations and provided courtroom testimony. Specific responsibilities have included direct responsibility for operations, treasury, and financial reporting functions; development and participation in negotiations for bankruptcy plans of reorganization, lender forbearance arrangements and out-of-court debt/equity restructuring; preparation, analysis and critical review of comprehensive business plans, cash flow analyses and valuation analyses; involvement in the preparation of bankruptcy related documents, including petition and day-one orders, liquidation analyses, plans of reorganization and disclosure statements, various analyses supporting specific orders throughout the case; company monitoring on behalf of lender groups; forensic analysis involving a company's use of funds, insider/related party transactions, preference and fraudulent conveyance claims and alleged fraud matters; and overseeing the liquidation of assets/operations.

Mr. Weber has participated in several disputes analysis and investigative engagements, involving the calculation of damages, lender liability claims, insurance litigation, forensic accounting, insurance claims and business interruption, analysis of corporate capitalization and analysis of business operations.

## Professional Experience

### Financial Restructuring and Financial Planning

- Retail

    - Served as an advisor to the chief executive officer and CFO for a large, regional retail chain in setting up stand-alone finance, treasury and planning functional areas after the company's carve-out from a larger entity. Responsible for all cash-flow forecasting, certain store closure/profitability analyses, going-out-of-business (GOB) sale structuring, accounting system assessment and initial operating dynamics, and the set-up and structuring of both strategic planning/budgeting, and treasury functions. As part of this

