1    SHEPPARD, MULLIN, RICHTER &
     HAMPTON LLP
2       A Limited Liability Partnership
        Including Professional Corporations
3    MICHAEL H. AHRENS,
     Cal. Bar No. 44766
4    JEFFREY K. REHFELD,
     Cal. Bar No. 188128
5    ORI KATZ,
     Cal. Bar No. 209561
6    Four Embarcadero Center, 17th Floor
     San Francisco, CA 94111
7    Telephone:    415-434-9100
     Facsimile:    415-434-3947
8
9    Attorneys for Debtor and Debtor-in-
     Possession
10   The Billing Resource, dba Integretel

11                UNITED STATES BANKRUPTCY COURT

12                NORTHERN DISTRICT OF CALIFORNIA

13                       SAN JOSE DIVISION

14

15   In re:                          )   Case No. 07-52890 ASW
                                      )
16   THE BILLING RESOURCE, dba        )   Chapter 11
     INTEGRETEL, a California corporation )
17                                    )   **FURTHER ORDER APPROVING
                          Debtor.     )   INTERIM USE OF CASH COLLATERAL
18                                    )   AND GRANTING REPLACEMENT
                                      )   LIENS AND APPROVING FIRST
19                                    )   AMENDED STIPULATION WITH
                                      )   PAYMENTONE CORPORATION
20                                    )   REGARDING USE OF CASH
                                      )   COLLATERAL AND ADEQUATE
21                                    )   PROTECTION ON AN INTERIM BASIS
                                      )   THROUGH AND INCLUDING
22                                    )   NOVEMBER 2, 2007**
                                      )
23                                    )   Date:      October 15, 2007
                                      )   Time:      2:00 p.m.
24                                    )   Place:     United States Bankruptcy Court
                                      )              280 South First Street
25                                    )              San Jose, California
                                      )   Judge:     Hon. Arthur S. Weissbrodt
26                                    )   Courtroom: 3020
                                      )
27   _____)

28

W02-WEST:FJR\400466319.4          **EXHIBIT 3**              ORDER APPROVING FURTHER INTERIM
                                                             USE OF CASH COLLATERAL AND
                                                             GRANTING REPLACEMENT LIENS

1    The Billing Resource, dba Integretel, a California corporation (the "Debtor") filed

2    its "Emergency Motion For Use Of Cash Collateral And Granting Replacement Liens" (the

3    "Motion") in the above-referenced bankruptcy case (the "Bankruptcy Case").  Capitalized terms

4    not otherwise defined herein shall have the meanings ascribed to them in the Motion.  A continued

5    interim hearing (the "September 26 Interim Hearing") with respect to the Motion was previously

6    held on September 26, 2007 before the undersigned United States Bankruptcy Judge at the above-

7    noted place.  At the September 26 Interim Hearing, counsel for the Debtor presented to the Court a

8    "First Amended Stipulation With PaymentOne Corporation Regarding Use Of Cash Collateral

9    And Adequate Protection" (the "First Amended PaymentOne Stipulation"), a blacklined version of

10   which the Debtor had previously presented to the Court at an initial hearing held on September 21,

11   2007, and requested that the Court approve the First Amended PaymentOne Stipulation on an

12   interim basis at the September 26 Interim Hearing.

13       Pursuant to the Motion, as revised in light of the First Amended PaymentOne

14   Stipulation, the pleadings filed by the Debtor in support of the Motion prior to the September 26

15   Interim Hearing and the statements made at the September 26 Interim Hearing, and Bankruptcy

16   Code Sections 105, 361, and 363, the Court at the September 26 Interim Hearing entered its

17   "Order Approving Interim Use Of Cash Collateral And Granting Replacement Liens And

18   Approving First Amended Stipulation With PaymentOne Corporation Regarding Use Of Cash

19   Collateral And Adequate Protection On An Interim Basis" (the "September 26 Interim Order").  In

20   connection with the September 26 Interim Hearing, the Court also orally approved certain

21   stipulations regarding the Debtor's interim use of cash collateral between the Debtor and the

22   following entities:  (a) POL, Inc.; (b) Public Communication Services, Inc.; and (c) David R.

23   Chase, as Receiver for certain entities (the "Receiver").

24       A further interim hearing (the "October 15 Interim Hearing") with respect to the

25   Motion seeking further interim approval of the Debtor's use of cash collateral through and

26   including November 2, 2007, or as soon thereafter as the Court and counsel are available for a

27   further hearing on the Motion, including further interim approval of the First Amended

ORDER APPROVING FURTHER INTERIM
USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

PaymentOne Stipulation duly came on for hearing before the undersigned United States Bankruptcy Judge at the above-noted place and time set forth on the caption page of this Order. Appearances were as noted in the record at the October 15 Interim Hearing.

Prior to the hearing, the Debtor and the Official Committee of Unsecured Creditors (the "Committee") filed a stipulation (the "Committee Support Stipulation") stipulating to the to the Debtor's use of cash collateral in accordance with the "Budget" (as such term is defined in the following paragraph) on a further interim basis through and including November 2, 2007, or as soon thereafter as the Court and counsel are available for a further hearing on the Motion.

Pursuant to the Motion, as further revised after the September 26 Interim Hearing by the pleadings filed by the Debtor in support of the Motion prior to the October 15 Interim Hearing including without limitation the Notice of the October 15 Interim Hearing, the Notice of Entry of Order regarding the September 26 Interim Order, the Declaration of Paul Weber in support of the Debtor's October 15 Interim Hearing on Cash Collateral dated October 11, 2007 (the "October 11 Weber Declaration") including the revised budget attached as an exhibit to the October 11 Weber Declaration (the "Budget"), the Debtor's reply to the oppositions to the Motion and in support of the Motion, the statements made at the October 15 Interim Hearing, and Bankruptcy Code Sections 105, 361, and 363, the Debtor seeks an order from the Court: (1) authorizing the Debtor to use certain assets of the Debtor which constitute "cash collateral" as defined in Bankruptcy Code section 363(a) (such assets of the Debtor shall be referred to herein as the "Cash Collateral") on a an interim basis through and including November 2, 2007, or as soon thereafter as the Court and counsel are available for a further hearing on the Motion; (2) granting approval of the First Amended PaymentOne Stipulation and the terms and conditions set forth therein as revised in this Order on an interim basis through and including November 2, 2007, or as soon thereafter as the Court and counsel are available for a further hearing on the Motion; and (3)

W02-WEST:FJR\400466319.4

-2-

1  granting PaymentOne Corporation ("PaymentOne"), POL, Inc. ("POL")[1], Network Telephone

2  Services, Inc. ("Network Telephone"), Personal Voice, Inc. ("Personal Voice") and Public

3  Communication Services, Inc. ("Public Communication") (collectively, the "Alleged Cash

4  Collateral Secured Creditors"), as adequate protection for the use by the Debtor of Cash Collateral

5  in which the Alleged Cash Collateral Secured Creditors have an alleged interest, a replacement

6  lien upon certain of the Debtor's personal property as set forth in this Order (and in the case of

7  PaymentOne as set forth in the First Amended PaymentOne Stipulation), but only to the extent

8  each respective Alleged Cash Collateral Secured Creditors possessed valid, perfected and

9  enforceable prepetition liens in the Cash Collateral; and (4) the setting of a final hearing on the

10  Motion including approval of the First Amended PaymentOne Stipulation (the "Final Hearing")

11  pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

12          The Court, having reviewed and considered the Motion, and all pleadings filed in

13  support thereof including without limitation the Notice of the Motion, the Introductory Statement

14  filed in support of the Motion, the Declaration of Ken Dawson filed in support of the Motion, the

15  Debtor's Stipulation with PaymentOne Corporation regarding the Debtor's use of Cash Collateral

16  which was attached as an exhibit to the Motion, the First Amended PaymentOne Stipulation

17  presented at the Interim Hearing, the two Declarations of Evan Meyer in support of the Motion

18  dated September 24, 2007, the Declaration of Joe Lyman in support of the Motion, the Notice of

19  the October 15 Interim Hearing, the Notice of Entry of Order regarding the Interim Order, the

20  October 11 Weber Declaration including the Budget, the Supplemental Declaration of Ken

21

22

23  [1] The following entities are collectively referred to in this Order as "POL": Access Programs, Inc.;
    Action Date Connections, Inc.; Benchmark Communications, Inc.; Blazen Communications, Inc.;

24  Call Transfer Services, Inc.; Cassiopeia Group, Inc.; Clear Command Telecommunications, Inc.;
    Country Club Network Services, Inc.; Date Finders Singles, Inc.; Enhanced Phone Services, Inc.;

25  Inovate Telecommunications, Inc.; Invesco Telecommunications, Inc.; Listen Com. Inc.; LJ

26  Internet, Inc.; Love Dating Network, Inc.;Lunar Tel, Inc.; Messenger Com, Inc.; Omnipresent
    Digital, Inc.; Palisade Telcom, Inc.; POL, Inc.; Psychic, Inc.; Rebound Communications, Inc.;

27  Singles Date Match, Inc.; Special Comtel, Ltd.; Spring Telecom, Inc.; Vesstone

28  Telecommunications, Inc.; Voicemail, Inc.; Voice Services, Ltd.; Vortex Communications &
    Telephone, Inc.; Wonder Network, Inc.

ORDER APPROVING FURTHER INTERIM
USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

1   Dawson filed in support of the Motion dated October 11, 2007, the Committee Support

2   Stipulation, the oppositions to the Motion filed in connection with the October 15 Interim Hearing,

3   including the oppositions filed by POL, Public Communications, Thermo-Credit, the Office of the

4   United States Trustee, the Receiver, the Federal Trade Commission (the "FTC") and Personal

5   Voice (collectively, the foregoing oppositions and joinder the "Oppositions") as well as any other

6   oppositions filed with the Court prior to the October 15 Interim Hearing or raised at the October

7   15 Interim Hearing, the reply to the oppositions and in support of the Motion including the replies

8   filed by the Debtor and PaymentOne, the other matters of record in this Bankruptcy Case, the

9   arguments and representations of counsel at the October 15 Interim Hearing, having completed

10  both the September 26 Interim hearing and the October 15 Interim Hearing in accordance with

11  Rule 4001 of the Bankruptcy Rules, and good cause appearing therefor,

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:**

13          1.      The Debtor filed a voluntary petition for relief under Chapter 11 of the

14  Bankruptcy Code on September 16, 2007 (the "Petition Date"). No trustee or examiner has been

15  appointed in this case, and the Debtor is authorized to operate its business as a debtor-in-

16  possession.

17          2.      The Court has jurisdiction over these proceedings and the parties and

18  property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. This is a core proceeding

19  within the meaning of 28 U.S.C. § 157(b)(2).

20          3.      Pursuant to §§ 102(1) and 363 of the Bankruptcy Code and Bankruptcy

21  Rule 4001 including Bankruptcy Rule 4001(b) and (d), the Debtor has provided such notice as was

22  practicable and appropriate under the circumstances of the time, place and nature of the October

23  15 Interim Hearing and opportunity to object to the entry of this Order to among others: (1) the

24  Alleged Cash Collateral Secured Creditors; (2) each creditor on the List of 30 Largest Creditors

25  filed pursuant to Bankruptcy Rule 1007(d); (3) the Office of the United States Trustee; (4) other

26  significant parties in interest, including the Receiver and the FTC; and (5) those parties who had

27  filed with the Court filed a request for service pursuant to Bankruptcy Rule 2002. The foregoing

28

W02-WEST:FJR\400466319.4                        -4-

1  notice is adequate and sufficient in light of the nature of the relief requested in the Motion as
2  revised.

3      4.    The Debtor must have the use of cash generated from the Debtor's assets
4  including without limitation the Debtor's prepetition assets which each of the Alleged Cash
5  Collateral Secured Creditors claims to be its Cash Collateral in order to continue to operate and
6  preserve the value of Debtor's estate.

7      5.    Unless the Debtor is permitted to use the Cash Collateral, the Debtor's
8  ability to operate its business, pay expenses of this Bankruptcy Case, and to preserve and maintain
9  the property and assets of its estate and to reorganize will be immediately and irreparably
10  jeopardized, and the Debtor's use of the Cash Collateral is necessary to avoid immediate and
11  irreparable harm to the Debtor and the Debtor's bankruptcy estate.

12      6.    The level of adequate protection for the Alleged Cash Collateral Secured
13  Creditors proposed to be provided by the Debtor in the Motion as revised and as more particularly
14  set forth below, in return for the use of the Cash Collateral, is reasonable.

15      7.    Good cause has been shown for entry of this Order, including without
16  limitation the approval of the First Amended PaymentOne Stipulation and the terms and
17  conditions set forth therein as revised by this Order on an interim basis through and including
18  November 2, 2007, or as soon thereafter as the Court and counsel are available for a further
19  hearing on the Motion. Among other things, entry of this Order will preserve each of the Alleged
20  Cash Collateral Secured Creditor's position vis-a-vis the Debtor and other creditors of the estate so
21  that each of the respective Alleged Cash Collateral Secured Creditor's position vis-a-vis the Debtor
22  and such other creditors is neither diminished nor enhanced by Debtor's use of Cash Collateral.

23      8.    To the extent that any of the foregoing findings constitute or include
24  conclusions of law, they shall be so deemed.

25      **ACCORDINGLY, IT IS HEREBY ORDERED AS FOLLOWS:**

26      1.    The Motion, as amended including by the relief sought in connection with
27  PaymentOne, is approved on a further interim basis through and including November 2, 2007, or

28

ORDER APPROVING FURTHER INTERIM
USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

1    as soon thereafter as the Court and counsel are available for a further hearing on the Motion, and

2    the First Amended PaymentOne Stipulation and terms and conditions set forth therein as revised

3    by this Order are approved on a further interim basis through and including November 2, 2007, or

4    as soon thereafter as the Court and counsel are available for a further hearing on the Motion.  Use

5    of Cash Collateral as set forth in the Budget which is attached as an exhibit to the October 11

6    Weber Declaration is approved on a further interim basis through and including November 2,

7    2007, or as soon thereafter as the Court and counsel are available for a further hearing on the

8    Motion.  Notwithstanding anything to the contrary contained in the First Amended PaymentOne

9    Stipulation, no super-priority administrative expense claim pursuant to Bankruptcy Code Section

10   507(b) is granted or provided to PaymentOne or to any other Alleged Cash Collateral Secured

11   Creditor on a further interim basis through and including November 2, 2007, or as soon thereafter

12   as the Court and counsel are available for a further hearing on the Motion, provided, however, that

13   such claim will be determined at the Final Hearing.  Notwithstanding the foregoing, PaymentOne

14   (and any other Alleged Cash Collateral Secured Creditor beneficiary of this Order), reserves

15   statutory rights it may have as a matter of law under Bankruptcy Code section 507(b) or any other

16   provision of the Bankruptcy Code, and the Debtor and its bankruptcy estate reserve all defenses

17   thereto.  This Order is valid immediately and is fully effective upon its entry.

18          2.      Oppositions to the Motion, including without limitation the Oppositions, as

19   well as any other oppositions filed with the Court prior to the October 15 Interim Hearing or raised

20   at the October 15 Interim Hearing, to the extent not withdrawn, are overruled.

21          3.      The Debtor may use Cash Collateral in which PaymentOne has an alleged

22   interest in accordance with the First Amended PaymentOne Stipulation as revised by this Order.

23          4.      The Debtor is authorized to pay PaymentOne the Pipeline Collection

24   Property in accordance with the terms and conditions of the First Amended PaymentOne

25   Stipulation as revised by this Order and the October 11 Weber Declaration including its attached

26   Budget filed in this Bankruptcy Case.

27          5.      PaymentOne is granted, pursuant to Bankruptcy Code sections 361(2) and

ORDER APPROVING FURTHER INTERIM
USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

363(e), valid, perfected and enforceable replacement liens upon all post-petition property of the Debtor of the same type and character of any pre-petition property as to which PaymentOne had valid, perfected and enforceable security interests or liens (including any proceeds thereof to the extent that PaymentOne had valid, perfected and enforceable pre-petition security interests or pre-petition liens in proceeds). Notwithstanding anything to the contrary contained in the First Amended PaymentOne Stipulation or this Order, the replacement liens granted to PaymentOne shall not include any Bankruptcy Code chapter 5 avoidance actions or the proceeds thereof. The replacement liens granted to PaymentOne shall be automatically perfected pursuant to this Order and PaymentOne shall not be required to take any further action to perfect such liens.

6.    PaymentOne's replacement liens on the post-petition property shall have the same priority vis-a-vis other liens and interests as PaymentOne's pre-petition liens and security interests have vis-a-vis such other liens and interests. The replacement liens granted to PaymentOne by this Order are intended to preserve PaymentOne's position vis-a-vis the Debtor and other creditors of the estate so that PaymentOne's position vis-a-vis the Debtor and such other creditors is neither diminished nor enhanced by Debtor's use of Cash Collateral and PaymentOne's receipt of replacement liens.

7.    The replacement liens granted to PaymentOne shall be subordinated from the Petition Date until further order of the Court to any allowed on an interim or final basis expenses of this bankruptcy case including without limitation any allowed on an interim or final basis fees and expenses of professionals retained by the Debtor and any official committee appointed in this bankruptcy case as well as those of any trustee subsequently appointed in the bankruptcy case and such trustee's professionals, subject to the terms and conditions set forth in the First Amended PaymentOne Stipulation, but amended to strike the following language from Paragraph 8 of the First Amended PaymentOne Stipulation: ", but only to the extent such fees and expenses are provided for in the Budget and were actually incurred before this First Amended Stipulation terminated."

8.    Notwithstanding anything to the contrary set forth in this Order, this Order

W02-WEST:FJR\400466319.4

-7-

ORDER APPROVING FURTHER INTERIM
USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

1  does not determine whether PaymentOne has any valid, perfected or enforceable prepetition liens

2  or security interests in the Cash Collateral or any of the Debtor's other assets, and both the Debtor

3  and PaymentOne reserve all rights and defenses with respect thereto. The replacement liens

4  granted to PaymentOne in consideration of its asserted prepetition liens pursuant to this Order are

5  effective only to the extent that PaymentOne's prepetition liens in the Cash Collateral are valid,

6  perfected and enforceable.

7      9.    The Debtor may use Cash Collateral in which POL has an alleged interest.

8      10.   POL is granted, pursuant to Bankruptcy Code sections 361(2) and 363(e),

9  valid, perfected and enforceable replacement liens upon all post-petition property of the Debtor of

10  the same type and character of any pre-petition property as to which POL had valid, perfected and

11  enforceable security interests or liens, but only to the extent of Cash Collateral used by the Debtor.

12  Notwithstanding anything to the contrary contained in this Order, the replacement liens granted to

13  POL shall not include any Bankruptcy Code chapter 5 avoidance actions or the proceeds thereof.

14  The replacement liens granted to POL shall be automatically perfected pursuant to this Order and

15  POL shall not be required to take any further action to perfect such liens.

16

17      11.   POL's replacement liens on the post-petition property shall have the same

18  priority vis-a-vis other liens and interests as POL's pre-petition liens and security interests have

19  vis-a-vis such other liens and interests. The replacement liens granted to POL by this Order are

20  intended to preserve POL's position vis-a-vis the Debtor and other creditors of the estate so that

21  POL's position vis-a-vis the Debtor and such other creditors is neither diminished nor enhanced by

22  Debtor's use of Cash Collateral and POL's receipt of replacement liens.

23      12.   The replacement liens granted to POL shall be subordinated from the

24  Petition Date until further order of the Court to any allowed on an interim or final basis expenses

25  of this bankruptcy case including without limitation any allowed on an interim or final basis fees

26  and expenses of professionals retained by the Debtor and any official committee appointed in this

27  bankruptcy case as well as those of any trustee subsequently appointed in the bankruptcy case and

28  such trustee's professionals.

W02-WEST:FJR\400466319.4                    -8-

ORDER APPROVING FURTHER INTERIM
USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

13.    Notwithstanding anything to the contrary set forth in this Order, this Order does not determine whether POL has any valid, perfected or enforceable prepetition liens or security interests in the Cash Collateral or any of the Debtor's other assets, and both the Debtor and POL reserve all rights and defenses with respect thereto. The replacement liens granted to POL pursuant to this Order are effective only to the extent that POL's prepetition liens in the Cash Collateral are valid, perfected and enforceable.

14.    The Debtor may use Cash Collateral in which Network Telephone has an alleged interest.

15.    Network Telephone is granted, pursuant to Bankruptcy Code sections 361(2) and 363(e), valid, perfected and enforceable replacement liens upon all post-petition property of the Debtor of the same type and character of any pre-petition property as to which Network Telephone had valid, perfected and enforceable security interests or liens, but only to the extent of Cash Collateral used by the Debtor. Notwithstanding anything to the contrary contained in this Order, the replacement liens granted to Network Telephone shall not include any Bankruptcy Code chapter 5 avoidance actions or the proceeds thereof. The replacement liens granted to Network Telephone shall be automatically perfected pursuant to this Order and Network Telephone shall not be required to take any further action to perfect such liens.

16.    Network Telephone's replacement liens on the post-petition property shall have the same priority vis-a-vis other liens and interests as Network Telephone's pre-petition liens and security interests have vis-a-vis such other liens and interests. The replacement liens granted to Network Telephone by this Order are intended to preserve Network Telephone's position vis-a-vis the Debtor and other creditors of the estate so that Network Telephone's position vis-a-vis the Debtor and such other creditors is neither diminished nor enhanced by Debtor's use of Cash Collateral and Network Telephone's receipt of replacement liens.

17.    The replacement liens granted to Network Telephone shall be subordinated from the Petition Date until further order of the Court to any allowed on an interim or final basis expenses of this bankruptcy case including without limitation any allowed on an interim or final

ORDER APPROVING FURTHER INTERIM
USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

RER-31      1338

1  basis fees and expenses of professionals retained by the Debtor and any official committee
2  appointed in this bankruptcy case as well as those of any trustee subsequently appointed in the
3  bankruptcy case and such trustee's professionals.

4      18.    Notwithstanding anything to the contrary set forth in this Order, this Order
5  does not determine whether Network Telephone has any valid, perfected or enforceable
6  prepetition liens or security interests in the Cash Collateral or any of the Debtor's other assets, and
7  both the Debtor and Network Telephone reserve all rights and defenses with respect thereto. The
8  replacement liens granted to Network Telephone pursuant to this Order are effective only to the
9  extent that Network Telephone's prepetition liens in the Cash Collateral are valid, perfected and
10  enforceable.

11      19.    The Debtor may use Cash Collateral in which Personal Voice has an alleged
12  interest.

13      20.    Personal Voice is granted, pursuant to Bankruptcy Code sections 361(2) and
14  363(e), valid, perfected and enforceable replacement liens upon all post-petition property of the
15  Debtor of the same type and character of any pre-petition property as to which Personal Voice had
16  valid, perfected and enforceable security interests or liens, but only to the extent of Cash Collateral
17  used by the Debtor.   Notwithstanding anything to the contrary contained in this Order, the
18  replacement liens granted to Personal Voice shall not include any Bankruptcy Code chapter 5
19  avoidance actions or the proceeds thereof.  The replacement liens granted to Personal Voice shall
20  be automatically perfected pursuant to this Order and Personal Voice shall not be required to take
21  any further action to perfect such liens.

22      21.    Personal Voice's replacement liens on the post-petition property shall have
23  the same priority vis-a-vis other liens and interests as Personal Voice's pre-petition liens and
24  security interests have vis-a-vis such other liens and interests.  The replacement liens granted to
25  POL by this Order are intended to preserve Personal Voice's position vis-a-vis the Debtor and
26  other creditors of the estate so that Personal Voice's position vis-a-vis the Debtor and such other
27  creditors is neither diminished nor enhanced by Debtor's use of Cash Collateral and Personal

W02-WEST:FJR\400466319.4                  -10-

ORDER APPROVING FURTHER INTERIM
USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

1  Voice's receipt of replacement liens.

2  22.  The replacement liens granted to Personal Voice shall be subordinated from

3  the Petition Date until further order of the Court to any allowed on an interim or final basis

4  expenses of this bankruptcy case including without limitation any allowed on an interim or final

5  basis fees and expenses of professionals retained by the Debtor and any official committee

6  appointed in this bankruptcy case as well as those of any trustee subsequently appointed in the

7  bankruptcy case and such trustee's professionals.

8  23.  Notwithstanding anything to the contrary set forth in this Order, this Order

9  does not determine whether Personal Voice has any valid, perfected or enforceable prepetition

10  liens or security interests in the Cash Collateral or any of the Debtor's other assets, and both the

11  Debtor and Personal Voice reserve all rights and defenses with respect thereto.  The replacement

12  liens granted to Personal Voice pursuant to this Order are effective only to the extent that Personal

13  Voice's prepetition liens in the Cash Collateral are valid, perfected and enforceable.

14  24.  The Debtor may use Cash Collateral in which Public Communication has an

15  alleged interest.

16  

17  25.  Public Communication is granted, pursuant to Bankruptcy Code

18  sections 361(2) and 363(e), valid, perfected and enforceable replacement liens upon all post-

19  petition property of the Debtor of the same type and character of any pre-petition property as to

20  which Public Communication had valid, perfected and enforceable security interests or liens, but

21  only to the extent of Cash Collateral used by the Debtor.  Notwithstanding anything to the contrary

22  contained in this Order, the replacement liens granted to Public Communication shall not include

23  any Bankruptcy Code chapter 5 avoidance actions or the proceeds thereof.  The replacement liens

24  granted to Public Communication shall be automatically perfected pursuant to this Order and

25  Public Communication shall not be required to take any further action to perfect such liens.

26  26.  Public Communication's replacement liens on the post-petition property

27  shall have the same priority vis-a-vis other liens and interests as Public Communication's pre-

28  petition liens and security interests have vis-a-vis such other liens and interests.  The replacement

W02-WEST:FJR\400466319.4

-11-

ORDER APPROVING FURTHER INTERIM
USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

liens granted to Public Communication by this Order are intended to preserve Public Communication's position vis-a-vis the Debtor and other creditors of the estate so that Public Communication's position vis-a-vis the Debtor and such other creditors is neither diminished nor enhanced by Debtor's use of Cash Collateral and Public Communication's receipt of replacement liens.

27. The replacement liens granted to Public Communication shall be subordinated from the Petition Date until further order of the Court to any allowed on an interim or final basis expenses of this bankruptcy case including without limitation any allowed on an interim or final basis fees and expenses of professionals retained by the Debtor and any official committee appointed in this bankruptcy case as well as those of any trustee subsequently appointed in the bankruptcy case and such trustee's professionals.

28. Notwithstanding anything to the contrary set forth in this Order, this Order does not determine whether Public Communication has any valid, perfected or enforceable prepetition liens or security interests in the Cash Collateral or any of the Debtor's other assets, and both the Debtor and Public Communication reserve all rights and defenses with respect thereto. The replacement liens granted to Public Communication pursuant to this Order are effective only to the extent that Public Communication's prepetition liens in the Cash Collateral are valid, perfected and enforceable.

29. The use of Cash Collateral shall be in the amounts, and for the purposes, set forth on the Budget. Notwithstanding anything to the contrary in the First Amended PaymentOne Stipulation or this Order, to the extent that the Debtor does not spend the full amount of funds which it is authorized to spend in the Budget for a given week period, the Debtor does not "lose" the right to spend thereafter such unused funds, but instead the Debtor may spend such unused funds in a subsequent week period(s) in addition to whatever additional funds the Debtor is authorized to spend in that subsequent week period(s) as provided in the Budget.

30. The Court shall hold the Final Hearing on the Motion including the First Amended PaymentOne Stipulation on _____, 2007 at __:__.m.

W02-WEST:FJR\400466319.4                    -12-

ORDER APPROVING FURTHER INTERIM
USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

31.    The Debtor shall, on or before _____, 2007, serve by either personal service, overnight delivery service, courier service, facsimile service, or email service a copy of this Order and a notice regarding the Final Hearing, to (i) the parties having been given notice of the October 15 Interim Hearing, and (ii) any other party ordered by the Court or who has filed with the Court and served on the Debtor's counsel a request for service pursuant to Bankruptcy Rule 2002. Such notice shall state that any party in interest objecting to the approval of the Motion on a final basis shall file a written objection with the Court no later than _____, 2007, which objection shall be filed with the Court and served so that it is received on or before 5:00 p.m. (Pacific Time) of such date by the Debtor's counsel, the Committee's counsel, and the Office of the United States Trustee at the following contact information:

Counsel to Debtor:

Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, Suite 1700
San Francisco, CA 94111
Attn:   Michael H. Ahrens, Esq.
          Jeffrey K. Rehfeld, Esq.
          Ori Katz, Esq.
Email: mahrens@sheppardmullin.com
          jrehfeld@sheppardmullin.com
          okatz@sheppardmullin.com

Counsel to Committee:

Pachulski Stang Ziehl Young & Jones LLP
150 California Street, 15th Floor
San Francisco, CA 94111-4500
Attn:   John D. Fiero, Esq.
          Maxim B. Litvak, Esq.
Email: jfiero@pzjl.com
          mlitvak@pzjl.com

Office of the United States Trustee:

Office of the United States Trustee
280 S. First Street, Suite 268
San Jose, CA 94113-0002
Attn:   Shannon L. Mounger-Lum, Esq.

W02-WEST:FJR\400466319.4                    -13-

1    Facsimile: (408) 535-5525

2         32.    If a timely objection is filed, served and received, a written reply thereto

3    shall not be required but may be filed with the Court and served so that it is received by the

4    objecting party no later than _____ , 2007 on or before 11:59 p.m. (Pacific Time).

5

6                                       \*\* END OF ORDER \*\*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

W02-WEST:FJR\400466319.4                         -14-

ORDER APPROVING FURTHER INTERIM
USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

1
2

<u>COURT SERVICE LIST</u>

3

<u>Office of the U.S. Trustee</u>
Office of the U.S. Trustee
4   Attn: Edwina Dowell, Esq.
280 South First Street, Room 268
5   San Jose, CA 95113

6

<u>The Billing Resource dba Integretel</u>
The Billing Resource dba Integretel
7   Attn: Ken Dawson
5883 Rue Ferrari
8   San Jose, CA 95138

9

<u>Proposed counsel for The Billing Resource dba Integretel</u>
10   The Billing Resource dba Integretel
c/o Sheppard, Mullin, Richter & Hampton LLP
11   Attn: Michael H. Ahrens, Esq.
4 Embarcadero Center, 17th Floor
12   San Francisco, CA 94111-4106

13

<u>Counsel for PaymentOne Corporation</u>
PaymentOne Corporation
14   c/o O'Melveny & Myers LLP
Attn: Steve Warren, Esq.
15   400 South Hope Street
Los Angeles, CA 90071-2899
16

<u>POL, Inc.</u>
17   POL, Inc.
c/o Joel R. Dichter, Esq.
18   Dichter Law Group, LLC
10 Rockefeller Plaza, Suite 816
19   New York, New York 10020
Email: info@dichterlaw.com
20   Fax: (212) 757-5002

21

POL, Inc.
22   c/o Kathryn Diemer, Esq.
Diemer, Whitman & Cardosi
23   75 East Santa Clara Street, Suite 290
San Jose, CA 95113
24

<u>Personal Voice, Inc.</u>
25   Personal Voice, Inc.
Attn: David Giorgione
26   16807 A U.S. Highway 19 North, Suite A
Clearwater, FL 33764
27

Personal Voice, Inc.
28   Attn: Thomas C. Little

W02-WEST:FJR\400466319.4

-15-

ORDER APPROVING FURTHER INTERIM
USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

1  (Registered Agent for Service of Process)
2  2123 NE Coachman Rd., Suite A
   Clearwater, FL 33765

3  Network Telephone Services, Inc.
4  Network Telephone Services, Inc.
   Attn:  Daniel Coleman, Esq.
5  21135 Erwin Street
   Woodland Hills, CA  91367

6  Ellen Friedman, Esq.
7  Elaine Hammond, Esq.
   Friedman, Dumas & Springwater LLP
8  150 Spear Street, Suite 1600
   San Francisco, CA  94105

9
   Public Communication Services, Inc.
10 Public Communication Services, Inc.
   Attn:  Leslie Cohen, Esq.
11 Liner Yankelvitz Sunshine & Regenstreif LLP
   1100 Glendon Avenue, 14th Floor
12 Los Angeles, CA  90024-3503

13 The Receiver David Chase
   Walter Oetzell, Esq.
14 Steven J. Schwartz, Esq.
   Danning, Gill, Diamond & Kollitz, LLP
15 2029 Century Park East, Third Floor
   Los Angeles, California 90067-2904
16

17 Jeffrey C. Schneider, Esq.
   Tew Cardenas LLP
18 Four Seasons Tower, Fifteenth Floor
   1441 Brickell Avenue
19 Miami, Florida 33131-3407

20 Federal Trade Commission
   Michael Mora, Esq.
21 Julie A. Mack, Esq.
   Federal Trade Commission
22 600 Pennsylvania Ave. N.W.
   Washington, DC 20580
23

24 Thermo Credit
   John A. Lapinski, Esq.
25 Leslie R. Horowitz, Esq.
   Dolores Cordell, Esq.
26 Clark & Trevithick
   800 Wilshire Boulevard, 12th Floor
27 Los Angeles, California 90017

28 W. Timothy Miller, Esq.
   Taft Stettinius & Hollister LLP

W02-WEST:FJR:400466319.4

-16-

ORDER APPROVING FURTHER INTERIM
USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

1    425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202

2

3    <u>Certain Creditors</u>
Peter Benvenutti, Esq.
Michaeline H. Correa, Esq.

4    Heller, Ehrman, White and McAuliffe
333 Bush St.

5    San Francisco, CA 94104-2878

6

7    <u>Email Discount Network and Intelicom Messaging</u>
c/o David M. Goodrich, Esq.
7700 Irvine Center Drive, Suite 800

8    Irvine, CA 92618

9    Austin P. Nagel, Esq.
Law Offices of Austin P. Nagel

10    111 Deerwood Place, Suite 338
San Ramon, California 94583

11

12    <u>Official Creditors' Committee</u>
John Fiero, Esq.

13    Pachulski, Stang, Ziehl, Young & Jones
150 California Street, 15th Floor
San Francisco, CA 94111-4500

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

W02-WEST:FJR\400466319.4

-17-

ORDER APPROVING FURTHER INTERIM
USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
2  Including Professional Corporations
   MICHAEL H. AHRENS, Cal. Bar No. 44766
3  JEFFREY K. REHFELD, Cal. Bar No. 188128
   ORI KATZ, Cal. Bar No. 209561
4  Four Embarcadero Center, 17th Floor
   San Francisco, California 94111-4106
5  Telephone:  415-434-9100
   Facsimile:   415-434-3947
6  Email:       mahrens@sheppardmullin.com
                jrehfeld@sheppardmullin.com
7                okatz@sheppardmullin.com

8  Attorneys for The Billing Resource,
   dba Integretel

9

10              UNITED STATES BANKRUPTCY COURT
                NORTHERN DISTRICT OF CALIFORNIA
11                    [SAN JOSE DIVISION]

12  | In re | Case No. 07-52890 |
13  | THE BILLING RESOURCE, dba INTEGRETEL, a California corporation, | Chapter 11 |
14  | | |
15  | Debtor. | |
16  | | |
17  | THE BILLING RESOURCE, dba INTEGRETEL, a California corporation, | Adv. Proc. No. 07-05156 |
18  | Plaintiff, | **DECLARATION OF PAUL WEBER IN SUPPORT OF SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |
19  | v. | |
20  | FEDERAL TRADE COMMISSION, and DAVID R. CHASE, not individually, but solely in his capacity as receiver for Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., 411TXT, Inc., CELL-INFO-USA, INC., Enhanced Billing Services, Inc., Toll Free Connect, Inc., Cripple Creek Holdings, LLC, Built to Last, LLC, Not Fade Away, LLC, He's Gone, LLC, The Other One, LLC, Turn on Your Love Light, LLC, China Cat Sunflower, LLC, Lazy River Road Holdings, LLC, | Date:    October 17, 2007 Time:    2:00 p.m. Place:   United States Bankruptcy Court 280 South First Street San Jose, California Judge:   Hon. Arthur S. Weissbrodt Courtroom: 3020 |
21  | | |
22  | | |
23  | | |
24  | | |
25  | | |
26  | | |
27  | Defendant. | |
28  | | |

W02-WEST:FJR\400327504.2                                    DECLARATION

1    I, Paul J. Weber, declare as follows:

2    1.    I am a senior managing director in FTI Consulting's Corporate Finance practice

3    group and am based in San Francisco, California. I have been retained by the Debtor in the above-

4    captioned case only a few days ago. An application to employ FTI Consulting, Inc ("FTI") is

5    currently being prepared and will be submitted to the Court by counsel for the above-captioned

6    Debtor within 15 days of our retention. I make this declaration of my own knowledge and, if

7    sworn, I could testify to the same.

8    2.    FTI is an international forensic and litigation consulting, economic consulting, and

9    corporate finance/restructuring service provider to corporations and counsel. FTI has

10    appropriately 1,000 professionals and 24 offices throughout the United States and the United

11    Kingdom.

12    3.    I am a senior managing director in FTI's San Francisco office, in the Corporation

13    Finance/Restructuring practice. I am a Certified Public Accountant in California and a member of

14    the American Institute of Public Accountants and Turnaround Management Association. I

15    graduated from California State University, Chico (Valedictorian).

16    4.    I am experienced in financial, economic, damage and accounting matters related to

17    the scope of my work, analysis and study on this matter. My professional experience includes

18    numerous litigation, dispute resolution and Chapter 11 reorganization engagements for a wide

19    variety of large and small business entities in diverse industries, including the performance of

20    various feasibility analyses.

21    5.    Prior to my career at FTI, which began in September 2002, I was employed by

22    PricewaterhouseCoopers LLP for over 20 years. A more complete description of my credentials

23    and background is provided in my curriculum vitae attached as Schedule A.

24    6.    I have qualified as an expert witness on a number of occasions in regard to

25    workout matters, bankruptcy matters, and forensic accounting.

26    7.    I have been hired previously by the Debtor for special assignments. I was

27    first hired in 1996 while working with Price Waterhouse. Later I was hired while working

28    for FTI. In connection with those prior engagements, I became very familiar with the

-1-

W02-WEST:FJR:400467887.2                                                    DECLARATION

1   contracts that the Debtor enters into with its customers and the Local Exchange Carriers

2   (the "LECs"). Under these contracts, it is traditional that the customer will transfer certain

3   billing transactions to the Debtor, which includes a transfer of the customer's receivables to

4   the Debtor. The Debtor will thereafter transfer the call records and the Debtor's

5   receivables to the LECs for collections. After such receivables are transferred to the LECs,

6   LECs will make payments back to the Debtor and, after a settlement process, the Debtor

7   will pay amounts to its customers. I am very familiar with such settlement system, which

8   is hereinafter called the Debtor's "Settlement Process" or "Settlement System."

9       8.      Under the Debtor's Settlement Process as it worked before the filing of this

10  Bankruptcy Case, when the Debtor received payments from the LECs it would in turn

11  settle its obligations to its customers. Under the Debtor's contracts with its customers, it

12  had the right to retain some portion of those proceeds and pay the part that was held back

13  and unremitted to the customer at a later time. All of the funds received from the LECs

14  were commingled by the Debtor in its general "Wire-In Account," used by the Debtor in its

15  normal operations. It is called the "Wire-In Account" as the LECs were directed to wire all

16  moneys into this account. Except in a few unique instances, and not with regard to the

17  Debtor's former customers Access One and Network One, there never was a separate

18  "reserve" or "withhold" account set up for individual customer funds.

19      9.      In connection with the Settlement Process, sometimes the Debtor withheld

20  funds that otherwise could have gone to a customer. There are various reasons under the

21  customer contracts that the Debtor was entitled to take such a withhold. I know that in

22  each case where the Debtor withheld moneys, it did not set up any separate account and at

23  best only made a bookkeeping entry.

24      10.     I know that when moneys with respect to any specific customer are

25  transferred under the Settlement System back to the Debtor by the LECs, they were

26  transferred and commingled into the Wire-In Account. The moneys so transferred into that

27  Wire-In Account were used within days of such transfer by the Debtor. They never

28  remained more than two weeks in such Wire-In Account. There is no means by which

-2-

1  money paid by the LECs into the Wire-In Account on account of a particular receivable
2  that was not remitted to that customer of the Debtor could then be traced. Because the
3  Debtor did not segregate any money that it withheld, but merely made accounting entries
4  reflecting its liabilities, the withheld money would immediately be used for other
5  obligations of the Debtor.

6      11.    The Debtor discontinued business with Access One and Network One long
7  before any FTC action was brought against the Debtor or the former customers. Any
8  money transferred by the LECs to the Debtor with respect to those two customers was
9  commingled into the Wire-In Account with all other funds of the Debtor and was spent
10  long before the Debtor was served with a temporary restraining order or a preliminary
11  injunction in the FTC's action against Access One and Network One.

12     12.    The Debtor has prepared a budget attached as <u>Exhibit B</u>, entitled the
13  "Debtor's Budget." I have worked with the Debtor and have reviewed this budget. The
14  Debtor's Budget assumes that (a) the $1.7 million in funds that are currently in a blocked
15  account subject to this Court's further order are no longer blocked; and (b) a stay is issued
16  so that no further litigation prior to Plan confirmation is needed against the Receiver or the
17  FTC in the Florida litigation.

18     13.    Since a bankruptcy case has now been filed and the Debtor is receiving post-
19  petition receivables and call records from customers, I believe that it is prudent that this
20  Chapter 11 debtor at all times retains sufficient cash to cover not only its operating
21  expenses, but also its administrative obligations to its customers to remit funds to them in
22  the future under the Settlement System. While the Debtor used such unremitted funds in
23  the past for its general operating expenses and for other purposes, it is not wise for a
24  Chapter 11 debtor to do this. A Chapter 11 debtor does not want to become
25  administratively insolvent.

26     14.    Under the Debtor's Budget attached as <u>Exhibit B</u>, it is apparent that at all
27  times the Debtor will have sufficient excess cash to cover unremitted funds that are owed
28  to customers with respect to post-petition transactions. Line 31 on the Debtor's Budget

-3-

1  shows the funds that are budgeted to be collected for the customers and unremitted. Line

2  32 compares the obligation to the customers for any given week to the cash balance in that

3  week. In each case, line 32 on the Debtor's Budget shows that there is sufficient cash at all

4  time to cover the administrative post-petition obligations of the Debtor to remit funds to

5  customers with regard to post-petition obligations.

6      15.    I believe the Debtor's Budget is reasonable and constitutes an accurate

7  projection of operations during this Chapter 11 case, with the caveats set forth in the

8  footnote, and with the following additional caveat. I am not certain that 100% of the pre-

9  petition pipeline will be processed by the Debtor as assumed in footnote 8. However, with

10 the prepayment plan being implemented under the Debtor's Budget, I believe that it is

11 reasonable to assume that at least 75% or 80% of the traffic will still be delivered to the

12 Debtor by its customers. I have run this scenario and under this scenario, there will still

13 also be significant and substantial cash to cover the unremitted obligations of the Debtor to

14 its customers with respect to post-petition transactions.

15     16.    I have also worked with the Debtor to prepare a budget that assumes that (a)

16 $1.7 million of funds in the currently-blocked account remains blocked in that account;

17 and (b) additional substantial fees and expenses are needed to cover continued litigation

18 with the Receiver and the FTC in the Florida Litigation. Except for those assumptions, all

19 other assumptions in the Debtor's Budget remain the same in this further budget. That

20 budget, entitled the "Alternative Budget" is attached as Exhibit C.

21     17.    The Alternative Budget demonstrates that without the funds in the blocked

22 account, and with the additional expenses of the Florida Action, there will not be sufficient

23 cash at all times to cover the unremitted funds that may be due to customers under the

24 Settlement System. On line 32 of the Alternative Budget, it is demonstrated that there will

25 be deficits. Therefore, in my opinion, it is important to this Debtor to not be required to

26 litigate the Florida Action and that it have access to the funds in the blocked account. The

27 Debtor needs those funds.

28

-4-

W02-WEST:FJR'400467887.2

DECLARATION

1      I declare under penalty of perjury under the laws of the United States and the State

2  of California that the foregoing is true and correct. Executed this 11th day of October,

3  2007, in San Francisco, California.

4

5                                    /s/ Paul J. Weber

                                      PAUL J. WEBER

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

W02-WEST:FJR\400467887.2                                      DECLARATION

RER-31    1352

# EXHIBIT A



# Paul J. Weber

## Senior Managing Director – Corporate Finance

paul.weber@fticonsulting.com

One Front Street
Suite 1600
San Francisco, CA 94111
Tel: (415) 283-4269
Fax: (415) 283-4266

**Professional Affiliations**
American Institute of Certified Public Accountants

California State Society of Certified Public Accountants

Turnaround Management Association

**Education**
B.S. in Business Administration, California State University, Chico (Valedictorian)

Paul Weber is a senior managing director in FTI's Corporate Finance practice and is based in San Francisco. Mr. Weber's professional experience includes providing reorganization/restructuring consulting, interim management and accounting/auditing services to a wide variety of large and small business entities in diverse industries, such as retail, financial services (banking and insurance), technology/telecommunications, real estate, construction, agriculture, government contracting, manufacturing, pharmaceuticals and import/export.

Mr. Weber has participated in a variety of interim management, bankruptcy/reorganization, out-of-court restructuring and receivership/trustee engagements. He has assumed direct management roles in both restructuring and on-going business situations. The roles have ranged from "short-term crisis management" (three to six months) to long-term business nurturing/strategic implementation positions (18 to 24 four months). Specifically, Mr. Weber has served as chief financial officer (CFO), chief operating officer (COO), chief restructuring officer (CRO), head of business and strategic planning, and primary risk officer.

In addition, Mr. Weber has advised financial institutions and/or unsecured creditor constituencies, participated in constituency negotiations and provided courtroom testimony. Specific responsibilities have included direct responsibility for operations, treasury, and financial reporting functions; development and participation in negotiations for bankruptcy plans of reorganization, lender forbearance arrangements and out-of-court debt/equity restructuring; preparation, analysis and critical review of comprehensive business plans, cash flow analyses and valuation analyses; involvement in the preparation of bankruptcy related documents, including petition and day-one orders, liquidation analyses, plans of reorganization and disclosure statements, various analyses supporting specific orders throughout the case; company monitoring on behalf of lender groups; forensic analysis involving a company's use of funds, insider/related party transactions, preference and fraudulent conveyance claims and alleged fraud matters; and overseeing the liquidation of assets/operations.

Mr. Weber has participated in several disputes analysis and investigative engagements, involving the calculation of damages, lender liability claims, insurance litigation, forensic accounting, insurance claims and business interruption, analysis of corporate capitalization and analysis of business operations.

## Professional Experience

### Financial Restructuring and Financial Planning

- Retail

  - Served as an advisor to the chief executive officer and CFO for a large, regional retail chain in setting up stand-alone finance, treasury and planning functional areas after the company's carve-out from a larger entity. Responsible for all cash-flow forecasting, certain store closure/profitability analyses, going-out-of-business (GOB) sale structuring, accounting system assessment and initial operating dynamics, and the set-up and structuring of both strategic planning/budgeting, and treasury functions. As part of this



**EXHIBIT A**



project, Mr. Weber participated in determining purchase accounting and push-down accounting reserves and adjustments, tax structuring, and location monetization.

- Served as advisor (and de facto CFO) to the debtor for a national home furnishings chain in an out-of-court restructuring. Project involved finalizing year-end financial statements (public company), including the assessment of store closure and restructuring reserves, financial and operational forecasting, store closure/location sale analyses, bank covenant and debt renegotiation and ultimate sale of new ownership position in the company.

- Served as advisor to debtor (effectively became CFO when serving CFO became terminally ill) to a national footwear chain, which went out of business through the bankruptcy process. Oversaw the company-led liquidation of inventory through to final outside GOB process. Secured creditors were paid in full and unsecured creditors received a recovery in excess of three times original estimates. Role included significant involvement in preparation of the company's periodic financial statements and public filings.

- Served as project partner in providing both pre-bankruptcy restructuring and bankruptcy advisory services to debtor companies/creditor constituencies in approximately 10 other matters in the retail arena, in which the debtor company was sold, liquidated or completed a successful reorganization. Services included evaluating company feasibility, cash flows and business plans; preparing companies to file for bankruptcy; assistance in preparing plans of reorganization and disclosure statements; claims and preference analysis; and evaluating business and asset sale alternatives.

- Construction

  - Served as financial advisor to the surety companies in monitoring (and in certain cases directly overseeing) completion of more than $2.4 billion of work to be completed by a construction services provider. This workout involved the sureties funding more than $300 million and recovering a substantial portion of that through the sale of various business units and assets of the company. The company filed for Chapter 11 bankruptcy and we served as financial adviser to the surety group during and after such proceedings. We currently are overseeing the direct completion of four specific projects and are involved in claim adjudication in such projects, as well as four to five others. The ultimate loss to the sureties is expected to be less than eight percent of the original cost to complete at inception of the project.

  - Assisted the surety companies in monitoring completion of over $2.5 billion of work to be completed by an engineering and construction firm. In doing this work, emphasis was placed on maintaining contractor viability and liquidity to allow for orderly completion of the backlog. We participated in the sale of approximately five of the company's business units and were responsible for monitoring the company's performance on more than 100 bonded projects and an additional 50 un-bonded projects. This included understanding and validating the periodic job cost estimates and outlook for each specific project. An inability to resolve certain high value/long-term claims ultimately led to the company filing for Chapter 11 bankruptcy, and we served as financial adviser to the sureties during that process as well. The ultimate loss to be incurred by the sureties is expected to be less than three percent of the original cost to complete at inception of the project.



RER-31          1355



Paul J. Weber

- High Technologies/Telecommunications

  - Served as advisor to the debtor on a restructuring engagement for a computer peripherals company in the high-tech industry, which filed for Chapter 11 and successfully emerged from bankruptcy in less than five months. Work involved direct participation in the daily operational and financial management of the company and the development of a comprehensive business operating plan. In addition, Mr. Weber was involved in development of all bankruptcy related matters, including plan negotiations, individual constituency considerations, resolution of business disputes, financial presentations to the court and various constituencies, and direct court testimony.

  - Served as advisor to unofficial trade creditors' committee on an out-of-court restructuring for a large peripherals company, where approximately $50 million of trade debt was exchanged for new equity. Specific work involved analyzing the companies' various business units (and potential sales values of such units) and assessing the companies' overall financial and operating viability.

  - Served as advisor to the unofficial creditors' committee of three computer peripheral products resellers and manufacturers. Project involved assessing the company's continuing viability and the appropriateness of proposed alternative business strategies.

  - Served as project partner providing restructuring consulting services to the unsecured creditors' committee of a large computer manufacturer. The project has involved the analysis and review of the debtor's operating plan, the valuation of certain operating subsidiaries, determining liquidation values and creditor projected payouts.

  - **Software** - involved in multiple bankruptcy and out-of-court restructuring engagements and distressed sale situations, involving software enterprises in the retail software, network, computing, business-to-business and middleware areas. Matters included Quintus Corporation, Borland, and certain Sega entities. Experience includes serving as de facto CFO/CRO in shepherding a troubled company through to a sale of its assets.

  - **Internet/E-Commerce** - involved in several bankruptcy and out-of-court restructuring engagements, including quick asset sales in the e-commerce/internet area. Specific sectors include retail e-commerce, such as HealthCentral, or e-commerce operations for a major retail chain and site services and management, such as Quokka Sports.

  - **Telecommunications** - involved in several bankruptcies in the telecommunications sector, primarily as an advisor to the debtor-in-possession with a resulting sale of the remaining assets. In addition, Mr. Weber has acted as estate manager for two such companies' past confirmation.

  - **Hardware, Semiconductors, and General High Technology** - involved in multiple bankruptcy/out-of-court restructuring engagements and operational wind-downs involving semiconductor manufacturers, specialty and OEM board products developers and retailers, computer peripheral product manufacturers, a large manufacturer/distributor of telecommunications devices, high-tech financial companies and a computer manufacturer. A number of the matters involved restructuring outstanding public bond obligations.

- Other Notable Engagements

  - Served as advisor to a debtor in the leasing industry, where the role was to implement cash processing/lender reporting controls for the ultimate liquidation of a series of



www.fticonsulting.com

3

RER-31     1356



portfolios in excess of $1 billion. Work included an assessment of all of the debtor's functional operations, including new deal origination, credit approval/monitoring, collections and back-end remarketing activities.

- Served as de facto treasurer and head of business planning for a debtor on a restructuring engagement in regulated industry. Project involved performance of certain crisis management functions, performance of the treasury function, preparation of detail business plans for over 40 subsidiaries (and submission of rate proposals to government boards), capital budgeting, oversight and development of comprehensive business forecast/re-structuring alternatives.

- Served as advisor to multiple lender groups on a restructuring engagement involving a $100 million defense contractor/aerospace manufacturer. The project involved the critical analysis of the debtor's overall business plan (and the individual business plans of its four manufacturing subsidiaries), performing sensitivity analysis with respect to the plan and the valuation of certain operating subsidiaries.

- Served as de facto CFO/COO in two high technology–related financial entities (computer leasing/telephone record billing) in out-of-court debt/equity restructurings, including direct management of complex cash processing and cash management functions, trade creditor negotiation and compromise and taxing authority negotiations. In one such instance, the role also included highly detailed lender monitoring, ensuring lender proceeds were properly identified and remitted.

- Served as advisor to financial institutions in one large agribusiness bankruptcy and one out-of-court restructuring. The project included critical analysis of company's business plan, valuation and analysis of branded products, valuation of specific growing properties and analysis of alternative debt restructuring plans.

- Participated in a number of bankruptcy and restructuring engagements for medium-sized, privately held companies, assisting both debtor and creditor interests. Specific tasks included the review and analysis of cash flow projections and business plans, assessment of business valuation and claim distribution and review of alternative reorganization or restructuring scenarios, including the assessment of income tax consequences.

**Other Relevant Experience**

- Participated in a number of other projects and engagements involving real estate matters, business interruption and insurance claims and various litigation matters.

## Employment History

- **FTI Consulting, Inc.** - San Francisco office, 2002 to present

- **PricewaterhouseCoopers, LLP** - 1981 to 2002

    - Served on a tour of duty in Lima, Peru, for approximately 20 months on the firm's International Service Program (1985-1987)



# EXHIBIT B

**The Billing Resource dba Integretel**
**Weekly Operating Cash Budget**
**For the Period Ending March 21, 2008**

**DEBTOR'S BUDGET**

| Week Ending | | Actual 1 9/21/07 | Actual 2 9/28/07 | Actual 3 10/5/07 | 4 10/12/07 | 5 10/19/07 | 6 10/26/07 | 7 11/2/07 | 8 11/9/07 | 9 11/16/07 | 10 11/23/07 | 11 11/30/07 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash Flow from Client Settlement Activities - PRE-PETITION** | | | | | | | | | | | | |
| 1 | CIC 402 cash payments from LEC for pre-petition pipeline | $ 1,393,130 | $ 1,673,013 | $ 895,277 | $ 1,713,182 | $ 1,746,333 | $ 998,787 | | | | | |
| 2 | Less: withheld LEC payments (7) | | (562,578) | (521,219) | (340,000) | | | | | | | |
| 3 | Less: Verizon reserve increase related to bankruptcy (4) | | | | (60,313) | (60,313) | (60,313) | | | | | |
| 4 | Net CIC 402 cash payments from LEC for pre-petition pipeline | 1,393,130 | 1,110,435 | 374,058 | 1,312,870 | 1,686,020 | 935,455 | 0 | 0 | 0 | 0 | 0 |
| 5 | Payment/One adequate protection payments | 0 | (576,016) | (894,868) | (433,285) | (495,421) | (491,859) | (605,991) | (302,996) | (239,812) | | |
| 6 | Florida receiver blocked account transfer (5) | 0 | (1,762,763) | | | | 1,762,763 | | | | | |
| 7 | PCS adequate protection payment | 0 | (56,000) | (132,500) | | | | | | | | |
| 8 | PCS blocked account transfer | 0 | | | | | | | | | | |
| 9 | TBR service fees earned | 0 | | (476,473) | (53,022) | (40,982) | (67,624) | (673,615) | (355,319) | (94,198) | (105,554) | (103,130) |
| 10 | Net PRE-PETITION settlement cash flow | 1,393,130 | (1,285,344) | (753,340) | 403,132 | 1,137,576 | 2,168,376 | (673,615) | (355,319) | (94,198) | (105,554) | (103,130) |
| 11 | Beginning PRE-PETITION settlement cash balance | 1,978,736 | 3,371,866 | 2,085,522 | 1,332,182 | 1,735,314 | 2,872,890 | 5,039,266 | 4,365,652 | 5,130,134 | 4,795,126 | 4,690,542 |
| 12 | Net PRE-PETITION settlement cash flow | 1,393,130 | (1,285,344) | (753,340) | 403,132 | 1,137,576 | 2,166,376 | (673,615) | 764,483 | (334,008) | (105,584) | (103,130) |
| 13 | Ending PRE-PETITION settlement cash balance | 3,371,866 | 2,085,522 | 1,332,182 | 1,735,314 | 2,872,890 | 5,039,266 | 4,365,652 | 5,130,134 | 4,795,126 | 4,587,412 | |
| **Cash Flows from Client Settlement Activities - POST-PETITION** | | | | | | | | | | | | |
| 14 | Gross CIC 402 pipeline submitted to LECs post-petition (8) | | | | | | | 1,301,494 | 2,315,289 | 1,917,991 | 2,411,189 | 958,995 |
| 15 | Less: LEC Reserve | 0 | 0 | 0 | 0 | 0 | 0 | (60,313) | (60,313) | (60,313) | (60,313) | (60,313) |
| 16 | Less: Verizon reserve increase related to bankruptcy (4) | 0 | 0 | 0 | 0 | 0 | 0 | (78,740) | (140,076) | (146,877) | (146,877) | (60,319) |
| 17 | Less: LEC Holdback | 0 | 0 | 0 | 0 | 0 | 0 | (109,325) | (115,535) | (115,538) | (58,519) | (58,519) |
| 18 | Less: LEC fees (2) | 0 | 0 | 0 | 0 | 0 | 0 | (385,842) | (194,484) | (161,111) | (202,540) | (80,585) |
| 19 | Less: LEC Dilution | 0 | 0 | 0 | 0 | 0 | 0 | (686,362) | (589,859) | (714,822) | (284,904) | |
| 20 | Net CIC 402 cash received from LEC for post-petition pipeline | 0 | 0 | 0 | 0 | 0 | 0 | 667,274 | 1,234,026 | 1,911,920 | 1,287,637 | 475,804 |
| 21 | TBR service fees earned | 0 | 0 | 0 | 0 | 0 | 0 | | | | | |
| 22 | Pre-payment of post-petition pipeline | 0 | 0 | 0 | 0 | 0 | 0 | | | | | |
| 23 | Less: Verizon reserve increase related to bankruptcy (4) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 24 | Settlement of remaining portion of post-petition pipeline | 0 | 0 | 0 | 0 | 0 | 0 | (466,907) | (267,107) | (250,413) | (403,442) | (807,882) |
| 25 | Net POST-PETITION settlement cash flow | 0 | 0 | 0 | 0 | (1,242,780) | (212,119) | 200,367 | 966,918 | 761,507 | 884,195 | (332,078) |
| 26 | Beginning POST-PETITION settlement cash balance | 0 | 0 | 0 | (1,242,780) | (1,242,780) | (1,860,816) | (2,072,935) | (1,872,568) | (905,650) | (144,143) | 740,052 |
| 27 | Net POST-PETITION settlement cash flow | 0 | 0 | 0 | (1,242,780) | (618,036) | (212,119) | 200,367 | 966,918 | 761,507 | 884,195 | (332,078) |
| 28 | Ending POST-PETITION settlement cash balance | 0 | 0 | 0 | (1,242,780) | (1,860,816) | (2,072,935) | (1,872,568) | (905,650) | (144,143) | 740,052 | 407,974 |
| 29 | Ending PRE + POST-PETITION cash balance | 3,371,866 | 2,085,522 | 1,332,182 | 492,534 | 1,012,074 | 2,966,331 | 2,493,083 | 4,224,485 | 4,651,983 | 5,430,594 | 4,995,386 |
| 30 | Collected and unremitted funds | | | | | | | 667,274 | 1,901,300 | 2,913,220 | 3,533,583 | 2,775,961 |
| 31 | Obligation to customers for collected & unremitted funds | | | | | | | 333,637 | 950,650 | 1,456,610 | 1,786,781 | 1,387,881 |
| 32 | Funds held in excess (deficit) of customer obligations | | | | 492,534 | 1,012,074 | 2,966,331 | 2,159,447 | 3,273,835 | 3,195,373 | 3,663,803 | 3,607,705 |

**EXHIBIT B**

**The Billing Resource dba Integretel**
Weekly Operating Cash Budget
For the Period Ending March 21, 2008

**DEBTOR'S BUDGET**

| | Week Ending | Actual 1 9/21/07 | Actual 2 9/28/07 | Actual 3 10/5/07 | 4 10/12/07 | 5 10/19/07 | 6 10/26/07 | 7 11/2/07 | 8 11/9/07 | 9 11/16/07 | 10 11/23/07 | 11 11/30/07 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 33 | TBR service fees earned (PhoneBill + Inquiry) | 0 | 0 | 0 | 476,473 | 53,022 | 40,982 | 67,624 | 356,319 | 94,196 | 105,584 | 103,130 |
| 34 | Other TBR service fees earned | 0 | 0 | 0 | 38,200 | | | 38,200 | | | | |
| 35 | Intercompany inflows (3) | 0 | 0 | 0 | 67,665 | | | 67,665 | | | | |
| 36 | Miscellaneous inflows | 11,357 | 0 | 0 | | | | | | | | |
| 37 | Total inflows | 11,357 | 0 | 0 | 582,338 | 53,022 | 40,982 | 173,489 | 356,319 | 94,196 | 105,584 | 103,130 |
| | *Cash Flows from Operating Activities* | | | | | | | | | | | |
| 38 | Court approved pre-petition costs | 0 | 0 | 0 | (113,000) | (17,300) | 0 | 0 | (17,300) | 0 | 0 | 0 |
| 39 | Payroll | 0 | (112,590) | 0 | 0 | 0 | (107,350) | 0 | (107,350) | 0 | (107,350) | 0 |
| 40 | Employee benefits | 0 | 0 | 0 | (30,060) | 0 | 0 | (30,060) | 0 | 0 | 0 | (30,060) |
| 41 | Direct costs | 0 | 0 | 0 | (76,600) | 0 | 0 | (76,600) | 0 | 0 | 0 | (76,600) |
| 42 | Occupancy | 0 | 0 | 0 | (25,591) | 0 | 0 | (25,591) | 0 | 0 | 0 | (25,591) |
| 43 | Intercompany G&A outflows | 0 | 0 | 0 | (27,660) | 0 | 0 | (27,660) | 0 | 0 | 0 | (27,660) |
| 44 | Other G&A outflows | (120) | (40) | (255) | (50,000) | (25,000) | (25,000) | (28,000) | (25,000) | (25,000) | (60,000) | (60,000) |
| 45 | Total outflows | (120) | (113,030) | (255) | (325,621) | (42,300) | (132,350) | (209,281) | (132,350) | (42,300) | (107,350) | (105,621) |
| 46 | Net operating cash flow | 11,237 | (113,030) | (255) | 256,716 | 10,722 | (91,368) | (35,793) | 223,969 | 51,896 | (1,766) | (2,491) |
| 47 | Bankruptcy costs (1)(6) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | (350,000) |
| 48 | Beginning operating cash balance | 177,276 | 188,513 | 75,483 | 75,228 | 331,944 | 342,667 | 251,299 | 215,506 | 439,475 | 491,371 | 489,605 |
| 49 | Net operating cash flow (including bk costs) | 11,237 | (113,030) | (255) | 256,716 | 10,722 | (91,368) | (35,793) | 223,969 | 51,896 | (1,766) | (352,491) |
| 50 | Ending operating cash balance | 188,513 | 75,483 | 75,228 | 331,944 | 342,667 | 251,299 | 215,506 | 439,475 | 491,371 | 489,605 | 137,114 |
| 51 | Ending total cash balance | 3,550,379 | 2,161,005 | 1,407,410 | 824,476 | 1,354,741 | 3,217,630 | 2,708,689 | 4,663,969 | 5,143,354 | 5,920,199 | 5,132,500 |

**NOTES:**

(1) Assumes counsel paid through retainers previously established through October 5, 2007.

(2) Assumes LEC funds netted from PAR and recovered from customer through settlement process, but inflows and outflows related to process not reflected on this schedule.

(3) Consistent w/ prior months, P1 and ICS invoiced for services performed by accounting, finance, treasury, human resources, facilities, and settlement personnel on TBR's payroll.

(4) Effective immediately, Verizon will begin holding additional reserves totaling $965k over a 16 week period. Will reduce LEC inflows accordingly.

(5) Budget assumes debtor will obtain use of $1.7MM from a blocked account as a result of Debtor's Adversary Complaint for an injunction.

(6) Budget assumes fees for Debtor and Creditors Committee Insolvency Counsel and financial consultant to the Debtor. It also assumes the Debtor will obtain a preliminary injunction with respect to the Florida litigation. Otherwise, substantial additional fees would be included in budget.

(7) The following LECs held payments: Verizon = $582,578 (9/28), ATT = $105,154 (10/4), and Verizon = $416,068 (10/5).

(8) Assumes 100% of pre-petition pipeline submitted by customers post-petition.

**The Billing Resource dba Integretel**
**Weekly Operating Cash Budget**
**For the Period Ending March 21, 2008**

| | Week Ending | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 12/7/07 | 12/14/07 | 12/21/07 | 12/28/07 | 1/4/08 | 1/11/08 | 1/18/08 | 1/25/08 | 2/1/08 | 2/8/08 | 2/15/08 |
| | **Cash Flows from Client Settlement Activities - PRE-PETITION** | | | | | | | | | | | |
| 1 | CIC 402 cash payments from LEC for pre-petition pipeline | 2,054,980 | 1,543,982 | 1,095,995 | 1,643,465 | 3,050,374 | 2,222,466 | 3,064,510 | 3,123,808 | 1,782,999 | 1,219,028 | 1,219,028 |
| 2 | Less: Verizon reserve increase related to bankruptcy (4) | (60,313) | (60,313) | (60,313) | (60,313) | (60,313) | (60,313) | (60,313) | (60,313) | (60,313) | (60,313) | (60,313) |
| 3 | Less: withheld LEC payments (7) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 4 | Net CIC 402 cash payments from LEC for pre-petition pipeline | | | | | | | | | | | |
| 5 | Payment/One adequate protection payments | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 6 | Florida receiver blocked account transfer (8) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 7 | POL adequate protection payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 8 | PCS blocked account transfer | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 9 | Less: LEC Dilution | | | | | | | | | | | |
| 10 | TBR service fees earned | | | | | | | | | | | |
| 11 | Net PRE-PETITION settlement cash flow | 1,088,508 | 858,744 | 552,392 | 856,450 | 1,567,528 | 1,182,134 | 1,652,970 | 1,656,020 | 996,787 | 681,465 | 681,465 |
| 12 | Beginning PRE-PETITION settlement cash balance | 4,587,412 | 4,587,412 | 4,587,412 | 4,587,412 | 4,587,412 | 4,587,412 | 4,587,412 | 4,587,412 | 4,587,412 | 4,587,412 | 4,587,412 |
| 13 | Ending PRE-PETITION settlement cash balance | 4,587,412 | 4,587,412 | 4,587,412 | 4,587,412 | 4,587,412 | 4,587,412 | 4,587,412 | 4,587,412 | 4,587,412 | 4,587,412 | 4,587,412 |
| | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | **Cash Flows from Client Settlement Activities - POST-PETITION** | | | | | | | | | | | |
| 14 | Gross CIC 402 pipeline submitted to LECs post-petition (6) | | | | | | | | | | | |
| 15 | Less: Verizon reserve increase related to bankruptcy (4) | (60,313) | (60,313) | (60,313) | (60,313) | (60,313) | (60,313) | (60,313) | (60,313) | (60,313) | (60,313) | (60,313) |
| 16 | Less: LEC Reserve | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 17 | Less: LEC Holdback | (124,327) | | | | | | (185,403) | (188,990) | (107,871) | (73,751) | (73,751) |
| 18 | Less: LEC fees (2) | (96,462) | | | | | | (257,419) | (262,400) | (149,772) | (102,398) | (102,398) |
| 19 | Less: LEC Dilution | (772,619) | | | | | | (658,505) | (928,086) | (528,689) | (381,394) | (381,394) |
| 20 | Net CIC 402 cash received from LEC for post-petition pipeline | 1,088,508 | | | | | | 1,652,970 | 1,656,020 | 996,787 | 681,465 | 681,465 |
| 21 | TBR service fees earned | (154,695) | (324,530) | (51,565) | (51,565) | (51,565) | (324,530) | (51,565) | (51,565) | (51,565) | (51,565) | (324,530) |
| 22 | Pre-payment of post-petition pipeline | (428,802) | (800,682) | (817,227) | (472,601) | (314,960) | (178,477) | (338,011) | (484,904) | (510,334) | (648,192) | (242,276) |
| 23 | Settlement of remaining portion of post-petition pipeline | (1,242,768) | (618,008) | (212,119) | (468,907) | (287,107) | (250,413) | (403,442) | (807,882) | (428,802) | (800,552) | (817,227) |
| 24 | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 25 | Net POST-PETITION settlement cash flow | (737,768) | (884,474) | (528,520) | (132,623) | 1,033,697 | 428,713 | 859,652 | 341,669 | 6,066 | (818,925) | (772,548) |
| 26 | Beginning POST-PETITION settlement cash balance | 407,974 | (329,794) | (1,214,268) | (1,742,789) | (1,875,411) | (841,715) | (413,002) | 446,650 | 788,519 | 794,585 | (24,340) |
| 27 | Net POST-PETITION settlement cash flow | (737,768) | (884,474) | (528,520) | (132,623) | 1,033,697 | 428,713 | 859,652 | 341,669 | 6,066 | (818,925) | (772,548) |
| 28 | Ending POST-PETITION settlement cash balance | (329,794) | (1,214,268) | (1,742,789) | (1,875,411) | (841,715) | (413,002) | 446,650 | 788,519 | 794,585 | (24,340) | (796,889) |
| 29 | Ending POST + PRE-PETITION settlement cash balance | 4,257,618 | 3,373,144 | 2,844,624 | 2,712,001 | 3,745,697 | 4,174,410 | 5,034,062 | 5,375,931 | 5,381,997 | 4,563,072 | 3,790,523 |
| 30 | Collected and unremitted funds | 2,851,949 | 2,423,056 | 2,499,644 | 2,269,586 | 3,078,170 | 3,707,912 | 4,502,332 | 4,521,023 | 4,335,656 | 3,364,271 | 2,359,736 |
| 31 | Obligation to customers for collected & unremitted funds | 1,425,975 | 1,211,528 | 1,249,822 | 1,134,793 | 1,539,085 | 1,853,956 | 2,251,166 | 2,260,511 | 2,167,828 | 1,682,136 | 1,179,868 |
| 32 | Funds held in excess (deficit) of customer obligations | 2,831,643 | 2,161,615 | 1,594,802 | 1,577,208 | 2,206,612 | 2,320,454 | 2,783,096 | 3,115,419 | 3,214,169 | 2,880,936 | 2,610,655 |

**The Billing Resource dba Integretel**
**Weekly Operating Cash Budget**
**For the Period Ending March 21, 2008**

| Week Ending | | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 12/7/07 | 12/14/07 | 12/21/07 | 12/28/07 | 1/4/08 | 1/11/08 | 1/18/08 | 1/25/08 | 2/1/08 | 2/8/08 | 2/15/08 |
| **Cash Flows from Operating Activities** | | | | | | | | | | | | |
| 33 | TBR service fees earned (PhoneBill + Inquiry) | 154,695 | 324,530 | 51,565 | 51,565 | 51,565 | 324,530 | 51,565 | 51,565 | 51,565 | 51,565 | 324,530 |
| 34 | Other TBR service fees earned | 38,200 | 0 | 0 | 0 | 38,200 | 0 | 0 | 0 | 38,200 | 0 | 0 |
| 35 | Intercompany inflows (3) | 67,665 | 0 | 0 | 0 | 67,665 | 0 | 0 | 0 | 67,665 | 0 | 0 |
| 36 | Miscellaneous inflows | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 37 | Total inflows | 260,560 | 324,530 | 51,565 | 51,565 | 157,430 | 324,530 | 51,565 | 51,565 | 157,430 | 51,565 | 324,530 |
| 38 | Court approved pre-petition costs | 0 | (17,300) | 0 | (30,000) | (107,350) | 0 | 0 | 0 | (107,350) | 0 | (107,350) |
| 39 | Payroll | (107,350) | 0 | (107,350) | 0 | 0 | 0 | (107,350) | 0 | (30,060) | 0 | 0 |
| 40 | Employee benefits | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | (76,000) | 0 | 0 |
| 41 | Direct costs | (78,000) | 0 | 0 | (25,581) | (76,000) | 0 | 0 | 0 | (25,581) | 0 | 0 |
| 42 | Occupancy | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | (27,660) | 0 | 0 |
| 43 | Intercompany G&A outflows | (27,660) | 0 | 0 | 0 | (27,660) | 0 | 0 | 0 | (50,000) | 0 | 0 |
| 44 | Other G&A outflows | (25,000) | (25,000) | 0 | (50,000) | (25,000) | (25,000) | 0 | 0 | (25,000) | (25,000) | (25,000) |
| 45 | Total outflows | (236,010) | (42,300) | (107,350) | (105,621) | (236,010) | (25,000) | (124,650) | 0 | (316,631) | (25,000) | (132,350) |
| 46 | Net operating cash flow | 24,549 | 282,230 | (55,785) | (54,056) | (78,581) | 299,530 | (73,085) | 51,565 | (159,202) | 26,565 | 192,180 |
| 47 | Bankruptcy costs (1)(6) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | (250,000) | 0 | 0 | 0 |
| 48 | Beginning operating cash balance | 137,114 | 161,663 | 443,893 | 388,108 | 334,052 | 255,472 | 555,002 | 481,917 | 283,482 | 124,280 | 150,845 |
| 49 | Net operating cash flow (including bk costs) | 24,549 | 282,230 | (55,785) | (54,056) | (78,581) | 299,530 | (73,085) | (198,435) | (159,202) | 26,565 | 192,180 |
| 50 | Ending operating cash balance | 161,663 | 443,893 | 388,108 | 334,052 | 255,472 | 555,002 | 481,917 | 283,482 | 124,280 | 150,845 | 343,025 |
| 51 | Ending total cash balance | 4,419,281 | 3,817,037 | 3,232,732 | 3,046,053 | 4,001,169 | 4,729,412 | 5,516,179 | 5,659,412 | 5,606,277 | 4,713,917 | 4,203,549 |

**NOTES:**

(1) Assumes counsel paid through reserves previously established through October 5, 2007.

(2) Assumes LEC costs netted from PAR and recovered from customer through settlement process, but not inflows and outflows related to process not reflected on this schedule.

(3) Consistent w/ prior months, P1 and ICS invoiced for services performed by accounting, finance, treasury, human resources, facilities, and settlement personnel on TBR's payroll.

(4) Effective immediately, Verizon will begin holding additional reserves totaling $965k over a 16 week period. Will reduce LEC inflows accordingly.

(5) Budget assumes debtor will obtain use of $1.7MM from a blocked account.

(6) Budget assumes fees for Debtor and Creditors Committee Insolvency Counsel and financial consultant pursuant to the Debtor. It also assumes the Debtor will obtain a preliminary injunction with respect to the Florida litigation. Otherwise, substantial additional fees would be included in budget.

(7) The following LECs held payments: Verizon = $562,578 (9/28), AT&T = $105,154 (10/4), and Verizon = $416,065 (10/5).

(8) Assumes 100% of pre-petition pipeline submitted by customers post-petition.

**The Billing Resource dba Integretel**
**Weekly Operating Cash Budget**
**For the Period Ending March 21, 2008**

| | Week Ending | 23 | 24 | 25 | 26 | 27 | Total |
|---|---|---|---|---|---|---|---|
| | | 2/22/08 | 2/29/08 | 3/7/08 | 3/14/08 | 3/21/08 | |
| | **Cash Flows from Client Settlement Activities - PRE-PETITION** | | | | | | |
| 1 | CIC 402 cash payments from LEC for pre-petition pipeline | 0 | 0 | 0 | 0 | 0 | $ 8,417,701 |
| 2 | Less: withheld LEC payments (7) | 0 | 0 | 0 | 0 | 0 | (180,938) |
| 3 | Less: Verizon reserve increase related to bankruptcy (4) | 0 | 0 | 0 | 0 | 0 | 0 |
| 4 | Net CIC 402 cash payments from LEC for pre-petition pipeline | 0 | 0 | 0 | 0 | 0 | 8,236,764 |
| 5 | Payment/One adequate protection payments | 0 | 0 | 0 | 0 | 0 | (4,142,228) |
| 6 | Florida receiver blocked account transfer (6) | 0 | 0 | 0 | 0 | 0 | (132,303) |
| 7 | Less: POL adequate protection payment | 0 | 0 | 0 | 0 | 0 | (156,000) |
| 8 | PCS blocked account transfer | 0 | 0 | 0 | 0 | 0 | (1,297,330) |
| 9 | TBR service fees earned | 0 | 0 | 0 | 0 | 0 | |
| 10 | Net PRE-PETITION settlement cash flow | 0 | 0 | 0 | 0 | 0 | 2,608,676 |
| 11 | Beginning PRE-PETITION settlement cash balance | 4,587,412 | 4,587,412 | 4,587,412 | 4,587,412 | 4,587,412 | 1,978,736 |
| 12 | Net PRE-PETITION settlement cash flow | 0 | 0 | 0 | 0 | 0 | 2,608,676 |
| 13 | Ending PRE-PETITION settlement cash balance | 4,587,412 | 4,587,412 | 4,587,412 | 4,587,412 | 4,587,412 | 4,587,412 |
| | **Cash Flow from Client Settlement Activities - POST-PETITION** | | | | | | |
| 14 | Gross CIC 402 pipeline submitted to LECs post-petition (1) | 1,301,494 | 2,315,289 | 1,917,991 | 2,411,189 | 958,995 | 39,970,570 |
| 15 | Less: LEC Reserve | | | | | | 0 |
| 16 | Less: Verizon reserve increase related to bankruptcy (4) | (78,740) | | | | | (784,063) |
| 17 | Less: LEC Holdback | 0 | | | | | (2,418,220) |
| 18 | Less: LEC fees (2) | (109,325) | | | | | (3,387,528) |
| 19 | Less: LEC Dilution | (383,842) | | | | | (11,849,895) |
| 20 | Net CIC 402 cash received from LEC for post-petition pipeline | 727,586 | 1,294,338 | 1,072,233 | 1,347,560 | 535,116 | 21,531,085 |
| 21 | TBR service fees earned | | | | | | |
| 22 | Less: Pre-payment of post-petition pipeline | | | | | | (2,200,030) |
| 23 | Settlement of remaining portion of post-petition pipeline | | | | | | (11,954,785) |
| 24 | Less: LEC fees (2) | (51,565) | (51,565) | (51,565) | (51,565) | (51,565) | (6,104,321) |
| 25 | Net POST-PETITION settlement cash flow | (345,207) | 221,102 | 698,103 | 524,775 | (889,956) | (518,071) |
| 26 | Beginning POST-PETITION settlement cash balance | (726,889) | (1,072,096) | (850,994) | (152,880) | 371,885 | 0 |
| 27 | Net POST-PETITION settlement cash flow | (345,207) | 221,102 | 698,103 | 524,775 | (889,956) | (518,071) |
| 28 | Ending POST-PETITION settlement cash balance | (1,072,096) | (850,994) | (152,880) | 371,885 | (518,071) | (518,071) |
| 29 | Ending POST + PRE-PETITION settlement cash balance | 3,515,316 | 3,736,418 | 4,434,522 | 4,959,297 | 4,069,341 | 4,069,341 |
| 30 | Collected and unremitted funds | 2,090,556 | 2,703,409 | 3,094,157 | 3,714,520 | 2,956,299 | |
| 31 | Obligation to customers for collected & unremitted funds | 1,045,278 | 1,351,705 | 1,547,079 | 1,867,260 | 1,478,149 | |
| 32 | Funds held in excess (deficit) of customer obligations | 2,470,038 | 2,384,714 | 2,687,443 | 3,102,037 | 2,591,192 | |

**The Billing Resource dba Integretel**
**Weekly Operating Cash Budget**
**For the Period Ending March 21, 2008**

| Week Ending | 23 2/22/08 | 24 2/29/08 | 25 3/7/08 | 26 3/14/08 | 27 3/21/08 | Total |
|---|---|---|---|---|---|---|
| **Cash Flows from Operating Activities:** | | | | | | |
| 33 TBR service fees earned (PhoneBill + Inquiry) | 51,565 | 324,530 | 51,565 | 51,565 | 51,565 | 3,317,360 |
| 34 Other TBR service fees earned | 0 | 0 | 38,200 | 0 | 0 | 228,200 |
| 35 Intercompany inflows (3) | 0 | 0 | 67,665 | 0 | 0 | 405,989 |
| 36 Miscellaneous inflows | 0 | 0 | 0 | 0 | 0 | 11,357 |
| 37 Total inflows | 51,565 | 324,530 | 157,430 | 51,565 | 51,565 | 3,963,906 |
| 38 Court approved pre-petition costs | 0 | 0 | 0 | 0 | 0 | (89,200) |
| 39 Payroll | 0 | (107,380) | 0 | (107,380) | 0 | (1,406,840) |
| 40 Employee benefits | 0 | (30,000) | 0 | 0 | 0 | (183,700) |
| 41 Direct costs | 0 | (25,581) | (76,000) | 0 | 0 | (456,000) |
| 42 Occupancy | 0 | 0 | (27,660) | 0 | 0 | (153,980) |
| 43 Intercompany G&A outflows | 0 | 0 | (25,000) | (25,000) | 0 | (165,980) |
| 44 Other G&A outflows | 0 | (50,000) | 0 | 0 | 0 | (600,415) |
| 44 Total outflows | 0 | (212,971) | (128,660) | (132,350) | 0 | (3,035,484) |
| 46 Net operating cash flow | 51,565 | 111,559 | 28,769 | (80,785) | 51,565 | 928,423 |
| 47 Bankruptcy costs (1) (6) | 0 | 0 | 0 | 0 | (200,000) | (800,000) |
| 48 Beginning operating cash balance | 343,025 | 394,590 | 506,149 | 534,919 | 454,134 | 177,276 |
| 49 Net operating cash flow (Including bk costs) | 51,565 | 111,559 | 28,769 | (80,785) | (148,435) | 128,423 |
| 50 Ending operating cash balance | 394,590 | 506,149 | 534,919 | 454,134 | 305,699 | 305,699 |
| 51 Ending total cash balance | 3,909,905 | 4,242,568 | 4,969,440 | 5,413,431 | 4,375,040 | 4,375,040 |

**NOTES:**

(1) Assumes counsel paid through retainers previously established through October 5, 2007.

(2) Assumes LEC costs netted from PAR and recovered from customer through settlement process, but inflows and outflows related to process not reflected on this schedule.

(3) Consistent w/ prior months, P1 and ICS invoiced for services performed by personnel on TBR's payroll.

(4) Effective immediately, Verizon will begin holding additional reserves totaling $965k over a 16 week period. Will reduce LEC inflows accordingly.

(5) Budget assumes debtor will obtain use of $1.7MM from a blocked account as a result of Debtor's Adversary Complaint for an injunction.

(6) Budget assumes fees for the Debtor and Creditors Committee Insolvency Counsel and financial consultant to the Debtor. It also assumes the Debtor will obtain a preliminary injunction with respect to the Florida litigation. Otherwise, substantial additional fees would be included in budget.

(7) The following LECs held payments. Verizon = $592,578 (9/28), ATT = $105,154 (10/4), and Verizon = $415,065 (10/5).

(8) Assumes 100% of pre-petition pipeline submitted by customers post-petition.

# <u>EXHIBIT C</u>

**The Billing Resource dba Integretel**
**Weekly Operating Cash Budget**
**For the Period Ending March 21, 2008**

## DEBTOR'S BUDGET ASSUMING NO PRELIMINARY INJUNCTION

| Week Ending | Actual 1 9/21/07 | Actual 2 9/28/07 | Actual 3 10/5/07 | 4 10/12/07 | 5 10/19/07 | 6 10/26/07 | 7 11/2/07 | 8 11/9/07 | 9 11/16/07 | 10 11/23/07 | 11 11/30/07 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash Flows from Client Settlement Activities - PRE-PETITION** | | | | | | | | | | | |
| 1  CIC 402 cash payments from LEC for pre-petition pipeline | $1,393,130 | $1,673,013 | $895,277 | $1,713,182 | $1,746,332 | 998,767 | | | | | |
| 2  Less: withheld LEC payments (7) | | (562,578) | (921,219) | | | 1,083,797 | | | | | |
| 3  Less: Verizon reserve increase related to bankruptcy (4) | 0 | 0 | 0 | (60,313) | (60,313) | (60,313) | | | | | |
| 4  Net CIC 402 cash payments from LEC for pre-petition pipeline | 1,393,130 | 1,110,435 | 374,058 | 1,652,870 | 1,686,020 | 2,020,252 | | | | | |
| 5  Payment/One adequate protection payments | 0 | (576,016) | (994,868) | (433,285) | (495,421) | (491,859) | (605,991) | (302,096) | (239,812) | (403,442) | (807,882) |
| 6a Florida receiver blocked account transfer (5) | 0 | (1,762,763) | | | | | | | | | |
| 7  Additional legal costs in Florida action (6) | 0 | | (132,530) | | | | (333,333) | | | | |
| 8  POL adequate protection payment | 0 | (56,000) | | | | | | | | | |
| 9  PCB blocked account transfer | 0 | | | (476,473) | | (46,982) | (78,740) | (60,313) | (60,313) | (60,313) | (60,313) |
| 10 TBR service fees earned | 0 | | | (53,022) | (53,022) | (87,324) | (189,624) | (140,075) | (116,038) | (145,877) | (50,019) |
|    | | | | | | | (385,842) | (184,484) | (191,111) | (202,540) | (80,056) |
| 11 Net PRE-PETITION settlement cash flow | 1,393,130 | (1,266,340) | (753,340) | 743,132 | 1,137,576 | 1,487,410 | 667,274 | (986,392) | (558,609) | (714,822) | (284,394) |
| 12 Beginning PRE-PETITION settlement cash balance | | 1,976,796 | 2,085,522 | 1,332,182 | 2,075,314 | 3,212,890 | 1,820,784 | 1,234,026 | 1,011,920 | 1,287,637 | 475,804 |
|    Net PRE-PETITION settlement cash flow | 1,393,130 | (1,266,340) | (753,340) | 743,132 | 1,137,576 | 1,487,410 | 333,837 | | | | |
| 13 Ending PRE-PETITION settlement cash balance | 1,393,130 | 2,085,522 | 1,332,182 | 2,075,314 | 3,212,890 | 4,700,300 | 1,487,147 | 3,693,352 | 2,594,446 | 2,594,446 | 2,491,316 |
| **Cash Flows from Client Settlement Activities - POST-PETITION** | | | | | | | | | | | |
| 14 Gross CIC 402 pipeline submitted to LECs (post-petition (4) | 0 | 0 | 0 | 0 | 0 | 0 | 1,301,494 | 2,315,289 | 1,917,991 | 2,411,189 | 956,995 |
| 15 Less: Verizon reserve increase related to bankruptcy (4) | 0 | 0 | 0 | 0 | 0 | 0 | (60,313) | (60,313) | (60,313) | (60,313) | (60,313) |
| 16 Less: LEC Holdback | 0 | 0 | 0 | 0 | 0 | 0 | (78,740) | (140,075) | (116,038) | (145,877) | (50,019) |
| 17 Less: LEC fees (2) | 0 | 0 | 0 | 0 | 0 | 0 | (109,624) | (184,484) | (191,111) | (202,540) | (80,056) |
| 18 Less: LEC Dilution | 0 | 0 | 0 | 0 | 0 | 0 | (385,842) | (986,392) | (558,609) | (714,822) | (284,394) |
| 19 |  |  |  |  |  |  |  |  |  |  |  |
| 20 Net CIC 402 cash received from LEC for post-petition pipeline | 0 | 0 | 0 | 0 | 0 | 0 | 667,274 | 1,234,026 | 1,011,920 | 1,287,637 | 475,804 |
| 21 TBR service fees earned | 0 | 0 | 0 | 0 | 0 | (466,907) | (287,107) | (250,413) | (807,882) | | |
| 22 Pre-payment of post-petition pipeline | 0 | 0 | 0 | 0 | (618,036) | (212,119) | | | | | |
| 23 Settlement of remaining portion of post-petition pipeline | 0 | 0 | 0 | (1,242,780) | (618,036) | (212,119) | 200,387 | 966,918 | 765,507 | 884,195 | (332,078) |
| 24 |  |  |  |  |  |  |  |  |  |  |  |
| 25 Net POST-PETITION settlement cash flow | 0 | 0 | 0 | (1,242,780) | (618,036) | (212,119) | 200,387 | 966,918 | 765,507 | 884,195 | (332,078) |
| 26 Beginning POST-PETITION settlement cash balance | 0 | 0 | 0 | 0 | (1,242,780) | (1,860,816) | (2,072,935) | (1,872,568) | (905,650) | (144,143) | 740,052 |
| 27 Net POST-PETITION settlement cash flow | 0 | 0 | 0 | (1,242,780) | (616,036) | (212,119) | 200,387 | 966,918 | 791,507 | 884,195 | 407,974 |
| 28 Ending POST-PETITION settlement cash balance | 0 | 0 | 0 | (1,242,780) | (1,860,816) | (2,072,935) | (1,872,568) | (905,650) | (144,143) | 740,052 | 407,974 |
| 29 Ending POST + PRE-PETITION cash balance | 3,371,866 | 2,085,522 | 1,332,182 | 832,534 | 1,352,074 | 2,627,365 | (905,650) | 2,913,220 | 3,533,583 | 3,334,498 | 2,899,290 |
| 30 Collected and unremitted funds | | 3,371,866 | 2,085,522 | 832,534 | 1,352,074 | 2,627,365 | 667,274 | 1,901,300 | 2,913,220 | 3,533,583 | 2,775,361 |
| 31 Obligation to customers for collected & unremitted funds | | 2,085,522 | 2,075,314 | 1,860,816 | 2,072,935 | 1,820,784 | 333,837 | 950,650 | 1,455,610 | 1,766,791 | 1,387,681 |
| 32 Funds held in excess (deficit) of customer obligations | | 1,332,182 | 1,332,182 | 832,534 | 1,352,074 | 2,627,365 | 1,487,147 | 1,177,739 | 1,099,277 | 1,567,708 | 1,511,809 |

**EXHIBIT C**

**The Billing Resource dba Integretel**
**Weekly Operating Cash Budget**
**For the Period Ending March 21, 2008**

## DEBTOR'S BUDGET ASSUMING NO PRELIMINARY INJUNCTION

| # | Week Ending | Actual 1 9/21/07 | Actual 2 9/28/07 | Actual 3 10/5/07 | 4 10/12/07 | 5 10/19/07 | 6 10/26/07 | 7 11/2/07 | 8 11/9/07 | 9 11/16/07 | 10 11/23/07 | 11 11/30/07 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 33 | **Cash Flows from Operating Activities** | | | | | | | | | | | |
| 34 | Court approved pre-petition costs | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 35 | TBR service fees earned (PhoneBill + Inquiry) | 0 | 0 | 0 | 476,473 | 53,022 | 40,882 | 67,624 | 356,319 | 94,196 | 105,584 | 103,130 |
| 36 | Other TBR service fees earned (3) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 37 | Intercompany inflows (3) | 0 | 0 | 0 | 38,200 | 0 | 0 | 38,200 | 0 | 0 | 0 | 0 |
| 38 | Miscellaneous inflows | 11,357 | 0 | 0 | 67,665 | 0 | 0 | 67,665 | 0 | 0 | 0 | 0 |
| | Total inflows | 11,357 | 0 | 0 | 582,338 | 53,022 | 40,882 | 173,489 | 356,319 | 94,196 | 105,584 | 103,130 |
| 40 | Payroll | 0 | (112,990) | 0 | (113,400) | (17,300) | (107,350) | (107,350) | (107,350) | (17,300) | (107,350) | (17,300) |
| 41 | Employee benefits | 0 | 0 | 0 | (33,000) | 0 | 0 | (30,000) | 0 | 0 | 0 | (30,000) |
| 42 | Direct costs | 0 | 0 | 0 | (76,000) | 0 | 0 | (76,000) | 0 | 0 | 0 | 0 |
| 43 | Occupancy | 0 | 0 | 0 | (25,561) | 0 | 0 | (25,561) | 0 | 0 | 0 | (25,561) |
| 44 | Intercompany G&A outflows | (120) | (40) | (255) | (27,660) | 0 | 0 | (27,660) | 0 | 0 | 0 | (60) |
| 45 | Other G&A outflows | 0 | 0 | 0 | (50,000) | (25,000) | (25,000) | (50,000) | (25,000) | (25,000) | 0 | (50,000) |
| | Total outflows | (120) | (113,030) | (255) | (325,621) | (42,300) | (132,350) | (209,281) | (132,350) | (42,300) | (107,350) | (105,621) |
| 46 | Net operating cash flow | 11,237 | (113,030) | (255) | 256,716 | 10,722 | (91,368) | (35,793) | 223,969 | 51,896 | (1,766) | (2,491) |
| 47 | Bankruptcy costs (1) (6) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | (350,000) |
| 48 | Net operating cash flow (including bk costs) | 11,237 | (113,030) | (255) | 256,716 | 10,722 | (91,368) | (35,793) | 223,969 | 51,896 | (1,766) | (352,491) |
| 48 | Beginning operating cash balance | 177,276 | 188,513 | 75,483 | 75,228 | 331,944 | 342,667 | 251,299 | 215,506 | 439,475 | 491,371 | 489,605 |
| 49 | Net operating cash flow (including bk costs) | 11,237 | (113,030) | (255) | 256,716 | 10,722 | (91,368) | (35,793) | 223,969 | 51,896 | (1,766) | (352,491) |
| 50 | Ending operating cash balance | 188,513 | 75,483 | 75,228 | 331,944 | 342,667 | 251,299 | 215,506 | 439,475 | 491,371 | 489,605 | 137,114 |
| 51 | Ending total cash balance | 3,550,379 | 2,161,005 | 1,407,410 | 1,154,478 | 1,694,741 | 2,878,684 | 2,567,183 | 3,047,259 | 3,824,103 | 3,036,404 | |

**NOTES:**

(1) Assumes counsel paid through retainers previously established through October 5, 2007.

(2) Assumes LEC costs netted from PAR and recovered from customer through settlement process, but inflows and outflows related to process not reflected on this schedule.

(3) Consistent w/ prior months, P1 and ICS invoiced for services performed by accounting, finance, treasury, human resources, facilities, and settlement personnel on TBR's payroll.

(4) Effective immediately, Verizon will begin holding additional reserves totaling $965k over a 18 week period. Will reduce LEC inflows accordingly.

(5) Budget assumes $1.7 MM will remain in blocked account.

(6) Budget assumes fees for Debtor and Creditors Committee Insolvency Counsel and financial consultants to the Debtor. It also assumes the Debtor will not obtain a preliminary injunction with respect to the Florida litigation. As a result, an additional $1MM in fees will be incurred for the Florida action.

(7) The following LECs held payments: Verizon = $592,578 (9/28). AT&T = $105,154 (10/4), and Verizon = $416,065 (10/5).

(8) Assumes 100% of pre-petition pipeline submitted by customers post-petition.

**The Billing Resource dba Integretel**
**Weekly Operating Cash Budget**
**For the Period Ending March 21, 2008**

| | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Ending | 12/7/07 | 12/14/07 | 12/21/07 | 12/28/07 | 1/4/08 | 1/11/08 | 1/18/08 | 1/25/08 | 2/1/08 | 2/8/08 | 2/15/08 |
| **Cash Flow from Client Settlement Activities - PRE-PETITION** | | | | | | | | | | | |
| 1  CIC 402 cash payments from LEC for pre-petition pipeline | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 2  Less: withheld LEC payments (7) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3  Less: Verizon reserve increase related to bankruptcy (7) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 4  Net CIC 402 cash payments from LEC for pre-petition pipeline | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 5  Payment/One adequate protection payments | (333,333) | 0 | 0 | 0 | (333,333) | 0 | 0 | 0 | 0 | 0 | 0 |
| 6  Florida receiver blocked account transfer (8) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 7  Less: Additional legal costs in Florida action (6) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 8  POL adequate protection payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 9  PCS blocked account transfer | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 10 TBR service fees earned | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 11 Net PRE-PETITION cash flow | (333,333) | 0 | 0 | 0 | (333,333) | 0 | 0 | 0 | 0 | 0 | 0 |
| 12 Beginning PRE-PETITION settlement cash balance | 2,491,316 | 2,157,982 | 2,157,982 | 2,157,982 | 2,157,982 | 1,824,649 | 1,824,649 | 1,824,649 | 1,824,649 | 1,824,649 | 1,824,649 |
| Net PRE-PETITION settlement cash flow | (333,333) | | | | (333,333) | | | | | | |
| 13 Ending PRE-PETITION settlement cash balance | 2,157,982 | 2,157,982 | 2,157,982 | 2,157,982 | 1,824,649 | 1,824,649 | 1,824,649 | 1,824,649 | 1,824,649 | 1,824,649 | 1,824,649 |
| **Cash Flow from Client Settlement Activities - POST-PETITION** | | | | | | | | | | | |
| 14 Gross CIC 402 pipeline submitted to LECs post-petition (8) | 2,054,990 | 1,643,982 | 1,095,995 | 1,643,465 | 3,090,374 | 2,222,466 | 3,064,510 | 3,123,608 | 1,782,999 | 1,219,028 | 1,219,028 |
| 15 Less: LECs Reserve | (60,313) | (60,313) | (60,313) | (60,313) | (60,313) | (60,313) | (60,313) | (60,313) | (60,313) | (60,313) | (60,313) |
| 16 Less: Verizon reserve increase related to bankruptcy (4) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 17 Less: LEC Holdback | (124,327) | (99,462) | (99,430) | (99,430) | (186,968) | (134,459) | (185,480) | (188,980) | (149,722) | (102,398) | (102,398) |
| 18 Less: LEC fees (2) | (172,619) | (138,095) | (92,064) | (138,051) | (259,591) | (186,687) | (257,419) | (262,400) | (107,871) | (73,751) | (73,751) |
| 19 Less: LEC Dilution | (609,223) | (487,779) | (324,919) | (487,223) | (916,174) | (658,873) | (908,509) | (926,096) | (528,599) | (361,394) | (361,394) |
| 20 Net CIC 402 cash received from LEC for post-petition pipeline | 1,088,508 | 858,744 | 655,392 | 858,460 | 1,867,329 | 1,182,134 | 1,852,670 | 1,886,020 | 996,767 | 681,485 | 681,485 |
| 21 TBR service fees earned | (154,695) | (324,530) | (51,565) | (51,565) | (51,565) | (324,530) | (51,565) | (51,565) | (51,565) | (51,565) | (324,530) |
| 22 Pre-payment of post-petition pipeline | (428,802) | (800,652) | (817,227) | (472,901) | (314,960) | (178,477) | (338,071) | (484,904) | (310,334) | (646,192) | (242,276) |
| 23 Settlement of remaining portion of post-petition pipeline | (1,242,780) | (618,036) | (212,119) | (465,907) | (314,107) | (250,413) | (403,442) | (607,882) | (428,802) | (800,652) | (817,227) |
| 24 Net POST-PETITION settlement cash flow | (737,768) | (884,474) | (528,520) | (132,623) | 1,033,697 | 428,713 | 859,852 | 341,669 | 6,065 | (818,925) | (702,548) |
| 25 Beginning POST-PETITION settlement cash balance | 407,974 | (329,794) | (1,214,268) | (1,742,788) | (1,875,411) | (841,715) | (413,002) | 446,850 | 788,519 | 794,585 | (24,340) |
| 26 Net POST-PETITION settlement cash flow | (737,768) | (884,474) | (528,520) | (132,623) | 1,033,697 | 428,713 | 859,852 | 341,669 | 6,065 | (818,925) | (702,548) |
| 27 Ending POST-PETITION settlement cash balance | (329,794) | (1,214,268) | (1,742,788) | (1,875,411) | (841,715) | (413,002) | 446,850 | 788,519 | 794,585 | (24,340) | (726,889) |
| 28 Net POST + PRE-PETITION settlement cash flow | | | | | | | | | | | |
| 29 Ending POST + PRE-PETITION cash balance | 1,828,188 | 943,714 | 415,194 | 282,571 | 982,934 | 1,411,647 | 2,271,499 | 2,613,168 | 2,619,234 | 1,800,309 | 1,097,760 |
| 30 Collected and unremitted funds | 2,851,949 | 2,423,055 | 2,499,644 | 2,268,586 | 3,078,170 | 3,707,912 | 4,502,332 | 4,521,023 | 4,335,656 | 3,364,271 | 2,358,736 |
| 31 Obligation to customers for collected & unremitted funds | 1,425,975 | 1,211,528 | 1,249,822 | 1,134,793 | 1,539,085 | 1,853,956 | 2,251,166 | 2,260,511 | 2,167,828 | 1,682,138 | 1,179,868 |
| 32 Funds held in excess (deficit) of customer obligations | 402,213 | (287,814) | (834,628) | (852,222) | (556,151) | (442,309) | 20,333 | 352,656 | 451,406 | 118,173 | (82,106) |

**The Billing Resource dba Integretel**
**Weekly Operating Cash Budget**
**For the Period Ending March 21, 2008**

| Week | | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Ending | | 12/7/07 | 12/14/07 | 12/21/07 | 12/28/07 | 1/4/08 | 1/11/08 | 1/18/08 | 1/25/08 | 2/1/08 | 2/8/08 | 2/15/08 |
| 33 | **Cash Flows from Operating Activities** | | | | | | | | | | | |
| 34 | TBR & ICS service fees earned (PhoneBill + Inquiry) | 154,695 | 324,530 | 51,565 | 51,565 | 51,565 | 324,530 | 51,565 | 51,565 | 51,565 | 51,565 | 324,530 |
| 35 | Other TBR service fees earned | 38,200 | 0 | 0 | 0 | 38,200 | 0 | 0 | 0 | 38,200 | 0 | 0 |
| 36 | Intercompany inflows (3) | 67,665 | 0 | 0 | 0 | 67,665 | 0 | 0 | 0 | 67,665 | 0 | 0 |
| 37 | Miscellaneous inflows | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | Total Inflows | 260,560 | 324,530 | 51,565 | 51,565 | 157,430 | 324,530 | 51,565 | 51,565 | 157,430 | 51,565 | 324,530 |
| 38 | Court approved pre-petition costs | 0 | (17,300) | (107,350) | (107,350) | (107,350) | (17,300) | (107,350) | 0 | (107,350) | 0 | (107,350) |
| 39 | Payroll | (107,350) | 0 | 0 | (30,060) | 0 | 0 | 0 | 0 | (30,060) | 0 | 0 |
| 40 | Employee benefits | (76,000) | 0 | 0 | (76,000) | (76,000) | 0 | 0 | 0 | (76,000) | 0 | 0 |
| 41 | Direct costs | 0 | 0 | 0 | (25,561) | 0 | 0 | 0 | 0 | (25,561) | 0 | 0 |
| 42 | Occupancy | (27,660) | 0 | 0 | 0 | (27,660) | 0 | 0 | 0 | (27,660) | 0 | 0 |
| 43 | Intercompany G&A outflows | (25,000) | (25,000) | 0 | (50,000) | (25,000) | (25,000) | 0 | 0 | (50,000) | (25,000) | (25,000) |
| 44 | Other G&A outflows | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 45 | Total outflows | (236,010) | (42,300) | (107,350) | (105,621) | (236,010) | (25,000) | (124,650) | 0 | (316,631) | (25,000) | (132,350) |
| 46 | Net operating cash flow | 24,549 | 282,230 | (55,785) | (54,056) | (78,581) | 299,530 | (73,065) | 51,565 | (159,202) | 26,565 | 192,180 |
| 47 | Bankruptcy costs (1) (8) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | (250,000) | 0 | 0 | 0 |
| 48 | Beginning operating cash balance | 137,114 | 161,663 | 443,893 | 388,108 | 334,052 | 255,472 | 555,002 | 481,917 | 283,482 | 124,280 | 150,845 |
| 49 | Net operating cash flow (including bk costs) | 24,549 | 282,230 | (55,785) | (54,056) | (78,581) | 299,530 | (73,065) | (198,435) | (159,202) | 26,565 | 192,180 |
| 50 | Ending operating cash balance | 161,663 | 443,893 | 388,108 | 334,052 | 255,472 | 555,002 | 481,917 | 283,482 | 124,280 | 150,845 | 343,025 |
| 51 | Ending total cash balance | 1,998,852 | 1,387,607 | 803,302 | 616,623 | 1,238,405 | 1,966,649 | 2,753,416 | 2,896,649 | 2,743,514 | 1,951,154 | 1,440,786 |

**NOTES:**

(1) Assumes counsel paid through retainer previously established through October 5, 2007.

(2) Assumes LEC costs netted from PAR and recovered from customer through settlement process, but inflows and outflows related to process not reflected on this schedule.

(3) Consistent w/ prior months, P1 and ICS invoiced for services performed by personnel on TBR's payroll.

(4) Effective immediately, Verizon will begin holding additional reserves totaling $965k over a 16 week period. Will reduce LEC inflows accordingly.

(5) Budget assumes $1.7 MM will remain in blocked account.

(6) Budget assumes fees for Debtor and Creditors Committee (Insolvency Counsel and financial consultants to the Debtor. It also assumes the Debtor will not obtain a preliminary injunction with respect to the Florida litigation. As a result, an additional $1MM in fees will be incurred for the Florida action.

(7) The following LECs held payments: Verizon = $562,578 (#29), ATT = $105,154 (104), and Verizon = $416,085 (105).

(8) Assumes 100% of pre-petition pipeline submitted by customers post-petition.

**The Billing Resource dba Integretel**
**Weekly Operating Cash Budget**
**For the Period Ending March 21, 2008**

| Week Ending | | 23 | 24 | 25 | 26 | 27 | Total |
|---|---|---|---|---|---|---|---|
| | | 2/22/08 | 2/29/08 | 3/7/08 | 3/14/08 | 3/21/08 | |
| | **Cash Flows from Client Settlement Activities – PRE-PETITION** | | | | | | |
| 1 | CIC 402 cash payments from LEC for pre-petition pipeline | 0 | 0 | 0 | 0 | 0 | $ 8,417,701 |
| 2 | Less: withheld LEC payments (7) | 0 | 0 | 0 | 0 | 0 | (180,939) |
| 3 | Less: Verizon reserve increase related to bankruptcy (7) | 0 | 0 | 0 | 0 | 0 | |
| 4 | Net CIC 402 cash payments from LEC for pre-petition pipeline | 0 | 0 | 0 | 0 | 0 | 8,236,764 |
| 5 | Payments/One adequate protection payments | 0 | 0 | 0 | 0 | 0 | (4,142,228) |
| 6 | Florida receiver blocked account transfer (5) | 0 | 0 | 0 | 0 | 0 | (1,762,765) |
| 7 | Additional legal costs in Florida action (6) | 0 | 0 | 0 | 0 | 0 | (1,000,000) |
| 8 | POL adequate protection payment | 0 | 0 | 0 | 0 | 0 | (132,530) |
| 9 | PCS blocked account transfer | 0 | 0 | 0 | 0 | 0 | (56,000) |
| 10 | TBR service fees earned | 0 | 0 | 0 | 0 | 0 | (1,287,330) |
| 11 | Net PRE-PETITION settlement cash flow | 0 | 0 | 0 | 0 | 0 | (154,087) |
| 12 | Beginning PRE-PETITION settlement cash balance | 1,824,649 | 1,824,649 | 1,824,649 | 1,824,649 | 1,824,649 | 1,978,736 |
| 13 | Ending PRE-PETITION settlement cash balance | 1,824,649 | 1,824,649 | 1,824,649 | 1,824,649 | 1,824,649 | 1,824,649 |
| | **Cash Flows from Client Settlement Activities – POST-PETITION** | | | | | | |
| 14 | Gross CIC 402 pipeline submitted to LECs post-petition (8) | 1,301,494 | 2,315,289 | 1,917,991 | 2,411,189 | 958,995 | 39,970,570 |
| 15 | Less: LEC Reserve | (61,565) | (324,530) | (51,565) | (51,565) | (51,565) | (2,020,030) |
| 16 | Less: Verizon reserve increase related to bankruptcy (4) | (548,628) | (433,748) | (144,087) | (433,599) | (889,603) | (11,954,795) |
| 17 | Less: LEC Holdback | (472,501) | (314,950) | (178,477) | (338,011) | (484,904) | (8,104,321) |
| 18 | Less: LEC fees (2) | (78,740) | (140,075) | (116,038) | (145,877) | (58,019) | (794,083) |
| 19 | Less: LEC Dilution | (109,325) | (194,484) | (181,111) | (202,540) | (80,559) | (2,418,220) |
| 20 | Net CIC 402 cash received from LEC for post-petition pipeline | (385,842) | (698,392) | (568,609) | (714,922) | (284,304) | (3,387,528) |
| | | 727,585 | 1,294,338 | 1,072,233 | 1,347,960 | 536,116 | 21,561,085 |
| 21 | TBR service fees earned | | | | | | |
| 22 | Pre-payment of post-petition pipeline | | | | | | |
| 23 | Settlement of remaining portion of post-petition pipeline | | | | | | |
| 24 | | | | | | | |
| 25 | Net POST-PETITION settlement cash flow | (345,207) | 221,102 | 696,103 | 524,775 | (889,966) | (518,071) |
| | | (345,207) | 221,102 | 696,103 | 524,775 | (889,966) | (518,071) |
| 26 | Beginning POST-PETITION settlement cash balance | (726,889) | (1,072,096) | (860,994) | (192,890) | 371,885 | 0 |
| 27 | Net POST-PETITION settlement cash balance | (345,207) | 221,102 | 698,103 | 524,775 | (889,966) | (518,071) |
| 28 | Ending POST-PETITION settlement cash balance | (1,072,096) | (850,994) | (162,890) | 371,885 | (518,071) | (518,071) |
| 29 | Ending POST + PRE-PETITION settlement cash balance | 752,553 | 973,655 | 1,671,759 | 2,196,534 | 1,306,578 | 1,306,578 |
| 30 | Collected and unremitted funds | 2,090,566 | 2,703,409 | 3,094,157 | 3,714,520 | 2,956,299 | 2,956,299 |
| 31 | Obligation to customers for collected & unremitted funds | 1,045,278 | 1,351,705 | 1,547,079 | 1,887,260 | 1,478,149 | 1,478,149 |
| 32 | Funds held in excess (deficit) of customer obligations | (292,725) | (378,049) | 124,680 | 339,274 | (171,571) | (171,571) |