**The Billing Resource dba Integretel**
**Weekly Operating Cash Budget**
**For the Period Ending March 21, 2008**

| | Week Ending | 23 | 24 | 25 | 26 | 27 | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | 2/22/08 | 2/29/08 | 3/7/08 | 3/14/08 | 3/2/08 | Total |
| | **Cash Flows from Operating Activities** | | | | | | |
| 33 | TBR service fees earned (PhoneBill + Inquiry) | 51,565 | 324,530 | 51,565 | 51,565 | 51,565 | 3,317,360 |
| 34 | Other TBR service fees earned | 0 | 0 | 38,200 | 0 | 0 | 229,200 |
| 35 | Intercompany inflows (3) | 0 | 0 | 67,665 | 0 | 0 | 405,989 |
| 36 | Miscellaneous inflows | 0 | 0 | 0 | 0 | 0 | 11,357 |
| 37 | Total inflows | 51,565 | 324,530 | 157,430 | 51,565 | 51,565 | 3,963,906 |
| 38 | Court approved pre-petition costs | 0 | 0 | 0 | 0 | 0 | (69,200) |
| 39 | Payroll | 0 | (107,350) | 0 | (107,350) | 0 | (1,408,840) |
| 40 | Employee benefits | 0 | (30,060) | 0 | 0 | 0 | (183,700) |
| 41 | Direct costs | 0 | 0 | (76,000) | 0 | 0 | (458,000) |
| 42 | Occupancy | 0 | (25,561) | 0 | 0 | 0 | (153,366) |
| 43 | Intercompany G&A outflows | 0 | (50,000) | (27,660) | 0 | 0 | (165,983) |
| 44 | Other G&A outflows | 0 | 0 | (25,000) | (25,000) | 0 | (600,415) |
| 45 | Total outflows | 0 | (212,971) | (128,660) | (132,350) | 0 | (3,035,484) |
| 46 | Net operating cash flow | 51,565 | 111,559 | 28,769 | (80,785) | 51,565 | 928,423 |
| 47 | Bankruptcy costs (1) (8) | 0 | 0 | 0 | 0 | (200,000) | (800,000) |
| 48 | Beginning operating cash balance | 343,025 | 394,590 | 506,149 | 534,919 | 454,134 | 177,276 |
| 49 | Net operating cash flow (including bk costs) | 51,565 | 111,559 | 28,769 | (80,785) | (148,435) | 128,423 |
| 50 | Ending operating cash balance | 394,590 | 506,149 | 534,919 | 454,134 | 305,699 | 305,699 |
| 51 | Ending total cash balance | 1,147,143 | 1,478,805 | 2,206,677 | 2,650,608 | 1,812,277 | 1,812,277 |

**NOTES:**

(1) Assumes counsel paid through retainers previously established through October 5, 2007.

(2) Assumes LEC costs netted from PAR and recovered from customer through settlement process, but inflows and outflows related to process not reflected on this schedule.

(3) Consistent w/ prior months. P1 and ICS invoiced for services performed by accounting, finance, treasury, human resources, facilities, and settlement personnel on TBR's payroll.

(4) Effective immediately, Verizon will begin holding additional reserves totaling $965k over a 16 week period. Will reduce LEC inflow accordingly.

(5) Budget assumes $1.7 MM will remain in blocked account.

(6) Budget assumes fees for Debtor and Creditors Committee Insolvency Counsel and financial consultants to the Debtor. It also assumes the Debtor will not obtain a preliminary injunction with respect to the Florida litigation. As a result, an additional $1MM in fees will be incurred for the Florida action.

(7) The following LECs held payments: Verizon = $562,578 (9/28), AT&T = $105,154 (10/4), and Verizon = $416,065 (10/5).

(8) Assumes 100% of pre-petition pipeline submitted by customers post-petition.

**RER - 32**

1  HOWARD KOLLITZ (State Bar No. 059611)
   WALTER K. OETZELL (State Bar No. 109769)
2  STEVEN J. SCHWARTZ (State Bar No. 200586)
   DANNING, GILL, DIAMOND & KOLLITZ, LLP
3  2029 Century Park East, Third Floor
   Los Angeles, California 90067-2904
4  Telephone:  (310) 277-0077
   Facsimile:  (310) 277-5735
5  E-mail      sschwartz@dgdk.com
               woetzell@dgdk.com
6
   JEFFREY C. SCHNEIDER (pro-hac vice)
7  TEW CARDENAS LLP
   Four Seasons Tower, Fifteenth Floor
8  1441 Brickell Avenue
   Miami, Florida 33131-3407
9  Telephone:  (305) 539-2481
   Facsimile:  (305) 536-1116
10
   Attorneys for David R. Chase, Federal Receiver of Access
11 One Communications, Inc., and Network One Services, Inc.

12                 UNITED STATES BANKRUPTCY COURT

13                 NORTHERN DISTRICT OF CALIFORNIA

14                       SAN JOSE DIVISION

15 In re                          ) Case No. 07-52890-ASW
                                   )
16 THE BILLING RESOURCE, dba Integretal, a ) Chapter 11
   California corporation,         )
17                                 ) **FOURTH REQUEST FOR JUDICIAL**
           Debtor.                 ) **NOTICE OF DAVID R. CHASE,**
18                                 ) **FEDERAL RECEIVER IN OPPOSITION**
   Taxpayer's Identification No. 33-0289863 ) **TO MOTION FOR AUTHORITY TO**
19                                 ) **USE CASH COLLATERAL**
                                   )
20                                 ) Date:   October 15, 2007
                                   ) Time:   2:15 p.m.
21                                 ) Ctrm:   3020
                                   )
22                                 )
                                   )
23                                 )
                                   )
24                                 )
                                   )
25                                 )
                                   )
26                                 )
                                   )
27 _____)

28

                              -1-

315454.01 [XP]    24774                          RER-32    1372

1 **TO THE HONORABLE ARTHUR S. WEISSBRODT, UNITED STATES BANKRUPTCY**

2 **JUDGE:**

3    Pursuant to Rule 201(d) of the Federal Rules of Evidence, David R. Chase, the duly

4 appointed, qualified and acting Receiver serving under the authority of the United States District

5 Court for the Southern District of Florida in pending case number 06-80180-CIV-RYSKAMP,

6 entitled <u>Federal Trade Commission vs. Nationwide Connections, Inc., Access One</u>

7 <u>Communications, Inc., Network One Connections, Inc., et al.</u> (the "District Court Action"), hereby

8 requests that this Court take judicial notice of the following Motion filed by The Billing Resource

9 dba Integretel (the "Debtor") in the District Court Action on or about **October 11, 2007**:

10    1.    Appellant's Time Sensitive Motion for Immediate Interim Stay or Injunction

11 Pending Full Consideration of motion and for Continuation of the Stay or Injunction Pending

12 Complete Resolution of this Appeal, attached hereto as **Exhibit "T"**.

13    2.    Exhibits in Support of Appellant's Time Sensitive Motion for Immediate Interim

14 Stay or Injunction Pending Full Consideration of motion and for Continuation of the Stay or

15 Injunction Pending Complete Resolution of this Appeal (Volume 1 of 2), attached hereto as

16 **Exhibit "U"**.

17    3.    Exhibits in Support of Appellant's Time Sensitive Motion for Immediate Interim

18 Stay or Injunction Pending Full Consideration of motion and for Continuation of the Stay or

19 Injunction Pending Complete Resolution of this Appeal (Volume 2 of 2), attached hereto as

20 **Exhibit "V"**.

21

22 Dated: October 12, 2007           DANNING, GILL, DIAMOND & KOLLITZ, LLP

23

24                                   By: _____

25                                         STEVEN J. SCHWARTZ
                                          Attorneys for David R. Chase, Court-
26                                        Appointed Receiver of Access One
                                          Communications, Inc., and Network One
27                                        Services, Inc.

28

-2-

# EXHIBIT "T"

Pursuant to Fed. R. App. P. 8, appellant The Billing Resource dba Integretel ("Integretel") moves that the Court stay the district court's order of September 21, 2007 ("the Vacatur Order"; Ex. 1), which vacated its bankruptcy stay order of the previous day and ruled that its "Omnibus Order" entered September 14 (Ex. 2) was not subject to the Bankruptcy Code's automatic stay. Specifically, Integretel requests that the Court grant an immediate interim stay pending full consideration of this motion and then that it continue the stay in effect during the pendency of this appeal.[1]

To the extent that such a stay is not regarded as reinstating the automatic stay while the motion and appeal are pending, Integretel further moves for an immediate injunction expressly granting such relief pending full consideration of this motion and for continuation of that injunction during the pendency of the appeal.

Integretel sought a stay from the district court, but while that court purported to "conditionally grant" the motion, it actually denied it. (Ex. 22.) This motion is time-sensitive under Circuit Rule 27-1 because a ruling on our request for an immediate stay or injunction is needed by October 17, 2007, when an agreed temporary stay will expire. (Integretel has attempted to get an agreement to extend this temporary stay, but so far no such agreement has been reached.

### Introduction

Integretel seeks to stay an order, entered without giving Integretel an opportunity

---

1. We do not challenge the September 21 order insofar as it held that the Federal Trade Commission's claims under the FTC Act were not automatically stayed.

to be heard, vacating a bankruptcy stay order the court had entered only the day before. Integretel had sought bankruptcy protection after being ordered to pay more than $1 million in disputed funds to the receiver for two of Integretel's former clients, on the theory that the funds were receivership assets. Integretel has appealed both orders.

The district court ruled that the stay did not apply because it had held that the disputed funds belonged to the receiver, not to Integretel. But the court misinterpreted the plain language of the automatic stay provision, 11 U.S.C. § 362. The stay's applicability here does *not* turn on the alleged ownership of the disputed funds. Even under the district court's (mistaken) conclusion that the funds belong to the receiver, the automatic stay applies because enforcement would constitute (1) a continuation of a proceeding begun against Integretel before its bankruptcy, (2) the enforcement against Integretel of a judgment obtained before bankruptcy, and (3) an act to obtain possession of property from Integretel's estate. 11 U.S.C. § 362(a)(1), (2) & (3).

The district court also held that its pre-bankruptcy order is covered by the "regulatory exception" to the automatic stay under 11 U.S.C. § 362(b)(4). That holding, too, is erroneous for a variety of reasons. The order is no more regulatory in nature than any court order requiring an alleged asset of a receivership or bankruptcy estate to be turned over to the receiver or trustee.

By erroneously holding that the automatic stay does not apply, the district court deprived Integretel of the "breathing spell" that is one of the Bankruptcy Code's most important debtor protections. Without a stay pending appeal, the purpose of the appeal

00018

will be frustrated, because in the interim Integretel will have been subjected to the very harms the automatic stay is intended to prevent. And because this Court is likely to hold that the disputed sums do *not* belong to the Receiver, allowing enforcement would allow the Receiver to obtain property that really belongs to Integretel's bankruptcy estate, which would interfere with Integretel's reorganization efforts, harm Integretel's other creditors, and prevent the bankruptcy court from deciding whether Integretel should be allowed to use that money.

### Statement of the Case

**Summary.** Two of Integretel's former clients were put into receivership in a suit brought by the Federal Trade Commission. Integretel was served with an injunction directing "any person or entity served with a copy of this Order" to turn over to the receiver all assets belonging to those former clients. The receiver demanded that Integretel turn over certain funds that he said were owed to the former clients, and that he claimed as receivership property. Integretel argued that the amounts at issue were not owed under the governing contracts and that even if anything was owed, the Receiver's claim was unsecured, so that the disputed amounts were not receivership assets.

The receiver moved to require Integretel to show cause why it should not be held in contempt. The district court erroneously held that the disputed funds are receivership assets and ordered Integretel to pay them to the receiver. Because Integretel could not have done so and still remained in business, it filed for bankruptcy protection. The district court then compounded its error by erroneously ruling that the Bankruptcy

-3-

Code's automatic stay does not apply.

**Integretel's services and the contracts.** Integretel is a telecommunications billing aggregator. It has contracts with local phone companies ("Telcos") whereby it acts as an intermediary between the Telcos and its clients—independent telecommunications companies and other service providers—so that its clients can have their charges appear on consumers' local phone bills. The clients submit their billing information to Integretel, which forwards the data to the Telcos as part of a transaction structured as a sale of accounts receivable. The Telcos include the charges on their bills and make payments to Integretel based on the anticipated collections on all billings submitted by Integretel, without allocating those payments among specific transactions or even among Integretel's various clients. Integretel then pays its clients based on the contractual formulas.

The former clients at issue here are Network One and Access One ("the Former Clients"). Their contracts, which are substantially the same as other clients', set out formulas for computing the amounts to be paid to them. Excluded from those amounts are sums allocated to the "IGT Reserve," which are defined as "an amount withheld, from the amount otherwise owed to Client with respect to Billing Transactions, to protect IGT [Integretel] from credit losses or otherwise to cover reserves or offsets, other than Uncollectibles imposed by a Telco." (Ex. 3 at 14, 19, 43, 51.) The IGT Reserves do not take the form of a segregated account or a fund of money that has been earmarked or set aside. Rather, they are merely bookkeeping entries. Integretel holds no identifiable pool of money that constitutes the IGT Reserves for the Former Clients. (Ex. 3 at 3.)

-4-

Integretel provided services to Network One for about a month in 2003 and to Access One for seven months in late 2004 and early 2005. In both cases, Integretel stopped providing services after questions arose about the validity of the billing trans-actions, long before the FTC took any action. Once it did so, it set the IGT Reserve for each client at 100% and stopped further payments. (Ex. 3 at 2.)

**The FTC lawsuit.** On February 27, 2006, the Federal Trade Commission sued the Former Clients, along with others associated with them, for violating the FTC Act by causing consumers to be billed for fraudulent collect-call charges (a practice know as "cramming"). (Ex. 4.) The FTC did not name Integretel as a defendant. Seven months later, however, it amended its complaint to assert claims against Integretel and another aggregator. (Ex. 5.) In defending against the FTC's claims, Integretel contends that it did not know that the charges were fraudulent and that up until the time it pulled the plug on the Former Clients, it could not reasonably have known that the charges were fraudulent. The district court has not yet considered the merits of the FTC's claims against Integretel. There has been no finding that Integretel violated the law or even that the FTC is likely to prevail. The FTC has not moved for interim relief against Integretel.

The FTC's original complaint sought preliminary and permanent injunctive relief and monetary relief in the form of "restitution, the refund of monies paid, and the disgorgement of ill-gotten monies." (Ex. 4.) The FTC sought and received a temporary restraining order. The TRO (1) restrained the original defendants from continuing to engage in cramming, (2) froze the original defendants' assets, and (3) appointed a temp-

-5-

orary receiver ("the Receiver") for the Former Clients and Nationwide Connections, the other corporate defendant. (Ex. 6.) The Former Clients and another defendant. The Receiver was authorized to collect these defendants' assets. The TRO required the original defendants (but no one else) to turn over to the Receiver "[a]ll assets of the Receivership Defendants[.]" (*Id.* at 15-16.) The TRO provided that unless extended, it would expire on March 9. (*Id.* at 25.)

The TRO was served on Integretel. (Ex. 3 at 4.) Because the TRO's turnover provision applied only to the original defendants, it imposed no duties on Integretel, which was not then a defendant.[2] On March 8, the TRO was superseded by a preliminary injunction, which made the Receiver's appointment permanent. (Ex. 8.) That injunction was identical to the TRO in all relevant respects except one: the turnover provision was broadened to cover not only the original defendants, but also "any person or entity served with a copy of this Order[.]" This injunction was not served on Integretel. (Ex. 3 at 5; Ex. 8 at 16.)

The district court entered an amended preliminary injunction on September 22,

---

2. Shortly after Integretel was served with the TRO, it told the FTC that the Former Clients "would be entitled to certain proceeds from billing transactions" but that each entity "is in default of [its] contract and, therefore, no amounts are currently due and owing." It also said, "To the extent proceeds become due to [the client] in the future, we will establish a separate bank account into which such funds will be deposited and notify your office accordingly." (Ex. 3 at 97.) The import of this statement is in dispute. However, it is not disputed that beginning in June 2006, when Integretel was not subject to any injunction, Integretel's counsel discussed the reserves with counsel for the FTC, who waited months before relaying the information to the Receiver. (Ex. 7 at 1-3.)

2006. (Ex. 9.) This injunction, which was identical in all relevant respects to the original preliminary injunction, was served on Integretel on October 10, 2006. (Ex. 7 at ¶¶ 12–13; Ex. 10 at ¶¶ 4-5.) Three days later, the Receiver moved that Integretel be required to show cause why it should not be held in civil contempt for allegedly violating the TRO and the amended preliminary injunction. (Doc. 243.)

Almost a year later, on September 14, 2007, the district court granted the Receiver's motion. (Ex. 2 .) The court ordered Integretel to show cause why it should not be held in contempt, but did not find that Integretel was in fact in contempt. Nevertheless, the court directed Integretel to "provide a sworn statement identifying the amount of reserves as of the issuance of the TRO" and ordered that "these funds shall be placed in a segregated Receivership account." (Ex. 1 at 10.) That order ("the Omnibus Order") was based on the court's conclusion that Integretel held the reserve amounts "on behalf of, or for the benefit of" the Former Clients and that those amounts were therefore receivership assets. The court cited no contractual provision supporting this conclusion. Instead, it relied on its general equitable power and its in rem jurisdiction over receivership assets.

**The bankruptcy filing and subsequent events.** Making the payment required by the Omnibus Order would have depleted Integretel's operating cash so much that Integretel would probably have been forced out of business. To avoid that result, Integretel filed for bankruptcy protection under Chapter 11 in California (where it is based) on September 16. (Ex. 11.) In a submission to the bankruptcy court, the Receiver tacitly

acknowledged that the Omnibus Order is covered by the Bankruptcy Code's automatic stay. (Ex. 12 at 9-10 (statement by Receiver that "the appropriate remedy is relief from the automatic stay").)

Before 10 a.m. on September 20, the FTC faxed the district court's chambers an emergency motion seeking "clarification" that the automatic stay did not apply to this case and told chambers about the motion by phone. (Ex. 13 & 14.) The alleged emergency was that a bankruptcy hearing was coming up soon. (Ex. 14 at 11.) That afternoon, the district court entered an order declaring that the case "is subject to the automatic stay set forth in 11 U.S.C. § 362." (Ex. 1.)

Given the timing of this order in relation to the FTC's motion, it appeared that it was unnecessary to respond to the FTC's motion because the court had effectively denied it, and indeed that no further filings would be allowed. But the next day, without notice, the district court reversed course: it granted the FTC's motion, vacated the previous day's stay order, and held that the automatic stay did *not* apply. (Ex. 1.) The court acted without allowing Integretel a fair opportunity to be heard. It did not notify Integretel that it was reconsidering its stay order, and did not ask for a response or even set a deadline for responding.

In addition to vacating the stay, the court said that it had ruled in the Omnibus Order "that the reserve funds are the property of the receivership estate[.]" (Ex. 1 at 1.) The court also described the Omnibus Order as having "ordered Integretel to pay the current reserve funds, amounting to $1,762,762.56, immediately to the Receiver." (*Id.*)

-8-

This description was materially incorrect.[3]

On the next business day, Integretel appealed the orders of September 14 and 21. On the same day, the Receiver moved that Integretel be ordered to pay the reserve amounts by the following day, and that if it did not do so, its president be ordered to personally appear before the court in Florida on September 26, the date of a resumed hearing on Integretel's emergency motion for permission to use cash collateral. (Ex. 16 at 1, 4; *see also* Ex. 17 (Integretel response).) The district court denied this motion, stating that "the Bankruptcy Court should have the opportunity to make its own determination as to Integretel's [cash-collateral] motion." (Ex. 18.)

The next day, Integretel asked the district court for a stay pending appeal. (Ex. 19; *see also* Ex. 20 & 21 (Receiver's response and Integretel's reply).) On September 26, without waiting for the outcome of the cash-collateral hearing, the district court entered an order it described as "conditionally granting" Integretel's motion, but that actually denied it. The court said that enforcement would be stayed "provided that Integretel transfers the amount of $1,762,762.56, representing the reserve funds, to the Receiver within three days of the date of this Order. The Receiver shall then keep those funds in a segregated account during the pendency of any appeal." (Ex. 22; emphasis omitted.) In its effect on

---

3.  What the Omnibus Order had said was that Integretel was to "provide a sworn statement identifying the amount of reserves as of the issuance of the TRO" and that "these funds shall be placed in a segregated Receivership account." (Ex. 2 at 10.) The amount booked as IGT Reserves for the Former Customers when the TRO was issued was $1,230,479.89, not $1,762,762.56. (Ex. 3 at 7.) The Omnibus Order did not specify when payment was due.

Integretel, this is no different than the original order, which had likewise directed Integretel to pay the reserve amount into a segregated receivership account.

The Receiver has agreed to a stay of the Omnibus Order and the contempt proceedings until October 17, 2007, provided that Integretel deposits the disputed sum in a segregated and blocked debtor-in-possession account under the bankruptcy court's control. (Ex. 23 & 24.) Integretel and the Receiver have moved in the district court for an order implementing that temporary stay (Ex. 25) and are awaiting entry of that order.

**Injunction proceedings in bankruptcy court.** Integretel has sought an injunction in the bankruptcy court under 11 U.S.C. § 105 against (among other things), enforcement of the Omnibus Order and continuation of the contempt proceedings. (Exhibit 26.) The bankruptcy court is ordering the Receiver and the FTC to show cause why that motion should not be granted. (Ex. 27 at 12-13.) In explaining why it was doing so, the court noted Integretel's assertion (which is undisputed) "that it held the alleged reserve funds in a commingled account." (*Id.* at 12.) It stated that "a party seeking to establish a trust over commingled funds must trace those funds" and that "no party has made any effort to trace any funds[.]" (*Id.*) As a result, "all the FTC [*sic;* Receiver] likely has is an unsecured claim[.]" (*Id.*) A hearing on the show-cause order is set for October 17.

This Court should not wait to see what the bankruptcy court does before ruling on this motion. If this Court waits for the bankruptcy court and that court decides not to issue an injunction (or if it decides to let this Court rule first), Integretel would be at risk of contempt sanctions when the agreed temporary stay expires and would have to ask

-10-

denial of a statutory stay of litigation. In such a case, the usual balancing of equities is inappropriate because Congress has already balanced the equities. *See Jove Engineering v. IRS*, 92 F.3d 1539, 1546 (11th Cir. 1996) (while ordinary injunctions are discretionary, the bankruptcy stay arises automatically). More importantly, without a stay pending appeal, the entire purpose of the appeal will be frustrated and the reversal of the district court's order will be an empty gesture.

Thus, in *Blinco v. Green Tree Servicing, LLC* , 366 F.3d 1249 (11th Cir. 2004), this Court held that on an appeal from an order refusing a stay pending arbitration, the action should be stayed in the district court unless the appeal is frivolous. The Court reasoned that otherwise the intended benefit of arbitration (avoiding the costs and delays of litigation) would be irretrievably lost. *Id.* at 1251-52. The Court followed the Seventh Circuit's decision in *Bradford-Scott Data Corp., Inc. v. Physician Computer Network*, Inc., 128 F.3d 504 (7th Cir. 1997), where the court said, "Continuation of proceedings in the district court largely defeats the point of the appeal and creates a risk of inconsistent handling of the case by two tribunals." *Id.* at 505. The Seventh Circuit pointed out that "[w]hether the litigation may go forward in the district court is precisely what the court of appeals must decide[,]" and said that a nonfrivolous claim of immunity from litigation in the district court (which is essentially what Integretel asserts here), "is inconsistent with continuation of proceedings in the district court, and . . . the notice of appeal accordingly brings those proceedings to a halt[.]" *Id.* at 506.

The same reasoning applies here. The automatic stay is "'one of the fundamental

-12-

debtor protections provided by the bankruptcy laws'" because it "'gives the debtor a

breathing spell from his creditors.'" *Jove Engineering*, 92 F.3d at 1550 (quoting from the

legislative history). It protects the debtor from having to undergo the cost and burdens

of litigation. Denying Integretel a stay pending appeal would therefore defeat the purpose

of the automatic stay (and of this appeal) by exposing Integretel to a resumption of the

litigation that the stay was intended to stop.

## B.  The district court erred in vacating the September 20 stay order and ruling that the Omnibus Order is excepted from the automatic stay.

Under § 362(a) of the Bankruptcy Code (11 U.S.C. § 362(a)), the filing of a

bankruptcy petition "operates as a stay, applicable to all entities," of the following:

> (1) the . . . continuation. . . of a judicial . . .action or proceeding against
> the debtor that was . . . commenced before the commencement of the case
> under this title . . .;
>
> (2) the enforcement, against the debtor or against property of the estate,
> of a judgment obtained before the commencement of the case under this
> title; [and]
>
> (3) any act to obtain possession of property of the estate or of property
> from the estate . . . .

As we have noted, the Receiver tacitly acknowledged that the orders at issue were

subject to the automatic stay. In ruling to the contrary, the district court erred.

a. Even assuming the disputed amounts do not belong to Integretel (but see pages

18-19, below), the court's ruling about the automatic stay would be wrong because it was

based on the mistaken view that the a stay applies only with respect to property of the

estate or of the debtor. (Ex. 1 at 4.) The Omnibus Order is subject to the automatic stay

00029

whether or not the disputed funds belong to the bankruptcy estate. This is so because the order constitutes (1) a continuation of a proceeding commenced against Integretel before its bankruptcy, (2) the enforcement against Integretel of a judgment obtained before bankruptcy, and (3) an act to obtain possession of property from Integretel's estate.

In saying that the automatic stay applies "only to protect property of the bankruptcy estate or property of the debtor," the district court misinterpreted § 362(a)'s plain language. Subsection (1) says nothing to suggest it is limited to property of the estate or of the debtor; it doesn't even use those terms. Subsection (2) applies to the enforcement of judgments, not only against the bankruptcy estate, but also against the debtor.

And subsection (3) extends the stay to acts to obtain possession "of property *from* the estate" (emphasis added). This means that the stay protects property that is merely in the debtor's possession, regardless of who it belongs to. *See, e.g., In re Atlantic Business and Community Corp.*, 901 F.2d 325, 328 (3d Cir. 1990)( section 362 "makes clear that mere possession of property at the time of filing is sufficient to invoke the protections of the automatic stay"); *In re Turbowind, Inc.*, 42 B.R. 579, 585 (Bankr. S.D. Cal. 1984) ("The operation of the automatic stay does not depend on the debtor having either a legal or equitable interest in the property, but applies to property merely in the debtor's possession at the time of filing"). The legislative history confirms this point: "Paragraph (3) stays any act to obtain possession of . . . property from the estate (property over which the estate has control or possession." H.R. Rep. No. 95-595 at 340-42, 95th Cong., 1st Sess. (1977); S. Rep. No. 95-989 at 49-51, 95th Cong., 2d Sess. 49-51 (1978), *reprinted*

-14-

*in* U.S. Code Cong. & Admin. News  5787, 5836, 6298.

**b.** In addition to its "property of the estate" analysis, the district court relied on the "regulatory exception" to the automatic stay, under which the provisions quoted above do not apply to proceedings "by a governmental unit . . . to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment [.]" 11 U.S.C. § 362(b)(4). This holding, too, was mistaken.

The regulatory exception applies only to actions or proceedings "by a governmental unit to enforce such governmental unit's police and regulatory power[.]" The Omnibus Order was issued on the motion of the Receiver, not the FTC. Even if the Receiver could somehow be deemed a "governmental unit," the proceedings on his motion were not proceedings by a governmental unit "to enforce *such governmental unit's* police and regulatory power[.]" 11 U.S.C. § 362(b)(4) (emphasis added). The Receiver has no police or regulatory power to enforce; his function is pecuniary: collecting, managing, and distributing the Receivership Defendants' assets.

This is true even though the Receiver was appointed in a suit by the FTC. The Receiver 's counsel told the bankruptcy court that the Receiver's claim against Integretel "was not predicated on the FTC's enforcement action." (Ex. 27 at 3.) That statement was correct. The Receiver is not authorized under the order appointing him to assert the FTC's rights or interests. (Ex. 6 at 10-14; Ex. 8 at 11-14; Ex. 9 at 11-15). Rather, he merely stands in the shoes of the Former Clients. *See, e.g., Fleming v. Lind-Waldock & Co.,*

-15-

922 F.2d 20, 24-25 (1st Cir. 1990). Moreover, the FTC Act may be enforced only by the FTC. *E.g., Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1174 n.5 (11th Cir. 1985), And the Omnibus Order cannot constitute a regulatory measure because it was not based on any finding that Integretel violated the FTC Act.

Even if the regulatory exception otherwise applied, by its own terms it does not extend to the enforcement of a money judgment. *SEC v. Brennan*, 230 F.3d 65, 71-72 (2d Cir. 2000). For purposes of § 362(b)(4), an order constitutes a "money judgment" if it is intended to remedy a past alleged harm rather than to prevent harm in the future and it can be satisfied by the payment of a sum certain. *Penn Terra Ltd. v. Department of Environmental Resources*, 733 F.2d 267, 276-77, 278 (3d Cir. 1984). The Omnibus Order qualifies on both counts.

**c.** The district court erred in ruling that civil contempt proceedings against Integretel were not subject to the stay. (Ex. 1 at 4.) First, for the same reason that the Omnibus Order is not within the regulatory exception to the stay, the contempt proceedings are not within it. The cases the court relied on involved contempt actions by government agencies and were based on contempt of regulatory orders. *SEC v. Bilzerian*, 131 F. Supp. 2d 10, 14 (D.D.C. 2001); *NLRB v. Sawulski*, 158 B.R. 971, 977-79 (E.D. Mich. 1993). Second, those cases state that contempt proceedings are exempt from the automatic stay only if their purpose is to uphold the dignity of the court. *Bilzerian*, 131 F. Supp. 2d 10 at 15; *Sawulski*, 158 B.R. at 975. The proceedings here do not qualify. Civil, unlike criminal, contempt, is not intended to vindicate the court's authority, but is purely remedial. *See,*

00032

RER-32    1389

*e.g.*, *United States v. United Mine Workers*, 330 U.S. 258, 302 (1947); *Serra Chevrolet, Inc. v. General Motors Corp.*, 446 F.3d 1137, 1147 (11th Cir. 2006). Thus, civil contempt proceedings are ordinarily subject to the automatic stay—at least where, as here, they are directed toward enforcement of an order that is itself subject to the stay. Third, although the cases cited by the court involved civil contempt proceedings, in those cases the debtors had been held in contempt before filing for bankruptcy. *Bilzerian*, 131 F. Supp. 2d at 12-13, 15; *Sawulski*, 158 B.R. at 974, 976. The interest in enforcing court orders was therefore stronger than it is here, where there was no such determination prior to the bankruptcy filing.

**C. To the extent that a fact-specific balancing of the equities is appropriate, the balance favors granting a stay.**

**Without a stay, Integretel faces irreparable injury.** By ruling that the Omnibus Order and the contempt proceedings are not subject to the automatic stay, the district court denied Integretel the full benefits of the stay. That in and of itself constitutes irreparable injury. *See In re Lomas Financial Corp.*, 117 B.R. 64, 67-68 (S.D.N.Y. 1990). Like the denial of the right to free speech under the First Amendment, which also constitutes irreparable injury per se, *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1271-72 (11th Cir 2006), the erroneous denial of the breathing spell that Congress intended debtors in bankruptcy to enjoy causes a harm that cannot be measured in monetary terms and for which there is no adequate compensation.[5]

---

5. This does not mean that a bankruptcy-court order the bankruptcy court granting

-17-

Moreover, without a stay pending appeal, Integretel will face concrete harm arising from the district court's intention to compel payment from Integretel on pain of contempt. Without a stay, enforcement of the Omnibus Order would presumably pick up where it was left off. The district court has made it clear that it will grant no meaningful relief; its order "conditionally granting" a stay was a *de facto* denial. So Integretel would again become embroiled in litigation over this issue—probably on an emergency basis—and there would be a very real chance of a conflict between the district court and the bankruptcy court.

And beyond that, allowing enforcement of the Omnibus Order would allow the Receiver obtain money that this Court will most likely hold is really property of Integretel's bankruptcy estate, which would impair Integretel's efforts to reorganize, harm Integretel's other creditors, and prevent the bankruptcy court from being able to decide whether Integretel should be allowed to use the funds.

This Court is likely to reverse the Omnibus Order because it is clear that under the correct analysis, the disputed amounts are not receivership assets. Before the Receiver was appointed, the Former Clients had no property interest in the reserve amounts. Even if those amounts were "owed" under the contracts, the Former Clients were merely unsecured creditors. They had no security interest, and the contracts rule out any

---

relief from the automatic stay would per se cause the debtor irreparable injury. Whereas the question whether the stay applies in the first instance does not involve a weighing of individualized equities, the question whether to grant relief from the stay does.

-18-

00034

fiduciary relationship by providing that Integretel is not the client's "agent, partner, joint venturer, trustee, fiduciary, or legal representative[.]" (Ex. 3 at 13, 41.) The contracts also undermine the district court's statement that the reserves were held on behalf of the Former Clients or for their benefit (Ex. 2 at 3), for they describe the IGT Reserve as being intended "to protect IGT [ i.e., Integretel.]" (Ex. 3 at 14, 43.)

Since the Former Clients had no property interest in the reserves before they were put in receivership, the Receiver also has none. The order appointing the Receiver did not and could not give him property rights that had not previously existed. Neither of the injunctive orders dealt with the question of whether the reserves were a receivership asset. More importantly, the court lacked the power to declare that funds that never belonged to the Former Clients were nevertheless receivership assets. Although a receivership court may have broad equitable powers, those powers do not extend to creating new substantive rights or property interests. *See, e.g., Hedges v. Dixon*, 150 U.S. 182, 192 (1893). *East Tennessee Natural Gas Co. v. Sage*, 361 F.3d 808, 823 (4th Cir. 2004).

The district court also said that the reserves belonged to the Receiver because they were within the court's in rem jurisdiction over receivership assets. (Ex. 2 at 4, 5, 7.) But that puts the cart before the horse. In rem jurisdiction extends only to property the receivership estate has an interest in. The ownership issue must therefore be resolved *before* the jurisdictional question, not after. And in any event, the court did *not* have in rem jurisdiction here. Such jurisdiction attaches only to assets within a court's actual or constructive possession. *See, e.g., Penn General Casualty Co. v. Commonwealth of Pennsylvania ex rel.*

-19-

*Schnader*, 294 U.S. 189, 195 (1935). No such possession exists with respect to assets in the hands of a third party who holds them under a substantial claim of right, as Integretel does here. *E.g., Taubel-Scott-Kitzmiller Co. v. Fox*, 264 U.S. 426, 432-34 (1924).

**A stay would not significantly harm the Receiver.** Integretel is subject to supervision by the bankruptcy court and the disputed funds are under that court's control. The Bankruptcy Code sets out rules and procedures designed to protect the rights of creditors who claim an interest in property in the debtor's possession. The Receiver has already sought those protections from the bankruptcy court, and a stay pending appeal would not prevent it from continuing to do so. Nor would the Receiver be significantly harmed by staying the contempt proceedings. Such proceedings would not be in order as long as enforcement of the Omnibus Order is itself stayed.

**A stay would not harm the public interest.** Although the Receiver's claims arise in the context of an FTC enforcement action, a stay would not harm the public interest. The public interest in enforcing the FTC Act would not be implicated because Integretel has not been found to have violated the Act. And any attempt to argue that the Receiver is pursuing the public interest would run up against the fact that he is asserting what would, had he not been appointed, be claims belonging to entities that were among the primary wrongdoers. To the extent that the Receiver is nevertheless thought to be as acting in the public interest, the factors showing that a stay would not harm the Receiver necessarily show that it would not harm the public interest either. Finally, the FTC is entitled to participate in Integretel's bankruptcy and has in fact done so.

00036

Respectfully submitted,

_____

Laurie Webb Daniel (GA Bar # 204225)          Neal Goldfarb (DC Bar # 337881)
Cynthia G. Burnside (GA Bar # 097107)          Richard H. Gordin (DC Bar # 727925)
Holland & Knight LLP                           Tighe Patton Armstrong Teasdale PLLC
1201 West Peachtree Street, NE                 1747 Pennsylvania Ave., NW, Suite 300
One Atlantic Center, Suite 2000                Washington, D.C. 20006
Atlanta GA 30309                               (202) 454-2800
(404) 817-8500

*Attorneys for Appellant/Movant*
*The Billing Resource dba Integretel*

00037

RER-32    1394

## Certificate of Service

I HEREBY CERTIFY that on this 11th day of October, 2007, the foregoing

motion (with Exhibits 1-27) was served on each of the following by the method(s)

indicated:[6]

**By hand and by email:**

Marilyn Kerst, Esq.
mkerst@ftc.gov
John F. Daly, Esq.
jdaly@ftc.gov
Federal Trade Commission
600 Pennsylvania Ave., N.W., Room 582
Washington, D.C. 20580

Laura M. Kim, Esq.
lkim@ftc.gov
Collot Guerard, Esq.
cguerard@ftc.gov
Richard McKewen, Esq.
rmckewen@ftc.gov
Robert Schoshinksi, Esq.
rschoshinski@ftc.gov
Federal Trade Commission
600 Pennsylvania Ave., N.W., Room 286
Washington, DC  20580

---

6.  All parties who are expected to participate in this appeal are being served by hand
and by email. Where service is shown as having been made by email but not also by hand,
consent to such service has been given by means of participation in electronic filing in
the district court.

Jeffrey C. Schneider, Esq.
jcs@tewlaw.com
Patrick Rengstl, Esq.
pjr@tewlaw.com
Tew Cardenas LLP
Four Seasons Tower—15th Floor
1441 Brickell Avenue
Miami, FL 33131

**By email and first-class mail**

Michael Garrett Austin, Esq.
maustin@mwe.com
Steven E. Siff, Esq.
ssiff@mwe.com
McDermott Will & Emery LLP
201 S Biscayne Boulevard
Suite 2200
Miami, FL 33131-4336

Andrew G. Berg, Esq.
aberg@kslaw.com
Kevin Dinan, Esq.
kdinan@kslaw.com
Carolyn Tapie, Esq.
ctapie@kslaw.com
John-David Thomas, Esq.
jthomas@kslaw.com
King & Spalding LLP
1700 Pennsylvania Avenue, N.W.
Washington, D.C. 20006-4704

Derick J. Rodgers, Esq.
drodgers@lawdcm.com
Davis Cedillo & Mendoza Inc
McCombs Plaza, Suite 500
755 E. Mulberry Avenue
San Antonio, TX 78212

Mark Douglas Johnson, Esq.
MarkDJohnsonPA@bellsouth.net

-2-

Mark D. Johnson, P.A.
10 Central Parkway, Suite 210
Stuart, Florida 34994

Rosanne Brady, Esq.
rosanne@macalusolaw.com
Peter N. Macaluso, Esq.
peter@macalusolaw.com
The Law Office of Peter N. Macaluso
3302 N. Tampa Street
Tampa, FL 33603

Mary Lou Farr
farrmarylou@aol.com
c/o James Stonehill
1006 Churchill Circle South
West Palm Beach, FL 33405

Gary M. Dunkel, Esq.
DunkelG@gtlaw.com
Jason H. Okleshen, Esq.
Greenberg Traurig
Phillips Point—East Tower, Suite 300-E
777 South Flagler Drive
West Palm Beach, FL 33401

Diane Noller Wells, Esq.
dwells@devinegoodman.com
Devine Goodman Pallet & Wells, PA
777 Brickell Avenue, Suite 850
Miami, FL 33131

Michael Woodbury, Esq.
michael.woodbury@woodbury-santiago.com
Two Datran Center—Penthouse 1A
9130 South Dadeland Boulevard
Miami, FL 33156

Henry W. Johnson, Esq.
hjohnson@jzwlawfirm.com
Hume & Johnson

-3-

00040

RER-32     1397

1401 University Drive, Suite 301
Coral Springs, FL 33071

John W. Chapman, Jr., Esq.
jchapman@nhlslaw.com
Norton Hammersley Lopez & Skokos
1819 Main Street, Suite 610
Sarasota, FL 34236

Robert M. Weinberger, Esq.
rmw@fcohenlaw.com
Cohen Norris Scherer Weinberger & Wolmer
712 U.S. Highway 1, Suite 400
North Palm Beach, FL 33408

Thomas G. Long, Esq.
tlong@barnettbolt.com
Hildegund P. Wanders, Esq.
Barnett Bolt Kirkwood & Long
601 Bayshore Boulevard, Suite 700
Tampa, FL 33606

Robert Voss Fitzsimmons, Esq.
rvf@kubickidraper.com
Kubicki Draper
City National Bank Building
25 W Flagler Street, Penthouse
Miami, FL 33130-1712

Chad A. Dean, Esq.
chad@schuylaw.com
Schuyler Stewart Smith
118 West Adams Street, #800
Jacksonville, FL 32202

Bruce Eric Bloch, Esq.
sblawfirm@aol.com
Sapurstein & Bloch PA
9700 South Dixie Highway, Suite 1000
Miami, FL 33156

-4-

Theodore J. Leopold, Esq.
tleopold@riccilaw.com
Ricci Leopold
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410

**By hand:**

Michael David McDonough, Esq.
12794 Forest Hill Blvd., Suite 19D
Wellington, FL 33414

Jessy Mendoza
6117 Blue Grass Circle
Lake Worth, FL 33463

**By Federal Express**

Willoughby Farr, Inmate No. 653974
Avon Park Correctional Institution
PO Box 1100
County Road 64 East
Avon Park, FL 33926-1100
(service by hand impracticable; telephone notice impracticable)

_____

Neal Goldfarb

00042

RER-32    1399

# EXHIBIT "U

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

FEDERAL TRADE COMMISSION,       )
                                )
            *Plaintiff,*         )
                                )
        v.                      )        No. 07-14531-E
                                )
NATIONWIDE CONNECTIONS,          )
INC. et al.,                    )
                                )
            *Defendants,*        )
                                )
THE BILLING RESOURCE dba         )
INTEGRETEL,                     )
                                )
            *Appellant.*         )

**Exhibits in Support of**
**Appellant's Time-Sensitive Motion**
**for Immediate Stay or Injunction**
**Pending Full Consideration of Motion**
**and**
**for Continuation of the Stay or Injunction**
**Pending Complete Resolution of this Appeal**

Volume 1 of 2
Exhibits 1-8

Laurie Webb Daniel                Richard H. Gordin
Cynthia G. Burnside               Neal Goldfarb
Holland & Knight LLP              Tighe Patton Armstrong Teasdale PLLC
1201 West Peachtree Street, NE    1747 Pennsylvania Ave., NW, Suite 300
One Atlantic Center, Suite 2000   Washington, D.C. 20006
Atlanta GA 30309                  (202) 454-2800
(404) 817-8500

*Attorneys for Appellant*
*The Billing Resource dba Integretel*

# Index

1.  District court order dated September 21, 2007 vacating bankruptcy-stay order

2.  District court omnibus order entered September 14, 2007

3.  Declaration of Ken Dawson, with exhibits

4.  Complaint

5.  Amended complaint

6.  Temporary restraining order

7.  Declaration of Richard H. Gordin

8.  Preliminary injunction

**Exhibit 1**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 06-80180-CIV-RYSKAMP/VITUNAC

FEDERAL TRADE COMMISSION,

      Plaintiff,

v.

NATIONWIDE CONNECTIONS, INC.,
et al.

      Defendants.

                            /

## ORDER GRANTING MOTION FOR CLARIFICATION AS TO SCOPE OF STAY

THIS CAUSE comes before the Court pursuant to the FTC's Emergency Motion for

Clarification That the Automatic Stay Does Not Apply to the FTC's Law Enforcement Action

and the Ongoing Contempt Proceeding, filed September 21, 2007 **[DE 618]**.

Integretel became a Defendant in this action on September 21, 2006. Unbeknownst to the

Court, Integretel was holding more than $1.35 million in reserve funds that belonged to two of

the Nationwide defendants, Access One and Network One, in spite of several provisions of the

Temporary Restraining Order in Preliminary Injunction requiring it to turn said funds over to the

Receiver. When the Receiver learned of the existence of these funds, it filed its Motion for an

Order to Show Cause Why Integretel Should Not Be Held in Contempt. On Friday, September

14, 2007, this Court issued its Omnibus Order in which it ruled that the reserve funds are the

property of the receivership estate and ordered Integretel to pay the current reserve funds,

amounting to $1,762,762.56, immediately to the Receiver. The Court also ordered Integretel to

show cause in writing within 10 days why it should not be held in contempt for failing to turn

Case 5:07-cv-06210-JW    Document 12-30    Filed 04/06/2008    Page 35 of 58
Case 9:06-cv-80180-KLR    Document 619    Entered on FLSD Docket 09/21/2007    Page 2 of 4

2

over the reserve funds. Two days later, on September 16, 2007, Integretel filed a petition for

Chapter 11 bankruptcy in the United States Bankruptcy Court, Northern District of California,

San Jose Division, Case No. 07-52890. Integretel maintains in its bankruptcy filings that it

"currently owes nothing to Receiver." Integretel further maintains that "it will ultimately

prevail... with respect to amounts which are the subject and required to be paid under the

[Omnibus Order]." On September 20, 2007 **[DE 617]**, the Court stayed this proceeding against

Integretel pursuant to 11 U.S.C. § 362(a). The FTC requests that this Court clarify that the

automatic bankruptcy stay does not apply to the prosecution of its enforcement action or the

ongoing contempt proceeding.

The FTC's prosecution of this action to protect consumers from unfair and deceptive

trade practices is excepted from the automatic stay pursuant to 11 U.S.C. § 362(b)(4), the

governmental regulatory exception to the stay. The statute provides as follows:

> (b) the filing of a petition under section 30 1,302, or 303 of this
> title... does not operate as a stay-...
>
> (4) under (1), (2), (3), or (6) of subsection (a) of this section, of the
> commencement or continuation of an action or proceeding by a
> governmental unit...to enforce such governmental unit's...police
> power and regulatory power, including the enforcement of a
> judgment other than a money judgment....

Thus, to the extent provided in the aforementioned section, governmental regulatory or police

actions are excepted from the automatic stay of:

> (1)    the commencement or continuation... of a judicial,
>        administrative, or other action or proceeding against the
>        debtor...;

Case 5:07-cv-06210-JW  Document 12-30  Filed 04/06/2008  Page 36 of 58

3

       (2)    the enforcement, against the debtor or against property of
             the estate, of a judgment obtained before the
             commencement of the [bankruptcy] case...;

       (3)    any act to obtain possession of property of the estate or of
             property from the estate or to exercise control over property
             of the estate;... [and]

       (6)    any act to collect, assess, or recover a claim against the
             debtor that arose before the commencement of the
             [bankruptcy] case....

11 U.S.C. § 362(a). The legislative history specifically states that this exception applies to suits

by the government "to prevent or stop violation of fraud, environmental protection, consumer

protection, safety, or similar regulatory laws." H.R. Rep. No. 989, 95th Cong., 2d Sess. 52,

*reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 5838.

     Various courts have recognized that actions brought by the FTC pursuant to 15 U.S.C. §

53(b), Section 13(b) of the FTC Act, are not subject to the automatic stay. See In re First

Alliance Mortgage Co., 264 B.R. 634, 647-51 (C.D. Cal. 2001) (reversing the Bankruptcy Court

in holding that FTC's action to enforce consumer protection unfair lending loss falls within the

11 U.S.C. § 362(b)(4) exemption from the stay); FTC v. American Standard Credit Systems, 874

F. Supp. 1080, 1083 (C.D. Cal. 1994).

     The FTC also seeks monetary relief, including disgorgement, restitution and consumer

redress. The dual purposes of determining unlawful behavior by making such behavior more

expensive and holding violating parties accountable bring this action squarely within the police

and regulatory powers exemption. See SEC v. Brennan, 230 F.3d 65, 72 (2d Cir. 2000) ("When

the government seeks to impose financial liability on a party, it is plainly acting in its police or

regulatory capacity..."). Accordingly, the exemption permits continuation of this action for

4

injunctive relief against Integretel and the entry of a money judgment against same.

Nor is the contempt proceeding stayed. First, the automatic stay applies only to protect property of the bankruptcy estate or property of the debtor. See 11 U.S.C. § 362(a)(2). The Court has already ruled that the reserve funds are neither the property of the "bankruptcy estate" nor Integretel. Second, the 11 U.S.C. § 362(b)(4) exception also applies to civil contempt proceedings brought by a governmental unit in the exercise of its police or regulatory powers. See SEC v. Bilzerian, 131 F. Supp. 2d 10, 14 (D.D.C. 2001) (civil contempt proceeding falls within the exception; incarceration of debtor subsequent to failure to provide financial information as required by purgation provision in prior disgorgement order). Finally, the bankruptcy filing does not deprive this Court of its inherent power to enforce the integrity of its orders. "[C]ontempt orders to uphold the dignity of the court are excepted from the automatic stay." NRLB v. Sawulski, 158 B.R. 971, 975 (E.D. Mich. 1993). Accordingly, it is hereby

ORDERED AND ADJUDGED that the motion is GRANTED. The commencement of Integretel's bankruptcy case does not stay either the pending contempt proceeding against Integretel, including the turnover order, or the FTC's prosecution of this consumer protection action against Integretel. The September 20, 2007 Order staying proceedings against Integretel is VACATED.

DONE AND ORDERED at Chambers in West Palm Beach, Florida, this 21st day of September, 2007.

S/Kenneth L. Ryskamp
KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE

Exhibit 2

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 06-80180-CIV-RYSKAMP/VITUNAC

FEDERAL TRADE COMMISSION,

     Plaintiff,

v.

NATIONWIDE CONNECTIONS, INC., et al.,

     Defendants.

                             /

### OMNIBUS ORDER

THIS CAUSE comes before the Court pursuant to a series of motions:

- The Receiver's Revised Motion for Order to Show Cause Why Integretel Should Not Be Held in Contempt of Court, filed October 16, 2006 **[DE 246]**;

- Integretel's Motion to Modify Prior Injunctive Orders, filed October 30, 2006 **[DE 294]**;

- Integretel's Motion to Stay Contract Claims, filed December 29, 2006 **[DE 363]**; and

- The Receiver's Motion Requesting BSG Defendants To Transfer Additional Reserves, filed January 12, 2007 **[DE 371]**.

The Court held a hearing on these motions on April 12, 2007. These motions are fully briefed and are ripe for adjudication.

Both BSG and Integretel had agreements in place with Nationwide and Access One/Network One that permitted them to withhold monies that were "owed to" Nationwide and/or Access One/Network One as "reserves," in the event that any users complained about

00050

Case 5:07-cv-06210-JW    Document 12-30    Filed 04/06/2008    Page 39 of 58

2

charges and requested refunds and/or credits directly from the Aggregators. Shortly after this receivership was initiated, BSG advised the Receiver and the FTC of reserves that it was holding relating to Nationwide as of the commencement of the receivership (slightly over $1 million). BSG turned that money over to the Receiver.

Integretel did not advise either the Receiver or the FTC that it was holding reserves. Rather, its president informed the FTC on March 6, 2006 that "no amounts are currently due and owing" to Access One or Network One. As of August 26, 2006, Integretel was holding $1,186,430.36 in reserves for Access One and $173,918.66 in reserves for Network One. These amounts have increased, and as of June 30, 2007, the reserve amount being held by Integretel (and/or its affiliates) is $1,762,762.56. As of August 6, 2007, the reserve amount being held by BSG (and/or its affiliates) is $930,052.99.

The Receiver notes that the temporary restraining order required any business entity served with a copy thereof to:

> provide to the Commission's counsel, within five (5) business days of receiving a copy of this [TRO], a sworn statement setting forth:
>
> 1.    The identification number of each such account or asset titled in the name, individually or jointly, of a Defendant, or held on behalf of, or for the benefit of a Defendant;
>
> 2.    The balance of each such account, or description of the nature and value of each such asset as of the close of business on the day on which this [TRO] is served...

Exhibit A to the Integretel/Access One Master Services Agreement defines the reserve as follows:

Case 5:07-cv-06210-JW    Document 12-30    Filed 04/06/2008    Page 40 of 58
Case 9:06-cv-80180-KLR    Document 610    Entered on FLSD Docket 09/14/2007    Page 3 of 11

3

> an amount withheld, from the amount otherwise owed to Client
> with respect to Billing Transactions, to protect IGT for credit
> losses or otherwise to cover other reserves or offsets, other than
> Uncollectibles imposed by a Telco.

The Integretel/Network One Master Services Agreement contains an identical definition of the reserves.

Integretel maintains that "the reserves do not take the form of any actual funds that [Integretel] has segregated or otherwise set aside..." and maintains that it keeps the reserves in a pooled account it tracks via an internal accounting entry. Such is a distinction without a difference, since the TRO captures funds "held on behalf of, or for the benefit of, a Defendant."

Integretel also maintains that it was not Access One's or Network One's "agent, partner, joint venturer, trustee, fiduciary, or legal representative," and so was not "in any way acting 'on behalf of' of the two clients." An entity need not be an agent, partner, joint venturer, trustee, fiduciary, or legal representative to possess funds that one is holding "on behalf of" another person or entity, however.

Integretel also maintains that the "reserves have been set to account for, among other things, any liability that might be claimed against [Integretel] for any improper billings by Access One or Network One such as alleged by the FTC in the First Amended Complaint." The Court has reviewed the agreements in question. The agreements between Integretel and each of Access One and Network One allow Integretel either to notify the indemnifying party of the request to be indemnified and turn over the defense of the action to the indemnified party or defend itself and seek reimbursement of its attorneys' fees and costs from the indemnifying party. The agreements did not give it the right to use the reserves to fund the indemnity. Furthermore, the FTC has sued

Case 5:07-cv-06210-JW   Document 12-30   Filed 04/06/2008   Page 41 of 58

4

Integretel for its own independent violations of the Federal Trade Commission Act. If the FTC

succeeds, Integretel itself will be financially responsible for its actions and will not be able to

look to Access One or Network One for indemnification under the operative agreements.

Finally, Integretel argues that "Access One and Network One failed to provide proof of

their compliance with contract requirements..." Integretel evidently maintains that since it is of

the opinion that Access One and Network One allegedly breached the agreements, it was entitled

to keep the reserve monies. The agreements do not, however, contain a liquidated damages

provision that would permit retention of those funds under the circumstances, nor do the

agreements give it the right to make an independent, unilateral decision about Access One's or

Network One's breach of the agreements without court involvement.

Integretel also moves to stay litigation of the aforementioned contract claims pending

arbitration thereof, maintaining that the Receiver stands in the shoes of Access One and Network

One and may assert only those rights and remedies that those entities themselves could have

asserted. In particular, the Receiver is supposedly bound by the arbitration clause in each

company's contract. The Receiver's claim is not a claim at law governed by pre-receivership

contracts, however, but one governed by this Court's jurisdiction over receivership property

based on the TRO and Amended Preliminary Injunction. The Receiver does not claim that the

funds must be turned over according to, or by adopting, a contract signed between Integretel and

Access One/Network One. The Receiver is seeking to recover the reserve funds pursuant to the

Court's in rem jurisdiction over receivership property, as memorialized in the TRO and the

Amended Preliminary Injunction. A federal court possesses broad authority to issue various

ancillary relief measures in enforcing actions brought by federal agencies. See FTC v.

00053

Productive Mktg., Inc., 136 F. Supp. 2d 1096, 1104 (C.D. 2001); SEC v. Wenke, 622 F.2d 1363,

1371 (9th Cir. 1980) ("the Supreme Court has repeatedly emphasized the broad equitable powers

of the federal courts to shape equitable remedies to the necessities of particular cases, especially

where a federal agency seeks enforcement in the public interest.").  A receivership order issued to

preserve the assets of the receivership estate is a classic example of a district court's exercise of

in rem jurisdiction over receivership property.  See Productive Mktg., 136 F. Supp. 2d at 1105;

Wenke, 622 F.2d at 1369 (stating that a federal district court's power to issue a stay against all

persons concerning all proceedings against the receivership entities "rests as much on its control

over the property placed in receivership as on its jurisdiction over the parties to the securities

fraud action").  "[R]eceivers are not bound by the contracts of the entity that they are appointed to

protect.  The receiver becomes bound only when it affirmatively adopts the obligations of the

entity that it is protecting."  City Bank, NA v. Nyland (CF8) Ltd., 839 F.2d 93, 98 (2d Cir. 1987).

The Court declines to stay adjudication of the contract claims.

     Integretel argues that the TRO and Amended Preliminary Injunction would be invalid if

they enabled the Court to determine Integretel's ownership interest (or lack thereof) in the reserve

funds without first requiring the Receiver to institute a new, separate legal proceeding.  Issues

concerning entitlement to disputed receivership property, in fact, are the types of issues typically

determined via summary proceedings in the federal court equity receivership context.  See

Wenke, 783 F.2d at 837-38 (stating that claims of nonparties to property claimed by receivers can

be resolved via summary proceedings, which reduced the time necessary to settle disputes,

decrease litigation costs and prevent dissipation of receivership assets, as long as there is notice

to the non-party and an opportunity to be heard, thereby satisfying due process).

Integretel maintains that the Court deprived it of due process when it issued the TRO and Amended Preliminary Injunction without previously providing notice and an opportunity to be heard. A temporary restraining order or injunction is properly issued and binding so long as the party against whom it is being issued had a chance to defend fully the legitimacy of the eventual claim. Accordingly, it is irrelevant whether the party had been given a chance to oppose the order prior to its issuance. See FTC v. Assail, Inc., 410 F.3d 256, 268 (5th Cir. 2005) (finding that attorney for non-parties to receive fees that resulted from fraud had opportunity to defend self at hearing to determine whether disputed funds were subject to turnover order and thus had adequate notice and opportunity to be heard). Here, Integretel has briefed these issues in three separate briefs, its response, its motion to modify, and its motion to stay. It has, without question, had an opportunity to be heard on this issue.

Integretel argues that the TRO and Amended Preliminary Injunction are invalid because the FTC and the Receiver thereby have unbridled discretion to decide what cooperation is required and from whom, which is allegedly further compounded by the fact that the FTC and Receiver are interested in maximizing the amount of money, and subsequent recovery, in the receivership estate. While Integretel has accurately pinpointed the Receiver's and the FTC's goals, its attacks on the Court's orders fail. That cooperation clauses are standard in federal court receivership orders goes without saying. In Productive Mktg., when a non-party argued it was not bound by the cooperation clause, the district court disagreed because the injunction, as a receivership order, was required to be read reasonably in light of its stated purpose, to account for and preserve the assets of the receivership estate. 136 F. Supp. 2d at 1109-10. Otherwise stated, the receiver could not unreasonably use the cooperation clause for whatever purpose he wished.

Rather, the only reasonable interpretation of the clause was for it to be used consistently with the objective of the injunction, to require non-parties (and parties) that hold assets of the receivership estate to disclose information to the receiver relating to those assets and, if necessary, turn over such assets to the receiver. See id. at 1110. Cooperation clauses are enforceable, even against non-parties.

Integretel concedes that it was bound by the TRO if it acted in concert or participated with Access One and/or Network One, but Integretel claims that no such allegation has been made (or could be made, for that matter). The FTC has made such allegations in its First Amended Complaint, alleging that Integretel participated and acted in concert with Access One and Network One in the alleged fraud. (See First Amended Complaint, Paragraphs 24, 27, 28, 30, 37.)

Integretel also argues that the TRO is overbroad because it allows the Receiver to demand a turnover of disputed funds. To that end, Integretel posits that in rem jurisdiction only applies to undisputed receivership property and does not apply when funds are disputed and not in the possession of the Court. District courts have in rem jurisdiction over disputed receivership property and therefore can bind non-parties (such as Integretel), through orders to protect and preserve disputed receivership property, and district courts have jurisdiction to enforce orders against non-parties concerning ownership of disputed funds, whether or not such funds are in the non-parties' possession. See Productive Mktg., 136 F. Supp. 2d at 1106 ("if the Court cannot compel [the non-party] to turn over assets in its possession belonging to the receivership estate, the receiver will be unable to provide adequate redress to consumers who have been defrauded by

8

Defendants because [the non-party's] conduct imperiled the Court's ability to render an effective judgment, the Court may properly enjoin it, even though it is not a party to the action.").

Integretel also maintains that the turnover clause is invalid and, in any event, was never triggered, because the Receiver never made a "formal" demand for the reserve funds. The purpose of a federal district court's jurisdiction over receivership property via a preliminary injunction (or similar order) is to preserve the assets resulting from the improper actions of the receivership defendants, whether held by parties or non-parties, to provide redress for the legitimately defrauded investors. See Productive Mktg., 136 F.Supp. 2d at 1105-1106. Thus, it is not reasonable to expect the Receiver to know about the reserves, and thereafter make a "formal" demand for them if it had not been previously informed of their existence.

Integretel, as a party, also argues that the Amended Preliminary Injunction is invalid under Rule 65 because it did not receive notice of its issuance. Integretel also maintains that neither the FTC nor the Receiver has made the requisite showing in their unverified papers to enforce an injunction against it. An injunction is properly issued and binding so long as the party opposing it is given a chance to defend the legitimacy of the claim being made under it. It is of no consequence whether the party has been given a chance to oppose the injunction prior to its issuance. See SEC v. Elfindepan, S. A., 2002 WL 31165146 at*5 (finding that party in the context of contempt motion had been given full opportunity to defend ownership interest in disputed funds; that party did not have opportunity to defend itself prior to issuance of the injunction did not render the injunction invalid).

Integretel believes it has acted properly from "day one" and had no reason to ask for clarification of the subject Orders until the Receiver filed its show cause motion because it

believed that its interpretation of the Orders was proper, or at least in good faith. One's state of mind is irrelevant for purposes of unilateral interpretation of court orders, however. See Goya Foods, Inc. v. Wallack Management Co., 290 F.3d 63, 75-76 (1st Cir. 2002) ("When a legitimate question exists as to the scope or effectiveness of the court's order, those who know of the decree, yet act unilaterally, assume the risk of mistaken judgments. Adhering to this principle, the appellants could have asked the district court for clarification…but they eschewed that course….They chose instead to rely on their own judgment as to whether the orders remained in effect. In so doing, the appellants acted at their peril.").

Integretel also seeks to modify the TRO, Preliminary Injunction and Amended Preliminary Injunction. Because the subject Orders are valid for the reasons stated herein, there is no reason to modify them. Furthermore, the requested modifications would unnecessarily increase litigation costs by forcing the Receiver to obtain an extra precondition order by litigating every potential act that constitutes proper cooperation and affect every potential target of such corporation, thereby exponentially increasing the amount of time it would take for the Receiver to obtain receivership property. The proposed modifications would also be unwieldy because they would make pre-receivership contracts that the Receiver does not ratify nevertheless binding on him, and would require separate, plenary proceedings when a summary proceeding can adequately account for determination of these issues.

The Receiver also moves to request that the BSG Defendants transfer additional reserves in the amount of $328,050.83 as of December 8, 2006, and, as noted $930,052.99 as of August 6, 2007. These Defendants previously transferred $952,045.67 in reserves to the Receiver on or about March 24, 2006. The Receiver requests that these Defendants transfer these additional

reserves, produce all documents relating to the reserves withheld since March 24, 2006, and to produce any future reserves that they collect to the Receiver along with any documents relating thereto.

The BSG Defendants join in Integretel's arguments as to the validity of the TRO and the Amended Preliminary Injunction. Additionally, the BSG Defendants request modification of the injunctive orders and request a stay of the underlying contract claims. The Court has already rejected these arguments. As to the contract claims, the contracts the BSG Defendants attach in support of their argument to retain the Reserves are incomplete, undated, unsigned and do not reflect the parties thereto. The Court, based on these incomplete documents, cannot say that the BSG Defendants are entitled to retain the reserves. It is hereby

ORDERED AND ADJUDGED that the Receiver's Revised Motion for Order to Show Cause Why Integretel Should Not Be Held in Contempt of Court, filed October 16, 2006 [DE 246], is GRANTED. Integretel shall show cause in writing within 10 days of the date of this Order why it should not be held in contempt for failure to turn over the reserves. In addition, Integretel shall provide a sworn statement identifying the amount of reserves as of the issuance of the TRO. The Court further orders that these funds shall be placed in a segregated Receivership account. It is further

ORDERED AND ADJUDGED that Integretel's Motion to Modify Prior Injunctive Orders, filed October 30, 2006 [DE 294], is DENIED. It is further

ORDERED AND ADJUDGED that Integretel's Motion to Stay Contract Claims, filed December 29, 2006 [DE 363], is DENIED. It is further

Case 5:07-cv-06210-JW  Document 12-30  Filed 04/06/2008  Page 48 of 58

11

ORDERED AND ADJUDGED that the Receiver's Motion Requesting BSG Defendants

To Transfer Additional Reserves, filed January 12, 2007 **[DE 371]**, is GRANTED. The BSG

Defendants are ordered to transfer the additional reserves they have withheld since their initial

transfer of reserves to the Receiver on or about March 24, 2006. The BSG Defendants shall also

produce any future reserves they collect so as to avoid future motions to this effect. The BSG

Defendants shall also produce all documents relating to the reserves held since March 24, 2006.

The Court requests that this money be placed in a segregated receivership account.

DONE AND ORDERED at Chambers in West Palm Beach, Florida this 13th day of

September, 2007.

> S/Kenneth L. Ryskamp
> KENNETH L. RYSKAMP
> UNITED STATES DISTRICT JUDGE

**Exhibit 3**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-80180-Civ-RYSKAMP/VITUNAC

FEDERAL TRADE COMMISSION,

        Plaintiff,

  vs.

NATIONWIDE CONNECTIONS, INC.,
*et. al.*,

        Defendants.

_____/

### Declaration of Ken Dawson

1. I am president of The Billing Resource, d/b/a Integretel (formerly known as Integretel, Incorporated) ("Integretel"). I submit this declaration in opposition to the receiver's motion for an order requiring Integretel to show cause why it should not be held in contempt of court.

2. Integretel is a California corporation with its only place of business in San Jose, California.[1] Integretel recently changed its corporate name from "Integretel, Incorporated" to "The Billing Resource," but it continues to do business under the name Integretel. I will refer to the company by that name here.

3. Integretel is a billing aggregator. As such, it provides services that enable its clients, who are independent telecommunications companies and other service providers, to have charges for their services appear on consumers' local telephone bills. Integretel also provides additional services to some of its clients.

---

1. Eight employees on Integretel's payroll work out of their homes in other states (though not in Florida), but they actually work for one of Integretel's subsidiaries, not for Integretel itself.

4.    The billing-aggregation process is extremely complicated, but it can be explained in very general terms as follows. Integretel receives transaction data from its clients and forwards that data to the telephone companies (often referred to as "LECs" which stands for "Local Exchange Carriers"). The LECs then include these transactions on their bills unless the LECs determine that it is unable or unwilling to bill a particular transaction for some reason. Based on a variety of accounting and transactional factors, including gross LEC fees, holdback, edit rejects, adjustments, and bad debt, the LECs periodically send payments to Integretel that are based on all submissions by Integretel that the LECs had previously accepted for billing. The LEC payments to Integretel are based on the combined submissions and receipts for all of Integretel's clients and are neither made nor segregated on a client-by-client basis by any of the LECs. From the proceeds received from the LECs, Integretel applies various accounting mechanisms to attribute funds and deductions to particular clients. Integretel then determines pursuant to its contracts with the clients how much, if any, is due each client.

5.    Integretel formerly provided billing-aggregation and other services to Access One Communications, Inc. and Network One Services, Inc. True and correct copies of Integretel's contracts with Access One Communications, Inc. and Network One Services, Inc. are attached hereto as Exhibits 1 and 2, respectively.

6.    Integretel discontinued services to Access One and Network One after questions arose as to whether some of the charges were properly authorized. Integretel asked each client to provide documentation supporting the charges, and when the clients failed to provide an adequate response, Integretel immediately discontinued its services.

7.    As provided in its contracts, Integretel is entitled to withhold from Access One and Network One any amounts necessary to cover the "IGT Reserve," which is defined in the

00062

contracts as "an amount withheld, from the amount otherwise owed to Client with respect to Billing Transactions, to protect IGT from credit losses or otherwise to cover reserves or offsets, other than Uncollectibles imposed by a Telco." The contracts authorize Integretel to adjust the amount of the IGT Reserve from time to time.

8. Once Integretel discontinued its services for Access One and Network One, it set the amount of the IGT Reserve for each client at 100%. As a result, Integretel stopped sending any payments to either client. My understanding of the contracts, and Integretel's interpretation as a party to the contracts, is that the amount allocated to the IGT Reserve is not owed to the client. Rather, it is an amount that would, in the language of the contract, "otherwise [be] owed" if it had not been allocated to the IGT Reserve.

9. The IGT Reserves relating to Access One and Network One do not take the form of a segregated fund of money. Rather, they represent nothing more than a bookkeeping entry. Thus, Integretel holds no identifiable pool of money that one can point to as constituting the IGT Reserves for these clients.

10. A client's right to receive any of the sums allocated to the IGT Reserve is contingent, on a variety of factors, and the amount the client is entitled to, if any, can only be finally determined after all expenses, costs, and other charges against the reserve are fully and finally taken account of. Thus, the IGT Reserve is a running balance that does not result in an amount due until a final accounting can be taken based on all outstanding costs, contingencies, expenses and obligations attributable under the contract to the IGT Reserve. That has not yet occurred with respect to Access One and Network One.

11. Integretel's contracts with Access One and Network One require that any disputes be submitted to alternative-dispute-resolution procedures that include a period of negotiations

00063

RER-32   1420

followed, if necessary, by arbitration in San Jose, California. Neither Access One nor Network

One invoked these provisions before the receiver was appointed. The receiver has not invoked

them, either.

12. At no time since the receiver was appointed has Integretel had any communications

or other dealings with Access One, Network One, or any other of the original defendants in this

action. In declining to pay the receiver the money he claims that Access One and Network One

are owed, Integretel has acted independently of Access One, Network One, and the other original

defendants. Integretel's purpose in declining to pay the receiver is not to assist any of the original

defendants in evading their duties under any of the Court's orders, or to cooperate with any of the

original defendants in any way.

13. The FTC sent a copy of the temporary restraining order in this case to me by fax on

March 3, 2006. Attached as Exhibit 3 is a true and correct copy of the fax I received, consisting

of the fax cover sheet, a cover letter, and the order.

14. When I received the order, I did not notify or consult with Integretel's counsel.

Instead, I prepared a response on my own, which I sent to the FTC by fax and express courier on

March 6. A true and correct copy of my response is attached hereto as Exhibit 4.

15. I believed then and believe now that my letter to the FTC was both honest and

accurate. I believed and continue to believe that under its contracts with Network One and

Access One, Integretel was neither holding any funds that belonged to either of those entities nor

holding any funds on behalf of either entity. I believed and continue to believe that the balances

reflected in the IGT Reserve for each entity were merely bookkeeping entries and that Integretel

had not segregated, earmarked, or otherwise set aside any specific funds corresponding to those

-4-

RER-32      1421

reserves. I believed and continue to believe that no funds were then due and owing to either entity.

16. To the best of my recollection, nobody from the FTC ever asked or instructed me to transfer any funds to the receiver. Although I have a vague recollection of having spoken with one of the FTC's lawyers shortly after I received the temporary restraining order, I believe that any conversation that might have occurred was nonsubstantive, and did not involve any request that Integretel turn funds over to the receiver. Certainly, if someone from the FTC had asked or instructed Integretel to turn over funds to the receiver, I would remember it. In addition, I would have contacted Integretel's counsel.

17. At no time after receiving the temporary restraining order was I contacted by the receiver, by the receiver's lawyer, or by anyone else acting on the receiver's behalf.

18. To the best of my knowledge, Integretel was not notified before the preliminary injunction in this case was entered on March 8, 2006 that the preliminary injunction would include language stating that all persons served with a copy of the injunction were required to turn over to the receiver any assets of the defendants that they held. I did not receive any such notification, and I did not receive any information indicating that Integretel had received such notification by any other means. If Integretel *had* received such notification, under Integretel's customary business practice I would have been made aware of it.

19. To the best of my knowledge, Integretel was never served with the preliminary injunction that was entered on March 8, 2006. I was not served with a copy of that order, and it never came to my attention that Integretel had been served by any other means. If Integretel *had* been served by some other means, under Integretel's customary business practice I would have been made aware of it.

00065

20. If Integretel were to pay the receiver the amount of the IGT Reserves for Access One and Network One, it would be exposed to the risk of liability on multiple fronts:

    a.  If telephone companies give refunds to consumers for charges originated by Access One or Network One, the telephone companies will charge the amount of the refunds back to Integretel, and on top of that will charge Integretel a substantial fee for processing the refund, in most cases greater than the refund itself.

    b.  If telephone companies are sued by consumers on account of charges billed by Access One and Network One, they have the right under their contracts with Integretel to seek indemnification from Integretel both for any liability they may incur and for their attorney's fees. At least one such lawsuit has been filed—a class action against Sprint that includes allegations relating to charges by Access One that were processed by Integretel. Sprint has put Integretel on notice of its intention to enforce its indemnification rights.

    c.  The FTC is seeking monetary relief from Integretel in this case. I understand that the FTC's position is that Integretel is liable for the entire amount of the charges billed by Access One and Network One that were processed by Integretel, less amounts already refunded to consumers. Although Integretel does not believe that it violated the FTC Act or that if it did violate the Act it could be held liable in the amount sought by the FTC, the FTC contends otherwise and its claims have not yet been decided.

    d.  Finally, Integretel faces the risk of being named as a defendant in class-action suits on behalf of consumers. This risk is increased by the fact that the FTC has

00066

publicized its claims against Integretel. It has issued a press release describing

those claims and has posted the press release on its website, along with a copy of

its first amended complaint. (A true and correct copy of the relevant page from the

FTC website is attached as Exhibit 5.) I understand that when a government

agency takes enforcement action against a company, class-action lawyers file

lawsuits piggybacking on the agency's suit.

21. As of February 27, 2006, the day the receiver was appointed, the amount of the IGT

Reserve for Access One was $1,035,525.76 and the amount for Network One was $194,954.13.

22. As of October 25, 2006, the amount reflected on Integretel's books as the IGT

Reserve for Access One was $1,383,435.51 and the amount for Network One was $191,445.50.[1]

The reason the Access One amount is higher than at the time the receivership began is that

Integretel has made certain internal bookkeeping adjustments in the ordinary course of its

business relating primarily to the allocation of the independent reserves, based on gross billings,

held by LECs. Those reserves are known as "Telco Reserves." These periodic adjustments

reallocate the amount of the Telco Reserves among Integretel's clients based on a formula having

to do with each client's share of the aggregate factors used by the LECs to determine their

respective Telco Reserve held against Integretel as a whole. The effect of the most recent

reallocation was to decrease the requirement for Telco Reserves relating to Access One and

thereby increase the amount of the IGT Reserve relating to Access One.

---

1. These amounts do not reflect certain items that Integretel believes that it is entitled to charge against the reserves but that are not currently being charged against them. Integretel's decision not to charge these items against the reserves at this time is not an admission that Integretel thinks it is not entitled to make the charges. Rather, Integretel has decided, in its discretion, to withhold such charges until the Court can rule on the pending relevant motions. Subject to this Court's order, Integretel reserves the right to make the charges in the future.

00067

I DECLARE under penalty of perjury that the foregoing is true to the best of my

knowledge, information, and belief.

Executed on October 27, 2006.

Ken Dawson

-8-

00068

# Exhibit 1

## MASTER SERVICES AGREEMENT

**THIS MASTER SERVICES AGREEMENT** (the "Agreement") is entered into as of 6 /30 , 2004 ("Effective Date"), by and between Integretel, Incorporated, a California corporation ("IGT"), and Access One Communications, a Florida corporation ("Client").

**WHEREAS,** Client has and will purchase certain accounts receivable, as evidenced by the Billing Transactions, from _____N/A_____, a _N/A_ , who is a provider of certain telecommunications related products and services; and

**WHEREAS,** IGT is engaged in the business of providing validation, billing, collection and related services to the telecommunications industry; and

**WHEREAS,** IGT is willing to provide its services to Client, and Client desires to obtain such services from IGT, upon the terms and conditions stated herein;

**NOW, THEREFORE,** the parties hereto agree as follows:

**1. DEFINITIONS.** Certain terms used herein are defined in the attached Exhibit A and are incorporated herein by reference.

**2. IGT SERVICES.** IGT shall provide one or more of the following services (each a "Service Order") as more fully described on the referenced Schedules, attached hereto and made a part hereof. Unless marked as initially ordered below, additional Service Orders may be included under this Agreement by execution of an applicable amendment hereto along with the applicable Schedule and any changes to the Fees set forth on Exhibit B.

| Sched# | Service Order Options | Included |
|--------|----------------------|----------|
| I | Validation/Registration | ( ) |
| II | PhoneBill Services (Telco Billing) | (X) |
| III | DirectBill Services (Client-Branded Billing) | ( ) |
| IV | Credit Card Processing | ( ) |
| V | Automated Clearing House (ACH) | ( ) |
| VI | End-User Inquiry (required with Service Order II or III) | (X) |
| VII | Collection Services | ( ) |
| VIII | Pre-Pay Services | ( ) |

**3. TERM.** The initial term of this Agreement shall be for two (2) years from the Effective Date ("Initial Term"), and shall automatically renew for successive terms of two (2) years (each a "Renewal Term") unless either party gives the other party written notice of its desire to not renew at least ninety (90) days prior to a scheduled renewal, or otherwise terminates this Agreement in accordance with Section 12. The Initial Term and any Renewal Term shall be referred to collectively herein as "Term".

**4. CLIENT SUBMISSION AND IGT EDIT.** Where applicable to a Service Order, Client shall submit to IGT its Billing Transactions in a data format acceptable to IGT. Upon receipt of Client's Billing Transactions, IGT shall subject the Billing Transactions to its proprietary edit process (the "IGT Edit Process"), which may screen the Billing Transactions for, among other things, compliance with IGT's billing policies, billing coverage, regulatory requirements, syntax errors and other requirements as IGT may reasonably determine from time to time. IGT shall provide reasonable notification of any changes or restrictions in its edit criteria. Client shall use commercially reasonable efforts to screen its Billing

Transactions to exclude records that are not likely to pass the IGT Edit Process. If any of Client's Billing Transactions fail to satisfy the criteria of the IGT Edit Process, IGT shall return such Billing Transactions to Client and IGT shall have no further responsibility for any such returned Billing Transactions.

**5. SERVICE FEES.** IGT shall be entitled to withhold from its disbursements to Client, or otherwise invoice Client, the fees set forth on Exhibit B, attached hereto (collectively "Fees"). In the event IGT invoices Client for its Fees, such invoices shall be due and payable within five (5) business days of receipt by Client. IGT shall be entitled to interest on any past-due Fees, or other amounts owing to IGT, at the rate of 18% per annum or the maximum rate allowable by law, whichever is less. After the first annual anniversary of this Agreement, IGT may adjust its Fees with thirty (30) days prior written notice to Client, provided, however, that the aggregate effect of such adjustment shall not exceed ten percent (10%) in any 12 month period.

**6. TAXES.** Each party shall be responsible for the timely remittance of such party's applicable Taxes (if any) to the appropriate taxing authorities. In no event shall either party be responsible for the other party's obligation to remit such other party's Taxes. Client shall either include, in the face amount of each Billing Transaction, the amount of any applicable Taxes and format such Billing Transactions so as to be exempt from any additional Taxes; or provide written instructions to IGT directing IGT to apply specific Taxes to the Billing Transactions. IGT shall otherwise cause the then-current taxing rates and logic, including such rates and logic of applicable LECs, to be applied to Client's Billing Transactions. In the event that IGT is providing services to Client under a PhoneBill Service Order, attached hereto as Schedule II, then IGT shall cause any Taxes collected by a Telco in relation to Client's Billing Transactions to be remitted to the appropriate taxing authorities. Client agrees to indemnify and hold IGT, its directors, officers, employees, agents, and representatives harmless from and against any liability or loss resulting from any Taxes including, without limitation, any penalties, interest, additions to Tax, Tax surcharges and other Tax-related costs payable or incurred in relation to Client's Services or the Billing Transactions.

**7. CLIENT REPRESENTATIONS AND WARRANTIES.** Client represents and warrants to IGT that, throughout the Term of this Agreement, Client shall be in compliance with all rules, regulations and policies including, but not limited to, federal, state, and local legal and regulatory requirements and collection guidelines contained in Exhibit C, attached hereto, applicable to any of Client's Services. This warranty is in lieu of any other warranty, express, implied or statutory.

**8. IGT's REPRESENTATION AND WARRANTY.** IGT represents and warrants to Client that, throughout the Term of this Agreement, IGT shall be in compliance with all rules, regulations and policies including, but not limited to, federal, state, and local legal and regulatory requirements applicable to the Services to be provided hereunder. This warranty is in lieu of any other warranty, express, implied or statutory.

**9. PROOF OF COMPLIANCE.** Each party agrees to provide written proof of its compliance, with respect to its respective obligations under Sections 7 or 8 above, to the other party within five (5) business days of such other party's written request. Each party shall have the right to immediately suspend its performance under this Agreement, whether in whole or in part, without liability to the other party in the event that such other party does not provide satisfactory written evidence of such compliance. Each party agrees to notify the

TBR_NCI 000262
00070

RER-32    1427