List all other property, by category, with an estimated value of $2,500 or more, held by the corporation, including but not limited to, inventory, machinery, equipment, furniture, vehicles, customer lists, computer software, patents, and other intellectual property.

| Property Category | Property Location | Acquisition Cost | Current Value |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

**Item 24.**    **Trusts and Escrows**

List all persons and other entities holding funds or other assets that are in escrow or in trust for the corporation.

| Trustee or Escrow Agent's Name & Address | Description and Location of Assets | Present Market Value of Assets |
|---|---|---|
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |

**Item 25.**    **Monetary Judgments and Settlements Owed To the Corporation**

List all monetary judgments and settlements, recorded and unrecorded, owed to the corporation.

Page 11                                      Initials _____

00238

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____

**Item 26.**    **Monetary Judgments and Settlements Owed By the Corporation**

List all monetary judgments and settlements, recorded and unrecorded, owed by the corporation.

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date_____ Amount $_____

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____

**Item 27.**    **Government Orders and Settlements**

List all existing orders and settlements between the corporation and any federal or state government entities.

Name of Agency _____ Contact Person _____

Page 12                                                                    Initials _____

Address _____    Telephone No. _____

Agreement Date _____  Nature of Agreement _____

## Item 28.    Credit Cards

List all of the corporation's credit cards and store charge accounts and the individuals authorized to use them.

| Name of Credit Card or Store | Names of Authorized Users and Positions Held |
| --- | --- |
| | |
| | |
| | |
| | |
| | |

## Item 29.    Compensation of Employees

List all compensation and other benefits received from the corporation by the five most highly compensated employees, independent contractors, and consultants (other than those individuals listed in Items 5 and 6 above), for the two previous fiscal years and current fiscal year-to-date. "Compensation" includes, but is not limited to, salaries, commissions, consulting fees, bonuses, dividends, distributions, royalties, pensions, and profit sharing plans. "Other benefits" include, but are not limited to, loans, loan payments, rent, car payments, and insurance premiums, whether paid directly to the individuals, or paid to others on their behalf.

| Name/Position | Current Fiscal Year-to-Date | 1 Year Ago | 2 Years Ago | Compensation or Type of Benefits |
| --- | --- | --- | --- | --- |
| | $ | $ | $ | |
| | $ | $ | $ | |
| | $ | $ | $ | |
| | $ | $ | $ | |
| | $ | $ | $ | |

## Item 30.    Compensation of Board Members and Officers

List all compensation and other benefits received from the corporation by each person listed in Items 5 and 6, for the current fiscal year-to-date and the two previous fiscal years. "Compensation" includes, but is not limited to, salaries, commissions, consulting fees, dividends, distributions, royalties, pensions, and profit sharing plans. "Other benefits" include, but are not limited to, loans, loan payments, rent, car payments, and insurance premiums, whether paid directly to the individuals, or paid to others on their behalf.

Page 13                                              Initials _____

| Name/Position | Current Fiscal Year-to-Date | 1 Year Ago | 2 Years Ago | Compensation or Type of Benefits |
|---|---|---|---|---|
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |

**Item 31.**    **Transfers of Assets Including Cash and Property**

List all transfers of assets over $2,500 made by the corporation, other than in the ordinary course of business, during the previous three years, by loan, gift, sale, or other transfer.

| Transferee's Name, Address, & Relationship | Property Transferred | Aggregate Value | Transfer Date | Type of Transfer (e.g., Loan, Gift) |
|---|---|---|---|---|
| _____ | | $_____ | _____ | _____ |
| _____ | | $_____ | _____ | _____ |
| _____ | | $_____ | _____ | _____ |
| _____ | | $_____ | _____ | _____ |
| _____ | | $_____ | _____ | _____ |

**Item 32.**    **Documents Attached to the Financial Statement**

List all documents that are being submitted with the financial statement.

| Item No. Document Relates To | Description of Document |
|---|---|

Page 14

Initials _____

00241

RER-32    1598

_____

_____

_____

_____

_____

_____

_____

_____

_____

I am submitting this financial statement with the understanding that it may affect action by the Federal Trade Commission or a federal court. I have used my best efforts to obtain the information requested in this statement. The responses I have provided to the items above are true and contain all the requested facts and information of which I have notice or knowledge. I have provided all requested documents in my custody, possession, or control. I know of the penalties for false statements under 18 U.S.C. § 1001, 18 U.S.C. § 1621, and 18 U.S.C. § 1623 (five years imprisonment and/or fines). I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on:

_____          _____
(Date)                                               Signature

                                                     _____
                                                     Corporate Position

Initials _____

00242

RER-32    1599

Attachment "C"

**Consent to Release of Financial Records, Individual**

I, _____, do hereby direct any bank, trust company, or financial institution, at which I have an account of any kind upon which I am authorized to draw, and its officers, employees, and agents, to disclose all information and deliver copies of all documents of every nature in their possession or control that relate to any such account to any attorney of the Federal Trade Commission, and to give evidence relevant thereto, in the matter of the <u>Federal Trade Commission v. Nationwide Connections, et al.</u>, now pending in the United States District Court for the Southern District of Florida and this shall be irrevocable authority for so doing.

This direction is intended to apply to the laws of countries other than the United States that restrict or prohibit the disclosure of financial information without the consent of the holder of the account, or its officers, and shall be construed as consent with respect thereto.

Dated: _____, 2006

Signature: _____

**Consent to Release of Financial Records, Corporate**

I, _____, as an officer of _____, do hereby direct any bank, trust company, or financial institution, at which _____ has an account of any kind upon which _____ is authorized to draw, and its officers, employees, and agents, to disclose all information and deliver copies of all documents of every nature in their possession or control that relate to any such account to any attorney of the Federal Trade Commission, and to give evidence relevant thereto, in the matter of the <u>Federal Trade Commission v. Nationwide Connections, et al.</u>, now pending in the United States District Court for the Southern District of Florida, and this shall be irrevocable authority for so doing.

This direction is intended to apply to the laws of countries other than the United States that restrict or prohibit the disclosure of financial information without the consent of the holder of the account, or its officers, and shall be construed as consent with respect thereto.

Dated: _____, 2006

Signature: _____

Name: _____

Title: _____

00243

Exhibit 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-80180-Civ-RYSKAMP/VITUNAC

FEDERAL TRADE COMMISSION,

      Plaintiff,

vs.

NATIONWIDE CONNECTIONS, INC.,
*et. al.,*

      Defendants.

_____/

**Declaration of Richard H. Gordin**

    1.  I am one of the attorneys who has represented defendant The Billing Resource, d/b/a Integretel (formerly known as Integretel, Incorporated) ("Integretel") in connection with matters relating to the instant litigation. I submit this declaration in opposition to the receiver's motion for an order requiring Integretel to show cause why it should not be held in contempt of court.

    2.  I am a member of Tighe Patton Armstrong Teasdale, PLLC, a law firm in the District of Columbia. I am admitted to the bars of Maryland, Illinois and the District of Columbia. In addition, I am admitted to practice before several federal courts. I am a member in good standing of each bar of which I am a member.

    3.  On or shortly after May 19, 2006, I learned that the FTC had served a discovery subpoena on Integretel in connection with this action. I recall having several conversations, two of which were substantive and detailed, with FTC staff counsel regarding this subpoena prior to June 11, 2006, the date I traveled to California to participate in the process of assembling documents to be produced in response to the subpoena. During at least one of these two

substantive discussions, I recall mentioning that Integretel had a reserve account for the companies and that the "reserve" was simply a bookkeeping mechanism. There was little, if any, further conversation about the reserve at that time. I gathered from the reaction of staff counsel that they knew and understood the use and operation of reserve accounting in the context of the services provided by telecommunication billing aggregators.

4. On June 9 and June 28, Integretel produced documents in response to the subpoena. On June 22, prior to the June 28 production, I had a detailed discussion with FTC staff counsel about information they wanted with regard to the subpoena. I do not recall staff counsel mentioning the reserve account at this time.

5. I do not recall any further substantive contact with FTC staff until August. On August 8, I received two letters from staff counsel. One letter stated staff's intention to recommend to the Commission that Integretel be joined as a party to the instant litigation, and the other letter contained a detailed review of information that the FTC believed we had agreed in discussions to produce, but had not produced in response to the subpoena. Neither letter mentioned the Integretel reserve.

6. On August 21, I had a conversation with FTC staff counsel that primarily concerned the information identified in the FTC's August 8 letter. During that conversation, staff asked about the amount credited in the reserve account.

7. On August 29, 2006, I wrote to Ms. Collot Guerard, one of the FTC staff attorneys, regarding various matters staff had raised with regard to the subpoena. With regard to the matter of the reserve, I wrote:

> Reserve Amount Remaining: We understand that as of Friday, August 25, 2006, the reserve amount remaining for Access One was $1,186,430.36 and the amount remaining for Network One was $173,918.66. As we informed you, these are accounting entries

-2-

only; there are no separate holding accounts. Under the respective contracts with TRS, the reserves are to be applied for various purposes.

8.    During the first week in September, I met with four of the five FTC commissioners about this case. FTC staff was present at each meeting. At one or more of those meetings, I discussed the existence and the amount of the reserve accounts.

9.    There was no further inquiry or mention of the reserve accounts until September 28, when I met with FTC staff. During that meeting, staff asked how much was in the reserve account (which I had referenced yet again in a memorandum to staff that was forwarded to them shortly before the meeting). When I answered, staff acted as though they had never heard about the reserve or its book valuation.

10. Following this meeting, there were written communications between counsel for Integretel and counsel for the FTC. Attached hereto as Exhibits 1 and 2 are true and correct copies of letters I received from FTC staff counsel Laura Kim on October 2 and October 4, respectively.

11. I responded to Ms. Kim's October 2 letter on October 3, and explained that Integretel was not holding any funds to which the receiver was entitled. A copy of that letter is included in Exhibit 4 to the receiver's motion.

12. On October 5, I received a large box that had been sent to me by FTC staff via FedEx. Included in this box were the summons and complaint in this action, as well as a number of other documents. The box also included a cover letter from Mr. Michael Davis, one of the FTC's attorneys in this matter, that inaccurately asserted that I had previously said that I had been appointed to accept service on behalf of Integretel. None of the other documents in the box were specially noted or discussed in the cover letter. Each document was referenced by title or

-3-

description in an accompanying list. Among those documents on the list and in the box was the amended preliminary injunction.

13. Later that day, I sent a letter to FTC staff counsel, explaining, among other things, that I had not stated that I was authorized to accept service and that I did not then have such authority. My October 5 letter also pointed out that service by Federal Express is not authorized under the Federal Rules of Civil Procedure. I stated in the letter that we would contact Integretel to determine whether we would be given authority to accept service and that we would then contact FTC staff counsel.

14. Later on October 5, I left the country. I did not return to the country until after service had been effected.

15. To my knowledge, information and belief, Integretel was not served with the FTC's motion to amend the preliminary injunction or otherwise given notice of the motion at any time before the amended preliminary injunction was entered.

I DECLARE under penalty of perjury that the foregoing is true to the best of my knowledge, information, and belief.

Executed on October 30, 2006.

Richard H. Gordin

-4-

# Exhibit 1

Case 5:07-cv-06210-JW    Document 12-34    Filed 04/06/2008    Page 12 of 64
10/02/06  17:38 FAX 2023262586        BCP                                    ☒002
Case 9:06-cv-80180-KLR    Document 296-3    Entered on FLSD Docket 10/30/2006    Page 6 of 11



UNITED STATES OF AMERICA
FEDERAL TRADE COMMISSION
WASHINGTON, D.C. 20580

Direct Dial: 202-326-3734
Fax: 202-326-3395
E-mail: lkim@ftc.gov

Laura Kim
Attorney
Division of Marketing Practices

October 2, 2006

**VIA FACSIMILE (202) 454-2805**

Richard H. Gordin
Tighe Patton Armstrong Teasdale, PLLC
1747 Pennsylvania Avenue, N.W.
Third Floor
Washington DC 20006

Re: *FTC v. Nationwide Connections, Inc., et al.*, Case No. 06-80180-CIV-Ryskamp

Dear Mr. Gordin:

It has recently come to staff's attention that your client, The Billing Resource, d/b/a Integretel ("Integretel"), currently holds reserves belonging to Access One Communications, Inc. ("Access One") and Network One Services, Inc. ("Network One"). Integretel appears to be holding reserves for these two companies in an amount that exceeds $1 million. As you know, all assets of the defendants in the case *FTC v. Nationwide Connections, Inc., et al.*, including Access One and Network One, have been frozen pursuant to the Temporary Restraining Order ("TRO") and Preliminary Injunction Order entered by Judge Ryskamp on February 27, 2006 and March 8, 2006, respectively.

On March 3, 2006, the FTC served the TRO by facsimile on Ken Dawson, President of Integretel. Paragraph III of the TRO provides that all assets of the defendants are frozen. In addition, pursuant to Paragraph XI of the TRO, all "third-party billing agents" were ordered to cooperate with the court-appointed Receiver, including producing records and "transferring funds" at the Receiver's direction. Similarly, the Preliminary Injunction Order freezes all of the defendants' assets and requires transfer of funds to the Receiver.

Following service of the TRO on Integretel, Mr. Dawson notified the FTC that to the extent that funds become due in the future to Access One or Network One, Integretel "will establish a separate bank account" for each of the two companies "in which such funds will be deposited . . . .". As mentioned above, we have now learned that Integretel holds more than $1 million in reserves for Access One and Network One. Such funds should have been

00249

RER-32        1606

Case 5:07-cv-06210-JW   Document 12-34   Filed 04/06/2008   Page 13 of 64
10/02/06  17:38 FAX 2023262588           BCP                              @603
Case 9:06-cv-80180-KLR   Document 296-3   Entered on FLSD Docket 10/30/2006   Page 7 of 11

Mr. Richard Gordin
October 2, 2006, page 2

transferred to the Receiver pursuant to the TRO and Preliminary Injunction.

Accordingly, please contact Jeffrey Schneider, counsel to the court-appointed Receiver, to arrange for the immediate transfer of the reserve account funds belonging to Access One and Network One to the Receiver. Mr. Schneider may be reached at 305-529-2481.

Thank you for your prompt attention to this matter.

Sincerely,

Laura Kim

00250

RER-32    1607



# FEDERAL TRADE COMMISSION

600 Pennsylvania Avenue, NW
Washington, DC 20580
Fax Number: (202) 326-3395

## Facsimile Transmittal Sheet

| To: | Ric___ H. Gordin<br>Tighe Patton Armstrong Teasdale, PLLC<br>Fax (202) 454-2805 | Total number of pages sent (including this cover sheet):<br><br>9 |
|---|---|---|
| From: | Laura Kim<br>Bureau of Consumer Protection<br>Direct Dial (202) 326-734 | Sending Org Code:  1144<br><br>Date:  October 2, 2006<br><br>Time: 5:30pm |
| Subject: | FTC v. Nationwide Connections, Case No. 06-80180 (S.D. Fla.) | |
| Note: | Please refer to the attached. | |

**IMPORTANT NOTICE:**

The information contained in this transmission is privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately and return the original message to us at the above address via the U.S. Postal Service. Thank you.

# Exhibit 2



UNITED STATES OF AMERICA
FEDERAL TRADE COMMISSION
WASHINGTON, D.C. 20580

Laura Kim
Attorney
Division of Marketing Practices

Direct Dial: 202-326-3734
Fax : 202-326-3395
E-mail: lkim@ftc.gov

October 4, 2006

**VIA FACSIMILE (202) 454-2805**

Richard H. Gordin
Tighe Patton Armstrong Teasdale, PLLC
1747 Pennsylvania Avenue, N.W.
Third Floor
Washington DC 20006

Re: *F. . . Nationwide Connections, Inc., et al.*, Case No. 06-80180-CIV-Ryskamp

Dear Mr. Gordin:

I write in response to your letter dated October 3, 2006.

As you note in your letter, The Billing Resource's ("Integretel") President, Ken Dawson, wrote to the FTC on March 6, 2006 after being served with the Temporary Restraining Order entered by Judge Ryskamp in the above-captioned case. In his letter, Mr. Dawson states that "to the extent proceeds become due to [defendant Access One Communications, Inc.], [Integretel] will establish a separate bank account into which such funds will be deposited and notify [the FTC] accordingly." Mr. Dawson made a similar statement with respect to defendant Network One Services, Inc. ("Network One").

At our September 28, 2006 meeting, you informed me and Collot Guerard that Integretel currently holds more than $1 million in reserves arising out of Integretel's contractual relationships with Network One and Access One Communications, Inc. (collectively, "Nationwide defendants"). You may dispute whether such reserves belong, or have become due, to the Nationwide defendants. It is our position, however, that such funds do belong to the Nationwide defendants and that the $1 million in reserves should have been disclosed to the FTC and the . . . -appointed Receiver.

Because Mr. Dawson's letter of March 6 states that he would notify the FTC of such funds when they become due, and because we believe that such funds are currently due to the Nationwide defendants, I plan to send a copy of the March 6 letter to Jeffrey Schneider, counsel

00253

Mr. Richard H. Gordin
October 4, 2006

for the Receiver.

If you object to my sending a copy of the letter to Mr. Schneider, please contact me immediately.  Otherwise, I plan to send the letter to him on Tuesday, October 10.

Please contact me if you would like to discuss this matter further.

Sincerely,

Laura Kim

Exhibit 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-~~08103~~ - CIV-RYSKAMP

|  |  |  |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | **PRELIMINARY INJUNCTION** |
| | ) | **ORDER** |
| vs. | ) | |
| | ) | |
| NATIONWIDE CONNECTIONS, INC., | ) | |
| ACCESS ONE COMMUNICATIONS, INC., | ) | |
| NETWORK ONE SERVICES, INC., | ) | |
| WILLOUGHBY FARR, | ) | |
| MARY LOU FARR, | ) | |
| YARET GARCIA, | ) | |
| ERIKA RIABOUKHA, | ) | |
| QAADIR KAID, | ) | |
| | ) | |
| Defendants. | ) | |

FILED by _____ D.C.

MAR - 8 2006

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

On February 27, 2006, the Federal Trade Commission ("FTC" or "Commission") filed a

Complaint for Injunctive and Other Equitable Relief, including consumer redress, pursuant to

Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), and applied

*ex parte* for a Temporary Restraining Order and Other Equitable Relief. On that same day, this

Court, having considered the Complaint, Memorandum of Points and Authorities, declarations,

and other exhibits filed in support of Plaintiff's motion, issued a Temporary Restraining Order,

including an asset freeze and appointment of a temporary receiver.

### FINDINGS OF FACT

The Court has considered the pleadings, declarations, exhibits, and memoranda filed in

support of the Commission's motion and finds that:

1.    This Court has jurisdiction over the subject matter of this case, and there is good cause to

*P2*
*d g*
*00255*

believe that it will have jurisdiction over all parties hereto.

2.      There is good cause to believe that Defendants Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., Willoughby Farr, Mary Lou Farr, Yaret Garcia, Erika Riaboukha, and Qaadir Kaid have engaged and are likely to engage in acts or practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and that the Commission has demonstrated a substantial likelihood of prevailing on the merits of this action.

3.      There is good cause to believe that immediate and irreparable damage will result from Defendants' ongoing violations of Section 5(a) of the FTC Act.

4.      There is a substantial likelihood that, absent the continuation of the asset freeze and the receivership, Defendants will conceal, dissipate, or otherwise divert their assets, and thereby defeat the possibility of effective final relief in the form of equitable monetary relief. Defendants have engaged in the widespread unauthorized billing of collect telephone calls in violation of Section 5 of the FTC Act. Defendants have retained ill-gotten gains from these practices, and a receiver and asset freeze are reasonably necessary in order to preserve the possibility of complete and meaningful relief at the conclusion of this litigation.

5.      Weighing the equities and considering the FTC's substantial likelihood of success on the merits, issuance of a preliminary injunction with asset freeze and appointment of a permanent receiver are in the public interest.

6.      Fed. R. Civ. P. 65(c) does not require security of the United States or an officer or agency thereof for the issuance of a restraining order.

2

00256

## DEFINITIONS

For the purpose of this Preliminary Injunction Order ("Order"), the following definitions shall apply:

A.    **"Assets"** means any legal or equitable interest in, right to, or claim to any real or personal property of any Defendant, or held for the benefit of any Defendant, wherever located, including, but not limited to, "goods," "instruments," "equipment," "fixtures," "general intangibles," "inventory," "checks," "notes" (as these terms are defined in the Uniform Commercial Code), chattels, leaseholds, contracts, mails, other deliveries, shares of stock, lists of participants, intellectual property, accounts, credits, receivables, cash, and trusts, including, but not limited to, any other trust held for the benefit of any Defendant, any Defendant's minor children, or any Defendant's spouse.

B.    **"Defendants"** means Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., Willoughby Farr, Mary Lou Farr, Yaret Garcia, Erika Riaboukha, and Qaadir Kaid. Furthermore, any person insofar as he or she is acting in the capacity of an officer, agent, servant, employee or attorney of any defendant, and any person or entity in active concert or participation with any of the foregoing who receives actual notice of this Order by personal service or otherwise, is bound to comply with this Order, whether those persons or entities are acting directly or through a trust, corporation, subsidiary, division, or other device. *See* Fed. R. Civ. P. 65(d).

C.    **"Document"** is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes, but is not limited to, writings, drawings, graphs, charts, Internet sites, Web pages, Web sites, electronic correspondence,

3

00257

RER-32      1614

including e-mail and instant messages, photographs, audio and video recordings, computer records, whether active or inactive, and any other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

D.    "**Individual Defendants**" means Willoughby Farr, Mary Lou Farr, Yaret Garcia, Erika Riaboukha, and Qaadir Kaid.

E.    "**Long Distance Service Provider**" means an entity that transports long distance telephone calls.

F.    "**Plaintiff**" means the Federal Trade Commission.

G.    "**Receiver**" shall mean the receiver appointed in Paragraph VIII of this Order. The term "receiver" also includes any deputy receivers as may be named by the receiver.

H.    "**Receivership Defendants**" means: (1) Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc.; (2) the following affiliated entities acting in active concert or participation with them or the Individual Defendants, namely 411TXT, Inc., CELL-INFO-USA, Inc., Enhanced Billing Services, Inc., Toll Free Connect, Inc., Cripple Creek Holdings, LLC, Built to Last, LLC, Not Fade Away, LLC, He's Gone, LLC, The Other One, LLC, Turn on Your Love Light, LLC, China Cat Sunflower, LLC, Lazy River Road Holdings, LLC; and (3) any affiliates, fictitious names, subsidiaries, successors, assigns or d/b/as of the aforementioned entities.

I.    "**TRO**" means the *Ex Parte* Temporary Restraining Order with Asset Freeze and Other Equitable Relief issued by the Court in this matter on February 27, 2006.

00258

## PROHIBITED BUSINESS ACTIVITIES

### I.

**IT IS THEREFORE ORDERED** that Defendants, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from directly or indirectly misrepresenting, expressly or by implication, that a consumer is obligated to pay any charge that has not been expressly authorized by the consumer.

### II.

**IT IS FURTHER ORDERED** that Defendants are hereby restrained and enjoined from billing or submitting any charge for billing on a consumer's telephone bill.

### ASSET FREEZE

### III.

**IT IS FURTHER ORDERED** that Defendants, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from:

A.    Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any funds, real or personal property, accounts, reserve accounts, contracts, consumer lists, shares of stock, or other assets, or any interest therein, wherever located, that are:  (1) owned or controlled by any Defendant, in whole or in part, for the benefit of any Defendant; (2) in the actual or constructive possession of any Defendant; or (3) owned, controlled by, or in the actual or constructive possession of any

5

corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by

any Defendant, including, but not limited to, Cripple Creek Holdings, LLC, 411TXT, Inc., CELL-

INFO-USA, Inc., Enhanced Billing Services, Inc., Toll Free Connect, Inc., and any assets held by

or for, or subject to access by, any of Defendants, at any bank or savings and loan institution, or

with any broker-dealer, escrow agent, title company, commodity trading company, precious

metals dealer, billing aggregator, or other financial institution or depository of any kind;

      B.     Opening or causing to be opened any safe deposit boxes titled in the name of any

Defendant or any Defendant's minor child or any Defendant's spouse, or subject to access by any

of them;

      C.     Incurring charges or cash advances on any credit card issued in the name, singly or

jointly, of any Defendant;

      D.     Obtaining a personal or secured loan; and

      E.     Incurring liens or other encumbrances on real property, personal property or other

assets in the name, singly or jointly, of any Defendant.

     *Provided further*, the assets affected by this Paragraph shall include: (1) all assets of

Defendants as of the time the TRO was entered; and (2) for assets obtained after the time the TRO

was entered, only those assets of Defendants that are derived from the actions alleged in the

Commission's Complaint.

**FINANCIAL REPORTS AND ACCOUNTING**

**IV.**

     **IT IS FURTHER ORDERED** that, to the extent that Defendants have not complied with

Section III of the TRO, each Defendant shall immediately:

6

00260

A.    Prepare and deliver to counsel for the FTC completed financial statements on the forms attached to the TRO as Attachments A and B, for themselves, individually or as corporations, and for each business entity under which they conduct business, or of which they are an officer, and for each trust of which they are a trustee. The financial statements shall be accurate as of the date of entry of the TRO; and

B.    Provide the Commission with a statement, verified under oath and accurate as of the date of entry of the TRO, detailing the name, address, and telephone number for each accountant, financial planner, investment advisor, stock broker, or other person who provided any Defendant with financial, business, or tax advice or services since January 1, 2004.

*Provided further,* the Commission and the Permanent Receiver are immediately authorized to issue subpoenas to demand the production of documents from any person or entity relating to the nature, status, extent, location or other relevant information relating to Defendants' assets, income, and financial records.

## FOREIGN ASSET REPATRIATION

### V.

**IT IS FURTHER ORDERED** that, to the extent that Defendants have not complied with Section IV of the TRO, each Defendant shall immediately:

A.    Provide the Commission and the Receiver with a full accounting of all funds, documents, and assets outside of the United States that are: (1) titled in the name, individually or jointly, of any Defendant or the spouse of any Defendant; or (2) held by any person or entity for the benefit of any Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Defendant;

7

B.    Transfer to the territory of the United States and deliver to the Receiver all funds, documents, and assets located in foreign countries that are: (1) titled in the name, individually or jointly, of any Defendant or the spouse of any Defendant; or (2) held by any person or entity, for the benefit of any Defendant; or (3) under any Defendant's direct or indirect control, whether jointly or singly; and

C.    Provide the Commission access to all records of accounts or assets of the Defendants held by financial institutions located outside the territorial United States by signing the Consent to Release of Financial Records attached to the TRO as Attachment C.

## INTERFERENCE WITH REPATRIATION

## VI.

**IT IS FURTHER ORDERED** that Defendants, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign assets, or in the hindrance of the repatriation required by the preceding Paragraph V of this Order, including but not limited to:

A.    Sending any statement, letter, fax, e-mail or wire transmission, telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time that all assets have been fully repatriated pursuant to Paragraph V of this Order; and

B.    Notifying any trustee, protector or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a Court Order, until such time that all assets have been fully repatriated pursuant to Paragraph V

8

of this Order.

## RETENTION OF ASSETS AND RECORDS BY FINANCIAL INSTITUTIONS

### VII.

**IT IS FURTHER ORDERED** that any financial or brokerage institution, business entity, or person served with a copy of this Order that holds, controls, or maintains custody of any account or asset of any Defendant, or has held, controlled or maintained custody of any such account or asset at any time since the date of entry of this Order, shall:

    A.    Hold and retain within its control and prohibit the withdrawal, removal, assignment, transfer, pledge, encumbrance, disbursement, dissipation, conversion, sale, or other disposal of any such asset except by further order of the Court;

    B.    Deny the Defendants access to any safe deposit box that is:

        1.    titled in any Defendants' name, individually or jointly; or

        2.    otherwise subject to access by any Defendant;

    C.    To the extent that such information has not already been provided to the Commission, provide the Commission's counsel, within five (5) business days of receiving a copy of this Order, a sworn statement setting forth:

        1.    the identification number of each such account or asset titled in the name, individually or jointly, of a Defendant, or held on behalf of, or for the benefit of a Defendant;

        2.    the balance of each such account, or a description of the nature and value of each such asset as of the close of business on the day on which this Order is served, and, if the account or other asset has been closed or removed, the

9

00263

date closed or removed, the total funds removed in order to close the

account, and the name of the person or entity to whom such account or

other asset was remitted; and

3.    the identification of any safe deposit box that is titled in the name,

individually or jointly, of a Defendant, or is otherwise subject to access by a

Defendant.

D.    Upon request by the Commission, promptly provide the Commission with copies

of all records or other documentation pertaining to each such account or asset, including but not

limited to originals or copies of account applications, account statements, signature cards, checks,

drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or

slips, currency transaction reports, 1099 forms, and safe deposit box logs. Any such financial

institution, account custodian, or other aforementioned entity may arrange for the Commission to

obtain copies of any such records which the Commission seeks.

## APPOINTMENT OF PERMANENT RECEIVER

## VIII.

**IT IS FURTHER ORDERED** that David R. Chase of David R. Chase, P.A. is appointed

as Permanent Receiver for the Receivership Defendants. The Receiver shall be the agent of this

Court, and solely the agent of this Court, in acting as Receiver under this Order. The Receiver

shall be accountable directly to this Court. The Receiver shall comply with all Local Rules and

laws governing federal equity receivers.

**10**

## RECEIVER'S DUTIES

## IX.

**IT IS FURTHER ORDERED** that the Receiver is authorized and directed to accomplish the following:

A.    Assume full control of the Receivership Defendants by removing, as the Receiver deems necessary or advisable, any director, officer, independent contractor, employee, or agent of any of the Receivership Defendants, including any Defendant, from control of, management of, or participation in, the affairs of the Receivership Defendants;

B.    Take exclusive custody, control, and possession of all assets and documents of, or in the possession, custody, or under the control of, the Receivership Defendants, wherever situated. The Receiver shall have full power to divert mail and to sue for, collect, receive, take in possession, hold, and manage all assets and documents of the Receivership Defendants and other persons or entities whose interests are now held by, or are under the direction, possession, custody, or control of, the Receivership Defendants. The Receiver shall assume control over the income and profits therefrom and all sums of money now or hereafter due or owing to the Receivership Defendants. *Provided, however*, that the Receiver shall not attempt to collect any amount from a consumer if the Receiver believes the consumer was a victim of the unfair or deceptive acts or practices alleged in the Complaint in this matter, without prior Court approval;

C.    Take all steps necessary to secure each location from which the Receivership Defendants operate their business. Such steps may include, but are not limited to, any of the following, as the Receiver deems necessary or advisable: (1) serving this Order; (2) completing a written inventory of all receivership assets; (3) obtaining pertinent information from all employees

11

and other agents of the Receivership Defendants, including, but not limited to, the name, home address, social security number, job description, passwords or access codes, method of compensation, and all accrued and unpaid commissions and compensation of each such employee or agent; (4) photographing and video taping any or all portions of the location; (5) securing the location by changing the locks and disconnecting any computer modems or other means of access to the computer or other records maintained at that location; and (6) requiring any persons present on the premises at the time this Order is served to leave the premises, to provide the Receiver with proof of identification, or to demonstrate to the satisfaction of the Receiver that such persons are not removing from the premises documents or assets of the Receivership Defendants. Law enforcement personnel, including, but not limited to, police or sheriffs, may assist the Receiver in implementing these provisions in order to keep the peace and maintain security;

     D.    Conserve, hold, and manage all assets of the Receivership Defendants, and perform all acts necessary or advisable to preserve the value of those assets in order to prevent any irreparable loss, damage, or injury to consumers or creditors of the Receivership Defendants, including, but not limited to, obtaining an accounting of the assets and preventing unauthorized transfer, withdrawal, or misapplication of assets;

     E.    Enter into contracts and purchase insurance as advisable or necessary;

     F.    Prevent the inequitable distribution of assets and determine, adjust, and protect the interests of consumers and creditors who have transacted business with the Receivership Defendants;

     G.    Manage and administer the business of the Receivership Defendants until further order of this Court by performing all incidental acts that the Receiver deems to be advisable or

12

necessary, which includes retaining, hiring, or dismissing any employees, independent contractors, or agents;

H.      Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

I.      Have the sole authority to hire legal counsel on behalf of any of the Receivership Defendants;

J.      Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of or exercising the authority granted by this Order. The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Defendants prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure assets of the Receivership Defendants, such as rental payments;

K.      Institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal or foreign courts or arbitration proceedings as the Receiver deems necessary and advisable to preserve or recover the assets of the Receivership Defendants, or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order, including but not limited to, actions challenging fraudulent or voidable transfers;

L.      Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted in the past or in the future against the Receiver in his role as Receiver, or against the Receivership Defendants, as the Receiver deems necessary and advisable to preserve the assets of the Receivership Defendants, or as the Receiver deems necessary and advisable to

13

carry out the Receiver's mandate under this Order;

M.     Continue to conduct the business, or cease operation of the business, of the Receivership Defendants in such manner, to such extent, and for such duration as the Receiver may in good faith deem to be necessary or appropriate to operate the businesses profitably and lawfully, if at all; *provided that*, the continuation and conduct of the business shall be conditioned upon the Receiver's good faith determination that the businesses can be lawfully operated at a profit using the assets of the receivership estate;

N.     Immediately issue subpoenas and conduct discovery, including depositions, to obtain documents, records, and information pertaining to the receivership on behalf of the receivership estate;

O.     Open one or more bank accounts as designated depositories for funds of the Receivership Defendants. The Receiver shall deposit all funds of the Receivership Defendants in such a designated account and shall make all payments and disbursements from the receivership estate from such an account. The Receiver shall serve copies of monthly account statements on all parties;

P.     Maintain accurate records of all receipts and expenditures that he makes as Receiver; and

Q.     Cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency.

## COOPERATION WITH THE RECEIVER

### X.

**IT IS FURTHER ORDERED** that Defendants and all other persons or entities served

14

with a copy of this Order shall fully cooperate with and assist the Receiver. This cooperation and assistance shall include, but not be limited to, providing information to the Receiver that the Receiver deems necessary in order to exercise the authority and discharge the responsibilities of the Receiver under this Order; providing any password required to access any computer, electronic file, or telephonic data in any medium; and advising all persons who owe money to the Receivership Defendants that all debts should be paid directly to the Receiver. Defendants and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from directly or indirectly:

    A.      Transacting any of the business of the Receivership Defendants;

    B.      Destroying, secreting, defacing, transferring, or otherwise altering or disposing of any documents of the Receivership Defendants, including, but not limited to, books, records, accounts, writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations, electronically-stored records, or any other papers of any kind or nature;

    C.      Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Defendants, or the Receiver;

    D.      Excusing debts owed to the Receivership Defendants;

    E.      Failing to notify the Receiver of any asset, including accounts, of a Receivership Defendant held in any name other than the name of the Receivership Defendant, or by any person or entity other than the Receivership Defendant, or failing to provide any assistance or

15

information requested by the Receiver in connection with obtaining possession, custody, or control of such assets; and

      F.     Doing any act or refraining from any act whatsoever to interfere with the Receiver managing, or taking custody, control, or possession of, the assets or documents subject to this receivership; or to harass or interfere with the Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of the Receivership Defendants; or to refuse to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any order of this Court.

### DELIVERY OF RECEIVERSHIP PROPERTY

### XI.

**IT IS FURTHER ORDERED** that:

      A.     Immediately upon service of this Order upon them, or within such period as may be permitted by the Receiver, Defendants and any person or entity served with a copy of this Order shall transfer or deliver possession, custody, and control of the following to the Receiver:

          1.     All assets of the Receivership Defendants;

          2.     All documents of the Receivership Defendants, including, but not limited to, books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), client lists, title documents and other papers;

          3.     All assets belonging to members of the public now held by the Receivership Defendants; and

16

00270

4.    All keys, codes, and passwords necessary to gain or to secure access to any assets or documents of the Receivership Defendants, including, but not limited to, access to their business premises, means of communication, accounts, computer systems, or other property.

B.    In the event any person or entity fails to deliver or transfer any asset or otherwise fails to comply with any provision of this Paragraph, the Receiver may file *ex parte* an Affidavit of Non-Compliance regarding the failure. Upon filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Receiver. The writs shall authorize and direct the United States Marshal or any sheriff or deputy sheriff of any county, or any other federal or state law enforcement officer, to seize the asset, document, or other thing and to deliver it to the Receiver.

## TRANSFER OF FUNDS TO THE RECEIVER

## XII.

IT IS FURTHER ORDERED that, upon service of a copy of this Order, all banks, broker-dealers, savings and loans, escrow agents, title companies, commodity trading companies, precious metals dealers and other financial institutions and depositories of any kind, and all third-party billing agents, local exchange carriers, common carriers, and other telecommunications companies shall cooperate with all reasonable requests of the FTC and the Receiver relating to implementation of this Order, including transferring funds at the Receiver's direction and producing records related to the assets and sales of the Receivership Defendants.

17

00271

RER-32    1628

## COMPENSATION OF RECEIVER

### XIII.

**IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by, in the possession or control of, or which may be received by, the Receivership Defendants. The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of this Order. The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

## PRODUCTION OF RECORDS

### XIV.

**IT IS FURTHER ORDERED** that, to the extent that Defendants have not complied with Section XIV of the TRO with respect to producing: (1) documents owned by or in the custody or control of the Defendants concerning Defendants' business practices or finances; or (2) computers owned by or in the custody or control of the Defendants that are being used or have been used in connection with Defendants' business practices or finances, which documents or computers were not located at the Defendants' business premises at 215 Fifth Street, Suite 306, West Palm Beach, Florida 33401 during the Immediate Access that took place on March 1, 2006, each Defendant shall immediately identify and produce to the Receiver such documents and computers for copying and inspection. Any such computers shall immediately be powered down (turned off) in

18

the normal course for the operating systems used on such computers and shall not be used until produced for copying and inspection, along with any codes needed for access.

.B.    Defendants and all employees or agents of Defendants shall provide the FTC and the Receiver with any necessary means of access to documents and records, including, without limitation, the locations of Defendants' business premises, keys and combinations to locks, computer access codes, and storage area access information.

C.    To the extent that Defendants have not complied with Section XIV of the TRO, each Defendant shall produce to the Receiver a list of all agents, employees, officers, servants and those persons in active concert and participation with them, who have been associated or done business with the Receivership Defendants.

## DEFENDANTS' ACCESS TO THEIR BUSINESS PREMISES

## XV.

**IT IS FURTHER ORDERED** that the Receiver shall allow the Defendants and their representatives reasonable access to the premises of the Receivership Defendants. The purpose of this access shall be to inspect and copy any and all books, records, accounts, and other property owned by or in the possession of the Receivership Defendants. The Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access.

## PRESERVATION OF RECORDS

## XVI.

**IT IS FURTHER ORDERED** that Defendants, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from destroying, erasing, mutilating, concealing, altering,

19

transferring, writing over, or otherwise disposing of, in any manner, directly or indirectly, any documents or records of any kind that relate to the business practices or business or personal finances of Defendants, including but not limited to, computerized files and storage media, contracts, accounting data, correspondence, advertisements, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, copies of federal, state or local business or personal income or property tax returns, and other documents or records of any kind that relate to the business practices or business or personal finances of Defendants.

## RECORD KEEPING/BUSINESS OPERATIONS

## XVII.

**IT IS FURTHER ORDERED** that Defendants are hereby restrained and enjoined from:

A.      Failing to create and maintain documents that, in reasonable detail, accurately, fairly, and completely reflect their incomes, disbursements, transactions, and use of money; and

B.      Creating, operating, or exercising any control over any business entity, including any partnership, limited partnership, joint venture, sole proprietorship or corporation, without first providing the Commission with a written statement disclosing:  (1) the name of the business entity; (2) the address and telephone number of the business entity; (3) the names of the business entity's officers, directors, principals, managers and employees; and (4) a detailed description of the business entity's intended activities.

## IDENTIFICATION OF PROVIDERS AND CUSTOMERS

## XVIII.

**IT IS FURTHER ORDERED** that, to the extent that Defendants have not complied with

20

Section XVIII of the TRO, Defendants shall:

A.    Prepare and deliver to counsel for Plaintiff a completed statement, verified under oath and accurate as of the date of entry of this Order, identifying each long distance service provider that provided services to consumers in connection with any collect calls that were billed on behalf of Defendants; and

B.    Prepare and deliver to counsel for Plaintiff a completed statement, verified under oath and accurate as of the date of entry of this Order, detailing the collect calls that were billed on behalf of Defendants during 2005, including the calling telephone numbers, the recipient telephone numbers, and the date and time of the calls.

## STAY OF ACTIONS

## XIX.

**IT IS FURTHER ORDERED** that:

A.    Except by leave of this Court, during pendency of the receivership ordered herein, Defendants, and all customers, principals, investors, creditors, stockholders, lessors, and other persons seeking to establish or enforce any claim, right, or interest against or on behalf of the Defendants, and all others acting for or on behalf of such persons, including attorneys, trustees, agents, sheriffs, constables, marshals, and other officers and their deputies, and their respective attorneys, servants, agents and employees, be and are hereby stayed from:

> 1.    Commencing, prosecuting, continuing, entering, or enforcing any suit or proceeding against a Receivership Defendant, except that such actions may be filed to toll any applicable statute of limitations;
>
> 2.    Accelerating the due date of any obligation or claimed obligation against a

21

00275

Receivership Defendant; filing or enforcing any lien against a Receivership Defendant; taking or attempting to take possession, custody, or control of any asset of a Receivership Defendant; attempting to foreclose, forfeit, alter, or terminate any interest in any asset of a Receivership Defendant, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise;

3.   Executing, issuing, serving, or causing the execution, issuance or service of, any legal process against a Receivership Defendant, including, but not limited to, attachments, garnishments, subpoenas, writs of replevin, writs of execution, or any other form of process whether specified in this Order or not;

4.   Causing any Receivership Defendant to be placed in involuntary bankruptcy; or

5.   Doing any act or thing whatsoever to interfere with the Receiver managing, or taking custody, control, or possession of, the assets or documents subject to this receivership, or to harass or interfere with the Receiver in any way, or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of the Receivership Defendants.

B.   This paragraph does not stay the commencement or continuation of a criminal action or proceeding.

22

## DISTRIBUTION OF ORDER BY DEFENDANTS

## XX.

**IT IS FURTHER ORDERED** that Defendants shall immediately provide a copy of this Order to each affiliate marketer, sub-affiliate marketer, affiliate, billing aggregator, subsidiary, division, sales entity, successor, assign, officer, director, employee, independent contractor, client company, agent, attorney, spouse and representative of Defendants, and shall, within ten (10) days from the date of entry of this Order, provide the Commission with a sworn statement that Defendants have complied with this provision of the Order, which statement shall include the names, physical addresses, and e-mail addresses of each such person or entity who received a copy of the Order.

## SERVICE OF ORDER

## XXI.

**IT IS FURTHER ORDERED** that copies of this Order may be served by any means, including facsimile transmission or email, upon any financial institution or other entity or person that may have possession, custody, or control of any documents of any Defendant, or that may otherwise be subject to any provision of this Order. Service upon any branch or office of any financial institution shall effect service upon the entire financial institution.

## CONSUMER CREDIT REPORTS

## XXII.

**IT IS FURTHER ORDERED** that, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(1), any consumer reporting agency may furnish a consumer report concerning Defendants to the Commission.

23

00277

## SERVICE UPON PLAINTIFF

## XXIII.

**IT IS FURTHER ORDERED** that, with regard to any correspondence or pleadings related to this Order, service on the Commission shall be performed electronically or by overnight mail to the attention of Laura Kim at the Federal Trade Commission, 600 Pennsylvania Avenue, NW, Room H-238, Washington, DC 20580.

## RETENTION OF JURISDICTION

## XXIV.

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes.

SO ORDERED, this _8_ day of _March_____, 2006, at _10 35_ a.m.


KENNETH L. RYSKAMP
United States District Judge

24

00278

RER-32    1635

# EXHIBIT "V"

313180.02 [XP] 0705

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

FEDERAL TRADE COMMISSION,                )
                                         )
                    *Plaintiff,*         )
                                         )
              v.                         )          No. 07-14531-E
                                         )
NATIONWIDE CONNECTIONS,                  )
INC. et al.,                             )
                                         )
                    *Defendants,*        )
                                         )
THE BILLING RESOURCE dba                 )
INTEGRETEL,                              )
                                         )
                    *Appellant.*         )

**Exhibits in Support of
Appellant's Time-Sensitive Motion
for Immediate Stay or Injunction
Pending Full Consideration of Motion
and
for Continuation of the Stay or Injunction
Pending Complete Resolution of this Appeal**

Volume 2 of 2
Exhibits 9-27

Laurie Webb Daniel                    Richard H. Gordin
Cynthia G. Burnside                   Neal Goldfarb
Holland & Knight LLP                  Tighe Patton Armstrong Teasdale PLLC
1201 West Peachtree Street, NE        1747 Pennsylvania Ave., NW, Suite 300
One Atlantic Center, Suite 2000       Washington, D.C. 20006
Atlanta GA 30309                      (202) 454-2800
(404) 817-8500

                                      *Attorneys for Appellant*
                                      *The Billing Resource dba Integretel*

00280

# Index

9.    Ameded preliminary injunction

10.   Declaration of Steven Lancellotta

11.   Docket sheet, *In re the Billing Resource*, No. 07-bk-52890 (Bankr. N.D. Cal.)

12.   Receiver's opposition to debtor's emergency motion for permission to use cash
      collateral, *In re the Billing Resource*, No. 07-bk-52890 (Bankr. N.D. Cal.)

13.   Email from Laura Kim to opposing counsel, dated September 20, 2007

14.   FTC's emergency motion for clarification regarding applicability of automatic
      stay

15.   Order entered September 20, 2007 declaring action stayed due to bankruptcy

16.   Receiver's emergency motion in support of contempt proceedings

17.   Integretel's initial response to Receiver's initial motion in support of contempt
      proceedings

18.   Order entered September 24, 2007 denying Receiver's emergency motion in
      support of contempt proceedings

19.   Integretel's emergency motion for stay pending appeal

20.   Receiver's initial response to Integretel's emergency motion for stay pending
      appeal

21.   Integretel's reply to Receiver's initial response to Integretel's emergency motion
      for stay pending appeal

22.   Order entered September 26, 2007 "conditionally granting" Integretel's
      emergency motion for stay pending appeal

23.   Stipulation between Integretel and the Receiver regarding agreed temporary
      stay, *In re the Billing Resource*, No. 07-bk-52890 (Bankr. N.D. Cal.)

24.    Order approving stipulation between Integretel and the Receiver regarding agreed temporary stay, *In re the Billing Resource*, No. 07-bk-52890 (Bankr. N.D. Cal.)

25.    Joint motion of Integretel and the Receiver for temporary stay

26.    Integretel's motion for temporary restraining order, *The Billing Resource v. Federal Trade Commission*, No. 07-ap-05156 (Bankr. N.D. Cal.)

27.    Unofficial partial transcript of hearing held on October 2, 2007, *The Billing Resource v. Federal Trade Commission*, No. 07-ap-05156 (Bankr. N.D. Cal.)

00282

Exhibit 9

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### Case No. 06-80180 - CIV-RYSKAMP

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| Plaintiff, | ) |
| vs. | ) **AMENDED PRELIMINARY INJUNCTION ORDER** |
| NATIONWIDE CONNECTIONS, INC., ACCESS ONE COMMUNICATIONS, INC., NETWORK ONE SERVICES, INC., WILLOUGHBY FARR, MARY LOU FARR, YARET GARCIA, ERIKA RIABOUKHA, QAADIR KAID, | ) |
| Defendants. | ) |

FILED by _____ D.C.

SEP 2 5 2006

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B

On February 27, 2006, the Federal Trade Commission ("FTC" or "Commission") filed a Complaint for Injunctive and Other Equitable Relief, including consumer redress, pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), and applied *ex parte* for a Temporary Restraining Order and Other Equitable Relief ("*Ex Parte* Motion"). On that same day, this Court, having considered the Complaint, Memorandum of Points and Authorities, declarations, and other exhibits filed in support of Plaintiff's *Ex Parte* Motion, issued a Temporary Restraining Order, including an asset freeze and appointment of a temporary receiver. A Preliminary Injunction was issued by this Court on March 8, 2006. On August 21, 2006, the FTC filed a Motion to Modify the Preliminary Injunction to include Willoughby Farr and Mary Lou Farr as "Receivership Defendants," and other related modifications.

## FINDINGS OF FACT

The Court has considered the pleadings, declarations, exhibits, and memoranda filed in support of the Commission's motions and finds that:

1. This Court has jurisdiction over the subject matter of this case, and there is good cause to believe that it will have jurisdiction over all parties hereto.

2. There is good cause to believe that Defendants Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., Willoughby Farr, Mary Lou Farr, Yaret Garcia, Erika Riaboukha, and Qaadir Kaid have engaged and are likely to engage in acts or practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and that the Commission has demonstrated a substantial likelihood of prevailing on the merits of this action.

3. There is good cause to believe that immediate and irreparable damage will result from Defendants' ongoing violations of Section 5(a) of the FTC Act.

4. There is a substantial likelihood that, absent the continuation of the asset freeze and the receivership, Defendants will conceal, dissipate, or otherwise divert their assets, and thereby defeat the possibility of effective final relief in the form of equitable monetary relief. Defendants have engaged in the widespread unauthorized billing of collect telephone calls in violation of Section 5 of the FTC Act. Defendants have retained ill-gotten gains from these practices, and a receiver and asset freeze are reasonably necessary in order to preserve the possibility of complete and meaningful relief at the conclusion of this litigation.

5. As a result of Willoughby Farr's and Mary Lou Farr's contumacious conduct since the

2

entry of the Temporary Restraining Order, modification of the Preliminary Injunction to include Willoughby Farr and Mary Lou Farr as "Receivership Defendants" is necessary to prevent the risk of further dissipation of frozen assets.

6.    Weighing the equities and considering the FTC's substantial likelihood of success on the merits, issuance of a preliminary injunction with asset freeze and appointment of a permanent receiver are in the public interest.

7.    Fed. R. Civ. P. 65(c) does not require security of the United States or an officer or agency thereof for the issuance of a restraining order.

## DEFINITIONS

For the purpose of this Preliminary Injunction Order ("Order"), the following definitions shall apply:

A.    "Assets" means any legal or equitable interest in, right to, or claim to any real or personal property of any Defendant, or held for the benefit of any Defendant, wherever located, including, but not limited to, "goods," "instruments," "equipment," "fixtures," "general intangibles," "inventory," "checks," "notes" (as these terms are defined in the Uniform Commercial Code), chattels, leaseholds, contracts, mails, other deliveries, shares of stock, lists of participants, intellectual property, accounts, credits, receivables, cash, and trusts, including, but not limited to, any other trust held for the benefit of any Defendant, any Defendant's minor children, or any Defendant's spouse.

B.    "Defendants" means Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., Willoughby Farr, Mary Lou Farr, Yaret Garcia, Erika Riaboukha, and Qaadir Kaid. Furthermore, any person insofar as he or she is acting in

3

the capacity of an officer, agent, servant, employee or attorney of any defendant, and any

person or entity in active concert or participation with any of the foregoing who receives

actual notice of this Order by personal service or otherwise, is bound to comply with this

Order, whether those persons or entities are acting directly or through a trust, corporation,

subsidiary, division, or other device. *See* Fed. R. Civ. P. 65(d).

C.    "Document" is synonymous in meaning and equal in scope to the usage of the term in

Federal Rule of Civil Procedure 34(a), and includes, but is not limited to, writings,

drawings, graphs, charts, Internet sites, Web pages, Web sites, electronic correspondence,

including e-mail and instant messages, photographs, audio and video recordings,

computer records, whether active or inactive, and any other data compilations from which

information can be obtained and translated, if necessary, through detection devices into

reasonably usable form. A draft or non-identical copy is a separate document within the

meaning of the term.

D.    "Individual Defendants" means Willoughby Farr, Mary Lou Farr, Yaret Garcia, Erika

Riaboukha, and Qaadir Kaid.

E.    "Long Distance Service Provider" means an entity that transports long distance

telephone calls.

F.    "Plaintiff" means the Federal Trade Commission.

G.    "Receiver" shall mean the receiver appointed in Paragraph VIII of this Order. The term

"receiver" also includes any deputy receivers as may be named by the receiver.

H.    "Receivership Defendants" means: (1) Nationwide Connections, Inc., Access One

Communications, Inc., Network One Services, Inc.; (2) the following affiliated entities

4

acting in active concert or participation with them or the Individual Defendants, namely

411TXT, Inc., CELL-INFO-USA, Inc., Enhanced Billing Services, Inc., Toll Free

Connect, Inc., Cripple Creek Holdings, LLC, Built to Last, LLC, Not Fade Away, LLC,

He's Gone, LLC, The Other One, LLC, Turn on Your Love Light, LLC, China Cat

Sunflower, LLC, Lazy River Road Holdings, LLC; (3) any affiliates, fictitious names,

subsidiaries, successors, assigns or d/b/as of the aforementioned entities; (4) Willoughby

Farr; and (5) Mary Lou Farr.

I.    "**TRO**" means the *Ex Parte* Temporary Restraining Order with Asset Freeze and Other

Equitable Relief issued by the Court in this matter on February 27, 2006.

## PROHIBITED BUSINESS ACTIVITIES

### I.

IT IS THEREFORE ORDERED that Defendants, and those persons in active concert or

participation with them who receive actual notice of this Order by personal service or otherwise,

are hereby restrained and enjoined from directly or indirectly misrepresenting, expressly or by

implication, that a consumer is obligated to pay any charge that has not been expressly authorized

by the consumer.

### II.

IT IS FURTHER ORDERED that Defendants are hereby restrained and enjoined from

billing or submitting any charge for billing on a consumer's telephone bill.

## ASSET FREEZE

### III.

IT IS FURTHER ORDERED that Defendants, and those persons in active concert or

5

00287

RER-32    1644

participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from:

A.    Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any funds, real or personal property, accounts, reserve accounts, contracts, consumer lists, shares of stock, or other assets, or any interest therein, wherever located, that are: (1) owned or controlled by any Defendant, in whole or in part, for the benefit of any Defendant; (2) in the actual or constructive possession of any Defendant; or (3) owned, controlled by, or in the actual or constructive possession of any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant, including, but not limited to, Cripple Creek Holdings, LLC, 411TXT, Inc., CELL-INFO-USA, Inc., Enhanced Billing Services, Inc., Toll Free Connect, Inc., and any assets held by or for, or subject to access by, any of Defendants, at any bank or savings and loan institution, or with any broker-dealer, escrow agent, title company, commodity trading company, precious metals dealer, billing aggregator, or other financial institution or depository of any kind;

B.    Opening or causing to be opened any safe deposit boxes titled in the name of any Defendant or any Defendant's minor child or any Defendant's spouse, or subject to access by any of them;

C.    Incurring charges or cash advances on any credit card issued in the name, singly or jointly, of any Defendant;

D.    Obtaining a personal or secured loan; and

E.    Incurring liens or other encumbrances on real property, personal property or other

6

00288

assets in the name, singly or jointly, of any Defendant.

*Provided further*, the assets affected by this Paragraph shall include: (1) all assets of Defendants as of the time the TRO was entered; and (2) for assets obtained after the time the TRO was entered, only those assets of Defendants that are derived from the actions alleged in the Commission's Complaint.

## FINANCIAL REPORTS AND ACCOUNTING

## IV.

**IT IS FURTHER ORDERED** that, to the extent that Defendants have not complied with Section III of the TRO, each Defendant shall immediately:

A.    Prepare and deliver to counsel for the FTC completed financial statements on the forms attached to the TRO as Attachments A and B, for themselves, individually or as corporations, and for each business entity under which they conduct business, or of which they are an officer, and for each trust of which they are a trustee. The financial statements shall be accurate as of the date of entry of the TRO; and

B.    Provide the Commission with a statement, verified under oath and accurate as of the date of entry of the TRO, detailing the name, address, and telephone number for each accountant, financial planner, investment advisor, stock broker, or other person who provided any Defendant with financial, business, or tax advice or services since January 1, 2004.

*Provided further,* the Commission and the Permanent Receiver are immediately authorized to issue subpoenas to demand the production of documents from any person or entity relating to the nature, status, extent, location or other relevant information relating to Defendants' assets, income, and financial records.

7

00289

## FOREIGN ASSET REPATRIATION

### V.

**IT IS FURTHER ORDERED** that, to the extent that Defendants have not complied with Section IV of the TRO, each Defendant shall immediately:

A.    Provide the Commission and the Receiver with a full accounting of all funds, documents, and assets outside of the United States that are: (1) titled in the name, individually or jointly, of any Defendant or the spouse of any Defendant; or (2) held by any person or entity for the benefit of any Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Defendant;

. B.    Transfer to the territory of the United States and deliver to the Receiver all funds, documents, and assets located in foreign countries that are: (1) titled in the name, individually or jointly, of any Defendant or the spouse of any Defendant; or (2) held by any person or entity, for the benefit of any Defendant; or (3) under any Defendant's direct or indirect control, whether jointly or singly; and

C.    Provide the Commission access to all records of accounts or assets of the Defendants held by financial institutions located outside the territorial United States by signing the Consent to Release of Financial Records attached to the TRO as Attachment C.

### INTERFERENCE WITH REPATRIATION

### VI.

**IT IS FURTHER ORDERED** that Defendants, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from taking any action, directly or indirectly, which may result

8

00290

in the encumbrance or dissipation of foreign assets, or in the hindrance of the repatriation required by the preceding Paragraph V of this Order, including but not limited to:

    A.    Sending any statement, letter, fax, e-mail or wire transmission, telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time that all assets have been fully repatriated pursuant to Paragraph V of this Order; and

    B.    Notifying any trustee, protector or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a Court Order, until such time that all assets have been fully repatriated pursuant to Paragraph V of this Order.

## RETENTION OF ASSETS AND RECORDS BY FINANCIAL INSTITUTIONS

### VII.

    IT IS FURTHER ORDERED that any financial or brokerage institution, business entity, or person served with a copy of this Order that holds, controls, or maintains custody of any account or asset of any Defendant, or has held, controlled or maintained custody of any such account or asset at any time since the date of entry of this Order, shall:

    A.    Hold and retain within its control and prohibit the withdrawal, removal, assignment, transfer, pledge, encumbrance, disbursement, dissipation, conversion, sale, or other disposal of any such asset except by further order of the Court;

    B.    Deny the Defendants access to any safe deposit box that is:

        1.    titled in any Defendants' name, individually or jointly; or

        2.    otherwise subject to access by any Defendant;

00291

RER-32    1648

C.     To the extent that such information has not already been provided to the
Commission, provide the Commission's counsel, within five (5) business days of receiving a copy
of this Order, a sworn statement setting forth:

> 1.     the identification number of each such account or asset titled in the name,
> individually or jointly, of a Defendant, or held on behalf of, or for the
> benefit of a Defendant;

> 2.     the balance of each such account, or a description of the nature and value of
> each such asset as of the close of business on the day on which this Order is
> served, and, if the account or other asset has been closed or removed, the
> date closed or removed, the total funds removed in order to close the
> account, and the name of the person or entity to whom such account or
> other asset was remitted; and

> 3.     the identification of any safe deposit box that is titled in the name,
> individually or jointly, of a Defendant, or is otherwise subject to access by a
> Defendant.

D.     Upon request by the Commission, promptly provide the Commission with copies
of all records or other documentation pertaining to each such account or asset, including but not
limited to originals or copies of account applications, account statements, signature cards, checks,
drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or
slips, currency transaction reports, 1099 forms, and safe deposit box logs. Any such financial
institution, account custodian, or other aforementioned entity may arrange for the Commission to
obtain copies of any such records which the Commission seeks.

00292

RER-32     1649

## APPOINTMENT OF PERMANENT RECEIVER

### VIII.

**IT IS FURTHER ORDERED** that David R. Chase of David R. Chase, P.A. is appointed
as Permanent Receiver for the Receivership Defendants. The Receiver shall be the agent of this
Court, and solely the agent of this Court, in acting as Receiver under this Order. The Receiver
shall be accountable directly to this Court. The Receiver shall comply with all Local Rules and
laws governing federal equity receivers.

### RECEIVER'S DUTIES

### IX.

**IT IS FURTHER ORDERED** that the Receiver is authorized and directed to accomplish
the following:

A.      Assume full control of the Receivership Defendants, except as to Receivership
Defendants Willoughby Farr and Mary Lou Farr, by removing, as the Receiver deems necessary or
advisable, any director, officer, independent contractor, employee, or agent of any of the
Receivership Defendants, including any Defendant, from control of, management of, or
participation in, the affairs of the Receivership Defendants;

B.      Take exclusive custody, control, and possession of all assets and documents of, or
in the possession, custody, or under the control of, the Receivership Defendants, wherever
situated. The Receiver shall have full power to divert mail and to sue for, collect, receive, take in
possession, hold, and manage all assets and documents of the Receivership Defendants and other
persons or entities whose interests are now held by, or are under the direction, possession,
custody, or control of, the Receivership Defendants. The Receiver shall assume control over the

11

00293

RER-32      1650

income and profits therefrom and all sums of money now or hereafter due or owing to the

Receivership Defendants. *Provided, however*, that the Receiver shall not attempt to collect any

amount from a consumer if the Receiver believes the consumer was a victim of the unfair or

deceptive acts or practices alleged in the Complaint in this matter, without prior Court approval.

*Notwithstanding the authority of this paragraph*, the Receiver shall not, without further order of

this Court: (1) divert mail addressed to Willoughby Farr or Mary Lou Farr at their residences; or

(2) take control of any bank account opened by Willoughby Farr or Mary Lou Farr after the entry

of the TRO; or (3) take control of those assets of Willoughby Farr or Mary Lou Farr that are both

(a) obtained after the time the TRO was entered, and (b) not derived from the actions alleged in

the Commission's Complaint;

  C. Take all steps necessary to secure each location from which the Receivership

Defendants operate their business. Such steps may include, but are not limited to, any of the

following, as the Receiver deems necessary or advisable: (1) serving this Order; (2) completing a

written inventory of all receivership assets; (3) obtaining pertinent information from all employees

and other agents of the Receivership Defendants, including, but not limited to, the name, home

address, social security number, job description, passwords or access codes, method of

compensation, and all accrued and unpaid commissions and compensation of each such employee

or agent; (4) photographing and video taping any or all portions of the location; (5) securing the

location by changing the locks and disconnecting any computer modems or other means of access

to the computer or other records maintained at that location; and (6) requiring any persons present

on the premises at the time this Order is served to leave the premises, to provide the Receiver with

proof of identification, or to demonstrate to the satisfaction of the Receiver that such persons are

12

not removing from the premises documents or assets of the Receivership Defendants. Law

enforcement personnel, including, but not limited to, police or sheriffs, may assist the Receiver in

implementing these provisions in order to keep the peace and maintain security;

D.    Conserve, hold, and manage all assets of the Receivership Defendants, and perform

all acts necessary or advisable to preserve the value of those assets in order to prevent any

irreparable loss, damage, or injury to consumers or creditors of the Receivership Defendants,

including, but not limited to, obtaining an accounting of the assets and preventing unauthorized

transfer, withdrawal, or misapplication of assets;

E.    · Enter into contracts and purchase insurance as advisable or necessary;

F.    Prevent the inequitable distribution of assets and determine, adjust, and protect the

interests of consumers and creditors who have transacted business with the Receivership

Defendants;

G.    Manage and administer the business of the Receivership Defendants, except any

business entered into by Receivership Defendants Willoughby Farr or Mary Lou Farr after entry of

this Order that does not violate the Prohibited Business Activities set forth in Sections I and II of .

this Order, until further order of this Court by performing all incidental acts that the Receiver

deems to be advisable or necessary, which includes retaining, hiring, or dismissing any

employees, independent contractors, or agents;

H.    Choose, engage, and employ attorneys, accountants, appraisers, and other

independent contractors and technical specialists, as the Receiver deems advisable or necessary in

the performance of duties and responsibilities under the authority granted by this Order;

I.    Have the sole authority to hire legal counsel on behalf of any of the Receivership

13

Defendants, except as to Receivership Defendants Willoughby Farr or Mary Lou Farr;

J.    Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of or exercising the authority granted by this Order. The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Defendants prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure assets of the Receivership Defendants, such as rental payments;

K.    Institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal or foreign courts or arbitration proceedings as the Receiver deems necessary and advisable to preserve or recover the assets of the Receivership Defendants, or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order, including but not limited to, actions challenging fraudulent or voidable transfers;

L.    Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted in the past or in the future against the Receiver in his role as Receiver, or against the Receivership Defendants, as the Receiver deems necessary and advisable to preserve the assets of the Receivership Defendants, or as the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

M.    Continue to conduct the business, or cease operation of the business, of the Receivership Defendants in such manner, to such extent, and for such duration as the Receiver may in good faith deem to be necessary or appropriate to operate the businesses profitably and lawfully, if at all; *provided that*, the continuation and conduct of the business shall be conditioned upon the Receiver's good faith determination that the businesses can be lawfully operated at a

14

profit using the assets of the receivership estate;

N.     Immediately issue subpoenas and conduct discovery, including depositions, to obtain documents, records, and information pertaining to the receivership on behalf of the receivership estate;

O.     Open one or more bank accounts as designated depositories for funds of the Receivership Defendants. The Receiver shall deposit all funds of the Receivership Defendants in such a designated account and shall make all payments and disbursements from the receivership estate from such an account. The Receiver shall serve copies of monthly account statements on all parties;

P.     Maintain accurate records of all receipts and expenditures that he makes as Receiver; and

Q.     Cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency.

## COOPERATION WITH THE RECEIVER

## X.

IT IS FURTHER ORDERED that Defendants and all other persons or entities served with a copy of this Order shall fully cooperate with and assist the Receiver. This cooperation and assistance shall include, but not be limited to, providing information to the Receiver that the Receiver deems necessary in order to exercise the authority and discharge the responsibilities of the Receiver under this Order; providing any password required to access any computer, electronic file, or telephonic data in any medium; and advising all persons who owe money to the Receivership Defendants that all debts should be paid directly to the Receiver. Defendants and

15

00297

those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from directly or indirectly:

    A.    Transacting any of the business of the Receivership Defendants;

    B.    Destroying, secreting, defacing, transferring, or otherwise altering or disposing of any documents of the Receivership Defendants, including, but not limited to, books, records, accounts, writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations, electronically-stored records, or any other papers of any kind or nature;

    C.    Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Defendants, or the Receiver;

    D.    Excusing debts owed to the Receivership Defendants;

    E.    Failing to notify the Receiver of any asset, including accounts, of a Receivership Defendant held in any name other than the name of the Receivership Defendant, or by any person or entity other than the Receivership Defendant, or failing to provide any assistance or information requested by the Receiver in connection with obtaining possession, custody, or control of such assets; and

    F.    Doing any act or refraining from any act whatsoever to interfere with the Receiver managing, or taking custody, control, or possession of, the assets or documents subject to this receivership; or to harass or interfere with the Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of the Receivership

00298

RER-32    1655

Defendants; or to refuse to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any order of this Court.

## DELIVERY OF RECEIVERSHIP PROPERTY

### XI.

. **IT IS FURTHER ORDERED** that:

A.    Immediately upon service of this Order upon them, or within such period as may be permitted by the Receiver, Defendants and any person or entity served with a copy of this Order shall transfer or deliver possession, custody, and control of the following to the Receiver:

    1.    All assets of the Receivership Defendants, except for those assets of Willoughby Farr or Mary Lou Farr that are both (a) obtained after the time the TRO was entered, and (b) not derived from the actions alleged in the Commission's Complaint;

    2.    All documents of the Receivership Defendants, including, but not limited to, books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), client lists, title documents and other papers;

    3.    All assets belonging to members of the public now held by the Receivership Defendants; and

    4. ·    All keys, codes, and passwords necessary to gain or to secure access to any assets or documents of the Receivership Defendants, including, but not limited to, access to their business premises, means of communication,

17

accounts, computer systems, or other property.

B.    In the event any person or entity fails to deliver or transfer any asset or otherwise

fails to comply with any provision of this Paragraph, the Receiver may file *ex parte* an Affidavit

of Non-Compliance regarding the failure.  Upon filing of the affidavit, the Court may authorize,

without additional process or demand, Writs of Possession or Sequestration or other equitable

writs requested by the Receiver.  The writs shall authorize and direct the United States Marshal or

any sheriff or deputy sheriff of any county, or any other federal or state law enforcement officer, to

seize the asset, document, or other thing and to deliver it to the Receiver.

### TRANSFER OF FUNDS TO THE RECEIVER

### XII.

IT IS FURTHER ORDERED that, upon service of a copy of this Order, all banks,

broker-dealers, savings and loans, escrow agents, title companies, commodity trading companies,

precious metals dealers and other financial institutions and depositories of any kind, and all third-

party billing agents, local exchange carriers, common carriers, and other telecommunications

companies shall cooperate with all reasonable requests of the FTC and the Receiver relating to

implementation of this Order, including transferring funds at the Receiver's direction and

producing records related to the assets and sales of the Receivership Defendants.

### COMPENSATION OF RECEIVER

### XIII.

IT IS FURTHER ORDERED that the Receiver and all personnel hired by the Receiver,

including counsel to the Receiver and accountants, are entitled to reasonable compensation for the

performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses

00300

incurred by them, from the assets now held by, in the possession or control of, or which may be received by, the Receivership Defendants. The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of this Order. The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

## PRODUCTION OF RECORDS

### XIV.

IT IS FURTHER ORDERED that, to the extent that Defendants have not complied with Section XIV of the TRO with respect to producing: (1) documents owned by or in the custody or control of the Defendants concerning Defendants' business practices or finances; or (2) computers owned by or in the custody or control of the Defendants that are being used or have been used in connection with Defendants' business practices or finances, which documents or computers were not located at the Defendants' business premises at 215 Fifth Street, Suite 306, West Palm Beach, Florida 33401 during the Immediate Access that took place on March 1, 2006, each Defendant shall immediately identify and produce to the Receiver such documents and computers for copying and inspection. Any such computers shall immediately be powered down (turned off) in the normal course for the operating systems used on such computers and shall not be used until produced for copying and inspection, along with any codes needed for access.

B.     Defendants and all employees or agents of Defendants shall provide the FTC and the Receiver with any necessary means of access to documents and records, including, without limitation, the locations of Defendants' business premises, keys and combinations to locks,

00301

RER-32    1658