temporary receiver permanent.[6]

As the Commission has explained in numerous pleadings before, the Nationwide defendants certainly did not act alone in their flagrant cramming scheme. Integretel and BSG[7] (collectively, "Aggregator defendants") played a pivotal role by, among other things, processing the bogus charges that they claimed consumers were liable to pay. Indeed, but for the Aggregator defendants' contracts with the local phone companies and their active involvement during the course of more than two and a half years of billing, consumers would not have been victimized to the extent that they were.[8]

Accordingly, on September 21, 2006, the FTC filed an Amended Complaint that added both Integretel and BSG as defendants. [DE 255]. As in its original Complaint, the Commission alleges the same two causes of action against all of the defendants: (1) that the defendants deceptively represented that consumers were obligated to pay charges appearing on their telephone bills for collect calls that were never made or authorized; and (2) that the defendants unfairly billed consumers for collect telephone calls that consumers never received or authorized. In late October 2006, the Aggregators filed their Answers, including numerous purported affirmative defenses which the Court has now stricken. [DE 286, 292, 611]. Pursuant to the Court's Order Modifying the Amended Scheduling Order, discovery is set to close on October 5, 2007.

**B.     Contempt Proceeding**

As this Court is aware, Integretel never disclosed to this Court or to the Receiver that it

---

[6] The Court also entered an Amended Preliminary Injunction on September 25, 2006 after a contempt hearing involving defendants Willoughby Farr and Mary Lou Farr. [DE 233]. For purposes of this Motion, the FTC refers to the Amended Preliminary Injunction and the Preliminary Injunction as the "Preliminary Injunction."

[7] BSG includes defendants BSG Clearing Solutions North America, LLC, Billing Concepts, Inc., and ACI Billing Services, Inc.

[8] *See, e.g.*, FTC's Combined Reply to Integretel's Opp. to Receiver's Mot. for OSC, and Opp. to Integretel's Mot. to Stay [DE 399-1] at 3–6.

-3-

was holding more than $1.35 million[9] in Reserve Funds that belonged to two of the Nationwide defendants -- Access One and Network One -- in spite of several provisions of the TRO and Preliminary Injunction that required Integretel to do so. On the contrary, upon being served with the TRO, Integretel sent the FTC an unsworn statement from its President claiming that "no amounts are currently due and owing" to Access One and Network One. [DE 610, p. 2].

 ·  When the Receiver finally learned -- seven months later -- about the Reserve Funds Integretel had been holding, the Receiver filed a Motion for an Order to Show Cause Why Integretel Should Not Be Held in Contempt ("Contempt Motion" or "Contempt Proceeding"). [DE 243]. In response to the Contempt Motion, Integretel filed a 52-page response (not including exhibits), a Motion to Modify Prior Injunctive Orders [DE 294], a Motion to Stay Contract Claims [DE 363], and an appeal of the Preliminary Injunction to the 11th Circuit.[10] The FTC opposed Integretel's motions and filed a reply in support of the Receiver's Contempt Motion. The Court held a lengthy hearing at which two of Integretel's counsel presented argument, and at which the FTC and Receiver both argued in favor of the Contempt Motion.

On Friday, September 14, 2007, this Court issued its Omnibus Order [DE 610], which ordered Integretel to pay the current Reserve Funds immediately to the Receiver and ordered Integretel to show cause in writing within ten days why it should not be held in contempt for failing to turn over the Reserve Funds. The Court also denied Integretel's Motion to Modify and Motion to Stay Contract Claims. In so holding, the Court ruled that the subject Reserve Funds are property of the receivership -- not property belonging to Integretel.

Notwithstanding this Court's determination that the Reserve Funds were receivership assets -- and not Integretel's property -- Integretel has brazenly sought to relitigate these very issues in the  the Bankruptcy Court in the Northern District of California. As described below, however, Integretel has failed to mention that this Court has already decided that the Reserve

---

[9] As of June 30, 2006, the Reserve Funds had grown to $1,762,762.56.

[10] The appeal had been stayed pending this Court's resolution of Integretel's Motion to Modify Prior Injunctive Orders.

-4-

Funds are not part of Integretel's bankruptcy estate.

C.    **Integretel's Attempt to Relitigate the Reserve Issues in Bankruptcy Court**

On Sunday, September 16, 2007, just two days after this Court's Omnibus Order on the Contempt Proceedings, Integretel filed a petition for chapter 11 bankruptcy. Integretel also concurrently filed: (1) an Emergency Motion for Use of Cash Collateral and Granting Replacement Liens ("Cash Collateral Motion") (attached as Exhibit 1); and (2) an Emergency Motion for Order Authorizing Use of Existing Bank Accounts and Cash Management Systems ("Cash Management Motion") (attached as Exhibit 2).

In essence, both motions seek permission to use existing cash collateral and existing bank accounts for the continued operation of Integretel's business. Because Integretel did not separate its clients' reserve funds and instead commingled them with its operating funds, the cash collateral and existing bank accounts at issue include the Reserve Funds that Integretel has been holding and using in violation of the TRO and Preliminary Injunction – the very same funds that were the subject of this Court's Omnibus Order issued on September 14, 2007.

Importantly, however, neither motion attached this Court's Omnibus Order. Furthermore, neither motion disclosed that this Court has already ruled that the $1,762,762.56 in Reserve Funds are receivership assets and therefore not property of Integretel's estate. In spite of this Court's order that Integretel turn over the Reserve Funds immediately to the Receiver, Integretel contends in its bankruptcy filings that "it currently owes nothing to the Receiver." [Exh. 1, p. 9; Exh. 2, p. 7.] Indeed, Integretel claims that "it will ultimately prevail... with respect to amounts which are the subject of and required to be paid under the [Omnibus Order]" as if this Court has not already ruled that the Reserve Funds were property of the receivership estate.

The FTC plans to oppose Integretel's two emergency motions at the hearing that has been noticed for September 21 in San Jose. In the meantime, however, the FTC urges this Court to clarify that the automatic bankruptcy stay does not apply to the prosecution of the FTC's Enforcement Action or the ongoing Contempt Proceeding.

-5-

## ARGUMENT

**II.    NEITHER THIS ACTION NOR THE CONTEMPT PROCEEDING ARE STAYED BY DEFENDANT INTEGRETEL'S BANKRUPTCY FILING**

### A.    This Court Has Jurisdiction to Determine That the Automatic Stay Does Not Apply

As an initial matter, this Court has jurisdiction to determine its own jurisdiction, as well as to decide whether the automatic stay applies to this action or the contempt proceeding pending before the Court. *See U.S. Dep't of Housing & Urban Dev't v. Cost Control Mktg. & Sales Mgmt.*, 64 F.3d 920, 927 n.11 (4th Cir. 1995); *Brock v. Morysville Body Works, Inc.*, 829 F.2d 383 (3d Cir. 1987); *NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 939 (6th Cir. 1986); *In re Baldwin-United Corp. Litigation*, 765 F.2d 343, 347 (2d Cir. 1985); *NLRB v. Evans Plumbing Co.*, 639 F.2d 291 (5th Cir. 1981).

Further, as the *Cost Control* court noted, "because the district court's jurisdiction attached first in time, it was superior." *Id.; see also United States v. Delta Distributors Co., Inc.*, 1996 WL 460112 (June 21, 1996 S.D.W.Va.) (same).

### B.    The FTC's Enforcement Action is Not Stayed

The FTC's prosecution of this action to protect consumers from unfair and deceptive trade practices is excepted from the automatic stay under Bankruptcy Code § 362(b)(4), the governmental regulatory exception to the stay.[11]  11 U.S.C. § 362(b)(4) provides:

> (b) the filing of a petition under section 301, 302, or 303 of this title . . . does not operate as a stay – . . .
> (4) under (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit

---

[11] The exemptions within § 362(b) are effective automatically upon the commencement of the bankruptcy case. By its express terms, the stay of Section 362(a) arises immediately upon the filing of a petition under Section 301, 302 or 303 of the Code, "[e]xcept as provided in subsection (b)." 11 U.S.C. § 362(a) (emphasis added). Thus, the stay does not become effective to the extent provided in those exemptions. *See, e.g., In re Fucilo*, No. 00-36261(CGM), 2002 WL 1008935, at *12 n.6 (Bankr. S.D.N.Y. Jan. 24, 2002); *In re Pincombe*, 256 B.R. 774, 781 (Bankr. N.D. Ill. 2000) (governmental agency is not required to seek relief from the stay before continuing proceedings against a debtor).

00343

RER-33    2195

\* \* \* to enforce such governmental unit's \* \* \* police and regulatory power, including the enforcement of a judgment other than a money judgment \* \* \*."[12]

Thus, to the extent provided in § 362(b)(4), governmental regulatory or police actions are excepted from the automatic stay of:

(1)    the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor . . .;

(2)    the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the [bankruptcy] case . . .;

(3)    any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; . . . [and]

(6)    any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the [bankruptcy] case . . . .

11 U.S.C. § 362(a).

The legislative history expressly states that this exception from the automatic stay applies to suits by the government "to prevent or stop violation of fraud, environmental protection, *consumer protection*, safety, or similar regulatory laws." H.R. Rep. No. 989, 95th Cong., 2d Sess. 52, *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 5838 (emphasis added).

The FTC's Enforcement Action falls squarely within this exception to the automatic stay. Under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), the Commission is authorized to seek injunctive relief against violations of the statutes it enforces whenever it "has reason to believe" that an injunction "would be in the interest of the public." This grant of authority was "designed to enable the Commission to carry out its mandate to protect the public interest through prompt and aggressive enforcement of the laws it administers." 119 Cong. Rec. 21435, 21443 (93d Cong., 1st Sess. June 26, 1973) (Remarks of Senator Henry M. Jackson).

Thus, numerous courts have recognized that actions brought by the FTC under Section 13(b), including actions seeking preliminary injunctive relief and ancillary relief in the form of an asset freeze and receivership, are not subject to the automatic stay. *See, e.g., In re First Alliance Mortgage Co.*, 264 B.R. 634, 647-51 (C.D. Cal. 2001) (reversing the bankruptcy court and

---

[12] Section 362(b)(4) was amended in 1998 by, *inter alia*, combining former subsections (b)(4) and (b)(5). *See SEC v. Brennan*, 230 F.3d 65, 74 (2d Cir. 2000). The case law that developed under former § 362(b)(4) and 362(b)(5) remains as viable guidance in interpreting new Section 362(b)(4). *See* 3 Collier on Bankruptcy ¶ 362.05[5][b] (16th ed. 1999).

-7-

holding that FTC's action to enforce consumer protection and fair lending laws falls within the
§ 362(b)(4) exemption from the stay); *FTC v. American Standard Credit Sys.*, 874 F. Supp.
1080, 1083 (C.D. Cal. 1994); *FTC v. Austin Galleries of Illinois, Inc.*, No. 88 C 3845, 1991 U.S.
Dist. LEXIS 1223, *3 (N.D. Ill. Feb. 5, 1991); *FTC v. R.A. Walker & Assocs., Inc.*, 37 B.R. 608
(D.D.C. 1983). The foregoing authorities are consistent with the principles applied by the
Eleventh Circuit and the courts of appeals generally in actions to enforce regulatory schemes.
*See, e.g., Brock v. Rusco Industries, Inc.*, 842 F.2d 270 (11th Cir. 1988) (automatic stay
inapplicable to action by Secretary of Labor under Fair Labor Standards Act seeking injunction
against debtor's sale of goods); *SEC v. First Financial Group of Texas*, 645 F.2d 429 (5th Cir.
1981) (automatic stay inapplicable to action seeking injunctive relief, asset freeze and
receivership); *CFTC v. Petro Marketing Group, Inc.*, 700 F.2d 1279 (9th Cir. 1983) (automatic
stay inapplicable to action seeking injunctive relief, asset freeze and receivership).

        In addition to injunctive relief, the FTC seeks monetary relief in this action, including
disgorgement, restitution and consumer redress. The dual purposes of deterring unlawful
behavior by making such behavior more expensive and holding violating parties accountable
bring this action squarely within the § 362(b)(4) police and regulatory powers exemption. *See,
e.g., SEC v. Brennan*, 230 F.3d 65, 72 (2d Cir. 2000) ("When the government seeks to impose
financial liability on a party, it is plainly acting in its police or regulatory capacity – it is
attempting to curb certain behavior (such as defrauding investors, or polluting groundwater) by
making the behavior that much more expensive."); *United States v. Nicolet, Inc.*, 857 F.2d 202,
209-10 (3d Cir. 1988); *SEC v. Towers Financial Corp.*, 205 B.R. 27, 31 (S.D.N.Y. 1997)
(disgorgement is an equitable remedy that is merely ancillary to the SEC's scheme of injunctive
remedies and is designed to make securities fraud unprofitable); *In re Bilzerian*, 146 B.R. 871,
873 (Bankr. M.D. Fla. 1992).

        Therefore, § 362(b)(4) of the Bankruptcy Code permits the continuation of this action for
injunctive relief against defendant Integretel and the *entry* of a money judgment against
defendant Integretel.[13]   *See, e.g., NLRB v. 15th Ave. Iron Works, Inc.*, 964 F.2d 1336, 1337 (2d

---

[13] The FTC acknowledges that *enforcement, i.e.,* collection, of any money judgment it
                                                                        (continued...)

00345

Cir. 1992); *NLRB v. Continental Hagen Corp.*, 932 F.2d 828, 832-35 (9th Cir. 1991); *NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 942-43 (6th Cir. 1986); *EEOC v. Rath Packing Co.*, 787 F.2d 318, 326-27 (8th Cir. 1986); *Penn Terra Ltd. v. Dept. of Environmental Resources*, 733 F.2d 267, 275 (3d Cir. 1984); *In re Bilzerian*, 146 B.R. 871, 873 (Bankr. M.D. Fla. 1992).[14]

## C.    The Contempt Proceeding Is Not Stayed

The Contempt Proceeding, including the enforcement of this Court's Order requiring Integretel to turnover the Reserve Funds to the Receiver, is not stayed by Integretel's bankruptcy filing for three reasons.

First, with respect to acts involving property, the automatic stay applies solely to protect property of the bankruptcy estate or property of the debtor. *See* 11 U.S.C. § 362(a)(2) (enforcement of a pre-petition judgment against the debtor or property of the estate); 362(a)(3) (act to obtain possession of or control property of the estate or property from the estate); 362 (a)(4) (act to enforce a lien against property of the estate); 362(a)(5) (act to enforce lien against property of the debtor). Subject to certain exceptions not relevant herein, property of the bankruptcy estate consists of "interests of the debtor in property *as of the commencement of the case.*" 11 U.S.C. § 541(a)(1) (emphasis added). Because this Court ruled – before Integretel filed its bankruptcy petition – that the Reserve Funds are property of the Receivership Estate, by definition that property is neither property of the "bankruptcy estate" nor the debtor, Integretel. Therefore, the Contempt Proceeding is not stayed by § 362(a).

Second, the § 362(b)(4) exception also applies to civil contempt proceedings brought by a governmental unit in the exercise of its police or regulatory powers. *See SEC v. Bilzerian*, 131 F. Supp. 2d 10 (D.D.C. 2001) (finding that the civil contempt proceeding fell within the § 362(b)(4) exemption, the court incarcerated the debtor after he failed to provide financial information required by purgation provisions of prior disgorgement order); *NLRB v. Sawulski*, 158 B.R. 971, 978 (E.D. Mich. 1993) ("pursuant to § 362(b)(4), this Court may continue the contempt

---

[13] (...continued)
obtains in this case against defendant Integretel falls outside the § 362(b)(4) exception.

[14] Notwithstanding Integretel's apparent position that the automatic stay applies to this Enforcement Action, Integretel has continued to conduct discovery in this case, including taking two of its own depositions and participating in three others since its bankruptcy filing.

-9-

proceeding initiated by the NLRB for [the debtor's] noncompliance with the [National Labor Relations Act]."). Although the Contempt Proceeding at issue here was initiated by the Receiver, the Receiver is enforcing the Amended Preliminary Injunction obtained by the FTC pursuant to the agency's exercise of its regulatory enforcement powers, and in doing so the Receiver is acting in his capacity as an agent of this United States District Court. [DE 233, ¶ 8] Moreover, the FTC effectively joined the Receiver's motion by filing a response in support thereof. [DE 399]. Accordingly, the Contempt Proceeding is also exempt from the automatic stay pursuant to Bankruptcy Code § 362(b)(4).

Third, regardless of whether § 362(b)(4) applies, Integretel's bankruptcy filing does not stay the Contempt Proceeding because it does not deprive this Court of its inherent power to enforce the integrity of its orders and take steps necessary to ensure that defendant Integretel complies with its orders. "[C]ontempt orders to uphold the dignity of the court are excepted from the automatic stay." *NLRB v. Sawulski*, 158 B.R. 971, 975 (E.D. Mich. 1993); *see also SEC v. Wolfson*, 309 B.R. 612, 620 (D. Utah 2004); *U.S. Sprint Communications Co. v. Buscher*, 89 B.R. 154, 157 (D. Kan. 1988); *Guariglia v. Community Nat'l Bank & Trust Co.*, 382 F. Supp. 758, 761 (E.D.N.Y. 1974), *aff'd*, 516 F.2d 896 (2d Cir. 1975) (decided under the former Bankruptcy Act of 1898); *In re Montana*, 185 B.R. 650, 652 (Bankr. S.D. Fla. 1995) (Cristol, C.J.); *accord In re Gedeon*, 31 B.R. 942, 946 (Bankr. D. Colo. 1983) (court held that civil contempt fine "imposed to uphold the dignity of the court" is nondischargeable under Section 523 of the Code); *In re Marini*, 28 B.R. 262, 265 (Bankr. E.D.N.Y. 1983) (same).

The *Wolfson* case is particularly instructive. In that civil securities fraud case, the defendants filed for bankruptcy literally four hours before a district court hearing on a civil contempt motion filed by the SEC against the defendants. The SEC sought the return of funds taken by the defendants in violation of the district court's order freezing defendants' assets. After concluding that the SEC's prosecution of the underlying securities fraud action was excepted from the automatic stay pursuant to § 362(b)(4) of the Bankruptcy Code, the court, citing a string of analogous cases, held that "[i]nherent in this conclusion is the determination that the civil contempt proceeding against [defendant] is not stayed." 309 B.R. at 320.

Accordingly, contrary to the sweeping and unsubstantiated "Notice of Bankruptcy" filed by Integretel, the commencement of Integretel's bankruptcy case does not stay either the pending

00347

Contempt Proceeding against Integretel, including the turnover order, or the FTC's prosecution of this consumer protection action against Integretel.

## IV.    CONCLUSION

For the foregoing reasons, the FTC urges this Court to clarify that the automatic bankruptcy stay does not apply to the prosecution of the FTC's case in chief to the point of judgment or the prosecution of the Contempt Proceeding. Because the Bankruptcy Court has scheduled a hearing for September 21, 2007 at 1:30 p.m. PST, the Commission seeks emergency relief.

Dated:  September 20, 2007

Of Counsel:

MICHAEL MORA
Federal Trade Commission
600 Pennsylvania Ave., NW
Washington, DC  20580
(ph) 202-326-3373
(fax) 202-326-2558

Respectfully Submitted,

LAURA KIM (A550099)
lkim@ftc.gov
COLLOT GUERARD (A5500480)
cguerard@ftc.gov
RICHARD McKEWEN (A5501046)
rmckewen@ftc.gov
ROBERT SCHOSHINSKI (A5500684)
rschoshinski@ftc.gov

Federal Trade Commission
600 Pennsylvania Ave., NW, H-286
Washington, DC  20580
(ph) 202-326-3734 (Kim)/202-326-3338 (Guerard)
202-326-3071 (McKewen)/202-326-3219 (Schoshinski)
(fax) 202-326-3395

ATTORNEYS FOR PLAINTIFF
FEDERAL TRADE COMMISSION

### Statement Pursuant to Local Rule 7.1.A.3

Counsel for the FTC attempted to resolve this matter in good faith with Integretel but was unable to do so prior to filing this motion.

Laura Kim

-11-

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2007, I served the foregoing document on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via email or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

LAURA KIM

## SERVICE LIST
### Case No. 06-80180 - CIV-RYSKAMP/VITUNAC

Mark D. Johnson, Esq.
markdjohnsonpa@bellsouth.net
10 Central Pkwy., Ste. 210
Stuart, FL 34994
Telephone: 772-223-7700
Facsimile: 772-223-1177
*Attorney for Defendants Yaret Garcia,*
*Qaadir Kaid, and Erika Riaboukha*

Willoughby Farr
DC # 653974
Avon Park Correctional Institution
P.O. Box 1100
County Road 64 East
Avon Park, FL 33826-1100
*pro se Defendant*
*(by U.S. Mail)*

Mary Lou Farr
c/o James Stonehill
1006 Churchill Circle South
West Palm Beach, FL 33405
Telephone: 561-582-2876
*pro se Defendant*
*(by Federal Express)*

Andrew G. Berg, Esq.
agberg@kslaw.com, kdinan@kslaw.com,
ctapie@kslaw.com, tgoldman@kslaw.com,
jthomas@kslaw.com, jpollack@kslaw.com
King & Spalding LLP
1700 Pennsylvania Ave., NW
Washington, DC 20006
Telephone: 202-626-2924
Facsimile: 202-626-3737
*Attorney for Defendants BSG Clearing*
*Solutions, North America, LLC,*
*ACI Billing Services, Inc., d/b/a OAN, and*
*Billing Concepts, Inc.*

Jeffrey Schneider, Esq.
JCS@tewlaw.com
Tew Cardenas LLP
Four Seasons Tower, 15th Fl.
1441 Brickell Ave.
Miami, FL 33131-3407
Telephone: 305-539-2481
Facsimile: 305-536-1116
*Attorney for Receiver David R. Chase*

Steven E. Siff, Esq.
Ssiff@mwe.com
Maustin@mwe.com
McDermott Will & Emory LLP
201 S. Biscayne Blvd., Ste. 2200
Miami, FL 33131
Telephone: 305-358-3500
Facsimile: 305-347-6500
*Attorney for Defendants BSG Clearing*
*Solutions, North America, LLC,*
*ACI Billing Services, Inc., d/b/a OAN, and*
*Billing Concepts, Inc.*

Derick J. Rodgers
drodgers@lawdcm.com
Davis Cedillo & Mendoza Inc
McCombs Plaza Suite 500
755 E Mulberry Avenue
San Antonio, TX 78212
Telephone: 210-822-6666
Fax: 210-822-1151
*Attorney for Defendants BSG Clearing*
*Solutions, North America, LLC,*
*ACI Billing Services, Inc., d/b/a OAN, and*
*Billing Concepts, Inc.*

## SERVICE LIST
### Case No. 06-80180 - CIV-RYSKAMP/VITUNAC

**Michael Woodbury, Esq.**
michael.woodbury@woodbury-santiago.com
Woodbury & Santiago, P.A.
Two Datran Center - Penthouse 1A
9130 South Dadeland Boulevard
Miami, FL 33156
Telephone: 305-669-9570
Facsimile: 305-669-8616
*Attorney for Grunspan Trust, et al.*

**Chad A. Dean, Esq.**
chad@schuylaw.com
118 W. Adams St., #800
Jacksonville, FL 32202
Telephone: 904-353-5884
Facsimile: 904-353-5994
*Attorney for Primus Automotive*
*Financial Services and Ford Motor Credit*
*Co.*

**Thomas G. Long, Esq.**
tlong@barnettbolt.com
hwanders@barnettbolt.com
Barnett, Bolt, Kirkwood, Long
601 Bayshore Blvd., Ste 700
Tampa, FL 33606
Telephone: 813-253-2020
Facsimile: 813-251-6711
*Attorney for BMW Financial Services*

**Michael David McDonough, Esq.**
12798 Forrest Hill Boulevard
Wellington, FL 33414
Telephone: 561-791-0590
*Attorney for Third Party Defendants/Cross*
*Defendants German Miranda, Jesus Sandoval*
*(by Federal Express)*

**Richard Gordin, Esq.**
rgordin@tighepatton.com
slancellotta@tighepatton.com
ngoldfarb@tighepatton.com
Tighe Patton Armstrong Teasdale, PLLC
1747 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: 202-565-2881
Facsimile: 202-454-2805
*Attorney for Defendant The Billing Resource,*
*d/b/a Integretel*

**Martin John Alexander**
marty.alexander@hklaw.com
scott.newman@hklaw.com
Holland & Knight
222 Lakeview Avenue, Suite 1000
West Palm Beach, FL 33401
Telephone:  561-650-8036
Facsimile: 561-650-8399
*Attorney for Defendant The Billing Resource,*
*d/b/a Integretel*

**Rosanne Brady, Esq.**
Rosanne@macalusolaw.com
peter@macalusolaw.com
The Law Office of Peter N. Macaluso
3302 N. Tampa Street
Tampa, FL 33603
Telephone: 813-251-2831
Facsimile: 813-228-7004
*Attorney for Third Party Defendant/Cross*
*Defendant Ronny Morillo*

**Jessy Mendoza**
6117 Blue Grass Circle
Lake Worth, FL 33463
*Third Party Defendant*
*(by Federal Express)*

# Exhibit 15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-80180-CIV-RYSKAMP/VITUNAC.

FEDERAL TRADE COMMISSION,

     Plaintiff,

v.

NATIONWIDE CONNECTIONS, INC., ET AL.,

     Defendants.

_____/

## ORDER STAYING PROCEEDINGS AGAINST DEFENDANT THE BILLING RESOURCE, D/B/A INTEGRETEL

THIS CAUSE comes before the Court pursuant to the Notice of Bankruptcy, filed

September 17 , 2007 **[DE 612]**. Defendant The Billing Resource, d/b/a Integretel, indicates that

it filed a petition for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code in

the United States Bankruptcy Court, Northern District of California, San Jose Division, Case No.

07-52890. Accordingly, the instant action against The Billing Resource, d/b/a Integretel, is

subject to the automatic stay set forth in 11 U.S.C. § 362. The automatic stay granted by 11

U.S.C. § 362(a) will remain in effect until the bankruptcy case is dismissed or closed, or until

such earlier times as set forth in 11 U.S.C. § 362(c), (d), (e) or (f).

DONE AND ORDERED at Chambers in West Palm Beach, Florida this 20th day of

September, 2007.

                                      S/Kenneth L. Ryskamp
                                      KENNETH L. RYSKAMP
                                      UNITED STATES DISTRICT JUDGE

# Exhibit 16

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 06-80180-CIV-RYSKAMP

FEDERAL TRADE COMMISSION,

        Plaintiff,

v.

NATIONWIDE CONNECTIONS, INC.,
ACCESS ONE COMMUNICATIONS, INC.,
NETWORK ONE SERVICES, INC.,
WILLOUGHBY FARR,
MARY LOU FARR,
YARET GARCIA,
ERIKA RIABOUKHA,
QAADIR KAID,

BILLING CONCEPTS, INC.,
ACI BILLING SERVICES, INC., d/b/a OAN,
BSG CLEARING SOLUTIONS NORTH
AMERICA, LLC, and
THE BILLING RESOURCE,
d/b/a INTEGRETEL

        Defendants.

_____/

## RECEIVER'S EMERGENCY MOTION IN FURTHERANCE OF
## PENDING CONTEMPT PROCEEDING; MEMORANDUM OF LAW

David R. Chase, as Court-appointed receiver (the "Receiver"), respectfully requests that this

Court issue an Order, on an emergency basis, requiring that Defendant, The Billing Resource, d/b/a

Integretel ("Integretel"), wire transfer before 5:00 p.m., Eastern Standard Time, on Tuesday,

September 25, 2007, the $1,762,762.56 in reserve funds that this Court has specifically ordered

Integretel to "immediately" transfer to the Receiver, absent which Integretel's designed control

person, Ken Dawson, should be ordered to appear before this Court in person on September 26,

2007. Without this relief, as set forth more fully below, it is possible that the Bankruptcy Judge presiding over Integretel's Bankruptcy Case will allow Integretel, as early as September 27, 2007, to begin spending the funds that this Court has already ruled are "property of the receivership estate" that must be "immediately" transferred to the Receiver. *See* Order Granting Motion for Clarification as to Scope of Stay, at p. 1.

## INTRODUCTION

Despite the clear, unambiguous, and unequivocal directives contained in this Court's Omnibus Order dated September 13, 2007 [D.E. 610] and Order Granting Motion for Clarification as to Scope of Stay dated September 21, 2007 [D.E. 619], Integretel still refuses to transfer the $1,762,762.56 in reserve funds to the Receiver. Instead, Integretel has just filed – in its California Bankruptcy Case – a Complaint for Declaratory Relief, Temporary Restraining Order, and Preliminary Injunction against the Receiver (the "California Complaint"). A copy of Integretel's California Complaint is attached as Exhibit A. In its California Complaint, Integretel seeks to re-litigate every issue that has already been litigated before this Court, decided in the Omnibus Order, and reinforced in the Order Granting Motion for Clarification as to Scope of Stay.

For example, Integretel alleges in its California Complaint, just like it argued before this Court, that it "had no obligation to pay any funds to the Receiver . . . ." Complaint, at ¶ 34; *see also* ¶¶ 18-24 (Exhibit A). Integretel alleges in its California Complaint, just like it argued before this Court, that it "did not hold any specific funds allocable to reserves . . . ." *Id.* Integretel alleges in its California Complaint, just like it argued before this Court, that it "treated [the reserves] solely as balance sheet entries . . . ." *Id.* And Integretel alleges in its California Complaint, just like it argued before this Court, that the Receiver is nothing more that a "a general, unsecured creditor." *Id.*

2

Nowhere in Integretel's California Complaint does Integretel inform the Bankruptcy Court that this Court rejected these precise arguments. Nowhere in Integretel's California Complaint does Integretel inform the Bankruptcy Court that this Court found that the reserve funds are property of the Receivership Estate and not Integretel's property. And nowhere in Integretel's Complaint does Integretel attach copies of this Court's prior Orders. This is an outrage. The Receiver is now going to have to defend the California Complaint, which is going to further increase the attorneys' fees associated with Integretel's contumacious conduct.

But the California Complaint is just Integretel's way to distract attention from its real plan. Integretel's real plan is to spend the Receivership Estate's reserve funds – under the guise of its "Emergency" Motion for Use of Cash Collateral – before all of these issues are hashed out. And the most surprising part about this entire saga is that the Bankruptcy Judge presiding over Integretel's Bankruptcy Case is actually contemplating permitting it.

As this Court knows from the Federal Trade Commission's (the "FTC") Motion for Clarification That the Automatic Stay Does Not Apply to the FTC's Law Enforcement Action and the Ongoing Contempt Proceeding [D.E. 618], the Bankruptcy Court conducted a hearing on Friday, September 21, 2007, on Integretel's "Emergency" Motion for Use of Cash Collateral.[1] Despite having a copy of this Court's Order Granting Motion for Clarification as to Scope of Stay – which, in fact, was handed to Integretel's counsel by the Bankruptcy Judge himself at the beginning of the

---

[1] Integretel also failed to advise the California Bankruptcy Court in its Motion for Use of Cash Collateral that this Court had already ruled that the $1,762,762.56 million in reserve funds are property of the Receivership Estate and not Integretel's property. Integretel also did not attach a copy of this Court's Omnibus Order to its Motion for Use of Cash Collateral . The Receiver engaged bankruptcy counsel in California on an emergency basis to oppose Integretel's Motion and to advise the Bankruptcy Court of this Court's Orders. The Receiver will file, under separate cover, the papers that his California bankruptcy counsel filed in Bankruptcy Court.

3

hearing – Integretel nevertheless argued that it need not transfer the reserve funds to the Receiver and the Bankruptcy Judge is apparently considering supporting that decision. The Bankruptcy Judge has required that additional briefs be filed and served on Monday, September 24, 2007. The Bankruptcy Judge has reschedued the hearing on the Motion for Use of Cash Collateral for Wednesday, September 26, 2007, at 2:15 p.m., Pacific Time. A copy of the Notice of Continued Hearing is attached as Exhibit B.

Needless to say, if Integretel's "Emergency" Motion for Use of Cash Collateral is granted, Integretel will begin to deplete the funds that this Court has unequivocally ruled are "property of the receivership estate" that must be "immediately" transferred to the Receiver. *See* Order Granting Motion for Clarification as to Scope of Stay, at p. 1. Integretel reported in its bankruptcy filings that it had "beginning available cash" of only $1,945,598 as of the commencement of its Bankruptcy Case; this amount *included* the $1,762,762.56 in reserve funds. Integretel's attorneys stated at the cash collateral hearing that Integretel's payroll was due on Thursday, September 27, 2007. That is why the Bankruptcy Judge rescheduled the hearing on Integretel's "Emergency" Motion for Use of Cash Collateral for Wednesday, September 26, 2007.

In short, and as difficult as this may be to believe, this Court's clear directive commanding Integretel to "immediately" transfer the reserve funds to the Receiver is not working. Integretel continues to ignore this Court's Orders. So something more is apparently needed, and it is needed before Integretel receives permission from the Bankruptcy Judge to begin spending the Receivership Estate's reserve funds.

Accordingly, the Receiver respectfully requests that this Court – in furtherance of the pending contempt proceeding – order Integretel to comply with this Court's Temporary Restraining Order

4

("TRO") [D.E. 18], Amended Preliminary Injunction [D.E. 223], Omnibus Order, and Order

Granting Motion for Clarification as to Scope of Stay, on an emergency basis, by requiring Integretel

to wire transfer the reserve funds that are property of this Receivership Estate – $1,762,762.56 – to

the Receiver before 5:00 p.m., Eastern Standard Time, on Tuesday, September 25, 2007, absent

which Integretel's designated control person, Ken Dawson, should be ordered to appear before this

Court in person on September 26, 2007.[2]

## MEMORANDUM OF LAW

This Court has already specifically ruled – not once, but twice – that the reserve funds are

property of this Receivership that must immediately be turned over to the Receiver. This Court has

also ruled that Integretel's bankruptcy filing does not stay this contempt proceeding and does not

deprive this Court of its inherent power to enforce the integrity of its own orders. *See* Order

Granting Motion for Clarification as to Scope of Stay, at p. 4. But something more is needed,

because Integretel still refuses to transfer the reserve funds to the Receiver.

In *US Sprint Commc'ns Co. v. Buscher*, 89 B.R. 154 (D. Kan. 1988), the Court held that:

> It is within this court's inherent power to take whatever steps are
> necessary to ensure those persons within its power comply with its
> orders. The court cannot conceive that Congress intended to strip the
> court of this power, and instead **permit a party to blatantly violate**

---

[2] Mr. Dawson, incidentally, is Integretel's President who mislead the FTC in response to
this Court's TRO by submitting a letter that indicated that "no amounts are currently due and
owing" when, in fact, Integretel was holding, at that time, over $1.35 million in reserves. *See*
Omnibus Order, at p. 1. Mr. Dawson also submitted the declaration to the Bankruptcy Court in
support of Integretel's "Emergency" Motion for Use of Cash Collateral that failed to mention that
the "cash" that Integretel was trying to use had already been determined by this Court to be
property of this Receivership Estate. Like the Motion for Use of Cash Collateral itself, Mr.
Dawson's declaration to the Bankruptcy Court also failed to attach a copy of this Court's
Omnibus Order. Finally, Integretel has sought permission in the Bankruptcy Court to designate
Mr. Dawson as Integretel's "designated responsible individual."

5

> **direct orders of the court and then seek shelter from a bankruptcy judge.** If this were so, the court's orders could be rendered almost meaningless. The court must retain the ability to compel compliance with its orders; a party seeking relief from his creditors is **not free to run rampant in flagrant disregard of the powers of the court.**

*Id.* at 156 (emphasis added).

This Court should not permit Integretel to "blatantly violate direct orders of [this Court] and then seek shelter from a bankruptcy judge." *See id.* This Court should not allow Integretel "to run rampant in flagrant disregard of the powers of [this Court]." *See id.* Integretel cannot "seek shelter" in the California Bankruptcy Court from this Court's TRO, Amended Preliminary Injunction, Omnibus Order, and Order Granting Motion for Clarification as to Scope of Stay. *See id.* And because this is a contempt proceeding in which this Court is upholding its dignity and vindicating its authority to enforce its Orders, this Court has the power to ensure that Integretel *immediately* transfers the reserve funds to the Receiver before they are depleted.

## CONCLUSION

Before Integretel dupes the California Bankruptcy Court into thinking that this Court did not mean what it said when it ruled that the $1,762,762.56 in reserve funds were property of the Receivership that must be immediately turned over, the Receiver respectfully requests that this Court enter an Order in furtherance of these contempt proceedings and this Court's prior Orders, on an emergency basis, requiring Integretel to wire transfer the reserve funds to the Receiver, who will keep such funds in a segregated Receivership account, before 5:00 p.m., Eastern Standard Time, on Tuesday, September 25, 2007, absent which Integretel's designated control person, Ken Dawson,

6

should be ordered to appear before this Court in person on September 26, 2007.[3]

Dated: September 24, 2007.

Respectfully submitted,

**TEW CARDENAS LLP**
Counsel for David R. Chase, Receiver [4]
Four Seasons Tower, 15th Floor
1441 Brickell Avenue
Miami, Florida 33131
Telephone: 305.536.1112
Facsimile: 305.536.1116

By: _____
    **Jeffrey C. Schneider, P.A.**
    Florida Bar No. 933244
    E-mail: jcs@tewlaw.com
    **Patrick J. Rengstl, Esq.**
    Florida Bar No. 0581631
    E-mail: pjr@tewlaw.com

@PFDesk:top\::ODMA/MHODMA/DMS_NT;Miami;493612;1

---

[3] Rather than identify the wire transfer instructions in this Motion, the Receiver will provide them to Integretel's counsel by electronic mail.

[4] The Receiver was appointed to take control of the assets of Willoughby Farr and Mary Lou Farr, and serve as receiver for Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., 411TXT, Inc., CELL-INFO-USA, Inc., Enhanced Billing Services, Inc., Toll Free Connect, Inc., Cripple Creek Holdings, LLC, Built to Last, LLC, Not Fade Away, LLC, He's Gone, LLC, The Other One, LLC, Turn on Your Love Light, LLC, China Cat Sunflower, LLC, and Lazy River Road Holdings, LLC.

7

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on September 24, 2007, we electronically filed the foregoing

document with the Clerk of the Court using CS/ECF. We also certify that the foregoing document

is being served this day on all counsel of record or pro se parties identified on the attached Service

List in the manner specified, either via transmission Notices of Electronic Filing generated by

CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to

receive electronically Notices of Electronic Filing.

By:_____

JEFFREY C. SCHNEIDER, P.A.

@PFDesktop\::ODMA/MHODMA/DMS_NT;Miami;493612;1

8

*FTC v. NCI, et al*

Case No. 06-80180-CIV-RYSKAMP

## SERVICE LIST

**David R. Chase, Receiver**
David R. Chase, Receiver
1700 East Las Olas Boulevard
Penthouse 2
Fort Lauderdale, Florida 33301
Telephone: 954.920.7779
david@davidchaselaw.com

**Laura Kim, Esquire**
**Michael Davis, Esquire**
**Collot Guerard, Esquire**
**Richard McKewen, Esq.**
Federal Trade Commission
600 Pennsylvania Avenue NW
Room H-238
Washington, DC 20580
Telephone: 202.326.3734
Facsimile: 202.326.3395
lkim@ftc.gov
mdavis@ftc.gov
cguerard@ftc.gov
rmckewen@ftc.gov

**Robert Carey, Deputy Receiver**
6278 North Federal Highway
Number 418
Fort Lauderdale, Florida 33308
Telephone: 305.666.4663
careyrg@comcast.net

**Mark D. Johnson, Esquire**
*Counsel for Defendants Qaadir Kaid, Yaret Garcia, and Erika Riaboukha*
Mark D. Johnson, P.A.
10 Central Parkway
Suite 210
Stuart, Florida 34994
Telephone: 772.223.7700
Facsimile: 772.223.1177
markdjohnson@bellsouth.net

**Robert M. Weinberger, Esquire**
Cohen, Norris, Scherer, Weinberger & Wolmer
*Counsel for Creditor Denise McCann*
712 U.S. Highway 1
Suite 400
North Palm Beach, Florida 33408
Telephone: 561.844.3600
Facsimile: 561.842.4104
rmw@fcohenlaw.com

**Steven E. Siff, Esquire**
*Counsel for BSG Clearing Solutions, North America, LLC, ACI Billing Services, Inc., d/b/a OAN and Billing Concepts, Inc.*
McDermott Will & Emery, LLP
2200 Miami Center
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone: 305.358.3500
Facsimile: 305.347.6500
ssiff@mwe.com
maustin@mwe.com

9

**Thomas G. Long, Esquire**
**Hildegund P. Wanders, Esquire**
Barnett Bolt Kirkwood Long & McBride
*Counsel for BMW Financial Services NA,LLC*
601 Bayshore Boulevard
Suite 700
Tampa, Florida 33606
Telephone: 813.253.2020
Facsimile: 813.251.6711
tlong@barnettbolt.com
hwanders@barnettbolt.com

**Henry W. Johnson, Esquire**
*Counsel for John J. Smith*
Johnson, Zippay & Walters, P.A
1401 North University Drive, Suite 301
Coral Springs, Florida 33701
Telephone: 954.755.9880
Facsimile: 954.755.9899
*Via U.S. Mail*

**Richard Gordin, Esquire**
**Steven A. Lancellotta, Esquire**
Tighe Patton Armstrong Teasdale, PLLC
*Counsel for The Billing Resource d/b/a*
*Integretel*
1747 Pennsylvania Avenue, N.W.
Third Floor
Washington, D.C. 20006-4604
Telephone: 202.565.2881
Facsimile: 202.454.2805
rgordin@tighepatton.com
slancellotta@tighepatton.com
ngoldfarb@tighepatton.com

**Michael Woodbury, Esquire**
*Counsel for Grunspan Trust, et al*
Woodbury & Santiago, P.A.
Two Datran Center - Penthouse 1A
9130 South Dadeland Boulevard
Miami, Florida 33156
Telephone: 305.669.9570
Facsimile: 305.669.8616
michael.woodbury@woodbury-
santiago.com

**Jeffrey C. Schneider, Esquire**
*Counsel for David R. Chase, Receiver*
Tew Cardenas LLP
Four Seasons Tower, 15th Floor
1441 Brickell Avenue
Miami, Florida 33131
Telephone: 305.536.1112
Facsimile: 305.536.1116
jcs@tewlaw.com
mtv@tewlaw.com

**Martin J. Alexander, Esquire**
**Scott B. Newman, Esquire**
*Counsel for The Billing Resource d/b/a*
*Integretel*
Holland & Knight LLP
222 Lakeview Avenue, Suite 1000
West Palm Beach, Florida 33401
Telephone: 561.650.8036
Facsimile: 561.650.8399
marty.alexander@hklaw.com
scott.newman@hklaw.com

10

00362

RER-33    2214

**Andrew G. Berg, Esquire**
**Carolyn Tapie, Esquire**
*Counsel for BSG Clearing Solutions, North*
*America, LLC, ACI Billing Services, Inc., d/b/a*
*OAN and Billing Concepts, Inc.*
King & Spalding LLP
1700 Pennsylvania Avenue, NW
Washington, DC 20006-4706
Telephone: 202.626.2924
Facsimile: 202.626.3737
aberg@kslaw.com
ctapie@kslaw.com

**Mary Lou Farr**
*Pro Se Defendant*
1006 Churchill Circle South
West Palm Beach, Florida 33405
Telephone: 561.582.2876
*(Via U.S. Mail)*

**Willoughby Farr**
*Pro Se Defendant*
Century Correctional Institution
Willoughby Farr, Inmate Number 653974
400 Tedder Road
Century, Florida 32535-3659
*(Via U.S. Mail)*

**Jeffrey K. Rehfeld, Esq.**
**Michael H. Ahrens, Esq.**
**Geraldine A. Freeman, Esq.**
**Ori Katz, Esq.**
*Counsel for The Billing Resource d/b/a*
*Integregel*
Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4106
*(Via U.S. Mail)*

11

# EXHIBIT A

1   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
        A Limited Liability Partnership
2       Including Professional Corporations
    MICHAEL H. AHRENS, Cal. Bar No. 44766
3   STEVEN B. SACKS, Cal. Bar No. 98875
    JEFFREY K. REHFELD, Cal. Bar No. 188128
4   ORI KATZ, Cal. Bar No. 209561
    Four Embarcadero Center, 17th Floor
5   San Francisco, California  94111-4106
    Telephone:    415-434-9100
6   Facsimile:    415-434-3947
    email: mahrens@sheppardmullin.com
7
    Proposed Attorneys for The Billing Resource, dba
8   Integretel

9                      UNITED STATES BANKRUPTCY COURT

10                     NORTHERN DISTRICT OF CALIFORNIA

11                          [SAN JOSE DIVISION]

12   | In re | Case No. 07-052890 |
13   | | |
     | THE BILLING RESOURCE, dba | Chapter 11 |
14   | INTEGRETEL, a California corporation, | |
15   |               Debtor. | |
16   | Tax ID: 33-0289863 | |
17   | THE BILLING RESOURCE, dba | Adv. Proc. No. _____ |
18   | INTEGRETEL, a California corporation, | |
     |               Plaintiff, | **COMPLAINT FOR DECLARATORY** |
19   | | **RELIEF, TEMPORARY RESTRAINING** |
     |         v. | **ORDER, AND PRELIMINARY** |
20   | | **INJUNCTION** |
21   | FEDERAL TRADE COMMISSION, and | |
     | DAVID R. CHASE, not individually, but | |
22   | solely in his capacity as receiver for | |
     | Nationwide Connections, Inc., Access One | |
23   | Communications, Inc., Network One Services, | |
     | Inc., 411TXT, Inc., CELL-INFO-USA, INC., | |
24   | Enhanced Billing Services, Inc., Toll Free | |
     | Connect, Inc., Cripple Creek Holdings, LLC, | |
25   | Built to Last, LLC, Not Fade Away, LLC, He's | |
     | Gone, LLC, The Other One, LLC, Turn on | |
26   | Your Love Light, LLC, China Cat Sunflower, | |
     | LLC, Lazy River Road Holdings, LLC, | |
27   |               Defendant. | |
28

W02-WEST:FJR\400435989.3

COMPLAINT FOR DECLARATORY RELIEF,
TEMPORARY RESTRAINING ORDER, AND
PRELIMINARY INJUNCTION

00365

RER-33         2217

1   The Billing Resource, dba Integretel, a California corporation, plaintiff herein (the

2   "Debtor"), alleges as follows:

3       1.      This is an adversary proceeding seeking declaratory and injunctive relief, pursuant

4   to 28 U.S.C. Sections 2201 and 2202; 11 U.S.C. §§ 105, 108(b) and 362(a); Federal Rule of

5   Bankruptcy Procedure Rules 7001(7) and (9); and Federal Rule of Civil Procedure 65 incorporated

6   by Federal Rule of Bankruptcy Procedure 7065.

7                                    **THE PARTIES**

8       2.      The Debtor is a corporation organized and existing under the laws of the State of

9   California with its principal place of business in San Jose, California.  The Debtor performs data

10  processing, account reconciliation, customer service and related services in the

11  telecommunications industry.  The Debtor is the debtor and debtor in possession in the above-

12  referenced chapter 11 bankruptcy case (the "Bankruptcy Case"), to which this adversary

13  proceeding "relates" pursuant to Federal Rule of Bankruptcy Procedure 7008(a).  The Debtor

14  commenced this Bankruptcy Case by filing a voluntary petition under chapter 11 of the United

15  States Code (i.e., the "Bankruptcy Code").  The Bankruptcy Case is pending in the United States

16  Bankruptcy Court for the Northern District of California, San Jose Division.

17      3.      Defendant the Federal Trade Commission (the "FTC") is an independent agency of

18  the United States Government created by statute.  15 U.S.C. §§ 41, *et. seq.*

19      4.      David R. Chase (the "Receiver" and the Receiver and the FTC each a "Defendant"

20  and together the "Defendants") is the receiver for the following entities Nationwide Connections,

21  Inc., Access One Communications, Inc., Network One Services, Inc., 411TXT, Inc., CELL-INFO-

22  USA, INC., Enhanced Billing Services, Inc., Toll Free Connect, Inc., Cripple Creek Holdings,

23  LLC, Built to Last, LLC, Not Fade Away, LLC, He's Gone, LLC, The Other One, LLC, Turn on

24  Your Love Light, LLC, China Cat Sunflower, LLC, Lazy River Road Holdings, LLC, appointed

25  by the United States District Court for the Southern District of Florida in the lawsuit captioned

26  Federal Trade Commission v. Nationwide Connections, Inc., et al., Case No. 06-80180-Civ-

27  Ryskamp.  The Debtor has brought this action against the Receiver, not individually, but solely in

28  the Receiver's capacity as receiver for the foregoing entities.

                                        -1-

W02-WEST:FJR\400435989.3            COMPLAINT FOR DECLARATORY RELIEF,
                                    TEMPORARY RESTRAINING ORDER, AND
                                    PRELIMINARY INJUNCTION

00366

RER-33        2218

**JURISDICTION AND VENUE**

5.    This adversary proceeding arises under title 11, or arises in or is related to the Bankruptcy Case, within the meaning of 28 U.S.C. Section 1334(b).  This Court therefore has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. Sections 157(a), 157(b), 1334(b) and 1334(e) and Rule 5011-1 of the Bankruptcy Local Rules of the United States District Court for the Northern District of California.

6.    This Court also has jurisdiction pursuant to 28 U.S.C. Sections 2201 and 2202.

7.    This adversary proceeding is a core proceeding pursuant to 28 U.S.C. Sections 157(b)(2)(A), (G), & (O).

8.    Venue is proper in this district pursuant to 28 U.S.C. Section 1409(a).

9.    The FTC is subject to the jurisdiction of this Court.

10.    The Receiver is subject to the jurisdiction of this Court.

**GENERAL FACTUAL ALLEGATIONS**

A.    **The Debtor's Background and the Debtor's Business.**

11.    The Debtor was formed in 1988 based on a need for aggregators to facilitate billing and collections on behalf of smaller telecommunications companies that provided "alternative operator services" ("AOS") which otherwise could not afford to compete with the larger local exchange carriers ("LECs" or "Telcos") such as AT&T.

12.    AOS involves providing long-distance calling on an occasional or as-needed basis in situations where often the consumer uses the service provider's assets or services without the consumer or the service provider knowing each other's identity.  For example, a service provider owning the service contract for a hotel chain has no idea as to the identity of the consumer using its phones.  If an AOS provider facilitates a collect call it needs a way to bill the consumer for that call.

13.    The Debtor addressed a significant industry void by creating a service bureau focused entirely on billing-related services for AOS providers and others needing a means of billing consumers for their services.  As the cornerstone to its billing capability, the Debtor maintains a full complement of billing and collection agreements with an estimated 1,400 or more

-2-

COMPLAINT FOR DECLARATORY RELIEF, TEMPORARY RESTRAINING ORDER, AND PRELIMINARY INJUNCTION

00367

1   LECs and independent service providers so that it can place calls made through an AOS or a LEC

2   bill. This infrastructure enables telecommunication service providers to incorporate their charges

3   within the phone bills of greater than 90% of business and residential consumers throughout the

4   United States and Canada. By using a billing aggregator like the Debtor, the fixed overhead is

5   already in place and the per unit billing cost is typically lower than the direct approach. Moreover,

6   the LEC bill adds credibility to the charge and provides a substantially higher collection rate.

7       14.    The Debtor quickly established itself as a leader in providing LEC billing solutions

8   for diverse and emerging products and services. The Debtor presently offers a complete array of

9   complementary services including internet-delivered management and settlement reporting, direct

10  billing, customer care and collection support. As a strategic back-room business partner, the

11  Debtor frees its clients to focus their efforts on promoting and selling products and services.

12      15.    In addition to AOS providers, the Debtor services customers offering enhanced

13  products and services such as voice mail, online directory listings and bundled calling plans.

14  While these services may be billed to credit cards, often consumers are hesitant to use their credit

15  cards for such intangible purchases and, therefore, may prefer alternate billing choices such as the

16  LEC phone bill.

17      16.    The Debtor has served thousands of service providers over the years. The vast

18  majority of the processed billings have been in support of smaller sized businesses that otherwise

19  would not have been able to compete. It is the competitive pressure of these smaller companies

20  that has forced down the rates charged to consumers by the larger telecommunication companies.

21      17.    The Debtor's office is in San Jose, California. The Debtor leases that office space.

22  The Debtor has no other offices or real estate leases. The Debtor owns no real estate. The Debtor

23  has approximately thirty-seven employees. Twenty-two of those employees have been with the

24  company for over five years, and thirteen have been with the Debtor for over ten years. In

25  addition, the Debtor's services support, through outsourced relationships, approximately 20-30 call

26  center personnel in several different call centers who are employed by a third-party vendor

27

28

-3-

COMPLAINT FOR DECLARATORY RELIEF,
TEMPORARY RESTRAINING ORDER, AND
PRELIMINARY INJUNCTION

00368

RER-33        2220

1    **B.    Access One and Network One.**

2        18.    Access One Communications, Inc. ("Access One") and Network One Services, Inc.

3    ("Network One") were two of the Debtor's prior AOS provider customers (Access One and

4    Network One collectively shall be referred to as the "Prior Customers").

5        19.    The relationship between the Debtor and its AOS provider customers, including

6    each of the Prior Customers, is governed by a contract between the Debtor and the customer.

7        20.    The Debtor's contracts with the Prior Customers (the "Subject Contracts") provide

8    that the customer submitted to the Debtor the customer's billing transactions (the "Billing

9    Transactions") in a data format acceptable to the Debtor. The Billing Transaction became an

10   account receivable of the Debtor and not the customer. The Debtor's Billing Contracts with the

11   LECs are structured as a purchase of accounts receivable between the Debtor and the LECs and

12   the Subject Contracts provided that all necessary rights were transferred to the Debtor. In fact, the

13   Debtor's contract with Access One included a provision which explicitly recognizes this "Client

14   [i.e., the customer] acknowledges that the Billing Contracts with Telcos [i.e., LECs] are structured

15   as a purchase of accounts receivable..."

16       21.    The Prior Customers had no ownership interest in their Billing Transactions after

17   the Billing Transactions were submitted to the Debtor. The Prior Customers were unsecured

18   creditors of the Debtor, with claims for certain "distributions" under the contract between the

19   Debtor and the customer. Generally, those "distributions" were paid by the Debtor about 90 or so

20   days after the Billing Transaction is submitted to the Debtor by the customer. The Debtor was

21   authorized to withhold from the Prior Customers its fees as well as amounts that may be used by

22   the Debtor to resolve disputes, make other adjustments and maintain reserves against future

23   disputes and adjustments.

24       22.    The Subject Contracts provide that each week the Debtor shall transfer by wire to

25   the customer's bank account the Net Proceeds identified in the prior week. "Net Proceeds" is

26   defined as the gross value of the Billing Transactions that are remitted to the LECs, less amounts

27   withheld by the LECs, less amounts due to the Debtor, and less other fees and reserves. This

28

-4-

COMPLAINT FOR DECLARATORY RELIEF,
TEMPORARY RESTRAINING ORDER, AND
PRELIMINARY INJUNCTION

00369

RER-33    2221

1   amount is due only as such amounts are determined from the information provided from the LECs,

2   and that is generally 90 days after submission of the Billing Transactions.

3       23.    Nowhere in either of the Subject Contracts is there any language purporting to give

4   the Prior Customers any rights against the Debtor with respect to payments due the Prior

5   Customers other than those of a general unsecured creditor. Neither of the Subject Contracts

6   contains language granting the Prior Customers a security interest – or any other property interest,

7   either legal or equitable – in any funds the Debtor receives from a LEC on account of a Billing

8   Transaction.

9       24.    When the Debtor withheld reserve amounts from the Net Proceeds paid to the Prior

10  Customers, the Debtor recorded that amount as a bookkeeping entry. However, the Debtor does

11  not have a corresponding asset, such as a bank account, that contains the monies that were

12  withheld as reserves from the Prior Customers. Moreover, there is no segregated account

13  containing the reserves of any customer, including either of the Prior Customers. The Debtor does

14  not have enough monies to cover the full amount of reserves for all of the Debtor's customers. All

15  "Net Proceeds" that could possibly have arisen from the Debtor's relationship with the Prior

16  Customer have long since passed through Debtor's bank accounts.

17               **C.    The Florida Action.**

18      25.    On February 27, 2006, the FTC filed a complaint commencing the Florida Action

19  in the Florida Court against three AOS providers, Nationwide Connections, Inc. ("Nationwide"),

20  Access One and Network One (collectively, the "Nationwide Parties"), as well as their principals,

21  alleging deceptive and unfair practices for unauthorized billing of charges on phone bills –

22  referred to as "cramming" – in violation of the Federal Trade Commission Act (the "FTCA").

23      26.    The Florida Court entered a temporary restraining order and later a preliminary

24  injunction. The Florida Court appointed a receiver (i.e., the Receiver) for Nationwide, Access

25  One and Network One and certain of their affiliates. An "Amended Preliminary Injunction Order"

26  was filed on September 25, 2006.

27      27.    On or about September 21, 2006, the FTC filed an amended complaint (the

28  "Amended Complaint") which Amended Complaint now named as defendants the Debtor as well

-5-

W02-WEST:FJR\400435989.3

COMPLAINT FOR DECLARATORY RELIEF,
TEMPORARY RESTRAINING ORDER, AND
PRELIMINARY INJUNCTION

00370

1   as another billing aggregator which is comprised of three related companies: Billing Concepts,

2   Inc., ACI Billing Services, Inc. d/b/a OAN, and BSG Clearing Solutions North America, LLC

3   (collectively, "BSG").

4         28.     The FTC alleged in its Amended Complaint that the Debtor caused certain of the

5   Prior Customers' fraudulent charges to be placed on end users' phone bills and that the Debtor was

6   liable under the FTCA in spite of the fact that the LECs, not the Debtor, perform the billing.

7         29.     The FTC has sought injunctive relief against the Debtor as well as monetary redress

8   including restitution for the allegedly defrauded consumers.

9         30.     The Debtor voluntarily stopped providing services for the Prior Customers over a

10   year prior to the FTC filing of its Amended Complaint. At the time that it stopped providing

11   services, the Debtor set the reserve at 100 percent of the Net Proceeds received on account of the

12   Prior Customers' Billing Transactions and made no further payments to the Prior Customers. This

13   was done because of the Debtor's possible exposure to claims for refunds of the Prior Customers'

14   Billing Transactions.

15         31.     The Debtor filed an answer denying the FTC's allegations.

16         32.     The Receiver is seeking to collect all assets of the Prior Customers. Toward that

17   end, the Receiver sought relief in the Florida Action by motion against the Debtor. The Receiver

18   asserted that the Debtor owes the Prior Customers the amount of the reserves.

19         33.     The Receiver's motion asserting the rights of the Prior Customers sought to compel

20   the Debtor to turn over to the Receiver the amount of the reserves contained in the Debtor's

21   bookkeeping entries, which the Receiver alleged was an asset of the Prior Customers in an amount

22   in excess of $1.4 million. The Receiver further alleged that the Debtor had violated the Amended

23   Preliminary Injunction Order and should be held in contempt for failing to turn over the sums

24   demanded by the Receiver.

25         34.     The Debtor filed a response opposing such relief on numerous grounds, including

26   without limitation those set forth in this paragraph. The Debtor had no obligation to pay any funds

27   to the Receiver under the Subject Contracts. In addition, the Debtor did not hold any specific

28   funds allocable to reserves for the Prior Customers, because, consistent with the Debtor's general

-6-

W02-WEST:FJR\400435989.3

COMPLAINT FOR DECLARATORY RELIEF,
TEMPORARY RESTRAINING ORDER, AND
PRELIMINARY INJUNCTION

00371

RER-33     2223

1   practice regarding reserves, the Debtor treated them solely as balance sheet entries, without

2   maintaining, segregating or otherwise designating specific funds for purposes of the reserves. At

3   the most, any rights the Prior Customers had with respect to the reserves were simply those rights

4   of a general, unsecured creditor. The Debtor also asserted that it had offsetting claims under the

5   Subject Contracts against the Prior Customers which exceeded the amount of the Prior Customers'

6   alleged reserves. In particular, to the extent the Debtor has any liability in the Florida Action, it

7   arises from the misconduct of the Prior Customers, not the Debtor, and pursuant to the Subject

8   Contracts, the Prior Customers are liable to the Debtor for such liability, as well as the costs and

9   fees incurred in the Florida Action. These costs and fees, and the liability asserted against the

10  Debtor in the Florida Action, far exceed the amount of any sums withheld from the Prior

11  Customers as reserves.

12      35.    The Florida Court entered an order on September 14, 2007 (the "Payment Order")

13  requiring that the Debtor pay over the amounts sought by the Receiver into a segregated

14  receivership account. Though the FTC is a party to the Florida Action, the Payment Order was

15  entered upon the motion of the Receiver, not the FTC. The Debtor intends to appeal the Payment

16  Order to the Eleventh Circuit Court of Appeals upon obtaining relief from the automatic stay to do

17  so.

18      36.    The Debtor has expended over $700,000 in legal fees and costs to date in defending

19  the Florida Action. That case is set for trial in February 2008. The Debtor expects that unless the

20  Florida Action is stayed or the FTC is enjoined from proceeding as to the Debtor that it will be

21  required to spend as much as $1 million in legal fees and costs in defending the matter. The

22  Debtor has also had to devote substantial and valuable management and employee time and

23  resources to this issue and would be forced to further incur such items, to the detriment of its

24  reorganization efforts, if this action were not stayed as against the Debtor.

25

26

27

28

-7-

W02-WEST:FJR:400435989.3

COMPLAINT FOR DECLARATORY RELIEF,
TEMPORARY RESTRAINING ORDER, AND
PRELIMINARY INJUNCTION

00372

1

**FIRST CLAIM FOR RELIEF**

2

**(Declaratory Relief Pursuant To 28 U.S.C. Sections 2201 and 2202; 11 U.S.C. Sections 105, 362(a)(1), (2), (3) and (6); Rules 7001(7) and (9) of the Federal Rules of Bankruptcy Procedure)**

3

4

     37.     The Debtor repeats the allegations set forth in Paragraphs 1 through 36 as if fully

5

set forth herein.

6

     38.     This is a claim for declaratory relief brought under the provisions of 28 U.S.C.

7

Sections 2201 and 2202; 11 U.S.C. Sections 105, 362(a)(1), (2), (3) and (6); and Rules 7001(7) &

8

(9) of the Federal Rules of Bankruptcy Procedure.

9

     39.     An actual controversy has arisen and now exists between the Debtor and the

10

Receiver relating to their legal rights and duties for which The Debtor seeks a judicial declaration

11

of rights as to such matters, as well as further necessary or proper relief, including injunctive

12

relief.

13

     40.     A declaratory judgment is necessary and appropriate at this time in that the

14

Debtor contends and the Receiver may deny that the implementation or enforcement of the

15

Payment Order is automatically stayed including without limitation pursuant to 11 U.S.C.

16

§§ 362(a)(1), (a)(2), (a)(3), and/or (a)(6).

17

     WHEREFORE, the Debtor prays for relief as set forth below.

18

**SECOND CLAIM FOR RELIEF**

19

**(Declaratory Relief Pursuant To 28 U.S.C. Sections 2201 and 2202; 11 U.S.C. Sections 105, 362(a)(1), (2), (3) and (6); Rules 7001(7) and (9) of the Federal Rules of Bankruptcy Procedure)**

20

21

22

     41.     The Debtor repeats the allegations set forth in Paragraphs 1 through 36 as if fully

23

set forth herein.

24

     42.     This is a claim for declaratory relief brought under the provisions of 28 U.S.C.

25

Sections 2201 and 2202; 11 U.S.C. Sections 105, 362(a)(1), (2), (3) and (6); and Rules 7001(7) &

26

(9) of the Federal Rules of Bankruptcy Procedure.

27

28

-8-

COMPLAINT FOR DECLARATORY RELIEF, TEMPORARY RESTRAINING ORDER, AND PRELIMINARY INJUNCTION

00373

2225

43.    An actual controversy has arisen and now exists between the Debtor and the FTC relating to their legal rights and duties for which the Debtor seeks a judicial declaration of rights as to such matters, as well as further necessary or proper relief, including injunctive relief.

44.    A declaratory judgment is necessary and appropriate at this time in that the Debtor contends and the FTC may deny that

    a.    the claims made in the Florida Action against the Debtor, the Debtor's property, property of the Debtor's estate, and/or property held by the Debtor's estate, including without limitation the implementation or enforcement of the Payment Order, are automatically stayed including without limitation pursuant to 11 U.S.C. §§ 362(a)(1), (a)(2), (a)(3), and/or (a)(6).

    b.    while there is an exception, under 11 U.S.C. § 362(b)(4), for regulatory actions, from the Bankruptcy Code's automatic stay provisions set forth in 11 U.S.C. § 362(a), the gist of the Florida Action and the claims made therein against the Debtor, the Debtor's property, property of the Debtor's estate, and/or property held by the Debtor's estate, are monetary in nature and are therefore stayed.

WHEREFORE, the Debtor prays for relief as set forth below.

### THIRD CLAIM FOR RELIEF

**(Temporary Restraining Order and Preliminary Injunction Pursuant To 28 U.S.C. Sections 2201 and 2202; 11 U.S.C. Section 105; Rules 7001(7) and (9) of the Federal Rules of Bankruptcy Procedure; and Federal Rule of Civil Procedure 65 incorporated by Federal Rule of Bankruptcy Procedure 7065)**

45.    The Debtor repeats the allegations set forth in Paragraphs 1 through 36 as if fully set forth herein.

46.    This is a claim for a temporary restraining order and preliminary injunction brought under the provisions of 28 U.S.C. Sections 2201 and 2202; 11 U.S.C. Section 105; Rules 7001(7) and (9) of the Federal Rules of Bankruptcy Procedure; and Federal Rule of Civil Procedure 65 incorporated by Federal Rule of Bankruptcy Procedure 7065.

-9-

COMPLAINT FOR DECLARATORY RELIEF, TEMPORARY RESTRAINING ORDER, AND PRELIMINARY INJUNCTION

00374

RER-33    2226

1     47.     If and to the extent that the Court determines that the Florida Action is not

2  stayed as to the Debtor, then the Debtor requests that the Court temporarily restrain and

3  preliminarily enjoin the FTC until a plan of reorganization is entered in this Bankruptcy Case from

4  proceeding against the Debtor in the Florida Action, including as to the claims made therein

5  against the Debtor, the Debtor's property, property of the Debtor's estate, and/or property held by

6  the Debtor's estate.

7     48.     Money damages will not be adequate and there exists no adequate remedy at law.

8     49.     Permitting the Florida Action to continue against the Debtor, threatens the Debtor's

9  ability to continue its business operations, affects whether the Debtor's other creditors receive their

10  appropriate share of monies paid by the Debtor to unsecured creditors, threatens the Debtor's

11  ability to successfully confirm a plan of reorganization, interferes with this Court's ability to

12  enforce its jurisdiction over the Debtor's assets and this bankruptcy case, and threatens the

13  integrity of the bankruptcy estate by, among other things, upsetting the well-established and

14  Congressionally-approved goals underlying the uniform bankruptcy laws of rehabilitation of

15  debtors and equality of treatment of creditors.  The objectives of the Bankruptcy Code would be

16  served by issuing a preliminary injunction staying the Defendants' continued pursuit in the Florida

17  Action of the Debtor, the Debtor's property, property of the Debtor's estate, and/or property held

18  by the Debtor's estate.

19     50.     The Debtor has a strong likelihood of successfully reorganizing if the requested

20  temporary restraining order and preliminary injunction are entered.

21     51.     The Debtor is threatened with the possibility of immediate irreparable injury if the

22  temporary restraining order and preliminary injunction are not granted.

23     52.     At the least, serious questions are raised with respect to the FTC's continued

24  pursuit in the Florida Action of claims against the Debtor, the Debtor's property, property of the

25  Debtor's estate, and/or property held by the Debtor's estate, and the balance of the hardships tip

26  strongly in the Debtor's favor.

27     53.     The requested preliminary injunction is in the public interest.  While the FTC

28  action seek to gain, at most five or six dollars for consumers, each or which may have been billed

-10-

W02-WEST:FJRV\00435989.3

COMPLAINT FOR DECLARATORY RELIEF,
TEMPORARY RESTRAINING ORDER, AND
PRELIMINARY INJUNCTION

00375

RER-33    2227

1   a single collect call by the Prior Clients, the Debtor's efforts to reorganize its operations affects the

2   livelihoods of its employees, the Debtor's ability to pay its creditors and the continued viability of

3   its customers.

4        WHEREFORE, the Debtor prays for relief as set forth below.

5                   **PRAYER FOR RELIEF**

6        WHEREFORE, The Debtor, prays for relief as follows:

7         1.     For the FIRST CLAIM FOR RELIEF that the Court declare that the

8   implementation or enforcement of the Payment Order is automatically stayed including

9   without limitation pursuant to 11 U.S.C. §§ 362(a)(1), (a)(2), (a)(3), and/or (a)(6).

10        2.    For the SECOND CLAIM FOR RELIEF that:

11           a.     the claims made in the Florida Action against the Debtor, the Debtor's

12                  property, property of the Debtor's estate, and/or property held by the

13                  Debtor's estate, including without limitation the implementation or

14                  enforcement of the Payment Order, are automatically stayed including

15                  without limitation pursuant to 11 U.S.C. §§ 362(a)(1), (a)(2), (a)(3), and/or

16                  (a)(6).

17           b.     while there is an exception, under 11 U.S.C. § 362(b)(4), for regulatory

18                  actions, from the Bankruptcy Code's automatic stay provisions set forth in

19                  11 U.S.C. § 362(a), the gist of the Florida Action and the claims made

20                  therein against the Debtor, the Debtor's property, property of the Debtor's

21                  estate, and/or property held by the Debtor's estate, are monetary in nature

22                  and are therefore stayed.

23        3.    For the THIRD CLAIM FOR RELIEF that the Court temporarily restrain and

24   preliminarily enjoin the FTC until a plan of reorganization is entered in this Bankruptcy Case

25   from proceeding against the Debtor in the Florida Action, including as to the claims made

26   therein against the Debtor, the Debtor's property, property of the Debtor's estate, and/or

27   property held by the Debtor's estate

28

-11-

COMPLAINT FOR DECLARATORY RELIEF,<br>TEMPORARY RESTRAINING ORDER, AND<br>PRELIMINARY INJUNCTION

00376

RER-33    2228

1          4.      That the Court grant such other and further relief as the Court deems just and

2    proper under the circumstances.

3

4    Dated:  September 19, 2007

5                              Respectfully submitted,

6                              SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

7

8                    By          /s/ Michael H. Ahrens

9                                MICHAEL H. AHRENS
                                 Proposed Attorneys for Plaintiff and Debtor The Billing
10                               Resource, dba Integretel

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                    -12-
W02-WEST:FJR\400435989.3                    COMPLAINT FOR DECLARATORY RELIEF,
                                            TEMPORARY RESTRAINING ORDER, AND
                                            PRELIMINARY INJUNCTION

# EXHIBIT B

1 | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
2 |     Including Professional Corporations
MICHAEL H. AHRENS, Cal. Bar No. 44766
3 | GERALDINE A. FREEMAN, Cal. Bar No. 111483
JEFFREY K. REHFELD, Cal. Bar No. 188128
4 | ORI KATZ, Cal. Bar No. 209561
Four Embarcadero Center, 17th Floor
5 | San Francisco, California 94111-4106
Telephone:    415-434-9100
6 | Facsimile:    415-434-3947
Email:       mahrens@sheppardmullin.com
7 |            jrehfeld@sheppardmullin.com
           okatz@sheppardmullin.com
8 |
Proposed Attorneys for THE BILLING RESOURCE,
9 | dba INTEGRETEL

10 |
UNITED STATES BANKRUPTCY COURT
11 |
NORTHERN DISTRICT OF CALIFORNIA
12 |
SAN JOSE DIVISION

| 13 | In re | Case No. 07-52890 |
| 14 | | |
| 15 | THE BILLING RESOURCE, dba Integretel, a California corporation, | Chapter 11 |
| 16 | Debtor. | NOTICE OF CONTINUED HEARING RE EMERGENCY MOTION FOR USE OF CASH COLLATERAL AND GRANTING REPLACEMENT LIENS |
| 17 | Tax ID: 33-0289863 | |
| 18 | | |
| 19 | | |
| 20 | | Date:     September 26, 2007 Time:    2:15 p.m. Place:   United States Bankruptcy Court 280 South First Street San Jose, California |
| 21 | | |
| 22 | | Judge:   Hon. Arthur S. Weissbrodt Courtroom:  3020 |
| 23 | | |

24

25

26

27

28

W02-WEST:FJR\400438966.2

NOTICE OF CONTINUED HEARING RE
EMERGENCY MOTION FOR USE OF CASH
COLLATERAL AND GRANTING . . .

00379

RER-33    2231

1        **PLEASE TAKE NOTICE** that a continued hearing on the *Emergency Motion for Use of*

2   *Cash Collateral and Granting Replacement Liens* (the "Cash Collateral Motion") filed by the

3   above-captioned debtor in possession The Billing Resource, dba Integretel (the "Debtor") will take

4   place on Wednesday, September 26, 2007 at 2:15 p.m. (the "Continued Hearing") in Courtroom

5   3020, the courtroom of the Honorable Arthur S. Weissbrodt, United States Bankruptcy Judge,

6   located at 280 South First Street, San Jose, California.

7        **PLEASE TAKE FURTHER NOTICE** that at the Continued Hearing, the Court will

8   consider, among other things, the Debtor's request that as part of its Cash Collateral Motion the

9   Court approve that certain "First Amended Stipulation With PaymentOne Regarding Use Of Cash

10  Collateral And Adequate Protection" (the "First Amended PaymentOne Stipulation"). A blackline

11  version of the First Amended Payment One Stipulation, which compares the First Amended

12  PaymentOne Stipulation to the prior stipulation between the Debtor and PaymentOne which was

13  attached as Exhibit E to the Cash Collateral Motion, is attached hereto as <u>Exhibit 1</u>. A copy of a

14  revised three week operating budget (the "Revised Budget") is attached hereto as <u>Exhibit 2</u>.

15       **PLEASE TAKE FURTHER NOTICE** that the Court has requested that any oppositions

16  to the Cash Collateral Motion as revised to incorporate the First Amended PaymentOne

17  Stipulation and the Revised Budget be filed with the Court by the close of business on Monday,

18  September 24, 2007, and that any further memorandum by the Debtor in connection with the Cash

19  Collateral Motion also be filed with the Court by the close of business on Monday, September 24,

20  2007.

21

22

23  Dated: September 22, 2007        Respectfully submitted,

24                         SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

25

26                     By          /s/ Jeffrey K. Rehfeld

                                JEFFREY K. REHFELD

27                      Proposed Attorneys for Debtor The Billing Resource,

                              dba Integretel

28                          -1-

W02-WEST:F!R\400438966.2

NOTICE OF CONTINUED HEARING RE
EMERGENCY MOTION FOR USE OF CASH
COLLATERAL AND GRANTING . .

## Exhibit 17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-80180-Civ-RYSKAMP/VITUNAC

FEDERAL TRADE COMMISSION,

Plaintiff,

vs.

NATIONWIDE CONNECTIONS, INC.,
*et. al.*,

Defendants.

_____/

**Defendant The Billing Resource d/b/a Integretel's
Initial Response to Receiver's Emergency Motion
in Furtherance of Pending Contempt Proceeding**

Defendant The Billing Resource d/b/a Integretel ("Integretel") submits these initial
comments not as a substantive response to the Receiver's Emergency in Furtherance of Pending
Contempt Proceeding ("Receiver's Emergency Motion") but to inform the Court that Integretel
opposes the motion and to ask that the Court not immediately rule on the motion for the
following reasons:

1. Integretel has filed today a notice of appeal from the Court's orders of September 14 and
   September 21, 2007.

2. If the parties will not agree to a stay of the payment order and the contempt proceedings,
   Integretel will file with the Court a motion to stay those matters pending appeal.

3. Contrary to the representation in the Receiver's Certification of Emergency, the Receiver
   made no efforts to resolve this matter without the need for emergency action. This motion
   therefore should not be accepted for filing. Equally important, because Integretel was not
   informed that the Receiver would not be filing this motion, Integretel has not had any
   time to begin preparation of a response.

4. There is no need for emergency action. The alleged "emergency" is that a hearing in
   bankruptcy court is scheduled to be held this Wednesday. The Receiver is represented by
   California counsel in the bankruptcy proceedings of Integretel, and has submitted

00381

RER-33      2233

objections to the use of cash. The Receiver appeared at the hearing on September 21, and will undoubtedly appear to argue its objection to the use of cash collateral on September 26. The FTC also appeared at the bankruptcy hearing of September 21. The pendency of that hearing where the Receiver and FTC have appeared does not create an emergency.

5. As the Receiver knows, the bankruptcy court (which is in California) has ordered a hearing for Wednesday, September 26, at which Mr. Dawson's presence is critical. The Receiver therefore knows that, if granted, the Receiver's request that Mr. Dawson appear before this Court on that date would be devastating to Integretel's estate in the bankruptcy proceedings.

6. As the Receiver's counsel knows, Integretel has no ability to make payment because under the bankruptcy proceeding, Integretel has no access to, or control of, a bank account from which it can operate until it obtains an order from the bankruptcy court.

7. The Court's order of September 21 was issued without allowing Integretel an opportunity to respond. There was no genuine emergency justifying such action.

8. Integretel believes that a memorandum of law would assist the Court on these issues.

Respectfully submitted,

/s/ Neal Goldfarb
Richard H. Gordin, Pro hac vice
Neal Goldfarb, Pro hac vice
TIGHE PATTON ARMSTRONG TEASDALE PLLC
1747 Pennsylvania Ave., N.W., Suite 300
Washington, D.C. 20006
rgordin@tighepatton.com
ngoldfarb@tighepatton.com
Tel.:   (202) 454-2800
Fax:   (202) 454-2805

/s/ Scott B. Newman
Scott B. Newman, Florida Bar No. 339717
Martin J. Alexander, Florida Bar. No. 346845
HOLLAND & KNIGHT LLP
222 Lakeview Ave., Suite 1000
West Palm Beach, Florida 33401
scott.newman@hklaw.com
marty.alexander@hklaw.com
Tel.:   (561) 833-2000
Fax:   (561) 650-8399

*Counsel for The Billing Resource d/b/a Integretel*

00382

**Certificate of Service**

I HEREBY CERTIFY that on September 24, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

                    /s/ Scott B. Newman
                    Scott B. Newman

## SERVICE LIST
### Federal Trade Commission vs. Nationwide Connection, Inc., et al
### Case No. 06–80180-Civ-Ryskamp/Vitunac

**CM/ECF Notice List:**

LAURA M. KIM, ESQ.
lkim@ftc.gov and ereid@ftc.gov
MICHAEL J. DAVIS, ESQ.
mdavis@ftc.gov
COLLOT GUERARD, ESQ.
cguerard@ftc.gov and cguerard@comcast.net
Federal Trade Commission
600 Pennsylvania Ave., N.W., Room 286
Washington, DC 20580
202-326-3734 telephone (Kim)
202-326-3395 facsimile
*Attorneys for Plaintiff Federal Trade
Commission*

MICHAEL GARRETT AUSTIN, ESQ.
maustin@mwe.com
305-347-6517 telephone
STEVEN E. SIFF, ESQ.
ssiff@mwe.com
305-347-6511 telephone
McDermott Will & Emery LLP
201 S Biscayne Boulevard
Suite 2200
Miami, FL 33131-4336
347-6500 facsimile
*Attorneys for Defendants Billing Concepts, Inc.,
ACI Billing Services, Inc. d/b/a OAN, and BSG
Clearing Solutions North America, LLC*

MARK DOUGLAS JOHNSON, ESQ.
MarkDJohnsonPA@bellsouth.net
Mark D. Johnson, P.A.
10 Central Parkway, Suite 210
Stuart, Florida 34994
772-223-7700 telephone
772-223-1177 facsimile
*Attorneys for Defendants, Yaret Garcia, Erika
Riaboukha and Qaadir Kaid*

JEFFREY C. SCHNEIDER, ESQ.
jcs@tewlaw.com
Tew Cardenas LLP
Four Seasons Tower—15th Floor
1441 Brickell Avenue
Miami, FL 33131
305-539-2481 telephone
305-536-1116 facsimile
*Attorneys for Receiver David R. Chase*

ANDREW G. BERG, ESQ.
ABerg@kslaw.com
202-626-2924 telephone
CAROLYN TAPIE, ESQ.
CTapie@kslaw.com
202-626-2919 telephone
King & Spalding LLP
1700 Pennsylvania Avenue, N.W.
Washington, D.C. 20006-4704
202-626-3737 facsimile
*Attorneys for Defendants Billing Concepts,
Inc., ACI Billing Services, Inc. d/b/a OAN, and
BSG Clearing Solutions North America, LLC*

MICHAEL WOODBURY, ESQ.
michael.woodbury@woodbury-santiago.com
Two Datran Center—Penthouse 1A
9130 South Dadeland Boulevard
Miami, FL 33156
305-669-9570 telephone
305-669-8616 facsimile
*Attorneys for Grunspan Trust et. al*

00384

JERRY M. MARKOWITZ, ESQ.
jmarkowitz@mdrtlaw.com
ROSS R. HARTOG, ESQ.
rhartog@mdrtlaw.com
Two Datran Center, Suite 1225
9130 South Dadeland Boulevard
Miami, FL 33156
305-670-5000 telephone
305-670-5011 facsimile
*Attorneys for First Churchill Way, LLC*

ROBERT M. WEINBERGER, ESQ.
rmw@fcohenlaw.com
Cohen Norris Scherer Weinberger & Wolmer
712 U.S. Highway 1, Suite 400
North Palm Beach, FL 33408
*Attorneys for Creditor Denise McCann*

DIANE NOLLER WELLS, ESQ.
dwells@devinegoodman.com
Devine Goodman Pallet & Wells, PA
777 Brickell Avenue, Suite 850
Miami, FL 33131
305-374-8200 telephone
305-374-8208 facsimile
*Attorneys for Second Churchill Way, LLC*

CHAD A. DEAN, ESQ.
chad@schuylaw.com
118 West Adams Street, #800
Jacksonville, FL 32202
904-353-5884 telephone
904-353-5994 facsimile
*Attorneys for Primus Automotive Financial
Services and Ford Motor Co. Credit Co.*

**Manual Notice List:** (via U.S. Mail)

WILLOUGHBY FARR, Inmate No. 653974
Century Correctional Institution
400 Tedder Road
Century, Florida 32535-3659
*Defendant, Pro Se*

GARY M. DUNKEL, ESQ.
dunkel@gtlaw.com
Greenberg Traurig
Phillips Point – East Tower, Suite 300-E
777 South Flagler Drive
West Palm Beach, FL 33401
561-650-7900 telephone
561-655-6222 facsimile
*Attorneys for BHD/WEB, LLC*

MARY LOU FARR
c/o James Stonehill
1006 Churchill Circle South
West Palm Beach, FL 33405
*Defendant, Pro Se*

THOMAS G. LONG, ESQ.
tlong@barnettbolt.com
HILDEGUND P. WANDERS, ESQ.
Barnett Bolt Kirkwood & Long
601 Bayshore Boulevard, Suite 700
Tampa, FL 33606
813-253-2020 telephone
813-251-6711 facsimile
*Attorney for BMW Financial Services*

Exhibit 18

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 06-80180-CIV-RYSKAMP/VITUNAC

FEDERAL TRADE COMMISSION,

     Plaintiff,

v.

NATIONWIDE CONNECTIONS, INC., et al.

     Defendants.

_____/

## ORDER DENYING RECEIVER'S EMERGENCY MOTION IN FURTHERANCE OF THE PENDING CONTEMPT PROCEEDING

THIS CAUSE comes before the Court pursuant to the Receiver's Emergency Motion in

Furtherance of Pending Contempt Proceeding, filed September 24, 2007 **[DE 623]**.  Integretel

objected to the motion on September 24, 2007 **[DE 622]**.

On September 16, 2007, Integretel filed a petition for Chapter 11 bankruptcy in the

United States Bankruptcy Court, Northern District of California, San Jose Division, Case No. 07-

52890.  The Bankruptcy Court conducted a hearing on Friday, September 21, 2007 on

Integretel's Motion for Use of Cash Collateral.  During the hearing, Integretel argued that it need

not transfer the reserve funds to the Receiver.  The Bankruptcy Judge has requested additional

briefing, with said briefs to be filed and served on Monday, September 24, 2007.  A hearing on

the Motion for Use of Cash Collateral has been rescheduled for Wednesday, September 26, 2007

at 2:15 p.m., Pacific Time.

The Receiver requests that Integretel wire transfer before 5:00 p.m., Eastern Standard

00386

2

Time, on Tuesday, September 25, 2007, the $1,762,762.56 in reserve funds that this Court had specifically ordered Integretel to "immediately" transferred to the Receiver. In the event that Integretel does not effect said transfer, the Receiver requests that Integretel's designated control person, Ken Dawson, appear before this Court in person on September 26, 2007.

The Court declines to grant the Receiver its requested relief on the grounds that the Bankruptcy Court should have the opportunity to make its own determination as to Integretel's motion. Accordingly, it is hereby

ORDERED AND ADJUDGED that the motion, filed September 24, 2007 **[DE 623]**, is DENIED.

DONE AND ORDERED at Chambers in West Palm Beach, Florida this 24th day of September, 2007.

S/Kenneth L. Ryskamp
KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE

Exhibit 19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-80180-Civ-RYSKAMP/VITUNAC

FEDERAL TRADE COMMISSION,

Plaintiff,

vs.

NATIONWIDE CONNECTIONS, INC.,
et. al.,

Defendants.
_____/

### Defendant The Billing Resource d/b/a Integretel's
### Emergency Motion for Stay Pending Appeal
### and Incorporated Memorandum in Support Thereof

Defendant The Billing Resource d/b/a Integretel ("Integretel") moves pursuant to Fed. R. Civ. P. 62(c), on an emergency basis, that the Court stay (1) the provisions of the Court's Omnibus Order entered Sept. 14, 2007 (D.E. 610) determining that the amounts shown on Integretel's books as the IGT Reserve for Access One and Network One constitute Receivership property and ordering Integretel to pay the reserve amounts to the Receiver ("the Payment Order") and ordering Integretel to show cause why it should not be held in contempt ("the Show Cause Order") and (2) its Order Granting Motion for Clarification as to Scope of Stay entered Sept. 21, 2007 ("the Clarification Order") (D.E. 619) pending the resolution of the appeal of those orders that Integretel has taken to the Eleventh Circuit. In the alternative, Integretel moves that these orders be stayed for a period of five days to allow Integretel to move for a stay from the Eleventh Circuit and that upon the filing of such a motion the stay be continued in effect until that motion is acted on.

### The Need for Emergency Relief

Emergency treatment is necessary because enforcing the Payment Order would most likely force Integretel out of business and because ongoing litigation over the reserve issues here and in the bankruptcy court will itself interfere with Integretel's ability to reorganize. We recognize that the Court denied the Receiver's recent emergency motion on the ground that "the

Bankruptcy Court should have the opportunity to make its own determination as to Integretel's [cash-collateral] motion."[1] However, Integretel believes that it is appropriate to present this motion on an emergency basis so that it is fully briefed and ripe to be decided quickly in case the bankruptcy court's decision does not fully meet Integretel's need for immediate relief.

### Background

The Payment Order directed Integretel to pay the Receiver the amount of the reserves as of the date of the TRO: "Integretel shall provide a sworn statement identifying the amount of reserves as of the issuance of the TRO. The Court further orders that these funds shall be placed in a segregated Receivership account."[2] The undisputed record evidence is that when the TRO was issued, the Integretel's books showed the amount of the IGT reserves for Access One and Network One—i.e., the amount that Integretel was ordered to pay—to be $1,230,479.89.[3]

As we have previously told the Court, Integretel does not maintain reserve amounts in a separate account. Moreover, Integretel routinely has less cash on hand than would be required to cover the reserve amounts for its clients. Paying the reserve amounts for Access One and Network One to the Receiver would deplete Integretel's operating cash so drastically that Integretel would in all likelihood be forced out of business.[4] Rather than close down—thereby injuring numerous customers and vendors and putting its employees out of work—Integretel filed for bankruptcy protection under Chapter 11 in the Northern District of California (where it is based) on Sunday, September 16—i.e., before the first business day after the Omnibus Order was entered.[5] This action should not have been a surprise to the Receiver or the FTC, for they

---

1.  Order Denying Receiver's Emergency Motion in Furtherance of the Pending Contempt Proceeding at 2 (D.E. 625). After that order was entered, Integretel moved in the bankruptcy court for a TRO under § 105 of the Bankruptcy Code, 11 U.S.C. § 105, temporarily barring future litigation in this action. That motion, which was being prepared when the Court denied the Receiver's emergency motion, has been set for a hearing on Wednesday, September 26.

2.  Omnibus Order at 10 (D.E. 610).

3.  Decl. of Ken Dawson in Opp. to Receiver's Show Cause Mtn. ("Dawson Show-Cause Decl.") ¶ 21 (D.E. 296-2).

4.  Decl. of Ken Dawson from bankruptcy proceedings, submitted herewith as Ex. 1 ("Dawson Bankr. Decl.").

5.  *In re The Billing Resource*, No. 07-bk-52890 (Bankr. N.D. Cal.).

00389

RER-33    2241

had both known for at more than nine months that Integretel would have to go into bankruptcy if it were ordered to pay the Receiver the amount of the reserves.[6]

On Wednesday, September 19—the third business day after filing for bankruptcy—Integretel commenced an adversary proceeding in the bankruptcy court seeking a declaration as to the applicability of the automatic stay to this action and further seeking an injunction under 11 U.S.C. § 105 barring the further litigation of the FTC's claims.[7]

Later that day, the Receiver effectively acknowledged that the Payment Order was covered by the automatic stay and submitted the issue of whether the stay should remain in effect to the bankruptcy court. In his opposition to Integretel's bankruptcy motions seeking permission to use cash collateral and to continue using its existing bank accounts, the Receiver argued, "The Federal Receiver believes that the appropriate remedy is relief from the automatic stay in order to effectuate the orders of the District Court with respect to the Receiverships, which motion the Receiver intends to file forthwith, should the Court not *sua sponte* order such relief."[8]

On the morning of Thursday, September 20, the FTC informed the Court's chambers of its intent to file its emergency motion and faxed a copy of the motion to chambers.[9] The FTC's motion failed to disclose the fact that the Receiver had already acknowledged that the Payment Order was subject to the automatic stay.

At 11:33 a.m. on September 20—an hour and a half after the FTC had informed chambers of its emergency motion and faxed chambers a copy of the motion, the Court's ECF notification system sent an email reciting the following action by the Court: "Endorsed ORDER striking [579] Motion. Proceedings against The Billing Resource d/b/a Integretel are stayed due to the entity's recent bankruptcy filing. Integretel may refile its motion, if necessary."[10] And at 1:16 p.m. that day, the Court entered an order formally declaring that the case had been automatically stayed by Integretel's bankruptcy:

---

6. Decl. of Michael Ahrens from bankruptcy proceedings, submitted herewith as Ex. 2 ("Ahrens Bankr. Decl.").

7. *The Billing Resource v. Chase*, No. 07-ap-05156 (Bankr. N.D. Cal. filed Sept. 19, 2007).

8. Ex. 3 hereto at 9-10.

9. *See* Ex. 4 hereto.

10. D.E.616.

00390

RER-33     2242

[T]he instant action against The Billing Resource, d/b/a Integretel, is subject to the automatic stay set forth in 11 U.S.C. § 362. The automatic stay granted by 11 U.S.C. § 362(a) will remain in effect until the bankruptcy case is dismissed or closed, or until such earlier times as set forth in 11 U.S.C. § 362(c), (d), (e) or (f).[11]

Based on the fact that chambers had been told about the motion, and had apparently received a copy of it, almost three and a hours before this order was entered, Integretel and its counsel reasonably believed that the Court had been aware of the FTC's motion when it issued this order and had taken it into consideration. As a result, Integretel reasonably concluded that the case was stayed and that there was no need for it to respond to the FTC's emergency motion (at least not on an urgent basis). Indeed, undersigned counsel were not even sure whether in light of the stay they were permitted to respond.

Counsel were therefore dumbfounded when they learned that at 4:11 p.m., the Court had—without waiting for a response from Integretel, without giving Integretel a deadline for responding, and without giving Integretel any warning that it was about to act inconsistently with the two stay orders it had issued the day before—granted the FTC's motion, vacated the prior day's orders, and held that the automatic stay did not apply. There was no genuine emergency justifying this action. The only circumstances that the FTC had identified in its motion as constituting an emergency was the fact that a hearing in the bankruptcy court was scheduled for the next day.[12] That hardly constitutes an emergency, since the FTC could (and did) participate in the hearing.

Integretel has now appealed both the Court's September 21 Clarification Order and its September 14 Omnibus Order to the Eleventh Circuit, and it respectfully asks that the Court stay its rulings pending the outcome of that appeal.

Argument

In order to obtain a stay pending appeal, the movant must ordinarily satisfy one of two alternative standards:

- Under the first standard, the movant must show (1) that it is likely to succeed on the merits on appeal, (2) that without a stay it will be irreparably injured, (3) that a stay

---

11. D.E. 617.

12. FTC Emergency Motion at 11 (D.E. 618).

00391

RER-33    2243