2

<u>Telephonic appearances continued</u>:

| | |
|---|---|
| For Billing<br>Solutions: | James Pardo, Jr., Esq.<br>King & Spalding<br>1180 Peachtree Street, N.E.<br>Atlanta, Georgia  30309 |
| Observing for the<br>Receiver: | Jeffrey Schneider, Esq.<br>Tew Cardenas, LLP<br>Four Seasons Tower, 15th Floor<br>1441 Brickell Avenue<br>Miami, Florida  33131-3407 |
| From the Federal<br>Trade Commission: | Collot Guerard, Esq.<br>Richard McKuen, Esq.<br>600 Pennsylvania Avenue, N.W.<br>Washington, D.C.  20580 |
| Digital Court<br>Recorder: | United States Bankruptcy Court<br>Clerk of the Court<br>Erin Coyle<br>280 South First Street, Room 3035<br>San Jose, California  95113<br>(408) 535-5003 |
| Certified Electronic<br>Transcriber: | Palmer Reporting Services<br>P. O. Box 30727<br>Stockton, California  95213-0727 |

Proceedings recorded by digital recording;
transcript produced by federally-approved transcription service.

00501

RER-33      2353

*Continued Emergency Motion for TRO and Order to Show Cause*          3

1  | Tuesday, October 2, 2007                          2:08 o'clock p.m.

2  |                    P R O C E E D I N G S

3  |          THE CLERK:  Please rise.  This is the United States

4  | Bankruptcy Court for the Northern District California.  Court is

5  | now in session.

6  |          THE COURT:  Please be seated.

7  |      (Comments off the record.)

8  |          THE COURT:  The Billing Resource versus Chase, et al.

9  |          May I have appearances of counsel?  First, those in

10 | the courtroom.

11 |          MR. AHRENS:  Good afternoon, Your Honor.  Michael

12 | Ahrens and Steven Sacks of Sheppard, Mullin, Richter and

13 | Hampton, counsel for the debtor and the moving party-plaintiff.

14 |          THE COURT:  Good afternoon.

15 |          MR. MORA:  Good afternoon, Your Honor.  Michael Mora

16 | for the Federal Trade Commission.

17 |          THE COURT:  Good afternoon, Mr. Mora.

18 |          James Pardo?

19 |          MR. PARDO:  Yes, Your Honor.  Jim Pardo from King and

20 | Spalding on behalf of BSC, Billing Solutions.

21 |          THE COURT:  Walter Oetzell?  Walter — Walter Oetzell,

22 | may I have your appearance?

23 |          MR. OETZELL:  Yes.  Good — good afternoon, Your Honor.

24 | Walter Oetzell of Danning, Gill, Diamond and Kollitz.  We're

25 | observing.

00502

RER-33     2354

*Continued Emergency Motion for TRO and Order to Show Cause*                4

1      THE COURT:  Jeff Schneider?

2      MR. SCHNEIDER:  Good afternoon, Your Honor.  Jeff

3  Schneider from Miami on behalf of the receiver.  And I'm also

4  observing.

5      THE COURT:  Richard McKewan.

6      THE OPERATOR:  Your Honor, we were not able to reach

7  him.  We do have Collot Guerard on, though, instead.

8      THE COURT:  We'll take her appearance.

9      MS. GUERARD:  Collot Guerard from the Federal Trade

10  Commission.

11      THE COURT:  Thank you very much.

12      Is there anybody else on the phone whose name we have

13  not called?

14      THE OPERATOR:  No, Your Honor.

15      THE COURT:  Thank you.

16      Mr. Ahrens.

17      MR. AHRENS:  Your Honor, I would propose we do the

18  following today.  As the moving party, I would appreciate if I

19  could — if I could make a brief presentation as to what's

20  happened since the last hearing, because a lot of things been

21  going on.

22      THE COURT:  Sure.

23      MR. AHRENS:  Make a few comments to the briefs we

24  filed yesterday, obviously — or we received yesterday from the

25  FTC obviously that we could not reply to.  And then, because of

1    the burden of so many other things going on, I've not been able

2    to devote the time to this adversary complaint and read all the

3    cases.  But my partner has been responsible for it, so he would

4    like to address the merits of the motion.

5                    THE COURT:  That's fine.

6                    MR. AHRENS:  Okay.  Thank you, Your Honor.

7                    First, Your Honor, last night, on a timely basis, the

8    Office of the U.S. Trustee appointed an Unsecured Creditors'

9    Committee consisting of six people.  The Chair of the Committee

10   has already been selected and contacted me by email a few

11   minutes ago and said that he would like to talk to me and the

12   president of the company later today or tomorrow.

13                   Since the last meeting we have been in meetings with

14   Mr. Benvenutti.  We have talked to Ellen Friedman, and we talked

15   to a number of other counsel for customers, until an official —

16   until the official committee selects its counsel.  We don't

17   know, obviously, who that will be.

18                   The probability, if experience is anything, is it will

19   probably be a couple of days until the official committee

20   selects its counsel.  But we haven't stopped.  We're still

21   talking to counsel about the matters discussed in court last

22   time.  And that was a plan whereby on or before October 15th,

23   the final cash collateral hearing, we could have more permanent

24   budget that discusses things, including prepayment of creditors,

25   so that we can keep the ongoing concern value of the company.

1  But that's not for hearing today.  But I just want to inform the

2  Court that we are proceeding on that basis.

3       Your Honor, the hearing today is not about three

4  weeks.  I said that last time.  It's about obtaining a

5  preliminary injunction, because beyond three weeks and even for

6  the next three weeks there's a lot of work has to be done in the

7  case in Florida.  We have obtained the stipulation of the

8  receiver —

9       THE COURT:  Can I interrupt for a minute?

10       MR. AHRENS:  Yes.

11       THE COURT:  Have you stipulated that this is a hearing

12  on a preliminary injunction, or is this a hearing on a TRO,

13  because the notice — my impression was that it was a hearing on

14  a TRO, not a hearing on a preliminary injunction.  So I've been

15  looking at it in that context.  If I'm mistaken, and this is —

16  and everybody's agreed that this is a hearing on a preliminary

17  injunction, then I need to know that.

18       MR. MORA:  Well, Your Honor, I'd be jumping ahead of

19  myself, but I will say that, as we said in our papers, we don't

20  think they're entitled to any injunction — injunctive relief at

21  all —

22       THE COURT:  That's not what I'm asking you, sir.

23       MR. MORA:  Yes, Your Honor.  But if Your Honor is

24  inclined to grant any injunctive relief, we would ask that it be

25  entered in the form of a preliminary injunction.

*Continued Emergency Motion for TRO and Order to Show Cause*                    7

1         MR. AHRENS:  Your Honor, the —

2         THE COURT:  I don't know whether I understood that

3    answer but, okay, thank you.

4         MR. AHRENS:  Nor do I, Your Honor.  And we know the

5    last line of their papers requests that be a preliminary

6    injunction.  That's not what we sought.

7         We have clearly sought a TRO until the 15th, and then

8    — or whatever date this Court sets for a preliminary injunction

9    hearing — and then we would have a full hearing on a preliminary

10   injunction.  And —

11        THE COURT:  That's the way I interpreted the request.

12        MR. AHRENS:  And that's what we have requested and

13   that's what we're still requesting.  We were — we're hoping to

14   obtain, to obviate the need for this hearing today, to obtain

15   the stipulation of both parties.  We did get the stipulation of

16   the receiver.  The receiver has stipulated, in terms

17   satisfactory to us, that it's not proceeding in Florida until

18   the — for three weeks.

19        MS. GUERARD:  Your Honor, I'm having difficulty

20   hearing —

21        THE COURT:  You're trying to talk into two mics.  My —

22        MR. AHRENS:  Yes, likewise.  We're cutting out at the

23   most important parts.

24        THE COURT:  So just talk —

25        (Simultaneous talking.)

*Continued Emergency Motion for TRO and Order to Show Cause*          8

1          THE COURT:  I understand.  We're going to take care of

2    it.

3          MS. GUERARD:  And, Your Honor, you're cutting out

4    also.

5          THE COURT:  We're going to take care of it, counsel.

6          Mr. Ahrens, —

7          THE OPERATOR:  Your Honor, I also have — Richard

8    McKewan has now joined us.

9          THE COURT:  I can't hear you now.

10          THE OPERATOR:  Richard McKewen has now joined us.

11          THE COURT:  Wonderful.  Welcome, Mr. McKewen.

12          MR. McKEWEN:  Thank you.

13          MR. AHRENS:  I apologize.  I was trying to use two

14    mics as opposed to one.

15          THE COURT:  Right.

16          MR. AHRENS:  The Court has told me the way to be more

17    readable and hearable.  Is everybody now satisfied with the way

18    I'm talking?

19          MS. GUERARD:  So far.

20          MR. AHRENS:  Thank you.

21          THE COURT:  All right.  So don't talk into your paper;

22    talked directly into the microphone.

23          MR. AHRENS:  Yes, Your Honor.

24          THE COURT:  They're supposed to work better than this,

25    but they don't.

*Continued Emergency Motion for TRO and Order to Show Cause*                    9

1          MR. AHRENS:  Well, I'll — I'll try my best.

2          So the bottom line is we are here today because we did

3  receive the stipulation of the receiver, that for the next three

4  weeks this blocked account would be set up.  And we have been in

5  the process of setting it up.  And that we reserve all rights to

6  argue whatever we want to in three weeks, but they won't go

7  forward in Florida.

8          We did not get a return call or any stipulation from

9  the FTC.  And, therefore, we are today going forward on only one

10  thing, the TRO.  If the Court grants or denies the TRO, we would

11  still want a preliminary injunction hearing set at the Court's

12  earliest convenience.  But this is not an application for a

13  preliminary injunction.  It's only an application for a TRO.

14          With that in mind, I only have a few comments on the

15  reply brief yesterday.  And then I'd like my partner, Steve

16  Sacks, to address the merits of the TRO.

17          First, at page 3, lines 6 to 7, it is stated, "Also,

18  although summary judgments are due November 6, 2007 Integretel

19  admits that it does not seek summary judgment."

20          Your Honor, the fact of the matter is that Integretel

21  will not be seeking summary judgment, but the FTC will.  And

22  this will be an ominous motion.

23          In this motion we already know from discovery and from

24  discussions in the case from our local counsel that they are

25  going to try to take the position, the FTC, that there is

00508

1  absolute liability here on behalf of an aggregator.

2          What happens in this case, it's in the papers, Your

3  Honor, is we serviced Network One and Access One.  They are

4  what's called the unscrupulous service providers by the FTC.

5          They may have been unscrupulous, but they're not

6  Integretel.  They, in a billing transaction, assign their

7  billing transactions to us.  And we collect.

8          And it will be argued on a motion for summary judgment

9  by the FTC that there is absolute liability of Integretel,

10  whether we knew or did not know that there was any wrongdoing

11          As the papers in this adversary complaint set forth,

12  we are the ones who cut them off.  And we are the ones who

13  eventually called them to the attention of the world.  But we're

14  not here to argue the merits or demerits of that action today.

15          We're only here to inform the Court that they, the

16  FTC, tries to make us look like the wrongdoers.  And they will

17  file a motion for summary judgment.  And they will, in their

18  motion for summary judgment, seek an absolute liability

19  determination that, if determined, could be devastating to the

20  business of Integretel.

21          The second thing they allege in their papers, they

22  make it look like they're only going for regulatory relief.  But

23  at page 7, lines 10 through 13, they talk about the unscrupulous

24  alleged service providers.  And I already mentioned that.

25          But on page 6 at lines 5 to 7, they say, "Beyond

1  monetary injunctive relief in the form of disgorgement of

2  ill-gotten gains and restitution to consumer victims, the FTC

3  seeks a permanent injunction."

4       What they fail to call to the Court's attention here

5  is that while the receiver is acting on behalf of the two

6  service providers and wants 1.7, they want money, too.  The

7  money they want is $5 million, less the amount of refund.  The

8  amount of money they are seeking by admission in this paragraph

9  is $4.6 million.  So they're seeking money, and they want to do

10 it in another court while we're busily trying to reorganize.

11      They then, in the next sentence say, "The FTC seeks a

12 permanent injunction halting Integretel's allegedly unlawful

13 practices, rescission of contracts."  They want to rescind

14 contracts, too, Your Honor.

15      Your Honor, this is only the second week of this

16 bankruptcy case.  We know they're going to file a motion for

17 summary judgment in Florida.  We know that it will take, in the

18 declaration already set, close to 500,000 to a million dollars

19 just in attorneys' fees to defend against those actions.

20      We've asked them to stipulate so we can try to get

21 together with the committee just for a TRO, and they've refused

22 to do it.  But we would like the TRO in place, and then we will

23 fully argue the preliminary injunction.

24      And we do suggest, right now, that you set the hearing

25 on the prelim as soon as October 15th when the continued cash

*Continued Emergency Motion for TRO and Order to Show Cause*    12

1   collateral hearing is, or it doesn't have to be then.  It could

2   be later.

3        THE COURT:  It can be the 15th.

4        MR. AHRENS:  Yes.  And it would be — it would make

5   sense.

6        THE COURT:  I already have a note to myself to set it

7   for the 15th.

8        MR. AHRENS:  Well, thank you, Your Honor.  Then I

9   won't argue any further.

10       But the bottom line is, Your Honor, — I don't intend

11  to convince the Court that we're the innocent victims, but these

12  are only two customers of ours.  And we have segregated, as a

13  price for a stay, $1.7 million for the receiver.

14       And we would ask the Court to impose a temporary

15  restraining order at least for the next three weeks.  Then we'll

16  argue the bigger picture.  Everything that I've been arguing

17  here will be argued, why we can't afford 500,000 to a million

18  dollars.

19       You will have a revised cash collateral budget at that

20  time.  We will have talked to the counsel for the Creditors'

21  Committee.

22       THE COURT:  We may have a position by the Creditors'

23  Committee.

24       MR. AHRENS:  We may have a position that I don't like,

25  and we may have a position that I like.  But all I'm asking for,

1 | Your Honor, is a TRO until then. And Mr. Sacks will address the

2 | merits of a case.

3 |      THE COURT:  Thank you.

4 |      Can everybody hear okay on the phone?

5 |      MS. GUERARD:  Yeah.  Judge, could you please remind

6 | the lawyers just to talk into one microphone?

7 |      THE COURT:  I will.

8 |      Mr. Sacks, talk into one microphone.

9 |      MR. SACKS:  I've been reminded.  I'll get close to the

10 | one microphone I'm talking to.  I've been reminded.  Okay.

11 |      The FTC cites the *MCorp* case as purportedly telling

12 | the Court that it doesn't have 105 power here.  The *MCorp* case

13 | didn't deal with 105 at all.  In fact — and it certainly didn't

14 | tell the Court it doesn't have 105 power.  As the Court probably

15 | has already deduced here, regardless of whether there's an

16 | automatic stay, the —

17 |      MR. SPEAKER:  That microphone isn't working so well.

18 |      THE COURT:  You're not — you need to be two inches

19 | from the mic, unfortunately.

20 |      MR. SACKS:  Okay.

21 |      THE COURT:  I'm sorry.  I wish it were otherwise.  You

22 | could sit and pull the microphone right up to you, because

23 | there's nobody —

24 |      MR. SACKS:  Let me try doing that.

25 |      THE COURT:  There's going to be no problem with that.

1    (Comments off the record re microphone.)

2         THE COURT:  Pull it right up to you so you're speaking

3    directly into the mic.

4         MR. SACKS:  Easier to do, I think, if you're sitting

5    down, than if you're —

6         THE COURT:  Right.

7         MR. SACKS:  — standing above it.

8         THE COURT:  And your face shouldn't move around.  I

9    wish it were otherwise, but you just should stay constant.  I

10   want to make sure they hear everything you say.

11        MR. SACKS:  Okay.  Your Honor, I was talking about

12   Section 105 and saying that the Court has power under 105

13   regardless of the existence of the automatic stay to enjoin or

14   to stay.

15        And here we're asking the Court to stay the FTC from

16   proceeding against Integretel in the Florida action, first, as a

17   matter of temporary restraining order.

18        And in the *MCorp* case, the Court dealt with an

19   argument that the stay afforded to proceedings against property

20   of the estate prevented the administrative agency there from

21   going forward against the debtor.  And the Court said, "Well, we

22   don't have to deal yet with property-of-the-estate issues,

23   because they're just starting their administrative proceeding.

24   Therefore, they can go forward because of the exception to the

25   automatic stay."

1    That's not our issue here today as to the FTC.  The

2  issue is can they go forward with this administrative action

3  when, in the words of the — what the FTC calls and I'll call the

4  *FAMCO* case, it — it threatens the bankruptcy process.

5    In other words, if this enforcement action continues,

6  the debtor will be forced out of business because it will have

7  to spend a huge amount of its available cash to defend itself

8  there and not be able to continue doing its operations.  The

9  situations where —

10    THE COURT:  Mr. Sacks?

11    MR. SACKS:  Yes.

12    THE COURT:  You've got the microphone on a slant, and

13  you're talking into it on the side.

14    MR. SACKS:  Thank you.

15    THE COURT:  I want to make sure that everybody can

16  hear everything you say.

17    MR. SACKS:  Okay.  I'll try speaking — is that better

18  directly into it?

19    THE COURT:  Yes, absolutely better.

20    MR. SACKS:  I feel like I'm too close to it, but as

21  soon as I back away that I'm too far away.  So it's very — it's

22  a very narrow band of opportunity here.

23    The cases that address this issue about whether

24  parties should be able to enjoin administrative action typically

25  involve a situation, as in *FAMCO*, where the alleged wrongdoer is

1   the one that the administrative agencies are pursuing, and it's

2   their conduct directly.  And they've either already been shut

3   down, or the administrative action seeks to shut them down.

4          And that's in sharp contrast, I think, to this case

5   where even the FTC admits that we were at best an accessory to

6   what they regard as the unlawful conduct which they would, in

7   turn, then characterize as unlawful.  But they've never sought a

8   preliminary injunction against Integretel.  They haven't tried

9   to shut us down.

10          But the effect of what they're doing, through this

11  administrative action, would indeed be to prevent us from

12  continuing the operations.  So the regulatory process, the

13  administrative process here, has this unintended effect that's

14  very different from the cases where the court doesn't give a lot

15  of credence to the law violators' claims because that's what the

16  administrative agency is directly pursuing in all respects.  So

17  I would say that you have to look at the factual differences

18  between those cases.

19          But the *FAMCO* case that both parties cite, the *First

20  Alliance Mortgage* case specifically says that, "The Bankruptcy

21  Court has the obligation to protect and marshal the estate's

22  assets, therefore a severe-enough threat to the assets of the

23  estate constitutes a threat to the bankruptcy process."  And

24  that would justify Section 105.  And that is at page 655, 264 BR

25  at 655.

*Continued Emergency Motion for TRO and Order to Show Cause*          17

1          Finally, I want to point out that we think 105 is

2   being used here to further the provisions of the Bankruptcy

3   Code, not — not to contradict them.

4          The provisions of the code obviously allow the debtor

5   to file a plan to reorganize, to pay creditors *pro rata*, to

6   address unsecured claims in the context of the entire case.  And

7   really the FTC in this whole process is trying to jump to the

8   head of the line in a way that threatens the debtor's ability to

9   proceed.

10          We've pointed out in the papers — I won't — I won't

11   belabor it — the standard for issuing a 105 injunction.  We need

12   to show a likelihood of success on the merits, which is

13   interpreted as being the ability to reorganize.

14          Obviously at this point in the case we can't

15   demonstrate a huge amount of — we can't put forward a huge

16   amount of evidence on that point, but the case is proceeding.

17   There's a Creditors' Committee.  We're negotiating.  We've

18   gotten the, at least, the interim use of cash.  There's no

19   reason to cut off our ability to reorganize at this stage.

20          And the irreparable injury part of the standard is, is

21   really what I've already addressed in terms of whether this,

22   this proceeding threatens the Court's ability to oversee a

23   bankruptcy.

24          And I'll stop there, unless the Court has questions.

25          THE COURT:  I don't have any questions.

00516

RER-33          2368

1    Sir?

2    MR. MORA:  Yes, Your Honor.

3    To begin with, Your Honor, my understanding also is

4    that at this hearing today we're addressing the debtor's TRO

5    motion as it pertains to the enforcement action and not the

6    contempt proceeding, because of the —

7    THE COURT:  Right —

8    MR. MORA:  — arrangement between the trustee.

9    THE COURT:  — because of the three weeks.

10    That's your understanding, too, isn't it, Mr. Sacks?

11    MR. SACKS:  That's correct, Your Honor.  We need the —

12    both to be set for preliminary injunction, but we —

13    THE COURT:  Absolutely.

14    MR. SACKS:  Right.

15    THE COURT:  Because you only have a three-week

16    agreement.

17    MR. SACKS:  That's correct.

18    THE COURT:  Yes, I understand.  So you're on the same

19    page.

20    MR. MORA:  Thank you, Your Honor.

21    And before I address the merits, I just want to

22    respond briefly to a couple points that Integretel counsel

23    argued, both of which are wrong.

24    One, he said the FTC is just charging Integretel as

25    some kind of mere accessory.  And that's false.  They've been

1    charged directly with engaging in the same types of deceptive

2    practices that the main defendants have.  So that's not

3    accurate.

4            And, secondly, this whole argument about FTC trying to

5    move to the head of the line on any monetary claim that we

6    eventually obtain, that's not accurate, either.

7            We've — we've admitted in our papers, and it's the law

8    that, one, our action is exempt from the stay under 362(b)(4).

9            And in terms of monetary relief we can ask the

10   District Court to fix the amount of our claim, but we're left

11   with asserting the claim in this Court to collect monetarily.

12           THE COURT:  Well, is that really your position,

13   because then you wouldn't be asking for 1.7 million to be turned

14   over to you in the Florida Court.  And you'd be telling them

15   that you'll agree to have that 1.7 million just sit there

16   indefinitely.  And my understanding is you haven't yet done

17   that.

18           MR. MORA:  Well, Your Honor, that's different.  That

19   1.7 pertains to the contempt proceeding.

20           THE COURT:  Right.

21           MR. MORA:  So —

22           THE COURT:  But the contempt proceeding relates to the

23   merits underlying the — the 1.7 has to have some meaning behind

24   it.  And — and it — the meaning where — of it is you're claiming

25   an entitlement to that money.  And if the money is preserved,

1   then — if you're claiming an entitlement to the money, you're

2   moving to the head of the line or attempting to move to the head

3   of the line with respect to 1.7.

4         If you agree that the money can be held, pending final

5   adjudications of whatever appeals there are, then that's a

6   different matter.  And I don't know how to read what you've just

7   said.

8         MR. MORA:  Well, Your Honor, — well, I'll — the 1.7 is

9   an amount that the District Court ordered had to be turned over

10  by —

11        THE COURT:  Right.  But that puts you to the head of

12  the line.  Can you explain the relationship between your

13  pursuing — I mean, that was before —

14        MR. MORA:  Sure.

15        THE COURT:  — there was a bankruptcy.  Can you explain

16  the relationship between your pursuing the District Court order

17  to try to enforce the District Court order to have 1.7 turned

18  over to — to you and your statement that you're not trying to go

19  to the head of the line?

20        MR. MORA:  Yes, Your Honor.

21        First of all, it's not a turnover order in favor of

22  the Federal Trade Commission.  It's in favor of the receiver.

23  And it was entered because the District Court found that, on the

24  receiver's motion for order to show cause, it holds Integretel

25  in contempt, that those funds constituted property of the

1    receivership estate.

2    THE COURT:  Right.  But it — was there an adjudication

3    on the merits?

4    MR. MORA:  Yes, there was, Your Honor.

5    THE COURT:  On the merits, the underlying merits of

6    the 1.7 there were findings of fact and conclusions of law.  Was

7    there an evidentiary hearing?

8    MR. MORA:  No, it was a summary proceeding, Your

9    Honor, because it is of — it is an equity receivership

10    proceeding before a District Court.

11    THE COURT:  I'll ask Mr. Oetzell.

12    MR. MORA:  Yes, sir.

13    THE COURT:  Mr. Oetzell, was there a final

14    adjudication on the merits as to whether Integretel or the

15    receiver had the ultimate rights to the $1.7 million in a final

16    judgment which was appealable?

17    MR. OETZELL:  Your Hon- — Your Honor, Mr. Schneider

18    was taking care of that in Florida.  So he's better off to

19    answer that than I am.  But my understanding is that the — it

20    was — it is a summary proceeding.  And, indeed, it is on appeal.

21    The debtor did appeal it.  But I'll defer to Mr. Schneider on

22    that.

23    THE COURT:  All right.  Mr. Schneider, was there — was

24    there a final judgment as to the respective rights of the

25    parties on the merits as opposed to just having the receiver

1  hold the money for safekeeping?

2      MR. SCHNEIDER:  Yes, I believe there was, Your Honor.

3  And, as Mr. Oetzell said, Integretel has already filed a notice

4  of appeal of Judge Ryskamp's order.

5      THE COURT:  And were there findings of fact and

6  conclusions of law and a final judgment?  The fact that they've

7  appealed to protect themself doesn't mean that there was really

8  a final appealable judgment.

9      But you're an officer of the Court and you're telling

10  me that there was a final adjudication of the parties'

11  respective rights forever?  In other words, not you hold the

12  money for safekeeping, but you absolutely have the right to that

13  money indefinitely; you've proven the right?

14      MR. SCHNEIDER:  Absolutely.  Judge Ryskamp's September

15  13th order contains findings of fact and conclusions of law.

16  They are not separated as such.  It doesn't have numbered

17  paragraphs like you see in a pleading entitled, "Findings of

18  Facts and Conclusions of Law," but that is what his omnibus

19  order contains throughout it.

20      THE COURT:  And you think you have — you've got a

21  final decision on the merits as to the exact amount of a

22  judgment?

23      MR. SCHNEIDER:  Absolutely, Your Honor.  And it's

24  important for the Court to understand that the receiver's

25  contempt motion against Integretel was not predicated on the

1    FTC's enforcement action.

2           The 1.76 million doesn't represent, for example,

3    Integretel's earnings from the relationship with Access One and

4    Network One.  These are funds that Judge Ryskamp determined were

5    property of the receivership estate.  These were reserve funds

6    that belonged to Access One and Network One.

7           THE COURT:  Thank you.

8           Go ahead, Mr. Mora.

9           MR. MORA:  Well, — and, Your Honor, I want to get to

10   my — to my main argument here, but I still want to address

11   something that the Court said.

12          The — the order — the omnibus order that was entered

13   in favor of the receiver on the contempt motion, it's an order

14   for equitable relief.  It's an order in aid of the injunction,

15   the receivership proceeding, that the District Court had

16   previously ordered at the FTC's request.  So it's not a money

17   judgment.

18          THE COURT:  Well, then, I don't understand.

19          MR. MORA:  It's an — it's an —

20          THE COURT:  Then how does it — and how can you say

21   that they've finally adjudicated the merits of who's entitled to

22   keep for all time the 1.7?  Mr. Schneider says that the receiver

23   has a final judgment entitling the FTC —

24          MR. MORA:  The receiver.

25          THE COURT:  — entitling the receiver on behalf of

*Continued Emergency Motion for TRO and Order to Show Cause*        24

1    whom?

2         MR. MORA:  On behalf of the Court — the receiver's —

3         MR. SCHNEIDER:  On behalf of two of the entities in —

4         THE COURT:  Don't interrupt, Mr. Schneider.

5         MR. SCHNEIDER:  I apologize.

6         THE COURT:  On behalf of the receiver, or on the

7    behalf of — who is the receiver representing in that context?

8         MR. MORA:  The Court, the District Court.

9         THE COURT:  But the District Court isn't entitled to

10   the money.  Who's entitled to the money for all times?  Who —

11   what did — in what way has the District — to what party has the

12   District Court determined — that's not proper English, either.

13        The District Court has determined that somebody is

14   entitled for all times to the $1.7 million in a final judgment;

15   is that correct?

16        MR. MORA:  In — in a summary proceeding, in an equity

17   receivership, yes, Your Honor.

18        THE COURT:  Okay.  And so which party is entitled to

19   the $1.7 million for all times?

20        MR. MORA:  The receivership was established to

21   preserve assets for consumer redress so that at the end of the

22   case when a final settlement or judgment is entered the funds in

23   the receivership can be used to pay redress to all of the

24   consumer victims.  And that is the way these FTC fraud cases

25   work, just like SEC fraud cases.

1      THE COURT:  So you agree that the appeal is properly

2  an appeal from a final adjudication, the appeal that was taken?

3      MR. MORA:  I think as to the discrete issue of whose

4  property it was, —

5      THE COURT:  Yes.

6      MR. MORA:  — yes, the District Court clearly decided,

7  in a summary proceeding, that it is — it is the property of the

8  receivership estate.

9      THE COURT:  For all times?

10      MR. MORA:  Yes.

11      THE COURT:  Not pending resolution of some other

12  issues between the debtor and the receiver?  It's not being held

13  pending resolution, final resolution of the parties' respective

14  rights.  It's a final adjudication on the merits that the

15  receiver, and never the debtor, is entitled to those funds?

16  That's your understanding?

17      MR. MORA:  That's my understanding, Your Honor, from

18  the face of the order itself, yes.

19      THE COURT:  Oh, no, but I'm — you know how these

20  procedures work.

21      MR. MORA:  Um-hum.

22      THE COURT:  Is that what was being sought, is a final

23  judgment determining finally the respective rights of the

24  receiver versus Integretel?  And that's the judgment that

25  resulted from what you were seeking at that time, or were you

1  seeking to preserve the $1.7 million so it was there if at the

2  end of the day after a final adjudication of rights it was

3  preserved?

4          MR. MORA:  It's — it's both, Your Honor.  It's both.

5          THE COURT:  Well, it can't be both.  It's either fully

6  resolved or not fully resolved between the receiver and

7  Integretel.  It's either — if Integretel still has the right to

8  demonstrate that it is entitled to a portion of $1.7 million,

9  then it's not a final adjudication of the party's respective

10  rights.

11          MR. MORA:  Well, Your Honor, my —

12          THE COURT:  It can't be both.

13          MR. MORA:  — my understanding is all of those issues

14  were litigated.  I mean, in a — when — when the receiver filed

15  the receiver's motion for an order to show cause to hold them in

16  contempt, Integretel responded with a flurry of not just

17  opposition to that motion, but a flurry of other motions,

18  arguing all of its alleged contract rights and other remedies.

19  And all of those — each of those motions was decided.  They were

20  all decided against Integretel.

21          THE COURT:  Right.  But you — here's the focus that I

22  have — I'm — is lost on, my efforts to communicate.  It's one

23  thing to say:  Integretel, I hear all your arguments, but I'm

24  not buying any of them now.  You deposit this $1.7 million.  You

25  hand this $1.7 million over to the receiver, and we'll deal with

*Continued Emergency Motion for TRO and Order to Show Cause*                    27

1   the merits later.  And I don't care what you say about all of

2   these arguments.  I'm rejecting all of them for the purposes of

3   preserving these funds.  You turn the funds over.  That's one

4   thing.

5           It's another thing to say:  I have finally adjudicated

6   all of Integretel's rights.  You have no more rights to the

7   $1.7.  It's over.  Now I'm enforcing my own judgment.  Turn it

8   over.

9           MR. MORA:  It's the latter, Your Honor.  That's

10  exactly what it was, the latter.

11          THE COURT:  Okay.  Thank you.

12          MR. MORA:  So, Your Honor, I'd like to turn to then

13  the merits of Integretel's request that this Court issue

14  extraordinary relief in the form of a temporary restraining

15  order against the Government to prevent us from prosecuting our

16  consumer protection action against Integretel.

17          I think at page 1 of their brief Integretel has

18  conceded at the outset that FTC's prosecution of the Florida

19  action is not subject to stay.  And while I won't argue it, I've

20  briefed the merits of that issue in our opening brief.  It's

21  important that —

22          THE COURT:  Well, let me just ask you a question.

23          MR. MORA:  Yes, Your Honor.

24          THE COURT:  The District Court has made that

25  determination, right?

1    MR. MORA:  Yes, Your Honor.

2    THE COURT:  Okay.  So do I have the — I'm not an

3  Appellate Court.  If I think in my heart of hearts and in my

4  judicial — with my judicial knowledge and experience that it is

5  subject to the automatic stay, what can I do about it?

6    MR. MORA:  We agree, Your Honor.  We think the

7  District Court has decided the issue ready.

8    THE COURT:  Okay.  So the fact that they haven't

9  raised that issue with me doesn't mean they agree with the

10  District Court.  It just means they agree that the issue has

11  been decided.

12    MR. MORA:  Well, Your Honor, I'm reading from page 1

13  of their opening brief.  "Integretel concedes that the FTC's

14  prosecution of the Florida action is not subject to the

15  automatic stay pursuant to" —

16    THE COURT:  Let me just go back.  Mr. Ahrens or Mr.

17  Sacks, I don't — if either one of you, whoever is appropriate to

18  answer — was it your position before the District Court that the

19  stay was inapplicable?

20    MR. SACKS:  Well, unfortunately, we didn't get to

21  brief that issue before the District Court.  The Court ruled on

22  their emergency motion without giving us a chance to respond.

23  And I think our position is then, and still is, that there are

24  aspects of their enforcement action that are excepted from the

25  stay under 362(b)(4), but that there are other aspects which

1   unfortunately the court has held are not subject to — the court

2   in Florida has held they're not subject to the automatic stay,

3   that we think are, in fact, subject to the automatic stay.

4          THE COURT:  So there's your concession.  It's not a

5   concession.  It's — they basically defer to the decision of the

6   Florida court with respect to those aspects they think are not

7   subject to the stay.

8          MR. MORA:  Then I'm not clear on which — I'm reading —

9   I'm looking right at the face of their brief, Your Honor.

10         THE COURT:  Right.  Well, I read that, too, and I

11  thought it meant the same thing that — that they were just

12  basically deferring to the Florida court.  They know that I'm

13  not an Appellate Court.

14         And so they're — that — do you want him to explain to

15  you which parts are and which parts aren't?  I would take the

16  Court's time to do that, if that would be helpful to you.

17         MR. MORA:  No, Your Honor.  I'll proceed.

18         Turning then to their request for an injunction

19  pursuant to 105.  As we understand it now, this hearing today

20  only relates to their request for a temporary restraining order

21  for the next —

22         THE COURT:  That's correct.

23         MR. MORA:  — two to three weeks and only as to the

24  FTC's prosecution of the enfor- — of the enforcement action.

25         THE COURT:  Also correct.

1    MR. MORA:  Now when we were here last week, although

2    Your Honor did not take argument on this motion at that time,

3    Your Honor indicated to the debtor that you thought additional

4    evidence was required on the issue of litigation costs that they

5    argued in their motion.  And you gave them an opportunity to

6    supplement and continue this hearing until today.

7         Well, they filed supplemental papers, and Your Honor

8    has seen them.  There is no additional evidence in there on

9    litigation costs as the Court requested.

10        And with the FTC has done is we have submitted a

11   detailed declaration of the lead attorney in the enforcement

12   action for the FTC, Laura Kim, explaining in detail how, number

13   one, discovery is closing this Friday, the end of this week.

14   All discovery of Integretel, by Integretel, has been completed.

15        The remaining depositions were noticed by parties

16   other than Integretel.  So — and, in fact, through last week at

17   least Integretel's counsel was appearing at the depositions and

18   participating, claiming no prejudice at all to the debtor.  And

19   that's all laid out in Ms. Kim's declaration.

20        Also, Your Honor, after the close of discovery there

21   is at least a one-month period before dispositive motions are

22   filed.  And as Integretel just told you today, they don't intend

23   to file one.  The FTC does, but they don't.

24        So we submit, Your Honor, that they have not met their

25   burden of showing what threatening litigation costs they would

1  have in the next two-to-three-week period when virtually nothing

2  is going to be happening other than finishing discovery this

3  week of parties other than Integretel.

4      They — they've simply not met their burden for

5  purposes of this TRO hearing today, because their whole argument

6  for why they think they're entitled to this extraordinary relief

7  stands or falls on this threatening litigation-costs argument.

8  And it falls for purposes of this hearing today.

9      But let me address on the merits, Your Honor, the 105

10 injunction issue.  On the face of it, Section 105 authorizes the

11 Court to issue orders, including injunctions, necessary to carry

12 out the provisions of the Bankruptcy Code.

13     And so just in a plain language reading of the

14 statute, Your Honor, we submit that issuing an injunction

15 against a governmental law enforcement action that is exempt

16 from the automatic stay does not carry out the provisions of the

17 Code.  It flies in the face of the most relevant provision here

18 to governmental exception.  And for that reason alone the Court

19 should deny the motion.

20     It would also, Your Honor, interfere with the Federal

21 Trade Commission's enforcement of its own statute, its own

22 mandate to protect consumers nationally.

23     However, Your Honor, we acknowledge, and courts,

24 including courts in the Ninth Circuit, have held that in certain

25 rare circumstances Bankruptcy Courts may enjoin governmental

1    enforcement of actions under Section 105.

2        Now the only term of art that has been established for

3    the applicable standard is that such extraordinary relief may be

4    appropriate when there is some kind of severe threat to the

5    bankruptcy estate as a result of the government action.  What is

6    a threat?  A threat can be anything.

7        I think we know from the cases that have been decided

8    under that standard that — including some cases in the Ninth

9    Circuit — the threat can't just be the mere dilutive effect of

10   the agency establishing its claim and fixing it and then

11   asserting it against the bankruptcy estate.

12       THE COURT:  Say that again, please?  It can't be what?

13       MR. MORA:  It cannot be the mere dilutive effect, the

14   mere — the mere effect of the agency establishing and fixing the

15   amount of its claim in the other forum because, after all,

16   that's what every creditor is going to be doing in this case if

17   it proceeds —

18       THE COURT:  Well, not exactly, because normally the

19   Bankruptcy Court would have discretion to decide when claims

20   should be adjudicated.  For example, if you have an estate which

21   is insolvent, then it may not make sense for the debtor to be

22   forced to mitigate claims until it's determined that they'll be

23   enough money to pay unsecured creditors anything.

24       If there are claims by secured creditors, which —

25   although they may be contested, account for all the assets of

1   the estate, or if it may be that there won't be any assets of

2   the estate for any other reason available to unsecured

3   creditors, then a court often will not allow creditors to prove

4   up their claims until it has a better understanding of what the

5   assets are.

6           So you're right in a sense that creditors ultimately

7   will have the right to prove up their claims. But it's all

8   organized and controlled by the Bankruptcy Court so it's done

9   efficiently.

10          And so it would seem to me that one of the arguments

11  you're going to have to raise or that maybe you should raise in

12  the context of preliminary injunction is to demonstrate that

13  there are going to be funds for you at the end of the day

14  anyway. There may or may not be.

15          MR. MORA: Yes, Your Honor.

16          THE COURT: And that it would be an abuse of the

17  Court's discretion to run this case like it would any other

18  case. And that is to, if appropriate, defer adjudication of

19  some claims until it's determined what the assets are.

20          MR. MORA: Well, Your Honor, I don't think any of us

21  have sufficient information to assess that at this point. So...

22          THE COURT: Well, given that that's your situation,

23  then to force the debtor to adjudicate, to litigate, in a

24  situation where there may not be any money at the end of the day

25  for the FTC or the receiver is problematic to a Bankruptcy

1    Judge.

2    MR. MORA:  I understand, Your Honor.  But that's not

3    what the debtor is arguing in its hypothetical argument of why

4    they think they're entitled to relief.

5    THE COURT:  I think the debtor has clearly told me

6    that the debtor is insolvent.  Mr. Ahrens told me that

7    practically in its first sentence before the Court, that the

8    debtor is an insolvent debtor.  So I don't think that that's

9    correct.

10   I mean, maybe that's a — that word means something

11   more to me than it does to you in this context, but that's —

12   that issue is on the table, whether Mr. Ahrens' papers, or Mr.

13   Sacks' papers are clear enough to you on that, I want you to

14   know from my standpoint the issue is on the table.

15   MR. MORA:  Yes, Your Honor.

16   And the second, which I think is really the focus of

17   their argument, and what I'm going to address for the rest of my

18   statement, is this whole issue of litigation costs.  How do we

19   assess that?  When could litigation costs, meaning the costs of

20   litigating the government own enforcement action and the

21   nonbankruptcy forum, when do those constitute, quote, threat, a

22   sufficient threat to justify the extraordinary act of issuing an

23   injunction against the government under Section 105?

24   THE COURT:  Because if you're going to have or if

25   there's a substantial chance that you're going to have an

1  unsecured claim at the end and that there's going to be no money

2  to pay it, then it doesn't make any sense for the debtor to

3  devote substantial funds defending against an unsecured claim

4  that in the end may not get anything.  So we're balancing both

5  of those issues and they're related.

6         And, for example, if the debtor doesn't have enough

7  money to function and to fund the litigation costs

8  simultaneously and a lot of people have an interest in the

9  debtor functioning, then that's a factor.

10         But the other factor is should the Court dissipate,

11  allow the debtor to dissipate its funds in a situation where you

12  at the end of the day may be an unsecured creditor who is going

13  to share pro rata with other unsecured creditors and should the

14  Court, even if the unsecured creditors are going to get

15  something or may get something, should the Court defer the

16  adjudication, the liquidation of your claim until it's clearer

17  what the situation is?

18         For example, if at the end of the day there's a small

19  pot available for unsecured creditors and it has been determined

20  that you're an unsecured creditor, you're going to be in a much

21  more likely position to settle than to spend a fortune

22  litigating this case.  All of those factors are factors that the

23  Bankruptcy Court deals with every day in all of its cases, all

24  of its Chapter 11 cases.  So these are not new factors to the

25  Court.  They're factors that Bankruptcy Courts across the

1  country deal with on a routine basis.  So that's the answer to

2  your question.

3         MR. MORA:  Yes, Your Honor.  And we think in assessing

4  the issue of litigation costs in this context, it's very useful

5  to look at the *FAMCO* case, because the same issue is in sharp

6  focus there.  And just lasering in on I think one of the most

7  relevant portions of that opinion, there the court held that in

8  assessing this issue of litigation costs and — in a context like

9  this, the appropriate analysis is not looking at the difference

10 between not litigating that action at all and what it would cost

11 to litigate the action that you're seeking to the estate, but

12 rather the difference between litigating that action in the

13 nonbankruptcy forum and really litigating the same thing before

14 the Bankruptcy Court.

15        THE COURT:  I understand, but the timing is

16 everything.

17        MR. MORA:  Yes, Your Honor.

18        And also importantly in applying the stringent

19 standard for whether injunctive relief is appropriate at all, we

20 think it's important for the Court to focus on something that

21 really the debtor entirely misses, and that is when you are

22 looking at the balance of the hardships you have to carefully

23 consider the harm to the FTC, the harm to the public of

24 enjoining this action.

25        And it really comes into sharp focus, in this case in

1    particular, Your Honor, despite what the debtor's opening

2    remarks are here today.  We've been in District Court with them

3    before.  We had to sue them several years ago in a case also

4    involving unauthorized billing.  That one was settled.  They

5    turned over all the funds that they had onhand that they had

6    collected for the defendants and turned them over to us in

7    settlement.  And those funds were eventually used to pay

8    consumer redress.

9           But we've also found through discovery in this

10   enforcement action that it's part of their pattern and practice

11   to service clients like this.  They know what they're doing.

12   They do their customer service.  They take complaint calls from

13   these people, these poor people who get these unauthorized

14   charges on their bills.  They know exactly what's going on.

15   That's how we brought these charges against them.

16          And we know from litigating other cases that they've

17   been doing these for numerous defendants in FTC cramming cases

18   that we've brought.  It's just we don't have the resources to

19   bring charges against them in every single case.

20          This one was so bad and so widespread, over $30

21   million in consumer injury in this case, that we saw fit to

22   charge them in this case, and that's why we're at the point

23   we're at today.

24          So, Your Honor, to — it just highlights how crucial it

25   is for the FTC to be allowed to proceed with its enforcement

1   actions.  If Your Honor enters any kind of injunctive relief it

2   will send a message to everyone who we bring consumer

3   protections actions against, that all they have to do is go and

4   file a bankruptcy petition and they will get cover.  And they

5   won't have to face charges for law violations and they will get

6   away with it and live another day to do it again.

7        And that's what we think will happen here, Your Honor,

8   if Your Honor enjoins us.

9        Your Honor, the Court also has to consider that the

10  FTC is not just seeking monetary relief, especially as I've

11  pointed out, because of the history of Integretel.  We need to

12  seek the strongest injunctive relief possible against them, to

13  make sure that this never happens again.  We're entitled to that

14  relief from the District Court.

15       It's not the type of relief that this Court would be

16  able to enter.  A permanent —

17       THE COURT:  Is that true?

18       MR. MORA:  We —

19       THE COURT:  Have you researched that?

20       MR. MORA:  Not thoroughly, Your Honor, but the type of

21  relief that we would seek would include a permanent injunction

22  against conduct of Integretel.  It would include setting up a

23  redress program to distribute the funds to all of these consumer

24  victims through funds that are collected by the receivership and

25  elsewhere and other types of equitable relief that the District

1 | Court is empowered to grant and routinely does.

2 | And so, Your Honor, we think —

3 | THE COURT: I'm not saying — I'm not saying I do have

4 | authority to do it. I just — I'm not aware one way or the

5 | other.

6 | MR. MORA: And so, Your Honor, we think the Court also

7 | needs to consider those factors very carefully in weighing its

8 | decision about whether to issue any kind of injunctive relief

9 | here.

10 | And finally, Your Honor, as I said at the outset, I

11 | think it was the first question you asked me, what we are asking

12 | the Court to do today, that if you're — this issue is so

13 | critical to us, well beyond this case, it's critical to our

14 | whole mission of protecting consumers nationwide, if Your Honor

15 | is inclined to any — enter any kind of injunctive relief today,

16 | we respectfully request that you enter it in the form of a

17 | preliminary injunction so that we can get finality on this issue

18 | and so that it can be addressed fully.

19 | Thank you, sir.

20 | MR. MORA: Thank you, Your Honor.

21 | MR. AHRENS: A few things just from the bankruptcy

22 | standpoint. First, this company has been in existence since

23 | 1988. This company is an aggregator. It deals with lots of

24 | customers. Currently the record reflects it deals with 54. Two

25 | of those were apparently wrongdoers, to no fault of ours. But

1    they were terminated in 2003 and 2005.

2        There's a third that we agree to a consent decree.

3    The FTC, Your Honor, is very powerful.  Many times you have to

4    agree to a consent decree to avoid costs of litigation.

5        With respect to the TRO, that's all we're seeking

6    until a prelim, and that was intentional.  Because we will have

7    more facts at the prelim once we talk to a creditors committee.

8        With respect to the TRO, we have said to this Court

9    there is no damage to the FTC.  They've admitted that we're not

10   even going to attend any of these depositions.  They're not

11   taking any of our depositions.  If there's a problem with the

12   discovery, this Court noted at the last hearing we would agree

13   to reopen discovery if we lose at the preliminary injunction

14   stage.  So we see no damage to a TRO.

15       We tried everything in our power to meet with the FTC.

16   I told them nine months ago, when I met in Washington, D.C., and

17   this is in the record, that this company is insolvent.  And I

18   told them nine months ago that if we got an order that we had to

19   turn over $1.7 million, that we would have to file bankruptcy to

20   protect other creditors.  So there's no news to the FTC here,

21   Your Honor.  It's just a simple matter of we have to protect

22   other creditors.

23       We tried to get a consensual TRO, not a prelim, and at

24   the prelim I will lay all my cards on the table.  We're going to

25   then say here's why it hurts.  Here's the $500,000.  I said

1   before:  This is not about three weeks.  This is about the

2   entire case.

3          Mr. Sacks, I — I mean I think we've said it fully,

4   Your Honor.  We're not asking for a prelim, just a TRO.  There's

5   no harm shown to the FTC for that TRO.

6          THE COURT:  Did you want to say something, Mr. Sacks?

7   It's hard to imagine that a lawyer would not want to say

8   something.

9          MR. SACKS:  And I'll try to do it right into the

10  microphone.  The only thing I would add to what Mr. Ahrens just

11  said is that we don't see an ongoing consumer-protection issue

12  with regard to the FTC's enforcement action right against us.

13  Whether — whether you call us an accessory to the alleged crime

14  or a direct violator, these —

15         THE COURT:  Well, the FTC doesn't have criminal

16  authority.  This isn't a crime.

17         MR. SACKS:  I use — that's what I'm saying.  I'm using

18  those terms figuratively and they shouldn't be considered

19  otherwise.  What I'm trying to say is that there isn't an

20  ongoing practice that the FTC is trying to enjoin in this case

21  that is currently ongoing.  That's not to say they haven't asked

22  for injunctive relief, but there isn't a request for provisional

23  relief against us and so there's no immediate need for the case

24  to continue to protect consumers, as they've alleged.

25         THE COURT:  Do you have anything else, Mr. Mora?

1          MR. MORA:  Yes.  I just absolutely vehemently disagree

2    with everything counsel just said.  There's an — there's

3    absolutely a need for permanent injunctive relief against

4    Integretel.

5          And read the Declaration of Laura Klim (phonetic); it

6    explains in black and white why that is so.

7          THE COURT:  Thank you, sir.

8                    RULING OF THE COURT

9          THE COURT:  Before the Court is debtor's request for a

10   temporary restraining order against the continuation of the

11   enforcement action brought by the Federal Trade Commission,

12   which I sometimes refer to as FTC, against the debtor and 16

13   other defendants in the District Court for the Southern District

14   of Florida, which I'll refer to as the Florida action.

15         MS. GUERARD:  Your Honor, could you try speaking into

16   the microphone?

17         THE COURT:  I am, but I'm getting closer.  Is that

18   more helpful?

19         MS. GUERARD:  Okay.  Yes.

20         THE COURT:  Okay.

21         MS. GUERARD:  Thank you.

22         THE COURT:  Do you want me to start over?

23         MS. GUERARD:  I think you could just continue, Your

24   Honor.  I just didn't — I'm sorry.  I just wasn't hearing all of

25   you, and I needed to.

*Ruling of the Court*                                            43

1          THE COURT:  I want you to hear all of me.

2          MS. GUERARD:  Okay.

3          THE COURT:  And without breaking into a Frank Sinatra

4    song.

5          In the enforcement action the FTC seeks, *inter alia*, a

6    permanent injunction against debtor as well as other relief

7    necessary to redress alleged injury to consumers resulting from

8    the alleged violations.

9          The Florida action is in the final stages of discovery

10   with discovery scheduled to be completed by the end of this

11   week, on October 5, 2007.  Dispositive motions are scheduled to

12   be filed on November 6, with opposition to those motions to be

13   filed on December 4.  A two- to four-week trial is set to

14   commence in the Florida action on February 25th, 2008.

15         The parties do not dispute that debtor has propounded

16   and answered all written discovery and depositions of debtor and

17   all of its employees have already been conducted.  The debtor

18   asserts that there are some remaining depositions noticed by the

19   FTC and other defendants that will require the attendance of

20   debtor's litigation counsel.  Debtor does not state how many

21   depositions scheduled in the next three weeks its litigation

22   counsel will need to attend or the estimated amount of fees and

23   costs debtor will incur as a result of that attendance.  Debtor

24   also asserts that debtor will not be filing any dispositive

25   motions, but anticipates having to respond to dispositive

*Ruling of the Court*                                       44

1  motions filed by other parties.

2         Debtor anticipates, on the other hand, having to spend

3  $821,600 in litigation costs over the next six months related to

4  depositions, discovery motions, dispositive motions, other

5  motions, pretrial submissions, and trial.  Debtor does not break

6  out the estimated fees into the various subcategories.  Debtor

7  estimates that in addition to those fees there will be an

8  estimated $10,000 in fees for local counsel and an estimated

9  50,- to $70,000 in costs.  In addition to these estimated fees

10 and costs, debtor estimates that the debtor will incur an

11 additional 50,- to $150,000 in fees related to issues related to

12 the receiver's request for the turnover of the over $1.7 million

13 that has been in dispute here.

14        The debtor also asserts that debtor has approximately

15 37 employees and, at this stage of the reorganization, debtor's

16 president is intimately involved in setting up a new program to

17 permit debtor to pay its customers on the front end for a

18 portion of the receivables submitted to the debtor postpetition.

19 The debtor's president is also the debtor's contact for counsel

20 in the Florida action.  The Court is also aware that a

21 97-percent subsidiary of debtor is actively being marketed and

22 debtor's management is monitoring that potential sale.

23        The parties do not dispute that under Bankruptcy Code

24 Section 362(b)(4) the automatic stay does not stay portions of

25 the Florida action.  The FTC argues that this Court does not

00543

RER-33      2395

*Ruling of the Court* 45

1  have authority to stay that litigation against the debtor under

2  Bankruptcy Code Section 105. This Court disagrees. Under *In re*

3  *First Alliance Mortgage Company*, 264 B.R. 634, Central District

4  of California 2001, the case the parties have been referring to

5  as "*FAMCO*," this Court has the legal authority to enjoin

6  prosecution of governmental actions against the debtor that fall

7  within the regulatory and police powers exception of Bankruptcy

8  Code 362(b)(4).

9      The standard for injunctive relief in the Ninth

10 Circuit is well settled: "A party must show either (1) A

11 likelihood of success on the merits and the possibility of

12 irreparable injury, or (2) The existence of serious questions

13 going to the merits and the balance of hardships tipping in its

14 favor...The required showing of harm varies inversely with the

15 required showing of meritoriousness." *Miss World (UK) Limited*

16 *versus Miss America Pageants*, 856 F.2d 1445 at 1448, Ninth

17 Circuit 1988, and its progeny.

18     In a reorganization context, a debtor seeking a stay

19 against a nondebtor must show a reasonable likelihood of success

20 — of a successful reorganization. Here debtor has demonstrated

21 that debtor has a reasonable likelihood of a successful

22 reorganization through the possible sale of its 97-percent owned

23 subsidiary Payment One or a possible pot plan providing a

24 pro-rata distribution to unsecured creditors or a possible plan

25 that would issue new stock in exchange for debtor's unsecured

*Ruling of the Court*                                                    46

1  debt.   The Court finds for TRO purposes that debtor has shown a

2  reasonable likelihood of a successful reorganization.

3         The general standard for enjoining the regulatory or

4  police powers action under Bankruptcy Code Section 105 is

5  closely tied to the irreparable injury prong for the test for

6  injunctive relief.  *FAMCO*, 264 B.R. at 653.  A Section 105

7  injunction may be appropriate under circumstances where the

8  costs of defending an action in terms of money and time taken

9  away from the reorganization are so high in comparison to the

10 assets of the estate, that allowing a litigation to continue

11 constitutes a threat to the bankruptcy estate.  *FAMCO*, 264 B.R.

12 at 655.  Here the debtor has not made the requisite showing for

13 a temporary restraining order for the next three weeks.

14         Based on the record before the Court, the harms of a

15 temporary restraining order against FTC outweigh the threatened

16 injury to the debtor.  The Court acknowledges that the debtor

17 has relatively few employees and that debtor's president is

18 working full time on debtor's reorganization.  However, based on

19 the declarations before the Court, during the next three weeks

20 in the enforcement action, parties other than the debtor will be

21 completing discovery by the end of this week and then the

22 parties will be preparing dispositive motions for filing on

23 November 6, 2007.  Debtor has acknowledged that debtor has

24 already completed its discovery and provided its employees for

25 deposition by the FTC and other parties.  Debtor has stated that

1  debtor will not be filing any dispositive motions.

2          Thus, on the record before the Court, there is minimal

3  amount of activity the debtor needs to take in the Florida

4  action during the next three weeks.  The Court notes that debtor

5  has not provided evidence of the approximate amount of funds to

6  be spend — to be spent in this litigation over the next few

7  weeks.  Moreover, based on Mr. Dawson's declaration, the Florida

8  action will require no more than several perhaps extensive but

9  several telephone calls each week.

10         On the other hand, issuing the temporary restraining

11 order may interfere with the FTC's ability to complete discovery

12 under the current scheduling order.  Moreover, the FTC has

13 apparently faced significant challenges trying to accommodate

14 the schedules of multiple parties and has scheduled multiple

15 depositions for the same day to complete discovery in the time

16 permitted.  The Court finds that based on the record before the

17 Court, the harms of a temporary restraining order against FTC

18 outweigh the threatened injury to the debtor.

19         However, it also appears that the current situation is

20 a temporary lull based in part on the debtor's completion of

21 discovery prior to the discovery cutoff and the agreement of the

22 parties to stay until October 17, 2007 any action related to the

23 Florida Court's September 14 order requiring, *inter alia*, debtor

24 to turn over approximately $1.7 million to the receiver.  Once

25 the agreement to stay the contempt and turnover proceedings

1    lifts and from early November 2007 through March 2008 there will

2    be a likely significant increase, a dramatic increase in the

3    amount of time debtor's management will be required to devote to

4    the Florida action.

5            First, there may well be litigation over the turnover

6    of the funds and the contempt proceedings.  Second, it is likely

7    the debtor will need to respond to dispositive motions filed —

8    scheduled to be filed on November 6.  Such responses will likely

9    consume the time of Mr. Dawson and also of debtor's other

10   employees as well as require substantial attorney's fees and

11   costs.  In addition, there will be trial preparation for the

12   two- to four-week trial scheduled to start on February 25th,

13   2007, not to mention the trial itself.

14           Moreover, based on the record before the Court, it

15   appears that the FTC is probably only an unsecured creditor in

16   the debtor's bankruptcy case.  There is no evidence in the

17   record — first — let me just go back.

18           The record is unclear to this Court as to whether the

19   Florida Court has finally adjudicated the merits of the

20   respective rights of the debtor and the FTC in any funds held by

21   the debtor.

22           It is not clear to the Court as of this juncture

23   whether the Florida District Court merely ordered the

24   approximately $1.7 million turned over to the receiver for

25   safekeeping pending a determination of competing claims of the

1   FTC, debtor, and debtor's other similarly-situated creditors to

2   those funds.  Even if the FTC, however, has a $1.7 million final

3   judgment as to the debtor, the debtor asserts that it held the

4   alleged reserve funds in a commingled account.

5        The Ninth Circuit and California courts have

6   consistently held that a party seeking to establish a trust over

7   commingled funds must trace those funds.  *In re Advent*

8   *Management Corporation*, 178 B.R. 480 at 499 — I'm sorry 491,

9   Ninth Circuit BAP 1995.  To trace commingled funds, the test is

10  the "lowest-intermediate-balance test."  As far as this Court is

11  aware, no party has made any effort to trace any funds over

12  which there may be a constructive trust.  So all the FTC likely

13  has is an unsecured claim that will share pro rata with debtor's

14  other unsecured creditors.

15       Plus it's not clear at all whether there will be funds

16  available to pay any unsecured creditors at the end — in this

17  case, in this bankruptcy case.

18       Thus, the Court finds that there is cause — there is

19  cause to issue an order to show cause as to why a preliminary

20  injunction should not be issued to enjoin the FTC from pursuing

21  the Florida action against debtor and to enjoin the receiver and

22  the FTC from taking action to obtain the turnover of the

23  approximately $1.7 million the Florida Court required debtor to

24  turn over to the receiver in the September 14, 2007 District

25  Court order.  The Court will issue an order to show cause as to

1  why a preliminary injunction should not issue.

2          The hearing on the order to show cause will be held on

3  October 15th at 2:00 p.m. along with a final hearing for use of

4  cash collateral.

5          And since counsel for the FTC prevailed on the motion

6  for — or the application for a TRO, I'll ask counsel for the FTC

7  to prepare a form of order unless he wants to agree that the

8  debtor should prepare that order.

9          MR. AHRENS:  If you want us to, we will prepare —

10          MR. MORA:  I would appreciate that.  Thank you.

11          MR. AHRENS:  We will prepare the order.

12          THE COURT:  Thank you.

13          Court is adjourned.

14          MR. AHRENS:  Thank you.

15          THE CLERK:  Please rise.

16      (Off the record at 3:14 p.m.)

17          THE COURT:  Let me just say for the record, we've

18  disconnected all parties.  Does anybody else need to be involved

19  in this briefing schedule?

20          MR. AHRENS:  It's just between the two of us.

21          MR. SACKS:  Hopefully not.

22          THE COURT:  Okay.  Okay.

23          MR. SACKS:  Just us.

24          MR. AHRENS:  Now maybe I can talk like regular.

25          THE COURT:  Yeah, you could talk like regular.

1          MR. AHRENS:  I just want to remind the FTC and

2    everybody in the court that I think our time periods are we have

3    to file something on the 10th with respect to the final hearing

4    on cash collateral and any replies have to be filed on the 11th.

5    I don't know that it has anything to do with this, but we are

6    aiming for the 10th to hopefully have concluded our negotiations

7    with the committee, and that might be important for the — for

8    the briefing schedule.

9          I throw that out, but I'll let Mr. — Mr. Sacks and you

10   address what the briefing schedule should be.

11         THE COURT:  I mean we're only going to have one day to

12   look at cash collateral, I mean, and so to give us only one day

13   to look at both and then to prepare a possible decision isn't

14   very much.  You know, I understand that I won't issue a decision

15   until I've heard the arguments, but I won't even — I won't be

16   able to do much in one day.

17         MR. AHRENS:  Maybe — I mean I would have no problem,

18   if it's okay with you, to have the cash collateral first, on the

19   15th, and then the prelim on the 16th.

20         THE COURT:  I have a full 7, 11 motion calendar on the

21   16th.

22         MR. SACKS:  How about the 17th?

23         THE COURT:  Do we have something set on the afternoon?

24   Didn't I set something?

25         THE CLERK:  Guam.

*Briefing Schedule*                                                          52

1           THE COURT:  No, no, no.  That's at 3:30, but is there

2    anything, say, at 2:00?

3           THE CLERK:  no.

4           MR. SACKS:  I don't —

5           THE COURT:  Here's the problem.  I have a morning

6    calendar.  We could do this at two o'clock on the 17th, but at

7    3:30 I have a video conference in a hearing where I go into

8    another room and we do it by video and it's in Guam.  And we

9    only have the courtroom for a certain time.  So we have to be

10   out of — you know, it would have to be done or I would have to

11   say, 'Excuse me.  I'm going to Guam.'  I would go over and have

12   my hearing — I don't expect it to take more than 20 minutes —

13   but then I'd come back.  So —

14          MR. AHRENS:  We — we could do that, Your Honor, or did

15   you say you had — you had no morning calendar on the 17th?

16          THE COURT:  No, I do.  I have a full relief-from-stay

17   calendar.

18          MR. AHRENS:  Your Honor, we could do that.

19          THE COURT:  You want to do that?

20          MR. AHRENS:  I think that would give the Court more

21   time to read the papers.  And, quite candidly, —

22          THE COURT:  But you say that, except that I have this

23   full motion calendar on the 16th.  So it'll give me the morning

24   of the 7- —

25          MR. AHRENS:  What would the Court prefer?  Would you

1   prefer the 15th or the 17th?

2           MR. SACKS:  Do you have a preference?

3           THE COURT:  17th, two o'clock.

4           MR. AHRENS:  That's fine, Your Honor.

5           MR. SACKS:  And if you wanted to start at 1:30 on the

6   17th, —

7           THE COURT:  I don't.

8           MR. SACKS:  You don't, okay.

9           MR. AHRENS:  Are we concluded?

10          THE COURT:  I think so.

11      (Off the record at 3:17 p.m.)

12          MR. SACKS:  Can we start at the end, which is when do

13  you with briefing completed, and then we can probably work out

14  something from there.  When do you want to have the last brief?

15          THE COURT:  I mean obviously as soon as possible.

16          MR. SACKS:  Is the 15th soon enough?

17          THE COURT:  Well, you mean the end of the day on the

18  15th?  No.

19          MR. SACKS:  Noon on the 15th.  What I'm —

20          THE COURT:  We have this big calendar on the 16th.

21          MR. SACKS:  Right.  What I'm trying to do is by going

22  to the 17th was be able to have the benefit of —

23          THE COURT:  You want the benefit.  I want the benefit.

24          MR. SACKS:  No, no.  While I'm —

25      (Laughter.)

1          MR. SACKS:  You didn't let me finish, Your Honor.

2          THE COURT:  But I knew what you wanted.  Go ahead.

3          MR. SACKS:  If the cash collateral submissions are on

4    the 10th and 11th, around there, then that will be helpful in

5    submitting additional evidence, if any, to the Court in advance

6    of the preliminary injunction hearing.  And so, therefore, my

7    sense was that we wouldn't want to submit till after the 11th or

8    around the 11th what it is that we want to add to the record for

9    the preliminary injunction and then give the FTC an opportunity

10   to reply, and that's why I was thinking of something like Friday

11   and Monday.  But if that doesn't work for —

12         MR. AHRENS:  And we — we —

13         THE COURT:  Have Friday noon, 15th at noon, is that

14   what you want?  Will that work?

15         MR. SACKS:  I think that will work for me if that'll

16   work for —

17         THE COURT:  Send the FTC to the office on the weekend.

18         MR. MORA:  Well, it's been —

19         MR. SACKS:  Right.  It's been kind of that way.

20         MR. MORA:  And then what, Your Honor, —

21         THE COURT:  Did you want to say something, Tanya?

22         THE CLERK:  I'm sorry.  I missed that, the scheduling.

23         THE COURT:  We haven't really set anything yet.  The

24   debtor, the 12th at noon, and FTC, 15th at noon.

25         MR. AHRENS:  That's fine, Your Honor.

1          MR. SACKS:  I mean the only —

2          THE COURT:  Are you — are you an efiler?  Do you

3    upload this stuff?

4          MR. SACKS:  Um-hum.

5          THE COURT:  Okay, good.  Make sure.

6          MR. SACKS:  The only other thing would be to put the

7    hearing back another day or two and that way the Court or

8    somebody would have more time —

9          THE COURT:  You want the 19th?

10          MR. AHRENS:  No.  Your Honor, I'm not free that day.

11    This is good.  This is good.

12          MR. SACKS:  This is good.

13          MR. AHRENS:  We do not need a reply, right.  We'll

14    argue —

15          MR. MORA:  No, we don't need a reply.  I'll just —

16          MR. AHRENS:  I want the Court to be able to read what

17    everybody submits.  Let's do it —

18          THE COURT:  Yeah.  How are you going to do this, Mr.

19    Mora?  Because you're in Washington.  How are you going to file

20    at noon on the 15th if you're here?  I mean aren't you going to

21    have to fly here?

22          MR. MORA:  No.

23          THE COURT:  Oh, you don't have to — aren't you going

24    to be in court on the 15th?

25          MR. AHRENS:  Laura, cash collateral — Laura Klim has

1  been doing —

2         THE COURT:  No, no, no.  But here before me.  I just

3  want to make sure.  If we have a hearing on the 15th are you

4  going to be okay?

5         MR. MORA:  I don't know at this point, Your Honor.

6         THE COURT:  Well, we have to make a schedule.

7         MR. MORA:  Right.  You know, the difficulty here is

8  that both us and the receiver had objections to the cash

9  collateral motion as well, that are sought.  All these things

10 are kind of intertwined.

11        THE COURT:  Fine.  But I need a suggestion.

12        MR. MORA:  Okay.

13        MR. AHRENS:  Is the 15th at noon too tough?

14        THE COURT:  We don't — we can't do it — it's not going

15 to work very well otherwise.  I mean unless...

16        MR. MORA:  Look, we'll — we'll do it, Your Honor.

17        THE COURT:  All right.  So FTC files on the 15th at

18 noon — I'm sorry.  Debtor files on the 12th at noon, FTC

19 responds on the 15th at noon.

20        MR. SACKS:  That's fine, Your Honor.

21        THE COURT:  All right.  Now did we discuss when you're

22 coming in on the 15th for the preliminary injunction?

23        MR. MORA:  You mean the 17th?

24        MR. AHRENS:  The 17th is —

25        THE COURT:  I'm sorry.  What's on the 15th already?

1          MR. AHRENS:  I asked for cash collateral —

2          THE COURT:  And what time is that, 1:30 or 2:00?

3          MR. AHRENS:  2:00, Your Honor.

4          THE COURT:  Okay, good.

5          MR. AHRENS:  And on the 17th I think we said 2:00,

6   with an understanding we might be in recess for a portion of

7   that time.

8          THE COURT:  Right.

9          MR. AHRENS:  If we didn't finish in time.

10          (Telephone rings.)

11          THE COURT:  That's good.  Go off the record, please.

12          (The hearing was adjourned at 3:21 o'clock p.m.)

13                            —o0o—

14

15

16

17

18

19

20

21

22

23

24

25

State of California        )
                           )    SS.
County of San Joaquin      )


       I, Susan Palmer, certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages, of the digital recording provided to me by the United States Bankruptcy Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

       I further certify I am not a party to nor in any way interested in the outcome of this matter.

       I am a Certified Electronic Reporter and Transcriber through the American Association of Electronic Reporters and Transcribers, Certificate No. 00124. Palmer Reporting Services is approved by the Administrative Office of the United States Courts to officially prepare transcripts for the U.S. District and Bankruptcy Courts.


                          Susan Palmer
                          Palmer Reporting Services

                          Dated October 11, 2007

# EXHIBIT B

00558

1  SHEPPARD, MULLIN, RICHTER &
   HAMPTON LLP
2     A Limited Liability Partnership
      Including Professional Corporations
3  MICHAEL H. AHRENS,
   Cal. Bar No. 44766
4  STEVEN B. SACKS,
   Cal. Bar No. 98875
5  ORI KATZ, Cal. Bar No. 209561
   Four Embarcadero Center, 17th Floor
6  San Francisco, California 94111-4106
   Telephone:    415-434-9100
7  Facsimile:    415-434-3947

8  Proposed Attorneys for The Billing
   Resource, dba Integretel
9

10              UNITED STATES BANKRUPTCY COURT
                NORTHERN DISTRICT OF CALIFORNIA
11                   [SAN JOSE DIVISION]

12 | In re                                  | Case No. 07-52890
13 | THE BILLING RESOURCE, dba              |
   | INTEGRETEL, a California corporation,  | Chapter 11
14 |                                        |
15 |              Debtor.                    |
16 |                                        |

17 | THE BILLING RESOURCE, dba              |
   | INTEGRETEL, a California corporation,  | Adv. Proc. No. 07-05156
18 |                                        |
   |              Plaintiff,                 | **ORDER DENYING TEMPORARY
19 |                                        | RESTRAINING ORDER AND ORDER
   |         v.                              | TO SHOW CAUSE RE PRELIMINARY
20 |                                        | INJUNCTION**
   | FEDERAL TRADE COMMISSION, and          |
21 | DAVID R. CHASE, not individually, but  | Date:      October 2, 2007
   | solely in his capacity as receiver for | Time:      2:00 p.m.
22 | Nationwide Connections, Inc., Access One | Place:     United States Bankruptcy Court
   | Communications, Inc., Network One Services, |            280 South First Street
23 | Inc., 411TXT, Inc., CELL-INFO-USA, INC., |            San Jose, California
   | Enhanced Billing Services, Inc., Toll Free | Judge:    Hon. Arthur S. Weissbrodt
24 | Connect, Inc., Cripple Creek Holdings, LLC, | Courtroom: 3020
   | Built to Last, LLC, Not Fade Away, LLC, He's |
25 | Gone, LLC, The Other One, LLC, Turn on  |
   | Your Love Light, LLC, China Cat Sunflower, |
26 | LLC, Lazy River Road Holdings, LLC,     |

27 |              Defendant.                  |

28                                           **EXHIBIT B**

W02-WEST:FJR\400327504.2                ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1    TO THE DEFENDANTS: FEDERAL TRADE COMMISSION, and DAVID R. CHASE, not individually, but solely in his capacity as receiver for Nationwide Connections, Inc.,

2    Access One Communications, Inc., Network One Services, Inc., 411TXT, Inc., CELL-INFO-USA, INC., Enhanced Billing Services, Inc., Toll Free Connect, Inc., Cripple Creek

3    Holdings, LLC, Built to Last, LLC, Not Fade Away, LLC, He's Gone, LLC, The Other One,

4    LLC, Turn on Your Love Light, LLC, China Cat Sunflower, LLC, Lazy River Road Holdings, LLC, HIS ATTORNEYS OF RECORD, AND THE UNITED STATES

5    TRUSTEE,

6

7        This matter came on for hearing on October 2, 2007 at 2:00 p.m. (the "Hearing") on

8    Plaintiff's request for issuance of a temporary restraining order against the Federal Trade

9    Commission ("FTC"), and Plaintiff's request for issuance of an order to show cause re issuance of

10   a preliminary injunction against the FTC and David R. Chase, not individually, but solely in his

11   capacity as receiver (the "Receiver"). Based on the findings and conclusions entered on the record

12   at the Hearing, Plaintiff's request for a temporary restraining order is DENIED.

13       **FURTHER, AS ORDERED BY THE COURT AT THE HEARING, THE FTC AND**

14   **THE RECEIVER ARE HEREBY ORDERED TO SHOW CAUSE** at 2:00 p.m. on October

15   17, 2007, or as soon thereafter as counsel may be heard in the courtroom of the Honorable Arthur

16   S. Weissbrodt, located at 280 South First Street, San Jose, California, Courtroom 3020, why the

17   following actions should not be restrained and enjoined pending the entry of a plan confirmation

18   order in this bankruptcy case, or further order of this Court:

19       (1) the pursuit by you, your officers, agents, servants, employees and attorneys and those

20   in active concert or participation with you or them, of any claims against The Billing Resource,

21   dba Integretel (the "Plaintiff" or "Integretel"), the Plaintiff's property, and/or property of or from

22   the Plaintiff's bankruptcy estate in that certain action captioned <u>Federal Trade Commission v.</u>

23   <u>Nationwide Connections, Inc., et al.</u>, Case No. 06-80180-Civ-Ryskamp (the "Florida Action")

24   pending in the United States District Court for the Southern District of Florida (the "Florida

25   Court"); and

26       (2) the implementation or enforcement as to the Debtor of that certain Omnibus Order (the

27   "Omnibus Order"), entered on the docket by the Florida Court in the Florida Action on September

28   14, 2007, which Omnibus Order among other things requires the Debtor to pay or turn over certain

---

W02-WEST:FJR\400327504.2

-1-

ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1    funds to a segregated account of the Receiver, including but not limited to the issuance of a

2    contempt order and/or the payment deadline established in the Florida Court's "Order

3    Conditionally Granting Integretel's Emergency Motion for Stay Pending Appeal."

4        **IT IS ALSO HEREBY ORDERED THAT** this "Order To Show Cause Re Preliminary

5    Injunction" (the "Order To Show Cause") shall be served upon the FTC and the Receiver by

6    personal service, email or facsimile within three days of issuance hereof. Plaintiff shall file and

7    serve all supporting pleadings and papers in connection with the hearing on the Order to Show

8    Cause on the FTC, the Receiver and the United States Trustee's representative by personal service,

9    email or facsimile by no later than October 12, 2007 at 12:00 p.m., and proof of service thereof

10    shall be filed no later than October 15, 2007. Any response or opposition to this Order To Show

11    Cause must be filed and served by personal service, email or facsimile on the Plaintiff's counsel

12    and the United States Trustee's representative no later than October 15, 2007 at 12:00 p.m., and

13    proof of service shall be filed no later than October 16, 2007.

14

15                       ** END OF ORDER **

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

00561

1

<u>COURT SERVICE LIST</u>

2

<u>Office of the U.S. Trustee</u>
Office of the U.S. Trustee

3  Attn: Edwina Dowell, Esq.
280 South First Street, Room 268

4  San Jose, CA 95113

5  <u>The Billing Resource dba Integretel</u>
The Billing Resource dba Integretel

6  Attn: Ken Dawson
5883 Rue Ferrari

7  San Jose, CA 95138

8  <u>Proposed counsel for The Billing Resource dba Integretel</u>
Sheppard, Mullin, Richter & Hampton LLP

9  Attn: Michael H. Ahrens, Esq.
4 Embarcadero Center, 17th Floor

10  San Francisco, CA 94111-4106

11  <u>David R. Chase, Receiver</u>
David R. Chase, Receiver for Access One Communications,

12      Inc. and Network One Services, Inc.
David R. Chase, P.A.

13  Wachovia Center-Penthouse
1909 Tyler Street

14  Hollywood, FL 33020

15  <u>Counsel for the Receiver David R. Chase</u>
Jeffrey C. Schneider, Esq.

16  Michelle T. Visiedo, Esq.
Tew Cardenas LLP

17  Four Seasons Tower – 15th Floor
1441 Brickell Avenue

18  Miami, FL 33131

19  <u>Counsel for the Receiver David R. Chase</u>
Walter Oetzell, Esq.

20  Danning, Gill, Diamond & Kollitz, LLP
2029 Century Park East, Third Floor

21  Los Angeles, CA 90067-2904

22  <u>Counsel for the Federal Trade Commission</u>
Laura M. Kim, Esq.

23  Michael J. Davis, Esq.
Collot Guerard, Esq.

24  Federal Trade Commission
600 Pennsylvania Avenue, NW, Room 286

25  Washington, DC 20580

26  <u>Federal Trade Commission</u>
Associate Director, Division of Marketing Practices

27  Federal Trade Commission, H-238
600 Pennsylvania Avenue, N.W.

28

-3-

W02-WEST:FJR\400327504.2          ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1  Washington, D.C.  20580

2  Notice for Federal Trade Commission
   United States Attorney
3  (For Federal Trade Commission)
   450 Golden Gate Avenue
4  San Francisco, CA  94102

5  Notice for Federal Trade Commission
   United States Attorney
6  (For Federal Trade Commission)
   150 Almaden Boulevard, Suite 900
7  San Jose, CA  95113

8  Notice for Federal Trade Commission
   United States Attorney
9  Civil Division
   Attn:  Civil Process Clerk
10 450 Golden Gate Avenue
   San Francisco, CA  94102-3400
11
   Notice for Federal Trade Commission
12 United States Attorney
   Civil Division
13 Attn:  Civil Process Clerk
   150 Almaden Boulevard, Suite 900
14 San Jose, CA  95113

15 Notice for Federal Trade Commission
   United States Department of Justice
16 Civil Trial Section, Western Region
   Box 683, Ben Franklin Station
17 Washington, DC  20044

18 Notice for Federal Trade Commission
   U.S. Department of Justice
19 Office of the Attorney General
   950 Pennsylvania Avenue, NW
20 Washington, DC  20530-0001

21

22

23

24

25

26

27

28

-4-

# EXHIBIT C

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

FEDERAL TRADE COMMISSION,    )
    )
       *Plaintiff,*    )
    )
       v.    )   No. 07-14531-E
    )
NATIONWIDE CONNECTIONS,    )
INC. et al.,    )
    )
       *Defendants,*    )
    )
THE BILLING RESOURCE dba    )
INTEGRETEL,    )
    )
       *Appellant.*    )

**Appellant's Time-Sensitive Motion
for Immediate Interim Stay or Injunction
Pending Full Consideration of Motion
and
for Continuation of the Stay or Injunction
Pending Complete Resolution of this Appeal**

> Time Sensitive
> Decision on request for immediate stay or injunction
> required by October 17, 2007

Laurie Webb Daniel (GA Bar # 204225)
Cynthia G. Burnside (GA Bar # 097107)
Holland & Knight LLP
1201 West Peachtree Street, NE
One Atlantic Center, Suite 2000
Atlanta GA 30309
(404) 817-8500

Neal Goldfarb (DC Bar # 337881)
Richard H. Gordin (DC Bar # 727925)
Tighe Patton Armstrong Teasdale PLLC
1747 Pennsylvania Ave., NW, Suite 300
Washington, D.C. 20006
(202) 454-2800

*Attorneys for Appellant/Movant
The Billing Resource dba Integretel*

# EXHIBIT C