No. 07-14531-E
*Federal Trade Commission v. Nationwide Connections, et al.*

**Certificate of Interested Parties
and Corporate Disclosure Statement**

In accordance with Rule 26.1 of the Federal Rules of Appellate Procedure, counsel

for appellant The Billing Resource d/b/a Integretel certifies that to the best of his

knowledge, the following is a complete list of trial judges, attorneys, persons, associations

of persons, firms or partnerships or corporations that have an interest in the outcome of

this case or appeal, including subsidiaries, conglomerates, affiliates, and parent

corporations, including any publicly held company that owns 10% or more of the party's

stock, and other identifiable legal entities related to a party:

1. 411TXT, Inc. (entity in receivership; affiliated with defendants Nationwide

Connections, Inc., Access One Communications, Inc., Network One Services, Inc., Mary

Lou Farr, Willoughby Farr, Yaret Garcia, Qaadir Kaid, and Erika Riaboukha)

2. Access One Communications, Inc. (defendant)

3. ACI Billing Services, Inc. d/b/a OAN (defendant)

4. Ahrens, Michael (counsel for The Billing Resource d/b/a Integretel)

5. Alexander, Martin J. (counsel for The Billing Resource d/b/a Integretel)

6. Alitowski, Andrew (counsel for receivership defendants Grunspan et al.)

7. Americredit Financial Services, Inc. (third-party creditor of defendant

Willoughby Farr)

8. Anhalt, Irwin, Trustee of the Irwin Anhalt Trust (receivership defendant)

C-1 of 12

00566

RER-33      2418

*Federal Trade Commission v. Nationwide Connections, Inc.*
No. 07-14531-E

9. Arnold, Risa (receivership defendant)

10. Austin, Michael Garrett (counsel for ACI Billing Services, Inc. d/b/a OAN; Billing Concepts, Inc; and BSG Clearing Solutions North America, LLC)

11. Barnett Bolt Kirkwood & Long (counsel for BMW Financial Services)

12. Berg, Andrew (counsel for ACI Billing Services, Inc. d/b/a OAN; Billing Concepts, Inc; and BSG Clearing Solutions North America, LLC)

13. BHD/WEB, LLC (third-party creditor of receivership defendants)

14. Billing Concepts, Inc. (defendant)

15. The Billing Resource d/b/a Integretel (defendant/appellant)

16. Bloch, Bruce

17. Blumenthal, William (counsel for plaintiff)

18. BMW Financial Services (third-party creditor of certain defendants and/or affiliated entities)

19. Brady, Rosanne (counsel for crossclaim defendant/third-party defendant Ronny Morillo)

20. BSG Clearing Solutions North America, LLC (defendant)

21. Built to Last, LLC (entity in receivership; affiliated with defendants Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., Mary Lou Farr, Willoughby Farr, Yaret Garcia, Qaadir Kaid, and Erika Riaboukha)

22. CELL-INFO-USA, Inc. (entity in receivership; affiliated with defendants

00567

RER-33    2419

Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., Mary Lou Farr, Willoughby Farr, Yaret Garcia, Qaadir Kaid, and Erika Riaboukha)

23. Chapman, John

24. Chase, David (Receiver for defendants Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., Mary Lou Farr, and Willoughby Farr, and for affiliated entities)

25. China Cat Sunflower, LLC(entity in receivership; affiliated with defendants Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., Mary Lou Farr, Willoughby Farr, Yaret Garcia, Qaadir Kaid, and Erika Riaboukha)

26. Cohen Norris Scherer Weinberger & Wolmer (counsel for Denise McCann))

27. Coleman, Ira (receivership defendant)

28. Coleman, Jill (receivership defendant)

29. Cripple Creek Holdings, LLC(entity in receivership; affiliated with defendants Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., Mary Lou Farr, Willoughby Farr, Yaret Garcia, Qaadir Kaid, and Erika Riaboukha)

30. Danning, Gill, Diamond & Kollitz

31. Davis Cedillo & Mendoza Inc (counsel for ACI Billing Services, Inc. d/b/a

00568

OAN; Billing Concepts, Inc; and BSG Clearing Solutions North America, LLC)

32. Davis, Michael (counsel for plaintiff)

33. Dean, Chad A. (counsel for Primus Automotive Financial Services and Ford Motor Co. Credit Co.)

34. Devine Goodman Pallet & Wells, PA (Counsel for Second Churchill Way, LLC)

35. Dinan, Kevin (counsel for ACI Billing Services, Inc. d/b/a OAN; Billing Concepts, Inc; and BSG Clearing Solutions North America, LLC)

36. Dunkel, Gary M. (Counsel for BHD/WEB, LLC)

37. Enhanced Billing Services, Inc. (entity in receivership; affiliated with defendants Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., Mary Lou Farr, Willoughby Farr, Yaret Garcia, Qaadir Kaid, and Erika Riaboukha)

38. Farr , Mary Lou (defendant)

39. Farr, Willoughby (defendant)

40. Federal Trade Commission (plaintiff/appellee)

41. Fialco, Lisa (counsel for plaintiff)

42. First Churchill Way, LLC (third-party creditor of certain defendants and/or affiliated entities)

43. Fitzsimmons, Robert V. (counsel for Americredit Financial Services, Inc.)

44. Flaxman, Charles, Trustee of the Flaxman and Lopez Profit Sharing Trust

00569

RER-33        2421

(receivership defendant)

45. Ford Motor Co. Credit Co. (third-party creditor of certain defendants and/or affiliated entities)

46. Freeman, Geraldine (counsel for The Billing Resource d/b/a Integretel)

47. Garcia, Yaret (defendant)

48. Goldfarb, Neal (counsel for The Billing Resource d/b/a Integretel)

49. Gomez, John (receivership defendant)

50. Gomez, Peter (receivership defendant)

51. Gomez, Tonya (receivership defendant)

52. Gordin, Richard H. (counsel for The Billing Resource d/b/a Integretel)

53. Greenberg Traurig (counsel for BHD/WEB, LLC)

54. Grunspan, Alan, Trustee of the Aron Grunspan Revocable Trust (receivership defendant)

55. Guerard, Collot (counsel for plaintiff)

56. Hartog, Ross R. (counsel for First Churchill Way, LLC)

57. Hawkins, Scott G. (former counsel for defendants Mary Lou Farr and Willoughby Farr)

58. He's Gone, LLC (entity in receivership; affiliated with defendants Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., Mary Lou Farr, Willoughby Farr, Yaret Garcia, Qaadir Kaid, and Erika Riaboukha)

00570

RER-33    2422

59. Holland & Knight, LLP (counsel for The Billing Resource d/b/a Integretel)

60. Hume & Johnson

61. Information Services 900, L.L.C. (majority-owned subsidiary of The Billing Resource d/b/a Integretel)

62. Inmate Calling Solutions, L.L.C. (majority-owned subsidiary of The Billing Resource d/b/a Integretel)

63. Jackman, Steve (receivership defendant)

64. Smith, John J.

65. Johnson, Henry

66. Johnson, Mark Douglas (counsel for Yaret Garcia, Qaadir Kaid, and Erika Riaboukha)

67. Jones, Foster, Johnston & Stubbs, P.A. (former counsel for Mary Lou Farr and Willoughby Farr)

68. JP Morgan Chase Bank, N.A.

69. Katz, Ori (counsel for The Billing Resource dba Integretel)

70. Kerst, Marilyn (counsel for plaintiff)

71. Kim, Laura (counsel for plaintiff)

72. King & Spalding, LLP (counsel for ACI Billing Services, Inc. d/b/a OAN; Billing Concepts, Inc; and BSG Clearing Solutions North America, LLC)

73. Kollitz, Howard

74. Kubicki Draper (counsel for Americredit Financial Services, Inc.)

75. Lancellotta, Steven A. (counsel for The Billing Resource d/b/a Integretel)

76. Law Offices of Peter N. Macaluso (counsel for crossclaim defendant/third party defendant Ronny Morillo)

77. Lazy River Road Holdings, LLC (entity in receivership; affiliated with defendants Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., Mary Lou Farr, Willoughby Farr, Yaret Garcia, Qaadir Kaid, and Erika Riaboukha)

78. Levitats, Carole (receivership defendant)

79. Leopold. Theodore

80. Long, Thomas G. (counsel for BMW Financial Services)

81. Macaluso, Peter (counsel for crossclaim defendant/third arty defendant Ronny Morillo)

82. Maccoby, Max (counsel for defendant/appellant The Billing Resource dba Integretel)

83. Markowitz, Jerry M. (counsel for First Churchill Way, LLC)

84. Markowitz, Davis, Ringel & Trusty (counsel for First Churchill Way, LLC)

85. Massington, Carole (receivership defendant)

86. Massington, Richard (receivership defendant)

87. McCann, Denise (third-party creditor of certain defendants and/or affiliated

00572

RER-33      2424

entities)

88. McDermott, Will & Emery, LLP (counsel for ACI Billing Services, Inc. d/b/a

OAN; Billing Concepts, Inc; and BSG Clearing Solutions North America, LLC)

89. McDonough, Michael (counsel for crossclaim defendants/third party defen-

dants German Miranda and Jesus Sandoval)

90. McKewen, Richard (counsel for plaintiff)

91. Medoza, Jessy (crossclaim defendant/third party defendant)

92. Mercantile Bank

93. Miranda, German (crossclaim defendant/third party defendant)

94. Mora, Michael (counsel for plaintiff)

95. Morillo, Ronny (crossclaim defendant/third party defendant)

96. Mortgage X, LLC (receivership defendant)

97. Nationwide Connections, Inc. (defendant)

98. Network One Services, Inc. (defendant)

99. Newman, Scott B. (counsel for The Billing Resource d/b/a Integretel)

100.    Norton Hammersley Lopez & Skakos

101.    Not Fade Away, LLC (entity in receivership; affiliated with defendants

Nationwide Connections, Inc., Access One Communications, Inc., Network One

Services, Inc., Mary Lou Farr, Willoughby Farr, Yaret Garcia, Qaadir Kaid, and Erika

Riaboukha)

00573

RER-33    2425

102. Oetzell, Walter (counsel for David Chase, receiver)

103. Payment One Corporation (majority-owned subsidiary of The Billing Resource d/b/a Integretel)

104. Ponsford, Terence (counsel for The Billing Resource dba Integretel)

105. Primus Automotive Financial Services (third-party creditor of certain defendants and/or affiliated entities)

106. Qaid, Kaadir (defendant)

107. Rehfeld, Jeffrey (counsel for The Billing Resource d/b/a Integretel)

108. Riaboukha, Erika (defendant)

109. Rengstl, Patrick (counsel for David Chase, receiver)

110. Leopold, Ricci

111. Rodgers, Derick (counsel for ACI Billing Services, Inc. d/b/a OAN; Billing Concepts, Inc; and BSG Clearing Solutions North America, LLC)

112. Royal Bank of Canada (owner of more than 10% of stock in The Billing Resource d/b/a Integretel)

113. Ryskamp, Hon. Kenneth L. (district-court judge)

114. Sacks, Steven (counsel for The Billing Resource dba Integretel)

115. Jesus Sandoval (crossclaim defendant/third party defendant)

116. Sapurstein & Block PA

117. Schneider, Jeffrey (counsel for David Chase, receiver)

118.  Schochinski, Robert  (counsel for plaintiff)

119.  Schuyler Stewart Smith The Creditors Rights Law Firm of Florida, P.A. (counsel for Primus Automotive Financial Services and Ford Motor Co. Credit Co.)

120.  Schwartz, Steven

121.  Second Churchill Way, LLC (third-party creditor of certain defendants and/or affiliated entities)

122.  Segal Family Partners Ltd. (receivership defendant)

123.  Schwartz, Joanna  (receivership defendant)

124.  Schwartz, Scott (receivership defendant)

125.  Sheppard Mullin Richter & Hampton (counsel for The Billing Resource d/b/a Integretel)

126.  Siff, Steven E. (counsel for ACI Billing Services, Inc. d/b/a OAN; Billing Concepts, Inc; and BSG Clearing Solutions North America, LLC)

127.  Tapie, Carolyn (counsel for ACI Billing Services, Inc. d/b/a OAN; Billing Concepts, Inc; and BSG Clearing Solutions North America, LLC)

128.  Tew Cardenas LLP (counsel for the Receiver)

129.  The Other One, LLC (entity in receivership; affiliated with defendants Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., Mary Lou Farr, Willoughby Farr, Yaret Garcia, Qaadir Kaid, and Erika Riaboukha)

130.    Thomas, John-David (counsel for ACI Billing Services, Inc. d/b/a OAN; Billing Concepts, Inc; and BSG Clearing Solutions North America, LLC)

131.    Tighe Patton Armstrong Teasdale PLLC (counsel for The Billing Resource d/b/a Integretel)

132.    Toll Free Connect, Inc. (entity in receivership; affiliated with defendants Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., Mary Lou Farr, Willoughby Farr, Yaret Garcia, Qaadir Kaid, and Erika Riaboukha)

133.    Turn On Your Love Light, LLC (entity in receivership; affiliated with defendants Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., Mary Lou Farr, Willoughby Farr, Yaret Garcia, Qaadir Kaid, and Erika Riaboukha)

134.    Vargas, Roberto Mario (former counsel for Mary Lou Farr and Willoughby Farr)

135.    Visiedo-Hidalgo, Michelle T. (former counsel for the Receiver)

136.    Vitunac, Hon. Ann E. (magistrate judge)

137.    Wanders, Hildegund P. (counsel for BMW Financial Services)

138.    Wedderburn, Jacobs and Alitowski, PA (counsel for receivership defendants Grunspan et al.)

139.    Weissbrodt, Hon. Arthur (bankruptcy court judge)

00576

*Federal Trade Commission v. Nationwide Connections, Inc.*
No. 07-14531-E

140.    Weinberger, Robert M. (counsel for Denise McCann)

141.    Wells, Diane Noller (counsel for Second Churchill Way, LLC)

142.    Woodbury & Santiago, P.A. (counsel for receivership defendants Grunspan

et al.)

143.    Woodbury, Michael (counsel for receivership defendants Grunspan et al.)


_____

Neal Goldfarb

00577

RER-33    2429

Pursuant to Fed. R. App. P. 8, appellant The Billing Resource dba Integretel ("Integretel") moves that the Court stay the district court's order of September 21, 2007 ("the Vacatur Order"; Ex. 1), which vacated its bankruptcy stay order of the previous day and ruled that its "Omnibus Order" entered September 14 (Ex. 2) was not subject to the Bankruptcy Code's automatic stay. Specifically, Integretel requests that the Court grant an immediate interim stay pending full consideration of this motion and then that it continue the stay in effect during the pendency of this appeal.[1]

To the extent that such a stay is not regarded as reinstating the automatic stay while the motion and appeal are pending, Integretel further moves for an immediate injunction expressly granting such relief pending full consideration of this motion and for continuation of that injunction during the pendency of the appeal.

Integretel sought a stay from the district court, but while that court purported to "conditionally grant" the motion, it actually denied it. (Ex. 22.) This motion is time-sensitive under Circuit Rule 27-1 because a ruling on our request for an immediate stay or injunction is needed by October 17, 2007, when an agreed temporary stay will expire. (Integretel has attempted to get an agreement to extend this temporary stay, but so far no such agreement has been reached.

### Introduction

Integretel seeks to stay an order, entered without giving Integretel an opportunity

---

1. We do not challenge the September 21 order insofar as it held that the Federal Trade Commission's claims under the FTC Act were not automatically stayed.

to be heard, vacating a bankruptcy stay order the court had entered only the day before. Integretel had sought bankruptcy protection after being ordered to pay more than $1 million in disputed funds to the receiver for two of Integretel's former clients, on the theory that the funds were receivership assets. Integretel has appealed both orders.

The district court ruled that the stay did not apply because it had held that the disputed funds belonged to the receiver, not to Integretel. But the court misinterpreted the plain language of the automatic stay provision, 11 U.S.C. § 362. The stay's applicability here does *not* turn on the alleged ownership of the disputed funds. Even under the district court's (mistaken) conclusion that the funds belong to the receiver, the automatic stay applies because enforcement would constitute (1) a continuation of a proceeding begun against Integretel before its bankruptcy, (2) the enforcement against Integretel of a judgment obtained before bankruptcy, and (3) an act to obtain possession of property from Integretel's estate. 11 U.S.C. § 362(a)(1), (2) & (3).

The district court also held that its pre-bankruptcy order is covered by the "regulatory exception" to the automatic stay under 11 U.S.C. § 362(b)(4). That holding, too, is erroneous for a variety of reasons. The order is no more regulatory in nature than any court order requiring an alleged asset of a receivership or bankruptcy estate to be turned over to the receiver or trustee.

By erroneously holding that the automatic stay does not apply, the district court deprived Integretel of the "breathing spell" that is one of the Bankruptcy Code's most important debtor protections. Without a stay pending appeal, the purpose of the appeal

-2-

00579

will be frustrated, because in the interim Integretel will have been subjected to the very harms the automatic stay is intended to prevent. And because this Court is likely to hold that the disputed sums do *not* belong to the Receiver, allowing enforcement would allow the Receiver to obtain property that really belongs to Integretel's bankruptcy estate, which would interfere with Integretel's reorganization efforts, harm Integretel's other creditors, and prevent the bankruptcy court from deciding whether Integretel should be allowed to use that money.

### Statement of the Case

**Summary.** Two of Integretel's former clients were put into receivership in a suit brought by the Federal Trade Commission. Integretel was served with an injunction directing "any person or entity served with a copy of this Order" to turn over to the receiver all assets belonging to those former clients. The receiver demanded that Integretel turn over certain funds that he said were owed to the former clients, and that he claimed as receivership property. Integretel argued that the amounts at issue were not owed under the governing contracts and that even if anything was owed, the Receiver's claim was unsecured, so that the disputed amounts were not receivership assets.

The receiver moved to require Integretel to show cause why it should not be held in contempt. The district court erroneously held that the disputed funds are receivership assets and ordered Integretel to pay them to the receiver. Because Integretel could not have done so and still remained in business, it filed for bankruptcy protection. The district court then compounded its error by erroneously ruling that the Bankruptcy

-3-

Code's automatic stay does not apply.

**Integretel's services and the contracts.** Integretel is a telecommunications billing aggregator. It has contracts with local phone companies ("Telcos") whereby it acts as an intermediary between the Telcos and its clients—independent telecommunications companies and other service providers—so that its clients can have their charges appear on consumers' local phone bills. The clients submit their billing information to Integretel, which forwards the data to the Telcos as part of a transaction structured as a sale of accounts receivable. The Telcos include the charges on their bills and make payments to Integretel based on the anticipated collections on all billings submitted by Integretel, without allocating those payments among specific transactions or even among Integretel's various clients. Integretel then pays its clients based on the contractual formulas.

The former clients at issue here are Network One and Access One ("the Former Clients"). Their contracts, which are substantially the same as other clients', set out formulas for computing the amounts to be paid to them. Excluded from those amounts are sums allocated to the "IGT Reserve," which are defined as "an amount withheld, from the amount otherwise owed to Client with respect to Billing Transactions, to protect IGT [Integretel] from credit losses or otherwise to cover reserves or offsets, other than Uncollectibles imposed by a Telco." (Ex. 3 at 14, 19, 43, 51.) The IGT Reserves do not take the form of a segregated account or a fund of money that has been earmarked or set aside. Rather, they are merely bookkeeping entries. Integretel holds no identifiable pool of money that constitutes the IGT Reserves for the Former Clients. (Ex. 3 at 3.)

-4-

Integretel provided services to Network One for about a month in 2003 and to Access One for seven months in late 2004 and early 2005. In both cases, Integretel stopped providing services after questions arose about the validity of the billing transactions, long before the FTC took any action. Once it did so, it set the IGT Reserve for each client at 100% and stopped further payments. (Ex. 3 at 2.)

The FTC lawsuit. On February 27, 2006, the Federal Trade Commission sued the Former Clients, along with others associated with them, for violating the FTC Act by causing consumers to be billed for fraudulent collect-call charges (a practice know as "cramming"). (Ex. 4.) The FTC did not name Integretel as a defendant. Seven months later, however, it amended its complaint to assert claims against Integretel and another aggregator. (Ex. 5.) In defending against the FTC's claims, Integretel contends that it did not know that the charges were fraudulent and that up until the time it pulled the plug on the Former Clients, it could not reasonably have known that the charges were fraudulent. The district court has not yet considered the merits of the FTC's claims against Integretel. There has been no finding that Integretel violated the law or even that the FTC is likely to prevail. The FTC has not moved for interim relief against Integretel.

The FTC's original complaint sought preliminary and permanent injunctive relief and monetary relief in the form of "restitution, the refund of monies paid, and the disgorgement of ill-gotten monies." (Ex. 4.) The FTC sought and received a temporary restraining order. The TRO (1) restrained the original defendants from continuing to engage in cramming, (2) froze the original defendants' assets, and (3) appointed a temp-

-5-

orary receiver ("the Receiver") for the Former Clients and Nationwide Connections, the other corporate defendant. (Ex. 6.) The Former Clients and another defendant. The Receiver was authorized to collect these defendants' assets. The TRO required the original defendants (but no one else) to turn over to the Receiver "[a]ll assets of the Receivership Defendants[.]" (*Id.* at 15-16.) The TRO provided that unless extended, it would expire on March 9. (*Id.* at 25.)

The TRO was served on Integretel. (Ex. 3 at 4.) Because the TRO's turnover provision applied only to the original defendants, it imposed no duties on Integretel, which was not then a defendant.[2] On March 8, the TRO was superseded by a preliminary injunction, which made the Receiver's appointment permanent. (Ex. 8.) That injunction was identical to the TRO in all relevant respects except one: the turnover provision was broadened to cover not only the original defendants, but also "any person or entity served with a copy of this Order[.]" This injunction was not served on Integretel. (Ex. 3 at 5; Ex. 8 at 16.)

The district court entered an amended preliminary injunction on September 22,

---

2. Shortly after Integretel was served with the TRO, it told the FTC that the Former Clients "would be entitled to certain proceeds from billing transactions" but that each entity "is in default of [its] contract and, therefore, no amounts are currently due and owing." It also said, "To the extent proceeds become due to [the client] in the future, we will establish a separate bank account into which such funds will be deposited and notify your office accordingly." (Ex. 3 at 97.) The import of this statement is in dispute. However, it is not disputed that beginning in June 2006, when Integretel was not subject to any injunction, Integretel's counsel discussed the reserves with counsel for the FTC, who waited months before relaying the information to the Receiver. (Ex. 7 at 1-3.)

-6-

2006. (Ex. 9.) This injunction, which was identical in all relevant respects to the original preliminary injunction, was served on Integretel on October 10, 2006. (Ex. 7 at ¶¶ 12 13; Ex. 10 at ¶¶ 4-5.) Three days later, the Receiver moved that Integretel be required to show cause why it should not be held in civil contempt for allegedly violating the TRO and the amended preliminary injunction. (Doc. 243.)

Almost a year later, on September 14, 2007, the district court granted the Receiver's motion. (Ex. 2 .) The court ordered Integretel to show cause why it should not be held in contempt, but did not find that Integretel was in fact in contempt. Nevertheless, the court directed Integretel to "provide a sworn statement identifying the amount of reserves as of the issuance of the TRO" and ordered that "these funds shall be placed in a segregated Receivership account." (Ex. 1 at 10.) That order ("the Omnibus Order") was based on the court's conclusion that Integretel held the reserve amounts "on behalf of, or for the benefit of" the Former Clients and that those amounts were therefore receivership assets. The court cited no contractual provision supporting this conclusion. Instead, it relied on its general equitable power and its in rem jurisdiction over receivership assets.

**The bankruptcy filing and subsequent events.** Making the payment required by the Omnibus Order would have depleted Integretel's operating cash so much that Integretel would probably have been forced out of business. To avoid that result, Integretel filed for bankruptcy protection under Chapter 11 in California (where it is based) on September 16. (Ex. 11.) In a submission to the bankruptcy court, the Receiver tacitly

00584

acknowledged that the Omnibus Order is covered by the Bankruptcy Code's automatic stay. (Ex. 12 at 9-10 (statement by Receiver that "the appropriate remedy is relief from the automatic stay").)

Before 10 a.m. on September 20, the FTC faxed the district court's chambers an emergency motion seeking "clarification" that the automatic stay did not apply to this case and told chambers about the motion by phone. (Ex. 13 & 14.) The alleged emergency was that a bankruptcy hearing was coming up soon. (Ex. 14 at 11.) That afternoon, the district court entered an order declaring that the case "is subject to the automatic stay set forth in 11 U.S.C. § 362." (Ex. 1.)

Given the timing of this order in relation to the FTC's motion, it appeared that it was unnecessary to respond to the FTC's motion because the court had effectively denied it, and indeed that no further filings would be allowed. But the next day, without notice, the district court reversed course: it granted the FTC's motion, vacated the previous day's stay order, and held that the automatic stay did *not* apply. (Ex. 1.) The court acted without allowing Integretel a fair opportunity to be heard. It did not notify Integretel that it was reconsidering its stay order, and did not ask for a response or even set a deadline for responding.

In addition to vacating the stay, the court said that it had ruled in the Omnibus Order "that the reserve funds are the property of the receivership estate[.]" (Ex. 1 at 1.) The court also described the Omnibus Order as having "ordered Integretel to pay the current reserve funds, amounting to $1,762,762.56, immediately to the Receiver." (*Id.*)

-8-

This description was materially incorrect.[3]

On the next business day, Integretel appealed the orders of September 14 and 21. On the same day, the Receiver moved that Integretel be ordered to pay the reserve amounts by the following day, and that if it did not do so, its president be ordered to personally appear before the court in Florida on September 26, the date of a resumed hearing on Integretel's emergency motion for permission to use cash collateral. (Ex. 16 at 1, 4; *see also* Ex. 17 (Integretel response).) The district court denied this motion, stating that "the Bankruptcy Court should have the opportunity to make its own determination as to Integretel's [cash-collateral] motion." (Ex. 18.)

The next day, Integretel asked the district court for a stay pending appeal. (Ex. 19; *see also* Ex. 20 & 21 (Receiver's response and Integretel's reply).) On September 26, without waiting for the outcome of the cash-collateral hearing, the district court entered an order it described as "conditionally granting" Integretel's motion, but that actually denied it. The court said that enforcement would be stayed "provided that Integretel transfers the amount of $1,762,762.56, representing the reserve funds, to the Receiver within three days of the date of this Order. The Receiver shall then keep those funds in a segregated account during the pendency of any appeal." (Ex. 22; emphasis omitted.) In its effect on

---

3. What the Omnibus Order had said was that Integretel was to "provide a sworn statement identifying the amount of reserves as of the issuance of the TRO" and that "these funds shall be placed in a segregated Receivership account." (Ex. 2 at 10.) The amount booked as IGT Reserves for the Former Customers when the TRO was issued was $1,230,479.89, not $1,762,762.56. (Ex. 3 at 7.) The Omnibus Order did not specify when payment was due.

-9-

Integretel, this is no different than the original order, which had likewise directed Integretel to pay the reserve amount into a segregated receivership account.

The Receiver has agreed to a stay of the Omnibus Order and the contempt proceedings until October 17, 2007, provided that Integretel deposits the disputed sum in a segregated and blocked debtor-in-possession account under the bankruptcy court's control. (Ex. 23 & 24.) Integretel and the Receiver have moved in the district court for an order implementing that temporary stay (Ex. 25) and are awaiting entry of that order.

**Injunction proceedings in bankruptcy court.** Integretel has sought an injunction in the bankruptcy court under 11 U.S.C. § 105 against (among other things), enforcement of the Omnibus Order and continuation of the contempt proceedings. (Exhibit 26.) The bankruptcy court is ordering the Receiver and the FTC to show cause why that motion should not be granted. (Ex. 27 at 12-13.) In explaining why it was doing so, the court noted Integretel's assertion (which is undisputed) "that it held the alleged reserve funds in a commingled account." (*Id.* at 12.) It stated that "a party seeking to establish a trust over commingled funds must trace those funds" and that "no party has made any effort to trace any funds[.]." (*Id.*) As a result, "all the FTC [*sic;* Receiver] likely has is an unsecured claim[.]" (*Id.*) A hearing on the show-cause order is set for October 17.

This Court should not wait to see what the bankruptcy court does before ruling on this motion. If this Court waits for the bankruptcy court and that court decides not to issue an injunction (or if it decides to let this Court rule first), Integretel would be at risk of contempt sanctions when the agreed temporary stay expires and would have to ask

-10-

this Court to grant emergency relief. Moreover, an order from the bankruptcy court granting a § 105 injunction would not render the instant motion moot, for there is a reasonably good chance that the FTC and the Receiver would appeal any such injunction. A stay from this Court would afford Integretel protection against the risk that an injunction by the bankruptcy court might be reversed or stayed. Finally, the issues before the two courts are entirely different. The issue here is the purely legal question whether the Omnibus Order and contempt proceedings are subject to the automatic stay. In the bankruptcy court, on the other hand, the issue is whether the court should grant an injunction in the exercise of its discretion.

Argument[4]

## A. The legal standard governing stays and injunctions pending appeal.

To obtain a stay or injunction pending appeal, the movant must ordinarily show that it is likely to succeed on the merits on appeal, that without a stay it will be irreparably injured, that a stay will not substantially harm the opposing party, and that a stay would serve the public interest. *E.g., Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986). Of these factors, the most important is the likelihood of success. *Id.*

And that factor alone becomes controlling where, as here, the order at issue is the

---

4. The Vacatur Order is appealable under 28 U.S.C. § 1291 as a final order. *See, e.g., In re Delta Resources*, 54 F.3d 722, 726 (11th Cir. 1995) (order granting or denying relief from automatic stay is final and appealable). If the order is nevertheless thought not to be final, it is appealable under § 1292(a)(1) as an order refusing or dissolving an injunction. *See, e.g., Carver v. Carver*, 954 F.2d 1573, 1578 (11th Cir. 1992) ("the automatic stay is essentially a court-ordered injunction"). The notice of appeal was timely filed on September 24.

-11-

00588

RER-33    2440

denial of a statutory stay of litigation. In such a case, the usual balancing of equities is inappropriate because Congress has already balanced the equities. *See Jove Engineering v. IRS*, 92 F.3d 1539, 1546 (11th Cir. 1996) (while ordinary injunctions are discretionary, the bankruptcy stay arises automatically). More importantly, without a stay pending appeal, the entire purpose of the appeal will be frustrated and the reversal of the district court's order will be an empty gesture.

Thus, in *Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249 (11th Cir. 2004), this Court held that on an appeal from an order refusing a stay pending arbitration, the action should be stayed in the district court unless the appeal is frivolous. The Court reasoned that otherwise the intended benefit of arbitration (avoiding the costs and delays of litigation) would be irretrievably lost. *Id.* at 1251-52. The Court followed the Seventh Circuit's decision in *Bradford-Scott Data Corp., Inc. v. Physician Computer Network*, Inc., 128 F.3d 504 (7th Cir. 1997), where the court said, "Continuation of proceedings in the district court largely defeats the point of the appeal and creates a risk of inconsistent handling of the case by two tribunals." *Id.* at 505. The Seventh Circuit pointed out that "[w]hether the litigation may go forward in the district court is precisely what the court of appeals must decide[,]" and said that a nonfrivolous claim of immunity from litigation in the district court (which is essentially what Integretel asserts here), "is inconsistent with continuation of proceedings in the district court, and . . . the notice of appeal accordingly brings those proceedings to a halt[.]" *Id.* at 506.

The same reasoning applies here. The automatic stay is "'one of the fundamental

-12-

debtor protections provided by the bankruptcy laws'" because it "'gives the debtor a breathing spell from his creditors.'" *Jove Engineering*, 92 F.3d at 1550 (quoting from the legislative history). It protects the debtor from having to undergo the cost and burdens of litigation. Denying Integretel a stay pending appeal would therefore defeat the purpose of the automatic stay (and of this appeal) by exposing Integretel to a resumption of the litigation that the stay was intended to stop.

**B.  The district court erred in vacating the September 20 stay order and ruling that the Omnibus Order is excepted from the automatic stay.**

Under § 362(a) of the Bankruptcy Code (11 U.S.C. § 362(a)), the filing of a bankruptcy petition "operates as a stay, applicable to all entities," of the following:

> (1) the . . . continuation. . . of a judicial . . .action or proceeding against the debtor that was . . . commenced before the commencement of the case under this title . . .;

> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title; [and]

> (3) any act to obtain possession of property of the estate or of property from the estate . . . .

As we have noted, the Receiver tacitly acknowledged that the orders at issue were subject to the automatic stay. In ruling to the contrary, the district court erred.

a.  Even assuming the disputed amounts do not belong to Integretel (but see pages 18-19, below), the court's ruling about the automatic stay would be wrong because it was based on the mistaken view that the a stay applies only with respect to property of the estate or of the debtor. (Ex. 1 at 4.) The Omnibus Order is subject to the automatic stay

-13-

whether or not the disputed funds belong to the bankruptcy estate. This is so because the order constitutes (1) a continuation of a proceeding commenced against Integretel before its bankruptcy, (2) the enforcement against Integretel of a judgment obtained before bankruptcy, and (3) an act to obtain possession of property from Integretel's estate.

In saying that the automatic stay applies "only to protect property of the bank-ruptcy estate or property of the debtor," the district court misinterpreted § 362(a)'s plain language. Subsection (1) says nothing to suggest it is limited to property of the estate or of the debtor; it doesn't even use those terms. Subsection (2) applies to the enforcement of judgments, not only against the bankruptcy estate, but also against the debtor.

And subsection (3) extends the stay to acts to obtain possession "of property *from* the estate" (emphasis added). This means that the stay protects property that is merely in the debtor's possession, regardless of who it belongs to. *See, e.g., In re Atlantic Business and Community Corp.*, 901 F.2d 325, 328 (3d Cir. 1990)( section 362 "makes clear that mere possession of property at the time of filing is sufficient to invoke the protections of the automatic stay"); *In re Turbowind, Inc.*, 42 B.R. 579, 585 (Bankr. S.D. Cal. 1984) ("The operation of the automatic stay does not depend on the debtor having either a legal or equitable interest in the property, but applies to property merely in the debtor's possession at the time of filing"). The legislative history confirms this point: "Paragraph (3) stays any act to obtain possession of . . . property from the estate (property over which the estate has control or possession." H.R. Rep. No. 95-595 at 340-42, 95th Cong., 1st Sess. (1977); S. Rep. No. 95-989 at 49-51, 95th Cong., 2d Sess. 49-51 (1978), *reprinted*

-14-

*in* U.S. Code Cong. & Admin. News 5787, 5836, 6298.

**b.** In addition to its "property of the estate" analysis, the district court relied on the "regulatory exception" to the automatic stay, under which the provisions quoted above do not apply to proceedings "by a governmental unit . . . to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment [.]" 11 U.S.C. § 362(b)(4). This holding, too, was mistaken.

The regulatory exception applies only to actions or proceedings "by a governmental unit to enforce such governmental unit's police and regulatory power[.]" The Omnibus Order was issued on the motion of the Receiver, not the FTC. Even if the Receiver could somehow be deemed a "governmental unit," the proceedings on his motion were not proceedings by a governmental unit "to enforce *such governmental unit's* police and regulatory power[.]" 11 U.S.C. § 362(b)(4) (emphasis added). The Receiver has no police or regulatory power to enforce; his function is pecuniary: collecting, managing, and distributing the Receivership Defendants' assets.

This is true even though the Receiver was appointed in a suit by the FTC. The Receiver 's counsel told the bankruptcy court that the Receiver's claim against Integretel "was not predicated on the FTC's enforcement action." (Ex. 27 at 3.) That statement was correct. The Receiver is not authorized under the order appointing him to assert the FTC's rights or interests. (Ex. 6 at 10-14; Ex. 8 at 11-14; Ex. 9 at 11-15). Rather, he merely stands in the shoes of the Former Clients. *See, e.g., Fleming v. Lind-Waldock & Co.,*

-15-

922 F.2d 20, 24-25 (1st Cir. 1990). Moreover, the FTC Act may be enforced only by the FTC. *E.g., Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1174 n.5 (11th Cir. 1985), And the Omnibus Order cannot constitute a regulatory measure because it was not based on any finding that Integretel violated the FTC Act.

Even if the regulatory exception otherwise applied, by its own terms it does not extend to the enforcement of a money judgment. *SEC v. Brennan*, 230 F.3d 65, 71-72 (2d Cir. 2000). For purposes of § 362(b)(4), an order constitutes a "money judgment" if it is intended to remedy a past alleged harm rather than to prevent harm in the future and it can be satisfied by the payment of a sum certain. *Penn Terra Ltd. v. Department of Environmental Resources*, 733 F.2d 267, 276-77, 278 (3d Cir. 1984). The Omnibus Order qualifies on both counts.

c. The district court erred in ruling that civil contempt proceedings against Integretel were not subject to the stay. (Ex. 1 at 4.) First, for the same reason that the Omnibus Order is not within the regulatory exception to the stay, the contempt proceedings are not within it. The cases the court relied on involved contempt actions by government agencies and were based on contempt of regulatory orders. *SEC v. Bilzerian*, 131 F. Supp. 2d 10, 14 (D.D.C. 2001); *NLRB v. Sawulski*, 158 B.R. 971, 977-79 (E.D. Mich. 1993). Second, those cases state that contempt proceedings are exempt from the automatic stay only if their purpose is to uphold the dignity of the court. *Bilzerian*, 131 F. Supp. 2d 10 at 15; *Sawulski*, 158 B.R. at 975. The proceedings here do not qualify. Civil, unlike criminal, contempt, is not intended to vindicate the court's authority, but is purely remedial. *See,*

-16-

*e.g., United States v. United Mine Workers*, 330 U.S. 258, 302 (1947); *Serra Chevrolet, Inc. v. General Motors Corp.*, 446 F.3d 1137, 1147 (11th Cir. 2006). Thus, civil contempt proceedings are ordinarily subject to the automatic stay—at least where, as here, they are directed toward enforcement of an order that is itself subject to the stay. Third, although the cases cited by the court involved civil contempt proceedings, in those cases the debtors had been held in contempt before filing for bankruptcy. *Bilzerian*, 131 F. Supp. 2d at 12-13, 15; *Sawulski*, 158 B.R. at 974, 976. The interest in enforcing court orders was therefore stronger than it is here, where there was no such determination prior to the bankruptcy filing.

### C. To the extent that a fact-specific balancing of the equities is appropriate, the balance favors granting a stay.

**Without a stay, Integretel faces irreparable injury.** By ruling that the Omnibus Order and the contempt proceedings are not subject to the automatic stay, the district court denied Integretel the full benefits of the stay. That in and of itself constitutes irreparable injury. *See In re Lomas Financial Corp.*, 117 B.R. 64, 67-68 (S.D.N.Y. 1990). Like the denial of the right to free speech under the First Amendment, which also constitutes irreparable injury per se, *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1271-72 (11th Cir 2006), the erroneous denial of the breathing spell that Congress intended debtors in bankruptcy to enjoy causes a harm that cannot be measured in monetary terms and for which there is no adequate compensation.[5]

---

5. This does not mean that a bankruptcy-court order the bankruptcy court granting

-17-

00594

RER-33      2446

Moreover, without a stay pending appeal, Integretel will face concrete harm arising from the district court's intention to compel payment from Integretel on pain of contempt. Without a stay, enforcement of the Omnibus Order would presumably pick up where it was left off. The district court has made it clear that it will grant no meaningful relief; its order "conditionally granting" a stay was a *de facto* denial. So Integretel would again become embroiled in litigation over this issue—probably on an emergency basis—and there would be a very real chance of a conflict between the district court and the bankruptcy court.

And beyond that, allowing enforcement of the Omnibus Order would allow the Receiver obtain money that this Court will most likely hold is really property of Integretel's bankruptcy estate, which would impair Integretel's efforts to reorganize, harm Integretel's other creditors, and prevent the bankruptcy court from being able to decide whether Integretel should be allowed to use the funds.

This Court is likely to reverse the Omnibus Order because it is clear that under the correct analysis, the disputed amounts are not receivership assets. Before the Receiver was appointed, the Former Clients had no property interest in the reserve amounts. Even if those amounts were "owed" under the contracts, the Former Clients were merely unsecured creditors. They had no security interest, and the contracts rule out any

---

relief from the automatic stay would per se cause the debtor irreparable injury. Whereas the question whether the stay applies in the first instance does not involve a weighing of individualized equities, the question whether to grant relief from the stay does.

00595

RER-33      2447

fiduciary relationship by providing that Integretel is not the client's "agent, partner, joint venturer, trustee, fiduciary, or legal representative[.]" (Ex. 3 at 13, 41.) The contracts also undermine the district court's statement that the reserves were held on behalf of the Former Clients or for their benefit (Ex. 2 at 3), for they describe the IGT Reserve as being intended "to protect IGT [ i.e., Integretel.]" (Ex. 3 at 14, 43.)

Since the Former Clients had no property interest in the reserves before they were put in receivership, the Receiver also has none. The order appointing the Receiver did not and could not give him property rights that had not previously existed. Neither of the injunctive orders dealt with the question of whether the reserves were a receivership asset. More importantly, the court lacked the power to declare that funds that never belonged to the Former Clients were nevertheless receivership assets. Although a receivership court may have broad equitable powers, those powers do not extend to creating new substantive rights or property interests. *See, e.g., Hedges v. Dixon*, 150 U.S. 182, 192 (1893). *East Tennessee Natural Gas Co. v. Sage*, 361 F.3d 808, 823 (4th Cir. 2004).

The district court also said that the reserves belonged to the Receiver because they were within the court's in rem jurisdiction over receivership assets. (Ex. 2 at 4, 5, 7.) But that puts the cart before the horse. In rem jurisdiction extends only to property the receivership estate has an interest in. The ownership issue must therefore be resolved *before* the jurisdictional question, not after. And in any event, the court did *not* have in rem jurisdiction here. Such jurisdiction attaches only to assets within a court's actual or constructive possession. *See, e.g., Penn General Casualty Co. v. Commonwealth of Pennsylvania ex rel.*

-19-

*Schnader*, 294 U.S. 189, 195 (1935). No such possession exists with respect to assets in the hands of a third party who holds them under a substantial claim of right, as Integretel does here. *E.g.*, *Taubel-Scott-Kitzmiller Co. v. Fox*, 264 U.S. 426, 432-34 (1924).

**A stay would not significantly harm the Receiver.** Integretel is subject to supervision by the bankruptcy court and the disputed funds are under that court's control. The Bankruptcy Code sets out rules and procedures designed to protect the rights of creditors who claim an interest in property in the debtor's possession. The Receiver has already sought those protections from the bankruptcy court, and a stay pending appeal would not prevent it from continuing to do so. Nor would the Receiver be significantly harmed by staying the contempt proceedings. Such proceedings would not be in order as long as enforcement of the Omnibus Order is itself stayed.

**A stay would not harm the public interest.** Although the Receiver's claims arise in the context of an FTC enforcement action, a stay would not harm the public interest. The public interest in enforcing the FTC Act would not be implicated because Integretel has not been found to have violated the Act. And any attempt to argue that the Receiver is pursuing the public interest would run up against the fact that he is asserting what would, had he not been appointed, be claims belonging to entities that were among the primary wrongdoers. To the extent that the Receiver is nevertheless thought to be as acting in the public interest, the factors showing that a stay would not harm the Receiver necessarily show that it would not harm the public interest either. Finally, the FTC is entitled to participate in Integretel's bankruptcy and has in fact done so.

-20-

Respectfully submitted,

_____

Laurie Webb Daniel (GA Bar # 204225)  
Cynthia G. Burnside (GA Bar # 097107)  
Holland & Knight LLP  
1201 West Peachtree Street, NE  
One Atlantic Center, Suite 2000  
Atlanta GA 30309  
(404) 817-8500  

Neal Goldfarb (DC Bar # 337881)  
Richard H. Gordin (DC Bar # 727925)  
Tighe Patton Armstrong Teasdale PLLC  
1747 Pennsylvania Ave., NW, Suite 300  
Washington, D.C. 20006  
(202) 454-2800  

*Attorneys for Appellant/Movant*  
*The Billing Resource dba Integretel*

-21-

## Certificate of Service

I HEREBY CERTIFY that on this 11th day of October, 2007, the foregoing

motion (with Exhibits 1-27) was served on each of the following by the method(s)

indicated:[6]

**By hand and by email:**

Marilyn Kerst, Esq.
mkerst@ftc.gov
John F. Daly, Esq.
jdaly@ftc.gov
Federal Trade Commission
600 Pennsylvania Ave., N.W., Room 582
Washington, D.C. 20580

Laura M. Kim, Esq.
lkim@ftc.gov
Collot Guerard, Esq.
cguerard@ftc.gov
Richard McKewen, Esq.
rmckewen@ftc.gov
Robert Schoshinksi, Esq.
rschoshinski@ftc.gov
Federal Trade Commission
600 Pennsylvania Ave., N.W., Room 286
Washington, DC 20580

---

6. All parties who are expected to participate in this appeal are being served by hand
and by email. Where service is shown as having been made by email but not also by hand,
consent to such service has been given by means of participation in electronic filing in
the district court.

Jeffrey C. Schneider, Esq.
jcs@tewlaw.com
Patrick Rengstl, Esq.
pjr@tewlaw.com
Tew Cardenas LLP
Four Seasons Tower—15th Floor
1441 Brickell Avenue
Miami, FL 33131

**By email and first-class mail**

Michael Garrett Austin, Esq.
maustin@mwe.com
Steven E. Siff, Esq.
ssiff@mwe.com
McDermott Will & Emery LLP
201 S Biscayne Boulevard
Suite 2200
Miami, FL 33131-4336

Andrew G. Berg, Esq.
aberg@kslaw.com
Kevin Dinan, Esq.
kdinan@kslaw.com
Carolyn Tapie, Esq.
ctapie@kslaw.com
John-David Thomas, Esq.
jthomas@kslaw.com
King & Spalding LLP
1700 Pennsylvania Avenue, N.W.
Washington, D.C. 20006-4704

Derick J. Rodgers, Esq.
drodgers@lawdcm.com
Davis Cedillo & Mendoza Inc
McCombs Plaza, Suite 500
755 E. Mulberry Avenue
San Antonio, TX 78212

Mark Douglas Johnson, Esq.
MarkDJohnsonPA@bellsouth.net

-2-

00600

RER-33     2452

Mark D. Johnson, P.A.
10 Central Parkway, Suite 210
Stuart, Florida 34994

Rosanne Brady, Esq.
rosanne@macalusolaw.com
Peter N. Macaluso, Esq.
peter@macalusolaw.com
The Law Office of Peter N. Macaluso
3302 N. Tampa Street
Tampa, FL 33603

Mary Lou Farr
farrmarylou@aol.com
c/o James Stonehill
1006 Churchill Circle South
West Palm Beach, FL 33405

Gary M. Dunkel, Esq.
DunkelG@gtlaw.com
Jason H. Okleshen, Esq.
Greenberg Traurig
Phillips Point—East Tower, Suite 300-E
777 South Flagler Drive
West Palm Beach, FL 33401

Diane Noller Wells, Esq.
dwells@devinegoodman.com
Devine Goodman Pallet & Wells, PA
777 Brickell Avenue, Suite 850
Miami, FL 33131

Michael Woodbury, Esq.
michael.woodbury@woodbury-santiago.com
Two Datran Center—Penthouse 1A
9130 South Dadeland Boulevard
Miami, FL 33156

Henry W. Johnson, Esq.
hjohnson@jzwlawfirm.com
Hume & Johnson

-3-

1401 University Drive, Suite 301
Coral Springs, FL 33071

John W. Chapman, Jr., Esq.
jchapman@nhlslaw.com
Norton Hammersley Lopez & Skokos
1819 Main Street, Suite 610
Sarasota, FL 34236

Robert M. Weinberger, Esq.
rmw@fcohenlaw.com
Cohen Norris Scherer Weinberger & Wolmer
712 U.S. Highway 1, Suite 400
North Palm Beach, FL 33408

Thomas G. Long, Esq.
tlong@barnettbolt.com
Hildegund P. Wanders, Esq.
Barnett Bolt Kirkwood & Long
601 Bayshore Boulevard, Suite 700
Tampa, FL 33606

Robert Voss Fitzsimmons, Esq.
rvf@kubickidraper.com
Kubicki Draper
City National Bank Building
25 W Flagler Street, Penthouse
Miami, FL 33130-1712

Chad A. Dean, Esq.
chad@schuylaw.com
Schuyler Stewart Smith
118 West Adams Street, #800
Jacksonville, FL 32202

Bruce Eric Bloch, Esq.
sblawfirm@aol.com
Sapurstein & Bloch PA
9700 South Dixie Highway, Suite 1000
Miami, FL 33156

-4-

Theodore J. Leopold, Esq.
tleopold@riccilaw.com
Ricci Leopold
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410

**By hand:**

Michael David McDonough, Esq.
12794 Forest Hill Blvd., Suite 19D
Wellington, FL 33414

Jessy Mendoza
6117 Blue Grass Circle
Lake Worth, FL 33463

**By Federal Express**

Willoughby Farr, Inmate No. 653974
Avon Park Correctional Institution
PO Box 1100
County Road 64 East
Avon Park, FL 33926-1100
(service by hand impracticable; telephone notice impracticable)


_____

Neal Goldfarb

00603

RER-33      2455