1  HOWARD KOLLITZ (State Bar No. 059611)
   WALTER K. OETZELL (State Bar No. 109769)
2  STEVEN J. SCHWARTZ (State Bar No. 200586)
   DANNING, GILL, DIAMOND & KOLLITZ, LLP
3  2029 Century Park East, Third Floor
   Los Angeles, California 90067-2904
4  Telephone:     (310) 277-0077
   Facsimile:     (310) 277-5735
5
   JEFFREY C. SCHNEIDER (pro hac vice)
6  TEW CARDENAS LLP
   Four Seasons Tower, Fifteenth Floor
7  1441 Brickell Avenue
   Miami, Florida 33131-3407
8  Telephone:     (305) 539-2481
   Facsimile:     (305) 536-1116
9  Email:         jcs@tewlaw.com

10 Attorneys for Creditor, David R. Chase, Federal Receiver of
   Access One Communications, Inc., and Network One
11 Services, Inc.

12              **UNITED STATES BANKRUPTCY COURT**

13              **NORTHERN DISTRICT OF CALIFORNIA**

14                    **SAN JOSE DIVISION**

15 In re                              ) Case No. 07-52890-ASW
                                      )
16 THE BILLING RESOURCE, dba Integretal, a ) [Chapter 11]
   California corporation,            )
17                                    ) **RESPONSE OF THE FEDERAL**
   [Taxpayer's Identification No. 33-0289863], ) **RECEIVER TO DEBTOR'S MOTION**
18                                    ) **FOR USE OF CASH COLLATERAL**
              Debtor.                 )
19                                    ) Date:    October 15, 2007
                                      ) Time:    2:00 p.m.
20                                    ) Place:   United States Bankruptcy Court
                                      )          280 S. First Street
21                                    )          San Jose, CA
                                      )          Ctrm: 3020
22                                    )
   _____ ) Judge:  Hon. Arthur S. Weissbrodt
23

24     David R. Chase, The Federal Receiver (the "Federal Receiver") hereby submits his Response to the

25 Debtor's Motion for Authority to Use Cash Collateral (the "Response")

26

27     This Response is necessitated by two critical matters disclosed in the Debtor's Cash

28 Collateral Motion filed the evening of October 11 (the "Cash Collateral Motion").  The first of

                                    1

1  these matters is that there is no provision in the Proposed Order addressing or preserving the

2  approximately $1.7 million of the funds that, pre-petition, the Florida District Court (the "District

3  Court") found to be property of the Federal Receiver and which the District Court also confirmed,

4  this time post-petition with knowledge of the filing and this Cash Collateral Motion, was property

5  of the Federal Receiver and not property of the Debtor or the bankruptcy estate (the "Subject

6  Funds").  In fact, it is clear the Debtor does not intend to preserve the Subject Funds, but rather to

7  spend them, notwithstanding two standing District Court orders to turn them over to the Federal

8  Receiver (the "Orders").  It will do this by first obtaining a broad cash collateral order without a

9  provision for the Subject Funds' preservation and, then, by asking this Court, on what amounts to

10  three days notice, to release the blocked account currently holding the Subject Funds.  The second

11  matter necessitating this Response is that Debtor's Motion seeks to convince this Court that the

12  District Court's exclusive jurisdiction over the Subject Funds is of no consequence to the Cash

13  Collateral Motion.

14        Debtor could not be more mistaken.  Recognition of the District Court's exclusive

15  jurisdiction over the Subject Funds is indispensable to the Cash Collateral Motion.  Debtor is

16  asking this Court to approve the spending of the Subject Funds over which the District Court has

17  exclusive jurisdiction.  The Debtor's budget includes the spending of the Subject Funds and

18  assumes that it will have access to those funds.  Its Order is overbroad and contains no provision

19  preserving or even referring to the Subject Funds.

20        But, this Court does not have jurisdiction over the Subject Funds.  Instead, they are under

21  the exclusive jurisdiction of the District Court by virtue, inter alia, of 18 U.S.C. § § 754 and 1692.

22  Moreover, the District Court exercised its in rem jurisdiction over the Subject Funds prior to the

23  filing herein.  It made that clear in its Omnibus Order, and that Order held, prior to the filing

24  herein, that the funds were the Federal Receiver's property.  The District Court confirmed in its

25  Clarification Order, entered after the filing herein, that the funds were the property of the Federal

26  Receiver, that the funds were not the property of the bankruptcy estate, and that the funds were not

27  the property of the Debtor.  Both Orders required the immediate turnover of the funds to the

28  Federal Receiver.

2

1    In each of the hearings before this Court, and in its pleadings, the Debtor has assumed, but

2 never established, that this Court has jurisdiction over the Subject Funds. It has never addressed

3 the exclusivity of the District Court's jurisdiction and, indeed, in cannot. Its only argument, which

4 it has never articulated, would have to be based on 28 U.S.C. § 1334(e). That section confers

5 jurisdiction on the District Court where the bankruptcy case is pending over property of the estate

6 and property of the debtor. However, the Subject Funds are neither property of the estate nor

7 property of the Debtor, and this is set forth in the specific provisions of the two of the District

8 Court orders, again, one pre petition and a second post petition at a time the District Court Judge

9 was aware of the bankruptcy herein and the pending Cash Collateral Motion. Even if § 1334(e) did

10 apply, that does still not resolve the Debtor's problem that the District Court has jurisdiction and

11 exercised it first.

12    It simply cannot be ignored that failure to specifically exclude the funds from the Cash

13 Collateral Order or to authorize their spending constitutes this Court exercising jurisdiction which

14 belongs exclusively to the District Court and sets up a conflict between the two. This Court is

15 respectfully requested to specifically exclude the Subject Funds from the Cash Collateral Order and

16 to require that, in accordance with the District Court Orders, they be turned over to the Federal

17 Receiver forthwith.

18

19 Dated: October 15, 2007

DANNING, GILL, DIAMOND & KOLLITZ, LLP

By: _____
    STEVEN J. SCHWARTZ
    Attorneys for Creditor, David R. Chase,
    Federal Receiver of Access One
    Communications, Inc., and Network One
    Services, Inc.

-3-

# PROOF OF SERVICE

I, Vivian E. Servin, declare:

I am employed by the law firm of DANNING, GILL, DIAMOND & KOLLITZ, LLP, in the County of Los Angeles, State of California. I am employed in the office of a member of the bar of this court at whose direction the service was made. I am over the age of 18 years and am not a party to the within action. My business address is 2029 Century Park East, Third Floor, Los Angeles, California 90067-2904.

On October 15, 2007, I served the following document(s):

**RESPONSE OF THE FEDERAL RECEIVER TO DEBTOR'S MOTION FOR USE OF CASH COLLATERAL**

on the interested parties addressed as follows:

[SEE ATTACHED SERVICE LIST.]

**[By Email]** By sending the document via electronic email.

**[By Facsimile]** I'm readily familiar with this firm's practice of sending documents by facsimile. Under that practice, a cover sheet is prepared showing the telephone number of the recipient. The facsimile telephone number is shown on the attached service list. The documents were sent by facsimile and a confirmation was obtained from the facsimile machine that the transmission occurred without error.

I declare under penalty of perjury under the laws of the State of California and of the United States of America that the foregoing is true and correct.

Executed on October 15, 2007, at Los Angeles, California.

| | |
|---|---|
| Vivian E. Servin | |
| (Type or print name) | (Signature) |

315499.01 [XP]     24774                                          RER-35          2517

FACSIMILE AND EMAIL SERVICE LIST

**U.S. Trustee**
Edwina Dowell, Esq., Office of the U.S. Trustee

Facsimile: (408) 535-5532

**Debtor's Counsel**
Michael H. Ahrens, Sheppard, Mullin, Richter & Hampton LLP

mahrens@sheppardmullin.com
Facsimile: (415) 434-3947

Steven B. Sacks, Sheppard, Mullin, Richter & Hampton LLP

ssacks@sheppardmullin.com
Facsimile: (415) 434-3947

Jeffrey K. Rehfeld, Sheppard, Mullin, Richter & Hampton LLP

jrehfeld@sheppardmullin.com
Facsimile: (415) 434-3947

Laura M. Kim, Federal Trade Commission — lkim@ftc.gov
R. Elliott, Federal Trade Commission — relliott@ftc.gov
Collot Guerard, Federal Trade Commission — cguerard@ftc.gov
Jeffrey C. Schneider, for Receiver David R. Chase — jcs@tewlaw.com
Joel R. Dichter, Counsel for POL, Inc. and other "Omni" Creditors — info@dichterlaw.com
Steve Warren, Payment One — swarren@omm.com
Donald Schwartz, Royal Bank of Canada — donaldschwartz@lw.com
Robert Drobnak, Royal Bank of Canada — Robertdrobnak@lw.com
Roy Lin, Global YP — rlin@globalyp.com
Anthony Franco, Info Telco.com — anthony.franco@hotmail.com
Jeffrey Bornstein, United Voice Messaging — nelson@tfvmail.com

Leslie Cohen, for Public Communications — lcohen@linerlaw.com
Enid Colson, for Public Communications — ecolson@linerlaw.com
Michael Mora, FTC — mmora@ftc.gov
James Pardo, BSG — jpardo@kslaw.com
Parrish Felton, BSG — pfelton@kslaw.com
Kevin Dinan, BSG — kdinan@kslaw.com
Andrew Berg, BSG — aberg@kslaw.com
Sarah Taub, BSG — staub@kslaw.com
Bruce Robin, RRV — bruce@imagitel.com
Leslie Horowitz — lhorowitz@clarktrev.com
Timothy Miller — miller@taftlaw.com
Delores Cordell — dcordell@earthlink.net
Austin Nagel — austin@apnagellaw.com
Karen Muir — Karen.Muir@usdoj.gov
Dan Coleman — dcoleman@nts.net
Michaeline Correa — michaeline.correa@hellerehrman.com
Craig Chiang — cchiang@buchalter.com
John Fiero — jfiero@pszjyw.com
Kathryn Diemer — kdiemer@diemerwhitman.com
Peter Benvenutti — Peter.benvenutti@hellerehrman.com

Darryl S. Laddin — dladdin@agg.com
Shannon Mounger — shannon.l.mounger-lum@usdoj.gov
Thomas Little — janet@thomasclittle.com
Ellen A. Friedman — efriedman@friedumspring.com
M. Elaine Hammond — ehammond@friedumspring.com
John Fiero — jfiero@pszjlaw.com
Maxim Litvak — mlitvak@pszjlaw.com

## Miscellaneous:

07-52890 The Billing Resource
Type: bk                     Chapter: 11 v              Office: 5 (San Jose)
Judge: ASW                   Assets: y                  Case Flag: PlnDue, DsclsDue

### U.S. Bankruptcy Court

### Northern District of California

Notice of Electronic Filing

The following transaction was received from Schwartz, Steven J. entered on 10/15/2007 at 10:02 AM
PDT and filed on 10/15/2007
**Case Name:**       The Billing Resource
**Case Number:**     07-52890
**Document Number:** 144

**Docket Text:**
Response to *Response of the Federal Receiver to Debtor's Motion for Use of Cash Collateral with Proof
of Service* (RE: related document(s)[8] Motion to Use Cash Collateral). Filed by Creditor David R
Chase (Schwartz, Steven)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\Documents and Settings\ves\Desktop\THE BILLING RESOURCE Fed Recvr
Resp to Cash Coll Mtn.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1017961465 [Date=10/15/2007] [FileNumber=6845437-
0] [a0e5dcead74c9c0f8f83857e4284871d299642d4add0d1de0fd721bfb7b8d2e2c4
7292bc948354a869e7efe7888e99b58a2d353634816461c3a3e9665abc9cb9]]

**07-52890 Notice will be electronically mailed to:**

Michael H. Ahrens     mahrens@sheppardmullin.com

Leslie A. Cohen     lcohen@linerlaw.com, jparrott@linerlaw.com;ecolson@linerlaw.com

Michaeline H. Correa     MCorrea@hewm.com

Kathryn S. Diemer     kdiemer@diemerwhitman.com

John D. Fiero     jfiero@pszyjw.com, AZaragoza@PSZYJW.com;pjeffries@pszyjw.com

Ellen A. Friedman     efriedman@friedumspring.com, mmyles@friedumspring.com

Jeffrey K. Garfinkle    bkgroup@buchalter.com

David M. Goodrich    dgoodrich@goodlawcorp.com

Ori Katz    okatz@sheppardmullin.com, dwhitehead@sheppardmullin.com

Darryl S. Laddin    bkrfilings@agg.com

John A. Lapinski    jlapinski@clarktrev.com

Bobby C. Lawyer    bl2153@att.com

Barry R. Levine    barlev@levineatlaw.com

Julie A. Mack    jmack@ftc.gov, dabueid@ftc.gov

Breck E. Milde    bmilde@terra-law.com

Shannon L. Mounger-Lum    shannon.l.mounger-lum@usdoj.gov

Office of the U.S. Trustee / SJ    USTPRegion17.SJ.ECF@usdoj.gov

Jeffrey K. Rehfeld    jrehfeld@sheppardmullin.com, ewalters@sheppardmullin.com

Karen Rinehart    krinehart@omm.com

Steven B. Sacks    ssacks@sheppardmullin.com, ewalters@smrh.com

Steven J. Schwartz    sschwartz@dgdk.com

Gilbert B. Weisman    notices@becket-lee.com

## 07-52890 Notice will not be electronically mailed to:

Daniel H. Coleman
Network Telephone Services, Inc.
21135 Erwin St.
Woodland Hills, CA 91367

Ken Dawson
5883 Rue Ferrari
San Jose, CA 95138

Holland & Knight LLP
,

Tighe Patton Armstrong Teasdale, PLLC

,

Julie S. Turner
The Turner Law Firm
344 Tennessee Ln.
Palo Alto, CA 94306

**RER - 36**

1 | HOWARD KOLLITZ (State Bar No. 059611)
WALTER K. OETZELL (State Bar No. 109769)
2 | STEVEN J. SCHWARTZ (State Bar No. 200586)
DANNING, GILL, DIAMOND & KOLLITZ, LLP
3 | 2029 Century Park East, Third Floor
Los Angeles, California 90067-2904
4 | Telephone: (310) 277-0077
Facsimile: (310) 277-5735
5 | Email:    woetzell@dgdk.com
             sschwartz@dgdk.com
6
JEFFREY C. SCHNEIDER (pro-hac vice)
7 | TEW CARDENAS LLP
Four Seasons Tower, Fifteenth Floor
8 | 1441 Brickell Avenue
Miami, Florida 33131-3407
9 | Telephone: (305) 539-2481
Facsimile:  (305) 536-1116
10 | Email:    jcs@tewlaw.com

11 | Attorneys for Creditor, David R. Chase, Federal Receiver of
Access One Communications, Inc. and Network One
12 | Services, Inc.

### UNITED STATES BANKRUPTCY COURT

### NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

|  |  |
|---|---|
| In re | Case No. 07-52890-ASW |
| THE BILLING RESOURCE, dba Integretel, a California corporation, | [Chapter 11] |
| Debtor. | |
| [Taxpayer's Identification No. 33-0289863] | |
| THE BILLING RESOURCE, dba INTEGRETAL, a California corporation, | Adv. No. 07-05156 |
| Plaintiff, | |
| vs. | **FEDERAL RECEIVER'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES** |
| FEDERAL TRADE COMMISSION, and DAVID R. CHASE, not individually, but solely in his capacity as receiver for Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., 411TXT, Inc., CELL-INFO-USA, INC., Enhanced Billing Services, Inc., Toll Free Connect, Inc., Cripple Creek Holdings, LLC, Built to Last, LLC, Not Fade Away, LLC, He's Gone, LLC, The Other | Date:    October 17, 2007<br>Time:    2:00 p.m.<br>Ctrm:    3020 |

-1-

315069.03 [XP]    24774

# TABLE OF CONTENTS

Page

I.     INTRODUCTION .................................................................................................2

II.    DEBTOR FAILED TO OBTAIN PERMISSION FROM THE DISTRICT
       COURT TO SUE THE FEDERAL RECEIVER...................................................5

III.   THE REQUESTED INJUNCTION WILL SERVE NO PURPOSE EXCEPT
       TO ESTABLISH A CONFLICT BETWEEN THE ORDERS OF THIS
       COURT AND THE DISTRICT COURT.............................................................8

IV.    THE DEBTOR HAS FAILED TO MAKE A SHOWING UPON WHICH
       INJUNCTIVE RELIEF CAN BE BASED.........................................................11

V.     THE DEBTOR FAILS TO SATISFY ANY OF THE BASIC EVIDENTIARY
       REQUIREMENTS NECESSARY TO OBTAIN A PRELIMINARY INJUNCTION......14

VI     THE DISTRICT COURT HAS JURISDICTION OVER THE SUBJECT
       FUNDS ..............................................................................................................15

VII.   THE DISTRICT COURT'S JURISDICTION IS NOT SUBJECT TO
       COLLATERAL ATTACK...................................................................................17

VIII.  RE-LITIGATION OF THE PARTIES' DISPUTES OVER THE SUBJECT
       FUNDS ARE BARRED BY RES JUDICATA......................................................21

IX.    THE DEBTOR MISCONSTRUES THE FEDERAL RECEIVER'S
       OWNERSHIP INTEREST AS A TRUST ........................................................24

X.     EVEN IF CONSTRUED TO BE TRUST, THE RECEIVER'S CLAIM
       WAS ESTABLISHED PRE-PETITION AND THE SUBJECT FUNDS
       ARE THEREFORE EXCLUDED FROM THE BANKRUPTCY ESTATE.....................25

XI.    CONCLUSION..................................................................................................26

-i-

1

# **TABLE OF AUTHORITIES**

2
**Page(s)**

3 **Federal Cases**

4 In re Advent Management Corp., 178 B.R. 480 (9th Cir. BAP 1995) .......................................... 25

5 In re DeLorean Motor Co., 991 F.2d 1236 (6th Cir.1993); ............................................................ 6

6 In re Dolen, 265 B.R. 471 (Bankr.M.D.Fla.2001) ........................................................................ 16

7 In re Hecker, 316 B.R. 375 (Bankr. S.D. Fla. 2004). .................................................................... 26

8 In re Krikava, 217 B.R. 275 (Bankr.D.Neb.1998) .......................................................................... 7

9 In re Linton, 136 F.3d 544 (7th Cir.1998) ................................................................................... 5-6

10
**State Cases**
11
Airwork Corp v. Markair Express, Inc. (In re Markair, Inc.), 172 B.R. 638, 642
12        (9ᵗʰ Cir. BAP 1994)............................................................................................................. 25

13 Americana Fabrics, Inc. v. L & L Textiles, Inc. 754 F.2d 1524 (9th Cir. 1985) ........................... 21

14 Baldwin v. Iowa State Traveling Men's Ass'n, 51 S.Ct. 517; 283 U.S. 522,;
15        75 L.Ed. 1244 (1931).................................................................................................... 16,21

16 Barton v. Barbour, 104 U.S. 126; 26 L.Ed. 672 (1881), ............................................................. 5-7

17 Brown v. Felsen, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). ...................................... 21

18 FTC v. Productive Marketing, Inc., 136 F. Supp. 2d 1096, 1105 (C.D. Cal. 2001) ................... 9,18

19 Carter v. Rogers, 220 F.3d 1249 (11th Cir. 2000) ........................................................................ 5,7

20 Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317,
        84 L.Ed. 329 (1940)............................................................................................................. 17

21 Cisneros v. Cost Control Marketing and Sales, 862 F.Supp. 1531W.D.Va.,1994
22        (citing Smith v. McInver, 22 U.S. (9 Wheat) 532, 535, 6 L.Ed. 152 (1824) ...................... 20

23 Citibank, N.A. v. Nyland, (CF8) Ltd., 839 F.2d 93 (2d Cir. 1987) ............................................. 9,19

24 Crown Vantage, Inc. v. Fort James Corporation, 421 F.3d 963 (9th Cir.2005) ........................... 6-8

25 CFTC v. Topworth Int'l, Ltd., 205 F.3d 1107 (9th Cir. 2000) ...................................................... 23

26 Davis v. Gray, 16 Wall. 203, 83 U.S. 203, 21 L.Ed. 447 (1872) ................................................. 6-7

27 Durfee v. Duke, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963) ......................................... 21

28 EEOC v. University of Pa., 850 F.2d 969 (3d Cir.1988) [citing Kline v. Burke
        Constr. Co., 260 U.S. 226,  43 S.Ct. 79,  67 L.Ed. 226 (1922)] ........................................ 20

-ii-

1

**TABLE OF AUTHORITIES (cont.)**

2

**Page(s)**

3  Eller Industries, Inc. v. Indian Motorcycle Manufacturing, Inc. ("IMMI"), 929 F.
4       Supp. 369 (D. Colo. 1995),..................................................................................8-9,17,20

5  FTC  v. Productive Marketing, Inc., 136 F. Supp. 2d 1096, 1104 (C.D. Cal. 2001)...................9,17

6  F.T.C. v. Southwest Sunsites, Inc., 665 F. 2d 711 (5th Cir. 1982) cert den. 102 S. Ct.
        2236, 456 U.S. 973, 72 L.Ed.2d 846 ................................................................................24

7  Gordon v. Nick, No. 96-1858, 162 F.3d 1155 (4th Cir. Sept.2, 1998)...........................................6

8  Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 102
9       S.Ct. 2099, 2104 n. 9, 72 L.Ed.2d 492 (1982)........................................................................17

10  Kashani v. Fulton (In re Kashani ), 190 B.R. 875 (9th Cir. BAP 1995)....................................6-7

11  Lebovits v. Scheffel (In re Lehal Realty Assocs.), 101 F.3d 272 (2d Cir.1996) ............................6

   Los Angeles Branch NAACP v. Los Angeles Unified School Dist., 750 F.2d 731
12      (9th Cir.1984). ........................................................................................................................21

13  Montana v. United States, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) ...........................21

14  Productive Marketing, Inc., 136 F. Supp. 2d at 1105 ....................................................................17

15  Reed v. Allen, 52 S.Ct. 532, 286 U.S. 191, 76 L.Ed. 1054 (1932)..................................................21

16  SEC v. Bowler, 427 F.2d 190 (4th Cir. 1970) ...............................................................................10

17  SEC v. Wencke, 783 F.2d 829 (9th Cir. 1986)...............................................................................18

18  SEC v. Wolfson, 309 B.R. 612 (Bankr.D.Utah 2004)....................................................................15

19  SEC vs. Elfindepan, S.A., No. 1:00CV00742, 2002 WL 31165146, at *4
20      (M.D.N.C. 2002).....................................................................................................................18

21  SEC vs. Pinez, 989 F. Supp. 325 (D. Mass. 1997) ........................................................................18

22  SEC vs. Universal Fin., 760 F.2d 1034 (9th Cir. 1985) .................................................................18

23  SEC vs. Wencke, 622 F.2d 1363  (9th Cir. 1980) .............................................................16,17,23

24  Segal v. American Tel. & Tel. Co., 606 F.2d 842 (9th Cir.1979) ...................................................21

   Solidus Networks, Inc. v. Excel Innovations, Inc. (In re Excel Innovations, Inc.),
25  F.3d. 2007 WL 2555941 *5 (9th 2007)...............................................................................14

26  Springer v. Infinity Group Co., No. 98-5182, 189 F.3d 478 (10th Cir. Aug.26, 1999) ...................6

27  Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938).........................................18,21

28  Title v. United States, 263 F.2d 28, 30 (9th Cir.1959). ..................................................................21

-iii-

1

**TABLE OF AUTHORITIES (cont.)**

2

Page(s)

3    United States Dep't of Housing & Urban Dev't v. Cost Control Marketing & Sales
4         Mgm't, 64 F.3d 920, n. 11 (4th Cir.1995)..................................................................... 16

     United States Dep't of Housing & Urban Dev't v. Cost Control Marketing & Sales
5         Mgm't, 64 F.3d 920, n. 11 (4th Cir.1995) (citing Brock v. Morysville Body
6         Works, Inc. 829 F.2d 383 (3rd Cir.1987)) ...................................................................... 16

     United States Fire Ins. Co. v. Goodyear Tire & Rubber Co., 920 F.2d 487
7         (8th Cir.1990); .................................................................................................................. 20

8    United States v. Delta Distributors Co., Inc., 1996 WL 460112
9         (June 21, 1996 S.D.W.Va.) ............................................................................................ 16

10   United States vs. Hall, 472 F.2d 261 (5th Cir. 1972) ................................................... 18

11   Vass v. Conron Bros. Co., 59 F.2d 969 (2d Cir.1932) .................................................... 6

12   Yanow v. Weyerhauser Steamship Co., 274 F.2d 274 (9th Cir.1959) .......................... 21

13   **Statutes**

14   11 U.S.C. § 362(b)(4) .................................................................................................... 23

15   28 U.S.C. § 754.................................................................................................................. 5

16   28 U.S.C. § 962................................................................................................................ 15

17   Federal Rules of Bankruptcy Procedure 7001(2). ......................................................... 13

18

19

20

21

22

23

24

25

26

27

28

-iv-

315069.03 [XP]      24774

1  One, LLC, Turn on Your Love Light, LLC,                    )
   China Cat Sunflower, LLC, Lazy River Road                  )
2  Holdings, LLC,                                             )
                                                              )
3                                                             )
              Defendants.                                     )
4                                                             )
   _____           )
5

6      **TO THE HONORABLE ARTHUR S. WEISSBRODT, UNITED STATES**

7  **BANKRUPTCY JUDGE:**

8         David R. Chase, the United States District Court-Appointed Receiver (the "Federal

9  Receiver") of Access One Communications, Inc. ("Access One"), and Network One Services, Inc.

10 ("Network One") (collectively, the "Receiverships"), hereby submits his Opposition to the Motion

11 for Preliminary Injunction ("Supplemental Opposition") filed on or about October 11, 2007 by The

12 Billing Resource, dba Integretel, a California corporation (the "Debtor"), as follows:[1]

13

14                                         **I.**

15                                 **INTRODUCTION**

16        The Debtor is asking this Court to restrain an agent of the District Court from performing

17 his duties to and imposed by the District Court of the Southern District of Florida (the "District

18 Court"). This request is a direct attack on the integrity of the District Court's Orders and authority,

19 which the District Court has made clear beyond argument that the terms of those Orders were

20 meant to protect. It sets up a conflict between the orders of this Court and the District Court and it

21  _____

22 [1] The Receiver incorporates herein by reference each of the following pleadings the Receiver filed
   with this Court in opposition to the Debtor's Motion for Use of Cash Collateral, including: 1)
23 Opposition to the Motions of The Billing Resource, dba Integretal, a California corporation For
   Use of Cash Collateral and Granting Replacement Liens; For an Order Authorizing Use of Existing
24 Bank Accounts and Cash Management Systems and the Ex Parte Application For Order Approving
   Ken Dawson as Debtor's Designated Responsible Individual; Memorandum of Points and
25 Authorities (the "First Opposition"); 2) Declaration of David R. Chase filed in support of the First
   Opposition; 3) Federal Receiver's Supplemental Opposition to Motion for Authority to Use Cash
26 Collateral With Memorandum of Points and Authorities; 4) Federal Receiver's Second
   Supplemental Opposition to Motion for Authority to Use Cash Collateral; Memorandum of Points
27 and Authorities; and 5) the First, Second, Third and Fourth Requests for Judicial Notice of David
   R. Chase, Federal Receiver in Opposition to Motion for Authority to Use Cash Collateral.

28

                                          -2-

1  assumes jurisdiction that does not exist. In the meantime, Debtor proceeds to litigate the issues

2  decided by the Orders on two fronts -- in the 11th Circuit and before this Court.

3       This request should be denied. Initially, and critically, this action may be maintained

4  because Debtor has not obtained permission from the District Court to bring any action against the

5  Federal Receiver. For over 100 years, Federal law has required that before an action is brought

6  against a receiver, the litigant must obtain leave from the appointing court. This has not been done

7  here.

8       Moreover, there is no reason to enjoin the Federal Receiver, and no purpose will be served

9  except to set up a conflict between orders of this Court and the District Order. The Debtor is

10  subject to two standing Orders holding that the Subject Funds are the property of the Federal

11  Receiver, holding that the Subject Funds are not property of the Debtor or property of the

12  bankruptcy estate, and requiring that the Debtor turn them over or show cause why it should not be

13  held in contempt. Enjoining the Federal Receiver does not extinguish the effect or compulsion of

14  the Orders. Nor does this Court sit in review of those Orders. Instead, the requested relief puts the

15  Federal Receiver in the position where he is directed by an order of the District Court to take

16  certain actions and enjoined by the Court from obeying that order, and it sets up a conflict between

17  this Court and the District Court. The Federal Receiver is not another run of the mill litigant but,

18  instead, an agent of the District Court, who, even if restrained from going forward, will still have to

19  report to the District Court as to what is happening in respect of a standing Order requiring the

20  Debtor and its principals to turn over the receivership property or face possible incarceration. What

21  this Court is really being asked is to restrain the District Court Proceedings, which means restrain

22  the District Court in exercise of its exclusive jurisdiction over receivership property. And not even

23  Debtor suggests the District Court Proceedings may be restrained.

24       Nor has Debtor made any showing upon which such injunction may be based. The District

25  Court Proceedings are not subject to the automatic stay, even Debtor admits this, and there are no

26  significant proceedings by the Federal Receiver, pending or threatened, the expense of which

27  endangers the hypothetical reorganization here. As the Court recalls, there are two proceedings in

28  Florida, that litigated by the FTC (the "FTC Proceeding"), and the contempt proceeding involving

-3-

315069.03 [XP]      24774

1   the Federal Receiver (the "Contempt Proceeding"). The FTC Proceeding is the proceeding in

2   which discovery must be taken, pre-trial proceedings attended to, and trial conducted, and of which

3   Debtor complains. The Federal Receiver is not a participant in this proceeding.

4        The Debtor, however, has only addressed the expense of the FTC Proceeding. There is no

5   evidence before this Court of any expense that the Debtor will incur in the little that remains in

6   respect of the Contempt Proceeding, and, as discussed above, enjoining the Federal Receiver will

7   not make the contempt proceeding go away. The District Court Orders still stand and Debtor will

8   have to incur the expenses of complying or showing cause, in any event.

9        Nor does Debtor's 'budget' support the claims here. Instead, it demonstrates that even if its

10   claim had merit, the consequences complained of will not become manifest, if at all, until the

11   passage of at least two months, which is more than double the period presently requested for

12   authority to use Cash Collateral. Debtor has made no attempt to supply any foundation for its

13   asserted figures, and the figures raise more questions than they answer. They certainly do not

14   demonstrate that the acts of the Federal Receiver, sought to be restrained, will impede Debtor's

15   vague, unspecified, and largely speculative plan to reorganize.

16        Debtor continues to assert that the Federal Receiver is merely an unsecured creditor.

17   However, as set forth in the Federal Receiver's Second Supplemental Reply to Debtor's Cash

18   Collateral Motion, that issue was argued by the Debtor before the District Court and it was rejected.

19   Instead, as between the Federal Receiver and the Debtor, the ownership of the Funds has been

20   decided by the District Court Orders.

21        Finally, the Debtor attempts to cloud the clear and unambiguous Orders of the District

22   Court by treating the Federal Receiver's claim as an equitable "trust" and thereby imposing a

23   "tracing" requirement. The Federal Receiver's equitable remedy was imposed by the District Court

24   acting pursuant to Federal Statute, which remedy is far broader than any state law equitable trust

25   claim. The District Court has already considered and rejected the Debtor's argument that the

26   commingling of deposits renders the District Court's Orders ineffective as to the Debtor. To the

27   extent that the Debtor disagrees with the District Court, it can attempt to convince the Eleventh

28

-4-

315069.03 [XP]     24774

1  Circuit that the District Court was in error. Nonetheless, the Debtor holds property of the

2  Receivership, which is excluded from the estate.

3  **II.**

4  **DEBTOR FAILED TO OBTAIN PERMISSION FROM THE DISTRICT COURT TO SUE**

5  **THE FEDERAL RECEIVER**

6    As discussed in the Federal Receiver's oppositions to the Debtor's Cash Collateral Motion

7  as well as in the FTC's oppositions, the District Court has exclusive jurisdiction over the Subject

8  Funds, and that jurisdiction is conferred by both statutory and judicial authority (28 U.S.C. § 754,

9  1962; SEC v. Wolfson, 309 B.R. 612 (Bankr.D.Utah 2004). However, there is also a fundamental

10  lack of subject matter jurisdiction over this action related to this exclusive District Court

11  jurisdiction. The Debtor has not obtained permission from the District Court to bring this action or

12  any action against the Federal Receiver. Whether Debtor's failure to do so and disclose this to the

13  Court is a result of the inadvertence or what the Federal Receiver believes is a pattern of selective

14  disclosure, it has been Federal law for over 100 years that before litigant brings an action a

15  receiver, it must obtain permission from the court that appointed that receiver. As explained and

16  held by the 11th Circuit in Carter v. Rogers, 220 F.3d 1249, 1252 (11th Cir. 2000).

17    "An unbroken line of cases ... has imposed [this] requirement as a matter of

18    federal common law." Linton, 136 F.3d at 545. In so holding, these circuit

19    courts have applied the rule referred to as the "**Barton** doctrine." See id.

20    The Supreme Court in Barton v. Barbour, 104 U.S. 126, 127, 26 L.Ed. 672

21    (1881), stated that "[i]**t is a general rule** that before suit is brought against

22    **a receiver[,] leave of the court by which he was appointed must be**

23    **obtained."**

24

25    It remains unquestioned that this doctrine applies to federal receivers. Judicial authority has

26  extended its reach to require the same in respect of trustees. So pervasive is this doctrine that the

27  11th Circuit and other Circuits have held that leave must be obtained from the bankruptcy court

28  before suing a bankruptcy trustee in district court.

-5-

1

2    "Joining the other circuits that have considered this issue, we hold that a

3    debtor must obtain leave of the bankruptcy court before initiating an action

4    in district court when that action is against the trustee or other bankruptcy-

5    court-appointed officer, [FN4] for acts done in the actor's official capacity.

6    See Springer v. Infinity Group Co., No. 98-5182, 189 F.3d 478 (10th Cir.

7    Aug.26, 1999) (unpublished table decision), cert. denied, 529 U.S. 1020, 120

8    S.Ct. 1422, 146 L.Ed.2d 314 (2000); Gordon v. Nick, No. 96-1858, 162

9    F.3d 1155 (4th Cir. Sept.2, 1998) (unpublished table decision); In re Linton,

10    136 F.3d 544, 546 (7th Cir.1998); In re Lehal Realty Assocs.Lebovits v.

11    Scheffel (), 101 F.3d 272 (2d Cir.1996); Allard v. Weitzman In re DeLorean

12    Motor Co. (), 991 F.2d 1236, 1240 (6th Cir.1993); Vass v. Conron Bros.

13    Co., 59 F.2d 969, 970 (2d Cir.1932); Kashani v. Fulton (In re Kashani ), 190

14    B.R. 875, 885 (9th Cir.BAP 1995)."

15    Id.

16

17 Failure to obtain leave from the appointing court deprives the court in which the unauthorized

18 action is brought of jurisdiction.

19    As demonstrated by Crown Vantage, Inc. v. Fort James Corporation, 421 F.3d 963 (9th

20 Cir.2005), the 9th Circuit recognizes and applies the Barton Doctrine.  In Crown Vantage, the 9th

21 Circuit included the liquidating trustee in the scope of the Barton Doctrine and reversed the lower

22 court's decision requiring the trustee to establish irreparable harm before obtaining injunctive relief

23 itself based upon violation of the Barton Doctrine.  The 9th Circuit explained the Barton Doctrine

24 and its rationale and basis.

25    "This holding is firmly grounded in the **_Barton_** doctrine, established by the

26    Supreme Court over a century ago, which provides that, before suit can be

27    brought against a court-appointed receiver, **"leave of the court by which he**

28    **was appointed** must be obtained." **104 U.S. at  127;** _see also Davis v._

-6-

1   *Gray*, 16 Wall. 203, 83 U.S. 203, 218, 21 L.Ed. 447 (1872) (holding that the

2   court appointing a receiver 'will not allow him to be sued touching the

3   property in his charge, nor for any malfeasance as to the parties, or others,

4   without [the court's] consent'). The Court held that if leave of court were not

5   obtained, then the other forum lacked subject matter jurisdiction over the

6   suit. **Barton, 104 U.S. at 127**. Part of the rationale underlying *Barton* is

7   that the court appointing the receiver has in rem subject matter jurisdiction

8   over the receivership property. *Id.* at 136. As the Supreme Court explained,

9   allowing the unauthorized suit to proceed "would have been a usurpation of

10  the powers and duties which belonged exclusively to another court." *Id.*

11  Crown Vantage, supra, at 970.

12

13  Nor does it make a difference whether the action is brought in State court or Federal court.

14  "Carter argues that the Barton doctrine requires parties to obtain leave of the

15  bankruptcy court only when they wish to pursue a state court remedy.   We

16  disagree, and hold that when leave is required, it is required before pursuing

17  remedies in either state or other federal courts.   We find no reason to

18  distinguish between instances where the trustee is sued in state court and

19  those in which the trustee is sued in federal court.   See Kashani v. Fulton  (In

20  re Kashani ), 190 B.R. 875, 885 (9th Cir. BAP 1995) ("[L]eave to sue the

21  trustee is required to sue in those federal courts other than the bankruptcy

22  court which actually approves the trustee's appointment.");  In re Krikava,

23  217 B.R. 275, 279 (Bankr.D.Neb.1998) ("Consent of the appointing

24  bankruptcy court is required even when the plaintiff seeks to sue in another

25  federal court.")."

26  Carter, supra, at 1253

27

28

-7-

1    This doctrine is not subject to waiver. As held in Crown Vantage, supra, at 970, the Barton

2 Doctrine implicates subject matter jurisdiction and, consequently, is not waived and can be raised

3 at any time.

4                                                          **III.**

5            **THE REQUESTED INJUNCTION WILL SERVE NO PURPOSE EXCEPT TO**

6               **ESTABLISH A CONFLICT BETWEEN THE ORDERS OF THIS COURT**

7                                   **AND THE DISTRICT COURT**

8            Debtor is asking this Bankruptcy Court to enjoin an agent of the District Court from

9 performing the duties imposed upon him by order of the District Court, in a proceeding that even

10 Debtor admits is not subject to the automatic stay, in respect of property over which the District

11 Court has exclusive in rem jurisdiction. Such a request, even if this Court grants it, will have little,

12 if any, effect on the District Court Proceedings, it will expose the Federal Receiver to conflicting

13 orders, and it will set up a conflict between the orders of this Court and the District Court.

14           The Receiver is not a typical litigant. The Receiver is a creature of Court Order, who

15 operates as an agent of the District Court on behalf of the District Court. Indeed, the District

16 Court's three Injunctive-Relief Orders make this clear:

17           The Receiver shall be the agent of this Court, and solely the agent of this Court, in
             acting as Receiver under this Order. See, Temporary Restraining Order (Exhibit "B" to
18           Chase Declaration) at Section VII; Preliminary Injunction (Exhibit "C" to Chase
             Declaration) at Section VIII; and Amended Preliminary Injunction (Exhibit "D" to Chase
19           Declaration) at Section VIII).

20           As such, the Receiver is obligated both by the Orders appointing him and by case judicial

21 authority to marshal and preserve the assets of the Receivership Entities in order to return these

22 assets to the victims of the fraud. For example, in Eller Industries, 929 F. Supp. at 372 [CITE] the

23 court stated:

24           The Receiver is charged with the duty of managing the estate and property entrusted
25           to his care. It must collect and preserve corporate property from imminent danger of loss,
             waste or dissipation and administer the receivership, free from outside interference with
26           estate property.

27

28

                                                         -8-

315069.03 [XP]      24774

1    The Receiver is also an agent and fiduciary of the court which appoints him. See id.; see

2  also Temporary Restraining Order at Section VII; Preliminary Injunction at Section VIII; and

3  Amended Preliminary Injunction at Section VIII.

4    In Eller Industries, involving a strikingly-similar situation, the court concluded that the

5  Bankruptcy Court's injunction issued in Massachusetts could not be effective against the Receiver

6  appointed by the Colorado District Court because the Bankruptcy Court's injunction interfered with

7  the Court-mandated obligations of the Receiver, who was a fiduciary of the District Court and

8  whose responsibilities, pursuant to the District Court's Order appointing him, was to locate and

9  protect the assets of the receivership entities:

10    The purposes of this Receivership, to marshal and protect company assets for the benefit of

11  all creditors, can only be achieved by a stay of foreign equitable actions, including the

12  Massachusetts Adversarial Proceeding as it purports to apply to the Receivership. 929 F. Supp. at

13  373. Similarly, in Citibank, N.A. v. Nyland, (CF8) Ltd., 839 F.2d 93 (2d Cir. 1987), the Second

14  Circuit held:

15        As receiver, Cushman & Wakefield is acting as an officer of the court and has the
          duty to preserve and protect the property pending the outcome of the litigation. As a result,
16        its authority is wholly determined by the order of the appointing court.

17  Id. at 98 (citations omitted).

18    Indeed, in a Federal governmental enforcement action, a Federal District Court typically

19  appoints a Receiver and issues a Temporary Restraining Order and/or Preliminary Injunction to

20  preserve the assets resulting from the actions of the Receivership Entities, whether held by parties

21  or non-parties, in order to provide redress for legitimately-defrauded investors. See FTC v.

22  Productive Marketing, Inc., 136 F. Supp. 2d 1096, 1105-06 (C.D. Cal. 2001). In Productive

23  Marketing, the District Court found that the non-party's failure to turn over receivership funds

24  disrupted the District Court's power to enforce its Injunction and the Receiver's right to obtain

25  such funds:

26        If the court cannot compel ACCPC to turn over assets in its possession belonging to
          the receivership estate, the Receiver will be unable to provide adequate redress to
27        consumers who have been defrauded by Defendants. Because ACCPC's conduct imperils

28

-9-

1    the court's ability to render an effective judgment, the court may properly enjoin it, even
       though it is not a party to the action.

2

3    Id. at 1100-01,1106.  In other words, the appointment of a Receiver is typically a necessary means

4    by which a Federal agency seeks injunctive relief in an enforcement action, and thus the Receiver

5    seeks to prevent the diversion and waste of receivership assets for the benefit of those who were

6    defrauded.  See SEC v. Bowler, 427 F.2d 190, 197-98 (4th Cir. 1970) (finding that Receiver was

7    necessary in fraud enforcement action to locate and preserve assets of Receivership Entities for

8    benefit of those defrauded).

9         The action pending before the District Court is an enforcement action in which the FTC is

10   seeking injunctive relief against, among others, the Debtor for consumer redress for deceptive and

11   unfair practices for unauthorized billing of charges on phone bills in violation of the Federal Trade

12   Commission Act.  As such, the District Court exercised its equitable powers and permanently

13   appointed the Receiver.  In the District Court's Amended Preliminary Injunction, which the FTC

14   served on the Debtor, the District Court ordered the Receiver, as the District Court's agent, to

15   locate, marshal and preserve Receivership property:

16        The Receiver shall be the agent of this Court, and solely the agent of this Court, in
          acting as Receiver under this Order."  (Exhibit "D" to Chase Declaration; page 11; emphasis
17        added);

18        [T]he Receiver is authorized and directed to accomplish the following: . . .

19

20        B.    Take exclusive custody, control, and possession of all assets and
               documents of, or in the possession, custody, or under the control of, the
21             Receivership Defendants, wherever situated.  (page 11; emphasis added);

22        The Receiver shall assume control over the income and profits therefrom and
          all sums of money now or hereafter due or owing to the Receivership Defendants.
23        (pages 11-12; emphasis added);

24

25        [T]he Receiver is authorized and directed to accomplish the following: . . .

26        D.    Conserve, hold, and manage all assets of the Receivership
               Defendants, and perform all acts necessary or advisable to preserve the value of
27             those assets in order to prevent any irreparable loss, damage, or injury to consumers
               or creditors of the Receivership Defendants, including, but not limited to, obtaining

28

-10-

1  an accounting of the assets and preventing unauthorized transfer, withdrawal, or
2  misapplication of assets. (pages 11,13; emphasis added);

3      F.      Prevent the inequitable distribution of assets and determine, adjust,
   and protect the interests of consumers and creditors who have transacted business
4  with the Receivership Defendants. (pages 11, 13; emphasis added);

5      A.      Immediately upon service of this Order upon them, or within such
   period as may be permitted by the Receiver, Defendants and any person or entity
6  served with a copy of this Order shall transfer or deliver possession, custody, and
7  control of the following to the Receiver:

8          1.      All assets of the Receivership Defendants . . . . (page 17);
   and
9

10         [A]ll banks, broker-dealers, savings and loans, escrow agents, title
   companies, commodity trading companies, precious metals dealers and other
11 financial institutions and depositories of any kind, and all third party billing
   agents, local exchange carriers, common carriers, and other
12 telecommunications companies shall cooperate with all reasonable requests
   of the FTC and the Receiver relating to implementation of this Order,
13 including transferring funds at the Receiver's direction and producing
   records related to the assets and sales of the Receivership Defendants. (page
14 18).

15

16     Should this Court enjoin the Receiver, who is an agent of the District Court obligated by

17 Court Order to perform the above-referenced duties, this Court will be enjoining the Receiver from

18 performing his Court-authorized duties and, therefore, will also be enjoining the District Court.

19 Such a ruling by this Court would create an unworkable, unthinkable, and grave conflict between

20 such Order and the previously-issued Orders from the District Court (including the Amended

21 Preliminary Injunction, the Omnibus Order, and the Order Granting Motion for Clarification as to

22 Scope of Stay).

23                              **IV.**

24         **THE DEBTOR HAS FAILED TO MAKE A SHOWING**

25       **UPON WHICH INJUNCTIVE RELIEF CAN BE BASED.**

26     This Court has twice warned Debtor that it has not presented sufficient evidence to warrant

27 injunctive relief. The first warning was that the hearing on Debtor's Emergency Motion for

28 Temporary Restraining Order. The second was at the continued hearing on Debtor's Motion for a

                                   -11-

315069.03 [XP]     24774

1   Temporary Restraining Order against the FTC.  In fact, Debtor's failure to present sufficient

2   evidence resulted in this Court's denying the TRO.  Debtor now comes before this Court with no

3   further evidence, in general, and no evidence whatsoever demonstrating the Federal Receiver

4   should be restrained.

5       As this Court will recall, and as discussed above, there are two proceedings pending.  The

6   first is the FTC's action against Debtor and others (the "FTC Action").  This is the action in which

7   Debtor complains it will incur significant attorney's fees.  These, of course, include discovery, pre-

8   trial proceedings, and trial.

9       However, the Federal Receiver is not a participant in the FTC Action.  Instead, the

10  proceedings involving the Federal Receiver are largely complete and the result of these proceedings

11  are represented by the District Court Orders.  These Orders are self executing and require Debtor to

12  turn over the Subject Funds or show cause why the District Court should not hold it in contempt.

13  Unless this Court restrains the District Court Proceedings or the District Court, neither of which

14  even the Debtor has requested, the Debtor will still have to comply with the District Court Orders.

15  It will incur no significant legal expenses, if any, because of prospective actions of the Federal

16  Receiver, nor has it even claimed that it will.

17      Even if this Court were to conflate these two proceedings, the Debtor has made no further

18  evidentiary showing than that on which this Court denied the Debtor's request for a TRO.

19  Although it submits two spreadsheets claiming to be alternative budgets, it offers no evidentiary

20  foundation from which this Court can determine whether the assertions therein are accurate or even

21  credible.  The Declaration of Ken Dawson (the "Dawson Declaration") doesn't speak to any reason

22  why the Federal Receiver should be enjoined.  The Declaration of Paul Weber (the "Weber

23  Declaration") demonstrates that although he has reviewed and discussed these budgets with the

24  Debtor, he did not prepare them nor does he have any personal knowledge as to their accuracy.  In

25  particular, no evidence before this Court supports Debtor's assertion that it will spend anywhere

26  near the amounts set forth in its Exhibit "C" at those times.  There is no discussion of the specific

27  proceedings which are anticipated, there is no historical evidence, and the law firms involved are

28  not even mentioned.  As discussed above, Debtor does not even attempt to differentiate between

-12-

315069.03 [XP]    24774

1   attorney's fees that will be necessitated and respect of the FTC Action and those that will be

2   necessitated by proceedings brought by or on behalf of the Federal Receiver, no such proceedings

3   even mentioned.

4        There are other problems with these spreadsheets. They assume that the Debtor will spend

5   $1,000,000 in legal fees and still not obtain the Subject Funds. There is no line item for recovery

6   of the Subject Funds. That being the case, the better resolution is to enjoin Debtor from expending

7   those funds.

8        In addition, and critically, the spreadsheets assume that these Subject Funds are the property

9   of the estate. That assumption is in direct conflict with two standing orders of the District Court

10  finding that the funds are not property of the Debtor and not property of the Debtor's estate, but

11  instead, property of the Federal Receiver. If this Court were to restrain the Federal Receiver, and in

12  so doing allow the Debtor to spend the Subject Funds, it would be exercising control over property

13  under which the District Court has exclusive in rem jurisdiction and it would be effectively

14  determining the interests in the Subject Funds without a final order in an adversary proceeding in

15  derogation of Federal Rules of Bankruptcy Procedure 7001(2).

16       There are other questions that should be considered here and are not demonstrated or

17  discussed in Exhibit "C". As this Court is aware, the Debtor has bought some cooperation from

18  certain creditors by promising pre-payment of a certain percentage of invoices. Obviously, this is

19  not in the ordinary course of business, and it requires Court approval. Effectively, it amounts to

20  factoring the customer's receivables, again, something outside the ordinary course of business.

21  Since, as discussed below, Debtor's budgets demonstrate that it never is left without cash, the

22  question arises as to whether the shortfall Debtor claims is a result of the unsubstantiated attorney's

23  fees or the unusual and questionable pre-payment arrangement. Similarly, Debtor never explains

24  the one time $600,000 drop in revenue in December which actually is the precipitating factor of the

25  problems it claims.

26       Finally, Debtor's Exhibits, although lacking in any evidentiary value, are interesting for

27  what they do show. The Debtor's worst case scenario, it will not experience any operating monthly

28  shortfall until mid December, some two months from now. The Cash Collateral proposal presently

-13-

1 before this Court extends only to November 2, and, apparently, even the unsecured creditors are not

2 sufficiently convinced with Debtor's "budget" to agree to a permanent cash collateral order.

3 Finally, the budgets demonstrate that, Debtor never runs out of cash. Its ending total cash balance

4 during the times where it claims it will have shortfalls never falls below $3,000,000. Debtor is not

5 harmed by the Federal Receiver's proceeding, Debtor does not require the Subject Funds, and

6 Debtor has presented no evidence on which the Federal Receiver may be enjoined.

7                                   V.

8      **THE DEBTOR FAILS TO SATISFY ANY OF THE BASIC EVIDENTIARY**

9      **REQUIREMENTS NECESSARY TO OBTAIN A PRELIMINARY INJUNCTION**

10        Solidus Networks, Inc. v. Excel Innovations, Inc. (In re Excel Innovations, Inc.), ___ F.3d.

11 ___, 2007 WL 2555941 *5 (9th Cir. 2007), cited by the Debtor, sets fourth the traditional four part

12 test for deciding whether a preliminary injunction is appropriate. The moving party must show:

13               (1) a strong likelihood of success on the merits, (2) the possibility of irreparable

14          injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the

15          plaintiff, and (4) advancement of the public interest (in certain cases). Alternatively, a court

16          may grant the injunction if the plaintiff demonstrates either a combination of probable

17          success on the merits and the possibility of irreparable injury or that serious questions are

18          raised and the balance of hardships tips sharply in his favor.

19        These two formulations "represent two points on a sliding scale in which the required

20 degree of irreparable harm increases as the probability of success decreases. They are not separate

21 tests but rather outer reaches of a single continuum." Speculative injury cannot be the basis for a

22 finding of irreparable harm. Goldie's Bookstore, Inc. v. Superior Court, 739 F.2d 466, 472 (9th

23 Cir.1984).

24        Here, the Debtor fails to satisfy any of the basic evidentiary requirements for a preliminary

25 injunction. First, the Debtor's sole evidence in support of its likelihood of success of reorganization

26 is that it has obtained the support of the Creditors' Committee to continue operations for a limited

27 time while continuing to negotiate with interested parties concerning its future. This statement

28 speaks nothing of the numerous objections filed by creditors who claim security interests in the

-14-

315069.03 [XP]      24774

1   assets of the Debtor, of which the lack of support would be fatal. In addition, the Debtor's strategy

2   over the near term presupposes that it will be able to use property of the Receiverships in order to

3   fund operations, which in itself is fatal. Moreover, the Debtor fails to provide evidence of the

4   likelihood of success on the merits with regard to its dispute with the FTC and the Receiver which

5   it is seeking to enjoin, the latter of which has already been decided on the District Court level and is

6   on appeal. Instead, the Debtor rehashes arguments that were already considered and rejected by the

7   District Court.

8         With regard to irreparable injury, the Debtor's budget is purely speculative-- it assumes that

9   it will spend $1 million in legal fees (without any evidence of how it arrived at that number) and

10  will lose on the merits in its appeal as the basis of its showing that it will be unable to have the

11  funds necessary to reorganize. In addition, the Debtor fails to address what other avenues might be

12  available to fund near term operations other than to use the Receiver's money, such as post-petition

13  financing. Finally, the Debtor fails to address the "public interest" fostered by the FTC action and

14  the Receiverships and their mutual goal of redressing the wrongs of consumers. Neither the

15  Debtor's Motion for a Preliminary Injunction or its Supplemental Memorandum provides any

16  concrete evidence to support the fundamental requirements of a preliminary injunction.

17                                          **VI.**

18              **THE DISTRICT COURT HAS JURISDICTION OVER THE SUBJECT FUNDS**

19        The District Court has exclusive jurisdiction over the Subject Funds and, because it is

20  conferred such jurisdiction by statute and judicial authority, it exercised that jurisdiction first, and it

21  is the proper court to make and enforce orders in respect of that property. 28 U.S.C. §§ 754 and

22  962 confer on the District Court, exclusive jurisdiction over the Subject Funds. Judicial authority

23  demonstrates that the findings expressed in the District Court's Clarification Order, were an

24  appropriate exercise of the District Court's jurisdiction.

25        SEC v. Wolfson, 309 B.R. 612 (D. Utah 2004) is factually and conceptually identical to the

26  matter herein. There, the SEC prosecuted a civil fraud action against a group of defendants who

27  subsequently filed Chapter 11 Petitions. These defendants sought to dismiss the SEC's contempt

28  motion, which, as here, had been brought to enforce previous District Court orders. In particular,

-15-

315069.03 [XP]    24774

1 | four hours before the District Court was to hear that contempt motion, the defendants filed their

2 | petitions. The SEC, nevertheless, proceeded with the motion, and defendants argued that further

3 | proceedings were barred by the automatic stay. After briefing, the District Court found that the

4 | automatic stay did not apply and it granted the SEC's motions, as here, by entering a contempt

5 | order expanding the receivership.

6 |       The District Court initially addressed jurisdiction. It found that it had jurisdiction to

7 | determine its jurisdiction and to decide whether the automatic stay is applicable to this litigation.

> "At the outset, the Court finds that it has jurisdiction to determine its own
> jurisdiction, as well as to decide whether the automatic stay is applicable to the
> instant litigation. See In re Baldwin-United Corp. Litig., 765 F.2d 343, 347 (2nd
> Cir.1985) ("The Court in which the litigation claimed to be stayed is pending has
> jurisdiction to determine not only its own jurisdiction but also the precise question
> whether the proceeding pending before it is subject to the automatic stay.");
> Securities & Exchange Comm'n v. Bilzerian, 131 F.Supp.2d 10, 13-14
> (D.D.C.2001); Securities & Exchange Comm'n v. First Fin. Group of Tex., 645
> F.2d 429, 437-40 (5th Cir.1981); cf. In re Pincombe, 256 B.R. 774, 781
> (Bankr.N.D.Ill.2000) (stating that because the § 362(b)(4) exception takes effect
> immediately, a governmental agency is not required to seek relief from the stay
> before continuing proceedings against a debtor)."

15 | Wolfson, supra, at 617.

16 |       The Wolfson Court went on to discuss the District Court's concurrent jurisdiction with the

17 | bankruptcy court to determine the effect of the bankruptcy proceeding and the status of property

18 | and held, "because the District Court's jurisdiction attached first in time, it was superior."

> "This Court has concurrent jurisdiction with the Bankruptcy Court to determine
> the effect of the bankruptcy proceeding on this case. See United States Dep't of
> Housing & Urban Dev't v. Cost Control Marketing & Sales Mgm't, 64 F.3d 920,
> 927 n. 11 (4th Cir.1995) (citing Brock v. Morysville Body Works, Inc. 829 F.2d
> 383 (3rd Cir.1987)), cert. denied,517 U.S. 1187, 116 S.Ct. 1673, 134 L.Ed.2d 777
> (1996); see also In re Dolen, 265 B.R. 471, 476 (Bankr.M.D.Fla.2001) (noting
> that "[t]he district court has concurrent jurisdiction with the bankruptcy court to
> determine the extent to which the Section 362 automatic stay limits the actions of
> the Commission in its ability to pursue the pending district court action.")
> Further, as the Cost Control court noted, "because the district court's jurisdiction
> attached first in time, it was superior." Id.; see also United States v. Delta
> Distributors Co., Inc., 1996 WL 460112 (June 21, 1996 S.D.W.Va.) (finding that
> "because this Court's jurisdiction attached first in time, it is superior.").
> Similarly, in Klass v. Klass, the court determined that "[t]he clearly predominant
> rule is that jurisdiction is concurrent, and that the court in which the non-

-16-

1   bankruptcy case is pending may determine the effect of the stay on that case."
2   377 Md. 13, 831 A.2d 1067, 1071 (App.2003) (citing numerous federal cases).

3   Wolfson, supra, at 617-618.

4       Judicial authority also holds that in a receivership, the District Court's jurisdiction is

5   superior, even if the receivership proceedings and the District Court's exercise of its jurisdiction

6   followed the bankruptcy. In Eller Industries, Inc. v. Indian Motorcycle Manufacturing, Inc.

7   ("IMMI"), 929 F. Supp. 369 (D. Colo. 1995), the bankruptcy trustee sought and obtained a

8   preliminary injunction precluding IMMI from soliciting funds by using a trademark which the

9   trustee maintained was the exclusive property of the debtors. Shortly thereafter, IMMI was placed

10  in a federal receivership and a receiver was appointed. The trustee maintained that the preliminary

11  injunction was binding on the receivership and essentially placed the receivership assets in a

12  "constructive trust" for the trustee's benefit. The district court disagreed, holding as follows:

13          This Court has exclusive jurisdiction over the assets and administration of the
            Receivership imposed on IMMI. Equitable actions against the estate may be authorized
14          only by this Court. An equitable action against IMMI in another forum, by definition, seeks
            to control assets of the Receivership Estate and thereby conflicts with this Court's exclusive
15          jurisdiction over Receivership Estate assets. Absent leave of this Court, all equitable
            actions against IMMI cannot be effective against this Court or the Receiver.
16

17  Id. at 371-72.

18                                              VII.

19                  THE DISTRICT COURT'S JURISDICTION IS NOT

20                  SUBJECT TO COLLATERAL ATTACK

21      Nor should this Court consider a challenge of the District court's jurisdiction. A court's

22  determination of its own jurisdiction is subject to the principles of res judicata; it generally may not

23  be challenged in a collateral proceeding. Insurance Corp. of Ireland v. Compagnie des Bauxites de

24  Guinee, 456 U.S. 694, 102 S.Ct. 2099, 2104 n. 9, 72 L.Ed.2d 492 (1982); Chicot County Drainage

25  Dist. v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 319, 84 L.Ed. 329 (1940). "A party that

26  has had an opportunity to litigate the question of subject-matter jurisdiction may not, however,

27  reopen that question in a collateral attack upon an adverse judgment." Id. It has long been the rule

28  ///

                                          -17-

315069.03 [XP]    24774

1  that principles of res judicata apply to jurisdictional determinations-both subject matter and

2  personal. Id; see also, Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938).

3       A federal court possesses broad authority to issue various ancillary relief measures in

4  enforcing actions brought by federal agencies.  FTC v. Productive Marketing, Inc., 136 F. Supp.

5  2d 1096, 1104 (C.D. Cal. 2001); see also SEC vs. Universal Fin., 760 F.2d 1034, 1038 (9th Cir.

6  1985) (finding that a district court's power to enter a blanket receivership stay is broader than a

7  district court's authority to grant injunctive relief under Federal Rule 65); SEC vs. Wencke, 622

8  F.2d 1363, 1371 (9th Cir. 1980) ("The Supreme Court has repeatedly emphasized the broad

9  equitable powers of the federal courts to shape equitable remedies to the necessities of particular

10  cases, especially where a federal agency seeks enforcement in the public interest.").

11       A receivership order issued to preserve the assets of a receivership estate is a classic

12  example of a district court's exercise of in rem jurisdiction over receivership property.  Productive

13  Marketing, Inc., 136 F. Supp. 2d at 1105; see also Wencke, 622 F.2d at 1369 (stating that a federal

14  district court's power to issue a stay against all persons concerning all proceedings against the

15  receivership entities "rests as much on its control over the property placed in receivership as on its

16  jurisdiction over the parties to the securities fraud action"); United States vs. Hall, 472 F.2d 261,

17  267-68 (5th Cir. 1972) (finding that federal district courts have inherent authority to enforce their

18  orders against non-parties given the concept of in rem jurisdiction); SEC vs. Elfindepan, S.A., No.

19  1:00CV00742, 2002 WL 31165146, at *4 (M.D.N.C. 2002) (finding that federal district courts

20  have jurisdiction to decide the legitimacy of ownership of claims made by non-parties to assets

21  alleged to be proceeds from securities laws violations); SEC vs. Pinez, 989 F. Supp. 325, 337 (D.

22  Mass. 1997) ("Courts also have jurisdiction to decide the legitimacy of ownership claims made by

23  non-parties to assets alleged to be proceeds from securities laws violations.").

24       Indeed, the purpose of a federal district court's in rem jurisdiction over receivership

25  property through a temporary restraining order or preliminary injunction (or similar injunctive-

26  order) is to preserve the assets resulting from the actions of the receivership defendants, whether

27  held by parties or non-parties, in order to provide redress for legitimately-defrauded investors.

28  Productive Marketing, Inc., 136 F. Supp. 2d at 1105-1106.

-18-

1    Integretel is seeking to frustrate that goal, which would undermine the very purpose of a

2  federal equity receivership, and make any receiver's attempt to recover receivership property for

3  the benefit of defrauded victims too costly and time-consuming to pursue. <u>Productive Marketing</u> is

4  instructive on this very issue. In that case the non-party, ACCPC, refused to relinquish assets

5  located in reserve accounts, relying instead on a contract it signed before the receivership which

6  required a hold-back of the reserve funds for a minimum amount of time. <u>Id.</u> at 1106, 1009. The

7  district court, however, found that ACCPC's reliance on the contract was misplaced, because its

8  failure to turn over the funds disrupted the district court's power to enforce its receivership

9  injunction:

10      If the court cannot compel ACCPC to turn over assets in its possession belonging to
        the receivership estate, the Receiver will be unable to provide adequate redress to
11      consumers who have been defrauded by Defendants. Because ACCPC's conduct imperils
        the court's ability to render an effective judgment, the court may properly enjoin it, even
12      though it is not a party to the action.

13  <u>Id.</u> at 1106.

14      <u>Citibank, N.A. v. Nyland, (CF8) Ltd.</u>, 839 F.2d 93 (2d Cir. 1987), is also instructive on this

15  issue. In Nyland, the Second Circuit held:

16      Second, we believe that the receiver's fiduciary responsibilities to preserve the
        property during the course of the underlying litigation concerning the ownership of the
17      property must be seen as superior to New York Land's contractual interest, if any, in the
        property. As receiver, Cushman & Wakefield is acting as an officer of the court and has the
18      duty to preserve and protect the property pending the outcome of the litigation. As a result,
        its authority is wholly determined by the order of the appointing court. . . . [R]eceivers are
19      not bound by contracts of the entity that they are appointed to protect. A receiver becomes
        bound only when it affirmatively adopts the obligations of the entity that it is protecting. . . .
20      [W]e find that New York Land's management and leasing services contract is subordinate
21      to Cushman & Wakefield's obligation to preserve the premises.

22  <u>Id.</u> at 98 (emphasis added; citations omitted).

23      In this case, the District Court has determined pre-bankruptcy that the Subject Funds are

24  property of the Receivership, and has exercised its in rem jurisdiction over that property. The

25  District Court has further entered an order after the commencement of this Bankruptcy Case

26  iterating that the Subject Funds are Receivership property, and holding that the automatic stay does

27  not bar its recovery or interfere with the District Court's exclusive subject matter jurisdiction over

-19-

1  the Subject Funds. As in Eller Industries, the Debtor is attempting to interfere with the

2  administration of the Receivership, first, by filing the Cash Collateral Motion, which attempts to

3  use Receivership property to fund its business operations, and second, by filing an adversary

4  proceeding seeking to enjoin the Federal Receiver from enforcing the pre-bankruptcy turnover and

5  contempt Orders. As the above authorities demonstrate, any attempt to challenge the exclusive

6  subject matter jurisdiction of the District Court Receivership over the Subject Funds must be

7  brought in the District Court or in the Eleventh Circuit, not in a collateral proceeding, whether in

8  this Bankruptcy Court or any other court.

9        In fact, the Debtor has sought to stay enforcement of the September 14, 2007 Order, which

10  relief was granted by the District Court on September 26, 2007, conditioned upon the Debtor's

11  turning over the Subject Funds to the Federal Receiver for segregation pending appeal. See Exhibit

12  "R" to Receiver's Third Request for Judicial Notice. The Clarification Order is a clear indication

13  that the District Court intends to continue to exercise its in rem jurisdiction over the Subject Funds

14  and to enforce the execution of the contempt Orders.[2] The Debtor is asking nothing less than for

15  this Bankruptcy Court to reverse the District Court's Orders and ignore the integrity of the District

16  Court in its exercise of its exclusive subject matter jurisdiction over property of the Receivership.

17

18

19

20

21

22  [2] Had the issue of whether the Subject Funds are Receivership property not already been
    determined, the Debtor would nonetheless be asking this Bankruptcy Court to ignore longstanding
23  principles of comity within courts with concurrent jurisdiction, which hold that it is appropriate for
    the first court dealing with a particular issue to decide the issue. Cisneros v. Cost Control
24  Marketing and Sales, 862 F.Supp. 1531 W.D.Va.,1994 (citing Smith v. McInver, 22 U.S. (9 Wheat)
    532, 535, 6 L.Ed. 152 (1824) ("[I]n all cases of concurrent jurisdiction, the court which first has
25  possession of the subject must decide it."); United States Fire Ins. Co. v. Goodyear Tire & Rubber
    Co., 920 F.2d 487, 488 (8th Cir.1990); EEOC v. University of Pa., 850 F.2d 969, 972 (3d Cir.1988)
26  [citing Kline v. Burke Constr. Co., 260 U.S. 226, 229, 43 S.Ct. 79, 81, 67 L.Ed. 226 (1922)]. This
    is a non-issue, since the District Court has already ruled that the Subject Funds are the
27  Receiverships' property.

28

-20-

315069.03 [XP]    24774

1

## VIII.

2

## RE-LITIGATION OF THE PARTIES' DISPUTES OVER THE SUBJECT FUNDS ARE

3

## BARRED BY RES JUDICATA

4      The doctrine of res judicata also applies here.  See, Baldwin v. Iowa State Traveling Men's

5 Ass'n, 51 S.Ct. 517, 517, 283 U.S. 522, 524, 75 L.Ed. 1244 (1931).  The doctrine of *res judicata*

6 "ensures the finality of decisions."  Brown v. Felsen, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60

7 L.Ed.2d 767 (1979).  It serves to protect adversaries from the expense and vexation attending

8 multiple lawsuits, to conserve judicial resources, and to foster reliance on judicial action by

9 minimizing the possibility of inconsistent decisions.  Montana v. United States, 440 U.S. 147, 153-

10 54, 99 S.Ct. 970, 973-74, 59 L.Ed.2d 210 (1979). The doctrine applies to jurisdictional issues as

11 well as substantive issues. See Durfee v. Duke, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963);

12 Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938); Yanow v. Weyerhauser

13 Steamship Co., 274 F.2d 274, 277 (9th Cir.1959); Title v. United States, 263 F.2d 28, 30 (9th

14 Cir.1959).

15      The Ninth Court in Americana Fabrics, Inc. v. L & L Textiles, Inc. 754 F.2d 1524 (9th Cir.

16 1985) explains the doctrine of *res judicata* as follows:

17         Res judicata encompasses two subsidiary doctrines, claim preclusion and issue
         preclusion.  Under claim preclusion, a final judgment on the merits of a claim bars
18       subsequent litigation of that claim. Claim preclusion "prevents litigation of all grounds for,
         or defenses to, recovery that were previously available to the parties, regardless of whether
19       they were asserted or determined in the prior proceeding." Brown v. Felsen, 442 U.S. at
         131, 99 S.Ct. at 2209; see Los Angeles Branch NAACP v. Los Angeles Unified School
20       Dist., 750 F.2d 731, 737 (9th Cir.1984). The related doctrine of issue preclusion, or
         collateral estoppel, bars relitigation, even in an action on a different claim, of all "issues of
21       fact or law that were actually litigated and necessarily decided" in the prior proceeding.
         Segal v. American Tel. & Tel. Co., 606 F.2d 842, 845 (9th Cir.1979); see Montana v.
22       United States, 440 U.S. at 153, 99 S.Ct. at 973.
23

24      Res Judicata similarly applies to judgments that are on appeal. "Even if the first judgment

25 ultimately is reversed, this does not automatically mean nullification of the judgment in a second

26 action in which the first judgment was given preclusive effect." Reed v. Allen, 52 S.Ct. 532, 286

27 U.S. 191, 76 L.Ed. 1054 (1932).

28

-21-

1    Here, certain critical issues, issues which the Debtor has asserted in these proceedings, were

2  already litigated before the District Court, they were decided against the Debtor, and these

3  decisions are part of the District Court Orders.  In particular, the Debtor already argued before the

4  District Court that the subject funds arise from a contract claim and the Federal Receiver is merely

5  an unsecured creditor.[3]

6    The Omnibus Order rejected this argument.  On page 22 of the Response, Debtor argued

7  that a full blown trial was required.  This was also rejected in the Omnibus Order.

8    The District Court made explicit and unambiguous, findings of fact in its Omnibus Order,

9  including:

10      • Integretel had agreements in place with the Receiverships that permitted them to

11         hold the Receiverships' money as reserves (pages 1-2).

12      • Integretel did not advise either the Federal Receiver or the FTC that it was holding

13         reserves.  Rather, its president informed the FTC on March 6, 2006 that no amounts

14         are currently due and owing to Access One or Network One.  (page 2)

15      • The reserve amount being held by Integretel (and/or its affiliates) is $1,762,762.56.

16         (page 2).

17

18    The District Court also made the explicit and unambiguous, conclusions of law in its

19  Omnibus Order disposing of other issues here, including:

20      • Integretel's keeping the reserves in a pooled account "is a distinction without a

21         difference, since the TRO captures funds held on behalf of, or for the benefit of, a

22         Defendant." (page 3).

23      • The agreements did not give the Debtor the right to use the reserves to fund the

24         indemnity, or any violations of the Federal Trade Commission Act (pages 3-4).

25  _____

26  [3] This is clear from p. 59 of Debtor's Response in Opposition to the Receiver's Motion for an Order to Show Cause (the Response), attached as Exhibit "S" to the Third Request for Judicial Notice and authenticated by the Declaration of David Chase filed in the Federal Receiver's

27  Opposition to the Motion for Summary Judgment.

28

-22-

1        • The Federal Receiver's claim is not a claim at law governed by pre-receivership

2             contracts, but one governed by this Court's jurisdiction over receivership property.

3             (page 4).

4        • Issues concerning entitlement to disputed receivership property can be determined

5             via summary proceedings in the federal court equity receivership context. (page 5).

6       Indeed, just days after issuing the Omnibus Order, and after the Debtor filed its bankruptcy

7 petition, the District Court issued its September 21, 2007 Order Granting Motion for Clarification

8 as to Scope of Stay. In the District Court's September 21, 2007 Clarification Order, the District

9 Court also set forth findings of fact and conclusions of law, including:

10        • The Court has already ruled that the reserve funds are the property of the

11             receivership estate and ordered Integretel to pay the current reserve funds,

12             amounting to $1,762,762.56, immediately to the Federal Receiver. (page 1).

13        • The contempt proceeding is not stayed by the bankruptcy, since the reserve funds

14             are not property of the bankruptcy estate, and the contempt proceedings are

15             excluded from the automatic stay pursuant to 11 U.S.C. § 362(b)(4) (page 4).

16       In addition, a review of the District Court's Orders reveals that this was no interim measure

17 to preserve the subject funds for safekeeping, rather, it was an adjudication of ownership of the

18 subject funds. The ownership issue is not predicated on whether the FTC ultimately prevails in the

19 enforcement action against the Debtor. Consequently, the turnover provisions of the Omnibus

20 Order and Clarifying Order are final, appealable orders. See SEC v. Wencke, 783 F.2d 829, 837-

21 38 (9th Cir. 1986) (stating that claims of non-parties to property claimed by receivers can be

22 resolved via summary proceedings, which reduce the time necessary to settle disputes, decrease

23 litigation costs and prevent dissipation of receivership assets, as long as there is notice to the non-

24 party and an opportunity to be heard, and thus satisfy due process); see also, CFTC v. Topworth

25 Int'l, Ltd., 205 F.3d 1107, 1111-12 (9th Cir. 2000) (finding that turnover order stating that

26 $300,000 belonged to one party, and not another, was final, appealable order because order

27 disposed of ownership rights in property). Accordingly, the Debtor's arguments that this

28

-23-

315069.03 [XP]    24774

1   Bankruptcy Court should exercise jurisdiction over and litigate the "dispute" over whether the

2   subject funds are property of the Receiverships are barred by Res Judicata.

3                                              IX.

4                  **THE DEBTOR MISCONSTRUES THE FEDERAL RECEIVER'S**

5                         **OWNERSHIP INTEREST AS A TRUST**

6          The Debtor is attempting to mislabel and limit the Federal Receiver's property right as a

7   claim for a constructive trust in order to hide behind tracing requirement and to provide a reason

8   for this Court to re-litigate the issues already adjudicated in the District Court. At present, the

9   Federal Receiver is not seeking nor has it sought the imposition of a trust over the subject funds.

10  Rather, the Federal Receiver sought turnover of property of the Receivership and contempt for

11  violation of the Temporary Restraining Order and Preliminary Injunctions entered by the District

12  Court on the motion of the FTC. The equitable relief sought and obtained by the Federal Receiver

13  was pursuant to Court order.[4] Simply labeling the Receiver's rights as a "trust" ignores the broad

14  authority of the District Court to establish equitable remedies in order to preserve assets of the

15  Receivership estates. See, Wencke, 622 F. 2d at 1371 ("The Supreme Court has repeatedly

16  emphasized the broad equitable powers of the federal courts to shape equitable remedies to the

17  necessities of particular cases, especially where a federal agency seeks enforcement in the public

18  interest"); see also, FTC v. Productive Marketing, Inc., 136 F. Supp. 2d 1096, 1105 (C.D. Cal.

19  2001) ("An order issued to preserve the assets of a receivership estate is a classic example of an *in*

20  *rem* injunction").

21         The Debtor's "trust" argument was already considered and rejected by the District Court, as

22  is demonstrated by the Omnibus Order. The Debtor argued there, as it does here, that "'the reserves

23  do not take the form of any actual funds that [the Debtor] has segregated or otherwise set aside...'

24  

25  [4] The District Court's jurisdiction over this issue is also authorized by Federal Statute. See, 15
    U.S.C. § 53(b); F.T.C. v. Southwest Sunsites, Inc., 665 F. 2d 711 (5th Cir. 1982) cert den. 102 S.
26  Ct. 2236, 456 U.S. 973, 72 L.Ed.2d 846 (Grant of jurisdiction under this section carries with it the
    authorization for the district court to exercise a full range of equitable remedies traditionally
27  available to it)

28  

                                            -24-

1  and maintains that it keeps the reserves in a pooled account it tracks via an internal accounting

2  entry." September 14, 2007 Order, p. 3. The District Court ruled that such distinction was without

3  consequence, "since the TRO captures funds 'held on behalf of, or for the benefit of, a Defendant.'"

4  September 14, 2007 Order, page 3.

5       The Debtor keeps pointing to the underlying contracts and stating that it had no obligation

6  to segregate the deposits, as if this point will absolve it of its requirement to turn over the deposits

7  pursuant to the TRO.[5]  As acknowledged by the District Court, "the Receiver's claim is not a claim

8  at law governed by pre-receivership contracts, however, but one governed by [the District] Court's

9  jurisdiction over receivership property based on the TRO and Amended Preliminary Injunction."

10  September 14, 2007 Order, page 4. Accordingly, it is of no consequence whether the contract

11  required the Debtor to segregate the Subject Funds. The equitable relief sought and obtained by the

12  Federal Receiver in District Court was pursuant to Federal Statute and not based upon the much

13  narrower equitable remedy of constructive or express trusts.

14

15  **X.**

16  **EVEN IF CONSTRUED TO BE TRUST, THE RECEIVER'S CLAIM**

17  **WAS ESTABLISHED PRE-PETITION AND THE SUBJECT FUNDS ARE THEREFORE**

18  **EXCLUDED FROM THE BANKRUPTCY ESTATE**

19       In its reply brief, the Debtor cites In re Advent Management Corp., 178 B.R. 480, 491 (9th

20  Cir. BAP 1995) for the proposition that a party seeking to establish a trust over commingled funds

21  must trace those funds. That case is distinguishable from ours, since in Advent, the creditor

22  seeking to establish a constructive trust had not obtained a judgment pre-petition and therefore its

23  claim was inchoate. Id. at 488; cf., Airwork Corp v. Markair Express, Inc. (In re Markair, Inc.),

24  _____

25  [5] In fact, the Debtor was required under contract to maintain separate accounts for each client. The
   contracts are attached as Exhibit "2" and "3" to the Receiver's Revised Motion for an Order to

26  Show Cause, which itself is attached to the Chase Declaration as Exhibit "F." In the section
   marked "Definitions", "Account" is defined as "A separate account of Client under which Billing

27  Transactions and settlement funds are tracked and reported."

28

-25-

315069.03 [XP]    24774

1  172 B.R. 638, 642 (9th Cir. BAP 1994) ("A constructive trust imposed by state law pre-petition

2  would therefore exclude the res from the debtor estate.")[6]

3          As argued *supra*, the Federal Receiver was acting under Federal law when it sought and

4  obtained an order determining that the Subject Funds were property of the Receivership and

5  requiring its turnover under penalty of contempt. The Federal Receiver was not acting under the

6  color of common law equitable trusts. Nonetheless, the Federal Receiver already obtained its

7  equitable remedy pre-petition. The District Court rejected any argument that the commingling of

8  the deposits with other estate assets rendered the Federal Receiver unable to capture the Subject

9  Funds pursuant to the Federal injunctions. To the extent that the Debtor contends that tracing was

10 necessary, it is free to argue the same in the Eleventh Circuit where this matter is currently on

11 appeal.

12                                              **XI.**

13                                         **CONCLUSION**

14         For the reasons stated above, the Receiver requests that the Debtor's Motion for a

15 Preliminary Injunction be denied. This Court is also respectfully requested to order immediate

16 turnover of the Subject Funds.

17

18 Dated: October 15, 2007                    DANNING, GILL, DIAMOND & KOLLITZ, LLP

19

20                                           By: _____

21                                               STEVEN J. SCHWARTZ
                                                Attorneys for David R. Chase, Court-
22                                              Appointed Receiver of Access One
                                                Communications, Inc., and Network One
23                                              Services, Inc.

24  ─────────────

25  [6] Moreover, under Florida law, "when a person who is subject to a trust claim commingles the trust
    funds with funds of his own, and funds are subsequently dissipated, he is presumed to first dissipate
26  his own funds rather than funds held in trust, such that the funds remaining in an account are
    presumed to be those held in trust". In re Hecker, 316 B.R. 375, 377 (Bankr. S.D. Fla. 2004).
27  Therefore, even if viewed as a constructive trust, the Debtor's commingling of the reserves would
    be of no consequence.

28

                                              -26-

**RER - 37**

1  WILLIAM BLUMENTHAL
   General Counsel
2
   MICHAEL P. MORA
3  Federal Trade Commission
   600 Pennsylvania Ave. NW, Room NJ-2121
4  Washington, DC 20580
   Telephone:  (202) 326-3373
5  Facsimile:  (202) 326-2558
   Email: mmora@ftc.gov
6
   ATTORNEY FOR FEDERAL
7  TRADE COMMISSION

8              UNITED STATES BANKRUPTCY COURT
                NORTHERN DISTRICT OF CALIFORNIA
9                     SAN JOSE DIVISION

10
11  In re:                                    **Case No. 07-52890**

12  THE BILLING RESOURCE, dba Integretel, a   Chapter 11
    California corporation,
13                                            Adv. Proc. No. 07-05156
                          Debtor
14                                            FEDERAL TRADE
15                                            COMMISSION'S
    THE BILLING RESOURCE, d/b/a               SUPPLEMENTAL
16  INTEGRETEL, a California corporation,     OPPOSITION TO DEBTOR'S
                                              EMERGENCY MOTION FOR
17            Plaintiff,                       PRELIMINARY INJUNCTION

18  v.                                        Date:  October 17, 2007
                                              Time:  2:00 p.m.
19  FEDERAL TRADE COMMISSION, et al.          Ctrm:  3020

20            Defendants.

21        The Federal Trade Commission ("Commission") submits its Supplemental Opposition to

22  Integretel's Emergency Motion for Preliminary Injunction as follows[1]:

23
    _____
24
          [1] The Commission intends that neither this Supplemental Opposition nor any later
25  appearance, pleading, claim, or suit shall waive: (1) the FTC's right to have final orders in
    noncore matters entered only after *de novo* review by a District Court Judge; (2) the FTC's right
26  to have the District Court withdraw the reference in any matter subject to mandatory or
    discretionary withdrawal; or (3) any other rights, claims, actions, defenses, setoffs, recoupments,
27
28                                         -1-

RER-37

2552

## PRELIMINARY STATEMENT

Integretel seeks a preliminary injunction, pursuant to the Court's general equitable powers under § 105 of the Bankruptcy Code, of the continuation of the Commission's Enforcement Action against Integretel in the Florida District Court, and the Contempt Proceeding instituted by the Receiver in that action to enforce the District Court's injunctive orders against Integretel. The Florida District Court held in its Clarification Order dated September 21, 2007, that the Enforcement Action and the Contempt Proceeding are specifically excepted from the automatic stay by 11 U.S.C. § 362(b)(4), which allows police and regulatory actions such as those at issue here to proceed notwithstanding the pendency of bankruptcy proceedings.

Integretel's request for a preliminary injunction should be denied. Even if it is within the Court's discretion to enjoin a governmental police or regulatory powers action under § 105, that extraordinary remedy is not justified here, because Integretel is unlikely to succeed in reorganizing. Further, Integretel will suffer no irreparable harm absent an injunction. In contrast, granting an injunction would harm the Commission and injured consumers and would disserve the public interest.

## ARGUMENT

**Integretel Has Failed to Show Any Extraordinary Circumstances Upon Which a § 105 Injunction Against the FTC's Enforcement Action and the Receiver's Contempt Proceeding Could Be Based.**

In our prior briefs, we demonstrated why it would be improper for the Court to issue a discretionary stay order under § 105 enjoining the Commission's Enforcement Action as to Integretel. As the Florida District Court in the Enforcement Action has held, the continuation of both the Enforcement Action, and the Contempt Proceeding to enforce the Florida District Court's injunctive order in that Action, is excepted from the automatic stay pursuant to § 362(b)(4) of the Bankruptcy Code, the governmental police or regulatory powers exception.

―――――――――――――

or remedies to which the FTC is or may be entitled, in law or equity, all of which rights, claims, actions, defenses, setoffs, recoupments and remedies the FTC expressly reserves.

-2-

1    Under the plain language of the statute, beyond which the Court should look no further,

2    enjoining the Enforcement Action and the Contempt Proceeding pursuant to the Court's general

3    equitable powers under § 105 would eviscerate, rather than further, the specific stay exception

4    under § 362(b)(4). That specific exception codifies the bedrock principle of bankruptcy law that

5    "the government must be able to enforce its [police or regulatory] laws uniformly without regard

6    to the debtor's position in the bankruptcy court." *Brock v. Rusco*, 842 F.2d 270, 273 (11ᵗʰ Cir.

7    1988) (internal quotations and citation omitted). It would also be contrary to the FTC Act,

8    which gives the Commission authority to prevent the unfair and deceptive trade practices at

9    issue in the Enforcement Action, and to seek appropriate injunctive relief in federal district

10    courts for violations of the statutes it enforces when the agency determines that such relief is in

11    the public interest. 15 U.S.C. §§ 45(a), 53(b). Further, as to the Contempt Proceeding, a § 105

12    injunction would also strip the Florida District Court of its inherent judicial power to hold

13    Integretel accountable for its flagrant, and inexcusable, contempt of that court's orders.

14        In issuing its Order to Show Cause, however, the Court indicated that it would follow *In*

15    *re First Alliance Mortgage Co. ("FAMCO")*, 264 B.R. 634 (C.D. Cal. 2001), where the court

16    held that, while "it has some doubts as to whether § 105 truly authorizes an injunction of an

17    otherwise excepted regulatory or police powers action," other courts have squarely held that it

18    does, and that it would follow their lead. 264 B.R. at 652 n. 18.

19        Under *FAMCO*, the test for enjoining a regulatory or police powers action under § 105 is

20    whether the governmental action will "threaten" the assets of the estate. 264 B.R. at 252. In

21    addition, the usual, stringent standard for granting preliminary injunctive relief – adjudicated in

22    an expedited proceeding, based on an incomplete record – applies: (1) the movant's likelihood

23    of success on the merits; (2) irreparable injury; (3) the balance of hardships tips in the movant's

24    favor; and (4) the requested injunction is in the public interest. *Id.* At a prior hearing, the

25    Court denied Integretel's request for a Temporary Restraining Order, finding that Integretel

26    failed to meet this stringent standard. As demonstrated below, Integretel likewise fails to meet

27

28                                                    -3-

1  that standard with regard to its request for a Preliminary Injunction through the date of

2  confirmation of any Chapter 11 plan of reorganization.

3  **A.    Integretel Has Failed to Show a Likelihood of Success on the Merits.**

4       As to this factor, the Ninth Circuit recently held that in the specific context of a § 105

5  injunction to stay proceedings against a non-debtor – which of course is not the case here – and

6  where the movant is a Chapter 11 debtor, the relevant inquiry is the debtor's likelihood of

7  successfully reorganizing. *In re Excel Innovations*, 2007 WL 2555941 at *7 (9th Cir. 2007).

8  Predating that decision, the court in *FAMCO* noted that there is conflicting authority on this

9  point generally. 264 B.R. at 653. At the TRO hearing, the Court looked to Integretel's

10 likelihood of success in reorganizing and credited its efforts, up to that time, as possibly

11 satisfying this factor.

12      More recently, however, the Creditors Committee in this case, which represents the

13 interests of all unsecured creditors, was unwilling to consent to Integretel's motion for entry of a

14 final Cash Collateral order – its only source of funding its ongoing operations. Thus, at the last

15 minute, the "final" hearing scheduled on Integretel's Cash Collateral Motion was converted into

16 yet another in a series of interim hearings. By Integretel's own admission, after meeting with

17 Integretel and conducting its due diligence, the Committee was only willing to give Integretel a

18 3-week extension of the existing Interim Cash Collateral Order. The Committee's reticence

19 speaks volumes about Integretel's prospects, or rather lack thereof, of successfully reorganizing.

20      Similarly, the Court itself aptly noted at a prior hearing on Integretel's Cash Collateral

21 Motion that it remains to be seen whether this will be a "real" reorganization case. More likely

22 it will fall into the 90% or more of all Chapter 11 cases that are converted to liquidations, or

23 dismissed. Overall, the record in the case at this juncture demonstrates that Integretel's fate is

24 hanging precariously in the balance. A liquidation scenario is more or at least as likely as a

25 successful reorganization. Accordingly, Integretel has not by a preponderance of the evidence

26 established a likelihood of success on the merits.

27

28                                          -4-

**B.**    Integretel Has Failed to Meet its Burden of Showing Irreparable Harm

Integretel points to only two possible sources of irreparable harm: (1) its estimated litigation costs in the Enforcement Action and Contempt Proceeding, for which it submits a declaration of counsel containing a highly dubious and conveniently inflated estimate of almost exactly $1 million, and (2) as to the Contempt Proceeding, the risk that it will be forced to turn over to the court-appointed Receiver the $1.7 million in Reserve Funds that the Florida District Court has held are property of the Receivership Estate.  The turnover of those Receivership funds, of course, cannot constitute any harm to the estate at all, because those funds are by definition not assets of the estate.  In making these allegations, they rely principally on the aforementioned declaration from their counsel in the Enforcement Action, and a conclusory affidavit from an accountant who was not retained by Integretel until very recently.  The evidence they have submitted does not support a finding of irreparable harm.

**1.**    Integretel Will Not Be Irreparably Harmed By Litigation Costs

In *FAMCO*, in which the district court reversed a bankruptcy court's § 105 injunction against a similar FTC law enforcement action, the court noted that the general standard for enjoining a regulatory or police powers action under § 105 – whether there is a sufficient "threat" to the assets of the estate – dovetails with the irreparable injury prong of the test for granting injunctive relief.  264 B.R. at 653.  With respect to alleged harm from litigation costs, the court held that, in general, litigation costs do not constitute irreparable injury.  264 B.R. at 656 (citing *EEOC v. Rath Packing Co.*, 787 F.2d 318, 325 (8th Cir. 1985).  The court further noted, however, that a case relied on by the debtor there, which Integretel also heavily relies on here, states that when litigation costs are high enough, they may constitute at least an element of irreparable harm.  *See NLRB v. Superior Forwarding, Inc.*, 762 F.2d 695, 699 (8th Cir. 1985).  Though as to the Enforcement Action alone, litigation costs are the *only* source of alleged irreparable harm that Integretel points to.

-5-