(2w)

1    31.    The Debtor shall, on or before _October 19_, 2007, serve by U.S. mail

2    and email service to the extent that the Debtor's counsel has an email address for any party or its

3    counsel, a copy of this Order and a notice regarding the Final Hearing, to (i) the parties having

4    been given notice of the October 15 Interim Hearing, and (ii) any other party ordered by the Court

5    or who has filed with the Court and served on the Debtor's counsel a request for service pursuant

6    to Bankruptcy Rule 2002. Such notice shall state that any party in interest objecting to the

7    approval of the Motion on a final basis shall _electronically_ file a written objection with the Court no later than

8    _October 28_, 2007, _or filed in paper from A by October 26, 2007_ which objection shall be filed with the Court and served so that it is

9    received on or before 5:00 p.m. (Pacific Time) of such date by the Debtor's counsel, the

10   Committee's counsel, and the Office of the United States Trustee at the following contact

11   information:

12

13       Counsel to Debtor:                                   (2w)

14       Sheppard, Mullin, Richter & Hampton LLP
         Four Embarcadero Center, Suite 1700
15       San Francisco, CA 94111
         Attn:   Michael H. Ahrens, Esq.
16               Jeffrey K. Rehfeld, Esq.
                 Ori Katz, Esq.
17       Email: mahrens@sheppardmullin.com
18              jrehfeld@sheppardmullin.com
                okatz@sheppardmullin.com
19
20       Counsel to Committee:
21       Pachulski Stang Ziehl Young & Jones LLP
         150 California Street, 15th Floor
22       San Francisco, CA 94111-4500
         Attn:   John D. Fiero, Esq.
23               Maxim B. Litvak, Esq.
         Email: jfiero@pzjl.com
24              mlitvak@pzjl.com
25       Office of the United States Trustee:
26       Office of the United States Trustee
27       280 S. First Street, Suite 268
         San Jose, CA 94113-0002
28       Attn:   John Wesolowski, Esq.

W02-WEST:FJR\400466319.5                    -13-

ORDER APPROVING FURTHER INTERIM
USE OF CASH COLLATERAL AND
Case: 07-52890    Doc #: 162    Filed: 10/16/2007    Page 13 of 16ACEMENT LIENS

RER-40        2662

1    Facsimile: (408) 535-5525

2        32.    If a timely objection is filed, served and received, a written reply thereto

3    shall not be required but may be filed with the Court and served so that it is received by the

4    objecting party no later than ___October 30___, 2007 on or before 11:59 p.m. (Pacific Time).

5

6                ** END OF ORDER **

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER APPROVING FURTHER INTERIM
USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

Case: 07-52890    Doc #: 162    Filed: 10/16/2007

RER-40        2663

1

## COURT SERVICE LIST

2

3    Office of the U.S. Trustee
      Office of the U.S. Trustee
4    Attn: Edwina Dowell, Esq.
      280 South First Street, Room 268
5    San Jose, CA 95113

6    The Billing Resource dba Integretel
      The Billing Resource dba Integretel
7    Attn: Ken Dawson
      5883 Rue Ferrari
8    San Jose, CA 95138

9    Proposed counsel for The Billing Resource dba Integretel
      The Billing Resource dba Integretel
10   c/o Sheppard, Mullin, Richter & Hampton LLP
      Attn: Michael H. Ahrens, Esq.
11   4 Embarcadero Center, 17th Floor
      San Francisco, CA 94111-4106
12

13   Counsel for PaymentOne Corporation
      PaymentOne Corporation
14   c/o O'Melveny & Myers LLP
      Attn: Steve Warren, Esq.
15   400 South Hope Street
      Los Angeles, CA 90071-2899
16

17   POL, Inc.
      POL, Inc.
18   c/o Joel R. Dichter, Esq.
      Dichter Law Group, LLC
19   10 Rockefeller Plaza, Suite 816
      New York, New York 10020
20   Email: info@dichterlaw.com
      Fax: (212) 757-5002
21

22   POL, Inc.
      c/o Kathryn Diemer, Esq.
23   Diemer, Whitman & Cardosi
      75 East Santa Clara Street, Suite 290
      San Jose, CA 95113
24

25   Personal Voice, Inc.
      Personal Voice, Inc.
26   Attn: David Giorgione
      16807 A U.S. Highway 19 North, Suite A
      Clearwater, FL 33764
27

28   Personal Voice, Inc.
      Attn: Thomas C. Little

W02-WEST:FJR\400466319.5                        **-15-**

ORDER APPROVING FURTHER INTERIM
USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

Case: 07-52890    Doc #: 162    Filed: 10/16/2007    Page 16 of 18

RER-40    2664

1    (Registered Agent for Service of Process)
     2123 NE Coachman Rd., Suite A
2    Clearwater, FL 33765

3    Network Telephone Services, Inc.
     Network Telephone Services, Inc.
4    Attn: Daniel Coleman, Esq.
     21135 Erwin Street
5    Woodland Hills, CA 91367

6    Ellen Friedman, Esq.
7    Elaine Hammond, Esq.
     Friedman, Dumas & Springwater LLP
8    150 Spear Street, Suite 1600
     San Francisco, CA 94105

9    Public Communication Services, Inc.
10   Public Communication Services, Inc.
     Attn: Leslie Cohen, Esq.
11   Liner Yankelvitz Sunshine & Regenstreif LLP
     1100 Glendon Avenue, 14th Floor
12   Los Angeles, CA 90024-3503

13   The Receiver David Chase
     Walter Oetzell, Esq.
14   Steven J. Schwartz, Esq.
     Danning, Gill, Diamond & Kollitz, LLP
15   2029 Century Park East, Third Floor
     Los Angeles, California 90067-2904
16

17   Jeffrey C. Schneider, Esq.
     Tew Cardenas LLP
18   Four Seasons Tower, Fifteenth Floor
     1441 Brickell Avenue
19   Miami, Florida 33131-3407

20   Federal Trade Commission
     Michael Mora, Esq.
21   Julie A. Mack, Esq.
     Federal Trade Commission
22   600 Pennsylvania Ave. N.W.
     Washington, DC 20580
23

24   Thermo Credit
     John A. Lapinski, Esq.
     Leslie R. Horowitz, Esq.
25   Dolores Cordell, Esq.
     Clark & Trevithick
26   800 Wilshire Boulevard, 12th Floor
     Los Angeles, California 90017
27

28   W. Timothy Miller, Esq.
     Taft Stettinius & Hollister LLP

W02-WEST:FJR\400466319.5                    **-16-**

1  425 Walnut Street, Suite 1800
   Cincinnati, Ohio 45202

2

3  Certain Creditors
   Peter Benvenutti, Esq.
   Michaeline H. Correa, Esq.
4  Heller, Ehrman, White and McAuliffe
   333 Bush St.
5  San Francisco, CA 94104-2878

6  Email Discount Network and Intelicom Messaging
   c/o David M. Goodrich, Esq.
7  7700 Irvine Center Drive, Suite 800
   Irvine, CA 92618
8

9  Austin P. Nagel, Esq.
   Law Offices of Austin P. Nagel
10  111 Deerwood Place, Suite 338
   San Ramon, California 94583

11

12  Official Creditors' Committee
   John Fiero, Esq.
   Pachulski, Stang, Ziehl, Young & Jones
13  150 California Street, 15th Floor
   San Francisco, CA  94111-4500

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

W02-WEST:FJR\400466319.5                    -17-

ORDER APPROVING FURTHER INTERIM
USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

**RER - 41**

ORIGINAL

1  Howard Kollitz [State Bar No. 059611],
   Walter K. Oetzell [State Bar No. 109769] and
2  Steven J. Schwartz [State Bar No. 200586] of
   DANNING, GILL, DIAMOND & KOLLITZ, LLP
3  2029 Century Park East, Third Floor
   Los Angeles, California 90067-2904
4  Telephone: (310) 277-0077
   Facsimile: (310) 277-5735
5  Email:  woetzell@dgdk.com
   Email:  sschwartz@dgdk.com
6
   Jeffrey C. Schneider [Pro Hac Vice]
7  TEW CARDENAS LLP
   Four Seasons Tower, Fifteenth Floor
8  1441 Brickell Avenue
   Miami, Florida 33131-3407
9  Telephone: (305) 539-2481
   Facsimile: (305) 536-1116
10 Email:  jcs@tewlaw.com

11 Attorneys for Defendant, David R. Chase, as Receiver

ELECTRONICALLY
FILED: 10|19|07
Date:
Docket No: 33

12            UNITED STATES BANKRUPTCY COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14                  SAN JOSE DIVISION

15 In re                                    )  Bankruptcy Case No. 07-52890-ASW
                                            )
16 THE BILLING RESOURCE, dba               )         [Chapter 11]
   INTEGRETEL, a California corporation,    )
17                                          )  Adversary Proceeding No. 07-05156
   [Taxpayer Identification No. 33-0289863] )
18                                          )
                  Debtor.                   )
19 _____ )
                                            )
20 THE BILLING RESOURCE, dba               )  MOTION OF FEDERAL RECEIVER TO
   INTEGRETAL, a California corporation,    )  DISMISS COMPLAINT PURSUANT TO
21                                          )  FRCP RULE 12(b)(1)
                  Plaintiff,                )
22         vs.                              )
                                            )
23 FEDERAL TRADE COMMISSION, and          )
   DAVID R. CHASE, not individually, but solely )  Date:  November 27, 2007 (Tuesday)
24 in his capacity as receiver for Nationwide )  Time:  3:00 p.m.
   Connections, Inc., Access One Communications, )  Place  United States Bankruptcy Court
25 Inc., Network One Services, etc., et al; )         280 South First Street
                                            )         San Jose, California
26                                          )  Judge: Hon. Arthur S. Weissbrodt
                                            )  Crtrm: 3020
27                  Defendants.             )
                                            )
28

                              -1-

315797.01 [XP]    24774                                    RER-41    2667

1 **TO THE HONORABLE ARTHUR S. WEISSBRODT, UNITED STATES BANKRUPTCY**

2 **JUDGE:**

3

4          The Defendant in the above captioned Adversary Proceeding, David R. Chase, not

5 individually, but solely in his capacity as Receiver for Nationwide Connections, Inc., Access One

6 Communications, Inc., Network One Services and other related entities ("the Defendant" or "the

7 Federal Receiver") hereby moves this Court for an Order, pursuant to Rule 12(b)(1) of the Rules of

8 Civil Procedure made applicable in the Adversary Proceeding by Bankruptcy Rule 7012(b) to

9 dismiss the Complaint for Declaratory Relief, Temporary Restraining Order and Preliminary

10 Injunction ("the Complaint") filed by the Plaintiff, The Billing Resource dba Integretel, as Chapter

11 11 Debtor and Debtor in Possession ("the Plaintiff" or "Integretel") based upon the grounds that the

12 above entitled Bankruptcy Court ("this Bankruptcy Court") lacks subject matter jurisdiction to

13 consider the matters alleged in the Complaint and lacks subject matter jurisdiction to grant to the

14 Plaintiff any of the relief requested by the Complaint in that: (1) the United States District Court

15 for the Southern District of Florida ("the District Court in Florida") had prior to the commencement

16 of the above captioned Bankruptcy Case entered its Omnibus Order[1] whereby, among other things,

17 the District Court in Florida determined that it had exclusive subject matter jurisdiction with

18 respect to all of the matters alleged in the Complaint; and, (2) the Plaintiff did not obtain the

19 requisite prior authority from the District Court in Florida to sue the Federal Receiver, by the

20 ///

21 ///

22 ///

23 ///

24 ///

25 _____

26 [1] See, Omnibus Order, attached as Exhibit "6" attached to the Second Request Of Federal Receiver
Pursuant To FRE Rule 201(d) For Judicial Notice In Support Of Motion Of Federal Receiver To

27 Dismiss Complaint Pursuant To FRCP Rule 12(b)(1) filed and served with this Motion ("the
Second RJN").

28

1  Complaint or otherwise, since the Federal Receiver was appointed by, and is the agent

2  District Court in Florida.[2]

3

4          Dated, on this 19th day of October, 2007, at Los Angeles, California.

5

6                                    DANNING, GILL, DIAMOND & KOLLITZ, LLP

7

8                          By _____

9                                    Steven J. Schwartz

10                                   Attorneys for the Federal Receiver

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

---

27  [2] See, the Federal Court Injunction, attached as Exhibit "5" to the Second RJN.

28

-3-

## File a Motion:

07-05156 The Billing Resource v. Chase et al
  Type: ap                Office: 5 (San Jose)         Lead Case: 07-52890
  Judge: ASW

### U.S. Bankruptcy Court

### Northern District of California

Notice of Electronic Filing

The following transaction was received from Schwartz, Steven J. entered on 10/19/2007 at 1:31 PM
PDT and filed on 10/19/2007
**Case Name:**      The Billing Resource v. Chase et al
**Case Number:**   07-05156
**Document Number:** 33

**Docket Text:**
Motion to Dismiss Adversary Proceeding *Motion of Federal Receiver to Dismiss Complaint Pursuant to
FRCP Rule 12(b)(1)* Filed by Defendant David R Chase. (Schwartz, Steven)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** J:\CYC\Integretel Motion to Dismiss.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1017961465 [Date=10/19/2007] [FileNumber=6871115-
0] [86fdce10719c91aeda4aa7ad9c4e878a0876ec874b0126e0b82cdf4945ba0bf915
a2e92d9348eb778c356d7f91da08e88c9bcc7173df88c4eb351c2f95c39d76]]

**07-05156 Notice will be electronically mailed to:**

Michael H. Ahrens    mahrens@sheppardmullin.com

Ori Katz   okatz@sheppardmullin.com, dwhitehead@sheppardmullin.com

Julie A. Mack   jmack@ftc.gov, dabueid@ftc.gov

Jeffrey K. Rehfeld   jrehfeld@sheppardmullin.com, ewalters@sheppardmullin.com

Steven B. Sacks   ssacks@sheppardmullin.com, ewalters@smrh.com

Steven J. Schwartz   sschwartz@dgdk.com

**07-05156 Notice will not be electronically mailed to:**

**RER - 42**

ORIGINAL

ELECTRONICALLY
FILED: 10|19|07
Date:
Docket No: 34

1  Howard Kollitz [State Bar No. 059611],
   Walter K. Oetzell [State Bar No. 109769] and
2  Steven J. Schwartz [State Bar No. 200586] of
   DANNING, GILL, DIAMOND & KOLLITZ, LLP
3  2029 Century Park East, Third Floor
   Los Angeles, California 90067-2904
4  Telephone:  (310) 277-0077
   Facsimile:  (310) 277-5735
5  Email:  woetzell@dgdk.com
   Email:  sschwartz@dgdk.com
6
   Jeffrey C. Schneider [Pro Hac Vice]
7  TEW CARDENAS LLP
   Four Seasons Tower, Fifteenth Floor
8  1441 Brickell Avenue
   Miami, Florida 33131-3407
9  Telephone:  (305) 539-2481
   Facsimile:  (305) 536-1116
10 Email:  jcs@tewlaw.com

11 Attorneys for Defendant, David R. Chase, as Receiver

12              UNITED STATES BANKRUPTCY COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14                    SAN JOSE DIVISION

15 In re                              )  Bankruptcy Case No. 07-52890-ASW
                                      )
16 **THE BILLING RESOURCE**, dba      )        [Chapter 11]
   **INTEGRETEL**, a California corporation, )
17                                    )  Adversary Proceeding No. 07-05156
   [Taxpayer Identification No. 33-0289863] )
18                                    )
                       **Debtor.**    )
19 _____    )
                                      )  **MEMORANDUM OF POINTS AND**
20 **THE BILLING RESOURCE**, dba      )  **AUTHORITIES IN SUPPORT OF**
   **INTEGRETAL**, a California corporation, )  **MOTION OF FEDERAL RECEIVER TO**
21                                    )  **DISMISS COMPLAINT PURSUANT TO**
                       **Plaintiff,** )  **FRCP RULE 12(b)(1)**
22      vs.                           )
                                      )
23 **FEDERAL TRADE COMMISSION**, and  )
   **DAVID R. CHASE**, not individually, but solely )
24 in his capacity as receiver for Nationwide )  **Date:  November 27, 2007 (Tuesday)**
   Connections, Inc., Access One Communications, )  **Time:  3:00 p.m.**
25 Inc., Network One Services, etc., et al; )  **Place  United States Bankruptcy Court**
                                      )          **280 South First Street**
26                                    )          **San Jose, California**
                                      )  **Judge: Hon. Arthur S. Weissbrodt**
27                     **Defendants.** )  **Ctrm: 3020**
                                      )
28 _____

                              -1-

**TO THE HONORABLE ARTHUR S. WEISSBRODT, UNITED STATES BANKRUPTCY
JUDGE:**

The Defendant in the above captioned Adversary Proceeding, David R. Chase, not
individually, but solely in his capacity as Receiver for Nationwide Connections, Inc., Access One
Communications, Inc., Network One Services and other related entities ("the Defendant" or "the
Federal Receiver") hereby submits the Federal Receiver's Memorandum Of Points And Authorities
In Support Of Motion Of Federal Receiver To Dismiss Complaint Pursuant To FRCP Rule
12(b)(1), in connection with the Complaint for Declaratory Relief, Temporary Restraining Order
and Preliminary Injunction ("the Complaint") filed by the Plaintiff, The Billing Resource dba
Integretel, as Chapter 11 Debtor and Debtor in Possession ("the Plaintiff" or "Integretel"):

## 1.    INTRODUCTION AND FACTUAL BACKGROUND

In February of 2006, the Defendant Federal Trade Commission ("the FTC") commenced an
action ("the Federal Action") in the United States District Court for the Southern District of Florida
("the District Court in Florida") alleging against various defendants, among other claims, deceptive
and unfair practices in violation of the Federal Trade Commission Act.[1]  After the commencement
of the Federal Action, the Federal Receiver was appointed to serve as the agent of the District
Court in Florida.[2]   In September of 2006 the Plaintiff (Integretel) was added as a defendant in the
Federal Action and, thereafter, the Plaintiff (Integretel) undertook to actively litigate the issues in
the Federal Action.[3]

---

[1] See, the Complaint, P. 5.

[2] See, the Omnibus Order, attached as Exhibit "6" to the Second Request Of Federal Receiver
Pursuant To FRE Rule 201(d) For Judicial Notice In Support Of Motion Of Federal Receiver To
Dismiss Complaint Pursuant To FRCP Rule 12(b)(1) ("the Second RJN").

[3] See, the Complaint, PP. 5-7.

-2-

1    On Friday, September 14, 2007, the District Court in Florida entered its Omnibus Order,

2    over the opposition of Integretel whereby, among other things, it was ordered as follows in the

3    Federal Action:

4        (a)    Integretel must show cause in the Federal Action why it should not be held

5            in contempt for failure to comply with prior orders of the District Court in Florida;

6        (b)    Integretel should immediately deliver to the Receiver $1,762,762 which

7            funds were determined to be property of the Receivership estate in the Federal Action and

8            not property of Integretel (the Plaintiff); and,

9        (c)    The District Court in Florida has exclusive *in rem* jurisdiction over the

10           $1,762,762, that is, exclusive subject matter jurisdiction over the $1,762,762.[4]

11

12    Two (2) days later, on September 16, 2007, Integretel filed its petition for relief under

13    Chapter 11 of the Bankruptcy Code thereby commencing the above-captioned and pending

14    Bankruptcy Case ("this Bankruptcy Case").[5]

15    On September 20, 2007, the District Court in Florida entered its Order staying the Federal

16    Action as to Integretel.[6]

17    On September 21, 2007, in response to the commencement of this Bankruptcy Case, the

18    District Court in Florida entered its Clarification Order in the Federal Action whereby, among other

19    things, it ordered that:

20        (a)    The Federal Action was not stayed by the commencement of this Bankruptcy

21            Case;

22

23

24

---

25    [4] See, the Omnibus Order, attached as Exhibit "6" to the Second RJN.

26    [5] See, the Clarification Order, attached as Exhibit "8" to the Second RJN.

27    [6] See, the District Court Stay Order, attached as Exhibit "7" to the Second RJN.

28

-3-

1        (b)     The commencement and pendency of this Bankruptcy Case did not stay the

2    Omnibus Order of the District Court in Florida, which continues to require the immediate

3    delivery of the $1,762,762 to the Federal Receiver;

4        (c)     The commencement and pendency of this Bankruptcy Case does not stay the

5    Omnibus Order which requires Integretel to appear and show cause in the Federal Action

6    why it should not be held in contempt; and,

7        (d)     The District Court Stay Order was vacated.[7]

8

9    On or about September 20, 2007, the Plaintiff (Integretel) filed its Complaint for

10    Declaratory Relief, Temporary Restraining Order and Preliminary Injunction ("the Complaint")

11    commencing the above-captioned Adversary Proceeding against the FTC and the Receiver seeking

12    declaratory relief concerning the effect of 11 U.S.C. § 362 with respect to the Federal Action as

13    well as injunctive relief as against the FTC and the Receiver.[8]

14    On October 2, 2007 this Bankruptcy Court entered its Order, upon stipulation between

15    Integretel and the Federal Receiver, whereby the $1,762,762 subject to the Omnibus Order was

16    sequestered in a blocked account pending further Order of this Bankruptcy Court, without prejudice

17    to the claims, defenses or rights of either the Federal Receiver (the Defendant) or Integretel (the

18    Plaintiff).[9]

19    On October 16, 2007, Integretel requested that the United States Court of Appeals for the

20    Eleventh Circuit ("the 11th Circuit") grant a stay as to the Omnibus Order pending a determination

21

22

23

---

24  [7] See, the Clarification Order, attached as Exhibit "8" to the Second RJN.

25  [8] See, the Complaint.

26  [9] See, the Bankruptcy Court Sequestration Order attached as Exhibit "9" to the Second RJN.

27

28

315798.1 [XP]    24774                                  RER-42   2673

1  by the 11th Circuit as to whether the Omnibus Order was an appealable order at this time.[10]  On

2  October 17, 2007, the 11th Circuit "temporarily granted" Integretel's request for the stay.[11]

3

4  **2.    THIS BANKRUPTCY COURT LACKS SUBJECT MATTER JURISDICTION**

5        The District Court in Florida has determined in the Federal Action, prior to the

6  commencement of this Bankruptcy Case, that it has exclusive subject matter jurisdiction over the

7  $1,762,762.  Such exclusive jurisdiction is conferred by both statutory and judicial authority.  See,

8  28 U.S.C. § 754, 28 U.S.C. § 1962; SEC v. Wolfson, 309 B.R. 612 (Bankr.D.Utah 2004).

9        This Court lacks subject matter jurisdiction over the matters in the Complaint and in this

10  Adversary Proceeding given the nature of the Federal Action and the determination of exclusive

11  jurisdiction by the District Court in Florida.  Integretel has not obtained permission from the

12  District Court in Florida to bring this action or any action against the Federal Receiver.  It has been

13  Federal law for over 100 years that before a litigant brings an action against a receiver, it must

14  obtain permission from the court that appointed that receiver.  As explained and held by the 11th

15  Circuit in Carter v. Rogers, 220 F.3d 1249, 1252 (11th Cir. 2000).

16        "An unbroken line of cases ... has imposed [this] requirement as a matter of

17        federal common law."  Linton, 136 F.3d at 545.  In so holding, these circuit

18        courts have applied the rule referred to as the "*Barton* doctrine."  *See id.*

19        The Supreme Court in Barton v. Barbour, 104 U.S. 126, 127, 26 L.Ed. 672

20        (1881), stated that "**[i]t is a general rule that before suit is brought against**

21        **a receiver[,] leave of the court by which he was appointed must be**

22        **obtained.**"

23

24

25

_____

26  [10] See, the 11th Circuit Stay Request, attached as Exhibit "10" to the Second RJN.

27  [11] See, the 11th Circuit Stay Order, attached as Exhibit "11" to the Second RJN.

28

315798.1 [XP]    24774

RER-42    2674

1    It remains unquestioned that the Barton Doctrine applies to federal receivers. Judicial

2    authority has extended its reach to require the same in respect of trustees. So pervasive is this

3    doctrine that the 11th Circuit and other Circuits have held that leave must be obtained from the

4    bankruptcy court before suing a bankruptcy trustee in district court.

5        "Joining the other circuits that have considered this issue, we hold that a

6        debtor must obtain leave of the bankruptcy court before initiating an action

7        in district court when that action is against the trustee or other bankruptcy-

8        court-appointed officer, [FN4] for acts done in the actor's official capacity.

9        See Springer v. Infinity Group Co., No. 98-5182, 189 F.3d 478 (10th Cir.

10       Aug.26, 1999) (unpublished table decision), cert. denied, 529 U.S. 1020, 120

11       S.Ct. 1422, 146 L.Ed.2d 314 (2000); Gordon v. Nick, No. 96-1858, 162

12       F.3d 1155 (4th Cir. Sept.2, 1998) (unpublished table decision);  In re Linton,

13       136 F.3d 544, 546 (7th Cir.1998);  Lebovits v. Scheffel (In re Lehal Realty

14       Assocs.), 101 F.3d 272 (2d Cir.1996);  Allard v. Weitzman In re DeLorean

15       Motor Co., 991 F.2d 1236, 1240 (6th Cir.1993);  Vass v. Conron Bros. Co.,

16       59 F.2d 969, 970 (2d Cir.1932);  Kashani v. Fulton (In re Kashani), 190 B.R.

17       875, 885 (9th Cir.BAP 1995)."

18       Id.

19

20   Failure to obtain leave from the appointing court deprives the court in which the unauthorized

21   action is brought of subject matter jurisdiction.

22       As demonstrated by Crown Vantage, Inc. v. Fort James Corporation, 421 F.3d 963 (9th

23   Cir.2005), the 9th Circuit recognizes and applies the Barton Doctrine. In Crown Vantage, the 9th

24   Circuit included the liquidating trustee in the scope of the Barton Doctrine and reversed the lower

25   court's decision requiring the trustee to establish irreparable harm before obtaining injunctive relief

26   itself based upon violation of the Barton Doctrine. The 9th Circuit explained the Barton Doctrine

27   and its rationale and basis:

28

-6-

1    "This holding is firmly grounded in the **Barton** doctrine, established by the

2    Supreme Court over a century ago, which provides that, before suit can be

3    brought against a court-appointed receiver, **"leave of the court by which he**

4    **was appointed** must be obtained." **104 U.S. at 127**; *see also Davis v.*

5    *Gray,* 16 Wall. 203, 83 U.S. 203, 218, 21 L.Ed. 447 (1872) (holding that the

6    court appointing a receiver 'will not allow him to be sued touching the

7    property in his charge, nor for any malfeasance as to the parties, or others,

8    without [the court's] consent'). The Court held that if leave of court were not

9    obtained, then the other forum lacked subject matter jurisdiction over the

10   suit. *Barton*, 104 U.S. at 127. Part of the rationale underlying *Barton* is that

11   the court appointing the receiver has in rem subject matter jurisdiction over

12   the receivership property. *Id.* at 136. As the Supreme Court explained,

13   allowing the unauthorized suit to proceed "would have been a usurpation of

14   the powers and duties which belonged exclusively to another court." *Id.*

15   Crown Vantage, supra, at 970.

16

17   Nor does it make a difference whether the action is brought in State court or Federal court.

18   "Carter argues that the Barton doctrine requires parties to obtain leave of the

19   bankruptcy court only when they wish to pursue a state court remedy.   We

20   disagree, and hold that when leave is required, it is required before pursuing

21   remedies in either state or other federal courts.   We find no reason to

22   distinguish between instances where the trustee is sued in state court and

23   those in which the trustee is sued in federal court. See, Kashani v. Fulton

24   (In re Kashani), 190 B.R. 875, 885 (9th Cir. BAP 1995) ("[L]eave to sue the

25   trustee is required to sue in those federal courts other than the bankruptcy

26   court which actually approves the trustee's appointment."); In re Krikava,

27   217 B.R. 275, 279 (Bankr.D.Neb.1998) ("Consent of the appointing

28

-7-

1    bankruptcy court is required even when the plaintiff seeks to sue in another

2    federal court.")."

3        Carter, supra, at 1253

4

5        The Barton doctrine is not subject to waiver.  As held in Crown Vantage, supra, at 970, the

6    Barton Doctrine involves subject matter jurisdiction and, consequently, cannot be waived and can

7    be raised at any time.

8        The 11th Circuit Stay Order is irrelevant with respect to the Plaintiff's (Integretel's) failure

9    to obtain permission from the District Court in Florida in the Federal Action to file the Complaint

10   or to pursue this Adversary Proceeding as against the Federal Receiver.

11

12   **3.    CONCLUSION**

13       This Bankruptcy Court lacks subject matter jurisdiction over all of the matters involved in

14   the Complaint and in this Adversary Proceeding.  The Motion of the Federal Receiver most be

15   granted and the Complaint of Integretel must be dismissed.

16

17       Dated, on this 19th day of October, 2007, at Los Angeles, California.

18

19                           DANNING, GILL, DIAMOND & KOLLITZ, LLP

20

21                   By _____
                              Steven J. Schwartz

22

23                   Attorneys for the Federal Receiver

24

25

26

27

28

-8-

## Miscellaneous:

07-05156 The Billing Resource v. Chase et al
Type: ap                     Office: 5 (San Jose)              Lead Case: 07-52890
Judge: ASW

### U.S. Bankruptcy Court

### Northern District of California

Notice of Electronic Filing

The following transaction was received from Schwartz, Steven J. entered on 10/19/2007 at 1:36 PM
PDT and filed on 10/19/2007
**Case Name:**      The Billing Resource v. Chase et al
**Case Number:**    07-05156
**Document Number:** 34

**Docket Text:**
Memorandum of Points and Authorities in of *Federal Receiver in Support of Motion to Dismiss
Complaint Pursuant to FRCP Rule 12(b)(1)* (RE: related document(s)[33] Motion to Dismiss Adversary
Proceeding). Filed by Defendant David R Chase (Schwartz, Steven)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** J:\CYC\Integretel PAs.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1017961465 [Date=10/19/2007] [FileNumber=6871186-
0] [4d5f3ad4ab3e39a0d163e9b5b02195efbd2f394ec3e93f45e227a73653cefc95f6
ad084e6b18124c23dfc05115e9a1763282a06ef1919aed8f6c3f2110a41711]]

**07-05156 Notice will be electronically mailed to:**

Michael H. Ahrens     mahrens@sheppardmullin.com

Ori Katz     okatz@sheppardmullin.com, dwhitehead@sheppardmullin.com

Julie A. Mack     jmack@ftc.gov, dabueid@ftc.gov

Jeffrey K. Rehfeld     jrehfeld@sheppardmullin.com, ewalters@sheppardmullin.com

Steven B. Sacks     ssacks@sheppardmullin.com, ewalters@smrh.com

Steven J. Schwartz     sschwartz@dgdk.com

**07-05156 Notice will not be electronically mailed to:**

**RER - 43**

1 | Howard Kollitz [State Bar No. 059611],
Walter K. Oetzell [State Bar No. 109769] and
2 | Steven J. Schwartz [State Bar No. 200586] of
DANNING, GILL, DIAMOND & KOLLITZ, LLP
3 | 2029 Century Park East, Third Floor
Los Angeles, California 90067-2904
4 | Telephone: (310) 277-0077
Facsimile: (310) 277-5735
5 | Email: woetzell@dgdk.com
Email: sschwartz@dgdk.com
6 |
Jeffrey C. Schneider [Pro Hac Vice]
7 | TEW CARDENAS LLP
Four Seasons Tower, Fifteenth Floor
8 | 1441 Brickell Avenue
Miami, Florida 33131-3407
9 | Telephone: (305) 539-2481
Facsimile: (305) 536-1116
10 | Email: jcs@tewlaw.com

11 | Attorneys for Defendant, David R. Chase, as Receiver

12 | **UNITED STATES BANKRUPTCY COURT**

13 | **NORTHERN DISTRICT OF CALIFORNIA**

14 | **SAN JOSE DIVISION**

15 | **In re**                                    ) **Bankruptcy Case No. 07-52890-ASW**
                                                  )
16 | **THE BILLING RESOURCE**, dba                ) [Chapter 11]
**INTEGRETEL**, a California corporation,         )
17 |                                              ) **Adversary Proceeding No. 07-05156**
[Taxpayer Identification No. 33-0289863]          )
18 |                                              )
                                **Debtor.**       )
19 | _____          )
                                                  ) **SECOND REQUEST OF FEDERAL**
20 | **THE BILLING RESOURCE**, dba                ) **RECEIVER PURSUANT TO FRE RULE**
**INTEGRETAL**, a California corporation,         ) **201(d) FOR JUDICIAL NOTICE IN**
21 |                                              ) **SUPPORT OF MOTION OF FEDERAL**
                                **Plaintiff,**    ) **RECEIVER TO DISMISS COMPLAINT**
22 | vs.                                          ) **PURSUANT TO FRCP RULE 12(b)(1)**
                                                  )
23 | **FEDERAL TRADE COMMISSION**, and            )
**DAVID R. CHASE**, not individually, but solely )
24 | in his capacity as receiver for Nationwide   ) **Date:** November 27, 2007 (Tuesday)
Connections, Inc., Access One Communications,    ) **Time:** 3:00 p.m.
25 | Inc., Network One Services, etc., <u>et al</u>; ) **Place** United States Bankruptcy Court
                                                  )        280 South First Street
26 |                                              )        San Jose, California
                                                  ) **Judge:** Hon. Arthur S. Weissbrodt
27 |                                **Defendants.** ) **Crtrm:** 3020
                                                  )
28 | _____          )

-1-

1  **TO THE HONORABLE ARTHUR S. WEISSBRODT, UNITED STATES BANKRUPTCY**

2  **JUDGE:**

3

4       Pursuant to Rule 201(d) of the Federal Rules of Evidence, made applicable in the above

5  captioned Adversary Proceeding by Bankruptcy Rule 9017, the Defendant, David R. Chase, not

6  individually, but solely in his capacity as Receiver ("the Federal Receiver"), hereby requests that

7  the above entitled Bankruptcy Court take judicial notice of the contents of the following Orders and

8  other papers, copies of which are attached hereto, in connection with the Motion of Federal

9  Receiver to Dismiss Complaint Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure:

10

11      1.    The Amended Preliminary Injunction Order entered on September 25, 2006,

12  attached hereto as Exhibit "5" ("the District Court Injunction" or "Exhibit 5") by the United States

13  District Court for the Southern District of Florida in Case No. 06-80180-CIV-Ryskamp ("the

14  District Court in Florida").

15

16      2.    The Omnibus Order entered on September 14, 2007 by the District Court in Florida,

17  attached hereto as Exhibit "6" ("the District Court Omnibus Order" or "Exhibit 6");

18

19      3.    The Order Staying Proceedings entered on September 20, 2007 by the District Court

20  in Florida, attached hereto as Exhibit "7" ("the District Court Stay Order" or "Exhibit 7");

21

22      4.    The Order Granting Motion for Clarification entered by the District Court in Florida

23  on September 21, 2007, attached hereto as Exhibit "8" ("the District Court Clarification Order" or

24  "Exhibit 8");

25

26      5.    The Order Approving Stipulation between Debtor and David R. Chase entered by

27  the above entitled Bankruptcy Court on October 2, 2007, attached hereto as Exhibit "9" ("the

28  Bankruptcy Court Sequestration Order" or "Exhibit 9");

1    6.    The October 16, 2007 letter from legal Tighe Patton Armstrong Teasdale, PLLC to

2  the United States Court of Appeals for the 11th Circuit ("the 11th Circuit"), attached hereto as

3  Exhibit "10" ("the 11th Circuit Stay Request" or "Exhibit 10"); and,

4

5    7.    The Order entered by the 11th Circuit in Case No. 07-14531-E on October 17, 2007,

6  attached hereto as Exhibit "11" ("the 11th Circuit Stay Order" or "Exhibit 11").

7

8    Dated, on this 19th day of October, 2007, at Los Angeles, California.

9

10                                        DANNING, GILL, DIAMOND & KOLLITZ, LLP

11

12                            By _____

13                                        Steven J. Schwartz

14                                        Attorneys for the Federal Receiver

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-3-

EXHIBIT "5"

+3055351116        T-692  P.006/030  F-130

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 06-80180 - CIV-RYSKAMP

FEDERAL TRADE COMMISSION,    )
                              )
       Plaintiff,          )
                              )
vs.                            )   **AMENDED**
                              )   **PRELIMINARY INJUNCTION**
NATIONWIDE CONNECTIONS, INC.,  )   **ORDER**
ACCESS ONE COMMUNICATIONS, INC.,  )
NETWORK ONE SERVICES, INC.,    )
WILLOUGHBY FARR,             )
MARY LOU FARR,              )
YARET GARCIA,              )
ERIKA RIABOUKHA,          )
QAADIR KAID,               )
                              )
       Defendants.        )
                              )

FILED by _JW_ D.C.

SEP 2 5 2006

CLARENCE MADDOX
CLERK U.S. DIST CT.
S.D. OF FLA. - W.P.B.

On February 27, 2006, the Federal Trade Commission ("FTC" or "Commission") filed a Complaint for Injunctive and Other Equitable Relief, including consumer redress, pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), and applied *ex parte* for a Temporary Restraining Order and Other Equitable Relief ("*Ex Parte* Motion"). On that same day, this Court, having considered the Complaint, Memorandum of Points and Authorities, declarations, and other exhibits filed in support of Plaintiff's *Ex Parte* Motion, issued a Temporary Restraining Order, including an asset freeze and appointment of a temporary receiver. A Preliminary Injunction was issued by this Court on March 8, 2006. On August 21, 2006, the FTC filed a Motion to Modify the Preliminary Injunction to include Willoughby Farr and Mary Lou Farr as "Receivership Defendants," and other related modifications.

233/RB

EXHIBIT D

## EXHIBIT     5

0004

RER-43    2683

# FINDINGS OF FACT

The Court has considered the pleadings, declarations, exhibits, and memoranda filed in support of the Commission's motions and finds that:

1. This Court has jurisdiction over the subject matter of this case, and there is good cause to believe that it will have jurisdiction over all parties hereto.

2. There is good cause to believe that Defendants Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., Willoughby Farr, Mary Lou Farr, Yaret Garcia, Erika Riaboukha, and Qaadir Kaid have engaged and are likely to engage in acts or practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and that the Commission has demonstrated a substantial likelihood of prevailing on the merits of this action.

3. There is good cause to believe that immediate and irreparable damage will result from Defendants' ongoing violations of Section 5(a) of the FTC Act.

4. There is a substantial likelihood that, absent the continuation of the asset freeze and the receivership, Defendants will conceal, dissipate, or otherwise divert their assets, and thereby defeat the possibility of effective final relief in the form of equitable monetary relief. Defendants have engaged in the widespread unauthorized billing of collect telephone calls in violation of Section 5 of the FTC Act. Defendants have retained ill-gotten gains from these practices, and a receiver and asset freeze are reasonably necessary in order to preserve the possibility of complete and meaningful relief at the conclusion of this litigation.

5. As a result of Willoughby Farr's and Mary Lou Farr's contumacious conduct since the

2

0005

entry of the Temporary Restraining Order, modification of the Preliminary Injunction to include Willoughby Farr and Mary Lou Farr as "Receivership Defendants" is necessary to prevent the risk of further dissipation of frozen assets.

6.    Weighing the equities and considering the FTC's substantial likelihood of success on the merits, issuance of a preliminary injunction with asset freeze and appointment of a permanent receiver are in the public interest.

7.    Fed. R. Civ. P. 65(c) does not require security of the United States or an officer or agency thereof for the issuance of a restraining order.

## DEFINITIONS

For the purpose of this Preliminary Injunction Order ("Order"), the following definitions shall apply:

A.    "Assets" means any legal or equitable interest in, right to, or claim to any real or personal property of any Defendant, or held for the benefit of any Defendant, wherever located, including, but not limited to, "goods," "instruments," "equipment," "fixtures," "general intangibles," "inventory," "checks," "notes" (as these terms are defined in the Uniform Commercial Code), chattels, leaseholds, contracts, mails, other deliveries, shares of stock, lists of participants, intellectual property, accounts, credits, receivables, cash, and trusts, including, but not limited to, any other trust held for the benefit of any Defendant, any Defendant's minor children, or any Defendant's spouse.

B.    "Defendants" means Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., Willoughby Farr, Mary Lou Farr, Yaret Garcia, Erika Riaboukha, and Qaadir Kaid. Furthermore, any person insofar as he or she is acting in

3

0006

the capacity of an officer, agent, servant, employee or attorney of any defendant, and any person or entity in active concert or participation with any of the foregoing who receives actual notice of this Order by personal service or otherwise, is bound to comply with this Order, whether those persons or entities are acting directly or through a trust, corporation, subsidiary, division, or other device. *See* Fed. R. Civ. P. 65(d).

C.  "Document" is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes, but is not limited to, writings, drawings, graphs, charts, Internet sites, Web pages, Web sites, electronic correspondence, including e-mail and instant messages, photographs, audio and video recordings, computer records, whether active or inactive, and any other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

D.  "Individual Defendants" means Willoughby Farr, Mary Lou Farr, Yaret Garcia, Erika Riahoukha, and Qaadir Kaid.

E.  "Long Distance Service Provider" means an entity that transports long distance telephone calls.

F.  "Plaintiff" means the Federal Trade Commission.

G.  "Receiver" shall mean the receiver appointed in Paragraph VIII of this Order. The term "receiver" also includes any deputy receivers as may be named by the receiver.

H.  "Receivership Defendants" means: (1) Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc.; (2) the following affiliated entities

4

acting in active concert or participation with them or the Individual Defendants, namely 411TXT, Inc., CELL-INFO-USA, Inc., Enhanced Billing Services, Inc., Toll Free Connect, Inc., Cripple Creek Holdings, LLC, Built to Last, LLC, Not Fade Away, LLC, He's Gone, LLC, The Other One, LLC, Turn on Your Love Light, LLC, China Cat Sunflower, LLC, Lazy River Road Holdings, LLC; (3) any affiliates, fictitious names, subsidiaries, successors, assigns or d/b/as of the aforementioned entities; (4) Willoughby Farr; and (5) Mary Lou Farr.

I.   "TRO" means the *Ex Parte* Temporary Restraining Order with Asset Freeze and Other Equitable Relief issued by the Court in this matter on February 27, 2006.

## PROHIBITED BUSINESS ACTIVITIES

### I.

IT IS THEREFORE ORDERED that Defendants, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from directly or indirectly misrepresenting, expressly or by implication, that a consumer is obligated to pay any charge that has not been expressly authorized by the consumer.

### II.

IT IS FURTHER ORDERED that Defendants are hereby restrained and enjoined from billing or submitting any charge for billing on a consumer's telephone bill.

## ASSET FREEZE

### III.

IT IS FURTHER ORDERED that Defendants, and those persons in active concert or

5

0008

RER-43          2687

participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from:

A.    Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any funds, real or personal property, accounts, reserve accounts, contracts, consumer lists, shares of stock, or other assets, or any interest therein, wherever located, that are: (1) owned or controlled by any Defendant, in whole or in part, for the benefit of any Defendant; (2) in the actual or constructive possession of any Defendant; or (3) owned, controlled by, or in the actual or constructive possession of any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant, including, but not limited to, Cripple Creek Holdings, LLC, 411TXT, Inc., CELL-INFO-USA, Inc., Enhanced Billing Services, Inc., Toll Free Connect, Inc., and any assets held by or for, or subject to access by, any of Defendants, at any bank or savings and loan institution, or with any broker-dealer, escrow agent, title company, commodity trading company, precious metals dealer, billing aggregator, or other financial institution or depository of any kind;

B.    Opening or causing to be opened any safe deposit boxes titled in the name of any Defendant or any Defendant's minor child or any Defendant's spouse, or subject to access by any of them;

C.    Incurring charges or cash advances on any credit card issued in the name, singly or jointly, of any Defendant;

D.    Obtaining a personal or secured loan; and

E.    Incurring liens or other encumbrances on real property, personal property or other

6

0.009

assets in the name, singly or jointly, of any Defendant.

*Provided further,* the assets affected by this Paragraph shall include: (1) all assets of Defendants as of the time the TRO was entered; and (2) for assets obtained after the time the TRO was entered, only those assets of Defendants that are derived from the actions alleged in the Commission's Complaint.

## FINANCIAL REPORTS AND ACCOUNTING

### IV.

**IT IS FURTHER ORDERED** that, to the extent that Defendants have not complied with Section III of the TRO, each Defendant shall immediately:

A.    Prepare and deliver to counsel for the FTC completed financial statements on the forms attached to the TRO as Attachments A and B, for themselves, individually or as corporations, and for each business entity under which they conduct business, or of which they are an officer, and for each trust of which they are a trustee. The financial statements shall be accurate as of the date of entry of the TRO; and

B.    Provide the Commission with a statement, verified under oath and accurate as of the date of entry of the TRO, detailing the name, address, and telephone number for each accountant, financial planner, investment advisor, stock broker, or other person who provided any Defendant with financial, business, or tax advice or services since January 1, 2004.

*Provided further,* the Commission and the Permanent Receiver are immediately authorized to issue subpoenas to demand the production of documents from any person or entity relating to the nature, status, extent, location or other relevant information relating to Defendants' assets, income, and financial records.

7

0010

RER-43    2689

## FOREIGN ASSET REPATRIATION

### V.

IT IS FURTHER ORDERED that, to the extent that Defendants have not complied with Section IV of the TRO, each Defendant shall immediately:

A.    Provide the Commission and the Receiver with a full accounting of all funds, documents, and assets outside of the United States that are: (1) titled in the name, individually or jointly, of any Defendant or the spouse of any Defendant; or (2) held by any person or entity for the benefit of any Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Defendant;

B.    Transfer to the territory of the United States and deliver to the Receiver all funds, documents, and assets located in foreign countries that are: (1) titled in the name, individually or jointly, of any Defendant or the spouse of any Defendant; or (2) held by any person or entity, for the benefit of any Defendant; or (3) under any Defendant's direct or indirect control, whether jointly or singly; and

C.    Provide the Commission access to all records of accounts or assets of the Defendants held by financial institutions located outside the territorial United States by signing the Consent to Release of Financial Records attached to the TRO as Attachment C.

### INTERFERENCE WITH REPATRIATION

### VI.

IT IS FURTHER ORDERED that Defendants, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from taking any action, directly or indirectly, which may result

8

0011

in the encumbrance or dissipation of foreign assets, or in the hindrance of the repatriation required by the preceding Paragraph V of this Order, including but not limited to:

    A.    Sending any statement, letter, fax, e-mail or wire transmission, telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time that all assets have been fully repatriated pursuant to Paragraph V of this Order; and

    B.    Notifying any trustee, protector or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a Court Order, until such time that all assets have been fully repatriated pursuant to Paragraph V of this Order.

## RETENTION OF ASSETS AND RECORDS BY FINANCIAL INSTITUTIONS

### VII.

    IT IS FURTHER ORDERED that any financial or brokerage institution, business entity, or person served with a copy of this Order that holds, controls, or maintains custody of any account or asset of any Defendant, or has held, controlled or maintained custody of any such account or asset at any time since the date of entry of this Order, shall:

    A.    Hold and retain within its control and prohibit the withdrawal, removal, assignment, transfer, pledge, encumbrance, disbursement, dissipation, conversion, sale, or other disposal of any such asset except by further order of the Court;

    B.    Deny the Defendants access to any safe deposit box that is:

        1.    titled in any Defendants' name, individually or jointly; or

        2.    otherwise subject to access by any Defendant;

9

0012

C.    To the extent that such information has not already been provided to the Commission, provide the Commission's counsel, within five (5) business days of receiving a copy of this Order, a sworn statement setting forth:

    1.    the identification number of each such account or asset titled in the name, individually or jointly, of a Defendant, or held on behalf of, or for the benefit of a Defendant;

    2.    the balance of each such account, or a description of the nature and value of each such asset as of the close of business on the day on which this Order is served, and, if the account or other asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other asset was remitted; and

    3.    the identification of any safe deposit box that is titled in the name, individually or jointly, of a Defendant, or is otherwise subject to access by a Defendant.

D.    Upon request by the Commission, promptly provide the Commission with copies of all records or other documentation pertaining to each such account or asset, including but not limited to originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs. Any such financial institution, account custodian, or other aforementioned entity may arrange for the Commission to obtain copies of any such records which the Commission seeks.

10

0013

## APPOINTMENT OF PERMANENT RECEIVER

### VIII.

IT IS FURTHER ORDERED that David R. Chase of David R. Chase, P.A. is appointed as Permanent Receiver for the Receivership Defendants. The Receiver shall be the agent of this Court, and solely the agent of this Court, in acting as Receiver under this Order. The Receiver shall be accountable directly to this Court. The Receiver shall comply with all Local Rules and laws governing federal equity receivers.

### RECEIVER'S DUTIES

### IX.

IT IS FURTHER ORDERED that the Receiver is authorized and directed to accomplish the following:

A.    Assume full control of the Receivership Defendants, except as to Receivership Defendants Willoughby Farr and Mary Lou Farr, by removing, as the Receiver deems necessary or advisable, any director, officer, independent contractor, employee, or agent of any of the Receivership Defendants, including any Defendant, from control of, management of, or participation in, the affairs of the Receivership Defendants;

B.    Take exclusive custody, control, and possession of all assets and documents of, or in the possession, custody, or under the control of, the Receivership Defendants, wherever situated. The Receiver shall have full power to divert mail and to sue for, collect, receive, take in possession, hold, and manage all assets and documents of the Receivership Defendants and other persons or entities whose interests are now held by, or are under the direction, possession, custody, or control of, the Receivership Defendants. The Receiver shall assume control over the

11

0014

income and profits therefrom and all sums of money now or hereafter due or owing to the Receivership Defendants. *Provided, however,* that the Receiver shall not attempt to collect any amount from a consumer if the Receiver believes the consumer was a victim of the unfair or deceptive acts or practices alleged in the Complaint in this matter, without prior Court approval. *Notwithstanding the authority of this paragraph,* the Receiver shall not, without further order of this Court: (1) divert mail addressed to Willoughby Farr or Mary Lou Farr at their residences; or (2) take control of any bank account opened by Willoughby Farr or Mary Lou Farr after the entry of the TRO; or (3) take control of those assets of Willoughby Farr or Mary Lou Farr that are both (a) obtained after the time the TRO was entered, and (b) not derived from the actions alleged in the Commission's Complaint;

C.    Take all steps necessary to secure each location from which the Receivership Defendants operate their business. Such steps may include, but are not limited to, any of the following, as the Receiver deems necessary or advisable: (1) serving this Order; (2) completing a written inventory of all receivership assets; (3) obtaining pertinent information from all employees and other agents of the Receivership Defendants, including, but not limited to, the name, home address, social security number, job description, passwords or access codes, method of compensation, and all accrued and unpaid commissions and compensation of each such employee or agent; (4) photographing and video taping any or all portions of the location; (5) securing the location by changing the locks and disconnecting any computer modems or other means of access to the computer or other records maintained at that location; and (6) requiring any persons present on the premises at the time this Order is served to leave the premises, to provide the Receiver with proof of identification, or to demonstrate to the satisfaction of the Receiver that such persons are

12

0015

RER-43    2694

not removing from the premises documents or assets of the Receivership Defendants. Law enforcement personnel, including, but not limited to, police or sheriffs, may assist the Receiver in implementing these provisions in order to keep the peace and maintain security;

D.    Conserve, hold, and manage all assets of the Receivership Defendants, and perform all acts necessary or advisable to preserve the value of those assets in order to prevent any irreparable loss, damage, or injury to consumers or creditors of the Receivership Defendants, including, but not limited to, obtaining an accounting of the assets and preventing unauthorized transfer, withdrawal, or misapplication of assets;

E.    Enter into contracts and purchase insurance as advisable or necessary;

F.    Prevent the inequitable distribution of assets and determine, adjust, and protect the interests of consumers and creditors who have transacted business with the Receivership Defendants;

G.    Manage and administer the business of the Receivership Defendants, except any business entered into by Receivership Defendants Willoughby Farr or Mary Lou Farr after entry of this Order that does not violate the Prohibited Business Activities set forth in Sections I and II of this Order, until further order of this Court by performing all incidental acts that the Receiver deems to be advisable or necessary, which includes retaining, hiring, or dismissing any employees, independent contractors, or agents;

H.    Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

I.    Have the sole authority to hire legal counsel on behalf of any of the Receivership

13

Defendants, except as to Receivership Defendants Willoughby Farr or Mary Lou Farr;

J. Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of or exercising the authority granted by this Order. The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Defendants prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure assets of the Receivership Defendants, such as rental payments;

K. Institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal or foreign courts or arbitration proceedings as the Receiver deems necessary and advisable to preserve or recover the assets of the Receivership Defendants, or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order, including but not limited to, actions challenging fraudulent or voidable transfers;

L. Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted in the past or in the future against the Receiver in his role as Receiver, or against the Receivership Defendants, as the Receiver deems necessary and advisable to preserve the assets of the Receivership Defendants, or as the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

M. Continue to conduct the business, or cease operation of the business, of the Receivership Defendants in such manner, to such extent, and for such duration as the Receiver may in good faith deem to be necessary or appropriate to operate the businesses profitably and lawfully, if at all; *provided that*, the continuation and conduct of the business shall be conditioned upon the Receiver's good faith determination that the businesses can be lawfully operated at a

14

0017

...profit using the assets of the receivership estate;

N.    Immediately issue subpoenas and conduct discovery, including depositions, to obtain documents, records, and information pertaining to the receivership on behalf of the receivership estate;

O.    Open one or more bank accounts as designated depositories for funds of the Receivership Defendants. The Receiver shall deposit all funds of the Receivership Defendants in such a designated account and shall make all payments and disbursements from the receivership estate from such an account. The Receiver shall serve copies of monthly account statements on all parties;

P.    Maintain accurate records of all receipts and expenditures that he makes as Receiver; and

Q.    Cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency.

## COOPERATION WITH THE RECEIVER

## X.

IT IS FURTHER ORDERED that Defendants and all other persons or entities served with a copy of this Order shall fully cooperate with and assist the Receiver. This cooperation and assistance shall include, but not be limited to, providing information to the Receiver that the Receiver deems necessary in order to exercise the authority and discharge the responsibilities of the Receiver under this Order; providing any password required to access any computer, electronic file, or telephonic data in any medium; and advising all persons who owe money to the Receivership Defendants that all debts should be paid directly to the Receiver. Defendants and

15

those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from directly or indirectly:

A.  Transacting any of the business of the Receivership Defendants;

B.  Destroying, secreting, defacing, transferring, or otherwise altering or disposing of any documents of the Receivership Defendants, including, but not limited to, books, records, accounts, writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations, electronically-stored records, or any other papers of any kind or nature;

C.  Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Defendants, or the Receiver;

D.  Excusing debts owed to the Receivership Defendants;

E.  Failing to notify the Receiver of any asset, including accounts, of a Receivership Defendant held in any name other than the name of the Receivership Defendant, or by any person or entity other than the Receivership Defendant, or failing to provide any assistance or information requested by the Receiver in connection with obtaining possession, custody, or control of such assets; and

F.  Doing any act or refraining from any act whatsoever to interfere with the Receiver managing, or taking custody, control, or possession of, the assets or documents subject to this receivership; or to harass or interfere with the Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of the Receivership

16

0019

Defendants; or to refuse to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any order of this Court.

## DELIVERY OF RECEIVERSHIP PROPERTY

## XI.

.IT IS FURTHER ORDERED that:

A.    Immediately upon service of this Order upon them, or within such period as may be permitted by the Receiver, Defendants and any person or entity served with a copy of this Order shall transfer or deliver possession, custody, and control of the following to the Receiver:

1.    All assets of the Receivership Defendants, except for those assets of Willoughby Farr or Mary Lou Farr that are both (a) obtained after the time the TRO was entered, and (b) not derived from the actions alleged in the Commission's Complaint;

2.    All documents of the Receivership Defendants, including, but not limited to, books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), client lists, title documents and other papers;

3.    All assets belonging to members of the public now held by the Receivership Defendants; and

4.    All keys, codes, and passwords necessary to gain or to secure access to any assets or documents of the Receivership Defendants, including, but not limited to, access to their business premises, means of communication,

17

0020

accounts, computer systems, or other property.

B.    In the event any person or entity fails to deliver or transfer any asset or otherwise fails to comply with any provision of this Paragraph, the Receiver may file *ex parte* an Affidavit of Non-Compliance regarding the failure. Upon filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Receiver. The writs shall authorize and direct the United States Marshal or any sheriff or deputy sheriff of any county, or any other federal or state law enforcement officer, to seize the asset, document, or other thing and to deliver it to the Receiver.

## TRANSFER OF FUNDS TO THE RECEIVER

## XII.

IT IS FURTHER ORDERED that, upon service of a copy of this Order, all banks, broker-dealers, savings and loans, escrow agents, title companies, commodity trading companies, precious metals dealers and other financial institutions and depositories of any kind, and all third-party billing agents, local exchange carriers, common carriers, and other telecommunications companies shall cooperate with all reasonable requests of the FTC and the Receiver relating to implementation of this Order, including transferring funds at the Receiver's direction and producing records related to the assets and sales of the Receivership Defendants.

## COMPENSATION OF RECEIVER

## XIII.

IT IS FURTHER ORDERED that the Receiver and all personnel hired by the Receiver, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses

18

0021

RER-43    2700

incurred by them, from the assets now held by, in the possession or control of, or which may be received by, the Receivership Defendants. The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of this Order. The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

## PRODUCTION OF RECORDS

### XIV.

IT IS FURTHER ORDERED that, to the extent that Defendants have not complied with Section XIV of the TRO with respect to producing: (1) documents owned by or in the custody or control of the Defendants concerning Defendants' business practices or finances; or (2) computers owned by or in the custody or control of the Defendants that are being used or have been used in connection with Defendants' business practices or finances, which documents or computers were not located at the Defendants' business premises at 215 Fifth Street, Suite 306, West Palm Beach, Florida 33401 during the Immediate Access that took place on March 1, 2006, each Defendant shall immediately identify and produce to the Receiver such documents and computers for copying and inspection. Any such computers shall immediately be powered down (turned off) in the normal course for the operating systems used on such computers and shall not be used until produced for copying and inspection, along with any codes needed for access.

B.     Defendants and all employees or agents of Defendants shall provide the FTC and the Receiver with any necessary means of access to documents and records, including, without limitation, the locations of Defendants' business premises, keys and combinations to locks.

19

0022

09-22-2006   11:37    FROM-TEV CARDENA            #3055881116          -052   P.025/030   F-132

computer access codes, and storage area access information.

C.    To the extent that Defendants have not complied with Section XIV of the TRO, each Defendant shall produce to the Receiver a list of all agents, employees, officers, servants and those persons in active concert and participation with them, who have been associated or done business with the Receivership Defendants.

## DEFENDANTS' ACCESS TO THEIR BUSINESS PREMISES

### XV.

IT IS FURTHER ORDERED that the Receiver shall allow the Defendants and their representatives reasonable access to the premises of the Receivership Defendants.  The purpose of this access shall be to inspect and copy any and all books, records, accounts, and other property owned by or in the possession of the Receivership Defendants.  The Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access.

## PRESERVATION OF RECORDS

### XVI.

IT IS FURTHER ORDERED that Defendants, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from destroying, erasing, mutilating, concealing, altering, transferring, writing over, or otherwise disposing of, in any manner, directly or indirectly, any documents or records of any kind that relate to the business practices or business or personal finances of Defendants, including but not limited to, computerized files and storage media, contracts, accounting data, correspondence, advertisements, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check

20

0023

registers, bank statements, appointment books, copies of federal, state or local business or

personal income or property tax returns, and other documents or records of any kind that relate to

the business practices or business or personal finances of Defendants.

## RECORD KEEPING/BUSINESS OPERATIONS

## XVII.

IT IS FURTHER ORDERED that Defendants are hereby restrained and enjoined from:

A.    Failing to create and maintain documents that, in reasonable detail, accurately,

fairly, and completely reflect their incomes, disbursements, transactions, and use of money; and

B.    Creating, operating, or exercising any control over any business entity, including

any partnership, limited partnership, joint venture, sole proprietorship or corporation, without first

providing the Commission with a written statement disclosing: (1) the name of the business

entity; (2) the address and telephone number of the business entity; (3) the names of the business

entity's officers, directors, principals, managers and employees; and (4) a detailed description of

the business entity's intended activities.

## IDENTIFICATION OF PROVIDERS AND CUSTOMERS

## XVIII.

IT IS FURTHER ORDERED that, to the extent that Defendants have not complied with

Section XVIII of the TRO, Defendants shall:

A.    Prepare and deliver to counsel for Plaintiff a completed statement, verified under

oath and accurate as of the date of entry of this Order, identifying each long distance service

provider that provided services to consumers in connection with any collect calls that were billed

on behalf of Defendants; and

21

0024

B.    Prepare and deliver to counsel for Plaintiff a completed statement, verified under

oath and accurate as of the date of entry of this Order, detailing the collect calls that were billed on

behalf of Defendants during 2005, including the calling telephone numbers, the recipient

telephone numbers, and the date and time of the calls.

### STAY OF ACTIONS

### XIX.

**IT IS FURTHER ORDERED** that:

A.    Except by leave of this Court, during pendency of the receivership ordered herein,

Defendants, and all customers, principals, investors, creditors, stockholders, lessors, and other

persons seeking to establish or enforce any claim, right, or interest against or on behalf of the

Defendants, and all others acting for or on behalf of such persons, including attorneys, trustees,

agents, sheriffs, constables, marshals, and other officers and their deputies, and their respective

attorneys, servants, agents and employees, be and are hereby stayed from:

    1.    Commencing, prosecuting, continuing, entering, or enforcing any suit or

        proceeding against a Receivership Defendant, except that such actions may

        be filed to toll any applicable statute of limitations;

    2.    Accelerating the due date of any obligation or claimed obligation against a

        Receivership Defendant; filing or enforcing any lien against a Receivership

        Defendant; taking or attempting to take possession, custody, or control of

        any asset of a Receivership Defendant; attempting to foreclose, forfeit,

        alter, or terminate any interest in any asset of a Receivership Defendant,

        whether such acts are part of a judicial proceeding, are acts of self-help, or

22

08-22-2006   11:39    FROM-TEN CARDENAS REBAK         +3055361116        T-452   P.028/030   F-438

otherwise;

3. Executing, issuing, serving, or causing the execution, issuance or service of, any legal process against a Receivership Defendant, including, but not limited to, attachments, garnishments, subpoenas, writs of replevin, writs of execution, or any other form of process whether specified in this Order or not;

4. Causing any Receivership Defendant to be placed in involuntary bankruptcy; or

5. Doing any act or thing whatsoever to interfere with the Receiver managing, or taking custody, control, or possession of, the assets or documents subject to this receivership, or to harass or interfere with the Receiver in any way, or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of the Receivership Defendants.

B.   This paragraph does not stay: (a) the commencement or continuation of a criminal action or proceeding; or (b) any action brought against Willoughby Farr or Mary Lou Farr concerning any claim or action unrelated to Receivership assets.

## DISTRIBUTION OF ORDER BY DEFENDANTS

## XX.

IT IS FURTHER ORDERED that Defendants shall immediately provide a copy of this Order to each affiliate marketer, sub-affiliate marketer, affiliate, billing aggregator, subsidiary, division, sales entity, successor, assign, officer, director, employee, independent contractor, client company, agent, attorney, spouse and representative of Defendants, and shall, within ten (10) days

23

0026

09-22-2006  11:39    FROM-TEN CARDENAS REBAK                    +3055361118              T-652    P.028/030    F-138

from the date of entry of this Order, provide the Commission with a sworn statement that Defendants have complied with this provision of the Order, which statement shall include the names, physical addresses, and e-mail addresses of each such person or entity who received a copy of the Order.

## SERVICE OF ORDER

### XXI.

IT IS FURTHER ORDERED that copies of this Order may be served by any means, including facsimile transmission or email, upon any financial institution or other entity or person that may have possession, custody, or control of any documents of any Defendant, or that may otherwise be subject to any provision of this Order. Service upon any branch or office of any financial institution shall effect service upon the entire financial institution.

## CONSUMER CREDIT REPORTS

### XXII.

IT IS FURTHER ORDERED that, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(1), any consumer reporting agency may furnish a consumer report concerning Defendants to the Commission.

## SERVICE UPON PLAINTIFF

### XXIII.

IT IS FURTHER ORDERED that, with regard to any correspondence or pleadings related to this Order, service on the Commission shall be performed electronically or by overnight mail to the attention of Laura Kim at the Federal Trade Commission, 600 Pennsylvania Avenue, NW, Room H-238, Washington, DC 20580.

24

0027

RER-43    2706

## RETENTION OF JURISDICTION

### XXIV.

IT IS FURTHER ORDERED that this Court shall retain jurisdiction of this matter for all

purposes.

SO ORDERED, this 22 day of September, 2006, at ____ .m.

_KENNETH L. RYSKAMP_
United States District Judge

CC: all parties and
counsel of record

25

0028

# EXHIBIT "6"

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 06-80180-CIV-RYSKAMP/VITUNAC

FEDERAL TRADE COMMISSION,

     Plaintiff,

v.

NATIONWIDE CONNECTIONS, INC., et al.,

     Defendants.

_____/

### OMNIBUS ORDER

THIS CAUSE comes before the Court pursuant to a series of motions:

- The Receiver's Revised Motion for Order to Show Cause Why Integretel Should Not Be Held in Contempt of Court, filed October 16, 2006 [DE 246];

- Integretel's Motion to Modify Prior Injunctive Orders, filed October 30, 2006 [DE 294];

- Integretel's Motion to Stay Contract Claims, filed December 29, 2006 [DE 363]; and

- The Receiver's Motion Requesting BSG Defendants To Transfer Additional Reserves, filed January 12, 2007 [DE 371].

The Court held a hearing on these motions on April 12, 2007. These motions are fully briefed and are ripe for adjudication.

Both BSG and Integretel had agreements in place with Nationwide and Access One/Network One that permitted them to withhold monies that were "owed to" Nationwide and/or Access One/Network One as "reserves," in the event that any users complained about

## EXHIBIT     6

0029

2

charges and requested refunds and/or credits directly from the Aggregators. Shortly after this receivership was initiated, BSG advised the Receiver and the FTC of reserves that it was holding relating to Nationwide as of the commencement of the receivership (slightly over $1 million). BSG turned that money over to the Receiver.

Integretel did not advise either the Receiver or the FTC that it was holding reserves. Rather, its president informed the FTC on March 6, 2006 that "no amounts are currently due and owing" to Access One or Network One. As of August 26, 2006, Integretel was holding $1,186,430.36 in reserves for Access One and $173,918.66 in reserves for Network One. These amounts have increased, and as of June 30, 2007, the reserve amount being held by Integretel (and/or its affiliates) is $1,762,762.56. As of August 6, 2007, the reserve amount being held by BSG (and/or its affiliates) is $930,052.99.

The Receiver notes that the temporary restraining order required any business entity served with a copy thereof to:

> provide to the Commission's counsel, within five (5) business days of receiving a copy of this [TRO], a sworn statement setting forth:
>
> 1.    The identification number of each such account or asset titled in the name, individually or jointly, of a Defendant, or held on behalf of, or for the benefit of a Defendant;
>
> 2.    The balance of each such account, or description of the nature and value of each such asset as of the close of business on the day on which this [TRO] is served...

Exhibit A to the Integretel/Access One Master Services Agreement defines the reserve as follows:

0030

3

> an amount withheld, from the amount otherwise owed to Client
> with respect to Billing Transactions, to protect IGT for credit
> losses or otherwise to cover other reserves or offsets, other than
> Uncollectibles imposed by a Telco.

The Integretel/Network One Master Services Agreement contains an identical definition of the reserves.

Integretel maintains that "the reserves do not take the form of any actual funds that [Integretel] has segregated or otherwise set aside..." and maintains that it keeps the reserves in a pooled account it tracks via an internal accounting entry. Such is a distinction without a difference, since the TRO captures funds "held on behalf of, or for the benefit of, a Defendant."

Integretel also maintains that it was not Access One's or Network One's "agent, partner, joint venturer, trustee, fiduciary, or legal representative," and so was not "in any way acting 'on behalf of' of the two clients." An entity need not be an agent, partner, joint venturer, trustee, fiduciary, or legal representative to possess funds that one is holding "on behalf of" another person or entity, however.

Integretel also maintains that the "reserves have been set to account for, among other things, any liability that might be claimed against [Integretel] for any improper billings by Access One or Network One such as alleged by the FTC in the First Amended Complaint." The Court has reviewed the agreements in question. The agreements between Integretel and each of Access One and Network One allow Integretel either to notify the indemnifying party of the request to be indemnified and turn over the defense of the action to the indemnified party or defend itself and seek reimbursement of its attorneys' fees and costs from the indemnifying party. The agreements did not give it the right to use the reserves to fund the indemnity. Furthermore, the FTC has sued

0031

4

Integretel for its own independent violations of the Federal Trade Commission Act. If the FTC succeeds, Integretel itself will be financially responsible for its actions and will not be able to look to Access One or Network One for indemnification under the operative agreements.

Finally, Integretel argues that "Access One and Network One failed to provide proof of their compliance with contract requirements..." Integretel evidently maintains that since it is of the opinion that Access One and Network One allegedly breached the agreements, it was entitled to keep the reserve monies. The agreements do not, however, contain a liquidated damages provision that would permit retention of those funds under the circumstances, nor do the agreements give it the right to make an independent, unilateral decision about Access One's or Network One's breach of the agreements without court involvement.

Integretel also moves to stay litigation of the aforementioned contract claims pending arbitration thereof, maintaining that the Receiver stands in the shoes of Access One and Network One and may assert only those rights and remedies that those entities themselves could have asserted. In particular, the Receiver is supposedly bound by the arbitration clause in each company's contract. The Receiver's claim is not a claim at law governed by pre-receivership contracts, however, but one governed by this Court's jurisdiction over receivership property based on the TRO and Amended Preliminary Injunction. The Receiver does not claim that the funds must be turned over according to, or by adopting, a contract signed between Integretel and Access One/Network One. The Receiver is seeking to recover the reserve funds pursuant to the Court's in rem jurisdiction over receivership property, as memorialized in the TRO and the Amended Preliminary Injunction. A federal court possesses broad authority to issue various ancillary relief measures in enforcing actions brought by federal agencies. See FTC v.

0032

5

Productive Mktg., Inc., 136 F. Supp. 2d 1096, 1104 (C.D. 2001); SEC v. Wenke, 622 F.2d 1363, 1371 (9th Cir. 1980) ("the Supreme Court has repeatedly emphasized the broad equitable powers of the federal courts to shape equitable remedies to the necessities of particular cases, especially where a federal agency seeks enforcement in the public interest."). A receivership order issued to preserve the assets of the receivership estate is a classic example of a district court's exercise of in rem jurisdiction over receivership property. See Productive Mktg., 136 F. Supp. 2d at 1105; Wenke, 622 F.2d at 1369 (stating that a federal district court's power to issue a stay against all persons concerning all proceedings against the receivership entities "rests as much on its control over the property placed in receivership as on its jurisdiction over the parties to the securities fraud action"). "[R]eceivers are not bound by the contracts of the entity that they are appointed to protect. The receiver becomes bound only when it affirmatively adopts the obligations of the entity that it is protecting." City Bank, NA v. Nyland (CF8) Ltd., 839 F.2d 93, 98 (2d Cir. 1987). The Court declines to stay adjudication of the contract claims.

Integretel argues that the TRO and Amended Preliminary Injunction would be invalid if they enabled the Court to determine Integretel's ownership interest (or lack thereof) in the reserve funds without first requiring the Receiver to institute a new, separate legal proceeding. Issues concerning entitlement to disputed receivership property, in fact, are the types of issues typically determined via summary proceedings in the federal court equity receivership context. See Wenke, 783 F.2d at 837-38 (stating that claims of nonparties to property claimed by receivers can be resolved via summary proceedings, which reduced the time necessary to settle disputes, decrease litigation costs and prevent dissipation of receivership assets, as long as there is notice to the non-party and an opportunity to be heard, thereby satisfying due process).

0033

6

Integretel maintains that the Court deprived it of due process when it issued the TRO and
Amended Preliminary Injunction without previously providing notice and an opportunity to be
heard. A temporary restraining order or injunction is properly issued and binding so long as the
party against whom it is being issued had a chance to defend fully the legitimacy of the eventual
claim. Accordingly, it is irrelevant whether the party had been given a chance to oppose the
order prior to its issuance. See FTC v. Assail, Inc., 410 F.3d 256, 268 (5th Cir. 2005) (finding
that attorney for non-parties to receive fees that resulted from fraud had opportunity to defend
self at hearing to determine whether disputed funds were subject to turnover order and thus had
adequate notice and opportunity to be heard). Here, Integretel has briefed these issues in three
separate briefs, its response, its motion to modify, and its motion to stay. It has, without
question, had an opportunity to be heard on this issue.

Integretel argues that the TRO and Amended Preliminary Injunction are invalid because
the FTC and the Receiver thereby have unbridled discretion to decide what cooperation is
required and from whom, which is allegedly further compounded by the fact that the FTC and
Receiver are interested in maximizing the amount of money, and subsequent recovery, in the
receivership estate. While Integretel has accurately pinpointed the Receiver's and the FTC's
goals, its attacks on the Court's orders fail. That cooperation clauses are standard in federal court
receivership orders goes without saying. In Productive Mktg., when a non-party argued it was
not bound by the cooperation clause, the district court disagreed because the injunction, as a
receivership order, was required to be read reasonably in light of its stated purpose, to account for
and preserve the assets of the receivership estate. 136 F. Supp. 2d at 1109-10. Otherwise stated,
the receiver could not unreasonably use the cooperation clause for whatever purpose he wished.

0034

7

Rather, the only reasonable interpretation of the clause was for it to be used consistently with the objective of the injunction, to require non-parties (and parties) that hold assets of the receivership estate to disclose information to the receiver relating to those assets and, if necessary, turn over such assets to the receiver. See id. at 1110. Cooperation clauses are enforceable, even against non-parties.

Integretel concedes that it was bound by the TRO if it acted in concert or participated with Access One and/or Network One, but Integretel claims that no such allegation has been made (or could be made, for that matter). The FTC has made such allegations in its First Amended Complaint, alleging that Integretel participated and acted in concert with Access One and Network One in the alleged fraud. (See First Amended Complaint, Paragraphs 24, 27, 28, 30, 37.)

Integretel also argues that the TRO is overbroad because it allows the Receiver to demand a turnover of disputed funds. To that end, Integretel posits that in rem jurisdiction only applies to undisputed receivership property and does not apply when funds are disputed and not in the possession of the Court. District courts have in rem jurisdiction over disputed receivership property and therefore can bind non-parties (such as Integretel), through orders to protect and preserve disputed receivership property, and district courts have jurisdiction to enforce orders against non-parties concerning ownership of disputed funds, whether or not such funds are in the non-parties' possession. See Productive Mktg., 136 F. Supp. 2d at 1106 ("if the Court cannot compel [the non-party] to turn over assets in its possession belonging to the receivership estate, the receiver will be unable to provide adequate redress to consumers who have been defrauded by

0035

8

Defendants because [the non-party's] conduct imperiled the Court's ability to render an effective judgment, the Court may properly enjoin it, even though it is not a party to the action.").

Integretel also maintains that the turnover clause is invalid and, in any event, was never triggered, because the Receiver never made a "formal" demand for the reserve funds. The purpose of a federal district court's jurisdiction over receivership property via a preliminary injunction (or similar order) is to preserve the assets resulting from the improper actions of the receivership defendants, whether held by parties or non-parties, to provide redress for the legitimately defrauded investors. See Productive Mktg., 136 F.Supp. 2d at 1105-1106. Thus, it is not reasonable to expect the Receiver to know about the reserves, and thereafter make a "formal" demand for them if it had not been previously informed of their existence.

Integretel, as a party, also argues that the Amended Preliminary Injunction is invalid under Rule 65 because it did not receive notice of its issuance. Integretel also maintains that neither the FTC nor the Receiver has made the requisite showing in their unverified papers to enforce an injunction against it. An injunction is properly issued and binding so long as the party opposing it is given a chance to defend the legitimacy of the claim being made under it. It is of no consequence whether the party has been given a chance to oppose the injunction prior to its issuance. See SEC v. Elfindepan, S. A., 2002 WL 31165146 at*5 (finding that party in the context of contempt motion had been given full opportunity to defend ownership interest in disputed funds; that party did not have opportunity to defend itself prior to issuance of the injunction did not render the injunction invalid).

Integretel believes it has acted properly from "day one" and had no reason to ask for clarification of the subject Orders until the Receiver filed its show cause motion because it

0036

9

believed that its interpretation of the Orders was proper, or at least in good faith. One's state of mind is irrelevant for purposes of unilateral interpretation of court orders, however. See Goya Foods, Inc. v. Wallack Management Co., 290 F.3d 63, 75-76 (1st Cir. 2002) ("When a legitimate question exists as to the scope or effectiveness of the court's order, those who know of the decree, yet act unilaterally, assume the risk of mistaken judgments. Adhering to this principle, the appellants could have asked the district court for clarification...but they eschewed that course....They chose instead to rely on their own judgment as to whether the orders remained in effect. In so doing, the appellants acted at their peril.").

Integretel also seeks to modify the TRO, Preliminary Injunction and Amended Preliminary Injunction. Because the subject Orders are valid for the reasons stated herein, there is no reason to modify them. Furthermore, the requested modifications would unnecessarily increase litigation costs by forcing the Receiver to obtain an extra precondition order by litigating every potential act that constitutes proper cooperation and affect every potential target of such corporation, thereby exponentially increasing the amount of time it would take for the Receiver to obtain receivership property. The proposed modifications would also be unwieldy because they would make pre-receivership contracts that the Receiver does not ratify nevertheless binding on him, and would require separate, plenary proceedings when a summary proceeding can adequately account for determination of these issues.

The Receiver also moves to request that the BSG Defendants transfer additional reserves in the amount of $328,050.83 as of December 8, 2006, and, as noted $930,052.99 as of August 6, 2007. These Defendants previously transferred $952,045.67 in reserves to the Receiver on or about March 24, 2006. The Receiver requests that these Defendants transfer these additional

0037

10

reserves, produce all documents relating to the reserves withheld since March 24, 2006, and to

produce any future reserves that they collect to the Receiver along with any documents relating

thereto.

The BSG Defendants join in Integretel's arguments as to the validity of the TRO and the

Amended Preliminary Injunction. Additionally, the BSG Defendants request modification of the

injunctive orders and request a stay of the underlying contract claims. The Court has already

rejected these arguments. As to the contract claims, the contracts the BSG Defendants attach in

support of their argument to retain the Reserves are incomplete, undated, unsigned and do not

reflect the parties thereto. The Court, based on these incomplete documents, cannot say that the

BSG Defendants are entitled to retain the reserves. It is hereby

ORDERED AND ADJUDGED that the Receiver's Revised Motion for Order to Show

Cause Why Integretel Should Not Be Held in Contempt of Court, filed October 16, 2006 [DE

246], is GRANTED. Integretel shall show cause in writing within 10 days of the date of this

Order why it should not be held in contempt for failure to turn over the reserves. In addition,

Integretel shall provide a sworn statement identifying the amount of reserves as of the issuance of

the TRO. The Court further orders that these funds shall be placed in a segregated Receivership

account. It is further

ORDERED AND ADJUDGED that Integretel's Motion to Modify Prior Injunctive

Orders, filed October 30, 2006 [DE 294], is DENIED. It is further

ORDERED AND ADJUDGED that Integretel's Motion to Stay Contract Claims, filed

December 29, 2006 [DE 363], is DENIED. It is further

0038