11

ORDERED AND ADJUDGED that the Receiver's Motion Requesting BSG Defendants

To Transfer Additional Reserves, filed January 12, 2007 [DE 371], is GRANTED. The BSG

Defendants are ordered to transfer the additional reserves they have withheld since their initial

transfer of reserves to the Receiver on or about March 24, 2006. The BSG Defendants shall also

produce any future reserves they collect so as to avoid future motions to this effect. The BSG

Defendants shall also produce all documents relating to the reserves held since March 24, 2006.

The Court requests that this money be placed in a segregated receivership account.

DONE AND ORDERED at Chambers in West Palm Beach, Florida this 13th day of

September, 2007.

S/Kenneth L. Ryskamp
KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE

0039

RER-43    2719

# EXHIBIT "7"

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 06-80180-CIV-RYSKAMP/VITUNAC.

FEDERAL TRADE COMMISSION,

     Plaintiff,

v.

NATIONWIDE CONNECTIONS, INC., ET AL.,

     Defendants.

_____/

### ORDER STAYING PROCEEDINGS AGAINST DEFENDANT THE BILLING RESOURCE, D/B/A INTEGRETEL

     THIS CAUSE comes before the Court pursuant to the Notice of Bankruptcy, filed September 17 , 2007 [DE 612]. Defendant The Billing Resource, d/b/a Integretel, indicates that it filed a petition for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code in the United States Bankruptcy Court, Northern District of California, San Jose Division, Case No. 07-52890. Accordingly, the instant action against The Billing Resource, d/b/a Integretel, is subject to the automatic stay set forth in 11 U.S.C. § 362. The automatic stay granted by 11 U.S.C. § 362(a) will remain in effect until the bankruptcy case is dismissed or closed, or until such earlier times as set forth in 11 U.S.C. § 362(c), (d), (e) or (f).

     DONE AND ORDERED at Chambers in West Palm Beach, Florida this 20th day of September, 2007.

                    S/Kenneth L. Ryskamp
                    KENNETH L. RYSKAMP
                    UNITED STATES DISTRICT JUDGE

## EXHIBIT    7

0040

RER-43    2721

EXHIBIT "8"

RER-43    2722

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 06-80180-CIV-RYSKAMP/VITUNAC

FEDERAL TRADE COMMISSION,

     Plaintiff,

v.

NATIONWIDE CONNECTIONS, INC.,
et al.

     Defendants.

                           /

### ORDER GRANTING MOTION FOR CLARIFICATION AS TO SCOPE OF STAY

THIS CAUSE comes before the Court pursuant to the FTC's Emergency Motion for

Clarification That the Automatic Stay Does Not Apply to the FTC's Law Enforcement Action

and the Ongoing Contempt Proceeding, filed September 21, 2007 [DE 618].

Integretel became a Defendant in this action on September 21, 2006. Unbeknownst to the

Court, Integretel was holding more than $1.35 million in reserve funds that belonged to two of

the Nationwide defendants, Access One and Network One, in spite of several provisions of the

Temporary Restraining Order in Preliminary Injunction requiring it to turn said funds over to the

Receiver. When the Receiver learned of the existence of these funds, it filed its Motion for an

Order to Show Cause Why Integretel Should Not Be Held in Contempt. On Friday, September

14, 2007, this Court issued its Omnibus Order in which it ruled that the reserve funds are the

property of the receivership estate and ordered Integretel to pay the current reserve funds,

amounting to $1,762,762.56, immediately to the Receiver. The Court also ordered Integretel to

show cause in writing within 10 days why it should not be held in contempt for failing to turn

### EXHIBIT     8

0041

2

over the reserve funds. Two days later, on September 16, 2007, Integretel filed a petition for

Chapter 11 bankruptcy in the United States Bankruptcy Court, Northern District of California,

San Jose Division, Case No. 07-52890. Integretel maintains in its bankruptcy filings that it

"currently owes nothing to Receiver." Integretel further maintains that "it will ultimately

prevail... with respect to amounts which are the subject and required to be paid under the

[Omnibus Order]." On September 20, 2007 [DE 617], the Court stayed this proceeding against

Integretel pursuant to 11 U.S.C. § 362(a). The FTC requests that this Court clarify that the

automatic bankruptcy stay does not apply to the prosecution of its enforcement action or the

ongoing contempt proceeding.

 The FTC's prosecution of this action to protect consumers from unfair and deceptive

trade practices is excepted from the automatic stay pursuant to 11 U.S.C. § 362(b)(4), the

governmental regulatory exception to the stay.  The statute provides as follows:

> (b) the filing of a petition under section 30 1,302, or 303 of this
> title... does not operate as a stay-...
>
> (4) under (1), (2), (3), or (6) of subsection (a) of this section, of the
> commencement or continuation of an action or proceeding by a
> governmental unit...to enforce such governmental unit's...police
> power and regulatory power, including the enforcement of a
> judgment other than a money judgment....

Thus, to the extent provided in the aforementioned section, governmental regulatory or police

actions are excepted from the automatic stay of:

> (1)   the commencement or continuation... of a judicial,
> administrative, or other action or proceeding against the
> debtor...;

0042

3

    (2)    the enforcement, against the debtor or against property of
the estate, of a judgment obtained before the
commencement of the [bankruptcy] case...;

    (3)    any act to obtain possession of property of the estate or of
property from the estate or to exercise control over property
of the estate;... [and]

    (6)    any act to collect, assess, or recover a claim against the
debtor that arose before the commencement of the
[bankruptcy] case....

11 U.S.C. § 362(a). The legislative history specifically states that this exception applies to suits

by the government "to prevent or stop violation of fraud, environmental protection, consumer

protection, safety, or similar regulatory laws." H.R. Rep. No. 989, 95th Cong., 2d Sess. 52,

*reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 5838.

    Various courts have recognized that actions brought by the FTC pursuant to 15 U.S.C. §

53(b), Section 13(b) of the FTC Act, are not subject to the automatic stay. See In re First

Alliance Mortgage Co., 264 B.R. 634, 647-51 (C.D. Cal. 2001) (reversing the Bankruptcy Court

in holding that FTC's action to enforce consumer protection unfair lending loss falls within the

11 U.S.C. § 362(b)(4) exemption from the stay); FTC v. American Standard Credit Systems, 874

F. Supp. 1080, 1083 (C.D. Cal. 1994).

    The FTC also seeks monetary relief, including disgorgement, restitution and consumer

redress. The dual purposes of determining unlawful behavior by making such behavior more

expensive and holding violating parties accountable bring this action squarely within the police

and regulatory powers exemption. See SEC v. Brennan, 230 F.3d 65, 72 (2d Cir. 2000) ("When

the government seeks to impose financial liability on a party, it is plainly acting in its police or

regulatory capacity..."). Accordingly, the exemption permits continuation of this action for

0043

4

injunctive relief against Integretel and the entry of a money judgment against same.

Nor is the contempt proceeding stayed. First, the automatic stay applies only to protect property of the bankruptcy estate or property of the debtor. See 11 U.S.C. § 362(a)(2). The Court has already ruled that the reserve funds are neither the property of the "bankruptcy estate" nor Integretel. Second, the 11 U.S.C. § 362(b)(4) exception also applies to civil contempt proceedings brought by a governmental unit in the exercise of its police or regulatory powers. See SEC v. Bilzerian, 131 F. Supp. 2d 10, 14 (D.D.C. 2001) (civil contempt proceeding falls within the exception; incarceration of debtor subsequent to failure to provide financial information as required by purgation provision in prior disgorgement order). Finally, the bankruptcy filing does not deprive this Court of its inherent power to enforce the integrity of its orders. "[C]ontempt orders to uphold the dignity of the court are excepted from the automatic stay." NRLB v. Sawulski, 158 B.R. 971, 975 (E.D. Mich. 1993). Accordingly, it is hereby

ORDERED AND ADJUDGED that the motion is GRANTED. The commencement of Integretel's bankruptcy case does not stay either the pending contempt proceeding against Integretel, including the turnover order, or the FTC's prosecution of this consumer protection action against Integretel. The September 20, 2007 Order staying proceedings against Integretel is VACATED.

DONE AND ORDERED at Chambers in West Palm Beach, Florida, this 21st day of September, 2007.

S/Kenneth L. Ryskamp
KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE

0044

EXHIBIT "9"



Entered on Docket
October 03, 2007
GLORIA L. FRANKLIN, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1  SHEPPARD, MULLIN, RICHTER &
   HAMPTON LLP
2    A Limited Liability Partnership
     Including Professional Corporations
3  MICHAEL H. AHRENS,
   Cal. Bar No. 44766
4  STEVEN B. SACKS, Cal. Bar No.
   98875
5  JEFFREY K. REHFELD,
   Cal. Bar No. 188128
6  ORI KATZ, Cal. Bar No. 209561
   Four Embarcadero Center, 17th Floor
7  San Francisco, California 94111-4106     The following constitutes the
   Telephone:  415-434-9100              Order of the Court. Signed  10/21  2007
8  Facsimile:  415-434-3947

9

10  Proposed Attorneys for The Billing          _____
    Resource,                                   HON. ARTHUR S. WEISSBRODT
11  dba Integretel                              United States Bankruptcy Judge

12              UNITED STATES BANKRUPTCY COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14                     SAN JOSE DIVISION

15

16  In re                                Case No. 07-52890

17  The Billing Resource, dba Integretel,  Chapter 11

18              Debtor.                   ORDER APPROVING STIPULATION
                                          BETWEEN DEBTOR AND DAVID R.
19  Tax ID: 33-0289863                    CHASE AS RECEIVER REGARDING
                                          PLACEMENT OF FUNDS INTO A
20                                        SEGREGATED, BLOCKED BANK
                                          ACCOUNT AND STAY OF CERTAIN
21                                        LITIGATION

22                                        Date:     September 26, 2007
23                                        Time:     2:15 p.m.
                                          Place:    United States Bankruptcy Court
24                                                  280 South First Street
                                                    San Jose, California
25                                        Judge:    Hon. Arthur S. Weissbrodt
                                          Courtroom: 3020
26

27

28

W02-WEST:FJR\400442970.2                              ORDER.

OCT 1 2007

EXHIBIT   9                                            0045

RER-43    2728

1        A hearing (the "Hearing") was held in the above-captioned bankruptcy case (the

2    "Bankruptcy Case") at the above-referenced date and time before the undersigned United States

3    Bankruptcy Judge on the motion to use cash collateral by The Billing Resource, dba Integretel, a

4    California corporation (the "Debtor"). David R. Chase as court-appointed receiver (the

5    "Receiver") for Nationwide, Access One, Network One, and their affiliates, had filed oppositions

6    to the Debtor's cash collateral motion. Appearances were made as noted in the record at the

7    Hearing. At the Hearing, the Debtor and the Receiver informed the Court that they had reached a

8    stipulation which resolves their disputes on a temporary basis. Thereafter, the parties filed in this

9    Bankruptcy Case their "Stipulation Between Debtor And David R. Chase As Receiver Regarding

10   Placement Of Funds Into A Segregated, Blocked Bank Account And Stay Of Certain Litigation

11   Proceedings" (the "Stipulation").

12        The Court having considered the Stipulation and the parties arguments at the Hearing, and

13   good cause appearing for granting the relief requested in the Stipulation,

14        **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that:

15        1.    The "Stipulation Between Debtor And David R. Chase As Receiver Regarding

16   Placement Of Funds Into A Segregated, Blocked Bank Account And Stay Of Certain Litigation

17   Proceedings" (the "Stipulation") is approved.

18        2.    This Order is valid immediately and is fully effective upon its entry.

19        3.    The Debtor shall as soon as practicable deposit or transfer the sum of

20   $1,762,762.56 (the "Disputed Funds") into a segregated, blocked, debtor in possession bank

21   account of the Debtor in the name of the Debtor as debtor in possession (the "Blocked Account").

22   Neither the Debtor nor any party shall be authorized to remove any funds from the Blocked

23   Account without a prior, written order of the Bankruptcy Court authorizing the removal of any

24   such funds. No advantage or prejudice shall arise in favor of any person, including the Debtor, the

25   Receiver, or any other party by the Debtor's deposit or transfer of the Disputed Funds into the

26   Blocked Account, including without limitation that no implication as to ownership, possession,

27   liens or other claims of right shall arise in any person's favor with respect to the Disputed Funds

28   by the Debtor's placement of the Disputed Funds into the Blocked Account. All parties reserve all

-1-

W02-WEST:FJRM\004442970.2                                                      ORDER



1    of their rights, claims and defenses with respect to the Disputed Funds, and nothing in the

2    Stipulation or this Order shall in any way affect the merits of such parties' rights, claims and

3    defenses. The terms of the "Order Approving Emergency Motion For Order Authorizing Use Of

4    Existing Cash Management System And Bank Accounts" (the "Cash Management Order") and the

5    "Order Approving Interim Use Of Cash Collateral And Granting Replacement Liens And

6    Approving First Amended Stipulation With PaymentOne Corporation Regarding Use Of Cash

7    Collateral And Adequate Protection On An Interim Basis" (the "Interim Cash Collateral Order")

8    shall be deemed amended and/or revised to the limited extent necessary to effectuate the Debtor's

9    deposit or transfer of the Disputed Funds into the Blocked Account.

10        4.    All parties reserve all of their rights to bring a motion before the Bankruptcy Court

11   seeking to terminate or modify the Stipulation or this Order as of October 15, 2007 or thereafter.

12

13

14                              ** END OF ORDER **

15

16

17

18

19

20

21

22

23

24

25

26

27

28

W02-WEST:FJR\400442970.2                                    -2-                                          ORDER

0047

RER-43    2730

# EXHIBIT "10"

# TIGHE PATTON ARMSTRONG TEASDALE, PLLC
### ATTORNEYS AT LAW

1747 PENNSYLVANIA AVENUE, N.W.
SUITE 300
WASHINGTON, DC 20006-4604

TELEPHONE (202) 454-2800
FACSIMILE (202) 454-2805
WWW.TIGHEPATTON.COM

NEAL GOLDFARB
WRITER'S DIRECT DIAL: (202) 454-2826
EMAIL: NGOLDFARB@TIGHEPATTON.COM

October 16, 2007

**By Hand**
Thomas K. Kahn, Clerk
U.S. Court of Appeals for the 11th Circuit
56 Forsyth St. N.W.
Atlanta, Georgia 30303

Re: *Federal Trade Commission v. Nationwide Connections, Inc.*, No. 07-14531-E
    *Appellant's Motion for Stay Pending Appeal*

Dear Mr. Kahn:

I represent the appellant in this case, The Billing Resource dba Integretel ("Integretel"), which filed a time-sensitive motion last week seeking a stay pending appeal. Integretel asked in the motion that the Court enter an immediate interim stay pending full consideration of the motion. I understand from a conversation with one of the deputy clerks responsible for processing this case (who I had called with a scheduling issue) that the Court is not going to rule on the stay motion, on the grounds that the Court is thought to lack jurisdiction over the appeal. I am writing to explain why the Court does, indeed, have jurisdiction, focusing in particular on issues relevant to Integretel's stay motion. I request that this letter be provided to the motions panel or judge considering that motion. Three copies of this letter are provided for that purpose.

As is explained below, the Court's jurisdiction is not defeated by the fact that other defendants have filed motion for reconsideration regarding a determination that relates solely to that defendant and that is not at issue in this appeal. That motion cannot possibly have any effect on the rulings that Integretel is challenging here. This appeal concerns a group of related rulings included in an "Omnibus Order" entered on September 14 and a ruling made on September 21. The other defendants' motion does not seek reconsideration of the district court's September 21 ruling at all. Nor does the motion seek reconsideration of any of the September 14 rulings that pertain to Integretel. It deals only with an aspect of the September 14 rulings that pertain to the other defendants.

Moreover, *the Court can and should grant at least an interim stay before definitively deciding the jurisdictional issue.* The Court has jurisdiction to determine its own jurisdiction, and it may enter any orders that may be necessary in order to preserve the status quo while the Court

0048

**EXHIBIT 10**

# TIGHE PATTON ARMSTRONG TEASDALE, PLLC

Thomas A. Kahn, Clerk
October 16, 2007
Page 2

conclusively decides whether it has jurisdiction. Such an interim stay is appropriate here because without a stay, the Court's ability to grant effective relief will be impaired.

**Background.** This appeal arises from receivership proceedings ancillary to a suit brought by the Federal Trade Commission. Specifically, this is an appeal from two orders entered by the district court: the "Omnibus Order" entered on September 14, 2007 (Exhibit 1 hereto) and an order entered on September 21, 2007 (Exhibit 2). In the Omnibus Order, the district court ruled that certain disputed funds held by Integretel were property of the receivership estate and ordered Integretel to pay them to the receiver. The September 21 order, which was entered after Integretel filed for bankruptcy protection as a result of the Omnibus Order, vacated a bankruptcy stay order that the district court had entered the day before (Exhibit 3) and held that the automatic stay in bankruptcy did not apply. We will refer to the September 21 order as "the Vacatur Order."

In the Omnibus Order, the district court addressed a number of separate motions. The order requiring Integretel to pay the disputed funds to the receiver was entered upon the receiver's motion for an order requiring Integretel to show cause why it should not be held in contempt ("the Show-Cause Motion"; D. Ct. DE 246). The court also granted an entirely separate motion by the receiver seeking to compel several other defendants ("the BSG Defendants") to make a separate payment ("the Receiver's BSG Motion"; D. Ct. DE 371). The Receiver's BSG Motion was filed almost three months after Show-Cause Motion.

On September 28, after Integretel noticed this appeal, the BSG Defendants moved in the district court for reconsideration of that aspect of the Omnibus Order that granted the Receiver's BSG Motion. (Exhibit 4.) The BSG Defendants' motion did not in any way challenge the Vacatur Order. Nor did it challenge any aspect of the Omnibus Order relating to the Receiver's claims against Integretel. Rather, the motion dealt solely with two issues applicable only to the BSG Defendants: whether the BSG Defendants had offered sufficient evidence of the terms of their contracts (contracts to which Integretel is not a party), and whether differences between the language of Integretel's contracts and the language of the BSG Defendants' contracts were sufficient to require the court to reach a different result as to the BSG Defendants than it had reached as to Integretel.

Those issues are not involved in this appeal. Integretel has neither the desire nor the right to challenge the district court's ruling with respect to the BSG Defendants. In order to make that point crystal clear, Integretel is filing an amended notice of appeal that expressly excludes that ruling from this appeal. (Exhibit 5.)

Integretel filed its pending stay motion on October 11, 2007. That motion sought a stay of the Vacatur Order, the effect of which, if granted, would be to reinstate the district court's prior bankruptcy stay order. Integretel has not sought a separate stay of any aspect of

0049

# TIGHE PATTON ARMSTRONG TEASDALE, PLLC

Thomas A. Kahn, Clerk
October 16, 2007
Page 3

the Omnibus Order, because a stay of the Vacatur Order would provide Integretel the functional equivalent of a stay of the Omnibus Order.[1]

**Discussion.** As we understand it, the decision not to rule on Integretel's stay motion at this point was based on the view that this Court lacks jurisdiction bdcause the BSG Defendants' motion for reconsideration in the district court has deprived the orders on appeal of finality. The Court has also issued a number of jurisdictional questions, the response to which is due later this week, but those questions do not address the issue of the BSG Defendants' motion for reconsideration. This letter is not intended to substitute for our full response to the Court's questions. Rather, it addresses only those issues that are directly relevant to Integretel's motion for a stay pending appeal.

As discussed below, the Court has jurisdiction over the appeal from the Vacatur Order, which is the order at issue in Integretel's motion for a stay pending appeal. However, the Court need not finally decide the jurisdictional question at this point, because it can and should rule on the stay motion before it definitively decides the jurisdictional issue.

*The BSG Defendants' motion for reconsideration does not defeat this Court's jurisdiction over Integretel's appeal from the Vacatur Order.* The BSG Defendants' motion for reconsideration is directed solely at the portion of the Omnibus Order that granted the receiver's motion to require the BSG Defendants to turn over certain disputed funds to the receiver. It does not seek reconsideration of any ruling by the district court that related to Integretel, and in particular it does not even arguably seek reconsideration of the Vacatur Order, which is the target of Integretel's stay motion. If the ruling as to BSG had been stated in a separate order, rather than included in the Omnibus Order, it surely would not be thought to have rendered the rulings as to Integretel nonfinal. That conclusion should not change simply because of the fortuitous fact that the order as to BSG was one of several separate rulings that was combined into a single Omnibus Order.

For these reasons, we submit that the motion for reconsideration does not affect the Court's jurisdiction over this appeal at all, but even if it is thought to have rendered those portions of the Omnibus Order dealing with Integretel unappealable, it had no such effect on

---

1.  Integretel asked for a ruling on its request for an interim stay by Wednesday, October 17, because that is when an agreed temporary stay will expire. As Integretel stated in its motion, Integretel sought an agreement to extend that temporary stay, so that the Court would have more time to act on the stay motion, but was not able to obtain such an agreement. After filing its motion for a stay, Integretel asked the Receiver and the FTC whether they would consent to an interim stay pending the Court's consideration of the stay motion. But that request was refused. When the shoe has been on the other foot, and the party seeking a stay has been the FTC, the Commission has contended that the refusal to grant such an interim stay would "not [be] consistent with the fair, effective administration of justice[.]" Mem. of Pts. & Auths. in Support of Pltff's Mtn. for Inj. Pending Appeal at 6, *FTC v Whole Foods Market, Inc.*, No. 07-cv-01021-PLF (D.D.C. filed Aug. 17, 2007) (available at <http://www.ftc.gov/os/caselist/0710114/0710114 injpendpub.pdf>).

0050

RER-43      2734

# TIGHE PATTON ARMSTRONG TEASDALE, PLLC

Thomas A. Kahn, Clerk
October 16, 2007
Page 4

the Vacatur Order, which is appealable independently of Omnibus Order. (The basis for the Court's jurisdiction is discussed in the Appendix to this letter.)

Both the FTC and the receiver have recognized in their oppositions to Integretel's stay motion that the Vacatur Order is final and appealable, and the receiver has recognized in addition that the portions of the Omnibus Order that relate to Integretel are similarly final and appealable. (FTC Response to Stay Mtn. at 8-10; Receiver's Response to Stay Mtn. at 10 & n.4.) While we recognize that the Court must make its own determination whether it has jurisdiction, these statements by the FTC and the receiver support the conclusion that the BSG Defendants' motion for reconsideration cannot possibly result in any modification of the district court's rulings with respect to Integretel.

*The court can and should grant at least an interim stay to preserve the status quo while it considers the jurisdictional issue more fully.* Although we think it is clear that the Court has jurisdiction, we recognize that the Court is unlikely to conclusively decide the jurisdictional issues before the current temporary agreed stay expires on October 17— the day after this letter is submitted. However, the Court need not reach a conclusive decision in order to grant an interim stay preserving the status quo while the Court decides whether it has jurisdiction. The Court has jurisdiction to determine its own jurisdiction, and as an incident of that power, the Court may grant stays and injunctions in order to preserve the status quo while it considers the jurisdictional issues. *United States v United Mine Workers*, 330 U.S. 258, 292-93 (1947); *Ford v Haley*, 179 F.3d 1342, 1345-46 (11th Cir. 1999), *stay vacated after decision on the merits*, 195 F.3d 603 (11th Cir. 1999); *United States Catholic Conference v Baker*, 824 F.2d 156, 162-63 (2d Cir. 1987).

The Court should use that power in this case. The status quo is that enforcement of the Omnibus Order is stayed and that Integretel still holds the disputed funds. If this Court does not grant a stay, Integretel will (absent action by the bankruptcy court) immediately and irretrievably lose the protection of the automatic stay in bankruptcy. That stay is "'one of the fundamental debtor protections provided by the bankruptcy laws'" because it "'gives the debtor a breathing spell from his creditors.'" *Jove Engineering v IRS*, 92 F.3d 1539, 1550 (11th Cir. 1996) (quoting from the legislative history). This Court has noted that when a party has "a right to be free from the burdens of litigation" (a right granted to Integretel by the automatic stay under the Bankruptcy Code), "an erroneous denial cannot be redressed through review of the final judgment." *McMahon v Presidential Airways, Inc*, No. 06-153093, 2007 WL 2891086 at *4 (11th Cir. Oct. 5, 2007). Indeed, this Court has held in a different context that when a nonfrivolous appeal is taken from the denial of a statutorily required stay of litigation, proceedings in the district court should be stayed. *Blinco v Green Tree Servicing, LLC*, 366 F.3d 1249, 12251-52 (11th Cir. 2004).

Conclusion. For the reasons set out above, we respectfully submit that the Court has jurisdiction with respect to this appeal. Furthermore, the Court has the power to grant an interim stay to preserve the status quo while it considers the jurisdictional issues more fully, and it should exercise that power here.

0051

RER-43      2735

# TIGHE PATTON ARMSTRONG TEASDALE, PLLC

Thomas A. Kahn, Clerk
October 16, 2007
Page 5

Respectfully yours,

*Neal Goldfarb* with *express* by *CSE*
*permission*

Neal Goldfarb (DC Bar No. 337881)
*Counsel for Appellant*

Enclosures
cc (with attachments):

Jeffrey C. Schneider, Esq. (by email and by hand)
Patrick Rengstl, Esq. (by email and by hand)
Marilyn Kerst, Esq. (by email and by hand)
John F. Daly, Esq. (by email and by hand)
John Andrew Singer, Esq. (by email and by hand)
Laura M. Kim, Esq. (by email and by hand)
Collot Guerard, Esq. (by email and by hand)
Richard McKewen, Esq. (by email and by hand)
Robert Schoshinksi, Esq. (by email and by hand)
Michael Garrett Austin, Esq. (by email and first-class mail)
Steven E. Siff, Esq. (by email and first-class mail)
Andrew G. Berg, Esq. (by email and first-class mail)
Kevin Dinan, Esq. (by email and first-class mail)
Carolyn Tapie, Esq. (by email and first-class mail)
John-David Thomas, Esq. (by email and first-class mail)
Derick J. Rodgers, Esq. (by email and first-class mail)
Mark Douglas Johnson, Esq. (by email and first-class mail)
Rosanne Brady, Esq. (by email and first-class mail)
Peter N. Macaluso, Esq. (by email and first-class mail)
Mary Lou Farr (by email and first-class mail)
Gary M. Dunkel, Esq. (by email and first-class mail)
Michael Woodbury, Esq. (by email and first-class mail)
Henry W. Johnson, Esq. (by email and first-class mail)
John W. Chapman, Jr., Esq. (by email and first-class mail)
Robert M. Weinberger, Esq. (by email and first-class mail)
Thomas G. Long, Esq. (by email and first-class mail)
Robert Voss Fitzsimmons, Esq. (by email and first-class mail)
Chad A. Dean, Esq. (by email and first-class mail)
Bruce Eric Bloch, Esq. (by email and first-class mail)
Theodore J. Leopold, Esq. (by email and first-class mail)
Michael David McDonough, Esq. (by hand and by first-class mail)
Jessy Mendoza (by hand and by first-class mail)
Willoughby Farr, Inmate No. 653974 (by first-class mail)

0052

EXHIBIT "11"

10/17/2007 13:30 FAX 404 335 5609        CI Section USCA ATLANTA        ☒002

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

```
┌─────────────────────────────┐
│              FILED          │
│    U.S. COURT OF APPEALS    │
│       ELEVENTH CIRCUIT      │
│                             │
│        OCT 1 7 2007         │
│                             │
│       THOMAS K. KAHN        │
│           CLERK             │
└─────────────────────────────┘
```

No. 07-14531-E

FEDERAL TRADE COMMISSION,                          Plaintiff-Appellee,

DAVID R. CHASE,                                    Receiver-Appellee,

versus

THE BILLING RESOURCE,
d.b.a. Integretel,                                 Defendant-Appellant.

On Appeal from the United States District Court for the
Southern District of Florida

ORDER:

Appellant's motion for stay or injunction pending appeal is

TEMPORARILY GRANTED pending further order of the Court.

UNITED STATES CIRCUIT JUDGE

EXHIBIT   11                                        0053

**RER - 44**

1          UNITED STATES BANKRUPTCY COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3              (SAN JOSE DIVISION)

4

5   In re:

6   THE BILLING RESOURCE dba          Case No. 07-52890-ASW
    INTEGRETAL, a California
7   corporation,                      Chapter 11

8                                     San Jose, California
                                      October 15, 2007
9              Debtor.                2:11 p.m.

10  _____/

11

12              TRANSCRIPT OF PROCEEDINGS
       a) FINAL MEETING RE EMERGENCY MOTION FOR USE OF
13         CASH COLLATERAL AND GRANTING REPLACEMENT
                    LIENS BY DEBTOR
14   b) SUPPLEMENTAL OPPOSITION BY FEDERAL TRADE COMMISSION
      c) SECOND SUPPLEMENTAL OPPOSITION BY DAVID R. CHASE,
15    FEDERAL RECEIVER OF ACCESS ONE COMMUNICATIONS, INC.
                AND NETWORK ONE SERVICES, INC.
16         d) OPPOSITION TO SUPPLEMENTAL MEMORANDUM
                    BY THERMO CREDIT, LLC
17           e) SECOND SUPPLEMENTAL OBJECTION BY
                 PUBLIC COMMUNICATIONS SERVICES
18       f) OBJECTION BY UNITED STATES TRUSTEE
            g) RENEWED OPPOSITION BY POL, INC.
19          h) OBJECTION BY PERSONAL VOICE, INC.
     i) REPLY IN SUPPORT OF MOTION BY PAYMENTONE CORP.

20

21      BEFORE THE HONORABLE ARTHUR WEISSBRODT
             UNITED STATES BANKRUPTCY JUDGE

22

23

24

25

2

```
 1  APPEARANCES:

 2

 3  For the Debtor:          SHEPPARD, MULLIN, RICHTER and
                             HAMPTON
 4                           BY: MICHAEL H. AHRENS, ESQ.
                                       -and-
 5
                                  STEVEN SACKS, ESQ.
 6                           Four Embarcadero Center, 17th Floor
                             San Francisco, California 94111
 7

 8  For the Federal          DANNING, GILL, DIAMOND &
    Receiver:                KOLLITZ, LLP
 9                           BY: WALTER K. OETZELL, ESQ.
                             2029 Century Park East, 3rd Floor
10                           Los Angeles, California 90067

11

12  For the U.S. Trustee:    OFFICE OF THE U.S. TRUSTEE
                             BY: JOHN S. WESOLOWSKI, ESQ.
13                           280 South First Street, #268
                             San Jose, California 95113
14

15

16  For PaymentOne:          O'MELVENY & MYERS, LLP
                             BY: STEPHEN H. WARREN, ESQ.
17                                     -and-
                                  VICTORIA A. NEWMARK, ESQ.
18                           400 South Hope Street
                             Los Angeles, California 90071
19

20  For Thermo Credit:       CLARK & TREVITHICK
                             BY: DELORES CORDELL, ESQ.
21
                                  -and-
22
                             TAFT, STETTINIUS & HOLLISTER
23                           BY: W. TIMOTHY MILLER, ESQ.

24                           (APPEARING TELEPHONICALLY)

25
```

```
 1   APPEARANCES (CONTINUED):

 2

 3   For POL, Inc.              DIEMER, WHITMAN and CARDOSI
                                BY: KATHRYN S. DIEMER, ESQ.
 4                              75 East Santa Clara Street
                                San Jose, California 95113
 5

 6
     For the Committee:         PACHULSKI, STANG, ZIEHL, JONES
 7                              BY: JOHN FIERO, ESQ.
                                150 California Street, 15ᵗʰ Floor
 8                              San Francisco, California 94111

 9

10   For Personal Voice:        THOMAS LITTLE, ESQ.

11

12   For BSG Clearing           KING & SPALDING
     Solutions:                 BY: FELTON E. PARRISH, ESQ.
13                                        -and-
                                   JAMES PARDO, JR., ESQ.
14
                                (APPEARING TELEPHONICALLY)
15

16
     For United On Line:        BUCHALTER NEMER, et al.
17                              BY: JEFF GARFINKLE, ESQ.

18                              (APPEARING TELEPHONICALLY)

19
     For PCS:                   LINER, YANKELEVITZ, SUNSHINE
20                              BY: LESLIE A. COHEN, ESQ.
                                1100 Glendon Ave., 14ᵗʰ Floor
21                              Los Angeles, California 90024

22                              (APPEARING TELEPHONICALLY)

23
     For the Federal            TEW CARDENAS, LLP
24   Receiver:                  BY: JEFFREY SCHNEIDER, ESQ.

25                              (APPEARING TELEPHONICALLY)
```

4

```
 1  APPEARANCES (CONTINUED):

 2
    For the Federal Trade        MICHAEL P. MORA, ESQ.
 3  Commission:                          -and-
                                 COLLET GUERARD, ESQ.
 4
                                 (APPEARING TELEPHONICALLY)
 5

 6  For Network                  DANIEL H. COLEMAN, ESQ.
    Telephone Services:          21135 Erwin Street
 7                               Woodland Hills, California 91367

 8

 9  Court Recorder:              ERIN COYLE
                                 UNITED STATES BANKRUPTCY COURT
10                               280 South First Street
                                 San Jose, California 95113
11

12
    Transcription Service:       Jo McCall
13                               Electronic Court
                                 Recording/Transcribing
14                               2868 E. Clifton Court
                                 Gilbert, Arizona 85297
15                               Telephone: (480-361-3790)

16

17

18

19

20

21

22

23

24

25
```

5

1                    P R O C E E D I N G S

2    October 15, 2007                        2:11 p.m.

3                         ---oOo—

4              THE CLERK: Please rise.

5              THE COURT: Thank you ladies and gentlemen.

6    Please be seated.

7              THE COURT: This is the case of <u>Billing Resource</u>.

8    I'll take appearances of counsel in the courtroom.

9              MR. AHRENS: Good afternoon, Your Honor, Michael

10   Ahrens and Steven Sacks of Sheppard, Mullin, Richter and

11   Hampton for the Debtor.

12             THE COURT: Good afternoon.

13             MR. OETZELL: Good afternoon, Your Honor, Walter

14   Oetzell of Danning, Gill, Diamond & Kollitz on behalf of

15   the Federal Receiver.

16             THE COURT: Good afternoon.

17             MR. WESOLOWSKI: Good afternoon, Your Honor, John

18   Wesolowski for the U.S. Trustee

19             THE COURT: Good afternoon.

20             MR. WARREN: Good afternoon, Your Honor, Stephen

21   Warren of O'Melveny & Myers on behalf of PaymentOne.  I'm

22   also here in the courtroom with Victoria Newmark of our

23   office.

24             THE COURT: Very good.  Welcome to both of you.

25             MS. CORDELL: Good afternoon, Your Honor, Delores

RER-44                                                    2743

1  Cordell of Clark & Trevithick on behalf of Thermo Credit.

2           THE COURT: Good afternoon.

3           MS. DIEMER: Good afternoon, Your Honor, Kathryn

4  Diemer on behalf of secured creditor, POL.

5           THE COURT: Good afternoon.

6           MR. FIERO: Good afternoon, Your Honor, John Fiero

7  of the Pachulski, Stang law firm for the Committee.

8           THE COURT: Good afternoon.

9           MR. LITTLE: Good afternoon, Your Honor, Thomas

10 Little representing Personal Voice, Inc.

11          THE COURT: Thank you.

12          THE COURT: Say your last name again?

13          MR. LITTLE: Little.

14          THE COURT: Thank you.

15          MR. LITTLE: Thank you.

16          THE COURT: Wait a second.  We have appearances on

17 the phone.  Mr. Parrish, may I have your appearance.

18          MR. PARRISH:  Yes, Your Honor, Felton Parish with

19 King & Spalding on behalf of BSG Clearing Solutions.

20          THE COURT: Ms. Cohen?

21          MS. COHEN: Thank you, Your Honor.  Leslie Cohen,

22 Liner, Yankelevitz, Sunshine, on behalf of PCS.

23          THE COURT: Mr. Miller, Timothy Miller?

24          MR. MILLER: Good afternoon, Your Honor, W.

25 Timothy Miller, Taft, Stettinius & Hollister on behalf of

1 | Thermo Credit, LLC.

2 |         THE COURT: Ms. Horowitz?

3 |         Mr. Pardo?

4 |         MR. PARDO: Yes, Your Honor, Jim Pardo with King &

5 | Spalding in Atlanta also for BSG Clearing Solutions.

6 |         THE COURT: Mr. Garfinkle?

7 |         MR. GARFINKLE: Yes, Your Honor.  I am authorized

8 | to make an appearance now.  Jeff Garfinkle of Buchalter

9 | Nemer on behalf of United On Line.  United On Line is a

10 | secured creditor of PaymentOne as well as an unsecured

11 | creditor of the parent, Billing Resources.

12 |         THE COURT: Mr. Mora?

13 |         MR. MORA: Good afternoon, Your Honor, Michael

14 | Mora for the Federal Trade Commission.  Also with me is

15 | Collet Guerard.

16 |         THE COURT: Welcome.  Mr. Chiang?

17 |         MR. CHIANG: Craig Chang, Buchalter Nemer.  Your

18 | Honor, I'm not making an appearance.

19 |         THE COURT: Mr. Schneider:

20 |         MR. SCHNEIDER: Good afternoon, Your Honor, Jeff

21 | Schneider from Tew Cardenas in Miami on behalf of the

22 | Federal Receiver.

23 |         THE COURT: Mr. Coleman?

24 |         MR. COLEMAN: Good afternoon, Your Honor, Daniel

25 | Coleman on behalf of Network Telephone Services.

1          THE COURT: One more time.  Leslie Horowitz?

2          Is there anybody on the phone whose name I have

3    not called?

4          Mr. Ahrens.

5          MR. AHRENS: Your Honor, as our papers reflect,

6    since the last hearing on interim use of cash collateral,

7    the Committee has been formed.  John Fiero of Pachulski

8    Stang represents the Committee and is present in court.

9          And as our papers further disclose, we had

10   approximately a five-hour meeting in person with the

11   Committee -- a few were the on the phone, but in person,

12   last week.  It was a very productive meeting, and we are

13   now in the process of drafting a term sheet on a Plan of

14   Reorganization with the Debtor.  So we're moving rapidly.

15   And the Committee is doing that term sheet with us.

16         Your Honor, there are a number of objections for

17   this simple two-week further continuance.  The Committee

18   has asked until they stipulate to a final use of cash

19   collateral to look at our budget.  Right now there's --

20         THE COURT: It's three weeks that you're asking

21   for.

22         MR. AHRENS: It's two or after -- two or after

23   November 2, and I don't know what that comprises.  It's

24   probably two and a half or three weeks.

25         THE COURT: I'm sorry.  Two weeks -- today is the

1  15th.  Two weeks from today would be the 29th.

2         MR. AHRENS: Then I'm wrong.

3         THE COURT: Right.

4         MR. AHRENS: It's some time after November 2.

5         THE COURT: Okay.

6         MR. AHRENS: And so we're asking for permission --

7         THE COURT: November 2 is a Friday, so the next

8  day would be -- I don't have that day but the next day

9  after November 2 would be November 5th and so that would be

10 exactly three weeks.

11        MR. AHRENS: My calculations are wrong.  I stand

12 corrected.

13        THE COURT: Okay.  I mean it's important just that

14 everybody understands what we're talking about.

15        MR. AHRENS: Yes.  So it's a three-week

16 continuance.  The Committee has stipulated to it.  And in

17 the meantime, the Committee is doing the normal things that

18 Committees do and that is, look at our books and records,

19 go over our budget, and talk to us, not only about the Plan

20 of Reorganization but also about where we're going in this

21 case and what we've done in the past.

22        And so for a simple three-week continuance, Your

23 Honor, we don't see why we had the slew of objections, but

24 I can understand in some respects that people had a time

25 and deadline to file an objection, and they didn't know

1   that we were meeting with the Committee or the results of

2   that meeting.

3           THE COURT: Or that you were only going to ask for

4   three weeks.

5           MR. AHRENS: And we were asking for a lot longer

6   period of time, and with the stipulation with the

7   Committee, it's now only three weeks. But notwithstanding

8   that, we have only a few objections remaining, and with the

9   permission of the Court, what I'd like to do is go over the

10  stipulations that we've been able to reach since last

11  Thursday with the various secured creditors.

12          THE COURT: Very good.

13          MR. AHRENS: Your Honor, the first creditor is

14  PaymentOne, and PaymentOne has agreed to the cash

15  collateral order that we've attached to our papers in the

16  form that's attached, and just wanted me to put on the

17  record one stipulation and that is, the carve-out that

18  they've agreed to is a full carve-out from the beginning of

19  the case up to and including the final hearing. So they

20  wanted to make clear on the record that they're not

21  stipulating to a carve-out on a final basis. It's just

22  until whatever date this Court has set, November 3, 4 or 5,

23  whatever.

24          THE COURT: Okay. But just so I understand, there

25  are two different things you're saying potentially. One

1   is, until whenever the next hearing date is, and the other

2   is, until there's a final hearing, because it may well be

3   that you'll come in on November whatever it is and say we

4   want another two weeks or three weeks or four weeks. Which

5   are they agreeing to? Are they only agreeing to the next

6   hearing or are they agreeing until there's a final hearing?

7          MR. AHRENS: The next hearing.

8          THE COURT: Okay.

9          MR. AHRENS: Is that correct?

10         MR. WARREN: Yes.

11         MR. AHRENS:  Yes, and that's fine with us because

12  they know we are going to ask for a carve-out once again,

13  and so that's the agreement that the Debtor has with

14  PaymentOne. And I think that also takes care of the U.S.

15  Trustee's objection because we got PaymentOne to agree to a

16  full carve-out, which includes a successor Chapter 7

17  trustee.

18         The next one that we have any agreement with and

19  an understanding is Ms. Diemer's client, POL. We did make

20  one mistake in the budget, and we will be filing a

21  corrected budget after this hearing today. We did omit a

22  payment that was due on November 1 to POL of approximately

23  $62,000. We agreed at the last hearing to make that

24  payment, and we're agreeing again to make that payment, and

25  it will be in the cash collateral budget that we're seeking

1   approval today.

2          And with that understanding, I think Ms. Diemer

3   will withdraw her objection.

4          THE COURT: Could you pull the microphone to you

5   first?  And I'll ask everybody to do it.  We're on a

6   recording device.  The mikes need to be right in front of

7   you.

8          MS. DIEMER: Your Honor, yes, that is correct.  So

9   long as we have reached the agreement about the payment and

10  that the payment is included in the budget and will be

11  made, we withdraw our objection to the interim agreement.

12  Our stipulation which we will have to execute after this

13  hearing is to look as it did before.

14         THE COURT: Thank you.

15         MR. AHRENS: The next one, I think, we will not

16  have a fight with today, but maybe in the future, is the

17  receiver, Your Honor.  We have sought in our papers an

18  order of the Court today that the Court unblock the 1.7

19  million dollars.  We have suggested that the unblocking of

20  that account be resolved on Wednesday when similar issues

21  are coming up.  The receiver has complained to us that that

22  was not sufficient time.  We do need the money.  We've set

23  forth in our papers why we need the money.  I think it's

24  more appropriate to rule on that on Wednesday, but we have

25  agreed with the receiver that we will give the receiver ten

1  days advance notice before coming back to the Court asking

2  it to unblock the account, and he can make whatever further

3  points he wants, but --

4          THE COURT: So that's off the table for Wednesday.

5          MR. AHRENS: No, the unblocking of the account is;

6  the stay is not.  The stay is still going forward on

7  Wednesday.

8          THE COURT: I'm sorry.  The TRO -- the preliminary

9  injunction is going forward.

10          MR. AHRENS: Yes, that is going forward.

11          THE COURT: There's no stay, right?  We're talking

12  about the preliminary injunction.

13          MR. AHRENS: Exactly.  The preliminary injunction

14  is going forward on Wednesday --

15          THE COURT: But you're not going to ask him to

16  unblock the account.

17          MR. AHRENS: Not --

18          THE COURT: And so -- it's a little complicated,

19  isn't it, because if -- can I sever those issues so easily?

20  Can I --

21          MR. AHRENS: I don't think you can, and I think

22  the issues that you will be resolving on Wednesday -- and

23  that's why in our papers we had suggested that the whole

24  matter be decided on Wednesday.  We don't think you can

25  sever them.  But we feel that --

1          THE COURT: Maybe he would agree that there would

2     be an agreed cessation until the hearing, whenever it's

3     convenient to have the hearing, in other words, the

4     equivalent of a P.I., but not a P.I., by stipulation,

5     because it's a problem otherwise to have these bifurcated,

6     because they're related, I think.  If you could agree that

7     nothing will go forward against the Debtor for whatever

8     days it takes to provide the receiver with sufficient

9     notice of a hearing on the unblocking of the account, then

10    that would make sense to me, but otherwise, it's going to

11    be a little difficult to deal with, I think -- unless I

12    haven't analyzed it correctly.

13          MR. AHRENS: Your Honor, I think you are analyzing

14    it correctly.  The two are intertwined, and all I'm saying

15    is this.  We think that they've had sufficient time to

16    fully brief everything with respect to the preliminary

17    injunction, and we do want to go forward on Wednesday with

18    respect to the preliminary injunction.  And we think the

19    findings of the Court in connection with the preliminary

20    injunction will make it very easy for us to seek an

21    unblocking of the account if we prevail.  So all I'm saying

22    is that we want to go forward with everything on Wednesday,

23    and if --

24          THE COURT: But you've agreed not to.

25          MR. AHRENS: We've agreed only for one thing, as

1  to the unblocking of the account.  If he wants more time to

2  brief it or to bring it up, we'll give him ten days notice,

3  because we desperately need the money but we don't need it

4  in ten days.  And so I have agreed that as to the

5  unblocking of the account, we would give them ten days

6  notice.

7         THE COURT: So when I write my preliminary

8  injunction decision, it's going to be on the state of the

9  record at that time in which the 1.7 million is blocked.

10        MR. AHRENS: It would be blocked --

11        THE COURT: At that time, it's going to be

12  blocked, and the decision will have to take the facts as

13  they are, and that is, presuming there's a blocked account,

14  and the question is, how that will play in the next hearing

15  with the 1.7, whether we'll be back to the question of the

16  injunction or not, and I don't know the answer to it

17  because I haven't thought about it.  I thought they were

18  together, and so it was a little easier for me to think

19  about it that way, but I'll be honest with you, Mr. Ahrens,

20  I haven't really thought about bifurcating it, and Mr.

21  Sacks wants to talk to you, and so I'll go off the record a

22  minute.

23        MR. AHRENS: Yes, maybe if we could defer this --

24        THE COURT: Five-minute recess?

25        MR. SACKS: Why don't we pass this and come back

1   to it?

2           THE COURT: Okay.

3           MR. AHRENS: That's a good suggestion because I'll

4   just tell you my thoughts.  My thought is everything that

5   we needed to prove we're going to prove on Wednesday with

6   respect to unblocking the account.  So I thought if you

7   made a finding, it would be preclusive on them with respect

8   to those matters.  But maybe now rather than struggling --

9           THE COURT: Let me just say my question.  I mean

10  what if I found that you didn't need the money in ten days,

11  that you could survive without the money, and is it really

12  binding?  Is there anything that I've decided on Wednesday

13  that's going to be related to that?  I don't know.  I

14  just -- I need time to think about it.

15          MR. AHRENS: The Court has some good points, so

16  let me talk to my partner who's handling this aspect of the

17  case and we'll take a recess after we go through the other

18  ones.

19          THE COURT: See, I think you don't need a

20  preliminary injunction if they'll agree to stay everything

21  for as long as they need to set up the 1.7 issue.  If

22  they'll agree that everything is stayed, vis-a-vis the

23  Debtor in Florida, then you don't need a preliminary

24  injunction.  They could stipulate to a continuation of the

25  status quo for enough time to give them whatever time they

1   need to brief the unblocking issue, and if they will agree

2   to that, then it may make more sense, but I may be wrong,

3   and they may be bifurcatable as you apparently think they

4   are.    So let's -- I'll defer consideration.   I just wanted

5   to get my thoughts on the record early.

6           MR. AHRENS: Thank you, Your Honor, we'll take

7   those thoughts into consideration and discuss them with the

8   receiver's counsel during the break.

9           THE COURT: And understand, it's not that I'm

10  convinced.   I just haven't thought about it enough.

11          MR. AHRENS: Thank you, Your Honor.   Your Honor,

12  we still have objections that are unresolved with Public

13  Communications, Personal Voice, Thermo Credit, and the FTC.

14  And with respect to each of those, we fully briefed our

15  reply to every one of those.

16          THE COURT: But you're not -- the FTC isn't going

17  to object because you're not going to use their 1.7 million

18  for the three weeks, right?   Until this hearing, so that I

19  don't understand what that means, the FTC is objecting.

20          MR. AHRENS: They did file an objection --

21          THE COURT: Right.   But Mr. Mora, if we're

22  agreeing not to pull out the 1.7 million right now for the

23  purposes of today's hearing, you really have no objection;

24  isn't that right.

25          MR. MORA: Well, what we understood, Your Honor,

1  was that these issues would all be entertained at the P.I.

2  hearing on Wednesday.

3         MR. AHRENS: Yes, Your Honor, and that's -- I

4  think that's where we're going to end up, Your Honor, after

5  the comments of the Court, so maybe we should just defer

6  that too.

7         THE COURT: Okay.

8         MR. AHRENS: And with respect to the remaining

9  three, Public Communications, Your Honor, and we fully

10 briefed our response there.  Maybe I'll just briefly

11 summarize our response to each of those three.  Public

12 Communications never filed a UCC-1 as a secured creditor,

13 and their objections we've replied to, Your Honor.  There

14 is no UCC-1 with respect to them.  But as to each of these

15 three, they're receiving adequate protection for the next

16 three weeks, if they do have a lien.

17        Personal Voice, Your Honor, they have a UCC-1 on,

18 quote:

19             "All collected amounts due and owing to Personal

20             Voice pursuant to that certain billing services

21             agreement."

22 So they basically have a security interest in what they're

23 entitled to receive.  They don't have a security interest

24 in any assets of the Debtor.  And their UCC-1 lapsed.  So,

25 Your Honor, but once again, you know, we think they're

1  getting adequate protection if they do have a valid
2  security interest.

3        And lastly, Thermo Credit, we fully analyzed that
4  in our brief, and we have shown that they are a factor of
5  ICS, our affiliate, but they don't have a security interest
6  in any of the assets of the Debtor.  But once again, if
7  they do have any claims or security interest, they're
8  getting a replacement lien to the extent of the validity.

9        THE COURT:  Okay.  Let me just say one more thing.
10 I'm stuck on this other problem, but I understand your
11 position, and I'll let the objecting creditors have a
12 little time too.  If you don't need the money for ten days,
13 then you probably don't need the money for three weeks, and
14 all of this could be deferred until after the three weeks,
15 if you can work out an interim step like you worked out for
16 today.  So why you're going to have hearings in eleven days
17 instead of 21 days doesn't make any sense to me.  You could
18 have an omnibus hearing and us, the Committee, and you, and
19 everybody else, will have three more weeks to maybe even
20 come up with a draft plan, maybe come up with something.  I
21 don't know what you're going to come up with, but I don't
22 understand why you'd want to have the litigation in ten
23 days and then again, you know, eight days later.  So I'm
24 not asking for you to respond.  I'm just telling you that
25 seems to be my thought at this point, and I'll let you talk

1  to Mr. Sacks and the other parties about that.

2        With respect to any remaining objecting creditor

3  to the use of cash collateral, could you first identify

4  yourself and I'll give you each a few minutes to respond.

5  Counsel in the courtroom first.

6        MS. CORDELL: Delores Cordell, Your Honor, on

7  behalf of Thermo Credit.  We have objected to the continued

8  use of the cash collateral, and there's several things I've

9  heard even in the courtroom today that concern us very

10  much, the first one being that the Debtor is now saying

11  they, quote, "desperately need" the 1.7 million.

12        THE COURT: Well, not so desperate because they're

13  going out ten days and they may go out 20, and so maybe you

14  should wait and find out whether they really need it,

15  because they may not need it for three weeks anyway.

16        MS. CORDELL: But for three whole weeks, Your

17  Honor, yes.  Well, we've already -- we're already four

18  weeks into this --

19        THE COURT: Right.

20        MS. CORDELL:  -- this entire matter.  However,

21  I'm also very disturbed by the fact that, I sat in this

22  courtroom at the last hearing along with the other 27

23  attorneys and heard the Debtor's counsel say very clearly

24  that 50 percent of the payments that came in would be made

25  to creditors such as Thermo Credit.  That has not happened.

1  And we have no explanation for that except an e-mail this

2  morning from Ken Dawson saying, oh, we're waiting for an

3  order of the court and approval of the Creditors'

4  Committee.  Our understanding was that was a done deal at

5  the last hearing.

6           THE COURT: All right.  Let's stop.  Let's find

7  out the answer to that.  Stay where you are.

8           MR. AHRENS: Here's the answer.  My client was

9  also very frustrated that he could not make payments under

10 the pre-payment plan because I stood here and said we do

11 not need court approval.  We could do this immediately.

12 However, we had no ability to use cash until now because

13 the cash collateral budget that was approved at the last

14 hearing did not include the use of cash for the payment

15 plan.  The Committee met with us for over five hours and it

16 has been approved.  So if the Court enters an order today,

17 approving the use of cash, which includes as a line item

18 one of the pre-payment plans, it's going to be

19 retroactively implemented from the filing of the petition

20 until now.  And the cash budget does clearly include that,

21 and so your client will start receiving payments in

22 accordance with that plan after the Court enters the order.

23          THE COURT: And you're going to immediately make

24 up the payments that were due?

25          MR. AHRENS: Exactly, Your Honor, back to the

1  petition date.  The problem was when we met here last time,

2  we had no authority to use cash at all, and then the budget

3  that we presented did not include that.  And so I thought

4  of coming in on an emergency basis, but we met last

5  Wednesday.  The Committee approved it on Wednesday.  We

6  finalized the budget on Thursday.

7          THE COURT: I wasn't here anyway.

8          MR. AHRENS: Okay.

9          THE COURT: I told you I was going to the National

10  Conference of Bankruptcy Judges.

11          MR. AHRENS: That's right.

12          THE COURT: And that's what I did, and I want you

13  to know you were all sorely missed.

14          (Laughter.)

15          MR. AHRENS: We were back here working on this

16  case, Your Honor.

17          THE COURT: I know what you were doing.  I assumed

18  that.

19          MR. AHRENS: So, Your Honor, we now will be able

20  today, if the cash collateral order is entered, to make

21  those payments.  I don't mean today, I mean we would make

22  them --

23          THE COURT: As soon as the order is entered, you

24  can make the payments.

25          MR. AHRENS: Yes, in accordance with the pre-

1  payment plan that's attached to the Dawson declaration.

2         MS. CORDELL: Okay.  So that would be immediate

3  payment upon entry of the order.

4         THE COURT: Upon the Court signing the order.

5         MS. CORDELL: All right.  All right.  There is --

6  we're still very concerned though that this is a wasting

7  asset right now, given the status of it.

8         THE COURT: Well, do you think a liquidation would

9  be better?  Or you don't know.

10        MS. CORDELL: Well, we have 3.4 million dollars

11 out there, Your Honor, and we're watching it disappear

12 slowly, if not quickly, and that's what concerns us.  But

13 these issues have been briefed by many parties on this

14 already.

15        THE COURT: I understasnd.

16        MS. CORDELL:  However, at this point, however,

17 Thermo Credit has the 3.4 million plus additional accounts

18 that have been taken over for collection.  These are not

19 assigned to the Debtor.  These are accounts that the Debtor

20 is simply collecting.

21        What we believe is the most important thing to do

22 is to preserve those funds so that once -- we're filing an

23 adversary proceeding that will be filed today or tomorrow,

24 and the issue of whether we are a secured creditor will be

25 taken up at that point.  However, in the meantime, we're

1  watching our money -- what we claim is our money --
2  disappear.  And we would request that the funds that are
3  due to Thermo Credit be segregated at this time as well, so
4  that we're assured that when we get to the end of this
5  road, that there is going to be the money that's owed to
6  our client.

7       The Debtor is simply collecting this as an
8  agent --

9       THE COURT: Are you saying that the Debtor should
10 segregate what, exactly.

11      MS. CORDELL: The funds that they're receiving --
12      THE COURT: Prospectively?

13      MS. CORDELL: Prospectively, yes.  Well, we'd like
14 to have it all -- we believe it is appropriate also to
15 segregate those funds for the pre-petition debts because
16 those were accounts --

17      THE COURT: All the commingled funds.

18      MS. CORDELL: Your Honor, all of those funds are
19 easily traceable because the Debtor has very extensive and
20 complex software where they can trace those funds.

21      THE COURT: Do you mean trace or account for?
22 Trace means that they're separate funds.  Trace doesn't
23 just mean account for the number.  Trace means to identify
24 specific dollars that were segregated essentially.  It's
25 like a constructive trust theory.  It's not, figure out

1  what the amount that -- the dollar amount is.  That's not

2  what trace means.

3            MS. CORDELL: Well, Your Honor, they're --

4            THE COURT: You're talking -- if you distinguish

5  between account for and trace --

6            MS. CORDELL: I would not be able to distinguish

7  that at this point, Your Honor.  I haven't looked into that

8  issue.  However, the fact is that all we're talking about

9  is there are billing transaction data that's sent to ICS --

10 to the Debtor and they are acting essentially as just, you

11 know, they're just funneling the money through.  They're

12 not a factor; we're not a factor to the Debtor.

13            THE COURT: Okay.

14            MS. CORDELL: But we feel that we are a secured

15 creditor.  These funds should be segregated so that we can

16 have the money available to us when this whole matter is

17 resolved, this bankruptcy is resolved.

18            THE COURT: Thank you, counsel.

19            Who would like to speak next?  Mr. Little is in

20 the courtroom and he's going to approach the bench for

21 those on the phone.  And again say whom you represent.  I

22 know it's Personal Voice, Inc., but say it.

23            MR. LITTLE: Yes, sir.  Thomas Little representing

24 Personal Voice, Inc.

25            THE COURT: Go ahead, sir.

1          MR. LITTLE: Thank you, Judge.  Your Honor, my

2    client has some of the same concerns that were echoed by

3    Thermo Credit, and in addition, Judge, we believe that an

4    important issue is that these funds that my client remits

5    for billing and collection are simply not property of the

6    bankruptcy estate under 541.  They belong to Personal

7    Voice, and therefore they're really not even cash

8    collateral, and the issue of the UCC may or may not apply.

9    It's simply not the Debtor's funds.  The Debtor was merely

10   a collection agent and in essence, now the Debtor wishes to

11   utilize Personal Voice's funds and others' funds to operate

12   its business.  The accounts receivable that are being

13   offered as the replacement lien, we don't really have a, I

14   don't believe, a great deal of data as to the true value of

15   those accounts receivable, and how protected is my client

16   for adequate protection.

17          Judge, my client was receiving about $40,000 on

18   the average per week pre-petition and had approximately 1.9

19   million dollars in the pipeline, so to speak, when the case

20   was filed.  Those funds are collected each week, and the

21   Debtor proposes to utilize those funds to assist in the

22   operation of its ongoing business enterprise.  And I think

23   also one thing we haven't heard today that I'm aware of is

24   I believe at the last hearing there were discussions that

25   the subsidiary may be sold.  A potential buyer was

1  potentially imminent, and that may generate sources of

2  funds to resolve a number of problems.  But I haven't heard

3  anything about where we stand on that particular issue or

4  if that's even available now or being considered now as

5  part of a plan.

6        THE COURT: Mr. Ahrens, is that being considered

7  as part of a plan?

8        MR. AHRENS: Your Honor, the type of plan that

9  we're talking about with the Committee is an ongoing

10  reorganization.  How PaymentOne fits into that plan is

11  still under discussion with the Committee, all of whom

12  signed confidentiality agreements.  And there are some

13  confidential matters with respect to that, so all I can say

14  is the Committee has been extensively apprised of exactly

15  where we stand with the sale of PaymentOne and we would

16  prefer at this time to keep it that way until we have more

17  meetings with the Committee in the next week or two.  But,

18  yes, PaymentOne is absolutely part of the Plan of

19  Reorganization and part of our plan.

20        THE COURT: But you haven't decided whether to

21  sell it.

22        MR. AHRENS: That's correct, Your Honor.

23        MR. LITTLE: Thank you, Judge.  Well, I guess,

24  another thing, Your Honor, we're looking at is the $40,000

25  a week that would have been collected, as further adequate

1    protection, to have those funds set aside pending a final

2    determination of what's going to be appropriate for cash

3    collateral and whether on the arguments of the Debtor or

4    Personal Voice, those are really property of the estate

5    appropriate for the Debtor to be using.

6           THE COURT: How am I going to resolve the property

7    of the estate issue?  How are you going to set it up?

8           MR. LITTLE: Well, Judge, I think we'd have to

9    file an adversary proceeding for a determination as to

10   whether or not the funds that were generated by the Debtor

11   through the billings of Personal Voice, Inc. are actually

12   property of the estate under 541(a).  And then the Court

13   would, after hearing appropriate evidence, have to make a

14   decision at that point as to whether or not those funds

15   were property of the estate which would be subject to any

16   utilization by the Debtor.

17          THE COURT: And when do you anticipate doing that?

18          MR. LITTLE: I believe we could have that

19   accomplished in the next ten days, Judge.

20          THE COURT: I'm not pushing you.  I'm just trying

21   to get an idea, you know, what my work load is going to be,

22   what you're going to do.

23          MR. LITTLE: Yes, sir.

24          THE COURT: I'm not encouraging you to do it or

25   not do it.  I'm just listening.

1        MR. LITTLE: Yes.

2        THE COURT: Thank you, sir.

3        MR. LITTLE: Thank you, Judge.

4        THE COURT: Does anybody else wish to speak in

5   opposition to the use of cash collateral?

6        MS. COHEN: Yes, please, Your Honor.  On the

7   telephone Leslie Cohen.

8        THE COURT: Yes, Now Ms. Cohen, I can barely hear

9   you.  So first, are you on a hand set?

10       MS. COHEN: Yes.  Is that better?

11       THE COURT: A little better, yes.  If you could

12  please talk directly into your phone and talk loudly so

13  everybody in the court can hear you.

14       MS. COHEN: Thank you very much, Your Honor.

15  That's more clear?

16       THE COURT: It's not bad.  It's not great, but

17  it's not bad.

18       MS. COHEN: Okay.  All right.  Well, thank you,

19  Your Honor, for the opportunity to speak.  At the last

20  hearing what we had done was to have agreement where the

21  Debtor segregated $14,000 per week which would be just held

22  pending a further determination, and frankly, Your Honor,

23  it might be something very much along the lines of what Mr.

24  Little just talked about by way of an adversary proceeding,

25  maybe an objection to claim, and we really haven't sorted

1   that out yet.  I do understand that this is only a short
2   term matter, only until maybe three weeks from now, and
3   we're asking for the exact same thing again.

4          Our thinking is this.  We understand that the
5   Debtor is claiming that PCS is not perfected and we put
6   some discussion of that in our papers, but we really don't
7   think today is the day for Your Honor to decide that.  We
8   recognize we're kind of a small fish in the pond because we
9   know we're not that much money in the scheme of things, but
10  if we would just be able to have this money segregated
11  subject to further determination, which at 14,000 a week
12  would be about 42,000, then we withdraw our objection at
13  this time.

14         Just a little bit about the substance of our
15  objection, we question if this is cash collateral or
16  whether it's our property again.  I won't repeat Mr.
17  Little's argument, but there is that issue, and then if it
18  is cash collateral, then we don't believe we're getting
19  adequate protection.  The history -- and I'll do it very
20  briefly -- is that our deal was actually with PaymentOne.
21  We had contracted with them in the first place, and now
22  PaymentOne pushed our account over to Integretal, and then
23  Integretal went into the bankruptcy and now our money is
24  getting thrown right back to PaymentOne and yet nothing to
25  PCS.

1          So we all knows the rules of the game in

2     bankruptcy, and we know that, you know, there's some of

3     that where, you know, creditors have to wait, but given the

4     circumstance and given our security interest, and the other

5     issues as raised in our papers, and frankly, Your Honor,

6     too, that I think we're relatively small in the scheme of

7     things, we would ask only for the segregation of the

8     $42,000, or that is 14,000 per week until the further

9     hearing to get these issues resolved.

10          And I would also add, Your Honor, I have

11     approached the Debtor as well as the Committee about

12     whether we could reach some sort of an overall resolution.

13     We'd like to do that too.  But again, I know today is not

14     the day for that.

15          Thank you.

16          THE COURT:  All right.  Do you oppose the

17     segregation of those funds?

18          MR. AHRENS:  Yes, Your Honor.  Would you like me

19     to address that?

20          THE COURT:  Sure.

21          MR. AHRENS:  Can I remain sitting down?  It seems

22     like this phone is better.

23          THE COURT:  You can always remain sitting.

24          MR. AHRENS:  Thank you, Your Honor.  Your Honor,

25     Public Communications has made the request; Personal Voice

1   has made the request, and there are others who have not

2   made any requests at all. We agreed to it last time

3   because it was the end of a long hearing. A committee had

4   not been appointed, and it was only 14,000 as Ms. Cohen

5   says. But now to require a segregation for somebody -- and

6   I agree today is not the day to object to or to test her

7   security interest or the security interest of Personal

8   Voice or Thermo Credit. But we bring to the Court's

9   attention the invalidity of those, because you see how

10  quickly we did a deal with POL when they had a valid

11  perfected security interest. And the Committee has

12  supported that deal with POL.

13          But now that we have a Committee formed, they

14  too have I think come to the same conclusion that I have

15  that these are imperfected security interests, and so the

16  Court can certainly take that into consideration. But we

17  don't think we should be giving even $14,000 to Public

18  Communications because it's unfair to Personal Voice,

19  Thermo Credit and others such as Network Telephone is on

20  the phone represented by Mr. Coleman, as I heard. So it's

21  unfair to Network, who's cooperated with us, and not sought

22  any more of a segregation and they've been reasonable, and

23  it's time to just say their protection is -- if they do

24  have a lien which I don't think they do -- in the remaining

25  assets.

1           THE COURT: And if they do, it's adequately
2   protected.

3           MR. AHRENS: We believe it's adequately protected.
4   Now as to the fight over whether or not Personal Voice has
5   assigned or hasn't assigned it, we put a declaration in
6   from Mr. Dawson that said they, just like everybody else,
7   have to assign it so that we can collect it.  But again, we
8   know that one declaration does not a trial make, and so
9   it's not being decided today.  But we do think the
10  invalidity arguments of the Debtor are appropriate to be
11  considered, and the support of the Committee of our
12  position now that the Committee has been formed in allowing
13  another three weeks use of cash collateral.

14          THE COURT: One declaration does a trial require.
15          (Laughter.)

16          MR. AHRENS: That's correct.

17          THE COURT: If it's contested.  Okay.  So Mr.
18  Fiero, what's your analysis of these three creditors'
19  claims?

20          MR. FIERO: Your Honor, in the brief time we've
21  had to take a look at it, we see no reason not to agree
22  with the Debtor.  We believe that these creditors are
23  adequately protected by --

24          THE COURT: Do you believe they're secured or
25  unsecured in the first instance?

1    MR. FIERO: Your Honor, we don't have any evidence
2  to suggest that they're secured.  Just with respect to
3  Personal Voice, I notice that it specifically says that the
4  Debtor won't be a trustee or fiduciary for the parties
5  submitting records, and that suggests to me that you've got
6  a standard unsecured creditor type transaction with a
7  simple right to payment, the same way you have a right to
8  payment when you deposit money with the bank, Your Honor.
9  And for that reason, we believe that all creditors should
10  be treated equally and that the adequate protection that's
11  offered is sufficient at this time, and the rest of the
12  money ought to be available to run the Debtor's business.

13    THE COURT: Okay.  Does anybody else wish to say
14  anything?

15    MR. WARREN: Your Honor, Stephen Warren of
16  O'Melveny & Myers on behalf of PaymentOne.  I just wanted
17  to put a little bit of a gloss on Mr. Ahrens' comments
18  regarding the stipulation.  The provision that he was
19  talking about that we've clarified is paragraph 7 of the
20  stipulation that deals with the agreement to subordinate
21  with respect to attorney's fees and other fees in the case,
22  and as Mr. Ahrens said, that runs through the period of the
23  next hearing and not beyond.  We'll have discussions, as I
24  understand, between now and then, about the go forward,
25  along with the other issues presented in the stipulation.

1          With that clarification, PaymentOne supports the
2    continued use of cash collateral through the hearing date.
3          THE COURT: In his papers, the receiver says that
4    the ownership issue is not predicated on whether the FTC
5    ultimately prevails in the enforcement action against the
6    Debtor, and the turnover provisions of the omnibus
7    clarification orders are final appealable orders.
8          Let's assume for a moment that the FTC doesn't
9    prevail in the enforcement action, where would those funds
10   go?  Is that a question properly addressed to Mr. Mora or
11   to you Mr. Oetzell?
12         MR. OETZELL: We'll start with Mr. Mora?
13         THE COURT: Mr. Mora, he's thrown the ball into
14   your court.  Do you want to handle it or throw it back?
15         MR. MORA: I'll take a stab at it, Your Honor.
16         THE COURT: You've mixed the metaphor.
17         MR. MORA: For sure.
18      (Laughter.)
19         THE COURT: And I'll take a stab at a ball.
20         MR. MORA: Your Honor, if the FTC does not prevail
21   on the merits on liability, then there would be no monetary
22   relief grounds, and --
23         THE COURT: Right.  But if you already had 1.7
24   million dollars, then what happens?
25         MR. MORA: Well, on this I would have to pass the

1  buck to the receiver's counsel, but I can tell you what I

2  presume would happen is that it would all be under the

3  District Court's control of course.

4          THE COURT: Will the District Court would get to

5  decide who gets its?

6          MR. MORA: The District Court could order a

7  winding down of the receivership, and then the receiver

8  would have to resolve issues as to the distribution of any

9  funds that were in the receivership estate.

10         THE COURT: I don't understand what that means.

11  If you're found not to prevail, where does the money go?

12         MR. MORA: Your Honor, can I consult with my co-

13  counsel for one moment?

14         THE COURT: Sure.  They're talking so don't say

15  anything.  I don't even know if they can hear us.

16         MR. MORA: We can.

17      (Pause.)

18         THE COURT: I think Mr. Oetzell wants to say

19  something before you say something, so whenever you're

20  ready to hear Mr. Oetzell, let me know.

21         MR. MORA: Ready, your Honor.

22         MR. OETZELL: Your Honor, I'm suggesting that

23  these are tied up in the issues that we're gong to be

24  adjourning for, for "X" number of minutes, and I would ask

25  the Court if we just go ahead and adjourn for a little

1  while and we'll come back with your answers.

2          THE COURT: Okay. The Debtor asserts in its reply

3  that based on the services of FTI Consulting, that the

4  funds in the blocked account are needed and Debtor can't

5  remain administratively insolvent if the Debtor has to pay

6  a million dollars in fees to defend the Florida action and

7  litigate with the receiver. But it seems like based on the

8  Debtor's budget, that the Debtor could operate through the

9  next cash collateral hearing if the 1.7 were left in the

10 blocked account, and so the question is, is that true. And

11 then is it true if I grant a preliminary injunction, and is

12 it true if I don't grant a preliminary injunction. Again,

13 you don't have to answer it. I'm going to break, but I

14 want you to be thinking about these things, and I know that

15 they to some extent relate to Wednesday.

16         Now, let me just say one other thing, and that

17 is, if I grant a preliminary injunction, I'm considering

18 whether it would be appropriate to grant a preliminary

19 injunction of limited duration, and so you should face that

20 issue too. For example, should I -- you know, we seem to

21 be at an active stage of the case where the Committee and

22 the Debtor are talking about a possible kind of

23 reorganization. But all that's going to play out fairly

24 soon. At least we'd have a much better handle on the

25 status of the case and the reorganization, and so one of

1   the things I'm considering is should I grant a preliminary
2   injunction of 90 days, of 120 days, of six months?  Should
3   I grant a preliminary injunction of a longer period than
4   that, and all of that is up for discussion and
5   consideration by the Court.  It may be that a preliminary
6   injunction of 90 days would be -- if I decide I have the
7   power to do it, and I'm going to do it, might be a good way
8   to go, and I'd like to make sure that you're prepared now,
9   even though we're going to talk about this after the break
10  and we're going to talk about this on Wednesday, I don't
11  want to hit you blindsided with that idea, and I'm
12  particularly interested in the Debtor, the FTC -- but also
13  the Creditors' Committee's view of that possible idea as
14  well.

15          The other thing I'm frankly wondering, and you
16  don't need to answer this, but I'm wondering whether, if
17  the Committee and/or some of these other creditors are
18  planning to make an appearance in Florida to try to explain
19  to the Florida District judge whatever they think is
20  appropriate to explain about the bankruptcy and about the
21  way the bankruptcy works and about whether or not, for
22  example -- well, whether the receiver's claim and the FTC's
23  claim should or should not be elevated above other
24  creditors' claims.  And of course, we still have this
25  outstanding enforcement action which may go either way.  It

1   may be that that would be useful.  It may not.  I just

2   don't know what the thoughts are of the parties on making

3   an appearance in the Florida Bankruptcy Court would be.

4           I'm prepared to take a recess and in the meantime

5   I'm going to have to think about my decision on the use of

6   cash collateral in the narrow sense, with respect to the

7   three objections that are outstanding.  And I'm correct,

8   the three people who spoke are the only outstanding

9   objections that I have to deal with; is that correct?

10          MR. AHRENS: Yes, Your Honor.

11          THE COURT: Okay.  So I'll be thinking about that,

12  and you take whatever time you need to discuss the issues

13  that we've discussed and I assume Mr. Oetzell, you'll be in

14  touch with Washington?

15          MR. OETZELL: Yes, Your Honor.

16          THE COURT: Thank you, sir.

17          MR. AHRENS: Thank you.

18          THE COURT: Court is in recess.

19          THE CLERK: Please rise.

20       (Whereupon, a recess is taken at 2:54 p.m., and the

21  court is reconvened at 3:26 p.m.)

22          THE CLERK: Please rise.

23          THE COURT: Thank you.  Please be seated.  Go

24  ahead, Mr. Ahrens.

25          MR. AHRENS: Yes, Your Honor.  We have talked

40

1  amongst ourselves and with counsel for the receiver, and

2  came to the conclusion maybe we're just trying to be too

3  nice because the Court is right.  We think we ought to go

4  forward on Wednesday, and if the receiver contends that he

5  has not received enough notice -- we think he has, as I

6  said originally -- that's a point that he can make on

7  Wednesday.

8       But it is very important that we go forward, and

9  one of the reasons is, confidence in the customers that we

10  have here.  As Mr. Weber said in his declaration, pre-

11  petition, we owe more than we can pay, Your Honor.  We did

12  not save all the money that we owed to our customers, and

13  that's why we're in bankruptcy.  And he said, post-

14  petition, he testified in his declaration:

15            "... that it is prudent that this Chapter 11

16            Debtor retain sufficient cash at all times to

17            cover not only its operating expenses but its

18            administrative obligations to its customers to

19            remit funds to them with respect to post-petition

20            transactions."

21       And, Your Honor, we can do that, and we can do

22  that if we win on Wednesday, but now is not the time to

23  argue it, and I'm just saying the Court is correct, they

24  are connected.  We were trying to give them more time to

25  brief that subject, but again as I said, we were being too

1 nice, and so we would like to go forward on Wednesday on

2 the whole stay motion -- I keep saying stay -- on the whole

3 motion for an injunction.

4         THE COURT: Okay. I'll address that in a second.

5 I've been working on the cash collateral matter, and so I

6 want to put this on hold for a second and switch to cash

7 collateral.

8         MR. AHRENS: Fine, Your Honor.

9         THE COURT: Okay. You can stand or sit, wherever

10 you're most comfortable. What is your argument, vis-a-vis

11 the property of the estate issue? The argument has been

12 made by --

13         AHRENS: Yes, Your Honor, by Personal --

14         THE COURT: Well, it was made by one, and then Ms.

15 Cohen I think you know agrees, but how do you deal with a

16 541 issue first and then what would do I have to decide to

17 allow you to go forward on cash collateral if I'm so

18 inclined, vis-a-vis the 541 issue, because -- do I have to

19 have a trial and determine whether it is or isn't property

20 of the estate before I approve the use of the cash

21 collateral? Is the standard that I have to find that it's

22 not likely property of the estate? What kind of -- what

23 does the Court have to do before it allows you to use these

24 funds in the face of an argument that the funds are not

25 property of the estate, what does the standard and what do

1  I have to find?

2        So now I'll give you a little -- you pulled out a

3  book which suggests that you're about to research this, so

4  now we'll switch back to the other issue, and I'll take a

5  recess and let you go find out the answer to that one,

6  because that's very important as to what I have -- what

7  kind of findings I have to make and what kind of standard I

8  have to apply in dealing with a creditor, albeit likely an

9  unsecured creditor, that raises the property of the estate

10  issue.

11        So now you put down your book.  We're going to

12  switch gears.  I mean if you had an answer off the top of

13  your hear, we could have done that, but I think we'd be

14  better off if we let you do your research.  And where's Mr.

15  Rehfeld (Phonetic) when you need him --

16        (Laughter.)

17  -- and so now -- pardon me?  Can Mr. Sacks research --

18  so --

19        MR. AHRENS: I think I know the answer, but ask

20  your next question, Your Honor.

21        THE COURT: All right.  Now we're switching gears.

22  Is there any way that you can agree for three weeks if they

23  can hold the funds, a million-seven, for three weeks to put

24  everything on hold so that you can have a combined

25  preliminary injunction hearing and a motion to free up the