1   stand. Indeed, the only adequate protection that could be afforded to the Federal Receiver is a

2   specific prohibition against the Debtor spending or dissipating the Subject Funds. The Debtor has

3   refused to grant such adequate protection, and instead is asking this Court for a self-executing

4   Order that will spring into effect the moment that this Court unblocks the blocked account,

5   assuming that such an event occurs.

6          Finally, this Court should also exclude or carve out the Subject Funds because these funds

7   are under the exclusive jurisdiction of the District Court by virtue, inter alia, of 28 U.S.C. §§ 754

8   and 1692. Moreover, the District Court exercised its exclusive in rem jurisdiction over the Subject

9   Funds prior to the filing herein. It made that clear in its Omnibus Order, and that Order held, prior

10  to the filing herein, that the funds were the Federal Receiver's property. The District Court

11  confirmed in its Clarification Order, entered after the filing herein, that the funds were the property

12  of the Federal Receiver, that the funds were not the property of the Bankruptcy Estate, and that the

13  funds were not the property of the Debtor. Both Orders required the immediate turnover of the

14  funds to the Federal Receiver.

15         In sum, the Federal Receiver hereby requests that this Court exclude or carve out these

16  Subject Funds from any and every Cash Collateral Order and he objects to any cash collateral order

17  which does not so exclude or carve out. This Court should order the Debtor to turn over the

18  Subject Funds forthwith to the Federal Receiver.

19

20  Dated: November 10, 2007          DANNING, GILL, DIAMOND & KOLLITZ, LLP

21

22                                    By: _____

23                                    Steven J. Schwartz
                                      Attorneys for Federal Receiver
24

25

26

27

28

-5-

3148

**RER - 62**

1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
2    Including Professional Corporations
   MICHAEL H. AHRENS, Cal. Bar No. 44766
3  STEVEN B. SACKS, Cal. Bar No. 98875
   JEFFREY K. REHFELD, Cal. Bar No. 188128
4  ORI KATZ, Cal. Bar No. 209561
   Four Embarcadero Center, 17th Floor
5  San Francisco, California 94111-4106
   Telephone:    415-434-9100
6  Facsimile:    415-434-3947

7  Attorneys for The Billing Resource, dba Integretel

8              UNITED STATES BANKRUPTCY COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                   [SAN JOSE DIVISION]

11 In re                                    Case No. 07-52890

12 THE BILLING RESOURCE, dba                Chapter 11
   INTEGRETEL, a California corporation,
13
14            Debtor.

15 Tax ID: 33-0289863

16 _____

17 THE BILLING RESOURCE, dba                Adv. Proc. No. 07-05156
   INTEGRETEL, a California corporation,
                                            **DEBTOR'S REPLY IN SUPPORT OF**
18            Plaintiff,                     **MOTION FOR PRELIMINARY**
                                            **INJUNCTION**
19        v.
                                            Date:      November 16, 2007
20 FEDERAL TRADE COMMISSION, and           Time:      10:00 a.m.
   DAVID R. CHASE, not individually, but   Place:     United States Bankruptcy Court
21 solely in his capacity as receiver for             280 South First Street
   Nationwide Connections, Inc., Access One           San Jose, California
22 Communications, Inc., Network One Services, Judge:  Hon. Arthur S. Weissbrodt
   Inc., 411TXT, Inc., CELL-INFO-USA, INC., Courtroom: 3020
23 Enhanced Billing Services, Inc., Toll Free
   Connect, Inc., Cripple Creek Holdings, LLC,
24 Built to Last, LLC, Not Fade Away, LLC, He's
   Gone, LLC, The Other One, LLC, Turn on
25 Your Love Light, LLC, China Cat Sunflower,
   LLC, Lazy River Road Holdings, LLC,
26
              Defendants.
27
28

W02-WEST:5SS1\400522626.1                  REPLY IN SUPPORT OF PRELIMINARY
   Case: 07-05156    Doc #: 58    Filed: 11/13/2007    Page 1 of 9    INJUNCTION.

                                                            RER-62    3149

# I.

## INTRODUCTION

The Receiver and the FTC repeat their previous arguments in their oppositions to Debtor's motion for a preliminary injunction. The Court's Memorandum Decision has already addressed and rejected their arguments. The Court has an ample evidentiary and legal basis to enjoin the Receiver and the FTC pursuant to Section 105 of the Bankruptcy Code from enforcing the Florida Court's orders requiring that Debtor pay $1,762,762.56 to the Receiver.

The fundamental mistaken premise espoused by the FTC and the Receiver is their claim that this Court does not have jurisdiction over all of the funds in Debtor's bank accounts. The Receiver and the FTC continue to assume that there are "Subject Funds" and "Reserve Funds" when there are not. Indeed, the Receiver and the FTC do not even attempt to define these terms in their opposition briefs. Based on their use of these meaningless terms, the Receiver and the FTC argue that the Florida Court's orders control the funds in Debtor's accounts and that this Court is permitting Debtor to relitigate the issues allegedly determined in the Florida Court. These contentions are wrong because the Florida Court never obtained jurisdiction over any of Debtor's funds or other assets—it issued a pre-bankruptcy order requiring Debtor to pay the Receiver and Debtor has appealed the question of whether it has any liability to the Receiver to the Eleventh Circuit. As this Court has already said, the "Omnibus Order requiring Debtor to pay over to Receiver an amount denominated on Debtor's books as 'reserves' cannot create a property interest where none exists." Memorandum Decision at 54:25-27.

Just as the Receiver and the FTC mistakenly assume that the Florida Court ruled on the question of ownership of Debtor's bank accounts, they also wrongly assert that this Court should merely await the decision on appeal from the Florida Court in the Eleventh Circuit. The question of Debtor's liability to the Receiver, which is on appeal to the Eleventh Circuit, is fundamentally different than the issue before the Court here, which is whether the Florida Court's orders to pay the Receiver $1,762,762 should be enforced

-1-

1  during the pendency of this bankruptcy case.  Unless this Court determines that the

2  Receiver has an interest in specific funds of Debtor then the Receiver must be enjoined

3  from enforcing his claim, as any other result "threaten[s] the integrity" of the bankruptcy

4  estate. Canter v. Canter (In re Canter), 299 F.3d 1150, 1155 (9th Cir. 2002).

**II.**

**ARGUMENT**

**A.**    **The Barton Doctrine Does Not Bar Debtor from Enjoining the Receiver.**

The Receiver again argues that the Barton doctrine prevents Debtor from suing
Receiver without the Florida Court's permission to stop enforcement of the Omnibus
Order.   The Court extensively addressed the argument in its Memorandum Decision,
concluding that, because Barton is based on giving power to the court with jurisdiction
over the property at issue, the "exclusive grant of in rem jurisdiction [to the Bankruptcy
Court] precludes the application of the Barton doctrine in this particular set of
circumstances." Memorandum Decision, at 44:17-18.  Once Debtor filed for bankruptcy
protection, the bankruptcy court obtained exclusive jurisdiction over Debtor's bank
accounts.   That jurisdiction superseded any jurisdiction that the district court could
otherwise have asserted over Integretel and its assets. See In re Crown Vantage, Inc., 421
F.3d 963, 971 (9th Cir. 2005) ("the jurisdiction of the bankruptcy court exceeds that of any
other court-appointed receiver"); Gilchrist v. General Electric Capital Corp., 262 F.3d 295,
303 (4th Cir. 2001) (statutory grant of exclusive jurisdiction over property of bankruptcy
estate takes priority over equitable rule favoring first court to assert jurisdiction over an
asset).

The Receiver vainly argues that the Florida Court's orders preclude a finding that
the purported "Subject Funds" are property of the bankruptcy estate.  In so doing, the
Receiver ignores the Court's finding that this Court has exclusive jurisdiction to determine
estate property.  It also ignores the fact that the Florida Court could not have made a
determination as to "Subject Funds" because there were none, only commingled funds that

-2-

1  had no connection to the Receiver. The Receiver's continual assertions that the Florida
2  Court decided issues that are before this Court are based on his effort to create confusion
3  between the issues presented to the two courts. The Florida Court addressed whether the
4  Receiver had a property interest in the abstract but did not address what particular asset
5  that interest attached to. The question whether the Receiver could trace his asserted
6  property interest into any specific funds held by the Debtor was not litigated before the
7  Florida Court.[1] The question here is whether any interest the Receiver had was attached at
8  the time of Debtor's bankruptcy filing to specific funds or assets now held by Debtor.

9      The Bankruptcy Court's exclusive jurisdiction over property of the estate has led
10  other courts to conclude that the <u>Barton</u> doctrine does not apply in situations where the
11  debtor or a bankruptcy trustee is seeking to obtain property in the hands of a receiver. In
12  these situations, <u>Barton</u>'s goal of having the receivership court address all claims to
13  receivership estate property gives way to the bankruptcy court's jurisdiction over property
14  of the estate. <u>See</u> 11 U.S.C. § 543 (receivers and other custodians must turn over property
15  to the trustee); <u>In re Automotive Professionals, Inc.</u>, 2007 Bankr. LEXIS 2177, *18
16  (Bankr. N.D. Ill. 2007) (<u>Barton</u> doctrine "has no application to a debtor in bankruptcy
17  because the Bankruptcy Code contains the controlling federal law on the subject. . . a
18  debtor need not obtain the approval of the state court to obtain control of property of the
19  estate."); <u>In re Bullion Reserve of North America</u>, 836 F.2d 1214, 1217 (9th Cir. 1988)
20  (money from commingled accounts constitutes property of the estate). Thus, even if the
21  Receiver here had possession of Debtor's bank accounts or other property, <u>Barton</u> would
22  still not apply and this Court would have jurisdiction to compel turnover.

23      The situation here is no different merely because Debtor seeks an injunction to

24

25  [1]    As the party asserting a claim of collateral estoppel, the Receiver has the burden of
    showing that the issue was actually litigated before the Florida Court, and any doubt about
26  that question, or about what the Florida Court decided, must be resolved against him. E.g.,
    <u>In re Berr</u>, 172 B.R. 299, 306 (9th Cir. B.A.P. 1994); <u>see also</u> <u>In re Magnacomm Wireless,</u>
27  <u>LLC</u>, 2007 WL 2694717 at *8 (9th Cir. Sept. 17, 2007 ) (issue must be actually litigated).
28

W02-WEST:5SS1\400522626.1                                   REPLY IN SUPPORT OF PRELIMINARY
Case: 07-05156    Doc #: 58    Filed: 11/13/2007    Page 4 of 9    INJUNCTION.

RER-62    3152

1   preserve the estate's assets by preventing the Receiver from enforcing a pre-petition claim

2   against Debtor.  Ordinarily the automatic stay would prevent a party from seeking control

3   of the estate's property but if the automatic stay does not apply, then the bankruptcy court

4   has powers under Section 105 to nonetheless protect the bankruptcy estate.

5       Finally, the Receiver's argument under <u>Barton</u> ignores the most obvious

6   consequence of any holding that the doctrine applies here.  Regardless of whether the

7   <u>Barton</u> doctrine applies to Debtor's suit against the Receiver, it applies to any attempts by

8   the Receiver to enforce the Omnibus Order outside the bankruptcy court.  <u>See In re Crown</u>

9   <u>Vantage, Inc.</u>, <u>supra</u>.  The Receiver has no ability to pursue his claim against Debtor in any

10  forum other than the bankruptcy court without this Court's permission.  If the Receiver

11  applied <u>Barton</u> consistently then there would be no need for an injunction as the Receiver

12  would have to come to this court for any relief on its claim.  But the Receiver wants to

13  ignore the implications of its argument, necessitating this Court's intervention to protect

14  Debtor and its estate.

15  **B.    The Preliminary Injunction Sought By Debtor is not a Collateral Attack on the**

16  **Florida Court's Jurisdiction.**

17      As with its <u>Barton</u> argument, the Receiver's claim that the Florida Court's

18  jurisdiction is being collaterally estopped was rejected in the Memorandum Decision.

19  First, the Court found that the Omnibus Order did not eliminate the bankruptcy court's

20  jurisdiction to determine the bankruptcy estate's interest, saying "the pre-petition

21  determination that Receiver held an interest in the Commingled Funds did not eliminate

22  any interest Debtor's bankruptcy estate had in the same funds. . ."  Memorandum Decision

23  at 49:6-8.  The Court similarly rejected the Receiver's effort to assert a bar based on the

24  post-petition Clarification Order:

25          [The bankruptcy court has exclusive <u>in rem</u> jurisdiction post-
            petition over property of the estate, as well as jurisdiction to
26          determine what constitutes property of the estate.

27

28  Memorandum Decision, at 52:5-7.

-4-

1       Given Debtor's obvious property interest in the funds in its bank accounts, it

2  properly comes to this Court to protect that interest against efforts to collect pre-petition

3  judgments (or enforce pre-petition orders) that would be satisfied from those accounts.

4  These conclusions in the Memorandum Decision properly reflect the role of a bankruptcy

5  court in addressing matters that have been litigated pre-bankruptcy. Had the Florida Court

6  correctly determined that the automatic stay applies to enforcement of the Omnibus Order,

7  then no intervention by this Court would be necessary. But even if the automatic stay is

8  not applicable to the Receiver's enforcement of the Omnibus Order, the Court can and

9  should utilize Section 105 to the same effect. Doing so does not constitute relitigation of

10  any matters litigated before or decided by the Florida Court over which it had jurisdiction.

11       The Receiver also contends, by a gross misreading of the Eleventh Circuit's

12  jurisdictional order providing that the court will "Carry with the case the question of

13  whether [the Eleventh Circuit has] jurisdiction of order (3) [i.e., the Omnibus Order]," that

14  the Eleventh Circuit will be determining "the issue of jurisdiction over the $1,762,762.56."

15  Receiver Opp. at 10:16. In fact, the Eleventh Circuit's order obviously merely addresses

16  whether that court has appellate jurisdiction with regard to the Florida Court's order, not

17  the Florida Court's jurisdiction over any funds belonging to the Debtor.

18       This Court can and should proceed with consideration of injunctive relief under

19  Section 105 without regard to spurious arguments about relitigation or jurisdiction.

20  **C.**    **Debtor Has Made an Ample Showing to Justify Injunctive Relief.**

21       The Receiver argues that there is insufficient evidence to justify an injunction

22  against him. The Receiver's argument assumes that enjoining enforcement of the Florida

23  Court's orders means allowing the Debtor to use money presently held in its blocked

24  account. That is not the case—the requested injunction would prevent the Receiver from

25  enforcing the Omnibus Order so as to permanently remove money from the estate.

26  Whether the Debtor has litigation expenses or adequate cash reserves has no relationship to

27  whether the Receiver should be able to invade the Debtor's accounts to collect on his pre-

28  petition claim, which the Court has found is likely merely an unsecured claim.

-5-

W02-WEST:5SS1\400522626.1                                  REPLY IN SUPPORT OF PRELIMINARY
Case: 07-05156    Doc #: 58    Filed: 11/13/2007    Page 6 of 9    INJUNCTION.

RER-62      3154

**D.    The Florida Receivership Is Subject to this Court's Jurisdiction Over the Debtor and its Property.**

The FTC argues that the receivership established by the Florida Court gives that Court in rem jurisdiction over "Reserve Funds" to the exclusion of the bankruptcy estate. But that jurisdiction must yield to the bankruptcy court once Debtor initiates a proceeding here. See In re Si Yeon Park, Ltd., 198 B.R. 956, 958 (Bankr. C.D. Calif. 1996) (rejecting effort by receiver to hold bankruptcy trustees in contempt and stating "If bankruptcy trustees have to beg permission to sue state court receivers in order to recover possession and control of bankruptcy estate property from a receivership pending at the time of the bankruptcy petition, in effect the state courts would have the final say as to the disposition of bankruptcy estate property and causes of action. The interference with bankruptcy jurisdiction that would result would be clearcut and serious."). No different situation is presented by the federal Receiver's efforts to avoid bankruptcy court jurisdiction here.

The FTC relies on the Ninth Circuit's decision in Commodity Futures Trading Commission v. Co-Petro Marketing Group, Inc., 700 F.2d 1279 (9th Cir. 1983) as supposedly establishing in this Circuit the superiority of a district court's orders with regard to a receivership over bankruptcy proceedings. But the FTC blatantly misreads the meaning and scope of Co-Petro. In fact, it stands for the principle urged by Debtor here, that the Bankruptcy Code cannot be circumvented by pre-petition receivership orders. The Co-Petro court said:

> Section 1471(e) [now 1334(e)] makes explicit that under the new Act, all property of the debtor, wherever located, is in *custodia legis* of the bankruptcy court. *Id.*
>
> The essential purpose is, basically, to render the authority and control of the bankruptcy court paramount and all-embracing to the extent required to achieve the ends contemplated by the new legislation and to exclude any interference by the acts of others or by proceedings before other courts where such activities or judicial proceedings would in some way frustrate the jurisdiction of the bankruptcy courts.
> 1 *Collier Bankruptcy Manual* § 3.01, at 3-24 (3d ed. 1982).

-6-

> Allowing the district court to enforce its preliminary injunction by directing return of the $60,000 to the receiver would in no way frustrate the jurisdiction of the bankruptcy court. Section 543 of the Act protects the bankruptcy court's exclusive jurisdiction over property of the estate by requiring the receiver to preserve it and deliver it to the bankruptcy trustee.

Id. at 1282-83.

Under Co-Petro, the receiver was only allowed to take possession of property of the debtor so that it could be turned over to the bankruptcy estate under Bankruptcy Code section 543. The FTC's approach would thus result in the useless act of having Debtor pay money to the Receiver so that it could be returned to Debtor. Here, the Receiver does not intend to return to the estate for the benefit of all of the estate's creditors any funds he obtains from the Debtor, exactly the opposite of the relief approved by Co-Petro. Since the Receiver intends to use the Florida Court's orders to thwart this Court's jurisdiction over Debtor and its estate, injunctive relief should be granted against enforcement of the Florida Court's orders.

Similarly, the Second Circuit long ago rejected claims much like those asserted by the Receiver here and recognized that receivership claims that have not attached to specific property must give way to a bankruptcy court's jurisdiction. In re Koch, 116 F.2d 243, 245-46 (2nd Cir. 1940), cert. denied, 313 U.S. 565 (1941). In Koch, the court said:

> The appellant contends that the state court judgment vested in him title to the property obtained by the debtor through fraudulent practices and thereby removed it from the summary jurisdiction of the bankruptcy court, which . . . administers only property of the debtor. If it were true that prior to the institution of the debtor's arrangement petition, the state court had determined that specific property in the debtor's possession belonged not to her but to a defrauded purchaser of stock, the appellant's position would be unassailable. But the premise that the state court judgment *ex proprio vigore* vested the receiver with title to all or any of the debtor's property will not withstand scrutiny. . . .The state court judgment did not purport to decide what property of the debtor had been derived by means of her fraudulent practices, nor to vest the receiver with

-7-

title to all of her property. . . . Without identification of property no title thereto can vest in the receiver; and until the receiver or some intervening victim of the defendant's fraud makes claim in the action to some specific property in the defendant's possession, we do not think that it can be deemed a suit in rem, and as such have precedence over the bankruptcy proceedings. [Citations].

The appellant relies strongly on Texas v. Donoghue, 302 U.S. 284, 58 S.Ct. 192, 82 L.Ed. 264, which recognizes the rule that where title has vested in an adverse claimant prior to the bankruptcy his title cannot be disturbed by summary proceedings in bankruptcy. But such rule [is] plainly inapplicable if, as we believe, no title was vested in the receiver by the state court judgment and the action was not a suit in rem because no one had made claim therein to any specific property.

### III.

### CONCLUSION

The Court should enter a preliminary injunction against the Receiver and the FTC under Section 105 to protect Debtor's property for the benefit of all of its creditors.

Dated: November 13, 2007

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By: _____ /s/ Steven B. Sacks
STEVEN B. SACKS
Attorneys for Debtor The Billing Resource, dba
Integretel

-8-

**RER - 63**

1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
2    Including Professional Corporations
   MICHAEL H. AHRENS, Cal. Bar No. 44766
3  STEVEN B. SACKS, Cal. Bar No. 98875
   JEFFREY K. REHFELD, Cal. Bar No. 188128
4  Four Embarcadero Center, 17th Floor
   San Francisco, California  94111-4106
5  Telephone:    415-434-9100
   Facsimile:    415-434-3947
6  Email:        mahrens@sheppardmullin.com
                 jrehfeld@sheppardmullin.com
7                ssacks@sheppardmullin.com

8  Attorneys for The Billing Resource,
   dba Integretel
9

10              UNITED STATES BANKRUPTCY COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12                    SAN JOSE DIVISION

13 | In re | Case No. 07-52890 ASW

14 | THE BILLING RESOURCE, dba Integretel, a California corporation, | Chapter 11

15 |                          | **DEBTOR'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF USE OF CASH COLLATERAL ON A FURTHER INTERIM BASIS INCLUDING APPROVAL OF FIRST AMENDED PAYMENTONE STIPULATION THROUGH AND INCLUDING NOVEMBER 30, 2007 AND OMNIBUS REPLY TO OBJECTIONS TO DEBTOR'S CASH COLLATERAL MOTION**
16 |                 Debtor. |
   | Tax ID: 33-0289863 |
17 |                          |
18 |                          |
19 |                          |
20 |                          |
21 |                          |
22 |                          | Date:       November 16, 2007
   |                          | Time:       10:30 a.m.
23 |                          | Place:      United States Bankruptcy Court
   |                          |             280 South First Street
   |                          |             San Jose, California
24 |                          | Judge:      Hon. Arthur S. Weissbrodt
   |                          | Courtroom:  3020
25
26
27
28

W02-WEST:5SS1\400526704.1

DEBTOR'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF USE OF CASH
COLLATERAL ON A FURTHER INTERIM BASIS

# INTRODUCTION

The above-captioned debtor and debtor in possession, The Billing Resource, dba Integretel, a California corporation (the "Debtor"), hereby files this Memorandum of Points and Authorities in support of the Debtor's use of cash collateral on a further interim basis through and including November 30, 2007, or as soon thereafter as the Court and counsel are available for a further hearing on the motion, and Omnibus Reply (the "Reply") to the objections filed on or about November 12, 2007 (the "Objections") to the Debtor's Cash Collateral Motion.[1]

Of the Debtor's numerous creditors, only the Federal Trade Commission ("FTC") and David R. Chase, the Receiver appointed in the FTC's action against the Debtor and others, filed objections to the Debtor's continued motion for use of cash collateral beyond November 2, 2007. The FTC and the Receiver's objections go exclusively to the issue of whether the Debtor can use money that has been placed by stipulation in a blocked debtor in possession account, which is an issue the Court will separately address at a hearing on December 14, 2007. Nothing in this proposed cash collateral order changes the status of the blocked account.

Consistent with the Court's prior determinations, good cause exists to grant the Debtor's continued use of cash collateral *for the very limited period of the next two weeks, through and including November 30, 2007.* The Debtor believes that the Official Unsecured Creditors' Committee (the "Committee") will support the Debtor's request. Granting the Debtor this further breathing spell will provide the Debtor the needed time to meet with the Committee to further explore the terms for a possible plan of reorganization contemplating a continuation of business operations, with the goal of allowing the Debtor to exit bankruptcy as quickly as possible, while also maximizing value to unsecured creditors.

---

[1] The budget corresponding to the Debtor's requested continued interim use of cash collateral through and including November 30, 2007 is the budget which was attached as Exhibit B to the Declaration of Paul Weber dated October 11, 2007 (the "Debtor's Budget"), a copy of which budget was also attached as Exhibit B to the "Notice of Signing of Further Order Approving Interim Use of Cash Collateral and Granting Replacement Liens and Approving First Amended Stipulation With PaymentOne Corporation Regarding Use of Cash Collateral and Adequate Protection on an Interim Basis Through and Including November 2, 2007." A revised cash collateral order in substantially the form the Debtor currently intends to present to the Court at the November 2 hearing is attached hereto as Exhibit 1.

W02-WEST:5SS1\400526704.1

DEBTOR'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF USE OF CASH
COLLATERAL ON A FURTHER INTERIM BASIS

Case: 07-52890    Doc #: 253    Filed: 11/14/2007    Page 14 of 46

RER-63        3159

**ARGUMENT**

**A.    The Court Should Approve the Debtor's Further Interim Use of Cash Collateral Until November 30, 2007.**

The Debtor filed its voluntary bankruptcy petition eight weeks ago on September 16, 2007. On September 26, 2007, the Court entered its "Order Approving Interim Use of Cash Collateral and Granting Replacement Liens and Approving First Amended Stipulation with PaymentOne Corporation Regarding Use of Cash Collateral and Adequate Protection on an Interim Basis."

On October 1, 2007, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") in this case pursuant to section 1102(a)(2). On October 10, 2007, the Committee participated in an initial face-to-face meeting with the Debtor and its representatives for which several Committee members flew across the country and for which others attended by telephone. A quorum of the Committee was present. Prior to and at the October 10 meeting, the Debtor provided the Committee with financial information including projections, and various other types of information. Following the October 10 meeting the Debtor has provided the Committee with additional information.

At the October 10 meeting, it was agreed that the Committee would consent to the Debtor's continued use of cash collateral on the terms proposed by the Debtor in its budget on an interim basis for a period of two to three weeks. The Debtor and the Committee entered into a stipulation regarding the Debtor's use of cash collateral on an interim basis through and including November 2, 2007. During that time it was contemplated that the Debtor would negotiate with the Committee a term sheet for a plan of reorganization contemplating a continuation of business operations with the goal of allowing the Debtor to exit bankruptcy as quickly as possible, while also maximizing value to unsecured creditors.

On October 16, 2007, the Court signed its "Further Order Approving Interim Use of Cash Collateral and Granting Replacement Liens and Approving First Amended Stipulation with PaymentOne Corporation Regarding Use of Cash Collateral and Adequate Protection on an Interim Basis Through and Including November 2, 2007."

The Debtor and the Committee have continued to work on terms for a possible plan of

-2-

1   reorganization and for one or more sales of assets by the Debtor. The Debtor has met with the

2   Committee's chair and counsel and with a prospective purchaser. The Debtor believes that the

3   Committee will shortly give its consented to the Debtor's continued use of cash collateral in its

4   current budget on an interim basis for a period of two weeks.

5         Continued use of cash collateral makes eminent sense. By continuing to operate, the

6   Debtor is able to deal with the LECs in the ordinary course of business and thus avoids offsets,

7   increases in reserves claimed by LECs or delays in payments. The Debtor is only entity that can

8   effectively perform this function. In addition, the Debtor's customers need the Debtor to continue

9   to process billing transactions. A key component for any recovery to creditors in this bankruptcy

10  case will be the ability to establish the amount of each unsecured claim, which is an extremely

11  complicated function which the Debtor is by far the best, and likely the only, party able to quickly

12  and properly perform. The Debtor also has the necessary institutional knowledge required to

13  negotiate with New York and Tennessee tax claimants. In addition, without continued operations

14  the subsidiary PaymentOne is out of business, and its continued operations are important to the

15  Debtor and its creditors. Moreover, as a majority-owned subsidiary PaymentOne is a valuable

16  asset of the bankruptcy estate. Likewise, without continued operations, Inmate Calling Solutions'

17  business is severely threatened, and its operations are also important to the Debtor. Granting the

18  Debtor the requested further interim use of cash collateral for the next two weeks, through and

19  including November 30, 2007, or as soon thereafter as the Court and counsel are available for a

20  further hearing on the motion, is both the prudent course of action and in the best interest of the

21  Debtor's bankruptcy estate.

22  **B.    PaymentOne and POL Support the Debtor's Further Interim Use of Cash Collateral
            Until November 30, 2007.**
23

24        PaymentOne and POL, which each assert secured claims against the Debter, have

25  consented to the Debtor's further interim use of cash collateral through and including November

26  30, 2007. PaymentOne also agrees that the First Amended PaymentOne Stipulation remains in

27  effect for the interim period, except as revised in the proposed Order approving such interim use

28  by the Debtor.

-3-

W02-WEST:5SS1\400526704.1

DEBTOR'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF USE OF CASH
COLLATERAL ON A FURTHER INTERIM BASIS

**C.    The Debtor Has Adequately Addressed the U.S. Trustee's Concern.**

The U.S. Trustee raised a concern about the Motion in connection with a portion of the carve-out for professionals contained in the First Amended PaymentOne Stipulation and its effect as to any subsequently appointed trustee or its professionals. The Debtor has addressed with PaymentOne the U.S. Trustee's objection, and PaymentOne agreed to change the carve-out language contained in the proposed order in a manner which the Debtor believes addresses and resolves the U.S. Trustee's objection. PaymentOne has agreed during the continued interim period until November 30 to a full carveout to professionals for the Debtor, the Committee and any subsequently appointed trustee – retroactive to the filing of this case.

**D.    The Receiver and FTC Have No Basis to Oppose the Use of Cash Collateral.**

The Receiver and FTC again argue that the Receiver is entitled to obtain $1.76 million from the Debtor and that their rights should be protected in the context of this cash collateral proceeding. The dispute among the FTC, Receiver and Debtor is being addressed in the pending adversary proceeding brought by the Debtor. The Court has set a hearing for December 14, 2007 to consider whether funds on held in a blocked debtor in possession account should be released to the Debtor. As a result, there is no reason to address the FTC and Receiver's issue at this time, as nothing will occur with regard to the blocked account without an order from this Court.

<b><u>CONCLUSION</u></b>

For the reasons set forth herein as well as the Debtor's other cash collateral motion papers, good cause exists to approve the Debtor's use of cash collateral, including approval of the First Amended PaymentOne Stipulation, for a further interim period through and including November 16, 2007, or as soon thereafter as the Court and counsel are available for a further hearing on the motion. If the Debtor is not permitted to use cash collateral, the result will be the forced cessation of the Debtor's business as well as the forced closure of its most valuable asset, PaymentOne. Such a result would be not be in the best interests of the Debtor's creditors or its bankruptcy estate.

Granting the Debtor's use of its cash collateral on an interim basis will permit time the Debtor to meet with the Committee regarding a possible plan of reorganization contemplating a

-4-

W02-WEST:5SS1\400526704.1

DEBTOR'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF USE OF CASH
COLLATERAL ON A FURTHER INTERIM BASIS

Case: 07-52890    Doc #: 253    Filed: 11/14/2007    Page 5 of 6

RER–63    3162

1   continuation of business operations, with the goal of allowing the Debtor to exit bankruptcy as

2   quickly as possible, while also maximizing value to unsecured creditors.

3   Dated: November 14, 2007          Respectfully submitted,

4                                      SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

6                                By          /s/ Steven B. Sacks

7                                         STEVEN B. SACKS
                                  Attorneys for Debtor The Billing Resource, dba
8                                          Integretel

-5-

W02-WEST:5SS1\400526704.1

Case: 07-52890      Doc #: 253      Filed: 11/14/2007      Page 6 of 6

DEBTOR'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF USE OF CASH
COLLATERAL ON A FURTHER INTERIM BASIS

RER-63      3163

# **EXHIBIT 1**

1  SHEPPARD, MULLIN, RICHTER &
   HAMPTON LLP
2    A Limited Liability Partnership
     Including Professional Corporations
3  MICHAEL H. AHRENS,
   Cal. Bar No. 44766
4  JEFFREY K. REHFELD,
   Cal. Bar No. 188128
5  ORI KATZ,
   Cal. Bar No. 209561
6  Four Embarcadero Center, 17th Floor
   San Francisco, CA 94111
7  Telephone:    415-434-9100
   Facsimile:     415-434-3947
8
9  Attorneys for Debtor and Debtor-in-
   Possession
10 The Billing Resource, dba Integretel

11              UNITED STATES BANKRUPTCY COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13                    SAN JOSE DIVISION

14

15  In re:                              )   Case No. 07-52890 ASW
                                        )
16  THE BILLING RESOURCE, dba           )   Chapter 11
    INTEGRETEL, a California corporation )
17                                      )   **FURTHER ORDER APPROVING**
            Debtor.                     )   **INTERIM USE OF CASH COLLATERAL**
18                                      )   **AND GRANTING REPLACEMENT**
                                        )   **LIENS AND APPROVING FIRST**
19                                      )   **AMENDED STIPULATION WITH**
                                        )   **PAYMENTONE CORPORATION**
20                                      )   **REGARDING USE OF CASH**
                                        )   **COLLATERAL AND ADEQUATE**
21                                      )   **PROTECTION ON A FURTHER**
                                        )   **INTERIM BASIS THROUGH AND**
22                                      )   **INCLUDING NOVEMBER 30, 2007**
                                        )
23                                      )   Date:        November 16, 2007
                                        )   Time:        10:30 a.m.
24                                      )   Place:       United States Bankruptcy Court
                                        )                280 South First Street
25                                      )                San Jose, California
                                        )   Judge:       Hon. Arthur S. Weissbrodt
26                                      )   Courtroom:   3020
                                        )
27  _____)

28

W02-WEST:5SS1\400527950.1

                                              FURTHER ORDER APPROVING FURTHER
                                              INTERIM USE OF CASH COLLATERAL AND

The Billing Resource, dba Integretel, a California corporation (the "Debtor") filed its "Emergency Motion For Use Of Cash Collateral And Granting Replacement Liens" (the "Motion") in the above-referenced bankruptcy case (the "Bankruptcy Case"). Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion. A continued interim hearing (the "September 26 Interim Hearing") with respect to the Motion was previously held on September 26, 2007 before the undersigned United States Bankruptcy Judge at the above-noted place. At the September 26 Interim Hearing, counsel for the Debtor presented to the Court a "First Amended Stipulation With PaymentOne Corporation Regarding Use Of Cash Collateral And Adequate Protection" (the "First Amended PaymentOne Stipulation"), a blacklined version of which the Debtor had previously presented to the Court at an initial hearing held on September 21, 2007, and requested that the Court approve the First Amended PaymentOne Stipulation on an interim basis at the September 26 Interim Hearing.

Pursuant to the Motion, as revised in light of the First Amended PaymentOne Stipulation, the pleadings filed by the Debtor in support of the Motion prior to the September 26 Interim Hearing and the statements made at the September 26 Interim Hearing, and Bankruptcy Code Sections 105, 361, and 363, the Court at the September 26 Interim Hearing entered its "Order Approving Interim Use Of Cash Collateral And Granting Replacement Liens And Approving First Amended Stipulation With PaymentOne Corporation Regarding Use Of Cash Collateral And Adequate Protection On An Interim Basis" (the "September 26 Interim Order"). In connection with the September 26 Interim Hearing, the Court also orally approved certain stipulations regarding the Debtor's interim use of cash collateral between the Debtor and the following entities: (a) POL, Inc.; (b) Public Communication Services, Inc.; and (c) David R. Chase, as Receiver for certain entities (the "Receiver").

A further continued interim hearing (the "October 15 Interim Hearing") with respect to the Motion was previously held on October 15, 2007 before the undersigned United States Bankruptcy Judge at the above-noted place. Prior to the hearing, the Debtor and the Official Committee of Unsecured Creditors (the "Committee") filed a stipulation (the "Committee

W02-WEST:5SS1\400527950.1

-1-

1  Support Stipulation") stipulating to the to the Debtor's use of cash collateral on a further interim

2  basis through and including November 2, 2007. Pursuant to the Motion, as revised in light of the

3  First Amended PaymentOne Stipulation, the pleadings filed by the Debtor in support of the

4  Motion prior to the October 15 Interim Hearing and the statements made at the October 15 Interim

5  Hearing, and Bankruptcy Code Sections 105, 361, and 363, the Court on October 16 Interim

6  Hearing signed its "Further Order Approving Interim Use Of Cash Collateral And Granting

7  Replacement Liens And Approving First Amended Stipulation With PaymentOne Corporation

8  Regarding Use Of Cash Collateral And Adequate Protection On An Interim Basis Through And

9  Including November 2, 2007" (the "October 15 Interim Order").

10         A further interim hearing (the "November 2 Interim Hearing") with respect to the

11  Motion seeking further interim approval of the Debtor's use of cash collateral through and

12  including November 16, 2007, including further interim approval of the First Amended

13  PaymentOne Stipulation duly came on for hearing before the undersigned United States

14  Bankruptcy Judge at the above-noted place and time set forth on the caption page of this Order.

15  Appearances were as noted in the record at the November 2 Interim Hearing.

16         Prior to the November 2 Interim Hearing, the Debtor and the Committee filed a

17  stipulation (the "Further Committee Support Stipulation") further stipulating to the to the Debtor's

18  use of cash collateral in accordance with the "Budget" (as such term is defined in the following

19  paragraph) on a further interim basis through and including November 16, 2007.

20         A further interim hearing (the "November 16 Interim Hearing") with respect to the

21  Motion seeking further interim approval of the Debtor's use of cash collateral through and

22  including November 30, 2007, including further interim approval of the First Amended

23  PaymentOne Stipulation duly came on for hearing before the undersigned United States

24  Bankruptcy Judge at the above-noted place and time set forth on the caption page of this Order.

25  Appearances were as noted in the record at the November 16 Interim Hearing.

26         Prior to the November 16 Interim Hearing, the Debtor and the Committee filed a

27  stipulation (the "Further Committee Support Stipulation") further stipulating to the Debtor's use of

28

W02-WEST:5SS1\400527950.1                    -2-

FURTHER ORDER APPROVING FURTHER
INTERIM USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

RER-63        3167

1    cash collateral in accordance with the "Budget" (as such term is defined in the following

2    paragraph) on a further interim basis through and including November 30, 2007.

3           Pursuant to the Motion, as further revised by the pleadings filed by the Debtor in

4    support of the Motion prior to the September 26 Interim Hearing, the October 15 Interim Hearing,

5    the November 2 Interim Hearing and the November 16 Interim Hearing, including without

6    limitation the Notice of the November 16 Interim Hearing, the Notice of Signing of Order

7    regarding the October 15 Interim Order, the Declaration of Paul Weber dated October 11, 2007 in

8    support of the Debtor's October 15 Interim Hearing on Cash Collateral (the "October 11 Weber

9    Declaration") including the revised budget attached as Exhibit B to the October 11 Weber

10   Declaration (the "Budget"), the Notice of Signing of Order regarding the November 2 Interim

11   Order, the Debtor's reply to the oppositions to the Motion and in support of the Motion, the

12   statements made at the November 16 Interim Hearing, and Bankruptcy Code Sections 105, 361,

13   and 363, the Debtor seeks an order from the Court: (1) authorizing the Debtor to use certain assets

14   of the Debtor which constitute "cash collateral" as defined in Bankruptcy Code section 363(a)

15   (such assets of the Debtor shall be referred to herein as the "Cash Collateral") on a an interim basis

16   through and including November 30, 2007, or as soon thereafter as the Court and counsel are

17   available for a further hearing on the Motion; (2) granting approval of the First Amended

18   PaymentOne Stipulation and the terms and conditions set forth therein as revised in this Order on

19   an interim basis through and including November 30, 2007, or as soon thereafter as the Court and

20   counsel are available for a further hearing on the Motion; and (3) granting PaymentOne

21   Corporation ("PaymentOne"), POL, Inc. ("POL")[1], Network Telephone Services, Inc. ("Network

22

23

24   ───────────────

25   [1] The following entities are collectively referred to in this Order as "POL": Access Programs, Inc.;
     Action Date Connections, Inc.; Benchmark Communications, Inc.; Blazen Communications, Inc.;
26   Call Transfer Services, Inc.; Cassiopeia Group, Inc.; Clear Command Telecommunications, Inc.;
     Country Club Network Services, Inc.; Date Finders Singles, Inc.; Enhanced Phone Services, Inc.;
27   Inovate Telecommunications, Inc.; Invesco Telecommunications, Inc.; Listen Com. Inc.; LJ
     Internet, Inc.; Love Dating Network, Inc.;Lunar Tel, Inc.; Messenger Com, Inc.; Omnipresent
28   Digital, Inc.; Palisade Telcom, Inc.; POL, Inc.; Psychic, Inc.; Rebound Communications, Inc.;
     Singles Date Match, Inc.; Special Comtel, Ltd.; Spring Telecom, Inc.; Vesstone

W02-WEST:5SS1\400527950.1                              -3-

1   Telephone"), Personal Voice, Inc. ("Personal Voice") and Public Communication Services, Inc.

2   ("Public Communication") (collectively, the "Alleged Cash Collateral Secured Creditors"), as

3   adequate protection for the use by the Debtor of Cash Collateral in which the Alleged Cash

4   Collateral Secured Creditors have an alleged interest, a replacement lien upon certain of the

5   Debtor's personal property as set forth in this Order (and in the case of PaymentOne as set forth in

6   the First Amended PaymentOne Stipulation), but only to the extent each respective Alleged Cash

7   Collateral Secured Creditors possessed valid, perfected and enforceable prepetition liens in the

8   Cash Collateral; and (4) the setting of a final hearing on the Motion including approval of the First

9   Amended PaymentOne Stipulation (the "Final Hearing") pursuant to Rule 4001 of the Federal

10  Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

11          The Court, having reviewed and considered the Motion, and all pleadings filed in

12  support thereof, the other matters of record in this Bankruptcy Case, the arguments and

13  representations of counsel at the November 16 Interim Hearing, having completed both the

14  September 26 Interim hearing, the October 15 Interim Hearing, the November 2 Interim Hearing

15  and the November 16 Interim Hearing in accordance with Rule 4001 of the Bankruptcy Rules, and

16  good cause appearing therefor,

17          **THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:**

18          1.      The Debtor filed a voluntary petition for relief under Chapter 11 of the

19  Bankruptcy Code on September 16, 2007 (the "Petition Date"). No trustee or examiner has been

20  appointed in this case, and the Debtor is authorized to operate its business as a debtor-in-

21  possession.

22          2.      The Court has jurisdiction over these proceedings and the parties and

23  property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. This is a core proceeding

24  within the meaning of 28 U.S.C. § 157(b)(2).

25          3.      Pursuant to §§ 102(1) and 363 of the Bankruptcy Code and Bankruptcy

26

27

28  Telecommunications, Inc.; Voicemail, Inc.; Voice Services, Ltd.; Vortex Communications &
    Telephone, Inc.; Wonder Network, Inc.

W02-WEST:5SS1\400527950.1                    -4-

1    Rule 4001 including Bankruptcy Rule 4001(b) and (d), the Debtor has provided such notice as was

2    practicable and appropriate under the circumstances of the time, place and nature of the November

3    16 Interim Hearing and opportunity to object to the entry of this Order to among others:  (1) the

4    Alleged Cash Collateral Secured Creditors; (2)  each creditor on the List of 30 Largest Creditors

5    filed pursuant to Bankruptcy Rule 1007(d); (3) the Office of the United States Trustee; (4)  other

6    significant parties in interest, including the Receiver and the FTC; and (5) those parties who had

7    filed with the Court filed a request for service pursuant to Bankruptcy Rule 2002.  The foregoing

8    notice is adequate and sufficient in light of the nature of the relief requested in the Motion as

9    revised.

10          4.      The Debtor must have the use of cash generated from the Debtor's assets

11   including without limitation the Debtor's prepetition assets which each of the Alleged Cash

12   Collateral Secured Creditors claims to be its Cash Collateral in order to continue to operate and

13   preserve the value of Debtor's estate.

14          5.      Unless the Debtor is permitted to use the Cash Collateral, the Debtor's

15   ability to operate its business, pay expenses of this Bankruptcy Case, and to preserve and maintain

16   the property and assets of its estate and to reorganize will be immediately and irreparably

17   jeopardized, and the Debtor's use of the Cash Collateral is necessary to avoid immediate and

18   irreparable harm to the Debtor and the Debtor's bankruptcy estate.

19          6.      The level of adequate protection for the Alleged Cash Collateral Secured

20   Creditors proposed to be provided by the Debtor in the Motion as revised and as more particularly

21   set forth below, in return for the use of the Cash Collateral, is reasonable.

22          7.      Good cause has been shown for entry of this Order, including without

23   limitation the approval of the First Amended PaymentOne Stipulation and the terms and

24   conditions set forth therein as revised by this Order on an interim basis through and including

25   November 30, 2007, or as soon thereafter as the Court and counsel are available for a further

26   hearing on the Motion.  Among other things, entry of this Order will preserve each of the Alleged

27   Cash Collateral Secured Creditor's position vis-a-vis the Debtor and other creditors of the estate so

28   that each of the respective Alleged Cash Collateral Secured Creditor's position vis-a-vis the Debtor

W02-WEST:5SS1\400527950.1                                -5-

FURTHER ORDER APPROVING FURTHER
INTERIM USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS
Case: 07-52890      Doc #: 253      Filed: 11/14/2007      Page 7 of 19

RER-63      3170

1    and such other creditors is neither diminished nor enhanced by Debtor's use of Cash Collateral.

2        8.    To the extent that any of the foregoing findings constitute or include

3    conclusions of law, they shall be so deemed.

4        **ACCORDINGLY, IT IS HEREBY ORDERED AS FOLLOWS:**

5        1.    The Motion, as amended including by the relief sought in connection with

6    PaymentOne, is approved on a further interim basis through and including November 30, 2007, or

7    as soon thereafter as the Court and counsel are available for a further hearing on the Motion, and

8    the First Amended PaymentOne Stipulation and terms and conditions set forth therein as revised

9    by this Order are approved on a further interim basis through and including November 30, 2007,

10   or as soon thereafter as the Court and counsel are available for a further hearing on the Motion.

11   Use of Cash Collateral as set forth in the Budget which is attached as <u>Exhibit B</u> to the October 11

12   Weber Declaration is approved on a further interim basis through and including November 30,

13   2007, or as soon thereafter as the Court and counsel are available for a further hearing on the

14   Motion.  Notwithstanding anything to the contrary contained in the First Amended PaymentOne

15   Stipulation, no super-priority administrative expense claim pursuant to Bankruptcy Code Section

16   507(b) is granted or provided to PaymentOne or to any other Alleged Cash Collateral Secured

17   Creditor on a further interim basis through and including November 30, 2007, or as soon thereafter

18   as the Court and counsel are available for a further hearing on the Motion, provided, however, that

19   such claim will be determined at the Final Hearing.  Notwithstanding the foregoing, PaymentOne

20   (and any other Alleged Cash Collateral Secured Creditor beneficiary of this Order), reserves

21   statutory rights it may have as a matter of law under Bankruptcy Code section 507(b) or any other

22   provision of the Bankruptcy Code, and the Debtor and its bankruptcy estate reserve all defenses

23   thereto.  This Order is valid immediately and is fully effective upon its entry.

24

25       2.    Oppositions to the Motion filed prior to the November 16 Interim Hearing

26   or raised at the November 16 Interim Hearing, to the extent not withdrawn, are overruled.

27       3.    The Debtor may use Cash Collateral in which PaymentOne has an alleged

28   interest in accordance with the First Amended PaymentOne Stipulation as revised by this Order.

FURTHER ORDER APPROVING FURTHER
INTERIM USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

RER-63        3171

1     4.     The Debtor is authorized to pay PaymentOne the Pipeline Collection

2 Property in accordance with the terms and conditions of the First Amended PaymentOne

3 Stipulation as revised by this Order and the October 11 Weber Declaration including its attached

4 Budget filed in this Bankruptcy Case.

5     5.     PaymentOne is granted, pursuant to Bankruptcy Code sections 361(2) and

6 363(e), valid, perfected and enforceable replacement liens upon all post-petition property of the

7 Debtor of the same type and character of any pre-petition property as to which PaymentOne had

8 valid, perfected and enforceable security interests or liens (including any proceeds thereof to the

9 extent that PaymentOne had valid, perfected and enforceable pre-petition security interests or pre-

10 petition liens in proceeds).   Notwithstanding anything to the contrary contained in the First

11 Amended PaymentOne Stipulation or this Order, the replacement liens granted to PaymentOne

12 shall not include any Bankruptcy Code chapter 5 avoidance actions or the proceeds thereof. The

13 replacement liens granted to PaymentOne shall be automatically perfected pursuant to this Order

14 and PaymentOne shall not be required to take any further action to perfect such liens.

15     6.     PaymentOne's replacement liens on the post-petition property shall have the

16 same priority vis-a-vis other liens and interests as PaymentOne's pre-petition liens and security

17 interests have vis-a-vis such other liens and interests.   The replacement liens granted to

18 PaymentOne by this Order are intended to preserve PaymentOne's position vis-a-vis the Debtor

19 and other creditors of the estate so that PaymentOne's position vis-a-vis the Debtor and such other

20 creditors is neither diminished nor enhanced by Debtor's use of Cash Collateral and PaymentOne's

21 receipt of replacement liens.

22

23     7.     The replacement liens granted to PaymentOne shall be subordinated from

24 the Petition Date until further order of the Court to any allowed on an interim or final basis

25 expenses of this bankruptcy case including without limitation any allowed on an interim or final

26 basis fees and expenses of professionals retained by the Debtor and any official committee

27 appointed in this bankruptcy case as well as those of any trustee subsequently appointed in the

28 bankruptcy case and such trustee's professionals, subject to the terms and conditions set forth in

FURTHER ORDER APPROVING FURTHER
INTERIM USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

the First Amended PaymentOne Stipulation, but amended for the time period up to and including November 30, 2007 to strike the following language from Paragraph 8 of the First Amended PaymentOne Stipulation: ", but only to the extent such fees and expenses are provided for in the Budget and were actually incurred before this First Amended Stipulation terminated."

8.    Notwithstanding anything to the contrary set forth in this Order, this Order does not determine whether PaymentOne has any valid, perfected or enforceable prepetition liens or security interests in the Cash Collateral or any of the Debtor's other assets, and both the Debtor and PaymentOne reserve all rights and defenses with respect thereto.  The replacement liens granted to PaymentOne in consideration of its asserted prepetition liens pursuant to this Order are effective only to the extent that PaymentOne's prepetition liens in the Cash Collateral are valid, perfected and enforceable.

9.    The Debtor may use Cash Collateral in which POL has an alleged interest.

10.    POL is granted, pursuant to Bankruptcy Code sections 361(2) and 363(e), valid, perfected and enforceable replacement liens upon all post-petition property of the Debtor of the same type and character of any pre-petition property as to which POL had valid, perfected and enforceable security interests or liens, but only to the extent of Cash Collateral used by the Debtor. Notwithstanding anything to the contrary contained in this Order, the replacement liens granted to POL shall not include any Bankruptcy Code chapter 5 avoidance actions or the proceeds thereof. The replacement liens granted to POL shall be automatically perfected pursuant to this Order and POL shall not be required to take any further action to perfect such liens.

11.    POL's replacement liens on the post-petition property shall have the same priority vis-a-vis other liens and interests as POL's pre-petition liens and security interests have vis-a-vis such other liens and interests.  The replacement liens granted to POL by this Order are intended to preserve POL's position vis-a-vis the Debtor and other creditors of the estate so that POL's position vis-a-vis the Debtor and such other creditors is neither diminished nor enhanced by Debtor's use of Cash Collateral and POL's receipt of replacement liens.

12.    The replacement liens granted to POL shall be subordinated from the

W02-WEST:5SS1\400527950.1

-8-

FURTHER ORDER APPROVING FURTHER
INTERIM USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

Case: 07-52890    Doc #: 253    Filed: 11/14/2007    Page 10 of 19

RER-63    3173

1   Petition Date until further order of the Court to any allowed on an interim or final basis expenses

2   of this bankruptcy case including without limitation any allowed on an interim or final basis fees

3   and expenses of professionals retained by the Debtor and any official committee appointed in this

4   bankruptcy case as well as those of any trustee subsequently appointed in the bankruptcy case and

5   such trustee's professionals.

6          13.    Notwithstanding anything to the contrary set forth in this Order, this Order

7   does not determine whether POL has any valid, perfected or enforceable prepetition liens or

8   security interests in the Cash Collateral or any of the Debtor's other assets, and both the Debtor

9   and POL reserve all rights and defenses with respect thereto.  The replacement liens granted to

10  POL pursuant to this Order are effective only to the extent that POL's prepetition liens in the Cash

11  Collateral are valid, perfected and enforceable.

12         14.    The Debtor may use Cash Collateral in which Network Telephone has an

13  alleged interest.

14

15         15.    Network    Telephone    is    granted,    pursuant    to    Bankruptcy    Code

16  sections 361(2) and 363(e), valid, perfected and enforceable replacement liens upon all post-

17  petition property of the Debtor of the same type and character of any pre-petition property as to

18  which Network Telephone had valid, perfected and enforceable security interests or liens, but only

19  to the extent of Cash Collateral used by the Debtor.  Notwithstanding anything to the contrary

20  contained in this Order, the replacement liens granted to Network Telephone shall not include any

21  Bankruptcy Code chapter 5 avoidance actions or the proceeds thereof.  The replacement liens

22  granted to Network Telephone shall be automatically perfected pursuant to this Order and

23  Network Telephone shall not be required to take any further action to perfect such liens.

24         16.    Network Telephone's replacement liens on the post-petition property shall

25  have the same priority vis-a-vis other liens and interests as Network Telephone's pre-petition liens

26  and security interests have vis-a-vis such other liens and interests.  The replacement liens granted

27  to Network Telephone by this Order are intended to preserve Network Telephone's position vis-a-

28  vis the Debtor and other creditors of the estate so that Network Telephone's position vis-a-vis the

W02-WEST:5SS1\400527950.1                    -9-

FURTHER ORDER APPROVING FURTHER
INTERIM USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS
Case: 07-52890    Doc #: 253    Filed: 11/14/2007    Page 11 of 19

RER-63        3174

1  Debtor and such other creditors is neither diminished nor enhanced by Debtor's use of Cash

2  Collateral and Network Telephone's receipt of replacement liens.

3       17.     The replacement liens granted to Network Telephone shall be subordinated

4  from the Petition Date until further order of the Court to any allowed on an interim or final basis

5  expenses of this bankruptcy case including without limitation any allowed on an interim or final

6  basis fees and expenses of professionals retained by the Debtor and any official committee

7  appointed in this bankruptcy case as well as those of any trustee subsequently appointed in the

8  bankruptcy case and such trustee's professionals.

9       18.     Notwithstanding anything to the contrary set forth in this Order, this Order

10  does not determine whether Network Telephone has any valid, perfected or enforceable

11  prepetition liens or security interests in the Cash Collateral or any of the Debtor's other assets, and

12  both the Debtor and Network Telephone reserve all rights and defenses with respect thereto. The

13  replacement liens granted to Network Telephone pursuant to this Order are effective only to the

14  extent that Network Telephone's prepetition liens in the Cash Collateral are valid, perfected and

15  enforceable.

16       19.     The Debtor may use Cash Collateral in which Personal Voice has an alleged

17  interest.

18

19       20.     Personal Voice is granted, pursuant to Bankruptcy Code sections 361(2) and

20  363(e), valid, perfected and enforceable replacement liens upon all post-petition property of the

21  Debtor of the same type and character of any pre-petition property as to which Personal Voice had

22  valid, perfected and enforceable security interests or liens, but only to the extent of Cash Collateral

23  used by the Debtor.  Notwithstanding anything to the contrary contained in this Order, the

24  replacement liens granted to Personal Voice shall not include any Bankruptcy Code chapter 5

25  avoidance actions or the proceeds thereof.  The replacement liens granted to Personal Voice shall

26  be automatically perfected pursuant to this Order and Personal Voice shall not be required to take

27  any further action to perfect such liens.

28       21.     Personal Voice's replacement liens on the post-petition property shall have

W02-WEST:5SS1\400527950.1                          -10-

the same priority vis-a-vis other liens and interests as Personal Voice's pre-petition liens and security interests have vis-a-vis such other liens and interests. The replacement liens granted to POL by this Order are intended to preserve Personal Voice's position vis-a-vis the Debtor and other creditors of the estate so that Personal Voice's position vis-a-vis the Debtor and such other creditors is neither diminished nor enhanced by Debtor's use of Cash Collateral and Personal Voice's receipt of replacement liens.

22.    The replacement liens granted to Personal Voice shall be subordinated from the Petition Date until further order of the Court to any allowed on an interim or final basis expenses of this bankruptcy case including without limitation any allowed on an interim or final basis fees and expenses of professionals retained by the Debtor and any official committee appointed in this bankruptcy case as well as those of any trustee subsequently appointed in the bankruptcy case and such trustee's professionals.

23.    Notwithstanding anything to the contrary set forth in this Order, this Order does not determine whether Personal Voice has any valid, perfected or enforceable prepetition liens or security interests in the Cash Collateral or any of the Debtor's other assets, and both the Debtor and Personal Voice reserve all rights and defenses with respect thereto. The replacement liens granted to Personal Voice pursuant to this Order are effective only to the extent that Personal Voice's prepetition liens in the Cash Collateral are valid, perfected and enforceable.

24.    The Debtor may use Cash Collateral in which Public Communication has an alleged interest.

25.    Public Communication is granted, pursuant to Bankruptcy Code sections 361(2) and 363(e), valid, perfected and enforceable replacement liens upon all post-petition property of the Debtor of the same type and character of any pre-petition property as to which Public Communication had valid, perfected and enforceable security interests or liens, but only to the extent of Cash Collateral used by the Debtor. Notwithstanding anything to the contrary contained in this Order, the replacement liens granted to Public Communication shall not include any Bankruptcy Code chapter 5 avoidance actions or the proceeds thereof. The replacement liens

FURTHER ORDER APPROVING FURTHER
INTERIM USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

1  granted to Public Communication shall be automatically perfected pursuant to this Order and

2  Public Communication shall not be required to take any further action to perfect such liens.

3      26.    Public Communication's replacement liens on the post-petition property

4  shall have the same priority vis-a-vis other liens and interests as Public Communication's pre-

5  petition liens and security interests have vis-a-vis such other liens and interests. The replacement

6  liens granted to Public Communication by this Order are intended to preserve Public

7  Communication's position vis-a-vis the Debtor and other creditors of the estate so that Public

8  Communication's position vis-a-vis the Debtor and such other creditors is neither diminished nor

9  enhanced by Debtor's use of Cash Collateral and Public Communication's receipt of replacement

10  liens.

11      27.    The replacement liens granted to Public Communication shall be

12  subordinated from the Petition Date until further order of the Court to any allowed on an interim

13  or final basis expenses of this bankruptcy case including without limitation any allowed on an

14  interim or final basis fees and expenses of professionals retained by the Debtor and any official

15  committee appointed in this bankruptcy case as well as those of any trustee subsequently

16  appointed in the bankruptcy case and such trustee's professionals.

17

18      28.    Notwithstanding anything to the contrary set forth in this Order, this Order

19  does not determine whether Public Communication has any valid, perfected or enforceable

20  prepetition liens or security interests in the Cash Collateral or any of the Debtor's other assets, and

21  both the Debtor and Public Communication reserve all rights and defenses with respect thereto.

22  The replacement liens granted to Public Communication pursuant to this Order are effective only

23  to the extent that Public Communication's prepetition liens in the Cash Collateral are valid,

24  perfected and enforceable.

25      29.    The use of Cash Collateral shall be in the amounts, and for the purposes, set

26  forth on the Budget. Notwithstanding anything to the contrary in the First Amended PaymentOne

27  Stipulation or this Order, to the extent that the Debtor does not spend the full amount of funds

28  which it is authorized to spend in the Budget for a given week period, the Debtor does not "lose"

W02-WEST:5SS1\400527950.1                    -12-

FURTHER ORDER APPROVING FURTHER
INTERIM USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

1  the right to spend thereafter such unused funds, but instead the Debtor may spend such unused

2  funds in a subsequent week period(s) in addition to whatever additional funds the Debtor is

3  authorized to spend in that subsequent week period(s) as provided in the Budget.

4      30.    The Court shall hold the Final Hearing on the Motion including the First

5  Amended PaymentOne Stipulation on _____, 2007 at __:__.m.

6      31.    The Debtor shall, on or before _____, 2007, serve by U.S. mail

7  and email service to the extent that the Debtor's counsel has an email address for any party or its

8  counsel, a copy of this Order and a notice regarding the Final Hearing, to (i) the parties having

9  been given notice of the November 2 Interim Hearing, and (ii) any other party ordered by the

10  Court or who has filed with the Court and served on the Debtor's counsel a request for service

11  pursuant to Bankruptcy Rule 2002.  Such notice shall state that any party in interest objecting to

12  the approval of the Motion on a final basis shall file a written objection with the Court no later

13  than _____, 2007, which objection shall be filed with the Court and served so that it is

14  received on or before 5:00 p.m. (Pacific Time) of such date by the Debtor's counsel, the

15  Committee's counsel, and the Office of the United States Trustee at the following contact

16  information:

17  

18          Counsel to Debtor:

19          Sheppard, Mullin, Richter & Hampton LLP
            Four Embarcadero Center, Suite 1700

20          San Francisco, CA 94111
            Attn:   Michael H. Ahrens, Esq.

21                  Jeffrey K. Rehfeld, Esq.
                    Steven B. Sacks, Esq.

22          Email: mahrens@sheppardmullin.com
                   jrehfeld@sheppardmullin.com

23                 ssacks@sheppardmullin.com

24  
            Counsel to Committee:

25  
            Pachulski Stang Ziehl & Jones LLP

26          150 California Street, 15th Floor
            San Francisco, CA 94111-4500

27          Attn:   John D. Fiero, Esq.

28                  Maxim B. Litvak, Esq.

W02-WEST:5SS1\400527950.1                -13-

                                                FURTHER ORDER APPROVING FURTHER
                                                INTERIM USE OF CASH COLLATERAL AND
                                                GRANTING REPLACEMENT LIENS
Case: 07-52890    Doc #: 253    Filed: 11/14/2007    Page 15 of 19

RER-63        3178

1

Email: jfiero@pzjl.com
    mlitvak@pzjl.com

2

3

<u>Office of the United States Trustee:</u>

4

Office of the United States Trustee
280 S. First Street, Suite 268
San Jose, CA 94113-0002
Attn:   John Wesolowski, Esq.
Facsimile:  (408) 535-5525

5

6

7

32.    If a timely objection is filed, served and received, a written reply thereto

8

shall not be required but may be filed with the Court and served so that it is received by the

9

objecting party no later than _____ , 2007 on or before 11:59 p.m. (Pacific Time).

10

11

** END OF ORDER **

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

W02-WEST:5SS1\400527950.1

-14-

FURTHER ORDER APPROVING FURTHER
INTERIM USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

1

## COURT SERVICE LIST

2

3  Office of the U.S. Trustee
   Office of the U.S. Trustee
4  Attn: Edwina Dowell, Esq.
   280 South First Street, Room 268
5  San Jose, CA 95113

6  The Billing Resource dba Integretel
   The Billing Resource dba Integretel
7  Attn: Ken Dawson
   5883 Rue Ferrari
8  San Jose, CA 95138

9  Proposed counsel for The Billing Resource dba Integretel
   The Billing Resource dba Integretel
10 c/o Sheppard, Mullin, Richter & Hampton LLP
   Attn: Michael H. Ahrens, Esq.
11 4 Embarcadero Center, 17th Floor
   San Francisco, CA 94111-4106
12

13 Counsel for PaymentOne Corporation
   PaymentOne Corporation
14 c/o O'Melveny & Myers LLP
   Attn: Steve Warren, Esq.
15 400 South Hope Street
   Los Angeles, CA 90071-2899
16

17 POL, Inc.
   POL, Inc.
18 c/o Joel R. Dichter, Esq.
   Dichter Law Group, LLC
19 10 Rockefeller Plaza, Suite 816
   New York, New York 10020
20 Email: info@dichterlaw.com
   Fax: (212) 757-5002
21

22 POL, Inc.
   c/o Kathryn Diemer, Esq.
23 Diemer, Whitman & Cardosi
   75 East Santa Clara Street, Suite 290
   San Jose, CA 95113
24

25 Personal Voice, Inc.
   Personal Voice, Inc.
26 Attn: David Giorgione
   16807 A U.S. Highway 19 North, Suite A
   Clearwater, FL 33764
27

28 Personal Voice, Inc.
   Attn: Thomas C. Little

W02-WEST:5SS1\400527950.1                -15-

FURTHER ORDER APPROVING FURTHER
INTERIM USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

RER-63          3180

1  (Registered Agent for Service of Process)
   2123 NE Coachman Rd., Suite A
2  Clearwater, FL 33765

3  <u>Network Telephone Services, Inc.</u>
   Network Telephone Services, Inc.
4  Attn: Daniel Coleman, Esq.
   21135 Erwin Street
5  Woodland Hills, CA 91367

6  Ellen Friedman, Esq.
   Elaine Hammond, Esq.
7  Friedman, Dumas & Springwater LLP
   150 Spear Street, Suite 1600
8  San Francisco, CA 94105

9  <u>Public Communication Services, Inc.</u>
   Public Communication Services, Inc.
10 Attn: Leslie Cohen, Esq.
   Liner Yankelvitz Sunshine & Regenstreif LLP
11 1100 Glendon Avenue, 14th Floor
   Los Angeles, CA 90024-3503
12

13 <u>The Receiver David Chase</u>
   Walter Oetzell, Esq.
14 Steven J. Schwartz, Esq.
   Danning, Gill, Diamond & Kollitz, LLP
15 2029 Century Park East, Third Floor
   Los Angeles, California 90067-2904
16

17 Jeffrey C. Schneider, Esq.
   Tew Cardenas LLP
18 Four Seasons Tower, Fifteenth Floor
   1441 Brickell Avenue
19 Miami, Florida 33131-3407

20 <u>Federal Trade Commission</u>
   Michael Mora, Esq.
21 Julie A. Mack, Esq.
   Federal Trade Commission
22 600 Pennsylvania Ave. N.W.
   Washington, DC 20580
23

24 <u>Thermo Credit</u>
   John A. Lapinski, Esq.
   Leslie R. Horowitz, Esq.
25 Dolores Cordell, Esq.
   Clark & Trevithick
26 800 Wilshire Boulevard, 12th Floor
   Los Angeles, California 90017
27

28 W. Timothy Miller, Esq.
   Taft Stettinius & Hollister LLP

W02-WEST:5SS1\400527950.1                    -16-

FURTHER ORDER APPROVING FURTHER
INTERIM USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS
Case: 07-52890    Doc #: 253    Filed: 11/14/2007    Page 18 of 19

RER-63        3181

1   425 Walnut Street, Suite 1800
    Cincinnati, Ohio 45202

2

3   Certain Creditors
    Peter Benvenutti, Esq.

4   Michaeline H. Correa, Esq.
    Heller, Ehrman, White and McAuliffe
    333 Bush St.

5   San Francisco, CA 94104-2878

6   Email Discount Network and Intelicom Messaging

7   c/o David M. Goodrich, Esq.
    7700 Irvine Center Drive, Suite 800

8   Irvine, CA 92618

9   Austin P. Nagel, Esq.
    Law Offices of Austin P. Nagel

10  111 Deerwood Place, Suite 338
    San Ramon, California 94583

11

12  Official Creditors' Committee
    John Fiero, Esq.
    Pachulski, Stang, Ziehl, & Jones

13  150 California Street, 15th Floor
    San Francisco, CA  94111-4500

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FURTHER ORDER APPROVING FURTHER
INTERIM USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

Case: 07-52890     Doc #: 253     Filed: 11/14/2007     Page 19 of 19

RER-63          3182

**RER - 64**

1

```
 1              UNITED STATES BANKRUPTCY COURT

 2             NORTHERN DISTRICT OF CALIFORNIA

 3                  (SAN JOSE DIVISION)

 4   In re:

 5   THE BILLING RESOURCE,          Case No. 07-52890-ASW

 6                                  Chapter 11

 7                                  San Jose, California
                                    November 2, 2007
 8                                  1:51 p.m.
            Debtor.
 9   _____/

10

11                TRANSCRIPT OF PROCEEDINGS
       a) FINAL HEARING RE EMERGENCY MOTION FOR USE OF
12         CASH COLLATERAL AND GRANTING REPLACEMENT
      LIENS AND APPROVING FIRST AMENDED STIPULATION WITH
13       PAYMENTONE CORPORATION REGARDING USE OF CASH
         COLLATERAL AND ADEQUATE PROTECTION BY DEBTOR
14          b) LIMITED SUPPLEMENTAL OPPOSITION BY
                 FEDERAL TRADE COMMISSION
15        c) LIMITED OPPOSITION BY DAVID R. CHASE,
      FEDERAL RECEIVER OF ACCESS ONE COMMUNICATIONS, INC.
16            AND NETWORK ONE SERVICES, INC.
         d) OPPOSITION TO SUPPLEMENTAL MEMORANDUM
17               BY THERMO CREDIT, LLC
          e) SECOND SUPPLEMENTAL OBJECTION BY
18            PUBLIC COMMUNICATIONS SERVICES
         f) OBJECTION BY UNITED STATES TRUSTEE
19          g) RENEWED OPPOSITION BY POL, INC.
        h) RENEWED OBJECTION BY PERSONAL VOICE, INC.
20     i) REPLY IN SUPPORT OF MOTION BY PAYMENTONE CORP.
         j) NOTICE OF STATUS CONFERENCE IN CHAPTER 11
21     k) MOTION FOR ORDER SUPPLEMENTING ORDER AUTHORIZING
           USE OF EXISTING CASH MANAGEMENT SYSTEM AND
22      BANK ACCOUNTS TO LIMITED EXTENT TO ADDRESS THE
          DEBTOR'S RECEIPT OF FUNDS PERTAINING TO
23   CUSTOMER BILLING TRANSACTIONS SUBMITTED TO THE DEBTOR
     POST-PETITION, TO AUTHORIZE THE DEBTOR TO OPEN CLIENT
24      RESERVE ACCOUNTS, AND TO OPEN ADDITIONAL DEBTOR
           IN POSSESSION BANK ACCOUNTS BY DEBTOR

25
```

2

```
1            l) MOTION FOR ORDER AUTHORIZING DEBTOR AND
     DEBTOR IN POSSESSION TO: (A) PAY PRE-PETITION WAGES AND
2    SALARIES; AND (B) PAY PRE-PETITION EMPLOYEE BENEFITS AND
        OTHERWISE HONOR EMPLOYEE BENEFITS IN THE ORDINARY
3               COURSE OF BUSINESS BY DEBTOR
     m) LIMITED OPPOSITION TO ITEMS k) & l) BY DAVID R. CHASE,
4     FEDERAL RECEIVER OF ACCESS ONE COMMUNICATIONS, INC.
              AND NETWORK ONE SERVICES, INC.
5              n) PARTIAL OPPOSITION TO ITEM l) BY
          OFFICIAL UNSECURED CREDITORS' COMMITTEE
6    o) LIMITED OBJECTION TO ITEM l) BY UNITED STATES TRUSTEE
        p) MOTION FOR ORDER APPROVING STIPULATION WITH
7    RESPECT TO AGREEMENTS BETWEEN THE BILLING RESOURCE
       dba INTEGRETEL AND THE SUBSIDIARIES OF VERIZON
8             COMMUNICATIONS, INC. BY DEBTOR
```

10              BEFORE THE HONORABLE ARTHUR WEISSBRODT
                 UNITED STATES BANKRUPTCY JUDGE

12
   APPEARANCES:
13

14  For the Debtor:          SHEPPARD, MULLIN, RICHTER and
                             HAMPTON
15                           BY: STEVEN SACKS, ESQ.
                             Four Embarcadero Center, 17th Floor
16                           San Francisco, California 94111

17

18  For the Federal         DANNING, GILL, DIAMOND &
    Receiver:                KOLLITZ, LLP
19                           BY: WALTER K. OETZELL, ESQ.
                             2029 Century Park East, 3rd Floor
20                           Los Angeles, California 90067

21

22  For the U.S. Trustee:    OFFICE OF THE U.S. TRUSTEE
                             BY: JOHN S. WESOLOWSKI, ESQ.
23                           280 South First Street, #268
                             San Jose, California 95113
24

25

3

```
 1   APPEARANCES (CONTINUED):

 2   For PaymentOne:              O'MELVENY & MYERS, LLP
                                  BY: STEPHEN H. WARREN, ESQ.
 3                                400 South Hope Street
                                  Los Angeles, California 90071
 4

 5
     For POL, Inc.               DIEMER, WHITMAN and CARDOSI
 6                                BY: KATHRYN S. DIEMER, ESQ.
                                  75 East Santa Clara Street
 7                                San Jose, California 95113

 8

 9   For the Committee:          PACHULSKI, STANG, ZIEHL, JONES
                                  BY: JOHN FIERO, ESQ.
10                                150 California Street, 15th Floor
                                  San Francisco, California 94111
11

12
     For Personal Voice:         THOMAS LITTLE, ESQ.
13
                                  (APPEARING TELEPHONICALLY)
14

15
     For BSG Clearing            KING & SPALDING
16   Solutions:                  BY: ANDY G. BERG

17                                (APPEARING TELEPHONICALLY)

18

19   For United OnLine:          BUCHALTER NEMER, et al.
                                  BY: JEFF GARFINKLE, ESQ.
20
                                  (APPEARING TELEPHONICALLY)
21

22   For PCS:                    LINER, YANKELEVITZ, SUNSHINE
                                  BY: ENID M. COLSON, ESQ.
23                                1100 Glendon Ave., 14th Floor
                                  Los Angeles, California 90024
24
                                  (APPEARING TELEPHONICALLY)
25
```

4

```
 1   APPEARANCES (CONTINUED):

 2
     For the Federal            TEW CARDENAS, LLP
 3   Receiver:                  BY: JEFFREY SCHNEIDER, ESQ.

 4                              (APPEARING TELEPHONICALLY)

 5

 6   For the Federal Trade      UNITED STATES FEDERAL TRADE
     Commission:                COMMISSION
 7                              OFFICE OF THE GENERAL COUNSEL
                                BY: JOHN ANDREW SINGER, ESQ.
 8                              600 Pennsylvania Avenue, NW
                                Washington, DC 20580
 9
                                        -and-
10
                                MICHAEL P. MORA, ESQ.
11                              COLLOT GUERARD, ESQ.

12                              (APPEARING TELEPHONICALLY)

13

14   For Laurus Master Fund:    SHEA & CARLYON
                                BY: CANDACE CARLYON, ESQ.
15
                                (APPEARING TELEPHONICALLY)
16

17   For Thermo Credit:         CLARK & TREVITHICK
                                BY: LESLIE R. HOROWITZ, ESQ.
18
                                        -and-
19
                                TAFT STETTINIUS & HOLLISTER
20                              BY: TIMOTHY MILLER, ESQ.

21                              (APPEARING TELEPHONICALLY)

22

23   For Verizon:               AMALL, GOLDEN & GREGORY, LLP
                                BY: DARRYL LADDIN, ESQ.
24
                                (APPEARING TELEPHONICALLY)
25
```

5

```
 1   APPEARANCES (CONTINUED)

 2
     Court Recorder:              ERICA RENDLER
 3                                UNITED STATES BANKRUPTCY COURT
                                  280 South First Street
 4                                San Jose, California 95113

 5

 6   Transcription Service:       Jo McCall
                                  Electronic Court
 7                                Recording/Transcribing
                                  2868 E. Clifton Court
 8                                Gilbert, Arizona 85297
                                  Telephone: (480-361-3790)
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

6

1                    P R O C E E D I N G S

2    November 2, 2007                        1:51 p.m.

3                        ---oOo—

4         THE CLERK: Please rise.  This is the United

5    States Bankruptcy Court for the Northern District of

6    California.  The court is now in session.

7         THE COURT: Good afternoon ladies and gentlemen.

8    Please be seated.  Go off the record a minute.

9         This is the case of Billing Resource.  May I have

10   appearances of counsel.

11        MR. SACKS: Good afternoon, Your Honor, Steven

12   Sacks of Sheppard, Mullin for the Debtor.

13        MR. OETZELL: Good afternoon, Your Honor, Walter

14   Oetzell of Danning, Gill, Diamond & Kollitz on behalf of

15   the Federal Receiver, David R. Chase.

16        MR. SINGER: Your Honor, good afternoon.  John

17   Andrew Singer for the Federal Trade Commission.

18        MR. FIERO: John Fiero for the Committee, Your

19   Honor.

20        MR. WARREN: Good afternoon, Your Honor, Stephen

21   Warren of O'Melveny & Myers on behalf of PaymentOne.

22        MS. DIEMER: Kathryn Diemer on behalf of POL.

23        MR. WESOLOWSKI: John Wesolowski for the U.S.

24   Trustee

25        THE COURT: I'm going to call the people on the

7

1    phone in the following order.  Andy Berg.

2              MR. BERG: Your Honor, this is Andrew Berg on

3    behalf of Billing Services Group from King & Spalding.

4              THE COURT: Jeff Garfinkle?  Jeff Garfinkle?

5              THE OPERATOR: He was connected earlier, Your

6    Honor, and disconnected.

7              THE COURT: Is that the operator?

8              THE OPERATOR: Yes, it is, Your Honor.

9              THE COURT: Call him back.  See if he wants on.

10             THE OPERATOR: Thank you.

11             THE COURT: Candace Carlyon?

12             MS. CARLYON: Good afternoon, Your Honor, Candace

13   Carlyon on behalf of National On Line Services.

14             THE COURT: Thomas Little?

15             MR. LITTLE: Yes, Your Honor, Thomas Little

16   representing Personal Voice, Inc.

17             THE COURT: Enid Colson?

18             MS. COLSON: Good afternoon, Your Honor, Enid

19   Colson of Liner Hankelevitz representing Public

20   Communications Services, Inc.

21             THE COURT: Leslie Horowitz?

22             MS. HOROWITZ: Good afternoon, Your Honor, Leslie

23   Horowitz of Clark & Trevithick on behalf of Thermo Credit.

24             THE COURT: Jeffrey Schneider?

25             MR. SCHNEIDER: Good afternoon, Your Honor, Jeff

8

1   Schneider, Tew Cardenas in Miami, on behalf of the Federal

2   Receiver.

3           THE COURT: Michael Mora?

4           MR. MORA: Good afternoon, Your Honor, Michael

5   Mora and Collot Guerard on behalf of the Federal Trade

6   Commission.

7           THE COURT: Darryl Laddin?

8           MR. LADDIN: Good afternoon, Your Honor, Darryl

9   Laddin of Amall, Golden & Gregory on behalf of the wholly-

10  owned subsidiaries of Verizon Communications, Inc.

11          THE COURT: Timothy Miller?

12          MR. MILLER: Good afternoon, Your Honor, W.

13  Timothy Miller, Taft, Stettinius & Hollister, on behalf of

14  Thermo Credit, LLC.

15          THE COURT: Is there anybody else on the telephone

16  whose name I have not called?

17          MR. GARFINKLE: Yes, Your Honor, this is Jeff

18  Garfinkle of Buchalter Nemer on behalf of United OnLine.

19          THE COURT: Very good.  I actually called your

20  name twice, Mr. Garfinkle.

21          MR. GARFINKLE: I'm sorry.  The operator didn't

22  click me back into the line.

23          THE COURT: Anybody else on the phone whose name I

24  didn't call?

25          Okay.  Very good.  Good afternoon to all counsel.