1          ALL COUNSEL: Good afternoon.

2          THE COURT:  Mr. Sacks?

3          MR. SACKS: Yes, Your Honor.  We're here today on

4   four motions.  We have a cash collateral motion for further

5   interim use.  We have a request for an order approving a

6   stipulation with the subsidiaries of Verizon.  We have a

7   motion concerning pre-petition employee wages and a motion

8   concerning the Debtor's cash management system and bank

9   accounts.

10          The Verizon motion is unopposed.  We could take

11   that first.  We could take them in any order Your Honor

12   proposes, but I'm at your disposal.

13          THE COURT: Yes, that's fine.

14          MR. SINGER: Your Honor, for the Federal Trade

15   Commission, I'd like to address a couple of comments with

16   the P.I., but I can easily wait until you deal with your

17   other business, if you'd like.

18          THE COURT: I'm going to deal with everything on

19   calendar first.

20          MR. SINGER: That's certainly fine, Your Honor.  I

21   just wanted to make sure it wasn't forgotten.  Thank you.

22          THE COURT: Okay.  We'll just march through, if

23   you would please, Mr. Sacks, and do them in the order that

24   they're on the calendar.  So we're going to first start

25   with cash collateral, and you need a copy of the calendar.

10

1          MR. SACKS: Somebody just handed me one.  Thank

2    you.  Okay.  So with regard to cash collateral, Your Honor,

3    we have a renewed objection from Personal Voice and renewed

4    objections from the Federal Trade Commission and the

5    Federal Receiver.

6          THE COURT: But the Federal Trade Commission and

7    the Federal Receiver's objection seems to be targeted

8    toward the 1.7 million dollars that my decision is going to

9    keep blocked at least for the time being.  Is there any

10   other objection that you wish to raise at this time?

11         MR. SCHNEIDER: Your Honor, my apologies, but

12   you're cutting out.

13         THE COURT: Okay.  Did you not hear what I said?

14   Do you want me to repeat it?

15         MR. SCHNEIDER: Yes, please.

16         THE COURT: Okay.  Who is this?

17         MR. SCHNEIDER: This is Jeff Schneider.

18         THE COURT: Okay.  I just issued a decision on the

19   request for injunctions, and in that decision I have

20   determined not to unblock for the time being the 1.7

21   million dollars that by stipulation counsel put into a

22   blocked account; ergo, I'm not sure that the Receiver or

23   the FTC has any continued objection to the pending motion

24   for cash collateral, and I want to clarify that.

25         MR. OETZELL: Your Honor, Walter Oetzell.  If my

11

1  understanding is correct, we have the account preserved to

2  mid December, December I believe it was 14th, with a hearing

3  on December 7th.  So that will not be touched.  And we also

4  have an interim cash collateral motion or order of two

5  weeks.  With that in mind, as long as the funds are

6  preserved and this is of this two-week limited duration,

7  then, you know, we have no objection.

8          THE COURT: And is that true for the FTC as well?

9          MR. SINGER: I believe that is true, Your Honor.

10 We had some other objections as well, but I think you've

11 addressed that by entering your preliminary injunction.

12         THE COURT: Okay.  Now, everybody understands that

13 I have declined the Debtor's request to unblock the 1.7

14 million dollars, but it's without prejudice.  So there is

15 no guaranty that, for example, if the Eleventh Circuit stay

16 were lifted, the Debtor wouldn't come back to court and ask

17 me to do something different.  And at that point, if you

18 wanted to raise whatever you wanted to raise, we would have

19 to consider it at that time.  But everybody knows that my

20 order is based on the assumption, at least at this

21 juncture, that the Eleventh Circuit stay is in effect, and

22 of course the Eleventh Circuit is in complete control of

23 that.

24         Okay.  So then we just have Personal Voice as I

25 understand it as an objecting party and --

12

1          MR. SINGER: Your Honor, may I just from the point

2   you just raised?  If you'd like to deal with it later,

3   that's fine, but let me just -- if you'd like to deal with

4   now, that's fine.  Your action, as I understand it, stays

5   the FTC's enforcement action.

6          THE COURT: Yes.

7          MR. SINGER: The Eleventh Circuit appeal which

8   only involves Integretel since Integretel took it, is part

9   of the enforcement action.  Is it your --

10         THE COURT: Stop.  Stop.  Stop.

11         MR. SINGER: Yes, sir.

12         THE COURT:  Say what you said slowly.

13         MR. SINGER: Yes.  There is a combined appeal of

14  the preliminary injunction, the amended preliminary

15  injunction that was made in 2006, the omnibus order of

16  September 14th, and the clarification order of September

17  21st, both 2007, which is pending before the Eleventh

18  Circuit.

19         THE COURT: I see.  Say the first thing again.

20         MR. SINGER: Certainly.  Integretel made a 2006

21  appeal to the Eleventh Circuit of the amended preliminary

22  injunction in the enforcement action, Your Honor.

23         THE COURT: Okay.  But did Integretel -- or let me

24  go back.  Is it your understanding that the Eleventh

25  Circuit has already stayed the full enforcement action as

13

1    it applies to the Debtor?

2            MR. SINGER: That is incorrect, Your Honor.  The

3    Eleventh --

4            THE COURT: I asked whether it was your

5    understanding -- it can't be incorrect.

6            MR. SINGER: I'm sorry.

7            THE COURT:  Is it your understanding -- it's

8    either a yes or no.  Is it your understanding that the

9    Eleventh Circuit has stayed the enforcement action against

10   the Debtor?

11           MR. SINGER: It has not, Your Honor.

12           THE COURT: Okay.  Well, that's my understanding

13   too.

14           MR. SINGER: But, Your Honor, what I'm asking,

15   Your Honor, is, if I understand your order correctly and

16   perhaps I do not, your injunction of today stays the

17   enforcement action against Integretel.

18           THE COURT: It does.

19           MR. SINGER: Does that -- it would also then stay,

20   if I understand it, the appeal to the Eleventh Circuit.

21           THE COURT: I can't stay an appeal to anybody.

22           MR. SINGER: Okay.  So then the Eleventh Circuit's

23   briefing schedule would still be valid, which is, they have

24   a brief due November 26th, Your Honor.

25           THE COURT: I'm not sure what is on appeal in

14

1  terms of the enforcement action.  So let me ask Mr. Sacks

2  and I'll come back to you.

3        MR. SINGER: Certainly.

4        THE COURT: In terms of the enforcement -- if I

5  stay the enforcement action, which I did, at your request,

6  does that have any effect on anything that's presently

7  going on in the Eleventh Circuit?

8        MR. SACKS: Well, conceivably it does, Your Honor,

9  because the Debtor has taken two appeals, one as Mr. Singer

10 points out from an earlier order, a 2006 order, and another

11 from the omnibus order that was issued on September 14th,

12 along with the clarification order that followed it.  So if

13 the enforcement action is stayed or if more accurately the

14 FTC is enjoined from proceeding with the enforcement

15 action --

16        THE COURT: That is the better way to say it.

17 That's more correct.

18        MR. SACKS: Right.  -- then conceivably the Debtor

19 could proceed with its appeals in the Eleventh Circuit or

20 the Court could determine that that's not an efficient use

21 of estate resources and include that within the injunction.

22 And this is something that we have not --

23        THE COURT: Nobody has briefed that.

24        MR. SACKS: Exactly.  Nobody has raised that

25 before.

15

1     THE COURT: So should I start by saying, since it
2  wasn't briefed and not considered by the Court, it's not
3  stayed; it's not part of the injunction, and if and when
4  you want it to be part of the injunction, you'll seek that
5  relief?

6     MR. SACKS: That would be fine, Your Honor.

7     THE COURT: Okay.  That's what I'll do.

8     MR. SINGER: That would be acceptable, Your Honor.
9  Like I said, I wanted clarification because there is a
10 briefing schedule set and a brief due later this month.

11    THE COURT: I have to tell you that when you
12 brought that up to me, it was the first time that that
13 issue crystallized in my mind as a possible issue in
14 writing this decision of so many pages.  So I think this is
15 the most efficient and fair way to handle it.

16    MR. SINGER: Okay.  So then just for my
17 clarification, Your Honor, and one of the reasons I'm here
18 today is I'm counsel of record for the Commission in the
19 appellate action.

20    THE COURT: And also it's a beautiful day in
21 California and --

22    (Laughter.)

23    MR. SINGER: It was a lot more beautiful before
24 about 1:00 o'clock, Your Honor.  But be that as it may --

25    THE COURT: It all depends on your perspective.

16

1       MR. SINGER: That's true, Your Honor, point well

2  taken.  The point I was simply going to say is then to

3  make -- as I understand it then, the Commission is enjoined

4  from going forward with its enforcement action.  The

5  District Court however is not enjoined from, at this point,

6  filing an opposition brief assuming that there will be one,

7  in the Eleventh Circuit.

8       THE COURT: You're not enjoined from doing

9  anything in the Eleventh Circuit.

10       MR. SINGER: Okay.

11       THE COURT: There's nothing that I've done that

12  affects what you do or don't do in the Eleventh Circuit.

13       MR. SINGER: With due respect, Your Honor, I would

14  say if the enforcement action is stayed and the District

15  Court decision is from the enforcement -- let me take that

16  back.

17       If the Commission is enjoined from going forward

18  in the enforcement action and the Eleventh Circuit decision

19  is part of that, I would say we are stayed -- excuse me,

20  enjoined -- but if you take the position we're not, I just

21  want to be able accurately represent that to the Eleventh

22  Circuit.

23       THE COURT: Okay.  But we can clarify that in the

24  order.  There's no order yet, and you're going to sign off

25  on an order.  There's just a decision.  So, Mr. Sacks, it's

1   your position that I don't need to deal with what's going

2   on in the Eleventh Circuit today, and that matter wasn't

3   briefed, and if you want -- if you want an injunction, vis-

4   a-vis whatever is going on in the Eleventh Circuit, you

5   will seek that.

6           MR. SACKS: That's correct, Your Honor.

7           THE COURT: So there it is.

8           MR. SINGER: Thank you, Your Honor.

9           THE COURT: Thank you, sir.  Okay.

10          MR. SACKS: I think you were about to move to

11  Personal Voice.

12          THE COURT: Right.  Before the Court is Debtor's

13  motion for final use of cash collateral.  Pursuant to

14  Debtor's papers filed on October 30, 2007, the Debtor seeks

15  authority from this Court for a further interim use of cash

16  collateral through November 16, 2007 or as soon thereafter

17  as the Court can hold a further hearing on the motion.  The

18  Court is available and can hold a further cash collateral

19  hearing in this case on November 16th at 10:30 a.m.

20          Debtor currently seeks authority -- I don't have

21  three hours by the way, but I can do it on November 16th --

22  Debtor currently seeks authority to use cash collateral on

23  an interim basis pursuant to Debtor's proposed budget for

24  the next three weeks and pay its 97 percent owned

25  subsidiary over 540,000 during that time in exchange for

18

1    Debtor's stipulated use of that creditor's cash collateral.

2    Three creditors initially filed objections to Debtor's

3    motion.

4            For the record, the Court is taking a drink of

5    water.

6        (Laughter.)

7            MR. SINGER: Your Honor, I'm terribly sorry.  I

8    missed the time for the November 16th hearing.

9            THE COURT: 10:30.

10           MR. SINGER: Thank you, Your Honor.

11           THE COURT: The parties do not dispute the legal

12   standard, that is, pursuant to Bankruptcy Code Section

13   363(c)(2), Debtor may use cash collateral with the consent

14   of an entity that has an interest in that cash collateral

15   or upon authorization of the Court after notice and

16   hearing.

17           If the Court authorizes the use of cash

18   collateral under Bankruptcy Code Section 363(e), the Court

19   must condition such use on the providing of adequate

20   protection to any entity requesting and entitled to such

21   protection.  Under Bankruptcy Code Section 361, adequate

22   protection requires that Debtor grant a replacement lien or

23   other such relief such that the use of the cash collateral

24   does not decrease any entity's interest in that cash

25   collateral.

19

1          The parties dispute whether or not certain

2    entities are even required to be provided adequate

3    protection.  Debtor asserts that the objectors who are not

4    secured creditors are not entitled to adequate protection,

5    and in addition, whether it is in the best interest of

6    creditors of the Debtor's bankruptcy case to permit the

7    interim use of cash collateral under the current cash

8    collateral stipulation with PaymentOne.

9          We've covered the FTC and the Receiver's initial

10   objections.  They've been withdrawn.  Disputed secured

11   creditor, Personal Voice -- and the security interest is

12   disputed -- objects to Debtor's final use of cash

13   collateral and presumably objects to the use for these two

14   weeks, but I'm not sure whether they do.  Counsel for

15   Personal Voice?

16          MR. LITTLE: Yes, Your Honor.

17          THE COURT: Do you object to the use of cash

18   collateral for these two weeks?

19       (Pause.)

20          MR. LITTLE: Hello?

21          THE COURT: Yes.

22          MR. LITTLE: Oh, I'm sorry, Judge.  Yes, sir,

23   Judge, we're just renewing our objection we asserted

24   previously in open court --

25          THE COURT: That's fine.

1            MR. LITTLE:  -- concerning, Your Honor, the

2     property of the estate issue, which we're working on an

3     adversary proceeding to file.

4            THE COURT: That's fine.  In addition, Personal

5     Voice objects to Debtor's permanent use of cash collateral

6     to the extent that such request fails to recognize Personal

7     Voice's alleged ownership of Personal Voice's accounts

8     receivable.  Personal Voice asserts that when the accounts

9     receivable were forwarded to Debtor for collection, the

10    proceeds of collection remained the property of Personal

11    Voice and were not transferred to the Debtor.

12            It appears to the Court based on the record

13    before the Court that Personal Voice does not hold a valid

14    security interest in Debtor's assets and that the accounts

15    receivable in which Personal Voice asserts an interest are

16    property of the Debtor's bankruptcy estate.  There is no

17    indication in the service contract between Debtor and

18    Personal Voice that Personal Voice retains an ownership

19    interest in the accounts receivable transferred to Debtor

20    for billing.

21            The fact that Personal Voice filed a UCC-1

22    financing statement and took a security interest in the net

23    proceeds of the receivables the Debtor owed to Personal

24    Voice strongly indicates that Personal Voice did not retain

25    the ownership interest in its transferred accounts as it

1  alleges.

2          With respect to the security interest, it appears

3  that Personal Voice did not file a continuation statement.

4  Any perfected security interest Personal Voice may have had

5  in the net proceeds lapsed in May 2007.  Further Personal

6  Voice only really asserts a security interest in the net

7  proceeds owed to it and Debtor argues that there is no

8  security interest in such net proceeds.  Under Bankruptcy

9  Code Section 363(p) Personal Voice has the burden of proof

10 on the issue of the validity, priority, and extent of its

11 security interest in Debtor's property.  Based on the

12 record before the Court, Personal Voice has not met that

13 burden.

14          In any event, Debtor proposes to grant Personal

15 Voice a replacement lien in the same assets, if any, that

16 Personal Voice had an interest in pre-petition as adequate

17 protection for any alleged security interest.  The Court

18 finds that the granting of the lien adequately protects

19 Personal Voice for Debtor's ongoing use of cash collateral,

20 and the Court overrules Personal Voice's objection.

21 Debtor's proposed budget shows sufficient cash flow to

22 adequately protect Personal Voice for the next two weeks.

23          For all of the above reasons that Personal Voice

24 is adequately protected and because the Creditors'

25 Committee consents to a further interim use of cash

22

1  collateral, and the Court finds that there is a likelihood

2  of Debtor successfully reorganizing, as the Court has

3  stated in detail in the Court's recent decision with

4  respect to the injunctions, the Court finds that the

5  Debtor's continued use of cash collateral is in the best

6  interest of creditors and Debtor's bankruptcy estate.

7  Debtor's request for further interim use of cash collateral

8  pursuant to the current stipulation with PaymentOne is

9  granted.

10           Now, turning to what I think is k) through m) --

11           MS. DIEMER: Your Honor?

12           THE COURT: Yes.

13           MS. DIEMER: May I address the Court.  POL does

14  not have any objection to the interim use of cash

15  collateral they have over time and believes that it's

16  adequately protected.  However, it was not given the

17  opportunity to sign off on the stipulation, which it would

18  gladly have signed because it believes it's getting a

19  replacement lien and adequate protection, but because I was

20  not asked to do so because I am an unobjected-to secured

21  creditor, which the Debtor has agreed is appropriate, I

22  wanted to put on the record that we do not object.  We

23  continue our position for these two weeks.

24           THE COURT: Thank you.  All right.  So now we have

25  k) through m), which is the motion for order supplementing

23

1   the order authorizing use of existing cash management

2   system, et cetera, et cetera. And I have to ask a

3   question. First, the Debtor isn't requesting authority to

4   use the funds in the blocked account in this motion, so the

5   Receiver's opposition doesn't address the merits of the

6   motion. But with respect to the motion on the merits, it

7   seems to the Court that there is no need for Court

8   authority to permit a Debtor to open up post-petition bank

9   accounts. To the extent any court order is required, it

10  could be to amend a prior order permitting the use of the

11  pre-petition bank account post-petition to incorporate the

12  newly-created post-petition accounts, if that's really

13  necessary.

14          But other than that, the Court sees no need for

15  Court authority to open post-petition bank accounts or

16  debtor-in-possession bank accounts. The Debtor has

17  submitted a proposed order, which is Exhibit E to its

18  papers, and my preliminary view is that paragraphs 4 to 6

19  of the proposed order should be stricken simply because

20  they're unnecessary. If the U.S. Trustee has some view on

21  that or somebody else wants to be heard, we can do that at

22  the end of the hearing, but I really don't see any reason

23  for me to tell you that you can open up a post-petition

24  bank account.

25          MR. SACKS: The main reason for making this

24

1  motion, Your Honor, was that the Debtor's bank requested to

2  be presented with an order authorizing the opening of a new

3  bank account.  We looked at the existing order and it

4  permitted us to use our existing accounts.  It didn't say

5  anything about new bank accounts.

6          THE COURT: So it's a comfort order for the bank?

7          MR. SACKS: That's correct.

8          THE COURT: Fine.  Well, if Mr. Wesolowski signs

9  off on the order, I'll sign it.  That's fine.

10          MR. SACKS: Thank you, Your Honor.

11          THE COURT: All right.  Okay, now with respect to

12  l) through o), which is the motion for order authorizing

13  the Debtor and the Debtor-in-Possession to pay pre-petition

14  wages and salaries and pre-petition employee benefits, et

15  cetera, et cetera, does anybody wish to say anything that's

16  not in the papers.

17          MR. FIERO: The Committee will submit on the

18  papers, Your Honor.

19          MR. SACKS: As will the Debtor, Your Honor.

20          THE COURT: Okay.

21          MR. WESOLOWSKI: As will the U.S. Trustee, Your

22  Honor.

23          THE COURT: I can't hear you, Mr. Wesolowski.

24  You're not at a mike.

25          MR. WESOLOWSKI: As will the U.S. Trustee, Your

25

1  Honor.

2          THE COURT: Thank you, sir.

3          MS. DIEMER: As does POL, Your Honor.

4          THE COURT: Before the Court is Debtor's request

5  for authority to pay certain pre-petition wages, employee

6  benefits, and employee reimbursement claims.  Receiver, the

7  Creditors' Committee and the United States Trustee oppose

8  Debtor's request.  Receiver opposes Debtor's request to the

9  extent -- did you say you agree too?  I don't remember,

10  that I was going to do this without argument?

11          MR. OETZELL: That's fine, Your Honor.

12          THE COURT: Okay.

13          MR. SINGER: We have no objection, Your Honor.

14          THE COURT: Okay.  The Receiver opposes Debtor's

15  request to the extent the Debtor would pay the claims from

16  funds held in the blocked account.  There is no indication

17  in Debtor's motion that the Debtor would pay the claims

18  from those funds.  So the Receiver's objection is either

19  moot or overruled.  It's overruled if the Receiver is

20  making it, even though the funds aren't coming from the

21  blocked account.  But I assume you're not; is that correct?

22  You're not objecting if the funds don't come from the

23  blocked account.

24          MR. OETZELL: Not if the funds don't come from the

25  blocked account, Your Honor.

26

1      THE COURT: That's fine.  Okay.  The objections of

2  the Creditors' Committee and the United States Trustee

3  raise more substantive issues.  The Debtor concedes that

4  payment of the pre-petition worker's compensation benefits

5  on a priority basis is contrary to Howard Delivery versus

6  Zurich American Insurance, United States 126, Supreme Court

7  2105 (2006) and withdrew that part of the motion.  Debtor

8  however asserts that this Court can authorize the payment

9  of employee benefits above the statutory cap which is now

10  $10,950 per employee under Bankruptcy Code Sections

11  507(a)(4) and (5).  Debtor makes this argument under the

12  Court's Bankruptcy Code Section 105 powers and argues that

13  such authorization is necessary for Debtor to retain its

14  employees.

15      In re B & W Enterprises, Inc., 713 F2d, 534, 9th

16  Circuit (1983), holds that creditors within a class cannot

17  be subordinated to other creditors in that class and that

18  the Bankruptcy Code's priorities cannot be disrupted.  Here

19  there is no basis for preferring certain unsecured

20  creditors, employees with pre-petition reimbursement

21  claims, over other unsecured creditors.

22      The Court is sympathetic to the fact that the

23  employee reimbursement expenses are essentially de minimis

24  aggregating under $700.  However, those employee

25  reimbursements are not entitled to any priority and to

27

1   permit payment of those claims before a Plan of

2   Reorganization would be contrary to the Ninth Circuit

3   authority of B & W Enterprises.

4        Now frankly, if everybody had stipulated that

5   those $700 could be paid, you know, I might have another

6   view.   Likewise, under B & W Enterprises, pre-petition wage

7   claims can be paid now so long as those claims are priority

8   wage claims and so long as Debtor can make an offer of

9   proof that priority category senior to wage claims, that is

10  secured and administrative claims, can be paid in full

11  despite disbursements to wage claimants now, and none of

12  these wage claimant payments would exceed $10,950 per

13  employee.

14       Moreover, employees are entitled to priority

15  vacation benefits only for vacation accrued prior to 180

16  days before the Debtor filed its bankruptcy petition, which

17  in this case is Tuesday, March 20, 2007.   If Debtor can

18  make the offer of proof that priority category senior to

19  wage claims, that is secured and administrative claims, can

20  be paid in full, despite disbursements to wage claimants

21  now, then Debtor could be authorized to pay pre-petition

22  wage claims and commissions and other employee benefits up

23  to the statutory cap.   Debtor's request to pay pre-petition

24  employee reimbursement claims now is denied.

25       So there you have it.   So you have to make an

1    offer of proof that priority category senior to the wage

2    claims, that is secured and administrative claims, can be

3    paid in full despite disbursement to wage claimants now,

4    and if you do that, you can pay the pre-petition wage

5    claims and commissions and other employee benefits up to

6    the statutory priority cap.

7        MR. SACKS: Your Honor, we'd certainly make an

8    offer of proof as to the administrative claims because the

9    estate is administratively solvent and these employee

10   claims are in a relatively small amount and would not

11   interfere with the estate's ability to satisfy

12   administrative claims.

13       With respect to secured claims, I would suggest

14   that the estate's two admitted secured creditors who are

15   here in court have not submitted an opposition to this

16   motion, and therefore could be deemed to have consented to

17   it without us offering an offer of proof as to exactly how

18   much is in the estate versus these secured claims.

19       THE COURT: So secured creditors speak now or

20   forever hold your peace with respect to this.

21       MR. WARREN: We have not opposed the motion, Your

22   Honor on behalf of PaymentOne.

23       MS. DIEMER: We do not oppose the pre-petition

24   payment of these pre-petition claims, Your Honor.  We think

25   it's important to the reorganization effort.

29

1          THE COURT: On behalf of?

2          MS. DIEMER: POL.

3          THE COURT: Thank you.  The motion is granted to

4    the extent that I've articulated.

5          With respect to the motion to approve the

6    stipulation -- did you want to say something, sir?

7               (No response on the record.)

8          With respect to the motion to approve the

9    stipulation with Verizon, the notice is proper pursuant to

10   the Court's order shortening time and the stipulation

11   appears to be in the best interest of creditors in the

12   estate.  It's not clear the extent to which, if at all,

13   A & C Properties applies to this, but the Court has

14   reviewed the factors in A & C Properties, 784 F2d, 1377, 9th

15   Circuit (1986) and finds that the transaction meets

16   those -- all of those standards and approves the

17   compromise.

18          Now that takes care of everything on calendar.  I

19   had a couple of questions.  Mr. Fiero, I haven't gotten an

20   application from you.

21          MR. FIERO: Your Honor, it was filed this morning.

22          THE COURT: Thank you.  And has the U.S. Trustee

23   signed off on it?

24          MR. FIERO: No, I discussed it with the United

25   States Trustee yesterday, and I expect to be hearing from

30

1   him shortly.

2           THE COURT: Okay.

3           MR. WESOLOWSKI: I haven't seen it yet.

4           THE COURT: Can you please go to a mike whenever

5   you want to speak?  I'm just concerned --

6           MR. WESOLOWSKI: I haven't seen it yet, Your

7   Honor.

8           THE COURT: Okay.  That's fine.  So I'll lodge it

9   to give the U.S. Trustee the normal amount of time which

10  would be seven days to respond.  Unless you can let us know

11  earlier than that that you have no opposition and then I

12  don't need to lodge it anymore.

13          MR. OETZELL: Your Honor, if I might --

14          THE COURT: Just one second.  I want to make sure

15  of something.  You're concerned about Mr. Fiero and the

16  Committee?

17          Oh, okay.  Go ahead.

18          MR. OETZELL: Mr. Fiero brought this up on the 17th

19  that we may have a problem with him, and the answer is that

20  we do, and we want nothing that we have done or not done

21  last time or this time to be argued as a waiver of the

22  problem.  We have no problem with Mr. Fiero representing

23  the Committee.  We do have a problem with Mr. Fiero taking

24  a position adverse to the Receiver, and this is because we

25  believe that the Receiver's attorney, Mr. Schneider, spoke

31

1   to Mr. Fiero about representation prior to the hearings

2   herein, and disclosed sufficient information to conflict

3   out Mr. Fiero in this.  Last --

4           THE COURT: Well, the Committee can't not take a

5   position on you because it's critical to the reorganization

6   what happens with you, so I guess that puts Mr. Fiero in a

7   very awkward spot, unless somebody else from his firm could

8   make those arguments.  But I don't know exactly whether

9   you're trying to preclude the whole firm.  If you're trying

10  to preclude the whole firm, we've got a problem.  Do you

11  agree that somebody else from his firm could make whatever

12  arguments the Committee deems appropriate to make?

13          MR. OETZELL: The answer is, Your Honor, it is my

14  understanding that probably technically a wall could be set

15  up, but they don't seem to work very well, and I don't

16  know -- I guess what I'm saying is that I don't have

17  sufficient information about what Mr. Fiero has told or not

18  told other attorneys in the firm that I can make that

19  assessment at the moment.

20          THE COURT: All right.  So do I anticipate from

21  you within the seven days an opposition?

22          MR. OETZELL: At least as it respects to the

23  limited issue of him taking a position against the

24  Receiver's position, and I understand Your Honor's concern

25  that --

32

1          THE COURT: Right.  It's an enormous issue in the

2    case.  You know, the proof of that is the length of the

3    Court's decision on injunction.  It's an important issue.

4    Okay --

5          MR. FIERO: Your Honor, we made a copious

6    disclosure in our pleadings filed today, after extensive

7    efforts to communicate with the Receiver and internal

8    communications.  There's pages of it, and you'll have an

9    opportunity to read it.  We're confident that no

10   confidential information was ever shared with any attorney

11   in my firm, nor is there any basis to exclude us from

12   participation in this case.

13          THE COURT: In any respect.

14          MR. FIERO: In any respect.

15          THE COURT: Okay.

16          MR. OETZELL: We haven't seen it, but we will be

17   happy to look at it and comment on it.

18          THE COURT: Okay.  But understand the normal way

19   of dealing with it, which I hope you will honor, is that if

20   I don't get an opposition within seven days, I'm free to

21   sign it.  And if I do, it will probably be set for hearing.

22          MR. OETZELL: Very good, Your Honor.

23          THE COURT: Thank you.  Okay.  Is there -- you had

24   wanted to talk to me, but I'm not sure whether we covered

25   it in the context of the Eleventh Circuit discussion.

33

1        MR. SINGER: You did not, Your Honor, and it will

2   be briefed, I think, but -- I'll get to my point -- it

3   probably comes as no surprise to Your Honor or anyone else

4   that the Commission will be appealing the preliminary

5   injunction order.  I would ask in the first instance out of

6   an abundance of caution, if you would certify the

7   preliminary injunction for appeal.  I don't think that's

8   necessary, but better safe than sorry, Your Honor.

9        THE COURT: Are you prepared to address

10  certification of this at the moment or do you want it in

11  writing and we'll have to look at it?

12       MR. SACKS: I would think it would be better off

13  in writing.  I haven't addressed the matter.

14       THE COURT: He hasn't thought about it.

15       MR. SINGER: I don't think it's necessary, but as

16  I said, I thought I would ask.  The other thing which I am

17  also going to ask for, and if you'd like it in writing, we

18  can do that, but I don't know if it's necessary, is the

19  Commission would ask for a stay pending appeal of the

20  preliminary injunction to the District Court.  I would

21  anticipate if you issue a stay today that we would be able

22  to file something by next Tuesday at the latest.  I'm going

23  to be tied up in travel across the country all day

24  tomorrow, so there's a limit to how much work I can do.

25       THE COURT: So you would like me to stay the

34

1   effect of the order for say through Wednesday or so?

2          MR. SINGER: Well, actually, what I prefer would

3   be if you could stay it through the District Court making a

4   decision, I would --

5          THE COURT: That's up to the District Court.

6          MR. SINGER: Okay.  What I would ask then if you

7   could stay it even through Wednesday, that would be

8   preferable because at least it gives me a chance to file

9   something and --

10         THE COURT: Well, but here's the problem.

11         MR. SINGER: Sir?

12         THE COURT: Here's the problem.  Their time to do

13  anything in the enforcement action has to stop now by

14  agreement.  I don't mind staying the order so that you have

15  time to appeal, but you have to agree that they don't have

16  to do -- any time that they would have to do anything would

17  be stayed for the period of time that you want.  Otherwise,

18  it's self defeating.

19         MR. SINGER: Your Honor, as I understand -- I

20  appreciate your concern entirely, Your Honor, but as I

21  understand it, and I spoke with the counsel who's actually

22  handling the enforcement action before we came in here,

23  discovery -- it's now 5:30 on the East Coast -- discovery

24  has closed.  One of the two outstanding discovery motions,

25  one was denied, the one concerning the designee deposition

35

1  of the Federal Trade Commission.  There is another motion

2  pending by BSG to open discovery --

3          THE COURT: Discovery for ten depositions.

4          MR. SINGER: Yes.  However that was -- let me

5  explain that.  On Monday afternoon --

6          THE COURT: So you're telling me more details than

7  I probably need.  I'll explain to you what --

8          MR. SINGER: No, Your Honor --

9          THE COURT: Let me speak first and then I'll

10  explain.

11          MR. SINGER: Certainly.

12          THE COURT: What would stop you from doing

13  something in the enforcement action between now and

14  Wednesday if I were to stay my order?  The key is to make

15  sure that everything stands still if you want that stay

16  through Wednesday, and if you guarantee that everything on

17  your side will stand still through Wednesday, then

18  convincing me that nothing is likely to happen isn't

19  necessary.

20          MR. SINGER: Your Honor, the only thing that the

21  Commission would be doing between now and Wednesday because

22  discovery did close today would be filing a summary

23  judgment motion on Monday.

24          MR. BERG.  Your Honor, this is Andrew Berg,

25  counsel for BSG.  In fact the second motion that counsel

36

1   referred to was granted by Judge Riscamp (Phonetic) this
2   morning.
3          MR. SINGER: Okay.  I was not aware of that.
4          MR. BERG: Discovery will proceed through the 16th
5   of November.
6          THE COURT: Okay.  So it's not -- it is going on.
7          MR. SINGER: I was not aware of that, Your Honor,
8   but I apologize, since I've been here in the West Coast and
9   haven't access to the docket.
10         THE COURT: Thank you for the clarification, sir.
11         MR. SINGER: Thank you.
12         THE COURT: So do you withdraw your request for a
13  stay?
14         MR. SINGER: I would still ask for a stay pending
15  appeal, Your Honor.  If you'd like to deny it, that's
16  certainly your prerogative.
17         THE COURT: I'm willing to give it to you if you
18  agree that everything stands still, vis-a-vis the Debtor,
19  that any deadline, anything, is going to stand still as
20  long as the stay.  I will grant you the stay.
21         MR. SINGER: Your Honor, may I take a couple
22  minutes to consult with the counsel who's actively handling
23  the enforcement action?
24         THE COURT: Absolutely.  I can recess for a few
25  minutes if you want, but not right this second.

37

1          MR. SINGER: Certainly.

2          THE COURT: Is there anything else that we

3    usefully need to cover today?

4          MR. FIERO: Your Honor, just by way of status

5    report, as you know, the Committee only agreed to a two-

6    week extension for the use of cash collateral.  One of the

7    reasons was that there was not yet a term sheet or a buyer

8    for the Debtor's assets.  I'm pleased to say that in the

9    last 48 hours, the Debtor has worked very hard with a

10   purchaser to come up with a form of term sheet, and within

11   the next two weeks and perhaps within the next week, you

12   will see a motion to in essence auction the right to be the

13   Debtor's equity sponsor under a Plan.  And this case might

14   very well wrap up within 90 days.

15         THE COURT: Very good.  So whatever -- if there's

16   going to be an appeal of my injunction, it would seem to me

17   that that would be very important information for the

18   Appellate Court.

19         Go ahead.

20         MR. SACKS: Your Honor, I was just going to say

21   with respect to the request for a stay, as the Court is

22   enjoining the FTC and is not enjoining the Court, I think

23   it's important that the injunction be in place even though

24   they're appealing it so that we are not faced with them

25   filing things as to us that we then are in an uncertain

38

1   state as to what we have to respond to.

2           THE COURT: But if he agrees that everything is

3   stayed with respect to you, voluntarily through Wednesday,

4   then my staying the effect of my decision can't harm you.

5   If he won't then you just articulated in a different way my

6   concern, vis-a-vis the FTC.  Now I have no question that

7   the FTC is going to act honorably, but they have to tie

8   their own hands voluntarily or be tied if they want a stay

9   of my order enjoining the proceeding of the enforcement

10  action.  If they'll do it voluntarily, then I don't have

11  any problem trusting them and enjoining -- and delaying the

12  effectiveness, if you will, or staying the effectiveness of

13  my injunction for a few days.  I think they're really

14  entitled to that.  The only reason I wouldn't do it is if

15  they're going to start -- if there's a chance they're going

16  to file stuff and you're going to have to respond to it.

17  That'S exactly what I told counsel.

18          MR. SACKS: Well --

19          MR. BERG: Your Honor, again this is Andrew Berg,

20  counsel for BSG, and in fact, the Federal Trade Commission

21  intends to file a motion for summary judgment against both

22  BSG and Integretel.  The deadline for that under the

23  Florida Court's scheduling order is Tuesday, the 6th of

24  November.

25          THE COURT: Now is that still the case even though

39

1   the discovery has been reopened for ten more depositions?

2        MR. BERG: That's correct.  The emergency order

3   that was granted today went to only the extension of the

4   cutoff date with regard to the conduct of discovery.  It

5   had no bearing, expressly and at the request of the FTC,

6   and had no bearing on the scheduling order.  Our

7   understanding is the FTC intends to file their motion for

8   summary judgment on Tuesday the 6th of November.

9        MR. SINGER: My understanding, Your Honor, is it's

10   not atypical in the Southern District of Florida for

11   discovery to be ongoing even though summary judgment

12   motions are filed.

13        THE COURT: All right.  But I don't want you to

14   file a summary judgment motion and start the Debtor's time

15   to do something while you're in essence asking me to stay

16   my order enjoining the enforcement proceeding.  So it seems

17   inconsistent.  If you're going to file a motion for summary

18   judgment and their time is going to run, then you're taking

19   advantage of the stay that you're asking me for.

20        MR. SINGER: Well, let me ask this, Your Honor.

21   If we were to voluntarily agree to a stay and let's say I

22   filed something on Monday or Tuesday, as I understand it --

23        THE COURT: You can't file anything on Monday or

24   Tuesday if you voluntarily agree to a stay.

25        MR. SINGER: Let me rephrase that.  I think I was

40

1   unclear.  Let's assume for the same of argument, Your

2   Honor, that we would agree to a stay.  I have to talk, as I

3   said, with my colleagues to do that.

4           THE COURT: I understand.

5           MR. SINGER: And we file -- the something I was

6   going to say was the something we would file would be a

7   stay motion with the Northern District of California along

8   with our appeal.  Would Your Honor be willing to have your

9   stay, stay in effect until it's briefed in the Northern

10  District of California?

11          THE COURT: No.  You get a stay from them based on

12  your likelihood of success.  I give you enough time to get

13  there, and then they decide what to do with you.

14          MR. SINGER: I appreciate that, Your Honor, but

15  the problem I run into under the schedule you've proposed

16  is if I file with the Northern District on Monday, the

17  response from the Debtor isn't due until -- isn't due for

18  seven days, so your --

19          THE COURT: If you voluntarily stay yourself, you

20  will do nothing that will possibly involve Integretel, then

21  you can have a longer time than that.

22          MR. SINGER: Okay.  I will need to talk with my

23  colleagues about that, Your Honor.

24          THE COURT: And that's subject to talking to Mr.

25  Sacks and the other lawyers to see if there's a problem