41

1   with what I'm suggesting, but off the top of my head, it

2   seems to me that if you voluntarily stay yourself to the

3   full effect of my injunction, you know, you're blocked to

4   that full extent voluntarily, then I have no reason to have

5   my order go into effect or I can stay the effect of my

6   order during that time.

7        MR. SINGER: I understand, Your Honor.  I have to

8   talk with my colleagues.  Thank you.

9        THE COURT: Okay.  And it's subject to my changing

10  my mind if they convince me otherwise because I am reacting

11  to you without hearing from them.

12       MR. SINGER: Fair enough.

13       THE COURT: Okay.  So would you like me to take a

14  15-minute break or --

15       MR. SINGER: That would be fine, Your Honor.

16  Thank you.

17       THE COURT: Okay.  Does anybody have -- do we have

18  any further business?  I have another matter right now that

19  I want to take up at 2:30, so I'm going to go to my other

20  matter in the court, and you can use conference rooms if

21  you need to or sit here.  Do whatever you want.  Thank you.

22       MR. SINGER: May we be excused, those of us who

23  want to participate in that --

24       THE COURT: Anybody is excused, on the phone or in

25  court, whenever they want to be.

42

1          MR. SACKS: Your Honor, the only thing I was going

2   to add is that we do have forms of orders for the cash

3   collateral and for the other matters.  The two most

4   important ones are probably the cash collateral and the

5   Verizon stipulation.

6          THE COURT: I'll sign them as soon as you get them

7   up to me with everybody's signatures.

8          MR. SACKS: Thank you, Your Honor.

9          MR. SINGER: May I step outside, Your Honor.

10         THE COURT: Yes, sir.

11         MR. SINGER: Thank you.

12         MR. SACKS: If you have a matter at 2:30, we can

13  deal with the orders afterwards.  I just didn't want to

14  leave --

15         THE COURT: But I want to get them into the

16  Clerk's Office as fast as I can because you want them

17  today, and I want to get them to you today and there's some

18  staffing issues so -- you should -- as soon as you get them

19  signed, you know, it could be ten minutes from now, this

20  hearing isn't going to take a lot of time.

21         MR. SACKS: Okay.

22         THE COURT: Go off the record, please.

23      (Whereupon, extraneous matters are heard at 2:34 p.m.

24  and this matter is recalled at 3:20 p.m.)

25         THE COURT: Please remain seated.  Thank you.

43

1              Okay.  So I need to call this case again.  This

2    is <u>Billing Resources</u>.  May I have appearances of counsel.

3              MR. SACKS: Steven Sacks, Sheppard Mullin, for the

4    Debtor.

5              MR. OETZELL: Walter Oetzell of Danning, Gill,

6    Diamond & Kollitz on behalf of the Federal Receiver.

7              MR. SINGER: John Andrew Singer for the Federal

8    Trade Commission.

9              MR. WESOLOWSKI: John Wesolowki for the U.S.

10   Trustee.

11             MS. DIEMER: Kathryn Diemer on behalf of creditor,

12   POL.

13             MR. FIERO: John Fiero for the Committee, Your

14   Honor.

15             THE COURT: Andrew Berg?

16             MR. BERG: Yes, I'm here, Your Honor.

17             THE COURT: Jeff Garfinkle?

18             MR. GARFINKLE: Yes, I'm here, Your Honor.

19             THE COURT: Candace Carlyon?  (No response.)

20             Thomas Little.

21             MR. LITTLE: Yes, Your Honor.

22             THE COURT: Enid Colson?  (No response.)

23             Leslie Horowitz?  (No response.)

24             Jeff Schneider?

25             MR. SCHNEIDER: Yes, Your Honor.

44

1           THE COURT: Michael Mora?

2           MR. MORA: Yes, Your Honor.

3           THE COURT: Darryl Laddin?  (No response.)

4           Timothy Miller?  (No response.)

5           Okay.  (Speaking to Mr. Sacks.)  No, I told you

6   not to fill this in.

7           MR. SACKS: I'm sorry, Your Honor.  I

8   misunderstood.

9           THE COURT: All right.  So your papers will go out

10  Monday and objection by the 12th for a hearing --

11          MR. SACKS: I have a clean one, Your Honor, if you

12  wish.

13          THE COURT: I don't understand.  Yeah, this is

14  okay.  These dates are all right.  Okay.

15          UNKNOWN SPEAKER ON THE PHONE: Your Honor, I'm

16  sorry.  We're having difficulty hearing you on the

17  telephone.

18          THE COURT: That's because I'm not saying

19  anything.  I'm just reading an order which sets up the

20  briefing on the cash collateral, and I've done that.  So

21  this will go out Monday.

22          UNKNOWN SPEAKER: Thank you, Your Honor.

23          THE COURT: Okay.  Now we were going to talk about

24  a stay.

25          MR. SINGER: Yes, Your Honor.  I've consulted with

45

1   my colleagues who are handling the enforcement action, and

2   the Commission is not in a position to voluntarily agree to

3   stay the action, so we would make our motion for a stay

4   pending appeal.  I think I know what your order is going to

5   be, but I do want to give you our position.

6           THE COURT: Do you want to respond, Mr. Sacks?

7           MR. SACKS: Your Honor, the purpose of the order

8   would be thwarted if the Court stays it pending appeal.

9           THE COURT: I agree.  The request is denied based

10  on the fact that there's no voluntary agreement in

11  substantial part.  It seems to me that in essence the

12  Debtor could be required to do anything during this period,

13  and I don't know how long the District Court is going to

14  take.  If you're going to go to the District Court rather

15  than the BAP, I don't know how long the District Court or

16  the BAP is going to take in prosecuting your appeal, but

17  the key is that the purpose -- the whole purpose of the

18  order would be thwarted.  The injunction would be thwarted

19  if I didn't deny the stay under this circumstance.

20          MR. SINGER: I understand that, Your Honor, and I

21  would state solely for the record that the Commission feels

22  it would be irreparably harmed because discovery is taking

23  place, summary judgment is going forward, and we feel it

24  would be a waste of resources for the Commission to have to

25  go forward in this action without Integretel.  I have to

46

1    perhaps duplicate --

2            THE COURT: But that was an argument for the

3    injunction in the first place, not having anything to do

4    with the stay.

5            MR. SINGER: They actually somewhat overlap

6    because the standard for a stay pending appeal is

7    essentially the P.I. standard, so I won't -- I'm not making

8    the whole argument again, but I'm just -- I'm stating that

9    for the record.

10            THE COURT: Well, I think the Debtor would be

11    irreparably injured if I didn't -- if I did stay it now

12    under the circumstance where you've turned the Court down

13    on that request, and that the balance of hardships favors

14    the Debtor.  And to the extent that the Court believes that

15    the Court's decision has a likelihood of success on appeal,

16    the Court so believes.

17            MR. SINGER: I would respectfully disagree on

18    that.  (Laughter.)

19            THE COURT: I understand.

20            MR. SINGER: The other thing also just for -- and

21    Mr. Sacks can correct me if I'm wrong -- he will be

22    circulating hopefully on Sunday so we'll have something on

23    Monday or Tuesday at the latest, an actual order to go with

24    your opinion.

25            THE COURT: That's fine.  When are you going to

47

1    get that to me?  It should be this afternoon, Mr. Sacks.

2    You should go back to your office, write this up.  The

3    Federal Trade Commission -- are you going home tonight or

4    are you staying?

5              MR. SINGER: I'm going home tomorrow morning, Your

6    Honor, but he's going to circulate it on Sunday so I

7    believe that we'll have something for you on Monday.

8              THE COURT: Okay.

9              MR. SACKS: Certainly no later than that.  The

10   only -- I can't circulate something to you until I show it

11   to opposing counsel, so --

12             THE COURT: Absolutely.

13             MR. SINGER: And Your Honor, I appreciate that

14   theoretically there could be -- there might not be an order

15   entered until Tuesday, but we understand the spirit of your

16   opinion is that we shouldn't file a summary judgment, and

17   we will not, harped by a technicality.

18             THE COURT: Thank you, sir.  So you will honor the

19   order having been issued from the bench until -- pending

20   the --

21             MR. SINGER: We're taking this as an order, an

22   oral order from the Court, and a formal written order will

23   be following, but your opinion makes your position quite

24   clear.

25             THE COURT: Thank you, sir.  Okay.  So I'm

48

1   prepared to say have a great weekend, if you all are

2   finished and you have no further business before the Court

3   at this time.

4           MR. SACKS: Mr. Wesolowski pointed out that today

5   is also our status conference date.

6           THE COURT: Oh yes, so we need a new date.  When

7   do you want to come back?  What do you think?  You have my

8   calendar so you can -- or you don't have my calendar.  Do

9   you know the status conference dates?

10          MR. SACKS: I don't, Your Honor.

11          THE COURT: You should, coming to court, Mr.

12  Sacks.  Give me a month.  What month do you want to come

13  back?

14          MR. SACKS: I would think we'd come back in --

15          THE COURT: January?

16          MR. SACKS: In mid December or --

17          THE COURT: Mid December is fine.  My Disclosure

18  Statement/Confirmation calendar is December 7th or the other

19  date is January 4.  You can have both -- either.

20          MR. SACKS: I would think that we'd go with

21  January 4.

22          THE COURT: Is that okay with you, Mr. Wesolowski?

23          MR. WESOLOWSKI: That's fine, Your Honor.

24          THE COURT: Okay.  Is that okay with the

25  Committee?

49

 1          MR. FIERO: Yes, Your Honor.

 2          THE COURT: That's fine.  Anybody else have any

 3  other views?  Does that --

 4          MR. GARFINKLE: Yes, Your Honor, this is Jeff

 5  Garfinkle on behalf of United OnLine.  In light of the --

 6  what we're hearing, both my clients hearing what was

 7  represented in court of a potential limited transaction,

 8  that we should take that into account in terms of whatever

 9  dates are being set for some sort of transaction.

10          THE COURT: Well, they can file a motion with

11  respect to the transaction or do whatever they want to as

12  soon as they want to.  If it's going to be in a Plan,

13  that's different, but if they're going to file a motion,

14  they're going to file a motion.

15          MR. GARFINKLE: Understood.

16          THE COURT: But I'm just talking about the status

17  conference in the Chapter 11, moving that to January 4.

18  I'm not setting that as a date for hearing of motions.

19          MR. GARFINKLE: That's fine, Your Honor.

20          THE COURT: Thank you.

21          MS. DIEMER: What time, Your Honor?

22          THE COURT: I said January 4; I'm wrong.  It's

23  January 11th at 2:00 o'clock.  Did I give the December date

24  wrong too?  No.  January 11th, at 2:00 o'clock.

25          MS. DIEMER: Thank you, Your Honor.

50

1    THE COURT: Thank you.  Thank you very much,
2  ladies and gentlemen.  Have a great weekend.
3    ALL COUNSEL: Thank you, Your Honor.
4    THE COURT: This is a very interesting case, and
5  it's a pleasure working on it because there are good
6  lawyers.  So thank you very much.
7    ALL COUNSEL: Thank you, Your Honor.
8    THE COURT: Court is adjourned.
9    (Whereupon, the proceedings are concluded at 3:28
10  p.m.)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

51

1

2

3

4                    CERTIFICATE OF TRANSCRIBER

5

6        I certify that the foregoing is a correct

7   transcript from the digital sound recording of the

8   proceedings in the above-entitled matter.

9

10  DATED: November 13, 2007

11

12                    By:    /s/ Jo McCall

13

14

15

16

17

18

19

20

21

22

23

24

25

**RER - 65**

1

1          UNITED STATES BANKRUPTCY COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3              (SAN JOSE DIVISION)

4

5   In re:

6   THE BILLING RESOURCE,                Case No. 07-52890-ASW

7                                        Chapter 11

8                                        San Jose, California
                                         November 5, 2007
9                                        4:34 p.m.
            Debtor.
10   _____/

11   THE BILLING RESOURCE, dba
     INTEGRETEL, a California
12   corporation,

13            Plaintiff,

14       v.                              A.P. No. 07-5156

15   DAVID R. CHASE, et al.,

16            Defendants.
     _____/

17

18          TRANSCRIPT OF TELEPHONIC PROCEEDINGS
        EMERGENCY HEARING RE MOTION FOR RESTRAINING ORDER
19    TO STAY ENFORCEMENT OF OMNIBUS ORDER BY PLAINTIFF
          THE BILLING RESOURCE, dba INTEGRETEL,
20             A CALIFORNIA CORPORATION

21

        BEFORE THE HONORABLE ARTHUR WEISSBRODT
22          UNITED STATES BANKRUPTCY JUDGE

23

24

25

2

```
 1   APPEARANCES:

 2
     For the Debtor:              SHEPPARD, MULLIN, RICHTER and
 3                                HAMPTON
                                  BY:  STEVEN SACKS, ESQ.
 4                                Four Embarcadero Center, 17th Floor
                                  San Francisco, California 94111
 5
                                           -and-
 6
                                  TIGHE, PATTON, ARMSTRONG, TEASDALE
 7                                BY: NEIL GOLDFARB, ESQ.

 8

 9   For the Federal              DANNING, GILL, DIAMOND &
     Receiver:                    KOLLITZ, LLP
10                                BY: HOWARD KOLLITZ, ESQ.
                                  2029 Century Park East, 3rd Floor
11                                Los Angeles, California 90067

12

13   For PaymentOne:              O'MELVENY & MYERS, LLP
                                  BY: STEPHEN H. WARREN, ESQ.
14                                400 South Hope Street
                                  Los Angeles, California 90071
15

16
     For the Committee:           PACHULSKI, STANG, ZIEHL, JONES
17                                BY: JOHN FIERO, ESQ.
                                  150 California Street, 15th Floor
18                                San Francisco, California 94111

19

20   For the Federal              TEW CARDENAS, LLP
     Receiver:                    BY: JEFFREY SCHNEIDER, ESQ.
21

22
     For the Federal Trade        MICHAEL P. MORA, ESQ.
23   Commission:                            -and-
                                  COLLOT GUERARD
24

25
```

3

```
 1   APPEARANCES (CONTINUED):

 2

 3
     For POL, Inc.              DIEMER, WHITMAN and CARDOSI
 4                              BY: KATHRYN S. DIEMER, ESQ.
                                75 East Santa Clara Street
 5                              San Jose, California 95113

 6

 7   Court Recorder:           ERIN COYLE
                               UNITED STATES BANKRUPTCY COURT
 8                             280 South First Street
                               San Jose, California 95113
 9

10

11   Transcription Service:    Jo McCall
                               Electronic Court
12                             Recording/Transcribing
                               2868 E. Clifton Court
13                             Gilbert, Arizona 85297
                               Telephone: (480-361-3790)
14

15

16

17

18

19

20

21

22

23

24

25
```

4

PROCEEDINGS

November 5, 2007                                    4:34 p.m.

---oOo---

1       THE COURT: This is the case of <u>Billing Resource.</u>

2  May I have appearances, please?  I'll take the order.  Mr.

3  Sacks?

4       MR. SACKS: Yes.

5       THE COURT: Can I have your appearance please,

6  sir?

7       MR. SACKS: Yes.  Steven Sacks of Sheppard,

8  Mullin, for the Debtor, Billing Resource.

9       THE COURT: Mr. Mora?

10      MR. MORA: Michael Mora for the Federal Trade

11 Commission.

12      THE COURT: Collot Guerard, Ms Guerard?

13      MS. GUERARD: Collot Guerard for the Federal Trade

14 Commission.

15      THE COURT: Mr. Fiero?  John Fiero?

16      MR. SACKS: Mr. Fiero just e-mailed me that he

17 hasn't gotten connected, and I've mailed him the number for

18 the court call.

19      THE COURT: Okay.  We need him.

20      Stephen Warren?

21      MR. WARREN: Yes, Your Honor, good afternoon,

22 Stephen Warren on behalf of PaymentOne.

5

1          THE COURT: Okay.  Operator, what about Mr. Fiero?

2          THE OPERATOR: We have tried dialing out for Mr.

3   Fiero and we have not connected with him yet.  We're

4   checking.

5          THE COURT: Try again.  Right now.  We'll wait.

6   Go off the record.

7      (Off the record.)

8          MR. KOLLITZ: We're back on the record, Your

9   Honor?

10         THE COURT: No.

11         Yes, now we are.

12         MR. KOLLITZ: Yes.  This is Howard Kollitz

13  speaking.  That's spelled K-o-l-l-i-t-z.  I'm one of Mr.

14  Oetzell's partners at Danning, Gill, Diamond & Kollitz,

15  LLP --

16         THE COURT: Very good.

17         MR. KOLLITZ:  -- appearing on behalf of the

18  defendant David Chase acting as the Federal Receiver.  Mr.

19  Oetzell, Your Honor, is unavailable.  He's in the middle of

20  a doctor's appointment.

21         THE COURT: Very good.

22         MR. SCHNEIDER: Your Honor, this is Jeff

23  Schneider.  I did make it through.

24         THE COURT: Very good.  Is there anybody else?

25         MR. GOLDFARB: Your Honor, yes.  This is Neil

6

1    Goldfarb.  I'm Washington, D.C. counsel for the Debtor, The

2    Billing Resource, and Mr. Sacks thought it would be a good

3    idea to have me here in case a question comes up about the

4    Florida action that Mr. Sacks may not be as familiar with.

5    So I'm here for The Billing Resource.

6              THE COURT: Very good.  Mr. Schneider, what firm

7    are you with?  Mr. Schneider, what firm are you with?

8              MR. SCHNEIDER: I'm sorry, Tew Cardenas, in Miami.

9              THE COURT: Oh yes.

10             MR. FIERO: Your Honor, John Fiero of Pachulski

11   Stang for the Committee.

12             THE COURT: Very good.  Okay.  We're ready.  Mr.

13   Sacks?

14             MR. SACKS: Yes, Your Honor.  We've asked the

15   Court to hold this hearing on an emergency basis because

16   today we received by fax from the Eleventh Circuit Court of

17   Appeals an order terminating the temporary stay pending

18   appeal that that Court had previously granted.  That

19   circumstance was envisioned in the Court's November 2nd,

20   memorandum decision as one that would indicate to the Court

21   that it would need to grant a stay under Section 105 of the

22   Bankruptcy Code that would enjoin the Receiver and the

23   Federal Trade Commission from seeking to enforce the

24   omnibus order and the clarification order issued by the

25   Florida court in the Florida action.

7

1          THE COURT: Okay.  So this is a hearing on a
2    temporary restraining order request by the Debtor and I'll
3    first hear from the Debtor and then from the Receiver.
4          MR. SACKS: Yes, Your Honor, Steven Sacks again.
5    Our request is that the Court would immediately issue a
6    temporary restraining order pending entry of a written
7    preliminary injunction order and we'd request that we'd be
8    able -- we have not yet submitted to the Court a written
9    order following the Court's November 2nd memorandum
10   decision, and we think the memorandum decision could be
11   amended and therefore the order on that decision could be
12   amended to reflect that the Court would in fact issue a
13   preliminary injunction against enforcement of the omnibus
14   order and the clarification order.
15          I can go into further detail concerning that, but
16   I think the Court has, you know, already heard argument and
17   received the positions of the parties on this and probably
18   doesn't need us to elaborate further, but I'm happy to do
19   so if required.
20          THE COURT: Well, I'm not sure that I would do
21   that in that procedure.  Why wouldn't I do -- issue the
22   order on the memorandum decision as it was and then issue a
23   separate order following that?
24          MR. SACKS: That would be acceptable, Your Honor.
25   I just didn't want there to be any confusion as to what was

8

1  or wasn't enjoined.  Obviously the order as we thought it
2  would issue on Friday was that the -- it was not necessary
3  to have an injunction against the omnibus order and the
4  clarification order --

5          THE COURT: Because of the Eleventh Circuit stay.

6          MR. SACKS: That's correct.  And so that situation
7  having changed before the Court actually issued a written
8  order, then it seems to me the Court could do either.  We
9  could have an order in response to the November 2nd decision
10 and we could submit a second order that, if the Court so
11 orders, that would provide for an injunction.

12         THE COURT: Okay.  Who would like to speak on
13 behalf of the Receiver.

14         MR. KOLLITZ: Your Honor, this is Howard Kollitz
15 of Danning Gill on behalf of David Chase, the Federal
16 Receiver.  Your Honor, might I inquire as to whether the
17 Court has had an opportunity to review the Eleventh
18 Circuit's order which appears to have been entered on the
19 5th of November but apparently was just circulated to
20 parties today.

21         THE COURT: I have it in front of me.

22         MR. KOLLITZ: All right.  Your Honor, in that
23 order, the Eleventh Circuit does what the Debtor asked the
24 Eleventh Circuit to do, which is to assume and exercise
25 jurisdiction over the District Court's orders that the

9

1   Debtor takes exception to.

2           THE COURT: Okay.

3           MR. KOLLITZ: Now the Debtor is here essentially

4   saying to the Court that the Eleventh Circuit has done what

5   we want them to do; they've assumed jurisdiction, but we

6   don't like the fact that they've reviewed the matter and

7   have concluded that the Debtor -- they're the appellant --

8   is not entitled to a stay pending appeal.

9           We would suggest, Your Honor, that as the Court's

10  order from last Friday, your memorandum of decision

11  indicated on page 61 that it wasn't going to be automatic

12  that there be a stay, much less a preliminary injunction

13  issued by this Court as against the Federal Receiver.   To

14  the contrary, it indicates for good cause and based on

15  facts that are not currently before the Court.   The only

16  thing that has changed is the Eleventh Circuit has now

17  basically said this Debtor is not entitled to a stay

18  pending appeal, but the Debtor will have their appeal.   And

19  also I don't see where there's good cause.   I don't see any

20  evidentiary showing made prior to our convening by

21  telephone by the Debtor which would support the issuance of

22  a stay by this Court, much less a preliminary injunction.

23          Your Honor, I'm not going to take up your time

24  because I know it's been argued at length in prior hearings

25  that the Receiver's position is that the Barton Doctrine is

10

1    applicable and before the Debtor would be entitled to come

2    to Your Honor and ask this Bankruptcy Court to issue a

3    stay, it would be incumbent upon them as a condition

4    precedent to see the District Court in Florida as the Court

5    that appointed the Receiver its agent and get permission to

6    seek a stay or otherwise prosecute this adversary

7    proceeding.

8         Having said this, the Federal Receiver thinks

9    that there's been an inadequate evidentiary showing.  In

10   addition, the Eleventh Circuit has made it very clear that

11   this Debtor is not entitled to a stay.

12        THE COURT: Okay.  Thank you very much.  Counsel

13   for the Debtor?

14        MR. SACKS: Yes, Your Honor.  I would point out

15   that the Eleventh Circuit's ruling was in connection with a

16   request essentially that the automatic stay be reinstated,

17   that the court's ruling in Florida District Court, that the

18   automatic stay did not apply to the omnibus order, should

19   be stayed.  And obviously the decision to deny a stay

20   pending appeal is not a decision on the merits.  I don't

21   think it goes to the issues that the Court carefully

22   reviewed in its memorandum of decision, and the court is

23   not in a position considering the interest of other

24   creditors, either in the Eleventh Circuit or in the Florida

25   District Court.  And so we think that it's appropriate for

11

1  all the reasons that the Court stated in its memorandum of

2  decision to issue a preliminary injunction against

3  enforcement of an omnibus order, particularly where as here

4  there is a blocked account established and the Court has

5  not ruled that that blocked account may be used by the

6  Debtor at this time.

7       In other words, the effect of denying the motion

8  for preliminary injunction would be that the Receiver could

9  proceed against the Debtor for a contempt citation even

10 though this Court has already dealt with the issue of

11 whether to preserve funds on account of the Receiver's

12 claim and has not yet invaded those funds or allowed the

13 Debtor rather to invade those funds.

14       THE COURT: Counsel for the Receiver, is it your

15 position that aside from Barton, that because of the

16 Eleventh Circuit decision, that I lack jurisdiction to

17 issue an injunction?

18       MR. KOLLITZ: Well, there's the --

19       THE COURT: And I use the word "jurisdiction"

20 advisedly.

21       MR. KOLLITZ: Yes, Your Honor.  Quite apart from

22 Barton, the Federal Receiver's position is that this Court

23 is lacking in subject matter jurisdiction for all the

24 reasons, including the exercise prior to bankruptcy of

25 exclusive in rem jurisdiction by the District Court having

12

1   made certain determinations which had the effect of

2   depriving this Court of subject matter jurisdiction, in

3   addition to the Barton Doctrine being applicable to this

4   case, just as it would be to any case.

5           If I might just reply to counsel's comments

6   concerning the effect of the Eleventh Circuit, they clearly

7   asked for a stay from the Eleventh Circuit to avoid dealing

8   with contempt proceedings in the District Court, "they"

9   being the Debtor.  Sorry.  The Eleventh Circuit granted a

10  temporary stay to review the matter further.  They reviewed

11  the matter further and they've decided at the Eleventh

12  Circuit that this Debtor is not entitled to a stay.

13          Now, as I indicated earlier, there's been no

14  evidentiary showing today which would support the issuance

15  of a temporary restraining order, much less a preliminary

16  injunction, given the Eleventh Circuit determination.  And

17  why does this Debtor feel that this Debtor gets to litigate

18  in multiple courts.  They asked the District Court for a

19  stay, Your Honor, and they were granted a stay provided

20  that they complied with the District Court's prior orders.

21  And then they went to the Eleventh Circuit, and they did

22  get a temporary stay.  Now that temporary stay after

23  careful consideration has been vacated.  So why would this

24  Court be inclined on behalf of this Debtor to interject

25  itself into this situation where the Debtor has said they

13

1  want the Eleventh Circuit to decide whether these orders

2  should stand, and if they don't like what the Eleventh

3  Circuit has to say to them, then they just come back to

4  this Court and say, well we'd like this Court basically to

5  ignore the Eleventh Circuit's rulings and to ignore the

6  fact that we're making the same arguments to different

7  judges in the Eleventh Circuit, but they're not hearing us,

8  so we're hoping that you're going to hear us.

9           So again, I would urge the Court based on the

10 record before it at this time to deny the Debtor's request

11 for a temporary restraining order or a preliminary

12 injunction.

13           MR. GOLDFARB: Excuse me, Your Honor?

14           THE COURT: Yes.

15           MR. GOLDFARB: This is Neil Goldfarb for The

16 Billing Resource.  Could I respond to that for just a

17 moment?

18           THE COURT: Sure.

19           MR. GOLDFARB: We were very clear in our stay

20 papers to the Eleventh Circuit that the issue before the

21 Eleventh Circuit was distinctly -- very different from the

22 issue before this Court.  The issue before the Eleventh

23 Circuit was whether the automatic stay should be reinstated

24 under 362.  We were careful to point out that the issue

25 before this Court was whether an injunction should be

14

1   issued under 105 in the Court's discretion.  So it's not a
2   matter of asking for relief in one court and then when you
3   don't get it, you know, trying to get the same thing in a
4   different court.  It's two different issues, as I'm sure
5   the Court knows, and the fact that the Eleventh Circuit
6   decided, for whatever reason, not to grant a stay and, you
7   know, I don't know the reason, doesn't at all indicate what
8   this Court should do.
9          And I would also point out that although the
10  Receiver and the FTC have been accusing Integretel of
11  going, you know, coming to this Court to make an end run
12  around the District Court, the FTC on Friday submitted a
13  letter to the Eleventh Circuit stating that if this Court
14  released or would have released the funds from the blocked
15  account, they would go back to the Eleventh Circuit to try
16  to restrict that.  So it seems to me that on the other side
17  there is some shopping going on also, but there's certainly
18  some shopping going on there.
19          THE COURT: Thank you.  Is there --
20          MR. SCHNEIDER: Your Honor, this is Jeff
21  Schneider.  May I respond very quickly?
22          THE COURT: Yes.
23          MR. SCHNEIDER: I participated in the briefing
24  before the Eleventh Circuit.  What Integretel is seeking,
25  what the Debtor was seeking, was a stay pending appeal or

15

1  an injunction, and they had to establish the four prongs,

2  one of which was likelihood of success on the merits.   In

3  fact, quoting from the Debtor's brief to the Eleventh

4  Circuit:

5           "To obtain a stay or injunction pending appeal,

6           the movant must ordinarily show that it is likely

7           to succeed on the merits on appeal...  Of these

8           factors, the most important is the likelihood of

9           success."

10 Your Honor, this is a clear indication, a clear

11 pronouncement from the reviewing court that the Debtor did

12 not meet its burden, did not meet its burden of showing a

13 likelihood of success on the merits.

14           Thank you.

15           THE COURT: By the way, did the Eleventh Circuit

16 have this Court's decision before it, before it issued its

17 decision?

18           MR. GOLDFARB: I don't believe -- Your Honor, Neil

19 Goldfarb again.  I don't believe so.  We were preparing to

20 send it a copy of the decision, but we haven't done that

21 yet.  So to my knowledge, they did not.

22           THE COURT: Does anybody believe that the Eleventh

23 Circuit did have this Court's decision?

24       (No response.)

25           No.  Okay.  Anybody else need to say something

16

1  before the Court rules?

2        MR. MORA: Your Honor, this is Michael Mora for

3  the Federal Trade Commission.

4        THE COURT: Yes, sir.

5        MR. MORA: Your Honor, the Federal Trade

6  Commission joins in all the arguments raised by the

7  Receiver --

8        THE COURT: Thank you, Mr. Mora.

9        MR. MORA: And I think, as the other parties have

10  said, we have fully argued our position on all of the

11  underlying issues, and clearly the Debtor is not entitled

12  to the relief that they're asking for today.

13        THE COURT: Thank you, Mr. Mora.  Does anybody

14  else wish to say anything before I rule?  Was somebody else

15  talking?

16        MR. KOLLITZ: Yes, Your Honor, I'm sorry.  This is

17  Howard Kollitz.  One final comment, and that is in looking

18  at the Eleventh Circuit order on page 2, it's fairly clear,

19  I would submit, Your Honor, that the Eleventh Circuit is

20  considering all the issues, not just the issue of whether

21  the automatic stay in the bankruptcy case for Integretel

22  somehow applies to the Receiver or the Federal Trade

23  Commission.

24        THE COURT: Thank you.

25        Before the Court is Debtor's request for a

17

1  temporary restraining order against the continued

2  enforcement of the omnibus order entered by the Florida

3  District Court pre-petition.  I'll refer to the Florida

4  District Court as the Florida Court.  This Court hereby

5  incorporates all of the findings of fact and conclusions of

6  law as set forth in this Court's memorandum of decision

7  filed and entered on November 2, 2007.  I'll refer to that

8  as the memorandum decision.

9       In the memorandum decision, this Court did not

10  discuss -- I'm sorry -- this Court discussed but did not

11  rule on the merits of a temporary restraining order as to

12  enforcement of the omnibus order since that order was at

13  that time stayed by the Eleventh Circuit.  The Court has

14  been advised that the Eleventh Circuit lifted that stay

15  today.  The Debtor now requests such a temporary

16  restraining order.

17       The standard for injunctive relief in the Ninth

18  Circuit is well settled.  A party must show either one, a

19  likelihood of success on the merits and the possibility of

20  irreparable injury or two, the existence of serious

21  questions going to the merits and the balance of hardships

22  tipping in its favor.  The required showing of harm varies

23  inversely with the required showing of meritoriousness.

24       Here, there's no question that the Debtor has

25  demonstrated the existence of serious questions going to

18

1  the merits.   The Debtor has demonstrated the balance of

2  hardships tipping in its favor.   The Debtor has definitely

3  demonstrated the possibility of irreparable injury, and

4  this Court believes the Debtor has demonstrated a

5  likelihood of success on the merits.   But with respect to

6  the possibility of irreparable injury, there seems to be no

7  doubt that the Debtor has demonstrated that, that there are

8  serious questions going to the merits.   There seems to be

9  no possible doubt about that, and the balance of hardship

10 the Court finds strongly favors the Debtor.

11            In a reorganization context, the Debtor seeking a

12 stay against a non-debtor must show a reasonable likelihood

13 of successful reorganization as set forth in detail in the

14 memorandum of decision at pages 19 to 21.   Debtor has

15 demonstrated that the Debtor has and had a reasonable

16 likelihood of a successful reorganization.

17            In addition to those findings on November 2,

18 2007, the Committee agreed to an additional two weeks for

19 Debtor's use of cash collateral while Debtor and the

20 Committee continued discussions with respect to a Plan of

21 Reorganization.

22            In addition, Mr. Fiero, you provided some new

23 information.   Can you tell us what that was?   It was with

24 respect to a possible Plan.

25            MR. FIERO: Yes, Your Honor.   We reported to the

19

1  Court that it was clear that a term sheet was in progress.

2  That term sheet was distributed by Mr. Ahrens this morning

3  to the interested parties, and we expect that it will turn

4  into either a sale motion or something leading up to a Plan

5  by a week from Friday at the latest.

6          THE COURT: Okay.  Thank you for that

7  clarification.

8          At the November 2 hearing, no creditor opposed

9  Debtor's use of cash collateral based on the viability of

10  Debtor's business.  For the reasons stated in the

11  memorandum of decision and the additional information

12  brought to the Court's attention at the November 2, 2007

13  cash collateral hearing and again today, Debtor has

14  demonstrated that the Debtor has a reasonable likelihood of

15  a successful reorganization sufficient for the issuance of

16  a temporary restraining order.

17          Additionally, as set forth in great detail in the

18  memorandum of decision at pages 38 to 58, Debtor has

19  demonstrated the strong likelihood of success on the

20  merits, that the property that the Receiver seeks to have

21  the Debtor turn over pursuant to the omnibus order is

22  indeed property of the estate.  The omnibus order does not

23  require Debtor to pay any specific amount of funds to the

24  Receiver, rather, in order to comply with the omnibus

25  order, Debtor would have to pay the Receiver out of

20

1  Debtor's general account the so-called reserves the Florida
2  Court determined Debtor held on behalf of the prior
3  customers.  The Florida Court described such reserves but
4  did not quantify them.

5        Pre-petition, Debtor did not turn over any
6  commingled funds to the Receiver, and the Debtor did not
7  segregate any such funds in any fashion.  As of the
8  petition date, Debtor certainly retained an interest in all
9  of its commingled funds and Receiver asserted an interest
10  in some as yet unquantified portion of those funds.  On the
11  petition date, this Court obtained exclusive jurisdiction
12  over all of the commingled funds under Section 1334(e) of
13  Title 28.  Accord In re Simon, 153 F3d, 991 at 996, 9th
14  Circuit (1998).

15        Debtor will clearly be irreparably harmed if
16  Receiver and the FTC are permitted to enforce the omnibus
17  order.  First, Debtor's business will suffer very
18  substantially and irreparably and possibly irremediably if
19  Debtor is required to turn over $1,762,762.56 to the
20  Receiver under the omnibus order, particularly at this
21  critical, crucial point in the Debtor's reorganization
22  efforts.

23        Debtor's estate will lose the over 1.7 million
24  dollars that appears to this Court, to the Creditors'
25  Committee, and to the Debtor to be property of the estate.

21

1    And there's certainly serious questions with respect to

2    that issue.  At a minimum, there are serious questions with

3    respect to that issue, although the Court thinks that the

4    Debtor has a likelihood of success on that point.

5            Those funds will not be available to the Debtor

6    or its creditors if they're turned over to the Receiver.

7    Moreover, if the Debtor is required to turn over the

8    commingled funds, the Debtor will be preferring the

9    Receiver over all similarly situated creditors.  The Debtor

10   is a debtor in possession, and is a fiduciary to all of

11   Debtor's creditors, inter alia, secured creditors,

12   unsecured creditors, customers, the FTC and the Receiver.

13   The Receiver certainly does not represent all creditors of

14   the Debtor's estate.  At most, Receiver represents the

15   receivership estates of the prior customers and the Federal

16   Trade Commission.

17          Receiver does not seek to have the commingled

18   funds turned over to it or to him to protect those funds

19   for all creditors of the Debtor's bankruptcy estate,

20   rather, Receiver seeks possession of those funds for the

21   benefit of the receivership estates of the prior customers

22   to the exclusion of Debtor's other secured and unsecured

23   creditors.

24          Permitting the Receiver to implement the omnibus

25   order would irreparably harm Debtor's bankruptcy estate by

22

1   preferring one creditor, the Receiver, over other similarly

2   situated creditors of the Debtor, since most, if not all,

3   service contracts provide for the same, quote, "reserves,"

4   unquote.

5         Additionally, as set forth in great detail in the

6   memorandum of decision at page 29 to 35, this is a critical

7   time in Debtor's reorganization.  Permitting the Receiver

8   to continue his enforcement of the omnibus order would

9   divert Debtor's president and other personnel from the

10  critical reorganization efforts.  Specifically in the next

11  ten days, the Debtor will be negotiating with the Committee

12  over a Plan of Reorganization finalizing its schedules and

13  statement that must be filed by November 15, 2007 and

14  preparing for the final hearing on cash collateral set for

15  November 16, 2007, plus, as Mr. Fiero points out, this is

16  an absolute critical juncture in the Debtor's

17  reorganization efforts in terms of its term sheet and plans

18  for the future.

19        Finally, in addition to the diversion of Debtor's

20  management from the reorganization process, Debtor will be

21  harmed by incurring legal fees and costs Debtor can ill

22  afford at this juncture if enforcement of the omnibus order

23  is not enjoined.  Debtor estimates that Debtor will incur

24  an additional 50 to $150,000 in fees related to Receiver's

25  request for the turnover of commingled funds.  Receiver

23

1   argues that the contempt proceedings are largely complete

2   and the orders are self-executing.  However, the omnibus

3   order is on appeal even though the Eleventh Circuit has

4   lifted its stay.  If the enforcement of the omnibus order

5   is not enjoined, Debtor will have to comply with the order

6   to turn over the funds or show cause why Debtor should not

7   be held in contempt.

8           Receiver will be protected during the limited

9   duration of this temporary restraining order.  Indeed the

10  Receiver will be completely protected by this Court's

11  orders.  The Court continues to hold $1,762,762.56 -- the

12  Court isn't holding it; the Debtor is holding it -- in a

13  blocked account.  The Debtor is holding it pursuant to an

14  order of the Court that was agreed to by the Debtor and by

15  the Receiver and by the FTC, and the Debtor will continue

16  to hold those funds, at least until December 14, 2007,

17  unless there's a request from the Debtor prior to that time

18  and then, that will be on notice to the Receiver and the

19  FTC with opportunity to respond.

20          Thus, the Court finds that there is cause to

21  issue a temporary restraining order and an Order to Show

22  Cause why a preliminary injunction should not be issued to

23  enjoin the Receiver and the FTC from taking action to

24  obtain the turnover of the approximately 1.7 million

25  dollars the Florida Court required Debtor to turn over to