52

1          MR. SINGER: No, I appreciate that, Your Honor.

2          THE COURT: So you can work with the Debtor during

3  the break and see if they'll agree that if the Court issues

4  an order unblocking some -- I might unblock some and not

5  all; I might unblock none, but unblocking some of these

6  funds, that you would have "X" amount of time to get to the

7  District Court before they were physically unblocked.

8          MR. SINGER: We're certainly happy to talk to the

9  Receiver about that -- with Integretel about that, and if I

10 might, Mr. Mora has the number where I am today, and he can

11 call me when --

12         THE COURT: Well, everybody has it because it's on

13 my telephone list.

14         MR. SINGER: Oh, okay.  That's fine.

15         THE COURT: And Tanya can make the telephone list

16 available to both sides.

17         MR. SINGER: That's fine, Your Honor.

18         THE COURT: Did you want to say something?

19         MR. SACKS: Yes, Your Honor.  Just procedurally,

20 with respect to the cash collateral order, in order to fill

21 in dates in the order, we need a hearing date --

22         THE COURT: Yeah, yeah.  I know.  I have to work

23 with my staff because we're going to try to kick something

24 for you.  It's going to probably be the 30th, and we've got

25 calls in to lawyers trying to move stuff for you so we can

53

1  take care of you on the 30th precisely, and I understand

2  that.  You're not going to leave here without a date and

3  time.  But you don't need it now.  You just --

4         MR. SACKS: No, no, I don't need it now.  I just

5  wanted to -- given that we were taking a break, to raise

6  that issue.

7         THE COURT: That's fine.  Thank you.  Court is in

8  recess probably for a half hour.

9         MR. SACKS: Thank you, Your Honor.

10      (Whereupon, a recess is taken at 11;10 a.m., and the

11  court is reconvened at 11:51 a.m.)

12        THE CLERK: Please rise.

13        THE COURT: Thank you.  Please be seated.

14            I have an idea.  I think that the procedure may

15  be simplified, the Received calmed -- I mean to some

16  extent -- and the issues that are set up, if I continue the

17  TRO by agreement through December 7th and have the

18  preliminary injunction contemporaneous with the motion to

19  unblock the funds, if that's -- or the continued use of

20  cash collateral.  And I'm interested in the argument that

21  the Debtor made in their reply which Mr. Oetzell said he

22  hadn't really looked at, and that is that the Barton

23  Doctrine applies to this Court, and I'd like to give Mr.

24  Oetzell an opportunity to respond to that argument.

25            So if by agreement we just continued the TRO to

54

1  December 7, or I of course can issue it on my own to

2  December 7ᵗʰ based on the hearing that we've had.  I haven't

3  counted the days, but I can do it for 20 days and so people

4  away for two days or whatever it is, if there's a waiver --

5  I don't even know if it's needed; I haven't counted the

6  days.  And we would know whether the Debtor even was making

7  an argument that the Debtor needed to unblock the funds,

8  and everything could be set up for that day.

9      Now Mr. Oetzell has just pulled the mike closer

10 to him, which I presume means that he wants to speak.  It's

11 okay.  Go off the record a minute.

12     (Off the record.)

13     Anyway, that's my idea.  Did you want to say

14 something?

15     MR. OETZELL:  Your Honor, it puts us in a position

16 where everything is on the line on Friday -- excuse me,

17 December 7ᵗʰ --

18     THE COURT:  But isn't that what you want?  Because

19 you're saying I shouldn't issue a preliminary injunction

20 until I deal with the blocking or unblocking issue and that

21 would allow both issues to come up at the same time.

22     MR. OETZELL:  I want the funds preserved until

23 such time as the Eleventh Circuit rules on this.  If with

24 respect to Your Honor, if Your Honor entered the

25 preliminary injunction today, we obviously would appeal it.

55

1          THE COURT: I understand.

2          MR. OETZELL: This would give us some time before

3  December 7th to get something straightened out, whether --

4  depending upon the appellate route that we took.

5          THE COURT: But I want a brief from you on the

6  Barton Doctrine on his argument.  When am I going to get

7  that?

8          MR. OETZELL: Okay.

9          THE COURT: Tomorrow?

10          MR. OETZELL: You can have it in a week, Your

11  Honor, or, you know, slightly less.

12          THE COURT: What does a week mean given that

13  Thursday and Friday are Thanksgiving?  There's no court

14  Friday.  It's closed.

15          MR. OETZELL: Okay.

16          THE COURT: So what does a week mean?

17          MR. OETZELL: Well, what would work for your

18  calendar, Your Honor?

19          THE COURT: Well, I don't know.  I mean I have to

20  give them -- I want to see what you say -- it was first

21  raised by them, so you get to say something and they get to

22  say something, and then I -- that's why I thought the

23  December 7th date made sense since you were coming back

24  anyway.  But I'm interested in that argument.  I think the

25  argument may be meritorious.

56

1      MR. OETZELL: Well, I suppose what we could do,

2  Your Honor, is set this up, you know, and kick December 7th

3  off a little bit so that, you know, we have time to discuss

4  this before December 7th.  I don't want to have everything

5  riding on the line temporally on December 7th.  And I want

6  the same -- I would like the same amount of time that I

7  would have now to address a preliminary injunction prior to

8  a decision on unblocking the account.

9      THE COURT: But you have all the time for December

10 7th that you've always had.

11     `MR. OETZELL: Again, Your Honor, right at the

12 moment, I have --

13     THE COURT: I'm not sure I understand.

14     MR. OETZELL: Well, look, I have from November 16th

15 to December 7th, whatever that is.

16     THE COURT: And I need the papers significantly in

17 advance of December 7th.

18     MR. OETZELL: Right.

19     MR. SACKS: The Court set a briefing schedule for

20 December 7th.

21     MR. OETZELL: Yes.

22     THE COURT: I understand, but how would that

23 parallel if I wanted this briefing on the Barton argument.

24 We have to fit that in somehow to have it culminate in a

25 hearing on December 7th, at least pursuant to my suggestion.

57

1  Now Mr. Oetzell is making a different suggestion.

2      MR. OETZELL: My point is, I need the same amount

3  of time to address the preliminary injunction and the fact

4  that Your Honor would be restraining us --

5      THE COURT: But you've already addressed it.  It's

6  today.  The only issue that I'm asking about is this one

7  little issue.  It's all briefed for today.

8      MR. OETZELL: No, I'm talking about with the

9  appellate court, Your Honor.  I'm assuming we would have a

10  decision today on the preliminary injunction.  I have to be

11  able to get to the appellate court in time so that if the

12  appellate court agrees with me, it can do something that's

13  going to affect the December 7th issue.  My concern again is

14  that --

15      THE COURT: You're not likely to get a decision

16  from me other than a TRO today.

17      MR. OETZELL: I understand, Your Honor, but I

18  don't want to put myself voluntarily in a position where I

19  don't have the time to address a preliminary injunction

20  prior to the December 7th hearing.  Now if we were to take

21  that December 7th hearing and, you know, if we were to

22  continue with the TRO, have a preliminary injunction at

23  another date, and be able to --

24      THE COURT: Can I see your calendar, Tanya?

25      MR. OETZELL:  -- and kick December 7th over so I

58

1    have the same amount of time to deal with any preliminary

2    injunction that might be entered against me as I do here,

3    before December 7th, you know -- well, no harm; no foul.

4          THE COURT: Wait a second.  I just need to count

5    these days because I want to make sure I know what I'm

6    doing.  It's exactly 20 days.  Okay.  I think, unless I did

7    it wrong.

8          MR. SACKS: I thought it was 21, but --

9          THE COURT: Wait a minute.

10          MS. DIEMER: I thought it was 21 too.

11          THE COURT: 17, 18, 19 --

12          MS. DIEMER: Do you count the holiday?

13          THE COURT: Yeah, you count everything.  20 is the

14    7th.  Count again.  Can you guys go up to the calendar and

15    see if that's what it is.

16          MR. DIEMER: I can't see it.

17          THE COURT: No, no, nobody can see it from there.

18          MR. SACKS: Your Honor, could I be heard as to

19    whether the TRO should continue?

20          THE COURT: Yeah, but I first want to know the

21    date to see if it's real.

22          MR. SACKS: Okay.

23          THE COURT: Does anybody disagree --

24          MR. OETZELL: I count the 20th day as the 6th, Your

25    Honor.

59

1          MS. DIEMER: The 6th is the 20th day.

2          THE COURT: I'm not counting the 16th, of course.

3    That's today.

4          MS. DIEMER: I wasn't either.  But if you count,

5    the 20th day is the 6th.

6          THE COURT: All right.  I'm going to just do this

7    right.  Let's go off the record.

8      (Off the record.)

9          THE COURT: Go ahead, Mr. Sacks.

10          MR. SACKS: What I was going to say, Your Honor,

11   is the Barton Doctrine is our argument and would be a

12   further reason why we're entitled to a preliminary

13   injunction.

14          THE COURT: I understand.

15          MR. SACKS: And so even if they persuaded you that

16   that argument was wrong, I'm not sure that it factors into

17   the preliminary injunction decision.

18          THE COURT: Well, it does because they say I'm

19   precluded by the Barton Doctrine.  And you say they're

20   precluded by the Barton Doctrine.  And if they're precluded

21   by the Barton Doctrine, that substantially -- that's why

22   you made the argument in your brief, Mr. Sacks -- that

23   substantially augments your position.  So I don't

24   understand that.

25          MR. SACKS: I guess what I'm saying, Your Honor,

60

1  is that regardless of whether they're precluded by the

2  Barton Doctrine, we have irreparable injury stemming from

3  their attempt to enforce this order against us in Florida,

4  so long as the funds are being held.

5         THE COURT: It's the jurisdiction -- you're

6  missing what I think is the point, and the point is the

7  jurisdictional argument, not whether you can meet the

8  standards for preliminary injunction. There's no question

9  you can demonstrate irreparable injury. There's no

10 question in my mind you can demonstrate serious questions

11 going to the merits. In my opinion, there's a likelihood

12 of success on the merits. None of that is at issue in this

13 discussion, this aspect of our discussion.

14        The only aspect of the discussion that we're

15 talking about is whether I have jurisdiction to enjoin the

16 Receiver who is participating in this District Court

17 receivership. That's the only issue. And to that, the

18 Barton Doctrine is addressed. It's their argument, not

19 your argument, that I am precluded by the Barton Doctrine

20 from issuing this order because you're precluded from suing

21 the Receiver.

22        Ergo, if the Barton Doctrine precludes them from

23 bringing a contempt proceeding here, which I have

24 jurisdiction to decide, right, because it's here and it's

25 my jurisdiction, then that seems to very substantially

61

1   assist the conclusion that I reached in the TRO.  Now if

2   I'm wrong -- I mean I'm not always right; I'm often wrong,

3   so if that's wrong, you know -- I won't say often --

4          MR. SACKS: No, we raised the argument because we

5   thought it was a good argument.  I'm just saying that it

6   didn't seem necessary to the Court's decision because it's

7   a further reason why the Receiver can't complain about

8   being enjoined.

9          THE COURT: I like it.  I have to tell you, this

10  area of the law is not so highly developed as you have

11  found out, so if that argument substantially assists my

12  decision, then I'd like to include it.  But I think it's

13  fair to give Mr. Oetzell -- you can put it in a reply --

14  and give Mr. Oetzell a chance to respond and for me to do a

15  little more work on it than I've done.

16          Okay.  Was it your argument originally or was it

17  Mr. Sacks' argument originally?

18          MR. SACKS: Well, it was advanced in our papers in

19  reply --

20          THE COURT: No, no, I know.  I know.  But have you

21  studied it?

22          MR. WARREN: Your Honor, to some degree, yes, and

23  this was an issue -- we have spoken with the Debtor about

24  this issue, although I will say I think the Debtor is

25  further along than anybody in terms of analyzing the Barton

62

1   Doctrine question.

2           THE COURT: Okay. Thank you. Certainly further

3   along than you, huh, Mr. Oetzell? I'm only basing this on

4   what you said before.

5           MR. OETZELL: I haven't been impressed so far, and

6   I don't expect that I'm going to be impressed when this

7   thing comes right down to the decision.

8           THE COURT: Okay. Well, I wouldn't want to use in

9   support of my decision anything that you weren't impressed

10  by, but --

11          MR. OETZELL: Your decision is fine. I'm just not

12  impressed by their arguments thus far.

13          THE COURT: Okay. Okay, so -- I just need -- I

14  may need a little more time than today to get this out in a

15  form. We know it's going up, right? And I'd like to make

16  sure that I have this locked, and I'd like to have that

17  argument briefed quickly. Now, can you -- you want to get

18  me something in a day or so? That will advance my

19  decision, and give you more time before December 7th. I

20  mean the other possibility -- I don't know whether it's --

21  see, they may need the money so we have to deal with that

22  aspect too.

23          MR. OETZELL: Well, you know, Your Honor, I

24  just -- I think the --

25          THE COURT: Well, you waive the argument. I mean

63

1   you don't brief it, and I just deal with it.

2           MR. OETZELL: No, I think, Your Honor, if I might

3   suggest the best way to deal with this is pop this P.I.

4   hearing over to the 7th, put the hearing on unblocking the

5   account to the 28th --

6           THE COURT: The 28th of December?

7           MR. OETZELL: Yes.

8           THE COURT: I have no staff. There's nobody here.

9           MR. OETZELL: Okay. Well then whatever date is

10  close enough to the 28th --

11          THE COURT: Are you all available the 28th of

12  December?

13          MR. SACKS: Your Honor, I'm not, but I think the

14  more important point in terms --

15          THE COURT: The Debtor may need the money before

16  that.

17          MR. SACKS: Thank you.

18          THE COURT: That's the problem. I have to deal

19  with the reality. I mean the Debtor may not; the Debtor

20  may not. We don't know whether the Debtor is really going

21  to need the money or not.

22          MR. OETZELL: Well, does the Debtor have an idea

23  now? You know, the Debtor has been relieved of some rather

24  substantial expenses that it predicated the idea that it

25  needed the money on, at least $666,000 in expenses and

64

1  probably anticipated expenses, legal expenses.  I'm not so

2  sure that they do need the money at the moment.

3          THE COURT: Are you talking about the enforcement

4  action?

5          MR. OETZELL: Yes, Your Honor.

6          THE COURT: Because we don't know what's going to

7  happen.  That could change momentarily.

8          MR. OETZELL: Well, you know, there's a lot that

9  can change momentarily, and the changes can be dealt with

10  as they happen, but they have been -- and, you know, the

11  Debtor has never satisfactorily explained why they have a

12  $600,000 drop in revenue as between the week immediately

13  preceding and the week immediately following this, I

14  believe it's December 14th aspect where they said they

15  needed the money.  And on top of that, the Debtor's cash

16  balance, their ending cash balance, never goes to zero.  So

17  I am not altogether certain that the Debtor is in such dire

18  need of this money that this unblocking of the account

19  can't be kicked off til late December so that if I do not

20  prevail on this preliminary injunction, that I can address

21  it at the appellate court.

22          THE COURT: Go ahead.

23          MR. SACKS: What I was going to say, Your Honor,

24  is that I think you've made it clear in past hearings that

25  unless we need this money, the Court's inclined to leave it

65

1    blocked so that it doesn't have to face the issue.  And so

2    my feeling is that if we don't come to you and we have to

3    file papers on November 27th for hearing on December 7th for

4    money that we need on the 14th, if we can't show you on the

5    27th that we really need this money on the 14th, then you're

6    not going to give it to us anyway.  But the problem is I

7    can't sit here now two weeks before that or ten, eleven

8    days before that, and tell you that we don't need it by

9    December 14th, because that was our original projection.

10   We're still working towards that at this point.

11            THE COURT:  Okay.  I have another question.  And

12   this is for Mr. Schneider and Mr. Fiero, I'm switching

13   gears.  Do you want the morning of the 30th for your

14   hearing, and if so, you know, what am I going to be facing

15   in terms of discovery or briefs or anything else that's

16   going to be done other than you're going to show up and

17   have testimony.  But I have a very full calendar toward the

18   end of the year because that's just the way it works.

19            MR. FIERO:  I've been there, Your Honor.

20            THE COURT:  And you're probably there now too.

21        (Laughter.)

22            MR. FIERO:  Your Honor, in speaking with Mr.

23   Oetzell, we were thinking later, more like December 7, just

24   in light of what next week is likely to be like for most

25   attorneys, and we were also going --

66

1          THE COURT: December 7th is going to be -- I have

2    an afternoon calendar already, and December 7th is going to

3    be the preliminary injunction, the cash collateral, the

4    possible need of the money, and the idea that I'm going to

5    just slip in an evidentiary hearing there seems unlikely,

6    unless December 7th goes away.  But right now, December 7th

7    is a pretty busy time.

8          MR. FIERO: Yes, Your Honor.  What Mr. Oetzell and

9    I had discussed was submitting a, what I'll call a

10   scheduling order, by Wednesday of next week giving the

11   parties a chance to talk about some of these matters, and

12   setting the hearing for a date on September 7th, only

13   because it was convenient and --

14         THE COURT: You don't mean September anymore.

15         MR. FIERO: December, Your Honor.

16         THE COURT: You mean just as a scheduling date,

17   not as an evidentiary hearing date.

18         MR. FIERO: No, as an actual hearing date because

19   it would obviate a second trip for -- it would be a

20   meaningful date in the case that would otherwise allow

21   people to do more than one thing on a date, especially

22   given that Mr. Schneider will have to --

23         THE COURT: But three witnesses, when am I going

24   to do this?  At 4:00 in the morning?  When am I going to do

25   this?

67

1        MR. FIERO: Your Honor, if it -- I don't think the
2   30th is going to be a practical date.  I think a date after
3   that would work, and I don't have the familiarity with Your
4   Honor's calendar to be able to suggest a date, other than
5   that.  I just -- I know for a fact that --

6        THE COURT: I might be able to do it the 11th, and
7   I might -- I might be able to do it the 11th; I might be
8   able to do it the morning of the 10th.

9        MR. FIERO: Your Honor, both those days would be
10  okay for my firm.  I can't speak for the Receiver.

11       MR. SCHNEIDER: Your Honor, this is Jeff
12  Schneider.  I'm in trial the week of December 3rd and the
13  week of December 10th.

14       THE COURT: So the 7th doesn't work for you either.

15       MR. SCHNEIDER: No.

16       THE COURT: So there it goes.

17       MR. FIERO: We weren't aware of that, Your Honor.

18       THE COURT: Well, so I don't know what you're
19  talking about now.  He's not available the week of the 3rd
20  or the 10th.  What are we then talking about, the week of
21  the 17th?  Is that what you want?

22       MR. FIERO: Yes, Your Honor.

23       THE COURT: I may be able to do the 20th, which is
24  a Thursday.

25       MR. FIERO: Subject to checking with Ms.

68

1  Grassgreen, Your Honor, I think that would be fine.  And I

2  suppose I could go in the hall and --

3          THE COURT: I may be able to do it earlier than

4  that.  In fact, I would prefer to because -- I may do it

5  the 17th or the 14th.  I'll have to check.

6          MR. SCHNEIDER: Your Honor, the 17th -- again, this

7  is Jeff Schneider.  The 17th would be much better for me.

8          THE COURT: All right.  Let's see.  I may -- I'll

9  see.  Okay.

10          MR. SCHNEIDER: I appreciate it.

11          THE COURT:  I'll have to check -- there are court

12  staff issues.  There are a bunch of issues.  Okay.  And if

13  I set it for the 20th, you can be here though?

14          MR. SCHNEIDER: It is my firm's annual partnership

15  meeting on the 20th.

16          THE COURT: How about the 21st?

17          MR. SCHNEIDER: I begin a vacation on the 21st.

18          THE COURT: Well, you began a vacation.

19          MR. SCHNEIDER: I began, yes.

20          THE COURT: All right.  I understand.  All right.

21  We will see.  I'll see what's possible.

22          MR. FIERO: Thank you, Your Honor.

23          MR. SCHNEIDER: Thank you, Your Honor.

24          THE COURT: Okay.  All right.  So neither of you

25  are in love with the idea of having the TRO hearing -- have

69

1  the TRO going through December 7, and Mr. Oetzell

2  especially isn't in love with it.  I'm not sure why you

3  care.

4         MR. SACKS: Well, I think we can live with the TRO

5  hearing going through the 7th.

6         THE COURT: Okay.

7         MR. SACKS: I mean the TRO order going through the

8  7th.  I do want to note that as far as I know the Court

9  hasn't actually entered the written TRO --

10        THE COURT: Has it been submitted?

11        MR. SACKS: It has, and I think that --

12        THE COURT: Oh, there was a debate about the

13 order.  I remember.  And there's a broader order and a less

14 broad order, and we can talk about that today too.  I have

15 them in front of me.  I know what those are.  I've looked

16 at those.

17        Okay.  I need a few minutes, and part of it is

18 scheduling.  I'm going to go off the record.  Thank you.

19 Don't rise please.

20        (Whereupon, a recess is taken at 12:13 p.m., and the

21 court is reconvened at 12:20 p.m.)

22        THE COURT: First, December 17th is okay, and I

23 have staff, so we'll have your evidentiary hearing.  Am I

24 going to get anything before the 17th?  I want to have

25 everything done on the 17th.  I don't want briefs after the

70

1  17th.  I don't want anything done after the 17th, just
2  because of schedules.
3           MR. FIERO: I'd be happy to submit a trial brief
4  on the 10th, Your Honor.
5           THE COURT: The 10th is a week before, which is
6  what I usually request.  Can you do that, Mr. Schneider?
7           MR. SCHNEIDER: Yes, Your Honor.
8           THE COURT: All right.  So how much time should I
9  allow for this?
10          MR. FIERO: Three hours, Your Honor.
11          THE COURT: Okay.  We might as well just go ahead
12 and start at 10:00 o'clock then.  It may go over lunch, but
13 we'll start at 10:00 o'clock.  Okay.  What I'm going to do
14 to try to accommodate everybody, including what I need to
15 do is to go ahead and issue a TRO through December 6th for
16 the exact same reasons the TRO was issued before, but I'm
17 going to include the argument with respect to -- the legal
18 argument that it seems to me that the Barton Doctrine, if
19 it applies, would apply equally well to the Bankruptcy
20 Court and to the Receiver's obligations to seek permission
21 from this Court.  If it applies to one, it would seem to
22 apply equally well to the other, for the reasons stated by
23 the Debtor in the Debtor's brief.
24          Now, having said that, I'm aware of the time
25 constraint the Receiver is under, and I'm going to try to

1  get the TRO decision out.  It may be -- I'm sorry, the

2  preliminary injunction decision out very soon, within a

3  couple of days hopefully.  Now I say a couple of days, but

4  tomorrow is Saturday; the next day is Sunday, so I don't

5  really mean a couple of days.  I'm going to try to get it

6  out within a couple of working days.

7           I'm not going to have any further briefing

8  because it would -- it seems impossible at this point

9  without making a decision today that the Debtor doesn't

10  need the money, and I can't make that decision that the

11  Debtor didn't need the money or does need the money.  So

12  I'm just going to go ahead and issue my preliminary

13  injunction decision as soon as I can finish it, and so that

14  will preempt ultimately the TRO.  But I'm issuing the TRO

15  for the 20 days just to cover myself and everybody else

16  and, you know, frankly, I would prefer to issue it through

17  the 7th, but I don't have the right to issue it for more

18  than 20 days on the basis of the law as I understand it.  I

19  could issue a preliminary injunction of limited duration,

20  but I'm not going to do that.  I'll just issue it through

21  the 6th with the understanding that I plan to get a

22  preliminary injunction decision out within the next few

23  days.

24           The decision may well be oral, so when I have it

25  done, my deputy may just call you and say he's going to

72

1   issue it orally on the record, and I'll issue it orally to

2   whomever is available at that time.  You can all order

3   copies of the CD's or have, you know, co-counsel listen and

4   she's not going to call everybody who's on today's

5   calendar, but she'll call the principal parties which will

6   include Mr. Mora, Mr. Oetzell and everybody represented in

7   court here today, and in addition, Mr. Schneider.  And if

8   anybody else wants to be called, they should call one of

9   those parties and they can have them call them.

10          Yes, go ahead.

11          MR. MORA: Your Honor, Michael Mora for the FTC.

12  I just want to state our position on the extension of the

13  TRO, and I understand Your Honor has just indicated that

14  you'll be issuing a preliminary injunction before then or

15  it's your intention to do so.

16          THE COURT: Before the 6th.

17          MR. MORA: But by our count under Rule 65, the

18  clock started ticking on the day the Court entered the TRO,

19  which was November 5th, and so the 20-day clock really

20  starts from then, and so I just wanted to be clear that

21  it's our position that it really cannot be extended

22  pursuant to Rule 65 beyond 20 days after the 5th.

23          THE COURT: My understanding was that you can

24  issue successive TRO's.  You can issue more than one TRO.

25  If that's incorrect, then I'd like a case citation or tell

73

1  me exactly where in the world it says a court cannot issue

2  a second TRO.  If that is an issue, then I only have until

3  November 25th, which you should submit a brief to me

4  tomorrow on that -- Monday.  If your position is that I

5  don't have that ability, I want a brief Monday.

6          MR. MORA: Yes, Your Honor.

7          MR. SINGER: Your Honor, this is John Singer for

8  the FTC.  I happen to have a copy of Rule 65 in front of me

9  if that would be helpful to you.

10          THE COURT: Only if it specifically says the Court

11  can issue a successive TRO.

12          MR. SINGER: You might be able to do a successive

13  TRO, Your Honor, but I think they can only be in ten-day

14  segments, is the issue.

15          MR. OETZELL: The time is ten days I believe, Your

16  Honor.

17          THE COURT: I thought it was 20 days if you had a

18  hearing, ten days without a hearing and 20 days if you have

19  a hearing.  That's my understanding of the law, and

20  frankly, I must have said it a number of times in my 18

21  years on the bench, so if I'm wrong, you should provide me

22  with authority.  My understanding is I can do a ten-day TRO

23  even without notice to the other party if notice is

24  impracticable, and I can do a 20-day if I have a hearing,

25  and I certainly had a hearing.

74

1          MR. SINGER: Okay, Your Honor, we can take a look
2    at --
3          THE COURT: But you have til Monday; you get me a
4    brief on Monday and if you think that I'm wrong --
5          MR. SINGER: If we think there's a problem, Your
6    Honor, we'll get you a brief.
7          THE COURT: All right.  And if not, I'm gong to
8    assume that you agree with me that the 20 days is okay.  If
9    I don't have a brief by 5:00 p.m. on Monday, I'm going to
10   take that -- that's the requirement that if you're going to
11   contest it, you have to do it by 5:00 p.m. on Monday.
12         MR. SINGER: Thank you, Your Honor.
13         THE COURT: And if I have to issue two successive
14   ten-days, then I'll deal with that.  I don't think I'm
15   going to have to issue -- I think that -- my own impression
16   from my current status is that the P.I. will go out long
17   before that.
18         MR. SINGER: Then it might be a moot point either
19   way, Your Honor.
20         THE COURT: It may, but you're consenting to the
21   20 days unless you file a brief by Monday.
22         MR. MORA: All right.  Thank you, Your Honor.
23         THE COURT: Thank you.  Is there anything else --
24   and I'm incorporating the findings of fact and conclusions
25   of law that I issued the last time, in addition to this one

1  additional legal argument, and in addition to all of the

2  comments the Court made on the record today, including one

3  that needs clarification, and that is that the Court is

4  determining that the Court has the exclusive jurisdiction,

5  which is the predicate for the Barton Doctrine argument

6  that was contained in my initial decision.  I was having

7  this hypothetical conversation with Mr. Oetzell with

8  respect to the preliminary injunction standards only, and

9  he correctly pointed out that any predicate for the Barton

10  Doctrine argument or position in my Memorandum of Decision

11  included the jurisdictional point.  And so that I

12  understand.  But the rest of my comments on the record are

13  all incorporated in today's findings of fact and

14  conclusions of law in support of the continued TRO for 20

15  days.

16          MR. OETZELL: Your Honor, two things, number one,

17  since I will not be in front of Your Honor if you issue a

18  preliminary injunction, I'd like to request at the present

19  time any stay -- a stay of any preliminary injunction that

20  would be issued.

21          THE COURT: Why?  If I'm going to issue -- you're

22  going to have -- I'm issuing a TRO that takes us through

23  December 6th already, so we'll have a preliminary

24  injunction -- stayed through when?

25          MR. OETZELL: Well, I would ask for a stay, Your

76

1   Honor, through the time that the Eleventh Circuit takes

2   care of things, but I must request a stay so that I can go

3   ahead and appeal any --

4           THE COURT: But you're going to have time to

5   appeal.  I think the decision will be out in a few days.

6   You'll have time to appeal.

7           MR. OETZELL: Okay.  But I have to ask Your Honor

8   for a stay --

9           THE COURT: Okay.  Why don't you have somebody

10  else do it, when I do the argument.  You're going to be on

11  the phone.  I'm going to issue the decision; you're going

12  to be on the phone, hopefully.

13          MR. OETZELL: I'm sorry.  You're going to issue --

14  we will be --

15          THE COURT: I'm either going to issue by phone, in

16  which case you'll be called --

17          MR. OETZELL: I'm sorry, Your Honor, my impression

18  was, is that a Clerk would call --

19          THE COURT: It would come out in writing?

20          MR. OETZELL: Yeah, it would come out in writing

21  or a Clerk would call and say --

22          THE COURT: No, the Clerk will call and say the

23  Court is going to issue its decisions at 2:00 o'clock today

24  or at 3:00 o'clock today, and you'll get some time.

25          MR. OETZELL: So you will be reading the decision

77

1   or giving the decision --

2            THE COURT: That's the likely -- yes, sir.

3            MR. OETZELL:  -- and I will have time to ask for

4   a stay at that point.

5            THE COURT: I assume so.  Now if you're

6   unavailable, then you should have a colleague available --

7            MR. OETZELL: Right.

8            THE COURT:  -- over the next few days, because it

9   could come out, you know, on Monday or Tuesday or Wednesday

10  of next week.

11           MR. OETZELL: All right.  I understand.

12           THE COURT: I probably won't call you on Thursday.

13           MR. OETZELL: Okay.  Your Honor will be the one

14  that will be calling and we'll have a discourse at that

15  point.  Yes.  Thank you, Your Honor.

16           Secondly, I appreciate, you know, Your Honor's

17  attempt to work things out here, but that still puts me

18  under significant temporal pressure which I'm not under

19  necessarily today, if the decision came out today, and I

20  would ask that maybe we kick that December 7th hearing over

21  a week.  I just find it hard to believe that the timing is

22  so exquisite here that it's December 7th or bust.

23           THE COURT: I think the problem will be that

24  you're going to want the time between the time I issue a

25  decision and the time I determine that they need the money.

78

1    And if they conceivably -- this was why it was set up this

2    way -- if they conceivably can demonstrate to me that they

3    need the money on the 14th, conceivably they can.  I'm not

4    saying they can, but that's what they're saying they may be

5    able to do.  Then you want as much time between the

6    preliminary injunction and their actual use of the money --

7    or I'm sorry, the unblocking of the account and the actual

8    use of the money as you can.  And you don't want to shorten

9    that.  So even if I said, okay, we'll have the hearing on

10   the 11th or 12th, and they demonstrate that they need the

11   money on the 14th, you're only going to have three days.

12   You don't want what you're asking for.

13           MR. OETZELL:  What I want, Your Honor, is enough

14   time to get before an appellate court and if I prevail,

15   then to get before the District Court.

16           THE COURT:  I don't -- the District Court is the

17   appellate court.

18           MR. OETZELL:  No, I'm talking about the Florida

19   District Court.  If Your Honor issues a preliminary

20   injunction today -- and I'm not saying that you should --

21   but if you do, I would then go ahead with my appellate

22   process and hopefully I would go ahead and prevail at the

23   appropriate appellate level in the Ninth Circuit.

24           THE COURT:  Wait.  Stop there.  Let's assume that

25   you got to a District Court in the Northern District of

79

1   California, and you decided not to go to the BAP which

2   you've already decided to do with respect to one matter;

3   you went to the District Judge and the District Judge said

4   that I was wrong, right?  And that my order unblocking the

5   funds was vacated or stayed.  The District Court could do

6   that.  So why do you need to go to Florida?  If the

7   District Court stayed the effect of my order unblocking the

8   funds --

9           MR. OETZELL: No, I'm talking --

10          THE COURT: And they told me that I was wrong and

11  then it came back to me for a stay, why are we in Florida?

12          MR. OETZELL: I'm talking about the preliminary

13  injunction, Your Honor, that I would go ahead, go up to the

14  District Court or whatever court is appropriate --

15          THE COURT: Oh.

16          MR. OETZELL:  -- get the preliminary injunction

17  off, and then I would have the remedy of going before Judge

18  Reiscamp (Phonetic) in Florida and saying, we asked you for

19  a stay; you said let's let the bankruptcy judge rule first.

20  The bankruptcy judge has ruled.  This is what he's ruled.

21  You need to enforce your order.

22          THE COURT: And why was that such -- why does that

23  need to be done so fast if my order unblocking -- oh, okay,

24  go ahead.  I'm sorry.  I guess I am confused.

25          MR. OETZELL: I need to get this done and exhaust

80

1   those remedies prior to throwing our lot in, in respect to

2   this order to unblock the account, because --

3            THE COURT: I see.  I'll do it as fast as I can.

4            MR. OETZELL: Because once that order unblocking

5   that account is entered, I am under -- the money is going

6   to be spent.

7            THE COURT: I understand.  It's not going to be

8   spent because it's not going to be spent before December

9   14th.  That was the whole way it was set up.  If the order

10  goes in December 7th, the earliest that they're going to use

11  the money is the 14th.  That's the way it was set up.  Am I

12  wrong?

13           MR. SACKS: No, that's exactly what the Court --

14           THE COURT: So you're going to have a full week no

15  matter what.

16           MR. OETZELL: I understand, Your Honor.

17           THE COURT: Thank you, sir.  Okay.  So we need to

18  prepare an order granting this temporary restraining order.

19  Hopefully you'll sign off on it.  I'm going to go through

20  the orders that I have and tell you what I think is okay

21  and what isn't okay.

22           MR. SACKS: That will make the sign-off easier.

23           THE COURT: Right.  Well, there's a new one -- did

24  you want to say something, Tanya.

25       (The Judge confers with the Deputy.)

81

1          THE COURT: Cash collateral is continued to

2    November 30, right, and that's the date you wanted, right?

3          MR. SACKS: That's correct.

4          THE COURT: Right.  November 30 at 10:15.

5          MR. SACKS: Do you want to talk about the

6    intermediate dates now while we're on that subject?

7          THE COURT: No.  I want to deal with this first,

8    and then I'll come back to that.

9          MR. SACKS: No problem.

10          MR. OETZELL: And did I hear you say, Your Honor,

11    you don't want any additional briefing on the Barton

12    Doctrine?

13          THE COURT: It'll just slow you up.  It'll slow me

14    up.  So I guess the answer is no.

15          Okay.  So essentially the Court accepts the

16    Debtor's suggestion that the order should not delete their

17    officers, agents, service, employees and attorneys, et

18    cetera, et cetera, which is on the Debtor's opposition or

19    response at lines approximately 17 through 20.  And the

20    persons affected by the TRO shall also include persons who

21    act in concert with the FTC or the Receiver, who obtain

22    notice of the order.  And I understand the Debtor's

23    request, and I agree with it, that the Receiver shouldn't

24    be able to suggest that the Court on its own do something

25    or initiate or participate in a proceeding to hold

82

1    Integretel in contempt.  The Receiver should not be

2    participating or suggesting anything in that regard.  So I

3    accept the Debtor's language with respect to that.

4                MR. SCHNEIDER: Your Honor --

5                THE COURT: Let me -- what, you can't hear?

6                MR. SCHNEIDER: I can hear, but I wonder if I may

7    be heard on that one point?

8                THE COURT: Oh.  I don't want to hear you now.  I

9    want to finish what I'm saying, and I don't -- I don't see

10   any basis for me to at this point limit the Receiver -- or

11   I mean deal with the possibility the Receiver is going to

12   go to some other court.  It's not been on the table.  It's

13   not been discussed.  I'm not enjoining the Receiver from

14   bringing contempt proceedings in some other forum.  I don't

15   think that that's realistic.  I don't think that that's

16   what was -- I don't think it's going to happen, and I don't

17   think it was ever discussed, and so I think that provision

18   doesn't need to be in there.

19               And nothing in my order would preclude the

20   parties from submitting a joint status conference statement

21   to the Florida District Court.  But any such statements

22   should be joint statements so that -- on the contempt

23   proceeding.  That way everybody knows what everybody else

24   is saying, and they should be clear that they should be a

25   joint statement as to what the status of the proceedings

83

1   are.  It would seem to me that between experienced

2   intelligent counsel, you should be able to agree what the

3   status of the proceedings are.  So I'm not saying that you

4   can't communicate with the District Court.  It should just

5   be done in a joint basis, on this issue of the contempt

6   proceedings.

7           Does that clear everything up, Mr. Schneider, or

8   do you have some question?

9           MR. SCHNEIDER: I still have a question, Your

10  Honor, because if I want to file, for example, a fee

11  application with the court, I'm going to have to describe

12  what's been happening for the last six weeks and why the

13  fees are as high as they are, and I just can't see how I

14  would be able to do that --

15          THE COURT: But why are you going to need to do a

16  fee application in the next 20 days?  Are you going to do

17  it -- all that we're talking about is a temporary

18  restraining order.  We're not talking about the language of

19  the ultimate P.I. yet, because that hasn't come before me.

20  But I agree that you and the Debtor should discuss how you

21  should do a fee application when that -- you know, if that

22  is realistically going to occur at some point in the near

23  future.  And then come in with a suggestion.  It's not a

24  novel question.  It's just one that you and the Debtor

25  should sit down and try to grapple with language on.  But

84

1  I'm not -- it doesn't seem to me that I need to think about
2  that in the first instance.  It seems to me that you and
3  the Debtor should be sitting down.  Obviously if you're at
4  the point where you need to file a fee application, you
5  have to be able to do that, and then the question is, how
6  should that be handled.  But I'm not going to, you know,
7  create something for you off the top of my head
8  instantaneously.

9        MR. SCHNEIDER:  Nor am I suggesting that the
10  Court do that, but I think the suggesting language is
11  incredibly overbroad.  And it was very difficult to draft a
12  joint report the last time it was done.  And it basically
13  gives, in my mind at least, the alleged contender to
14  decide -- the ability to decide what I report to the
15  District Court here.

16        THE COURT:  Well, I think that if you're talking
17  about contempt, that it should be a joint submission, and I
18  understand your point, but I think it should be a joint
19  submission.  I don't think that, you know, you should be
20  able to say, well, Judge, the way around this is to do "X"
21  and we can get them for contempt, or would suggest things
22  that would allow you to do a contempt proceeding or suggest
23  to the Judge that the Judge should do it on its own.  I
24  just don't think that that would be appropriate under the
25  circumstances.  We're trying to enjoin you from directly or

1    indirectly engaging in a contempt proceeding.

2          So it may be difficult to draft a joint

3    statement, but you have responsible counsel on both sides

4    and experienced counsel on both sides.

5          MR. SACKS: We did it in less than a few hours the

6    last time, because the Receiver wanted to submit one almost

7    immediately, and we had one done before the end of the

8    evening.

9          THE COURT: Yeah, I'm not worried about it.  If

10   you get down to something, and you can't agree on a draft,

11   you know, I'm here.  I'm not going to go anywhere.  So I'll

12   have to deal with it, although I would think that would be

13   incredibly unlikely.  Mr. Oetzell?

14         MR. OETZELL: We want to file a fee application

15   before the Florida Court, Your Honor, but I understand what

16   you're saying.

17         THE COURT: Good.

18         MR. SACKS: Your Honor, unfortunately I don't have

19   the two competing orders that were originally submitted in

20   front of me, but I recall there was something that --

21         THE COURT: I'll give you the two orders.  You can

22   sit down with Mr. Oetzell and Mr. Schneider on the phone,

23   and you can hand interlineate.  But I have them in front of

24   me.  What do you recall?

25         MR. SACKS: The question I was going to ask is,

86

1  your last comment I think was with regard to whether the

2  Receiver was going to go to some other court, and as I

3  recall, the Receiver wanted to put in language that said

4  this only applied to the Florida District Court.

5      THE COURT: I don't think he said that.  I'll read

6  it again.  I don't think he exactly said that.  I mean

7  that's what we're doing.  We're enjoining this contempt

8  proceeding.  So I don't want to suggest in my order that

9  they should go someplace else, but all we're doing -- all

10 I'm doing is enjoining the Florida contempt proceeding, and

11 I'm not doing anything else.

12     MR. SACKS: I understand, and I think that our

13 language was probably broader because I didn't want to the

14 Receiver to imagine someplace else that they could go, and

15 so we didn't put that limitation to the Court, and I assume

16 that was what the Court was referring to.

17     MR. OETZELL: Well, that's a matter of speculation

18 then, Your Honor.  It shouldn't be in the order.

19     THE COURT: Exactly.  I don't think it needs to be

20 in the order, but I do -- let me -- okay, I don't see the

21 language you're talking about, but you'll -- I'll give you

22 the orders.  I have them here.  I haven't done anything on

23 them.  If you can agree right now with me out of the room

24 on language, great, and if my explanation to you is

25 insufficient, then I'll have to deal with some specific

87

1  questions that you have.  The only thing I'm telling you,

2  just for the record, although it's meaningless, is that I

3  have tabs that show where the Debtor's opposition is and

4  where the Receiver's opposition objection is, and my staff

5  notes, there are two competing order; parties can't agree.

6  So that's all that's there.  There's been no writing on it.

7  Tanya, could you please give this to them.  And you can

8  hand interlineate them with Mr. Schneider on the phone.

9          Is there anything else -- oh yeah, your briefing

10 schedule culminating -- so what have you suggested?  Have

11 you talked to the other side?

12         MR. SACKS: I'm sorry, are you talking about the

13 cash collateral briefing schedule or --

14         THE COURT: I don't know.  You wanted to raise a

15 briefing schedule.

16         MR. SACKS: Right.  That's the briefing schedule

17 that I was referring to, is for our next cash collateral

18 hearing on November 30th.  I would propose that we serve out

19 the papers by Monday, which is the 19th, and that any

20 objection should be due on the Monday before the hearing,

21 which is I think set for a Friday.  So that would be the

22 26th at 5:00 p.m., and that we file any reply by

23 Wednesday --

24         THE COURT: Tuesday, close of business -- reply.

25         MR. SACKS: Tuesday, close of business for a reply

88

1  after the Monday objections?

2          THE COURT: Yeah.  You can say the Monday

3  objections have to be by say, 10:00 o'clock in the morning

4  or noon.  Monday by noon all objections have to be in, and

5  you, close of business Tuesday.  I have to have time to

6  deal with this.

7          MR. SACKS: Okay.  So Monday at noon and Tuesday

8  at 5:00 o'clock p.m.

9          THE COURT: Well, Tuesday can be midnight.  I

10 don't care.

11         MR. SACKS: Oh Tuesday at midnight.  I'm sorry.

12         THE COURT: Monday at noon, so you'll have them.

13 So you'll have a day and a half, and Tuesday -- I won't

14 look at it until Wednesday, but I have to have Wednesday.

15         MR. SACKS: That's fine, Your Honor.

16         THE COURT: Thank you.  Anything else that we

17 should talk about?  I'm hoping that you'll agree on these

18 orders.  If you won't, I'll come back into court in a few

19 minutes and try to resolve any differences.

20         Mr. Schneider, you'll stay on the phone and work

21 with Mr. Sacks?

22         MR. SCHNEIDER: Yes, Your Honor.

23         THE COURT: Okay.  Anything else that I should

24 take up today?

25         Is there some way that you're going to resolve

89

1    the Pachulski issue, or is that likely to result in this

2    evidentiary hearing?

3            MR. OETZELL: We're always hopeful, Your Honor.

4    We don't -- we don't particularly relish having Mr.

5    Schneider have to fly out from Florida, and I'm not

6    speaking for Mr. Fiero, but I assume that they don't need

7    the distraction either.

8            MR. FIERO: Your Honor, if it can be resolved, it

9    will be.

10           THE COURT: Thank you.  Okay.  Thank you very

11   much.  We're in recess.  You don't need to rise, and I just

12   need to know whether I can go to lunch, so Ms. Bracegirdle,

13   if you would call me and let me know whether they've agreed

14   on language, then I'll know that I can go eat.  And if not,

15   I'll come back.  Thank you.

16           Court is in recess.

17       (Whereupon, the proceedings are concluded at 12:47

18   p.m.)

19

20

21

22

23

24

25

90

1
2
3
4
5                     CERTIFICATE OF TRANSCRIBER
6
7          I certify that the foregoing is a correct
8    transcript from the digital sound recording of the
9    proceedings in the above-entitled matter.
10
11   DATED: November 28, 2007
12
13                        By:____/s/ Jo McCall_____
14
15
16
17
18
19
20
21
22
23
24
25

**RER - 76**