# VOLUME 7 OF 7

# RER-77  3446  through  RER-88  3920

**RER - 77**

1   WILLIAM BLUMENTHAL
    General Counsel
2
    MICHAEL P. MORA
3   Federal Trade Commission
    600 Pennsylvania Ave. NW, Room NJ-2121
4   Washington, DC  20580
    Telephone:  (202) 326-3373
5   Facsimile:  (202) 326-2558
    Email: mmora@ftc.gov
6
    ATTORNEY FOR FEDERAL
7   TRADE COMMISSION

8              UNITED STATES BANKRUPTCY COURT
                NORTHERN DISTRICT OF CALIFORNIA
9                    SAN JOSE DIVISION

10

11  In re:                                    **Case No. 07-52890**

12  THE BILLING RESOURCE, dba Integretel, a
    California corporation,                    Chapter 11
13
                          Debtor              Adv. Proc. No. 07-05156
14
                                              **FEDERAL TRADE**
15                                            **COMMISSION'S OPPOSITION**
    THE BILLING RESOURCE, d/b/a               **TO DEBTOR'S MOTION FOR**
16  INTEGRETEL, a California corporation,     **LEAVE TO FILE AMENDED**
                                              **COMPLAINT**
17          Plaintiff,
                                              Date:   December 7, 2007
18  v.                                        Time:   10:30 a.m.
                                              Ctrm:   3020
19  FEDERAL TRADE COMMISSION, et al.

20          Defendants.

21

22

23

24

25

26

27

28                          -1-

## I.    Introduction[1]

Integretel has sought leave to file an amended complaint in this adversary proceeding. Integretel proposes to add a claim for a declaratory judgment that "the Debtor's funds and other property are free of any property interest therein claimed by the Receiver and/or the FTC." Proposed Amended Complaint at 11-12.  The Court should deny the motion because:  (1) it is an exercise in futility, since the amendment would be subject to a motion to dismiss on the grounds of collateral estoppel and that this Court is divested of jurisdiction over the amendment by virtue of the various appeals now pending that involve the same issue; (2) it constitutes bad faith on Integretel's part; and (3) it unduly prejudices the Federal Trade Commission ("Commission" or "FTC") (and the Receiver).[2]  It would also adversely impact judicial economy and the federal judicial system, in the form of misusing this Court's resources and the two appellate courts where Integretel is already litigating the same issue: the Eleventh Circuit, and the District Court for the Northern District of California.

As Integretel admits, its purported grounds for this motion have existed since the proceeding was filed in September 2007.  Its tactic of attempting to amend its complaint at this relatively late stage in this adversary proceeding is no sudden revelation.  It is pure gamesmanship.  All of the relief it originally sought in this proceeding and by motion has been fully litigated before this Court:  injunctive relief against the FTC with respect to the agency's

---

[1]  The Commission intends that neither this Opposition nor any later appearance, pleading, claim, or suit shall waive: (1) the FTC's right to have final orders in noncore matters entered only after *de novo* review by a District Court Judge; (2) the FTC's right to have the District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal; or (3) any other rights, claims, actions, defenses, setoffs, recoupments, or remedies to which the FTC is or may be entitled, in law or equity, all of which rights, claims, actions, defenses, setoffs, recoupments and remedies the FTC expressly reserves.

[2]  All capitalized terms used herein shall have the same meaning as defined and used in FTC's prior briefs in opposition to the Debtor's Motion for injunctive relief in this adversary proceeding. [DE 9, 17, 29, 55].

1    prosecution of its consumer fraud law Enforcement Action against Integretel in the Florida

2    District Court, and against the FTC and the Receiver with respect to the Civil Contempt

3    proceeding pending against Integretel for its repeated violations of that court's injunctive orders.

4    The FTC's appeal of the injunctive orders that the Court issued to the District Court for

5    the Northern District of California divests this Court of jurisdiction over the issues on appeal,

6    including the Court's ruling that the disputed funds at issue are likely property of Integretel and

7    not the Receivership estate.

8    Moreover, for nearly a year, from October 2006 through September 2007, Integretel also

9    fully litigated that same issue in the Contempt Proceeding before the Florida District Court, lost,

10    and then appealed that court's order to the Eleventh Circuit. In fact, its appellate brief is due to

11    be filed today. Integretel is therefore collaterally estopped from relitigating this same issue

12    before this Court. Accordingly, Integretel's Motion should be denied.

13    **II.    Factual Background**

14    The salient facts are summarized above, and the Commission incorporates by reference

15    the facts set forth in the Commission's prior briefs in opposition to Integretel's motion for

16    injunctive relief in this proceeding [DE 9, 17, 29, 55].

17    **III    Argument**

18    Although leave to amend a complaint pursuant to Fed.R.Civ.P 15(a), applicable here by

19    virtue of Fed.RBank.P 7015, will ordinarily be liberally granted, a court should not grant leave to

20    amend where the amendment:  (1) prejudices the opposing party; (2) is sought in bad faith; (3)

21    produces undue delay in litigation; or (4) is futile. *Amerisourcebergen Corp. v. Dialysist West,*

22    *Inc.,* 465 F.3d 946, 951 (9th Cir. 2006). Futility alone can justify denial of a motion for leave to

23    amend. *Nunes v. Ashcroft,* 375 F.2d 805, 808 (9th Cir. 2004). A court should also consider the

24    impact of granting leave on judicial economy, *i.e.*, how the amendment would effect the use of

25    judicial resources and its impact on the judicial system. *3 Moore's Federal Practice, P 15.15*

26    *(Matthew Bender 2d ed.).*

27

28    -3-

1    At least four of the five factors cited above are present here and militate in favor of

2    denying Integretel's motion.

3    The amendment would be futile because it would not survive a motion to dismiss, for at

4    least two reasons.

5    First, Integretel is collaterally estopped from relitigating the issue that it has already

6    litigated before the Florida District Court, lost and appealed to the Eleventh Circuit. "Issue

7    preclusion, or collateral estoppel, refers to 'the preclusive effect of a judgment in foreclosing

8    relitigation of issues that have been actually and necessarily decided in earlier litigation.'" *In re*

9    *Reynoso*, 477 F.3d 1117, 1122 (9th Cir. 2007), *quoting Frank v. United Airlines, Inc.*, 216 F.3d

10   845, 850 n. 4 (9th Cir. 2000). Issue preclusion bars relitigation of issues adjudicated in an earlier

11   proceeding if three requirements are met: (1) the issue necessarily decided at the previous

12   proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended

13   with a final judgment on the merits; and (3) the party against whom [preclusion] is asserted was a

14   party in the first proceeding. *Reynoso*, 477 F.3d at 1122.

15   Here, all three requirements for collateral estoppel are easily met. Integretel seeks to add

16   a claim to its complaint against the Commission and the Receiver for a declaratory judgment that

17   the disputed Reserve Funds "do not exist" and that neither the Commission nor the Receiver

18   have any property interest in funds held by Integretel. In the Contempt Proceeding, Integretel

19   previously litigated this same issue with the Commission and the Receiver before the Florida

20   District Court, for nearly a year, from October 2006, when the contempt motion was filed,

21   through September 2007. It lost. It appealed. And Integretel is presently litigating its appeal of

22   that issue and the Florida District Court's September 14 and September 21 Orders before the

23   Eleventh Circuit. Its appellate brief is, in fact, due this very day. The issues and parties are

24   identical, and as Integretel itself admits in its appeal of the Florida District Court's orders to the

25   Eleventh Circuit, those orders are final judgments on the merits. The Court should not allow

26   Integretel to relitigate these same issues here.

27

28                                              -4-

1    Second, the Commission's appeals of this Court's injunctive orders, including its ruling

2    that Integretel is likely to succeed on the same claim that it now seeks add anew to its complaint,

3    divests the Court of jurisdiction over that issue.  Integretel has litigated the issue of ownership of

4    the disputed funds before this Court in the proceedings on its motion for injunctive relief against

5    the Receiver and the FTC, which is all of the relief that Integretel sought in its original

6    complaint.  The Court has issued two injunctive orders against the FTC and the Receiver.  In that

7    context, and pivotal to the Court's orders, the Court has ruled that Integretel is likely to establish

8    that the disputed funds are property of Integretel, and not the Receivership estate – in direct

9    conflict with the Florida District Court's orders now on appeal before the Eleventh Circuit.

10    The Commission's appeals of the Court's injunctive orders, including its ruling on the

11    issue of the FTC's and the Receiver's interest in the disputed funds, divests this Court of

12    jurisdiction over those orders and that issue.  *In re Padilla*, 223 F.3d 1184, 1190 (9th Cir. 1184,

13    1190).  "The rule divesting lower courts of jurisdiction of aspects of a case involved in an appeal

14    is judge-made doctrine designed to avoid the confusion and waste of time that might follow from

15    putting the same issues before two courts at the same time."  *Id*. (internal quotations omitted).

16    That rule applies here not only as a result of the Commission's appeals of this Court's injunctive

17    orders, but also Integretel's appeal of the Florida District Court's orders.

18    For these same reasons, the Commission would be unduly prejudiced by Integretel's

19    amendment to the complaint because it would force the Commission to relitigate yet again an

20    issue that Integretel is collaterally estopped from litigating, and over which this Court presently

21    lacks jurisdiction given the pending appeals of this Court's and Florida District Court's related

22    orders.

23    Moreover, the timing of Integretel's motion is pure gamesmanship and smacks of bad

24    faint.  As Integrel admits, it has known about this issue since it filed its original complaint in

25    September.  In the interim, contrary to its utterly false contention that this proceeding is "still in

26    its infancy," all of the relief that Integretel originally sought in its complaint has been fully

27

28    -5-

1    litigated before this Court. And the Court's orders from those proceedings are, in their entirety,

2    on appeal to the District Court in this District. Despite the weeks and months that have passed,

3    Integretel waited until after the Court ruled on the entirety of the relief Integretel sought in its

4    existing complaint, and after the Commission appealed those rulings, to seek to amend its

5    complaint.

6           For all of the reasons discussed above, allowing the amendment would also adversely

7    impact judicial economy and the federal judicial system, leading to the same risk of parallel

8    proceedings before and inconsistent rulings by this Court and now two different appellate courts,

9    which similarly plagued – and continue to plague – the injunctive proceedings in this action.

10           Accordingly, Integretel's motion for leave to amend its complaint should be denied. It is

11    futile, prejudicial to the Commission, being sought in bad faith, and a grave misuse of judicial

12    resources.

13    **IV. Conclusion**

14           The Commission respectfully requests that the Court deny Integretel's Motion for Leave

15    File an Amended Complaint.

16    Dated: December 3, 2007               Respectfully submitted,

17

18                              WILLIAM BLUMENTHAL
                          General Counsel

19                              /s/ Michael P. Mora

20                              _____

21                              MICHAEL P. MORA
                          Federal Trade Commission

22                              600 Pennsylvania Ave. NW, Room NJ-2121
                          Washington, DC 20580

23                              Telephone: (202) 326-3373
                          Facsimile: (202) 326-2558
                          Email: mmora@ftc.gov

24

25                              ATTORNEY FOR FEDERAL TRADE
                          COMMISSION

26

27

28                          -6-

1    WILLIAM BLUMENTHAL
     General Counsel
2
     MICHAEL P. MORA
3    Federal Trade Commission
     600 Pennsylvania Ave. NW, Room NJ-2121
4    Washington, DC 20580
     Telephone: (202) 326-3373
5    Facsimile: (202) 326-2558
     Email: mmora@ftc.gov
6
     ATTORNEY FOR FEDERAL
7    TRADE COMMISSION

8

9                  UNITED STATES BANKRUPTCY COURT
                   NORTHERN DISTRICT OF CALIFORNIA
10                        SAN JOSE DIVISION

11

12   In re:                                    Case No. 07-52890

13   THE BILLING RESOURCE, dba Integretel, a
     California corporation,                   Chapter 11
14
                          Debtor
15

16
     THE BILLING RESOURCE, dba INTEGRETEL,
17   a California corporation,

18                        Plaintiff,

19                          v.                 Adv. Pro. No. 07-05156

20   FEDERAL TRADE COMMISSION, and DAVID
     R. CHASE, not individually, but solely in his
21   capacity as receiver for Nationwide Connections,   PROOF OF SERVICE OF
     Inc., Access One Communications, Inc., Network     FEDERAL TRADE
22   One Services, Inc., 411TXT, Inc.,                  COMMISSION'S OPPOSITION
     CELL-INFOUSA, INC., Enhanced Billing               TO DEBTOR'S MOTION FOR
23   Services, Inc., Toll Free Connect, Inc., Cripple   LEAVE TO FILE AN
     Creek Holdings, LLC, Built to Last, LLC, Not       AMENDED COMPLAINT
24   Fade Away, LLC, He's Gone, LLC, The Other
     One, LLC, Turn on Your Love Light, LLC, China
25   Cat Sunflower, LLC, Lazy River Road Holdings,
     LLC,
26
                          Defendant.
27

28
          I am employed in the District of Columbia.  I am over the age of 18 and not a party to the
     within action.  My business address is 600 Pennsylvania Avenue, N.W., Washington, DC 20580.

1   Except as otherwise stated, I served the within document described as:

2

3   FEDERAL TRADE COMMISSION'S OPPOSITION TO DEBTOR'S MOTION FOR LEAVE
    TO FILE AN AMENDED COMPLAINT

4   on the interested parties in this action as noted below.

5   [X]   (BY ELECTRONIC NOTICING) On December 3, 2007, service of the foregoing
          document was accomplished by Electronic Noticing pursuant to Section 10 of this
6         Court's Amended Operating Order and Local Rule 9013-3(c) on each Registered
          Participant as follows:
7

8         Michael H. Ahrens    mahrens@sheppardmullin.com
          Jeffrey K. Rehfeld    jrehfeld@sheppardmullin.com, ewalters@sheppardmullin.com
9         Steven B. Sacks    ssacks@sheppardmullin.com, ewalters@smrh.com
          Steven J. Schwartz    sschwartz@dgdk.com
10

11        I declare under penalty of perjury that the foregoing is true and correct.

12        Executed on December 3, 2007, at Washington, D.C.

13

14                                 /s/   Michael P. Mora
                                   Michael P. Mora
15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                       -2-

**RER - 78**

1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
2      Including Professional Corporations
   MICHAEL H. AHRENS, Cal. Bar No. 44766
3  STEVEN B. SACKS, Cal. Bar No. 98875
   JEFFREY K. REHFELD, Cal. Bar No. 188128
4  ORI KATZ, Cal. Bar No. 209561
   Four Embarcadero Center, 17th Floor
5  San Francisco, California  94111-4106
   Telephone:    415-434-9100
6  Facsimile:     415-434-3947

7  Attorneys for The Billing Resource, dba Integretel

8              UNITED STATES BANKRUPTCY COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                 [SAN JOSE DIVISION]

11  In re                                          Case No. 07-52890

12  THE BILLING RESOURCE, dba                      Chapter 11
    INTEGRETEL, a California corporation,
13
                    Debtor.
14
    Tax ID: 33-0289863
15

16
    ──────────────────────────────
17  THE BILLING RESOURCE, dba                      Adv. Proc. No. 07-05156
    INTEGRETEL, a California corporation,
                                                   **DEBTOR'S REPLY IN SUPPORT OF**
18                 Plaintiff,                       **MOTION FOR LEAVE TO FILE AN**
                                                   **AMENDED COMPLAINT**
19          v.
                                                   Date:       December 7, 2007
20  FEDERAL TRADE COMMISSION, and                  Time:       10:30 a.m.
    DAVID R. CHASE, not individually, but          Place:      United States Bankruptcy Court
21  solely in his capacity as receiver for                     280 South First Street
    Nationwide Connections, Inc., Access One                   San Jose, California
22  Communications, Inc., Network One Services,    Judge:      Hon. Arthur S. Weissbrodt
    Inc., 411TXT, Inc., CELL-INFO-USA, INC.,       Courtroom:  3020
23  Enhanced Billing Services, Inc., Toll Free
    Connect, Inc., Cripple Creek Holdings, LLC,
24  Built to Last, LLC, Not Fade Away, LLC, He's
    Gone, LLC, The Other One, LLC, Turn on
25  Your Love Light, LLC, China Cat Sunflower,
    LLC, Lazy River Road Holdings, LLC,
26
                    Defendants.
27

28

W02-WEST:5SS1\400593489.1                          REPLY RE MOTION TO FILE AMENDED

                              RER-78    3454

# I.

# **INTRODUCTION**

The FTC and the Receiver would have the Court deny leave to amend based on the same mantra they have offered since the outset of this bankruptcy case—that the bankruptcy court has no role in deciding whether the money in the Debtor's possession is its property. The Court has already rejected this oft-repeated assertion and it provides no basis for denying the Debtor an opportunity to obtain a dispositive ruling in this Court as to the Debtor's property rights in the funds in its possession.

The FTC and the Receiver claim that the Court should deny leave to amend as being futile based on their theory that all issues have been adjudicated in the Florida Court and are now on appeal to the Eleventh Circuit. The Florida Court's pre-bankruptcy ruling in the Omnibus Order that reserve amounts were owed to the Receiver did not adjudicate Integretel's interests in its funds. Nor did the post-bankruptcy Clarification Order change this fact, as the Florida Court lacked jurisdiction over the property in Integretel's possession.

# II.

# **ARGUMENT**

A.    The Florida Court Has Not Determined Whether Integretel's Bank Accounts Are
      Property of the Estate.

This Court has stated with regard to the Debtor's preliminary injunction motions that the Receiver is almost certainly only an unsecured creditor of the Debtor. The Court noted in its Memorandum Decision that "the Omnibus Order is likely, at most, nothing more than a money judgment determining Debtor's purported liability to the Receiver." Memorandum Decision at 46:12-14. The Receiver and the FTC ignore this Court's prior rulings and continue to insist that the Omnibus Order issued by the Florida Court determines whether Integretel has an interest in its own bank accounts and is dispositive that the Receiver is entitled to turnover of $1.76 million from Integretel.

The Receiver and the FTC's argument is based on a fiction—that there are any

1   "Reserve Funds" or "Subject Funds" that the Florida Court decided the ownership of. In
2   fact, the Omnibus Order is merely a money judgment because there are no "Subject
3   Funds," only bank accounts containing commingled monies received long after any
4   relationship with the Prior Customers had ended.[1]

5       The Receiver claims that the issue presented in the amended complaint was already
6   litigated in Florida because Integretel argued in the Florida Court that the Receiver could
7   not demonstrate the necessary property interest to be entitled to seek a turnover of property
8   to the receivership estate. But the Receiver took the position that it need not show there
9   were actually any segregated funds or other assets constituting the property of the
10  receivership entities. The Florida Court agreed. But as the Receiver never proved any
11  interest in specific funds, nor obtained any property from Integretel before the bankruptcy
12  case, the Debtor began this bankruptcy case with all of its funds intact. This Court should
13  therefore determine whether those funds are subject to any claim by the Receiver, just as it
14  would in any other case where the effect of a pre-bankruptcy adjudication is at issue.

15      The Florida Court never obtained jurisdiction over any of Debtor's funds or other
16  assets—it issued a pre-bankruptcy order requiring Debtor to pay the Receiver and Debtor
17  has appealed the question of whether it has any liability to the Receiver to the Eleventh
18  Circuit. As this Court has already said, the "Omnibus Order requiring Debtor to pay over
19  to Receiver an amount denominated on Debtor's books as 'reserves' cannot create a
20  property interest where none exists." Memorandum Decision at 54:25-27.

21      Rather, once the Debtor filed for bankruptcy protection, this Court's jurisdiction
22  over the Debtor's assets was exclusive and ousted any prior in rem jurisdiction asserted by
23  the Florida Court. See 28 U.S.C. § 1334(e); Tennessee Student Assistance Corp. v. Hood,
24  541 U.S. 440, 448 (2004) ("A bankruptcy court's in rem jurisdiction permits it to
25  'determin[e] all claims that anyone, whether named in the action or not, has to the property

26  _____
    [1] The same is true with regard to the FTC's use of the term "Reserve Funds," as the Debtor
27  no longer has, and did not have at the time of the Florida Court's preliminary injunction,
    any of the money that generated by allegedly unauthorized charges
28

RER-78    3456    REPLY RE MOTION TO FILE AMENDED COMPLAINT

1  or thing in question.); In re Crown Vantage, Inc., 421 F.3d 963, 971 (9th Cir. 2005)

2  ("requirement of uniform application of bankruptcy law dictates that all legal proceedings

3  that affect the administration of the bankruptcy estate be brought either in bankruptcy court

4  or with leave of the bankruptcy court."); In re Simon, 153 F.3d 991, 996 (9th Cir. 1998); In

5  re Modern Boats, Inc., 775 F.2d 619, 620 (5th Cir. 1985) (admiralty court's jurisdiction

6  over vessel yielded once bankruptcy filed). As the Florida Court never had the Debtor's

7  funds under its jurisdiction before bankruptcy and had no post-bankruptcy jurisdiction to

8  rule on the ownership of these funds, this Court is the appropriate decision-maker with

9  regard to the Debtor's property interest in its bank accounts.

10         It is up to this Court to determine whether any liability that the Debtor has to the

11  Receiver, which is being challenged in the Eleventh Circuit appeal of the Omnibus Order,

12  is more than an unsecured claim. The Debtor holds no funds that can be traced from the

13  Former Customers to the Debtor's existing bank accounts. Under these circumstances, the

14  Receiver's claim, however denominated by the Florida Court, can and should be

15  determined in this adversary proceeding to be, at most, only an unsecured claim in this

16  bankruptcy case.

17         Just as the Receiver and the FTC mistakenly assume that the Florida Court ruled on

18  the question of ownership of Debtor's bank accounts, they also wrongly assert that this

19  Court should merely await the decision on appeal from the Florida Court in the Eleventh

20  Circuit. The question of Debtor's liability to the Receiver, which is on appeal to the

21  Eleventh Circuit, is fundamentally different than the issue raised by the Debtor's proposed

22  amended complaint, which is whether, even if the Debtor had any liability to the Receiver,

23  that judgment would be have any status greater than an unsecured claim in this bankruptcy

24  case. The Omnibus Order will indeed be tested in the Eleventh Circuit, but even if it is

25  enforceable outside of bankruptcy, it must be considered in this Court in accord with the

26  principles established under the Bankruptcy Code.

27         As such, the proposed amended complaint does not raise any conflict with an

28  existing or future ruling in the Florida Action, whether by the district court or the Eleventh

-3-

1   Circuit. This Court frequently has occasion to determine whether a judgment, lien or other

2   property interest arising under nonbankruptcy law is enforceable in bankruptcy. In doing

3   so, this Court is not ruling on the same issues as came before another forum, but is instead

4   determining considering wholly separate bankruptcy issues.

5   B.    The Debtor is Not Collaterally Estopped from Asserting its Property Interests in

6        this Court.

7        As the parties asserting a claim of collateral estoppel, the Receiver and the FTC

8   have the burden of proving all the elements of that doctrine, i.e., showing that: "(1) the

9   issue at stake is identical to an issue raised in the prior litigation; (2) the issue was actually

10  litigated in the prior litigation; and (3) the determination of the issue in the prior litigation

11  must have been a critical and necessary part of the judgment in the earlier action."

12  Littlejohn v. United States, 321 F.3d 915, 923 (9th Cir. 2003) (holding "issue preclusion is

13  inappropriate where the parties have not had a full and fair opportunity to litigate the

14  merits of an issue"). See In re Berr, 172 B.R. 299, 306 (9th Cir. B.A.P. 1994). Under this

15  standard, as the discussion above demonstrates, collateral estoppel does not apply.

16       Moreover, even if it was a close case, that would not warrant denying leave to

17  amend, as the collateral estoppel issue ought not be resolved in the context of a motion for

18  leave to amend.

19       The party asserting preclusion bears the burden of showing
         with clarity and certainty what was determined by the prior

20       judgment. United States v. Lasky, 600 F.2d 765, 769 (9th Cir.),
         cert. denied, 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405

21       (1979). 'It is not enough that the party introduce the decision of
         the prior court; rather, the party must introduce a sufficient

22       record of the prior proceeding to enable the trial court to
         pinpoint the exact issues previously litigated.' Id.

23

24  Clark v. Bear Stearns & Co., Inc., 966 F.2d 1318, 1321 (9th Cir. 1992).

25       The FTC's and Receiver's collateral estoppel arguments were already rejected by

26  this Court in the Memorandum Decision. First, the Court found that the Omnibus Order

27  did not eliminate the bankruptcy court's jurisdiction to determine the bankruptcy estate's

28  interest, saying "the pre-petition determination that Receiver held an interest in the

REPLY RE MOTION TO FILE AMENDED
COMPLAINT

1    Commingled Funds did not eliminate any interest Debtor's bankruptcy estate had in the

2    same funds. . ." Memorandum Decision at 49:6-8. Thus, the Florida Court's decision was

3    not with regard to an issue identical to that presented here and did not resolve the issue

4    presented in the amended complaint. This Court similarly rejected the Receiver's effort to

5    assert a bar based on the post-petition Clarification Order:

6                    [The bankruptcy court has exclusive in rem jurisdiction post-
                     petition over property of the estate, as well as jurisdiction to
7                    determine what constitutes property of the estate.

8    Memorandum Decision, at 52:5-7. Any decision the Florida Court purported to make as to

9    "property of the estate" was made without jurisdiction and without a full and fair

10   opportunity to litigate, as it was in the context of an emergency motion decided without a

11   hearing or briefing.    Amending the Debtor's complaint is not futile based on the

12   defendants' collateral estoppel arguments.

13   C.    The Debtor Has Not Already Received All Appropriate Relief and Should Be

14         Allowed to Amend.

15       This adversary proceeding is not at such an advanced stage that the Court would be

16   justified in rejecting the proposed amended complaint. The litigation was filed only two

17   months ago and the Receiver has not even answered the first complaint as the Court is only

18   now considering the Receiver's motion to dismiss based on the Barton doctrine.[2]  When

19   the original complaint was filed, the bankruptcy case was only a few days old and the

20   Debtor could not easily anticipate all of the relief it would need in connection with the

21   defendants' claims.

22       The FTC offers a make-weight argument that this Court is somehow divested of

23   jurisdiction because it has issued preliminary injunctions with regard to the Florida Action

24   and the Omnibus Order which are on appeal. The case it cites, In re Padilla, 222 F.3d

25   _____

26   [2] The Receiver repeats his Barton argument in opposition to the motion for leave to amend.
     Obviously if the Court does not dismiss the entire action based on that argument pursuant
27   to the Receiver's motion to dismiss then it should not deny leave to amend based on that
     argument either.

28

-5-

REPLY RE MOTION TO FILE AMENDED
COMPLAINT

1184, 1190 (9th Cir. 2000), specifically limits the effect of an appeal on the lower court's

jurisdiction to "those aspects of the case involved in the appeal." That this Court can

proceed even though the preliminary injunctions have been appealed is especially obvious

here, as the Court has not entered any final judgment at all, only provisional relief. This

Court can consider the merits as pleaded in the Amended Complaint whether or not an

appeal allows the FTC to proceed with the Florida Action or the Receiver to enforce the

Omnibus Order pending that final decision. Indeed, if filing an appeal from a preliminary

injunction divested a court of jurisdiction then the Florida Court would have had no

jurisdiction to issue the Omnibus Order at all, since Integretel had appealed from the

preliminary injunction that preceded it.

## III.

## CONCLUSION

The Court should grant leave to the Debtor to file its Amended Complaint in this

adversary proceeding.

Dated: December 4, 2007

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By       _____/s/ Steven B. Sacks_____
                STEVEN B. SACKS
        Attorneys for Debtor The Billing Resource, dba
                     Integretel

W02-WEST:5SS1\400593489.1

RER-78        3460

REPLY RE MOTION TO FILE AMENDED
COMPLAINT

**RER - 79**

1

1          UNITED STATES BANKRUPTCY COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3               (SAN JOSE DIVISION)

4

5    In re:

6    THE BILLING RESOURCE,               Case No. 07-52890-ASW

7                                        Chapter 11

8                                        San Jose, California
                                         November 27, 2007
9          Debtor.                       11:05 a.m.

10   _____/

11   THE BILLING RESOURCE, dba
     INTEGRETEL, a California
12   corporation,

13          Plaintiff,

14      v.                               A.P. No. 07-5156

15   DAVID R. CHASE, et al.,

16          Defendants.

17   _____/

18                TRANSCRIPT OF PROCEEDINGS
         a) MOTION FOR ORDER TO SHOW CAUSE REGARDING
19   PRELIMINARY INJUNCTION RE ORDER TO STAY ENFORCEMENT
                    OF OMNIBUS ORDER
20   b) SUPPLEMENTAL OPPOSITION BY FEDERAL TRADE COMMISSION
             c) RESPONSE BY DAVID R. CHASE
21

22        BEFORE THE HONORABLE ARTHUR WEISSBRODT
              UNITED STATES BANKRUPTCY JUDGE
23

24

25

2

1   APPEARANCES:

2

3   For the Debtor:                 SHEPPARD, MULLIN, RICHTER and
                                     HAMPTON
4                                    BY:  STEVEN SACKS, ESQ.
                                     Four Embarcadero Center, 17th Floor
5                                    San Francisco, California 94111

6

7   For the Federal                 DANNING, GILL, DIAMOND &
    Receiver:                        KOLLITZ, LLP
8                                    BY: WALTER OETZELL, ESQ.
                                     2029 Century Park East, 3rd Floor
9                                    Los Angeles, California 90067

10

11  For the Committee:              PACHULSKI, STANG, ZIEHL, JONES
                                     BY: JOHN FIERO, ESQ.
12                                   150 California Street, 15th Floor
                                     San Francisco, California 94111
13

14

15  For the Federal Trade          UNITED STATES FEDERAL TRADE
    Commission:                      COMMISSION
16                                   OFFICE OF THE GENERAL COUNSEL
                                     BY: JOHN ANDREW SINGER, ESQ.
17                                        MICHAEL MORA, ESQ.
                                          COLLOT GUERARD, ESQ.
18                                   600 Pennsylvania Avenue, NW
                                     Washington, DC 20580
19

20

21

22

23

24

25

3

1   APPEARANCES (CONTINUED):

2

3   Court Recorder:              LUPE BARRON
                                 UNITED STATES BANKRUPTCY COURT
4                                280 South First Street
                                 San Jose, California 95113
5

6

    Transcription Service:       Jo McCall
7                                Electronic Court
                                 Recording/Transcribing
8                                2868 E. Clifton Court
                                 Gilbert, Arizona 85297
9                                Telephone: (480-361-3790)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

1                   P R O C E E D I N G S

2   November 27, 2007                          11:05 a.m.

3                        ---oOo---

4            THE CLERK: This is the United States Bankruptcy

5   Court for the Northern District of California.  The court

6   is now in session.

7            THE COURT: Good morning, ladies and gentlemen.

8   May I have appearances of counsel on the telephone.  First,

9   counsel for the Unsecured Creditors' Committee.  Mr. Fiero?

10           THE OPERATOR: Your Honor, his office advised me

11  that he would be dialing in.

12           THE COURT: I can't hear you, Operator.

13           THE OPERATOR: His office advised me that he would

14  be dialing in.

15           THE COURT: Oh, okay.  And what about Ms. Guerard?

16           MS. GUERARD: Collot Guerard for the Federal Trade

17  Commission in Washington, D.C.

18           THE COURT: Thank you.  Go off the record for a

19  second.

20           Back on the record, I'm sorry.  Mr. Sacks, state

21  your appearance again.

22           MR. SACKS: Steven Sacks of Sheppard, Mullin, for

23  the Debtor.

24           THE COURT: Who else is on the phone?

25           MR. MORA: Your Honor, Michael Mora for the

5

1    Federal Trade Commission.  Also with us is John Singer.

2                    THE COURT: Very good.  Anybody else?

3                    MR. OETZELL: Yes, Your Honor, Walter Oetzell of

4    Danning, Gill, Diamond and Kollitz on behalf of the Federal

5    Receiver.

6                    THE COURT: Thank you.  Anybody else?

7                    Good morning, everybody.  I need to clarify the

8    record from yesterday because the findings of fact and

9    conclusions of law I gave, I gave before I issued the

10   injunction, and I told you over the phone yesterday that I

11   should probably revise my findings of fact and conclusions

12   of law and that's what I've done, and so that's what I'm

13   going to do.

14                   Before the Court is an order to show cause why

15   this Court should not preliminarily enjoin the continued

16   enforcement of the omnibus order entered by the Florida

17   District Court pre-petition.  The Florida District Court

18   will subsequently be referred to as the Florida Court.

19                   This Court hereby incorporates all of the

20   findings of fact and conclusions of law as set forth in

21   this Court's Memorandum of Decision filed and entered on

22   November 2nd, 2007, subsequently referred to as the

23   Memorandum of Decision.

24        (Off the Record - the recorder machine not operating.)

25                   The Court hereby incorporates all of the findings

6

1   of fact and conclusions of law as forth in this Court's

2   Memorandum of Decision filed and entered on November 2nd,

3   2007, subsequently referred to as the Memorandum of

4   Decision.    In the Memorandum of Decision, the Court

5   declined to rule on the merits of a preliminary injunction

6   as to enforcement of the omnibus order since that order was

7   at that time stayed by the Eleventh Circuit.

8           The Eleventh Circuit lifted that stay on November

9   5th, 2007 and this Court granted a temporary restraining

10  order enjoining the continued enforcement of the omnibus

11  order.    In addition to today's ruling and the Memorandum of

12  Decision, this Court incorporates this Court's comments

13  made on the record at the November 16th, 2007 hearing --

14  Tanya, I need those dates -- go off the record a minute.

15          The Court also incorporates its comments made on

16  11/21, November 21st in court, and I'm checking to see

17  whether there's another date as well.

18          The Receiver argued at the hearing on the order

19  to show cause regarding a preliminary injunction that if

20  this Court determined that the Barton Doctrine did not

21  apply to the Receiver that this Court would be sitting in

22  review of the Florida Court because the Florida Court has

23  allegedly determined that the subject funds are not

24  property of the estate.    This Court has fairly reviewed the

25  discussion of the Barton Doctrine as set forth in this

7

1  Court's Memorandum of Decision at pages 38 through 49.  In

2  the Memorandum of Decision, this Court explained why the

3  Court concluded that the Barton Doctrine is not applicable

4  to this adversary proceeding and why this Court had

5  jurisdiction to determine that the Barton Doctrine is not

6  applicable under the facts of this case.

7          Nothing in the Receiver's opposition to this

8  preliminary injunction or in the Receiver's oral argument

9  at the November 16 hearing alters this Court's analysis as

10  set forth in the Memorandum of Decision.  Moreover, other

11  Bankruptcy Courts have held that the Barton Doctrine does

12  not apply where a bankruptcy trustee seeks turnover of

13  property of the bankruptcy estate from a custodian.  See In

14  re Citix (Phonetic) Corp. 302 B.R. 144, Bankruptcy Eastern

15  District of Pennsylvania 2003; In re Automotive

16  Professionals, Inc. 2000 West Law 1958595, Bankruptcy

17  Northern District of Illinois July 3rd, 2007.

18          The facts of this case are analogous.  Here,

19  Debtor seeks to enjoin the turnover of what Debtor asserts

20  is property of the estate.  If compliance with the Barton

21  Doctrine is not required in a motion to compel turnover of

22  property held by a custodian, compliance with the Barton

23  Doctrine is also not required to enjoin the Federal

24  Receiver who seeks to obtain custody over property that is

25  very likely property of the estate.

8

1        Should it later be determined that the Barton
2   Doctrine does apply to the Receiver and that Debtor needed
3   to obtain permission from the Florida Court to sue the
4   Receiver in this court, this Court notes that it's highly
5   likely, as argued by Debtor, that under In re Crown
6   Vantage, Inc. 421 F3d, 963, 9th Circuit, 2005, the Receiver
7   would need to seek relief from this Court to proceed
8   against Debtor in the contempt proceeding in the Florida
9   Court, and the Receiver has not done that.  This is so
10  because the Debtor is the debtor in possession of this
11  Chapter 11 bankruptcy case pursuant to Bankruptcy Code
12  Section 1101.1.  As debtor in possession of this bankruptcy
13  case, Bankruptcy Code Section 1107 essentially grants the
14  Debtor the rights and powers of a bankruptcy trustee and
15  Debtor performs the functions and duties of a bankruptcy
16  trustee serving in a case under this Chapter.

17       As a bankruptcy trustee, under Crown Vantage,
18  Debtor cannot be sued in a foreign jurisdiction, in this
19  case the Florida Court, without the permission of the court
20  appointing the trustee, in this case, this Court.  Crown
21  Vantage likely applies even though Debtor was subject to
22  the Receiver's motion to compel pre-petition.  This is so
23  because any post-petition action by the Receiver against
24  Debtor is also against Debtor's bankruptcy estate and not
25  just against the pre-petition Debtor.  As such, any post-

9

1   petition action by the Receiver is against the debtor in

2   possession, the entity that has the rights and powers of a

3   bankruptcy trustee and performs the functions and duties of

4   a bankruptcy trustee serving in a case under this Chapter.

5           The FTC argues that the receivership established

6   by the Florida Court gives the Florida Court in rem

7   jurisdiction over the commingled funds to the exclusion of

8   the bankruptcy estate.   The FTC argues that the Ninth

9   Circuit authority of CFTC versus C.O. Petro Marketing

10  Group, Inc. 700 F2d, 1279 at 1281-84, 9th Circuit 1983,

11  stands for the proposition that the Florida Court retained

12  jurisdiction post-petition to order the turnover of subject

13  funds alleged to be property of Debtor's bankruptcy estate

14  and such jurisdiction was not divested by this Court's

15  jurisdiction.

16          This Court does not agree with the FTC's expanded

17  reading of C.O. Petro.  In C.O. Petro, as in every other

18  case cited by the FTC regarding this issue, the entity that

19  was the subject of the Federal Receivership was also the

20  entity that was under the bankruptcy protection.  That is

21  not the case in this instance.  The Ninth Circuit in C.O.

22  Petro cited to Collier Bankruptcy Manual for the

23  proposition that the purpose of the broad in rem

24  jurisdiction of the Bankruptcy Court is, and I quote:

25              "To render authority and control of the

10

1      Bankruptcy Court paramount and all-embracing to

2      the extent required to achieve the ends

3      contemplated by the new legislation and to

4      exclude any interference by the acts of others or

5      by proceedings before other courts where such

6      activities or judicial proceedings would in some

7      way frustrate the jurisdiction of the Bankruptcy

8      Courts. 1 *Collier Bankruptcy Manual* 3.01 at 3-

9      24, 3rd Edition, 1982; C.O. Petro, 700 F2d, at

10     1282."

11     The Ninth Circuit went on to say, and I quote:

12     "Allowing the District Court to enforce its

13     preliminary injunction by directing return of the

14     $60,000 to the receiver would in no way frustrate

15     the jurisdiction of the Bankruptcy Court.

16     Section 543 of the Act protects the Bankruptcy

17     Court's exclusive jurisdiction over property of

18     the estate by requiring the receiver to preserve

19     it and deliver it to the bankruptcy trustee. 11

20     U.S.C. Section 543, Supplement 4, 1980; Accord

21     S.E.C. versus First Financial Group, 645 F2d, at

22     439.   Therefore, Section 1471(e) does not divest

23     the District Court in this case of jurisdiction

24     to issue an order to aid the Receiver in

25     collecting and preserving property of the estate.

1            C.O. Petro. 700 F2d, at 1282 to 1283."

2    And that's the end of that quote.  Accord S.E.C. versus

3    First Financial Group of Texas, 645 F2d, 429 at 440, Fifth

4    Circuit 1981.

5            And then I quote:

6            "To the extent that the exercise of a District

7            Court's jurisdiction threatens the assets of the

8            Debtor's estate, the Bankruptcy Court may issue a

9            stay of those proceedings.  11 U.S.C. Section

10           105(a).  Additionally 11 U.S.C. Section 543

11           protects the Bankruptcy Court's exclusive

12           jurisdiction over property of the estate by

13           requiring the custodian of such property to

14           preserve it and deliver it to the bankruptcy

15           trustee.

16           In light of these provisions and the ancillary

17           nature of the equitable relief of appointment of

18           a Receiver for the entity in bankruptcy in

19           regulatory enforcement actions, we do not find

20           that the District Court's order was made in

21           contravention of the exclusive jurisdiction

22           provision of 1471(e)."

23   End of quote.  And I've omitted a footnote.

24           The facts of C.O. Petro are definitely not the

25   facts of this case.  Here, permitting the Receiver to

12

1    continue enforcement of the turnover order is not an order

2    to aid in collecting and preserving property of the

3    bankruptcy estate that subsequently will be turned over to

4    the Bankruptcy Court for distribution.  On the contrary,

5    the Receiver and the FTC's determination to proceed with

6    the omnibus order will remove and dissipate over 1.7

7    million dollars in what is likely property of this

8    bankruptcy estate.

9         As the Ninth Circuit pointed out in C.O.Petro,

10   the District Court was not divested of jurisdiction to

11   enforce a turnover order because permitting the District

12   Court to retain jurisdiction actually aided the bankruptcy

13   estate.  That is very different from the facts that are

14   before this Court.

15        The FTC also asserts that issuing a Section 105

16   injunction as to the contempt proceeding would exceed this

17   Court's discretionary authority because the Florida Court

18   orders preclude Debtor from re-litigating the issue of

19   ownership of the subject "reserve,"  and I put that in

20   quotes, funds, citing In re Renozzo (Phonetic) 477 F3d,

21   1117 at 1122, 9th Circuit 2007.  However, the first criteria

22   for the issue of preclusion is not met here, that the issue

23   necessarily decided at the previous proceeding is identical

24   to the one sought to be re-litigated.

25        In the omnibus order, the Florida Court addressed

13

1   whether the Receiver had a property interest in the

2   abstract.  It did not address as to what particular asset

3   that interest attached.  The question of whether the

4   Receiver could trace his asserted property interest into

5   any specific funds held by the Debtor was not litigated

6   before the Florida Court.  The question here is whether any

7   interest the Receiver had at the time of Debtor's

8   bankruptcy filing attached to specific funds or assets now

9   held by the Debtor.  Thus Debtor is not re-litigating the

10  identical issue previously litigated before the Florida

11  Court.

12          Receiver finally asserts that Debtor has not met

13  the standards for injunctive relief under Section 105.  As

14  this Court will set forth in greater detail, this Court

15  finds that the Debtor has met its burden for a Section 105

16  preliminary injunction.

17          The standard for injunctive relief in the Ninth

18  Circuit is well settled.  A party must show either one, a

19  likelihood of success on the merits and the possibility of

20  irreparable injury or two, the existence of serious

21  questions going to the merits and the balance of hardships

22  tipping in its favor.  The required showing of harm varies

23  inversely with the required showing of meritoriousness.

24  Ms. World U.K. Limited versus Miss America Pageants, Inc.,

25  856 F2d, 1445 at 1448, 9th Circuit 1988.

14

1      In a reorganization context, the Ninth Circuit
2 has said that a Debtor seeking a stay against a non-debtor
3 must show a reasonable or likelihood of successful
4 reorganization. As set forth in detail in the Memorandum
5 of Decision at pages 19 through 21, Debtor has demonstrated
6 that the Debtor had a reasonable likelihood of successful
7 reorganization. The Debtor still has a reasonable
8 likelihood of a successful reorganization. In addition to
9 those findings, on November 2nd, 2007, the Unsecured
10 Creditors' Committee agreed to an additional two weeks for
11 the Debtor's use of cash collateral, while Debtor and the
12 Committee continued discussions for a Plan of
13 Reorganization.

14      At the November 2, 2007 hearing, no creditor
15 opposed Debtor's use of cash collateral based on the
16 viability of Debtor's business. In addition, the
17 Creditors' Committee has consented to Debtor's continued
18 use of cash collateral through November 30, 2007. Only the
19 FTC and the Receiver opposed Debtor's continued use of cash
20 collateral, and that objection was only on the basis that
21 both parties objected to the Debtor using funds in the
22 blocked account. No creditor opposed Debtor's use of cash
23 collateral based on the viability of Debtor's business.

24      For the reasons stated in the Memorandum of
25 Decision and the additional information brought to the

15

1   Court's attention at the November 2nd and November 16th cash

2   collateral hearings, and the November 21st hearing, Debtor

3   has demonstrated that Debtor has a reasonable likelihood of

4   a successful reorganization sufficient for issuance of a

5   preliminary injunction.

6       Additionally, as set forth in great detail in the

7   Memorandum of Decision at pages 48 to 58, the Debtor has

8   demonstrated a strong likelihood of success on the merits

9   that the property Receiver seeks to have Debtor turn over

10  pursuant to the omnibus order is property of the estate.

11  The omnibus order does not require Debtor to pay any

12  specific amount of funds to the Receiver, rather, in order

13  to comply with the omnibus order, Debtor would have to pay

14  Receiver out of Debtor's general commingled funds as the

15  so-called "reserves" the Florida Court determined Debtor

16  held on behalf of the prior customers.

17      The Florida Court described such reserves, but

18  did not quantify them.  Pre-petition, Debtor did not turn

19  over any funds to the Receiver, and Debtor did not

20  segregate any funds in any fashion.  As of the petition

21  date, Debtor retained an interest in all of the funds in

22  Debtor's general bank account and Receiver asserted an

23  interest in some as yet unquantified portion of those

24  funds.  On the petition date, this Court obtained exclusive

25  jurisdiction over all funds in Debtor's general bank

16

1   account under Section 1334(e) of Title 28.  Accord <u>in re</u>

2   <u>Simon</u>, 153, F3d, 991, at 996, 9th Circuit 1998.

3       Receiver argues at length that this Court is

4   purporting to decide whether the 1.7 million dollars in

5   commingled funds constitutes property of Debtor's

6   bankruptcy estate.  It is correct that this Court is of the

7   opinion that as of the filing of the bankruptcy petition,

8   this Court obtained exclusive jurisdiction to determine

9   what is or is not property of the estate.  However, it is

10  not necessary for this Court to decide one way or the other

11  whether the 1.7 million dollars is property of Debtor's

12  estate in order to issue a preliminary injunction against

13  enforcement of the contempt proceeding against Debtor and

14  the omnibus order in particular.  Rather, this Court need

15  only find that there are serious questions going to the

16  merits of whether the 1.7 million dollars in commingled

17  funds is property of Debtor's estate.

18      The irreparable harm to Debtor of having to turn

19  over those funds to the Receiver is so great that this

20  Court need only find that there are serious questions going

21  to the merits on that issue.  In granting Debtor a

22  preliminary injunction, this Court is not reviewing the

23  decision of the Florida Court.  Instead, this Court is

24  deciding Debtor's likelihood of success on the merits, and

25  alternatively, that there are serious questions going to

17

1   the merits in the context of ruling on Debtor's request for

2   a preliminary injunction.

3   In evaluating Debtor's likelihood of success on

4   the merits, this Court also needs to consider the

5   circumstances under which the Florida Court entered the

6   omnibus and clarification orders. The bankruptcy estate

7   did not exist at the time the omnibus order was entered.

8   The bankruptcy estate was not given any opportunity to

9   brief or argue the merits of the FTC's emergency motion

10  prior to the Florida Court issuing the clarification order

11  post-petition.

12  In the clarification order, the Florida Court

13  purported to determine what interest the bankruptcy estate

14  had in the approximately 1.7 million dollars ordered to be

15  turned over to Receiver in the omnibus order, and I say

16  that that was totally unquantified in the omnibus order,

17  without the bankruptcy estate having the opportunity to

18  argue or brief the issue in any way. This is an additional

19  significant reason Debtor is likely to prevail on the

20  merits. Alternatively, Debtor certainly has demonstrated

21  the substantial question going to the merits of the

22  procedure underlying the issuance of the clarification

23  order as well as the merits.

24  Moreover, this Court is not deciding today

25  whether Debtor or the Receiver owns the subject funds.

18

1   This Court is making no decision today as to who owns those

2   funds.  Rather, this Court is only deciding that the Debtor

3   has a likelihood of success on the merits of Debtor's

4   position that the subject funds are property of Debtor's

5   bankruptcy estate.  This would be true regardless of

6   whether this Court, the Eleventh Circuit, the Ninth

7   Circuit, or the Supreme Court were ultimately to decide

8   that issue.

9           The Court also notes the Debtor is presently in

10  possession of these commingled funds.  Possession of funds

11  is a form of property of the estate.  The legal rights of

12  the parties potentially could substantively change if the

13  Debtor were to transfer possession to the Receiver.  In

14  addition, Ms. Diemer's point made at yesterday's hearing is

15  well made.  The creditors of this bankruptcy estate should

16  not have to litigate their respective rights to Debtor's

17  assets or what constitutes property of the estate in the

18  Florida Court or the Eleventh Circuit.  The purpose of

19  bankruptcy is to bring all disputes as to what constitutes

20  property of the estate into one court, and that is the

21  Bankruptcy Court.

22          Initially, in this preliminary injunction, this

23  Court is not issuing an order that is in conflict with any

24  issue that is presently before the Eleventh Circuit.

25  Indeed, the parties, that is Debtor, Receiver and the FTC,

19

1   have all agreed to pursue the litigation before the

2   Eleventh Circuit, and nothing in this Court's preliminary

3   injunction precludes the parties from doing so. Plus, the

4   Debtor's bankruptcy case is moving very rapidly. By

5   December 7th or before, the parties and this Court may well

6   know much more about what Debtor's reorganization plans

7   will be and whether Debtor even needs the 1.7 million

8   dollars. If not, there will apparently be no good reason

9   why presumably those funds should not continue to be

10  blocked indefinitely.

11          The parties in this court may also have

12  additional information regarding the status of the appeals

13  in the Eleventh Circuit and the FTC's appeal of this

14  Court's Memorandum of Decision. Plus, the Debtor conceded

15  yesterday that the Debtor will not need those funds in

16  December as previously the Debtor said was a possibility.

17  And so the hearing on Debtor's possible request for the use

18  of those funds has gone off calendar for December 14.

19          Debtor will be seriously and irreparably injured

20  if the Receiver and the FTC are permitted to enforce the

21  omnibus order. First, Debtor's business will suffer very

22  substantially and irreparably if Debtor is required to turn

23  over $1,762,762.56 to the Receiver. Particularly at this

24  critical point in Debtor's reorganization efforts, Debtor's

25  estate will lose the over 1.7 million dollars that appears

20

1  very likely to be property of this estate.  Those funds

2  will not be available to the Debtor or its creditors if

3  they are turned over to the Receiver.

4        Moreover, if Debtor is required to turn over the

5  commingled funds, Debtor will be preferring Receiver over

6  all similarly situated creditors.  The Debtor is a debtor

7  in possession and is a fiduciary to all of the Debtor's

8  creditors, inter alia, secured creditors, unsecured

9  creditors, customers, the FTC, and the Receiver.  The

10 Receiver certainly doesn't represent all creditors of the

11 Debtor's estate.  At most, Receiver represents the

12 receivership estates of the prior customers and the FTC.

13 The Receiver does not seek to have the commingled funds

14 turned over to him to protect those funds for all creditors

15 of Debtor's bankruptcy estate; rather, Receiver seeks

16 possession of those funds for the benefit of the

17 receivership estates of the prior customers, to the

18 exclusion of Debtor's other secured and unsecured

19 creditors.

20       Permitting the Receiver to implement the omnibus

21 order would irreparably harm Debtor's bankruptcy estate by

22 preferring one creditor, the Receiver, over other similarly

23 situated creditors of Debtor, since most, if not all,

24 service contracts provide for the same "reserves."  And of

25 course I put the word "reserves" again in quotes.

21

1   Additionally, as set forth in great detail in the

2   Memorandum of Decision at pages 29 to 35, this is a

3   critical time in Debtor's reorganization.   Permitting

4   Debtor to continue -- permitting Receiver, pardon me,

5   permitting Receiver to continue his enforcement of the

6   omnibus order would divert Debtor's president and other

7   personnel from the critical reorganization efforts.

8           Debtor continues actively to pursue a successful

9   reorganization and is working closely with the Creditors'

10  Committee toward that end.   Diverting Debtor's management

11  at this critical juncture with the time and attention that

12  would be devoted to addressing the enforcement of the

13  omnibus order would threaten Debtor's reorganization.

14          Finally, in addition to the diversion of Debtor's

15  management from the reorganization process, Debtor will be

16  harmed by incurring substantial legal fees and costs Debtor

17  can ill afford at this juncture if enforcement of the

18  omnibus order is not enjoined.   Debtor estimates that

19  Debtor will incur an additional 50 to $150,000 in fees

20  related to Receiver's request for the turnover of the

21  commingled funds.   Receiver argues that the contempt

22  proceedings are largely complete and the orders are self-

23  executing.   However, the omnibus order is now on appeal.

24  If the enforcement of the omnibus order is not enjoined,

25  Debtor will have to comply with the order to turn over the

22

1    funds or show cause why the Debtor should not be held in

2    contempt and then deal with any subsequent appeals of the

3    Florida Court's decision.

4         As set forth in greater detail in the Memorandum

5    of Decision at pages 49 to 52, Receiver asserts that

6    enjoining the contempt proceeding will harm Receiver by

7    one, interfering with the administration of a receivership;

8    two, re-litigating the parties' disputes that have already

9    been addressed by the Florida Court in the omnibus and

10   clarification orders; and three, the dissipation of the

11   approximately 1.7 million dollars that the Florida Court

12   ostensibly required Debtor to turn over to the Receiver.

13   This Court has already addressed why enjoining Receiver

14   does not unduly interfere with the administration of the

15   Florida Court receivership and why the preliminary

16   injunction is not a re-litigation of the omnibus and

17   clarification orders.

18        The alleged harm regarding the dissipation of the

19   funds currently held in the blocked account does not

20   outweigh the threat of irreparable injury to the Debtor

21   should this Court not issue a preliminary injunction.

22   There is no immediate threat of irreparable injury or any

23   injury to the Receiver or the FTC.   The funds are held

24   under this Court's direction in a blocked account, and

25   before anything were to happen with those funds, the

23

1   Receiver and the FTC would be given sufficient notice and

2   have an opportunity to address the Court at that time.

3           Receiver will be protected during the preliminary

4   injunction.  At this point, this Court continues to require

5   Debtor to hold 1.7 million dollars approximately in a

6   blocked account and will continue to do so, absent a

7   request from Debtor prior thereto and then only on notice

8   to the Receive and the FTC.  It is certainly not a foregone

9   conclusion that Debtor will be granted permission to use

10  any of those funds.  At the hearing to unblock -- if

11  there's a hearing to unblock the account, and we don't know

12  whether that will occur or when that will occur, but by

13  that time, the parties and this Court may well know much

14  more about what Debtor's reorganization plans will be and

15  whether Debtor even needs the 1.7 million dollars to

16  function.  If it is not apparent that Debtor absolutely

17  needs those funds, it is highly likely that those funds

18  will continue to remain blocked.

19          This Court could also condition the unblocking of

20  any of those funds or permit the unblocking only of a

21  portion of the blocked funds.  Granting a preliminary

22  injunction at this time limits the harm to Receiver because

23  the funds in the blocked account continue to remain in that

24  account and contrary to the Receiver's assertion, it is not

25  readily apparent at this juncture that any of the blocked

24

1    funds will be unblocked.

2         Although this Court issues the preliminary

3    injunction based on a finding that Debtor has demonstrated

4    a likelihood of success on the merits, this Court need only

5    find that there are serious questions going to the merits,

6    because Debtor has made such a strong showing of a

7    likelihood of irreparable injury if this preliminary

8    injunction would not issue.  Alternatively, this Court

9    finds that Debtor has made a very strong showing of

10   irreparable injury and Debtor has demonstrated without a

11   question that there are serious questions going to the

12   merits.  Thus based on the facts of this case and

13   consideration of the relative hardship of the parties and

14   the public interest concerns, the Court finds that

15   continued enforcement of the omnibus order severely

16   threatens the integrity of the bankruptcy process and

17   Debtor's prospects for reorganization and a preliminary

18   injunction of continued enforcement of the omnibus order is

19   warranted.

20        Now, the Court also relies on Christopher

21   Village, LP versus United States, 360 F3d, 1319, Fed.

22   Circuit 2004, previously referenced to the parties by the

23   Court.  In Christopher Village, the Federal Circuit held

24   that the Court of Federal Claims had exclusive jurisdiction

25   to adjudicate a breach of contract claim, notwithstanding

25

1   the fact that a District Court and the Fifth Circuit had

2   previously asserted jurisdiction over those claims.  The

3   Federal Circuit acknowledged by the general rule that in

4   most circumstances, a judgment may not be collaterally

5   attacked on the ground that the original tribunal lacked

6   subject matter jurisdiction, even if the issue of subject

7   matter jurisdiction has not been litigated in the first

8   action.  However, the Federal Circuit held that an

9   exception to that general rule includes situations where,

10  quote, "allowing the judgment to stand would substantially

11  infringe the authority of another tribunal or agency of

12  government."  Quoting Restatement Second of Judgments

13  Section 12(2) 1982.

14          And citing to In re Bulldog Trucking versus

15  Productive Transportation Services, Inc., 147 F3d, 347 at

16  354, 4th Circuit 1998, and Sterling versus United States, 85

17  F3d, 1225 at 1231, 7th Circuit 1996; Christopher Village,

18  360 F3d at 1329 to 1330.  Here, under Christopher Village

19  where this Court has exclusive jurisdiction over

20  determining what constitutes property of the bankruptcy

21  estate, allowing the clarification order to determine

22  Debtor's rights in property of the estate, would both

23  substantially infringe the authority of this Court and

24  irreparably damage the Debtor and the Debtor's estate.

25          That concludes my findings of fact and

26

1    conclusions of law.  We can -- Mr. Sacks, we need to decide
2    what to do.  Do you think we should do an amended order
3    granting motion for preliminary injunction, given that I
4    have issued these findings of fact today, or do you think
5    that's not necessary?

6        MR. SACKS: This is Steven Sacks.  I don't think
7    it's necessary.  It seems to me that the Court could issue
8    its findings and conclusions after its order.

9        THE COURT: All right.  Does anybody disagree?

10       MR. OETZELL: I don't know, Your Honor.  And I'm
11   not also sure that Mr. Sacks does either.

12       THE COURT: Okay.  Well, I'll leave it as is and
13   then Mr. Sacks, if in your research, you decide that we
14   should do another order, then you should get that to me as
15   soon as possible.  The order can be basically the same.
16   It's just that the order refers to -- I'm looking at the
17   order now -- does it refer to the Court having issued its
18   findings of fact and conclusions of law yesterday?  And it
19   does.

20       MR. SACKS: It does.  It doesn't incorporate
21   findings to be issued today, and so I guess --

22       THE COURT: I think it's safer to issue a new
23   order, an amended order.

24       MR. SACKS: It's easy to do.  I'm happy to upload
25   one.

1          THE COURT: Very good. .

2          MR. OETZELL: Your Honor, before we worry about

3    this order here, I'm going to make a request that you

4    reinstate the order that you came to yesterday.  The order

5    that you came to yesterday preliminarily involved a good

6    deal of problems.  What the Debtor has requested you do

7    avoided by your first order yesterday was a direct

8    collision with the District Court whose order the Debtor is

9    flaunting and asking for your complicity in and a direct

10   collision with the Eleventh Circuit that has taken on three

11   critical issues upon which your decision rests.  You put in

12   your order yesterday sort of a handle where you would

13   ultimately have control over that property, that we could

14   go ahead; we could go into the District Court, let the

15   District Court enforce its order or not enforce its order,

16   but that property would not be disbursed without a further

17   order from you.

18          Your Honor, what you are being asked to do here

19   is extraordinary, and it is to restrain an agent of the

20   District Court, not the FTC, not an agent of the FTC, but

21   an agent of the District Court that has been appointed to

22   preserve property.  I quote to a couple of California cases

23   here about what a receiver is.  A receiver is an officer or

24   representative of the court appointed to manage property

25   that is the subject of litigation.  The receiver is not an

28

1    agent of either party to the action, represents all

2    persons.  In other words, the receiver acts as a fiduciary

3    on behalf of both parties as a representative and officer

4    of the court.  And that language in effect is in the

5    receivership orders that we have here.  The receiver is

6    appointed to preserve that property, and that's what this

7    receiver is attempting to do here.  In fact, Section 43(a)

8    of the Bankruptcy Code, which section has been referred to

9    a couple of times, specifically exempts actions that

10   preserve the property, that's meant to preserve the

11   property.  And that is the problem here.  The Debtor seeks

12   to dissipate that property.  The Receiver here seeks to

13   preserve that property.

14           In addition to that, Your Honor, Section 547(c)

15   requires the Court to protect the parties to which the

16   Receiver has become obligated, which is all the more reason

17   to preserve that property, the only way that they can be

18   protected.  Your Honor had it right yesterday.  Your Honor

19   had a situation where -- and I will say this -- there is a

20   standing order here.  There is an order from the District

21   Court that the Receiver (sic) turn over this property or

22   show case.  It has done neither.  It is flaunting that

23   order.  And I've argued before and I argue again that

24   enjoining the Receiver which is an extraordinary thing is

25   only a band aid.  It's only a stop-gap measure that is not

29

1  going to stop the District Court from shall we say

2  enforcing that order on its own.

3          I would ask Your Honor to go back to the ruling

4  that you had yesterday that avoided all these problems; let

5  this get straightened in Florida in front of Judge Reiscamp

6  (Phonetic) in front of the Eleventh Circuit, and not run

7  into this collision that is inevitable with enjoining the

8  officer of the District Court.

9          THE COURT: Well, I have a couple questions, and

10  then I'll hear from the Debtor.  First, you were telling me

11  I got it right yesterday, but you weren't willing to

12  stipulate to that order, and neither was the FTC, first.

13  And second, the order included a requirement that the

14  Debtor not release any funds.  Isn't that a collision with

15  the District Court order and so why do you think the order

16  that I had talked about yesterday was the proper order, if

17  it required the Debtor not to obey the District Court by

18  turning over the funds, but rather to keep the funds

19  protected?

20          Secondly, there's no question that my intention

21  is to protect the funds.  They're in a blocked account.

22  Nobody can unblock them without an order of this Court.  So

23  I stand between all of the parties and that money because

24  they're blocked.  Now I'll go ahead and hear from Mr. Sacks

25  and then you can respond to everything, if you will, Mr.