1  to the extent of Cash Collateral used by the Debtor.  Notwithstanding anything to the contrary

2  contained in this Order, the replacement liens granted to Network Telephone shall not include any

3  Bankruptcy Code chapter 5 avoidance actions or the proceeds thereof.  The replacement liens

4  granted to Network Telephone shall be automatically perfected pursuant to this Order and

5  Network Telephone shall not be required to take any further action to perfect such liens.

6      16.    Network Telephone's replacement liens on the post-petition property shall

7  have the same priority vis-a-vis other liens and interests as Network Telephone's pre-petition liens

8  and security interests have vis-a-vis such other liens and interests.  The replacement liens granted

9  to Network Telephone by this Order are intended to preserve Network Telephone's position vis-a-

10  vis the Debtor and other creditors of the estate so that Network Telephone's position vis-a-vis the

11  Debtor and such other creditors is neither diminished nor enhanced by Debtor's use of Cash

12  Collateral and Network Telephone's receipt of replacement liens.

13      17.    The replacement liens granted to Network Telephone shall be subordinated

14  from the Petition Date until further order of the Court to any allowed on an interim or final basis

15  expenses of this bankruptcy case including without limitation any allowed on an interim or final

16  basis fees and expenses of professionals retained by the Debtor and any official committee

17  appointed in this bankruptcy case as well as those of any trustee subsequently appointed in the

18  bankruptcy case and such trustee's professionals.

19

20      18.    Notwithstanding anything to the contrary set forth in this Order, this Order

21  does not determine whether Network Telephone has any valid, perfected or enforceable

22  prepetition liens or security interests in the Cash Collateral or any of the Debtor's other assets, and

23  both the Debtor and Network Telephone reserve all rights and defenses with respect thereto.  The

24  replacement liens granted to Network Telephone pursuant to this Order are effective only to the

25  extent that Network Telephone's prepetition liens in the Cash Collateral are valid, perfected and

26  enforceable.

27      19.    The Debtor may use Cash Collateral in which Personal Voice has an alleged

28  interest.

W02-WEST:FJR\400593456.4                    -10-

FURTHER ORDER APPROVING FURTHER
INTERIM USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

20.     Personal Voice is granted, pursuant to Bankruptcy Code sections 361(2) and 363(e), valid, perfected and enforceable replacement liens upon all post-petition property of the Debtor of the same type and character of any pre-petition property as to which Personal Voice had valid, perfected and enforceable security interests or liens, but only to the extent of Cash Collateral used by the Debtor.  Notwithstanding anything to the contrary contained in this Order, the replacement liens granted to Personal Voice shall not include any Bankruptcy Code chapter 5 avoidance actions or the proceeds thereof.  The replacement liens granted to Personal Voice shall be automatically perfected pursuant to this Order and Personal Voice shall not be required to take any further action to perfect such liens.

21.     Personal Voice's replacement liens on the post-petition property shall have the same priority vis-a-vis other liens and interests as Personal Voice's pre-petition liens and security interests have vis-a-vis such other liens and interests.  The replacement liens granted to POL by this Order are intended to preserve Personal Voice's position vis-a-vis the Debtor and other creditors of the estate so that Personal Voice's position vis-a-vis the Debtor and such other creditors is neither diminished nor enhanced by Debtor's use of Cash Collateral and Personal Voice's receipt of replacement liens.

22.     The replacement liens granted to Personal Voice shall be subordinated from the Petition Date until further order of the Court to any allowed on an interim or final basis expenses of this bankruptcy case including without limitation any allowed on an interim or final basis fees and expenses of professionals retained by the Debtor and any official committee appointed in this bankruptcy case as well as those of any trustee subsequently appointed in the bankruptcy case and such trustee's professionals.

23.     Notwithstanding anything to the contrary set forth in this Order, this Order does not determine whether Personal Voice has any valid, perfected or enforceable prepetition liens or security interests in the Cash Collateral or any of the Debtor's other assets, and both the Debtor and Personal Voice reserve all rights and defenses with respect thereto.  The replacement liens granted to Personal Voice pursuant to this Order are effective only to the extent that Personal

W02-WEST:FJRV400593456.4                    -11-

FURTHER ORDER APPROVING FURTHER
INTERIM USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

1   Voice's prepetition liens in the Cash Collateral are valid, perfected and enforceable.

2       24.   The Debtor may use Cash Collateral in which Public Communication has an

3   alleged interest.

4       25.   Public Communication is granted, pursuant to Bankruptcy Code

5   sections 361(2) and 363(e), valid, perfected and enforceable replacement liens upon all post-

6   petition property of the Debtor of the same type and character of any pre-petition property as to

7   which Public Communication had valid, perfected and enforceable security interests or liens, but

8   only to the extent of Cash Collateral used by the Debtor. Notwithstanding anything to the contrary

9   contained in this Order, the replacement liens granted to Public Communication shall not include

10  any Bankruptcy Code chapter 5 avoidance actions or the proceeds thereof. The replacement liens

11  granted to Public Communication shall be automatically perfected pursuant to this Order and

12  Public Communication shall not be required to take any further action to perfect such liens.

13      26.   Public Communication's replacement liens on the post-petition property

14  shall have the same priority vis-a-vis other liens and interests as Public Communication's pre-

15  petition liens and security interests have vis-a-vis such other liens and interests. The replacement

16  liens granted to Public Communication by this Order are intended to preserve Public

17  Communication's position vis-a-vis the Debtor and other creditors of the estate so that Public

18  Communication's position vis-a-vis the Debtor and such other creditors is neither diminished nor

19  enhanced by Debtor's use of Cash Collateral and Public Communication's receipt of replacement

20  liens.

21

22      27.   The replacement liens granted to Public Communication shall be

23  subordinated from the Petition Date until further order of the Court to any allowed on an interim

24  or final basis expenses of this bankruptcy case including without limitation any allowed on an

25  interim or final basis fees and expenses of professionals retained by the Debtor and any official

26  committee appointed in this bankruptcy case as well as those of any trustee subsequently

27  appointed in the bankruptcy case and such trustee's professionals.

28      28.   Notwithstanding anything to the contrary set forth in this Order, this Order

W02-WEST:FJR\400593456.4                    -12-

FURTHER ORDER APPROVING FURTHER
INTERIM USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

1   does not determine whether Public Communication has any valid, perfected or enforceable

2   prepetition liens or security interests in the Cash Collateral or any of the Debtor's other assets, and

3   both the Debtor and Public Communication reserve all rights and defenses with respect thereto.

4   The replacement liens granted to Public Communication pursuant to this Order are effective only

5   to the extent that Public Communication's prepetition liens in the Cash Collateral are valid,

6   perfected and enforceable.

7       29.    The use of Cash Collateral shall be in the amounts, and for the purposes, set

8   forth on the Budget. Notwithstanding anything to the contrary in the First Amended PaymentOne

9   Stipulation or this Order, to the extent that the Debtor does not spend the full amount of funds

10  which it is authorized to spend in the Budget for a given week period, the Debtor does not "lose"

11  the right to spend thereafter such unused funds, but instead the Debtor may spend such unused

12  funds in a subsequent week period(s) in addition to whatever additional funds the Debtor is

13  authorized to spend in that subsequent week period(s) as provided in the Budget.

14      30.    The Court shall hold the Further Interim Hearing on the Motion including

15  the First Amended PaymentOne Stipulation on December 17, 2007 at 10:00 a.m.

16      31.    The Debtor shall, on or before December 4, 2007, serve by U.S. mail a

17  notice regarding the Further Interim Hearing to those parties on the Limited Notice List as

18  described in the Order Limiting Service of Notice of Certain Matters entered by the Court on

19  November 20, 2007, as well as to counsel for the Alleged Cash Collateral Secured Creditors,

20  counsel for any party which filed an opposition with respect to the November 30 Interim Hearing

21  including counsel for the Receiver and counsel for the FTC, and the United States Trustee, to the

22  extent that counsel for such parties are not included on Limited Notice List. The Debtor shall also

23  email serve the notice of the Further Interim Hearing on the counsel listed in the prior sentence of

24  this paragraph to the extent that the Debtor's counsel has an email address for any such counsel.

25  The Debtor shall file with the Court any revised budget in connection with the Further Interim

26  Hearing on or before 5:00 p.m. (Pacific Time) on December 7, 2007.

27      32.    The notice of the Further Interim Hearing shall state that any party in

28

W02-WEST:FJR\400593456.4                         -13-

FURTHER ORDER APPROVING FURTHER
INTERIM USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

interest objecting to the approval of the Motion including the relief sought in connection with the First Amended PaymentOne Stipulation on a further interim basis as is being requested by the Debtor at the Further Interim Hearing shall file a written objection with the Court no later than December 12, 2007, which objection shall be filed with the Court and served so that it is received on or before 5:00 p.m. (Pacific Time) of such date by the Debtor's counsel, the Committee's counsel, and the Office of the United States Trustee at the following contact information:

Counsel to Debtor:

Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, Suite 1700
San Francisco, CA 94111
Attn:   Michael H. Ahrens, Esq.
          Jeffrey K. Rehfeld, Esq.
          Steven B. Sacks, Esq.
Email: mahrens at sheppardmullin.com
          ssacks at sheppardmullin.com
          jrehfeld at sheppardmullin.com
Facsimile: (415) 434-3947

Counsel to Committee:

Pachulski Stang Ziehl & Jones LLP
150 California Street, 15th Floor
San Francisco, CA 94111-4500
Attn:   John D. Fiero, Esq.
          Maxim B. Litvak, Esq.
Email: jfiero at pszjlaw.com
          mlitvak at pszjlaw.com
Facsimile: (415) 263-7010

Office of the United States Trustee:

Office of the United States Trustee
280 S. First Street, Suite 268
San Jose, CA 94113-0002
Attn:   John Wesolowski, Esq.
Facsimile: (408) 535-5525

W02-WEST:FJR\400593456.4                    -14-

FURTHER ORDER APPROVING FURTHER
INTERIM USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

1

2          33.    If a timely objection is filed, served and received, a written reply thereto

3  shall not be required but may be filed with the Court and served so that it is received by the

4  objecting party no later than December 13 , 2007 on or before 11:59 p.m. (Pacific Time).

5

6                   ** END OF ORDER **

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

W02-WEST:FJR\400593456.4               -15-

FURTHER ORDER APPROVING FURTHER
INTERIM USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

COURT SERVICE LIST

Office of the U.S. Trustee
Office of the U.S. Trustee
Attn: Edwina Dowell, Esq. / John Wesolowski, Esq.
280 South First Street, Room 268
San Jose, CA 95113

The Billing Resource dba Integretel
The Billing Resource dba Integretel
Attn: Ken Dawson
5883 Rue Ferrari
San Jose, CA 95138

Proposed counsel for The Billing Resource dba Integretel
The Billing Resource dba Integretel
c/o Sheppard, Mullin, Richter & Hampton LLP
Attn: Michael H. Ahrens, Esq.
4 Embarcadero Center, 17th Floor
San Francisco, CA 94111-4106

Counsel for PaymentOne Corporation
PaymentOne Corporation
c/o O'Melveny & Myers LLP
Attn: Steve Warren, Esq.
400 South Hope Street
Los Angeles, CA 90071-2899

POL, Inc.
POL, Inc.
c/o Joel R. Dichter, Esq.
Dichter Law Group, LLC
10 Rockefeller Plaza, Suite 816
New York, New York 10020
Fax: (212) 757-5002

POL, Inc.
c/o Kathryn Diemer, Esq.
Diemer, Whitman & Cardosi
75 East Santa Clara Street, Suite 290
San Jose, CA 95113

Personal Voice, Inc.
Personal Voice, Inc.
Attn: David Giorgione
16807 A U.S. Highway 19 North, Suite A
Clearwater, FL 33764

Personal Voice, Inc.
Attn: Thomas C. Little
(Registered Agent for Service of Process)

W02-WEST:FJR\400593456.4                              -16-

FURTHER ORDER APPROVING FURTHER
INTERIM USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

1  2123 NE Coachman Rd., Suite A
Clearwater, FL 33765

2

Network Telephone Services, Inc.
3  Network Telephone Services, Inc.
Attn: Daniel Coleman, Esq.
4  21135 Erwin Street
Woodland Hills, CA 91367

5

6  Ellen Friedman, Esq.
Elaine Hammond, Esq.
7  Friedman, Dumas & Springwater LLP
150 Spear Street, Suite 1600
8  San Francisco, CA 94105

9  Public Communication Services, Inc.
Public Communication Services, Inc.
10  Attn: Leslie Cohen, Esq.
Liner Yankelvitz Sunshine & Regenstreif LLP
11  1100 Glendon Avenue, 14th Floor
Los Angeles, CA 90024-3503

12

The Receiver David Chase
13  Walter Oetzell, Esq.
Steven J. Schwartz, Esq.
14  Danning, Gill, Diamond & Kollitz, LLP
2029 Century Park East, Third Floor
15  Los Angeles, California 90067-2904

16  Jeffrey C. Schneider, Esq.
Tew Cardenas LLP
17  Four Seasons Tower, Fifteenth Floor
1441 Brickell Avenue
18  Miami, Florida 33131-3407

19  Federal Trade Commission
Michael Mora, Esq.
20  Julie A. Mack, Esq.
Federal Trade Commission
21  600 Pennsylvania Ave. N.W.
Washington, DC 20580

22

23  Thermo Credit
John A. Lapinski, Esq.
24  Leslie R. Horowitz, Esq.
Dolores Cordell, Esq.
25  Clark & Trevithick
800 Wilshire Boulevard, 12th Floor
26  Los Angeles, California 90017

27  W. Timothy Miller, Esq.
Taft Stettinius & Hollister LLP
28  425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202

W02-WEST:FJR\400593456.4    -17-

FURTHER ORDER APPROVING FURTHER
INTERIM USE OF CASH COLLATERAL AND
GRANTING REPLACEMENT LIENS

1    Certain Creditors
     Peter Benvenutti, Esq.
2    Michaeline H. Correa, Esq.
     Heller, Ehrman, White and McAuliffe
3    333 Bush St.
     San Francisco, CA 94104-2878
4
     Email Discount Network and Intelicom Messaging
5    c/o David M. Goodrich, Esq.
     7700 Irvine Center Drive, Suite 800
6    Irvine, CA 92618
7
     Austin P. Nagel, Esq.
8    Law Offices of Austin P. Nagel
     111 Deerwood Place, Suite 338
9    San Ramon, California 94583

10   Official Creditors' Committee
     John Fiero, Esq.
11   Pachulski, Stang, Ziehl, & Jones
     150 California Street, 15th Floor
12   San Francisco, CA  94111-4500

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

W02-WEST:FJRV400593456.4                    -18-

                                FURTHER ORDER APPROVING FURTHER
                                INTERIM USE OF CASH COLLATERAL AND
                                GRANTING REPLACEMENT LIENS

**RER - 83**

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE ARTHUR S. WEISSBRODT, JUDGE

| | |
|---|---|
| In Re:<br><br>THE BILLING RESOURCE, dba<br>Integretel, a California<br>corporation,<br><br>               Debtor.<br>_____ | ) Case No. 07-52890-ASW<br>) Chapter 11<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| THE BILLING RESOURCE,<br><br>               Plaintiff,<br><br>      v.<br><br>DAVID R. CHASE, Federal Receiver,<br>et al.,<br><br>               Defendants.<br>_____ | )<br>) Adv. No. 07-5156<br>)<br>) <u>CONTINUED FROM NOV. 21:</u><br>) <u>PLAINTIFF'S MOTION for</u><br>) <u>ORDER to SHOW CAUSE</u><br>) <u>REGARDING PRELIMINARY</u><br>) <u>INJUNCTION re ORDER to</u><br>) <u>STAY ENFORCEMENT of</u><br>) <u>OMNIBUS ORDER including</u><br>) <u>THE COURT'S RULINGS</u><br>)<br>) Monday, November 26, 2007<br>) San Jose, California |

Appearances:

For POL, Inc.:        Kathryn S. Diemer, Esq.
                      Diemer Whitman & Cardosi, LLP
                      75 East Santa Clara Street, Suite 290
                      San Jose, California  95113-1806

Appearances via telephone:

For the Debtor:        Steven B. Sacks, Esq.
                      Sheppard Mullin Richter & Hampton
                      Four Embarcadero Center, 17th Floor
                      San Francisco, California  94111-4109

                      Neal Goldfarb, Esq.
                      Tighe Patton Armstrong Teasdale, PLLC
                      1747 Pennsylvania Avenue, Suite 300
                      Washington, D.C.  20006

Appearances continued on next page.

2

<u>Appearances via telephone continued</u>:

For the Committee:                John D. Fiero, Esq.
                                  Pachulski Stang Ziehl Young & Jones
                                  3 Embarcadero Center, Suite 1020
                                  San Francisco, California  94111-5994

From the Federal Trade            Collot Guerard, Esq.
Commission:                       Michael P. Mora, Esq.
                                  John Andrew Singer, Esq.
                                  600 Pennsylvania Avenue, N.W., Room 286
                                  Washington, D.C.  20580

For the Federal                   Walter K. Oetzell, Esq.
Receiver, David R.                Danning, Gill, Diamond & Kollitz, LLP
Chase:                            2029 Century Park East, Third Floor
                                  Los Angeles, California  90067-2904


Digital Court                     United States Bankruptcy Court
Recorder:                         Clerk of the Court
                                  Erin Coyle
                                  280 South First Street, Room 3035
                                  San Jose, California  95113
                                  (408) 535-5005


Certified Electronic
Transcriber:                      Palmer Reporting Services
                                  1948 Diamond Oak Way
                                  Manteca, California  95336-9124
                                  (800) 665-6251, telephone






                    Proceedings recorded by digital recording;
        transcript produced by federally-approved transcription service.

RER-83    3549

*Motion for Order to Show Cause re Preliminary Injunction*                    3

1    Monday, November 26, 2007
2                                              2:05 o'clock p.m.
                        P R O C E E D I N G S
3         THE CLERK:  Please rise.
4         THE COURT:  Please be seated.  This is the case of
5    Billing Resource.  I'll take the appearances of the lawyer, the
6    single lawyer in court.
7         MS. DIEMER:  Good afternoon, Your Honor.  Kathryn
8    Diemer on behalf of secured creditor POL.
9         THE COURT:  Yes.  And on the phone, Mr. Sacks, may I
10   have your appearance?
11        MR. SACKS:  Steven Sacks, Sheppard Mullin, for the
12   debtor.
13        THE COURT:  Mr. Oetzell.
14        MR. OETZELL:  Good afternoon, Your Honor.  Walter
15   Oetzell of Danning, Gill, Diamond and Kollitz on behalf of
16   federal receiver.
17        THE COURT:  Ms. Guerard.
18        MS. GUERARD:  Collot Guerard on behalf of the Federal
19   Trade Commission.  And with me is Mickey Mora and John Singer.
20        THE COURT:  Neal Goldfarb.
21        MR. GOLDFARB:  Your Honor, Neal Goldfarb of Tighe,
22   Patton in Washington, D.C., also for The Billing Resource.
23        THE COURT:  Very good.  So is the Federal Trade
24   Commission going to speak first since there was a question on
25   the table to the Commission and to the receiver?

*Motion for Order to Show Cause re Preliminary Injunction*
4

1    MR. FIERO: Your Honor, very quickly, John Fiero for

2    the committee.

3    THE COURT: Oh, thank you, sir. You weren't on my

4    list.

5    Is there anybody else on the phone who wasn't on my

6    list?

7    (No audible response.)

8    THE COURT: No. Okay, go ahead. You didn't have to

9    do it quickly, Mr. Fiero, I would have called on you. I just

10   didn't have you on my list.

11   MR. MORA: Thank you, Your Honor. Michael Mora for

12   the Federal Trade Commission.

13   THE COURT: Thank you, sir. Go ahead.

14   MR. MORA: Your Honor, the Commission appreciates the

15   Court's attempt to bring the parties together in a settlement.

16   And also Mr. Sacks did circulate a written proposal to us over

17   the weekend. We did have time to deliberate and consider Your

18   Honor's proposal today. I can report to you that we're not in a

19   position to accept it.

20   THE COURT: That's fine. But is there something you

21   will accept? I mean the whole point of it is to try to work

22   something out. When you were in court, Mr. Mora, you and Mr.

23   Oetzell stressed to me that as long as the funds were held you

24   were fine. And, in fact, you even made a proposal. So what

25   kind of proposal would satisfy you that the funds are going to

1  be held so —

2          MR. MORA:  Well, Your Honor, I'm not sure what Your

3  Honor is referring to, but in fact we never made — well, Your

4  Honor, we never made a proposal like this and actually we did

5  not.

6          THE COURT:  Well, I think Mr. Oetzell did in fact.

7  And he's —

8          MR. MORA:  Yeah, —

9          THE COURT:  And he, in fact, represents the receiver

10  and the receiver is the only one going for contempt proceedings,

11  so I think that's incorrect.

12          MR. MORA:  Your Honor, we did make such a proposal.

13  The Commission did not.

14          THE COURT:  Well, I don't know whether Mr. Oetzell

15  speaks for the receiver in this context, but my very firm

16  recollection is Mr. Oetzell made that proposal.  He said — well,

17  why don't we hear from Mr. Oetzell.

18          MR. OETZELL:  Your Honor, thank you.  We also

19  appreciate Your Honor's efforts in this and we appreciate Mr.

20  Sacks' circulating his proposal.  Obviously what we're concerned

21  about is several things.  Number one, the funds being preserved.

22  Number two, inconsistent rulings between what's going on in

23  Florida and in front of Your Honor.  Three, rendering the

24  Eleventh Circuit's efforts somewhat meaningless, particularly

25  since the debtor did invoke the jurisdiction of the Eleventh

*Motion for Order to Show Cause re Preliminary Injunction*                    6

1  Circuit.

2          And what we would ask for or be amenable to is if a
3  stay there needs to be, that that stay be until the Eleventh
4  Circuit decides the issues here, that the funds be kept in a
5  blocked account during that time and, you know, we would like to
6  have an interest in that account if possible, and that the funds
7  are neither subject to a motion to release or an adversary
8  proceeding to determine the status or ownership.

9          The concerns about the motion to release is that again
10 you've got the problems of rendering the Eleventh Circuit's
11 efforts meaningless and 'We need to spend the money' is not an
12 excuse and will not serve as an excuse if it turns out that the
13 Eleventh Circuit takes it upon themselves to rule that they are
14 our funds.

15         And, again, in respect of them not being subject to an
16 adversary proceeding in front of Your Honor to determine the
17 status or ownership, again that avoids, you know, conflicting
18 results between the Eleventh Circuit and a possible ruling from
19 the Bankruptcy Court.  That's what we would be looking for, Your
20 Honor.

21         THE COURT:  Okay.  So there's no amount of time, for
22 example, that I can promise you — of course the debtor would
23 have to agree — but there's no matter of time, a month, that
24 they won't be dissipated without you having notice for a month
25 so that if you need to go to an appellate court you could go to

1    an appellate court, that would satisfy you? If we said they're

2    going to stay in a blocked account; they won't — they will not

3    be removed pending decision by the Eleventh Circuit; however, if

4    the debtor has an emergency the debtor can come to this Court,

5    on a month's notice to you, and seek to release some or all of

6    the funds with the understanding that you have all the rights

7    that you have today?

8           MR. MORA: We appreciate that, Your Honor, but that

9    would involve the very real possibility that funds that are not

10   the debtor's would be spent.

11          THE COURT: How could that be if — you're in that

12   position now. I don't understand. You're in that position now

13   with a hearing on December 7th and the possibility of spending

14   them on December 14. And here we are toward the end of

15   November. So if you had a month warning you would be in a

16   better position than you are today.

17          MR. MORA: I understand, Your Honor. However, you

18   know, the issue remains the same and — and what we would like to

19   be removing in exchange for a stay is that concern, that the

20   funds would be spent and —

21          (The Court and Clerk confer. Static on the line.)

22          MR. MORA: — give the Eleventh Circuit a chance to

23   rule on the issue.

24          (The Court and Clerk confer.)

25          THE COURT: Does somebody have a cellphone on? Is

*Motion for Order to Show Cause re Preliminary Injunction*                    8

1    there anybody in court who has a cellphone on? No.

2              THE CLERK:  On the phone.

3              THE COURT:  Is there anybody on the phone who has a

4    cellphone on? We're getting static here. Could you please

5    answer my question if you do?

6              MS. GUERARD:  No, Your Honor — or at least Collot

7    Guerard doesn't.

8              MR. OETZELL:  I have a cellphone near the phone. I

9    will now remove everything that could be offending.

10             THE COURT:  You have to remove everything that could

11   be offensive. I don't know what's in your office, but the

12   cellphone would be a good start.

13             MR. OETZELL:  Well, that and a — and a PDA, and there

14   you have it. It's done.

15             THE COURT:  Okay. Thank you.

16             So, again, Mr. Oetzell, I understand you'd like to

17   remove the concern, but the concern exists now. And so if I

18   give you more time than you have now you're still not willing to

19   go for it.

20             MR. OETZELL:  I understand, Your Honor, but, you know,

21   time is one thing and assurance is along thing and it's the

22   assurance that, you know, we think would be the appropriate —

23   would be the appropriate thing to get.

24             THE COURT:  Okay. Now where are you, Mr. Sacks?

25             MR. SACKS:  Well, I guess we're not very far given the

*Motion for Order to Show Cause re Preliminary Injunction*                    9

1  response of the FTC and the receiver. We circulated a proposed
2  stipulation to them that really embodied what the Court
3  discussed last week in terms of timing and said that the FTC and
4  the receiver wouldn't seek to enforce the omnibus order so long
5  as the Bankruptcy Court hadn't tried — hadn't released the
6  funds. So that wasn't acceptable — or at least we heard from the
7  receiver and today we've heard from the FTC that that's not
8  acceptable. So as best I can tell they would rather be enjoined
9  and fight the battle in the appellate courts to determine
10 whether they have rights that we don't think they have.
11         THE COURT: Yeah, but you're assuming I'm going to
12 enjoin them.
13         MR. SACKS: I'm assuming that, but if the Court —
14         THE COURT: That's — that's not necessarily what's
15 going to happen. It may happen, but that isn't necessarily
16 what's going to happen.
17         MR. SACKS: Well, if the Court doesn't enjoin them, if
18 no preliminary injunction issues, then they can seek the entry
19 of an order of contempt against us in the Florida District Court
20 and we can fight that fight there, I guess, unless we have some
21 appellate alternatives of our own, but — you know, from this
22 Court. But —
23         THE COURT: I just wonder how serious your need for
24 this 1.7 million is. What they're asking you to agree to is
25 agree to let the Eleventh Circuit rule. Now if you have a real

1  need for this 1.7 million, then it becomes — that becomes the

2  primary motivating factor worth risking contempt or worth

3  fighting about contempt with.  If you don't, then it may be much

4  ado about nothing.

5          MR. SACKS:  Well, two things.  I think we will have a

6  need for the funds and I think that we don't agree that the

7  Eleventh Circuit is the place to decide what is property of the

8  estate.

9          THE COURT:  Right.  I don't — I understand that

10  argument.

11          MR. SACKS:  So there isn't any point in waiting for

12  the Eleventh —

13          THE COURT:  But they're saying that they're willing to

14  allow me to do it in the context of an adversary here.  That's

15  what I understood Mr. Oetzell to say, they're willing to let me

16  decide what constitutes property of the estate.  So it's just

17  that first issue about the need for the funds before the

18  Eleventh Circuit does whatever the Eleventh Circuit is going to

19  do.  And you could file your adversary tomorrow.

20          MR. OETZELL:  Your Honor, we — the idea was is that

21  it's the Eleventh Circuit that's deciding because we would like

22  to avoid inconsistent rulings as between you and the Eleventh

23  Circuit.  Now I can't keep them from filing their adversary

24  proceeding, but, you know, I don't necessarily have to agree to

25  it.

*Motion for Order to Show Cause re Preliminary Injunction*                    11

1    MR. SACKS:  This is Steven Sacks, Your Honor.  That's
2    what I thought is was that they were saying they wanted us not
3    to proceed by adversary, which is exactly what we've said to
4    them.  We asked them to stipulate to the filing of an amended
5    complaint in the adversary so that this Court could decide what
6    property of the estate is, whether the receiver has any interest
7    in our bank accounts.  And, as I understand it, they have
8    specifically said that they refused to do that.

9        THE COURT:  There is a possible alternative order that
10   I'm considering and that is to not interfere with the transfer
11   of funds myself.  I mean that doesn't mean that the — that you
12   don't have other appellate avenues.  But to enjoin the receiver
13   from doing anything other than if the receiver gets the funds,
14   keeping them in a blocked account pending further order of this
15   Court.

16       Would the receiver agree to that?
17       MR. OETZELL:  Your Honor, it's — I would have to check
18   with the receiver.  It does — it doesn't sound unreasonable.
19   But I would have to check with him.

20       Let me understand.  It's that the receiver would not
21   be enjoined from pursuing the Florida action but the receiver
22   would hold the funds if they were ordered to be turned over
23   pending an order of —

24       THE COURT:  Of the Bankruptcy Court.

25       MR. OETZELL:  The Bankruptcy Court.  I would have to

*Motion for Order to Show Cause re Preliminary Injunction*                    12

1    check with the receiver on that.

2            THE COURT:  How long does the receiver — do you need

3    to check with the receiver?  I don't know how available the

4    receiver is, but given that we're dealing with this extended TRO

5    that you agreed to, I don't want to — I don't want to lose our

6    jurisdiction over these funds.

7            MR. OETZELL:  Well, let's see what I can do.

8            THE COURT:  Do you have him in the next room?

9            MR. OETZELL:  I wish I did.

10           THE COURT:  Okay.  So what are we going to do, do you

11   want me to recess and we'll call you — everybody will call back

12   in ten minutes?  What's practically, what do you want me to do?

13           MR. OETZELL:  Let's make it 15 minutes and that should

14   give me a chance to be in touch if I can get in touch.

15           THE COURT:  All right.  And then if Mr. Sacks or Mr.

16   Fiero want to say anything at that point or any of the other

17   lawyers, that would be fine.  But we might as well find out what

18   his position is.

19           Did somebody want to say something before we find out

20   what the receiver's position is?

21           MR. MORA:  Yes, Your Honor.  This is Michael Mora for

22   the Commission.  Your Honor, since this injunction was proposed

23   to be entered against the Commission as well and since we are —

24           THE COURT:  Absolutely.

25           MR. MORA:  Right.

*Motion for Order to Show Cause re Preliminary Injunction*                13

1    THE COURT:  Nobody can dissipate the funds pending

2  further order of the Bankruptcy Court.

3    MR. MORA:  Right.  So this is something that we also

4  will have to discuss with our client internally during the

5  recess.

6    THE COURT:  I understand.  That's of course

7  appropriate.

8    Thank you.  We'll recess.  Ms. Bracegirdle will expect

9  the operator to come back in in 15 minutes.

10    Operator, are you onboard?

11    THE OPERATOR:  Yes, Your Honor.

12    THE COURT:  You understand?

13    THE OPERATOR:  Yes, Your Honor.

14    THE COURT:  Thank you very much.  Court is in recess

15  for 15 minutes.

16    [COUNSEL]:  Thank you, Your Honor.

17    (Recess taken from 2:20 p.m. to 2:41 p.m.)

18    THE CLERK:  Please rise.

19    THE COURT:  Thank you.  You may be seated.

20    Yes, Mr. Oetzell.

21    MR. OETZELL:  Your Honor, I've talked to the receiver

22  and we would not object to such — such an order as long as, you

23  know, it's without prejudice to our positions to make any and

24  all argument, including the fact that it doesn't necessarily

25  confirm to —

*Motion for Order to Show Cause re Preliminary Injunction*                    14

1    THE COURT:  I can't hear you.  You're started to fade

2    out.  You need to keep your voice up.

3    MR. OETZELL:  I'm sorry, Your Honor.  I've talked to

4    the receiver.  The receiver would not object to the entering of

5    such an order, assuming that it was without prejudice to, you

6    know, our arguing anything, you know, at a later time, including

7    the jurisdiction did not attend and that, you know, we're

8    concerned that we would be in a position of conferring

9    jurisdiction, which we're not — which we don't have the ability

10   to do.  So if it's without prejudice to all of our positions,

11   with all rights reserved, we would not object to the entry of

12   such an order.

13   THE COURT:  Okay.  And how about the Federal Trade

14   Commission?

15   MR. MORA:  Your Honor, first of all, — this is Michael

16   Mora for the Commission.  Your Honor, first of all,

17   unfortunately we were just rejoined at the end of Mr. Oetzell's

18   comments, so I caught the end of what he said.  I believe I know

19   what he said, but —

20   THE COURT:  Well, Mr. Oetzell, just repeat it.

21   MR. OETZELL:  I said that we would not object to the

22   entry of such an order assuming that — that it was without

23   prejudice to any position later on that we were — that we could

24   argue, including that there was no subject matter jurisdiction,

25   because we were concerned that if — that we would — that

*Motion for Order to Show Cause re Preliminary Injunction*          15

1   assenting to such a thing would be conferring subject matter

2   jurisdiction, which we do not have the right to do.  So we're

3   not waiving any arguments.

4          THE COURT:  Okay.  Go ahead, Mr. Mora.

5          MR. MORA:  Thank you, Your Honor.  Your Honor, we did

6   have an opportunity to confer with our client and I have to

7   report to the Court that this alternative proposed stipulation

8   is not acceptable to the Commission either.

9          And I just want to reiterate that the Commission was

10  not a party to the original stipulation that the receiver and

11  Integretel entered into.  We objected to it.  It was done over

12  our objection.

13         We would — we would object to any stipulation like

14  this alternative proposal and we would simply ask that the Court

15  enter whatever order it intends to as against the Commission.

16         THE COURT:  Okay.  So we'll start with you, Mr. Sacks.

17  With respect to the receiver's contempt proceeding is the

18  receiver — is the Commission even a party to that?

19         MR. SACKS:  That's a question that's hard to answer,

20  Your Honor.  They have filed briefs with respect to that motion

21  though it is not their original motion.  So I'm not sure whether

22  they take the position they're a party to it or not.

23         THE COURT:  Well, okay.  Mr. Mora, are you a party to

24  the contempt proceeding?

25         MR. MORA:  Yes, Your Honor, we are.  We filed an

*Motion for Order to Show Cause re Preliminary Injunction* 16

1    extensive brief in support. And, in fact, —

2    THE COURT: Wait a second, Mr. Mora. Does that — the

3    fact that you filed a brief doesn't confer party status.

4    MR. MORA: Your Honor, we're the real party-in-

5    interest in the action. The receiver is a court-appointed agent

6    of the District Court, so, yes, we are a party.

7    THE COURT: Okay. That's what I wanted to know.

8    MR. MORA: The case is *Federal Trade Commission versus*

9    *Nationwide, et al.*

10    THE COURT: Okay. So go ahead, Mr. Sacks.

11    MR. SACKS: I'm sorry, Your Honor. You wanted me to

12    go ahead and respond concerning the Court's proposal?

13    THE COURT: Right. And — and whatever you suggest. I

14    am having serious concerns about enjoining the receiver based on

15    the possibility, the very real possibility, of inconsistent

16    rulings between myself and the District Court and myself and the

17    Eleventh Circuit.

18    Now if I enjoin the distribution of these funds, if

19    they are turned over to the receiver, and I'm not ordering that

20    they be turned over to the receiver, I'm just saying if they are

21    turned over to the receiver, then they can't be dissipated

22    without further Court order and further order of the Bankruptcy

23    Court. And that's not — that doesn't give you everything you

24    want. It doesn't give you the ability necessarily, at least

25    through my order, to get — to use those funds. And it takes

1  them out of the jurisdiction of the Bankruptcy Court and puts

2  them in the receiver's interest-bearing account, pending further

3  order of the Bankruptcy Court, so it's less secure in that

4  respect.

5        On the other hand, it doesn't violate or it's not

6  inconsistent with anything that the District Court has done and

7  it's not inconsistent with anything that the Eleventh Circuit

8  has done. So I can issue that order knowing that I'm not in

9  conflict with another Court's order.

10       MR. SACKS: Well, Your Honor, I think a number of

11  points. This is Steven Sacks. Several points with respect to

12  that and, as well, a proposal for how we should proceed.

13       The Court cited us on Wednesday to the case of

14  *Christopher Village* in the Federal Circuit 2004, 360 F.3d 1319.

15  And I think *Christopher Village*, which as best I could tell

16  checking that case and similar cases, is good law for the

17  proposition that if a court does not have jurisdiction, then

18  another court considering a matter where it does have

19  jurisdiction may enter an order that does not take account of

20  the first court's order, that — that ignores it, in effect,

21  without running afoul of any rules to the contrary about

22  collateral estoppel or *res judicata*.

23       And based on that and based on the fact that the

24  District Court did not have jurisdiction to rule what was

25  property of the estate and what was not, and —

*Motion for Order to Show Cause re Preliminary Injunction*                     18

1        THE COURT:  Well, there's a problem with that.  Wait a
2   minute, Mr. Sacks.  The problem with that is that as of the date
3   the District Court decided that these were property of the
4   receiver, at least according to the District Court, that was
5   prepetition.  And so it's not exactly clear that prepetition the
6   District Court didn't have jurisdiction to determine what was —
7   what belonged to the receiver and what belonged to the
8   prepetition debtor.  And so then you get into the question about
9   the second order.

10        But if you — if you accept for a moment that the
11   District Court determined in its first prepetition order that
12   this was property of the receiver, then your jurisdictional
13   argument is weaker, much weaker.

14        MR. SACKS:  Well, I don't think so, Your Honor,
15   because I think the Court had a perfect answer to that argument
16   when we were here on Wednesday which was that merely because a
17   court has decided prepetition the ownership of something does
18   not determine what a bankruptcy court then does when faced with
19   a debtor that has possession, allegedly, of the thing that is
20   owned by a nondebtor, the other party.

21        THE COURT:  Not allegedly.

22        MR. SACKS:  Well, —

23        THE COURT:  You do have possession.

24        MR. SACKS:  Well, that's — well, I guess the problem I
25   have with this is that the federal court did not really

*Motion for Order to Show Cause re Preliminary Injunction*

19

1   determine possession of anything that's in our bank account.
2   There was never any attempt to determine how much was in the
3   bank account or that any specific funds were property of anyone.
4           THE COURT:  Right.
5           MR. SACKS:  Instead the federal court's determination
6   was with respect to a vague concept called reserve funds or a
7   reserve account, which doesn't exist.
8           THE COURT:  But those issues —
9           MR. SACKS:  So we might —
10          THE COURT:  Those issues are —
11          MR. SACKS:  We might want —
12          THE COURT:  Those issues are presently before the
13  Eleventh Circuit, are they not?
14          MR. SACKS:  Well, I'm not sure what you mean by "those
15  issues."  But the question of whether the omnibus order is
16  indeed something that created an obligation at all, whether it's
17  a valid obligation that the receiver can enforce is before the
18  Eleventh Circuit, I agree.  But I think what is before this
19  Court is whether the debtor has an interest in its funds in its
20  bank account.  And I think it's unquestionable that this Court
21  does, that those are property certainly in the possession of the
22  estate and property of the estate, that the District Court was
23  never making any ruling about funds in the bank account that
24  were identified to that action.
25          So I mean we can — we can debate the jurisdictional

*Motion for Order to Show Cause re Preliminary Injunction*                    20

1    issue, but I think there's a sound basis for this Court to

2    proceed and for its ruling to be upheld if the other parties

3    want to appeal it.  The Court well expressed it in its

4    memorandum decision and it's obvious that we are threatened by

5    irreparable harm by what's proposed here.

6              And I wanted to say something about that because I

7    think that this Court cannot preserve its jurisdiction merely by

8    saying that the receiver might have to give back the money, if

9    you will, if this Court makes an order, because the receiver

10   doesn't recognize this Court's jurisdiction.  That's the entire

11   problem we have.  They insist that the District Court has the

12   only jurisdiction and now the Eleventh Circuit has the only

13   jurisdiction.  And, as a result, making an order that puts the

14   money in their hands takes it completely out of the Bankruptcy

15   Court's ability to control the ultimate disposition of the

16   funds.

17             THE COURT:  In other words, —

18             MR. SACKS:  We would be right back in front of the

19   District Court subject to an order, in fact.  In fact, it

20   doesn't even remove the conflicting-order aspect of this, as the

21   Court suggests that it might because the receiver has continued

22   to maintain that it is subject to an order to deposit these

23   moneys in a segregated receivership account subject to the

24   control of the District Court.  So they — they would be, at

25   best, subject to conflicting orders if this Court says, 'You

1   only have the money subject to my control.'

2          THE COURT:  I understand.

3          MR. SACKS:  Now the proposal I wanted to make was that

4   I think that this Court can reach a resolution of the adversary

5   proceeding that we filed.  We need to amend our complaint to

6   assert a claim based on the lack of interest that the receiver

7   has in our bank account.  And the Court can then decide that as

8   a matter of law and summary judgment, and I think it can do that

9   on an expedited basis.  And the entire proceeding can then,

10  depending on how the Court rules, be subject to appeal.  And so

11  we would propose to do that really almost as soon as the Court

12  could hear it.

13         THE COURT:  Um-hum.

14         MR. SACKS:  We think we could have a hearing — we've

15  already circulated a proposed amended complaint and asked the

16  parties to stipulate to its filing.  If they won't stipulate the

17  Court could hold a hearing on certainly shortened time to do

18  that.

19         THE COURT:  Why do they have to stipulate to your

20  filing a complaint?

21         MR. SACKS:  Well, we have a complaint.  That's a —

22  there already is an adversary proceeding.  That's what this case

23  is — that's what this motion is being filed in.  And our

24  original adversary did not make a claim that the receiver lacked

25  an interest in the property.  We merely sought to enforce the

1    automatic stay against it. And really assumed that that would

2    leave it in the Bankruptcy Court's jurisdiction. So at this

3    point we need to amend the complaint to add that claim to

4    resolve the existence of a claim of right of ownership or lien.

5         THE COURT: Okay. Does anybody else wish to say

6    anything?

7         MR. MORA: Your Honor, Michael Mora for the

8    Commission. I just wanted to respond to the last point.

9         The Commission would not consent to the amendment of

10    the existing complaint. And that wouldn't resolve anything

11    because it just puts us back in where we are right now, which is

12    that again Integretel's simply trying to relitigate the same

13    issues that have already been litigated in Florida, and it

14    resolves absolutely nothing. To file an amended complaint to do

15    the same thing a third time.

16         THE COURT: Ms. Diemer.

17         MS. DIEMER: Yes, Your Honor. As a secured creditor I

18    am concerned about the possibility that funds which I have a

19    properly-perfected secured interest in, I on behalf of my client

20    have a properly-perfected secured interest might go outside the

21    scope of this Court's jurisdiction. And I think that's a real

22    and significant risk as this case is teed up.

23         Furthermore, it could end up in the position that my

24    client would have to be forced to litigate to, you know, in a

25    worst-case scenario, in the worst-case scenario, should this

*Motion for Order to Show Cause re Preliminary Injunction*                    23

1  matter convert and there be insufficient funds, to pay my client

2  the remaining security funds that it is owed, we might then be

3  placed in the position by such an order of being required to go

4  outside the state of California to litigate those funds in a

5  foreign circuit, despite the fact that we have both appropriate,

6  properly-perfected prepetition security and postpetition

7  security.

8        And I think that that is an unfair and undue burden

9  upon my client.  I could see if the Court was interested in

10 making such a ruling, that if the ruling were confined to a

11 separate, segregated interesting-bearing account in the state of

12 California to be held by a third party, or something, fine.  But

13 I don't want to have to, God forbid a worst-case scenario

14 occurs, to have to go and litigate in the Eleventh Circuit at

15 great added expense over money that frankly is within the core

16 jurisdiction of this Court and which should be mine should the

17 worst-case scenario come to pass.  I think it poses a huge and

18 unfair burden upon the secured creditor in this case.

19       MR. FIERO:  Your Honor, this is John Fiero for the

20 committee.

21       THE COURT:  I can barely hear you, Mr. Fiero.

22       MR. FIERO:  I'm sorry, Your Honor.  This is John Fiero

23 for the committee.  Is that better?

24       THE COURT:  Yes.

25       MR. FIERO:  Your Honor, it's my expectation that the

1    debtor would never have agreed to segregate these funds in the

2    first place in the context of a cash collateral fight had it

3    known that at some later date the Court would order that the

4    funds be sent to —

5        THE COURT:   I'm not ordering anything, Mr. Fiero.

6        MR. FIERO:   Yes, I understand that, Your Honor, but

7    that was — that's what the receiver has said it will accept.

8        THE COURT:   No.  Well, the receiver may go — may get

9    the — you couldn't have been banking on an injunction here.  At

10   that point I even asked you whether I had jurisdiction to issue

11   the injunction, and you wouldn't give me an answer.  So I don't

12   think you could have been banking on that.

13       MR. FIERO:   No, —

14       THE COURT:   There's no question that I'm not going to

15   order the — I don't — I'm not proposing to order the debtor to

16   transfer any funds.  I'm just deciding whether it's appropriate

17   for me to issue an injunction.

18       MR. FIERO:   Your Honor, our position always was, and

19   you may recall that I mentioned it at the time, that their —

20   that this was property of the estate and that are, in fact,

21   cases, different ones, that I mentioned to you different ones

22   than the ones that you cited to us last week involving landlord

23   and tenants with expired leases, where the question of property

24   of the estate remains even after a court has found that a

25   landlord is entitled to possession of the property.

*Motion for Order to Show Cause re Preliminary Injunction*
25

1    So I don't think there's any question about this Court

2  having jurisdiction to determine the property-of-the-estate

3  question.

4    THE COURT:  But wait a second, Mr. Fiero.  I think

5  that I have exclusive jurisdiction to determine what is property

6  of the estate, too.  The question is whether I have jurisdiction

7  to enjoin the receiver and the FTC from doing what the District

8  Court has ordered the debtor to do.

9    MR. FIERO:  Well, Your Honor, if you — if you find

10 that it is — that there's a reasonable likelihood of success on

11 the merits of the essential claim of whether or not it's

12 property of the estate, certainly there could be no basis for

13 transferring the money to the receiver, as the order — as the

14 omnibus order suggests.

15   I mean let's remember that, you know, what if there

16 had been $1 in those accounts on the day that the omnibus order

17 had been entered, would that mean that the extent of the

18 receiver's claim would be $1?

19   THE COURT:  I thought — well, I don't know how to

20 answer that, Mr. Fiero.

21   MR. FIERO:  And I didn't expect you to, Your Honor.  I

22 just wanted to register for the Court the committee's concern,

23 which is identical to that of POL, that — that the property of

24 this estate remain subject to the husbandry, if you will, of

25 this debtor and this Court's order.

*Motion for Order to Show Cause re Preliminary Injunction*    26

1    THE COURT:  Thank you, sir.

2    MR. GOLDFARB:  Your Honor, Neal Goldfarb.  Might I

3  respond to Mr. Mora's statement?

4    THE COURT:  Sure.

5    MR. GOLDFARB:  Mr. Mora said he's concerned about

6  relitigating issues that were litigated before the Florida

7  Court, but in connection with the property-estate issue we're

8  not relitigating anything because we never had a chance to

9  litigate that issue before the bankrupt- — before the District

10  Court.

11    THE COURT:  I am aware of that.

12    MR. GOLDFARB:  So I just think, you know, that —

13  that —

14    THE COURT:  Although the District Court purported to

15  order.

16    MR. GOLDFARB:  I'm sorry?

17    THE COURT:  The District Court issued an order that

18  says that this isn't property of the estate.  So whether or not

19  you got a chance to litigate it or not, the District Court

20  thinks that it's — that the issue has been adjudicated.

21    MR. GOLDFARB:  Well, that's correct in terms of what

22  the court thinks, but in terms of what this Court, what Your

23  Honor is — whether Your Honor's precluded by that, the fact that

24  we didn't get to litigate it seems to me means that it's not a

25  conclusive decision.

1       THE COURT:  All right.  I want to mention something

2   else and that is that whether — let me just say it differently.

3       If a court other than the Bankruptcy Court determines

4   that the automatic stay is not applicable or grants relief from

5   the automatic stay and gets that decision wrong, then there is

6   no relief from the automatic stay.  The nondebtor party cannot

7   rely, as I understand the law, on the determination that

8   something isn't subject to the automatic stay.

9       So that if, for example, the receiver were to pursue

10  contempt proceedings and if it were ultimately determined that

11  those contempt are violative of the stay, then the receiver

12  would be operating at his own risk.

13                      THE COURT'S RULING

14      THE COURT:  Having said that, counsel, my — my

15  position on all of this has changed and I'm not willing to issue

16  an injunction along the lines of enjoining the receiver from, if

17  you will, obeying the Florida District Court, seeking the

18  contempt proceeding following the Florida District Court's

19  order, seeking the debtor to transfer the funds.  I'm just not

20  willing to do it.

21      So with respect to that issue I'm abstaining.  You're

22  perfectly free — I've not decided that on the merits.  The

23  debtor is perfectly free to seek an injunction from or a stay

24  from the Eleventh Circuit, to go back to the District Court, to

25  do whatever he wants.  And if the debtor wants me to issue an

*The Court's Ruling*                                                  28

1   order denying an injunction so that the debtor can appeal that

2   order, I'm clearly doing it because I don't think it would be

3   appropriate for me to do it under the circumstances.  And — and

4   — and I don't even know whether that would be something that the

5   debtor would conceivably appeal anyway.

6         But I am willing to enjoin the receiver if the

7   receiver gets possession of the funds from transferring those

8   funds to anyone in whole or in pat absent further order of this

9   Court, the Bankruptcy Court.  And I'm going to go ahead and

10  issue my findings of fact and conclusions of law on that, and

11  then you will do whatever you do, all of you.

12        Before the Court is an order to show cause why this

13  Court should not preliminarily enjoin the continued enforcement

14  of the omnibus order entered by the Florida District Court

15  prepetition.  The Florida District Court will subsequently be

16  referred to as the Florida Court.

17        The Court, this Court hereby incorporates the findings

18  of fact and conclusions of law as set forth in this Court's

19  Memorandum Decision — Memorandum Decision filed and entered on

20  November 2nd, 2007, which I refer to as the Memorandum Decision.

21        In the Memorandum Decision this Court declined to rule

22  on the merits of a preliminary injunction as to enforcement of

23  the omnibus order since that order at that time was stayed by

24  the Eleventh Circuit.  The Eleventh Circuit lifted that stay on

25  November 5th, 2007, and this Court granted a temporary

*The Court's Ruling*                                                    29

1    restraining order, enjoining the continued enforcement of the

2    omnibus order.

3         In addition to today's oral ruling this Court

4    incorporates this Court's comments made on the record at the

5    November 16, 2007 hearing as a basis for this Court's ruling.

6    And I say in addition to today's ruling, but — and the

7    Memorandum Decision.

8         The receiver argued at the hearing on the order to

9    show cause regarding a preliminary injunction that this Court

10   determined that the Barton doctrine did not apply to receiver,

11   this Court would be sitting, in essence, in review of the

12   Florida Court because the Florida Court has already determined

13   that the subject funds are not property of the estate.

14        The Court has thoroughly reviewed the discussion of

15   the Barton doctrine as set forth in this Court's Memorandum

16   Decision at pages 38 through 49.  In the Memorandum Decision the

17   Court explained why this — why this Court concluded that the

18   Barton doctrine is not applicable to this adversary proceeding

19   and why this Court had jurisdiction to determine that the Barton

20   doctrine is not applicable under the facts of this case.

21        Nothing in the receiver's opposition to this

22   preliminary injunction or in receiver's oral argument at the

23   November 16, 2007 hearing alters this Court analysis as set

24   forth in the Memorandum Decision.

25        Moreover, other bankruptcy courts have held that the

*The Court's Ruling*                                           30

1    Barton doctrine does not apply where a bankruptcy trustee seeks

2    turnover of property of the bankrupt estate from a custodian.

3    See *In Re Citex*, C-i-t-e-x, *Corp.*, 302 BR 144 Bankruptcy,

4    Eastern District of Pennsylvania 2003; *In re Automotive*

5    *Professionals, Inc.*, 2007 WestLaw 195 8595, Bankruptcy, Northern

6    District of Illinois, July 3rd, 2007.  The facts of this case

7    are analogous.  Here, debtor seeks to enjoin the turnover of

8    what debtor asserts is property of the estate if compliance with

9    the Barton doctrine is not required and a motion to compel

10   turnover of property held by a custodian, compliance with the

11   Barton doctrine is also not required to enjoin a federal

12   receiver who seeks to obtain custody over property that is very

13   likely property of the estate.

14        Should it later be determined that the Barton doctrine

15   does apply to the receiver and debtor needed to obtain

16   permission from the Florida Court to sue receiver in this Court,

17   this Court notes that it's highly likely, as argued by debtor,

18   that under *In re Crown Vantage, Inc.*, 421 F.3d 963 Ninth Circuit

19   2005, receiver would seek to — would need to seek relief from

20   this Court to proceed against debtor in the contempt proceedings

21   in the Florida Court.  This is so because debtor is the debtor-

22   in-possession of this Chapter 11 bankruptcy case, pursuant to

23   Bankruptcy Code Section 11011.  As a debtor-in-possession of

24   this bankruptcy case, Bankruptcy Code Section 1107 essentially

25   grants debtor the rights and powers of a bankruptcy trustee.

*The Court's Ruling*                                                      31

1    And debtor performs the functions and duties of a bankruptcy

2    trustee serving in a case under this chapter.

3            As a bankruptcy trustee, under *Crown Vantage* debtor

4    cannot be sued in a foreign jurisdiction, in this case the

5    Florida Court, without permission of this Court appointing — of

6    the Court appointing the trustee in this case — in this case —

7    this Court.

8            So I'm going to repeat that sentence.

9            As a bankruptcy trustee, under *Crown Vantage* debtor

10   cannot be sued in a foreign jurisdiction, in this case the

11   Florida Court, without the permission of a court appointing the

12   trustee, in this case this Court.

13           *Crown Vantage* likely applies even though debtor was

14   subject to the receiver's motion to compel prepetition.  And

15   this is so because any postpetition action by the receiver

16   against debtor is also against debtor's bankruptcy estate and

17   not just against the prepetition debtor.  As such, any

18   postpetition action by receiver is against the debtor-in-

19   possession, the entity that has the rights and powers of a

20   bankruptcy trustee and performs the functions and duties of a

21   bankruptcy trustee serving in a case under this chapter.

22           The FTC argues that the receivership established by

23   the Florida Court gives Florida *in rem* jurisdiction over the

24   commingled funds to the exclusion of the bankruptcy estate.  The

25   FTC argues that the Ninth Circuit authority of *CFTC versus Co*

*The Court's Ruling*                                                                      32

1   *Petro Marketing Group, Inc.*, 700 F.2d 1279 at 1281 through 1284,

2   Ninth Circuit 1983, stands for the proposition that the Florida

3   Court retained jurisdiction postpetition to order the turnover

4   of subject funds alleged to be property of debtor's bankruptcy

5   estate and such jurisdiction was not divested by this Court's

6   jurisdiction.   This Court does not agree with FTC's expanded

7   reading of *Co Petro*.

8        In *Co Petro*, as in every other case cited by the FTC

9   regarding this issue, the entity that was the subject of the

10  federal receivership was also the entity that was under

11  bankruptcy protection.   That is not the case in this instance.

12       The Ninth Circuit in *Co Petro* cited to *Collier*

13  *Bankruptcy Manual* for the proposition that the purpose of the

14  broad *in rem* jurisdiction of the bankruptcy court is, and I

15  quote:   To render authority and control of the bankruptcy court

16  paramount and all-embracing to the extent required to achieve

17  the ends contemplated by the new legislation and to exclude any

18  interferings by the acts of others or by proceedings before

19  other courts where such activities or judicial proceedings would

20  in some way frustrate the jurisdiction of the bankruptcy courts,

21  1 *Collier Bankruptcy Manual*, Section 3.01 and 3-24, Third

22  Edition 1982; *Co Petro*, 700 F.2d at 1282.

23       The Ninth Circuit went on to say:   Allowing the

24  District Court to enforce its preliminary injunction by

25  directing return of the $60,000 to the receiver would in no way

*The Court's Ruling*                                                    33

1    frustrate the jurisdiction of the Bankruptcy Court.    Section 543

2    of the Act protects the Bankruptcy Court's exclusive

3    jurisdiction over property of the estate by requiring the

4    receiver to preserve it and deliver it to the bankruptcy

5    trustee, 11 USC Section 543, Supplemental 4, 1980; accord *SEC*

6    *versus First Financial Group*, 645 F.2d at 439.

7            Therefore, Section 1471(e) does not divest the

8    District Court in this case of jurisdiction to issue an order to

9    aid the receiver in collecting and preserving property of the

10   estate, *Co Petro*, 700 F.2d at 1282 to '83.

11           Accord *SEC versus First Financial Group of Texas*, 645

12   F.2d, 429 at 440, Fifth Circuit 1981.    And I quote:  To the

13   extent that the exercise of a district court's jurisdiction

14   threatens the assets of the debtor's estate, the bankruptcy

15   court may issue a stay of those proceedings, 11 USC Section

16   105(a).

17           Additionally, 11 USC Section 543 protects the

18   bankruptcy court's exclusive jurisdiction over property of the

19   estate by requiring the custodian of such property to preserve

20   it and deliver it to the bankruptcy trustee.  In light of these

21   provisions and the ancillary nature of the equitably relief of

22   appointment of a receiver for the entity in bankruptcy in

23   regulatory enforcement actions, we do not find that the District

24   Court's order was made in contravention of the

25   exclusive-jurisdiction provision of Section 1471(e) — and I've

*The Court's Ruling*                                                              34

1    eliminated a footnote.

2              The facts of *Co Petro* are not the facts of this case.

3    Here, permitting receiver to continue enforcement of the

4    turnover order is not an order to aid in collection and

5    preservation of property of the bankruptcy estate that

6    subsequently will be turned over to the Bankruptcy Court for

7    distribution.  Indeed, on the contrary, receiver and the FTC's

8    determination to proceed with the omnibus order will remove and

9    potentially dissipate over $1.7 million in what is likely

10   property of this bankruptcy estate.

11             As the Ninth Circuit pointed out in *Co Petro*, the

12   district court was not divested of jurisdiction to enforce a

13   turnover order because permitting the district court to retain

14   jurisdiction actually aided the bankruptcy estate.  That is very

15   different from the facts that are before this Court.

16             The FTC also asserts that issuing a Section 105

17   injunction as to the contempt proceeding would exceed this

18   Court's discretionary authority because the Florida Court's

19   orders preclude debtor from relitigating the issue of ownership

20   of the, quote, reserve, unquote, funds, citing *In re Reynoso –*

21   *Reynoso*, 477 F.3d, 1117, 1121, Ninth Circuit 2007.

22             However, the first criteria for issue preclusion is

23   not met here, that the issue necessarily decided at the previous

24   proceeding is identical to the one sought to be relitigated.  In

25   the omnibus order the Florida Court addressed whether the

1    receiver had a property interest in the abstract, but did not

2    address to what particular asset that interest attached.    The

3    question of whether receiver could trace his asserted property

4    interest into any specific funds held by the debtor was not

5    litigated before the Florida Court.

6           The question here is whether any interest receiver had

7    at the time of debtor's bankruptcy filing attached to specific

8    funds or assets now held by the debtor.    Thus debtor is not

9    relitigating the identical issue previously litigated before the

10   Florida Court.

11          Moreover, this Court is not deciding today whether the

12   debtor or the receiver owns the subject funds.    The Court is

13   making no decision today as to who owns those funds.    Rather,

14   this Court is only deciding that debtor has a substantial

15   likelihood of success on the merits of debtor's position that

16   the subject funds are property of the debtor's bankruptcy

17   estate.    The debtor definitely has a likelihood of success on

18   the merits of that position.    And that would be true regardless

19   of whether this Court, the Eleventh Circuit, the Ninth Circuit,

20   or the Supreme Court were ultimately to decide that issue.

21          Receiver finally asserts that debtor has not met the

22   standards for injunctive relief under Section 105.    And, as this

23   Court will set forth in greater detail, the Court finds that

24   debtor has met its burden for a Section 105 preliminary

25   injunction.

*The Court's Ruling*                                                        36

1        The standard for injunctive relief in the Ninth

2   Circuit is well settled.  A party must show either:  One, a

3   likelihood of success on the merits and the possibility of

4   irreparable injury or, two, the existence of serious questions

5   going to the merits and the balance of hardships tipping in its

6   favor, the required showing of harm varies inversely with the

7   required showing of meritoriousness, *Miss World U.K. Ltd. versus*

8   *Miss America Pageants, Inc.*, 856 F.2d 1445 at 1448, Ninth

9   Circuit 1988.

10       In the reorganization context the Ninth Circuit has

11  said that a debtor seeking a stay against a nondebtor must show

12  a reasonable likelihood of successful reorganization.  As set

13  forth in detail in the Memorandum Decision at pages 19 through

14  21, debtor has definitely demonstrated that debtor has and had a

15  reasonable likelihood of successful reorganization.

16       In addition to those findings, on November 2, 2007,

17  the committee agreed to an additional two weeks for debtor's use

18  of cash collateral while debtor and the committee continued

19  discussions for a plan of reorganization.

20       At the November 2, 2007 hearing no creditor opposed

21  debtor's use of cash collateral based on the viability or lack

22  of viability of the debtor's business.  No creditor did that.

23       In addition, the Creditors' Committee has consented to

24  debtor's continued use of cash collateral through November 30,

25  2007.  Only in the — only the FTC and the receiver oppose

*The Court's Ruling*                                                    37

1    debtor's use of cash collateral, and that objection was only on

2    the basis that both parties objected to debtor using the funds

3    in the blocked account.  No creditor opposed debtor's use of

4    cash collateral based on the viability of debtor's business.

5         For the reasons stated in the Memorandum Decision and

6    the additional information brought to the Court's attention at

7    the November 2, 2007 and November 16, 2007 cash collateral

8    hearings, debtor has demonstrated that debtor has a reasonably

9    likelihood of a successful reorganization sufficient for the

10   issuance of a preliminary injunction.

11        Additionally, as set forth in great detail in the

12   Memorandum Decision at pages 38 to 58, debtor has demonstrated a

13   strong likelihood of success on the merits that the property the

14   receiver seeks to have the debtor turnover pursuant to the

15   omnibus order is in fact property of the estate.  The omnibus

16   order does not require debtor to pay any specific amount of

17   funds to the receiver.  Rather, in order to comply with the

18   omnibus order debtor would have to pay receiver out of debtor's

19   general commingled funds the so-called, quote, reserves,

20   unquote, the Florida Court determined debtor held on behalf of

21   the prior customers, the Florida Court describes such reserves,

22   but certainly did not quantify them.

23        Prepetition debtor did not turn over any funds to the

24   receiver and debtor did not segregate any such funds in any

25   fashion.  As of the petition date, the debtor retained an