*The Court's Ruling*                                                  38

1   interest in all of the funds in debtor's general bank account

2   and receiver asserted an interest in some as-yet unquantified

3   portion of those funds.

4           On the petition date this Court obtained exclusive

5   jurisdiction over all funds in debtor's general bank account,

6   under Section 1334(e) of Title 28, accord *In re Simon*, 153 F.3d

7   991 at 996, Ninth Circuit 1998.

8           Now the receiver argues at length that this Court is

9   purporting to decide whether the $1.7 million in commingled

10  funds constitutes property of debtor's bankruptcy estate, it is

11  correct that this Court is of the opinion that as of the filing

12  of the bankruptcy petition this Court obtained exclusive

13  jurisdiction to determine what is or is not property of the

14  estate.

15          However, it is not necessary for this Court to decide

16  one way or the other whether the 1.7 million is property of the

17  debtor's estate in order to issue a preliminary injunction

18  against enforcement of the contempt proceeding against debtor

19  and the omnibus order, in particular, vis-a-vis the distribution

20  of any such funds.  Rather, this Court need only find that there

21  are serious questions going to the merits, of whether the 1.7

22  million in commingled funds is property of the debtor's estate.

23          The irreparable harm to debtor of having to turn over

24  those funds to the receiver, who could then dissipate them, is

25  so great that this Court need only find that there are serious

*The Court's Ruling*                                                          39

1    questions going to the merits on that issue.  In granting debtor

2    a preliminary injunction, this Court is not reviewing the

3    decision of the Florida Court.  Instead, this Court is deciding

4    debtor's likelihood of success on the merits and, alternatively,

5    that there are serious questions going to the merits in the

6    context of ruling on debtor's request for a preliminary

7    injunction.

8            In evaluating debtor's likelihood of success on the

9    merits, this Court also needs to consider the circumstances

10   under which the Florida Court entered the omnibus and

11   clarification orders.  The bankruptcy estate did not exist at

12   the time the omnibus order was entered.  The bankruptcy estate

13   was not given any opportunity to brief or argue the merits of

14   the FTC's emergency motion prior to the Florida Court issuing

15   the, quote, clarification order, unquote, postpetition.

16           In the clarification order, the Florida Court

17   purported to determine what interest the bankruptcy estate had

18   in the approximately $1.7 million ordered to be turned over to

19   the receiver in the omnibus order, although there's no

20   quantification in the omnibus order whatsoever, without the

21   bankruptcy estate having the opportunity to argue or brief that

22   issue in any way.

23           This is an additional significant reason debtor is

24   likely to prevail on the merits.  Alternatively, debtor

25   certainly has demonstrated a substantial question going to the

*The Court's Ruling*                                                    40

1    merits of the procedure underlying the issues of the

2    clarification order.

3            In issuing this preliminary injunction, this Court is

4    not issuing an order that is in conflict with any issue that is

5    presently before the Eleventh Circuit.  Indeed the parties, that

6    is debtor, receiver, and the FTC, have all agreed to pursue the

7    litigation before the Eleventh Circuit and nothing in this

8    Court's preliminary injunction precludes the parties from doing

9    so.  Plus, debtor's bankruptcy case is moving very rapidly.  By

10   December 7th or before, the parties and this Court may know much

11   more about what debtor's reorganization plans will be and

12   whether the debtor even needs the $1.7 million that are — that

13   are in dispute.

14           Thus the parties and this Court may also have

15   additional information regarding the status of the appeals in

16   the Eleventh Circuit and the FTC's appeal of this Court's

17   Memorandum Decision.

18           The debtor will be seriously and irreparably harmed if

19   the receiver and FTC are permitted to enforce the omnibus order

20   and to possibly dissipate the $1.7 million.  First, they're

21   already being harmed by — if the FTC or the receiver are able to

22   force the debtor to transfer funds out of the debtor's estate,

23   and debtor certainly has possession of those funds, and preclude

24   the possibility the debtor will be able to use them in the

25   context of debtor's reorganization.

*The Court's Ruling*                                                    41

1    This Court is not enjoining that, but I do find that

2    the debtor will be seriously harmed if that occurs. But even if

3    the funds are transferred, the debtor would be very

4    substantially and irreparably harmed as well if the receiver has

5    the right to dissipate those funds, particularly at this point

6    in debtor's reorganization efforts.

7    If the funds are dissipated the debtor's estate will

8    lose the over $1.7 million that appears very likely to be

9    property of this estate. Those funds will not be available to

10   debtor or secured or unsecured or other creditors if they are

11   turned over to the receiver and then dissipated.

12   Moreover, if the debtor is required to turn over the

13   commingled funds, the debtor will be preferring receiver over

14   all similarly-situated creditors. Debtor is a debtor-in-

15   possession is a fiduciary to all of debtor's creditors, *inter*

16   *alia*, secured creditors, unsecured creditors, customers, the —

17   excuse me — the FTC, and the receiver.

18   The receiver certainly does not represent all

19   creditors of debtor's estate. At most, receiver represents the

20   receivership estates of the prior customers and the FTC.

21   Receiver does not seek to have the commingled funds turned over

22   to him to protect those funds for all creditors of debtor's

23   bankruptcy estate. Rather, receiver seeks possession of those

24   funds for the benefit of the receivership estates of the prior

25   customers to the exclusion of debtor's other secured and

*The Court's Ruling*                                          42

1   unsecured creditors.

2        Permitting receiver to implement the omnibus order

3   would irreparably harm the debtor's bankruptcy estate by

4   preferring one creditor, the receiver, over similarly-situated

5   creditors of the debtor since most if not all service contracts

6   provide for the same reserves.  And I put the term "reserves" in

7   quotes.

8        Additionally, as set forth in great detail in the

9   Memorandum Decision at pages 29 to 35, this is a critical time

10  in debtor's reorganization.  Permitting the receiver to continue

11  his enforcement of the omnibus order and possibly dissipate the

12  funds would terribly divert the debtor's president and other

13  personnel from the critical reorganized efforts.  The debtor

14  continues actively to pursue a successful organization and is

15  working closely with the Creditors' Committee toward that end.

16  Diverting debtor's management at this critical juncture with

17  time and attention that would be devoted to addressing the

18  enforcement of the omnibus order would threaten debtor's

19  reorganization.

20        Finally, in addition to the diversion of debtor's

21  management from the reorganization process, debtor will be

22  harmed by incurring substantial legal fees and costs the debtor

23  could ill afford at this juncture if enforcement of the omnibus

24  order is not enjoined, at least in terms of any possible

25  distribution of such funds.

1       Debtor estimates that the debtor will incur an

2   additional 50,- to $150,000 in fees related to the receiver's

3   request for the turnover of commingled funds.  Receiver argues

4   that the contempt proceedings are largely complete and the

5   orders are self-executing.  However, the omnibus order is now on

6   appeal.  If the enforcement of the omnibus order is not

7   enjoined, the debtor will have to comply with the order to turn

8   over the funds or show cause why the debtor should not be held

9   in contempt and then deal with any subsequent appeals of the

10  Florida Court's decision.

11      Now this Court, as I say, is limiting its injunction.

12  Although I think that the debtor will be harmed by all of those

13  things, because of comity I am limiting my decision to

14  prohibiting the receiver and the FTC from dissipating any funds

15  that are turned over to them that are presently in the debtor's

16  estate.

17      As set forth in greater detail in the Memorandum

18  Decision at pages 49 to 52, receiver asserts that enjoining the

19  contempt proceeding will harm the receiver by inferring with the

20  administration of a receivership, relitigating the parties'

21  disputes that have already been addressed by the Florida Court

22  in the omnibus and clarification orders, and the dissipation of

23  1.7 — $1,762,762.56 that the Florida Court required debtor to

24  turn over to the receiver.  This Court has already addressed why

25  enjoining the receiver does not unduly interfere with the

*The Court's Ruling*                                                                44

1    administration of the Florida Court receivership and why the

2    preliminary injunction is not a relitigation of the omnibus and

3    clarification orders.

4           The alleged harm to the receiver of not being able to

5    dissipate the funds does not outweigh the enormous threat of

6    irreparable injury to the debtor should the Court not issue a

7    preliminary injunction.

8           As I say, the Court has found that the debtor has

9    demonstrated a likelihood of success on the merits, but that the

10   Court need only find in this context that there are serious

11   questions going to the merits because the debtor has made such a

12   strong showing of a likelihood of irreparable injury if this

13   preliminary injunction would not issue.

14          Alternatively, this Court finds the debtor has made a

15   very strong showing of irreparable injury and debtor has

16   demonstrated without a question that there are serious questions

17   going to the merits.

18          Thus, based on the facts of this case in consideration

19   of the relative hardship of the parties and the public interest

20   concerns, the Court finds that continued enforcement of the

21   omnibus order severely threatens the integrity of the bankruptcy

22   process and debtor's prospects for reorganization and a

23   preliminary injunction of continued enforcement of the omnibus

24   order against debtor through March 14 is warranted — at least

25   insofar as enjoining the receiver's ability to do anything but

*The Court's Ruling*                                                          45

1   hold any funds that are now in the debtor's estate in an

2   interest-bearing account, if the receiver gets possession of

3   them.

4          On March 7, 2008 at 1:00 p.m. the Court will hold a

5   further hearing on whether the preliminary injunction of the

6   continued enforcement of the omnibus order should be continued

7   beyond March 14, 2008. Any party may request that the

8   preliminary injunction be modified or listed — I'm sorry — or

9   lifted before March 7, 2008 for good cause shown based on facts

10  that are not currently before the Court.

11         So, as a matter of comity, I am not issuing the

12  injunction to block the receiver from seeking to have possession

13  of the funds turned over to him. I certainly think that the

14  debtor has made a case for a preliminary injunction on that

15  regard; but, as a matter of comity, I am not issuing that

16  injunction.

17         The District Court has ordered the debtor to turn

18  funds over to the receiver and my order today does not stop

19  that. My order says, though, that if they are turned over to

20  the receiver, that the receiver or the FTC, or anyone else,

21  cannot do anything but keep them in a blocked, interest-bearing

22  account absent further order from this Court. And the debtor

23  should prepare a form of order after review by the FTC and the

24  receiver.

25         Are there any questions?

1          MR. OETZELL:  Yes, Your Honor.  I'm sorry.  This is

2    Walter Oetzell.  I'm sorry.  Your injunction means that the

3    receiver can go to the District Court in an attempt to get the

4    funds turned over, even though that would constitute the

5    enforcement of the contempt order, correct?

6          THE COURT:  My injunction does not enjoin that.

7          MR. OETZELL:  Right.

8          THE COURT:  That may be a violation of the stay, and I

9    caution you that; —

10         MR. OETZELL:  I understand.

11         THE COURT:  — but this injunction today does not block

12   that.

13         MR. SACKS:  Your Honor, this —

14         THE COURT:  So I'm not saying you may.  I'm just

15   saying that the injunction that I've issued today does not block

16   that action.

17         MR. SACKS:  Your Honor, Steven Sacks.  It seems to me

18   it's correct that the Court has ruled that the Barton doctrine

19   prohibits the receiver from taking action in the Florida Court

20   without the permission of the Bankruptcy Court.

21         THE COURT:  That wasn't sought.  You never sought that

22   relief.  It was just an argument that you put in that I agreed

23   with.  That if the Barton doctrine is applicable, that the

24   Barton doctrine is applicable both ways.

25         MR. SACKS:  But —

*The Court's Ruling*                                                      47

1    THE COURT:  That's all that happened.  You didn't come

2  in here seeking an injunction based on the application of the

3  Barton doctrine.  In fact, you said that the Barton doctrine

4  didn't apply.  And I say if the Barton doctrine applies it would

5  apply to this Court.  That's all that's happened, Mr. Sacks.

6    MR. SACKS:  Well, Your Honor, normally one doesn't

7  seek an injunction based on the Barton doctrine, but it still

8  applies.  And the Court's holding —

9    THE COURT:  I don't know what you just said, but I've

10  tried to make myself clear.

11    MR. SACKS:  Your Honor, the further relief we would

12  request is that the Court hold a hearing on or about Friday,

13  November 30th, to consider our motion to amend the complaint and

14  that the Court further consider issuing an order shortening time

15  hearing on a motion for summary judgment with respect.

16    THE COURT:  Do we have other hearings on November 30?

17  Why are you picking that day?

18    MR. SACKS:  Because it's quite soon.

19    MR. FIERO:  Your Honor, it's the date of the continued

20  cash collateral —

21    THE COURT:  I can't hear.  Whoever's talking, I can't

22  hear you.

23    MR. FIERO:  I'm sorry, Your Honor.  It's John Fiero.

24  It's the date of the continued cash collateral hearing.

25    THE COURT:  Oh, I see.

*The Court's Ruling*                    48

1          Well, what's the FTC and the receiver's position?

2          MR. MORA:  Your Honor, Michael Mora for the

3   Commission.  I think we've stated our position previously.

4          THE COURT:  I'm talking about the timing, Mr. Mora.

5   It's not — I'm not talking about the merits.  I'm just talking

6   about —

7          MR. MORA:  Your Honor, we — we would like to see a

8   motion from them to amend their complaint and have sufficient

9   time to respond because, again, —

10         THE COURT:  Okay.  When will they see the motion, Mr.

11  Sacks?

12         MR. SACKS:  We can file a motion by tomorrow, Your

13  Honor.

14         THE COURT:  Then why do I need to do this on two days'

15  notice?

16         MR. SACKS:  Because, Your Honor, I think the sooner

17  that we have a final ruling with respect to what is and what

18  isn't property of the estate with regard to the funds, —

19         THE COURT:  Mr. Sacks, you're not talking directly and

20  distinctly into the phone.

21         MR. SACKS:  I'm sorry, Your Honor.  I think it's

22  important to the Court's jurisdiction that it act immediately to

23  issue a final ruling that is not just based on probability of

24  success on the merits, but in fact is a ruling with respect to

25  its jurisdiction over property of the estate.  And so we would

1  like to get to that ruling as soon as reasonably possible,

2  particularly —

3          THE COURT:  And how would allowing you to amend your

4  complaint give you a final ruling on that?

5          MR. SACKS:  Well, it doesn't, Your Honor.  But it's an

6  interim step towards filing a motion that would resolve that

7  issue and ultimately would produce a finally dispositive ruling

8  with respect to that issue from the Bankruptcy Court.

9          THE COURT:  And how is this briefing going to — how do

10  you propose this briefing is going to occur?

11          MR. SACKS:  Well, Your Honor, I can't imagine how they

12  reasonably could have opposition to a motion to amend the

13  complaint at this early stage, but I have no objection to them

14  filing a opposition brief, if they so choose.

15          THE COURT:  When, Mr. Sacks?

16          MR. SACKS:  Well, Your Honor, it's probably more for

17  the convenience of the Court.  We can give them a motion by noon

18  tomorrow.  And if they can file a response two days later,

19  that's certainly all right with me.  But if —

20          THE COURT:  But then you don't get a reply and I don't

21  get to read it.

22          MR. SACKS:  Well, obviously you should get to read it.

23  So I don't need a reply.  We can argue it.

24          THE COURT:  All right.  We'll go off the record.

25  We'll take a five-minute recess.

1        Do you want to respond to that, Mr. Mora, or Mr.

2   Oetzell?

3        MR. OETZELL:  I just don't see what a couple weeks is

4   going to hurt the debtor in respect of filing the motion to

5   amend and giving everybody a chance to take a look at it.

6        THE COURT:  Okay.  There's —

7        MR. OETZELL:  I understand Mr. Sacks has been talking

8   about a summary judgment, but, you know, let's get serious.

9   This is an evidentiary —

10       THE COURT:  I can't hear you, Mr. Oetzell, because

11  you're — you're not talking directly into the phone and —

12       MR. OETZELL:  I'm sorry.  I said I — I do not see

13  what a couple of weeks is really going to matter for the debtor

14  in respective of getting this — this motion before the Court.  I

15  know Mr. Sacks has been talking about summary judgment and

16  almost immediate ruling.  But, let's face it, this is an

17  adversary proceeding and a trial.  That's not going to happen

18  right away.

19       MR. FIERO:  Your Honor, this is John Fiero.  How could

20  that possibly be?  They've already gotten essentially the mirror

21  image relief without any hearing of any kind.  Certainly this

22  Court could on a summary judgment basis issue a ruling which

23  would support a finding that this is property of the estate.

24       THE COURT:  I don't understand, Mr. Fiero, it's

25  certainly in the possession of the estate.  But whether it

1    ultimately will be property of the estate, are you saying I

2    could make a decision more than the debtor has possession of it,

3    on shortened time on summary judgment?

4           There's no question the debtor has possession of it

5    now, although by ten days from now the debtor may not have

6    possession of it.  So what are you thinking that I can do on

7    summary judgment?

8           MR. FIERO:  Well, Your Honor, I think the first

9    question is simply whether or not the debtor should be allowed

10   to amend its complaint.  Had the FTC not filed a motion to

11   dismiss, it could be done as of right —

12          THE COURT:  That's right.

13          MR. FIERO:  Everyone knows what the claim is going to

14   be and I believe that the debtor has actually circulated an

15   amended complaint which reflects the changes.  So there is no

16   sandbagging of any adverse party here.

17          With regard to summary judgment, Your Honor, I think

18   you could find that any moneys held by the debtor on the date of

19   bankruptcy which were the subject of commingling were, in fact,

20   property of the estate.

21          THE COURT:  I see.  Okay.  We will take a five-minute

22   recess.  Thank you, ladies and gentlemen.

23          THE CLERK:  Please rise.

24       (Recess taken from 3:35 p.m. to 3:53 p.m.)

25          THE CLERK:  Please rise.

1        THE COURT:  Please be seated.

2        Counsel, — Mr. Sacks, I have to tell you I'm a little

3   uncertain as to what your position is and let me see if I can

4   lay it out for you.

5        Ms. Diemer is very concerned, Mr. Fiero is very

6   concerned about letting the money out of this Court's

7   jurisdiction.  And I understand that concern.  But I can't

8   conceive under the circumstances here of allowing the debtor to

9   use those funds, given the pendency of the Eleventh Circuit

10  action.

11       So as long as you want the option to come here and ask

12  me to release those funds, then holding these funds in a blocked

13  account here may hurt you, because I don't think I'm going to do

14  that.  So if I abstain, then you can make whatever arguments you

15  want outside of this Court.

16       MR. SACKS:  This is Steven Sacks.  Your Honor is going

17  to a different question than I think we raised.  We want to get

18  a ruling from this Court on a matter —

19       THE COURT:  No, no.  I'm not.  I understand you want a

20  briefing on the summary judgment and the property-of-the-estate

21  issue, which is problematic in terms of timing for a different

22  reason.  But that — we can talk about that, but I'm saying I'm

23  still considering the possibility of doing what Ms. Diemer and

24  Mr. Fiero want, and that is keeping the funds here.  But not if

25  what you're going to want me to do is release them to the

*The Court's Ruling*                                                          53

1    debtor; I don't see myself doing that.  So...

2         MR. SACKS:  Your Honor is addressing a question that's

3    not before the Court with respect to whether the funds would be

4    released, which at present we would need to file papers with you

5    tomorrow seeking a hearing on December 7th with respect to

6    release on December 14th.

7         THE COURT:  Right.  But the receiver said that if

8    you'd agree to keep the funds until the Eleventh Circuit rules,

9    and without prejudice to whatever you do with respect to filing

10   your adversary here, at least the receiver would not have

11   opposed an order blocking distribution of the funds.  The FTC

12   would, but you said no to that.  And that no means that you want

13   the ability before the Eleventh Circuit rules to come here and

14   ask me to release the funds.

15        MR. SACKS:  Well, Your Honor has...  We may want that

16   ability, Your Honor.  We're not asking for it today.  What we

17   asked for today that was denied was with respect to whether we

18   were subject to contempt proceedings in the Southern District of

19   Florida, and I —

20        THE COURT:  And the receiver said —

21        MR. SACKS:  — I admit that's a substantially

22   different —

23        THE COURT:  And the receiver said if you agree not to

24   — not to dissipate the funds until the Eleventh Circuit rules,

25   he's not going to do that.

*The Court's Ruling*                                                54

1          MR. SACKS:  And it seems to me that that is still

2     potentially on the table then, though —

3          THE COURT:  It is.

4          MR. SACKS:  But though does — the FTC didn't agree, so

5     conceivably they could —

6          THE COURT:  I would have to enjoin the FTC but not the

7     receiver.

8          MR. SACKS:  If —

9          THE COURT:  I'm not asking you to agree to something

10    you don't want to agree to, Mr. Sacks.  I'm just trying to lay

11    it out for you.

12         My concern, the thing that troubles me is that if I

13    grant — if I issue an order keeping the funds here with the

14    intention internally, if you will, I mean it's advisory to a

15    certain extent I guess, but it's also the concern about whether

16    I should abstain, whether — whether I should keep them here if I

17    don't intend to release them.

18         MR. SACKS:  Your Honor, I submit that there are two

19    different questions.  One is whether you should release the

20    funds and one is whether the Court has exclusive jurisdiction

21    over property of the estate and that the funds in the debtor's

22    account as of the petition date were property of the estate and

23    the Court could adjudicate that without regard to whether it's

24    holding the funds or not.

25         THE COURT:  Yes.  But I'm not concerned about that at

*The Court's Ruling*                                                       55

1    this point, the second.  The second we can put on a schedule and

2    you can — you can put up before me, the issue as to whether

3    they're funds properly in the estate — whether they're estate

4    funds or not estate funds.

5           But my concern is that you're talking about wanting

6    potentially a hearing on December 14th where you're going to ask

7    me to release the funds and come in with some emergency

8    situation for the debtor.  And if that's on the table, even if

9    it's not December 14th, then I'm very concerned about that.

10          MR. SACKS:  Well, Your Honor, I'm concerned as well.

11   I think our position at this point, which is subject to change

12   because things have changed in terms of what we expected from

13   the Court today, but I think our position is that we don't need

14   the funds as of December 14th and that we were serious when we

15   said to the Court last week that we were willing to have them

16   remain in the account that they're in subject to a motion to

17   release them on notice when we do need them.  But I do think

18   that we are going to need them long before we get a ruling from

19   the Eleventh Circuit, which could be a year from now, two years

20   from now, we don't know.

21          And the reason the debtor filed for bankruptcy was

22   not, as the FTC suggests, to avoid its enforcement proceeding,

23   but because we needed the money that was otherwise going to have

24   to be paid to the receiver.  And so the point of this bankruptcy

25   was to preserve that money for all creditors, not to have it

1    held indefinitely or paid to the receiver. And so we may be

2    faced with the necessity to ask the appropriate court, which

3    we've always thought was this one, to let us use the funds in

4    our bank account to preserve the estate.

5          THE COURT: Okay. Does anybody else want to say

6    anything? There are some papers in another room I need to get.

7          Okay. We'll be in a recess for a couple minutes. go

8    off the record. Don't rise, please.

9        (Recess taken from 4:01 p.m. to 4:05 p.m.)

10          THE CLERK: Please rise.

11          THE COURT: I have a question for the FTC.

12          MR. MORA: Yes, Your Honor. Michael Mora here.

13          THE COURT: As you can see, this is a very difficult

14    issue and we're struggling with it because I sincerely believe

15    that these are likely property of the estate, these funds.

16          If I require by order the debtor to keep the funds

17    here in a blocked account and don't specifically enjoin your

18    contempt proceeding, do you have any basis to go after the

19    debtor for contempt?

20          In other words, do I have to enjoin you in order — in

21    order for you to leave the funds in the blocked account here?

22          MR. MORA: I'm sorry, Your Honor. I'm not sure I

23    follow.

24          THE COURT: Well, let's say I issue an order ordering

25    the debtor to maintain the funds in a blocked account here and I

*The Court's Ruling*                                                                57

1   don't specifically enjoin anything in Florida?  Do you have a

2   basis to pursue contempt, given that the debtor is merely

3   following the order of this Court?

4          MR. MORA:  Well, Your Honor, the — I think the only

5   way I can answer that is the basis for the civil contempt action

6   before the Florida District Court is Integretel's failure to

7   turn over funds that they were originally required to turn over,

8   you know, almost a year and a half ago now.  So that contempt

9   would still exist.

10         THE COURT:  What do you mean it would still — you mean

11  the historical contempt would still exist, but the future

12  contempt prospectively, they'd be under an order from this Court

13  not to transfer the funds.

14         MR. MORA:  Well, the contempt is their original and

15  ongoing failure to turn over the money as required by the

16  District Court's order.

17         THE COURT:  Yeah.  But you haven't addressed my

18  question.  My question is if I enjoin them from transferring the

19  funds anywhere, then what?

20         MR. SINGER:  Your Honor, this is John Singer from the

21  Federal Trade Commission.  I'm not a hundred percent certain,

22  but I know that generally civil contempt, as I understand it, is

23  usually prospective.

24         THE COURT:  Mr. Singer, I'm sorry.  I — I understood

25  part of what you said, but not the rest.  If you could — are you

*The Court's Ruling*                                                    58

1   on some kind of a speaker —

2          MR. SINGER:  I'll —

3          THE COURT:  Are you on a speaker?

4          MR. SINGER:  I'll start over again, Your Honor, and

5   try to speak up.  I think I faded out.  I apologize.  My voice

6   faded.

7          Your Honor, the point which I'm simply saying is this:

8   I think — I think if we — if anyone were to move for contempt

9   against Integretel at this point to compel them to pay the $1.7

10  million over to the receiver, and Your Honor had entered an

11  order that said:  You cannot — Integretel, that money has to

12  stay here under — has to stay here in California, I would

13  presume if I were in Integretel's shoes, I would say:  Your

14  Honor, Judge Ryskamp in Florida, it's impossible for us out

15  comply with any contempt order because Judge Weissbrodt in

16  California has said we can't transfer the funds to you, —

17         THE COURT:  Right.

18         MR. SINGER:  — even if you wanted to.

19         THE COURT:  Right.

20         MR. SINGER:  And I think — I think your order keeping

21  it in California would essentially negate your order permitting

22  us to go forward with the contempt proceeding.  I think it's an

23  either or attachment —

24         THE COURT:  It would negate?  Wait, Mr. Singer, here's

25  the question.  If I issue an order requiring the debtor to keep

1    the funds here, is it your position that you would still have

2    the right to seek contempt against the debtor?

3            Because if you say to me that you agree with me or

4    that you agree that you wouldn't have the right to seek contempt

5    if I order the funds here, until my order is reversed, if it is,

6    if it's overturned then, you know, that's a different story, but

7    as long as my order were in effect, that I don't have to

8    specifically enjoin you from doing anything.  I can merely order

9    the debtor to keep the funds here based on the debtor's request

10   for a preliminary injunction.  If I can do that and not enjoin

11   you, I would prefer to do that.

12           MR. SINGER:  Your Honor, I — I — I'm not sure of the

13   answer to that, Your Honor, because, as I said, I think they — I

14   think, and I don't claim expertise in this whole area, the

15   receiver may have a comment as well since he brought the motion,

16   but I would have concerns as to whether there would be an

17   impossibility defense.

18           THE COURT:  Right.

19           MR. SINGER:  Having said that, —

20           THE COURT:  And so — but the receiver is easier is

21   because the receiver has said if I block the funds the receiver

22   isn't going to oppose keeping the funds here.  But you're a

23   little more difficult, and so the question is if I block the

24   funds are you then going to go after the debtor for contempt.

25   If you say no, then — then that would be helpful.  Then I don't

1  have to enjoin you.

2           MR. SINGER:  Your Honor, I don't know that we — I

3  don't — I would have to speak to the receiver about that, but I

4  think the answer may be we may seek contempt, but they may have

5  a defense.  And that would be something that Judge Ryskamp would

6  have to determine.  So, no, I can't — I cannot assure Your Honor

7  that unless you — that if you don't enjoin us to keep the funds

8  in California, we would not seek — we would not seek a contempt

9  finding against Integretel in the Florida District Court.

10          MR. GOLDFARB:  Your Honor, Neal Goldfarb.  If I could

11  just say one thing —

12          THE COURT:  Yes.  But, Mr. Goldfarb, you need to speak

13  much more loudly and much more directly into your phone.

14          MR. GOLDFARB:  I'm sorry.  Is that better?

15          THE COURT:  Yes.

16          MR. GOLDFARB:  Yes.  Just — I wanted to just point out

17  one thing that happened in the Florida litigation when we moved

18  before Judge Ryskamp for a stay pending appeal, the motion was

19  what Judge Ryskamp, quote, conditionally granted, the condition

20  being that we pay the money to the receiver but then the

21  receiver hold it in a segregated account pending the Eleventh

22  Circuit's decision.  So that's — I just wanted to make the Court

23  aware.  I don't know if the Court's aware of that aspect of the

24  procedural history, that the Court, you know, apparently was

25  willing to stay, you know, other enforcement efforts and other

*The Court's Ruling*                                                    61

1   contempt proceedings, apparently, if the funds were — were held

2   by the receiver, you know, pending the decision.

3            THE COURT:  All right.  Okay.

4            MR. SINGER:  Your Honor?

5            THE COURT:  Yes.

6            MR. SINGER:  I would simply like to say that actually

7   the order was essential on September 14th to pay the $1.7

8   million to the receiver or be held in contempt.  And that is

9   correct — what Mr. Goldfarb says is correct but not especially

10  remarkable, because essentially by paying the money to the

11  receiver to be held by the receiver is what — was a choice:

12  Contempt or pay the money over.  I'm not quite sure what — I'm

13  not sure Mr. Goldfarb made a particularly remarkable point

14  there, but if Your Honor feels differently, that's your —

15           THE COURT:  I don't understand what you just said.

16           MR. SINGER:  Okay.  Well, —

17           THE COURT:  You sort of went round and about with

18  that, and I don't understand what you just said.

19           MR. SINGER:  I apologize, Your Honor.

20           THE COURT:  Can you explain what you just said?

21           MR. SINGER:  I'll try.  What I'm saying is, Your

22  Honor, that that was the — that's exactly what the September

23  14th order was, was pay the money to the receiver or — within

24  ten days — or say why you shouldn't be held in contempt.  I

25  don't think that — that's what contempt — what a show-cause

1  order is.  And I'm not quite sure what point Mr. Goldfarb was

2  making.

3      MR. GOLDFARB:  I'm also not sure that's exactly what

4  the Court said, meant by the show-cause order.  It's not — it's

5  not that clear to me.

6              THE COURT'S RULING, FURTHER

7      THE COURT:  Okay.  All right.  Ladies and gentlemen,

8  I'm not going to let the funds out of California.  The debtor is

9  enjoined from, based on all the findings of fact and conclusions

10 of law, which may make sense for me to repeat, the debtor is

11 enjoined from letting the funds out of California.  He has to

12 keep them in a blocked — the debtor has to keep them in a

13 blocked, interest-bearing account.  If they're not in an

14 interest-bearing account they should be moved to an interest-

15 bearing account.

16      The — and the receiver, I guess, under the

17 circumstances has to be enjoined from proceeding with the

18 contempt proceedings because the receiver wants to take action

19 which would force the debtor to transfer the funds, which this

20 Court is ordering to be retained.  And so I'm not limiting the

21 findings of fact and conclusions of law to distribution by the

22 receiver.  I'm enjoining the debtor from — I'm enjoining the

23 receiver from pursuing the contempt proceedings and I'm

24 directing the debtor to maintain the funds in the blocked

25 account.

*The Court's Ruling, Further*                                             63

1    MR. OETZELL:  Your Honor, are they to remain there

2    until the Eleventh Circuit rules?

3    THE COURT:  They're to remain there pending further

4    order of the Court.

5    MR. OETZELL:  Your Honor, —

6    MR. SACKS:  Your Honor, this is Steven Sacks.  Are you

7    enjoining both the receiver and the FTC from proceeding with

8    contempt —

9    THE COURT:  Yes, both.  Both.

10   MR. OETZELL:  Your Honor, —

11   THE COURT:  Is this Mr. Oetzell?

12   MR. OETZELL:  Yes.  Yes.  Does this — is this the

13   broad language that we had in the TRO including suggesting, et

14   cetera?  Because this —

15   THE COURT:  Yes.

16   MR. OETZELL:  — this makes it quite impossible for us

17   to operate as a receiver and fulfill our duties as receiver — as

18   the Court has —

19   THE COURT:  Well, in terms of the terms of the order,

20   Mr. Oetzell, you'll have to — we'll have to have a separate

21   hearing on that.  I'm not capable of reconstructing what

22   arguments make sense in the context of a preliminary injunction.

23   You'll have — we'll work with that on the order.

24   The answer is that the order has to be such that —

25   that you're — that you're enjoined.  And — and I don't see any

1    reason why we wouldn't go back to the TRO order, which I

2    adjudicated with you present and — when I say "present," on the

3    phone, and the counsel for the debtor present.  I went through

4    the two orders and made decisions.  If — if things have changed

5    in the context of a preliminary injunction and you want to argue

6    that in the context of the order, that's fine.  But the order

7    goes into effect immediately, meaning today, even though we're

8    going to go through the ministerial task of preparing a written

9    order and — in order for me to give you an opportunity, if you

10   want that, to discuss it.

11           I'm concerned, Mr. Oetzell, that you'll see a window,

12   and I don't mean this in any way critically of you, but you'll

13   see a window, there won't be a written order and therefore you

14   can go do something.  If you tell me that you understand that

15   the order is effective immediately, then if it takes us a day or

16   two to work out the language, I'm willing to do that.

17           MR. OETZELL:  We understand that, Your Honor.

18   However, we need some assurance, particularly in respect of Mr.

19   Sacks' comments just a few minutes ago that that money is in

20   danger of being dissipated.

21           It was made clear in his comments beyond argument that

22   they intend to come in here and attempt to spend that money.

23   That's exactly what we have been fighting about.

24           THE COURT:  Well, but, Mr. Oetzell, I tried to work

25   this out consensually.  And I'm not — I don't know whether the

1    Eleventh Circuit's going to take two years to rule.   I — I

2    wanted to work this out consensually with you and the FTC,

3    giving you a very strong window of time before anything could

4    happen.   But the FTC said absolutely no.   The FTC wants a

5    decision.   Here's the decision.   If I could — if I could have

6    worked something out consensually with you, Mr. Oetzell, I would

7    have done that, as you can well tell from my behavior in this

8    context.

9              MR. OETZELL:   I understand, Your Honor.  But I of all

10   people in this courtroom have been cooperative throughout —

11             THE COURT:   But you —

12             MR. OETZELL:   — this — this situation.  You had a very

13   — a solution with this thing prior, and now we are being put in

14   the position where we had said we would not object to is not

15   happening.

16             THE COURT:   I understand, but you —

17             MR. OETZELL:   The money is now subject —

18             THE COURT:   But the FTC says they're the real

19   party-in-interest and they don't agree to anything.  So, Mr.

20   Oetzell, I have no criticism of you as a lawyer.  You're welcome

21   in my Court any time.  I understand what you want.  And you'll

22   just have to trust the situation to the extent you want to.  But

23   there's going to be appeal — an appeal anyway today — or I don't

24   mean the appeal's going to come today.  But I mean there's going

25   to be an appeal of my order today; the FTC has made that

1    perfectly clear.  Even if I had limited the order, the FTC made

2    it perfectly clear that they would appeal.  So —

3              MR. OETZELL:  Well, enjoin the FTC.

4              THE COURT:  Well, —

5              MR. OETZELL:  And let us go into the Florida Court

6    and, as — as Your Honor —

7              THE COURT:  But the FTC says that you're not the real

8    party-in-interest, that they're the real party-in-interest in

9    your suit.  I mean that's — that's what the FTC's position is,

10   Mr. Oetzell.

11             And so as — and I agree with you, that your positions

12   have been more cooperative in trying to work something out than

13   the FTC's.  I don't mean that by criticizing the FTC.  I'm not

14   criticizing the FTC.  They've taken a harder line.  They're less

15   willing to try to work something out.  And so there it is.

16             MR. OETZELL:  Okay.  Your Honor, I — I will have to

17   ask for a stay of — of the injunction.

18             THE COURT:  I understand and the stay is denied,

19   otherwise it would defeat the purpose of the injunction.

20             MR. MORA:  And we join that request, Your Honor.

21             THE COURT:  And I understand, Mr. Mora, and the stay

22   is denied, otherwise it would defeat the purpose of the

23   injunction.

24             MR. OETZELL:  Your Honor, —

25             THE COURT:  Now, Mr. Mora, the one thing I need from

1    you, so — I would just — Mr. Oetzell wants to talk to me about

2    the form of the order.  But I want you to agree that the order

3    is effective immediately so that I have time to work out

4    language with the parties.  If you don't, then perhaps the

5    solution would be to issue a preliminary injunction in the exact

6    form as the TRO so at least I have a written order in effect

7    immediately.

8            MR. MORA:  And we — we would much prefer the latter,

9    Your Honor, because we need to — we need to preserve our appeal

10   rights as well.

11           THE COURT:  I don't know why you wouldn't preserve

12   your appeal right if we got an order out in two days.  You would

13   prefer that I issue a PI in the form of the TRO?

14           MR. MORA:  Yes, Your Honor.

15           THE COURT:  All right.  So, Mr. — and so that's

16   inconsistent with what the receiver requests, but given that

17   that's what you want, then, Mr. Sacks, you should fax me

18   immediately the PI, having said that I issued my findings of

19   fact and conclusions of law, including the decisions today.

20           MR. SACKS:  This is Steven Sacks.  I can do that, Your

21   Honor.

22           THE COURT:  As well as the hearings on the 16th and

23   the 19th.

24           Now let me tell you that I would have preferred

25   another route to this if we possibly could have agreed to it.

*The Court's Ruling, Further*                                                68

1    And — but we obviously haven't been able to, so that's the

2    situation.

3         So you fax me a preliminary injunction today, Mr.

4    Sacks, in the next few minutes, and I'll issue it.

5         MR. OETZELL:  Your Honor, what are we going to do

6    about the December 7th hearing in respect of these — of these

7    funds?  This is going to be off calendar.

8         THE COURT:  Well, I assume that the debtor has told me

9    — the debtor has told me it doesn't need the December 7th

10   hearing, so we don't need a December 7th hearing.

11        Is that right, Mr. Sacks?

12        MR. SACKS:  Steven Sacks speaking.  That's correct,

13   Your Honor.  I do still want to proceed with amending the

14   complaint, however.

15        THE COURT:  All right.  Hold on a second.  I have to

16   consult about scheduling.

17        (Pause in the proceedings.)

18        THE COURT:  I was just corrected.  The comments that I

19   made that I'm incorporating are on the 16th and the 21st, not on

20   the 19th.  I apologize.

21        Now, Mr. Sacks, under the circumstances I don't really

22   see the emergency.  Why don't you use the December 7th time to

23   argue this amending-the-complaint business and why don't you set

24   it for summary judgment in January?

25        MR. SACKS:  Steven Sacks speaking.  December 7th would

1   be fine for amending the complaint, Your Honor, and we can

2   figure out a time from there for further proceedings.

3                    THE COURT:  Fine.  I have —

4           MR. MORA:  But, Your Honor, we don't — the FTC does

5   not consent to a motion to amend the complaint, though.

6                    THE COURT:  I understand.

7           MR. OETZELL:  And also, Your Honor, as far as the

8   summary judgment motion goes, we expect full discovery,

9   particularly since they've raised this issue of tracing.

10                   THE COURT:  Right.  I'm not going to set it now.

11  We'll talk about it on the 7th.

12          MR. OETZELL:  All right.

13                   THE COURT:  I would request that the parties get

14  together and file a joint status conference sheet by December 5,

15  telling me what your respective positions are regarding

16  scheduling of the summary judgment.  And to the extent you can

17  agree, great; to the extent you can't agree, lay it all out, so

18  when I come in on the 7th I'm fully prepared.  I'd actually like

19  it by the 5th at noon.

20          Okay.  And with respect to — so with respect to

21  summary judgment, we'll be talking about that at a later time.

22          With respect to the FTC's nonconsent to scheduling a

23  hearing on December 7th, I understand.  And the — the objection

24  is noted for the record.

25          Now, Mr. Sacks, you said you can get your papers out

*The Court's Ruling, Further*                                    70

1    tomorrow.  That'll be fine.  Get your papers out tomorrow.  And

2    the FTC can have till the 30 — till the 3rd to respond.  And any

3    reply will come by the debtor by the 4th.

4              MR. MORA:  Thank you, Your Honor.

5              MS. DIEMER:  Your Honor?

6              THE COURT:  Yes.

7              MS. DIEMER:  Could I just ask that if the FTC and the

8    receiver do take any action related to appeal of this order that

9    they include POL on any service list?

10             THE COURT:  Could you do that, please, Mr. Oetzell and

11   Mr. Mora?

12             MR. OETZELL:  Sure.

13             THE COURT:  Thank you very much.

14             MR. MORA:  Yes, Your Honor.

15             THE COURT:  All right.  Well, thank you.  Court is

16   adjourned.

17             And, Mr. Sacks, get me your injunction.

18             Mr. Oetzell, I understand your concern.  And if you

19   want to move to amend the order because the order is a

20   restriction in a way that you feel like you can't live with,

21   I'll consider it at the time.

22             MR. OETZELL:  I understand, Your Honor.  My concern is

23   also that this does not —

24             THE COURT:  I can't hear you.  You've got to talk more

25   loudly and into the mic.

1    MR. OETZELL:  I understand Your Honor.  Thank you.

2  But my concern is also that this does not in any way address the

3  problems of inconsistent results as between the District Court,

4  the Eleventh District and this Court.

5    THE COURT:  The Eleventh Circuit.  Yes, well, I — the

6  only thing I'm doing is deciding likelihood of success on the

7  merits and, you know, the standards for an injunction in order

8  to keep the funds blocked.  And I understand that it's your

9  position that that's somehow inconsistent with the District

10  Court or — or the Eleventh Circuit's nonaction.  The Eleventh

11  Circuit has only denied a stay but hasn't issued findings of

12  fact or conclusions of law in terms of why it did that.  Isn't

13  that correct, Mr. Oetzell?

14    MR. OETZELL:  That is correct, Your Honor.

15    THE COURT:  Okay.

16    MR. OETZELL:  But it also has taken upon itself a

17  rather large raft of issues.

18    THE COURT:  I understand.  Thank you, sir, very much.

19    MR. OETZELL:  Thank you, Your Honor.

20    THE COURT:  Court is adjourned.

21    [COUNSEL]:  Thank you, Your Honor.

22    (The hearing was adjourned at 4:27 o'clock p.m.)

23                           —oOo—

24

25

State of California            )
                              )        SS.
County of San Joaquin         )
                              )

I, Susan Palmer, certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages, of the digital recording provided to me by the United States Bankruptcy Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify I am not a party to nor in any way interested in the outcome of this matter.

I am a Certified Electronic Reporter and Transcriber through the American Association of Electronic Reporters and Transcribers, Certificate No. 00124. Palmer Reporting Services is approved by the Administrative Office of the United States Courts to officially prepare transcripts for the U.S. District and Bankruptcy Courts.

Susan Palmer
Palmer Reporting Services

Dated December 10, 2007

**RER - 84**

1  HOWARD KOLLITZ (State Bar No. 059611)
   WALTER K. OETZELL (State Bar No. 109769)
2  STEVEN J. SCHWARTZ (State Bar No. 200586)
   DANNING, GILL, DIAMOND & KOLLITZ, LLP
3  2029 Century Park East, Third Floor
   Los Angeles, California 90067-2904
4  Telephone: (310) 277-0077
   Facsimile: (310) 277-5735
5  Email:    woetzell@dgdk.com
             sschwartz@dgdk.com
6
   JEFFREY C. SCHNEIDER (pro hac vice)
7  TEW CARDENAS LLP
   Four Seasons Tower, Fifteenth Floor
8  1441 Brickell Avenue
   Miami, Florida 33131-3407
9  Telephone: (305) 539-2481
   Facsimile: (305) 536-1116
10 Email:    jcs@tewlaw.com

11  Attorneys for Creditor, David R. Chase, Federal Receiver of
    Access One Communications, Inc. and Network One
12  Services, Inc.

**UNITED STATES BANKRUPTCY COURT**

13

**NORTHERN DISTRICT OF CALIFORNIA**

14

**SAN JOSE DIVISION**

15

| | |
|---|---|
| 16 In re | ) Case No. 07-52890-ASW |
| 17 THE BILLING RESOURCE, dba Integretel, a California corporation, | ) [Chapter 11] |
| 18                          Debtor. | ) Adv. No. 07-05156 |
| 19 [Taxpayer's Identification No. 33-0289863] | ) |
| 20 _____ | ) |
| 21 THE BILLING RESOURCE, dba INTEGRETAL, a California corporation, | ) **FEDERAL RECEIVER'S FOURTH** |
| 22                          Plaintiff, | ) **REQUEST FOR JUDICIAL NOTICE IN ADVERSARY PROCEEDING** |
| 23          vs. | ) [No Hearing Set] |
| 24 FEDERAL TRADE COMMISSION, and DAVID R. CHASE, not individually, but solely | ) |
| 25 in his capacity as receiver for Nationwide Connections, Inc., Access One Communications, | ) |
| 26 Inc., Network One Services, Inc., etc., et al., | ) |
| 27                          Defendants. | ) |
| 28 | ) |

-1-

ELECTRONICALLY
FILED:
Date: 12|14|07
Docket No: 98

1    **TO THE HONORABLE ARTHUR S. WEISSBRODT, UNITED STATES**

2 **BANKRUPTCY JUDGE:**

3       Pursuant to Rule 201(d) of the Federal Rules of Evidence, David R. Chase, the duly

4 appointed, qualified and acting Receiver serving under the authority of the United States District

5 Court for the Southern District of Florida in pending case number 06-80180-CIV-RYSKAMP,

6 entitled <u>Federal Trade Commission vs. Nationwide Connections, Inc., Access One</u>

7 <u>Communications, Inc., Network One Connections, Inc., et al.</u> (the "District Court Action"), hereby

8 requests that this Court take judicial notice of the following documents, which evidence the fact

9 that The Billing Resource, dba Integretel (the "Debtor") is attempting to relitigate the same issues

10 by its Amended Complaint as have already been litigated in the District Court Action and are now

11 on appeal to the United States Court of Appeals for the Eleventh Circuit:

12      1.     Amended Complaint for Declaratory Relief, Temporary Restraining Order and

13 Preliminary Injunction and to Determine Validity, Priority and Extent of Interest in Property (the

14 "Amended Complaint"), attached as Exhibit "A" to the Declaration of Steven B. Sacks in Support

15 of Debtor's Motion for Leave to File an Amended Complaint, filed in Adv. No. 07-05156 on

16 November 27, 2007. A copy of the Amended Complaint is attached hereto, marked as Exhibit

17 "13".

18      2.     "Brief for Appellant" filed by the Debtor on December 3, 2007 in the United States

19 Court of Appeals for the Eleventh Circuit in <u>Federal Trade Commission v. Nationwide</u>

20 <u>Connections, Inc.,</u> Consolidated Appeal Nos. 06-16635EE and 07-14531-EE, a copy of which is

21 attached hereto, marked as Exhibit "14".

22

23 Dated: December 14, 2007          DANNING, GILL, DIAMOND & KOLLITZ, LLP

24

25

26              By: _____

                    STEVEN J. SCHWARTZ

27                     Attorneys for David R. Chase, Court-

                    Appointed Receiver of Access One

28                     Communications, Inc., and Network One

                    Services, Inc.

EXHIBIT "13"

1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
2    Including Professional Corporations
   MICHAEL H. AHRENS, Cal. Bar No. 44766
3  STEVEN B. SACKS, Cal. Bar No. 98875
   JEFFREY K. REHFELD, Cal. Bar No. 188128
4  ORI KATZ, Cal. Bar No. 209561
   Four Embarcadero Center, 17th Floor
5  San Francisco, California 94111-4106
   Telephone:    415-434-9100
6  Facsimile:    415-434-3947
   email: mahrens@sheppardmullin.com
7

8  Attorneys for The Billing Resource, dba Integretel

9                 UNITED STATES BANKRUPTCY COURT

10                NORTHERN DISTRICT OF CALIFORNIA

11                      [SAN JOSE DIVISION]

12  In re                                    Case No. 07-052890

13  THE BILLING RESOURCE, dba
    INTEGRETEL, a California corporation,    Chapter 11

14
                  Debtor.
15
    Tax ID: 33-0289863
16

17  THE BILLING RESOURCE, dba
    INTEGRETEL, a California corporation,

18                                           Adv. Proc. No. 07-05156
                  Plaintiff,
19                                           **AMENDED COMPLAINT FOR
        v.                                   DECLARATORY RELIEF,
                                             TEMPORARY RESTRAINING ORDER
20  FEDERAL TRADE COMMISSION, and            AND PRELIMINARY INJUNCTION
    DAVID R. CHASE, not individually, but    AND TO DETERMINE VALIDITY,
21  solely in his capacity as receiver for   PRIORITY AND EXTENT OF
    Nationwide Connections, Inc., Access One INTEREST IN PROPERTY**
22  Communications, Inc., Network One Services,
    Inc., 411TXT, Inc., CELL-INFO-USA, INC.,
23  Enhanced Billing Services, Inc., Toll Free
    Connect, Inc., Cripple Creek Holdings, LLC,
24  Built to Last, LLC, Not Fade Away, LLC, He's
    Gone, LLC, The Other One, LLC, Turn on
25  Your Love Light, LLC, China Cat Sunflower,
    LLC, Lazy River Road Holdings, LLC,
26

27                Defendant.

28

W02-WEST:5SS1\400435989.4

AMENDED COMPLAINT FOR DECLARATORY
RELIEF, TEMPORARY RESTRAINING ORDER, AND
PRELIMINARY INJUNCTION

**EXHIBIT    13**