## Introduction and Statement of Issues

Federal agencies often use equity receiverships as an enforcement tool. This appeal raises important questions about the scope of the courts' power in such cases.

- It raises questions about the power of federal courts to issue injunctions that bind nonparties who are not acting in concert with the enjoined defendants, who were not given a prior opportunity to be heard, and as to whom there was no showing of even probable cause to believe that they violated the law.

- It raises the question whether a receiver can assert property rights beyond those the receivership entities could have asserted, thereby bypassing the terms and limitations of the receivership entities' contracts and also depriving the defendant of a jury trial on what would otherwise be an action at law for breach of contract.

- It raises the question whether an order requiring a third party to pay money to the receiver is automatically stayed when the entity against which the order is directed goes into bankruptcy.

This appeal arises out of an FTC enforcement action against two of appellant Integretel's former clients. (We refer to the appellant by its trade name, rather than its corporate name, "The Billing Resource.") The former clients were put into receivership and Integretel was served with an injunction requiring it to turn over any

assets in its possession that belonged to the former clients. The receiver claimed that Integretel owed the former clients more than $1 million that had been withheld as reserves under their contracts and demanded that those amounts be turned over as receivership assets. The receiver contended that he was not bound by the arbitration and venue-selection provisions in the former clients' contracts and that his claim was equitable even though it was in substance a claim at law to collect an alleged debt.

The district court ruled for the receiver. Even though Integretel had not set aside any specific funds as the reserves for the former clients and even though there was no evidence that Integretel was holding any funds traceable to the reserves, the court concluded that Integretel held the reserve "funds" on the former clients' behalf or for their benefit. It ordered Integretel to pay the amount of the reserves to the receiver.

Faced with this order, Integretel sought protection in bankruptcy. The court then held, without allowing Integretel an opportunity to be heard, that the automatic stay did not bar the enforcement of its order. In reaching that conclusion, the court declared that the reserve "funds" were not part of Integretel's bankruptcy estate.

The specific issues for this Court to decide are as follows.

1. Were the preliminary injunction and an earlier TRO invalid to the extent they imposed liabilities and obligations on Integretel, where Integretel was not enjoined in its capacity as a party, it was not affiliated with the enjoined defendants or acting in concert with them, it had no prior notice or opportunity to be heard, there was no

-2-

showing that it had engaged in conduct entitling the FTC to injunctive relief, it was not in possession of a specific *res* that was claimed to be receivership property, and it disputed the Receiver's claim.

2. Did the district court err in deciding that Integretel holds the reserve "funds" on the former clients' behalf or for their benefit and that Integretel is required to turn pay the amount of the reserves to the receiver? Specifically—

- Did the court err in determining that the receiver could assert rights other than (and contrary to) those granted by the receivership entities' contracts?

- If so, should the court have held that the receiver is bound by the contracts' arbitration and forum-selection provisions and that if the receiver's claims were not arbitrable, Integretel was entitled to trial by jury?

- Should the district court have held that the sums at issue were not due and owing under the contract, that the contracts did not grant the former clients a property interest, and that there was no *res* to which the asserted property interest could attach?

3. Did the district court err in deciding that enforcement of its order was not subject to the Bankruptcy Code's automatic stay and that the reserve "funds" are not property of Integretel's bankruptcy estate?

0052
RER-84    3673

## Statement of the Case

### A. Nature of the case, course of proceedings, and disposition below

The FTC sued two of Integretel's former clients, along other defendants, alleging that they had violated the FTC Act by causing consumers to be billed for fraudulent collect-call charges.[6] The FTC obtained a TRO, and subsequently a preliminary injunction and an amended preliminary injunction, under which the former clients were put into receivership.[7]

When Integretel rejected the receiver's demand that it pay him the amount of the reserves, the receiver moved that Integretel be required to show cause why it should not be held in contempt of court.[8] Integretel opposed that motion and also moved to amend the injunctions and to stay litigation of contract-related issues pending arbitration.[9]

The district court granted the receiver's motion and denied Integretel's. In addition, although no turnover motion had been filed and Integretel had not been

---

6. R3.

7. R18; R29; R233.

8. R243; R246.

9. R294; R296; R363.

0053
RER-84    3674

held in contempt, it held that the disputed amounts are receivership assets and ordered Integretel to pay them to the receiver.[10]

Because making the required payment would have jeopardized its ability to remain in business and would have preferred the Receiver over similarly situated creditors, Integretel filed for bankruptcy protection.[11] The district court initially declared that litigation against Integretel was automatically stayed under the Bankruptcy Code.[12] But the next day, without allowing Integretel an opportunity to be heard, the court vacated its stay order and held that the automatic stay did not apply.[13]

## B.  Statement of facts

**Integretel's services and the contracts.** Integretel is a telecommunications billing aggregator. It has contracts with local phone companies ("Telcos") whereby it acts as an intermediary between the Telcos and its clients—independent telecommunications companies and other service providers—so that its clients can have their charges appear on consumers' local phone bills. The clients submit their billing information to Integretel, which forwards the data to the Telcos to be included on their bills. When the Telcos make payments to Integretel, the payments are based on the

---

10. R610.

11. R612.

12. R617.

13. R619.

0054
3675
RER-84

combined billings and collections for all of Integretel's clients, without any client-by-client breakdown. That allocation is performed by Integretel, which then pays its clients the amounts it determines are due under their respective contracts.[14]

The former clients here are Network One Services, Inc. and Access One Communications, Inc. ("the Former Clients"). Under the customer contracts, Integretel is allowed to withhold from the Former Clients any amounts Integretel allocates to what is called the "IGT Reserve." The IGT Reserve is defined as "an amount withheld, from the amount otherwise owed to Client with respect to Billing Transactions, to protect IGT [Integretel] from credit losses or otherwise to cover reserves or offsets, other than Uncollectibles imposed by a Telco."[15]

The contracts permit Integretel to adjust the reserve levels in its reasonable discretion.[16] They also limit the Former Clients' entitlement to payment on account of the reserves to "any excess IGT Reserve as determined from time to time[.]"[17] Unless Integretel decides in its discretion to lower the reserve levels and release sums previously booked as reserves, the Former Clients' right to be paid on account of any such sums is contingent on various factors. As Integretel's president explained in a

---

14. R296 at 2.

15. R296 (Dawson Decl.) at 14ecf, 19ecf, 43ecf, 51ecf. (The designation "ecf" indicates that the page number cited is the number in the ECF header.)

16. R296 (Dawson Decl.) at 19ecf § 5(b), 51ecf § 5(b).

17. R296 (Dawson Decl.) at 19ecf § 6, 51ecf § 6.

0055
RER-84    3676

declaration, "the amount the client is entitled to, if any, can only be finally determined after all expenses, costs, and other charges against the reserve are fully and finally taken account of." He further explained that until the final accounting is completed, the IGT Reserve is merely "a running balance that does not result in an amount due[,]" and that the final accounting for the Former Clients has not yet occurred.[18]

The contracts do not require sums allocated to the IGT Reserve to be segregated or otherwise earmarked; nor do they require Integretel to keep cash reserves sufficient to cover the amount of the IGT Reserve as shown on Integretel's books. It is undisputed that the IGT Reserves are merely bookkeeping entries and that Integretel never set aside an identifiable pool of money constituting the IGT Reserves for the Former Clients.[19]

The Former Clients' contracts include indemnification provisions under which the clients are required to indemnify Integretel from any liabilities, claims, and attorney's fees arising from their breach of the contract or from their billing transactions.[20] In addition, each contract includes a provision requiring disputes that cannot be resolved by negotiation to be arbitrated.[21] The only litigation allowed under this

---

18. R296 (Dawson Decl.) at 2.

19. *Id.* at 3.

20. R296 (Dawson Decl.) at 11ecf, 35ecf-36ecf.

21. R296 (Dawson Decl.) at 12ecf, 38ecf, 39ecf.

0056
RER-84    3677

provision is "an action seeking a temporary restraining order or injunction relating to the purposes of this Agreement, or a suit to compel compliance with this dispute resolution process." Finally, the contracts include a forum-selection clause under which any allowable litigation must be brought in California.[22]

Integretel provided services to Network One for about a month in 2003 and to Access One for seven months in late 2004 and early 2005. In both cases, Integretel stopped providing services after questions arose about the validity of the billing transactions, long before the FTC took any action. Once Integretel did so, payments to the Former Clients were discontinued and all further receipts allocable to their transactions were credited on Integretel's books to the IGT Reserve.[23]

**The FTC lawsuit.** In February 2006 the FTC sued the Former Clients and others associated with them (collectively, "the Nationwide Defendants") for violating the FTC Act by causing consumers to be billed for fraudulent collect-call charges.[24] The complaint sought preliminary and permanent injunctive relief and monetary relief in the form of "restitution, the refund of monies paid, and the disgorgement of ill-gotten monies."[25]

---

22. *Id.*

23. R296 (Dawson Decl.) at 3; R628 at 25ecf.

24. R3.

25. *Id.*

0057

RER-84    3678

The conduct by the Former Clients that was alleged in the complaint constituted a violation of their contracts with Integretel, which required the Former Clients to comply with all applicable laws and prohibited them from billing for unauthorized charges.[26] Integretel therefore has claims against the Former Clients under the contracts' indemnification provisions. In addition, it can assert tort claims against them for having misrepresented themselves as legitimate service providers.

The FTC did not originally name Integretel as a defendant, but it later amended its complaint to assert claims against Integretel and other aggregators who we will refer to collectively as "BSG."[27] Integretel denies that it violated the FTC Act and contends, among other things, that it did not know (and could not reasonably have known) that the Former Clients' charges were fraudulent. The district court has not yet considered the merits of the FTC's claims against Integretel. There has been no finding that Integretel violated the law or even that the FTC is likely to prevail. The FTC has not moved for interim relief against Integretel.

**The TRO.** On the same day that the FTC filed its original complaint, it sought and received a temporary restraining order against the Nationwide Defendants.[28] The TRO restrained the Nationwide Defendants from continuing to engage in fraudulent

---

26. R296 (Dawson Decl.) at 16-17ecf, 46-48ecf.

27. R255.

28. R18.

-9-

billing, froze their assets, and appointed a temporary receiver ("the Receiver") for the Former Clients and Nationwide Connections, the other corporate defendant.[29] The Receiver was authorized to collect those defendants' assets.[30]

Several provisions of the TRO are relevant. *First,* the TRO required the Nationwide Defendants (but no one else) to turn over to the Receiver "[a]ll assets of the Receivership Defendants[.]"[31] *Second,* the TRO required all billing agents who were served with the order to "cooperate with all reasonable requests of the FTC and the Receiver relating to implementation of this Order, including transferring funds at the Receiver's direction."[32] *Third,* the TRO required anyone served with the order who "holds, controls, or maintains custody of any account or asset of any Defendant" to provide a sworn statement setting forth certain information about "each such account or asset titled in the name . . . of a Defendant, or held on behalf of, or for the benefit of, a Defendant[.]"[33] *Fourth,* the TRO required anyone served with the TRO to "fully cooperate with and assist the Receiver."[34]

---

29. R18 at 10.

30. R18 at 10-11.

31. R18 at 15-16, § X.A.1.

32. R18 at 17, § XI.

33. R18 at 8-9, § VI.

34. R18 at 14, § IX.

-10-

The TRO was served on Integretel.[35] Because the TRO's turnover provision applied only to the Nationwide Defendants, it imposed no duties on Integretel, which was not then a defendant. Integretel received no requests to turn over any funds to the Receiver while the TRO was in effect.[36]

Integretel's president, to whom the TRO was sent, did not believe that Integretel held any funds belonging to the Former Clients, that it held any funds on behalf of the Former Clients or for their benefit, or that any money was then due and owing to the Former Clients.[37] He wrote to the FTC stating that the Former Clients "would be entitled to certain proceeds from billing transactions" but that each entity "is in default of [its] contract and, therefore, no amounts are currently due and owing."[38] He also said, "To the extent proceeds become due to [the client] in the future, we will establish a separate bank account into which such funds will be deposited and notify your office accordingly."[39]

**The preliminary injunctions—original and amended.** On March 8, 2006—two days after Integretel's letter to the FTC—the TRO was superseded by a prelim-

---

35. R296 (Dawson Decl.) at 4.

36. R296 (Dawson Decl.) at 5.

37. R296 (Dawson Decl.) at 4-5.

38. R296 (Dawson Decl.) at 97ecf.

39. R296 (Dawson Decl.) at 97ecf.

0060

RER-84    3681

inary injunction, which made the Receiver's appointment permanent.[40] That injunction was identical to the TRO in all relevant respects except one: the turnover provision was broadened to cover not only the original defendants, but also "any person or entity served with a copy of this Order[.]"[41] Integretel had no advance notice that this change would be made.[42]

Unlike the TRO, this injunction was not served on Integretel.[43] Thus, Integretel was not subject to any order of the district court until seven months later, when it was served with an amended preliminary injunction.[44]

The amended preliminary injunction was identical to the original preliminary injunction in all relevant respects.[45] It had been entered after the FTC amended its complaint to name Integretel as a defendant but before the amended complaint was served. The motion seeking entry of the amended injunction was filed before Integretel was named as a defendant, and Integretel was not given notice of it.[46]

---

40. R29.

41. R29 at 16, § XI.

42. R296 (Dawson Decl.) at 5.

43. R296 (Dawson Decl.) at 5; R394 at 6 n.7.

44. R296 (Gordin Decl.) at 3-4; R296 (Lancellotta Decl.) at 1-2.

45. R233.

46. R176; R296 (Gordin Decl.) at 4.

0061
RER-84    3682

**The dispute over the reserves.** During the summer of 2006, after the TRO had expired but before Integretel was served with the amended preliminary injunction, Integretel's counsel was in communication with the FTC regarding a subpoena the FTC had served on Integretel in this case.[47] Several times during those discussions he mentioned the IGT Reserve for the Former Clients.[48] On August 29, he informed the FTC of the reserve amounts shown on Integretel's books.[49] However, when Integretel's counsel mentioned the reserve again a month later, counsel for the FTC professed surprise.[50] A few days later, the FTC claimed in a letter that it had learned about the reserves "recently" and asserted that Integretel should pay the amount of the reserves to the Receiver.[51] Integretel disputed the FTC's position,[52] but on October 13—only three days after Integretel was served with the amended preliminary injunction—the Receiver moved that Integretel be ordered to show cause why it

---

47. R296 (Gordin Decl.) at 1-3.

48. *Id.*

49. *Id.* at 2-3.

50. *Id.* at 3.

51. *Id.* at 6.

52. *Id.* at 3.

0062

RER-84      3683

should not be held in contempt for allegedly violating the TRO and the amended preliminary injunction.[53]

The Receiver contended that Integretel owed the Former Clients the amounts it had booked as reserves and that Integretel was required under the TRO and amended preliminary injunction to pay those amounts to the Receiver. Although the Receiver argued that the reserve amounts were receivership assets, he did not identify any particular *res* as the subject of his claim and did not attempt to show that Integretel was holding any money that could be traced to the Former Clients' transactions.

In a declaration in opposition to the Receiver's motion, Integretel's president explained that Integretel faced the risk of multiple liability arising from the claim being asserted by the FTC, from claims that might be asserted by Telcos (including a potential indemnification claim that had already been asserted by Sprint), and from possible consumer class actions.[54] Integretel argued that if it were compelled to pay the Receiver, most of that money would probably be used for purposes other than paying consumer claims arising from the transactions Integretel had processed, such as the Receiver's administrative fees and expenses, claims from transactions processed by BSG, and the receivership defendants' other debts.[55]

---

53. R243; *see also* R246.

54. R296 (Dawson Decl.) at 6-7.

55. R296 at 39-40.

0063
RER-84    3684

In addition to opposing the Receiver's motion, Integretel moved to modify the TRO and preliminary injunctions on the ground that under the Receiver's interpretation, several provisions of those orders were invalid.[56] (Integretel also relied on that argument in opposing the Receiver's motion.) Integretel subsequently moved under the Federal Arbitration Act to stay litigation of any contract-related issues pending arbitration.[57] In addition, Integretel appealed the amended preliminary injunction;[58] that appeal was stayed pending the district court's decision on Integretel's motion to modify.

**The Omnibus Order.** In September 2007, the district court decided the motions discussed above (as well as one relating to BSG) in an "Omnibus Order."[59] The Receiver's show-cause motion was granted and both of Integretel's motions were denied. The court directed Integretel to "provide a sworn statement identifying the amount of reserves as of the issuance of the TRO" and ordered that "these funds shall be placed in a segregated Receivership account."[60] The court did so despite the fact that the Receiver had not filed a turnover motion, that the court had not held a

---

56. R294; R363.

57. R363.

58. R341.

59. R610.

60. R610 at 10.

0064

RER-84    3685

show-cause hearing or followed the normal procedures under the Federal Rules, and that there was no finding that Integretel was in contempt.

The court's order was issued based on the conclusion that Integretel held the reserves "on behalf of, or for the benefit of" the Former Clients and that those amounts were therefore receivership assets.[61] The court cited no contractual provision supporting this conclusion. Instead, it relied on its general equitable power and its *in rem* jurisdiction over receivership assets.[62] However, the court did not identify any particular *res* as having been held for the Former Clients' benefit or as being subject to the Receiver's supposed interest. Nor did it consider whether Integretel still held any funds that could be traced back to the Former Clients' transactions.

**The bankruptcy filing and the rulings concerning the automatic stay.** Faced with the order to pay the Receiver, Integretel filed for bankruptcy protection in California (where it is based) two days after the Omnibus Order was entered.[63] Four days later, the FTC faxed the district court's chambers an emergency motion seeking a "clarification" that the automatic stay did not apply and told the court's law clerk

---

61. R610 at 3-5.

62. R610 at 4-5, 7.

63. *In re The Billing Resource*, No. 07-52890 (Bankr. N.D. Cal.); *see* R612.

0065
RER-84    3686

about the motion by phone.[64] Several hours later, the district court entered an order declaring that the case "is subject to the automatic stay set forth in 11 U.S.C. § 362."[65]

But the next day, the court reversed itself. It vacated the previous day's stay order, granted the FTC's motion, and held that the automatic stay did *not* apply.[66] (We refer to this as "the Clarification Order.") The court acted without notifying Integretel that it was reconsidering its stay order, and without giving Integretel an opportunity to be heard.

In addition to vacating the stay, the Clarification Order made several statements about the Omnibus Order. It described that order as having held that the reserve amounts "are the property of the receivership estate" and that they "are neither the property of the 'bankruptcy estate' nor Integretel."[67] The court did not explain how the Omnibus Order could have drawn any conclusions about Integretel's bankruptcy estate given that the order had been issued before the bankruptcy was filed. The court also did not identify the property that was supposedly excluded from the bankruptcy estate or consider whether Integretel still held any funds traceable to the Former Clients' billing transactions.

---

64. R618, R628 at 52ecf.

65. R617.

66. R 619.

67. R619 at 1, 4.

0066
RER-84    3687

The Clarification Order also described the Omnibus Order as having required payment of "the current reserve funds, amounting to $1,762,762.56" and as having required payment to be made "immediately[.]"[68] That description was inaccurate. The Omnibus Order had not said how much was to be paid or when payment was due. Nor had it directed Integretel to pay the "current" reserve amount. Its only reference to the amount of the reserve was to the amount "as of the issuance of the TRO[.]"[69]

Integretel immediately appealed the two orders.[70] It sought a stay from this Court, which initially granted a temporary stay, but ultimately denied Integretel's motion and terminated the temporary stay.

**The bankruptcy-court injunction.** Acting under 11 U.S.C. § 105, which authorizes bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]," the bankruptcy court has preliminarily enjoined the Receiver and the FTC from enforcing the Omnibus Order and Clarification Order.[71] The bankruptcy court held that under

---

68. *Id.*

69. R610 at 10; R296 (Dawson Decl.) at 7.

70. R620.

71. Amended preliminary injunction (DE 78), *The Billing Resource v. FTC (In re the Billing Resource)*, Adv. Pro. No. 07-5156 (Bankr. N.D. Cal. Nov. 28, 2007) (Addendum hereto at A17), *appeal pending*, No. C-07-05758 RMW (N.D. Cal. filed Nov. 30, 2007). *See also* Tr. of telephonic hearing at 16-24 (DE 60), *The Billing Resource v. FTC, supra* (Nov. 5, 2007) (findings and conclusions in support of TRO) (Addendum hereto at A7-16). This injunction is not inconsistent with this Court's denial

-18-

0067

RER-84    3688

28 U.S.C. 1334(e) it has exclusive jurisdiction to determine what is or is not property of the estate and that Integretel is likely to succeed in showing that the funds claimed by the Receiver belong to Integretel's bankruptcy estate. In that regard, it has said that it believes the Receiver will eventually be held to have no more than an unsecured claim and that whatever interest the Omnibus Order may have granted to the Receiver did not divest Integretel of its interest in the commingled funds in its bank accounts. The bankruptcy court has also expressed considerable doubt as to the district court's holding that the Omnibus Order is not subject to the automatic stay.[72]

## C. Standard of review

The issues here are questions of law, which are reviewed de novo.[73]

---

of a stay pending appeal. Our motion in this Court for a stay argued that the district court had erred in holding that the Omnibus Order was not subject to the Bankruptcy Code's automatic stay under 11 U.S.C. § 362. The bankruptcy court's injunction, on the other hand, is based on § 105 of the Bankruptcy Code, which authorizes injunctions even where the automatic stay does not apply. *See, e.g., In re Gruntz,* 202 F.3d 1074, 1087 (9th Cir. 2000) (en banc).

The bankruptcy court has separately granted a preliminary injunction barring the FTC from prosecuting its enforcement action against Integretel until March 2008. *The Billing Resource v. FTC (In re the Billing Resource),* 2007 WL 3254835 (Bankr. N.D. Cal. Nov. 2, 2007), *appeal pending,* No. C-07-05758 RMW (N.D. Cal. filed Nov. 8, 2007).

72. Remarks from the bench, *The Billing Resource v. Federal Trade Commission (In re the Billing Resource),* Adv. Pro. No. 07-5156 (Bankr. N.D. Cal. Nov. 21, 2007) (transcript not yet available).

73. *E.g., In re Advanced Telecommunication Network, Inc.,* 490 F.3d 1325, 1332 n.4 (11th Cir. 2007); *Young v. New Process Steel, LP,* 419 F.3d 1201, 1203 (11th Cir. 2005).

-19-

0068

RER-84    3689

## Summary of Argument

**I.** As interpreted by the district court, the provisions of the TRO and amended preliminary injunction underlying the Omnibus Order are invalid as applied to Integretel because they exceed the district court's power.

Specifically, they exceed the court's power to impose liabilities and obligations on nonparties. (For purposes of this analysis, Integretel should be regarded as a nonparty because that is the only capacity in which the orders applied to it). The provisions at issue apply to anyone served with the orders, even those acting independently of the enjoined defendants. In that respect, the orders go beyond what Fed. R. Civ. P. 65(d) allows.

That defect cannot be cured by pointing to the district court's *in rem* jurisdiction over receivership property. A court cannot exercise such jurisdiction without a specific *res* to which the jurisdiction can attach, and there was no such *res* here. Furthermore, a court's *in rem* jurisdiction does not reach property in the hands of a third party who holds it under a substantial claim of right, as Integretel does with respect to the money the Receiver is seeking.

**II.** In requiring Integretel to pay the amount of the reserves to the Receiver, the district court erred in several respects. The most important of these—because it affected many of the court's other conclusions—was the holding that the Receiver's claim did not derive from the Former Clients' pre-existing contract rights, but instead arose directly from the court's injunctions. That holding conflicts with the rule that a

0069
RER-84    3690

receiver stands in the shoes of the receivership entities and may only assert claims that the receivership entities could have asserted.

Instead of following this rule, the district court invoked vague notions of equitable power and *in rem* jurisdiction. As discussed above, this is not an appropriate case for the exercise of *in rem* jurisdiction. Neither is it a case in which the court's decision can be justified as an exercise of inherent equitable power. A district court's receivership powers are remedial, not substantive; they do not extend to giving the receiver rights or property interests beyond those of the receivership entity.

Because the Receiver was limited to asserting rights under the Former Clients' contracts, the district court should not have decided the merits of the Receiver's claim. Rather, it should have given effect to the contracts' arbitration and forum-selection clauses, which bind the Receiver as the Former Clients' successor in interest. Moreover, if the Receiver's claims were to be litigated rather than arbitrated, Integretel was entitled to trial by jury because the Receiver's claim was, in substance, a claim at law to collect an alleged debt.

Finally, the district court's decision about the reserves was wrong on the merits. The court erred in concluding that the reserve amounts were due and payable under the contracts. The receivership entities (and therefore the Receiver) had only con-tingent, unmatured claims. Moreover, the Receiver's claim was unsecured because the contracts did not give the Former Clients a lien or other property interest. And in any

0070

RER-84    3691

event, the district court failed to identify the *res* in which the Receiver supposedly has an interest.

**III.** Once Integretel went into bankruptcy, the automatic stay under the Bankruptcy Code operated to suspend enforcement of the Omnibus Order and the bankruptcy court was vested with exclusive jurisdiction to decide what property is or is not part of the bankruptcy estate. The district court erred when it held that the Omnibus Order was not subject to the automatic stay and that the reserve "funds" are not property of the bankruptcy estate.

The district court's premise that the automatic stay only protects property of the bankruptcy estate ignored the Bankruptcy Code's plain language. And the statement that the Omnibus Order had held that the reserve amounts were not property of the bankruptcy estate was also wrong: the Omnibus Order could not possibly have reached that conclusion because it was handed down before Integretel went into bankruptcy.

When the Clarification Order was entered, moreover, the district court had no power to decide whether any property in Integretel's possession should be excluded from the bankruptcy estate. That question was within the bankruptcy court's exclusive jurisdiction. And even if the district court had the power to decide the property-of-the-estate issue, its decision was wrong because the Receiver had not traced his alleged property interest into any specific piece of property in the bankruptcy estate's possession.

-22-

Contrary to the district court's decision, the "regulatory exception" to the automatic stay is inapplicable. The Receiver was asserting a pecuniary claim based on the Former Clients' private contract rights, not a regulatory enforcement claim based on public policy.

Finally, the civil contempt proceedings contemplated by the Omnibus Order are stayed. The Bankruptcy Code does not exempt such proceedings from the automatic stay, and the overwhelming weight of authority holds that the stay applies to contempt proceedings that are remedial in nature. There is no basis for concluding that the contempt proceedings here are anything other than remedial.

## Argument

### I.   As applied to Integretel, portions of the TRO and amended preliminary injunction—including those the Omnibus Order was intended to enforce—are invalid.

We start by discussing the defects in the TRO and amended preliminary injunction, not merely because that issue comes first chronologically, but also because the district court viewed the Omnibus Order as a measure to enforce the two earlier orders. To the extent that the TRO and amended preliminary injunction are invalid, therefore, the foundation for the Omnibus Order is undermined.[74]

---

74. This applies not only to the order requiring the payment to the Receiver but also to the order requiring Integretel to show cause why it should not be held in contempt. Civil contempt sanctions may not be imposed if the order that was allegedly violated is invalid. *United States v. United Mine Workers*, 330 U.S. 258, 294 (1947); *ITT Community Dev. Corp. v. Barton*, 569 F.2d 1351, 1356 (5th Cir. 1978). The purpose of civil contempt is purely remedial. *E.g., Martin v. Guillot*, 875 F.2d

-23-

Several provisions of the TRO and amended preliminary injunction purport to impose duties on anyone who is served with the orders, even where the person served is acting independently of the enjoined defendants and there has been no finding that injunctive relief against that person is appropriate. The amended preliminary injunction (though not the TRO) require such persons to turn over to the Receiver any assets belonging to the receivership entities.[75] And both orders require such persons to cooperate with the Receiver and the FTC, including transferring funds at the Receiver's request.[76] As applied here, these provisions exceed the district court's injunctive power.

### A. The provisions at issue must be evaluated under the standards governing the application of injunctions to nonparties because they do not purport to bind Integretel in its capacity as a party and because the requirements for enjoining a party were not satisfied.

Integretel was not a party while the TRO was in effect, so the validity of the TRO's provisions must obviously be judged by the standards for applying injunctions against nonparties. However, the situation regarding the amended preliminary injunction requires more discussion because Integretel had been named as a party by

---

839, 845 (11th Cir. 1989). "The right to remedial relief falls with an injunction which events prove was erroneously issued." *United Mine Workers*, 330 U.S. at 294.

75. R223 at 17.

76. R18 at 14-15, 17; R223 at 15-17, 18.

-24-

0073

RER-84    3694