the time the amended preliminary injunction was entered (but had not yet been served with the summons and amended complaint).

Despite Integretel's current status as a party, the amended preliminary injunction's validity must be measured against same standards as the TRO: those governing the application of injunctions to nonparties. The amended preliminary injunction does not purport to bind Integretel in its capacity as a party; the provisions directed at "the Defendants" do not apply to Integretel because the injunction defines the phrase "the Defendants" to mean the Nationwide Defendants.[77] Integretel is bound only as a person on whom the injunction was served; for this purpose, its status as a party is entirely fortuitous therefore and irrelevant.

Further, the FTC did not even try to satisfy the requirements for obtaining an injunction directed at Integretel in its capacity as a defendant. It never tried to make the sort of evidentiary showing that would have been required to obtain such an injunction. And the amended preliminary injunction was issued without complying with the notice and opportunity to be heard that would have been required to enjoin Integretel as a party.[78]

---

77. R223 at 3-4.

78. Fed. R. Civ. P. 65(a)(1) ("[n]o preliminary injunction shall be issued without notice to the adverse party"); *Granny Goose Foods, Inc.*, 415 U.S. at 438-39 (1974); *Four Seasons Hotsls & Resorts, B.V. v. Consorcio Barr, S.A.C.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003).

-25-

## B. The TRO and amended preliminary injunction exceeded the bounds of Fed. R. Civ. P. 65(d).

Under Fed. R. Civ. P. 65(d), injunctions are binding only on "the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with [an enjoined party] who receive actual notice of the order by personal service or otherwise." Thus, injunctions may not be "so broad as to make punishable the conduct of persons who act independently and whose rights have not been adjudged according to law."[79]

By imposing duties on anyone served with a copy of the order, the TRO and amended preliminary injunction go beyond what Rule 65(d) allows, both on their face and as applied to Integretel. Integretel was not an officer, agent, servant, employee, or attorney of any of the Nationwide Defendants. And by the time the TRO was entered, Integretel had stopped providing services to the Former Clients and had no ongoing relationship with them.[80]

The district court was mistaken in holding that Integretel could be bound on the basis of the FTC's allegation "that Integretel participated and acted in concert with Access One and Network One in the alleged fraud."[81] Allegations are not evidence. And more importantly, the concerted-action requirement cannot be satisfied

---

79. *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 13 (1945).

80. R296 (Dawson Decl.) at 4.

81. R610 at 7.

0075

RER-84    3696

based solely on conduct predating the injunction. The issue under Rule 65(d) is not whether the nonparty participated with the defendant in the conduct that gave rise to the lawsuit. Rather, it is whether the nonparty aided or abetted an enjoined party *in violating the injunction.*

Rule 65(d) codifies the common-law rule "that defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors[.]"[82] Thus, persons acting in concert with an enjoined party may be held in contempt "only for assisting the enjoined party in violating the injunction[.]"[83] In fact, one of the cases cited by the district court rejected the theory that the district court adopted here—that concerted action can be shown based solely on a contractual relationship predating the injunction.[84] Yet the district court based its decision regarding this issue solely on that discredited theory.

---

82. *Regal Knitwear Co,* 324 U.S. at 14.

83. *Additive Controls & Measurement Systems, Inc. v. Flowdata, Inc.,* 96 F.3d 1390, 1395 (Fed. Cir. 1996); *see also G & C Merriam Co. v. Webster Dictionary Co.,* 639 F.2d 29, 35 (1st Cir. 1980) ("a nonparty, if not legally identified with a party, can be found in contempt only if in active concert or participation with a party in postinjunction activity").

84. *FTC v. Productive Marketing, Inc.,* 136 F. Supp. 2d 1096, 1103-04 (C.D. Cal. 2001).

0076

RER-84    3697

### C. The TRO and amended preliminary injunction cannot be justified as exercises of the district court's in rem jurisdiction over receivership property.

The district court held that the TRO and injunction could validly be applied to Integretel based on the court's *in rem* jurisdiction over receivership property.[85] That conclusion begs question; whether Integretel possessed any receivership assets is precisely the issue in dispute. And more importantly, the court's conclusion that it could rely on its *in rem* jurisdiction was wrong as a matter of law.

"*In rem*" means "against a thing."[86] The first prerequisite of *in rem* jurisdiction is therefore a thing—a specific, identifiable *res* to which the court's jurisdiction can attach.[87] *In rem* jurisdiction does not exist when the claimant seeks merely "to recover a sum of money, not 'particular dollars[.]'"[88] No such *res* exists here. There have never been any segregated funds attributable to the reserves,[89] and nobody has ever contended (much less proved) that money generated by the Former Clients' trans-

---

85. R610 at 7-8.

86. *Black's Law Dictionary* 797 (7th ed. 1999).

87. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 38, 112 S. Ct. 1011, 1017 (1992).

88. *Id.*

89. R296 (Dawson Decl.) at 3; *The Billing Resource v. Federal Trade Commission (In re the Billing Resource)*, 2007 WL 3254835 at *22-23.

-28-

actions can be traced into Integretel's current bank balances. The Receiver's claim was therefore one simply to recover a sum of money, not to recover particular dollars.[90]

The district court used vague terms such as "the reserves" and "the funds" as if they referred to identifiable assets, but it was undisputed that they are just bookkeeping entries. Contrary to the district court's suggestion, this is not "a distinction without a difference[.]"[91] A bookkeeping entry is not a piece of property over which a court can exercise *in rem* jurisdiction

Furthermore, even when a specific *res* exists, *in rem* jurisdiction attaches only if the *res* is within the court's actual or constructive possession.[92] It has long been settled that a court has no such possession over assets in the hands of a third party who holds them under a substantial claim of right.[93] In reaching the opposite conclusion, the district court ignored the decisions by the Supreme Court and courts of appeals

---

90. *In rem* jurisdiction also does not apply to orders imposing personal duties, such as the provisions of the TRO and amended preliminary injunctions commanding nonparties to cooperate with and assist the Receiver. (R18 at 14-15, 17; R223 at 15-17, 18.) Those provisions do not operate *in rem* upon property. Rather, they are mandatory injunctions that operate *in personam*.

91. R610 at 3.

92. *See, e.g., Penn General Casualty Co. v. Commonwealth of Pennsylvania ex rel. Schnader*, 294 U.S. 189, 195 (1935); *L'Invincible*, 14 U.S. 238, 246-47 (1816); *The Brig Ann*, 13 U.S. 289, 291 (1815); *R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 964 (4th Cir. 1999).

93. *E.g., Taubel-Scott-Kitzmiller Co. v. Fox*, 264 U.S. 426, 432-34 (1924); *In re Reading Co.*, 711 F.2d 509, 515-16 (3d Cir. 1983); *In re Kansas City Journal-Post Co.*, 144 F.2d 812, 813 (8th Cir. 1944); *Wheaton v. Daily Telegraph Co.*, 124 F. 61, 62 (2d Cir. 1903).

0078

RER-84    3699

that we had cited and instead relied on a district-court decision[94] that is inapposite because the receiver's right to the funds there was undisputed.[95]

In this case, however, the Receiver's claim to funds in Integretel's possession is very much in dispute. It is to that dispute that we now turn.

## II.  The district court erred in holding that the reserve amounts were due and owing to the Receiver and that Integretel was holding them for the Former Clients' benefit or on their behalf.

Although the Omnibus Order discussed the Former Clients' contracts briefly, the decision ultimately was not based on the contracts. The court held that the Receiver's claim "is not a claim at law governed by pre-receivership contracts, . . . but one governed by this Court's jurisdiction over receivership property based on the TRO and Amended Preliminary Injunction."[96] Thus, the court indicated that the Receiver could assert substantive rights beyond (and in conflict with) the rights and property interest of the Former Clients, which he succeeded to upon his appointment.

That conclusion was profoundly wrong. Receivers step into the shoes of the receivership entity. They have no substantive rights the receivership entity itself would not have had. And the federal courts lack the power to give them any such rights.

---

94. *Productive Marketing, Inc.*, 136 F. Supp. 2d at 1106 (cited in R610 at 7).

95. *Productive Marketing, Inc.*, 136 F. Supp. 2d at 1107, 1108.

96. R610 at 4.

-30-

0079

RER-84    3700

This means that the district court should not have even decided the merits of the Receiver's claim. It should have required the Receiver to follow the arbitration process required by the Former Clients' contracts. Failing that, it should have required the Receiver to assert his claims in California, as required by the contracts' forum-selection provisions. And if the court nevertheless retained the case, it should have granted Integretel a jury trial.

This Court therefore need not reach the merits of the Receiver's claim in order to hold that the Omnibus Order cannot stand. If it does reach that issue, however, it should still reverse, for the Receiver does not have a presently enforceable right to be paid the amount of the reserves. Moreover, whatever claim he has is unsecured. The contracts do not give the Former Clients any property interest, and in any case Integretel was not shown to be holding any specific property to which the Receiver's claimed property interest applies.

## A.  *Whatever rights the Receiver may have are based solely on Integretel's contracts with the receivership entities.*

A receiver stands in the shoes of the receivership entity and may not assert any claims the entity itself could not have asserted.[97] For example, a receiver may not assert claims that belong only to the creditors or other claimants for whose ultimate

---

97. *E.g., White v. Ewing,* 159 U.S. 36, 39 (1895); *Javitch v. First Union Securities, Inc.,* 315 F.3d 619, 625 (6th Cir. 2003); *Jarrett v. Kassel,* 972 F.2d 1415, 1426-27 (6th Cir. 1992); *Fleming v. Lind-Waldock & Co.,* 922 F.2d 20, 25 (1st Cir. 1990).

0080
RER-84    3701

benefit the receivership was imposed.[98] This rule applies not only in commercial receiverships, but also in receiverships arising from governmental enforcement actions.[99] Moreover, the rule represents a limitation on the court's power, so that an order purporting to grant the receiver broader property or contract rights than the receivership entity had is invalid.[100] This means that determine whether the Receiver was owed the reserve amounts and whether he had an enforceable interest in any of Integretel's property, one must determine what rights the Former Clients had under their contracts.

As the justification for its conclusion to the contrary, the district court relied on its *in rem* jurisdiction over receivership property and its inherent equitable power. We have already shown that the court's reliance on its *in rem* jurisdiction was misplaced. So, too, was its reliance on the notion of inherent power.

The equity power of a receivership court, though broad, is purely remedial. As the Supreme Court has explained, "[T]he appointment of a receiver is merely an

---

98. *E.g.*, *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 429 (1972); *Jarrett*, 972 F.2d at 1427 (6th Cir. 1992); *Scholes v. Schroeder*, 744 F. Supp. 1419, 1421-23 (N.D. Ill. 1990).

99. *E.g.*, *United States v. Goodman*, 182 F.3d 987, 991-92 (D.C. Cir. 1999) (FTC enforcement action); *Jarrett*, 972 F.2d at 1415; (CFTC enforcement action).

100. *E.g.*, *Liberte Capital Group, LLC v. Capwill*, 2007 WL 2733335 at *5-8 (6th Cir. Sept. 20, 2007); *Jarrett*, 972 F.2d at 1418, 1425, 1426; *Marwil v. Farah*, 2003 WL 23095657 at *5-6 (S.D. Ind. 2003); *Scholes v. Tomlinson*, 1991 WL 152062 at *2 (N.D. Ill. 1991); *Scholes v. Schroeder*, 744 F. Supp. 1419, 1421-23 (N.D. Ill. 1990).

-32-

0081

RER-84       3702

ancillary and incidental remedy. . . . The appointment determines no substantive right, nor is it a step in the determination of such a right."[101] This Court has similarly noted that receivership is "an ancillary remedy which does not affect the ultimate outcome of the action."[102] But the court here went beyond merely granting a remedy based on existing rights and property interests. It gave the Receiver new rights and interests that the Former Clients had not enjoyed.

In doing so, the district court went far beyond the limits of its equitable power. More than a century ago, the Supreme Court held that "wherever the rights or the situation of parties are clearly defined and established by law, equity has no power to change or unsettle those rights or that situation, but in all such instances, the maxim '*equitas sequitur legem*' [equity follows the law] is strictly applicable." [103] That principle remains valid. "Equity may not be used to create new substantive rights."[104]

The district court's reliance on the concept of inherent equitable power is especially inappropriate here because the Receiver's claim involves private contract

---

101.   *Pusey & Jones Co. v. Hanssen*, 261 U.S. 491, 497, 43 S. Ct. 454, 456 (1923).

102.   *National Partnership Inv. Corp. v. National Housing Development Corp.*, 153 F.3d 1289, 1291 (11th Cir. 1991).

103.   *Hedges v. Dixon*, 150 U.S. 182, 192 (1893) (internal quotation marks omitted).

104.   *East Tennessee Natural Gas Co. v. Sage*, 361 F.3d 808, 823 (4th Cir. 2004). *See, e.g., In re Southmark Corp.*, 49 F.3d 1111, 1116 (5th Cir. 1995); *Johnson v. First National Bank*, 719 F.2d 270, 273-75 (8th Cir. 1983).

0082
RER-84    3703

and property rights, which are governed by state law.[105] There is no relevant statute

displacing state law and no national policy on billing aggregators that might authorize

the creation of new judge-made rules as a matter of federal common law.[106]

**B. By resolving the Receiver's claim on the merits, the district court violated Integretel's rights under the contracts' ADR/arbitration and forum-selection provisions and under the Seventh Amendment.**

Because the Receiver stood in the Former Clients' shoes, whatever rights he

may have had against Integretel were based solely on the Former Clients' contracts.

That being so, the dispute should have been decided through the ADR/arbitration

process that the contracts mandated, not by the district court. And even if the

Receiver could somehow have avoided that process, (1) the contracts designated

California as the forum for any litigation and (2) Integretel was entitled to a jury trial.

---

105. *Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co.*, 127 S. Ct. 1199, 1205 (2007); *Butner v. United States*, 440 U.S. 48, 54-56 (1979); *In re Southeast Banking Corp.*, 156 F.3d 1114, 1121 (11th Cir. 1998). These cases, which were decided under bankruptcy law, are applicable here because a bankruptcy trustee is 'a statutory successor to the equity receiver[.]" *Carter v. Rodgers*, 220 F.3d 1249, 1252 (11th Cir. 2000) (internal quotation marks and citation omitted). Bankruptcy cases therefore provide "particularly informative" guidance in receivership proceedings. *Office & Professional Employees Intern. Union, Local 2 v. FDIC*, 962 F.2d 63, 68-69 (D.C. Cir. 1992).

106. *See, e.g., In re Southeast Banking Corp.*, 156 F.3d at, 1121 n.8.

0083

RER-84    3704

1.  *The district court should have stayed litigation pending completion of the arbitration process.*

Each contract contains an ADR/arbitration provision that applies to "any claim, dispute, or other controversy arising out of or relating to this Agreement or its breach."[107] These provisions require the parties to try to resolve any disputes through negotiation and if they cannot agree to submit the dispute to arbitration. With two inapplicable exceptions (discussed below), this is the "sole remedy" for disputes arising out of the contracts.

These provisions are valid and enforceable under the Federal Arbitration Act ("FAA"), which establishes a strong federal policy favoring arbitration.[108] The FAA applies to written arbitration provisions in agreements "evidencing a transaction involving commerce."[109] It is undisputed that the Former Clients' contracts fall within that category.[110] And because the Receiver stands in the Former Clients' shoes, his

---

107. R296 (Dawson Decl.) at 12ecf, 38ecf, 39ecf.

108. 9 U.S.C. § 2. *See, e.g., Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 225-261 (1987).

109. 9 U.S.C. § 2.

110. R363 (Dawson Decl.) at 2 (contracts are between parties in different states and contemplated the transmission of payments and billing data across state lines); *see Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 273-77 (1995) (use of phrase "involving commerce" evidences intent to exercise full extent of commerce power).

claim is subject to any defenses that would have been good against the Former Clients.[111] As a result, the arbitration provisions are binding on him.[112]

The district court gave two reasons for disregarding the ADR/arbitration provisions. The first was that the Receiver's rights were not contractual, but derived entirely from the Court's orders. We have shown that premise to be unfounded. The second was that the Receiver is not bound by contracts he has not affirmatively adopted. However, the cases holding receivers to be bound by arbitration provisions do not refer to any such limitation, and the premise that the Receiver may unilaterally disavow the contracts' terms is dubious under this Court's precedent.[113] And in any event the Receiver tacitly adopted the contracts here by asserting claims that arose, if at all, only under the contracts. A receiver may not try to obtain payments under a contract and at the same time avoid the provisions he does not like.[114]

---

111. *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 86, 114 S. Ct. 2048, 2054 (1994).

112. *See, e.g., Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 624-27 (6th Cir. 2003); *Capitol Life Ins. Co. v. Gallagher*, 839 F. Supp. 767, 769 (D. Colo. 1993). *Cf. In re Electric Machinery Enterprises, Inc.*, 479 F.3d 791, 795-99 (11th Cir. 2007) (bankruptcy trustee asserting contract claims under state law is bound by contract's arbitration clause).

113. *See Liggio v. FDIC*, 847 F.2d 1499, 1502 (11th Cir. 1988) (FDIC as receiver is liable on failed bank's contracts).

114. *See, e.g., Employers Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1323 (11th Cir. 2001); *FDIC v. Ernst & Young LLP*, 374 F.3d 579, 584 (7th Cir. 2004); *Skelton v. General Motors Corp.*, 860 F.2d 250, 259 (7th Cir. 1988); *Gross v. Regnor Fin. Co.*, 96 F.2d 37, 38 (5th Cir. 1938); *Menke v. Willcox*, 275 F. 57, 58 (S.D.N.Y. 1921) (L. Hand, J.).

0085

RER-84    3706

Neither of the ADR/arbitration provisions' exceptions applies here. The first allows suits to compel compliance with the contractual dispute-resolution process (which is obviously inapposite). The second allows actions "seeking a temporary restraining order or injunction related to the purposes of this Agreement[.]"[115] That exception is similarly inapplicable.

To begin with, he Receiver did not seek a TRO or injunction. Instead, he moved for a show-cause motion seeking to enforce the TRO and amended preliminary injunction that the district court had previously entered. Thus, the focus here is on those orders, not on the Receiver's motion or the Omnibus Order. And given that focus, it is clear that the exception to the arbitration clause does not apply. Neither the TRO nor the amended preliminary injunction granted relief "related to the purpose" of the contracts. Both of them were issued at the request of the FTC, not of the Former Clients. Their purpose was to enforce the FTC Act against the Nationwide Defendants, not to enforce the Former Clients' alleged rights against Integretel. And neither the contracts nor any contractual claims were before the district court when the orders were entered.

In short, because the arbitration provisions, apply to the Receiver's claims, the FAA requires that any litigation on those claims be stayed.[116]

---

115. R296 (Dawson Decl.) at 12ecf, 39ecf.

116. 9 U.S.C. § 3.

0086
RER-84    3707

*2.   If litigation was permitted, the agreed-upon venue was California.*

The contracts provide that to the extent litigation is permitted, it must be brought in Santa Clara County, California.[117] Such forum-selection clauses are presumptively valid under the law of both the forum state (Florida) and the state whose law is contractually designated as controlling (California).[118] The Receiver did not attempt to overcome this presumption and the district court did not find that it had been overcome. And forum-selection clauses—like arbitration clauses—are binding on receivers.[119] Integretel properly raised this issue below.[120] The court therefore should have held that any litigation must take place in California.

*3.   If litigation was permitted, Integretel was been entitled to trial by jury.*

Because the only rights the Receiver may assert are those of the Former Clients, his claim was in substance for payment of a contractual debt. Such a claim is legal, not equitable, and as a result Integretel was entitled under the Seventh Amendment to trial by jury.[121] This is true even though the Receiver's claim was brought in the context of an equitable receivership proceeding. "Legal claims are not

---

117. R296 (Dawson Decl.) at 12ecf, 38ecf.

118. *E.g., America Online, Inc. v Booker,* 781 So. 2d 423, 424 (Fla.. App. 2001); *Lu v. Dryclean-U.S.A. of California, Inc.,* 14 Cal. Rptr. 2d 906, 907-08 (Ct. App. 1992).

119. *See, e.g., Hodgson v. Gilmartin,* 2006 WL 2707397 at *8-17 (E.D. Penn. 2006). *Cf. In re Mercurio,* 402 F.3d 62 (1st Cir. 2005) (bankruptcy trustee).

120. R296 at 34-36.

121. *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 477 (1962).

0087

RER-84      3708

magically converted into equitable issues by their presentation to a court of equity[.]"[122] For example, even though bankruptcies are equitable proceedings, the Supreme Court has held that a claim at law remains a claim at law even when it is asserted by a bankruptcy trustee.[123] The same principle applies to receiverships.[124]

Integretel preserved its jury-trial rights by asserting them when it opposed the Receiver's motion.[125] By deciding the claims itself, the district court violated the Seventh Amendment.

### C. The reserve amounts were not due and owing and in any event the Former Clients had no property interest that the Receiver could have asserted.

Because the district court was not the appropriate forum for deciding the Receiver's claim, this Court need not address the merits of the district court's decision in order to conclude that the Omnibus Order should be reversed. But if the Court does reach the merits, the result should be the same.

---

122. *Ross v. Bernhard*, 396 U.S. 531, 538 (1970); *see also Dairy Queen*, 369 U.S. at 470-74.

123. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 49-64, 109 S. Ct. 2782, 2794-2802 (1989); *Schoenthal v. Irving Trust Co.*, 287 U.S. 92, 94-95 (1932); *Kelley v. Gill*, 245 U.S. 116, 120-22 (1917).

124. *Hart v. Wiltsee*, 19 F.2d 903, 914-15 (1st Cir. 1927); *Carey v. McMillan*, 289 F. 380, 383, 385-87 (8th Cir. 1923); *Robinson v. Mutual Reserve Life Ins. Co.*, 175 F. 629, 629 (S.D.N.Y. 1909); *Whelan v. Enterprise Transp. Co.*, 164 F. 95, 98 (D. Mass. 1908).

125. R296 at 24 n.98.

0088

RER-84    3709

The district court's decision conflated two distinct questions: whether the reserve amounts represented matured and noncontingent debts to the Former Clients, and if so, whether the Receiver has a property interest in any of Integretel's assets. The answer to both questions is no.

*1. The reserve amounts were not due and owing.*

a. The district court erred in holding that Integretel owed the amount of the IGT Reserves to the Former Clients. The contracts provide unambiguously that amounts withheld on account of the IGT Reserve are by definition *not* owed to the client. In the provision specifying what Integretel is required to pay the Former Clients, the contracts state, "Client shall be entitled to all collected amounts, up to and including the gross value of the Billing Transactions remitted to the Telcos, *less any amount due and owing to [Integretel] hereunder, including, without limitation, . . . IGT Reserves . . . .*"[126] Moreover, the contracts define the IGT Reserve as "an amount withheld, from the amount *otherwise* owed to Client[.]"[127] As used in this definition, "otherwise" means "in different circumstances" or "under other conditions."[128] The phrase "amounts otherwise owed to Client" therefore means amounts that *would be* owed to the client if they were not withheld to cover the reserve.

126. R296 (Dawson Decl.) at 19ecf, § 6 & 51ecf, § 6 (emphasis added).

127. R296 (Dawson Decl.)at 14ecf, 43ecf (emphasis added).

128. *Webster's Third New International Dictionary* 1598 (1986).

-40-

Under the contracts, the Former Clients' entitlement to payment on account of the reserves is limited to "any *excess* IGT Reserve as determined from time to time[.]"[129] And Integretel may adjust the level of the IGT Reserve in its reasonable discretion.[130] This means that sums allocated to the IGT Reserve do not become owed to the client unless and until Integretel decides in its discretion to lower the reserves' level after accounting for costs, expenses, and other charges.

In order to hold that the reserve amounts were owed under the contracts, it would have been necessary for the district court to find that it was unreasonable for Integretel to decide in its discretion not to pay the reserve amounts to the Receiver. But the court made no such finding and there was no evidence that could have supported such a finding. On the contrary, the evidence indicates that Integretel acted reasonably and within the permissible bounds of its discretion. It was (and still is) faced with the risk of being held liable to the FTC, to consumers, or to LECs. Any money paid to the Receiver would not necessarily be used to reduce that potential liability. It would be available to pay the Receiver's administrative expenses (which are considerable) and to pay other claims against the various defendants in receivership. Integretel is therefore exposed to the risk of multiple liability, and that risk justified its rejection of the Receiver's demand.

---

129. R296 (Dawson Decl.) at 19ecf § 6, 51ecf § 6 (emphasis added).

130. R296 (Dawson Decl.) at 19ecf § 5(b), 51ecf § 5(b)

0090

RER-84    3711

The district court was wrong to rely on the absence of an applicable liquidated-damages provision. Integretel has never said that it was entitled to liquidated damages. The court was similarly mistaken in concluding that the contracts do not "give Integretel the right to make an independent, unilateral decision about [the Former Clients'] breach of the agreements without court involvement."[131] The law does not require explicit contractual authorization before one contracting party can declare the other in default without first obtaining judicial approval. The court's suggestion to the contrary is out of touch with business reality.

**b.** The district court was also mistaken in holding that Integretel could not use the reserve amounts to satisfy its claims against the Former Clients under the contracts' indemnification provisions. The court gave two reasons for that conclusion, neither of which withstands scrutiny.[132]

The first reason is that the contracts supposedly "do not give [Integretel] the right so use the reserves to fund the indemnity."[133] But under the contract funds may be allocated to the IGT Reserve "to cover other reserves *or offsets*[.]"[134] Integretel's

---

131. R610 at 4.

132. R610 at 3-4. And the court failed to even mention Integretel's argument that if it had any liability to the Receiver, it was entitled to offset that liability against its claims against the Former Clients for fraud in the inducement.

133. R610 at 3.

134. R296 at 14ecf, 43ecf (emphasis added).

-42-

claims under the indemnification provisions constitute offsets against whatever claims the Former Clients (and derivatively, the Receiver) may have against Integretel. Indeed, because the right to offset mutual debts is based on considerations of equity,[135] it does not depend on the terms of the parties' contract.

The district court's second reason was that that the FTC has sued Integretel for its own alleged "independent violations" of the FTC Act and that as a result Integretel "will not be able to look to [the Former Clients] for indemnification[.]"[136] However, Integretel's alleged violations are not independent of the Former Clients'. On the contrary, the FTC's claim against Integretel is based on Integretel's having processed the Former Clients' transactions, and the FTC contends that Integretel can be held liable without any showing that it knew or reasonably could have known that the Former Clients' billing transactions were fraudulent.

Furthermore, the district court had previously held that Integretel *could* assert claims for indemnification against the individuals who were involved in for the Former Clients' fraud.[137] The court rejected the FTC's argument that allowing indemnification for liability under the FTC Act would undermine the Act's policies. It held that while a defendant may not obtain indemnification for disgorgement of

---

135. *See Fassberg Const. Co. v. Housing Authority*, 60 Cal. Rptr. 3d 375, 411-12 (Ct. App. 2007).

136. R610 at 3-4.

137. R536 at 2-3.

-43-

unlawfully obtained profits, indemnification would be available with respect to any liability exceeding that amount. If such indemnification is allowed against the individuals associated with the Former Clients—with whom Integretel had no contract—indemnification under the Former Clients' contracts should be allowed *a fortiori*.

2.   *The Former Clients had no property interest in the reserve amounts.*

Even if the reserve amounts were due and owing, that alone would not give the Receiver an interest in any of Integretel's property. Unless a creditor has been granted a lien, it is a general unsecured creditor with no interest in the debtor's assets unless and until it reduces its claim to judgment and levies on the debtor's property.[138] There is no basis for finding that the Receiver had a lien or comparable property interest.[139]

Nothing in the contracts gives the Former Clients any sort of property interest. The contracts do not give the Former Clients a security interest or make them beneficiaries of a trust or other fiduciary relationship. Indeed, the contracts expressly

---

138. *See, e.g., Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund*, 527 U.S. 308, 330 (1999); *Delaney Producing & Refining Co. v. Crystal Petroleum Prods. Corp.*, 264 P. 521, 522 (Cal. 1928); *381651 Alberta, Ltd. v. 279298 Alberta, Ltd.*, 675 So. 2d 1385, 1387-88 (Fla. App. 1996).

139. We are dealing here only with the Omnibus Order's flaws under nonbankruptcy law, not with the question of what property is or is not included in Integretel's bankruptcy estate. As discussed below, the latter issue is within the bankruptcy court's exclusive jurisdiction.

-44-

rule out the existence of a fiduciary relationship by stating that Integretel is not the client's "agent, partner, joint venturer, trustee, fiduciary, or legal representative[.]"[140]

Despite this definitive language, the district court said that the reserves were "held on behalf of, or for the benefit of, " the Former Clients.[141] That unexplained conclusion is at odds with the contracts' description of the IGT Reserve as being intended "to protect IGT[.]"[142] ("IGT" is the abbreviation for "Integretel."[143]) It is also inconsistent with the provision in the contract of one of the Former Clients (Access One) transferring the client's interest in its billing transactions to Integretel.[144]

Further, as discussed above, the district court failed to identify the specific property the Receiver supposedly has an interest in. In fact, it not only failed to identify any property that was in Integretel's possession at the time of its order, but it also failed to identify any such property that was *ever* subject to an interest in favor of the Former Clients. Property interests do not exist in the abstract; they exist only in relation to specific identified (or at least identifiable) pieces of property. The district court disregarded that fundamental point.

---

140. R296 (Dawson Decl.) at 13ecf ¶ k, 41ecf ¶ k.

141. R610 at 3.

142. R296 (Dawson Decl.) at 14ecf, 43ecf.

143. R296 (Dawson Decl.) at 10, 33.

144. R296 (Dawson Decl.) at 20ecf § 9.

0094

RER-84    3715

**III. Even if the Omnibus Order were correct, its enforcement would be suspended by the Bankruptcy Code's automatic stay.**

In holding that the automatic stay does not apply to the Omnibus Order, the district court acted without allowing Integretel an opportunity to be heard. But because the issues here are legal rather than factual, this Court can and should decide them itself rather than simply remanding to allow the district court to decide the matter anew after hearing from Integretel. As we will now show, the district court's decision that the Omnibus Order is not subject to the automatic stay is mistaken, as is its related decision that the reserve "funds" are not property of Integretel's estate.

**A.  The Omnibus Order is covered by the stay as defined by 11 U.S.C. § 362(a).**

Under § 362(a) of the Bankruptcy Code, the filing of a bankruptcy petition "operates as a stay, applicable to all entities," of the following:

> (1) the . . . continuation. . . of a judicial . . . action or proceeding against the debtor that was . . . commenced before the commencement of the case under this title . . .;
>
> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title; [and]
>
> (3) any act to obtain possession of property of the estate or of property from the estate . . . .[145]

Enforcement of the Omnibus Order is stayed under each of these provisions. Specifically, enforcement would constitute the continuation of a proceeding commenced against Integretel before its bankruptcy (§362(a)(1)), the enforcement against Integ-

_____

145. 11 U.S.C. § 362(a).

-46-