18

1   the merits.  The Debtor has demonstrated the balance of
2   hardships tipping in its favor.  The Debtor has definitely
3   demonstrated the possibility of irreparable injury, and
4   this Court believes the Debtor has demonstrated a
5   likelihood of success on the merits.  But with respect to
6   the possibility of irreparable injury, there seems to be no
7   doubt that the Debtor has demonstrated that, that there are
8   serious questions going to the merits.  There seems to be
9   no possible doubt about that, and the balance of hardship
10  the Court finds strongly favors the Debtor.
11          In a reorganization context, the Debtor seeking a
12  stay against a non-debtor must show a reasonable likelihood
13  of successful reorganization as set forth in detail in the
14  memorandum of decision at pages 19 to 21.  Debtor has
15  demonstrated that the Debtor has and had a reasonable
16  likelihood of a successful reorganization.
17          In addition to those findings on November 2,
18  2007, the Committee agreed to an additional two weeks for
19  Debtor's use of cash collateral while Debtor and the
20  Committee continued discussions with respect to a Plan of
21  Reorganization.
22          In addition, Mr. Fiero, you provided some new
23  information.  Can you tell us what that was?  It was with
24  respect to a possible Plan.
25          MR. FIERO: Yes, Your Honor.  We reported to the

-A10-

19

1  Court that it was clear that a term sheet was in progress.

2  That term sheet was distributed by Mr. Ahrens this morning

3  to the interested parties, and we expect that it will turn

4  into either a sale motion or something leading up to a Plan

5  by a week from Friday at the latest.

6      THE COURT: Okay.  Thank you for that

7  clarification.

8      At the November 2 hearing, no creditor opposed

9  Debtor's use of cash collateral based on the viability of

10  Debtor's business.  For the reasons stated in the

11  memorandum of decision and the additional information

12  brought to the Court's attention at the November 2, 2007

13  cash collateral hearing and again today, Debtor has

14  demonstrated that the Debtor has a reasonable likelihood of

15  a successful reorganization sufficient for the issuance of

16  a temporary restraining order.

17      Additionally, as set forth in great detail in the

18  memorandum of decision at pages 38 to 58, Debtor has

19  demonstrated the strong likelihood of success on the

20  merits, that the property that the Receiver seeks to have

21  the Debtor turn over pursuant to the omnibus order is

22  indeed property of the estate.  The omnibus order does not

23  require Debtor to pay any specific amount of funds to the

24  Receiver, rather, in order to comply with the omnibus

25  order, Debtor would have to pay the Receiver out of

-A11-

20

1  Debtor's general account the so-called reserves the Florida

2  Court determined Debtor held on behalf of the prior

3  customers. The Florida Court described such reserves but

4  did not quantify them.

5        Pre-petition, Debtor did not turn over any

6  commingled funds to the Receiver, and the Debtor did not

7  segregate any such funds in any fashion. As of the

8  petition date, Debtor certainly retained an interest in all

9  of its commingled funds and Receiver asserted an interest

10  in some as yet unquantified portion of those funds. On the

11  petition date, this Court obtained exclusive jurisdiction

12  over all of the commingled funds under Section 1334(e) of

13  Title 28. Accord In re Simon, 153 F3d, 991 at 996, 9th

14  Circuit (1998).

15        Debtor will clearly be irreparably harmed if

16  Receiver and the FTC are permitted to enforce the omnibus

17  order. First, Debtor's business will suffer very

18  substantially and irreparably and possibly irremediably if

19  Debtor is required to turn over $1,762,762.56 to the

20  Receiver under the omnibus order, particularly at this

21  critical, crucial point in the Debtor's reorganization

22  efforts.

23        Debtor's estate will lose the over 1.7 million

24  dollars that appears to this Court, to the Creditors'

25  Committee, and to the Debtor to be property of the estate.

-A12-

21

1    And there's certainly serious questions with respect to

2    that issue. At a minimum, there are serious questions with

3    respect to that issue, although the Court thinks that the

4    Debtor has a likelihood of success on that point.

5          Those funds will not be available to the Debtor

6    or its creditors if they're turned over to the Receiver.

7    Moreover, if the Debtor is required to turn over the

8    commingled funds, the Debtor will be preferring the

9    Receiver over all similarly situated creditors. The Debtor

10   is a debtor in possession, and is a fiduciary to all of

11   Debtor's creditors, inter alia, secured creditors,

12   unsecured creditors, customers, the FTC and the Receiver.

13   The Receiver certainly does not represent all creditors of

14   the Debtor's estate. At most, Receiver represents the

15   receivership estates of the prior customers and the Federal

16   Trade Commission.

17          Receiver does not seek to have the commingled

18   funds turned over to it or to him to protect those funds

19   for all creditors of the Debtor's bankruptcy estate,

20   rather, Receiver seeks possession of those funds for the

21   benefit of the receivership estates of the prior customers

22   to the exclusion of Debtor's other secured and unsecured

23   creditors.

24          Permitting the Receiver to implement the omnibus

25   order would irreparably harm Debtor's bankruptcy estate by

22

1  preferring one creditor, the Receiver, over other similarly
2  situated creditors of the Debtor, since most, if not all,
3  service contracts provide for the same, quote, "reserves,"
4  unquote.

5      Additionally, as set forth in great detail in the
6  memorandum of decision at page 29 to 35, this is a critical
7  time in Debtor's reorganization.  Permitting the Receiver
8  to continue his enforcement of the omnibus order would
9  divert Debtor's president and other personnel from the
10  critical reorganization efforts.  Specifically in the next
11  ten days, the Debtor will be negotiating with the Committee
12  over a Plan of Reorganization finalizing its schedules and
13  statement that must be filed by November 15, 2007 and
14  preparing for the final hearing on cash collateral set for
15  November 16, 2007, plus, as Mr. Fiero points out, this is
16  an absolute critical juncture in the Debtor's
17  reorganization efforts in terms of its term sheet and plans
18  for the future.

19      Finally, in addition to the diversion of Debtor's
20  management from the reorganization process, Debtor will be
21  harmed by incurring legal fees and costs Debtor can ill
22  afford at this juncture if enforcement of the omnibus order
23  is not enjoined.  Debtor estimates that Debtor will incur
24  an additional 50 to $150,000 in fees related to Receiver's
25  request for the turnover of commingled funds.  Receiver

0123
RER-84    3744

23

1  argues that the contempt proceedings are largely complete

2  and the orders are self-executing.  However, the omnibus

3  order is on appeal even though the Eleventh Circuit has

4  lifted its stay.  If the enforcement of the omnibus order

5  is not enjoined, Debtor will have to comply with the order

6  to turn over the funds or show cause why Debtor should not

7  be held in contempt.

8          Receiver will be protected during the limited

9  duration of this temporary restraining order.  Indeed the

10 Receiver will be completely protected by this Court's

11 orders.  The Court continues to hold $1,762,762.56 -- the

12 Court isn't holding it; the Debtor is holding it -- in a

13 blocked account.  The Debtor is holding it pursuant to an

14 order of the Court that was agreed to by the Debtor and by

15 the Receiver and by the FTC, and the Debtor will continue

16 to hold those funds, at least until December 14, 2007,

17 unless there's a request from the Debtor prior to that time

18 and then, that will be on notice to the Receiver and the

19 FTC with opportunity to respond.

20          Thus, the Court finds that there is cause to

21 issue a temporary restraining order and an Order to Show

22 Cause why a preliminary injunction should not be issued to

23 enjoin the Receiver and the FTC from taking action to

24 obtain the turnover of the approximately 1.7 million

25 dollars the Florida Court required Debtor to turn over to

1    Washington, D.C.   20580

2    <u>Proposed Counsel for the Official Unsecured Creditors Committee</u>
     John Fiero, Esq.
3    Maxim Litvak, Esq.
     Pachulski, Stang, Ziehl & Jones
4    150 California Street
     15th Floor
5    San Francisco, CA 94111-4500

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

W02-WEST:5SS1\400529214.3

AMENDED ORDER GRANTING MOTION FOR
PRELIMINARY INJUNCTION RE: ENFORCING OMNIBUS
ORDER

0125

RER-84    3746

24

1   the Receiver in the omnibus order. The Court will issue an

2   Order to Show Cause as to why a preliminary injunction

3   should not issue. First, counsel for the Debtor -- the

4   order is effective immediately, this temporary restraining

5   order, even though the Debtor is instructed to prepare a

6   form of order and have it reviewed by counsel for the FTC

7   and the Receiver, but now we need to talk about when we

8   should have our hearing on the preliminary injunction.

9         Since I've had a hearing, I can issue this

10  injunction, the temporary restraining order that is, for 20

11  days and I'd like to know when you want a hearing on the

12  preliminary injunction. Now we're all going to be together

13  on November 16th at 10:30. I don't know whether that's --

14  that's not much time. So I'd like the suggestions of the

15  Debtor and then the other parties as to when this hearing

16  should take place.

17        MR. SACKS: Your Honor, Steven Sacks. I would

18  suggest we do it on the 16th. The following week is the

19  Thanksgiving week.

20        THE COURT: Well, that's fine with me except that

21  means that your papers have to go out very soon and I need

22  a response very soon. Now how soon can your papers go out?

23  I can't have papers coming in the day before.

24        MR. SACKS: I understand, Your Honor. I would

25  think we could have papers out by Thursday, the 8th.

-A16-

Entered on Docket
November 30, 2007
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1  SHEPPARD, MULLIN, RICHTER &
   HAMPTON LLP
2    A Limited Liability Partnership
     Including Professional Corporations
3  MICHAEL H. AHRENS,
   Cal. Bar No. 44766
4  STEVEN B. SACKS,
   Cal. Bar No. 98875
5  JEFFREY K. REHFELD,
   Cal. Bar No. 188128
6  Four Embarcadero Center, 17th Floor
   San Francisco, California 94111-4106
7  Telephone:    415-434-9100
   Facsimile:    415-434-3947
8
   Attorneys for The Billing Resource, dba
9  Integretel

NOV 27 2007

The following constitutes the
Order of the Court. Signed  11 28     20 0 7

_Arthur S. Weissbrodt_
HON. ARTHUR S. WEISSBRODT
United States Bankruptcy Judge

10              UNITED STATES BANKRUPTCY COURT
11              NORTHERN DISTRICT OF CALIFORNIA
                      [SAN JOSE DIVISION]
12
   In re                                    Case No. 07-52890
13
   THE BILLING RESOURCE, dba
14 INTEGRETEL, a California corporation,     Chapter 11
15              Debtor.
16
17 THE BILLING RESOURCE, dba
   INTEGRETEL, a California corporation,     Adv. Proc. No. 07-05156
18
                Plaintiff,                   AMENDED ORDER GRANTING
19                                           MOTION FOR PRELIMINARY
                                             INJUNCTION
20      v.
                                             Date:   November 26, 2007
21 FEDERAL TRADE COMMISSION, and             Time:   2:00 p.m.
   DAVID R. CHASE, not individually, but     Court:  Room 3020, Hon. Arthur Weissbrodt
22 solely in his capacity as receiver for
   Nationwide Connections, Inc., Access One
23 Communications, Inc., Network One Services,
   Inc., 411TXT, Inc., CELL-INFO-USA, INC.,
24 Enhanced Billing Services, Inc., Toll Free
   Connect, Inc., Cripple Creek Holdings, LLC,
25 Built to Last, LLC, Not Fade Away, LLC, He's
   Gone, LLC, The Other One, LLC, Turn on
26 Your Love Light, LLC, China Cat Sunflower,
   LLC, Lazy River Road Holdings, LLC,
27
                Defendant.
28

W02-WEST:5SS1\400529214.3

AMENDED ORDER GRANTING MOTION FOR PRELIMINARY
INJUNCTION RE: ENFORCING OMNIBUS ORDER

102030

0127

RER-84        3748

1    On November 26, 2007, the Court having previously issued a temporary restraining order
2  and an order to show cause re preliminary injunction, held a hearing in connection with the motion
3  filed by The Billing Resource, dba Integretel ("Integretel"), for a preliminary injunction against
4  the Federal Trade Commission ("FTC") and David R. Chase, not individually, but solely in his
5  capacity as receiver (the "Receiver"), preventing them from enforcing as to Integretel that certain
6  Omnibus Order entered on the docket on September 14, 2007 (the "Omnibus Order") in that
7  certain action captioned <u>Federal Trade Commission v. Nationwide Connections, Inc., et al.,</u> Case
8  No. 06-80180-Civ-Ryskamp (the "Florida Action") pending in the United States District Court for
9  the Southern District of Florida (the "Florida Court") and that certain Order Granting Motion for
10  Clarification as to Scope of Stay entered on the docket by the Florida Court in the Florida Action
11  on September 21, 2007 (the "Clarification Order"), insofar as the Clarification Order relates to the
12  Omnibus Order. Appearances were as stated on the record. The Court incorporates herein its
13  Memorandum Decision re Order to Show Cause Regarding Preliminary Injunction filed and
14  entered on November 2, 2007 and further stated its findings of fact and conclusions of law on the
15  record at the hearings it held on November 16, 2007, November 21, 2007, November 26, 2007 and
16  November 27, 2007.

17    **GOOD CAUSE APPEARING,** it is hereby ordered as follows:

18    The FTC and the Receiver, and their officers, agents, servants, employees and attorneys
19  and upon those persons in active concert or participation with them who receive actual notice of
20  the order by personal service or otherwise, are hereby restrained and enjoined until further order of
21  this Court from seeking to implement or enforce in the Florida Court as to Integretel the Omnibus
22  Order or the Clarification Order, as it relates to the Omnibus Order, including without limitation
23  initiating, suggesting or participating in any proceedings to hold Integretel in contempt in
24  connection therewith, or otherwise seeking to compel Integretel to transfer any money or property
25  to the Receiver. The preliminary injunction issued herein does not affect or restrain the parties
26  from prosecuting and responding to appeals filed by Integretel from orders issued by the Florida
27  Court. The Court further orders that the Receiver shall submit any status reports that pertain to
28  Integretel to the Florida Court jointly with Integretel.

-1-

W02-WEST:5SS1\400529214.3

AMENDED ORDER GRANTING MOTION FOR PRELIMINARY
INJUNCTION RE: ENFORCING OMNIBUS ORDER

0128
RER-84    3749

1      Integretel is directed that it shall continue to maintain the sum of $1,762,762.56 in the

2  blocked interest-bearing Debtor in Possession account to which they were transferred pursuant to

3  the terms and conditions of this Court's prior order entered on October 3, 2007, without prejudice

4  to the claims, rights, or defenses of any party, until further order of this Court.

5                   ** END OF ORDER **

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

W02-WEST:5SS1\400529214.3

-2-

AMENDED ORDER GRANTING MOTION FOR
PRELIMINARY INJUNCTION RE: ENFORCING OMNIBUS
ORDER

0129
RER-84   3750

<u>COURT SERVICE LIST</u>

1

2   Office of the U.S. Trustee
    Office of the U.S. Trustee
3   Attn: John Wesolowski, Esq.
    280 South First Street, Room 268
4   San Jose, CA  95113

5   The Billing Resource dba Integretel
    The Billing Resource dba Integretel
6   Attn:  Ken Dawson
    5883 Rue Ferrari
7   San Jose, CA  95138

8   Counsel for The Billing Resource dba Integretel
    Sheppard, Mullin, Richter & Hampton LLP
9   Attn:  Michael H. Ahrens, Esq.
    4 Embarcadero Center, 17th Floor
10  San Francisco, CA  94111-4106

11  David R. Chase, Receiver
    David R. Chase, Receiver for Access One Communications,
12          Inc. and Network One Services, Inc.
    David R. Chase, P.A.
13  Wachovia Center-Penthouse
    1909 Tyler Street
14  Hollywood, FL  33020

15  Counsel for the Receiver David R. Chase
    Jeffrey C. Schneider, Esq.
16  Michelle T. Visiedo, Esq.
    Tew Cardenas LLP
17  Four Seasons Tower – 15th Floor
    1441 Brickell Avenue
18  Miami, FL  33131

19  Counsel for the Receiver David R. Chase
    Walter Oetzell, Esq.
20  Danning, Gill, Diamond & Kollitz, LLP
    2029 Century Park East, Third Floor
21  Los Angeles, CA  90067-2904

22  Counsel for the Federal Trade Commission
    Laura M. Kim, Esq.
23  Michael J. Davis, Esq.
    Collot Guerard, Esq.
24  Federal Trade Commission
    600 Pennsylvania Avenue, NW, Room 286
25  Washington, DC  20580

26  Federal Trade Commission
    Associate Director, Division of Marketing Practices
27  Federal Trade Commission, H-238
    600 Pennsylvania Avenue, N.W.
28

W02-WEST:5SS1\400529214.3

-3-

AMENDED ORDER GRANTING MOTION FOR
PRELIMINARY INJUNCTION RE: ENFORCING OMNIBUS
ORDER

-A20-

0130

RER-84    3751

## Miscellaneous:

<u>07-05156 The Billing Resource v. Chase et al</u>
Type: ap                    Office: 5 (San Jose)              Lead Case: 07-52890
Judge: ASW                  Case Flag: APPEAL

### U.S. Bankruptcy Court

### Northern District of California

Notice of Electronic Filing

The following transaction was received from Schwartz, Steven J. entered on 12/14/2007 at 2:26 PM PST and filed on 12/14/2007
**Case Name:**        The Billing Resource v. Chase et al
**Case Number:**      <u>07-05156</u>
**Document Number:** <u>98</u>

**Docket Text:**
Fourth Request To Take Judicial Notice *in Adversary Proceeding*. Filed by Defendant David R Chase (Attachments: # (1) Appendix 2of5# (2) Appendix 3of5# (3) Appendix 4of5# (4) Appendix 5of5) (Schwartz, Steven)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**J:\CYC\Integretel 4th RJN 1of5.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1017961465 [Date=12/14/2007] [FileNumber=7142350-0] [b26c2df5ce9e5ac5682ae33c60bf52ed0e53b1e292e68c71dc172795d28538f30e 07240f9e80c79a192e6d179bf5ae8c65a0bc186e2c78763db3b749a81597fc]]
**Document description:**Appendix 2of5
**Original filename:**J:\CYC\Integretel 4th RJN 2of5.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1017961465 [Date=12/14/2007] [FileNumber=7142350-1] [0918eaed7a1872baab1eed86533ac276e5d1483bf19445f75dc75b2874038a1c09 13673883047e88e14b20a6e8f5cf8a40d2be56cb4135620e95630082b2826b]]
**Document description:**Appendix 3of5
**Original filename:**J:\CYC\Integretel 4th RJN 3of5.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1017961465 [Date=12/14/2007] [FileNumber=7142350-2] [91a8100b7385b1b7e766987be290f89bdc6f8b6dc726f6c4df101370451f6ad754 726f8b9f99e9f19cbbdda13b03b1d77e525c1506be0f710174613f5012f5de]]
**Document description:**Appendix 4of5
**Original filename:**J:\CYC\Integretel 4th RJN 4of5.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1017961465 [Date=12/14/2007] [FileNumber=7142350-3] [3ad251c28ede7fac2bb6530713ad110cab3308c0f5a970cdd608b5bed1124f6232

0ccf87b8cd4274b72dbcb65d377f67161826bb190611df7e767597795146ee]]
**Document description:**Appendix 5of5
**Original filename:**J:\CYC\Integretel 4th RJN 5of5.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1017961465 [Date=12/14/2007] [FileNumber=7142350-
4] [41b498dcaae649ba2a05427a13ac1c049e531c83097a7d4d9039c1c10e15659da9
eb07f770021025d22f6f58cfd2602a0b8d5bb469e1dd57fa9ae32f5e28ba06]]

**07-05156 Notice will be electronically mailed to:**

Michael H. Ahrens    mahrens@sheppardmullin.com

Ori Katz    okatz@sheppardmullin.com, dwhitehead@sheppardmullin.com

Julie A. Mack    jmack@ftc.gov, dabueid@ftc.gov

Walter K. Oetzell    woetzell@dgdk.com

Jeffrey K. Rehfeld    jrehfeld@sheppardmullin.com, ewalters@sheppardmullin.com

Steven B. Sacks    ssacks@sheppardmullin.com, ewalters@smrh.com

Steven J. Schwartz    sschwartz@dgdk.com

**07-05156 Notice will not be electronically mailed to:**

**RER - 85**

1

```
 1                 UNITED STATES BANKRUPTCY COURT

 2                NORTHERN DISTRICT OF CALIFORNIA

 3                    (SAN JOSE DIVISION)

 4

 5  In re:

 6  THE BILLING RESOURCE,           Case No. 07-52890-ASW

 7                                  Chapter 11

 8                                  San Jose, California
                                    December 7, 2007
 9                                  11:09 a.m.
            Debtor.
10  _____/

11  THE BILLING RESOURCE, dba
    INTEGRETEL, a California
12  corporation,

13          Plaintiff,

14      v.                          A.P. No. 07-5156

15  DAVID R. CHASE, et al.,

16          Defendants.
    _____/

17

18                  TRANSCRIPT OF PROCEEDINGS
           a) MOTION FOR ORDER TO SHOW CAUSE REGARDING
19         PRELIMINARY INJUNCTION AND DECLARATORY RELIEF
       b) OPPOSITION BY DEFENDANT, FEDERAL TRADE COMMISSION
20       c) OPPOSITION BY DAVID R. CHASE, FEDERAL RECEIVER
            OF ACCESS ONE COMMUNICATIONS, INC. AND
21                 NETWORK ONE SERVICES, INC.
           d) MOTION TO DISMISS COMPLAINT PURSUANT TO
22   FRCP RULE 12(b)(1) BY DEFENDANT, DAVID CHASE, AS RECEIVER
                 e) OPPOSITION BY PLAINTIFF
23      f) MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT
                       BY PLAINTIFF
24     g) OPPOSITION BY DAVID R. CHASE, FEDERAL RECEIVER OF
          ACCESS ONE COMMUNICATIONS, INC. AND NETWORK
25                   ONE SERVICES, INC.
```

2

1               TRANSCRIPT OF PROCEEDINGS
                   RE A.P. NO. 07-5156
2        a) MOTION TO UNBLOCK BLOCKED ACCOUNT BY DEBTOR
                      (OFF CALENDAR)
3      b) MOTION FOR ORDER APPROVING INTERIM COMPENSATION AND
          REIMBURSEMENT PROCEDURES FOR PROFESSIONALS BY
4                    ATTORNEY FOR DEBTOR
        c) LIMITED OPPOSITION AND RESERVATION OF RIGHTS AND
5    PRIVILEGES BY DAVID R. CHASE, FEDERAL RECEIVER OF
            ACCESS ONE COMMUNICATIONS, INC. AND
6                 NETWORK ONE SERVICES, INC.
       d) MOTION FOR ORDER APPROVING STIPULATION APPOINTING THE
7    COMMITTEE AS ESTATE REPRESENTATIVE IN ADVERSARY
        PROCEEDING INITIATED BY THERMO CREDIT, LLC BY DEBTOR
8

9           BEFORE THE HONORABLE ARTHUR WEISSBRODT
               UNITED STATES BANKRUPTCY JUDGE
10

11   APPEARANCES:

12

     For the Debtor:          SHEPPARD, MULLIN, RICHTER and
13                            HAMPTON
                              BY:  STEVEN SACKS, ESQ.
14                            Four Embarcadero Center, 17th Floor
                              San Francisco, California 94111
15

16

     For the Federal          DANNING, GILL, DIAMOND &
17   Receiver:                KOLLITZ, LLP
                              BY: WALTER OETZELL, ESQ.
18                            2029 Century Park East, 3rd Floor
                              Los Angeles, California 90067
19                            (APPEARING TELEPHONICALLY)

20

21   For the Committee:       PACHULSKI, STANG, ZIEHL, JONES
                              BY: MAXIM B. LITVAK, ESQ.
22                            150 California Street, 15th Floor
                              San Francisco, California 94111
23

24

25

3

1   APPEARANCES (CONTINUED):

2

3

    For the Federal Trade          UNITED STATES FEDERAL TRADE
4   Commission:                    COMMISSION
                                   OFFICE OF THE GENERAL COUNSEL
5                                  BY: MICHAEL MORA, ESQ.
                                       COLLOT GUERARD, ESQ.
6                                  600 Pennsylvania Avenue, NW
                                   Washington, DC 20580
7
                                   (APPEARING TELEPHONICALLY)
8

9
    For BSG Clearing               KING & SPALDING
10  Solutions:                     BY: FELTON E. PARRISH, ESQ.

11                                 (APPEARING TELEPHONICALLY)

12

13  Court Recorder:                CHRISTINA TAFOLLA
                                   UNITED STATES BANKRUPTCY COURT
14                                 280 South First Street
                                   San Jose, California 95113
15

16
    Transcription Service:         Jo McCall
17                                 Electronic Court
                                   Recording/Transcribing
18                                 2868 E. Clifton Court
                                   Gilbert, Arizona 85297
19                                 Telephone: (480-361-3790

20

21

22

23

24

25

4

1                    P R O C E E D I N G S

2  December 7, 2007                              11:09 a.m.

3                       ---oOo---

4              THE COURT:  <u>Billing Resource.</u>  May I have

5  appearances of counsel first in the courtroom, and then

6  I'll call the list on the phone.

7              MR. SACKS: Steven Sacks of Sheppard, Mullin, for

8  the Debtor.

9              MR. LITVAK: Good morning, Your Honor, Max Litvak,

10 Pachulski, Stang on behalf of the Creditors' Committee.

11             THE COURT: Good morning.  Mr. Mora?

12             MR. MORA: Good morning, Your Honor, Michael Mora

13 for the Federal Trade Commission.

14             THE COURT: Ms Guerard?

15             MS. GUERARD: Good morning, Your Honor, Collot

16 Guerard for the Federal Trade Commission.

17             THE COURT: Mr. Oetzell?

18             MR. OETZELL: Good morning, Your Honor, Walter

19 Oetzell of Danning, Gill, Diamond and Kollitz on behalf of

20 the Federal Receiver.

21             THE COURT: Mr. Parrish?

22             MR. PARRISH: Yes, good morning, Your Honor,

23 Felton Parrish with King & Spalding on behalf of BSG

24 Clearing Solutions.

25             THE COURT: Is there anybody else on the phone?

5

1   Very good.

2           Go ahead Mr. Sacks.

3           MR. SACKS: Your Honor, shall we proceed in the

4   order that's on the calendar?

5           THE COURT: Yes, that would be fine.

6           MR. SACKS: Okay.  The first item on the calendar

7   that we have is the motion to dismiss complaint, which is

8   referring to the adversary proceeding, and that's the

9   Receiver's motion.

10          THE COURT: Yes.  So counsel for the Receiver, do

11  you wish to make any arguments especially those that may

12  not be in your pleadings or those that you want to

13  emphasize?

14          MR. OETZELL: No, Your Honor, but I would suggest

15  that if we go ahead and rule on the motion to amend the

16  complaint, the motion to dismiss may well be rendered moot,

17  if the complaint was going to be amended, and obviously if

18  there's no reason to rule on the --

19          THE COURT: Your voice is trailing off, Mr.

20  Oetzell.

21          MR. OETZELL: Oh.  I'm saying that if we decide

22  the motion to amend the complaint, then this motion to

23  dismiss may well be moot if Your Honor grants the

24  permission to amend the complaint, and then obviously this

25  motion is no longer operative and so I would suggest this

6

1  be trailed until after the ruling on the motion to amend.

2      THE COURT: Okay. Frankly, I have a decision

3  ready on both motions so if you don't want to say anything

4  and you don't want to say anything, and you don't want to

5  say anything, then I could just decide.

6      MR. OETZELL: That's fine, Your Honor. We've said

7  it all in our briefs.

8      THE COURT: Thank you.

9      MR. SACKS: Submitted, Your Honor.

10     THE COURT: Before the Court is the Receiver's

11  motion to dismiss the Receiver from this complaint on the

12  basis that Debtor's filing of the complaint against

13  Receiver without the prior permission from the Florida

14  District Court violates the Barton Doctrine. The Florida

15  District Court will be referred in this decision as the

16  Florida Court.

17     Also before the Court is Debtor's motion for

18  relief to file an amended complaint. Both the FTC and the

19  Receiver oppose Debtor's motion for leave to file an

20  amended complaint. This Court hereby incorporates all of

21  the findings of fact and conclusions of law as set forth in

22  this Court's Memorandum of Decision filed and entered on

23  November 2nd, 2007, subsequently referred to as the

24  Memorandum of Decision.

25     The Receiver bases his motion to dismiss on the

7

1   assertion that the Barton Doctrine precludes this Court

2   from having subject matter jurisdiction over Receiver in

3   this adversary proceeding.  The Court has thoroughly

4   reviewed the discussion of the Barton Doctrine as set forth

5   in this Court's Memorandum of Decision at page 38, line 7

6   through page 49, line 14, as well as the positions of the

7   parties.

8           In the Memorandum of Decision, the Court

9   explained why the Court concluded that determining that the

10  Barton Doctrine is not applicable to this adversary

11  proceeding and why this Court had jurisdiction to determine

12  that the Barton Doctrine is not applicable under the facts

13  of this case.  Nothing in the Receiver's motion alters this

14  Court's analysis as set forth in the Memorandum of

15  Decision.

16          Based on the analysis of the applicability of the

17  Barton Doctrine as set forth in this Court's Memorandum of

18  Decision at page 38, line 7 through page 49, line 14,

19  Receiver's motion to dismiss is denied.

20          Turning to Debtor's motion for leave to file an

21  amended complaint, the Debtor seeks to amend its complaint

22  in essence to add a cause of action for a declaration that

23  Debtor's funds and other property are free from any

24  property interest claimed by Receiver and/or the FTC.  The

25  parties agree that under Federal Rule of Bankruptcy

8

1  Procedure Rule 7015, leave to amend a complaint should be
2  freely granted unless there is a showing of undue delay,
3  bad faith or dilatory motive on the part of the movant,
4  repeated failure to cure deficiencies by amendments
5  previously allowed, undue prejudice to the opposing party
6  by virtue of allowance of the amendment, or futility of
7  amendment.  See Foman versus Davis (Phonetic) 371, US 178
8  at 182, (1962).

9       The Receiver asserts that permitting Debtor to
10 amend its complaint is an exercise in futility because this
11 Court lacks subject matter jurisdiction over Receiver in
12 this adversary proceeding under the Barton Doctrine.  As
13 stated earlier in this oral decision and based on the
14 analysis of the applicability of the Barton Doctrine as set
15 forth in this Court's Memorandum of Decision at page 38,
16 line 7 through page 49, line 14, the Barton Doctrine does
17 not apply in this adversary proceeding and Receiver's
18 opposition to Debtor's motion for leave to file an amended
19 complaint is overruled on that basis -- is overruled as to
20 that basis.

21      The FTC and Receiver oppose Debtor's motion for
22 leave to amend on the basis that the proposed amendment is
23 futile since the proposed amendment would merely re-litigate
24 the issue of the ownership of the subject funds.  Issue
25 preclusion bars re-litigation if three criteria are met.

9

1   First, the issue necessarily decided at the previous

2   proceeding is identical to the one sought to be re-

3   litigated.   Second, the first proceeding ended with a final

4   judgment on the merits, and third, the party against whom

5   preclusion is sought was a party to the first proceeding.

6   In re Reynoso (Phonetic) 477 F3d, 1117 and 1122, 9th Circuit

7   (2007).

8         The first criteria for issue preclusion is not met

9   here, that the issue necessarily decided at the previous

10   proceeding is identical to the one sought to be re-

11   litigated.

12         In the omnibus order, the Florida Court addressed

13   whether the Receiver had a property interest in the abstract

14   but did not address to what particular asset that interest

15   attached.   The only asset that the Debtor had at the time to

16   which the interest could possibly attach were commingled

17   funds.   The issue raised by the proposed fourth cause of

18   action in the amended complaint is whether any interest the

19   Receiver had at the time of Debtor's bankruptcy filing

20   attached to specific funds or assets now held by the Debtor

21   such that Receiver holds a property interest in any specific

22   assets of the Debtor.   That issue was not previously

23   litigated or adjudicated -- litigated in or adjudicated by

24   the Florida Court and thus is not part of the appeal before

25   the Eleventh Circuit.   Debtor is not re-litigating the

10

1   identical issue previously litigated before the Florida
2   Court or on appeal to the Eleventh Circuit.

3          Regarding whether there's any issue preclusion as
4   to any determination made by the Florida Court in the
5   clarification order, there was not final adjudication on the
6   merits of Debtor's interest in the ownership of the subject
7   funds and what interest Debtor held in Debtor's commingled
8   bank accounts as of the petition date.  The clarification
9   order was issued based on an emergency motion by the FTC
10  without a hearing and without Debtor having any opportunity
11  whatsoever to oppose that emergency motion.  Any post-
12  petition determination by the Florida Court regarding the
13  Debtor's and the bankruptcy estate's interest in Debtor's
14  commingled bank accounts as of the petition date was not
15  made on the merits and collateral estoppel would not apply.

16         Because this Court finds that Debtor's proposed
17  amended complaint is not collaterally estopped, the argument
18  of the FTC that the FTC would be unduly prejudiced by the
19  amendment because the amendment would force the FTC to re-
20  litigate yet again an issue that Debtor is collaterally
21  estopped from litigating is overruled.

22         The FTC further argues that the FTC's appeal to
23  the District Court of this Court's preliminary injunction
24  issued in this adversary proceeding divests this Court of
25  jurisdiction to permit Debtor to amend its complaint.

11

1  Quoting from <u>In re Padilla</u>, 222 F3d, 1184, 9th Circuit

2  (2000).  However, the FTC fails to quote the rest of the

3  paragraph, noting that the judge-made doctrine divesting the

4  lower court of jurisdiction over aspects of the case

5  involved in an appeal is not absolute.

6            Are either of you carrying a cell phone that is

7  on?

8            MR. SACKS: No, Your Honor.

9            THE COURT: Is there anybody on the phone that has

10 a cell phone that's on?

11           MR. OETZELL: No.

12           MS. GUERARD: No, Your Honor.

13           THE COURT: Okay.  Because we're getting static

14 here, and that's often caused by cell phones.  Okay.  If

15 anybody has a cell phone that's on, for example on your

16 person or near you, on the phone, please turn it off or take

17 it to another room.

18           I'll repeat the last sentence.  However, the FTC

19 fails to quote the rest of that paragraph, noting that the

20 judge-made doctrine divesting the lower court of

21 jurisdiction over aspects of the case involved in an appeal

22 is not absolute.  The full paragraph reads:

23           "The rule divesting lower courts of jurisdiction

24             of aspects of the case involved in an appeal is a

25             judge-made doctrine designed to avoid the

12

1    confusion and waste of time that might flow from

2    putting the same issue before two courts at the

3    same time.  This rule is not absolute.  For

4    example, a District Court has jurisdiction to take

5    actions that preserve the status quo during the

6    pendency of an appeal but may not finally

7    adjudicate substantial rights directly involved in

8    the appeal.  Absent a stay or supersedeas, the

9    trial order also retains jurisdiction to implement

10   or enforce the judgment or order but may not alter

11   or expand upon the judgment."

12   Padilla, 222 F3d, 1190.

13        Now I'd like to ask you a question, Mr. Sacks.  Is

14   it correct that this whole tracing issue and the whole issue

15   of what interest the Debtor had and the Receiver had in the

16   Debtor's commingled funds is not in fact before the Eleventh

17   Circuit?

18        MR. SACKS: Well, I think that's correct, Your

19   Honor.  It's not in front of the Eleventh Circuit in the way

20   the Court described.  What we've said is that the Receiver

21   does not have a --

22        THE COURT: Well, you said where.

23        MR. SACKS: In the Eleventh Circuit, and in the

24   Florida Court for that matter, we've said that the Receiver

25   cannot prove liability on the part of Integretel without

13

1   having demonstrated an interest in specific property that
2   then would have to be turned over pursuant to the
3   injunction.  So the same issue relates to both questions.
4   One, whether there's any liability at all, and the second
5   question that we want to raise here which is whether any
6   liability there is would attach to specific funds that we
7   brought into the bankruptcy with us.

8          THE COURT: Okay.  But is there an overlap of those
9   issues such that the issue presently before the -- that
10  you're seeking to put before me is in fact before the
11  Eleventh Circuit?

12         MR. SACKS: I don't think so.  The problem is that
13  the Receiver and the Federal Trade Commission argue that by
14  merely raising those things that that creates an overlap,
15  and we don't think it does.  We've said to the Eleventh
16  Circuit that the clarification order was improper because
17  this Court has exclusive jurisdiction, for instance.  We say
18  that here, but we're not doing more than coming here and
19  saying that what we need to do is determine whether the
20  Receiver has any interest in the funds that were in our bank
21  accounts at the time of bankruptcy, which is not a question
22  that's been ruled upon in the Florida Court and is not
23  before the Eleventh Circuit.

24         THE COURT: Okay.  I'll allow Mr. Mora or Mr.
25  Oetzell or both to respond at this time since I asked Mr.

14

1  Sacks that question.

2       MR. OETZELL: Your Honor, Walter Oetzell.  I

3  believe it's clearly before the Court, and it would be

4  astounding to me if the representative of the Debtor would

5  go before the Eleventh Circuit in respect of the breadth of

6  the issues that the Eleventh Circuit has taken on itself to

7  decide and not argue that the equity receivership action

8  required tracing.  Indeed, we have said in our pleadings and

9  demonstrated in our pleadings several times that that was an

10  issue that was raised before the Eleventh Circuit and as

11  Your Honor recalls, the -- excuse me, the not the Eleventh

12  Circuit, the District Court -- and as Your Honor recalls the

13  District Court replied something to the effect that it was a

14  distinction without a difference.

15       It was an issue that was brought up so undoubtedly

16  it will be an issue on appeal, and the Eleventh Circuit has

17  said it has jurisdiction over the clarification order, and

18  that order stated that the funds were property of the

19  receivership, not property of the Debtor, not property of

20  the estate.  The Eleventh Circuit has said that it has

21  jurisdictions over -- or more precisely it is carrying with

22  it the question of whether it has jurisdiction over the

23  portions of the September 14th order, which of course is the

24  omnibus order, finding that the funds were receivership

25  property and directing turnover of that property.  Again, it

15

1    would be astounding to me and, you know, that the

2    representative arguing in front of the Eleventh Circuit in

3    such a broad situation would not be arguing that tracing was

4    required and not performed.

5            THE COURT: Mr. Mora, did you want to say

6    something?

7            MR. MORA: Yes, Your Honor.  Michael Mora for the

8    Federal Trade Commission.  Your Honor, I have before me

9    which of course the Receiver -- I mean I'm sorry, the Debtor

10   itself could file with the Court as a matter of judicial

11   notice -- I have before me the brief, the appellate brief,

12   that the Debtor filed just this Tuesday I believe, before

13   the Eleventh Circuit, and if the Court permits me, I could

14   make a proffer by way of just reading verbatim from the

15   heading of the argument.

16           THE COURT: Sure.  And if you want to read specific

17   text, you may.

18           MR. MORA: Thank you, Your Honor.

19           I'm reading just from the argument headings, and I

20   think that's enough.

21           THE COURT: Before you do that, Mr. Mora --

22           MR. MORA: The argument headings --

23           THE COURT: Mr. Mora?

24           MR. MORA: Yes, Your Honor.

25           THE COURT: Before you do that, have you read the

16

1  briefs in the Eleventh Circuit?

2          MR. SACKS: Yes, Your Honor.

3          MR. MORA: Have I read them?

4          THE COURT: No, no, I was pointing to Mr. Sacks.

5  I'm sorry.

6          MR. SACKS: There's one brief that's been filed,

7  and that's Integretel's brief, and I'm familiar generally

8  with that brief.

9          THE COURT: You've read it.

10          MR. SACKS: I've read it.

11          THE COURT: Go ahead, Mr. Mora.

12          MR. MORA: Thank you, Your Honor.

13          Roman Numeral II of the argument section, the

14  heading for the whole section is, and I quote:

15              "The District Court erred in holding that the

16              reserve amounts were due and owing to the

17              Receiver, and that Integretel was holding them for

18              the former clients' benefits or on their behalf."

19  And then subsection c) of this argument, the argument

20  headings read as follows, subsection c):

21              "The reserve amounts were not due and owing, and

22              in any event, the former clients had no property

23              interests that the Receiver could have

24              distributed."

25  Subsection 1, subsection c):

17

1    "The reserve amounts were not due and owing."
2    Subsection 2 of that section:
3        "The former clients had no property interest in
4        the reserve funds."
5    End of quote.  Those are the argument headings from the
6    appellate brief that they just filed before the Eleventh
7    Circuit this week.  And it's our position that precisely the
8    same, the identical issue is what they seek to add to their
9    complaint with this motion.
10       THE COURT: Go ahead, Mr. Sacks.
11       MR. SACKS: Your Honor, that's not correct.  We
12   don't seek to add precisely the same issue at all.  The
13   question of whether there is liability on the part of
14   Integretel pre-bankruptcy to the Receiver is completely
15   different than the question of whether post-bankruptcy the
16   Receiver has any interest in the funds that we started this
17   bankruptcy with, and that issue that we seek to present --
18   the latter issue is what we seek to present here.
19       It's never been adjudicated in Florida as the
20   Court noted earlier in its earlier ruling.  The Florida
21   Court made no reference to any specific funds and any
22   interest that the Receiver had never attached to any
23   specific funds, and so the question is a normal one in a
24   Bankruptcy Court which is, does the Receiver, as a result of
25   a State Court or Federal Court adjudication, have some

18

1  interest in the Debtor's -- the property in the Debtor's

2  possession, and whether it's a lien or ownership or trust or

3  whatever it is, that's the job of this Court.

4        And we obviously still have to litigate in Florida

5  or in the Eleventh Circuit now whether there's any liability

6  at all, whether the Florida Court in fact got it wrong and

7  those headings refer to the argument that since there was

8  never any property interest at all to begin with, whether

9  that precluded the Florida Court from finding that we had to

10 turn over something.  Even though they couldn't find

11 something to turn over, the Florida Court nonetheless

12 ordered us to pay money to the Receiver, and we argue that's

13 improper because without a specific thing that was being

14 held, the segregated fund, it was improper to do in Florida

15 to begin with.

16        THE COURT: If I understand what you just said, I'd

17 like to repeat it, and then I'd like you to tell me whether

18 I've understood it correctly.  That the issue of whether or

19 not what the Florida Court did is before the Eleventh

20 Circuit in all its respects, including the question about

21 whether the Florida Court could order funds be turned over

22 to the Receiver by the pre-bankruptcy Debtor because there

23 was no tracing.

24        That issue is before the Eleventh Circuit.  The

25 issue that you say is before me is whether something or

19

1    everything changed as of the date the Debtor filed for

2    bankruptcy, so that the distinction is everything that

3    occurred prior to the bankruptcy is before the Eleventh

4    Circuit, and everything that occurred as of the minute of

5    the bankruptcy and subsequent to that is before me.  Now is

6    that correct?  Because if you have raised the issue of

7    tracing with respect to the pre-bankruptcy Debtor, and that

8    issue is being litigated by the -- adjudicated by the

9    Eleventh Circuit, then I can't adjudicate it.  But I may

10   misunderstand what you're saying, but I have to tell you

11   that I'm not entirely clear what you're saying.

12           If the issue of tracing -- if there had never been

13   a bankruptcy, let's put it that way -- there had never been

14   a bankruptcy -- then of course I wouldn't be here, but if

15   there had never been a bankruptcy, then all of the issues

16   regarding tracing and whether what the Florida Court did was

17   right or wrong would be before the Eleventh Circuit.

18   Subsequent, when there was a bankruptcy, the question is

19   what I got and what I got is whether -- as because of the

20   bankruptcy, not because of a failure to pre-petition trace,

21   but because of the bankruptcy, I got some -- that there's --

22   and because you have possession of these funds and there's a

23   bankruptcy, that those issues are not before the Eleventh

24   Circuit.

25           But if I'm missing it, then you have to clarify

20

1  it.

2        MR. SACKS: No, I think Your Honor is on the right

3  track and --

4        THE COURT: That's not a very specific statement.

5  That sounds like I have some of it right and some of it

6  wrong.

7        MR. SACKS: No, I think you have it right, and I

8  think that it is comparable to the issue of a State Court or

9  a pre-bankruptcy court adjudication as to who owns a piece

10 of property, and you can continue to litigate that issue in

11 the original forum, but this Court would have to decide if

12 the Debtor, alleged Debtor, then filed for bankruptcy,

13 whether whatever the State Court's adjudication was, whether

14 that created a lien or other interest in the property, such

15 that it should be enforced in this Court to the exclusion of

16 other, for example, secured creditors.  You've heard from

17 secured creditors in this case, that they think they have an

18 interest in all of Integretel's bank accounts and to the

19 disadvantage of unsecured creditors who say that the

20 Receiver's claim is no different than every -- most other

21 unsecured creditors in this case who similarly had an

22 interest in reserves like that that the Receiver claims.

23        In other words, each of the customers who had

24 reserves deducted from the payments that they received could

25 go to court, assuming there was no bankruptcy here, get an

21

1  order like the one the Receiver got in theory that says you
2  owe us money, and then this Court wouldn't feel compelled to
3  stand aside merely because there was still a dispute about
4  whether they even owed the money, and so I think this Court
5  still has to decide that post-bankruptcy question.
6        MR. MORA: Your Honor, may I respond?  This is
7  Michael Mora.
8        THE COURT: Yeah.  Wait a second.
9        MR. MORA: Your Honor?
10       THE COURT: Wait a second, Mr. Mora.  Just wait one
11 second.
12       MR. SACKS: Your Honor is not speaking into the
13 microphone, so they may not be able to hear.
14       THE COURT: Wait a second.
15       MR. MORA: Thank you.
16       THE COURT: Okay.  Go ahead, Mr. Mora.
17       MR. MORA: Thank you, Your Honor.  Your Honor, we
18 think that the only real way to resolve this is for the
19 Court to have before it the appellate brief that they just
20 filed.  And secondly, in response to the argument that was
21 just made, one thing that is different about where the FTC
22 stands on this is that we're not just an ordinary private
23 creditor.  The law enforcement action in Florida is a
24 consumer fraud case.  It's a fraud case.  The proceeds that
25 the Receiver is seeking to recover in the contempt

22

1  proceeding are fraud proceedings, and the receivership

2  proceeding is a Federal equity receivership ancillary to a

3  consumer fraud case.  Those are all fundamental distinctions

4  that take it out of any analysis that this is just an

5  ordinary claim of a creditor with an ordinary contract

6  claim.  It's not that at all.

7         THE COURT: Except that once the bankruptcy is

8  filed, what authority do you have that once a bankruptcy is

9  filed, that all of a sudden you're catapulted because it's a

10  fraud enforcement proceeding into the status of having your

11  claim superior to that of secured creditors and superior to

12  that of the law that requires tracing for a constructive

13  trust in order for a Bankruptcy Court to adjudicate that

14  these are not funds that are property of the estate.  What

15  authority is there that this enforcement proceeding allows

16  me to prefer you over other creditors either secured or

17  unsecured.  What specific case does that?  What statute does

18  that?

19         MR. MORA: Your Honor, it's not a catapult at all.

20  It rests solidly on the rulings that the District Court

21  issued in particular the omnibus order and the contempt

22  proceeding which lays out --

23         THE COURT: But the omnibus order was pre-

24  petition -- wait a second, Mr. Mora --

25         MR. MORA: Yes, Your Honor.

23

1        THE COURT:  -- the omnibus order was pre-petition.

2        MR. MORA: Yes, that's correct.

3        THE COURT: Okay.  So you have whatever rights you

4   have pursuant to the omnibus order as long as the omnibus

5   order stands, but how does that affect what rights you have

6   in a bankruptcy case?

7        MR. MORA: Well, Your Honor, to begin with, the

8   property rights are determined in accordance with non-

9   bankruptcy law in the first instance, and the relevant

10  rights of the FTC and the Receiver and the ancillary

11  receivership proceeding are derived from the law of equity

12  receivership, number one; number two, the injunctive orders

13  that the District Court issued in the Florida case, and

14  number three, the rulings that that court made sitting in

15  that equity receivership proceeding to enforce its own

16  equitable injunctive orders.  And all of that law, we have

17  laid it out in various briefs that we have filed, both in

18  these injunctive proceedings and also in the cash collateral

19  proceeding, and of course it is all laid out in the District

20  Court's omnibus order.  There's a whole body of case law,

21  much of it from the Ninth Circuit --

22        THE COURT: But not bankruptcy case law.

23        MR. MORA: No, because bankruptcy case law is not

24  where our property rights come from, Your Honor.

25        THE COURT: Except that -- well, okay.  I

24

1   understand.

2           MR. OETZELL: Your Honor, it's Walter Oetzell.

3           TH COURT: Yes, Mr. Oetzell.

4           MR. OETZELL: The answer at least in respect to the

5   Federal Receiver concerning this catapulting to the top

6   question is that we're not being catapulted to the top in

7   respect to the claim.  We have a determination that this is

8   our property.

9           THE COURT: What is your property?

10          MR. OETZELL: The receivership funds, 1.8 million

11  dollars of them.

12          THE COURT: But they're commingled funds, and in a

13  bankruptcy --

14          MR. OETZELL: Well, you know, that has already --

15          THE COURT: Mr. Oetzell, you're a bankruptcy

16  lawyer; are you not?

17          MR. OETZELL: Yes, sir.

18          THE COURT: Okay.  So in a bankruptcy context, what

19  does that mean, that these commingled funds are your funds;

20  what does that mean to a Bankruptcy Court?

21          MR. OETZELL: Your Honor, the answer is --

22          THE COURT: What does that mean in a bankruptcy

23  case?

24          MR. OETZELL: Is that what Mr. Mora said is

25  correct, and that is, that property rights are determined by

25

1  State law.  Those property rights have been determined by

2  State law in the District Court of Florida.  The issue is

3  the question of the extent to which tracing was determined

4  in Florida, and indeed I think we all agree that if tracing

5  was raised and determined in Florida, then that is for the

6  Eleventh Circuit to decide.  The fact that it's a bankruptcy

7  case did not give the Debtor any greater rights or any

8  lesser rights in property than it had right before the

9  bankruptcy.

10         THE COURT:  How about the Debtor's right to

11  possession?

12         MR. OETZELL:  The Debtor's right to possession does

13  not convert it into -- the fact of Debtor's possession does

14  not automatically convert it into property of the estate.  I

15  know that has been shaded by the Debtor on several

16  occasions, but it doesn't happen to be the case.  But it

17  goes back to the issue of whether or not they brought up the

18  issue of tracing in the State Court action, and I will

19  read -- did I say State Court -- I mean the District Court

20  action, and I will read to you here from the omnibus order.

21  It is page 3 of the omnibus order, page 10 of our exhibit to

22  the declaration of David Chase filed early on in this case,

23  and it's the second paragraph.  Integretel maintains that,

24  quote:

25         "The reserves do not take the form of any actual

26

1              funds that Integretel has segregated or otherwise

2              set aside and maintains that it keeps the reserve

3              in a pooled account it tracks via an internal

4              accounting entry."

5          THE COURT: Your voice is starting to trail off,

6  Mr. Oetzell.  You've got to keep your voice up and speak

7  slower.

8          MR. OETZELL: Where did I trail off?

9          THE COURT: When you were quoting.

10         MR. OETZELL: I will repeat.  This is the second

11  paragraph, page 3 of the omnibus order, page 10 of our

12  exhibit to the declaration of David Chase.

13             "Integretel maintains that the reserves do not

14            take the form of any actual funds that Integretel

15            has segregated or set aside and maintains that it

16            keeps the reserves in a pooled account it tracks

17            via an internal accounting entry.  Such is a

18            distinction without a difference since the TRO

19            captures all funds held on behalf of or for the

20            benefit of defendant."

21  I will also read from the declaration of Mr. Dawson which

22  was filed in respect of the Debtor's response to a

23  memorandum of law why Integretel should not be held in

24  contempt.  That's Exhibit E to our declaration of David

25  Chase, page 246.  This is Mr. Dawson's words, paragraph 9: