# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>THE BILLING RESOURCE, dba Integretal, a California corporation,<br><br>                      Debtor.<br><br>DAVID R. CHASE, not individually, but solely in his capacity as receiver for Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., et. al,<br><br>                      Appellant,<br><br>    vs.<br><br>THE BILLING RESOURCE, dba INTEGRETEL, a California corporation,<br><br>                      Appellee. | USDC Case No. C-07-06210-JW<br><br>(Related to USDC Case No. C-07-05758-JW)<br><br>Bankruptcy Case No. 07-52890-ASW<br><br>[Chapter 11]<br><br>Adv. Proc. No. 07-05156 ASW<br><br>**OPENING BRIEF OF APPELLANT DAVID R. CHASE, FEDERAL RECEIVER**<br><br>Date: June 16, 2008<br>Time: 9:00 a.m.<br>Place: 280 S. First Street<br>       San Jose, CA<br>Judge: Hon. James Ware<br>Ctrm: 8 – 4th Floor |

Howard Kollitz [State Bar No. 059611],
Walter K. Oetzell [State Bar No. 109769] and
Steven J. Schwartz [State Bar No. 200586] of
DANNING, GILL, DIAMOND & KOLLITZ, LLP
2029 Century Park East, Third Floor
Los Angeles, California 90067-2904
Telephone: (310) 277-0077
Facsimile: (310) 277-5735
Email: hkollitz@dgdk.com
Email: woetzell@dgdk.com
Email: sschwartz@dgdk.com

Attorneys for Defendant/Appellant, David R. Chase, as Receiver

-1-

322460.2 [XP]   24774

# TABLE OF CONTENTS

**Page**

I. STATEMENT OF BASIS OF APPELLATE JURISDICTION ..................... 2

II. STATEMENT OF ISSUES PRESENTED ...................................... 2

    A. The Bankruptcy Court Lacked Subject Matter Jurisdiction................. 3

    B. The Entire Proceeding is Barred by Res Judicata/Collateral Estoppel. ............................................................................... 4

    C. The Bankruptcy Court's Application of the Standard for Preliminary Injunction was in Error. ....................................... 5

III. STANDARD OF REVIEW ....................................................... 5

IV. STATEMENT OF THE CASE..................................................... 6

V. FACTUAL BACKGROUND ....................................................... 8

VI. ARGUMENT ....................................................................... 18

    A. The Bankruptcy Court Lacked Jurisdiction To Enjoin The Receiver. ........................................................................... 18

        1. The Debtor Failed to Obtain Permission From the District Court to Sue the Federal Receiver. ........................ 18

            a. The *Gilchrist* Decision is Wholly Distinguishable From the Case at Bar and Does Nothing to Undermine the Applicability of the *Barton* Doctrine. ..................................... 20

            b. The Bankruptcy Court May Not Sit in Review of The District Court...................................... 24

            c. The Federal Receiver is Not a Custodian of the Debtor............................................... 25

        2. Unlike Integretel, the Federal Receiver does not need permission to sue Integretel as a Debtor in Possession in the Florida District Court...................... 28

        3. The Florida District Court has Exclusive Jurisdiction Over the Subject Funds. .......................................... 30

    B. The Entire Adversary Proceeding Is Barred By Res Judicata And Collateral Estoppel. ........................................... 38

        1. The Legal Standard. ................................................. 38

-i-

1

## TABLE OF CONTENTS (cont.)

2
**Page**

3
       2.   The Bankruptcy Court Erred in Failing to Apply Res
            Judicata and Collateral Estoppel to Integretel's

4
            Claims for Injunctive Relief............................................. 41

5
       3.   Alleged "Commingling" of the Subject Funds Does
            Not Create a New Triable Issue of Fact..................................... 45

6

7
   C.   Integretel Failed To Satisfy The Standards For Injunctive
      Relief.................................................................................... 47

8
       1.   Integretel did not demonstrate a likelihood of success
            on the merits with regard to claims against the

9
            Federal Receiver.................................................................. 48

10
       2.   Integretel's Likelihood of a Successful
            Reorganization is Purely Speculative. ...................................... 48

11
       3.   Integretel Failed to Show Irreparable Harm. ............................. 48

12
VII.   CONCLUSION............................................................................. 50

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

Airwork Corp v. Markair Express, Inc. (In re Markair, Inc.),
  172 B.R. 638 (9th Cir. BAP 1994) ..................................................47

Americana Fabrics, Inc. v. L & L Textiles, Inc.,
  754 F.2d 1524 (9th Cir. 1985) .......................................................39

Baldwin v. Iowa State Traveling Men's Ass'n,
  51 S.Ct. 517, 283 U.S. 522, 75 L.Ed. 1244 (1931)........................38

Barton v. Barbour,
  104 U.S. 126, 26 L.Ed. 672 (1881)...............................3, 24, 27, 30

Blasi v. Williams,
  775 F.2d 1017 (9th Cir.1985) .........................................................5

Brown v. Felsen,
  442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979)....................38

Carter v. Rogers,
  220 F.3d 1249 (11th Cir. 2000) ...........................................18, 19, 24

CFTC v. Topworth Int'l, Ltd.,
  205 F.3d 1107 (9th Cir. 2000) .......................................................42

Chbat v. Tleel (In re Tleel),
  876 F.2d 769 (9th Cir.1989). ........................................................47

Chicot County Drainage Dist. v. Baxter State Bank,
  308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940)..........................35

Children of the Rosary v. Phoenix,
  154 F.3d 972 (9th Cir.1998) ..................................................5, 6, 47

Christopher Village, L.P. v. U.S.,
  360 F. 3d 1319 (Fed. Cir. 2004) .......................................32, 33, 34

Citibank, N.A. v. Nyland, (CF8) Ltd.,
  839 F.2d 93 (2d Cir. 1987) ............................................................37

Clayton v. Republic Airlines, Inc.,
  716 F.2d 729 (9th Cir.1983) ...........................................................5

Costantini v. Trans World Airlines,
  681 F.2d 1199, (9th Cir. 1982) ......................................................40

Crown Vantage, Inc. v. Fort James Corporation,
  421 F.3d 963 (9th Cir.2005) .......................... 18, 19, 24, 28, 29

-iii-

1

## TABLE OF AUTHORITIES (cont.)

2

<u>Page(s)</u>

3    Durfee v. Duke,
         375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963)...............................39
4
     Eller Industries, Inc. v. Indian Motorcycle Manufacturing, Inc.
5         ("IMMI"),
         929 F. Supp. 369 (D. Colo. 1995).......................................34, 35, 37
6
     Elliot v. Bumb,
7         356 F.2d 749 (9th Cir. 1966) .......................................................45

8    Federal Trade Commission v. Nationwide Connections, Inc., et. al.,
         Case no. 06-80180-CIV-RYSKAMP/ VITUNAC .......................2, 8
9
     Fischer v. American United Life Insurance Co.,
10        314 U.S. 549, 62 S. Ct. 380, 86 L.Ed. 444 (1942)............................27

11   FTC  v. Productive Marketing, Inc.,
         136 F. Supp. 2d 1096 (C.D. Cal. 2001) .....................35, 36, 37, 46
12
     Gilchrist v. General Electric Capital Corporation,
13        262 F.3d 295 (4th Cir. 2001) .................... 4, 20, 21, 22, 23, 24

14   Gregorio T. v. Wilson,
         59 F.3d 1002 (9th Cir.1995) ........................................................6
15
     In re Advent Management Corp.,
16        178 B.R. 480 (9th Cir. BAP 1995), aff'd, 104 F. 3d 293 (9th Cir.
         1997) .........................................................................45, 47
17
     In re Citx Corp.,
18        302 B.R. 144 (Bankr. E.D. Pa. 2003) .............................26, 27, 28

19   In re Esgro, Inc.,
         645 F. 2d 794 (9th Cir. 1982) ...................................................45
20
     In re Goldberg,
21        158 B.R. 188 (Bankr. E.D.Cal.1993)...........................................45

22   In re Harris,
         2007 WL 2456202 at *8 (S.D.Cal., August 21, 2007) ...................30
23
     In re International Nutronics,
24        28 F.3d 965 (9th Cir.1994) .......................................................40

25   In re North American Coin & Currency, Ltd.,
         767 F. 2d 1573 (9th Cir. 1985) ...........................................45, 46
26
     In re Paine,
27        283 B.R. 33 (9th Cir. BAP 2002) ...........................................39, 40

28

-iv-

# TABLE OF AUTHORITIES (cont.)

**Page(s)**

In re Slimick,
928 F.2d 304 (9th Cir. 1990) ......................................................40

Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,
456 U.S. 694, 102 S.Ct. 2099, 2104 n. 9, 72 L.Ed.2d 492 (1982) ...........28, 35

Jones v. Gordon,
792 F.2d 821 (9th Cir.1986) ..........................................................5

Kashani v. Fulton, (In re Kashani),
190 B.R. 875 (9th Cir. BAP 1995) ...............................................24, 29

Leonard v. Vrooman,
383 F.2d 556 (9th Cir.1967) .......................................................30

Lurie v. Blackwell,
211 F.3d 1274 (Table) 2000 WL 237966 at *2 (9th Cir. 2000) .....................30

Maddox v. Black, Raber-Kief & Assocs.,
303 F.2d 910 (9th Cir. 1962) ......................................................40

McClain v. Apodaca,
793 F.2d 1031 (9th Cir. 1986) .....................................................41

Medical Development Intern. v. California Dept. of Corrections and
Rehabilitation,
2008 WL 436930 (E.D.Cal., Feb 14, 2008)........................................18

Montana v. United States,
440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)................................39

National Bank of Alaska v. Erickson (In re Seaway Express Corp.),
912 F.2d 1125 (9th Cir.1990) ......................................................47

Owens v. Kaiser Foundation Health Plan,
244 F.3d 708, 713 (9th Cir.2001) ..................................................39

Reed v. Allen,
52 S.Ct. 532, 286 U.S. 191, 76 L.Ed. 1054 (1932)............................39, 42

Riehle v. Margolies,
279 U.S. 218, 49 S. Ct. 310, 73 L.Ed. 669 (1929)................................27

Robi v. Five Platters, Inc.,
838 F.2d 318 (9th Cir.1988) .......................................................5, 40

SEC v. Wencke,
622 F.2d 1363 (9th Cir. 1980) .........................................35, 36, 42, 46

SEC v. Wolfson,
309 B.R. 612 (Bankr.D.Utah 2004; see section VI.A infra] ....4, 31, 32, 33, 34

-v-

## TABLE OF AUTHORITIES (cont.)

Page(s)

SEC vs. Elfindepan,
    S.A., No. 1:00CV00742, 2002 WL 31165146, at *4 (M.D.N.C.
    2002) ........................................................................................36

SEC vs. Pinez,
    989 F. Supp. 325 (D. Mass. 1997) .....................................36

SEC vs. Universal Fin.,
    760 F.2d 1034 (9th Cir. 1985) ...........................................35

Stoll v. Gottlieb,
    305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938)............35, 39

Title v. United States,
    263 F.2d 28 (9th Cir.1959) ...............................................39

United States v. F. & M. Schaefer Brewing Co.,
    356 U.S. 227, 78 S.Ct. 674, 2 L.Ed.2d 721 (1958)..........40

United States v. Hall,
    472 F.2d 261 (5th Cir. 1972) .............................................36

Yanow v. Weyerhauser Steamship Co.,
    274 F.2d 274 (9th Cir.1959) ...............................................39

**Statutes**

11 United States Code,

    § 101(11) ......................................................................26, 27
    § 362..............................................................................21
    § 362(a)(2).....................................................................29
    § 362(b)(4) .............................................................4, 29, 44
    § 543..............................................................................25
    § 544(a)(3).....................................................................47
    § 1334(c) .......................................................................24
    § 1334(e) .......................................................................25

28 United States Code,

    § 158 (a) (1)....................................................................2
    § 754........................................................................4, 30
    § 962..............................................................................30
    § 1334(e) ....................................................................20, 21

United States Bankruptcy Code,

    § 362..............................................................................29
    § 543..............................................................................26

-vi-

# TABLE OF AUTHORITIES (cont.)

**Page(s)**

**Other Authorities**

18 Moore's Federal Practice,
  § 132.01[2], p. 132-11 (James Wm. Moore ed., 3rd ed. 2006) ...............40, 43

18 Moore's Federal Practice,
  § 132.01[3], p. 132-12 (James Wm. Moore ed., 3rd ed. 2006) .....................41

322460.2 [XP]      24774

1    Appellant and Defendant below, David R. Chase, not individually, but solely

2  in his capacity as Receiver for Nationwide Connections, Inc., Access One

3  Communications, Inc., Network One Services and other related entities ("the Federal

4  Receiver"), hereby submits his Opening Brief on appeal:

5

6                                    **I.**

7          **STATEMENT OF BASIS OF APPELLATE JURISDICTION**

8    This is an appeal from an Order from the United States Bankruptcy Court for

9  the Northern District of California, San Jose Division, in the adversary proceeding

10 entitled In re The Billing Resource, dba Integretel, a California corporation, Debtor,

11 The Billing Resource dba Integretel, a California corporation, Plaintiff,  vs. Federal

12 Trade Commission, and David R. Chase, not individually but solely in his capacity

13 as receiver for Nationwide Connections, Inc., Access One Communications, Inc.,

14 Network One Services, Inc., et. al., Defendants, Bankruptcy Case No. 07-52890,

15 Adversary Proceeding No. 07-05156.  It is the appeal of a final Order entered by the

16 Bankruptcy Court and is appealable to the District Court pursuant to 28 U.S.C. § 158

17 (a) (1).

18

19                                   **II.**

20            **STATEMENT OF ISSUES PRESENTED**

21    The issue presented in this appeal is whether the Bankruptcy Court erred in

22 entering the November 28, 2008 and November 30, 2007 Order re Preliminary

23 Injunction (collectively the "Preliminary Injunction") enjoining the Federal Receiver

24 from enforcing the September 14, 2007 and September 21, 2007 Orders (collectively,

25 the "District Court Orders") of the United States District Court for the Southern

26 District of Florida (the "Florida District Court" or the "District Court") in the case of

27 Federal Trade Commission v. Nationwide Connections, Inc., et. al., Case no. 06-

28 80180-CIV-RYSKAMP/ VITUNAC, and also preventing the Federal Receiver from

-2-

1  reporting to the Florida District Court as to the status of his activities without the
2  consent of Integretel ("Integretel" or the "Debtor"). The September 14, 2007 Order
3  (the "September 14th Order" or the "Omnibus Order") held that $1,762,762.56 held
4  by the Debtor was property of the Federal Receiver, entered prior to Integretel's
5  bankruptcy. It ordered the turnover of those funds (the "Subject Funds") to the
6  Federal Receiver, and it required Integretel to show cause why it should not be held
7  in contempt for failing to turn over the Subject Funds. The September 21, 2007
8  Order (the "September 21st Order" or the "Clarification Order") reiterated that the
9  Court had determined, again pre-bankruptcy, that the Subject Funds are the property
10 of entities being liquidated by the Federal Receiver (the "Receivership Entities") and
11 not property of the Debtor. In particular, the issues on appeal can be broken down
12 into the following categories:

13
14        **A.    The Bankruptcy Court Lacked Subject Matter Jurisdiction.**

15        The Bankruptcy Court lacked subject matter jurisdiction to issue the
16 Preliminary Injunction just because Debtor failed to obtain permission from the
17 Florida District Court before suing the Federal Receiver, as required by the "Barton
18 Doctrine." Barton v. Barbour, 104 U.S. 126, 127, 26 L.Ed. 672 (1881). As
19 addressed in detail below, the Barton Doctrine barred Integretel from initiating a
20 lawsuit in a foreign jurisdiction (the Bankruptcy Court) against the Federal Receiver
21 without express permission from the appointing court (the Florida District Court),
22 and without such permission the Bankruptcy Court lacks subject matter jurisdiction.
23 The Bankruptcy Court erred in finding that the Barton Doctrine did not apply here.

24        The Bankruptcy Court also erred in finding that the Barton Doctrine would
25 apply to the Federal Receiver with regard to his enforcing the District Court Orders.
26 There is no need for filing an action against the Debtor, so neither the Federal
27 Receiver nor the District Court needs permission from the Bankruptcy Court to
28 enforce the District Court Orders. The Florida District Court's September 14, 2006

-3-

322460.2 [XP]    24774

1  pre-bankruptcy Order is self-executing.  The Florida District Court also ruled post-
2  petition that the enforcement of the District Court Orders is not affected by the
3  automatic stay [11 U.S.C. § 362(b)(4)], and the Florida District Court had
4  jurisdiction to make this determination.

5       The Bankruptcy Court also erred in finding that it has exclusive jurisdiction
6  over the Subject Funds, relying on Gilchrist v. General Electric Capital Corporation,
7  262 F.3d 295 (4th Cir. 2001).  The Florida District Court had and has exclusive
8  jurisdiction over the Subject Funds, and that jurisdiction is conferred by both
9  statutory and judicial authority [28 U.S.C. § 754, 1962; SEC v. Wolfson, 309 B.R.
10 612 (Bankr.D.Utah 2004) see section VI.A infra].  The District Court is not divested
11 of that jurisdiction by the bankruptcy filing or Bankruptcy Court, and neither
12 Gilchrist nor any other authority allows the Article I Bankruptcy Court to review or
13 ignore the Orders of the Article III Court.

14

15     **B.     The Entire Proceeding is Barred by Res Judicata/Collateral**
16            **Estoppel.**

17      The Bankruptcy Court erred in holding that the issues upon which it based the
18 Preliminary Injunction are not barred from relitigation by collateral estoppel and/or
19 res judicata. As discussed above and below, the District Court held, pre-bankruptcy,
20 that the Subject Funds were property of the Federal Receiver and not Integretel's
21 property.

22      Rather than giving effect to the clear rulings of the District Court, the
23 Bankruptcy Court took on the role of sitting in review of the District Court and its
24 procedure to conclude that the District Court somehow ruled on different issues.  In
25 addition, it raised a case with limited, if any, applicability here to justify the position
26 that it did not have to recognize the District Court's decision.

27 ///
28 ///

-4-

322460.2 [XP]    24774

C.    **The Bankruptcy Court's Application of the Standard for Preliminary Injunction was in Error.**

The Bankruptcy Court abused its discretion in not denying the Preliminary Injunction on the basis that the Debtor failed to satisfy the evidentiary requirements necessary to obtain a preliminary injunction.  The Debtor failed to show a likelihood of success on the merits in its claims that the Subject Funds are property of the bankruptcy estate and not property of the Federal Receiver, that Integretel would suffer irreparable harm without the injunction, and that there was a likelihood of successful reorganization.

The Bankruptcy court also abused its discretion in entering the Preliminary Injunction which is overbroad, by adding other language enjoining the Federal Receiver from "suggesting...any proceedings" to hold Debtor in contempt, and by enjoining the Federal Receiver from reporting to or communicating with the Florida District Court that appointed him as its "agent" without the joint participation and agreement of the Debtor.

### III.

### STANDARD OF REVIEW

The Bankruptcy Court's decision on subject matter jurisdiction is reviewed de novo.  Jones v. Gordon, 792 F.2d 821, 824 (9th Cir.1986); Clayton v. Republic Airlines, Inc., 716 F.2d 729, 730 (9th Cir.1983).  The standard of review on the Bankruptcy Court's ruling on the applicability of res judicata and/or collateral estoppel is de novo. Robi v. Five Platters, Inc., 838 F.2d 318, 321 (9th Cir.1988) (citations omitted). "The preclusive effect of a judgment in a prior case presents a mixed question of law and fact in which the legal issues predominate." Id. (citing Blasi v. Williams, 775 F.2d 1017, 1018 (9th Cir.1985)).  The standard of review for the grant or denial of a preliminary injunction is abuse of discretion. Children of the Rosary v. Phoenix, 154 F.3d 972, 975-76 (9th Cir.1998); Gregorio T. v. Wilson, 59

-5-

1  F.3d 1002 (9th Cir.1995).  To obtain a preliminary injunction, the moving party must
2  show a likelihood of success on the merits and a possibility of irreparable injury or
3  the existence of serious questions going to the merits and a balance of hardships
4  tipping in movant's favor.  Children of the Rosary, 154 F.3d at 974-75.

## IV.

## STATEMENT OF THE CASE

8      The United States Bankruptcy Court for the Northern District of California
9  (the "Bankruptcy Court") entered the Preliminary Injunction which directly conflicts
10 with and contradicts the District Court Orders which determined, pre-petition, that
11 $1,762,762.56 held by the Debtor were property of the Federal Receiver and ordered
12 Integretel to turn those funds over under pain of contempt.  This Preliminary
13 Injunction also directly interferes and, indeed, prohibits the Federal Receiver from
14 performing the duties imposed upon him by the District Court.  It blocks the
15 enforcement of the District Court Orders.  In fact, it goes so far as to prohibit the
16 Federal Receiver, an agent of the District Court, from even filing a status report
17 without the Debtor's agreement.

18      It was obtained by the Debtor to avoid complying with the District Court's
19 clear unambiguous directives to turn over the Subject Funds.  The manner in which it
20 was obtained is contrary to a century and a quarter of unbroken judicial decisions
21 requiring permission of the court appointing the receiver prior to the institution of an
22 action against the receiver.  It places the Bankruptcy Court in a position of sitting in
23 review of the District Court, of re-litigating issues already adjudicated by the District
24 Court, and making decisions in conflict or inconsistent with those of the District
25 Court and the 11th Circuit, currently hearing appeals in respect of the District Court
26 Orders.

27      The Bankruptcy Court erred and this Preliminary Injunction against
28 enforcement of the District Court Orders should be lifted immediately.  First and

-6-

foremost, this Preliminary Injunction and the action in which it was sought is barred by the <u>Barton Doctrine</u>, which requires permission of the appointing court to bring an action against a receiver acting in his official capacity. This requirement has been part of American jurisprudence for 125 years, and permission was not sought here.

The Bankruptcy Court erred in not recognizing the Barton Doctrine here in a number of respects. It relied on cases that have little application here. In applying those cases, and, specifically, trying to find a basis for asserting in rem jurisdiction which resided exclusively in the District Court, it misread the terms of the District Court order. The Bankruptcy Court stated that the Omnibus Order did "not require Integretel to pay any specific amount of funds to Receiver" and that "it was likely no more than a money judgment…" In fact, the order did quantify the amount it ordered turned over to the Federal Receiver to the penny, nor was the September 14, 2006 District Court Order anything short of an injunction requiring turnover of the funds under pain of contempt.

Moreover, the Bankruptcy Court assumed a role it has not been given, sitting in review of the District Court, its orders and its procedure. To find a basis for jurisdiction over the Subject Funds, it imposed a tracing requirement where the District Court had specifically refused to do so and it reviewed the manner in which the District Court heard and imposed the Clarification Order described below.

Finally, by the above and other actions, the Bankruptcy Court ignored or incorrectly applied the principles of res judicata and collateral estoppel. The dispositive issues here have each been litigated in Florida, decided by the Florida District Court, and are now on appeal before the 11th Circuit. The Bankruptcy Court interpreted judicial authority of limited applicability in a manner neither it nor any other authority, of which the Federal Receiver is aware, allows – to ignore clear unambiguous rulings of the District Court.

The Bankruptcy Court has no jurisdiction to stand in the way of the District Court Orders or simply ignore prior rulings of a District Court. It does not have the

-7-

1 ability to thwart District Court's orders by prohibiting the Federal Receiver appointed
2 by the District Court from performing the duties it ordered him to perform.
3 Moreover, the Federal Receiver is now faced with conflicting Orders from two
4 different Federal courts which cannot be reconciled.

5     Integretel has not shown and cannot show a "likelihood of success on the
6 merits" with respect to its asserted claims. Those claims merely seek to re-interpret
7 and re-write the District Court's pre-bankruptcy Orders. Nor can Integretel show
8 "irreparable injury" since it has demonstrated that it does not need the Subject Funds
9 to reorganize and the Florida District Court has granted it a stay pending appeal if the
10 $1,762,762.56 is delivered to the Federal Receiver.

11     The Federal Receiver respectfully requests that this Court lift the Preliminary
12 Injunction.

13

14                                  **V.**

15                          **FACTUAL BACKGROUND**

16     The events leading up to the Preliminary Injunction demonstrate Integretel's
17 litigation of the same issues in three courts (the Bankruptcy Court, the Florida
18 District Court and the 11th Circuit) in its effort to frustrate the District Court from
19 enforcing its Orders.

20     The Federal Trade Commission ("FTC") filed a Complaint the Florida District
21 Court in the case entitled Federal Trade Commission v. Nationwide Connections,
22 Inc., et. al., Case no. 06-80180-CIV-RYSKAMP/VITUNAC (the "Florida Action")
23 against numerous entities including Access One Communications, Inc. ("Access
24 One") and Network One Services, Inc. ("Network One"), claiming that they were
25 running a fraudulent billing scheme that generated more than $25 million in bogus
26 ///
27 ///
28 ///

-8-

1  call charges in violation of Section 5 of the Federal Trade Commission Act, 15

2  U.S.C. § 53(b). RER 6-139.[1]

3       The FTC filed motions in which it requested, among other things, the entry of

4  a Temporary Restraining Order and the appointment of a receiver. On February 27,

5  2006, The Honorable Kenneth L. Ryskamp United States District Judge ("USDC

6  Judge Ryskamp") granted the FTC's motions, issued a Temporary Restraining Order

7  and Order to Show Cause (the "TRO/OSC") and appointed David R. Chase as the

8  Receiver for Access One and Network One, among others. RER 6-139; 6-157-182.

9       In the TRO/OSC, the Florida District Court ordered the Federal Receiver to

10 "[t]ake exclusive custody, control, and possession of all assets of ... the Receivership

11 Defendants." RER 6-166. The receivership estate included "all assets of the

12 Defendants as of the time this Order was entered" including funds "held on behalf of,

13 or for the benefit of a Defendant." RER 6-162; 6-165.

14      The TRO required any business entity served therewith to provide to the FTC

15 a sworn statement identifying each account or asset held in the name of or on behalf

16 of, or for the benefit of a Defendant, and the balance or description of the nature and

17 value of each such asset. RER 6-165. On March 8, 2006,USDC Judge Ryskamp

18 issued a Preliminary Injunction incorporating the terms of the TRO, and on

19 September 22, 2006, issued an Amended Preliminary Injunction (collectively, the

20 "Receivership Injunction"). RER 6-139; 6-183-207; 6-209-233.

21      Integretel was the "billing aggregator" for receivership defendants Access One

22 and Network One. In this role, Integretel billed charges from consumers by placing

23 those charges on the end user's phone bill and collected the amounts owed. RER 6-

24 139. In addition to any legitimate funds that Integretel collected on behalf of the

25 _____

26 [1] References to the Excerpt of Record filed by the Federal Receiver are abbreviated
   as "RER.___-__", showing references to the exhibit tab and the sequential page

27 number. For example, a document found at tab 3 commencing at sequentially page
   number 12 would be referenced as RER 3-12.

28

1   receiverships, the FTC has alleged that Integretel was also involved in the fraudulent

2   billing scheme by billing and collecting fraudulent charges in collusion with the

3   receivership defendants. As a result, Integretel was added as a defendant to the

4   District Court Action on or about September 21, 2006. RER 6-235-247.

5          Integretel's agreements with Access One and Network One permitted

6   Integretel to withhold monies that were owed to Access One and Network One as

7   reserves, in the event that any users complained about charges and requested refunds

8   and/or credits directly from Integretel. RER 6-140; 6-145-146.

9          On March 6, 2006, in response to the TRO, Integretel wrote a misleading letter

10  to the FTC (which letter was not a "sworn statement") that "no amounts are currently

11  due and owing" to the Receivership. RER 6-140; 6-146. This statement of Integretel

12  was untrue. In fact, at that time, Integretel was holding over $1.35 million in

13  reserves that belonged to Integretel's former customers Access One and Network

14  One, and thus now belong to the Federal Receiver. RER 6-140; 6-146. The Federal

15  Receiver learned of this fact on October 11, 2006 and on October 16, 2006, filed a

16  revised motion for an Order to Show Cause why Integretel should not be held in

17  contempt of court for violating the TRO and failing to disclose the reserves, among

18  other things (the "Contempt Motion"). RER 6-140; 6-249-323. Integretel responded

19  with numerous pleadings, including (a) a 52-page Response to the Contempt Motion;

20  (b) a Motion to Modify Prior Injunctive Orders, (c) a Motion to Stay Contract

21  Claims, and (d) an appeal of the Receivership Injunction to the 11th Circuit. RER 6-

22  325-592. The gist of all of Integretel's arguments is the unsupported, and previously

23  litigated assertion that "the amounts at issue were not owed under the governing

24  contracts and that even if anything was owed, the Receiver's claim was unsecured so

25  that the disputed amounts were not receivership assets." RER 33-1871.

26         After nearly eleven months of litigation on the issue of ownership of the

27  Subject Funds, among other related issues, on September 14, 2007, the Florida

28  District Court entered its Omnibus Order (the September 14, 2007 Order) granting

-10-

1   the Contempt Motion, denying Integretel's motions, and ordering the Debtor to
2   immediately turn over the Subject Funds, which amount had increased by then to
3   $1,762,762.56, to the Federal Receiver, as well as ordering the Debtor to show cause,
4   within 10 days, why it should not be held in contempt for "failure to turn over [the
5   Subject Funds]." RER 6-144-155. The Omnibus Order recognized that "[t]he
6   Receiver is seeking to recover the reserve funds pursuant to the Court's in rem
7   jurisdiction over receivership property, as memorialized in the TRO and the
8   Amended Preliminary Injunction." RER 6-148.

9       On September 16, 2007, two days after entry of the Omnibus Order, Integretel
10  filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United
11  States Bankruptcy Court for the Northern District of California, San Jose Division,
12  which was assigned case no. 07-52890-ASW ("the Bankruptcy Case"). RER 1-1.

13      The next day, on September 17, 2007, the Debtor filed an Emergency Motion
14  For Use of Cash Collateral and Granting Replacement Liens (the "Cash Collateral
15  Motion"). RER 2-4-59. In the Cash Collateral Motion, Integretel sought to use the
16  Subject Funds to operate its business. Integretel submitted a budget which showed
17  that over $600,000 of the Subject Funds would be spent over the then next three
18  weeks. RER 3-76. In its Cash Collateral Motion, Integretel admitted that the
19  Omnibus Order of the District Court was the reason for the filing of the Debtor's
20  voluntary petition. RER 2-13. However, Integretel also mislead the Bankruptcy
21  Court by not attaching the Omnibus Order, not informing the Bankruptcy Court that
22  it determined ownership, and referring to it as a "Payment Order" rather than the
23  injunction. RER 2-13. Accordingly, Integretel was asking that the Bankruptcy Court
24  authorize the use of the Subject Funds in direct contravention of a District Court
25  injunction. The Federal Receiver opposed the Cash Collateral Motion on the
26  grounds that the Subject Funds are property of the Receivership by virtue of the
27  Omnibus Order, in which the Florida District Court exercised its exclusive in rem
28  jurisdiction over the Subject Funds. RER 4-112-122. Integretel has since also

-11-

1  admitted that it does <u>not</u> require the use of the Subject Funds to reorganize its
2  business.

3      On or about September 19, 2007, the Debtor filed a Complaint initiating an
4  adversary proceeding against the FTC and the Receiver for declaratory relief
5  asserting that the automatic stay under 11 U.S.C. § 362 applies to the Omnibus Order
6  and to the District Court Action in general, and for a Temporary Restraining Order
7  ("TRO") and Preliminary Injunction restraining and enjoining the District Court
8  Action and the Federal Receiver's execution of his duties pursuant to the Omnibus
9  Order. RER 7-593-605.

10     On September 20, 2007, the District Court in Florida entered an Order staying
11  the proceedings in light of the Debtor's Notice of Bankruptcy Filing which it filed in
12  the Florida District Court. RER 9-622. That same day, the FTC filed, in that
13  District Court, an Emergency Motion for Clarification that the Automatic Stay Does
14  Not Apply to the FTC's Law Enforcement Action and the Ongoing Contempt
15  Proceeding and Supporting Memorandum of Law (the "Stay Clarification Motion").
16  RER 10-629-642.

17     On September 21, 2007, the District Court granted the Stay Clarification
18  Motion, vacating its Order staying the proceedings (the "Clarification Order" or the
19  "September 21, 2007 Order"). RER 9-621-624. The Clarification Order made it
20  clear beyond any argument that the Florida District Court has determined that the
21  Subject Funds are property of the Federal Receiver and not of the Bankruptcy Estate.
22  On the first page of the Clarification Order, the Florida District Court states: "on
23  Friday, September 14, 2007, this Court issued its Omnibus Order in which it ruled
24  that the reserve funds are the property of the receivership estate and ordered
25  Integretel to pay current reserve funds, amounting to $1,762,762.56, immediately to
26  the Receiver." RER 9-621. On page 4 of the Clarification Order, the Florida District
27  Court states: "[t]he Court has already ruled that the reserve funds are neither property
28  of the "bankruptcy estate" nor Integretel." RER 9-624.

-12-

1    On September 24, 2007, Integretel filed a Notice of Appeal in the 11th Circuit
2  from the Omnibus Order and the Clarification Order. RER 18-922. That same day,
3  Integretel filed in the Bankruptcy Court an Emergency Motion for Temporary
4  Restraining Order and Order to Show Cause Regarding Preliminary Injunction and
5  Declaratory Relief (the "TRO Motion"). RER 14-808-850. The TRO Motion
6  sought, under 11 U.S.C. § 105, injunctive relief: (a) barring the enforcement of the
7  Omnibus Order and (b) enjoining the continuation of the District Court Action
8  generally.

9    On September 25, 2007, also Debtor filed an Emergency Motion in the District
10  Court for a Stay Pending Appeal (the "First Stay Motion"). RER 18-919-970.
11  Integretel's Stay Motion was granted on September 26, 2007, on the condition that
12  the Debtor turns over the Subject Funds to the Receiver to segregate pending
13  resolution of the appeal. Integretel did not turn over the Subject Funds to the Federal
14  Receiver. RER 27-1200-1201.

15    On September 26, 2007, the Bankruptcy Court held hearings on the Cash
16  Collateral Motion and the TRO Motion. RER 24-1074-1156. At that hearing, the
17  Debtor and the Federal Receiver agreed that Integretel would segregate and sequester
18  the Subject Funds pending further Order of the Bankruptcy Court upon motion of
19  either party. RER 21-995-999. The Bankruptcy Court granted the Cash Collateral
20  Motion on an interim basis (without authorizing the use of the Subject Funds) and set
21  a further hearing on the TRO Motion for October 2, 2007. RER 19-971-984. The
22  Bankruptcy Court subsequently granted extensions on the interim use of cash
23  collateral. RER 40-2649-2666; RER 51-2984-3001; RER 82-3529-3547. The
24  budgets filed in support of the continued use of cash collateral demonstrate that
25  Integretel does not need the Subject Funds in order to operate or reorganize. RER
26  30-1295-1307. A "final" hearing on the use of cash collateral is scheduled in the
27  Bankruptcy Court for April 21, 2008.
28  ///

-13-

1    On October 2, 2007, the Bankruptcy Court held a hearing on the TRO Motion.

2  The TRO Motion was directed at the FTC, due to the agreement between the Debtor

3  and the Federal Receiver to segregate the Subject Funds pending further order of the

4  Bankruptcy Court. RER 34-2462. After hearing argument from Integretel and the

5  FTC, the Bankruptcy Court denied the TRO, but set an Order to Show Cause against

6  the FTC and the Federal Receiver regarding the Preliminary Injunction for hearing

7  on October 17, 2007. RER 34-2504-2505; RER 25-1156-1160.

8    Unsatisfied with the stay it received from the District Court in Florida (which

9  would have required that Integretel turn over the funds to the Federal Receiver for

10  safekeeping) and having not yet obtained any injunctive relief against the Federal

11  Receiver in Bankruptcy Court, on October 11, 2007, Integretel tried yet again to

12  obtain a stay in Florida, this time with the 11th Circuit, by filing Appellant's Time

13  Sensitive Motion for Immediate Interim Stay or Injunction Pending Full

14  Consideration of Motion and for Continuation of the Stay or Injunction Pending

15  Complete Resolution of this Appeal (the "Second Stay Motion"). RER 33-1856-

16  2341. As the following passage indicates, in the Second Stay Motion Integretel

17  attempted to preemptively render a Bankruptcy Court's decision on whether to issue

18  a preliminary injunction unnecessary by first seeking identical relief from the 11th

19  Circuit:

20    This Court should not wait to see what the bankruptcy court does before
     ruling on this motion. If this Court waits for the bankruptcy court and that

21    court decides not to issue an injunction (or if it decides to let this Court rule
     first), Integretel would be at risk of contempt sanctions when the agreed

22    temporary stay expires and would have to ask this [District] Court to grant
     emergency relief. Moreover, an order from the bankruptcy court granting a

23    § 105 injunction would not render the instant motion moot, for there is a
     reasonably good chance that the FTC and the Receiver would appeal any such

24    injunction. A stay from this Court would afford Integretel protection against
     the risk RER 33-1878-1879. [emphasis added]

25

26    The 11th Circuit initially indicated that it would not rule on Integretel's Second

27  Stay Motion. However, on October 16, 2007, Integretel sent the 11th Circuit a letter

28  memorandum urging the Eleventh Circuit to reconsider and admitting that the 11th

-14-

1  Circuit has jurisdiction over the subject matter on appeal. RER 38-2629-2637.

2  Moreover, Integretel again argued that by granting a stay pending appeal, the 11th

3  Circuit would maintain the status quo because the Subject Funds would be held and

4  the "status quo" thereby preserved. RER 38-2632. On October 17, 2007, the 11th

5  Circuit temporarily granted Integretel a stay pending further order from the 11th

6  Circuit. RER 43-2738.

7      On October 17, 2007, the Bankruptcy Court held a hearing on Integretel's

8  Motion for Preliminary Injunction. RER 48-2847-2948. At this hearing, the Federal

9  Receiver presented the Bankruptcy Court with Integretel's October 16, 2007 letter to

10 the 11th Circuit, demonstrating once again that Integretel was engaging in forum

11 shopping. RER 48-2857. Integretel is operating on multiple tracks, urging identical

12 relief from the 11th Circuit and the Bankruptcy Court, that is, arguing to each Court

13 that it has jurisdiction over the Subject Funds. In so doing, the Debtor was being

14 dishonest with both courts. The 11th Circuit granted a stay to maintain "the status

15 quo," while Integretel urged the Bankruptcy Court to both enjoin the Federal

16 Receiver from acting and allow Integretel to spend the Subject Funds. Integretel was

17 urging the 11th Circuit to grant a stay pending appeal, while simultaneously urging

18 the Bankruptcy Court to issue an injunction pending confirmation of a reorganization

19 plan. RER 48-2860-2861.

20     On November 2, 2007, the Bankruptcy Court issued a Memorandum Decision

21 enjoining the FTC with regard to its complaint against Integretel, but declined to

22 issue a preliminary injunction against the Federal Receiver concerning the Omnibus

23 Order. RER 52-3002-3065. The Bankruptcy Court stated it was not doing so only

24 because it would be duplicative of the stay already issued by the 11th Circuit. RER

25 52-3059. The Bankruptcy Court also denied the Debtor's request to unblock the

26 account through December 14, 2007. RER 52-3059.

27     On November 5, 2007, the 11th Circuit denied Integretel's motion for a stay

28 pending appeal and terminated its temporary stay. RER 57-3114-3116. On the same

-15-

1  day, the Bankruptcy Court, following an ex parte emergency telephonic request by
2  Integretel, orally issued a temporary restraining order enjoining the Federal Receiver
3  and the FTC from enforcing the Omnibus Order, and issued an Order to Show Cause
4  (OSC) why a preliminary injunction should not be issued.  RER 65-3234-3266.

5       The Bankruptcy Court held a further hearing on the OSC on November 16,
6  2007.  After argument, the Bankruptcy Court, *sua sponte*, extended the TRO through
7  December 6, 2007.  RER 68-3293-3294.  The Bankruptcy Court set a telephonic
8  hearing for November 21, 2007.

9       At the November 21st hearing, the Bankruptcy Court announced that while it
10 had prepared findings granting the preliminary injunction, it did not want to enter the
11 order because it was concerned about the fact that the 11th Circuit has the Omnibus
12 and Clarification Orders before it on appeal and that the Bankruptcy Court, in issuing
13 a preliminary injunction, would result in conflicting orders.  RER 86-3808.
14 Accordingly, the Bankruptcy Court asked the parties to reach an agreement that
15 would obviate the need for the court to make a decision whether or not to issue a
16 preliminary injunction.  RER 86-3811.  The parties consented to the Bankruptcy
17 Court extending the TRO through November 26, 2007 so that the parties could
18 confer with their respective clients.  RER 86-3818-3819.

19      On November 26, 2007, the Bankruptcy Court conducted another telephonic
20 hearing, at which the Bankruptcy Court announced that it would abstain as a matter
21 of comity from entering a preliminary injunction which would conflict with the
22 jurisdiction of the 11th Circuit.  RER 83-3574-3575; RER 83-3592.  The Bankruptcy
23 Court ruled it would not enjoin the Federal Receiver or the FTC from pursuing the
24 Omnibus Order before the Florida District Court, would permit the Subject Funds to
25 be transferred to the Federal Receiver, but would enjoin the Receiver from disbursing
26 these funds without the permission of the Bankruptcy Court.  RER 83-3575.  The
27 ///
28 ///

-16-

322460.2 [XP]    24774

1  Bankruptcy Court then read findings of fact and conclusions of law into the record
2  reflecting its ruling.  RER 83-3575-3592.

3  The Bankruptcy Court then took a brief recess, and upon its return, reversed
4  itself.  It announced that it would not permit the Subject Funds to leave California.
5  RER 83-3609-3611.  It requested that the FTC acknowledge that the freezing of the
6  funds in California would preclude a contempt finding against Integretel, or
7  otherwise commit voluntarily to stay enforcement of the Omnibus Order.  RER 83-
8  3603-3609.  The FTC declined the Bankruptcy Court's "offer."  The Bankruptcy
9  Court then abruptly announced it was entering a preliminary injunction effective
10  immediately, enjoining both the FTC and the Federal Receiver from pursuing the
11  Omnibus Order.  RER 83-3609.

12  On November 27, 2007, the Bankruptcy Court conducted another telephonic
13  hearing at which it read into the record "new" findings of fact and conclusions of
14  law, in an apparent attempt to justify its reversal of itself the day before.  RER 79-
15  3461-3504.  In a further exercise of its purported "authority" over the Florida District
16  Court and its officer, the Federal Receiver, the Bankruptcy Court later expanded its
17  injunction to require that any "status report" filed in the Florida District Court by the
18  Federal Receiver concerning the Subject Funds be done exclusively by way of a
19  "Joint Report" with Integretel.  RER 74-3344.

20  On November 30, 2007, the Bankruptcy Court entered the Preliminary
21  Injunction which is the subject of the instant appeal.  RER 74-3343-3345.

22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

-17-

# VI.

## ARGUMENT

**A.    The Bankruptcy Court Lacked Jurisdiction To Enjoin The Receiver.**

      **1.    The Debtor Failed to Obtain Permission From the District Court to Sue the Federal Receiver.**

The Bankruptcy Court lacked jurisdiction to hear and rule on the request for Preliminary Injunction because Integretel never obtained permission from the Florida District Court to bring an action against the Federal Receiver. It has been Federal law for over 125 years that before a litigant brings an action against a receiver, it must obtain permission from the court that appointed such receiver. As explained and held by the 11th Circuit in Carter v. Rogers, 220 F.3d 1249, 1252 (11th Cir. 2000):

> "An unbroken line of cases ... has imposed [this] requirement as a matter of federal common law." Linton, 136 F.3d at 545. In so holding, these circuit courts have applied the rule referred to as the "*Barton* doctrine." *See id.* The Supreme Court in Barton v. Barbour, 104 U.S. 126, 127, 26 L.Ed. 672 (1881), stated that "[i]t is a general rule that before suit is brought against a receiver[,] leave of the court by which he was appointed must be obtained."

Failure to obtain leave from the appointing court deprives the court, in which the unauthorized action is brought, of subject matter jurisdiction. Medical Development Intern. v. California Dept. of Corrections and Rehabilitation 2008 WL 436930 (E.D.Cal., Feb 14, 2008) ("When presented with a party that has failed to secure the appointing court's consent, the nonappointing court lacks subject matter jurisdiction and must dismiss the action.").

As demonstrated by Crown Vantage, Inc. v. Fort James Corporation, 421 F.3d 963 (9th Cir.2005), the 9th Circuit recognizes and applies the Barton Doctrine. In Crown Vantage, the 9th Circuit included the liquidating trustee in the scope of the Barton Doctrine and reversed the lower court's decision requiring the trustee to establish irreparable harm before obtaining injunctive relief itself based upon

-18-

1   violation of the Barton Doctrine.  The 9th Circuit explained the Barton Doctrine and

2   its rationale and basis.

> 3   This holding is firmly grounded in the <u>Barton</u> doctrine, established by
> the Supreme Court over a century ago, which provides that, before suit can be
> 4   brought against a court-appointed receiver, "leave of the court by which he
> was appointed must be obtained." 104 U.S. at 127; <u>see also</u> <u>Davis v. Gray</u>, 16
> 5   Wall. 203, 83 U.S. 203, 218, 21 L.Ed. 447 (1872) (holding that the court
> appointing a receiver "will not allow him to be sued touching the property in
> 6   his charge, nor for any malfeasance as to the parties, or others, without [the
> court's] consent"). The Court held that if leave of court were not obtained, then
> 7   the other forum lacked subject matter jurisdiction over the suit. <u>Barton</u>, 104
> U.S. at 127. Part of the rationale underlying <u>Barton</u> is that the court appointing
> 8   the receiver has in rem subject matter jurisdiction over the receivership
> property. <u>Id</u>. at 136. As the Supreme Court explained, allowing the
> 9   unauthorized suit to proceed "would have been a usurpation of the powers and
> duties which belonged exclusively to another court." <u>Id</u>.

10

11   <u>Crown Vantage</u>, supra, at 970.

12   Nor does it make a difference whether the action is brought in State court or

13   Federal court.

> 14   "Carter argues that the Barton doctrine requires parties to obtain
> leave of the bankruptcy court only when they wish to pursue a
> 15   state court remedy.   We disagree, and hold that when leave is
> required, it is required before pursuing remedies in either state or
> 16   other federal courts.   We find no reason to distinguish between
> instances where the trustee is sued in state court and those in
> 17   which the trustee is sued in federal court.   See <u>Kashani v. Fulton</u>
> (In re Kashani ), 190 B.R. 875, 885 (9th Cir. BAP 1995)
> 18   ("[L]eave to sue the trustee is required to sue in those federal
> courts other than the bankruptcy court which actually approves
> 19   the trustee's appointment."); <u>In re Krikava, 217 B.R. 275, 279</u>
> (Bankr.D.Neb.1998) ("Consent of the appointing bankruptcy
> 20   court is required even when the plaintiff seeks to sue in another
> federal court.")."

21

22   <u>Carter</u>, supra, at 1253

23   This doctrine is not subject to waiver.  As held in <u>Crown Vantage</u>, supra, at

24   970, the Barton Doctrine implicates subject matter jurisdiction and, consequently, is

25   not waived and can be raised at any time.

26   Integretel's action in suing the Federal Receiver for injunctive relief in

27   California Bankruptcy Court is a clear violation of the Barton Doctrine.  Neither

28   Integretel nor the Bankruptcy Court in its rulings cites any relevant authority to the

-19-

1  contrary. Instead, the Bankruptcy Court relied upon cases that are wholly

2  distinguishable from the case at bar, in an attempt to "reason away" this clear and

3  longstanding principle of Federal common law.

4            a.    **The *Gilchrist* Decision is Wholly Distinguishable From**

5                  **the Case at Bar and Does Nothing to Undermine the**

6                  **Applicability of the *Barton* Doctrine.**

7            In its November 2, 2007 Memorandum Decision (incorporated by reference in

8  its November 27, 2007 ruling), the Bankruptcy Court relies heavily on Gilchrist v.

9  General Electric Capital Corporation, 262 F.3d 295 (4th Cir. 2001) for the

10  proposition that the bankruptcy filing vested the Bankruptcy Court with exclusive *in*

11  *rem* jurisdiction over the subject funds under 28 U.S.C. § 1334(e) and that such

12  jurisdiction obviates the clear bar on this action imposed by the Barton doctrine.

13  RER 52-3040-3045. In effect, the Bankruptcy Court tried an "end run" around the

14  Barton Doctrine by finding a basis for subject matter jurisdiction and assuming that

15  this satisfied the Barton Doctrine.

16            Initially, it should be observed that there is no such jurisdiction here.

17  Although 28 U.S.C. § 1334(e) does confer jurisdiction on the Bankruptcy Court

18  (after reference) over (a) property of the debtor or (b) property of the bankruptcy

19  estate, the Subject Funds are neither. This was made clear beyond question by the

20  Clarification Order. Nor has the Bankruptcy Court ruled on the issue of ownership.

21  There was not even an adversary proceeding pending seeking such a determination.[2]

22            However, as discussed above, the Florida District Court did make a

23  determination of ownership pre-bankruptcy. Again, it ruled clearly and

24  unambiguously that the Subject Funds are property of the Receivership Estates and

25  ———————————

26  [2] On November 27, 2007, Integretel filed a motion to amend its Complaint to add
claims for declaratory relief regarding determination of the Federal Receiver's rights
27  with respect to the Subject Funds as codified by the Omnibus and Clarification
Orders. RER 73-3320-3342.

28

1   are neither property of the Debtor nor property of the Bankruptcy Estate.  That ruling
2   is currently on appeal to the 11th Circuit and the 11th Circuit's exercise of jurisdiction
3   dictates the conclusion that the Florida District Court is vested with exclusive
4   jurisdiction over the Subject Funds.

5         In any event, Gilchrist is not applicable to the issues before the Bankruptcy
6   Court, and it certainly does not provide sufficient authority to enjoin the appointed
7   agent of a United States District Court from performing the duties required by that
8   Federal court or render appropriate any order that purports to interfere with the 11th
9   Circuit's consideration of these issues on appeal.  Gilchrist is instructive for what it
10  did not hold and the differences in circumstances between it and the issues herein.

11        •   Gilchrist did not hold that the filing of a bankruptcy suspends the Barton
12  doctrine or renders it inapplicable, nor does such a result necessarily follow from its
13  holdings.

14        •   Gilchrist did not hold that the filing of a bankruptcy divests the District
15  Court of the in rem jurisdiction that it had exercised prior to that filing.

16        •   Gilchrist did not allow or even address a Bankruptcy Court's enjoining
17  of a District Court receiver.

18        •   Gilchrist did not hold that § 1334(e) granted a bankruptcy court
19  exclusive jurisdiction over property that an Article III District Court has held was not
20  property of the debtor.

21        Instead, in Gilchrist, after an action by a secured creditor, a receiver was
22  appointed to take charge of, and liquidate, a debtor's assets.  The district court issued
23  an injunction enjoining the commencement of prosecution of any action affecting the
24  receivership estate.  A group of creditors filed an involuntary petition, and the district
25  court sought to hold them in contempt for violation of the injunction.

26        The Fourth Circuit, sitting in review of the district court's enforcement of its
27  injunction, found that the automatic stay in 11 U.S.C. § 362 operated to stay the
28  ///

-21-

1  proceedings of the district court, and, more importantly, that the district court had not
2  provided an explanation of why the automatic stay was not applicable.

3      Here, the facts and result are different. First, in Gilchrist, the Fourth Circuit
4  was called upon to review the propriety of the district court's injunction against the
5  creditors that had filed the involuntary petition against the debtor. It ruled on the
6  record before it, and it found that the district court certainly was within its power to
7  protect its jurisdiction over receivership property under the All Writs Act, but that
8  the automatic stay applied to the district court proceedings and the district court had
9  not explained why the stay did not apply. Here, the Florida District Court is entitled
10 to protect its jurisdiction over receivership property, as acknowledged in Gilchrist,
11 and the Florida District Court has determined and explained why the automatic stay
12 does not apply. The Article I Bankruptcy Court below does not sit in review of the
13 Article III Florida District Court's Omnibus Order and Clarification Order. The
14 Bankruptcy Court even acknowledges this repeatedly in its Memorandum Decision.
15 RER 52-3049.

16     In Gilchrist, the subject property was clearly property of the estate. The
17 receiver had been appointed to take control of the assets of the debtor, and that
18 debtor was made subject to a bankruptcy court's jurisdiction by an involuntary
19 petition for relief. The Fourth Circuit was concerned that although the receivership
20 could liquidate the debtor, the bankruptcy process was designed for that purpose and
21 it was the more appropriate process.

22     Here, however, the opposite is true. There has been no determination, nor was
23 there even any pending proceeding to determine, that the Subject Funds were
24 property of Integretel's bankruptcy estate. Integretel filed its motion for leave to
25 amend the Complaint to a declaratory relief claim. To the contrary, the Florida
26 District Court has specifically determined that the Subject Funds are not the property
27 of the Debtor or of Integretel's bankruptcy estate, and the 11th Circuit is reviewing
28 those determinations. For the Bankruptcy Court to rule that the Barton Doctrine does

-22-

1  not apply because the Bankruptcy Court has exclusive jurisdiction over Subject
2  Funds assumes that a determination has been made that the Subject Funds are, in
3  fact, property of the Bankruptcy Estate.  However, the opposite determination was
4  made by the Florida District Court and is on appeal in the 11th Circuit.  By ignoring
5  the Barton Doctrine, the Bankruptcy Court below was reversing the Florida District
6  Court's determination that the Subject Funds are property of the Federal Receiver,
7  notwithstanding the Bankruptcy Court's assertion that it does not sit "in review of the
8  Florida Court."

9        Moreover, the more critical factor in Gilchrist was that the district court had
10 provided no explanation of why the automatic stay did not apply to the proceedings
11 in front of it.  Here, again, the Florida District Court has determined that proceedings
12 before it are not subject to the automatic stay.  Again, the Florida District Court's
13 determination is on review in the 11th Circuit.

14       Gilchrist did not present or resolve forum shopping among courts as is present
15 here.  In Gilchrist, the enjoined parties appealed to a reviewing court, and that court
16 determined the propriety of the district court's enforcement of its injunction.
17 Gilchrist did not allow or even consider a situation, as here, where the Bankruptcy
18 Court is being asked to ignore and facilitate the Debtor's disobedience of a clear,
19 unambiguous Florida District Court Order by enjoining that Florida District Court's
20 agent, the Federal Receiver, from seeking to enforce that District Court's Order.

21       Gilchrist did not allow or consider a situation where the bankruptcy court was
22 being asked to effectively moot or render meaningless the appellate jurisdiction of a
23 United States Court of Appeals by entering orders concerning issues that such Court
24 of Appeals is presently deciding, and allowing, by those orders, the disposition of the
25 property at the center of those issues.  Gilchrist certainly does not in any way make
26 such orders appropriate.

27       In Gilchrist, both the bankruptcy and the receivership estate were congruent.
28 They extended to all assets of the debtor and its liquidation, and the secured creditor

-23-

1  who obtained the receiver in <u>Gilchrist</u> was basically in the same position regardless
2  of whether the debtor was liquidated by the receiver or by the bankruptcy process.
3  Here, however, the Florida Action does not extend to property of the Integretel
4  Bankruptcy Estate.  Should the Debtor succeed in its scheme and dissipate the
5  Subject Funds, the Federal Receiver will be harmed, the Orders of the Florida
6  District Court will have been flaunted, and the 11th Circuit will have spent valuable
7  judicial resources only to find those resources have been spent in vain.

8      Finally, <u>Gilchrist</u> simply has nothing to do with the Debtor's lack of
9  compliance with the Barton Doctrine.  The fact remains that the Debtor has not
10  obtained permission from the Florida District Court to bring this action or any action
11  against the Federal Receiver.  Integretel is proceeding in violation of over 125 years
12  of Federal law which requires that before a litigant brings an action against a
13  receiver, it must obtain permission from the court that appointed such receiver.  <u>See,</u>
14  <u>Carter v. Rogers</u>, 220 F.3d 1249, 1252 (11th Cir. 2000) (citing <u>Barton v. Barbour</u>,
15  104 U.S. 126, 127, 26 L.Ed 672 (1881); <u>Crown Vantage, Inc. v. Fort James</u>
16  <u>Corporation</u>, 421 F.3d 963 (9th Cir.2005); <u>Kashani v. Fulton, (In re Kashani)</u>, 190
17  B.R. 875, 885 (9th Cir. BAP 1995).

18              **b.      The Bankruptcy Court May Not Sit in Review of The**
19                      **District Court.**

20      There is a second reason here why the Bankruptcy Court erred – a reason
21  common to more than one area here.  To make the rulings under consideration here,
22  the Bankruptcy Court must sit in review of the District Court, its Orders and the
23  procedures by which its Orders were entered.  The Bankruptcy Court erred in not
24  applying the Barton Doctrine and, as discussed below, not recognizing the preclusive
25  effect of the District Court Orders because it relied on cases that it interpreted as
26  allowing it to do both because it had a source of jurisdiction.  It found this source of
27  jurisdiction in 11 U.S.C. § 1334(c), the Bankruptcy Court's jurisdiction over property
28  of the Debtor and over property of the estate.

-24-

1  However, the District Court was clear and unambiguous – the Subject Funds
2  are neither. They are property of the Receivership Estates. They are not property of
3  Integretel. They are not property of the estate. RER 6-0146; 9-0621.

4  In view of the clear unambiguous terms of the District Court Orders, to fall
5  under § 1334(e), the Bankruptcy Court has to find that these District Court Orders
6  are somehow ineffective in the bankruptcy context. It attempts to do this in a
7  number of ways. The first is to impose a tracing requirement and to find that the
8  District Court did not litigate that issue. RER 52-3046-3047. However, this is sitting
9  in review of the District Court, and this is not the role of an Article I Court.
10  Moreover, as discussed below, the issue of tracing was already heard and ruled upon
11  in the District Court.

12  The second way is judging the method in which the Clarification Order was
13  obtained and claiming, without a hearing or evidence, that the Debtor was not given
14  the opportunity to brief or argue. RER 79-3477. This is clearly sitting in review of
15  an Article III Court.

16  The terms of the District Court Orders are clear. These Orders determined that
17  the Subject Funds are not property of Integretel or of the estate. The Bankruptcy
18  Court should give these Orders effect, not look behind them to find jurisdiction to
19  block or ignore them.

20  **c.    The Federal Receiver is Not a Custodian of the Debtor.**

21  The Bankruptcy Court ruled that Integretel is excepted from the Barton
22  Doctrine on the basis that the Federal Receiver would have been obliged to turn over
23  and account for the Subject Funds pursuant to Section 543 of the Bankruptcy Code
24  [11 U.S.C. § 543], had the Subject Funds been paid to the Federal Receiver pre-
25  bankruptcy. RER 79-3467. This argument fails because the Federal Receiver is not
26  ///
27  ///
28  ///

-25-

1  a "custodian" of the Debtor as defined by section 101(11) of the Bankruptcy Code,[3]
2  and the Federal Receiver is protected by <u>Barton</u> from being sued in a foreign
3  jurisdiction to recover property of the Receiver.

4       The Bankruptcy Court in its November 27, 2007 ruling, relies on <u>In re Citx</u>
5  <u>Corp.</u>, 302 B.R. 144 (Bankr. E.D. Pa. 2003) for the proposition that the Barton
6  Doctrine does not apply where a bankruptcy trustee seeks turnover of property of the
7  bankruptcy estate from a custodian. In actuality, <u>Citx</u> is more instructive as to why
8  <u>Barton does apply to our case here.</u>

9       In <u>Citx</u>, the Chapter 7 Trustee brought an adversary proceeding against a state
10  court receiver of a corporation known as Professional Resources Systems
11  International, Inc. ("PRSI") consisting of numerous claims, including recovery of pre
12  and post-petition transfers pursuant to the trustee's avoidance powers, as well as for
13  substantive consolidation of PRSI and the debtor. The receiver moved to dismiss the
14  complaint on the grounds that the Chapter 7 Trustee failed to first seek permission
15  from the state court before suing the receiver in accordance with the Barton Doctrine.
16  The trustee argued that section 543 of the Bankruptcy Code provided him with an
17  exception to the Barton Doctrine, since it required the receiver to turn over property
18  to the bankruptcy trustee which would be property of the estate. The court disagreed,
19  holding that sections 101(11) and 543 of the Bankruptcy Code are written to include

20  _____

21  [3] Section 101(11) of the Bankruptcy Code [11 U.S.C. § 101(11)] defines a "custodian" as follows:

22  The term "custodian" means –

23  (A) receiver or trustee of any of the property of the debtor, appointed in a case or
24  proceeding not under this title;

25  (B) assignee under a general assignment for the benefit of the debtor's creditors; or

26  (C) trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of
27  enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors.

28

-26-

1   receivers whose duties involve controlling property of the debtor for the benefit of

2   the debtor's creditors.

3           Thus, section 543 has been applied where a state court receiver is
        appointed for an entity and that same entity later becomes a debtor in a
4       bankruptcy case. Section 543 does not apply to the present situation: *viz*, a
        bankruptcy trustee is suing a creditor who is in a prior state court receivership,
5       because that receiver is not a custodian of the debtor's property.
        Id. at 151 [citations omitted].

6

7       Here, under Citx, the Federal Receiver is not a "custodian" (as defined by

8   section 101(11) of the Bankruptcy Code) within the meaning of section 543 of the

9   Bankruptcy Code.  Instead he was appointed in a prior receivership.  He was not

10  appointed to administer property of the Debtor or the estate, and he is not holding

11  property of the estate subject to turnover.

12      Moreover, the court in Citx held that to the extent that the trustee's claims

13  sought recovery from receivership property or sought to obtain some control over

14  that property, then Barton would restrict such relief.  Id. (citing Riehle v. Margolies

15  279 U.S. 218, 224, 49 S. Ct. 310, 73 L.Ed. 669 (1929) ("Of course, no one can obtain

16  any part of the assets, or enforce a right to specific property in the possession of a

17  receiver, except upon application to the court which appointed him").

18          "Where a court of competent jurisdiction has, by appropriate
        proceedings, taken property into its possession through its officers, the
19      property is thereby withdrawn from the jurisdiction of all other courts." Such
        possession of the res by the state court disenabled the federal court from
20      exercising any control over it…. The appropriate exercise of the discretion of
        a federal court of equity may require it to refuse even to adjudicate rights in
21      specific property if the state court has already undertaken such a
        determination. Furthermore, the federal court may not "seize and control the
22      property which is in the possession of the state court" nor interfere with the
        state court or its functions.

23

24  Citx at 152 (quoting Fischer v. American United Life Insurance Co., 314 U.S. 549,

25  554-55, 62 S. Ct. 380, 86 L.Ed. 444 (1942)) [emphasis added].  Pursuant to Barton,

26  the court in Citx stayed all claims asserted against the receiver that sought possession

27  or control over receivership property (i.e., the claims for substantive consolidation),

28  ///

-27-

1  to allow the trustee the opportunity to request leave from the state court to sue the
2  receiver.[4]

3      Here, Integretel sued the Federal Receiver to enjoin him from enforcing the
4  Omnibus Order and Clarification Order. Both of those Orders held that the Subject
5  Funds are property of the Federal Receiver which must immediately be turned over
6  to him. Thus, consistent with the holding in Citx, the Bankruptcy Court below
7  lacked subject matter jurisdiction to enter the Preliminary Injunction, since Integretel
8  failed to first obtain the permission of the Florida District Court before suing the
9  Federal Receiver.

10     **2.    Unlike Integretel, the Federal Receiver does not need**
11         **permission to sue Integretel as a Debtor in Possession in the**
12         **Florida District Court.**

13     The Bankruptcy Court further held that Integretel's status as a Chapter 11
14  Debtor in Possession is similarly protected by the Barton Doctrine in the Florida
15  District Court, citing Crown Vantage 421 F. 3d 963. RER 79-3468, and to enforce
16  the District Court Order, the Federal Trustee would need permission of the
17  Bankruptcy Court. This assertion, of course, stands in stark contrast to the idea that
18  Barton does not even apply to these proceedings and, if true, would compel lifting of
19  the Preliminary Injunction.

20

21
       _____
22  [4] The court did allow the trustee to proceed on those claims which sought to liquidate
    the trustee's claims against the receivership. The court did this on the basis that the
    receiver waived immunity from suit by filing a proof of claim in the bankruptcy case
23  and therefore submitted itself to the bankruptcy court's jurisdiction over the claims
    resolution process. Id. at 158. In our case, the Federal Receiver has not filed a proof
24  of claim and seeks only the return of his specific property, that is, the Subject Funds.
    The claims resolution process is not implicated and the Federal Receiver has not
25  "consented" any jurisdiction of the Bankruptcy Court. The Federal Receiver further
    questions the logic in recognizing a purported waiver of subject matter jurisdiction,
26  which is not waivable in federal court. See, Insurance Corp. of Ireland, Ltd. v.
    Compagnie des Bauxites de Guinee, 456 U.S. 694, 701-02, 102 S. Ct. 2099, 72 L.
27  Ed. 2d 492 (1982).

28
                                    -28-

1   However, the Bankruptcy Court's assertion is wrong.  The <u>Barton</u> rule, as

2  stated in <u>Crown Vantage</u> with regard to bankruptcy trustees, is that a lawsuit may not

3  be initiated against them in their official capacity in a foreign court absent leave of

4  the bankruptcy court.  <u>Crown Vantage,</u> 421 F. 3d 963, 970; <u>In re Kashani</u>, 190 B.R.

5  at 883-85.  Initially, neither <u>Crown Vantage</u> nor any case cited therein extends the

6  Barton Doctrine to a chapter 11 debtor in possession operating the business as here.

7  Instead, these cases apply the Barton Doctrine to trustees administrating and

8  liquidating assets.  This, of course, is because of the similarity of liquidating trustees

9  to receivers.  As stated by the 9th Circuit:

10          Here, the Liquidating Trustee was not operating the business previously
            conducted by the debtor; he was liquidating the assets of the estate.
11          This is precisely the type of activity that the *Barton* doctrine was
            designed to protect.

13  <u>Crown Vantage</u>, *supra* at 972.

14   Moreover, the Federal Receiver has no need to initiate any suit against

15  Integretel in its official capacity, nor has it done so.  Rather, the Federal Receiver

16  sought and obtained a pre-petition order requiring Integretel to turn over property of

17  the Receivership.  The Order is self executing and it compels the Debtor with or

18  without the Federal Receiver's action.  Whether an action to enforce the pre-petition

19  order can be continued post-petition is governed by section 362 of the Bankruptcy

20  Code.[5]  The Florida District Court has already expressly held in the Clarification

21  Order that Florida Action and the pre-bankruptcy Omnibus Order are excepted from

22  the automatic stay pursuant to the federal government's police and regulatory

23  powers.[6]  None of the cases cited by Integretel have applied <u>Barton</u> in the context of

---

25  [5] 11 U.S.C. § 362(a)(2) provides that the bankruptcy petition operates as a stay of
    "the enforcement, against the debtor or against property of the estate, of a judgment
26  obtained before the commencement of the case under this title."

27  [6] See, 11 U.S.C. § 362(b)(4).

-29-

1  or have allowed the Barton Doctrine to protect a chapter 11 debtor in possession

2  from obeying a pre-bankruptcy order of a district court.

3          Finally, to the extent that Integretel continues post-petition to violate the

4  Omnibus Order and Clarification Order by failing to turn over the Subject Funds to

5  the Federal Receiver, Integretel is acting beyond its statutory authority and, thus,

6  falls within an exception recognized in Barton: "But if, by mistake or wrongfully, the

7  receiver takes possession of property belonging to another, such person may bring

8  suit therefor against him personally as a matter of right; for in such case the receiver

9  would be acting ultra vires." Barton at 134; see also, In re Harris 2007 WL 2456202

10 at *8 (S.D.Cal., August 21, 2007) ("[L]eave of the bankruptcy court is not required

11 'when a trustee acts in excess of his authority and is sued in a state court for such

12 acts.'); Leonard v. Vrooman, 383 F.2d 556, 560 (9th Cir.1967) (Trustee can be sued

13 in foreign jurisdiction for unlawful post-petition seizure of property of a third party).

14 In contrast, the Federal Receiver is acting squarely within his authority by seeking to

15 enforce the Omnibus Order and the Clarification Order. See, e.g., Lurie v. Blackwell

16 211 F.3d 1274 (Table) 2000 WL 237966 at *2 (9th Cir. 2000) ("Here, by contrast,

17 Blackwell acted lawfully, pursuant to a writ of execution issued by the state court in

18 Montana, and within his authority as liquidating trustee.  Even given the disputed

19 ownership of the seized property, in following the court's directive, Blackwell did not

20 exceed his authority by improperly taking or maintaining possession of the

21 property.")

22          **3.    The Florida District Court has Exclusive Jurisdiction Over**

23                  **the Subject Funds.**

24          The Florida District Court has exclusive jurisdiction over the Subject Funds,

25 and this is conferred by statute and by judicial authority.  Because it exercised that

26 jurisdiction first, it is the proper court to make and enforce orders in respect of that

27 property. 28 U.S.C. §§ 754 and 962 confer on the District Court, exclusive

28 jurisdiction over the Subject Funds.   Judicial authority demonstrates that the findings

-30-

1  expressed in the Clarification Order, were an appropriate exercise of the Florida

2  District Court's jurisdiction.

3     SEC v. Wolfson, 309 B.R. 612 (D. Utah 2004) is virtually identical to the case

4  before this Court on appeal. The SEC prosecuted a civil fraud action against a group

5  of defendants who subsequently filed Chapter 11 Petitions. These defendants sought

6  to dismiss the SEC's contempt motion, which, as here, had been brought to enforce

7  previous district court orders. In particular, four hours before a district court was to

8  hear that contempt motion, the defendants filed their petitions. The SEC,

9  nevertheless, proceeded with the motion. The defendants argued that further

10 proceedings were barred by the automatic stay. The district court found that the

11 automatic stay did not apply and it granted the SEC's motions, as here, by entering a

12 contempt order expanding the receivership.

13    The district court in Wolfson initially addressed jurisdiction. It found that it

14 had jurisdiction to determine its jurisdiction and to decide whether the automatic stay

15 is applicable to this litigation.

16
17
18
19
20
21
22
> "At the outset, the Court finds that it has jurisdiction to determine its
> own jurisdiction, as well as to decide whether the automatic stay is
> applicable to the instant litigation. See In re Baldwin-United Corp.
> Litig., 765 F.2d 343, 347 (2nd Cir.1985) ("The Court in which the
> litigation claimed to be stayed is pending has jurisdiction to determine
> not only its own jurisdiction but also the precise question whether the
> proceeding pending before it is subject to the automatic stay.");
> Securities & Exchange Comm'n v. Bilzerian, 131 F.Supp.2d 10, 13-14
> (D.D.C.2001); Securities & Exchange Comm'n v. First Fin. Group of
> Tex., 645 F.2d 429, 437-40 (5th Cir.1981); cf. In re Pincombe, 256
> B.R. 774, 781 (Bankr.N.D.Ill.2000) (stating that because the §
> 362(b)(4) exception takes effect immediately, a governmental agency
> is not required to seek relief from the stay before continuing
> proceedings against a debtor)."

23

24 Wolfson, supra, at 617.

25    The Wolfson court went on to discuss the district court's concurrent

26 jurisdiction with the bankruptcy court to determine the effect of the bankruptcy

27 proceeding and the status of property and held, "because the District Court's

28 jurisdiction attached first in time, it was superior."

-31-

322460.2 [XP]    24774

1    "This Court has concurrent jurisdiction with the Bankruptcy Court to
     determine the effect of the bankruptcy proceeding on this case.  See
2    United States Dep't of Housing & Urban Dev't v. Cost Control
     Marketing & Sales Mgm't, 64 F.3d 920, 927 n. 11 (4th Cir.1995)
3    (citing Brock v. Morysville Body Works, Inc. 829 F.2d 383 (3rd
     Cir.1987)), cert. denied,517 U.S. 1187, 116 S.Ct. 1673, 134 L.Ed.2d
4    777 (1996; see also In re Dolen, 265 B.R. 471, 476
     (Bankr.M.D.Fla.2001) (noting that "[t]he district court has concurrent
5    jurisdiction with the bankruptcy court to determine the extent to which
     the Section 362 automatic stay limits the actions of the Commission in
6    its ability to pursue the pending district court action.")

7    Further, as the Cost Control court noted, "because the district court's
     jurisdiction attached first in time, it was superior."  Id.;  see also
8    United States v. Delta Distributors Co., Inc., 1996 WL 460112 (June
     21, 1996 S.D.W.Va.) (finding that "because this Court's jurisdiction
9    attached first in time, it is superior.").  Similarly, in Klass v. Klass,
     the court determined that "[t]he clearly predominant rule is that
10   jurisdiction is concurrent, and that the court in which the non-
     bankruptcy case is pending may determine the effect of the stay on
11   that case."  377 Md. 13, 831 A.2d 1067, 1071 (App.2003) (citing
     numerous federal cases).
12

13   Wolfson, supra, at 617-618.

14           The Bankruptcy Court incorrectly relied on the decision in Christopher

15   Village, L.P. v. U.S. 360 F. 3d 1319 (Fed. Cir. 2004), for the position that it may

16   hear a collateral attack on a District Court order or judgment where such order or

17   judgment infringes upon its subject matter jurisdiction.  RER 79-3484-3485.  Neither

18   Christopher Village, nor any authority of which the Federal Receiver is aware allows

19   a Bankruptcy Court to hear a collateral attack on a district court's pre-bankruptcy

20   order or to sit in review of the district court.

21           In Christopher Village, the plaintiff, a landlord, brought suit in a district court

22   for injunctive and declaratory relief regarding the Department of Housing and Urban

23   Development (HUD)'s refusal to consider a rental increase request from the plaintiff.

24   Summary judgment was granted in favor of HUD, and Plaintiff appealed.  While the

25   appeal was pending, the subject property was foreclosed upon, thus rendering moot

26   the injunctive relief claims.  The Fifth Circuit nonetheless held that the declaratory

27   relief claim was not moot because the appellants "could use the declaration as a

28   predicate for a damages action against HUD in the Court of Federal Claims" Id. at

-32-

1 │ 1324, and it reversed the district court's grant of summary judgment, finding that
2 │ HUD acted improperly in failing to consider plaintiff's requests.

3 │     Armed with this ruling, Plaintiff then filed a class action lawsuit against HUD
4 │ in the Court of Federal Claims for breach of contract, and argued, on summary
5 │ judgment, that the Fifth Circuit's decision in the district court action was res judicata
6 │ as to issues of liability.  The Federal Circuit reversed, holding that since the
7 │ government did not waive sovereign immunity, the Fifth Circuit lacked jurisdiction
8 │ to render judgment on claims which were properly brought in the Court of Federal
9 │ Claims in the first instance.  Accordingly, the Federal Circuit held that the Court of
10 │ Federal Claims was not bound by res judicata with regard to the decisions of liability
11 │ rendered by the Fifth Circuit.  Id. at 1333, because the Fifth Circuit lacked
12 │ jurisdiction when it made those decisions.

13 │     However, the Bankruptcy Court applied Christopher Village to the case at bar
14 │ as authority that allows it to hear a collateral attack on or even ignore the District
15 │ Court Orders.  This is not what Christopher Village holds, and neither Christopher
16 │ Village, nor any other authority of which the Federal Receiver is aware, allows an
17 │ Article I court to ignore the order of an Article III court or to entertain a collateral
18 │ attack on such an order because it believes it has jurisdiction over an action in which
19 │ the Article III court had previously ruled at a time that Court clearly had no
20 │ jurisdiction.  Instead, as explained by Wolfson, supra, and the cases cited therein, the
21 │ bankruptcy court and the district court have concurrent jurisdiction to determine the
22 │ effect of the automatic stay on any pending district court proceeding, and since the
23 │ Florida Action and its express determination in the Clarification Order were both
24 │ first in time, its jurisdiction over the automatic stay issue is in fact superior and is not
25 │ subject to collateral attack or review by the Bankruptcy Court below.  This is in
26 │ sharp contrast to the situation in Christopher Village, where declaratory relief claims
27 │ were held to be void ab initio due to the government's sovereign immunity and the
28 │ ///

-33-