exclusive jurisdiction of the Federal Claims Court to determine issues of liability prior to and at the time of the Fifth Circuit's decision.

No one is disputing that the Bankruptcy Court has exclusive jurisdiction over the claims resolution process in terms of distributions to parties who have filed proofs of claim. However, the case at bar does not involve the claims resolution process. Rather, this case involves a property dispute which was already resolved pre-bankruptcy by an Article III Court. Nor unlike Christopher Village, can there be any dispute that the Florida District Court had jurisdiction to render its decision on ownership of the Subject Funds. Unlike the situation in the Christopher Village case, the decision of the Florida District Court was not rendered "as a predicate" for a subsequent determination by the Bankruptcy Court. The subsequent filing of the Bankruptcy Case by Integretel to evade contempt of court does not give the Bankruptcy Court the right to hear, challenge or to ignore the pre-petition determinations of the Florida District Court, which must be given *res judicata* and collateral estoppel effect. In addition, the Florida District Court has the right to determine the effect of the automatic stay on its pre-petition judgment and upon the Florida Action pending before it. Wolfson, *supra*, at 617-18.

Judicial authority also holds that in a receivership, a district court's jurisdiction is superior, even if the receivership proceedings and the district court's exercise of its jurisdiction followed the bankruptcy in point of time. In Eller Industries, Inc. v. Indian Motorcycle Manufacturing, Inc. ("IMMI"), 929 F. Supp. 369 (D. Colo. 1995), the bankruptcy trustee sought and obtained a preliminary injunction precluding IMMI from soliciting funds by using a trademark which the trustee maintained was the exclusive property of the debtors. Shortly thereafter, IMMI was placed in a federal receivership and a receiver was appointed. The trustee maintained that the preliminary injunction was binding on the receivership and essentially placed the receivership assets in a "constructive trust" for the trustee's benefit. The district court disagreed, holding as follows:

-34-

> This Court has exclusive jurisdiction over the assets and administration of the Receivership imposed on IMMI. Equitable actions against the estate may be authorized only by this Court. An equitable action against IMMI in another forum, by definition, seeks to control assets of the Receivership Estate and thereby conflicts with this Court's exclusive jurisdiction over Receivership Estate assets. Absent leave of this Court, all equitable actions against IMMI cannot be effective against this Court or the Receiver.

Id. at 371-72.

Nor should the Bankruptcy Court below have even considered a challenge to the Florida District Court's jurisdiction. A court's determination of its own jurisdiction is subject to the principles of res judicata; it generally may not be challenged in a collateral proceeding. Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 102 S.Ct. 2099, 2104 n. 9, 72 L.Ed.2d 492 (1982); Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 319, 84 L.Ed. 329 (1940). "A party that has had an opportunity to litigate the question of subject-matter jurisdiction may not, however, reopen that question in a collateral attack upon an adverse judgment." Id. It has long been the rule that principles of res judicata apply to jurisdictional determinations-both subject matter and personal. Id; see also, Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938).

A federal court possesses broad authority to issue various ancillary relief measures in enforcing actions brought by federal agencies. FTC v. Productive Marketing, Inc., 136 F. Supp. 2d 1096, 1104 (C.D. Cal. 2001); see also SEC vs. Universal Fin., 760 F.2d 1034, 1038 (9th Cir. 1985) (finding that a district court's power to enter a blanket receivership stay is broader than a district court's authority to grant injunctive relief under Federal Rule 65); SEC v. Wencke, 622 F.2d 1363, 1371 (9th Cir. 1980) ("The Supreme Court has repeatedly emphasized the broad equitable powers of the federal courts to shape equitable remedies to the necessities of particular cases, especially where a federal agency seeks enforcement in the public interest.").

///

A receivership order issued to preserve the assets of a receivership estate is a classic example of a district court's exercise of in rem jurisdiction over receivership property. Productive Marketing, Inc., 136 F. Supp. 2d at 1105; see also Wencke, 622 F.2d at 1369 (stating that a federal district court's power to issue a stay against all persons concerning all proceedings against the receivership entities "rests as much on its control over the property placed in receivership as on its jurisdiction over the parties to the securities fraud action"); United States vs. Hall, 472 F.2d 261, 267-68 (5th Cir. 1972) (finding that federal district courts have inherent authority to enforce their orders against non-parties given the concept of in rem jurisdiction); SEC vs. Elfindepan, S.A., No. 1:00CV00742, 2002 WL 31165146, at *4 (M.D.N.C. 2002) (finding that federal district courts have jurisdiction to decide the legitimacy of ownership of claims made by non-parties to assets alleged to be proceeds from securities laws violations); SEC vs. Pinez, 989 F. Supp. 325, 337 (D. Mass. 1997) ("Courts also have jurisdiction to decide the legitimacy of ownership claims made by non-parties to assets alleged to be proceeds from securities laws violations.").

Indeed, the purpose of a federal district court's in rem jurisdiction over receivership property through a temporary restraining order or preliminary injunction (or similar injunctive order) is to preserve the assets resulting from the actions of the receivership defendants, whether held by parties or non-parties, in order to provide redress for legitimately defrauded investors. Productive Marketing, Inc., 136 F. Supp. 2d at 1105-1106.

The Bankruptcy Court's decision frustrates that public policy, which would undermine the very purpose of a federal equity receivership, and make any receiver's attempt to recover receivership property for the benefit of defrauded victims too costly and time-consuming to pursue. Productive Marketing is instructive on this very issue. In that case the non-party, ACCPC, refused to relinquish assets located in reserve accounts, relying instead on a contract it signed before the receivership which required a hold-back of the reserve funds for a minimum amount of time. Id. at

1106, 1009. The district court, however, found that ACCPC's reliance on the contract was misplaced, because its failure to turn over the funds disrupted the district court's power to enforce its receivership injunction:

> If the court cannot compel ACCPC to turn over assets in its possession belonging to the receivership estate, the Receiver will be unable to provide adequate redress to consumers who have been defrauded by Defendants. Because ACCPC's conduct imperils the court's ability to render an effective judgment, the court may properly enjoin it, even though it is not a party to the action.

Id. at 1106.

Citibank, N.A. v. Nyland, (CF8) Ltd., 839 F.2d 93 (2d Cir. 1987), is also instructive on this issue. In Nyland, the Second Circuit held:

> Second, we believe that the receiver's fiduciary responsibilities to preserve the property during the course of the underlying litigation concerning the ownership of the property must be seen as superior to New York Land's contractual interest, if any, in the property. As receiver, Cushman & Wakefield is acting as an officer of the court and has the duty to preserve and protect the property pending the outcome of the litigation. As a result, its authority is wholly determined by the order of the appointing court. . . . [R]eceivers are not bound by contracts of the entity that they are appointed to protect. A receiver becomes bound only when it affirmatively adopts the obligations of the entity that it is protecting. . . . [W]e find that New York Land's management and leasing services contract is subordinate to Cushman & Wakefield's obligation to preserve the premises.

Id. at 98 (emphasis added; citations omitted).

In this case, the Florida District Court determined, pre-bankruptcy, that the Subject Funds are property of the Federal Receiver, and the Florida District Court had also exercised its exclusive in rem jurisdiction over the Subject Funds. RER 6-148. The Florida District Court has also entered the Clarification Order after the commencement of the Bankruptcy Case, iterating that the Subject Funds are the Federal Receiver's property, and holding that the automatic stay does not bar its recovery or interfere with the Florida District Court's exclusive jurisdiction over the Subject Funds. RER 9-621-624. As in Eller Industries, Integretel is attempting to interfere with the administration of the Federal Receiver by filing an adversary proceeding seeking to enjoin the Federal Receiver from enforcing the pre-bankruptcy

-37-

turnover and contempt Orders without first seeking permission from the Florida District Court which appointed the Federal Receiver. As the above authorities demonstrate, any attempt to challenge the exclusive subject matter jurisdiction of the Florida District Court over the Subject Funds must be brought in the Florida District Court or in the 11th Circuit, not in a collateral proceeding, whether in the Bankruptcy Court or in any other court.

In fact, Integretel sought to stay enforcement of the Omnibus Order, which Stay was granted by the Florida District Court on September 26, 2007 conditioned upon Integretel's turning over the Subject Funds to the Federal Receiver for segregation pending appeal to the 11th Circuit. RER 27-1200-1201. The Clarification Order is a clear indication that the District Court intends to continue to exercise its exclusive in rem jurisdiction over the Subject Funds and to enforce the execution of the contempt Orders. Integretel in effect, asked the Bankruptcy Court below to do nothing less than <u>reverse</u> the Florida District Court's Orders and ignore the integrity of the District Court in its exercise of its exclusive in rem jurisdiction the Subject Funds and the Bankruptcy Court improperly granted Integretel such relief.

B. **The Entire Adversary Proceeding Is Barred By Res Judicata And Collateral Estoppel.**

1. **The Legal Standard.**

The doctrines of res judicata and collateral estoppel apply here. <u>See</u>, <u>Baldwin v. Iowa State Traveling Men's Ass'n</u>, 51 S.Ct. 517, 517, 283 U.S. 522, 524, 75 L.Ed. 1244 (1931). The doctrine of *res judicata* "ensures the finality of decisions." <u>Brown v. Felsen</u>, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979). It serves to protect adversaries from the expense and vexation attending multiple lawsuits, to conserve judicial resources, and to foster reliance on judicial action by minimizing the possibility of inconsistent decisions. <u>Montana v. United States</u>, 440 U.S. 147,

-38-

153-54, 99 S.Ct. 970, 973-74, 59 L.Ed.2d 210 (1979). The doctrine applies to jurisdictional issues as well as substantive issues. See Durfee v. Duke, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963); Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938); Yanow v. Weyerhauser Steamship Co., 274 F.2d 274, 277 (9th Cir.1959); Title v. United States, 263 F.2d 28, 30 (9th Cir.1959).

The Ninth Court in Americana Fabrics, Inc. v. L & L Textiles, Inc. 754 F.2d 1524 (9th Cir. 1985) explains the doctrine of *res judicata* as follows:

> Res judicata encompasses two subsidiary doctrines, claim preclusion and issue preclusion. Under claim preclusion, a final judgment on the merits of a claim bars subsequent litigation of that claim. Claim preclusion "prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." Brown v. Felsen, 442 U.S. at 131, 99 S.Ct. at 2209; see Los Angeles Branch NAACP v. Los Angeles Unified School Dist., 750 F.2d 731, 737 (9th Cir.1984). The related doctrine of issue preclusion, or collateral estoppel, bars relitigation, even in an action on a different claim, of all "issues of fact or law that were actually litigated and necessarily decided" in the prior proceeding. Segal v. American Tel. & Tel. Co., 606 F.2d 842, 845 (9th Cir.1979); see Montana v. United States, 440 U.S. at 153, 99 S.Ct. at 973.

Res Judicata similarly applies to judgments that are on appeal. "Even if the first judgment ultimately is reversed, this does not automatically mean nullification of the judgment in a second action in which the first judgment was given preclusive effect." Reed v. Allen, 52 S.Ct. 532, 286 U.S. 191, 76 L.Ed. 1054 (1932).

Claim preclusion generally requires that there be:

(1) parties either identical or in privity; (2) a judgment rendered by a court of competent jurisdiction; (3) a prior action concluded to final judgment on merits; and (4) the same claim or cause of action involved in both actions. Owens v. Kaiser Foundation Health Plan, 244 F.3d 708, 713 (9th Cir.2001); In re Paine, 283 B.R. 33, 39 (9th Cir. BAP 2002).

The Ninth Circuit test to determine a "claim" for purposes of res judicata is:

(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action;

(2) whether substantially the same evidence is presented in the two actions;

-39-

1  (3) whether the two suits involve infringement of the same rights; and
2  (4) whether the two suits arise out of the same transactional nucleus of facts.
3  In re International Nutronics, 28 F.3d 965, 969 (9th Cir.1994); Costantini v. Trans
4  World Airlines, 681 F.2d 1199, 1201-02 (9th Cir. 1982).
5  Although the test cannot be applied mechanically and no one criterion is
6  dispositive, the "most important" criterion is the "transactional nucleus of facts." In
7  re International Nutronics, Inc., 28 F.3d 965, 971 (9th Cir. 1994); Costantini v. Trans
8  World Airlines, 681 F.2d at 1201-02.
9  A disposition is final if it contains "a complete active adjudication," that is, a
10  full adjudication of the issues at bar, and clearly evidences the judge's intention that
11  it be the court's final act in the matter. In re Slimick, 928 F.2d 304, 307 (9th Cir.
12  1990), citing United States v. F. & M. Schaefer Brewing Co., 356 U.S. 227, 234, 78
13  S.Ct. 674, 678, 2 L.Ed.2d 721 (1958) and Maddox v. Black, Raber-Kief & Assocs.,
14  303 F.2d 910, 911 (9th Cir. 1962).
15  Issue preclusion generally requires that there be: (1) the same issue; (2)
16  actually litigated and determined; (3) by a valid and final judgment; (4) as to which
17  the determination is essential to the judgment. In re Paine, 283 B.R. 33, 39 (9th Cir.
18  BAP 2002); Robi v. Five Platters, Inc., 838 F.2d 318, 322 (9th Cir. 1988).
19  When an issue of fact or law is actually litigated and determined by a valid and
20  final judgment, and the determination is essential to the judgment, the determination
21  – even if erroneous – is conclusive in a subsequent action between the parties,
22  whether on the same or a different claim. 18 Moore's Federal Practice, § 132.01[2],
23  p. 132-11 (James Wm. Moore ed., 3rd ed. 2006).  The doctrine of issue preclusion
24  will prevent a party from re-litigating an issue that the party has already litigated and
25  lost, and often protects a defendant from the burden of litigating an issue that has
26  been fully and fairly tried in a prior action and decided against the same plaintiff. Id.
27  ///
28

-40-

The purposes of the doctrine of issue preclusion are to relieve the parties of the cost and vexation of multiple lawsuits, prevent inconsistent decisions, encourage reliance on adjudication by minimizing the possibility of inconsistent decisions, conserve judicial resources, and promote judicial economy by preventing needless litigation. 18 Moore's Federal Practice, § 132.01[3], p. 132-12 (James Wm. Moore ed., 3rd ed. 2006). The policy underlying the doctrine is that "one fair opportunity to litigate an issue is enough." Id. at p. 132-13. See also McClain v. Apodaca, 793 F.2d 1031, 1032-33 (9th Cir. 1986) ("The doctrine of res judicata insures the finality of decisions, conserves judicial resources, and protects litigants from multiple lawsuits.").

### 2. The Bankruptcy Court Erred in Failing to Apply Res Judicata and Collateral Estoppel to Integretel's Claims for Injunctive Relief.

Integretel's claims in the Adversary Proceeding are barred under the principles of res judicata and collateral estoppel, that is, by both the doctrines of claim preclusion and issue preclusion and can not serve as grounds to issue injunctive relief. The Omnibus and Clarification Orders have a preclusive effect upon, and bar, Integretel's claims in this Adversary Proceeding. All of the elements of claim preclusion are present.

First, Integretel, the FTC and the Federal Receiver are all parties to the Adversary Proceeding. Although Integretel is now a Debtor in Possession, it is in privity with the pre-petition debtor.

Second, the Omnibus Order and the Clarification Order were rendered by the Florida District Court, which is a court of competent jurisdiction.

Third, the Florida District Court Orders constitute a final judgment. The disposition was final because it was "a complete active adjudication," that is, a full adjudication of the issues at bar, including without limitation the issue of whether the Subject Funds constitute property of the Federal Receiver, and the Orders clearly

-41-

evidenced the Florida District Court's intention that it be that Court's final act in the matter.

Fourth, the Orders were on the merits. A review of the District Court's Orders reveals that this was no interim measure to preserve the Subject Funds for safekeeping; rather, it was an adjudication of ownership of the Subject Funds. The ownership issue is not predicated on whether the FTC ultimately prevails in the enforcement action against the Debtor. Consequently, the turnover provisions of the Omnibus Order and Clarification Order are final, appealable orders. See SEC v. Wencke, 783 F.2d 829, 837-38 (9th Cir. 1986) (stating that claims of non-parties to property claimed by receivers can be resolved via summary proceedings, which reduce the time necessary to settle disputes, decrease litigation costs and prevent dissipation of receivership assets, as long as there is notice to the non-party and an opportunity to be heard, and thus satisfy due process); see also, CFTC v. Topworth Int'l, Ltd., 205 F.3d 1107, 1111-12 (9th Cir. 2000) (finding that turnover order stating that $300,000 belonged to one party, and not another, was final, appealable order because order disposed of ownership rights in property). Integretel admits the propriety of its appeals by arguing the same to the 11th Circuit in support of its exercise of jurisdiction over the appeal. RER 53-1856-2341; RER 38-2629-2637.

Fifth, Integretel's appeal of Omnibus Order and Clarification Order does not affect the preclusive effect of the Orders. Reed v. Allen, *supra*.

Sixth, the claims raised by Integretel in the Adversary Proceeding and in Integretel's opposition to the Contempt Motion and other motions filed by Integretel in the Florida District Court, are the same. The two proceedings involve the same evidence, the same rights as between Integretel and the Federal Receiver and the infringement of such rights, and the same transactional nucleus of facts. The irrelevant assertion that bankruptcy law recognizes a tracing requirement to certain claims of trust (as does state law) does not alter this result, since neither the Omnibus Order nor the Clarification Order is predicated upon "tracing" or "trusts." The

-42-

explicit language of the Omnibus Order indicates that the parties litigated their respective contractual rights and the issue of whether the funds were held in a "pooled account" which facts the Florida District Court held were not germane to the Federal Receiver's equitable powers and the Florida District Court's exercise of in rem jurisdiction over the Subject Funds. RER 6-148. Needless to say, the fact that Integretel disagrees with the Florida District Court's ruling does not alter its preclusive effect. 18 Moore's Federal Practice, § 132.01[2], p. 132-11

Seventh, the rights of the Federal Receiver are impaired by the Preliminary Injunction of the Bankruptcy Court below. There is a risk of inconsistent decisions (as recognized by the Bankruptcy Court in its occasional assertions about deference to the 11th Circuit appeal prior to issuing the injunction). Judicial resources would be and have already been wasted. The Federal Receiver and the Debtor will and have already incurred significant additional expense and delay, and judicial economy would not be promoted.

Integretel's claims in this Adversary Proceeding are also precluded by issue preclusion because all of the elements are present. Here, certain critical issues, issues which the Debtor has asserted in the Florida Action, were already litigated before the Florida District Court, they were decided against the Debtor, and these decisions are part of the District Court Orders. In particular, the Debtor already argued before the District Court that the Subject Funds arise from a contract claim and the Federal Receiver is merely an unsecured creditor. The Omnibus Order rejected this argument. Debtor argued that a full blown trial was required. RER 6-0148. This was also rejected in the Omnibus Order.

The Florida District Court made explicit and unambiguous findings of fact in its Omnibus Order, including:

• Integretel had agreements in place with the Receivership Entities that permitted them to hold the Receiverships' money as reserves. RER 6-0145-0146. (pages 1-2).

-43-

- Integretel did not advise either the Federal Receiver or the FTC that it was holding reserves. Rather, its president informed the FTC on March 6, 2006 that no amounts are currently due and owing to Access One or Network One. RER 6-0146.
- The reserve amount being held by Integretel (and/or its affiliates) is $1,762,762.56. RER 6-0146.

The District Court also made explicit and unambiguous conclusions of law in its Omnibus Order, including:

- Integretel's keeping the reserves in a pooled account "is a distinction without a difference, since the TRO captures funds held on behalf of, or for the benefit of, a Defendant." RER 6-0147.
- The Federal Receiver's claim is not a claim at law governed by pre-receivership contracts, but one governed by this Florida District Court's jurisdiction over receivership property. RER 6-0147.
- Issues concerning entitlement to disputed receivership property can be determined via summary proceedings in the federal court equity receivership context. RER 6-0148.

In the Clarification Order, after the commencement of the Bankruptcy Case, the District Court again set forth explicit and unambiguous findings of fact and conclusions of law, including:

- The Florida District Court has already ruled that the reserve funds are the property of the receivership estate and ordered Integretel to pay the current reserve funds, amounting to $1,762,762.56, immediately to the Federal Receiver. RER 9-0621.
- The contempt proceeding is not stayed by the bankruptcy, since the reserve funds are not property of the bankruptcy estate, and the contempt proceedings are excluded from the automatic stay pursuant to 11 U.S.C. § 362(b)(4) RER 9-0624.

-44-

Thus, the issue of ownership of the Subject Funds was actually litigated by Integretel and the Federal Receiver prior to the Bankruptcy Case, and was determined by the Florida District Court. The Bankruptcy Court's characterization of the Florida District Court's ruling as addressing "whether the receiver had a property interest in the abstract" is unwarranted and does not change the reality that such issue was actually litigated. The Article I Bankruptcy Court is not now given the right to "flesh out" the issues it believes were wrongly decided by the Article III Florida District Court. The issues have been decided and are on appeal to the 11th Circuit.

The determination that the Federal Receiver owns the Subject Funds was essential to the relief granted by the Florida District Court. Thus, the Bankruptcy Court's purported exercise of jurisdiction over some "dispute" about whether the Subject Funds are property of the Receiverships is barred by both res judicata and collateral estoppel.

### 3. Alleged "Commingling" of the Subject Funds Does Not Create a New Triable Issue of Fact.

The Bankruptcy Court analogizes this case to the line of authority in the Ninth Circuit holding that inchoate claims for constructive trust are generally not enforceable in bankruptcy cases against commingled funds. See, Elliot v. Bumb, 356 F. 2d 749, 754-55 (9th Cir. 1966); In re Esgro, Inc., 645 F. 2d 794, 798 (9th Cir. 1982); In re North American Coin & Currency, Ltd., 767 F. 2d 1573, 1575 (9th Cir. 1985); In re Advent Management Corp., 178 B.R. 480, 488 (9th Cir. BAP 1995), aff'd, 104 F. 3d 293 (9th Cir. 1997). Nowhere in either the Omnibus Order or the Clarification Order did the Florida District Court indicate that it was basing its determinations on "tracing" or "constructive trusts." The Bankruptcy Court below erred in imposing a "tracing" requirement for establishment of a constructive trust as solely a creature of bankruptcy law. In re Goldberg, 158 B.R. 188, 195-96 (Bankr. E.D.Cal.1993). Moreover, no authority has been offered for the proposition that the

-45-

tracing requirement for constructive trusts should be expanded to include an in rem order of a Federal receivership. Simply trying to label the Receiver's rights as a "trust" ignores the broad authority of the Florida District Court to establish equitable remedies in order to preserve assets of the Federal Receiver. See, Wencke, 622 F. 2d at 1371 ("The Supreme Court has repeatedly emphasized the broad equitable powers of the federal courts to shape equitable remedies to the necessities of particular cases, especially where a federal agency seeks enforcement in the public interest"); see also, FTC v. Productive Marketing, Inc., 136 F. Supp. 2d 1096, 1105 (C.D. Cal. 2001) ("An order issued to preserve the assets of a receivership estate is a classic example of an in rem injunction").

The Debtor's "trust" argument was already considered and rejected by the Florida District Court, as is expressly set forth in the Omnibus Order. The Debtor argued there, as it did before the Bankruptcy Court, that "'the reserves do not take the form of any actual funds that [the Debtor] has segregated or otherwise set aside...' and maintains that it keeps the reserves in a pooled account it tracks via an internal accounting entry." RER 6-147. The Florida District Court ruled that such distinction was without consequence, "since the TRO captures funds 'held on behalf of, or for the benefit of, a Defendant.'" RER 6-147.

As further acknowledged by the Florida District Court, "the Receiver's claim is not a claim at law governed by pre-receivership contracts, however, but one governed by [the District] Court's jurisdiction over receivership property based on the TRO and Amended Preliminary Injunction." RER 6-148. Accordingly, it is of no consequence whether the contract required the Debtor to segregate the Subject Funds. The equitable relief sought and obtained by the Federal Receiver in the Florida District Court was pursuant to Federal statute and not based upon the much narrower equitable remedy of constructive or express trusts.

Moreover, the cases cited by the Bankruptcy Court in its Memorandum Decision involved inchoate trust claims. See, e.g., In re North American Coin &

-46-

1  Currency, Ltd., 767 F. 2d at 1575; In re Advent Management Corp., 178 B.R. at 491.
2  This distinction is important, since inchoate constructive trust claims have been held
3  to be avoidable by trustees. See 11 U.S.C. § 544(a)(3); National Bank of Alaska v.
4  Erickson (In re Seaway Express Corp.), 912 F.2d 1125, 1128-29 (9th Cir.1990);
5  Chbat v. Tleel (In re Tleel), 876 F.2d 769, 770 (9th Cir.1989). By contrast, in this
6  case the Federal Receiver's entitlement to the Subject Funds was determined pre-
7  bankruptcy. See, Airwork Corp v. Markair Express, Inc. (In re Markair, Inc.), 172
8  B.R. 638, 642 (9th Cir. BAP 1994) ("A constructive trust imposed by state law pre-
9  petition would therefore exclude the res from the debtor estate.")

As argued *supra*, the Federal Receiver was acting under Federal law when it sought and obtained an Order determining that the Subject Funds were property of the Receivership and requiring its turnover under penalty of contempt. The Federal Receiver was not acting under the color of equitable trusts. Moreover, the Federal Receiver already obtained its equitable remedy pre-bankruptcy. The Florida District Court rejected any argument that the commingling of the reserves with other assets rendered the Federal Receiver unable to capture the Subject Funds pursuant to the Federal injunctions.

The Bankruptcy Court also erred in stating that the Omnibus Order does not require Integretel to pay any specific amount of funds to the Receiver. RER 52-3045. To the contrary, the Omnibus Order set forth <u>to the penny</u> the amount Integretel was required to pay: $1,762,762.56. RER 6-0146; RER 9-0621.

C.  **Integretel Failed To Satisfy The Standards For Injunctive Relief.**

To obtain a preliminary injunction, the moving party must show a likelihood of success on the merits and a possibility of irreparable injury or the existence of serious questions going to the merits and a balance of hardships tipping in movant's favor. Children of the Rosary v. Phoenix, 154 F.3d 972, 974-756 (9th Cir.1998).

///

Integretel failed in all respects. At the outset, it must be noted again that Integretel has <u>admitted</u> that it does not need the Subject Funds to operate or reorganize.

### 1. **Integretel did not demonstrate a likelihood of success on the merits with regard to claims against the Federal Receiver.**

For the reasons set forth above, Integretel's claims against the Federal Receiver have no merit. Integretel lost in the Florida District Court on the issue of property ownership after almost a year of litigation. The Bankruptcy Court below lacks jurisdiction over the Subject Funds, and the claims and issues in the Bankruptcy Court with respect to them are barred by res judicata and collateral estoppel. Simply put, the Bankruptcy Court lacks the power to alter the result. The Bankruptcy Court is presuming to, in effect, sit in review of the Florida District Court and the 11th Circuit.

### 2. **Integretel's Likelihood of a Successful Reorganization is Purely Speculative.**

Likewise, the Bankruptcy Court's findings that it is likely to successfully reorganize was based on nothing other then Integretel's meeting with the creditors' committee and approval of interim cash collateral motions. At the time of entry of the Preliminary Injunction, no Plan had been proposed and the prospects of reorganization were based on nothing more than self-serving declarations of the Debtor which set forth 'made as instructed' financial projections.

### 3. **Integretel Failed to Show Irreparable Harm.**

Perhaps the greatest and most inexplicable error made by the Bankruptcy Court was in finding that the Debtor would be irreparably harmed should the Bankruptcy Court not have enjoined the Federal Receiver. <u>The Budget submitted by Integretel in support of use of cash collateral showed that the Debtor did not need use of the Subject Funds in order to operate.</u> RER 30-1295-1307. The Bankruptcy Court found, based on the evidence before it, that the Debtor did not need the funds for ongoing business operations. RER 86-3812. Moreover, the Florida District Court

-48-

1  granted the Debtor a stay pending appeal on the condition that the Subject Funds are
2  turned over to the Federal Receiver to be held in a segregated account. All parties
3  concede that the 11th Circuit could take one or two years before deciding the issues
4  on appeal. Thus, the only "harm" to justify a preliminary injunction would have
5  been a transfer of the Subject Funds from the Debtor's segregated account to the
6  Federal Receiver's segregated account while the parties wait and see what occurs in
7  the 11th Circuit.
8        By contrast, the agreement between Integretel and the Federal Receiver for
9  Integretel to hold and segregate the funds is limited in duration, and can be lifted by
10 Bankruptcy Court Order at any time on notice to the other party. Thus, the danger
11 exists that the Subject Funds will be unblocked and spent prior to the 11th Circuit's
12 ruling on the matters at issue. Therefore, the balance of harm weighs heavily in
13 favor of the Federal Receiver. Indeed, to allow Integretel to continue to hold the
14 Federal Receiver's property is to insult the integrity of the Florida District Court.
15       Finally, the Federal Receiver is harmed by the overreaching language of the
16 Preliminary Injunction, which prohibits the Federal Receiver from unilaterally
17 communicating through a "status report" with his own appointing court. There is
18 simply no basis for enjoining or restricting communications between the Florida
19 District Court and its agent, the Federal Receiver and any such order must be vacated
20 as a most serious abuse of discretion by the Bankruptcy Court.
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

322460.2 [XP]    24774

# VII.
# CONCLUSION

For the foregoing reasons, the Federal Receiver respectfully requests that this Court dissolve the Bankruptcy Court's Preliminary Injunction and direct the Bankruptcy Court to Order Integretel to deliver the Subject Funds to the Federal Receiver.

Dated, on this 7th day of April, 2008, at Los Angeles, California.

DANNING, GILL, DIAMOND & KOLLITZ, LLP

By _____
Steven J. Schwartz
Attorneys for Defendant/Appellant,
David R. Chase, as Federal Receiver

322460.2 [XP]   24774